Kevin K. Eng (SBN 209036)
MARKUN ZUSMAN FRENIERE COMPTON LLP
465 California Street, Suite 401
San Francisco, CA 94194
Telephone: (415) 438-4515
Facsimile: (415) 434-4505
keng@mzclaw.com

David E. Weslow (for admission *pro hac vice*)
Adrienne J. Kosak (for admission *pro hac vice*)
WILEY REIN LLP
1776 K Street NW
Washington, DC 20006
Telephone: (202) 719-7000
Facsimile: (202) 719-7049
dweslow@wiley.law
akosak@wiley.law

Attorneys for Defendant Impossible LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMPOSSIBLE FOODS INC.,<br><br>Plaintiff,<br><br>v.<br><br>IMPOSSIBLE X LLC,<br><br>Defendant. | Case No. 3:21-cv-2419-TSH<br><br>NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(2) AND 12(B)(1); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; DECLARATION OF JOEL RUNYON; DECLARATION OF DAVID WESLOW<br><br>Date: August 12, 2021<br>Time: 10:00 a.m.<br>Judge: Magistrate Judge Thomas S. Hixson<br>Courtroom: G, 15th Floor |

PLEASE TAKE NOTICE that on August 12, 2021, at 10:00 a.m., or as soon thereafter as this matter may be heard in the Courtroom of the Honorable Thomas S. Hixson of the Northern District of California, Defendant Impossible LLC will move the Court for an Order dismissing the present action

for lack of personal jurisdiction over Impossible LLC, pursuant to Federal Rule of Civil Procedure 12(b)(2), and for lack of subject-matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1).

In support of this motion, Impossible LLC relies on the accompanying Memorandum of Points and Authorities and evidence attached thereto. As described therein, Impossible LLC is neither at home in this forum, nor has it purposefully directed any relevant activity to this forum, and as a result, the exercise of jurisdiction over Impossible LLC in the Northern District of California is neither just nor proper. Further, Plaintiff's declaratory judgment claim does not present a case or controversy that warrants the Court's exercise of jurisdiction.

Dated: June 11, 2021 By: /s/
Kevin K. Eng

*Attorneys for Defendant*
*Impossible LLC*

**MEMORANDUM OF POINTS AND AUTHORITIES**

**TABLE OF CONTENTS**


I. INTRODUCTION ........ 1

II. FACTUAL BACKGROUND ........ 2

A. Impossible LLC ........ 2

B. Interactions Between Plaintiff and Defendant ........ 3

C. The Present Action ........ 4

III. APPLICABLE LAW ........ 5

A. Personal Jurisdiction ........ 5

B. Subject Matter Jurisdiction ........ 6

IV. ARGUMENT ........ 7

A. Personal Jurisdiction ........ 7

1. This Court Lacks General Personal Jurisdiction Over Defendant. ........ 8

2. This Court Lacks Specific Personal Jurisdiction Over Defendant. ........ 8

a. Plaintiff's Ties to California Are Insufficient to Create Jurisdiction Over Defendant. ........ 8

b. To Satisfy the "Arising Out of" Prong of the Specific Jurisdiction Test, the Court Must Consider Only Contacts Related to Defendant's Trademark Enforcement Efforts. ........ 9

c. Defendant Has No Relevant Contacts with California ........ 11

d. Exercising Jurisdiction Over Defendant Is Unreasonable. ........ 14

B. Subject Matter Jurisdiction ........ 15

V. CONCLUSION ........ 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Shutterfly, Inc.*,
No. 20-CV-02448-BLF, 2020 WL 5517170 (N.D. Cal. Sept. 14, 2020) ....11

*Arkon Res., Inc. v. Nat'l Prods. Inc.*,
No. CV 17-2976 PSG, 2018 WL 1143816 (C.D. Cal. Jan. 3, 2018) ....16

*Artec Grp., Inc. v. Klimov*,
No. 15-CV-03449-RMW, 2015 WL 9304063 (N.D. Cal. Dec. 22, 2015) ....18

*Avocent Huntsville Corp. v. Aten Int'l. Co., Ltd.*,
552 F.3d 1324 (Fed. Cir. 2008) ....16

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
874 F.3d 1064 (9th Cir. 2017) ....*passim*

*Bright Lite Structures, LLC v. Balform, Ltd.*,
No. 20-CV-00567-LB, 2020 WL 2218967 (N.D. Cal. May 7, 2020) ....17

*Coleman v. Ellis*,
No. C 19-8104 SBA, 2020 WL 7133772 (N.D. Cal. Mar. 13, 2020) ....22, 23

*Cont'l Cas. Co. v. Robsac Indus.*,
947 F.2d 1367 (9th Cir. 1991) ....23

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ....13, 14

*Delphix Corp. v. Embarcadero Techs., Inc.*,
749 F. App'x 502 (9th Cir. 2018) ....19, 20

*Delphix Corp. v. Embarcadero Techs., Inc.*,
No. 16-CV-00606-BLF, 2016 WL 4474631 (N.D. Cal. Aug. 25, 2016) ....19

*Elec. Frontier Found. v. Glob. Equity Mgmt. (SA) Pty Ltd.*,
290 F. Supp. 3d 923 (N.D. Cal. 2017) ....17

*Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*,
905 F.3d 597 (9th Cir. 2018) ....20

*Freud Am., Inc. v. Milwaukee Elec. Tool Corp.*,
No. 1:20CV109, 2020 WL 8248765 (M.D.N.C. June 17, 2020) ....18

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011) ....11

*Impact Prods., Inc. v. Impact Prods., LLC*,
341 F. Supp. 2d 1186 (D. Colo. 2004) ....................18

