Kevin K. Eng (SBN 209036)
Alan Patrick Smith (SBN 298556)
MARKUN ZUSMAN FRENIERE COMPTON LLP
465 California Street, Suite 401
San Francisco, CA 94194
Telephone: (415) 438-4515
Facsimile: (415) 434-4505
keng@mzclaw.com

David E. Weslow (for admission *pro hac vice*)
Adrienne J. Kosak (for admission *pro hac vice*)
WILEY REIN LLP
1776 K Street NW
Washington, DC 20006
Telephone: (202) 719-7000
Facsimile: (202) 719-7049
dweslow@wiley.law
akosak@wiley.law

*Attorneys for Defendant Impossible LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMPOSSIBLE FOODS INC., <br><br> Plaintiff, <br><br> v. <br><br> IMPOSSIBLE X LLC, <br><br> Defendant. | Case No. 3:21-cv-2419-BLF <br><br> DEFENDANT'S OPPOSITION TO MOTION FOR LEAVE TO PURSUE JURISDICTIONAL DISCOVERY, FOR ENLARGING TIME TO OPPOSE THE MOTION TO DISMISS, AND FOR SHORTENING TIME FOR HEARING THIS MOTION |

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ...................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................ ii

I.   RESPONSE TO PLAINTIFF'S PURPORTED "EVIDENCE." ............................... 2

II.  THERE IS NO BASIS FOR JURISDICTIONAL DISCOVERY. ............................ 4

    A.   The Discovery Plaintiff Seeks Is Irrelevant to the Narrow Question of Specific Jurisdiction Relating to Plaintiff's Declaratory Judgment Claim. ..................... 4

    B.   Plaintiff Attempts to Gloss Over Specific Jurisdiction Requirements with an Untenable Personal Jurisdiction Argument. ....................................................... 7

    C.   Plaintiff's "Colorable Basis" for Jurisdictional Discovery Is Too Dated to Suggest Any Relevant Information Exists. ......................................................... 9

III. MEET AND CONFER PROCESS ........................................................................... 10

IV.  CONCLUSION ......................................................................................................... 11

## **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Alexandria Real Est. Equities, Inc. v. RUNLABS (UK) Ltd.*,
  No. 18-CV-07517-LHK, 2019 WL 4221590 (N.D. Cal. Sept. 5, 2019)..................8

*Am. W. Airlines, Inc. v. GPA Grp., Ltd.*,
  877 F.2d 793 (9th Cir. 1989) ...........................................................................4

*Arizona Yagé Assembly v. Barr*,
  No. 3:20-CV-03098-WHO, 2020 WL 5629833 (N.D. Cal. Sept. 21, 2020) ........7, 11

*Arkon Res., Inc. v. Nat'l Prods. Inc.*,
  No. CV 17-2976 PSG, 2018 WL 1143816 (C.D. Cal. Jan. 3, 2018) ........................5

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
  874 F.3d 1064 (9th Cir. 2017) ......................................................................5, 8

*Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*,
  223 F.3d 1082 (9th Cir. 2000) ..........................................................................8

*Boschetto v. Hansing*,
  539 F.3d 1011 (9th Cir. 2008) ......................................................................4, 10

*Cobalt Grp., Inc. v. Spangenberg*,
  No. CV 08-1195-GHK (FFMx), 2008 WL 11338435 (C.D. Cal. June 10, 2008)...................10

*Corcera Sols., LLC v. Razor, Inc.*,
  No. 5:13-CV-05113-PSG, 2014 WL 587869 (N.D. Cal. Feb. 14, 2014) .................5

*Dolco Packaging Corp. v. Creative Indus., Inc.*,
  No. 86-3078 WMB (Bx), 1986 WL 84366, 1 U.S.P.Q.2D 1586 (C.D. Cal. Oct. 10, 1986) ........................................................................................................8

*Mehr v. Féderation Internationale de Football Assocs.*,
  115 F. Supp. 3d 1035 (N.D. Cal. 2015) ............................................................6

*Panavision Int'l, L.P. v. Toeppen*,
  141 F.3d 1316, 1322 (9th Cir. 1998) ................................................................8

*San Diego Cnty Credit Union v. Citizens Equity First Credit Union*,
  325 F. Supp. 3d 1088 (S.D. Cal. 2018) ............................................................9

