DAVID H. KRAMER, State Bar No. 168452
JOHN L. SLAFSKY, State Bar No. 195513
BRANDON P. LEAHY, State Bar No. 298064
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, California 94304-1050
Telephone: (650) 493-9300
Facsimile:  (650) 565-5100
dkramer@wsgr.com
jslafsky@wsgr.com
bleahy@wsgr.com

Attorneys for Plaintiff
IMPOSSIBLE FOODS INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IMPOSSIBLE FOODS INC. a Delaware corporation,<br><br>          Plaintiff,<br><br>     v.<br><br>IMPOSSIBLE X LLC, an Illinois limited liability company,<br><br>          Defendant. | Case No. 5:21-cv-02419-BLF (SVK)<br><br>**PLAINTIFF'S REPLY IN FURTHER SUPPORT OF MOTION FOR LEAVE TO PURSUE JURISDICTIONAL DISCOVERY**<br><br>Hearing Date:   July 21, 2021<br>Time:               9:30 a.m.<br><br>Judge: Hon. Susan van Keulen |

**INTRODUCTION**

Defendant Impossible X LLC's opposition to this motion only highlights the need for jurisdictional discovery. Impossible X ("IX") has now filed a declaration with numerous facts inconsistent with the public record, further calling into question the accuracy of IX's representations to the Court about contacts with California. Yet IX remains unwilling to make itself available for even modest, directed discovery.[1]

IX's motion to dismiss this lawsuit claimed that it "has no relevant contacts with California," that California is a "far-flung jurisdiction" and that thus "it is fundamentally unfair to drag Defendant into Court in California …." Dkt. No. 11 at 11, 14, 17. Plaintiff, however, promptly identified public information indicating IX, in fact, is headquartered in California,[2] that IX's founder has lived in California, that IX or its principal has paid taxes in California, and that IX for years has marketed services from California directly to people in California. *See* Dkt. No. 19-1 (Slafksy Dec. ¶¶ 7–14). Accordingly, Plaintiff requested limited jurisdictional discovery, and Judge Labson Freeman extended the briefing schedule for the Motion to Dismiss "so that the Court can rule on the motion with a more developed record." Dkt. No. 24. Judge Labson Freeman will hear the Motion to Dismiss on October 28.

IX now argues that while it may indeed have contacts with California, Plaintiff should take at its word that there are no others, and that in any event those contacts are irrelevant to the Court's jurisdictional analysis unless they are specifically "related to [IX's] efforts to enforce the particular trademarks at issue." Dkt. No. 23 at 2. That argument is contradicted by well-established Ninth Circuit law. In fact, personal jurisdiction analysis examines all of the defendant's contacts with California: the defendant's express aiming of threats at a California-based plaintiff; whether the

---

[1] By order dated July 6, 2021, the Court directed the parties to meet and confer regarding the reasonable scope and timing of jurisdictional discovery. Dkt. No. 22. Plaintiff's counsel requested such a meeting twice, on July 6 and July 8, but IX's counsel only made themselves available at the eleventh-hour: during the afternoon of July 13, the deadline for opposition to this motion. During this call IX offered a "compromise" in which Plaintiff would be precluded from taking any discovery unrelated to trademark enforcement and IX would not make itself available for a deposition. Plaintiff declined the offer. Leahy Dec. ¶ 2.

[2] *See, e.g.*, <https://www.linkedin.com/company/impossiblex/about/> (accessed most recently on July 15, 2021); Docket No. 19-6 (Slafsky Dec., Ex. 5).

claims for declaratory relief arise out of the defendant's California contacts; and, significantly, the extent of the defendant's purposeful injection into California generally.

While IX now concedes it has contacts with California, it insists they "are extremely limited, tenuous and fortuitous" and therefore "to litigate here offends the notions of fair play and substantial justice." Dkt. No. 11 at 14. At the same time, IX seeks to shield itself from questioning, on the ground that the extent of its various California contacts has no bearing on personal jurisdiction. IX cannot have it both ways.

Given the inconsistencies between IX's representations to the Court and readily available information showing significant IX contacts with California, Plaintiff is merely asking that IX respond to ten document requests[3] and appear for a single, three-hour, remote deposition. These are hardly "broad and untethered" discovery demands, as IX alleges, but instead are targeted at key facts bearing on discrete issues the Court's jurisdictional inquiry.

