DAVID H. KRAMER, State Bar No. 168452
JOHN L. SLAFSKY, State Bar No. 195513
BRANDON P. LEAHY, State Bar No. 298064
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, California 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
dkramer@wsgr.com
jslafsky@wsgr.com
bleahy@wsgr.com

Attorneys for Plaintiff
IMPOSSIBLE FOODS INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

IMPOSSIBLE FOODS INC. a Delaware corporation,

Plaintiff,

v.

IMPOSSIBLE X LLC, an Illinois limited liability company,

Defendant.

Case No. 5:21-cv-02419-BLF (SVK)

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Hearing Date: October 28, 2021
Time: 9:00 a.m.

Judge: Hon. Beth Labson Freeman

# TABLE OF CONTENTS

Page


I. INTRODUCTION ..... 1

II. STATEMENT OF ISSUES ..... 2

III. BACKGROUND ..... 2

A. THE PARTIES ..... 2

1. Plaintiff Impossible Foods ..... 2

2. Defendant Impossible LLC ..... 3

B. IX'S TRADEMARK THREATS TO PLAINTIFF IN CALIFORNIA ..... 5

C. THE COMPLAINT ..... 6

D. JURISDICTIONAL DISCOVERY ..... 7

IV. ARGUMENT ..... 9

A. THE COURT HAS SUBJECT MATTER JURISDICTION OVER THIS DECLARATORY JUDGMENT ACTION ..... 9

1. This Dispute Meets the "Case or Controversy" Requirements ..... 10

2. IX's Positions in the Opposition Proceeding Create a Justiciable Controversy ..... 10

3. IX's Demands Directed at Use of the IMPOSSIBLE Mark Create a Justiciable Controversy ..... 11

B. THE COURT MAY PROPERLY EXERCISE SPECIFIC PERSONAL JURISDICTION OVER DEFENDANT IX ..... 14

1. IX is Subject to Specific Jurisdiction ..... 14

a. IX Purposefully Directed its Activities at California ..... 15

i. IX Committed Intentional Acts ..... 15

ii. IX Expressly Aimed Its Intentional Acts at California ..... 15

iii. The Harm From IX's Intentional Acts Has Been, and Will Be, Felt in California ..... 17

2. Plaintiff's Claim Arises Out of IX's Forum-Related Activities ..... 17

3. The Court's Exercise of Specific Jurisdiction Over IX Is Reasonable ..... 18

V. CONCLUSION ..... 22

# TABLE OF AUTHORITIES


**Page(s)**

**Cases**

*B&B Hardware, Inc. v. Hargis Industries, Inc.*,
575 U.S. 138 (2015) ........ 11

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*,
223 F.3d 1082 (9th Cir. 2000) ........ 15, 16, 17

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ........ 15

*Calder v. Jones*,
465 U.S. 783 (1984) ........ 15

*Chesebrough-Pond's, Inc. v. Faberge, Inc.*,
666 F.2d 393 (9th Cir. 1982) ........ 13

*Coleman v. Ellis*,
No. C 19-8104 SBA, 2020 U.S. Dist. LEXIS 230960
(N.D. Cal. Mar. 13, 2020), ........ 12

*CollegeSource, Inc. v. AcademyOne, Inc.*,
653 F.3d 1066 (9th Cir. 2011) ........ 14, 20

*Copasetic Clothing Ltd. v. Roots Canada Corp.*,
No. 17-CV-2300-GPC-KSC, 2018 U.S. Dist. LEXIS 144575
(S.D. Cal. Aug. 24, 2018) ........ 11

*Deal Point Trading v. Standard Process, Inc.*,
No. 3:19-cv-01926-WQH-AGS, 2020 U.S. Dist. LEXIS 193192
(S.D. Cal. Apr. 20, 2020) ........ 19

*Delphix Corp. v. Embarcadero Technologies., Inc.*,
No. 16-cv-0606-BLF, 2016 U.S. Dist. LEXIS 114255
(N.D. Cal. Aug. 25, 2016), *aff'd in part, rev'd in part*,
749 F. App'x 502 (9th Cir. 2018) ........ 12, 13

*Delphix Corp. v. Embarcadero Techs., Inc.*,
749 F. App'x 502 (9th Cir. 2018) ........ 16

*Flipboard, Inc. v. Amorphous*,
No. 15-cv-03255-BLF, 2015 U.S. Dist. LEXIS 166551
(N.D. Cal. Dec. 10, 2015) (Freeman, J.) ........ 17

*FN Cellar, LLC v. Union Wine Co.*,
No. 15-cv-02301-JD, 2015 U.S. Dist. LEXIS 117256
(N.D. Cal. Sept. 1, 2015) ........ 11

*Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*,
905 F.3d 597 (9th Cir. 2018) ........ 18

*Ghuman v. Nicholson*,
No. CV-20-02474-PHX-DLR, 2021 U.S. Dist. LEXIS 32674
(D. Ariz. Feb. 22, 2021) ........ 19

*Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*,
328 F.3d 1122 (9th Cir. 2003) ........ 18

*Lake v. Lake*,
817 F.2d 1416 (9th Cir. 1987) ........ 14

*Life360, Inc. v. Advanced Ground Info. Sys., Inc.*,
No. 15-cv-00151-BLF, 2015 U.S. Dist. LEXIS 126924
(N.D. Cal. Sept. 21, 2015) (Freeman, J.) ........ 15, 17

*Marble Bridge Funding Grp., Inc. v. Liquid Cap. Exch., Inc.*,
No. 5:15-cv-00177-EJD, 2015 U.S. Dist. LEXIS 130518
(N.D. Cal. Sept. 25, 2015) ........ 14

*Maryland Cas. Co. v. Pacific Coal & Oil Co.*,
312 U. S. 270 (1941) ........ 10

*Mauro Pet Care v. Natural Dog Acquisition, LLC*,
No. 2:20-cv-03698-RGK-KS, 2020 U.S. Dist. LEXIS 190385
(C.D. Cal. Aug. 21, 2020) ........ 11

*MedImmune, Inc. v. Genentech, Inc.*,
549 U.S. 118 (2007) ........ 9, 10

*MedImpact Healthcare Sys., Inc. v. IQVIA Inc.*,
No. 19cv1865-GPC(LL), 2020 U.S. Dist. LEXIS 155996
(S.D. Cal. Aug. 27, 2020) ........ 19

*Metropolitan Life Ins. Co. v. Neaves*,
912 F.2d 1062 (9th Cir. 1990) ........ 16

*Perry v. Brown*,
791 F. App'x 643 (9th Cir. 2019) ........ 15, 16

*San Diego Cty. Credit Union v. Citizens Equity First Credit Union*,
325 F. Supp. 3d 1088 (S.D. Cal. 2018) ........ 15, 18

