Kevin K. Eng (SBN 209036)
Alan Patrick Smith (SBN 298556)
MARKUN ZUSMAN FRENIERE COMPTON LLP
465 California Street, Suite 401
San Francisco, CA 94194
Telephone: (415) 438-4515
Facsimile: (415) 434-4505
keng@mzclaw.com

David E. Weslow (admitted *pro hac vice*)
Adrienne J. Kosak (admitted *pro hac vice*)
WILEY REIN LLP
1776 K Street NW
Washington, DC 20006
Telephone: (202) 719-7000
Facsimile: (202) 719-7049
dweslow@wiley.law
akosak@wiley.law

*Attorneys for Defendant Impossible LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMPOSSIBLE FOODS INC.,<br>Plaintiff,<br>v.<br>IMPOSSIBLE X LLC,<br>Defendant. | Case No. 5:21-cv-2419-BLF<br><br>DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS |

**TABLE OF CONTENTS**


**Page**

I. PERSONAL JURISDICTION ..........2

A. Defendant's Activities to Which Plaintiff's Claim Relates Were Not Directed to California. ..........3

B. Defendant's Activities to Which This Claim Relates Are Not of a Type to Give Rise to Personal Jurisdiction. ..........8

C. Exercise of Jurisdiction over Defendant Is Unreasonable. ..........9

II. SUBJECT MATTER JURISDICTION ..........14

III. CONCLUSION ..........15

## TABLE OF AUTHORITIES


**Page(s)**

**Cases**

*Alexandria Real Est. Equities v. RUNLABS (UK) Ltd.*,
No. 18-cv-07517-LHK, 2019 WL 4221590 (N.D. Cal. Sept. 5, 2019) .......... 5

*Artec Grp. v. Klimov*,
No. 15-cv-3449-RMW, 2015 WL 9304063 (N.D. Cal. Dec. 22, 2015) .......... 8

*Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*,
552 F.3d 1324 (Fed. Cir. 2008) .......... 7, 8, 9

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
874 F.3d 1064 (9th Cir. 2017) .......... 2, 3, 5

*Bancroft & Masters v. Augusta Nat'l Inc.*,
223 F.3d 1082 (9th Cir. 2000) .......... 4, 5, 6

*Corcera Sols., LLC v. Razor, Inc.*,
No. 5:13-CV-05113-PSG, 2014 WL 587869 (N.D. Cal. Feb. 14, 2014) .......... 12

*Delphix Corp. v. Embarcadero Techs., Inc.*,
749 F. App'x 502 (9th Cir. 2018) .......... 5, 6

*Mehr v. Fed'n Internationale de Football Ass'n*,
115 F. Supp. 3d 1035 (N.D. Cal. 2015) .......... 2, 9

*Principal Life Ins. Co. v. Robinson*,
394 F.3d 665 (9th Cir. 2005) .......... 15

*San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*,
325 F. Supp. 3d 1088 (S.D. Cal. 2018) .......... 7, 9

*Steel v. United States*,
813 F.2d 1545 (9th Cir. 1987) .......... 10

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
433 F.3d 1199 (Fed. Cir. 2006) .......... 8

*Zawitz v. Star Magic*,
No. 20-cv-07121-DMR, 2021 WL 1788590 (N.D. Cal. May 5, 2021) .......... 5

*Zero Motorcycles, Inc. v. Pirelli Tyre S.p.A.*,
517 F. App'x 589 (9th Cir. 2013) .......... 6

Plaintiff Impossible Foods Inc.'s ("Plaintiff") opposition to Impossible LLC's ("Defendant") motion to dismiss willfully misunderstands Defendant's arguments and the relevant law. Its choice to do so—while egregious and heightening the undue burden on a smaller yet senior trademark holder—is not surprising, as the facts and law demand that this action be dismissed.

As to personal jurisdiction, Plaintiff's argument relies on law that Defendant has explained in detail was abrogated by Supreme Court precedent. Plaintiff identifies only three contacts related to this action that are purportedly directed to California: a letter from Defendant's counsel to Plaintiff's counsel, an opposition proceeding before the Trademark Trial and Appeal Board of the U.S. Patent and Trademark Office ("TTAB" or "the Board"), and a single telephone call to Defendant's counsel regarding settlement of the opposition proceeding. None reached into California: the TTAB proceeding was filed in Northern Virginia, and both the letter and settlement discussions were directed to Plaintiff's Washington-based counsel. Plaintiff tries to side-step these clear facts by claiming that the contacts reached into California because Defendant's actions targeted Plaintiff, which happens to be a California corporation. But the Supreme Court unequivocally ruled in *Walden v. Fiore* that personal jurisdiction must be based on the defendant's actions, not where the plaintiff happens to be located.

