# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| IMPOSSIBLE FOODS INC., <br><br>   Plaintiff, <br><br>   v. <br><br> IMPOSSIBLE X LLC, <br><br>   Defendant. | Case No. 21-cv-02419-BLF <br><br> **ORDER GRANTING IN PART MOTION TO DISMISS; DISMISSING CASE WITHOUT PREJUDICE FOR LACK OF PERSONAL JURISDICTION** <br><br> [Re: ECF No. 11] |

This declaratory judgment action involves a dispute between Plaintiff Impossible Foods Inc. ("Impossible") and Defendant Impossible X LLC ("IX") over trademarks held by both entities. Impossible seeks a declaration that its uses of its IMPOSSIBLE mark, which is related to recipes, food ingredients, and cooking information, do not infringe or dilute IX's marks; that its rights in the IMPOSSIBLE mark are superior to IX's rights in those fields; and that certain of IX's marks be cancelled for abandonment and non-use. IX has moved to dismiss for lack of subject matter jurisdiction and lack of personal jurisdiction. *See* ECF No. 11 ("Motion"); *see also* ECF No. 36 ("Reply"). Impossible opposes. *See* ECF No. 35 ("Opp."). The Court held a hearing on the Motion on October 28, 2021. For the reasons stated on the record and explained below, the Court finds that it possesses subject matter jurisdiction over this case but lacks personal jurisdiction over IX. Accordingly, IX's motion will be GRANTED IN PART and the case DISMISSED WITHOUT PREJUDICE to refiling in a forum where IX is subject to personal jurisdiction.

## I.  BACKGROUND

### A.  The Parties and Their Marks

As alleged in the Complaint, Plaintiff Impossible Foods Inc. develops and distributes

1 plant-based substitutes for meat products. ECF No. 1 ("Compl.") ¶ 1. The company's signature
2 product, the Impossible Burger, is available in grocery stores and restaurants across the country.
3 *Id.* ¶¶ 11-12. Impossible has since expanded to other food products and services, including the
4 Impossible Sausage, Impossible Pork, and Impossible Taste Place and to free recipes available on
5 its website. *Id.* ¶¶ 13-14. In conjunction with its products and services, Impossible says that it has
6 filed 49 applications for trademarks. *Id.* ¶ 16. Impossible owns two federal trademark
7 registrations for IMPOSSIBLE: (1) Registration No. 5,370,337, first use in commerce November
8 3, 2016 ("providing of food and drink via mobile truck; catering services"); and (2) Registration
9 No. 5,459,255, first use in commerce June 27, 2016 ("substitutes for foods made from animals or
10 animal products, namely, vegetable-based burger patties; meat substitutes"). *Id.*; ECF No. 1-1 at
11 2, 4. Impossible also alleges that it holds common-law rights to the presentation of the
12 IMPOSSIBLE mark depicted below, which it began to use as early as 2016:

**IMPOSSIBLE™**

15 *Id.* ¶ 17.

16 Defendant Impossible X, a Texas limited liability company,[1] holds itself out as a marketing
17 consulting company that specializes in search engine optimization. Compl. ¶ 2. It also offers
18 exercise, fitness, and recipe information on its website and claims to have developed a meal and
19 nutrition business. *Id.* ¶ 3; Motion at 2. IX allegedly owns 10 trademark registrations and one
20 pending application related to its brand, none of which relate to food or cooking, but which it
21 claims have been in use since 2010. *Id.* ¶¶ 23-24, 27.

22 **B. IX's Founder and California Contacts**

23 The sole member of IX is its founder and principal, Joel Runyon. ECF No. 35-7 ("Runyon
24 Dep.") at 61:18-20. The company has no employees or outside investors. *Id.* at 60:25-61:17,
25 113:21-114:8. Mr. Runyon says that he is a "digital nomad" who performs work from locations
26 across the United States and other countries. *Id.* at 29:16-18, 46:9-16, 102:16-19. Impossible has

---

[1] Until January 4, 2021, IX was headquartered in Illinois. Runyon Dep. at 28:24-29:1. IX is now a Texas limited liability company. Motion at 1 n.1.

identified several links between California, Mr. Runyon, and IX, that it claims support exercise of personal jurisdiction:

- IX identified San Diego as its corporate headquarters on its LinkedIn page. ECF No. 35-8.

