GIA CINCONE (SBN 141668)
KILPATRICK TOWNSEND & STOCKTON LLP
Two Embarcadero Center, Suite 1900
San Francisco, California 94111
Telephone: (415) 273-7546
Facsimile: (415) 723-7173
gcincone@ktslaw.com

WILLIAM H. BREWSTER (*pro hac vice*)
H. FORREST FLEMMING, III (*pro hac vice*)
1100 Peachtree Street NE
Atlanta, Georgia 30309
Telephone: (404) 815-6549
Facsimile: (404) 541-3139
bbrewster@ktslaw.com
fflemming@ktslaw.com

Attorneys for Plaintiff IMPOSSIBLE FOODS INC.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IMPOSSIBLE FOODS INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>IMPOSSIBLE LLC, a Texas limited liability company,<br><br>Defendant. | Case No. 5:21-cv-02419-BLF (SVK)<br><br>**FIRST AMENDED COMPLAINT DEMAND FOR JURY TRIAL**<br><br>Trial: November 2025<br><br>Judge: Hon. Beth Labson Freeman |

Pursuant to stipulation among the parties (ECF No. 66 at 6, Section V), Plaintiff Impossible Foods Inc. ("Impossible Foods") brings this First Amended Complaint against defendant Impossible LLC ("ILLC") and alleges, on personal knowledge as to its own actions and on information and belief as to the actions of others, as follows:

## THE PARTIES

1. Plaintiff Impossible Foods is a Delaware corporation with its principal place of business at 400 Saginaw Drive, Redwood City, California. Impossible Foods develops and distributes plant-based substitutes for meat products.

2. Impossible LLC ("ILLC") is a Texas limited liability company with a principal place of business at 402 West Johanna St., Austin, Texas 78704. On January 1, 2021, ILLC merged with Impossible X LLC, an Illinois limited liability company with its principal place of business at 1231 Champion Forest Court, Wheaton, Illinois 60187 ("XLLC"). As a consequence of that merger, ILLC acquired, among other things, any trademark rights owned by XLLC, as well as any liabilities. ILLC and its predecessors in interest, including XLLC, are collectively referred to as "Defendant."

3. Upon information and belief, ILLC is solely owned and operated by XLLC founder Joel Runyon, and has no other members, employees, or outside investors, and no manufacturing or production facilities. ILLC states that its mission is to help consumers "push their limits and do something impossible." ILLC offers motivational blog and video content and information relating to exercise and fitness through its multiple websites, in addition to a small offering of apparel. ILLC also claims to offer search engine optimization ("SEO") services and marketing consulting in the field of social media.

4. Impossible Foods brings this action to protect its valuable and well-known IMPOSSIBLE marks against threats and overt opposition by Defendant. Impossible Foods currently owns federally-registered trademark rights in numerous IMPOSSIBLE-formative marks, including:

| MARK | REG. NO. | DATE OF FIRST USE | FILING DATE/ REG. DATE | GOODS AND SERVICES |
|---|---|---|---|---|
| IMPOSSIBLE | 5459255 | Oct 29, 2015 | Oct 25, 2013 / May 1, 2018 | Substitutes for foods made from animals or animal products, namely, vegetable-based burger patties; meat substitutes |
| IMPOSSIBLE BURGER | 6211591 | Jul 2016 | May 16, 2018 / Dec 1, 2020 | Substitutes for food, namely, plant-based meat substitutes |
| IMPOSSIBLE | 7249916 | Oct 12, 2016 | May 13, 2021 / Dec. 19, 2023 | Restaurant services; café services, cafeterias, snack bar services, and the provision of food in restaurants and cafes; catering services for meals |
| IMPOSSIBLE | 5370337 | Nov 3, 2016 | My 20, 2014 / Jan 2, 2018 | Providing food and drink via mobile truck |
| IMPOSSIBLE FOODS | 7114972 | Jan 23, 2018 | Jul 11, 2022 / Jul 18, 2023 | Providing websites featuring consumer information in the field of plant-based meat, environmentally sustainable food, climate change, global warming, the sustainability of the global food system, and the environmental impact of human consumption of plant-based meat instead of animal meat; providing business information via a website |

True and correct copies of Impossible Foods' Certificates of Registration for its IMPOSSIBLE-

formative marks are attached collectively as Exhibit A.

5. Over almost a decade, Impossible Foods has invested millions of dollars in building and promoting its IMPOSSIBLE trademarks. Impossible Foods' IMPOSSIBLE-branded products are widely available at restaurants and grocery retailers across the United States.

6. Defendant nonetheless has (1) asserted that it has superior rights based on its purported use of an IMPOSSIBLE mark for, inter alia, search engine optimization and clothing; (2) accused Impossible Foods of trademark infringement; and (3) initiated a proceeding at the United States Patent and Trademark Office ("USPTO") opposing Impossible Foods' federal trademark application for the mark IMPOSSIBLE for: "Providing information about recipes, ingredients and cooking information; providing an online computer database to consumers featuring information about recipes, ingredients and cooking information."

