REDACTED

GIA CINCONE (SBN 141668)
KILPATRICK TOWNSEND & STOCKTON LLP
Two Embarcadero Center,
Suite 1900
San Francisco, California 94111
Telephone: (415) 273-7546
Facsimile: (415) 723-7173
gcincone@ktslaw.com

WILLIAM H. BREWSTER (*pro hac vice*)
H. FORREST FLEMMING (*pro hac vice*)
JESSICA W. TRUELOVE (*pro hac vice*)
1100 Peachtree Street NE
Atlanta, Georgia 30309
Telephone: (404) 815-6549
Facsimile: (404) 541-3139
bbrewster@ktslaw.com
fflemming@ktslaw.com
jtruelove@ktslaw.com

Attorneys for Plaintiff
IMPOSSIBLE FOODS INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| IMPOSSIBLE FOODS INC.,<br><br>  Plaintiff,<br><br>  v.<br><br>IMPOSSIBLE LLC,<br><br>  Defendant. | Case No. 5:21-cv-02419-BLF (SVK)<br><br>**MOTION TO AMEND COMPLAINT AND SCHEDULING ORDER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Judge:  Hon. Beth Labson Freeman<br>Date:   September 5, 2024<br>Time:   9:00 a.m. |

## NOTICE OF MOTION

TO DEFENDANT IMPOSSIBLE LLC AND ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on September 5, 2024, before the Honorable Beth Labson Freeman, Courtroom 3, 5th floor, San Jose Courthouse, 280 South 1st Street, San Jose, California 95113, at 9:00 a.m. or as soon thereafter as the matter may be heard, Plaintiff/Counter-Defendant Impossible Foods Inc. ("Impossible Foods") will and hereby does move to amend its Complaint to include claims of infringement and unfair competition under the Lanham Act and to

modify the Scheduling Order to extend the deadline to amend pleadings for sixty (60) days, as Impossible Foods reasonably believes that additional discovery will show that ILLC committed fraud upon the United States Patent & Trademark Office on July 12, 2024. Plaintiff's proposed amended complaint is attached as Exhibit A. A copy of the proposed amendments in redline format is attached as Exhibit B. Plaintiff moves pursuant to Fed. R. Civ. P. 16(b) to add claims of trademark infringement and unfair competition and to amend the factual allegations to detail Impossible LLC's actions and liability for the claims asserted.

Plaintiff's motion is based on this notice of motion and supporting memorandum of points and authorities, Exhibits A and B, the Declaration of H. Forrest Flemming, III, and supporting exhibits, the pleadings and papers on file in this action, and such other written or oral argument as may be presented at or before the time this motion is heard and/or taken under submission by the Court.

DATED: July 23, 2024                     Respectfully submitted,

**KILPATRICK TOWNSEND & STOCKTON**

By: /s/ William H. Brewster
William H. Brewster (*pro hac vice*)
H. Forrest Flemming (*pro hac vice*)
Jessica W. Truelove (*pro hac vice*)
Gia Cincone (SBN 141668)

*Attorneys for Plaintiff*
IMPOSSIBLE FOODS INC.

## INTRODUCTION

Impossible Foods seeks to amend its Complaint to assert trademark infringement and unfair competition claims against Impossible LLC ("ILLC") and Joel Runyon (collectively, "Defendants") in light of information recently obtained during discovery. As set forth below, good cause exists under Rule 16 to modify the Scheduling Order, and all of the Rule 15 factors weigh in favor of amendment. Impossible Foods respectfully requests the Court modify the Scheduling Order and permit Impossible Foods to file the Second Amended Complaint. Impossible Foods further requests that the Court modify the Scheduling Order to extend the deadline to amend pleadings for sixty (60) days, as Impossible Foods reasonably believes that additional discovery will show that ILLC committed fraud upon the United States Patent & Trademark Office on July 12, 2024. Impossible Foods needs this additional discovery to meet the heightened pleading standards of Federal Rule of Civil Procedure 9(b).

