Michael L. Rodenbaugh (SBN 179059)
Meghan Gleeson (SBN 353156)
RODENBAUGH LAW
548 Market Street, Box 55819
San Francisco, CA 94104
Phone: (415) 738-8087
Email: mike@rodenbaugh.com
meghan@rodenbaugh.com
docket@rodenbaugh.com

David E. Weslow (admitted *pro hac vice*)
Adrienne J. Kosak (admitted *pro hac vice*)
WILEY REIN LLP
2050 M Street NW
Washington, DC 20036
Telephone: (202) 719-7000
Facsimile: (202) 719-7049
dweslow@wiley.law
akosak@wiley.law

Attorneys for Defendant IMPOSSIBLE LLC

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IMPOSSIBLE FOODS INC., <br><br> Plaintiff, <br><br> v. <br><br> IMPOSSIBLE LLC, <br><br> Defendant. | Case No. 5:21-cv-02419-BLF (SVK) <br><br> Judge: Hon. Beth Labson Freeman <br><br> **DEFENDANT IMPOSSIBLE LLC'S OPPOSITION TO IMPOSSIBLE FOODS INC.'S MOTION TO AMEND COMPLAINT AND SCHEDULING ORDER** |

## I.     **INTRODUCTION**

# United States of America
### United States Patent and Trademark Office

# IMPOSSIBLE

**Reg. No. 5,620,625**

**Registered Dec. 04, 2018**

**Int. Cl.: 5, 25, 35, 41**

**Service Mark**

**Trademark**

**Principal Register**

Impossible X LLC  (ILLINOIS LIMITED LIABILITY COMPANY)
1231 Champion Forest Court
Wheaton, ILLINOIS 60187

CLASS 5: Nutritional supplements

FIRST USE 8-15-2017; IN COMMERCE 8-15-2017

CLASS 25: Clothing and performance apparel, namely, t-shirts, sweatshirts, pants, shorts, tank tops, yoga pants, tights and underwear

FIRST USE 9-1-2011; IN COMMERCE 9-1-2011

CLASS 35: Search engine optimization for promotion and marketing services; marketing consulting in the field of social media

FIRST USE 2-20-2012; IN COMMERCE 2-20-2012

CLASS 41: Providing a website featuring information in the field of personal fitness, endurance athletics, storytelling, and adventure activities, namely, bungee jumping, skydiving, trekking, mountaineering, surfing, and kite surfing

FIRST USE 9-1-2011; IN COMMERCE 9-1-2011

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

OWNER OF U.S. REG. NO. 5179974, 4624158, 4260617

SER. NO. 87-755,108, FILED 01-15-2018

Director of the United States
Patent and Trademark Office

That's how easy it is to learn the date on which Impossible LLC ("Impossible") began selling the products that Impossible Foods Inc. ("IF") now seeks to accuse of infringement and unfair competition: simply conducting the most cursory review of the asserted trademark registrations. *See* Ex. A. All of the information about Impossible's dates of first use has been right under IF's nose from the moment these parties came into contact with one another in the fall of 2020. And if these readily accessible public documents were not enough to inform IF of the relevant facts, ***Impossible expressly informed IF of Impossible's date of first use of its nutritional supplements on November 25, 2020***, as part of the Notice of Opposition it filed against IF before the U.S. Patent and Trademark Office's ("USPTO") Trademark Trial and Appeal Board ("TTAB"). *See* Ex. B.

Despite having this information about Impossible's date of first use of its marks with nutritional supplements (informing the question of trademark priority for "edible products") since 2020, IF did not raise claims of trademark priority and infringement in its Answer to the Notice of Opposition filed on January 29, 2021; nor in its Complaint filed on April 2, 2021; nor it its First Amended Complaint filed on February 16, 2024; nor before the Court's March 25, 2024 deadline to amend pleadings; nor even in its April 18, 2024 answer to Impossible's infringement counterclaims asserting these registrations. Instead, IF waited four months after the amendment deadline, until the eve of the parties' settlement conference, to submit the present motion arguing that IF could not have asserted these claims earlier because it purportedly had no way of determining which party possessed trademark priority as to edible products until it received Impossible's discovery responses this past May.

IF's assertion about its knowledge of Impossible's date of first sale of "edible products," and consequently the entire premise of its Motion to Amend, wildly misrepresents the information available to it in an attempt to justify its untimely amendment.[1] For years, IF has known everything it needed to know to assert its new claims, and indeed Impossible's interrogatory responses do nothing more than confirm what is stated on the face of Impossible's trademark registrations and

---

[1] IF's filing raises issues under Fed. R. Civ. P. 11(b) that Impossible is addressing separately pursuant to Fed. R. Civ. P. 11(c)(2).

in its Notice of Opposition. IF's dishonesty should not be countenanced, and its motion should be denied in its entirety.

