# Exhibit 1

# Joint Statement Regarding Plaintiff's Discovery Responses (Redacted)

REDACTED

| | |
|---|---|
| Michael L. Rodenbaugh (SBN 179059)<br>RODENBAUGH LAW<br>548 Market Street, Box 55819<br>San Francisco, CA 94104<br>Phone: (415) 738-8087<br>Email: mike@rodenbaugh.com<br>docket@rodenbaugh.com | GIA CINCONE (SBN 141668)<br>KILPATRICK TOWNSEND & STOCKTON LLP<br>Two Embarcadero Center, Suite 1900<br>San Francisco, California 94111<br>Telephone: (415) 273-7546<br>Facsimile: (415) 723-7173<br>gcincone@ktslaw.com |
| David E. Weslow (admitted *pro hac vice*)<br>Adrienne J. Kosak (admitted *pro hac vice*)<br>WILEY REIN LLP<br>2050 M Street NW<br>Washington, DC 20036<br>Telephone: (202) 719-7000<br>Facsimile: (202) 719-7049<br>dweslow@wiley.law<br>akosak@wiley.law | R. CHARLES HENN JR. (*pro hac vice*)<br>H. FORREST FLEMMING (*pro hac vice*)<br>JESSICA W. TRUELOVE (*pro hac vice*)<br>1100 Peachtree Street NE<br>Atlanta, Georgia 30309<br>Telephone: (404) 815-6549<br>Facsimile: (404) 541-3139<br>chenn@ktslaw.com<br>fflemming@ktslaw.com<br>jtruelove@ktslaw.com |
| Attorneys for Defendants<br>IMPOSSIBLE LLC and JOEL RUNYON | Attorneys for Plaintiff<br>IMPOSSIBLE FOODS INC. |

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IMPOSSIBLE FOODS INC.,<br><br>    Plaintiff,<br><br>v.<br><br>IMPOSSIBLE LLC and JOEL RUNYON,<br><br>    Defendants. | Case No. 5:21-cv-02419-BLF (SVK)<br><br>Judge: Hon. Beth Labson Freeman<br><br>**JOINT STATEMENT REGARDING PLAINTIFF'S DISCOVERY RESPONSES** |

Pursuant to Section 8 of the Civil and Discovery Referral Matters Standing Order of Magistrate Judge Susan van Keulen, Defendant Impossible LLC ("Defendant") respectfully requests an order compelling Plaintiff Impossible Foods Inc. ("Plaintiff") to produce all documents responsive to Request for Production Nos. 34 and 36, as described below.

Individual defendant Joel Runyon concurs with Defendant's positions herein, but as the requests were served on behalf of Defendant only, Mr. Runyon has not joined this motion.

As of the date of filing, there are 98 days remaining in the discovery period, which is currently set to close on April 14, 2025.

Attached as Exhibit A is a joint chart as required by Section 8 of the Standing Order.

Request Nos. 34 and 36, included in Defendant's first set of requests for production (attached hereto as Exhibit B), seek production from Plaintiff as follows:

> Request No. 34: Produce all non-privileged communications between Plaintiff and third parties concerning use of Plaintiff's Marks or any marks similar to Plaintiff's Marks, including any demand letters sent or received by Plaintiff and any responses thereto.
>
> Request No. 36: Produce all documents regarding trademark enforcement actions taken by or against Plaintiff regarding any mark that includes the term IMPOSSIBLE, and documents sufficient to identify the party seeking to enforce its mark, the asserted mark(s), the alleged infringing mark(s), and the resolution of the dispute.

Defendant served these requests on March 12, 2024; Plaintiff served its responses on May 13, 2024 (attached as Exhibit C), refusing to produce any documents. The parties exchanged correspondence regarding the requests on June 3 and 17, 2024; conferred on June 17, 2024; and exchanged further correspondence following conferral on June 17 and 24, 2024. Following an informal pause in discovery as the parties explored settlement and Plaintiff sought to amend its complaint, Defendant sent correspondence on October 17, 2024, revisiting the last exchange; the parties exchanged further correspondence on October 19 and 25, 2024.

In its October 25, 2024 correspondence, Plaintiff stated that "[w]e have produced documents responsive to Request Nos. 34 and 36 and will continue to do so as discovery and our investigation is ongoing."[1] Plaintiff's only production as of that date included 23 demand letters

---

[1] In view of the Court's standing orders on discovery disputes, the parties' correspondence has not

sent by in-house and outside counsel to alleged trademark infringers. Plaintiff confirmed that it had produced responsive documents during a meet and confer on October 31, 2024.

