# Exhibit 1

GIA CINCONE (SBN 141668)
KILPATRICK TOWNSEND & STOCKTON LLP
Two Embarcadero Center,
Suite 1900
San Francisco, California 94111
Telephone: (415) 273-7546
Facsimile: (415) 723-7173
gcincone@ktslaw.com

WILLIAM H. BREWSTER (*pro hac vice*)
H. FORREST FLEMMING (*pro hac vice)*
1100 Peachtree Street NE
Atlanta, Georgia 30309
Telephone: (404) 815-6549
Facsimile: (404) 541-3139
bbrewster@ktslaw.com
fflemming@ktslaw.com

Attorneys for Plaintiff
IMPOSSIBLE FOODS INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| IMPOSSIBLE FOODS INC.,<br><br>Plaintiff,<br><br>v.<br><br>IMPOSSIBLE LLC,<br><br>Defendant. | Case No. 5:21-cv-02419-BLF (SVK)<br><br>**IMPOSSIBLE FOODS INC.'S OBJECTIONS AND RESPONSES TO IMPOSSIBLE LLC'S FIRST SET OF INTERROGATORIES**<br><br>Judge: Hon. Beth Labson Freeman |

| | |
|---|---|
| PROPOUNDING PARTY: | Defendant IMPOSSIBLE LLC |
| RESPONDING PARTY: | Plaintiff IMPOSSIBLE FOODS |
| SET NO: | ONE |

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Impossible Foods objects and responds to the "First Set of Interrogatories" (the "Interrogatories") served by Defendant Impossible LLC on Impossible Foods on March 12, 2024.

**OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS**

1. Impossible Foods objects to the definition of "Plaintiff, you, and your" because such definitions could be interpreted to seek information not within the possession, custody, or control of Impossible Foods, and the definition could include vague and undefined "affiliate[s]." Impossible Foods's responses and objections are made on behalf of Impossible Foods, and its searches will be limited to information within the possession, custody, or control of Impossible Foods.

2. Impossible Foods objects to the definition of "Plaintiff's Marks" because it includes 48 trademark registrations and applications, many of which are either not an IMPOSSIBLE-formative mark (e.g., U.S. Reg. No. 5,381,475) or otherwise are not relevant to any claim or defense in this action. Impossible Foods further objects to this definition because it imposes undue burden and expense on Impossible Foods by requiring it to respond to interrogatories concerning 48 registrations and applications.

3. Impossible Foods objects to the definition of "Defendant's Marks" because whether "Defendant" has "common law rights" in a purported "family of marks" is information that is not within Impossible Foods's possession, custody, or control. Impossible Foods will respond only with respect to the trademark registrations referenced in the definition.

4. Impossible Foods objects to, and will not comply with, Instruction ¶ 1 because it imposes an undue burden on Impossible Foods and is disproportional to the needs of the case. Defendant has construed "Plaintiff's Marks" to include 48 trademark registrations and applications, many of which cover goods and services not relevant to any claim or defense asserted in this action, and requiring Impossible Foods to provide different answers for "different types of goods or services" within those 48 registrations and applications is disproportional to the needs of the case.

5. Impossible Foods objects to, and will not comply with, Instruction ¶ 2 because it imposes an undue burden on Impossible Foods and is disproportional to the needs of the case. Defendant has construed "Plaintiff's Marks" to include 48 trademark registrations and

applications, many of which cover goods and services not relevant to any claim or defense asserted in this action, and requiring Impossible Foods to provide different answers for "different types of use" of marks reflected in 48 registrations and applications is disproportional to the needs of the case.

6. Impossible Foods objects to, and will not comply with, Instruction ¶ 3, because it imposes an undue burden on Impossible Foods and is disproportional to the needs of the case. Impossible Foods is unable to determine whether an answer "differs as between different persons"—an exceedingly vague phrase—nor would such differentiation be relevant to any claim or defense.

7. Impossible Foods objects to, and will not comply with, Instruction ¶ 4, because it imposes an obligation beyond what is required by the Federal Rules, would impose an undue burden on Impossible Foods, and is disproportional to the needs of the case.

8. Impossible Foods objects to, and will not comply with, Instruction ¶ 5, because it exceeds the requirements for a privilege log in this District. Impossible Foods will provide a privilege log, if required, that complies with the law in this District.

