GIA CINCONE (SBN 141668)
KILPATRICK TOWNSEND & STOCKTON LLP
Two Embarcadero Center, Suite 1900
San Francisco, California 94111
Telephone: (415) 273-7546
Facsimile: (415) 723-7173
gcincone@ktslaw.com

R. CHARLES HENN JR. (*pro hac vice*)
H. FORREST FLEMMING, III (*pro hac vice*)
JESSICA W. TRUELOVE (*pro hac vice*)
1100 Peachtree Street NE
Atlanta, Georgia 30309
Telephone: (404) 815-6572
Facsimile: (404) 541-3240
chenn@ktslaw.com
fflemming@ktslaw.com
jtruelove@ktslaw.com

Attorneys for Plaintiff/Counter-Defendant
IMPOSSIBLE FOODS INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

IMPOSSIBLE FOODS INC., a Delaware corporation,

Plaintiff/Counter-Defendant

v.

IMPOSSIBLE LLC, a Texas limited liability company, and JOEL RUNYON,

Defendants/Counter-Plaintiffs.

Case No. 5:21-cv-02419-BLF (SVK)

**PLAINTIFF/COUNTER-DEFENDANT IMPOSSIBLE FOODS INC.'S MOTION TO AMEND COMPLAINT AND SCHEDULING ORDER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

Judge: Hon. Beth Labson Freeman
Date: May 8, 2025
Time: 9:00 AM PST

PLEASE TAKE NOTICE THAT on May 8, 2025, at 9:00 AM PST, before the Honorable Beth Labson Freeman of the Northern District of California, Plaintiff/Counter-Defendant Impossible Foods Inc. ("Impossible Foods") respectfully moves for an Order amending the Scheduling Order to allow amendment of its Second Amended Complaint ("SAC") to include claims of fraud in the procurement of incontestability status, fraud in the procurement of trademark registrations, and abandonment by Defendant/Counter-Plaintiff Impossible LLC ("ILLC") upon the United States Patent & Trademark Office ("PTO"). Impossible Foods's proposed amended complaint is attached as **Exhibit 1**. **Exhibit 2** is a redline copy of the proposed amendments.

Impossible Foods seeks to amend the SAC to assert claims of fraud committed by ILLC in light of information recently obtained during discovery that confirms Impossible Foods's suspicions flagged for the Court as early as July 23, 2024: that ILLC has committed fraud upon the United States Patent & Trademark Office ("PTO") by filing a Section 15 declaration on July 12, 2024, attesting to continuous use of a mark for a period of five years despite a knowing lack of such use. Relatedly, Impossible Foods seeks to amend the SAC to assert claims that certain marks owned by ILLC and asserted against Impossible Foods in this action are subject to cancellation due to fraud committed in their procurement or were abandoned due to lack of use. As set forth below, good cause exists under Rule 16 to modify the Scheduling Order, and Rule 15 favors amendment.

Impossible Foods respectfully requests the Court modify the Scheduling Order and permit Impossible Foods to file the Third Amended Complaint ("TAC") attached as **Exhibit 1**.

## **BACKGROUND**

Discovery began in March 2024 when the parties exchanged initial written discovery requests. Declaration of H. Forrest Flemming, III ("Flemming Decl.") ¶¶ 2-3. Through the initial stages of discovery, Impossible Foods determined it owned superior rights in the mark IMPOSSIBLE for edible products. As a result, on July 3, Impossible Foods sought ILLC's consent to amend its complaint to assert claims for trademark infringement and unfair competition arising from Defendants' use of IMPOSSIBLE-formative marks with edible products. *Id.* ¶ 4.

Nine days later, ILLC—aware of Impossible Foods's desire to amend its complaint to add trademark infringement claims—raced to the PTO before substantively responding to Impossible Foods's request for consent and filed an affidavit under Section 15 of the Lanham Act ("Section 15 Affidavit"), 15 U.S.C. § 1065, for its IMPOSSIBLE NUTRITION & Design Mark (Registration No. 5387588) (hereinafter, the "IMPOSSIBLE NUTRITION Design Mark"). Flemming Decl. ¶ 5, Ex. A. In the Section 15 Affidavit, ILLC stated under oath that ILLC was aware of no pending proceeding involving the IMPOSSIBLE NUTRITION Design Mark—despite this litigation—and that ILLC had made "continuous" use of the mark in connection with "nutritional supplements" for a period of five years, which has since proven untrue. *See id.* Three days later, only after filing the Section 15 Affidavit, ILLC responded to Impossible Foods's request declining to consent to the

amendment of the complaint. Flemming Decl. ¶ 6.

