UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IMPOSSIBLE FOODS INC., <br><br> Plaintiff, <br><br> v. <br><br> IMPOSSIBLE LLC et al., <br><br> Defendants. | Case No. 5:21-cv-02419-BLF <br><br> **ORDER DENYING MOTION TO AMEND CASE SCHEDULE AND COUNTERCLAIMS; AND GRANTING IN PART SEALING MOTION** <br><br> [Re: Dkt. Nos. 121, 122] |

Before the Court is Defendant Impossible LLC's ("ILLC") Motion to Amend Case Schedule and Counterclaims. Dkt. No. 121 ("Mot."). Plaintiff Impossible Foods Inc. ("IF") opposes the motion. Dkt. No. 132 ("Opp."). ILLC filed a Reply in support of its motion. Dkt. No. 136 ("Reply"). The Court finds this motion suitable for submission without oral argument and hereby VACATES the hearing scheduled for April 3, 2025. *See* Civ. L.R. 7-1(b).

For the reasons stated below, the Court DENIES Defendant's motion. The Court GRANTS IN PART AND DENIES IN PART the accompanying Administrative Motion to Consider Whether Another Party's Material Should be Sealed (Dkt. No. 122).

**I.   BACKGROUND**

On April 2, 2021, Plaintiff Impossible Foods Inc. filed a Complaint for Declaratory Relief against ILLC, alleging that ILLC had "asserted that it has superior rights to the IMPOSSIBLE mark" and "accused Impossible Foods of trademark infringement." Dkt. No. 1 ¶ 4. Because IF believes it "has longstanding, strong, and well-recognized rights to the IMPOSSIBLE trademark," it brought its action "to protect its valuable and well-known IMPOSSIBLE brand" against ILLC's "trademark threats." *Id.* ¶ 3.

Following IF's successful appeal of this Court's grant of ILLC's motion to dismiss for lack of personal jurisdiction, *see* Dkt. No. 55, the Court held a Case Management Conference on January 25, 2024, Dkt. No. 69. The Court then issued the Case Management Scheduling Order,

which set the deadline for amending the pleadings as March 25, 2024. Dkt. No. 70. IF filed an Amended Complaint on February 16, 2024, again alleging one claim for declaratory relief regarding the Parties' trademark dispute. Dkt. No. 78. On March 8, 2024, ILLC filed its Answer to the Amended Complaint and asserted Counterclaims for (1) trademark infringement, (2) unfair competition, and (3) false association under the Lanham Act, 15 U.S.C. § 1051 *et seq.*; (4) denial of trademark registration; (5) trademark infringement under California common law; and (6) unfair competition under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.* Dkt. No. 80. ILLC amended its Counterclaims on April 4, 2024, Dkt. No. 83, and IF filed an Answer to the Counterclaims on April 18, 2024, Dkt. No. 85.

On July 23, 2024, IF sought to amend its Complaint to add trademark infringement and unfair competition claims against both ILLC and Defendant Joel Runyon ("Runyon"). Dkt. No. 92. The Court granted in part IF's motion on September 17, 2024, Dkt. No. 101, and IF promptly filed its Second Amended Complaint, Dkt. No. 103. On October 1, 2024, ILLC filed its answer and amended counterclaims in response to IF's Second Amended Complaint. Dkt. No. 107. Although ILLC had not moved to add such a counterclaim, this amended pleading included a new federal counterfeiting claim related to IF's use of the IMPOSSIBLE mark in connection with apparel products. *See id.*, Counterclaim ¶¶ 85–99. IF moved to strike the counterfeiting claim, Dkt. No. 111, and the Court granted the motion to strike on December 18, 2024, Dkt. No. 117. ILLC then filed its revised answer and counterclaims along with the present motion to amend. Dkt. Nos. 120, 121.

**II.     LEGAL STANDARD**

When the deadline for amending the pleadings set in a court's scheduling order has passed, a party seeking leave to amend must first seek modification of the scheduling order. *DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC*, 870 F.3d 978, 989 (9th Cir. 2017). Under Federal Rule of Civil Procedure 16, a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "The central inquiry under Fed. R. Civ. P. 16(b)(4) is whether the requesting party was diligent in seeking the amendment." *DRK Photo*, 870 F.3d at 989 (citing *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013),

2

*aff'd sub nom. Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373 (2015)). "If th[e] party was not diligent, the inquiry should end." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). "Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification." *Id.* (citation omitted).

