GIA CINCONE (SBN 141668)
KILPATRICK TOWNSEND & STOCKTON LLP
Two Embarcadero Center
Suite 1900
San Francisco, California 94111
Telephone: (415) 273-7546
Facsimile: (415) 723-7173
gcincone@ktslaw.com

R. CHARLES HENN JR. (*pro hac vice*)
H. FORREST FLEMMING, III (*pro hac vice*)
JESSICA W. TRUELOVE (*pro hac vice*)
1100 Peachtree Street NE
Suite 2800
Atlanta, Georgia 30309
Telephone: (404) 815-6572
Facsimile: (404) 541-3240
chenn@ktslaw.com
fflemming@ktslaw.com
jtruelove@ktslaw.com

Attorneys for Plaintiff/Counter-Defendant
IMPOSSIBLE FOODS INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| IMPOSSIBLE FOODS INC., a Delaware corporation,<br><br>Plaintiff/Counter-Defendant<br><br>v.<br><br>IMPOSSIBLE LLC, a Texas limited liability company, and JOEL RUNYON,<br><br>Defendants/Counter-Plaintiffs. | Case No. 5:21-cv-02419-BLF (SVK)<br><br>**THIRD AMENDED COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Judge: Hon. Beth Labson Freeman |

Plaintiff Impossible Foods Inc. ("Impossible Foods") brings this Third Amended Complaint against defendants Impossible LLC and Joel Runyon and alleges, on personal knowledge as to its own actions and on information and belief as to the actions of others, as follows:

## THE PARTIES

1.      Plaintiff Impossible Foods is a Delaware corporation with its principal place of business at 400 Saginaw Drive, Redwood City, California. Impossible Foods develops and distributes plant-based substitutes for meat products.

2.      Impossible LLC ("ILLC") is a Texas limited liability company with a principal place of business at 402 West Johanna St., Austin, Texas 78704. On January 1, 2021, ILLC merged with Impossible X LLC, an Illinois limited liability company with its principal place of business at 1231 Champion Forest Court, Wheaton, Illinois 60187 ("XLLC"). As a consequence of that merger, ILLC acquired, among other things, any trademark rights owned by XLLC, as well as any liabilities. ILLC, and its predecessors in interest, including XLLC, are collectively referred to as "Company Defendant."

3.      On information and belief, ILLC is solely owned and operated by XLLC founder Joel Runyon, and has no other members, employees, or outside investors, and no manufacturing or production facilities. On information and belief, Mr. Runyon resides in Austin, Texas and maintains an address at 402 West Johanna St., Austin, Texas 78704. Joel Runyon and Company Defendant are collectively referred to as "Defendants."

4.      ILLC states that its mission is to help consumers "push their limits and do something impossible." ILLC offers motivational blog and video content and information relating to exercise and fitness through its multiple websites, in addition to a small offering of apparel. ILLC also claims to offer search engine optimization ("SEO") services and marketing consulting in the field of social media. Impossible Foods recently learned that ILLC also offers sleep and energy powders and that, upon information and belief, ILLC will offer for sale additional edible products bearing IMPOSSIBLE branding.

5.      Impossible Foods brings this action to protect its valuable and well-known IMPOSSIBLE marks against threats and overt opposition by Defendants. Impossible Foods currently owns federally-registered trademark rights in numerous IMPOSSIBLE-formative marks, including:

| MARK | REG. NO. | DATE OF FIRST USE | FILING DATE/ REG. DATE | GOODS AND SERVICES |
|---|---|---|---|---|
| IMPOSSIBLE | 5459255 | Oct 29, 2015 | Oct 25, 2013 / May 1, 2018 | Substitutes for foods made from animals or animal products, namely, vegetable-based burger patties; meat substitutes |
| **IMPOSSIBLE**™ | 7179385 | Oct 29, 2015 | Apr 19, 2022 / Oct 3, 2023 | Meat substitutes; plant-based meat substitutes; plant-based meat patties; vegan and vegetarian meat substitutes; plant-based chicken substitutes; poultry substitutes; plant-based poultry substitutes |
| IMPOSSIBLE | 98042164 | Oct 29, 2015 | Jun 14, 2023 / May 28, 2024 | Meat substitutes; plant-based meat substitutes; vegan and vegetarian meat substitutes; plant-based meat patties; plant-based ground meat; chicken substitutes; poultry substitutes; pork substitutes; plant-based meatballs; plant-based sausage; prepared meals consisting primarily of plant-based meat; frozen meals consisting primarily of plant-based meat |
| IMPOSSIBLE BURGER | 6211591 | July 2016 | May 16, 2018 / Dec. 1, 2020 | Substitutes for food, namely, plant-based meat substitutes |
| IMPOSSIBLE | 7249916 | Oct 12, 2016 | May 13, 2021 / Dec. 19, 2023 | Restaurant services; café services, cafeterias, snack bar services, and the provision of food in restaurants and cafes; catering services for meals |

| MARK | REG. NO. | DATE OF FIRST USE | FILING DATE/ REG. DATE | GOODS AND SERVICES |
|---|---|---|---|---|
| IMPOSSIBLE | 5370337 | Nov 3, 2016 | May 20, 2014 / Jan 2, 2018 | Providing food and drink via mobile truck; catering services |

True and correct copies of Impossible Foods's Certificates of Registration for its IMPOSSIBLE-formative marks are attached collectively as Exhibit A. The registrations in the foregoing table are collectively referred to as "Plaintiff's Registrations," and the marks underlying those registrations are collectively referred to as "Plaintiff's Marks."

6.      Over almost a decade, Impossible Foods has invested millions of dollars in building and promoting its IMPOSSIBLE trademarks. Impossible Foods's IMPOSSIBLE-branded products are widely available at restaurants and grocery retailers across the United States.

7.      Company Defendant nonetheless has (1) asserted that it has superior rights based on its purported use of an IMPOSSIBLE mark for, inter alia, search engine optimization and clothing; (2) accused Impossible Foods of trademark infringement; and (3) initiated a proceeding at the United States Patent and Trademark Office ("USPTO") opposing Impossible Foods's federal trademark application for the mark IMPOSSIBLE for: "Providing information about recipes, ingredients and cooking information; providing an online computer database to consumers featuring information about recipes, ingredients and cooking information."