*Inamed Corp. v. Kuzmak*,
249 F.3d 1356 (Fed. Cir. 2001) ....................11

*Int'l Shoe Co. v. Washington*,
326 U.S. 310 (1945) ....................11

*Int'l Watchman Inc. v. Strap.ly*,
No. 1:18 CV 1690, 2019 WL 1903557 (N.D. Ohio Apr. 29, 2019) ....................18

*Martinez v. Aero Caribbean*,
764 F.3d 1062 (9th Cir. 2014) ....................14

*Md. Cas. Co. v. Pac. Coal & Oil Co.*,
312 U.S. 270 (1941) ....................24

*Principal Life Ins. Co. v. Robinson*,
394 F.3d 665 (9th Cir. 2005) ....................12, 13

*Ranza v. Nike, Inc.*,
793 F.3d 1059 (9th Cir. 2015) ....................13

*Rhoades v. Avon Prods., Inc.*,
504 F.3d 1151 (9th Cir. 2007) ....................12

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) ....................12

*SIBU, LLC v. Bubbles, Inc.*,
No. 2:11-CV-00477 DN, 2011 WL 6028835 (D. Utah Dec. 5, 2011) ....................18

*Slack Techs., Inc. v. Phoji, Inc.*,
No. 20-CV-01509-EMC, 2020 WL 4701174 (N.D. Cal. Aug. 13, 2020) ....................16

*Walden v. Fiore*,
571 U.S. 277 (2014) .................... *passim*

*WhatsApp Inc. v. NSO Grp. Techs. Ltd.*,
472 F. Supp. 3d 649 (N.D. Cal. 2020) ....................13

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
433 F.3d 1199 (9th Cir. 2006) ....................17, 19

*Younique, L.L.C. v. Youssef*,
No. 2:15-CV-00783-JNP-DBP, 2016 WL 6998659 (D. Utah Nov. 30, 2016) ....................18

*Zawitz v. Star Magic*,
No. 20-CV-07121-DMR, 2021 WL 1788590 (N.D. Cal. May 5, 2021) ................................15

**Statutes**

28 U.S.C. § 2201(a) ..........................................................................................................12

**Other Authorities**

Federal Rule of Civil Procedure 12(b)...................................................................*passim*

## I. INTRODUCTION

Impossible LLC ("Defendant"), a Texas company,[1] hereby moves to dismiss the present action for either lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), or lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

Dismissal for lack of personal jurisdiction is necessary, as Defendant has no meaningful ties to California. Its only relevant contacts are tenuous at best: a single letter to Impossible Foods Inc.'s ("Plaintiff") Washington-based counsel that went unanswered; and a limited proceeding before the Trademark Trial and Appeal Board in Virginia challenging one intent-to-use trademark application owned by Plaintiff. The only connection between these actions and the forum is the fact that Plaintiff happens to be a California corporation—not contacts that Defendant *itself* created. This is precisely the type of fortuitous connection that the Supreme Court and Ninth Circuit repeatedly have found does not support personal jurisdiction.

Alternatively, the case should be dismissed for lack of subject matter jurisdiction. The present matter is not one that warrants the Court's exercise of discretion to hear declaratory judgment matters—Plaintiff is misusing the Declaratory Judgment Act, ballooning the case far beyond the parties' actual dispute, to gain a tactical advantage over a smaller entity holding senior trademarks. The parties first formally crossed paths when Defendant learned of three pending trademark applications owned by Plaintiff, and sought an extension of time from the Trademark Trial and Appeal Board in Alexandria, Virginia to consider whether to oppose those applications. Defendant sent a single letter to Plaintiff's Washington based trademark counsel in November 2020, asking to open a dialogue about its concerns that Plaintiff was encroaching on Defendant's senior trademark rights. Plaintiff never substantively responded, and so Defendant chose to oppose only one of those three pending applications, allowing the other two to proceed to registration. The parties proceeded with that single limited TTAB action, until the day before Plaintiff's discovery responses were due. Then, without warning, rather than responding to the outstanding discovery requests concerning its intent-

---

[1] Plaintiff has filed this action against "Impossible X LLC." On January 4, 2021, the Illinois limited liability company Impossible X LLC was merged into the Texas limited liability company Impossible LLC and therefore the entity named as a Defendant in this action no longer exists.

to-use trademark application, Plaintiff filed a motion to suspend the TTAB action in favor of the present action—which expanded the dispute from the registrability of a single intent-to-use application, to a declaration that Plaintiff's trademark rights were superior to Defendant's rights, and purportedly seeking to cancel three of Defendant's trademarks.[2] The timing and expansion of issues demonstrate that the present action did not arise out of an apprehension of litigation from Defendant; it is blatant forum shopping, and an attempt to bully a much smaller entity into submission by significantly escalating a very narrow dispute.

## II. <u>FACTUAL BACKGROUND</u>

### A. <u>Impossible LLC</u>

In 2010, Defendant Impossible LLC's founder Joel Runyon began use of the mark IMPOSSIBLE in connection with a blog encouraging one to push his or her limits and "do something impossible." Ex. A (Declaration of Joel Runyon ("Runyon Decl.") ¶ 1. What began as a modest blog has grown into a platform and business that reaches into almost all aspects of the fitness and nutrition industry: fitness products; apparel; nutritional supplements; consulting services; guides for food, ingredients, diets, and recipes; and even philanthropic services. *Id.* ¶¶ 3-5. These goods and services are offered through a variety of means, including websites, ecommerce (including a dedicated Amazon.com page), and numerous software applications including the popular "Paleo.io" diet food list app and "Paleo Recipe Pro" recipe app. *Id.* ¶ 6. Based on its longstanding and continuous use of IMPOSSIBLE formative marks in U.S. commerce, Defendant enjoys broad common law trademark rights in the IMPOSSIBLE family of marks that were established long prior to the creation of Plaintiff or its adoption of its trademarks. *See id.* ¶ 8.