*Slack Techs., Inc. v. Phoji, Inc.*,
  No. 20-CV-01509-EMC, 2020 WL 4701174 (N.D. Cal. Aug. 13, 2020) ................5

DEFENDANT'S OPPOSITION TO MOTION FOR LEAVE TO PURSUE JURISDICTIONAL DISCOVERY, FOR ENLARGING TIME TO OPPOSE THE MOTION TO DISMISS, AND FOR SHORTENING TIME FOR HEARING THIS MOTION

*Steel v. United States*,
    813 F.2d 1545 (9th Cir. 1987) ...........................................................................................10

*Walden v. Fiore*,
    571 U.S. 277 (2014) ........................................................................................................8, 9

*Zawitz v. Star Magic*,
    No. 20-CV-07121-DMR, 2021 WL 1788590 (N.D. Cal. May 5, 2021) ..................................8

**OTHER AUTHORITIES**

Fed. R. Civ. P. 30(b)(6) ...............................................................................................................6

Plaintiff Impossible Foods, Inc.'s ("Plaintiff") motion for jurisdictional discovery is a transparent attempt to prolong this dispute and keep Defendant Impossible LLC ("Defendant") in a foreign court to which it has no meaningful connections. The motion attempts to create the impression that *any* contacts at *any* time between Defendant or its principal and California will establish jurisdiction. This is contrary to one of the most fundamental principles of personal jurisdiction law: for a party to be subject to a court's jurisdiction, it must either have contacts with the forum that are so continuous and substantial that it is considered to be at home in that jurisdiction (general jurisdiction), *or* the asserted claim must relate to the forum contacts (specific jurisdiction). Plaintiff has asserted only specific personal jurisdiction (rightly so, as Defendant is a Texas corporation headquartered in Texas, and therefore Plaintiff cannot meet the Ninth Circuit's exacting standards for general jurisdiction), and as such, the only California contacts that are relevant to this dispute are those related to the single asserted claim, seeking declaratory judgment that Plaintiff's junior use of IMPOSSIBLE does not infringe Defendant's senior statutory and common law trademark rights.

Defendant explained at length in its motion to dismiss (Dkt. No. 11) that, in the context of a declaratory judgment claim of noninfringement, the only relevant forum contacts are those relating to the defendant's efforts to enforce its intellectual property. Indeed, California courts considering similar claims have specifically rejected personal jurisdiction based on a defendant's efforts to commercialize products offered under its trademarks in California, because the *defendant's* commercialization efforts have nothing to do with whether the *plaintiff's* products infringe. Plaintiff made no effort to address this case law, nor did it make any effort to tie either its "uncovered" "evidence" or its proposed discovery requests to its declaratory judgment claim. Instead, Plaintiff merely asserted that these "general business contacts" render it "reasonable for IX to defend this action in California." Mot. at 7. This is a blatant attempt to conflate general and specific jurisdiction, all based on cherry-picked social media posts from years ago, so as to muddy a straightforward personal jurisdiction dispute.

To be clear, Defendant is opposing jurisdictional discovery because of the undue burden that Plaintiff is intentionally heaping on a smaller, senior trademark owner—not because Defendant has

1
DEFENDANT'S OPPOSITION TO MOTION FOR LEAVE TO PURSUE JURISDICTIONAL
DISCOVERY, FOR ENLARGING TIME TO OPPOSE THE MOTION TO DISMISS, AND
FOR SHORTENING TIME FOR HEARING THIS MOTION

anything to hide.  To avoid any implication to the contrary, Defendant has submitted herewith a declaration of its principal, Joel Runyon.  In this declaration, Mr. Runyon explains his *personal* ties to California, which were not addressed in the motion to dismiss for the simple reason that they are irrelevant.  Mr. Runyon's time in California, which began before Plaintiff alleges it adopted its mark and ended years before this purported dispute arose, has no bearing on the narrow issue of specific personal jurisdiction, and certainly does not justify the broad discovery Plaintiff seeks.

## I.   RESPONSE TO PLAINTIFF'S PURPORTED "EVIDENCE."

As explained further below, none of the "evidence" Plaintiff "uncovered" regarding Defendant and its principal are relevant to the question of specific jurisdiction before the Court.  However, to resolve this issue expediently, Defendant provides the following information, substantiated by the attached declaration of Joel Runyon ("Runyon Decl.").