## ARGUMENT

### I. IX'S FACTUAL STATEMENTS MERELY RAISE FURTHER QUESTIONS

IX's opposition only raises additional questions about its contacts with California:

**Ongoing Statement That It Is Headquartered Here**: As to the LinkedIn profile stating IX is headquartered in California, IX now claims it did not realize such a statement is posted online. "Mr. Runyon does not recall when the LinkedIn page was established or why it listed that address." Dkt. No. 26 at 3. Yet Mr. Runyon "presumes" he was the one who set up the page. Dkt. No. 26-1 (Runyon Dec. ¶ 5). His own profile on LinkedIn has apparently linked to the page for years. The page specifically refers to IX. And it includes promotional language mirroring the language on various IX websites, the accuracy of which is not disputed.[4]

**IX's Recent Promotion of Its IMPOSSIBLE Trademark in California**: IX seeks to explain away its contacts with California as "dated" and "from years ago." Similarly, Mr. Runyon's declaration claims he moved out of California in 2016. Dkt. No. 26-1 (Runyon Dec. ¶ 10). In his social media posts, however, Mr. Runyon specifically says he moved from California three years later (in January 2019), and these posts show that as recently as 2020, he has been promoting the company in appearances with IX merchandise, clothing

---

[3] These specific requests are set forth in Section III, *infra*.

[4] IX boldly asserts "this District has held 'use of social media cannot be found persuasive to a personal jurisdiction inquiry.'" Dkt. No. 26 at 5. This is profoundly false. In the contract case IX cites, *Corcera Sols. v. Razor, Inc.*, No. 5:13-CV-05113-PSG, 2014 WL 587869, at *8–9 (N.D. Cal. Feb. 14, 2014), Judge Grewal merely held that the defendant's registration of accounts on social media platforms offered by California companies (Twitter, Facebook, LinkedIn and GooglePlus) was not persuasive for purposes of *general* jurisdiction analysis *in that case*. Here, it is the content of IX's posts, not the mere use of LinkedIn, that must be explored through discovery.

and stickers in San Francisco and San Diego (at times from an account called "impossible**HQ**" (emphasis added)). *See* Leahy Dec. ¶¶ 9, 11.[5]

**Professional versus Personal**: IX holds itself out as a "smaller" business managed by a single principal, Mr. Runyon. It now maintains that a number of the cited IX California contacts are just "personal," not professional. *See* Dkt. No. 26-1 (Runyon Dec. ¶¶ 6, 10, 13–15). Notably, though, there does not appear to be a bright line between Mr. Runyon's work for the company and his own personal "brand." He posts in the first-person voice from both the IX and his individual social media accounts, and he repeatedly promotes the IMPOSSIBLE brand from both accounts. *See* Dkt. No. 19-1 (Slafksy Dec. ¶¶ 7–14); Leahy Dec. ¶ 3, 4, 8.

**IX's Overall Contacts with California**: IX has shifted from the position in its Motion to Dismiss that it has no meaningful California contacts to saying now it may have, or may have had, a variety of contacts with California, but the company does not recall the details; and also that any such contacts are merely "short-term." Dkt. No. 26 at 1, 2; Dkt. No. 26-1 (Runyon Dec. ¶ 5)

These inconsistencies must be probed as part of the jurisdictional issues IX has placed before the Court. Plaintiff should be permitted to review related IX documents, if any, and ask IX questions about its newly filed declaration and evolving positions.

## II.   IX'S CONTACTS WITH CALIFORNIA BEAR DIRECTLY ON THE COURT'S PERSONAL JURISDICTION ANALYSIS

To establish specific personal jurisdiction over IX, Plaintiff must show that (1) IX "purposefully direct[ed]" its activities at California; and (2) Impossible Foods' claim "arises out of or relates to [IX's] forum-related activities." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). Once Plaintiff demonstrates that there is a *prima facie* case for specific jurisdiction, the burden shifts to IX to show that the exercise of jurisdiction would be unreasonable. *Id.* at 800. IX's contacts with California, including its contacts unrelated to trademark enforcement, bear on this analysis in multiple ways.

To be clear, courts in this district have held that a plaintiff "need not make out a *prima facie* case of personal jurisdiction before it can obtain jurisdictional discovery. Rather a plaintiff must present only a 'colorable basis' for jurisdiction, or 'some evidence' constituting a showing

---

[5] Plaintiff has identified specific evidence suggesting that IX has promoted its business to Californians *within California*. IX mischaracterizes this as Plaintiff claiming jurisdiction has been triggered "through *targeting* of a California resident" *anywhere*. Dkt. No. 26 at 7. That is not Plaintiff's position.

lesser than a *prima facie* case." *Corcera Sols.*, No. 5:13-CV-05113-PSG, 2014 WL 587869, at *6–8 (citations omitted). IX seeks to bypass this inquiry on its say-so alone.