*San Diego Cty. Credit Union v. Citizens Equity First Credit Union*,
344 F. Supp. 3d 1147 (S.D. Cal. 2018) ........ 11

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) ........ 14, 15

*Table de France, Inc. v. DBC Corp.*,
No. EDCV 19-423 ........ 16, 17

*V.V.V. & Sons Edible Oils Ltd. v. Meenakshi Overseas, LLC*,
946 F.3d 542 (9th Cir. 2019) ........ 12, 14, 21

*Walden v. Fiore*,
571 U.S. 277 (2014) ........ 15, 16

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
433 F.3d 1199 (9th Cir. 2006) .......... 17, 19

*Zero Motorcycles, Inc. v. Pirelli Tyre S.p.A.*,
517 F. App'x 589 (9th Cir. 2013) .......... 17

**Statutes**

15 U.S.C. § 1114 .......... 10

15 U.S.C. § 1125(a) .......... 10

28 U.S.C. § 2201(a) .......... 9

Pursuant to the Court's order dated July 7, 2021 (ECF No. 24), Plaintiff Impossible Foods Inc. ("Plaintiff") submits this memorandum of points and authorities in opposition to the June 11, 2021 Motion to Dismiss filed by Defendant Impossible LLC ("IX"). ECF No. 11 ("Mot."). Plaintiff also submits the accompanying declaration of John L. Slafsky ("Slafsky Decl.") as well as a proposed order.

## I. INTRODUCTION

With sweeping statements that that there is no controversy between the parties, that it "never once intentionally reached into California to assert its trademarks against Plaintiff," and that it has "no meaningful ties" to and "zero suit-related contacts" with this "far-flung jurisdiction," IX moves to dismiss this action on the grounds that the Court lacks both subject matter jurisdiction over the dispute and personal jurisdiction over IX. These statements are demonstrably false and the legal arguments are meritless.

By brandishing its supposedly senior trademark rights, threatening Plaintiff's use of its flagship IMPOSSIBLE brand, initiating opposition proceedings against Plaintiff's trademark application, charging Plaintiff with encroachment and infringement, and making onerous demands concerning Plaintiff's use of its mark, IX generated a concrete and immediate dispute with Plaintiff that easily satisfies the "case or controversy" requirement for subject matter jurisdiction.

As to personal jurisdiction, IX's emphatic arguments that it has no "relevant" contacts with California are plainly wrong. IX purposefully directed its trademark threats and demands to Plaintiff in California, and Plaintiff's resulting claim for declaratory relief arises directly from those contacts. Thus, the first two elements of the specific jurisdiction test are satisfied. As for the third element—that the exercise of jurisdiction over IX be reasonable under the circumstances—that too is beyond question. IX has publicly identified California as its headquarters for years; its principal has lived in California, operated the IX business from here (in his words, the "hub" of his operations) and routinely traveled in and out of the state, with at least eight such trips during 2018 and 2019; IX has singled out California, Texas and Illinois as the three states where it does significant business; it has entered into at least six contracts

mandating California as the forum for legal disputes; its "ImpossibleHQ" social media posts have shown IX present at California locations such as San Francisco, West Hollywood and San Diego at least 30 times (up to and including 2020); and it spent time "building" its purported meal and nutrition business, the linchpin of its trademark allegations, here in California. Meanwhile, its Texas limited liability company (LLC), the new owner of its trademark filings and the entity that has now appeared in this action, was formed only at the end of last year, just weeks before IX contacted Plaintiff.

IX will suffer no undue burden litigating this case in the state where it has done business for years, the laws of which it relies on in contracts, and where it has aimed its trademark enforcement activity. This is particularly true where, as here, IX is essentially a one-man operation; its principal has held himself out as a tech-savvy "digital nomad" who is location-independent and can perform his work from anywhere; and this Court, especially since the onset of the COVID-19 pandemic, has conducted almost all matters remotely, significantly reducing the burden of participation on out-of-state defendants.

Finally, California's interest in resolving this action is strong, as Plaintiff is based here, IX has a long history of activity in California, IX is alleging likely confusion of consumers in California, and IX seeks to limit Plaintiff's use of its most important trademark in California and elsewhere.

## II. STATEMENT OF ISSUES

1. Does the Court have subject matter jurisdiction over this declaratory judgment action?

2. May the Court properly exercise specific personal jurisdiction over Defendant IX?

## III. BACKGROUND

### A. THE PARTIES

#### 1. Plaintiff Impossible Foods

Plaintiff, based in Redwood City, is a pioneer in the field of plant-based meat substitutes. ECF No. 1 ("Compl.") ¶¶ 1, 10. It aims to give consumers the taste and nutritional benefits of meat without the negative environmental impacts associated with products from livestock. *Id.*

Since at least as early as 2015, it has used a series of IMPOSSIBLE-related trademarks to promote various food-related products and services. Compl. ¶¶ 13, 16.

Plaintiff has enjoyed extraordinary commercial success. Compl. ¶ 11. Its signature IMPOSSIBLE BURGER product is available in grocery stores across the country, at fast-food restaurants and high-end culinary establishments alike, and through Plaintiff's website at www.impossiblefoods.com. Compl. ¶¶ 11-14. Plaintiff also uses its IMPOSSIBLE mark with recipes, ingredients and food information that it provides for free. Compl. ¶¶ 13-14; *see also* www.impossiblefoods.com/recipes (last visited Sept. 13, 2021). Plaintiff's IMPOSSIBLE mark has received extensive publicity: it has been featured in countless news reports, including in *The New York Times*, *The Los Angeles Times*, *The Wall Street Journal*, *San Jose Mercury News*, *San Francisco Chronicle*, *Bloomberg*, *Reuters*, *FORTUNE*, *Forbes*, *Time*, *USA Today*), as well as on national television networks. Compl. ¶ 12.

Plaintiff is the owner of two federal trademark registrations for IMPOSSIBLE (Registration Nos. 5370337 and 5459255) as well as registrations for other IMPOSSIBLE-related marks. Compl. ¶ 16. Over the past eight years, Plaintiff has filed a total of 49 applications for IMPOSSIBLE -related marks, from the earliest application in 2013 to the most recent application in 2020 (Ser. No. 90183070). *Id.* These applications cover a family of IMPOSSIBLE marks, such as IMPOSSIBLE BEEF, IMPOSSIBLE SAUSAGE, IMPOSSIBLE MEAT and IMPOSSIBLE CHEESESTEAK. Compl. ¶ 13. Plaintiff also owns significant common-law rights to this distinctive presentation of IMPOSSIBLE, which it has used since as early as 2016:

**IMPOSSIBLE™**

*Id.*

**2. Defendant Impossible LLC**

Defendant IX maintains that as of January 4, 2021 it is a Texas limited liability company (LLC), with its principal place of business in Austin. Mot. at 1 n.1; Slafsky Decl. Ex. 6 (B) at 28:23-29:1. The "sole member" or "owner" of the LLC is Defendant's founder and principal,

Joel Runyon. ECF No. 26-1 at 2; ECF No. 11-1 at 1; Slafsky Decl. Ex. 6 (B) at 61:18-20. IX, according to testimony, has no employees or outside investors. ECF No. 11-1 ¶ 12; Slafsky Decl. Ex. 6 (B) at 60:25-61:17, 113:21-114:8.