Plaintiff spends a large portion of its brief and accompanying evidence discussing what it claims are "significant" contacts with California, attempting to give the impression that Defendant has extensive, current ties to the forum and has dishonestly contested personal jurisdiction here. Defendant has never been dishonest or withheld relevant information; from the beginning, Defendant has been clear that there are only a narrow scope of contacts that are relevant to specific jurisdiction in the context of noninfringement declaratory judgment claims. Plaintiff apparently acknowledges that the alleged "significant" contacts are actually not related to the claim at issue, as it discusses them only in its synopsis of its jurisdictional discovery and its argument regarding the reasonableness of jurisdiction. As Defendant has argued all along, these generalized and largely dated contacts are not probative of the issues at hand. To the extent they bear any relevance whatsoever, that relevance is only the third prong of the specific jurisdictional analysis (reasonableness), which the Court does not reach until Plaintiff establishes the first two prongs

(purposeful direction and claims arising out of/related to that direction)—which Plaintiff simply cannot do.

Setting aside Defendant's general and dated business contacts, almost all of which ceased in 2016, the specific jurisdiction analysis in this action boils down to Defendant's counsel sending Plaintiff's counsel one letter, and then filing an administrative proceeding relating to a single federal trademark application. Even if those actions were directed to California (which they were not), this is the paradigm example of limited action to enforce intellectual property rights, for which courts have declined to extend personal jurisdiction to avoid a chilling effect. Defendant asks that the Court reach the same conclusion here.

Finally, with regard to subject-matter jurisdiction, Defendant questions more than simply the existence of a "case or controversy" on which Plaintiff's opposition focuses. Defendant argues that the facts surrounding this particular case demonstrate abuse of the Declaratory Judgment Act to forum shop, seek tactical advantage, escalate an extremely narrow dispute into a much broader one challenging Defendant's intellectual property, and impose undue burden on a smaller senior trademark holder. Defendant requests that the Court recognize this abuse of the Declaratory Judgment Act, and exercise its discretion to decline jurisdiction over this case.

# I. <u>PERSONAL JURISDICTION</u>

In its opposition (Dkt. No. 35, "Opp."), Plaintiff acknowledges that Defendant is not subject to general personal jurisdiction in California. Opp. at 14. Plaintiff therefore asserts only specific jurisdiction over Defendant with regard to its declaratory judgment action for noninfringement. To prove specific jurisdiction, Plaintiff must show that:

(1) Defendant purposefully directed its activities toward the forum;

(2) Plaintiff's declaratory judgment claims arise out of or relate to Defendant's forum-related activities; and

(3) "the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable."

*See Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017). Plaintiff bears the burden of demonstrating purposeful direction and relation to the claims. Only after Plaintiff

demonstrates these elements will the Court reach the question of reasonableness. *See Mehr v. Fed'n Internationale de Football Ass'n*, 115 F. Supp. 3d 1035, 1053 (N.D. Cal. 2015) ("The court does not reach the third prong of the specific jurisdiction test—whether the exercise of jurisdiction would be reasonable—as the burden shifts to [defendant] only if plaintiffs are able to satisfy the first two prongs of the test.").

Elements one and two of the specific jurisdiction test are inextricably linked: element one defines the activities that must satisfy element two. *See Axiom Foods*, 874 F.3d at 1068. One would assume that after aggressively seeking jurisdictional discovery and continuing to maintain this action after receiving that discovery, Plaintiff would have concrete identification of purposeful direction to the forum from which the claim arises or relates. Yet, after all its efforts, Plaintiff has only come forward with three occurrences from which the claim purportedly arises, all of which Plaintiff was aware before it burdened Defendant with jurisdictional discovery: Defendant's November 2020 letter to Plaintiff's counsel, the TTAB proceeding, and "IX's unwillingness to accept Plaintiff's proposal to resolve the matter." Opp. at 17-18. None of these constitute purposeful directions to the forum; therefore Plaintiff cannot establish specific personal jurisdiction, and the Court need not even consider reasonableness of the exercise of jurisdiction.

### A. <u>Defendant's Activities to Which Plaintiff's Claim Relates Were Not Directed to California.</u>

As Defendant describes in its motion to dismiss (Dkt. No. 11, "Mot."), its November 2020 letter, TTAB proceeding, and settlement communications[1] were not directed to California at all: its communications (both the letter and the telephone call regarding a coexistence agreement) were with Plaintiff's counsel in Washington state, and the TTAB proceeding filed and litigated with the Board in Northern Virginia. These facts are plain from the face of the documents. *See* Dkt. No. 11-2, Attachs. 3-4.