- Mr. Runyon rented an office at a CrossFit facility in San Diego from 2014-16 and described it as his "hub" of operations, his "home base," and "base point" where he began "building" IX's meal and nutrition business, including its Paleo.io software application and website. Runyon Dep. at 58:16-18; ECF Nos. 35-9 at 2-18 (Instagram photos of the office), 22-27 (article regarding office space); 35-10 at 2 (article mentioning building paleo projects during the time at the San Diego office); 35-11 (articles and tweets during the time at the San Diego office).

- Mr. Runyon kept a car and personal possessions in San Diego until December 2018. Runyon Dep. at 60:1-14. Between August 2018 and 2019, he traveled to California at least eight times for business meetings. *Id.* at 112:5-17, 113:1-16, 115:4-116:7, 117:5-13; ECF No. 35-12.

- Social media accounts operated by Mr. Runyon and IX have posted from or tagged California locations at least 30 times, mostly prior to 2017 but as recently as last year. ECF Nos. 35-9, 35-11.

- IX has worked "both internationally & domestically with businesses & customers in every state in the U.S. including California, Texas & Illinois since 2010." ECF No. 35-13.

- IX was at the time of filing in discussions with a California apparel manufacturer to source its branded apparel. Runyon Dep. at 105:9-16; ECF No. 35-15.

- Mr. Runyon serves as a business advisor to a California calendaring company, which he has promoted in conjunction with the IX name through 2021. Runyon Dep. at 66:19-67:14, 68:19-69:7; ECF No. 35-14.

- IX or Mr. Runyon agreed to Terms of Service for LinkedIn, Instagram, Twitter, YouTube, Reddit, and Pinterest, each of which had forum selection clauses specifying California as the forum for legal disputes. Runyon Dep. at 91:2-11, 117:20-118:1, 118:8-10, 118:14-19; ECF No. 35-16.

**C. Trademark Dispute**

On November 10, 2020, IX sent a demand letter to Impossible (via its Seattle, Washington-based counsel Perkins Coie) that accused Impossible of "encroachment into spaces either occupied by or closely related to goods and services offered by [IX]" and creating confusion between the two brands. Compl. ¶ 20; ECF No. 35-3. IX demanded that Impossible cease using the IMPOSSIBLE mark in certain contexts, such as when not accompanied by "FOODS," and limit its use to use in association with plant-based food substitutes. Compl. ¶ 21; ECF No. 35-3 at 2. Two weeks later, IX filed with the Trademark Trial and Appeal Board of the United States Patent and Trademark Office ("TTAB") in Virginia a notice of opposition to Impossible's trademark

application for IMPOSSIBLE covering its use for "providing information about recipes, ingredients and cooking information" and associated consumer-facing databases of the same. Compl. ¶ 22; ECF No. 35-4.[2]  Impossible made a coexistence offer to IX, which it declined.  ECF No. 35-5.

### D. This Case

Impossible filed this case on April 2, 2021, asserting a single claim for declaratory relief. Compl. ¶¶ 28-35.  It requests that the Court declare that:

- Impossible's use and registration of IMPOSSIBLE with services related to recipes, food ingredients, and cooking information do not infringe upon, dilute, or otherwise violate any of IX's rights;
- Impossible's rights in IMPOSSIBLE are superior to IX's rights in the field of recipes, food ingredients, and cooking information;
- Impossible's activities have not caused harm to IX or unjust enrichment to Impossible;
- Impossible is not liable to IX; and
- Three of IX's trademark registrations be cancelled, in whole or in part, on grounds of abandonment or non-use of the trademarks in commerce.

*Id.* at Prayer for Relief.  Impossible also seeks costs, disbursements, and attorneys' fees.  *Id.*  IX filed this Motion on June 11, 2021, challenging subject matter jurisdiction and personal jurisdiction.

## II. SUBJECT MATTER JURISDICTION – RULE 12(B)(1)

On a motion to dismiss pursuant to Rule 12(b)(1), the burden is on the plaintiff to establish subject-matter jurisdiction. *See, e.g.*, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Under the Declaratory Judgment Act, a dispute must present a "case of actual controversy" for a court to have subject matter jurisdiction. 28 U.S.C. § 2201(a).  A "case of actual controversy" is one that presents a case or controversy justiciable under Article III. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).  Subject matter jurisdiction exists if "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the

---

[2] The TTAB proceeding has been stayed pending disposition of this action.  ECF No. 35-6.