7. Accordingly, Impossible Foods seeks a declaration that its use and registration of the trademark IMPOSSIBLE in connection with recipes, food ingredients, and cooking information do not, and will not, infringe upon, or otherwise violate any of Defendant's valid trademark rights.

## JURISDICTION AND VENUE

8. This court has subject matter jurisdiction over the claim for declaratory relief under 28 U.S.C. §§ 2201 and 2202 (the Declaratory Judgment Act) and 15 U.S.C. § 1051 et seq., as well as under 28 U.S.C. §§ 1331 and 1338, because Impossible Foods brings the action to determine a question of actual controversy between the parties arising under the trademark laws of the United States.

9. Impossible Foods' claim for relief arises directly from Defendant's contacts with California, including its demands and threats made to Impossible Foods in California. (*See Impossible Inc. v. Impossible X LLC*, 80 F.4th 1079, 1087 (9th Cir. 2023).) Further, Defendant has challenged the right of Impossible Foods, a California-based company, to provide services under its IMPOSSIBLE trademark to California consumers and nationally.

10. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a

substantial part of the events giving rise to this complaint occurred in this judicial district.

## INTRA-DISTRICT ASSIGNMENT

11. This is an Intellectual Property Action and thus may be assigned to a division of the Court on a district-wide basis.

## BACKGROUND

### The IMPOSSIBLE Brand

12. Impossible Foods is a pioneer in the field of plant-based substitutes for meat products. The company's aim is to give people the taste and nutritional benefits of meat without the negative health and environmental impacts associated with products from livestock.

13. Impossible Foods has enjoyed extraordinary commercial success in the United States. The company's signature products—the IMPOSSIBLE BURGER and other plant-based IMPOSSIBLE meat substitutes—are widely available in grocery stores across the United States, including Albertsons, Kroger, Safeway, Walmart, Target, Wegmans, Costco, and Trader Joe's. IMPOSSIBLE-branded products are sold at thousands of restaurants, including Burger King (Impossible Whopper), White Castle, Red Robin, Starbucks, Hard Rock Café, Cheesecake Factory, and Applebee's. Impossible Foods' products are also available at numerous independent, high-end restaurants.

14. Since its inception, Impossible Foods' IMPOSSIBLE mark has received considerable publicity. The mark has been featured in prominent national news coverage, including in The New York Times, The Los Angeles Times, The Wall Street Journal, the Chicago Tribune, San Jose Mercury News, San Francisco Chronicle, Bloomberg, Reuters, FORTUNE, Forbes, Time, and USA Today, as well as on CNN, MSNBC, NPR, Fox Business, and other cable networks.

15. Since at least as early as 2015, Impossible Foods has continuously used the mark IMPOSSIBLE in connection with food products.

16. Impossible Foods' IMPOSSIBLE marks are arbitrary and enjoy a high degree of commercial strength because Impossible Foods has used the marks regularly and continuously

since October of 2015 for plant-based substitutes for meat products, restaurant services, recipes, ingredients, and cooking information, and other related goods and services.

17. Impossible Foods intends to continue using its IMPOSSIBLE marks in connection with its goods and services, including those related to recipes, food ingredients, and cooking information.

**<u>Defendant's Assertion of Purported Trademark Rights and an Infringement Claim Relating to Recipes, Food Ingredients, and Cooking Information</u>**

18. More than five years after Impossible Foods commenced use of its IMPOSSIBLE marks, XLLC sent a demand letter to Impossible Foods. XLLC's letter accused Impossible Foods of "encroachment into spaces either occupied by or closely related to goods and services offered by [XLLC]," which it said "greatly increases the likelihood of confusion." XLLC also referenced, without providing details, "several apparent instances of actual confusion."

19. XLLC's letter demanded that Impossible Foods "cease all use of its confusingly similar IMPOSSIBLE designs (that is, uses without 'FOODS' in stylizations that mimic [XLLC's] marks) and limit the use of its IMPOSSIBLE mark to only use in association with plant-based food substitutes."

20. On November 25, 2020, XLLC filed a Notice of Opposition with the Trademark Trial and Appeal Board opposing Impossible Foods' trademark application for the mark IMPOSSIBLE (Serial No. 88/855875), which covers: "Providing information about recipes, ingredients and cooking information; providing an online computer database to consumers featuring information about recipes, ingredients and cooking information." A true and correct copy of the disputed trademark application is attached as Exhibit B, and a true and correct copy of the Notice of Opposition filed by Impossible X is attached as Exhibit C.

21. In its Notice of Opposition, XLLC alleges without citing to any evidence that it "has used its IMPOSSIBLE Marks in association with nutrition, food, and cooking resources since 2010 including publication of guides to different foods, ingredients, diets, and recipes." *See* Exhibit C.