## BACKGROUND

The parties exchanged initial written discovery in March 2024. Declaration of H. Forrest Flemming, III ("Flemming Decl.") ¶¶ 3-4. Impossible Foods's first set of interrogatories included a request that ILLC identify "each of the goods and services currently offered under" IMPOSSIBLE-formative marks, and the dates ILLC began offering those goods and services. *Id.* Ex. 4 at 5.

In its interrogatory responses dated May 13, 2024, ILLC stated that "nutritional supplements, including krill oil, sleep aids, and energy supplements" "have been available and may be available again." *Id.* Ex. 5 at 11. ILLC stated that it began offering "nutritional supplement products since at least August 2017." *Id.* at 12. Impossible Foods also inquired into "goods or services" that ILLC "has concrete plans to start offering in the future." *Id.* Ex. 4 at 16-17. ILLC revealed that it is "[REDACTED]." *Id.* Ex. 5 at 17. Impossible Foods further inquired into ILLC's use of IMPOSSIBLE-formative marks in connection with "nutritional supplements" through a second set of interrogatories, which ILLC served responses to on July 1, 2024. *Id.* Ex. 7.

After reviewing ILLC's responses, Impossible Foods investigated the referenced

1    IMPOSSIBLE-branded "krill oil, sleep aids, and energy supplements." According to ILLC's
2    Amazon.com page, the krill oil product is "currently unavailable," and the most recent review is
3    dated February 26, 2019. Flemming Decl. Ex. 8. According to Amazon.com, the sleep powder was
4    first made available in August 2022, and the first Amazon.com review for the energy powder was
5    posted in May 2022. *Id.* Exs. 9 & 10.

6          Based on the discovery responses and Impossible Foods's subsequent investigation, it is
7    clear that Impossible Foods owns prior (and hence superior) trademark rights in IMPOSSIBLE
8    with regard to edible products, which renders ILLC's use of that term in connection with sleep and
9    energy powders an infringement. Therefore, on July 3, 2024, counsel for Impossible Foods sought
10   ILLC's consent to the amendment of Impossible Foods's complaint to assert claims for trademark
11   infringement and unfair competition arising from Impossible LLC's use of IMPOSSIBLE-
12   formative marks in connection with sleep and energy powders. Flemming Decl. ¶ 10. Nearly two
13   weeks later, on July 15, ILLC finally responded and declined to consent to the proposed
14   amendment. *Id.* ¶ 11.

15         During that period of delay, on July 12, 2024, ILLC raced to the U.S. Patent and
16   Trademark Office (the "PTO") and filed an affidavit under Section 15 of the Lanham Act, 15
17   U.S.C. § 1065, for its Registration No. 5387588. Flemming Decl. ¶ 12, Ex. 11. In the Section 15
18   Affidavit, ILLC stated under oath that ILLC was aware of no pending proceeding involving the
19   registered mark and that it had made "continuous" use of the mark in connection with the goods
20   covered by the registration for the five preceding years (i.e., between July 2019 and July 2024). *Id.*
21   Impossible Foods's preliminary investigation suggested that ILLC had not made continuous use of
22   the IMPOSSIBLE mark in connection with "nutritional supplements" during that five-year period,
23   potentially rendering ILLC's Section 15 Affidavit materially false. On July 15, 2024, Impossible
24   Foods requested that ILLC withdraw its fraudulently-filed Section 15 affidavit. *Id.* ¶ 13. On July
25   18, however, ILLC refused. *Id.* ¶ 14. Impossible Foods is therefore preparing discovery requests
26   narrowly tailored to obtain information relevant to a potential claim for fraud on the PTO.