In the alternative, if the Court grants IF's motion to amend, Impossible requests leave to amend its counterclaim for infringement to address IF's apparent new admission that its artificial meat products are related to Impossible's health and fitness offerings.

## II.   BACKGROUND

IF seeks to amend its pleadings to include claims of trademark infringement and unfair competition against Impossible, and to join Impossible's founder Joel Runyon in his personal capacity, alleging that Impossible's sale of "edible products" since 2017 infringes IF's purportedly senior trademark rights in fake meat. Dkt. No. 92-1.

In order to amend its pleadings, IF must seek amendment of the case schedule under Fed. R. Civ. P. 16(b), as the March 25, 2024 deadline to amend pleadings and join parties passed long ago. *See* Dkt. No. 70; *Johnson v. Mammoth Recreations, Inc*., 975 F.2d 604, 610 (9th Cir. 1992) ("A scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." (internal quotations omitted)). Rule 16(b) requires "good cause," which in turn requires the moving party to demonstrate that the case schedule could not "reasonably be met despite the diligence of the party seeking the extension." *Johnson*, 975 F.2d at 609 (quoting Fed. R. Civ. P. 16 advisory committee's notes (1983 amendment)).

IF justifies its attempt to add these infringement and unfair competition claims now—four months after the deadline to amend pleadings, and three-and-a-half years into this action—based on three supposed new "facts":

> (1) the date ILLC started offering the Accused Products; (2) ILLC's plans to expand its edible product offerings; and (3) ILLC would fraudulently file an affidavit with the USPTO claiming continuous use.

Dkt. No. 92 ("Mot.") at 6. The second and third "facts" (the third, Impossible hotly disputes) have no bearing on whether IF could/should have sought amendment prior to the Court-imposed deadline. And the first, that IF did not and could not know the date Impossible began offering its edible products, is blatantly false.

**III.    IF CANNOT SHOW GOOD CAUSE FOR AMENDMENT OF THE CASE SCHEDULE.**

IF's proposed amendment is untimely, and therefore is only permissible if IF demonstrates good cause to amend the case schedule. IF could have easily brought these claims well prior to the deadline to amend pleadings because it had express notice of the relevant facts for *years*, and the newly discovered "facts" are merely red herrings to distract from IF's lack of diligence. Thus, IF cannot demonstrate good cause, and its motion should be denied.

**A.    IF Has Not Exercised Diligence in Pursuing Amendment Because IF Knew Impossible's Dates of First Use Years Prior to the Amendment Deadline.**

While IF cites three supposedly newly discovered "facts" to justify its untimely amendment, it is really only the first that is relevant to whether and when IF knew of the basis for its newly asserted claims of trademark infringement and unfair competition against Impossible's "edible products." *See* Dkt. No. 92-1 (Proposed Second Amended Complaint). IF acknowledges in its motion that it knew that Impossible was offering the accused "edible products," and knew of the nature of those edible products, Mot. 5-6, and it obviously knew of its own products and the dates they were offered. All IF purportedly lacked was information to indicate whether its trademark rights in fake meat products pre-dated Impossible's rights in nutritional supplements: Impossible's dates of first use.

IF claims "[p]rior to the deadline to amend the pleadings, . . . [IF] was not aware of . . . the date [Impossible] started offering the Accused Products," because "such facts were solely in the possession of" Impossible. *Id*. at 5-6. ***That statement is false in its entirety.*** IF knew precisely when Impossible started offering the Accused Products, based both on publicly available USPTO records and express statements Impossible made to IF in 2020 when this dispute began.

Impossible owns four separate trademark registrations covering "nutritional supplements" (i.e., "edible products" as are accused in the proposed amendment): Reg. Nos. 5376208, 5387588, 5576376, and 5620625. *See* Ex. A (registration certificates). Impossible asserted all four against IF on November 25, 2020, when it filed its trademark opposition proceeding before the TTAB, *see* Ex. B (Notice of Opposition), and asserted them again in its infringement counterclaim in this proceeding, Dkt. No. 80 (filed prior to the Court's March 25, 2024 amendment deadline). Each of

those trademark registrations states an identical date of "first use in commerce": August 15, 2017.