As discussed more fully in the argument below, a third-party subpoena response from the target of one of Plaintiff's demand letters demonstrated that Plaintiff did not produce all documentation responsive to Request Nos. 34 and 36, and Defendant believes that Plaintiff failed to produce particularly probative information. Defendant sent a letter to Plaintiff on November 27, 2024, explaining (and concurrently producing) the subpoenaed documents that Defendant asserts demonstrate Plaintiff's withholding of highly probative documents.

Plaintiff responded on December 6, 2024, stating that "[w]hile we agreed that enforcement-related documents are generally relevant to this action," Plaintiff believed that Request Nos. 34 and 36 "are overly broad requests that are disproportionate to the needs of this case," and narrowed their previously agreed responses to only "enforcement letters" and "settlement agreements." Defendant responded on December 13, 2024, disagreeing with Plaintiff's objections and insisting upon production of all enforcement correspondence, in light of the revelations through third-party subpoenas. The parties met and conferred once again on December 20, 2024.

The parties have both proposed compromises that render Request Nos. 34 and 36 overlapping, and therefore they are discussed together below.

**Defendant's Position: Defendant requests that the Court require production of all documentation reflecting correspondence regarding enforcement of its trademarks that include the term IMPOSSIBLE**, which are responsive to both Request Nos. 34 and 36.

The relevance of these documents has already been acknowledged by Plaintiff. Enforcement correspondence shows the manner in which Plaintiff characterizes its marks to the public, which are evidence of the nature of the marks themselves, and implicate the credibility of Plaintiff's assertions in this case. *See, e.g.*, *GT Beverage Co., LLC v. Coca-Cola Co.*, No. SACV100209JVSRNBX, 2010 WL 11595890, at *1 (C.D. Cal. Sept. 16, 2010) (compelling

been included in this submission. Defendant is happy to provide copies of the correspondence at the Court's request.

discovery into correspondence that could contain statements inconsistent with a party's position in litigation).

Further, the ways in which Plaintiff has asserted its trademarks, and objected to third parties' uses of arguably similar marks, are evidence of the scope of the exclusive rights Plaintiff possesses. The scope of a trademark is defined by public perception—whether consumers would encounter a certain mark applied to certain goods, and associate it back to the mark holder. The scope is therefore impacted by similar uses in the market by third parties—if others use a mark, or similar marks, in commerce with certain goods, the public will be trained to recognize that the mark in that context does not identify the original mark holder as the source of goods. *E.g.*, *PostX Corp. v. docSpace Co.*, 80 F. Supp. 2d 1056, 1061 (N.D. Cal. 1999) ("The presence of those marks (and those marks which plaintiff contends are 'dissimilar' but which clearly use, to varying degrees, elements of plaintiff's mark's design, including the keyhole) to represent their computer security services or products weakens plaintiff's mark.").

Defendant believes that it is entitled to all responsive documents for the simple fact that they are evidence illuminating Plaintiff's views of its own marks. But beyond this general relevance, a recent third-party subpoena response indicates a non-hypothetical and pressing need for this documentation: the subpoena response shows that Plaintiff has previously taken positions regarding the scope of its marks that contradict its infringement claims against Defendant. In this case, Plaintiff has asserted that its trademarks are broad enough to exclude Defendant's use of its mark in association with any "edible products." Dkt. No. 103 ¶ 35 (defining the "Accused Products"). Yet, subpoenaed documentation not produced by Plaintiff demonstrates that Plaintiff ███████████████████████████████████████████████████████████████████████ supplement products of the type Defendant offers/intends to offer, and Plaintiff specifically complained of in its claims in this case. After months-long back-and-forth email correspondence between the third party's and Plaintiff's counsel (none of which Plaintiff produced in this action), ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ██████████████████████████████████████ This narrow limitation stands in stark contrast to the

assertions made in this case, that any and all "edible products" sold by Defendant infringe Plaintiff's marks.

Having already acknowledged relevance, and providing no concrete information about how these searches create undue burden (*see In re Cathode Ray Tube (CRT) Antitrust Litig*., No. C-07-5944 JST, 2018 WL 4378727, at *2 (N.D. Cal. Apr. 25, 2018) ("Simply saying that discovery is burdensome is not enough; a burden objection requires a showing of actual burden.")), Plaintiff objects to production of enforcement correspondence based solely on proportionality under Rule 26(d)(1). As an initial matter, this proportionality objection was not raised in Plaintiff's written response to Request No. 34 (*see* Ex. B), nor was it stated when Plaintiff agreed to produce documents in response to both requests on October 25, 2024, and is thus waived. *See Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992) ("It is well established that a failure to object to discovery requests within the time required constitutes a waiver of any objection.").