## RESPONSES AND OBJECTIONS TO INTERROGATORIES

### INTERROGATORY NO. 1

Identify each person or agent answering or assisting in the answering of these Interrogatories, Defendant's First Set of Requests for Production of Documents and Things, and/or Defendant's First Set of Requests for Admission, and the duties performed by such person or agent at all times referred to herein.

**RESPONSE:**

Impossible Foods objects to this Interrogatory because it seeks information protected from disclosure by the attorney-client privilege and work product doctrine. "[A] party is not permitted to obtain discovery of an adverse party's counsel regarding his or her work in preparation of the adversary's case." *In re Telescopes Antitrust Litig.*, No. 20CV03642EJDVKD, 2022 WL 1693677, at *3 (N.D. Cal. May 26, 2022) (citing *Hickman v. Taylor*, 329 U.S. 495, 511 (1947) ("In

performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel.”)). Impossible Foods further objects to this Interrogatory because it seeks information that is not relevant to any claim or defense asserted in this action. Should Defendant wish to know the identities of relevant witnesses, then Defendant must serve discovery targeted to identification of witnesses with knowledge of relevant issues. It is improper for Defendant to seek identification of each person, including attorneys, who “assisted” in preparing discovery responses in any conceivable way.

In accordance with the foregoing objections, Impossible Foods states that the answer to this Interrogatory is privileged.

**INTERROGATORY NO. 2**

Describe Plaintiff’s decision to adopt Plaintiff’s Marks, including without limitation the reasons Plaintiff chose to cease use of its original trade name “Maraxi” or “Maraxi, Inc.” and the date on which that decision occurred, the process for selecting a new trade name and trademark and the date on which that process began, the reasons for selecting IMPOSSIBLE and the date on which it was selected, any alternative marks or forms considered, and all persons with knowledge thereof.

**RESPONSE:**

Impossible Foods objects to this Interrogatory because it is compound. Defendant has styled it is as one interrogatory, yet it contains at least nine, discrete subparts seeking: (1) a description of the decision to adopt each of Impossible Foods’s marks over the past eleven years; (2) a description of the reasons Impossible Foods chose to cease use of the names “Maraxi” or “Maraxi, Inc.”; (3) identification of the date on which Impossible Foods decided to cease using “Maraxi” or “Maraxi, Inc.”; (4) a description of Impossible Foods’s process for selecting a new trade name and trademark; (5) identification of the date on which Impossible Foods began the process of selecting a new trade name and trademark; (6) a description of the reasons Impossible Foods selected IMPOSSIBLE; (7) the date[s] on which Impossible Foods selected IMPOSSIBLE; (8) identification of alternative marks or forms considered; and (9) identification of “all persons

with knowledge" of each of the preceding eight categories of information.

Impossible Foods responds to the nine discrete subparts of Interrogatory 2 as follows:

**Interrogatory No. 2(1)**, seeking a description of "Plaintiff's decision to adopt Plaintiff's Marks."

Impossible Foods objects to this Interrogatory on the ground that the term "Plaintiff's Marks" purports to cover 48 trademark registrations and applications over a period of eleven years, meaning that compliance with this Interrogatory would require Impossible Foods to investigate each of those 48 registrations and applications and interview the persons involved with the selection of the marks underlying them. The Interrogatory therefore imposes an undue burden on Impossible Foods and is disproportional to the needs of the case.

In accordance with these objections, Impossible Foods states that it decided to adopt the name Impossible Foods because the name reflected Impossible Foods' mission and goal for how consumers would react to the meat alternative products to be offered by the company. Impossible Foods adopted other IMPOSSIBLE-formative marks because the term "Impossible," used in connection with other goods and services, reflected how consumers reacted to the fact that, to use Impossible Burger as an example, the product looked and cooked like beef, and tasted as good as beef, while actually being made from plant-based products.

**Interrogatory No. 2(2)**, seeking a description of "the reasons Plaintiff chose to cease use of its original trade name 'Maraxi' or 'Maraxi, Inc.'"

Impossible Foods objects to this Interrogatory on the ground that it seeks information that is not relevant to any claim or defense asserted in this action. Impossible Foods's decision to "cease use" of "Maraxi" is not relevant to any *Sleekcraft* factor or any remedy sought by any party.

**Interrogatory No. 2(3)**, seeking the identification of "the date" on which Plaintiff chose to cease use of its original trade name 'Maraxi' or 'Maraxi, Inc.'"