Impossible Foods's preliminary investigation suggested that Defendants did not continuously use the IMPOSSIBLE NUTRITION Design Mark with "nutritional supplements" during the relevant five-year period, potentially rendering Defendants' Section 15 Affidavit materially false and indicating Defendants committed fraud upon the PTO. *Id.* ¶ 7, Exs. B-D. On July 15, 2024, Impossible Foods requested that Defendants withdraw the Section 15 Affidavit based on their misrepresentations to the PTO. *Id.* ¶ 8. On July 18, Defendants refused to withdraw the Section 15 Affidavit. *Id.* ¶ 9. Impossible Foods then sought leave to amend its complaint to include claims of trademark infringement and unfair competition and forecasted for the Court that it would need additional time to conduct discovery into the suspected fraud (due to heightened pleading requirements for fraud claims) and reserved the right to seek leave to amend the complaint should discovery confirm Impossible Foods's belief. ECF 92 at 7-8. On September 17, the Court granted Impossible Foods's motion and confirmed that Impossible Foods may later seek leave to modify the Scheduling Order if it decides to pursue a claim for fraud. ECF 101 at 7-8.

Before receiving the Court's September 17 Order, in anticipation of potential fraud claims and to avoid delay, Impossible Foods served additional discovery requests on August 13 concerning ILLC's use of the IMPOSSIBLE NUTRITION Design Mark with nutritional supplements over the relevant five years as represented in the Section 15 Affidavit. Flemming Decl. ¶ 10, Ex. E. On September 12, ILLC served its responses to these tailored requests indicating that it would produce responsive documents. *Id.* ¶ 11, Ex. F. On October 22, Impossible Foods sent ILLC a deficiency letter addressing issues with ILLC's responses. *Id.* ¶ 12. On November 5, the parties met and conferred to discuss these concerns. *Id.* ¶ 13. On November 13, Impossible Foods sent ILLC an email memorializing its understanding of the agreements reached during the November 5 meet-and-confer, including ILLC's agreement to search for and produce responsive documents concerning ILLC's purported use by the end of November. *Id.* ¶ 14. ILLC's counsel did not respond to the memorialization email for three weeks, and only then to dismiss Impossible Foods's concerns regarding ILLC's ongoing document production deficiencies. *Id.* ¶ 15.

By January 2025, ILLC still had not produced documents showing "continuous" use of the

IMPOSSIBLE NUTRITION Design Mark for the relevant five years. To ensure ILLC is not simply delaying providing such evidence (if it even exists), Impossible Foods sent a proposed Joint Statement on Discovery to Defendants on January 13, 2025, in compliance with Judge van Keulen's rules of practice, seeking to compel the immediate production of any such documents. *Id.* ¶ 16. New counsel for Defendants filed appearances on January 29, 2025, and the parties met and conferred on that same day regarding Impossible Foods's Joint Statement. *Id.* ¶ 17. During the meet and confer, counsel stated they are working on a document production, and counsel for Impossible Foods reserved its rights to further pursue this issue. *Id.* ¶ 18.

The absence of evidence from ILLC showing continuous use appears to confirm Impossible Foods's suspicions, as does Impossible Foods's own investigation. That investigation suggests that ILLC stopped offering nutritional supplements under the IMPOSSIBLE NUTRITION Design Mark as early as Fall 2021 and did not offer these goods between October 2021 and December 2023. Flemming Decl. ¶ 19, Ex. G. [redacted] *Id.* ¶ 20, Ex. H. None of ILLC's documents, Defendants' websites, or third-party pages for ILLC's products show ILLC offered nutritional supplements in connection with the IMPOSSIBLE NUTRITION Design Mark between October 2021 and December 2023. *Id.* ¶¶ 19-21, Exs. G-H.