"If the moving party establishes good cause to modify the scheduling order, it must then demonstrate that its motion is also proper under Rule 15." *VLSI Tech. LLC v. Intel Corp.*, No. 17-cv-05671, 2024 WL 664804, at *2 (N.D. Cal. Feb. 16, 2024) (internal quotations omitted) (quoting *Rodarte v. Alameda Cnty.*, No. 14-cv-00468, 2015 WL 5440788, at *2 (N.D. Cal. Sept. 15, 2015)). Under Federal Rule of Civil Procedure 15, "[a] party may amend its pleading once as a matter of course" within certain designated time frames. Fed. R. Civ. P. 15(a)(1). Thereafter, "a party may amend its pleading only with the opposing party's written consent or the court's leave." *Id.* 15(a)(2). "The court should freely give leave when justice so requires." *Id.* A district court ordinarily must grant leave to amend unless one or more of the following "*Foman* factors" is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, or (5) futility of amendment. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051–52 (9th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Id.* However, a strong showing with respect to one of the other factors may warrant denial of leave to amend. *Id.*

**III.  DISCUSSION**

ILLC's lack of diligence dooms this motion. When a party seeks leave to amend a pleading after the deadline for amendment set in the scheduling order has passed, the Court's first step is to consider whether "good cause" exists to amend the scheduling order to permit the requested amendment. Fed. R. Civ. P. 16(b)(4); *DRK Photo*, 870 F.3d at 989. In this case, it does not.

ILLC argues that "[g]ood cause exists . . . because Defendant's proposed amendment arises from facts that only came to light . . . through discovery that occurred after the deadline to amend

3

pleadings." Mot. at 6. Specifically, ILLC says that it was only during discovery that it learned that IF "had actual knowledge of Defendant's use and registration of the IMPOSSIBLE mark for apparel goods years before Plaintiff adopted a substantially indistinguishable mark for identical goods." *Id.* ILLC then argues that because it had "identified authority leading it to believe it was entitled to include the counterfeiting claim in its responsive pleading to the Second Amended Complaint," it was diligent in filing this motion within three weeks of this Court's order striking the counterfeiting claim. *Id.* at 8.

These arguments are unpersuasive. First, "[t]he good cause standard typically will not be met where the party seeking to modify the scheduling order has been aware of the facts and theories supporting the amendment since the inception of the action." *Jacobson v. Persolve, LLC*, No. 14-cv-00735, 2015 WL 2061712, at *4 (N.D. Cal. May 1, 2015) (citing *In re W. States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d at 737). As IF points out, ILLC pled the same fact it claims to have "newly discovered" in its original Answer and Counterclaims filed on March 8, 2024. *See* Opp. at 5. In that initial set of counterclaims, ILLC states that "[n]otwithstanding . . . Impossible Foods' knowledge of [ILLC's] senior trademark rights, Impossible Foods has sought to expand into other products and services that directly overlap" with ILLC's products, "includ[ing] apparel products, to which the IMPOSSIBLE mark is conspicuously applied." Dkt. No. 80, Counterclaims ¶ 48. ILLC amended those counterclaims on April 4, 2024, alleging in the Amended Counterclaims that "[a]t the time Impossible Foods commenced use of IMPOSSIBLE, Impossible Foods was on actual and/or constructive notice . . . of the existence of [ILLC]'s superior rights in its IMPOSSIBLE Marks," Dkt. No. 83, Counterclaims ¶ 63, and that ". . . any mark incorporating the IMPOSSIBLE formative for . . . apparel products, [wa]s without the permission or authorization of [ILLC]," *id.* ¶ 64. These allegations in support of ILLC's federal trademark infringement cause of action in an earlier iteration of its counterclaims undermine ILLC's statements that it learned no earlier than May 13, 2024 that IF knew about ILLC's alleged trademark rights in the IMPOSSIBLE mark for apparel, since IF was required to have a credible basis for asserting any facts included in its initial responsive pleading.