8.      Accordingly, Impossible Foods seeks a declaration that its use and registration of the trademark IMPOSSIBLE in connection with recipes, food ingredients, and cooking information do not, and will not, infringe upon, or otherwise violate any of Company Defendant's valid trademark rights.

9.      Impossible Foods also asserts claims for trademark infringement and unfair competition under federal and state law against Defendants in connection with Defendants' use of the IMPOSSIBLE mark in connection with sleep and energy powders and other edible products — goods over which Impossible Foods enjoys priority in the mark IMPOSSIBLE.

10. Impossible Foods further seeks cancellation of several of Defendants' registered IMPOSSIBLE-formative marks on the grounds that their incontestability or registration status was procured through fraudulent means; that the applications of the subject registrations were *void ab initio* due to fraud and/or non-use; and that Defendants have abandoned the marks in connection with some or all of the goods identified in the subject registrations.

## JURISDICTION AND VENUE

11. This court has subject matter jurisdiction over the claim for declaratory relief under 28 U.S.C. §§ 2201 and 2202 (the Declaratory Judgment Act) and 15 U.S.C. § 1051 et seq., as well as under 28 U.S.C. §§ 1331 and 1338, because Impossible Foods brings the action to determine a question of actual controversy between the parties arising under the trademark laws of the United States. This court also has subject matter jurisdiction over Impossible Foods's trademark infringement and unfair competition claims pursuant to 28 U.S.C. §§ 1338 and 1367.

12. Impossible Foods's claims for relief arise directly from Defendants' contacts with California, including its demands and threats made to Impossible Foods in California. (*See Impossible Inc. v. Impossible X LLC*, 80 F.4th 1079, 1087 (9th Cir. 2023).) Further, Company Defendant has challenged the right of Impossible Foods, a California-based company, to provide services under its IMPOSSIBLE trademark to California consumers and nationally.

13. This court also has personal jurisdiction over Defendants because, upon information and belief, Defendants have knowingly and purposefully marketed, distributed, offered for sale, and sold the Accused Products to persons within the State of California; Defendants regularly transact and conduct business within the State of California; and Defendants have otherwise made or established contacts within the State of California sufficient to permit the exercise of personal jurisdiction.

14. This court also has personal jurisdiction over Joel Runyon because Mr. Runyon: (a) is the sole member and sole employee of ILLC; (b) personally participated, authorized, and directed ILLC to market, distribute, offer for sale, and sell goods that infringe Impossible Foods's trademarks in connection with the Accused Products within the State of California; (c) regularly

transacts and conducts business within the State of California; and (d) has otherwise made or established contacts with the State of California sufficient to permit the exercise of personal jurisdiction. At all relevant times, Mr. Runyon personally was aware of, directed, and participated in the unlawful conduct of Company Defendant alleged in this pleading.

15. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this complaint occurred in this judicial district.

## INTRA-DISTRICT ASSIGNMENT

16. This is an Intellectual Property Action and thus may be assigned to a division of the Court on a district-wide basis.

## BACKGROUND

### The IMPOSSIBLE Brand

17. Impossible Foods is a pioneer in the field of plant-based substitutes for meat products. The company's aim is to give people the taste and nutritional benefits of meat without the negative health and environmental impacts associated with products from livestock.

18. Impossible Foods has enjoyed extraordinary commercial success in the United States. The company's signature products—the IMPOSSIBLE BURGER and other plant-based IMPOSSIBLE meat substitutes—are widely available in grocery stores across the United States, including Albertsons, Kroger, Safeway, Walmart, Target, Wegmans, Costco, and Trader Joe's. IMPOSSIBLE-branded products are sold at thousands of restaurants, including Burger King (Impossible Whopper), White Castle, Red Robin, Starbucks, Hard Rock Café, Cheesecake Factory, and Applebee's. Impossible Foods's products are also available at numerous independent, high-end restaurants.

19. Since its inception, Impossible Foods's IMPOSSIBLE mark has received considerable publicity. The mark has been featured in prominent national news coverage, including in The New York Times, The Los Angeles Times, The Wall Street Journal, the Chicago Tribune, San Jose Mercury News, San Francisco Chronicle, Bloomberg, Reuters, FORTUNE,

Forbes, Time, and USA Today, as well as on CNN, MSNBC, NPR, Fox Business, and other cable networks.

20.     Since at least as early as 2015, Impossible Foods has continuously used the mark IMPOSSIBLE in connection with edible products.

21.     Impossible Foods began using the IMPOSSIBLE mark with edible products prior to any trademark use by ILLC and XLLC for edible products.

22.     Impossible Foods's IMPOSSIBLE marks are arbitrary and enjoy a high degree of commercial strength because Impossible Foods has used the marks regularly and continuously since October of 2015 for plant-based substitutes for meat products, restaurant services, recipes, ingredients, and cooking information, and other related goods and services.

23.     As a result of the commercial success of Impossible Foods' products, the IMPOSSIBLE mark has become well-known, including in California—especially in connection with meat substitutes.

24.     Impossible Foods intends to continue using its IMPOSSIBLE marks in connection with its goods and services, including those related to recipes, food ingredients, and cooking information.

**Company Defendant's Assertion of Purported Trademark Rights and an Infringement Claim Relating to Recipes, Food Ingredients, and Cooking Information**

25.     More than five years after Impossible Foods commenced use of its IMPOSSIBLE marks, XLLC sent a demand letter to Impossible Foods.  XLLC's letter accused Impossible Foods of "encroachment into spaces either occupied by or closely related to goods and services offered by [XLLC]," which it said "greatly increases the likelihood of confusion."  XLLC also referenced, without providing details, "several apparent instances of actual confusion."

26.     XLLC's letter demanded that Impossible Foods "cease all use of its confusingly similar IMPOSSIBLE designs (that is, uses without 'FOODS' in stylizations that mimic [XLLC's] marks) and limit the use of its IMPOSSIBLE mark to only use in association with plant-based food substitutes."