In addition to its common law rights, Defendant has acquired numerous trademark registrations directed to fitness, nutrition, and general healthy living, including Reg. Nos. 4260617 (IMPOSSIBLE), 4624158 (IMPOSSIBLE FITNESS), 5155646 (IMPOSSIBLE X), 5179974 (IMPOSSIBLE HQ), 5376208 (IMPOSSIBLE), 5387588 (IMPOSSIBLE NUTRITION), 5576376

[2] Although Plaintiff's Prayer for Relief seeks cancellation of three of Defendant's trademark registrations, it did not bring a claim for cancellation of the marks, and its only claim, for declaratory judgment, does not state a basis for such relief.

(DO SOMETHING IMPOSSIBLE), 5590801 (IMPOSSIBLE FITNESS), 5603025 (IMPOSSIBLE FITNESS), and 5620625 (IMPOSSIBLE). *Id.* ¶ 9 and Attach. 2.

Defendant's predecessor, Impossible X LLC, was founded in Wheaton, Illinois. *Id.* ¶ 2. The legal address for Defendant has since been moved to Austin, Texas. *Id.* and Attach. 1. Defendant maintains no physical presence in California, has no employees who reside in California, and is not registered to do business in California. *Id.* ¶ 10-13. While Defendant's websites, applications, and ecommerce sites are accessible in California, they do not focus on or direct advertisements toward California consumers, and are equally accessible nation-wide. *Id.* ¶ 14.

### B. <u>Interactions Between Plaintiff and Defendant</u>

On July 28 and August 11, 2020, the USPTO published for opposition three trademark applications owned by Plaintiff for the mark IMPOSSIBLE. *See* Ex. B (Declaration of David Weslow ("Weslow Decl.")) ¶ 2 and Attach. 1 (App. Nos. 88669426, 88669448, 88855875). Two of the three applications were directed to "Substitutes for food, namely, plant-based meat substitutes; Substitutes for food, namely, plant-based fish substitutes and plant-based chicken substitutes," and filed on a mixed use and intent-to-use basis. *Id.* Attach. 1. The third, App. No. 88855875, was filed on an intent-to-use basis, and directed to "[p]roviding information about recipes, ingredients and cooking information; providing an online computer database to consumers featuring information about recipes, ingredients and cooking information." *Id.*

Defendant requested an extension of the deadline to oppose all three applications to afford it time to investigate whether to oppose registration of the three applications. *Id.* ¶ 3.

On November 10, 2020, with the deadline to oppose the applications approaching, counsel for Defendant sent a letter to Plaintiff's trademark counsel, who was located in Seattle, Washington. *Id.* ¶ 4 and Attach. 3. The Complaint in the present action does not include a copy of the actual correspondence—presumably because the letter identified potentially problematic uses and notably sought an amicable resolution to avoid both likely and actual confusion:

> While Impossible X prefers to work amicably with Impossible Foods to avoid any future confusion, our client already is aware of several apparent instances of actual confusion. Going forward, the opportunities for confusion will only increase as our clients' respective businesses grow and expand. Thus, in the absence of a mutual agreement,

> Impossible X must demand that your client cease all use of its confusingly similar IMPOSSIBLE designs (i.e., uses without "FOODS" in stylizations that mimic Impossible X's marks) and limit the use of its IMPOSSIBLE mark to only use in association with plant-based food substitutes.

*Id.* Attach 3. The letter advised that if Defendant did not receive a response, it would "have no choice but to consider all appropriate action to protect its rights, including filing notices of opposition before the Trademark Trial and Appeal Board." *Id.* Plaintiff's trademark counsel did not substantively respond to the correspondence. *Id.* ¶ 5.

Having received no response, Defendant had to consider what actions were appropriate in relation to Plaintiff's three published trademark applications. Ultimately, Defendant chose *not* to oppose the two trademarks directed to plant-based food substitutes, allowed the opposition period to expire, and the applications have since been allowed by the USPTO. *See id.* ¶ 6. On November 25, 2020, Defendant timely filed a Notice of Opposition with the TTAB as to Plaintiff's intent-to-use App. No. 88855875 only. *Id.* ¶ 6 and Attach. 4. The Notice challenged Plaintiff's entitlement to a trademark registration based on a likelihood of confusion with Defendant's senior marks. *Id.* Attach. 4.

Defendant diligently pursued the TTAB proceeding. On March 5, 2021—the day initial disclosures were due—Defendant served not only those disclosures, but also its first production of documents and first sets of interrogatories, requests for production, and requests for admission. *Id.* ¶ 7. Plaintiff served no discovery requests on Defendant. *Id.* ¶ 8.

Then, one business day before Plaintiff's responses to discovery were due, Plaintiff filed a motion to suspend the TTAB action, in light of its filing of the present district court action (which had been filed the same day). *Id.* ¶ 9 Attach. 5.

### C. <u>The Present Action</u>

Plaintiff's complaint in this action contains a single claim: declaratory relief regarding the parties' respective trademark rights. Dkt. No. 1 ("Compl."). Plaintiff contends that "there is an actual controversy between Impossible Foods and Impossible X as to the parties' rights and legal relations associated with each party's use of the IMPOSSIBLE mark." *Id.* ¶ 29. The action is far beyond the scope of the TTAB proceeding, seeking a declaration that, *inter alia*, Plaintiff's rights

are superior to Defendant's rights, Plaintiff bears no liability to Defendant, and that three of Defendant's trademarks be cancelled for abandonment and/or non-use.[3] *Id.*, Prayer for Relief.