Beginning in 2014, Defendant's principal Joel Runyon began living part-time in San Diego, and maintained an apartment there in his personal capacity.[1]  Runyon Decl. ¶ 4.  From 2014 to 2016, he split his time primarily between San Diego and New York City, all while traveling extensively internationally.  *Id.* ¶¶ 4, 9.  During this time, Defendant (including its predecessors) had no established office in California, was not registered to do business in California, and was not obligated to and did not pay business taxes in California.  *Id.* ¶¶ 1, 2, 14.  In 2016, Mr. Runyon gave up his apartment in San Diego to live as a "digital nomad," working remotely from numerous international locations.  *Id.* ¶ 12.  He has not returned to California for more than short-term visits since 2016.  *Id.* ¶ 11.

In 2018, Mr. Runyon returned to the United States, where he intended to live more permanently.  *Id.* ¶ 13.  After much consideration (including a *visit* to California), Mr. Runyon resolved to establish his permanent residence in Austin, Texas.  *Id.* ¶¶ 13-15.  Mr. Runyon also established Defendant in Texas, and merged Defendant's Illinois-based predecessor Impossible X LLC into Defendant.  Dkt. No. 11-1 Attach. 1.

---

[1] It bears noting that Plaintiff has not proffered, let alone demonstrated, that Mr. Runyon's activities should be imputed to Defendant.

*Plaintiff already knows all relevant aspects of this timeline*. Plaintiff *knows* that for this entire time period addressed above, Defendant and its predecessors were domiciled in either Illinois or Texas. *See* Dkt. No. 11-1 Attach. 1 (incorporation papers for Defendant and all predecessors-in-interest). Plaintiff *knows* that Mr. Runyon lived and worked as a "digital nomad"—Plaintiff clearly spent an extensive amount of time combing Mr. Runyon's social media accounts and therefore saw him working and posting from across the world subsequent to the cherry-picked posts from San Diego. Runyon Decl. Ex. 2-6. And Plaintiff *knows* that Mr. Runyon's time in California ended years before this purported dispute arose in November 2020. *See* Dkt. No. 1 ¶¶ 7, 29 (alleging that a dispute arose out of Defendant's November 2020 statements to Plaintiff). Again, despite poring over Mr. Runyon's social media presence going back to 2014, Plaintiff neglected to mention the countless posts showing Mr. Runyon in Texas for the last three years, and out of California much longer than that. Runyon Decl. Exs. 2-6. Plaintiff even cited one of Mr. Runyon's personal social media posts from the summer of 2018, in which he describes what was clearly a *visit* to California ("San Diego has been great to 'reset' at"), and his decision *not* to establish business there. Mot. Ex. 10.

The LinkedIn page proffered by Plaintiff to show Defendant's "headquarters" in San Diego is simply wrong. It is wrong today, it was wrong in 2020 when the purported dispute arose, and it was wrong when the page was established. Neither Defendant nor its predecessors have ever had an office, let alone headquarters, in California. Runyon Decl. ¶ 6. The address on the LinkedIn page (600 B Street, San Diego, CA) has never been associated with Impossible LLC or any of its predecessors. *Id.* ¶ 7. Mr. Runyon does not recall when the LinkedIn page was established or why it listed that address, *id.* ¶¶ 5, 8, and, until Plaintiff brought the LinkedIn page to Defendant's attention, Defendant had no idea that the page so stated. Defendant's lack of awareness is understandable, as the LinkedIn page is clearly not in use. *Id.* ¶ 8. The page has only 81 followers (compare to Defendant's Twitter account, which has more than 4,000 followers), and has never had a single post by Defendant (compare to Defendant's Twitter account, which has 1,656 posts). *Id.* ¶ 8 and Ex. 1. Further, the page identifies the business entity as "Impossible Ventures," *which ceased to exist in 2016*. *See* Dkt. No. 11-1 Attach. 1 (March 14, 2016 filing with the Illinois Secretary of

State, changing the entity name from Impossible Ventures LLC to Impossible X LLC).  The page is erroneous, and facially outdated, and does not evidence Defendant's headquarters or how Defendant holds itself out to consumers.  And once again, Plaintiff *knows* this—if Plaintiff genuinely believed that this single LinkedIn page accurately reflected Defendant's headquarters, it would have asserted general personal jurisdiction, which it has not.