### A. Purposeful Direction by IX

IX's California contacts are relevant to this first prong of the test. It is undisputed that IX directed at Plaintiff, a company in Redwood City, (i) an opposition proceeding before the Trademark Trial and Appeal Board of the U.S. Patent and Trademark Office ("TTAB") and (ii) legal threats related to use of IMPOSSIBLE-related trademarks.

IX's TTAB proceeding was directed at Plaintiff in California, not, as IX contends, at Virginia, where the TTAB offices are located. *Delphix Corp. v. Embarcadero Techs., Inc.*, No. 16-16572, 749 Fed. Appx. 502, at *7 (9th Cir. Sep. 11, 2018) (*Delphix*). IX argues otherwise but cites no supporting authority.

The Ninth Circuit has also made clear that the geographic location of the attorney receiving a demand letter (in this case, Seattle) is "irrelevant" to this analysis. *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000) ("[t]he critical factor was that in sending the letter, the defendant 'was purposefully [harming plaintiff] in California.'" (citing *Metropolitan Life Insurance Co. v. Neaves*, 912 F.2d 1062, 1065 (9th Cir. 1990)). Again, IX argues otherwise but cites no authority.

### B. Plaintiff's Claims Arise Out of IX's California-Related Contacts

IX's California contacts are also relevant to the second prong of the test. Plaintiff will show that its claim for declaratory relief arises out of or relates to IX's forum-related activities where, as here, "but for" IX's demands and its opposition proceeding, Plaintiff "would have no need for a judicial declaration of its right to use" the disputed trademarks. *See, e.g.*, *Bancroft & Masters*, 223 F.3d at 1088.[6]

---

[6] IX asserts *Bancroft & Masters* is "no longer good law." This is wrong. *Bancroft & Masters* was distinguished in part on other grounds in *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206–07 (9th Cir. 2006) (en banc). The Ninth Circuit has continued to cite to the case with respect to personal jurisdiction analysis. *See, e.g.*, *Delphix*, No. 16-16572, 749 Fed. Appx. 502, at *7.

IX points to several cases to support its argument that the only contacts relevant to the Court's jurisdictional analysis are its demand letter and trademark opposition proceeding. The first is a Central District case, *Arkon Res., Inc. v. Nat'l Prods. Inc.*, No. CV 17-2976 PSG (PLAx), 2018 WL 1143816, at *4 (C.D. Cal. Jan. 3, 2018). However, this case is of no help to it. In *Arkon*, plaintiff had only received from the defendant a letter about discovery in a separate out-of-state lawsuit, and plaintiff made no effort to explain to the court what its "harm" in California was and why that harm was related to the non-infringement causes of action. *Id.* at *8–9. The Court also considered the defendant's sale of products to customers in California but concluded that the non-infringement claims did not arise out of those contacts. *Id.* at *10. The other case on which IX relies, *Slack Techs., Inc. v. Phoji, Inc.*, is likewise unavailing. No. 20-CV-01509-EMC, 2020 WL 4701174 (N.D. Cal. Aug. 13, 2020). In that case, based on "policy considerations unique to the patent context," Judge Chen held that personal jurisdiction in a declaratory action should be predicated on "more" than just "the act of sending ordinary cease and desist letters into [the] forum." *Id.* at *10–12 (internal citations omitted). This lawsuit is of course not a patent case, and regardless, Plaintiff here is pointing to more than just a demand letter as the basis for jurisdiction. Moreover, Judge Chen made clear that for the third prong of the specific jurisdiction test a district court should look at "more" than just enforcement communications. *Slack Techs., Inc.*, No. 20-CV-01509-EMC, 2020 WL 4701174, at *12 (citing *New World Int'l, Inc.*, 859 F.3d at 1037–38).

IX also cites *Mehr v. Federation Internationale de Football Assocs*. 115 F. Supp. 3d 1035 (N.D. Cal. 2015). In *Mehr*, the class-action plaintiffs failed to even allege their claims arose from any specific forum-related activity and thus, not surprisingly, they could not satisfy the second prong of the jurisdiction test. *Id.* at 1053.

Finally, the Supreme Court case cited by IX, *Walden v. Fiore*, held that individualized targeting of forum residents, rather than targeting the State itself, is typically not enough to trigger personal jurisdiction; additional contacts are generally required. 571 U.S. 277, 288–89 (2014). Here, Plaintiff is seeking discovery concerning just those kinds of additional contacts.