IX holds itself out as a marketing consulting business specializing in search engine optimization (SEO), aiming to "help startups scale their business through the use of SEO, SEM [search engine marketing] and content marketing strategy." Slafsky Decl. Ex. 13 (D). It also purports to provide information relating to exercise and fitness, and to have developed a meal and nutrition business. Mot. at 2. Though essentially a one-person shop, IX claims in its motion to dismiss that it is "a platform and business that reaches into almost all aspects of the fitness and nutrition industry: fitness products; apparel; nutritional supplements; consulting services; guides for food, ingredients, diets, and recipes; and even philanthropic services." Mot. at 2.

IX's principal, Mr. Runyon, states he is an endurance athlete, entrepreneur and "owner at IMPOSSIBLE." Slafsky Decl. Ex. 6 (B) at 61:18-20, Ex. 13 (B-C). He has identified himself as a "digital nomad"—someone who is location-independent because, through the use of technology, he can "travel[] extensively" and still perform his work from locations across the U.S. or even other countries. Slafsky Decl. Ex. 6 (B) at 29:16-18, 46:9-16, 102:16-19, Ex. 10 (E); ECF No. 26-1 ¶ 12.

As to its Texas connections, IX's Texas LLC was created just last fall, on October 21, 2020, only weeks before IX contacted Plaintiff. Slafsky Decl. Exs. 1-2. According to IX's testimony, "Up until earlier this year, [it was] headquartered out of Illinois" "[and it] never had any physical locations outside of Illinois." Slafsky Decl. Ex. 6 (B) at 28:24-29:1; ECF No. 26-1 ¶ 2. Discovery indicates, though, that these statements are false: neither IX nor its predecessor had a "workspace" in Illinois and, instead, IX was operated during this time from California or locations to which Mr. Runyon traveled. Section III (D), *infra*.[1]

---

[1] The Complaint named as defendant an *Illinois* limited liability company called Impossible X LLC, the then-record owner of each of the 11 federal trademark registrations IX cited in its trademark threats against Plaintiff. *See* Compl. ¶¶ 2, 24. On April 8, 2021, six days after

(continued...)

**B. IX'S TRADEMARK THREATS TO PLAINTIFF IN CALIFORNIA**

On November 10, 2020, over five years after Plaintiff commenced use of its IMPOSSIBLE mark, IX sent Plaintiff a detailed cease-and-desist letter. Compl. ¶ 20; Slafsky Decl. Ex. 2. The letter was labeled "Re: Infringement of Impossible X's Trademark Rights." Slafsky Decl. Ex. 2. It highlighted actual examples of Plaintiff's current use of its IMPOSSIBLE mark. *Id.* It accused Plaintiff of "encroachment into spaces either occupied by or closely related to goods and services offered by Impossible X," which, it said, "greatly increases the likelihood of confusion." *Id.* IX also referenced, without detail, "several apparent instances of actual confusion." *Id.* Significantly, IX demanded that Impossible Foods "cease all use of its confusingly similar IMPOSSIBLE designs (i.e., uses without 'FOODS' in stylizations that mimic Impossible X's marks) and limit the use of its IMPOSSIBLE mark to only use in association with plant-based food substitutes." *Id.*

Weeks later, on November 25, 2020, IX filed with the TTAB a Notice of Opposition against one of Plaintiff's trademark applications for the mark IMPOSSIBLE. Slafsky Decl. Ex. 3. The trademark application that IX opposed covers "Providing information about recipes, ingredients and cooking information; providing an online computer database to consumers featuring information about recipes, ingredients and cooking information" in International Class 43. *Id.* In its Notice of Opposition, IX made assertions leaving little doubt about the controversy between the parties. Specifically, IX alleged:

- That Plaintiff lacks "any constructive or actual right" in the IMPOSSIBLE trademark;
- That "[t]here is no issue of priority. [IX] has priority by virtue of its longstanding and continuous use and registration of the IMPOSSIBLE mark and family of

---

Plaintiff filed this lawsuit, IX updated public records at the USPTO to reflect a new corporate entity, a *Texas* limited liability company called Impossible LLC, as the owner of these registrations. Slafsky Decl. Ex. 1 (B). IX has now appeared in this action as the new *Texas* entity. Plaintiff is prepared to stipulate to amending the Complaint to identify the new *Texas* entity as the named defendant.

IMPOSSIBLE Marks well before any bona fide use by [Plaintiff] of [Plaintiff's] Mark";

- That "registration of [Plaintiff's] Mark by [Plaintiff] in association with the opposed services would result in irreparable damage to [IX] as consumers would be likely to believe, mistakenly, that [Plaintiff's] registered [Plaintiff's] Mark is affiliated with or approved by [IX]"; and
- That "registration of [Plaintiff's] mark . . . in association with the opposed services would result in irreparable damage to [IX] as consumers would be likely to consider the services offered under the registered mark as emanating from [IX], and purchase such services, resulting in a loss of sales to [IX]."

*Id.*

Though Plaintiff believed these allegations to be without merit, it subsequently made a co-existence offer to IX, which IX rejected on March 30, 2021. Slafsky Decl. Ex. 4.

**C. THE COMPLAINT**

In view of the inability to reach agreement and IX's continued threats, and in order to secure a decision that would put to rest all aspects of IX's claims, Plaintiff commenced this declaratory judgment action on April 2, 2021. ECF No. 1. The Complaint includes a single claim for declaratory relief, with requests for an order, *inter alia*, (i) determining that Plaintiff has not infringed, diluted or otherwise violated any right of IX and that Plaintiff may thus continue to use and register its IMPOSSIBLE trademarks and (ii) cancelling certain trademark registrations that IX is now asserting, on the ground of abandonment/non-use. *See id.*

The TTAB suspended IX's trademark opposition proceeding pending disposition of this action on April 5, 2021. Slafsky Decl. Ex. 5.

IX filed its Motion to Dismiss on June 11, 2021. ECF No. 11. The Court, in order to "rule on the motion with a more developed record," set an extended briefing schedule and scheduled a hearing for October 28, 2021. ECF No. 24.