[1] Defendant further notes that the referenced settlement activity was hardly an affirmative act at all. Plaintiff's counsel initiated a single phone call to Defendant's counsel on the eve of Plaintiff's discovery response due date conveying a settlement proposal, which Defendant declined. *See* Opp. Slafsky Decl. Ex. 4.

Plaintiff attempts to tie these contacts to the forum by arguing that Defendant acted "with the intention of limiting Plaintiff's ability to operate under its trademarks in California," and "knew that the effect of its threatening conduct would be felt here in California—where Plaintiff was on the receiving end of IX's demands and IX's trademark opposition." Opp. at 16, 17. The first claim is specious—Plaintiff has no basis to even suggest that Defendant intended to limit Plaintiff's ability to operate in California particularly. Moreover, both claims rely on outdated law that runs contrary to Supreme Court precedent.

To argue that Defendant's acts reaching into Washington and Northern Virginia were in fact directed to California, Plaintiff relies on the following passage from *Bancroft & Masters v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087-88 (9th Cir. 2000):

> "[E]xpress aiming" encompasses wrongful conduct individually targeting a known forum resident. In *Metropolitan Life Insurance Co. v. Neaves*, 912 F.2d 1062 (9th Cir.1990), we held that an Alabama resident could be haled into a California court on the basis of a letter she sent to an insurance company representing that she was entitled to an insurance payment that actually belonged to a California resident. We stated that under *Calder*, it was irrelevant where the letter was sent. The critical factor was that in sending the letter, the defendant "was purposefully defrauding [plaintiff] in California." 912 F.2d at 1065. Similarly, in *Brainerd v. Governors of the University of Alberta*, 873 F.2d 1257 (9th Cir.1989), we held that an Arizona court could exercise specific jurisdiction over Canadian residents who, in response to telephone calls directed to them in Canada, made statements that allegedly defamed a person they knew resided in Arizona. *Id*. at 1259-60. Even though the Canadian defendants had not initiated the telephone calls, the statements they made about the plaintiff during the conversations were not "untargeted negligence" but rather were "performed for the very purpose of having their consequences felt in the forum state."
>
> The presence of individualized targeting is what separates these cases from others in which we have found the effects test unsatisfied. In *Cybersell*, for example, there was no showing that the defendants even knew of the existence of the plaintiffs, let alone targeted them individually.
>
> Applying these concepts to the instant case, we conclude that B & M has demonstrated purposeful availment by ANI under the *Calder* effects test. ANI acted intentionally when it sent its letter to NSI. The letter was expressly aimed at California because it individually targeted B & M, a California corporation doing business almost exclusively in California. Finally, the effects of the letter were primarily felt, as ANI knew they would be, in California.

*See* Opp. at 16 (citing *Bancroft & Masters*, 223 F.3d at 1087, to argue that "the Ninth Circuit has made clear that the geographic location of the attorney receiving a demand letter is 'irrelevant' to this analysis. 'The critical factor was that in sending the letter, the defendant 'was purposefully [harming plaintiff] in California.''"); *id*. at 18 (citing *Bancroft & Masters*, 223 F.3d at 1088, to argue that "IX thus knew that the effect of its threatening conduct would be felt here in California—where Plaintiff was on the receiving end of IX's demands and IX's trademark opposition.").

Essentially, this passage from *Bancroft & Masters* stands on the proposition that individualized targeting—i.e., targeting a party known to be within the forum—meets the express aiming requirement to demonstrate purposeful direction. ***But the Supreme Court has rejected this proposition*** since the date *Bancroft & Masters* issued. In *Walden v. Fiore*, the Supreme Court held that the "substantial connection" between the suit-related conduct and the forum State "must arise out of contacts that the 'defendant *himself*' creates with the forum State . . . not the defendant's contacts with persons who reside there." 571 U.S. 277, 284-85 (2014) (emphasis in original). As the court stated, "the plaintiff cannot be the only link between the defendant and the forum." *Id.* at 285. The Ninth Circuit has gone on to clarify that "while a theory of individualized targeting may remain relevant to the minimum contacts inquiry, it will not, on its own, support the exercise of specific jurisdiction." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1070 (9th Cir. 2017).