4

issuance of a declaratory judgment.  *Id.* (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).  Declaratory judgment actions involving trademarks satisfy this requirement if the plaintiff has "a real and reasonable apprehension that he will be subject to liability if he continues to manufacture his product."  *Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1157 (9th Cir. 2007).

Several features of the dispute between the parties make this a "case of actual controversy."  28 U.S.C. § 2201(a).  First, IX's cease-and-desist letter—sent to Impossible through its trademark counsel—accuses Impossible of "[i]nfringement of [IX]'s [t]rademark [r]ights."  ECF No. 35-3.  IX states that Impossible must "cease use of all of its confusingly similar IMPOSSIBLE designs" and limit the use of the IMPOSSIBLE mark to certain contexts because of IX's superior trademark rights.  *Id.*  If Impossible did not do so, the letter stated that IX would "take all appropriate action to protect its rights," including action before the TTAB.  *Id.*  Indeed, IX followed through with that threat—it filed a notice of opposition to one of Impossible's trademark applications.  ECF No. 35-4.  That notice of opposition, as Impossible points out, claimed to make out a case for a trademark infringement action against Impossible:  priority and likelihood of confusion.  *Id.*; 15 U.S.C. §§ 1114, 1125(a).  These actions are more than sufficient for Impossible to have a "reasonable apprehension of litigation."  *Rhoades*, 504 F.3d at 1157–58 (citing *Chesebrough-Pond's, Inc. v. Faberge, Inc.*, 666 F.2d 393, 396–97 (9th Cir. 1982) (reasonable apprehension of litigation where letter stated company's intent to file opposition proceedings with TTAB and made out *prima facie* case of infringement)); *see also San Diego Cty. Credit Union v. Citizens Equity First Credit Union*, 344 F. Supp. 3d 1147, 1158–59 (S.D. Cal. 2018) (reasonable apprehension of litigation where petition for cancellation set out elements of claim for trademark infringement).

IX argues that there is no subject matter jurisdiction because the dispute is limited to proceedings before the TTAB regarding a not-yet-in-use mark and because IX did not intend to file another action in district court.  Motion at 15-16.  But even if IX did not intend to file a follow-on infringement action, it was not unreasonable for Impossible to interpret the letter and opposition brief in that way.  *See Rhoades*, 504 F.3d at 1157–58 (reasonable apprehension of

litigation focuses on "the position and perceptions of the plaintiff" and not "specific acts or intentions of the defendant"). Even if the letter did not *expressly* threaten a district court case, the letter stated that IX would take "all appropriate action to protect its rights"—standard demand letter language threatening legal action.[3] IX also complains that filing this lawsuit allows Impossible to avoid the TTAB proceedings and represents impermissible forum shopping, Motion at 17, but Impossible's desire to have the Court address the "full dispute"—rather than just the limited issue before the TTAB—is not impermissible. *See V.V.V. & Sons Edible Oils Ltd. v. Meenakshi Overseas, LLC*, 946 F.3d 542, 546 (9th Cir. 2019) (recognizing the limited jurisdiction of the TTAB); *FN Cellars, LLC v. Union Wine Co.*, 2015 WL 5138173, at *4 (N.D. Cal. Sept. 1, 2015) ("A declaratory action is preferable to a TTAB action for addressing 'all aspects of the controversy' between the parties, because the TTAB cannot address a trademark non-infringement claim.") (quoting *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 n.5 (9th Cir. 1998)).

The Court accordingly possesses subject matter jurisdiction over this dispute.

### III. PERSONAL JURISDICTION – RULE 12(B)(2)

#### A. Legal Standard

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014)). California's long-arm statute is coextensive with federal due process requirements. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (9th Cir. 2004). "Although a nonresident's physical presence within the territorial jurisdiction of the court is not required, the nonresident generally must have 'certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Walden*, 571 U.S. at 283 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

When a defendant raises a challenge to personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper. *See Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir.