22. In its Notice of Opposition, XLLC alleges ownership of 10 trademark registrations and 1 pending application. None of the USPTO filings submitted in connection with those marks shows use in connection with food or cooking. *See* Exhibit C.

23. In its Notice of Opposition, XLLC also alleges:

- That Impossible Foods lacks "any constructive or actual right" in the IMPOSSIBLE trademark;
- That "[t]here is no issue of priority."; and
- That registration of Impossible Foods' IMPOSSIBLE trademark in connection with the applied-for services "would result in irreparable damage to Impossible X as consumers would be likely to consider the services offered under the registered mark as emanating from Impossible X, and purchase such services, resulting in a loss to Impossible X."

*See* Exhibit C.

24. To the extent Defendant used an IMPOSSIBLE mark in connection with recipes, food ingredients, or cooking information prior to 2016, that use was sporadic and de minimis, at best, and not the required bona fide use in commerce, and not trademark use. Notably, the three websites that appear to be the core of Defendant's web presence, <impossiblex.com>, <impossiblehq.com>, and <impossible.co>, did not offer any products or services related to recipes, food or cooking until 2017 at the earliest. Defendant therefore does not own protectable trademark rights in any IMPOSSIBLE-formative mark for recipes, food ingredients, or cooking information, and any use post-dates Impossible Foods' trademark rights.

25. The goods and services that Impossible Foods has continuously provided under its IMPOSSIBLE marks since 2015 are not similar to any goods and services Defendant actually offered under its marks prior to 2016, or for which it has federal trademark registrations, and are not likely to create confusion among consumers.

26. The consuming public does not associate Defendant's IMPOSSIBLE-formative marks with recipes, food ingredients, or cooking information because Defendant has no history of providing such goods and services under IMPOSSIBLE-formative marks.

27. Because of the goods and services on which Defendant allegedly has made use, and

the ways in which it allegedly has (and has not) made use, Defendant's IMPOSSIBLE-formative marks are conceptually and commercially weak.

**FIRST CLAIM FOR RELIEF**

**(Declaratory Relief)**

28. Impossible Foods realleges and incorporates by reference the allegations of the preceding paragraphs.

29. As a result of the actions and statements of ILLC, which include allegations of trademark infringement and challenges to Impossible Foods' commercial use and registration of its IMPOSSIBLE marks in connection with recipes, food ingredients, and cooking information, there is an actual controversy between Impossible Foods and ILLC as to the parties' rights and as to the legal relations associated with each party's use of IMPOSSIBLE-formative marks. An immediate, real, and substantial controversy exists between the parties, who have adverse legal interests.

30. Impossible Foods has used and intends to continue to use its IMPOSSIBLE marks in interstate commerce.

31. Defendant's position is that Impossible Foods has made use of IMPOSSIBLE-formative marks in a manner justifying ILLC and its predecessors to sue Impossible Foods immediately for trademark infringement and other legal violations.

32. Impossible Foods' use of its IMPOSSIBLE-formative marks in connection with recipes, food ingredients, and cooking information, does not infringe or dilute any of ILLC's valid trademark rights and does not violate any federal or state trademark, trade name, or related law.

33. A judicial determination is necessary and appropriate at this time to resolve the foregoing issues, and for the parties to ascertain their respective rights and obligations as to the IMPOSSIBLE-formative marks at issue.

34. Impossible Foods does not engage in any activities that harm or threaten any lawful rights of ILLC and is entitled to a declaration to that effect in this action.

**PRAYER FOR RELIEF**

Impossible Foods prays for judgment as follows:

(a) That this Court declare that Impossible Foods' use and registration of its IMPOSSIBLE-formative marks with services relating to recipes, food ingredients, and cooking information do not infringe upon, dilute, or otherwise violate any valid right of ILLC under applicable federal or state law.

(b) That this Court declare that Impossible Foods is not liable to ILLC.

(c) That this Court award Impossible Foods its reasonable attorneys' fees and costs under 15 U.S.C. § 1117(a).

(d) That this Court grant such other and further relief as this Court may deem just and proper.

DATED: February 16, 2024

Respectfully submitted,

KILPATRICK TOWNSEND & STOCKTON LLP

By: /s/ *William H. Brewster*
WILLIAM H. BREWSTER
GIA L. CINCONE
H. FORREST FLEMMING, III

Attorneys for Plaintiff

**DEMAND FOR JURY TRIAL**

Impossible Foods hereby demands trial by jury of all issues triable by a jury.

DATED: February 16, 2024

Respectfully submitted,

KILPATRICK TOWNSEND & STOCKTON LLP

By: /s/ *William H. Brewster*
WILLIAM H. BREWSTER
GIA L. CINCONE
H. FORREST FLEMMING, III

Attorneys for Plaintiff

Att