27                                     **LEGAL STANDARD**

28         Pursuant to Federal Rule of Civil Procedure 15(a), "leave to amend should be freely

granted 'when justice so requires.'" *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc). "Although Rule 15(a) gives the trial court discretion over this matter, [the Ninth Circuit has] repeatedly stressed that the court must remain guided by 'the underlying purpose of Rule 15 . . . to facilitate decision on the merits, rather than on the pleadings or technicalities." *Id.*

Where, as here, the court's deadline to amend pleadings has passed, the court must determine whether "good cause" exists to modify the scheduling order under Federal Rule of Civil Procedure 16(b)(4), before proceeding to the Rule 15 analysis. The "good cause determination focuses primarily on the diligence of the moving party," but the court may also consider "any resulting prejudice to the opposing party." *Bradley v. T-Mobile US, Inc.*, No. 17-CV-07232-BLF, 2019 WL 2358972, at *1 (N.D. Cal. June 4, 2019) (Freeman, J.). Once the movant establishes good cause under Rule 16, the burden shifts to the opposing party to prove that the following factors weigh against amendment: "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5) whether plaintiff has previously amended his complaint." *Id.*; *Ramos v. Swatzell*, No. CV 12-01089-BRO(SPX), 2013 WL 12377416, at *2 (C.D. Cal. Sept. 9, 2013) ("The burden to demonstrate the [Rule 15] *Foman* factors falls upon the party opposing the amendment.").

Here, good cause exists to modify the Scheduling Order to allow amendment because Impossible Foods diligently pursued discovery, quickly sought relief, and it remains early in the discovery period with no imminent deadlines. Because all of the Rule 15 factors weigh in favor of amendment, leave to amend should be "freely granted."

## ARGUMENT

### I. Amendment Is Proper Under Rule 16

#### A. Good Cause Exists to Modify the Scheduling Order

Good cause exists to modify the Scheduling Order because Impossible Foods's proposed amendment arises from facts revealed very early in the case, namely during the first and second round of written discovery, including responses served on July 1, 2024, and as recently as July 12, 2024 when ILLC files its Section 15 affidavit with the USPTO. Prior to the deadline to amend pleadings, Impossible Foods was aware that ILLC offered sleep and energy powders (the

"Accused Products"). But Impossible Foods was not aware of three facts relevant to whether such products infringe its rights, because such facts were solely in the possession of ILLC: (1) the date ILLC started offering the Accused Products; (2) ILLC's plans ████████████████ ████████; and (3) ILLC would fraudulently file an affidavit with the USPTO claiming continuous use. Even the date of first use provided in ILLC's application for Trademark Registration No. 5620625 leaves uncertainty by listing the date of first use as "at least as early as August 15, 2017."

All of those facts, disclosed on May 13 and July 12, 2024, warrant a finding of good cause here. *See Wang v. Palo Alto Networks, Inc.*, No. 12-cv-05579, 2013 WL 4047530, at *3 (N.D. Cal. Aug. 7, 2013) (granting leave to amend to add a patent infringement claim filed three months after the deadline for amendments after movant learned of facts during discovery); *see also In re Intuitive Surgical Securities Litigation*, No. 5:13-cv-01920-EJD, 2017 WL 363269, at *2 (N.D. Cal. Jan. 25, 2017) (finding plaintiffs "could not have otherwise met the scheduling order's amendment deadline to seek the addition of information learned through discovery since that process was still ongoing at the time"). Indeed, "[a]llowing parties to amend based on information obtained through discovery is common and well established." *Fru-Con Const. Corp. v. Sacramento Mun. Util. Dist.*, No. CIV. S-05-583 LKK/GGH, 2006 WL 3733815, at *5 (E.D. Cal. Dec. 15, 2006).