IF argues in its motion that the applications stated that the August 15, 2017 date was only an "at least as early as" date, and essentially, that IF could not know *for sure* that that was the priority date until receiving Impossible's interrogatory responses. As an initial matter, the registrations do not say "at least as early as." Ex. A. Even if they did, the priority date that Impossible asserted to the USPTO clearly put IF on notice of the basis of its claims. Once it was on notice, IF was required to pursue those claims diligently. *Roberts v. Hayward Unified Sch. Dist.*, No. 18-CV-02209-JSC, 2019 WL 11250162, at *2 (N.D. Cal. May 3, 2019). A party cannot "wait[] to be spoon fed relevant facts by the opposing party." *Id.*; *see also Hayward Prop., LLC v. Commonwealth Land Title Ins. Co.*, No. 17-CV-06177 SBA, 2021 WL 4927012, at *4 (N.D. Cal. Sept. 28, 2021) (finding a lack of diligence where facts were "la[id] bare" in an expert report, but evidence supporting the claim "came to light" much earlier). IF had notice of the newly asserted claims for more than three years prior to both this motion and the amendment deadline. Its delay until after receiving interrogatory responses, which did no more than confirm what was plain from the face of Impossible's trademark registrations, cannot show diligent pursuit.

And if the date stated on federal trademark registrations was not good enough for IF, the following statements were set forth in Impossible's November 25, 2020 Notice of Opposition:

> Impossible X first used the IMPOSSIBLE [stylized] mark on . . . August 15, 2017, for "nutrition supplements."

> Impossible X first used the IMPOSSIBLE NUTRITION mark on . . . August 15, 2017, for "nutritional supplements."

> Impossible X first used the DO SOMETHING IMPOSSIBLE mark on . . . August 15, 2017, for "nutritional supplements."

> Impossible X first used the IMPOSSIBLE [word] mark on . . . August 15, 2017, for "nutritional supplements."

Ex. B ¶¶ 11-13, 16. **Impossible told IF—directly and without equivocation—the date on which it began offering its edible products, <u>three years, seven months, and 28 days</u> before IF filed its motion seeking to amend its complaint**.

Impossible finds it, well, *impossible* to believe that a massive, sophisticated corporation

like IF never bothered to read the pleadings or trademark registrations asserted against it, and therefore the evidence suggests that IF has mislead the Court about when it learned of its priority claims. Even generously allowing for the potential that IF was unaware of these explicit and publicly available statements, the lack of awareness exhibits a truly appalling lack of diligence in prosecuting a case *that IF brought*, which is just as fatal to its motion to amend the scheduling order. *See, e.g.*, *Delacruz v. State Bar of Cal.*, No. 16-CV-06858-BLF, 2018 WL 3067784, at *5 (N.D. Cal. Mar. 12, 2018) (Freeman, J.) (finding that the failure to establish diligence "alone shows that [the] request for leave to amend the complaint must be denied").

### B.  Information About a Potential Additional Accused Product, Not Yet on the Market, Does Not Justify IF's Extraordinary Delay.

IF attempts to distract from its egregious lack of diligence by pointing to a piece of information that was revealed for the first time in Impossible's discovery responses: that Impossible is planning a new addition to its nutritional supplement line. Mot. 6. But that new addition does not actually implicate the claims as asserted by IF.

First and foremost, IF's proposed amendment to its claims is not limited to Impossible's contemplated new product. IF seeks to assert infringement and unfair competition against all "edible products" offered by Impossible. Dkt. No. 92-1 ¶ 35 (defining the "Accused Products"). This broad claim encompasses the products that Impossible has been offering since 2017, and the basis of such a claim was known to IF long before IF ever learned of the intended new product. The new product thus cannot justify IF suddenly and belatedly asserting its broad claims.

Second, the intended product is just that: an intention. It is not on the market, nor does Impossible have a planned release date. In its May 13, 2024 discovery responses, Impossible stated only that it was "in the process of launching" the product, without any further details as to the nature of the product or that "process," and IF has not sought any further discovery into the product in the months since receiving that response. Dkt. No. 92-8 (Impossible's discovery responses); *see also* Dkt. No. 92-9 (IF's second set of discovery, inquiring only into those nutritional supplement products that are already on the market). There is no present case or controversy surrounding the newly asserted claims as applied to the intended new product, as IF has suffered no actual or

Opposition to Motion to Amend                7                Case No. 5:21-cv-02419-BLF (SVK)

imminent injury. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992) ("Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require."); *Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*, 795 F.3d 1124, 1132 (9th Cir. 2015) ("A question is fit for decision when it can be decided without considering 'contingent future events that may or may not occur as anticipated, or indeed may not occur at all.' " (quoting *Addington v. U.S. Airline Pilots Ass'n*, 606 F.3d 1174, 1179 (9th Cir. 2010)).