But even if not waived, the proportionality of these requests is readily apparent. Whether Plaintiff has acquiesced to third-party uses similar to Defendant's allegedly infringing use speaks to the central infringement question of consumer confusion; the discovery also speaks to Plaintiff's credibility, in view of its numerous assertions that its trademark rights encompass all edible goods. Plaintiff has threatened enhanced damages and injunctive relief based on alleged willful infringement, and thus the amount in controversy is high. Plaintiff has demonstrated that it does not intend to produce this information absent a Court order directing it to do so, and the only other way to obtain it is through subpoena practice that transfers Plaintiff's discovery burdens to third parties. And the parties' relative resources favor Plaintiff (as the multimillion dollar corporation that brough this suit) expending the resources to identify this information, rather than placing an even higher cost on Defendant (a single-member LLC) to go seek the information from each of Plaintiff's enforcement targets individually.

Plaintiff's proposed compromise, that it will produce demand letters and settlement agreements, is insufficient to provide information that addresses Defendant's concerns. The compromise would exclude the precise documentation that demonstrates Plaintiff's previous

trademark acquiescence that is contrary to Plaintiff's infringement assertion in this case, and which was contained entirely in email correspondence. The subpoenaed documents show that relevant and probative information can and does appear in broader communications, and thus the compromise does not meet Defendant's discovery needs.

Finally, Defendant notes that discovery into all enforcement efforts is necessary in view of Plaintiff's misleading statements regarding its responses to Request Nos. 34 and 36. Plaintiff had agreed to produce responsive information as of October 25, 2024; it was only after Defendant independently uncovered responsive, unproduced, and *damaging* documentation that Plaintiff belatedly asserted its current proportionality argument. Plaintiff's efforts to narrow its obligations, rather than correct its demonstrated shortcomings, leaves Defendant dubious that any compromise offered by Plaintiff will actually capture the relevant information. Defendant also fears that if Plaintiff is given any discretion to choose which enforcement documentation is produced, Plaintiff will again exclude damaging information. Defendant therefore respectfully requests the Court's intervention to require production of all documentation reflecting enforcement correspondence.

**Plaintiff's Position: The Court should find that Plaintiff's production of cease-and-desist letters and settlement agreements in response to Request Nos. 34 and 36 is proportional to the needs of the case.**

Plaintiff has already agreed to produce cease-and-desist letters and settlement agreements from its efforts to enforce its trademark rights against third parties. Defendants' demand that Plaintiff also collect and produce *all* correspondence between Plaintiff and those third parties is disproportionate to the needs of the case.

Trademark infringement disputes are "intensely factual [in] nature." *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1202 (9th Cir. 2012). Indeed, the Ninth Circuit uses a "flexible, multi-factored approach" in "assessing whether a party's actions are likely to create confusion." *Cornerstone Staffing Sols., Inc. v. James*, 2013 WL 12124430, at *6 (N.D. Cal. Oct. 21, 2013). For this reason, allegations of trademark infringement and likelihood of confusion against *third parties* are of marginal relevance to whether there is a likelihood of confusion in

*this case.*

The court in *Pennsylvania State Univ. v. Vintage Brand, LLC*, — F. Supp. 3d —, 2024 WL 4665186, at *5 (M.D. Penn. Nov. 4, 2024) conducted an extensive analysis of this issue and concluded that evidence of a party's trademark disputes with third parties was inadmissible at trial. As the *Vintage Brand* court observed:

> [E]very case is unique, and the circumstances surrounding every alleged trademark infringement are unique. . . .
>
> [E]ach alleged act of infringement is factually unique, which would further diminish the relevance of other lawsuits or disputes as related to Vintage Brand's willfulness. Factual questions relevant to each alleged act of infringement include issues such as, for example, whether the infringement involved composite images or direct use of trademarks, whether the defendant conducted research into whether images were trademarked, or whether any trademarks had obtained indisputable status. This would necessitate an examination of the underlying cases, conduct, and trademarks to determine whether the conduct there was similar to Vintage Brand's conduct in this matter, which would not only have the potential to confuse the jury, but would undoubtedly waste significant amounts of time.