Impossible Foods objects to this Interrogatory on the ground that it seeks information that is not relevant to any claim or defense asserted in this action. Impossible Foods's decision to "cease use" of "Maraxi"—including the date of that decision—is not relevant to any *Sleekcraft*

factor or any remedy sought by any party. Impossible Foods further objects to this Interrogatory on the ground that it imposes an undue burden on Impossible Foods to pinpoint a date on which the company formally decided it would cease use of "Maraxi."

**Interrogatory No. 2(4)**, seeking a description of "the process for selecting a new trade name and trademark."

Impossible Foods's process for selecting a new trade name to follow "Maraxi" included hiring the branding company Lexicon. Lexicon generated potential names for Impossible Foods's consideration, and the company eventually chose the Impossible brand name and Impossible Foods trade name. Before transitioning to "Impossible Foods" and other "Impossible" branding, Impossible Foods asked the lawyers at the law firm Fish & Richardson P.C. to conduct trademark searches for potentially conflicting marks and to order a full commercial search for potentially conflicting trademark applications, trademark registrations, and common law uses. Those search results included not only word marks but design and stylized marks as well.

**Interrogatory No. 2(5)**, seeking the identification of "the date" on which Impossible Foods began "the process for selecting a new trade name and trademark."

Impossible Foods objects to this Interrogatory on the ground that it seeks information that is not relevant to any claim or defense asserted in this action.

**Interrogatory No. 2(6)**, seeking a description of "the reasons for selecting IMPOSSIBLE."

Impossible Foods states that the reason for selecting IMPOSSIBLE was that the name reflected how consumers reacted to the fact that, to use Impossible Burger as an example, the product looked and cooked like beef, and tasted as good as beef, while actually being made from plant-based products.

**Interrogatory No. 2(7)**, seeking the identification of "the date" on which Impossible Foods "select[ed] IMPOSSIBLE."

Impossible Foods states that it selected IMPOSSIBLE between October and December of 2013.

**Interrogatory No. 2(8)**, seeking the identification of "any alternative marks or forms considered"

with respect to IMPOSSIBLE.

Impossible Foods objects to this Interrogatory on the ground that it seeks information that is not relevant to any claim or defense asserted in this action. Impossible Foods further objects to this Interrogatory on the ground that it imposes an undue burden on Impossible Foods and is disproportional to the needs of the case given that "any alternative marks or forms ***considered***" could include any mark or design considered by anyone at Impossible Foods or Lexicon, at any time, such that Impossible Foods could not reasonably ascertain all such alternatives.

**Interrogatory No. 2(9)**, seeking the identification of "all persons with knowledge" of the foregoing topics.

Impossible Foods objects to this Interrogatory on the ground that it imposes an undue burden on Impossible Foods and is disproportional to the needs of the case given that nearly every employee at the company from the past eleven years would have "knowledge" of the company's selection and adoption of various IMPOSSIBLE-formative marks and product names.

In accordance with these objections, Impossible Foods states that Caitlyn Hatman, Giselle Guerrero, and Myra Pasek are the Impossible Foods employees with the most knowledge of the company's selection and adoption of IMPOSSIBLE-formative branding.

**INTERROGATORY NO. 3**

Describe Plaintiff's decision to adopt the following stylization of Plaintiff's Marks (image taken from Plaintiff's website at buy.impossiblefoods.com on March 2, 2021), including without limitation identifying the date on which this stylization was first proposed and the reasons it was proposed, and the reasons for its selection, and all persons with knowledge thereof.

**IMPOSSIBLE™**

**RESPONSE:**

Impossible Foods objects to this Interrogatory because it is compound. Defendant has styled it is as one interrogatory, yet it contains at least four, discrete subparts seeking: (1) identification of "the date on which th[e] stylization was first proposed"; (2) a description of "the

reasons it was proposed"; (3) a description of "the reasons for [the stylization's selection]"; and (4) the identification of "all persons with knowledge" of the foregoing subjects.

Impossible Foods responds to the four discrete subparts of Interrogatory 3 as follows.

**Interrogatory No. 3(1)**, seeking identification of "the date on which th[e] stylization was first proposed."

Impossible Foods objects to this Interrogatory on the ground that it seeks information that is not relevant to any claim or defense asserted in this action.

**Interrogatory No. 3(2),** seeking a description of "the reasons it was proposed."

Impossible Foods objects to this Interrogatory on the ground that it seeks information that is not relevant to any claim or defense asserted in this action.