In addition to ILLC's lack of continuous use of the IMPOSSIBLE NUTRITION Design Mark, discovery has revealed that Defendants also failed to use IMPOSSIBLE-formative marks with Registration Nos. 5590801, 5603025, 5620625, and 6571603 ("Void Marks") with various Class 25 goods claimed by Defendants in their trademark applications and registrations. *Id.* ¶¶ 22-26. Last year, the PTO issued a post-registration Office Action ("Office Action") requiring Defendants to submit specimens evidencing use of their IMPOSSIBLE word mark (Registration No. 5620625) on *all* the goods and services across *all* classes, including its Class 25 recitation for "[c]lothing and performance apparel, namely, tank tops" and "underwear." *Id.* ¶ 23, Ex. I. On December 4, 2024, Defendants responded to the Office Action deleting "sweatshirts," "pants," "shorts," "yoga pants," "tights," and "underwear" from the identification of the goods. *Id.* ¶ 24, Ex. J. ILLC's response to the Office Action for which there was no use evidences ILLC's fraud in the

procurement of the Void Marks, given that ILLC knew the marks were *never* used with all of the goods at issue. With the IMPOSSIBLE NUTRITION Design Mark and the Void Marks at the heart of Defendants' trademark infringement claims, the Court must rectify the fraud committed by ILLC against the PTO and consumers.

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 15(a), "leave to amend should be freely granted 'when justice so requires.'" *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc). "Although Rule 15(a) gives the trial court discretion over this matter, [the Ninth Circuit has] repeatedly stressed that the court must remain guided by 'the underlying purpose of Rule 15 . . . to facilitate decision on the merits, rather than on the pleadings or technicalities." *Id.*

When a court's deadline to amend pleadings has passed, the court must determine whether "good cause" exists to modify the scheduling order under Federal Rule of Civil Procedure 16(b)(4). The "good cause determination focuses primarily on the diligence of the moving party," but the court may also consider "any resulting prejudice to the opposing party." *Bradley v. T-Mobile US, Inc.*, No. 17-CV-07232-BLF, 2019 WL 2358972, at *1 (N.D. Cal. June 4, 2019) (citations omitted). Once the movant establishes good cause under Rule 16, the burden shifts to the opposing party to prove that the following factors weigh against amendment: "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment[,] and (5) whether plaintiff has previously amended his complaint." *Id.* (citations omitted); *see also Ramos v. Swatzell*, No. CV 12-01089-BRO(SPX), 2013 WL 12377416, at *2 (C.D. Cal. Sept. 9, 2013) ("The burden to demonstrate the [Rule 15] *Foman* factors falls upon the party opposing the amendment.").

Here, good cause exists to modify the Scheduling Order to allow amendment under Rule 16 because Impossible Foods diligently pursued discovery and quickly sought relief. Because each of the Rule 15 factors weighs in favor of amendment, leave to amend should be "freely granted."

## ARGUMENT

### I. Amendment is Proper Under Rule 16

#### A. Good Cause Exists to Modify the Scheduling Order

Good cause exists to modify the Scheduling Order because Impossible Foods's proposed

amendments arise from Defendants' document production (or lack thereof) and Defendants' December 4, 2024 response to the Office Action. "Newly discovered facts may constitute good cause to modify a pretrial scheduling order to allow amendment to the pleadings." *Hayward Prop., LLC v. Commonwealth Land Title Ins. Co.*, No. 17-cv-06177 SBA, 2021 WL 4927012, at *4 (N.D. Cal. Sept. 28, 2021). Impossible Foods previewed to the Court its potential fraud claim in its July 23, 2024 motion to amend, noting its intention to serve additional discovery pertaining to ILLC's lack of continuous use of the IMPOSSIBLE NUTRITION Design Mark. ECF 92 at 7-8. After serving these targeted discovery requests, confirming deficiencies with ILLC's document productions, and continuing to seek these documents from ILLC, Impossible Foods is only now able to amend its SAC to include claims of fraud on the PTO that satisfy the heightened pleading standard of Rule 9(b). Moreover, ILLC's December response to the Office Action in which ILLC failed to offer evidence of use of the IMPOSSIBLE mark (Registration No. 5620625) with several goods previously claimed under Class 25, coupled with ILLC's lack of documents showing use for many of the goods covered in the registrations for its Void Marks, show a pattern of fraud committed by ILLC upon the PTO that was only recently revealed.