Second, *even if* ILLC had only learned the relevant information in May 2024, its failure to

1   promptly act on that purportedly new information also evinces a lack of diligence.  The Court
2   notes, for example, that IF's July motion to amend was based on information gleaned through
3   discovery in May 2024.  *See* Dkt. No. 92 at 3.  Since ILLC supposedly received the relevant
4   information underlying this motion at that same time, ILLC could have moved to amend its
5   counterclaims around the same time as IF did.  ILLC did not do so.  Perhaps as an attempt to
6   justify its longer delay in seeking amendment, ILLC describes certain subsequent discovery
7   history, apparently seeking to imply that it did not have the necessary information until November
8   2024.  Mot. at 6–7.  But ILLC's motion concedes that IF's responses to ILLC's first set of
9   interrogatories—received on May 13, 2024— "indicated that Plaintiff received a trademark search
10  report on October 9, 2013, that revealed Defendant's Reg. No. 4260617," the registration "directed
11  to goods and services including 'Clothing, namely, shirts, t-shirts, tank tops.'"  *Id.* at 6; *see* Dkt.
12  No. 121-4 at 13.  That is the key "fact" that ILLC suggests is critical to its counterfeiting
13  counterclaim.  It is immaterial that ILLC did not receive the search report document until
14  November 2024—and indeed, apparently ILLC *itself* believed it had the facts it needed to assert
15  that counterclaim *before* receiving those additional productions in November 2024, since it
16  included the counterfeiting counterclaim in its October response to IF's Second Amended
17  Complaint.  Mot. at 7 ("When the time came for Defendant to respond to Plaintiff's Second
18  Amended Complaint, Defendant was still actively investigating what Plaintiff knew about
19  Defendant's marks and when . . . .  Nevertheless, Defendant believed that a responsive pleading
20  was an appropriate time to raise any viable new counterclaims.").

21          Therefore, even if the Court found credible ILLC's claim that it "newly discovered"
22  information necessary to assert the counterfeiting counterclaim in May 2024—which it does not—
23  there was no reason for ILLC to wait five months to attempt amendment.  ILLC could have filed a
24  motion to amend by July, like IF did, or it could have filed a motion to amend instead of
25  (improperly) requesting leave to amend in its opposition to IF's motion.  *See* Dkt. No. 96 at 10–11.
26  ILLC's failure to do so evinces a lack of diligence.

27          The Court need go no further.  The Rule 16 inquiry ends where, as here, the Court finds
28  that the party seeking relief from the scheduling order was not diligent.  *Johnson*, 975 F.2d at 609.

Perhaps prompted by the discovery proceedings, ILLC has formed a new theory of liability, but there was nothing preventing ILLC from asserting that claim at an earlier juncture. ILLC's undue delay renders it inappropriate to amend the scheduling order to permit addition of the counterfeiting claim now.

### IV. SEALING

In conjunction with the motion to amend, ILLC has filed an Administrative Motion to Consider Whether Another Party's Material Should be Sealed, indicating that it provisionally sealed certain materials designated as confidential by IF. Dkt. No. 122; *see* Civ. L.R. 79-5(f). When such a motion is filed, the party who designated the material as confidential must, within seven days of the motion's filing, file a statement and/or declaration that meets the requirements of Civil Local Rule 79-5, subsection (c)(1). Civ. L.R. 79-5(f)(3). IF timely filed its statement in support of sealing, Dkt. No. 127, and ILLC filed a response opposing sealing, Dkt. No. 129.

"Historically, courts have recognized a 'general right to inspect and copy public records and documents, including judicial records and documents.'" *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 & n.7 (1978)). Accordingly, when considering a sealing request, "a 'strong presumption in favor of access' is the starting point." *Id.* (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)). Records attached to motions that are "not related, or only tangentially related, to the merits of a case," however, are not subject to the strong presumption of access. *Ctr. for Auto Safety v. Chrysler Grp.*, 809 F.3d 1092, 1099 (9th Cir. 2016). Parties moving to seal the documents attached to such motions must meet the lower "good cause" standard of Rule 26(c). *Kamakana*, 447 F.3d at 1180. This standard requires a "particularized showing," *id.*, that "specific prejudice or harm will result" if the information is disclosed. *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002); *see* Fed. R. Civ. P. 26(c).