THIRD AMENDED COMPLAINT
CASE NO. 5:21-CV-02419-BLF (SVK)

27.     On November 25, 2020, XLLC filed a Notice of Opposition with the Trademark Trial and Appeal Board opposing Impossible Foods's trademark application for the mark IMPOSSIBLE (Serial No. 88/855875), which covers: "Providing information about recipes, ingredients and cooking information; providing an online computer database to consumers featuring information about recipes, ingredients and cooking information." A true and correct copy of the disputed trademark application is attached as Exhibit B, and a true and correct copy of the Notice of Opposition filed by Impossible X is attached as Exhibit C.

28.     In its Notice of Opposition, XLLC alleges without citing to any evidence that it "has used its IMPOSSIBLE Marks in association with nutrition, food, and cooking resources since 2010 including publication of guides to different foods, ingredients, diets, and recipes." *See* Exhibit C.

29.     In its Notice of Opposition, XLLC alleges ownership of 10 trademark registrations and 1 pending application.  None of the USPTO filings submitted in connection with those marks shows use in connection with food or cooking.  *See* Exhibit C.

30.     In its Notice of Opposition, XLLC also alleges:

- That Impossible Foods lacks "any constructive or actual right" in the IMPOSSIBLE trademark;

- That "[t]here is no issue of priority."; and

- That registration of Impossible Foods' IMPOSSIBLE trademark in connection with the applied-for services "would result in irreparable damage to Impossible X as consumers would be likely to consider the services offered under the registered mark as emanating from Impossible X, and purchase such services, resulting in a loss to Impossible X."

*See* Exhibit C.

31.     To the extent Company Defendant used an IMPOSSIBLE mark in connection with recipes, food ingredients, or cooking information prior to 2016, that use was sporadic and de minimis, at best, and not the required bona fide use in commerce, and not trademark use. Notably, the three websites that appear to be the core of Company Defendant's web presence, <impossiblex.com>, <impossiblehq.com>, and <impossible.co>, did not offer any products or

services related to recipes, food or cooking until 2017 at the earliest. Company Defendant therefore does not own protectable trademark rights in any IMPOSSIBLE-formative mark for recipes, food ingredients, or cooking information, and any use post-dates Impossible Foods's trademark rights.

32.     The goods and services that Impossible Foods has continuously provided under its IMPOSSIBLE marks since 2015 or earlier are not similar to any goods and services Company Defendant actually offered under its marks prior to 2016 and are not likely to create confusion among consumers.

33.     The consuming public does not associate Company Defendant's IMPOSSIBLE-formative marks with recipes, food ingredients, or cooking information because Defendant has no history of providing such goods and services under IMPOSSIBLE-formative marks.

34.     Because of the goods and services on which Company Defendant allegedly has made use, and the ways in which it allegedly has (and has not) made use, Company Defendant's IMPOSSIBLE-formative marks are conceptually and commercially weak.

**Defendants Are Infringing and Unfairly Competing With Impossible Foods's IMPOSSIBLE Marks**

35.     Impossible Foods has been using its IMPOSSIBLE marks in connection with edible products since at least 2015 and has owned strong common law trademark rights in those marks since at least 2015. Impossible Foods also owns federal trademark registrations for its IMPOSSIBLE marks in connection with edible products and related goods and services.

36.     Notwithstanding Impossible Foods's prior use and superior rights in the IMPOSSIBLE marks in connection with edible products, Defendants are using, at the direction of Mr. Runyon, IMPOSSIBLE-formative marks in connection with edible products such as sleep and energy powders, as shown below, and upon information and belief, intends to offer for sale additional edible products soon (the "Accused Products").













**impossiblehq**
and
**joelrunyon**
Original audio

**impossiblehq** Imp
you fall asleep. W
112w

♡ ○ ◁

99 likes

37. Defendants' use of IMPOSSIBLE-formative marks in connection with the Accused Products are similar to, and compete with, the edible products offered and sold by Impossible Foods.

38. On information and belief, Defendants knowingly, willfully, and intentionally adopted and used IMPOSSIBLE-formative marks in connection with the Accused Products, at the direction of Mr. Runyon, likely causing consumer confusion with Impossible Foods.

39.     On information and belief, the Accused Products are marketed through overlapping channels, including social media, and offered through overlapping channels of trade, including online.

40.     Defendants' use of IMPOSSIBLE-formative marks in connection with the Accused Products is not authorized by Impossible Foods and, on information and belief, is likely to cause consumers to mistakenly associate Defendants and the Accused Products with Impossible Foods.

41.     On information and belief, Defendants' use of IMPOSSIBLE-formative marks in connection with the Accused Products is likely to cause consumers to believe, mistakenly, that Impossible Foods offered, authorized, or approved the Accused Products.

**Defendants' Fraudulent Statements in a Section 15 Declaration**

42.     On July 26, 2016, XLLC, at the direction of Mr. Runyon, the sole owner and operator of ILLC and its predecessor XLLC, filed an intent-to-use application (Serial No. 87116501) for the mark IMPOSSIBLE NUTRITION & Design shown below in connection with, *inter alia*, "nutritional supplements" in Class 5:

# IMPOSSIBLE NUTRITION

*See* Exhibit D.

43.     On March 7, 2017, the USPTO issued a notice of allowance for XLLC's application for the above mark. *See* Exhibit E.

44.     On November 16, 2017, XLLC, at the direction of Mr. Runyon, filed a Statement of Use ("SOU") for the application for the above mark, claiming a first-use date of August 15, 2017 in connection with "nutritional supplements." *See* Exhibit F at 2.

45.     On the same day, November 16, 2017, XLLC, at the direction of Mr. Runyon, filed an amended drawing for the mark, which is shown below and ultimately matured to registration ("IMPOSSIBLE NUTRITION Design Mark"):



*See* Exhibit G.

46. On January 23, 2018, the IMPOSSIBLE NUTRITION Design Mark matured to registration, Registration No. 5387588. *See* Exhibit H.