In support of personal jurisdiction, Plaintiff alleges that "Impossible Foods' claim for relief arises directly from Impossible X's contacts with California, including its demands and threats made to Impossible Foods in California. Further, Impossible X has challenged the right of Impossible Foods, a California-based company, to provide services under its IMPOSSIBLE trademark to California consumers and nationally." *Id.* ¶ 7.

## III. APPLICABLE LAW

### A. Personal Jurisdiction

Defendant moves to dismiss the present action for lack of personal jurisdiction. "The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 571 U.S. 277, 283 (2014). A nonresident of the forum state "must have 'certain minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.''" *Id.* "Determining whether personal jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits service of process, and whether the assertion of personal jurisdiction would violate due process." *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1359-60 (Fed. Cir. 2001). However, California's long-arm statute "is coextensive with the limits of due process," and therefore "the two inquiries collapse into a single inquiry: whether jurisdiction comports with due process." *Id*. Due process requires certain minimum contacts within California "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

There are two distinct types of personal jurisdiction: general and specific. "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as

[3] As noted above, the Prayer for Relief requests cancellation of certain of Defendant's trademark registrations, but the Complaint does not properly articulate a claim for cancellation of a federal trademark registration.

to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, (2011). Courts in the Ninth Circuit apply this same standard to limited liability companies. *See Allen v. Shutterfly, Inc.*, No. 20-CV-02448-BLF, 2020 WL 5517170, at *3 (N.D. Cal. Sept. 14, 2020) ("These principles apply equally to limited liability companies.").

To exercise specific jurisdiction, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden*, 571 U.S. at 284. The Ninth Circuit considers the following in determining whether specific jurisdiction is appropriate:

> (1) the defendant must either "purposefully direct his activities" toward the forum or "purposefully avail[ ] himself of the privileges of conducting activities in the forum"; (2) "the claim must be one which arises out of or relates to the defendant's forum-related activities"; and (3) "the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable."

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (quoting *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)). For cases sounding in tort, the Ninth Circuit employs the "purposeful direction" test, which requires that the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* at 1069.

Defendant brings the present motion under Federal Rule of Civil Procedure 12(b)(2), which provides a mechanism for contesting personal jurisdiction over a defendant. "Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

**B. <u>Subject Matter Jurisdiction</u>**

Defendant alternatively seeks dismissal for lack of subject matter jurisdiction. The Declaratory Judgment Act provides a remedy by which, "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). The Ninth Circuit has held that declaratory relief is appropriate only where "there is an actual case or controversy within its jurisdiction." *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir. 2005). This

requirement is "identical to Article III's constitutional case or controversy requirement." *Id.* (quoting *American States Ins. Co. v. Kearns*, 15 F.3d 142, 143 (9th Cir.1994)). "[A]n action for a declaratory judgment that a patent [or trademark] is invalid, or that the plaintiff is not infringing, [presents] a case or controversy if the plaintiff has a real and reasonable apprehension that he will be subject to liability if he continues to manufacture his product." *Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1157 (9th Cir. 2007).

If such a case or controversy is found, courts have the discretion to decide whether to exercise their jurisdiction. *Principal Life Ins.*, 594 F.3d at 669. In determining whether to exercise jurisdiction, courts are encouraged to consider a number of factors, including: discouraging litigants from seeking declaratory judgment as a means of forum shopping; avoiding duplicative litigation; whether the action will settle all aspects of the controversy; whether the action will clarify the legal relations at issue; whether the action is brought to obtain a procedural advantage; the convenience of the parties; and availability and relative convenience of other remedies. *Id.* at 672.

Defendant seeks this relief under Federal Rule of Civil Procedure 12(b)(1), which provides a mechanism for contesting subject matter jurisdiction. The plaintiff bears the burden of showing that the Court has subject matter jurisdiction over its claims. *See WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, 472 F. Supp. 3d 649, 660 (N.D. Cal. 2020).

## IV. <u>ARGUMENT</u>

### A. <u>Personal Jurisdiction</u>

Plaintiff's complaint must be dismissed for want of personal jurisdiction over Defendant. Defendant has no meaningful ties to California such that it is subject to either general or specific personal jurisdiction. As to general jurisdiction, Defendant has never been "at home" in California—its home was, first, Illinois, and now, Texas.

As to specific jurisdiction, Defendant has *zero* suit-related contacts with California. The only contacts relevant to this declaratory judgment action are Defendant's correspondence directed exclusively to Washington state (the November 10, 2020 letter to Plaintiff's trademark counsel) and Virginia (the initiation of a TTAB proceeding involving Plaintiff's intent-to-use trademark application). The fact that Plaintiff might feel some effect of those actions in California is entirely

fortuitous, and the Supreme Court has decisively held that such contacts do not demonstrate purposeful direction to a forum.

**1. This Court Lacks General Personal Jurisdiction Over Defendant.**

That this Court lacks general jurisdiction over the Texas entity Impossible LLC is not meaningfully in question, but for completeness, Defendant briefly addresses the issue. General personal jurisdiction "requires affiliations 'so continuous and systematic as to render [the foreign corporation] essentially at home in the forum State, *i.e.*, comparable to a domestic enterprise in that State.'" *Daimler AG v. Bauman*, 571 U.S. 117, 133 n.11 (2014) (quoting *Goodyear*, 564 U.S. at 919). The Ninth Circuit has found this to be an "exacting standard." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1069 (9th Cir. 2015). In all but exceptional cases, a corporation is only at home in its formal place of incorporation or principal place of business. *Daimler*, 571 U.S. at 139 n.19; *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014) ("Only in an 'exceptional case' will general jurisdiction be available anywhere else."). Defendant's place of incorporation and principal place of business are both in Texas, not California. Runyon Decl. ¶¶ 2, 10-11. There is no basis, either alleged in the Complaint or in fact, to find this an exceptional case such that Defendant should be subject to general personal jurisdiction in a forum where it is neither incorporated nor resides.