None of the foregoing is inconsistent with Defendant's motion to dismiss.  Defendant's argument and evidence demonstrated that Defendant is not subject to general personal jurisdiction in California and addressed the contacts relevant to specific personal jurisdiction which, as addressed both in Defendant's motion and below, are quite narrow.  Dkt. No. 11.  The fact that Mr. Runyon personally maintained a part-time home in California, *years* before this dispute arose and even before Plaintiff alleges it adopted its marks, *see* Dkt. No. 1 ¶ 13, is not relevant to either of those questions, and Defendant is not subject to personal jurisdiction in this forum.

## II. THERE IS NO BASIS FOR JURISDICTIONAL DISCOVERY.

Jurisdictional discovery is appropriate when "pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008).  On the other hand, jurisdictional discovery is *inappropriate* "when it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction." *Am. W. Airlines, Inc. v. GPA Grp., Ltd*., 877 F.2d 793, 801 (9th Cir. 1989).  This present case falls into the latter scenario; the information Plaintiff seeks will have no bearing on the jurisdiction it asserts, Plaintiff has no valid reason to believe that any facts that would be relevant to jurisdiction exist, and therefore jurisdictional discovery should be denied.

### A. The Discovery Plaintiff Seeks Is Irrelevant to the Narrow Question of Specific Jurisdiction Relating to Plaintiff's Declaratory Judgment Claim.

Plaintiff would have the Court believe that any connection at any time between Defendant or Mr. Runyon and the state of California is relevant to this dispute.  But the jurisdictional issue in this matter is actually quite narrow.  Plaintiff asserts only specific personal jurisdiction over Defendant (*e.g.* Mot. at 8 ("Jurisdictional Discovery is Required to Resolve Disputes of Material

Fact Related to Specific Personal Jurisdiction"); Dkt. No. 1 (Complaint) ¶ 7), which requires that "the claim must be one which arises out of or relates to the defendant's forum-related activities." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (quoting *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)). As Defendant explained in some detail in its motion to dismiss (and Plaintiff made no effort to address here), in the context of a claim for declaratory judgment of noninfringement, ***the only relevant contacts are those related to the defendant's trademark enforcement efforts***. *See* Dkt. No. 11 at 9-11; *see also, e.g.*, *Arkon Res., Inc. v. Nat'l Prods. Inc.*, No. CV 17-2976 PSG (PLAx), 2018 WL 1143816, at *4 (C.D. Cal. Jan. 3, 2018); *Slack Techs., Inc. v. Phoji, Inc.*, No. 20-CV-01509-EMC, 2020 WL 4701174, at *4 (N.D. Cal. Aug. 13, 2020).

None of the purported evidence forming Plaintiff's "colorable basis" for jurisdictional discovery speaks to Defendant's trademark enforcement efforts. Even accepting Plaintiff's strained interpretation of the "evidence" as true (which Defendant does not; as addressed above, Mr. Runyon's personal time spent in California from 2014 to 2016 does not evidence that Defendant had a significant physical presence there at any time), they all speak to Defendant's efforts to commercialize its own products and services in California (and some bear no relevance at all—this District has held that use of social media "cannot be found persuasive" to a personal jurisdiction inquiry, *see Corcera Sols., LLC v. Razor, Inc.*, No. 5:13-CV-05113-PSG, 2014 WL 587869, at *3 (N.D. Cal. Feb. 14, 2014)). Plaintiff does not claim that Defendant is trying to commercialize infringing products in California; it claims the exact opposite, that *Plaintiff's* commercialization efforts do not infringe Defendant's senior trademarks. California courts have specifically found that a defendant's commercialization efforts are irrelevant to personal jurisdiction in the context of noninfringement declaratory judgment claims. *See Arkon*, 2018 WL 1143816, at *4 ("Arkon is seeking a declaratory judgment regarding the validity of NPI's trade dress and whether *Arkon's* products infringe on NPI's trademark. As NPI correctly notes, neither of these claims has anything to do with NPI's sales of its products in California. . . . Because sales of NPI's products in California are unrelated to whether its trade dress registration is valid and whether Arkon infringes upon NPI's trade dress, Arkon's claims do not arise out of NPI's conduct in California." (emphasis in original)).