### C. The Court's Exercise of Jurisdiction Is Reasonable

The Court's analysis of the third prong of the test will be based on a thorough review of *all* of IX's contacts with California. *See Deal Point Trading v. Standard Process, Inc.*, No. 319CV01926 WQ (HAGSx), 2020 WL 6106617, at *14–17 (S.D. Cal. Apr. 20, 2020) ("[i]n any personal jurisdiction case we must evaluate *all* of a defendant's contacts with the forum state") (emphasis added); *In re JPMorgan Chase Derivative Litig.*, No. 2:13-cv-02414-KJM-EFB, 2014 WL 5430487, at *37 (E.D. Cal. Oct. 24, 2014) (citing *Ballard v. Savage*, 65 F.3d 1495, 1500–02 (9th Cir. 1995)) (assessment "requires a broad inquiry into the overall reasonableness and fairness of personal jurisdiction"); *see also*, *Yahoo! Inc.*, 433 F.3d at 1210 (a "strong showing" of "the extent of the defendant's contacts with the forum state" "permit[s] a lesser showing" of "the degree to which the plaintiff's suit is related to those contacts."). This is particularly true in trademark declaratory judgment actions. *See, e.g.*, *Delphix,* No. 16-16572, 749 Fed. Appx. 502, at *7 (jurisdictional analysis considers "every aspect of the case — from the parties to the underlying disputed rights" and their connection to California); *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1080 (9th Cir. 2011) (district court reviews extent of defendant's California business contacts unrelated to the suit, such as business solicitations to Californians and website users from California); *San Diego County Credit Union v. Citizens Equity First Credit Union*, 325 F. Supp. 3d 1088, 1094–1100 (S.D. Cal. 2018) (conferring jurisdiction where Illinois defendant initiated TTAB proceeding against California-plaintiff's trademarks and record showed defendant had conducted non-enforcement business activities in California).

## II. THE REQUESTED DISCOVERY IS TARGETED TO JURISDICTIONAL ISSUES

The discovery Plaintiff has requested is both limited and directly focused on jurisdiction. In particular, Plaintiff has proposed that IX respond to the following targeted document requests:

1. Documents sufficient to show any locations identified by you as your company headquarters.

   2.   All documents related to your business activity at or from the address of 600 B Street, San Diego, CA 92101.[7]

   3.   Documents sufficient to show the time periods during which you have conducted business in California.

   4.   Documents sufficient to show any promotional, marketing, advertising or business development activity directed at people in California.

   5.   Documents sufficient to show any sales of products or services to people in California.

   6.   Documents sufficient to show the number of California residents who have been customers of your company.

   7.   Documents sufficient to show the number of California residents who have registered to receive marketing or other communications from your company.

   8.   Documents sufficient to identify events that the Company has attended in California.

   9.   Documents sufficient to identify past or present employees or contractors based in California.

   10.  Any contracts that you have entered into with forum selection clauses identifying a forum in California

Dkt. No. 19-17 (Slafsky Dec., Ex. 16).[8]  Plaintiff also asks that IX appear for a three-hour Rule 30(b)(6) deposition after its document production.  Dkt. No. 19-1 (Slafsky Dec. ¶ 27); Dkt. No. 19-4 (Slafsky Dec., Ex. 3).  The topics for deposition will be consistent with the document requests above and will be identified in advance to IX.

   As is obvious from the requests, Plaintiff is only seeking narrow and focused information to enable it to further support the exercise of jurisdiction.  This is hardly a fishing expedition.  And this limited discovery cannot be much of a burden: if IX's story is to be believed, there should be very few responsive documents, particularly at a small business.

---

[7] This is the California mailing address that IX has identified as its company headquarters. Dkt. No. 19-6 (Slafsky Dec., Ex. 5).

[8] Some of these topics (such as nos. 4, 5 and 8) may later bear on questions related to the merits of the parties' dispute, such as trademark priority and likelihood of confusion.  IX's striking assertion that such topics "bear no relevance to the claim that Plaintiff is *not* infringing Defendant's marks" (Dkt. No. 26 at 6) is contradicted by well-established, black-letter law.

# CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff leave to proceed with the requested jurisdictional discovery.

Dated: July 16, 2021

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation


By: */s/ John L. Slafsky*
    DAVID H. KRAMER
    JOHN L. SLAFSKY
    BRANDON P. LEAHY