**D. JURISDICTIONAL DISCOVERY**

On June 28, 2021, Plaintiff requested leave to conduct early jurisdictional discovery. ECF No. 19. IX opposed the request, arguing discovery was uncalled for because its "*only* relevant forum contacts are those relating to [its] efforts to enforce its intellectual property." ECF No. 26 at 1 (emphasis added). Magistrate Judge van Keulen nonetheless granted Plaintiff's request on July 20. ECF No. 32.

Discovery confirmed that IX—in addition to directing both a cease-and-desist letter and a trademark opposition proceeding at Plaintiff in Redwood City—has enjoyed regular and significant contacts with California, including the following:

- IX has identified San Diego as its corporate headquarters for years. Slafsky Decl. Exs. 7-8; *see also* https://www.linkedin.com/company/impossiblex/about/ (last visited September 13, 2021). Mr. Runyon publicly described his office there as the "hub" of his operations. Slafsky Decl. Ex. 8 (T) at 2;
- Mr. Runyon, IX's sole proprietor, kept a car and personal effects in San Diego until December 2018. Slafsky Decl. Ex. 6 (B) at 60:1-14, Ex. 10 (E) at 1. He referred to San Diego as his "home base" and "base point." Slafsky Decl. Ex. 6 (B) at 58:16-18, Ex. 9 (B) at 3, Ex. 10 (F). This is where (in his words) he was "building" IX's purported meal and nutrition business, the linchpin for IX's allegations of trademark infringement. Slafsky Decl. Ex. 9 (A) at 1, Ex. 8 (T) at 2;
- Mr. Runyon traveled to California at least 8 times between August 2018 and 2019, shortly before the COVID-19 pandemic. Slafsky Decl. Ex. 11. These trips included multiple visits to the Bay Area for business meetings, one to Los Angeles for a networking event for business executives, and an extended stay in San Diego for approximately two months. Slafsky Decl. Ex. 6 (B) at 112:5-17, 113:1-16, 115:4-116:7, 117:5-13.
- IX has entered into at least six contracts with California companies mandating California as the forum for any legal disputes. Slafsky Decl. Ex. 6 (B) at 91:2-11, 117:20-118:1, 118:8-10, 118:14-19, Ex. 15;

- IX's "ImpossibleHQ" social media account as well as Mr. Runyon's social media account have posted from, or "tagged," California locations such as San Francisco, West Hollywood and San Diego at least 30 times, and as recently as 2020. Slafsky Decl. Ex. 8 (A-Q), Ex. 10;
- IX has "worked both internationally & domestically with businesses & customers in every state in the U.S. including California, Texas & Illinois since 2010." Slafsky Decl. Ex. 12 at 2 (former website of IX predecessor);
- IX is in discussions with a Los Angeles-based apparel manufacturer to source the IMPOSSIBLE X-branded apparel that it sells. Slafsky Decl. Ex. 6 (B) at 105:9-16, Ex. 14; and
- Between July 2019 and December 2020 Mr. Runyon served as a business advisor to, and visited, a Mountain View calendaring company called Woven, which he has continued to promote in connection with the IMPOSSIBLE name through 2021. Slafsky Decl. Ex. 6 (B) at 66:19-67:14, 68:19-69:7, Ex. 13.

Meanwhile, review of public records shows that IX did not create its Texas LLC until October 2020, weeks before its cease-and-desist letter to Plaintiff, and did not merge its Illinois operating entity into the Texas LLC until afterwards, in January 2021. Slafsky Decl. Ex. 1.

IX has been particularly adamant in its briefing (regarding jurisdictional discovery) that it has not had a headquarters in California, offering yet another sweeping declaration: "*Neither Defendant nor its predecessors have ever had an office, let alone a headquarters, in California*." ECF No. 26 at 3 (emphasis added). The actual evidence shows otherwise. Mr. Runyon did, in fact, rent an office and apartment in San Diego (and nowhere else at this time). Slafsky Decl. Ex. 6 (B) at 48:23-49:16, 59:6-7, 82:7-20, Ex. 8. Again, he publicly described San Diego as his "home base" or "base point" and his office as the "hub" of his operations. Slafsky Decl. Ex. 6 (B) at 58:16-22, Ex. 8 (T), Ex. 10 (F). After travel as a "digital nomad," he repeatedly returned to San Diego, kept his car and personal effects there, and as recently as 2018 spent up to two months there. Slafsky Decl. Ex. 6 (B) at 29:16-18, 60:1-14, 91:2-11, Ex. 10 (E). Social media

posts by IX and Mr. Runyon over the years are replete with references to them being present in locations in San Diego (and other California cities). Slafsky Decl. Ex. 8 (A-Q), Ex. 10.

IX was far from forthcoming in its Court-ordered Rule 30(b)(6) deposition testimony. The deposition topics included "[t]he burden to your business that you allege will arise from defense of the lawsuit in this District" and "[t]he fairness of the Court's exercise of specific jurisdiction over you in this lawsuit." Slafsky Decl. Ex. 6 (A). Despite that preview, Mr. Runyon was unable or unwilling to answer basic questions such as: whether California is a significant state for IX's business; whether IX has any manufacturers in California; whether IX has a fulfillment center in California; whether IX has more customers in California or any other state; whether he created the company's LinkedIn profile page identifying San Diego as IX's corporate headquarters; and how many trips he has taken to California beyond just the 8 trips he deemed "relevant." Slafsky Decl. Ex. 6 (B) at 100:12-23, 103:11-19, 105:9-16, 123:16-124:1, 159:9-19.

## IV. ARGUMENT

### A. THE COURT HAS SUBJECT MATTER JURISDICTION OVER THIS DECLARATORY JUDGMENT ACTION

IX's motion challenges the Court's subject matter jurisdiction over an obvious and significant trademark dispute between the parties. Yet according to IX, there is no "case or controversy" whatsoever. Mot. at 15. That claim is specious.

To satisfy the "case-or-controversy" requirement for subject matter jurisdiction, the dispute need only be "definite and concrete, touching the legal relations of parties having adverse legal interests"; and be "real and substantial" and "admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." 28 U.S.C. § 2201(a); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (alteration in original) (citation omitted). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality

to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127 (quoting *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U. S. 270, 273 (1941)).