In light of *Walden*, clarified by *Axiom*, the portion of *Bancroft & Masters* on which Plaintiff relies is no longer good law.[2] Performing actions outside the forum that will be felt by a party inside the forum is not sufficient to establish personal jurisdiction. To the extent there remains any doubt, this District has repeatedly declined to follow the outdated principles of *Bancroft & Masters*. *See*

---

[2] Defendant has explained the abrogation of *Bancroft & Masters* before, in its opposition to Plaintiff's motion for jurisdictional discovery. Dkt. No. 26 at 8. In its reply to that motion, Plaintiff merely noted that *Bancroft & Masters* had been cited in the last few years. Dkt. No. 29 at 4 n.6 (pointing to the Ninth Circuit's citation of *Bancroft & Masters* in *Delphix Corp. v. Embarcadero Techs., Inc.*, 749 F. App'x 502 (9th Cir. 2018). Of course, the fact that the case is cited for unrelated propositions does not ameliorate its conflict with Supreme Court precedent. *See Delphix*, 749 F. App'x at 506 (citing *Bancroft & Masters*, 223 F.3d at 1086, for the uncontested proposition that the exercise of specific jurisdiction must be fair and reasonable). And in its opposition here, Plaintiff does not even attempt to address that conflict, despite being well aware of the issue, which is yet further evidence of Plaintiff's true motives in bringing this action.

*Zawitz v. Star Magic*, No. 20-cv-07121-DMR, 2021 WL 1788590, at *6 (N.D. Cal. May 5, 2021) ("[T]he Ninth Circuit's reasoning in . . . *Bancroft* . . . is simply not consistent with the Supreme Court's decision in Walden."); *Alexandria Real Est. Equities v. RUNLABS (UK) Ltd.*, No. 18-cv-07517-LHK, 2019 WL 4221590, at *10 (N.D. Cal. Sept. 5, 2019) ("*Bancroft* predates the United States Supreme Court's *Walden* decision, and *Walden* altered the operated framework for specific jurisdiction.").

Defendant also relies on *Delphix Corp. v. Embarcadero Techs., Inc.*, 749 F. App'x 502 (9th Cir. 2018) to claim that a "dispute does not center around Virginia merely because that is where [a] trademark opposition was filed." Opp. at 16. That argument grossly mischaracterizes *Delphix.* In *Delphix,* the Ninth Circuit found specific jurisdiction where *both parties* were based in California in the relevant timeframe, and conducted settlement talks *physically within California* regarding the plaintiff's use of the mark at issue. *Delphix,* 749 F. App'x at 506. The Ninth Circuit concluded that "[w]hen every aspect of the case—from the parties to the underlying disputed rights—is completely centered in California, we cannot say the exercise of specific jurisdiction in California would be unfair or unreasonable." *Id.* The situation here is entirely different: Texas-based Defendant brought a TTAB proceeding relating to California-based Plaintiff's right to a federal trademark registration, and subsequently Plaintiff's Washington state-based counsel initiated a single telephone conversation with Defendant's Washington D.C.-based counsel regarding possible settlement.[3] *See* Opp. Slafsky Decl. Ex. 4. Here, the *only* part of this dispute that centers on California is Plaintiff's domicile, which is plainly insufficient to demonstrate jurisdiction.

In its section regarding where the harm of Defendant's actions is felt, Plaintiff relies on *Zero Motorcycles, Inc. v. Pirelli Tyre S.p.A.*, 517 F. App'x 589 (9th Cir. 2013). Opp. at 17. Not coincidentally, Defendant cited *Zero Motorcycles* in its motion to dismiss, to alert the Court of this reference while explaining that it, just like *Bancroft & Masters*, it predates *Walden* and is clearly inconsistent with *Walden*. Mot. at 13 n.4. Plaintiff did not even attempt to rebut Defendant's

[3] Plaintiff's theory that the single telephone call initiated by its counsel somehow confers personal jurisdiction over Defendant is newly added, i.e., not discussed in either its Complaint or its briefing on jurisdictional discovery, though Plaintiff obviously knew of this communication prior to filing both. It appears that this new theory is an attempt to shoehorn this dispute into the inapposite law of *Delphix*.

argument or otherwise explain how *Zero Motorcycles*'s holding could survive *Walden*. Plaintiff's citation to the case in this brief, without even addressing Defendant's explanation that it is no longer good law, belies the merit of Plaintiff's entire opposition.

Finally, Plaintiff obliquely draws general business contacts from 2015 and 2016 into the first two prongs of the specific jurisdiction analysis, arguing that "business interests" can act to "heighten[]" "[t]he relationship between the forum state and a defendant's enforcement actions." Opp. at 18. It is unclear whether Plaintiff is arguing that general business interests can form the basis of specific jurisdiction, or whether those general business interests can be used to bolster claim-related contacts that are not sufficient to give rise to jurisdiction. The former is contrary to established law cited by Defendant in its motion to dismiss, which Plaintiff has not contested here. Mot. at 9-11 (discussing case law that holds that a noninfringement declaratory judgment claim relates to the defendant's intellectual property enforcement efforts, not the defendant's efforts to commercialize its own products). The latter runs contrary to analogous patent infringement law, discussed in greater detail in the next section. *See Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*, 552 F.3d 1324, 1334 (Fed. Cir. 2008).