---

[3] This makes this case unlike *Coleman v. Ellis*, 2020 WL 7133772, at *4 (N.D. Cal. Mar. 13, 2020), in which the court found no subject matter jurisdiction from a cease-and-desist letter that "did not issue an ultimatum or threaten legal action" and merely sought to "open a dialogue" regarding the disputed marks.

2015). "Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a *prima facie* showing of jurisdictional facts to withstand the motion to dismiss." *Id.* "[T]he plaintiff cannot simply rest on the bare allegations of its complaint," but the uncontroverted allegations in the complaint must be accepted as true. *Schwarzenegger*, 374 F.3d at 800 (quotation marks and citation omitted). Factual disputes created by conflicting affidavits must be resolved in the plaintiff's favor. *Id.*

Personal jurisdiction may be either general or specific. General personal jurisdiction exists when the defendant's contacts "are so continuous and systematic as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quotation marks and citation omitted). Specific personal jurisdiction exists when the defendant's contacts with the forum state are more limited but the plaintiff's claims arise out of or relate to those contacts. *Id.* at 127–28.

### B. Analysis

Impossible argues that IX is subject to specific personal jurisdiction in this forum. *See* Opp. at 14 (disclaiming general personal jurisdiction). "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (quoting *Walden*, 571 U.S. at 284). "Two principles animate the 'defendant-focused' inquiry." *Id.* (quoting *Walden*, 571 U.S. at 284). "First, the relationship between the nonresident defendant, the forum, and the litigation 'must arise out of contacts that the defendant *himself* creates with the forum state.'" *Id.* (quoting *Walden*, 571 U.S. at 284). "Second, the minimum contacts analysis examines 'the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.'" *Id.* (quoting *Walden*, 571 U.S. at 285). "It follows that 'a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction.'" *Id.* (quoting *Walden*, 571 U.S. at 286).

To analyze specific personal jurisdiction, courts "consider the extent of the defendant's contacts with the forum and the degree to which the plaintiff's suit is related to those contacts." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1210 (9th Cir.

7

2006). The Ninth Circuit has established a three-prong test for whether a court can exercise specific personal jurisdiction over a non-resident defendant: (1) the defendant "must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws"; (2) "the claim must be one which arises out of or relates to the defendant's forum-related activities"; and (3) "the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable." *Schwarzenegger*, 374 F.3d at 802. The plaintiff bears the burden on the first two prongs. *Id.* "If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." *Id.* "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable." *Id.* (quotation marks and citation omitted).

The Court takes the contacts that Impossible has identified—the cease-and-desist letter, the opposition filing in the TTAB proceeding, settlement discussions, and the eight other categories of business contacts revealed in jurisdictional discovery—through this analysis. While the question is a close one, the Court ultimately concludes that it lacks personal jurisdiction over IX.

### i. Purposeful Direction / Availment

The first prong of the analysis asks whether a defendant has "purposefully direct[ed] his activities or consummate[d] some transaction with the forum or resident thereof; or perform[ed] some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws." *Schwarzenegger*, 374 F.3d at 802. "Purposeful direction" and "purposeful availment" are two different concepts, the former most often used in suits sounding in tort and the latter in suits sounding in contract. *Id.* This declaratory judgment action involves a trademark dispute over possible infringement, which is most analogous to a tort, implicating the "purposeful direction" analysis. *Deal Point Trading v. Standard Process, Inc.*, 2020 WL 6106617, at *3 (S.D. Cal. Apr. 20, 2020) (trademark infringement); *PokitDok, Inc. v. Martin*, 2012 WL 5425615, at *3 (N.D. Cal. Nov. 6, 2012) (declaratory relief involving copyright infringement). Under the purposeful direction test,

8

sometimes called the "*Calder* effects test," "a defendant purposefully directed his activities at the forum if he (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015) (citing *Calder v. Jones*, 465 U.S. 783 (1984)).

### a. Intentional Acts

An "intentional act" is "an actual, physical act in the real world" that the actor has the "intent to perform." *Schwarzenegger*, 374 F.3d at 806. The Court has no difficulty concluding that the contacts Impossible has identified are "intentional acts." Drafting and mailing a cease-and-desist letter, filing an opposition brief with the TTAB, engaging in settlement discussions, and business contacts (such as entering into business partnerships and renting office space) are all "intentional acts." IX also began "building" its meal and nutrition business from San Diego in 2014 and using its name in that context. ECF Nos. 35-10 at 2; 35-11 at 3 (Instagram photo from 2014 with caption mentioning IX-run Paleo.io). This element of the purposeful direction test is satisfied.