In the Second Amended Complaint, Impossible Foods alleges that the Accused Products infringe Impossible Foods's rights in the mark IMPOSSIBLE as used in connection with meat substitutes. Impossible Foods applied for a federal registration for IMPOSSIBLE in connection with "meat substitutes" on October 25, 2013, with first use on October 29, 2015. That registration ultimately issued in 2018. Flemming Decl. Ex. 1. Thus, based on the claimed first use date of August 2017 for the Accused Products that ILLC disclosed in its interrogatory responses, Impossible Foods enjoys priority for IMPOSSIBLE in connection with meat substitutes dating back to at least October 25, 2013. *See* 4 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 26:38 (5th ed. 2024) ("[A] federal registrant has constructive use priority as of the date of filing of its ITU application and can use that priority as a basis to enjoin one who began use after the registrant's constructive use date."). Therefore, good cause to modify the Scheduling

Order exists because Impossible Foods's claim of priority for IMPOSSIBLE in connection with meat substitutes is based on ILLC's interrogatory responses, including responses served on July 1, 2024.

Good cause to modify the Scheduling Order independently exists based on ILLC's May 13 disclosure of its plans to expand into ▬▬▬▬▬▬▬. Impossible Foods's meat substitutes may be sufficiently similar to the Accused Products to warrant a finding of infringement. But "a trademark owner need not sue 'until the likelihood of confusion looms large,'" *San Diego Comic Convention v. Dan Farr Prods.*, No. 14-cv-1865-AJB-JMA, 2018 WL 4091734, at *6 (S.D. Cal. Aug. 23, 2018), and the likelihood of confusion certainly loomed large when Impossible Foods learned that ILLC would be expanding into ▬▬▬▬▬▬▬. Indeed, much of Impossible Foods's advertising highlights ▬▬▬▬▬▬▬:

> Sponsored
>
> Impossible Foods
> https://www.impossiblefoods.com
>
> **Impossible Foods Official Site - Protein Made From Plants**
> Savory, Juicy, And Mouth Watering Impossible™ Beef Handles And Cooks Like Ground Beef. An Option That's Better For The Planet And Tastes Great In Every...
> About Impossible Products · Impossible™ Foods · Science Behind Impossible

Flemming Decl. ¶ 3.

Good cause to modify the Scheduling Order also exists based on ILLC's Section 15 affidavit filed on July 12, 2024, where it asserts, for the first time, its use of the mark shown below was in "continuous use" for the past five years. *See id.* ¶ 12, Ex. 11.

**IMPOSSIBLE**
**N U T R I T I O N**

Publicly available information indicates ILLC's use in connection with "nutritional supplements" has *not* been continuous, potentially rendering ILLC's Section 15 Affidavit materially false.

"A party may seek cancellation of a registered trademark on the basis of fraud under 15 U.S.C. § 1064(c) by proving a false representation regarding a material fact, the registrant's knowledge or belief that the representation is false, the intent to induce reliance upon the

misrepresentation and reasonable reliance thereon, and damages proximately resulting from the reliance." *Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1444 (9th Cir. 1990). The Ninth Circuit has expressly held that statements made in a Section 15 affidavit, if false, can support a claim for fraud on the PTO. *See id.* (affirming finding of fraud based on statements in Section 15 affidavit). But the pleading standards for fraud on the PTO are "heavy." *See id.* Accordingly, Impossible Foods is pursuing discovery narrowly tailored to seek evidence supporting a potential claim for fraud on the PTO.

Thus, for the independent reason that the likelihood of confusion between Impossible Foods's IMPOSSIBLE-branded meat substitutes and the Accused Products "loom[ed] large" once ILLC revealed its future plans, coupled with ILLC's recently fraudulent activity, good cause exists to modify the Scheduling Order to permit the proposed amendment and to permit Impossible Foods another 60 days to conduct discovery into the fraud issue.