Third, setting those issues aside, IF acknowledges that it learned of Impossible's intention to offer these products in May, yet waited until July to first raise the possibility of amendment, and then waited until *the day before the parties' settlement conference* to move to amend. While not as egregious as IF's years-long delay as to edible products generally, this delay still does not demonstrate diligence. *E.g.*, *Schwerdt v. Int'l Fid. Ins. Co.*, 28 F. App'x 715, 719-20 (9th Cir. 2002) (affirming denial of leave to amend based on delay of one to three months); *Experexchange, Inc. v. Doculex, Inc.*, No. C-08-03875 JCS, 2009 WL 3837275, at *29 (N.D. Cal. Nov. 16, 2009) (finding a lack of diligence where the moving party waited two months to seek amendment).

### C. IF's Spurious Accusations of Fraud Are Neither Supported Nor Relevant.

In yet another somewhat shocking disregard for Rule 11, IF's motion references a purported fraud claim, *see* Mot. at 2, 3, 4, 6, 7, 8, 11, while at the same time admitting it cannot yet plead fraud (no fraud claim is included in its proposed amended pleading, Dkt. No. 92-1). IF's third allegedly new "fact," regarding Impossible's recent filing of USPTO maintenance documents in relation to one of its nutritional supplement registrations, is not a "fact" at all, but rather an unsupported belief (or more accurately a hope) by IF that maybe, "potentially," those maintenance documents were false. *See* Mot. at 7. IF vaguely claims that a "preliminary investigation" suggests that the Impossible's mark was not in "continuous use" for the past five years. To be clear, IF's "preliminary investigation" is wrong; Impossible's nutritional supplements have been on sale under its marks continuously for the five years preceding Impossible's trademark filing (the timing of which was not any sort of "race" to the USPTO, despite IF's characterization, Mot. at 4, but rather was based on the USPTO's routine deadline that just happened to fall this July). Impossible

has already produced evidence of its use of nutritional supplements, and intends to produce more to dispel any doubt that IF may attempt to conjure up.

Even if IF could contort the facts to argue that Impossible's use should not have been characterized as "continuous" (though again, Impossible is confident that its filing was truthful and accurate), IF has no basis to believe that Impossible's statement was *fraudulent*. Fraud requires *knowing* falsity with an *intent to deceive*. IF, which admits it cannot even say if the statement was actually false, is not in a position to plead fraud under Rule 9(b)'s heightened pleading standards. So if IF is not seeking amendment to include a fraud claim at this point, what does an allegedly fraudulent maintenance document have to do with propriety of IF's proposed amendment? What does this new "fact" tell the Court about whether IF exercised diligence in asserting claims for infringement and unfair competition? The answer is: absolutely nothing. This new "fact" provides no justification for the extraordinary delay in bringing the claims asserted in IF's proposed amendment, and is simply an attempt to malign Impossible to paint IF in a better light.

In sum, IF cannot demonstrate the diligence necessary to meet Rule 16(b)'s good cause standard to amend the schedule and offer its new claims at this late date. It has waited three-and-a-half years into this proceeding, and four months past the amendment deadline, to raise claims that it knew the basis of for *years*. IF's actions show a shocking lack of diligence in pursuing its claims, and the pending motion shows a shocking lack of candor with this Court.

## IV. IF'S BAD FAITH IN SEEKING THIS AMENDMENT INDICATES THAT THE AMENDMENT IS NOT IN THE INTERESTS OF JUSTICE.

While IF's failure to meet the requirements of Rule 16 renders the Rule 15 factors for amendment of pleadings moot, Impossible also wishes to briefly address the factor of good faith in pursuing amendment. As explained herein, IF sat on an infringement claim of which it had knowledge for more than three years, and first raised its potential assertion three weeks before the parties' settlement conference, and filed the present motion *the night before the conference*. If allowed, these claims would shift the posture of this action dramatically—to this point, IF has only ever asserted declaratory judgment claims of non-infringement in view of Impossible's senior trademark rights, and Impossible would now be facing affirmative claims of wrongdoing related

to products that have been in the marketplace for nearly seven years. Taking together the timing of this motion, IF's lack of diligence in meeting the case schedule, and IF's misrepresentations in justifying its delay, it appears that IF intentionally withheld its infringement claims so that it could assert them at a time when they would disrupt the settlement conference. This is dilatory and deceptive, and strongly indicates pursuit of the claims in bad faith, contrary to Rule 15's otherwise permissive standard allowing amendment "when justice so requires."