*Id.*

Other courts have refused to compel production of trademark infringement correspondence with third parties, applying similar reasoning. In *Fossil Group, Inc. v. Angel Seller LLC*, 2021 WL 5181308 (E.D.N.Y. Oct. 22, 2021), the court noted "that a defendant being sued for trademark infringement can[not] demand all evidence regarding the plaintiff's prior trademark enforcement efforts and settlement agreements." *Id.* at *6. In *Reflex Media, Inc. v. Luxy Ltd.*, 2021 WL 5937650, (C.D. Cal. Oct. 20, 2021), the Central District found that discovery requests seeking "[d]emand letters, cease-and-desist letters, settlement agreements, and communications with third parties concerning . . . the marks at issue" were neither "relevant" nor "proportional to the needs of this case." *Id.* at *9.

Here, even if Defendants are correct that Impossible Foods "acquiesced" to a third party

(it did not), such evidence is not relevant to *this* case because each trademark dispute is unique and must be analyzed according to the non-exhaustive *Sleekcraft*. The Ninth Circuit does not permit a finder of fact to compare one trademark litigation to another, as Defendants seek to do. *See Century 21 Real Est. Corp. v. Sandlin*, 846 F.2d 1175, 1181 (9th Cir. 1988) ("[D]iscovery that revealed other potential infringers would be irrelevant under the law of this circuit and of California.").

Impossible Foods has already agreed to produce cease-and-desist letters and settlement agreements with third parties involving Impossible Foods's asserted marks—a compromise which exceeds the bounds of proportionality. The Court should not compel Impossible Foods to collect every back-and-forth with those third parties just so that Defendants can mine them for potential statements that might be "inconsistent" with Impossible Foods's positions in this case. The law does not support Defendants' demand.

Defendants' argument that Impossible Foods "waived" the issue of proportionality is incorrect. During a conferral on October 31, 2024, Impossible Foods's counsel discussed the proportionality of producing "all" documents and communications concerning Impossible Foods's enforcement efforts against third parties. Impossible Foods also made proportionality objections in its written responses, both in its General Objections and in response to Request No. 36. *Id*.

In any event, "under Rule 26, relevance is simply the initial hurdle a party seeking discovery must pass" and the "second hurdle Defendant[s] must clear is proportionality." *See Schutza v. Costco Wholesale Corp.*, No. 19-CV-990-H(WVG), 2020 WL 13885645, at *2 (S.D. Cal. Apr. 10, 2020). The "moving party bears the burden of not only demonstrating [the relevance of] the requested discovery, but also that it has satisfied proportionality and other requirements of Rule 26." *Hegarty v. Transamerica Life Ins. Co.*, No. 19CV06006-MMC (RMI), 2021 WL 4899482, at *2 (N.D. Cal. Oct. 21, 2021) (denying motion to compel production where moving party did not demonstrate relevance and proportionality of requests). Further, "the Court may sua sponte review discovery requests for proportionality" under Rule 26(b)(2)(C). *Philhower v. Philhower*, No. 8:24-CV-00074-MRA (JDEX), 2024 WL 4720932, at *6 (C.D. Cal.

Oct. 15, 2024); *see also Laszloffy v. Garcia*, No. 2:19-CV-01173-JAD-BNW, 2024 WL 4213689, at *3 (D. Nev. Feb. 23, 2024) ("While Defendants have not lodged a proportionality objection, the Court has an independent duty under Rule 26(b)(2)(C) to consider whether the request is indeed proportional to the needs of the case."). Accordingly, the issue of proportionality is properly before the Court.

In sum, Defendants' demand for *all* documents and communications relating to Impossible Foods's trademark enforcement efforts against third parties is disproportionate to the needs of the case. By agreeing to produce responsive demand letters and settlement agreements, Impossible Foods has already complied with its obligations under Rules 26 and 34. Defendants' motion should therefore be denied.

Respectfully submitted,

Date:  January 6, 2025

By:  /s/ Adrienne J. Kosak

RODENBAUGH LAW
Mike L. Rodenbaugh (SBN 179059)
Email:  mike@rodenbaugh.com
docket@rodenbaugh.com

WILEY REIN LLP

David E. Weslow (admitted *pro hac vice*)
Adrienne J. Kosak (admitted *pro hac vice*)
dweslow@wiley.law (email)
akosak@wiley.law (email)

*Attorneys for Defendants*

By:  /s/ Jessica W. Truelove

KILPATRICK TOWNSEND & STOCKTON
R. Charles Henn Jr. (pro hac vice)
H. Forrest Flemming, III (pro hac vice)
Jessica W. Truelove (pro hac vice)
Gia Cincone (SBN 141668)

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 6, 2025, the foregoing was served electronically on all counsel of record.

*/s/ Adrienne J. Kosak*
Adrienne J. Kosak