**Interrogatory No. 3(3)**, seeking a description of "the reasons for [the stylization's selection]."

Impossible Foods selected the former stylization of IMPOSSIBLE because Impossible Foods believed it would be visually appealing to potential consumers. The stylization was adapted from the font "Druk" (specifically, Druk Medium). Druk is a popular and publicly available sans serif-type font collection, which is often used for headlines. Capitalizing the font is a common practice. *See* https://commercialtype.com/catalog/druk/druk/medium.

**Interrogatory No. 3(4)**, seeking the identification of the identification of "all persons with knowledge" of the foregoing subjects.

Impossible Foods objects to this Interrogatory on the ground that it imposes an undue burden on Impossible Foods and is disproportional to the needs of the case given that numerous individuals necessarily had at least some "knowledge" of the selection and adoption of Impossible Foods's prior stylization of IMPOSSIBLE.

In accordance with these objections, Impossible Foods states that Jordan Schenk, Caitlyn Hatman, and Giselle Guerrero are the individuals with the most knowledge concerning the selection and adoption of the prior stylization of IMPOSSIBLE.

**INTERROGATORY NO. 4**

Identify all searches of any type conducted by or on behalf of Plaintiff in connection with

its decision to adopt Plaintiff's Marks, all persons with knowledge thereof, and the Bates Numbers (from Plaintiff's document production) of any documents referencing or reflecting such searches.

**RESPONSE:**

Impossible Foods objects to this Interrogatory because it is compound. Defendant has styled it is as one interrogatory, yet it contains at least three, discrete subparts seeking: (1) identification of "all searches of any type conducted by or on behalf of Plaintiff in connection with its decision to adopt Plaintiff's Marks"; (2) the identification of "all persons with knowledge" of those searches; and (3) identification by bates number of "any documents referencing or reflecting such searches."

Impossible Foods responds to the three discrete subparts of Interrogatory 3 as follows:

**Interrogatory No. 4(1)**, seeking identification of "all searches of any type conducted by or on behalf of Plaintiff in connection with its decision to adopt Plaintiff's Marks."

Impossible Foods objects to this Interrogatory because it is wildly overbroad—seeking identification of "all searches of any type" conducted "in connection with" the decision to "adopt" marks underlying 48 trademark registrations and applications—and therefore imposes an undue burden on Impossible Foods and is disproportional to the needs of the case. Impossible Foods further objects to this Interrogatory because it seeks information protected from discovery by the attorney-client privilege and the work product doctrine.

In accordance with these objections, and pursuant to Rule 33(d), Impossible Foods will produce the commercial trademark search reports that Impossible Foods received prior to its adoption of IMPOSSIBLE branding.

**Interrogatory No. 4(2)**, seeking the identification of "all persons with knowledge" of the searches.

Impossible Foods objects to this Interrogatory on the ground that identifying "all persons with knowledge" of every search of every kind conducted "in connection with" 48 trademark registrations and applications would impose an undue burden and expense on Impossible Foods and is disproportional to the needs of the case.

In accordance with these objections, Impossible Foods states that former General Counsel Myra Pasek has the most knowledge concerning the commercial trademark search reports that Impossible Foods received prior to its adoption of IMPOSSIBLE branding.

**Interrogatory No. 4(3)**, seeking identification by bates number of "any documents referencing or reflecting such searches."

Impossible Foods objects to this Interrogatory as improperly conflating Rules 33 and 34 and imposing an undue burden on Impossible Foods. Defendant has requested production of documents referencing trademark searches under Rule 34, but Defendant cannot use Rule 33 to force Impossible Foods to comb through its document production to categorize documents—a task Defendant is more than capable of doing on its own. This Interrogatory is disproportional to the needs of the case.

**INTERROGATORY NO. 5**

For each good or service with which Plaintiff has used, is using, or intends to use Plaintiff's Marks, describe the first use(s) or expected date of first use in commerce of each of Plaintiff's Marks in association with each of those goods and services, including without limitation the date(s) of first use or expected first use, where and how the mark was used or will be used in commerce in connection with each good or service, and Plaintiff's person most knowledgable [sic] of such facts.

**RESPONSE:**

Impossible Foods objects to this Interrogatory because it is compound, containing at least two, discrete subparts seeking: (1) a description of the first or anticipated first use of each of Plaintiff's Marks in connection with "each good or service with which Plaintiff has used, is using, or intends to use" the mark; and (2) the identification of "Plaintiff's person most knowledgeable of such facts."

Impossible Foods responds to each of these subparts as follows:

**Interrogatory No. 5(1)**, seeking a description of the first or anticipated first use of each of Plaintiff's Marks in connection with "each good or service with which Plaintiff has used, is using,

or intends to use" the mark.