These facts warrant a finding of good cause. *See Hayward Prop., LLC*, 2021 WL 4927012, at *4; *see Wang v. Palo Alto Networks, Inc.*, No. C 12-05579 WHA, 2013 WL 4047530, at *3 (N.D. Cal. Aug. 7, 2013) (granting leave to amend to add a claim filed after movant learned of facts during discovery); *Fru-Con Const. Corp. v. Sacramento Mun. Util. Dist.*, No. CIV. S-05-583 LKK/GGH, 2006 WL 3733815, at *5 (E.D. Cal. Dec. 15, 2006) ("Allowing parties to amend based on information obtained through discovery is common and well established.").

Thus, because of Impossible Foods's diligence in investigating ILLC's fraudulent representation of continuous use in its Section 15 Affidavit as well its lack of use for several goods claimed under their Void Marks (and apprising the Court of the same), good cause exists to modify the Scheduling Order to permit the proposed amendments.

**B. Defendants Will Not Be Prejudiced**

Defendants will not be prejudiced by the amendment. Unlike ILLC's recently proposed amended Counterclaims, *see* ECF 132 at 8-9, the additional claims in the TAC are already the

subject of discovery, and Impossible Foods does not anticipate the need for discovery unique to the fraud claims other than deposition questions going to the issue of scienter. *See VLSI Tech. LLC v. Intel Corp.*, No. 17-cv-05671-BLF, 2024 WL 664804, at *3 (N.D. Cal. Feb. 16, 2024) (finding "minimal" prejudice to non-movant where "the parties have already conducted discovery on the substantive merits of the [issue]"). Further, Defendants have been on notice of Impossible Foods's potential fraud claims since July 2024.

As to Impossible Foods's non-use claims, Impossible Foods has long asserted abandonment through non-use in its Affirmative Defenses, so there can be no prejudice to Defendants from the addition of affirmative cancellation claims based on an abandonment theory. *See* ECF 85 at 9.

## II. Amendment Is Proper Under Rule 15

Because good cause exists to modify the Scheduling Order, Defendants bear the burden of showing that the Rule 15 factors weigh against amendment, which they cannot do. *See Ramos*, 2013 WL 12377416, at *2.

*First*, Impossible Foods's proposed claims are not "futile" because they would survive a motion to dismiss. *Second*, Defendants cannot demonstrate prejudice because the proposed claims would not significantly expand the scope of the litigation. *Third*, Impossible Foods brings this motion in good faith. *Fourth*, Impossible Foods has swiftly sought amendment. And *fifth*, Impossible Foods has not previously failed to cure deficient allegations of fraud or non-use.

### A. Impossible Foods's Claims Are Not "Futile"

Because Impossible Foods's claims would survive a motion to dismiss, Defendants cannot show that Impossible Foods's proposed claims are "futile." *See Barahona v. Union Pac. R.R. Co.*, 881 F.3d 1122, 1134 (9th Cir. 2018) ("[L]eave to amend should be denied as futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense[.]") (citations omitted). Impossible Foods has alleged facts that plausibly establish that ILLC made material misrepresentations of fact to the PTO in both its Section 15 affidavit for its IMPOSSIBLE NUTRITION Design Mark and its trademark applications and maintenance documents, claiming use of its marks in connection with goods for which ILLC knew there was no use. Likewise, Impossible Foods has alleged facts that plausibly establish that several of ILLC's

marks have been at least partially abandoned due to non-use.

**i. Section 15 Fraud**

Impossible Foods's TAC pleads facts that plausibly establish that ILLC committed fraud upon the PTO when submitting the Section 15 Affidavit claiming five years of continuous use of the IMPOSSIBLE NUTRITION Design Mark. *See* **Exhibit 1** at ¶¶ 42-55, 122-131. "A party may seek cancellation of a registered trademark on the basis of fraud under 15 U.S.C. § 1064(c) by proving a false representation regarding a material fact, the registrant's knowledge or belief that the representation is false, the intent to induce reliance upon the misrepresentation and reasonable reliance thereon, and damages proximately resulting from the reliance." *Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1444 (9th Cir. 1990). The Ninth Circuit has expressly held that statements made in a Section 15 affidavit, if false, can support a claim for fraud on the PTO. *See id.* (affirming finding of fraud based on statements in Section 15 affidavit). When a party adequately pleads the elements of Section 15 fraud, its complaint survives a motion to dismiss. *La Canada Ventures, Inc. v. MDalgorithms, Inc.*, No. 22-cv-07197-RS, 2024 WL 40205, at *5 (N.D. Cal. Jan. 3, 2024). Impossible Foods has alleged what is more than enough facts to survive a motion to dismiss.