ILLC identified three documents sought to be sealed in whole or part due to IF's confidentiality designations. Dkt. No. 122 at 2. In its statement in support of sealing, however, IF sought to maintain under seal only certain portions of one of those documents. Dkt. No. 127 at 3.

IF states that the document in question, Exhibit L, "is a trademark search report attached to a privileged email" containing references that "reflect confidential business information and internal business strategy involving Impossible Foods's trademarks." *Id.* IF argues that disclosure of this business strategy information would harm IF "by exposing valuable insight into Impossible Foods's trademark clearance strategy" that could be exploited by competitors. *Id.* at 3–4. In opposition, ILLC argues that the trademark search report should be unsealed in its entirety because it reflects a "speculative" and "incredibly outdated" strategy, "as demonstrated by the search parameters that include numerous products that Plaintiff has never sold." Dkt. No. 129 at 2. As a result, ILLC proposes that the document be unsealed in its entirety or, in the alternative, that the Court approve even narrower redactions of just the search parameters. *Id.*

      The Court finds that there is good cause to seal competitively sensitive information, including intellectual property–related strategies. Since "[s]ources of business information that might harm a litigant's competitive strategy may also give rise to a compelling reason to seal," the Court concludes that such information also meets the lower good cause standard. *See Lawson v. Grubhub, Inc.*, No. 15-cv-05128, 2017 WL 2951608, at *9 (N.D. Cal. July 10, 2017) (internal alterations and citations omitted); *accord VLSI Tech. LLC v. Intel Corp.*, No. 17-cv-05671, 2024 WL 1548481, at *4 (N.D. Cal. Apr. 8, 2024) (finding compelling reasons to seal "highly-confidential information regarding its past and current intellectual property licensing and monetization objectives, strategies, practices, capabilities, and efforts"). Moreover, the Court disagrees with ILLC's argument that IF's proposed redactions are overbroad. Because the entire report was tailored to IF's contemplated intellectual property strategies, the charts and graphs depicted in the report as well as the lists of specific potentially responsive intellectual property registrations provide insight into those strategies. Accordingly, there is good cause to seal the report—except for the portions therein that refer to ILLC—despite the fact that the underlying registrations compiled into the report are publicly available. Since IF's proposed redactions leave unredacted the material relevant to the Parties' dispute, the Court also finds that IF's proposed redactions are narrowly tailored. *See* Civ. L.R. 79-5(c)(3). The Court therefore rules on the motion to seal as follows:

| Dkt. No. | Document | Portion(s) to Seal | Ruling |
|---|---|---|---|
| 122-2 (confidential) / 121-13 (public) | Exhibit L to the Weslow Declaration in Support of Defendant Impossible LLC's Motion to Amend | Highlighted portions reflected in Dkt. No. 128 | GRANTED as to the portions described in the prior column, because the information requested to be sealed contains IF's highly confidential trademark clearance strategy. Public disclosure of such highly confidential information could significantly harm IF's competitive standing by exposing valuable insight into IF's trademark clearance strategy, as competitors may alter their business and intellectual property strategies accordingly for competitive gain, prejudicing IF's ability to enforce the strength of its trademarks. |
| 122-1 (confidential) / 121 (public) | ILLC's Motion to Amend Case Schedule and Counterclaims | Highlighted portions at 6:23–26 | DENIED, as IF does not seek to maintain this document under seal, and it is IF's burden to establish that the material is sealable. |
| 122-3 (confidential) / 121-16 (public) | Exhibit O to the Weslow Declaration in Support of Defendant Impossible LLC's Motion to Amend | Highlighted portions at 2 | DENIED, as IF does not seek to maintain this document under seal, and it is IF's burden to establish that the material is sealable. |

## V.  ORDER

For the foregoing reasons, it is hereby ORDERED that Defendant Impossible LLC's Motion to Amend Case Schedule and Counterclaims (Dkt. No. 121) is DENIED. The Administrative Motion to Consider Whether Another Party's Material Should be Sealed (Dkt. No. 122) is GRANTED IN PART AND DENIED IN PART. ILLC SHALL refile the Motion to Amend Case Schedule and Counterclaims and Exhibits L and O with redactions conforming to the Court's Order above, *supra* section IV, by March 10, 2025.

**IT IS SO ORDERED.**

Dated: February 27, 2025

_____
BETH LABSON FREEMAN
United States District Judge