47. On information and belief, XLLC did not begin offering for sale nutritional supplements in connection with the IMPOSSIBLE NUTRITION Design Mark on a third-party website until on or around December 14, 2017:

**Amazon.com has shipped the item you sold**

A   Amazon.com <fba-ship-confirm@amazon.com>    Dec 14, 2017 (6 years 7 months ago)
to joel@impossible.co ▼    Archive   ⚲   ○   ↩ Reply   Actions ⌄

**amazon**

Greetings from Amazon.com

We thought you'd like to know that we completed and shipped your Amazon.com Fulfillment Order (112-0601797-4529006) to one of your customers:

ROY, WA 98580-9588 US

You can track the status of this order, and all your orders, online by visiting Seller Central

The following items have been shipped by Amazon.com:

| | Shipped by: UPS Tracking: 1Z9F7Y890318291606 |
|---|---|
| Package: 1 | |
| Qty | Order Item |
| 1 | Impossible Krill Oil I Arctic Krill |

Confidential IMP00004189

*See* Exhibit I.

THIRD AMENDED COMPLAINT
CASE NO. 5:21-CV-02419-BLF (SVK)

1        48.     On September 16, 2022, ILLC, at the direction of Mr. Runyon, instructed the third-

2    party website to remove the krill oil products:



Highly Confidential

IMP00004219

*See* Exhibit J.

       49.     On information and belief, ILLC's last sale of nutritional supplements in

connection with the IMPOSSIBLE NUTRITION Design Mark was on September 21, 2021:

Confidential



IMP00004195

*See* Exhibit K.

50. By October 17, 2021, ILLC's nutritional supplements bearing the IMPOSSIBLE NUTRITION Design Mark were no longer available for purchase on Defendants' website:



*See* Exhibit L at 1.

THIRD AMENDED COMPLAINT
CASE NO. 5:21-CV-02419-BLF (SVK)

1    51.    On January 23, 2023, the USPTO issued a reminder to ILLC to submit a Section 8

2    Declaration of Use and/or Excusable Neglect by January 23, 2024, with an option to file a Section

3    15 Declaration to "claim the benefits of incontestability." *See* Exhibit M.

4    52.    Only after the USPTO's Section 8 reminder did ILLC resume using the

5    IMPOSSIBLE NUTRITION Design Mark on their website in connection with nutritional

6    supplements:



*See* Exhibit N.

53. On July 12, 2024, with this litigation pending and with actual notice of Impossible Foods's intent to amend its pleading to assert trademark infringement claims, ILLC, at the direction of Mr. Runyon, submitted a combined Section 8 and Section 15 declaration for the

IMPOSSIBLE NUTRITION Design Mark attesting that "the mark has been continuously used in commerce for five (5) consecutive years after the date of registration." *See* Exhibit O at 5.

54.     Because ILLC had not used the IMPOSSIBLE NUTRITION Design Mark in connection with nutritional supplements between October 2021 and December 2023, ILLC's attestation in the Section 8 and Section 15 declaration that "the mark has been continuously used in commerce for five (5) consecutive years" was knowingly false.

55.     On information and belief, the PTO relied upon ILLC's false statement in accepting the combined Section 8 and Section 15 declaration and would not have accepted the declaration if it knew that the statement was false—reliance intended by ILLC.

**Defendants' Lack of Use of the IMPOSSIBLE FITNESS Design Mark Covering Class 25**

56.     On August 3, 2016, XLLC, at the direction of Mr. Runyon, the sole owner and operator of ILLC and its predecessor XLLC, filed an intent-to-use application (Serial No. 87125862) for IMPOSSIBLE FITNESS & Design ("IMPOSSIBLE FITNESS Design Mark") in connection with "clothing" in Class 25. *See* Exhibit P.

# IMPOSSIBLE FITNESS

57.     On December 14, 2016, the examining attorney filed an Examiner's Amendment amending the identification of the goods and services to: "Clothing and performance apparel, namely, t-shirts, sweatshirts, pants, shorts, tank tops, yoga pants, tights, and underwear." *See* Exhibit Q.

58.     On August 15, 2018, XLLC, at the direction of Mr. Runyon, filed a SOU in connection with the application for the IMPOSSIBLE FITNESS Design Mark claiming a first-use date of January 24, 2014. *See* Exhibit R at 1.

59.     On information and belief, at the time XLLC filed the SOU in connection with the IMPOSSIBLE FITNESS Design Mark, XLLC was not using and had never used the mark in commerce in connection with "sweatshirts, pants, shorts, tank tops, yoga pants, tights, and

underwear." Despite evidence of such use being requested in discovery, Defendants have not disclosed any evidence of such use.

60.     The August 15, 2018 SOU for the application for the IMPOSSIBLE FITNESS Design Mark was accompanied by the following specimen:



*See* Exhibit S.

61.     On October 23, 2018, the IMPOSSIBLE FITNESS Design Mark matured to registration, Registration No. 5590801. *See* Exhibit T.

62.     On information and belief, at the time XLLC filed the SOU in connection with the IMPOSSIBLE FITNESS Design Mark, XLLC knew that it was not using and had never used the mark in commerce in connection with sweatshirts, pants, shorts, tank tops, yoga pants, tights, and underwear, making its declaration of such use false.

1    63.    On information and belief, the PTO relied upon XLLC's false statement in issuing

2    Registration No. 5590801 and would not have issued the registration if it knew that the statement

3    was false—reliance intended by XLLC.

4    **Defendants' Lack of Use of the IMPOSSIBLE FITNESS Word Mark Covering Class 25**

5    64.    On November 16, 2017, XLLC, at the direction of Mr. Runyon, the sole owner and

6    operator of ILLC and its predecessor XLLC, filed an intent-to-use application (Serial No.

7    87687403) for IMPOSSIBLE FITNESS ("IMPOSSIBLE FITNESS Word Mark") in connection

8    with "[c]lothing and performance apparel, namely, t-shirts, sweatshirts, pants, shorts, tank tops,

9    yoga pants, tights, and underwear" in Class 25. *See* Exhibit U.