**2. This Court Lacks Specific Personal Jurisdiction Over Defendant.**

Plaintiff appears to assert that Defendant is subject to specific personal jurisdiction arising from Defendant's minimal contacts with Plaintiff, a California entity. *See* Compl. ¶ 7 ("Impossible Foods' claim for relief arises directly from Impossible X's contacts with California, including its demands and threats made to Impossible Foods in California."). Such contacts are plainly insufficient to warrant the exercise of specific personal jurisdiction.

a. Plaintiff's Ties to California Are Insufficient to Create Jurisdiction Over Defendant.

At the outset, Defendant must address what appears to be Plaintiff's overarching theory of personal jurisdiction—that personal jurisdiction is appropriate in California merely because Defendant's trademark-related correspondence and TTAB proceeding were directed toward a California-based company. *See* Compl. ¶ 7 (referencing "demands and threats made to Impossible

Foods in California" and Defendant's challenge to "the right of Impossible Foods, a California-based company, to provide services under its IMPOSSIBLE trademark to California consumers and nationally"). This assertion is surprising, because the Supreme Court has been crystal clear that ***a plaintiff's*** ties to the forum are insufficient to create specific personal jurisdiction over a defendant. In *Walden v. Fiore*, the Supreme Court emphasized that the relationship between the defendant and the forum "must arise out of contacts that the 'defendant *himself*' creates." 571 U.S. at 284 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)) (emphasis in original). The *Walden* Court specified that the analysis "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there. . . . [T]he plaintiff cannot be the only link between the defendant and the forum." *Id.* at 285.

The Ninth Circuit has further clarified that a plaintiff's forum connections are not sufficient to satisfy the "express aiming" requirement of the "purposeful direction" test. In *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, the Ninth Circuit rejected a personal jurisdiction argument in which the plaintiff "rel[ied] on the strength of their own forum connections, coupled with evidence suggesting [defendant] knew of those connections and [plaintiff's] ownership of the logos' copyrights. *Walden* requires more." 874 F.3d 1064, 1069 (9th Cir. 2017). The court concluded that "while a theory of individualized targeting may remain relevant to the minimum contacts inquiry, it will not, on its own, support the exercise of specific jurisdiction," and affirmed the lower court's dismissal for lack of personal jurisdiction. *Id.* at 1070; *see also Zawitz v. Star Magic*, No. 20-CV-07121-DMR, 2021 WL 1788590, at *5 (N.D. Cal. May 5, 2021) ("Plaintiffs' allegations do not connect Defendants to California; they connect Defendants to [Plaintiffs], who are forum residents.").

As discussed in greater detail below, there are no relevant links between Defendant and California other than Plaintiff's presence in California. Plaintiff's presence is entirely outside of Defendant's control, and does not evidence that Defendant itself created ties to the forum. Rather, it is an entirely "fortuitous" connection, which *Walden* ruled insufficient to create personal jurisdiction. 571 U.S. at 286.

b. To Satisfy the "Arising Out of" Prong of the Specific Jurisdiction Test, the Court Must Consider Only Contacts Related to Defendant's Trademark Enforcement Efforts.

The test for specific jurisdiction requires that "the claim must be one which arises out of or relates to the defendant's forum-related activities." *Axiom*, 874 F.3d at 1068. Here, Plaintiff asserts only a single claim: declaratory judgment as to noninfringement of Defendant's trademarks. The Plaintiff has not asserted any claims based on Defendant's commercialization of its own products and services. Thus, the only forum-related activities from which such a claim could arise are Defendant's trademark correspondence and USPTO proceeding. Indeed, in a procedurally similar case, the Central District of California refused to consider a declaratory judgment defendant's sales in California to support specific personal jurisdiction:

> Even if sales of NPI's products in California satisfied all three requirements of the *Calder* effects test, these acts would not pass muster under the second prong of the specific jurisdiction test: that Arkon's claim be one which arises out of or relates to NPI's California-related activities. Arkon does not allege that NPI infringed *Arkon's* trade dress; if this were the case, then NPI's sales in California would constitute harm for Arkon. Instead, Arkon is seeking a declaratory judgment regarding the validity of NPI's trade dress and whether *Arkon's* products infringe on NPI's trademark. As NPI correctly notes, neither of these claims has anything to do with NPI's sales of its products in California. Because sales of NPI's products in California are unrelated to whether its trade dress registration is valid and whether Arkon infringes upon NPI's trade dress, Arkon's claims do not arise out of NPI's conduct in California.

*See Arkon Res., Inc. v. Nat'l Prods. Inc.*, No. CV 17-2976 PSG (PLAx), 2018 WL 1143816, at *4 (C.D. Cal. Jan. 3, 2018) (emphasis in original).