Likewise, Plaintiff's requested discovery does not target relevant information. Instead of trademark enforcement efforts, Plaintiff inquires generally into any and all California contacts, without any explanation of how they implicate specific personal jurisdiction in this matter. For instance, Plaintiff's requests for production[2] seek information regarding when and where Defendant has conducted business and promoted its products, California sales and customers, events Defendant has attended in California, employees in California, and forum selection clauses in third-party agreements specifying California as the chosen forum. Mot. Ex. 16. Again, perhaps these requests would be relevant if Plaintiff alleged that Defendant was selling infringing products in California, but they bear no relevance to the claim that Plaintiff is *not* infringing Defendant's marks. Plaintiff has no basis to claim these requests will illuminate the issue of specific jurisdiction as to Plaintiff's declaratory judgment claim.

This District considered a strikingly similar discovery request in *Mehr v. Féderation Internationale de Football Assocs.*, 115 F. Supp. 3d 1035 (N.D. Cal. 2015). In *Mehr*, the plaintiffs sought jurisdictional discovery to support a claim of specific personal jurisdiction. *Id.* at 1054. The court acknowledged its broad discretion to grant jurisdictional discovery, but denied discovery nonetheless, because it was "clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction." *Id.* Specifically, the court found that the discovery, "e.g., information regarding business or potential business conducted by FIFA in California, including advertising, marketing, and sales; communications by FIFA employees with individuals in California; and training and seminars conducted by FIFA in California, attended by California residents" related to *general* personal jurisdiction, which the plaintiffs did not assert and could not show. *Id.* "[Plaintiffs] have established no connection between any claim asserted in this case and any action by [Defendant] in California, and have provided no indication as to what discovery might possibly demonstrate facts sufficient to constitute a basis for jurisdiction." *Id.*

---

[2] Plaintiff also requests a three-hour deposition under Rule 30(b)(6). However, Plaintiff did not provide a proposed notice of deposition in compliance with Rule 30(b)(6) "describ[ing] with reasonable particularity the matters for examination." Defendant has no particular information as to what Plaintiff intends to inquire into during the deposition.

So too, here, Plaintiff's proposed discovery inquires into general contacts between Defendant and California (physical locations, promotional and marketing activity, sales and customers, events attended, employees, forum selection clauses)—it even characterizes the "evidence" giving rise to this discovery as "general business contacts," Mot. at 7—with no tie to the declaratory judgment claim at issue. Without such a tie, the requested discovery is not pertinent to the allegations of specific personal jurisdiction in this case, and Plaintiff's motion for discovery should be denied.

### B. **Plaintiff Attempts to Gloss Over Specific Jurisdiction Requirements with an Untenable Personal Jurisdiction Argument.**

To excuse its conflation of general and specific personal jurisdiction, Plaintiff puts forth a jurisdiction argument that it describes as "amply sufficient to establish this Court's jurisdiction" over Defendant and posits that if Defendant tries to resist this argument, Plaintiff should be entitled to its broad, untethered discovery. *Id.* at 7. Beyond the fact that this position does not comport with the law, *see, e.g.*, *Arizona Yagé Assembly v. Barr*, No. 3:20-CV-03098-WHO, 2020 WL 5629833, at *13 (N.D. Cal. Sept. 21, 2020) (denying discovery "based on speculation [which] would be nothing more than a fishing expedition"), Plaintiff's "amply sufficient" basis is untenable under long-established Supreme Court precedent, and strongly suggests that Plaintiff never had a good-faith basis to believe Defendant is subject to personal jurisdiction in this forum.

The contacts that Plaintiff alleges gave rise to this purported dispute were a demand letter and a Trademark Trial and Appeal Board ("TTAB") opposition proceeding. *See* Mot. at 7; *see generally* Dkt. No. 1. As Defendant explained in its motion to dismiss, neither of these were directed to California—the letter was sent to Washington, and the opposition was filed with the TTAB in Virginia. Dkt. No. 11 at 11; Mot. Ex. 1 (November 10, 2020 demand letter sent to Seattle, Washington), Ex. 2 (TTAB Notice of Opposition).