**1. This Dispute Meets the "Case or Controversy" Requirements**

The subject line of the letter that IX sent to Plaintiff on November 10, 2020 read "Infringement of Impossible X's Trademark Rights." Slafsky Decl. Ex. 2. In the letter, IX alleged that Plaintiff's use of its IMPOSSIBLE trademark "infringes upon Impossible X's rights in its IMPOSSIBLE formative marks" requiring it to "demand that [Plaintiff] . . . cease all use of its confusingly similar IMPOSSIBLE designs (i.e., uses without 'FOODS' in stylizations that mimic Impossible X's marks) and limit the use of its IMPOSSIBLE mark to only use in association with plant-based food substitutes." *Id.* IX closed the letter by threatening "all appropriate action . . . , including filing notices of opposition." *Id.* IX followed through on its threats when it commenced opposition proceedings against Plaintiff's trademark application at the TTAB on November 25, 2020. Slafsky Decl. Ex. 3.

As set forth below, any reasonable interpretation of these circumstances shows a substantial, immediate and real controversy between the parties.

**2. IX's Positions in the Opposition Proceeding Create a Justiciable Controversy**

IX's Notice of Opposition alleged that Plaintiff lacks "any constructive or actual right" in the IMPOSSIBLE trademark; that "[IX] has priority by virtue of its longstanding and continuous use and registration of the IMPOSSIBLE mark and family of IMPOSSIBLE Marks well before any bona fide use by [Plaintiff] of [Plaintiff's] Mark."; and that "registration of [Plaintiff's] mark . . . in association with the opposed services would result in [a likelihood of confusion and] irreparable damage to [IX]." Slafsky Decl. Ex. 3.

IX argues that such allegations are insufficient to qualify as a case or controversy. Mot. at 15. That is wrong. IX's opposition pleading recites grounds for trademark infringement against Plaintiff, as it alleges the twin elements of priority and likelihood of confusion which, if litigated and established in court, would warrant an injunction. Slafsky Decl. Ex. 3; 15 U.S.C. §§ 1114, 1125(a). A trademark opposition pleading alleging these *prima facie* elements of trademark infringement vests a district court with subject matter jurisdiction over a declaratory-

judgment action for non-infringement. *See, e.g.*, *Copasetic Clothing Ltd. v. Roots Canada Corp.*, No. 17-CV-2300-GPC-KSC, 2018 U.S. Dist. LEXIS 144575, at *11-24 (S.D. Cal. Aug. 24, 2018) (subject matter jurisdiction "may lie—based on the allegations contained in TTAB materials alone—where the defendant's opposition articulates the *prima facie* elements of trademark infringement"); *San Diego Cty. Credit Union v. Citizens Equity First Credit Union*, 344 F. Supp. 3d 1147, 1158-59 (S.D. Cal. 2018) (denying motion to dismiss for lack of subject matter jurisdiction because a "declaratory action is preferable to a TTAB action for addressing 'all aspects of the controversy'" (quoting *FN Cellar, LLC v. Union Wine Co.*, No. 15-cv-02301-JD, 2015 U.S. Dist. LEXIS 117256, at *4 (N.D. Cal. Sept. 1, 2015))); *Mauro Pet Care v. Natural Dog Acquisition, LLC*, No. 2:20-cv-03698-RGK-KS, 2020 U.S. Dist. LEXIS 190385, at *5-14 (C.D. Cal. Aug. 21, 2020) (where issues such as "confusion" are raised in TTAB proceeding, a declaratory-judgment plaintiff "would reasonably be apprehensive that the USPTO action would be followed by a suit for trademark infringement").

Plaintiff's real and immediate apprehension of a threat to its right to use (and not just register) its trademark from these allegations is further underscored by the potential for issue preclusion in TTAB proceedings. In *B&B Hardware, Inc. v. Hargis Industries, Inc.*, 575 U.S. 138 (2015), the Supreme Court held that an adverse decision on likelihood of confusion in a TTAB proceeding may preclude a trademark applicant from later defending itself on the issue in a court lawsuit for infringement. Plaintiff was thus reasonably concerned that an adverse determination at the TTAB could later be used by IX potentially to bar Plaintiff from using its flagship trademark, an issue only a district court (and not the TTAB) has the power to address.

#### 3. IX's Demands Directed at Use of the IMPOSSIBLE Mark Create a Justiciable Controversy

While IX's opposition proceeding and the threats it contains are sufficient to establish a case or controversy, IX's threats go well beyond the allegations in its opposition: IX's demand letter is directed at Plaintiff's freedom to use its flagship IMPOSSIBLE trademark in the marketplace. Slafsky Decl. Ex. 2. IX's letter challenged both (i) the scope of products with which Plaintiff can use its "house" trademark (such as recipes, cookbooks and apparel) and (ii)

the well-established, distinctive presentation of its "house" mark. *Id.* These use issues are outside the scope of the TTAB's jurisdiction. *V.V.V. & Sons Edible Oils Ltd. v. Meenakshi Overseas, LLC*, 946 F.3d 542, 546 (9th Cir. 2019) ("[T]he Board is not authorized to determine the right to use, nor may it decide broader questions of infringement or unfair competition."). Notably, at no point has IX retracted these demands or offered Plaintiff a covenant not to sue for infringement.

This Court's ruling in *Delphix Corp. v. Embarcadero Technologies., Inc.*, No. 16-cv-0606-BLF, 2016 U.S. Dist. LEXIS 114255, at *10-13 (N.D. Cal. Aug. 25, 2016), *aff'd in part, rev'd in part*, 749 F. App'x 502 (9th Cir. 2018), is particularly on point in the "case or controversy" analysis. In *Delphix*, a California trademark owner received allegations of infringement, filed a lawsuit for a declaration of non-infringement, and the defendant moved to dismiss for lack of subject matter jurisdiction. *Id.* This Court found subject matter jurisdiction where, as here, the defendant had insisted on limiting the plaintiff's use of its business name and mark, the defendant had commenced TTAB proceedings against the plaintiff's trademark application, the plaintiff would not acquiesce to defendant's demands, and the defendant did not provide plaintiff with a covenant not to sue. *Id.*

In contrast, the case relied on by IX, *Coleman v. Ellis*, No. C 19-8104 SBA, 2020 U.S. Dist. LEXIS 230960 (N.D. Cal. Mar. 13, 2020), is inapposite. In that case, the claimant's demand letter (which, unlike IX's letter here, did not even threaten legal action) was sent over three years before the declaratory-judgment action was filed. *Id.* at *9. Moreover, the court's statement in *Coleman* that "simply filing an opposition before the TTAB does not automatically create a controversy" does not mean, as IX now suggests, that such proceedings *cannot* justify jurisdiction over a declaratory-judgment action, nor that such disputes are necessarily "extremely limited," as IX claims. *Id.* at *10-11.

IX's arguments why the Court should nonetheless decline to exercise jurisdiction are unavailing.