Regardless, the only case that Plaintiff cites for this "heightening" proposition, *San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 325 F. Supp. 3d 1088 (S.D. Cal. 2018), does not support either argument. There, the Southern District found that the plaintiff's mark was used *only* in southern California, and that the defendant was inspired to file its cancellation proceeding when it expanded its business into southern California and an employee physically within California encountered the plaintiff's use of the mark. *Citizens Equity*, 325 F. Supp. 3d at 1099-100. In that unique context, "[t]he declaratory relief claims arise from [the defendant's] expansion of its credit union into California." *Id.* Quite unlike *Citizens Equity*, here, Plaintiff boasts of the broad availability of its products throughout the nation, *e.g.*, Opp. at 3, and Defendant learned of Plaintiff's use of the marks through exposure to that national use, Dkt. No. 11-1 ¶ 16. There is no indication that the dispute here stemmed from Defendant's business interests in California, as was the deciding factor in *Citizens Equity*. The case is entirely inapposite.

Because the only contacts from which Plaintiff alleges the claim arises were not directed into California, and only tangentially touched the forum because Plaintiff happens to be based there, those contacts do not suffice to establish personal jurisdiction.

**B. <u>Defendant's Activities to Which This Claim Relates Are Not of a Type to Give Rise to Personal Jurisdiction.</u>**

The fact that Defendant did not direct any of the activities related to Plaintiff's claim into California is only the first layer of the multi-layered defects to Plaintiff's jurisdiction argument. The second is that, even if the TTAB proceeding and letter could be interpreted as directed to California (rather than merely implicating a California resident), these activities do not create the type of significant tie to the forum that would give rise to personal jurisdiction.

The November 10, 2020 letter to Plaintiff's counsel invited a discussion regarding trademark coexistence, but is analogous to a cease and desist letter, which this District has determined "does not constitute purposeful availment or direction" based on "strong policy reasons to encourage cease and desist letters." *Artec Grp. v. Klimov*, No. 15-cv-3449-RMW, 2015 WL 9304063, at *3 (N.D. Cal. Dec. 22, 2015) (citing *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (Fed. Cir. 2006)). Under highly analogous patent law, a cease and desist letter can only give rise to personal jurisdiction when it is coupled with "other activities" directed to the forum. *Avocent*, 552 F.3d at 1334. But the "other activities" that can bolster a cease and desist letter are not just any activities—they must also be related to enforcement of intellectual property rights. *See id.* (identifying, e.g., "initiating judicial or extra-judicial patent enforcement within the forum, or entering into an exclusive license agreement or other undertaking which imposes enforcement obligations with a party residing or regularly doing business in the forum," and expressly excluding the intellectual property holder's own commercialization activity). Plaintiff has identified no such "other activities" here.

Likewise, Ninth Circuit precedent dictates that litigation-related activities such as those Defendant undertook in the TTAB proceeding does not give rise to personal jurisdiction. In *Yahoo!*, the Ninth Circuit stated that "[w]e do not regard the service of documents in connection with a suit brought in a foreign court as contacts that by themselves justify the exercise of personal jurisdiction over a foreign litigant in a United States court." 433 F.3d at 1209. To hold otherwise "would be

providing a forum-choice tool by which any United States resident sued in a foreign country and served in the United States could bring suit in the United States, regardless of any other basis for jurisdiction." *Id.* So too, here, if a TTAB proceeding could give rise to personal jurisdiction in whatever state the defendant was based, or wherever service documents were ultimately transmitted, TTAB plaintiffs would open themselves up to personal jurisdiction anywhere in the country simply by pursuing administrative proceedings to prevent issuance of trademark registrations. Consistent with this concern, numerous courts have rejected personal jurisdiction based on a TTAB proceeding. *See* Mot. at 12-13 (citing *Freud Am., Inc. v. Milwaukee Elec. Tool Corp*., No. 1:20CV109, 2020 WL 8248765, at *5 (M.D.N.C. June 17, 2020); *Int'l Watchman Inc. v. Strap.ly*, No. 1:18 CV 1690, 2019 WL 1903557, at *4 (N.D. Ohio Apr. 29, 2019); *Younique, L.L.C. v. Youssef*, No. 2:15-CV-00783-JNP-DBP, 2016 WL 6998659, at *8 (D. Utah Nov. 30, 2016); *Impact Prods., Inc. v. Impact Prods., LLC*, 341 F. Supp. 2d 1186, 1191 (D. Colo. 2004); *SIBU, LLC v. Bubbles, Inc.*, No. 2:11-CV-00477 DN, 2011 WL 6028835, at *4 (D. Utah Dec. 5, 2011)); *see also Citizens Equity*, 325 F. Supp. 3d at 1088 (in which the defendant argued and neither the court nor the plaintiff contested that the filing of a TTAB proceeding against a California entity does not form a basis for personal jurisdiction).