### b. Expressly Aimed at the Forum State

These contacts, however, also must be "expressly aimed at the forum state." *Life360, Inc. v. Advanced Ground Info. Sys., Inc.*, 2015 WL 5612008, at *6 (N.D. Cal. Sept. 21, 2015). This factor in particular implicates *Walden*, which instructs the analysis focuses on the "defendant's contacts with the forum state itself, not the defendant's contacts with the persons who reside there." *Walden*, 571 U.S. at 285.

Several of the contacts Impossible identifies are contacts between IX and Impossible, rather than contacts between IX and California independent of Impossible's California residence. First, while Impossible is correct that the location of the counsel to whom the cease-and-desist letter was sent is not relevant, the only reason the letter implicates California at all is because of Impossible's California residence here. The letter standing alone cannot provide a basis for specific personal jurisdiction, both under *Walden* and consistent with the "strong policy reasons to encourage cease and desist letters" without automatically subjecting the sender to personal jurisdiction where the letter is sent. *Yahoo!*, 433 F.3d at 1208; *see also PokitDok, Inc.*, 2012 WL

9

5425615, at *4 (letter "merely alerted plaintiffs that defendant might file a legal action against them for copyright infringement"); *Deal Point Trading*, 2020 WL 6106617, at *5 (letter did not involve "abusive, tortious or otherwise wrongful conduct" that alone conferred personal jurisdiction).[4]  Similarly, IX's opposition brief filed in the TTAB only implicates California because Impossible is located here.  Numerous courts have refused to find that a TTAB filing against a forum resident confers personal jurisdiction over the filer in that forum.  *See, e.g.*, *Impact Prods., Inc. v. Impact Prods., LLC*, 341 F. Supp. 2d 1186, 1192 (D. Colo. 2004) (filing in TTAB not "expressly aimed" at the forum of opposing party); *Freud Am., Inc. v. Milwaukee Elec. Tool Corp.*, 2020 WL 8248765, at *5 (M.D.N.C. June 17, 2020) (same) (citing cases).[5]  The single email thread and telephone call between counsel—initiated by Impossible, not IX—also would not be linked to California absent Impossible's residence here.  Neither answering a phone call placed by counsel to a California company nor responding to an email from that counsel is conduct by IX that is "expressly aimed" at California.  Thus, none of these contacts can be said to be "purposely directed" at California.

In support of a contrary conclusion that these contacts are hooks for personal jurisdiction, Impossible primarily relies on *Bancroft & Masters, Inc. v. August Nat'l, Inc.*, 223 F.3d 1082 (9th Cir. 2000).  In *Bancroft & Masters*, the Ninth Circuit concluded that there was specific personal jurisdiction in California over August National Inc., which sponsors the annual Masters Tournament and operates the Augusta National Golf Club in Augusta, Georgia.  The Ninth Circuit concluded that the "express aiming" element was satisfied when "the defendant is alleged to have

---

[4] In *Table de France, Inc. v. DBC Corp.*, 2019 WL 6894521 (C.D. Cal. Oct. 18, 2019), the court found that a cease-and-desist letter could serve as a hook for personal jurisdiction "when a defendant's other contacts with the state satisfy the third prong of the personal jurisdiction test." The Court disagrees with the reasoning of that case because the third prong of the personal jurisdiction test is only implicated when the plaintiff first carries its burden to satisfy the first two prongs.  *Axiom Foods, Inc.*, 874 F.3d at 1068–69.  In any case, IX's other contacts are not sufficient to meet any of the prongs of the analysis, even when combined with the cease-and-desist letter.

[5] The one decision finding personal jurisdiction in the forum based on USPTO proceedings against a forum-based plaintiff pre-dates *Walden*, and thus is not instructive.  *See Zero Motorcycles, Inc. v. Pirelli Tyre S.p.A.*, 517 F. App'x 589 (9th Cir. 2013) (personal jurisdiction proper because defendants "knew that [plaintiff's] principal place of business was in California" and thus "any harm that [plaintiff] suffered from the allegedly improper USPTO proceedings would therefore be felt by [plaintiff] in California").