### B. ILLC Will Not Be Prejudiced

ILLC cannot show that it will be prejudiced by the amendment. Fact discovery is not set to close until December 13, 2024. ECF 66 at 9. Both parties have served discovery requests aimed at ascertaining the nature and timing of essentially every good or service offered by any party under IMPOSSIBLE-formative marks. Flemming Decl. ¶¶ 4-7. The additional claims in the Second Amended Complaint have been the subject of written discovery already, and the length of time before the close of discovery means that ILLC cannot establish any prejudice from amendment. *See VLSI Tech. LLC v. Intel Corp.*, No. 17-cv-05671-BLF, 2024 WL 664804, at *3 (N.D. Cal. Feb. 16, 2024) (Freeman, J.) (finding "minimal" prejudice to non-movant where "the parties have already conducted discovery on the substantive merits of the [issue]").

### II. Amendment Is Proper Under Rule 15

Because good cause exists to modify the Scheduling Order, ILLC bears the burden of showing that the Rule 15 factors weigh against amendment. *See Ramos*, 2013 WL 12377416, at *2. Specifically, ILLC bears the burden to show that the following factors weigh against amendment: "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5) whether plaintiff has previously amended his complaint." *Bradley*, 2019 WL

PLAINTIFF'S MOTION TO AMEND COMPLAINT
CASE NO. 5:21-CV-02419-BLF

8

1  2358972, at *1. ILLC cannot do so.

2      *First*, Impossible Foods's proposed trademark claims are not "futile" because they would

3  survive a motion to dismiss. *Second*, ILLC cannot demonstrate any prejudice because there is

4  ample time remaining in fact discovery, and the proposed amendment will not significantly

5  expand the scope of the litigation. *Third*, Impossible Foods brings this motion in good faith.

6  *Fourth*, Impossible Foods has not engaged in any "undue delay" and instead brought this motion

7  swiftly upon receipt of key discovery responses and an ensuing factual investigation. *Fifth*,

8  Impossible Foods has not previously sought to assert trademark claims against ILLC.

### A. Impossible Foods's Trademark Claims Are Not "Futile"

10      ILLC cannot show that Impossible Foods's proposed trademark claims are "futile" because

11  those claims would survive a motion to dismiss. *See Barahona v. Union Pac. R.R. Co.*, 881 F.3d

12  1122, 1134 (9th Cir. 2018) ("[L]eave to amend should be denied as futile only if no set of facts

13  can be proved under the amendment to the pleadings that would constitute a valid and sufficient

14  claim or defense[.]") (internal citation omitted).

15      Impossible Foods has alleged facts that plausibly establish Defendants' liability for

16  trademark infringement and unfair competition. The elements of trademark infringement and

17  unfair competition claims are the same: "(1) ownership of a valid mark (i.e., a protectable

18  interest), and (2) that the alleged infringer's use of the mark is likely to cause confusion, or to

19  cause mistake, or to deceive consumers." *See Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d

20  1126, 1134 (9th Cir. 2006); *see also Rise Basketball Skill Dev., LLC v. K Mart Corp.*, No. 16-CV-

21  04895-WHO, 2017 WL 2775030, at *3 (N.D. Cal. June 27, 2017) (noting a common law unfair

22  competition claim is analogous to a Lanham Act claim and is analyzed under the same standard).

23  The Second Amended Complaint alleges that Impossible Foods owns at least one valid trademark

24  registration covering the mark IMPOSSIBLE for "meat substitutes," among other registered and

25  common-law rights, and that Impossible Foods enjoys priority as to those products. The Second

26  Amended Complaint also plausibly alleges that Defendants' use of IMPOSSIBLE-formative

27  marks in connection with the Accused Products is likely to cause confusion among consumers,

28  including allegations regarding the similarity of the marks, products, and channels of trade. *See*

*Zero Motorcycles, Inc. v. Zero Labs Grp., LLC*, No. 22-cv-04034-SVK, 2023 WL 3237505, at *4 (N.D. Cal. May 3, 2023) (finding that, where a party alleged facts regarding similarity of marketing channels and related goods or services, the facts were sufficient to "make out a plausible claim for federal trademark infringement"). Thus, Impossible Foods's proposed trademark infringement and unfair competition claims are not "futile."