## V.   IF'S REQUEST TO HOLD OPEN THE AMENDMENT WINDOW FOR A CURRENTLY UNPLEADABLE CLAIM IS INAPPROPRIATE.

As to IF's request to hold open the amendment window for 60 days to accommodate a potentially forthcoming fraud claim (to the extent the Court would consider this request separately from IF's fatally flawed request to amend), such a request is also inappropriate. IF acknowledges that it lacks facts sufficient to plead fraud at this time, and it merely believes that it may potentially raise fraud in the future. By relying on a potential future intention to plead fraud rather than a ripe claim that Impossible can review and consider, IF deprives Impossible of the opportunity to argue meaningfully against such amendment, particularly with respect to prejudice and futility.

## VI.   ALTERNATIVE RELIEF: LEAVE TO AMEND IMPOSSIBLE'S COUNTERCLAIMS

In the alternative, if IF is allowed to amend its complaint to assert its newly raised infringement and unfair competition claims, then Impossible requests leave to amend its own counterclaims to allow Impossible the potential to assert infringement and unfair competition against IF's artificial meat products. Impossible has not previously asserted its claims so broadly, as it has endeavored to take a judicious and limited approach to this proceeding, and had been willing to accept that IF's artificial meat products were likely sufficiently distinct from Impossible's fitness and nutrition products and services to avoid consumer confusion. However, IF's proposed amendment includes averments of fact that suggest IF believes, and intends to argue, otherwise, for instance:

> Paragraph 9: Impossible Foods also asserts claims for trademark infringement and unfair competition under federal and state law against Defendants in connection with Defendants' use of the IMPOSSIBLE mark in connection with sleep and energy powders and other edible products — goods over which Impossible Foods

enjoys priority in the mark IMPOSSIBLE.

Paragraph 35: Notwithstanding Impossible Foods's prior use and superior rights in the IMPOSSIBLE marks in connection with edible products, Defendants are using, at the direction of Mr. Runyon, IMPOSSIBLE-formative marks in connection with edible products such as sleep and energy powders, as shown below, and upon information and belief, intends to offer for sale additional edible products soon (the "Accused Products").

Paragraph 36: Defendants' use of IMPOSSIBLE-formative marks in connection with the Accused Products are similar to, and compete with, the edible products offered and sold by Impossible Foods.

Paragraph 38: On information and belief, the Accused Products are marketed through overlapping channels, including social media, and offered through overlapping channels of trade, including online.

Dkt. No. 92-1. Essentially, IF is alleging in its proposed amended pleading that the rights stemming from its use of IMPOSSIBLE extend well beyond artificial meats, and cover *all* edible products—and particularly, nutritional supplements used by and marketed to athletes, as Impossible's products are. This is a new admission regarding the scope of IF's use, which illuminates previously unknown ways in which IF's use of IMPOSSIBLE on artificial meats may be related to, and likely to cause confusion with, Impossible's broader fitness and nutrition services, which long predate IF's use of IMPOSSIBLE entirely.

IF's new averments of fact regarding the scope of its usage and the relatedness of its goods to Impossible's goods constitute new relevant facts previously unknown to Impossible, thus demonstrating good cause under Rule 16. Amendment is appropriate under Rule 15 in the interests of justice, to allow Impossible to address fully the implications of these new allegations that are being asserted against it.

## VII.    CONCLUSION.

IF has misrepresented its knowledge to this Court in order to justify a woeful lack of diligence in seeking to amend its claims. IF's dishonesty with this Court and apparent bad faith demonstrate that its proposed amendment is not in the interests of justice. Impossible therefore requests that IF's motion be denied in its entirety. But if the Court is inclined grant the motion, then Impossible requests that it be allowed to amend its own claims in response, to address the

new allegations and the implications stemming therefrom.

Respectfully submitted,

Date:  August 6, 2024

By:  /s/ Adrienne J. Kosak
Mike L. Rodenbaugh (SBN 179059)
Meghan Gleeson (SBN 353156)
RODENBAUGH LAW
548 Market Street, Box 55819
San Francisco, CA 94104
Phone: (415) 738-8087
Email:  mike@rodenbaugh.com
meghan@rodenbaugh.com
docket@rodenbaugh.com

David E. Weslow (admitted *pro hac vice*)
Adrienne J. Kosak (admitted *pro hac vice*)
WILEY REIN LLP
2050 Street, N.W.
Washington, D.C. 20036
202.719.7000 (telephone)
dweslow@wiley.law (email)
akosak@wiley.law (email)

*Attorneys for Defendant*
*Impossible LLC*

# CERTIFICATE OF SERVICE

I hereby certify that on August 6, 2024, the foregoing was served electronically on all counsel of record.

*/s/ Adrienne J. Kosak*
Adrienne J. Kosak