Impossible Foods objects to this Interrogatory because it imposes an undue burden on Impossible Foods and is disproportional to the needs of the case. The sheer volume of information sought—a description of the date and nature of *every* first use of *every one* of the marks underlying 48 trademark applications and registrations in connection with *every* good or service *ever* offered (or to be offered) by Impossible Foods—betrays the overbreadth of this Interrogatory. If Defendant can demonstrate the "importance of th[e] discovery" under Rule 26(b)(1) and narrow this Interrogatory to the information likely to assist "in resolving the issues," then Impossible Foods will comply with an appropriately narrowed Interrogatory No. 5(1).

**Interrogatory No. 5(2)**, seeking the identification of "Plaintiff's person most knowledgeable of such facts."

Impossible Foods incorporates its objections to Interrogatory No. 5(1). Impossible Foods lacks sufficient information to answer this Interrogatory until Defendant appropriately narrows Interrogatory No. 5(1).

**<u>INTERROGATORY NO. 6</u>**

For each good or service with which Plaintiff has used, is using, or intends to use Plaintiff's Marks, identify any efforts to market or promote such good or service in connection with Plaintiff's Marks, including the type of marketing or advertising, the targeted audience for such marketing or advertising, the amount spent on such marketing or advertising, and Plaintiff's person most knowledgeable [sic] of such facts.

**<u>RESPONSE:</u>**

Impossible Foods objects to this Interrogatory because it is compound, containing at least four, discrete subparts seeking: (1) the identification of "any efforts to market or promote . . . each good or service with which Plaintiff has used, is using, or intends to use Plaintiff's Marks"; (2) the identification of "the targeted audience" for Impossible Foods's marketing; (3) the identification of "the amount spent on" Impossible Foods's marketing; and (4) the identification of "Plaintiff's person most knowledgeable of such facts."

Impossible Foods responds to each of these subparts as follows:

**Interrogatory No. 6(1)**, seeking the identification of "any efforts to market or promote . . . each good or service with which Plaintiff has used, is using, or intends to use Plaintiff's Marks."

Impossible Foods objects to this Interrogatory because it imposes an undue burden on Impossible Foods and is disproportional to the needs of the case. The sheer volume of information sought—essentially a description of every piece of marketing or advertising Impossible Foods has done in a ten-year period—betrays the overbreadth of this Interrogatory. If Defendant can demonstrate the "importance of th[e] discovery" under Rule 26(b)(1) and narrow this Interrogatory to the information likely to assist "in resolving the issues," then Impossible Foods will comply with an appropriately narrowed Interrogatory No. 6(1).

**Interrogatory No. 6(2)**, seeking the identification of "the targeted audience" for Impossible Foods's marketing.

Impossible Foods incorporates its objections to Interrogatory No. 6(1).

In accordance with these objections, Impossible Foods states that the target audience for all of its U.S. marketing has been consumers who love eating meat and are open to trying delicious meat made from plants that tastes as good as meat and is better for the planet.

**Interrogatory No. 6(3)**, seeking the identification of "the amount spent on" Impossible Foods's marketing.

Impossible Foods incorporates its objections to Interrogatory No. 6(1). In accordance with these objections, if Defendant sufficiently narrows Interrogatory No. 6(1), then Impossible Foods can provide a supplemental response to this Interrogatory.

**Interrogatory No. 6(4)**, seeking the identification of "Plaintiff's person most knowledgeable of such facts."

Impossible Foods incorporates its objections to Interrogatory No. 6(1). Impossible Foods lacks sufficient information to answer this Interrogatory until Defendant appropriately narrows Interrogatory No. 6(1).

**INTERROGATORY NO. 7**

Describe how Plaintiff learned of Defendant and/or Defendant's Marks, including identifying the date on which Plaintiff learned of Defendant and/or Defendant's Marks, the circumstances surrounding the discovery, the person(s) who brought Defendant and/or Defendant's Marks to Plaintiff's attention, and all persons with knowledge of any such facts.

**<u>RESPONSE:</u>**

Impossible Foods objects to this interrogatory because it is compound, containing two, discrete subparts seeking: (1) a description of how Impossible Foods "learned of Defendant and/or Defendant's Marks"; and (2) the identification of "all persons with knowledge" of those events.