The TAC alleges that ILLC knowingly ceased using the IMPOSSIBLE NUTRITION Design Mark with nutritional supplements as early as Fall 2021 and did not offer these goods between October 2021 and December 2023. *See* **Exhibit 1** at 49-50, 125-126. The TAC also alleges that ILLC knew of this period of non-use and yet filed a Section 15 Affidavit for the mark on July 12, 2024. *See* **Exhibit 1** at 51-53, 125-126. The TAC further alleges that ILLC knew that the statement regarding continuous use in the Section 15 declaration was false and that the PTO would not have granted the IMPOSSIBLE NUTRITION Design Mark incontestability status but for the filing of the Section 15 declaration. *See* **Exhibit 1** at ¶¶ 54-55, 125-126; *see also La Canada Ventures*, 2024 WL 40205, at *4 (finding that allegations of reliance on a misrepresented fact by the PTO and the granting of the right of incontestability satisfy the third and fourth elements of a Section 15 fraud claim). Finally, the TAC alleges that Impossible Foods has suffered damage resulting from ILLC's deception before the PTO, most notably ILLC's operative counterclaims for infringement and ILLC's assertion of the mark against Impossible Foods's Trademark Serial No. 88855875. *See*

**Exhibit** 1 at 130. Thus, Impossible Foods's proposed claim of fraud related to ILLC's Section 15 filing for the IMPOSSIBLE NUTRITION Design Mark is not "futile."

**ii. Fraudulent Procurement and Abandonment**

Impossible Foods's TAC alleges that ILLC committed fraud upon the PTO in obtaining the registrations for the Void Marks, which are therefore subject to cancellation. *See* **Exhibit 1** at ¶¶ 132-141. Allegations that an application—like those for the Void Marks—submitted with *no* use of the applied-for mark in connection with the listed goods and services and that the false declarations of use were made with the intent to induce reliance by the PTO "state with sufficient particularity the circumstances of [d]efendant's allegedly fraudulent registration." *MIH Allegro BV v. Fang*, No. LA CV14-06510-JAK ASx, 2015 WL 12655399, at *6 (C.D. Cal. Jan. 12, 2015). The TAC pleads that the Void Marks were neither used with several goods claimed in the applications at the time ILLC applied for the marks nor at any point thereafter. *See* **Exhibit 1** at ¶¶ 58-59, 62, 65-66, 69, 71-78, 82-93. Also, the TAC alleges, *see* **Exhibit 1** at ¶¶ 62-63, 69-70, 73, 80-81, 95-96, 136-138, that ILLC committed fraud by knowingly misrepresenting these facts when applying for the Void Marks. *See La Canada Ventures*, 2024 WL 40205, at *4 (finding even "tenuous" evidence of fraud committed by a party in obtaining a trademark registration satisfied the pleading standards).

In addition, the TAC alleges facts that establish that Registration Nos. 5590801, 5603025, and 6571603 ("Abandoned Marks") were abandoned as ILLC ceased using those marks with any identified goods for at least three consecutive years with an intent not to resume use. *See* **Exhibit 1** at ¶¶ 60, 65, 67, 89, 91-92, 142-149. Allegations that a mark was not in use in commerce for three or more consecutive years is prima facie evidence of abandonment. *Patagonia, Inc. v. Anheuser-Busch, LLC*, No. 2:19-CV-02702-VAP-JEMx, 2019 WL 8754735, at *6 (C.D. Cal. Sept. 3, 2019) (finding that "[p]laintiffs have sufficiently stated a claim for abandonment" when alleging that defendants made no bona fide use of a mark in commerce for at least three consecutive years).

Because the TAC sufficiently pleads fraud upon the PTO for the Void Marks and abandonment for the Abandoned Marks, Defendants cannot show that these claims are futile.