10    65.    On August 15, 2018, XLLC, at the direction of Mr. Runyon, filed a SOU for the

11    application for the IMPOSSIBLE FITNESS Word Mark claiming a first-use date of January 24,

12    2014. *See* Exhibit V at 1.

13    66.    On information and belief, at the time XLLC filed the SOU in connection with the

14    IMPOSSIBLE FITNESS Design Mark, XLLC was not using and had never used the mark in

15    commerce in connection with "sweatshirts, pants, shorts, tank tops, yoga pants, tights, and

16    underwear." Despite evidence of such use being requested in discovery, Defendants have not

17    disclosed any evidence of such use.

18    67.    The August 15, 2018 SOU was accompanied by the same specimen submitted on

19    August 15, 2018, for the IMPOSSIBLE FITNESS Design Mark at Paragraph 60:

*See* Exhibit W.

68.     On November 6, 2018, the IMPOSSIBLE FITNESS Word Mark matured to registration, Registration No. 5603025. *See* Exhibit X.

69.     On information and belief, at the time XLLC filed the SOU in connection with the IMPOSSIBLE FITNESS Word Mark, XLLC knew that it was not using and had never used the mark in commerce in connection with sweatshirts, pants, shorts, tank tops, yoga pants, tights, and underwear, making its declaration of such use false.

70.     On information and belief, the PTO relied upon XLLC's false statement in issuing Registration No. 5603025 and would not have issued the registration if it knew that the statement was false—reliance intended by XLLC.

**Defendants' Lack of Use of the IMPOSSIBLE Word Mark Covering Class 25**

71.     On January 15, 2018, XLLC, at the direction of Mr. Runyon, the sole owner and

THIRD AMENDED COMPLAINT
CASE NO. 5:21-CV-02419-BLF (SVK)

operator of ILLC and its predecessor XLLC, filed a use-based application (Serial No. 87755108) for IMPOSSIBLE ("IMPOSSIBLE Word Mark"), in which XLLC stated to the USPTO that the IMPOSSIBLE Word Mark was currently in use in commerce in connection with, *inter alia*, "clothing and performance apparel, namely, t-shirts, sweatshirts, pants, shorts, tank tips [sic], yoga pants, tights and underwear" in Class 25 and claimed that the date of first use was "[a]t least as early as" September 9, 2011. *See* Exhibit Y.

72.     The application for the IMPOSSIBLE Word Mark also included the following specimen:



*See* Exhibit Z at 2.

73.     On January 18, 2024, ILLC, at the direction of Mr. Runyon, submitted a Section 8 Declaration of Use in connection with the application for the IMPOSSIBLE Word Mark asserting, for the Class 25 goods, "[c]lothing and performance apparel, namely, t-shirts, sweatshirts, pants, shorts, tank tops, yoga pants, tights and underwear," that "the mark is in use in commerce on or in connection with **all** goods/services" (emphasis in original). *See* Exhibit AA at 2, 5.

74.     On January 18, 2024, ILLC, at the direction of Mr. Runyon, submitted the following specimen for the IMPOSSIBLE Word Mark application:

THIRD AMENDED COMPLAINT
CASE NO. 5:21-CV-02419-BLF (SVK)



*See* Exhibit BB at 2.

75.     On February 3, 2024, a trademark examining attorney issued an office action to the application for the IMPOSSIBLE Word Mark "randomly select[ing] [Registration No. 5620625] for audit to determine whether the mark is in use with all of the goods and/or services identified in the affidavit or declaration of use submitted to maintain the registration" requiring ILLC to either (1) submit proof of use for "[c]lothing and performance apparel, namely, tank tops" and "underwear" or (2) delete the audited goods. *See* Exhibit CC at 2-3.

76.     On December 4, 2024, ILLC, at the direction of Mr. Runyon, responded to the February 3, 2024 office action for the IMPOSSIBLE Word Mark, deleting "sweatshirts," "pants," "shorts," "yoga pants," "tights," and "underwear" from the identification of the goods. *See* Exhibit DD at 1.

77.     On December 4, 2024, ILLC, at the direction of Mr. Runyon, also submitted specimens showing the IMPOSSIBLE Word Mark in connection with a t-shirt and a tank top. *See* Exhibit EE.

THIRD AMENDED COMPLAINT
CASE NO. 5:21-CV-02419-BLF (SVK)

25

78. On information and belief, at the time that XLLC filed the use-based application in connection with the IMPOSSIBLE Word Mark, XLLC was not using and had never used the mark in connection with pants, shorts, yoga pants, tights, and underwear. Despite evidence of such use being requested in discovery, Defendants have not disclosed any evidence of such use.

79. On December 4, 2018, the IMPOSSIBLE Word Mark matured to registration, Registration No. 5620625. *See* Exhibit FF.

80. On information and belief, at the time that XLLC filed the use-based application in connection with the IMPOSSIBLE Word Mark, XLLC knew that it was not using and had never used the mark in commerce in connection with pants, shorts, yoga pants, tights, and underwear, making its declaration of such use false.

81. On information and belief, the PTO relied upon XLLC's false statement in issuing Registration No. 5620625 and would not have issued the registration if it knew that the statement was false—reliance intended by XLLC.

**Defendants' Lack of Use of the IMPOSSIBLE Motion Mark Covering Class 25**

82. On April 19, 2018, XLLC, at the direction of Mr. Runyon, the sole owner and operator of ILLC and its predecessor XLLC, filed a use-based application (Serial No. 87884481) for IMPOSSIBLE ("IMPOSSIBLE Motion Mark"), in which XLLC stated to the USPTO that the IMPOSSIBLE Motion Mark was currently in use in commerce in connection with, *inter alia*, "clothing and performance apparel, namely, t-shirts, sweatshirts, pants, shorts, tank tips [sic], yoga pants, tights and underwear" in Class 25 and claimed that the date of first use was "[a]t least as early as" May 29, 2012. *See* Exhibit GG.



83. The application for the IMPOSSIBLE Motion Mark also included a specimen, which is a video that shows the IMPOSSIBLE Motion Mark at the beginning of the video and then a person appearing to advertise a shirt with the static IMPOSSIBLE mark on it. *See* https://tsdr.uspto.gov/documentviewer?caseId=sn87884481&docId=SPE20180419160610&linkId=22#docIndex=21&page=1; Exhibit HH.