Further, in analogous patent noninfringement and invalidity declaratory judgment cases, the Federal Circuit has held that "[t]he relevant inquiry for specific personal jurisdiction purposes . . . becomes to what extent has the defendant patentee 'purposefully directed [such enforcement activities] at residents of the forum,' and the extent to which the declaratory judgment claim 'arises out of or relates to those activities.'" *Avocent Huntsville Corp. v. Aten Int'l. Co., Ltd.*, 552 F.3d 1324, 1332 (Fed. Cir. 2008) (quoting *Breckenridge Pharm., Inc. v. Metabolite Lab'ys., Inc.*, 444 F.3d 1356, 1363 (Fed. Cir. 2006)). This District has routinely applied that standard. *E.g.*, *Slack Techs., Inc. v. Phoji, Inc.*, No. 20-CV-01509-EMC, 2020 WL 4701174, at *4 (N.D. Cal. Aug. 13, 2020).

Thus, the limited contacts that Defendant may have as a result of its nationally accessible website, apps, and ecommerce (and indeed, they are limited, *see* Runyon Decl. ¶ 14) are of no moment. The only contacts relevant to the present declaratory judgment action are those related to Defendant's single trademark related letter directed to Washington and trademark proceeding in Virginia.

c. Defendant Has No Relevant Contacts with California.

Here, there are only two contacts relating to Defendant's enforcement of its trademarks against Plaintiff: (1) the November 10, 2020 letter to Plaintiff's trademark counsel, and (2) the opposition proceeding against intent-to-use App. No. 88855875. ***Neither were directed to California.*** The letter, which Defendant's counsel drafted after learning of the USPTO's publication of Plaintiff's trademark applications, was sent to Plaintiff's trademark counsel of record with the USPTO, who based in Seattle, Washington. *See* Weslow Decl. ¶ 4, Attach. 3. The opposition proceeding was filed with the TTAB, which is located in Alexandria, Virginia. All correspondence and service of documents in that proceeding were directed to the TTAB and/or to the Washington-based trademark counsel. Thus, Defendant has never once intentionally reached into California to assert its trademarks against Plaintiff.

Plaintiff may attempt to argue that these Washington and Virginia contacts indirectly reached into California because Plaintiff ultimately received the letter and filings through its out-of-state counsel. Defendant urges the Court to reject such an argument, as it flies in the face of the decision in *Walden* that contacts must relate to the defendant's acts, not where the plaintiff happens to be located. 571 U.S. at 285. But, even if the Court were to accept such an argument, neither contact is of the quality that would warrant the exercise of specific personal jurisdiction against Defendant.

As to Defendant's November 10, 2020 letter, the Ninth Circuit has held that a "cease and desist letter is not in and of itself sufficient to establish personal jurisdiction over the sender of the letter." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1208 (9th Cir. 2006); *see also Bright Lite Structures, LLC v. Balform, Ltd.*, No. 20-CV-00567-LB, 2020 WL 2218967, at *10 (N.D. Cal. May 7, 2020) ("[O]rdinarily cease-and-desist letters do not establish personal jurisdiction over the sender unless they are abusive, tortious, or wrongful."); *Elec. Frontier*

*Found. v. Glob. Equity Mgmt. (SA) Pty Ltd*., 290 F. Supp. 3d 923, 937 (N.D. Cal. 2017) (finding two demand letters to "have little significance on their own"); *Artec Grp., Inc. v. Klimov*, No. 15-CV-03449-RMW, 2015 WL 9304063, at *3 (N.D. Cal. Dec. 22, 2015) (finding that a cease and desist letter "does not constitute purposeful availment or direction"). The court cited "strong policy reasons to encourage cease and desist letters," including the avoidance of unnecessary litigation, which would be chilled if transmission of such a letter created jurisdiction in the forum to which it was sent. *Yahoo!*, 433 F.3d at 1208.

As to Defendant's initiation of a TTAB opposition proceeding, courts have routinely held that TTAB actions do not create personal jurisdiction in the forum in which the plaintiff resides. *See, e.g., Freud Am., Inc. v. Milwaukee Elec. Tool Corp*., No. 1:20CV109, 2020 WL 8248765, at *5 (M.D.N.C. June 17, 2020) (finding that neither the filing of a petition with the TTAB, nor mailing that petition to the plaintiff, confers specific personal jurisdiction); *Int'l Watchman Inc. v. Strap.ly*, No. 1:18 CV 1690, 2019 WL 1903557, at *4 (N.D. Ohio Apr. 29, 2019) ("There is no tangible 'injury' to Plaintiff in Ohio merely as a result of Watching Time filing a cancellation proceeding with the Trademark Trial and Appeals Board."); *Younique, L.L.C. v. Youssef*, No. 2:15-CV-00783-JNP-DBP, 2016 WL 6998659, at *8 (D. Utah Nov. 30, 2016) ("Younique seems to argue that Dr. Youssef's petition to the TTAB was purposefully directed at this forum because it may have some effect on a company based here. But any deliberate 'effect' resulting from the petition is directed at Younique's interstate trademark rights and not at this forum."); *Impact Prods., Inc. v. Impact Prods., LLC*, 341 F. Supp. 2d 1186, 1191 (D. Colo. 2004) ("As a general rule, . . . a defendant's reasonable, good faith actions to protect its alleged rights, including transmittal of cease and desist letters and litigation efforts [including a TTAB petition to cancel] against a forum resident, do not constitute 'express aiming' at the forum sufficient to establish the constitutionally required minimum contacts with the forum."); *SIBU, LLC v. Bubbles, Inc.*, No. 2:11-CV-00477 DN, 2011 WL 6028835, at *4 (D. Utah Dec. 5, 2011) (citing *Impact Prods.* in finding that filing a petition to cancel trademarks "does not create the required minimum contacts"). If the Court were to find that initiating a TTAB action created personal jurisdiction for a declaratory judgment action in the TTAB-defendant's home forum, any party that seeks recourse from the Board runs the risk of being haled into court

wherever a TTAB-defendant happens to reside. *Cf. Yahoo!*, 433 F.3d at 1209 ("We do not regard the service of documents in connection with a suit brought in a foreign court as contacts that by themselves justify the exercise of personal jurisdiction over a foreign litigant in a United States court. If we were to hold that such service were a sufficient basis for jurisdiction, we would be providing a forum-choice tool by which any United States resident sued in a foreign country and served in the United States could bring suit in the United States, regardless of any other basis for jurisdiction."). To suggest that filing an action in one forum, particularly an administrative agency, automatically creates jurisdiction in another forum turns the personal jurisdiction inquiry on its head.