To get around the fact that Defendant never actually reached into California for any reason relevant to this dispute, Plaintiff argues that Defendant purposefully availed itself of the forum through *targeting* of a California resident. Mot. at 6-7. This is a clearly disingenuous argument that Plaintiff knows cannot succeed. Plaintiff, a sophisticated party with sophisticated counsel, is

surely familiar with the Supreme Court's ruling in *Walden v. Fiore* in which the Supreme Court ruled that the personal jurisdiction inquiry "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." 571 U.S. 277, 284 (2014). And Plaintiff is surely also familiar with the Ninth Circuit's further specification that "*Walden* requires more" than just a plaintiff's connection to the forum coupled with a defendant's knowledge of those connections. *Axiom*, 874 F.3d at 1069. If Plaintiff was somehow not familiar with this precedent prior to this case, it became familiar when Defendant filed its motion to dismiss. *See* Dkt. No. 11 at 8-9.

If Plaintiff knows of *Walden* and *Axiom*, it must also know that the case on which it relies heavily in this motion, *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082 (9th Cir. 2000), is no longer good law. Indeed, this District has specifically recognized that *Walden* overruled *Bancroft* with respect to its individualized targeting holding. *See Zawitz v. Star Magic*, No. 20-CV-07121-DMR, 2021 WL 1788590, at *6 (N.D. Cal. May 5, 2021) (finding that two cases that relied on *Bancroft* were abrogated by *Walden*—"the Ninth Circuit's reasoning in . . . *Bancroft* . . . is simply not consistent with the Supreme Court's decision in *Walden*"); *Alexandria Real Est. Equities, Inc. v. RUNLABS (UK) Ltd.*, No. 18-CV-07517-LHK, 2019 WL 4221590, at *10 (N.D. Cal. Sept. 5, 2019) ("*Bancroft* predates the United States Supreme Court's *Walden* decision, and *Walden* altered the operative framework for specific jurisdiction. *See Walden*, 571 U.S. at 289 (reversing lower court decision that 'knowledge of respondents' 'strong forum connections,' combined with the conclusion 'that respondents suffered foreseeable harm,' established specific jurisdiction)."). And yet, Plaintiff relies on *Bancroft* for the precise points that *Walden* overruled. *E.g.*, Mot. at 6 ("The 'purposeful availment' prong is 'satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at the plaintiff whom the defendant knows to be a resident of the forum state.'" (citing *Bancroft*, 223 F.3d at 1087)); *id.* at 7 (alleging that "the test" for personal jurisdiction is where the plaintiff felt the effects of an act, not where defendant actually committed that act).

Likewise, Plaintiff's references to *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998), and *Dolco Packaging Corp. v. Creative Industries, Inc.*, No. 86-3078 WMB (Bx),

1986 WL 84366, 1 U.S.P.Q.2D 1586 (C.D. Cal. Oct. 10, 1986), fail, as they also predate and are inconsistent with *Walden*.

Plaintiff's only personal jurisdiction citation that post-dates *Walden* is *San Diego County Credit Union v. Citizens Equity First Credit Union*, 325 F. Supp. 3d 1088 (S.D. Cal. 2018), and it is unclear exactly what Plaintiff cite *Citizens Equity* to demonstrate with respect to the particular facts of this case. To the extent Plaintiff alleges that *Citizens Equity* stands for the proposition that general business interests can be used to support specific personal jurisdiction, that allegation is simply wrong. There, the court did not look to "general" forum contacts, and instead looked to the "facts and impetus underlying the cancellation proceeding" that the plaintiff alleged gave rise to the dispute. *Id.* at 1099-1100. Those facts revealed that the defendant was prompted to file the cancellation proceeding based on the defendant's California-based employees' encounters with the plaintiff's marks in California. *Id.* at 1099-1100. In contrast, in this case, there is already uncontroverted evidence of record that Defendant "became aware of Impossible Foods Inc. based on its nationwide product offerings and promotions." Dkt. No. 11-1 ¶ 16. Thus, there is no basis to argue that Defendant's limited "general business contacts" in California gave rise to this dispute.

Moreover, the *Citizens Equity* defendant argued that its TTAB filing could not form the basis for personal jurisdiction as it was not purposefully directed at California. *Id*. at 1099. *Neither the plaintiff nor the court disagreed with this argument*, and instead looked beyond the TTAB filing for facts tying the defendant's California contacts to the claim at issue. This directly undermines Plaintiff's reliance on the TTAB action to establish personal jurisdiction here.