First, while IX admits its threat letter to Plaintiff makes demands about Plaintiff's use of its mark that fall outside the scope of the TTAB proceeding, it asserts Plaintiff had no "real or

reasonable apprehension" because the letter never explicitly threatened court litigation—only that IX would take "appropriate action to protect its rights" unless Plaintiff and IX reached an agreement. Mot. at 16; ECF No. 11-2. This argument strains credulity. The letter, of course, *does* threaten litigation—it challenges Plaintiff's use of its mark, alleges instances of *actual* consumer confusion, demands Plaintiff "cease" use, and promises that "[i]n the absence of a satisfactory response, [IX] will have no choice but to consider all appropriate action . . . , *including* filing notices of opposition." Slafsky Decl. Ex. 2. IX's argument is out-of-step with case law finding subject matter jurisdiction where trademark threats are made and the parties do not settle on the claimant's terms. *See, e.g.*, *Delphix*, 2016 U.S. Dist. LEXIS 114255, at *10-13; *Chesebrough-Pond's, Inc. v. Faberge, Inc.*, 666 F.2d 393 (9th Cir. 1982).

Second, IX asserts Plaintiff had "no reasonable basis" for a continuing "apprehension" after December 9, 2020, when various TTAB deadlines passed as to *other* trademark applications filed by Plaintiff. Mot. at 16-17. However, IX had, in fact, initiated a trademark opposition proceeding by this time and it never communicated to Plaintiff that its demands about trademark use had suddenly transitioned to just one "limited issue." Mot. at 16. That IX determined not to oppose *other* trademark applications of Plaintiff, without saying a word to Plaintiff about its overall intentions and without providing a covenant not to sue, hardly lifted Plaintiff's apprehension of a suit.

Third, IX falsely asserts that Plaintiff never responded to IX's demand letter, suggesting that Plaintiff could not reasonably have been concerned about the threat of legal action. Mot. at 1. In fact, Plaintiff communicated with IX multiple times before filing this declaratory judgment action, up to and including March 26, 2021, when Plaintiff's counsel relayed a specific co-existence proposal to IX. Slafsky Decl. Ex. 4. On March 30, IX rejected Plaintiff's proposal. *Id.* Three days later, on April 2, Plaintiff filed this action to protect its trademark rights. Compl.

Finally, IX, without more, accuses Plaintiff of "dropping a declaratory judgment action on [IX's] head" and "blatant forum shopping" "to avoid participating in the TTAB opposition proceeding in favor of a much more expansive litigation in this district." Mot. at 2, 17. IX is again badly mistaken. It was IX that directed a detailed threat letter to Plaintiff concerning

Plaintiff's right to use its critical brand in the marketplace—a right that a federal district court (and not the TTAB) is uniquely empowered to address. *See V.V.V. & Sons Edible Oils*, 946 F.3d at 546. IX has never retracted its demands, has never offered a covenant not to sue, and it even rejected Plaintiff's offer to resolve the matter. Plaintiff need not allow threats to its ability to use its primary trademark to remain over its head indefinitely, and there is nothing unreasonable about Plaintiff seeking a declaration from a court in its home state. Plaintiff is entitled to a court's neutral determination on the merits—a determination this Court can and should make.

## B. THE COURT MAY PROPERLY EXERCISE SPECIFIC PERSONAL JURISDICTION OVER DEFENDANT IX

IX also seeks to dismiss this action for lack of personal jurisdiction under Rule 12(b)(2). To withstand this motion, Plaintiff "need only make a *prima facie* showing of jurisdictional facts." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011) (citation omitted). In particular, Plaintiff need only submit "admissible evidence which, if believed, would be sufficient to establish the existence of jurisdictional facts." *Marble Bridge Funding Grp., Inc. v. Liquid Cap. Exch., Inc.*, No. 5:15-cv-00177-EJD, 2015 U.S. Dist. LEXIS 130518, at *8 (N.D. Cal. Sept. 25, 2015). To the extent there are disputed evidentiary issues that arise in connection with a jurisdictional challenge, the Court must "resolve factual disputes in the plaintiff's favor." *CollegeSource*, 653 F.3d at 1073.

### 1. IX is Subject to Specific Jurisdiction

Plaintiff is alleging specific, not general, jurisdiction. The Ninth Circuit uses a three-part test to determine whether a non-resident defendant is subject to specific jurisdiction: "(1) [t]he non-resident defendant must *purposefully direct* his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which *arises out of or relates* to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with *fair play and substantial justice*, i.e. it must be reasonable." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (emphasis added) (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th

Cir. 1987)). After a plaintiff makes a *prima facie* showing of the first two elements, the burden shifts to the defendant to show that the exercise of jurisdiction would not be reasonable. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).

For the reasons below, the requirements of specific jurisdiction are easily satisfied here.

**a. IX Purposefully Directed its Activities at California**

"Purposeful direction" is shown by evidence that the defendant (i) committed an intentional act or acts (ii) expressly aimed at California and (iii) causing harm that the defendant knows is likely to be felt in California. *Perry v. Brown*, 791 F. App'x 643, 646 (9th Cir. 2019); *San Diego Cty. Credit Union v. Citizens Equity First Credit Union*, 325 F. Supp. 3d 1088, 1098 (S.D. Cal. 2018); *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000) (citing *Calder v. Jones*, 465 U.S. 783, 789 (1984)). IX contends that it has not "purposefully directed any relevant activity to this forum" (Mot. at 2), but as made clear above, this contention is demonstrably false.

**i. IX Committed Intentional Acts**

The "intentional act" element only requires "intentional conduct by the defendant that creates the necessary contacts with the forum." *Walden v. Fiore*, 571 U.S. 277, 286 (2014); *Life360, Inc. v. Advanced Ground Info. Sys., Inc.*, No. 15-cv-00151-BLF, 2015 U.S. Dist. LEXIS 126924, at *19-20 (N.D. Cal. Sept. 21, 2015) (Freeman, J.). IX's actions meet this requirement in multiple ways. IX (i) directed a cease-and-desist letter to Plaintiff demanding that Plaintiff stop certain uses of its trademarks, limit its use of the marks to only certain products and alter the distinctive presentation of its IMPOSSIBLE mark (Slafsky Decl. Ex. 2), (ii) filed an opposition proceeding against Plaintiff's trademark application (Slafsky Decl. Ex. 3), (iii) engaged in settlement discussions with Plaintiff (Slafsky Decl. Ex. 4) and (iv) engaged in promotional, business development and sales activities using the IMPOSSIBLE mark from California (*see, e.g.*, Slafsky Decl. Exs. 8-12).

**ii. IX Expressly Aimed Its Intentional Acts at California**

The express aiming element is met where a defendant's acts were clearly directed at California and its "conduct connects [the defendant] to the forum in a meaningful way."