Therefore, even if Plaintiff could demonstrate that Defendant's letter sent to Washington and TTAB proceeding pursued in Virginia were actually directed to California, those limited contacts do not create a significant tie to the forum that justifies jurisdiction.

### C. <u>Exercise of Jurisdiction over Defendant Is Unreasonable.</u>

As stated above, because Plaintiff cannot establish claim-related purposeful direction to the forum, the Court need not even consider whether the exercise of jurisdiction would be reasonable. *See Mehr*, 115 F. Supp. 3d at 1053. But even if the contacts Plaintiff cites could be interpreted as purposeful direction into California, and even if that purposeful direction was of a substantive enough nature to give rise to personal jurisdiction, those contacts remain so limited that they do not comport with fair play and substantial justice.

The first consideration regarding fairness of jurisdiction, and in Defendant's view the primary consideration here, is the extent of contacts with the forum. This consideration is not open

season to bolster extremely limited relevant jurisdictional contacts with every touch to the forum. As discussed above, the Federal Circuit in *Avocent* gave guidance on what types of contacts *can* bolster a cease-and-desist letter in intellectual property declaratory judgment claims: contacts related to the enforcement of intellectual property rights, such as judicial and extra-judicial enforcement and exclusive licensing agreements, but not commercialization activity. *Avocent*, 552 F.3d at 1334. No such activities are alleged here.

Moreover, most of the California contacts to which Plaintiff points are too dated to bear any relevance to the jurisdictional inquiry. "[C]ourts must examine the defendant's contacts with the forum at the time of the events underlying the dispute when determining whether they have jurisdiction." *Steel v. United States*, 813 F.2d 1545, 1549 (9th Cir. 1987). This case purportedly arose out of a letter sent to Plaintiff's counsel on November 10, 2020. Thus, the contacts that would illuminate the fairness of jurisdiction should be considered on or reasonably before that date.

The majority of the contacts with California that Plaintiff cites are from long before the November 10, 2020 relevant date, stemming from Plaintiff's principal's time spent in California from 2014 to 2016—though one would not know the relevant dates from reading Plaintiff's opposition. Plaintiff intentionally omitted relevant dates, at times even recreating production documents to remove the dates. *Compare, e.g.*, Opp. Slafsky Decl. Ex. 8T (undated blog post, printed by Plaintiff on September 13, 2021) *with* Weslow Decl. ¶ 3 Ex. 1 (IMP00000096, identical blog post produced by Defendant during jurisdictional discovery, dated June 17, 2015). Below is a breakdown of Plaintiff's evidence with dates and contextual information included, demonstrating how temporally removed these contacts are from the present dispute:

- A LinkedIn page stating that Defendant is based in California: As Defendant explained in its opposition to jurisdictional discovery and accompanying declaration, the page bears indicia that it was created prior to **2016**. Dkt. No. 26-1 ¶ 5. The page is incorrect, and certainly is not intended to indicate any recent presence in California. *Id.* ¶¶ 6-7. Defendant does not use that LinkedIn page, and its principal was unaware that the LinkedIn page identified Defendant's location as California until Plaintiff brought it to

Defendant's attention. *Id.* ¶ 8. The only reason the page has not been removed is a concern over document preservation while this jurisdictional dispute is pending. *Id.*

- A blog post in which Defendant's principal describes his personal office as a "hub": dated **June 17, 2015**. Weslow Decl. Ex. 1. The "office" was a space adjacent to a gym that did not even have internet. *Id.* Uncontroverted evidence shows that Mr. Runyon vacated the office in mid-2016. Opp. Slafsky Decl. Ex. 8S (notice to vacate, dated April 22, 2016); Ex. 9B (February 6, 2019 blog post stating that Defendant's principal had not had an apartment in San Diego for several years, and while he enjoyed visiting, he could not justify making it a base of operations).
- A blog post in which Mr. Runyon referenced keeping a car and personal effects in California: dated **June 28, 2016**. *Id.* Ex. 10E. In the blog post, Mr. Runyon was clear that he was leaving San Diego for "the foreseeable future." *Id.* Indeed, he never returned on any sort of permanent basis. Dkt. No. 26-1 ¶ 11.
- Deposition testimony referring to Mr. Runyon's "base point": referring to the time between **2014 and 2016**. Opp. Slafsky Decl. Ex. 6B at 58:7-22.
- A Tweet in which Mr. Runyon is asked to identify his "homebase," and he responds "socal-ish (San Diego) and NYC usually": dated **February 26, 2017**. *Id.* Ex. 10F. This tweet corresponds with the time he was living as a "digital nomad" with no particular ties, and he responded with the last places he had lived. Dkt. No. 26-1 ¶ 12.
- Blog posts about building nutritional projects: dated **June 17 and 22, 2015**. Weslow Decl. Ex. 1, Opp. Slafsky Decl. Exs. 8T and 9A.
- Social media posts referencing California: **22 are dated 2016 or earlier**. *Id.* Ex. 8A-Q, Ex. 10A-E. Four are from 2017. *Id.* Ex. 10F-I. Four are from 2018—one particularly noting Mr. Runyon's decision *not* to settle in California, and one which was a repost from a third party. *Id.* Ex. 10J-M. Four posts from 2019, none of which actually indicate that Mr. Runyon or Impossible operations are taking place there. *Id.* Ex. 10N-Q. And one post from 2020, explicitly identified as a throwback to 2011. *Id.* Ex. 10R.