10

engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Id.* at 1087. Thus, specific personal jurisdiction existed where Augusta National Inc. sent a demand letter to the California-based plaintiff. *Id.* While other principles from *Bancroft & Masters* may live on, that rule is the exact one that *Walden* rejected. Specific personal jurisdiction cannot exist simply because IX knew that Impossible is based in California. *Axiom Foods, Inc.*, 874 F.3d at 1069–70 ("*Walden* requires more" than a plaintiff's forum connections and "evidence suggesting [defendant] knew of those connections"). It is IX's engagement with the forum, not its engagement with Impossible, that must form the basis for jurisdiction. *Bancroft & Masters* is thus not instructive on this point.

Some of the other contacts occurred inside California at varying points in the past, and thus satisfy this element. For example, while the evidence shows that IX did not specifically target its business to California, it did begin "building" and marketing its meal and nutrition business (including its Paleo.io app and website) in San Diego in 2014 and using its name in that context. ECF Nos. 35-10 at 2; 35-11 at 3; *San Diego Cty. Credit Union*, 425 F. Supp. 3d at 1099–110 (purposeful direction where mark at issue used at southern California credit unions). The rental of office space in San Diego, Mr. Runyon's travel to and possession of items in California, IX's business relationships with California companies (including a California apparel manufacturer), and Mr. Runyon's service as a business advisor to a California calendaring company promoted in conjunction with the IX name are all intentional conduct performed in or expressly aimed at California, independent of Impossible's residence here.[6] This element is thus satisfied.

### c. Causing Harm Likely to Be Suffered in the Forum State

Some of the contacts that the Court has found are "expressly aimed" at California may have also "caus[ed] harm that [IX] knows [wa]s likely to be suffered" here. *Picot*, 780 F.3d at 1214. Many contacts—the rental of an office in San Diego, posting content depicting California

---

[6] Some of the other general business contacts, such as agreement to the Terms of Service for several large social media companies, can hardly be said to be "expressly aimed" at California. *See WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, 472 F. Supp. 3d 649, 675 (N.D. Cal. 2020) (accepting terms of service for social media company could not be "expressly directing" conduct at California because then most individual consumers would be subject to personal jurisdiction in California).

locations on social media accounts, the storage of a car and personal possessions in San Diego, and serving as a business advisor to a California company—are more akin to general acts of operating IX (or, indeed, acts personal to Mr. Runyon that have little to do with IX at all) that are unlikely to themselves "caus[e] harm likely to be felt here."  Impossible addresses only the effects of the cease-and-desist letter and TTAB opposition, which the Court has already held are not "expressly aimed" at California.  Opp. at 17.  Still, Mr. Runyon began "building" and marketing IX's meal and nutrition business in this forum in 2014 and using IX's name in that context.  ECF Nos. 35-10 at 2; 35-11 at 3.  Those acts occurred in here in the forum state and would "caus[e] harm likely to be suffered" here if they came into conflict with another company's supposedly superior mark.   Thus, the Court finds that Impossible has identified at least one contact that could be said to "caus[e] harm likely to be suffered" here.

Thus, the Court finds that the "purposeful direction" analysis is satisfied, although it is a close question.

### ii.   Arising Out Of

The second prong of the analysis requires that "the claim must be one which arises out of or relates to the defendant's forum-related activities." *Schwarzenegger*, 374 F.3d at 802.  This prong is met if the plaintiff would not have suffered an injury "but for" defendant's conduct directed toward the plaintiff in the forum state. *Panavision Int'l Inc. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998).

This prong is not satisfied.  The contacts Impossible argues "arise[] out of" this dispute are the ones the Court has found are not "expressly aimed" at California.  This dispute involves the trademarks owned by Impossible and IX, and whose trademarks have priority over or infringe on the others'.  The cease-and-desist letter, the TTAB opposition filing, and the co-existence proposal and related communications thus "arise[] out of" this dispute because they relate to the trademark dispute between the parties.  But because these contacts were not "expressly aimed" at California, they cannot serve as strong hooks under this prong.