Finally, Impossible Foods's claims against Mr. Runyon are not futile because Impossible Foods has plausibly alleged that Mr. Runyon, as the sole owner and employee of ILLC, personally directed and participated in the marketing and sale of the Accused Products. *See Partners for Health & Home, L.P. v. Seung Wee Yang*, No. CV 09-07849 RZ, 2011 WL 5387075, at *4 (C.D. Cal. Oct. 28, 2011) (holding that an individual may be personally liable for trademark infringement where he "personally directs a corporation" to commit the infringement, "particularly" where he is the sole shareholder, officer, and manager and "performs the infringing acts himself" (citations omitted)).

### B. ILLC Cannot Show Undue Prejudice

"[T]he party opposing amendment bears the burden of showing prejudice," *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987), and ILLC cannot carry that burden because ample time remains in discovery, and Impossible Foods's proposed claims would not significantly expand the scope of the litigation.

As discussed above, the parties have already served discovery covering Impossible Foods's proposed claims, and the parties have until December 13, 2024, to complete fact discovery. ECF 66 at 9. "Prejudice is generally mitigated where the case is still in the discovery stage, no trial date is pending and no pretrial conference has occurred." *Flores v. City of Concord*, No. 15-cv-05244, 2017 WL 2472977, at *3 (N.D. Cal. June 8, 2017) (citing *DCD Programs Ltd.*, 833 F.2d at 187-88). Accordingly, ILLC cannot show any prejudice from the amendment.

### C. Impossible Foods Seeks Amendment in Good Faith

ILLC cannot carry its burden of proving bad faith because, put simply, no evidence of bad faith exists. "In the context of a motion for leave to amend, 'bad faith' means acting with intent to deceive, harass, mislead, delay, or disrupt." *ARF Dashnaktsutyun, W. U.S.A. v. Armenian*

*Revolutionary Fed'n WUSA, Inc.*, No. 2:21-cv-5594-FWS-RAO, 2022 WL 16859599, at *5 (C.D. Cal. Oct. 5, 2022) (citation omitted). Here, Impossible Foods seeks to amend its complaint to put a stop to ILLC's infringing conduct, and ILLC cannot adduce any contrary evidence.

### D. Impossible Foods Did Not Unduly Delay in Seeking Amendment

As discussed above, Impossible Foods has been nothing but diligent in pursuing discovery and seeking amendment. *See* Part I(A), *supra*. Accordingly, ILLC cannot demonstrate any "undue" delay.

### E. Impossible Foods Has Not Previously Failed to Cure Deficiencies

The final Rule 15 factor is not applicable here because Impossible Foods has never sought to amend its complaint to assert trademark claims. Thus, ILLC cannot show the requisite "repeated failure to *cure deficiencies*." *Hubbard v. Google LLC*, 19-cv-7016-BLF, 2023 WL 7558810, at *2 (N.D. Cal. Nov. 13, 2023) (Freeman, J.) (emphasis added).

### CONCLUSION

For the reasons set forth above, Impossible Foods respectfully requests the Court modify the Scheduling Order to permit Impossible Foods to file the Second Amended Complaint and to permit Impossible Foods an additional 60 days to conduct discovery into ILLC's potential fraud on the PTO and potentially file an amended complaint asserting such a claim.

DATED: July 23, 2024　　　　　　　　　Respectfully submitted,

**KILPATRICK TOWNSEND & STOCKTON**

By: */s/ William H. Brewster*

William H. Brewster (*pro hac vice*)
H. Forrest Flemming (*pro hac vice*)
Jessica W. Truelove (*pro hac vice*)
Gia Cincone (SBN 141668)

*Attorneys for Plaintiff*
IMPOSSIBLE FOODS INC.

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 23, 2024, the foregoing document was filed electronically using the Court's CM/ECF system, which will send notification of such filing to counsel of record.

*/s/ William H. Brewster*
William H. Brewster