Impossible Foods responds to each of these subparts as follows:

**Interrogatory No. 7(1)**

Impossible Foods first learned of Joel Runyon and his IMPOSSIBLE registration in Classes 25 and 41 on October 9, 2013, when Impossible Foods received a commercial trademark search report. The report disclosed Reg. No. 4,260,617, the website at <ImpossibleNutrition.com> (which appeared to be under construction, stating "Coming Soon"), and the website at <ImpossibleHQ.com>.

**Interrogatory No. 7(2)**

Impossible Foods objects to this Interrogatory because it imposes an undue burden on Impossible Foods and is disproportional to the needs of the case, as numerous individuals may have knowledge of some kind on how Impossible Foods "learned of Defendant and/or Defendant's Marks."

In accordance with these objections, Impossible Foods states that former General Counsel Myra Pasek has the most knowledge concerning Impossible Foods's first knowledge of Defendant's marks.

**<u>INTERROGATORY NO. 8</u>**

Identify each reported instance anywhere of actual confusion, mistake, or deception known to Plaintiff between Plaintiff, Plaintiff's Marks, or Plaintiff's goods or services on the one hand, and Defendant, Defendant's Marks, or Defendant's goods and services on the other hand, and

Plaintiff's person most knowledgable [sic] about each such instance.

**RESPONSE:**

Because Impossible Foods has already responded to 25 interrogatories, including discrete subparts, Impossible Foods is under no obligation to object or respond to this Interrogatory. Impossible Foods reserves the right to assert objections to this Interrogatory should it later agree to provide a response, or should its objections to the compound nature of the prior interrogatories be overruled. Without waiving the foregoing, Impossible Foods also objects that this interrogatory itself is compound, overly broad (geographically) and unclear and ambiguous (including with respect to "any reported instance anywhere").

**INTERROGATORY NO. 9**

Explain the factual and legal bases for your claim that "[t]o the extent Defendant used an IMPOSSIBLE mark in connection with recipes, food ingredients, or cooking information prior to 2016, that use was sporadic and de minimis, at best, and not the required bona fide use in commerce, and not trademark use," as alleged in Plaintiff's Amended Complaint ¶ 24.

**RESPONSE:**

Because Impossible Foods has already responded to 25 interrogatories, including discrete subparts, Impossible Foods is under no obligation to object or respond to this Interrogatory. Impossible Foods reserves the right to assert objections to this Interrogatory should it later agree to provide a response, or should its objections to the compound nature of the prior interrogatories be overruled. Without waiving the foregoing, Impossible Foods objects to this contention interrogatory as premature, and to the extent it seeks analysis protected by the work product doctrine.

DATED: May 13, 2024

**KILPATRICK TOWNSEND & STOCKTON**

By: */s/ H. Forrest Flemming*
William H. Brewster (*pro hac vice*)
H. Forrest Flemming (*pro hac vice)*
Gia Cincone (SBN 141668)

*Attorneys for Plaintiff*
IMPOSSIBLE FOODS INC.

**CERTIFICATE OF SERVICE**

I, Bruce Nelson, declare that I am employed in the City of Atlanta and County of Fulton, Georgia, in the office of a member of the bar of this Court at whose direction this service was made.

I am over the age of eighteen years and not a party to this action. My business address is Kilpatrick Townsend & Stockton LLP, 1100 Peachtree Street, N.E., Suite 2800, Atlanta, GA 30309. On May 13, 2024, I served the foregoing document entitled IMPOSSIBLE FOODS INC.'S OBJECTIONS AND RESPONSES TO IMPOSSIBLE LLC'S FIRST SET OF INTERROGATORIES on the interested parties in this action, as follows:

| | |
|---|---|
| Michael L. Rodenbaugh<br>Meghan Gleeson<br>RODENBAUGH LAW<br>548 Market Street, Box 55819<br>San Francisco, CA 94104<br>mike@rodenbaugh.com<br>meghan@rodenbaugh.com<br>docket@rodenbaugh.com | David E. Weslow<br>Adrienne J. Kosak<br>WILEY REIN LLP<br>2050 M Street NW<br>Washington, DC 20036<br>dweslow@wiley.law<br>akosak@wiley.law |

☐ [By Overnight Courier] I caused each envelope to be delivered by a commercial carrier service for overnight delivery to the offices of the addressee(s).

☒ [By Electronic Transmission] I caused said document to be sent by electronic transmission to the e-mail addresses indicated for the parties listed above from email address bnelson@ktslaw.com.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on May 13, 2024, in Atlanta, Georgia.

*/s/ Bruce Nelson*
Bruce Nelson