**B. Defendants Cannot Show Undue Prejudice**

"[T]he party opposing amendment bears the burden of showing prejudice." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987). As discussed *supra* in Section I.B, Defendants cannot establish undue prejudice. The parties have until April 14, 2025 to complete fact discovery, and Impossible Foods is not asking the Court to modify the dates of the Scheduling Order beyond allowing the amendment of the SAC. "Prejudice is generally mitigated where the case is still in the discovery stage, no trial date is pending and no pretrial conference has occurred." *Flores v. City of Concord*, No. 15-cv-05244-TEH, 2017 WL 2472977, at *3 (N.D. Cal. June 8, 2017). Defendants had notice of these potential claims in July 2024 at the latest, and Defendants will not need any further discovery from Impossible Foods to confront the claims.

**C. Impossible Foods Seeks Amendment in Good Faith**

Impossible Foods seeks this amendment in good faith. "In the context of a motion for leave to amend, 'bad faith' means acting with intent to deceive, harass, mislead, delay, or disrupt." *ARF Dashnaktsutyun, W. U.S.A. v. Armenian Revolutionary Fed'n WUSA, Inc.*, No. 2:21-cv-5594-FWS-RAO, 2022 WL 16859599, at *5 (C.D. Cal. Oct. 5, 2022) (citations omitted). Here, Impossible Foods seeks to amend the SAC to rectify the harm done to Impossible Foods caused by Defendants' pattern of fraud upon the PTO. No contrary evidence exists.

**D. Impossible Foods Did Not Unduly Delay in Seeking Amendment**

Impossible Foods has been nothing but diligent in pursuing discovery and seeking amendment. *See* Section I.A, *supra*. Thus, Defendants cannot demonstrate any "undue" delay.

**E. Impossible Foods Has Not Previously Failed to Cure Deficiencies**

The final Rule 15 factor is not applicable here because Impossible Foods has never sought to plead these claims, let alone to cure deficient allegations of fraud or abandonment. ECF 101 at 7-8. Thus, Defendants cannot show the requisite "repeated failure to cure deficiencies." *Hubbard v. Google LLC*, 19-cv-7016-BLF, 2023 WL 7558810, at *2 (N.D. Cal. Nov. 13, 2023) (Freeman, J.).

**<u>CONCLUSION</u>**

For the reasons set forth above, Impossible Foods respectfully requests the Court modify the Scheduling Order to permit Impossible Foods to file the TAC.

DATED: January 31, 2025 By: */s/ H. Forrest Flemming III*

R. Charles Henn Jr. (*pro hac vice*)
H. Forrest Flemming, III (*pro hac vice*)
Jessica W. Truelove (*pro hac vice*)
KILPATRICK TOWNSEND & STOCKTON
1100 Peachtree Street NE, Suite 2800
Atlanta, Georgia 30309
Telephone: (404) 815-6572
Facsimile: (404) 541-3240
Email: chenn@ktslaw.com
fflemming@ktslaw.com
jtruelove@ktslaw.com

Gia Cincone (SBN 141668)
Two Embarcadero Center, Suite 1900
San Francisco, California 94111
Telephone: (415) 273-7546
Facsimile: (415) 723-7173
Email: gcincone@ktslaw.com

Attorneys for Plaintiff/Counter-Defendant
IMPOSSIBLE FOODS INC.

**CERTIFICATE OF SERVICE**

I hereby certify that on January 31, 2025, the foregoing document was served by electronic mail on counsel of record, as follows:

J. Noah Hagey
Adam S. Cashman
Gregory D. Washington
BRAUNHAGEY & BORDEN LLP
747 Front Street, 4th Floor
San Francisco, CA 94111
hagey@braunhagey.com
cashman@braunhagey.com
gwashington@keker.com

Faith Barksdale
BRAUNHAGEY & BORDEN LLP
118 W 22nd Street, 12th Floor
New York, NY 10011
barksdale@braunhagey.com

Michael L. Rodenbaugh
RODENBAUGH LAW
548 Market Street, Box 55819
San Francisco, CA 94104
mike@rodenbaugh.com
docket@rodenbaugh.com

David E. Weslow
Adrienne J. Kosak
WILEY REIN LLP
2050 M Street NW
Washington, DC 20036
dweslow@wiley.law
akosak@wiley.law

*/s/ H. Forrest Flemming III*
H. Forrest Flemming III