84. On November 12, 2018, the trademark examiner issued an office action to the application for the IMPOSSIBLE Motion Mark, refusing registration because the specimen submitted in connection with the Class 25 goods was "mere advertising material" and requesting that Defendants either submit a new and sufficient specimen evidencing use in commerce or amend the application to an intent-to-use basis. *See* Exhibit II at 2.

85. On May 10, 2019, XLLC, at the direction of Mr. Runyon, responded to the November 12, 2018 office action for the IMPOSSIBLE Motion Mark application and submitted the following alternative specimen:



*See* Exhibit JJ at 6; Exhibit KK.

86. On January 22, 2020, the trademark examiner issued another office action refusing registration of the IMPOSSIBLE Motion Mark "because the webpage specimen in International Class 25 [was] not an acceptable display associated with the goods and appear[ed] to be mere advertising material." *See* Exhibit LL at 2.

87. On May 11, 2020, XLLC, at the direction of Mr. Runyon, submitted another specimen, which is a video recording of a webpage displaying the IMPOSSIBLE Motion Mark next to a t-shirt appearing to be offered for sale. *See* https://tsdr.uspto.gov/documentviewer?caseId=sn87884481&docId=SPE20200511122033&linkId =12#docIndex=11&page=1; Exhibit MM.

88. On September 28, 2020, the trademark examiner issued another office action rejecting the specimen for "appear[ing] to be in the nature of a digital mockup that fail[ed] to show the applied-for mark in actual use in commerce." *See* Exhibit NN at 2.

89. On October 20, 2020, XLLC, at the direction of Mr. Runyon, responded to the September 28, 2020 office action for the IMPOSSIBLE Motion Mark and submitted another new specimen in connection with the application: a video recording of a webpage displaying the IMPOSSIBLE Motion Mark next to a t-shirt being offered for sale. *See* https://tsdr.uspto.gov/documentviewer?caseId=sn87884481&docId=SPE20201020190019&linkId =8; Exhibits OO-PP.

90. Until May 2020, archived webpages reveal no use of the IMPOSSIBLE Motion Mark in connection with any of the Class 25 goods, "clothing and performance apparel, namely, t-shirts, sweatshirts, pants, shorts, tank tips, yoga pants, tights and underwear," listed in the identification.

91. After May 2020, the only good that XLLC offered in connection with the IMPOSSIBLE Motion Mark was the "Men's IMPOSSIBLE Shirt (Blue)" that was displayed in the October 20, 2020 specimen. (The "via GIPHY" text indicates that the Motion Mark is there.)

*See* Exhibit QQ.

92.     At least as of October 2021, archived webpages reveal that the IMPOSSIBLE Motion Mark appears nowhere on ILLC's website in connection with any of the Class 25 goods, "clothing and performance apparel, namely, t-shirts, sweatshirts, pants, shorts, tank tips, yoga pants, tights and underwear."

THIRD AMENDED COMPLAINT
CASE NO. 5:21-CV-02419-BLF (SVK)



*See* Exhibit RR.

93.    On information and belief, at the time XLLC filed the use-based application for the IMPOSSIBLE Motion Mark, XLLC was not using and had never used the mark in connection "clothing and performance apparel, namely, t-shirts, sweatshirts, pants, shorts, tank tips, yoga pants, tights and underwear." Despite evidence of such use being requested in discovery, Defendants have not disclosed any evidence of such use.

94.    On November 30, 2021, the IMPOSSIBLE Motion Mark matured to registration, Registration No. 6571603. *See* Exhibit SS.

95.    On information and belief, as of the date XLLC filed the used-based application in connection with the IMPOSSIBLE Motion Mark, XLLC knew that it was not using and had never used the mark in commerce in connection with "clothing and performance apparel, namely, t-shirts, sweatshirts, pants, shorts, tank tips, yoga pants, tights and underwear," making its declaration of such use false.

96.    On information and belief, the PTO relied upon XLLC's false statement in issuing Registration No. 6571603 and would not have issued the registration if it knew that the statement was false—reliance intended by XLLC.

THIRD AMENDED COMPLAINT
CASE NO. 5:21-CV-02419-BLF (SVK)

30

# FIRST CLAIM FOR RELIEF

## (Declaratory Relief)

97.     Impossible Foods realleges and incorporates by reference the allegations of the preceding paragraphs.

98.     As a result of the actions and statements of ILLC, which include allegations of trademark infringement and challenges to Impossible Foods's commercial use and registration of its IMPOSSIBLE marks in connection with recipes, food ingredients, and cooking information, there is an actual controversy between Impossible Foods and ILLC as to the parties' rights and as to the legal relations associated with each party's use of IMPOSSIBLE-formative marks. An immediate, real, and substantial controversy exists between the parties, who have adverse legal interests.

99.     Impossible Foods has used and intends to continue to use its IMPOSSIBLE marks in interstate commerce.

100.     Company Defendant's position is that Impossible Foods has made use of IMPOSSIBLE-formative marks in a manner justifying ILLC and its predecessors to sue Impossible Foods immediately for trademark infringement and other legal violations.

101.     Impossible Foods's use of its IMPOSSIBLE-formative marks in connection with recipes, food ingredients, and cooking information, does not infringe or dilute any of ILLC's valid trademark rights and does not violate any federal or state trademark, trade name, or related law.

102.     A judicial determination is necessary and appropriate at this time to resolve the foregoing issues, and for the parties to ascertain their respective rights and obligations as to the IMPOSSIBLE-formative marks at issue.

103.     Impossible Foods does not engage in any activities that harm or threaten any lawful rights of ILLC and is entitled to a declaration to that effect in this action.

# SECOND CLAIM FOR RELIEF

## (Federal Trademark Infringement)

104.     Impossible Foods realleges and incorporates by reference the allegations of the preceding paragraphs.

105. Impossible Foods is the record owner of Plaintiff's Registrations and has exclusive registered and common-law rights in Plaintiff's Marks.