If anything, as this District has found, a TTAB proceeding constitutes an act directed to Virginia, not to California—"[t]o find otherwise would contradict the Supreme Court's decision in *Walden v. Fiore*." *Delphix Corp. v. Embarcadero Techs., Inc*., No. 16-CV-00606-BLF, 2016 WL 4474631, at *8 (N.D. Cal. Aug. 25, 2016). While the Ninth Circuit reversed the *Delphix* decision in part, and ultimately found personal jurisdiction over the defendant, it did not disturb the lower court's holding that the TTAB action itself was not directed to California.[4] *Delphix Corp. v. Embarcadero Techs., Inc.*, 749 F. App'x 502, 506 (9th Cir. 2018). Instead, the Ninth Circuit specifically found that the defendant had taken actions *outside* of the TTAB proceeding, by conducting settlement talks in California regarding legal issues beyond the scope of the TTAB proceeding.[5] *Id.* The court concluded that those California settlement talks, *combined with the fact*

[4] In *Zero Motorcycles, Inc. v. Pirelli Tyre S.p.A.*, the Ninth Circuit issued an unpublished decision finding that personal jurisdiction was proper in California based on institution of trademark proceedings before the USPTO against a California-based entity. 517 F. App'x 589 (9th Cir. 2013). The Ninth Circuit found that "[b]ecause the Pirelli-Defendants should reasonably expect that any harm from the USPTO proceedings would occur in California, they can 'reasonably anticipate being haled into court' in California." *Id.* at 590. A year after the non-precedential decision issued, that exact argument—that a defendant should anticipate being haled into court in a particular forum simply because the plaintiff was based in the forum—was rejected by the Supreme Court in *Walden*, 571 U.S. at 284-86, as confirmed by the Ninth Circuit in *Axiom*, 874 F.3d at 1069 ("*Walden* requires more."). Defendant respectfully submits that the *Zero Motorcycles* decision was abrogated by the *Walden* decision, and should be afforded no weight.

[5] Notably, one of the judges on the panel dissented even in this narrow view of the specific personal jurisdiction. Judge Rawlinson, dissenting in part, believed that the settlement discussions were not

*that both parties were headquartered in California at the time*, were sufficient to support personal jurisdiction. *Id.*

Defendant does not argue that cease and desist letters and TTAB proceedings are irrelevant to personal jurisdiction in all contexts. However, in this context—when the *only* two contacts with the forum are independently insufficient, and each is connected to the forum in a tenuous and fortuitous manner—it *cannot* be that those two insufficient contacts become sufficient to establish personal jurisdiction when taken together.

d. Exercising Jurisdiction Over Defendant Is Unreasonable.

In view of Defendant's extremely limited connections to the forum, the present situation does not meet the final requirement for assertion of specific personal jurisdiction: that "the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Axiom*, 874 F.3d at 1068. In assessing reasonability, the Ninth Circuit considers the following factors:

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*, 905 F.3d 597, 607 (9th Cir. 2018). Many of these factors are neutral, given that the case involves federal trademark law and nationwide trademark rights, and thus the interests and laws are similar in many forums. However, several factors weigh against assertion of jurisdiction over Defendant.

First and foremost, as addressed above, Defendant's connections to the forum are extremely limited, tenuous, and fortuitous—stemming from *Plaintiff's* forum contacts, not Defendant's. Defendant's purposeful interjection into the forum is virtually nonexistent. It is fundamentally unfair to drag Defendant into court in California simply because it had a narrow trademark administrative proceeding with a party that happened to be located in California.

---

a relevant forum contact, as they would not have occurred in the absence of the TTAB enforcement action, which did not involve California. *Id.* at 509 (Rawlinson, J., concurring in part, dissenting in part).

Second, it is burdensome for Defendant to defend itself in California. Defendant is a relatively small Texas-based company, with limited resources. Runyon Decl. ¶ 17. It has no meaningful connections to California, and its long-standing legal counsel is not located in the forum. *Id.* ¶¶ 10-15. Defendant has had to engage new counsel for the limited purpose of responding to this motion, and will suffer significant expense in preparing for litigation here. *Id.* ¶ 17.

Third, there clearly exist other forums to bring this action. Defendant is a U.S. entity, and admits that it is subject to general personal jurisdiction in Texas. Plaintiff was well aware of the fact that other forums were available, and could have easily selected one in which personal jurisdiction would not be in dispute. It did not do so—instead it chose to forum-shop its own home district, despite Defendant's negligible contacts therewith.

Defendant submits that forcing it, a Texas entity with no meaningful relevant contacts with the forum, to litigate here offends the notions of fair play and substantial justice. Defendant respectfully requests that this action be dismissed for lack of personal jurisdiction.