Plaintiff's only argument that its declaratory judgment claim is tied to California contacts utterly fails, based on long-settled Supreme Court precedent. Plaintiff cannot parlay this unfounded argument into broad discovery into "general business contacts," in the hopes of digging up a better argument.

C. **Plaintiff's "Colorable Basis" for Jurisdictional Discovery Is Too Dated to Suggest Any Relevant Information Exists.**

The fact that Plaintiff's discovery is untethered to Plaintiff's narrow personal jurisdiction argument should resolve this matter. However, even if the Court were to look at contacts unrelated

to the declaratory judgment claim, the discovery would still be inappropriate because the "evidence" underlying Plaintiff's "colorable basis" for discovery is dated years before the purported dispute arose. "[C]ourts must examine the defendant's contacts with the forum at the time of the events underlying the dispute when determining whether they have jurisdiction." *Steel v. United States*, 813 F.2d 1545, 1549 (9th Cir. 1987).

Although Plaintiff's motion papers bury the dates of Plaintiff's purported "evidence," and Plaintiff has failed to note the years of subsequent social media posts confirming Mr. Runyon's location outside of California, in fact Mr. Runyon's presence in California ended in 2016—five years before Plaintiff filed this action, and four years before Defendant's November 2020 letter that Plaintiff claims gave rise to this dispute. At the very least, Plaintiff appears to acknowledge that Defendant has not been based in California since 2018. *See* Mot. Ex. 10 (specifically stating that Mr. Runyon was leaving California and was not inclined to grow his business there). Based on the passage of time between Mr. Runyon's departure from California and the present purported dispute, Mr. Runyon as an individual would not be subject to broad personal jurisdiction in California. *See Cobalt Grp., Inc. v. Spangenberg*, No. CV 08-1195-GHK (FFMx), 2008 WL 11338435, at *3-4 (C.D. Cal. June 10, 2008) (rejecting a claim of general personal jurisdiction over a defendant who had moved from California to Texas two years prior). If Mr. Runyon's personal contacts with California would not render him subject to personal jurisdiction, his contacts would certainly not render *Defendant* subject to personal jurisdiction in California. *See id.* (finding no personal jurisdiction over a limited liability company based on its principal's contacts, when those contacts did not give rise to personal jurisdiction over the principal himself). Because there is no real dispute over the fact that Defendant has been settled in Texas since 2018, the relevant facts are uncontroverted, and jurisdictional discovery is inappropriate. *See Boschetto*, 539 F.3d at 1020 (finding jurisdictional discovery appropriate to investigate "controverted" pertinent facts).

### III. MEET AND CONFER PROCESS

In compliance with the Court's July 6, 2021 Order (Dkt. No. 22), the parties met and conferred telephonically on July 13, 2021 regarding jurisdictional discovery. Although Defendant asserts that *any* jurisdictional discovery would be an inappropriate burden on Defendant, in the

interest of compromise and preserving judicial resources, counsel for Defendant suggested a possible compromise of limiting the proposed discovery to written discovery on the issue of Defendant's trademark enforcement efforts in California. Counsel for Plaintiff declined this potential compromise.

## IV.  CONCLUSION

Plaintiff's motion for discovery is ill-founded and disingenuous and reveals Plaintiff's true purpose in bringing this action against a smaller, senior trademark owner. It contradicts fundamental personal jurisdiction law for Plaintiff to argue that it is entitled into broad discovery into Defendant's "general business contacts," despite asserting only specific personal jurisdiction over a declaratory judgment claim. The information relevant to that assertion is narrow, and neither Plaintiff's requested discovery nor its "evidence" supporting that discovery have any tie to the claim Plaintiff asserts. Defendant therefore respectfully requests that jurisdictional discovery be denied.

Dated: July 13, 2021       By:    */s/ Alan Patrick Smith*

Kevin K. Eng
Alan Patrick Smith
Markun Zusman Freniere Compton LLP
465 California Street, Suite 401
San Francisco, CA 94194

*Attorney for Defendant
Impossible LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 13th day of July, 2021, the foregoing was electronically served on all counsel of record via CM/ECF.

By: /s/ *Alan Patrick Smith*

Alan Patrick Smith