*Walden*, 571 U.S. at 290; *Perry*, 791 F. App'x at 646. IX directed its demand letter to Plaintiff, a Redwood City business, with the intention of limiting Plaintiff's ability to operate under its trademarks in California. *See* Slafsky Decl. Ex. 2. It matters not at all that the letter was addressed to Plaintiff's lawyer in Seattle—the Ninth Circuit has made clear that the geographic location of the attorney receiving a demand letter is "irrelevant" to this analysis. "The critical factor was that in sending the letter, the defendant 'was purposefully [harming plaintiff] in California.'" *Bancroft & Masters*, 223 F.3d at 1087 (quoting *Metropolitan Life Ins. Co. v. Neaves*, 912 F.2d 1062, 1065 (9th Cir. 1990)). Likewise, IX's trademark opposition proceeding was directed at Plaintiff in California and not, as IX asserts, at Virginia, where the TTAB offices are located. *Id.* at 1088 (trademark claimant's challenge constituted purposeful availment because, though sent to Virginia-based registry, it was actually directed at California business); *Delphix Corp. v. Embarcadero Techs., Inc.*, 749 F. App'x 502, 506 (9th Cir. 2018) (dispute does not center around Virginia merely because that is where trademark opposition was filed).

Also, IX declined Plaintiff's co-existence proposal and maintained its challenge to Plaintiff's right to use its mark. Slafsky Decl. Ex. 4; *see Delphix*, 749 F. App'x at 506 (specific personal jurisdiction warranted because claimant, despite filing its opposition in Virginia, "challenged Delphix's right to *use* the DELPHIX mark during settlement talks in California"). IX has, additionally, operated its business and promoted its activities from and to California—intentional conduct that bears on the two elements of IX's infringement allegations, whether IX has superior common-law rights, and whether Plaintiff's use of its IMPOSSIBLE trademark is likely to cause confusion. Slafsky Decl. Exs. 8-13.

In sum, IX's claim that it has had "zero suit-related contacts" with California (Mot. at 7) is false. Moreover, directing a demand letter to a California-based party plainly satisfies the "express aiming" prong of the purposeful direction analysis. *Table de France, Inc. v. DBC Corp.*, No. EDCV 19-423 JGB (KKx), 2019 U.S. Dist. LEXIS 219520, at *11 (C.D. Cal. Oct. 18, 2019) (cease-and-desist letter on its own can be sufficient to satisfy "purposeful direction" and "aris[ing] out of" prongs as well as overall jurisdiction test). This is especially true where such a letter is combined with other forum-related conduct designed to cast a shadow over the

legality of its conduct. *See, e.g.*, *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1209 (9th Cir. 2006); *Life360*, 2015 U.S. Dist. LEXIS 126924, at *20-22 (Freeman, J.); *Flipboard, Inc. v. Amorphous*, No. 15-cv-03255-BLF, 2015 U.S. Dist. LEXIS 166551, at *14-17 (N.D. Cal. Dec. 10, 2015) (Freeman, J.).

**iii. The Harm From IX's Intentional Acts Has Been, and Will Be, Felt in California**

Plaintiff, as IX was well aware from review of Plaintiff's trademark records and website, is based in Redwood City. Compl. at 1; Slafsky Decl. Ex. 3. IX thus knew that the effect of its threatening conduct would be felt here in California—where Plaintiff was on the receiving end of IX's demands and IX's trademark opposition. *See Bancroft & Masters*, 223 F.3d at 1088. IX's enforcement actions threatened to limit Plaintiff's ability to grow aspects of its business in California and to disrupt certain marketing and promotional activities here. Such actions are more than sufficient to show that IX knew that harm to Plaintiff would be felt in this forum. *See Zero Motorcycles, Inc. v. Pirelli Tyre S.p.A.*, 517 F. App'x 589, 590 (9th Cir. 2013) (personal jurisdiction proper because "any harm that [plaintiff] suffered from the allegedly improper USPTO proceedings would therefore be felt by [plaintiff] in California" and defendants could therefore "'reasonably anticipate being haled into court' in California" (citation omitted)).

**2. Plaintiff's Claim Arises Out of IX's Forum-Related Activities**

A declaratory judgment plaintiff can show that a claim arises out of or relates to the defendant's forum-related activities when "but for" a demand letter directed to a forum state and/or the defendant's other forum-contacts, the plaintiff "would have no need for a judicial declaration of its right to use" the disputed name. *See Bancroft & Masters*, 223 F.3d at 1088 (plaintiff would not have required a judicial determination of its rights but for defendant's demands); *Table de France*, 2019 U.S. Dist. LEXIS 219520, at *10 ("this case 'arises out of'" that [cease-and-desist] letter and the subsequent discussions it prompted: after Defendant accused Plaintiff of trademark infringement, Plaintiff filed this lawsuit to seek assurances that it had a right to continue selling its products as it had been"). Here, Plaintiff's request for declaratory relief would not have been necessary but for IX's cease-and-desist letter, IX's

trademark opposition proceeding and IX's unwillingness to accept Plaintiff's proposal to resolve the matter.

The relationship between the forum state and the defendant's enforcement actions is heightened when the defendant has business interests in the forum state that are tied to the underlying litigation threat. Here, for example, IX was "building" its meal and nutrition business, the linchpin of its trademark allegations against Plaintiff, in California. Slafsky Decl. Ex. 9 (A) at 1, Ex. 8 (T) at 3, Ex. 10 (B) ; *see San Diego Cty. Credit Union*, 325 F. Supp. 3d at 1097 (Illinois defendant moved to dismiss declaratory action for lack of personal jurisdiction "because the claims asserted in the complaint [arose] from [the defendant]'s filings with the PTO in Virginia," but court exercised jurisdiction because defendant's TTAB action alleged likely confusion based, in part, on defendant's business activities in forum state).

In sum, Plaintiff has made an ample showing of the first two elements of the specific jurisdiction test. The burden thus shifts to IX to show the third element—that the exercise of jurisdiction is somehow unreasonable. That is a burden IX cannot carry.

**3. The Court's Exercise of Specific Jurisdiction Over IX Is Reasonable**

IX has "the burden of presenting a 'compelling case that the presence of some other considerations would render jurisdiction [in California] unreasonable.'" *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 607 (9th Cir. 2018) (quoting *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1132 (9th Cir. 2003)). No such showing was, or could be, made here.

To determine if the assertion of jurisdiction would be unreasonable, the Ninth Circuit has articulated a "seven-factor balancing test that weighs: (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Freestream Aircraft*, 905 F.3d at

607. Application of these factors to this dispute show that the Court's exercise of personal jurisdiction over IX is more than reasonable.