- Archive.org Wayback Machine record for Impossible.Ventures: dated **March 15, 2015**. *Id.* Ex. 12. Impossible Ventures ceased to exist in 2016. Dkt. No. 26-1 ¶ 5.

Defendant has been forthright about the fact that its principal, Joel Runyon, lived in San Diego from 2014 until 2016 when he gave up his apartment to live nomadically around the world, and then permanently settled in Austin Texas in 2018. Dkt. No. 26-1 ¶¶ 4-15. He personally had a small office for a short period of time between 2015 and 2016, in which he did work for Defendant and other projects. *Id.* ¶ 6. That office was never established as Defendant's headquarters. *Id.* None of Plaintiff's evidence contradicts these facts; Plaintiff merely repackages them without relevant dates to increase their perceived significance and paint Defendant in a dishonest light.[4]

Because the vast majority of these contacts are temporally distant from the purported dispute, they bear little to no relevance to the jurisdictional inquiry. Indeed, the Magistrate Judge found that these same 2014-2016 contacts that Plaintiff cites in its opposition were "from several years prior to the filing of the Complaint," Dkt. No. 32 at 2, and modified several of Plaintiff's jurisdictional requests to limit them to the time period of either 2018-2021 or 2020-2021, Dkt. No. 34. It also bears noting that Plaintiff did not even begin to use the IMPOSSIBLE mark in commerce until June 27, 2016, *see* Weslow Decl. ¶ 4 Ex. 2, i.e., after Mr. Runyon had already left California, *see* Opp. Slafsky Decl. Ex. 10E. Considering that the contacts ended before Plaintiff even started using its marks in commerce, they are in no way claim-related, and their application to a specific jurisdiction inquiry is inappropriate.

Numerous contacts cited by Plaintiff are also irrelevant and/or highly attenuated, apart from the dates they took place. For instance, Plaintiff alleges that Defendant "entered into at least six contracts with California companies mandating California as the forum for any disputes." Opp. at

[4] Plaintiff also claims that Mr. Runyon was less than forthcoming in his deposition, because he allegedly could not speak in great detail regarding topics such as the location of manufacturers, fulfillment centers, business in California relative to other states, location of customers, and trips to California prior to 2018. Opp. at 9. But Plaintiff did not propound deposition topics inquiring into those highly specific facts, and instead asked generally about burden and fairness of jurisdiction in the forum. *Id.* Plaintiff likely chose not to lodge those particular deposition topics because the Magistrate Judge had already limited Plaintiff's discovery to contacts "relating to specific jurisdiction, not general jurisdiction." Dkt. No. 32 at 2. And Mr. Runyon had no reason to believe he needed to be prepared to speak in detail related to general forum contacts.

1-2, 7. Upon inspection of those contracts, it is clear that all are click-through terms of service for social media platforms. *Id.* Slafsky Decl. Ex. 15 (terms of service and user agreements for LinkedIn, Instagram, Twitter, YouTube, Reddit, and Pinterest). Defendant had no opportunity to negotiate these contracts; it merely accepted them just like many millions of users. None of these are persuasive regarding personal jurisdiction. *Cf. Corcera Sols., LLC v. Razor, Inc.*, No. 5:13-CV-05113-PSG, 2014 WL 587869, at *3 (N.D. Cal. Feb. 14, 2014) (finding that the mere use of California-based social networks such as Twitter and LinkedIn cannot be found persuasive under Ninth Circuit precedent). Indeed, Plaintiff attempted to seek jurisdictional discovery into such click-through contracts, but its attempt was denied by the Magistrate Judge. *See* Dkt. No. 34 (limiting Plaintiff's request for contracts with California forum selection provisions to "negotiated" contracts).