In contrast, the general business contacts that Impossible has identified—which the Court has found were "expressly aimed" at California because they occurred here—do not "arise[] out of

this dispute." Important here is that Mr. Runyon vacated his San Diego office at some point in late May or early June 2016. ECF No. 35-10 at 6 (blog post dated June 28, 2016 stating that he left San Diego "[a] couple weeks ago"). Impossible's trademark registrations for the IMPOSSIBLE mark indicate that the earliest date it began to use the mark in commerce was June 27, 2016, after Mr. Runyon left San Diego. It is Impossible's use of its mark in commerce that is the earliest point at which this dispute between IX and Impossible could arise because the declarations that Impossible requests rest on Impossible's use of the IMPOSSIBLE mark. Compl. at "Prayer for Relief". Thus, Mr. Runyon's development of IX's meal and nutrition business in San Diego prior to Impossible's use of the IMPOSSIBLE mark in commerce is not a contact that "arise[s] out of" this dispute between the parties.

The other contacts mostly predate the dispute, too. Mr. Runyon kept his car and personal vehicle in San Diego during the same time that he kept his office, extending for a short time after he left the office. *See* ECF No. 11 (blog post referencing car and personal effects dated June 28, 2016). His social media posts referencing California are mostly dated 2016 or earlier, with a few dated 2018 and 2019. ECF Nos. 35-9, 35-11. Even if these contacts were less dated, they do not "arise[] out of" the trademark dispute between the parties. Each contact concerns the general business operations of IX or Mr. Runyon's personal belongings—contacts that are more akin to those that would be used in a general jurisdiction "nerve center" analysis that Impossible has disclaimed here. *See* Opp. at 14.

\*   \*   \*

This element-by-element examination may not necessarily be the end of the inquiry. The Ninth Circuit has said that the analysis must "consider the extent of the defendant's contacts with the forum and the degree to which the plaintiff's suit is related to those contacts, and that "a strong showing on one axis will permit a lesser showing on the other." *Yahoo! Inc.*, 433 F.3d at 1210. Under that formulation, a small number of strongly suit-related forum contacts or a large number of less suit-related contacts may confer specific jurisdiction.

Whether this sliding scale is still good law post-*Walden* is unclear, although courts have continued to rely on it. *See, e.g.*, *Autodesk, Inc. v. Kobayashi + Zedda Architects Ltd.*, 191 F.

Supp. 3d 1007, 1014 (N.D. Cal. 2016). Even if this principle survives, it does not quite push Impossible over the line in demonstrating specific personal jurisdiction over IX. The Court has found that IX and Mr. Runyon do have some contacts with the forum, but that they do not "aris[e] out of" this dispute. Mr. Runyon's development of the meal and nutrition business predated Impossible's use of the IMPOSSIBLE mark in commerce, and so does not arise out of this dispute. Similarly, IX's general business contacts are not related to the trademark dispute here—indeed, they are more akin to contacts that are relevant to a general jurisdiction analysis. The Court has also found that there are contacts that "arise[] out of this dispute" but do not have a strong connection with this forum. But these connections are not relevant under *Walden* because the contacts occurred only because of Impossible's residence here, and thus do not quite fit on the sliding scale. 571 U.S. at 283. Because of *Walden*, they do not quite fit on the sliding scale. Accordingly, even if that principle from *Yahoo!* survives, this is not the case where the forum contacts are so strong as to overcome their lack of connection to this lawsuit.

Impossible has thus failed to demonstrate that the lawsuit "arises out of" IX's forum contacts.

### iii. Fair Play and Substantial Justice

Because Impossible has not met its burden to satisfy the first two prongs of the test, the Court does not reach the third prong. *Axiom Foods*, 874 F.3d at 1068-69.

## IV. ORDER

Impossible has not met its burden to show that IX purposefully availed itself of this forum and that IX's relevant forum-related contacts arise out of Impossible's claims in this lawsuit. This Court thus lacks personal jurisdiction over IX. IT IS HEREBY ORDERED that IX's motion to dismiss is GRANTED IN PART. This case is DISMISSED WITHOUT PREJUDICE for lack of personal jurisdiction.

Dated: November 16, 2021

_____
BETH LABSON FREEMAN
United States District Judge

14