106. Defendants' unauthorized use, at the direction of Mr. Runyon, of imitations of Plaintiff's Marks in connection with edible products such as sleep and energy powders is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendants' goods and services are offered by Impossible Foods, or are associated or connected with Impossible Foods, or have the sponsorship, endorsement, or approval of Impossible Foods.

107. Defendants' conduct, at the direction of Mr. Runyon, has caused—and unless enjoined by the Court, will continue to cause—a likelihood of confusion and deception among members of the trade and public, and injury to Impossible Foods's goodwill and reputation as symbolized by Plaintiff's Marks, for which Impossible Foods has no adequate remedy at law.

108. Defendants' conduct, at the direction of Mr. Runyon, demonstrates a willful intent to trade on the goodwill associated with Plaintiff's Marks to Impossible Foods's great and irreparable harm.

109. Impossible Foods is thus entitled to permanent injunctive relief and to recover Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, and 1117.

## THIRD CLAIM FOR RELIEF

(Federal Unfair Competition)

110. Impossible Foods realleges and incorporates by reference the allegations of the preceding paragraphs.

111. Impossible Foods owns extensive and exclusive common-law rights in Plaintiff's Marks.

112. Defendants' unauthorized use, at the direction of Mr. Runyon, of imitations of Plaintiff's Marks in connection with edible products such as energy and sleep powders is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendants' goods and services are offered by Impossible Foods, or are associated or connected

with Impossible Foods, or have the sponsorship, endorsement, or approval of Impossible Foods.

113.    Defendants' conduct, at the direction of Mr. Runyon, has caused—and unless enjoined by the Court, will continue to cause—a likelihood of confusion and deception among members of the trade and public, and injury to Impossible Foods's goodwill and reputation as symbolized by Plaintiff's Marks, for which Impossible Foods has no adequate remedy at law.

114.    Defendants' conduct, at the direction of Mr. Runyon, demonstrates a willful intent to trade on the goodwill associated with Plaintiff's Marks to Impossible Foods's great and irreparable harm.

115.    Impossible Foods is thus entitled to permanent injunctive relief and to recover Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1125(a), 1116, and 1117.

## FOURTH CLAIM FOR RELIEF

(California Common Law Unfair Competition)

116.    Impossible Foods realleges and incorporates by reference the allegations of the preceding paragraphs.

117.    Impossible Foods owns extensive and exclusive common-law rights in Plaintiff's Marks.

118.    Defendants' unauthorized use, at the direction of Mr. Runyon, of imitations of Plaintiff's Marks in connection with edible products such as energy and sleep powders is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendants' goods and services are offered by Impossible Foods, or are associated or connected with Impossible Foods, or have the sponsorship, endorsement, or approval of Impossible Foods.

119.    Defendants' conduct, at the direction of Mr. Runyon, has caused—and unless enjoined by the Court, will continue to cause—a likelihood of confusion and deception among members of the trade and public, and injury to Impossible Foods's goodwill and reputation as symbolized by Plaintiff's Marks, for which Impossible Foods has no adequate remedy at law.

120.    Defendants' conduct, at the direction of Mr. Runyon, demonstrates a willful intent

to trade on the goodwill associated with Plaintiff's Marks to Impossible Foods's great and irreparable harm.

121.    Impossible Foods is therefore entitled to injunctive relief and to recover actual damages, attorneys' fees, and punitive damages to the full extent provided for by the common law of the State of California.

**FIFTH CLAIM FOR RELIEF**

(Section 15 Fraud in the Procurement of the Incontestability Status of Trademark Reg. No. 5387588)

122.    Impossible Foods realleges and incorporates by reference the allegations of the preceding paragraphs.

123.    Pursuant to 15 U.S.C. § 1064(3), a federal trademark registration may be canceled "at any time" upon a showing that a registration was procured or maintained via fraud upon the United States Patent and Trademark Office.

124.    On July 12, 2024, during the pendency of the instant action, ILLC, at the direction of Mr. Runyon, submitted a Section 15 declaration for the IMPOSSIBLE NUTRITION Design Mark attesting that "the mark has been continuously used in commerce for five (5) consecutive years after the date of registration, or the date of publication."

125.    ILLC's attestation, at the direction of Mr. Runyon, as to five years of continuous use is false because, on information and belief, Defendants did not offer any nutritional supplements in connection with the IMPOSSIBLE NUTRITION Design Mark between October 2021 and December 2023 and only began offering nutritional supplements bearing the IMPOSSIBLE NUTRITION Design Mark again after receiving the Section 8 Reminder from the USPTO.

126.    Defendants knew that the statement regarding continuous use in the Section 15 declaration was false because Defendants intentionally and specifically ceased selling products in connection with the IMPOSSIBLE NUTRITION Design Mark in October 2021, removing

nutritional supplements from their website and requesting that the third-party seller remove the product from the third party's website.

127. In reliance on Defendants' false sworn statement, the USPTO issued an erroneous "Notice of Acknowledgment" of the "incontestable" status of Registration No. 5387588.

128. Defendants' actions to procure incontestability status for the IMPOSSIBLE NUTRITION Design Mark constitutes fraud on the USPTO.

129. The inclusion of false statements in a Section 15 affidavit/declaration is material, and here constituted fraud on the USPTO warranting cancellation of the registrations under Section 14(3) of the Trademark Act.

130. By virtue of ownership of Registration No. 5387588 and the incontestability status procured by fraud, Defendants assert the IMPOSSIBLE NUTRITION Design Mark against Impossible Foods in an opposition before the Trademark Trial & Appeal Board for application Serial No. 88855875 and in this present action, disrupting Impossible Foods's United States business operations and causing great and irreparable harm to Impossible Foods.

131. Accordingly, the Court should issue an order cancelling the IMPOSSIBLE NUTRITION Design Mark, Registration No. 5387588.

## SIXTH CLAIM FOR RELIEF

(Fraud in the Procurement - Cancellation of Trademark Reg. Nos. 5590801, 5603025, 5620625, and 6571603[1])

132. Impossible Foods realleges and incorporates by reference the allegations of the preceding paragraphs.

133. Pursuant to 15 U.S.C. § 1064(3), a federal trademark registration may be canceled "at any time" upon a showing that a registration was procured or maintained via fraud upon the United States Patent and Trademark Office.