**B. <u>Subject Matter Jurisdiction</u>**

If the case is not dismissed for lack of personal jurisdiction, Defendant respectfully submits that it should be dismissed for lack of subject matter jurisdiction. There is no case or controversy that warrants the Court's exercise of discretion to hear the declaratory judgment claim. Defendant concedes that there is an active but extremely limited dispute regarding Plaintiff's ability to register its intent-to-use (i.e., not yet in use) mark IMPOSSIBLE for "[p]roviding information about recipes, ingredients and cooking information; providing an online computer database to consumers featuring information about recipes, ingredients and cooking information." That dispute is being heard before the appropriate administrative agency, the TTAB, in Alexandria, Virginia. "[S]imply filing an opposition before the TTAB does not automatically create a case or controversy in the case pending before this Court." *Coleman v. Ellis*, No. C 19-8104 SBA, 2020 WL 7133772, at *4 (N.D. Cal. Mar. 13, 2020).

Admittedly, Defendant's November 10, 2020 letter addressed uses of the IMPOSSIBLE mark outside the opposed intent-to-use application in the context of Defendant's invitation to Plaintiff, as the junior trademark users, to pursue an agreement to avoid consumer confusion. But,

at the time Plaintiff filed this action five months after the letter, it had no real or reasonable apprehension of a dispute based on that letter. First, the letter never threatened litigation, it asked to "work amicably with Impossible Foods to avoid any future confusion." Weslow Decl. Attach. 3. Only if Plaintiff refused to reach an amicable agreement would it take "appropriate action to protect its rights, ***including filing notices of opposition before the Trademark Trial and Appeal Board.***" *Id.* (emphasis added). If, as addressed above, the filing of a TTAB action does not automatically create subject matter jurisdiction, the *threat* of filing a TTAB action cannot automatically create such jurisdiction.

Second, with the deadline to oppose Plaintiff's pending applications approaching, Defendant had a finite amount of time to decide whether and how to proceed. It chose to proceed with an opposition to only one of the three pending applications. Plaintiff was well aware that Defendant had chosen to proceed on a limited issue, as Plaintiff's other two applications were promptly allowed after the opposition deadline passed. In other words, to the extent Plaintiff perceived the November 10, 2020 letter as a threat, the threat had already come to fruition by December 9, 2020, when the opposition deadlines had passed with Defendant opposing only Plaintiff's single intent-to-use application. There was no reasonable basis for Plaintiff to have a continuing "apprehension" when it filed this action in April 2021.

Third, Plaintiff never actually substantively responded to Defendant's November 10, 2020 letter, and let nearly five months pass before it initiated the present suit. In *Coleman v. Ellis*, this District held that "[i]rrespective of whether [a] letter could reasonably be construed as threatening legal action," a significant amount of time passing between letter and legal action "undermines any claim of reasonable apprehension." 2020 WL 7133772, at *4. While the *Coleman* case addressed a far longer amount of time (three years), Plaintiff is a large company that boasts of its aggressive trademark portfolio. *See* Compl. ¶¶ 3, 16. That such an entity would let the letter languish for five months suggests that it did not actually perceive Defendant's letter as an actual threat of litigation.

Fourth, Plaintiff waited until *the day before its discovery responses were due* in the TTAB action to file this suit, and immediately upon filing, sought to stay the TTAB action. Weslow Decl. ¶ 9. This timing betrays Plaintiff's true intent in filing this declaratory judgment action: not to

resolve an imminent threat, but to avoid participating in the TTAB action in favor of a much more expansive litigation in this district, where it could (1) enjoy the benefits of being in its home forum, (2) significantly increase the financial burden on Defendant, and (3) attempt to place Defendant's senior trademarks in jeopardy. This appears to be blatant forum shopping. The Ninth Circuit has cautioned against forum shopping, and held that such a motive should be considered when deciding whether to exercise discretion to hear declaratory judgment claims. *See, e.g., Cont'l Cas. Co. v. Robsac Indus.*, 947 F.2d 1367, 1371 (9th Cir. 1991), *overruled on other grounds by Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220 (9th Cir. 1998) ("[T]he Court wished to discourage litigants from filing declaratory judgment actions as a means of forum shopping.").

Finally, Defendant respectfully requests that the Court consider the limited and carefully drafted language of the November 10, 2020 letter. Defendant took precautions to avoid creating an expansive dispute with an entity that could potentially respond as an overly aggressive "Trademark Bully," while still addressing its concerns about a much larger entity encroaching on its well-established senior trademarks. When it was ignored by that larger entity, Defendant chose an extremely measured approach, opposing only a single intent-to-use trademark application. Plaintiff responded to this cautious and restrained approach by dropping a declaratory judgment action on Defendant's head, in a far-flung jurisdiction, asking for sweeping declarations including cancellation of Defendant's trademarks. If the Court chooses to exercise its discretion in this case, it would encourage disproportionate and abusive litigation, which would in turn discourage smaller entities from even attempting to raise concerns about junior users' potential encroachment on their intellectual property rights.

The propriety of a declaratory judgment action must be considered under the totality of the circumstances. *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941) ("Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."). When viewed as a whole, it is clear that Plaintiff did not file this action because of a real and reasonable apprehension relating to its continued use of the IMPOSSIBLE marks. It filed this action to get out of the TTAB and place a

massive burden on its smaller adversary's shoulders. This is an improper use of the Declaratory Judgment Act, and Defendant respectfully requests that the Court use its discretion to decline to hear this case.

## V. CONCLUSION

In light of the foregoing argument, Defendant respectfully requests that the Court find that it lacks either personal jurisdiction over Defendant, or subject matter jurisdiction over Plaintiff's claim, and dismiss this case in its entirety.

Dated: June 11, 2021 By: /s/______________________

Kevin K. Eng

Markun Zusman Freniere Compton LLP

*Attorneys for Defendant*
*Impossible LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of June, 2021, the foregoing was electronically served on all counsel of record via CM/ECF.

By: /s/______________________

Kevin K. Eng