**Extent of the defendant's purposeful interjection:** "In any personal jurisdiction case [the court] must evaluate all of a defendant's contacts with the forum state, whether or not those contacts involve wrongful activity by the defendant." *Deal Point Trading v. Standard Process, Inc.*, No. 3:19-cv-01926-WQH-AGS, 2020 U.S. Dist. LEXIS 193192, at *14-17 (S.D. Cal. Apr. 20, 2020) (quoting *Yahoo!*, 433 F.3d at 1207). As set forth in Section III (D), *supra*, IX has enjoyed regular and significant contacts with California. It has operated from California, has used the state as the "base" of its operations, and consistently and extensively conducted its business activities within California. Slafsky Decl. Ex. 6 (B) at 58:16-18, Exs. 7-14. Its contacts with California are hardly, as IX now contends, merely "fortuitous" or "tenuous." *See, e.g.*, Mot. at 1, 8-9, 14.

**Burden on the defendant of defending in the forum:** IX will suffer no undue burden in litigating a case in the state where it has done business for years, the laws of which it relies on in contracts, and where it has aimed its trademark enforcement activity.

This is particularly true where, as here, IX is essentially a one-man operation. ECF No. 26-1 at 2; ECF No. 11-1 at 1; Slafsky Decl. Ex. 6 (B) at 61:18-20. Mr. Runyon has held himself out as a tech-savvy "digital nomad" who is location-independent and can perform his work from anywhere. Slafsky Decl. Ex. 6 (B) at 29:14-18, 46:9-16; ECF No. 26-1 ¶ 12. He has proclaimed that he has traveled "constantly," he makes robust use of the Internet and, he says, he can work from "wherever [he] tend[s] to be." Slafsky Decl. Ex. 6 (B) at 93:1-2, 102:14-19.

It is also noteworthy that this Court, since the onset of the COVID-19 pandemic, has conducted almost all matters remotely, which significantly reduces the burden of participation on out-of-state defendants. *See generally MedImpact Healthcare Sys., Inc. v. IQVIA Inc.*, No. 19cv1865-GPC(LL), 2020 U.S. Dist. LEXIS 155996, at *39-40 (S.D. Cal. Aug. 27, 2020) ("[W]ith today's modern technological advances, and also in light of COVID-19, where parties have been forced to litigate in a remote, virtual manner, it would not be inefficient to litigate the case in California."); *Ghuman v. Nicholson*, No. CV-20-02474-PHX-DLR, 2021 U.S. Dist. LEXIS

32674, at *7-8 (D. Ariz. Feb. 22, 2021) ("[T]he Court, especially since the onset of the COVID-19 pandemic, has conducted almost all matters remotely, which significantly reduces the burden of participation on foreign litigants."); *CollegeSource*, 653 F.3d at 1080 (noting only limited burden on defendant in litigating in California because "[w]ith the advances in transportation and telecommunications and the increasing interstate practice of law, any burden [of litigation in a forum other than one's residence] is substantially less than in days past" (second alteration in original) (citation omitted)).

IX testified that it nonetheless remains unfair to have to participate in a court proceeding here:

- "I believe litigating this in California, where we don't have any contacts, is significantly more burdensome [than it would be in Texas]." Slafsky Decl. Ex. 6 (B) at 95:7-12;
- "I haven't—I haven't personally lived in California since 2016. I have spent time there, and it's been decreasing by a lot. And I haven't—yeah, I haven't been back—I mean—yeah. I haven't personally held a residence or anything." Slafsky Decl. Ex. 6 (B) at 93:13-17;
- "The technical setup that we experienced this morning [at the remote deposition], there's a lot of back-and-forth on that. There's a lot of administrative aspects about litigating in California that doesn't make it so simple as just a simple video call. I think there are several aspects." Slafsky Decl. Ex. 6 (B) at 96:2-6; and
- "I have a very busy schedule. I am currently training for multiple challenges coming up that require[] me to be in Austin, Texas, with my training team . . . I purposely personally made the move to get out of California a long time ago." Slafsky Decl. Ex. 6 (B) at 93:22-94:3.

These statements are either false or reflect the ordinary inconvenience of litigation. General inconvenience arising from defense of a lawsuit does not mean that proceeding in California is somehow materially more burdensome than proceeding in Texas or some other state. As set

forth above, IX does, in fact, have significant contacts here, and Mr. Runyon is routinely here for business and other matters.

**Extent of conflict with the sovereignty of the defendant's state:** IX has made no suggestion that proceeding with this action conflicts with the sovereignty of any other state. In particular, this Court's exercise of jurisdiction over IX would not conflict with the sovereignty of Texas, where IX says it is located and where its LLC was recently formed. Slafsky Decl. Ex. 1 (A-B).

**The forum state's interest in adjudicating the dispute:** California's interest in resolving this action is strong, as Plaintiff is based here, IX has a long history of activity in California, IX is alleging likely confusion of consumers in California, and IX seeks to preclude Plaintiff from using its most important trademark in California and elsewhere.

**The most efficient judicial resolution of the controversy,** and **the importance of the forum to the plaintiff's interest in convenient and effective relief:** Plaintiff filed this action in April. ECF No. 1. Were the Court to decline jurisdiction, Plaintiff would be compelled to commence a new action in Texas or elsewhere, starting this process all over again and resulting in months of additional delay. A neutral determination by this Court, therefore, would be the most efficient judicial resolution of the controversy.

**The existence of an alternative forum:** IX has only alleged that there is one alternative forum, Texas, and that it would just prefer to litigate in its "home" state. Mot. at 15. However, a new declaratory judgment action in Texas or another state is unnecessary and would lead to a less efficient resolution of this dispute. The fact that IX may prefer to litigate in Texas does not affect this analysis.

As to the TTAB, it has suspended IX's opposition proceeding pending disposition of this action, and in any event, its proceedings could not fully resolve the dispute between the parties. TTAB proceedings bear only on the status of Plaintiff's registration of its trademark. The TTAB lacks authority over Plaintiff's actual use of its marks and over Plaintiff's use of its trade name. *V.V.V. & Sons Edible Oils*, 946 F.3d at 546 (citing TBMP § 102.01 (2019)) (noting that because the TTAB is a limited proceeding involving registration of a trademark, it "is not authorized to

determine the right to use, nor may it decide broader questions of infringement or unfair competition" (citation omitted)).

In sum, IX purposefully directed its threats at Plaintiff in California, where IX knew its conduct would have the greatest impact, and this declaratory action arises out of those threats. It is eminently reasonable that this Court exercise jurisdiction over IX and provide a determination resolving the entire dispute between the parties.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny IX's Motion to Dismiss in its entirety.

Dated: September 14, 2021

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: /s/ *John L. Slafsky*
DAVID H. KRAMER
JOHN L. SLAFSKY
BRANDON P. LEAHY