Plaintiff also argues that Defendant has worked with a Los Angeles-based apparel manufacturer to source apparel. That company was one of several that Defendant worked with to create promotional t-shirts. *See* Opp. Slafsky Decl. Ex. 6 at 105:1-106:7. The location of the company was not relevant to Defendant, and Mr. Runyon was not even aware where they were located. *Id.* at 106:10-19.

Finally, Plaintiff points to Mr. Runyon's work as a business advisor to a separate company called Woven. Plaintiff has not established that Mr. Runyon's individual work should be imputed to Defendant, and moreover, Mr. Runyon's online, nationally accessible promotional efforts for that company cited by Plaintiff demonstrate little meaningful connection to California.

In addition to the fairness consideration relating to the Defendant's purposeful interjection into California, Defendant also argues that litigating in this forum would be burdensome to Defendant, a business based in Texas with all personnel located there. While this factor is not always persuasive in this digital era, and Defendant's principal has candidly admitted a history of traveling while working, Defendant believes the factor is relevant when considered in conjunction with Defendant's very tenuous ties to the forum.

As stated above, the Court need not even reach the question of fairness of exercising jurisdiction, since Plaintiff cannot meet its burden of demonstrating personal direction from which

the declaratory judgment claim arises or relates. However, if the Court is inclined to consider this factor, Defendant asserts that its limited ties to California, coupled with the added burden of litigating in a forum where it currently maintains no presence, demonstrate that jurisdiction over Defendant here would be unfair.

## II. SUBJECT MATTER JURISDICTION

Plaintiff misconstrues Defendant's motion under 12(b)(1) to paint Defendant and its argument in a false light, claiming that Defendant stated that "there is no 'case or controversy' whatsoever." Opp. at 9 (quoting Mot. at 15). That is *not* what Defendant has argued. Defendant asserts that "[t]here is no case or controversy *that warrants the Court's exercise of discretion to hear the declaratory judgment claim*." Mot. at 15 (emphasis added).

Defendant's November 10, 2020 letter represents a measured approach to any potential conflict between the parties' trademarks, and a clear desire to reach amicable resolution. *See* Dkt. No. 11-2 Attach. 3 (expressing a preference "to work amicably," and threatening filing notices of opposition before the Board "in the absence of a mutual agreement"). What's more, the letter coupled with Defendant's subsequent actions (specifically, allowing two of three trademark applications noted in the letter to proceed to registration, while proceeding against only a single application for a trademark that was not yet in use) demonstrate that Defendant was pursuing an extremely limited administrative claim and other allegations in the letter had become moot. *See* Dkt. No. 11-2 ¶ 6.

Plaintiff alleges that it had a "real and immediate apprehension of a threat to its right to use (and not just register) its trademark," yet Plaintiff never even bothered to substantively respond to the November 10, 2020 letter or propound any discovery in the TTAB proceeding. *Id.* ¶¶ 5, 8. Instead, Plaintiff waited almost five months from receipt of the letter—until the day before its responses to Defendant's discovery were due in the TTAB proceeding—and then filed suit across the country, in a jurisdiction in which Defendant had no relevant contacts, and escalated the dispute to not only seek a noninfringement judgment for all uses of IMPOSSIBLE, but also invalidate a number of Defendant's long-standing trademark registrations. *Id.* ¶ 9 and Attach. 5.

Under these circumstances, Defendant asks the Court to decline to hear this declaratory judgment matter—a decision entirely within the Court's discretion. Such a decision is justified by Plaintiff's forum-shopping of its home forum despite Defendant's lack of relevant contacts there; Plaintiff's clear attempt to gain a procedural advantage by waiting until the day before its discovery was due in the TTAB and then escalating this dispute to a district court litigation seeking not only broad declarations but attempting to cancel Defendant's clearly senior trademarks; and the fact that the only real and immediate dispute, the opposition of a single intent-to-use trademark application, was already on track to be resolved before the Trademark Trial and Appeal Board. *See Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 672 (9th Cir. 2005) (articulating factors to be considered when determining whether to exercise jurisdiction over declaratory judgment claims, including discouraging forum shopping, avoiding duplicate litigation, discouraging declaratory judgment simply to seek a procedural advantage, and the availability and convenience of other remedies).

## III. CONCLUSION

Based on the arguments set forth in Defendant's motion and this reply, Defendant respectfully requests that this matter be dismissed for want of personal and subject-matter jurisdiction.

Dated: October 7, 2021 By: /s/

Kevin K. Eng
Alan Patrick Smith
Markun Zusman Freniere Compton LLP
465 California Street, Suite 401
San Francisco, CA 94194

*Attorney for Defendant*
*Impossible LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 7th day of October, 2021, the foregoing was electronically served on all counsel of record via CM/ECF.

By: /s/ ______________________

Alan Patrick Smith