134. The USPTO reasonably relied on the false statements in the applications or SOUs in granting registration status to the Void Marks.

---

[1] Reg. Nos. 5590801, 5603025, 5620625, and 6571603 collectively referred to hereinafter as the "Void Marks."

THIRD AMENDED COMPLAINT
CASE NO. 5:21-CV-02419-BLF (SVK)

135.    The USPTO would not have granted registration status to the Void Marks but for the false statements in the applications or SOUs.

136.    Upon information and belief, Defendants and their predecessors knew that the statements regarding its actual and bona fide use of the Void Marks in commerce in connection with some of the goods identified in the applications or SOUs were false.

137.    In view of the foregoing, Defendants' and their predecessors' statements in the applications or SOUs submitted in connection with the applications for the Void Marks that the marks were in use in commerce in connection with the stated goods as evidenced by the attached specimens were knowing, material, and false representations to the USPTO made with the intent to deceive the USPTO.

138.    Upon information and belief, Defendants and their predecessors committed fraud on the USPTO in connection with securing and maintaining the Void Marks because, through Defendants' and their predecessors' authorized representative, Defendants and their predecessors knowingly made false, material representations of fact in the applications and ITU or SOU declarations, submitted with the intent to deceive the USPTO into granting the registrations for goods for which Defendants had no actual or bona fide use or intent to use the marks.

139.    Accordingly, the actions of Defendants and their predecessors in the procurement of registration status constitute fraud on the USPTO.

140.    By virtue of ownership of the Void Marks procured by fraud, Defendants assert the Void Marks against Impossible Foods in an opposition before the Trademark Trial & Appeal Board for application Serial No. 88855875 and in this present action, disrupting Impossible Foods's United States business operations and causing great and irreparable harm to Impossible Foods.

141.    Accordingly, the Court should issue an order cancelling the Void Marks on the basis of fraud.

## SEVENTH CLAIM FOR RELIEF

(Abandonment - Cancellation of Trademark Reg. No. 5590801, 5603025, and 6571603[2])

142.    Impossible Foods realleges and incorporates by reference the allegations of the preceding paragraphs.

143.    According to 15 U.S.C. § 1127, "Nonuse for 3 consecutive years shall be prima facie evidence of abandonment."

144.    On information and belief, as to Registration Nos. 5590801 and 5603025, during a period of at least three years after the date of the SOUs, the marks were not used in commerce on or in connection with any of the identified goods.

145.    On information and belief, as to Registration No. 6571603, the mark was not used in commerce on or in connection with any of the identified goods for a period of at least three years since at least October 2021.

146.    On information and belief, Defendants are not making bona fide use in the ordinary course of trade of the Abandoned Marks in connection with the goods recited in the registrations.

147.    On information and belief, Defendants have not made bona fide use in the ordinary course of trade of the Abandoned Marks in connection with the goods recited in the registrations for at least three consecutive years.

148.    By virtue of ownership, Defendants assert the Abandoned Marks against Impossible Foods in an opposition before the Trademark Trial & Appeal Board for application Serial No. 88855875 and in this present action, disrupting Impossible Foods's United States business operations and causing great and irreparable harm to Impossible Foods.

149.    As such, Defendants' lack of bona fide use in commerce and abandonment for the identified goods is grounds for cancellation under 15 U.S.C. § 1064 and the Abandoned Marks should be cancelled.

## PRAYER FOR RELIEF

Impossible Foods prays for judgment as follows:

---

[2] Reg. Nos. 5590801, 5603025, and 6571603 collectively referred to hereinafter as the "Abandoned Marks."

(a)     That this Court declare that Impossible Foods's use and registration of its IMPOSSIBLE-formative marks with services relating to recipes, food ingredients, and cooking information do not infringe upon, dilute, or otherwise violate any valid right of ILLC under applicable federal or state law;

(b)     That this Court declare that Impossible Foods is not liable to Company Defendant;

(c)     That this Court order Defendants and their officers, affiliate companies, agents, servants, employees, successors, licensees, and assigns, and all others in concert and privity with them, be enjoined permanently from using any mark that is confusingly similar to any of Plaintiff's Marks in connection with edible products and other related goods and services, including sleep and energy powder;

(d)     That this Court declare that Defendants' deceptive acts are willful;

(e)     That this Court direct the Commissioner of Trademarks that the following trademark registrations are to be canceled by the United States Patent and Trademark Office:

        i.     U.S. Reg. 5387588

        ii.     U.S. Reg. 5590801

        iii.     U.S. Reg. 5603025

        iv.     U.S. Reg. 5620625

        v.     U.S. Reg. 6571603

(f)     That Defendants be ordered to pay compensatory, punitive, and enhanced damages, as well as Impossible Foods's attorneys' fees and costs, as demanded in the Claims set forth above;

(g)     That Defendants be ordered to pay prejudgment interest on the foregoing relief;

(h)     That this Court award Impossible Foods its reasonable attorneys' fees and costs under 15 U.S.C. § 1117(a); and

(i)     That this Court grant such other and further relief as this Court may deem just and proper.

DATED: March 7, 2025.            Respectfully submitted,

                                 KILPATRICK TOWNSEND & STOCKTON LLP


                                 By: /s/ *H. Forrest Flemming, III*
                                 GIA L. CINCONE
                                 R. CHARLES HENN JR.
                                 H. FORREST FLEMMING, III
                                 JESSICA W. TRUELOVE

                                 Attorneys for Plaintiff


## DEMAND FOR JURY TRIAL

Impossible Foods hereby demands trial by jury of all issues triable by a jury.


DATED: March 7, 2025.            Respectfully submitted,

                                 KILPATRICK TOWNSEND & STOCKTON LLP


                                 By: /s/ *H. Forrest Flemming, III*
                                 R. CHARLES HENN JR.
                                 GIA L. CINCONE
                                 H. FORREST FLEMMING, III
                                 JESSICA W. TRUELOVE

                                 Attorneys for Plaintiff