GIA CINCONE (SBN 141668)
KILPATRICK TOWNSEND & STOCKTON LLP
Two Embarcadero Center
Suite 1900
San Francisco, California 94111
Telephone: (415) 273-7546
Facsimile: (415) 723-7173
gcincone@ktslaw.com

R. CHARLES HENN JR. (*pro hac vice*)
H. FORREST FLEMMING, III (*pro hac vice*)
JESSICA W. TRUELOVE (*pro hac vice*)
1100 Peachtree Street NE
Suite 2800
Atlanta, Georgia 30309
Telephone: (404) 815-6572
Facsimile: (404) 541-3240
chenn@ktslaw.com
fflemming@ktslaw.com
jtruelove@ktslaw.com

Attorneys for Plaintiff/Counter-Defendant
IMPOSSIBLE FOODS INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| IMPOSSIBLE FOODS INC., a Delaware corporation,<br><br>Plaintiff/Counter-Defendant<br><br>v.<br><br>IMPOSSIBLE LLC, a Texas limited liability company, and JOEL RUNYON,<br><br>Defendants/Counter-Plaintiffs. | Case No. 5:21-cv-02419-BLF (SVK)<br><br>**JOINT STATEMENT REGARDING DEFENDANT IMPOSSIBLE LLC'S DISCOVERY RESPONSES**<br><br>Judge: Hon. Beth Labson Freeman |

**JOINT STATEMENT REGARDING DEFENDANT**
**<u>IMPOSSIBLE LLC'S DISCOVERY RESPONSES</u>**

Impossible Foods Inc.'s recitation of the issues and the background follows. Impossible LLC objects to and does not join in the following statement.

Pursuant to Section 8 of Magistrate Judge Susan van Keulen's Civil and Discovery Referral Matters Standing Order, Plaintiff Impossible Foods Inc. ("Impossible Foods")

respectfully requests an order compelling Defendant Impossible LLC ("ILLC")[1] to fully respond to Interrogatory No. 10.

There are 30 days remaining until the close of fact discovery on April 14, 2025.

Attached as **Exhibit A** is a joint chart as required by Section 8 of the Standing Order.

On March 13, 2024, Impossible Foods served its First Set of Interrogatories, which includes Interrogatory No. 10. *See* **Exhibit B**. On May 13, ILLC served its responses. *See* **Exhibit C**. On May 24, Impossible Foods sent ILLC a letter addressing certain deficiencies in ILLC's responses. On June 6, the parties met and conferred regarding these deficiencies. On June 17 and 27, the parties sent correspondence regarding these deficiencies. Thereafter, the parties engaged in settlement discussions and mediation.

On October 22, Impossible Foods sent ILLC a second letter addressing certain deficiencies, including ILLC's responses to Interrogatory No. 10. On November 5, the parties met and conferred again. On November 8, ILLC served its supplemental responses to Impossible Foods's First Set of Interrogatories. *See* **Exhibit F**. On November 13, Impossible Foods sent ILLC an email summarizing its concerns with ILLC's supplemental responses, including ILLC's supplemental responses to Interrogatory No. 10. Impossible Foods asked ILLC's counsel, *inter alia*, to confirm that ILLC would further supplement its responses to Interrogatory No. 10 by the end of November.

ILLC's counsel did not respond for three weeks, and even then, only to dismiss Impossible Foods's concerns.

On January 13, 2025, Impossible Foods sent an email to ILLC stating that its failure to (1) substantively respond to Impossible Foods's November 13 email, and (2) supplement its interrogatory responses, despite numerous letters, meet and confers, and e-mail correspondence, indicates that the parties are at an impasse. Impossible Foods attached a draft joint statement, with placeholders for ILLC's contributions to be inserted by January 21.

---

[1] Impossible Foods notes that the discovery requests and responses at issue are only directed to ILLC.

On January 21, ILLC informed Impossible Foods that it would be unable to provide its contributions to the joint statement that day but would provide them by January 23. On January 23, ILLC informed Impossible Foods that it would once again be unable to provide its portions but would do so by January 27.

On January 27, ILLC informed Impossible Foods that it had retained new counsel, who indicated that disagreements could be resolved without the need for Court intervention. As such, ILLC never provided its contributions to the January 13 draft joint statement.

On January 29, the parties met and conferred regarding, *inter alia*, Impossible Foods's concerns with ILLC's responses to Interrogatory No. 10. On February 4, Impossible Foods requested ILLC's final positions regarding whether it would supplement its responses by February 7. Having received no response, on February 10, Impossible Foods emailed ILLC requesting ILLC's position on supplementation by February 11. That same day, ILLC responded that it was continuing to look into the issues raised regarding these interrogatories and anticipated supplementing some or all of its responses.

On February 11, 2025, Impossible Foods repeated its request for ILLC to confirm whether it would supplement and by what date. On February 12, ILLC offered to supplement its responses to Interrogatory No. 10 contingent upon Impossible Foods supplementing responses to Interrogatories served by ILLC. Having first raised the prospect of a joint statement a month prior, Impossible Foods asked for supplementation by February 18. ILLC neither responded to that request nor supplemented its responses to any interrogatories. Instead, ILLC continued to push its own discovery disputes, withholding supplementation of its deficient responses as a part of a tit-for-tat approach to discovery.[2] On March 3, Impossible Foods, in response to deficiencies raised by ILLC and after being repeatedly rebuffed in its own efforts to address its concerns, suggested supplementation of each parties' responses by March 5, to which ILLC agreed.

---

[2] ILLC's tactics—making supplementation of its deficient responses contingent upon resolution of its own concerns with Impossible Foods's responses—violated standard discovery practice. "The Court does not look favorably upon a 'tit-for-tat' approach to discovery." *Richardson v. City of Antioch*, No. C-08-3470 JSW EMC, 2009 WL 982118, at *1 (N.D. Cal. Apr. 13, 2009).

On March 5, ILLC served its supplemental responses to, *inter alia*, Interrogatory No. 10. *See* **Exhibit G**. After almost a year of conferrals, ILLC's response is still deficient, as discussed below.

**Interrogatory No. 10: For each of Impossible LLC's Goods and Services, Describe In Detail any time in which Impossible LLC ceased using any IMPOSSIBLE-formative Marks in commerce, regardless of whether that cessation in use was temporary or Impossible LLC resumed use, including the date, time period, and explanation of the cessation in use.**

Impossible Foods's Position: This interrogatory is relevant to whether, when, and to what extent ILLC ever abandoned its trademark rights in its asserted marks. It is also relevant to which party enjoys priority in IMPOSSIBLE-formative marks in connection with particular goods and services at issue. *See Spin Master, Ltd. v. Zobmondo Entm't, LLC*, 944 F. Supp. 2d 830, 850-52 (C.D. Cal. 2012) (discussing how a cessation of use of a mark can trigger abandonment or, separately, cede priority in a mark to another). In addition, the interrogatory is relevant to Impossible Foods's recently-permitted claims for fraud on the PTO that allege that ILLC submitted trademark filings attesting to use in commerce of IMPOSSIBLE-formative marks knowing that such use was not, in fact, occurring. *See* Dkt. 151.

ILLC initially objected to this interrogatory because it argued that investigating whether use of a mark "ceased" for any product or service for a short period—such as a month or a season—would be overly burdensome. Accordingly, Impossible Foods compromised, and the parties agreed that "ceased" would mean a cessation of use for a year or more. With that agreement, ILLC supplemented its response on November 8, 2024, stating that it "withdrew its krill oil supplement product from Amazon.com sales on September 16, 2022, and has not sold any krill oil supplements since that date." This response was deficient because it did not include an "explanation of the cessation in use," and Impossible Foods repeatedly asked ILLC to cure this deficiency. *See Spin Master, Ltd.*, 944 F. Supp. 2d at 853 n.21 (discussing a party's "explanations" for its lack of use of a mark in connection with trademark abandonment and priority analyses).

With new counsel in place, ILLC supplemented its response again on March 5, 2025. In that supplemental response, ILLC inexplicably recanted its previous response, stating only: "For

[sic] time to time, [ILLC] has varied the specific goods and services offered under the IMPOSSIBLE®- formative marks, sometimes as a result of supply chain issues, delays and shortages caused by the COVID-19 pandemic, variations in consumer demand, and other factors. However, [ILLC] never ceased using any of the IMPOSSIBLE®-formative Marks in commerce."

ILLC has wasted almost the entirety of fact discovery evading answering Interrogatory No. 10. Indeed, ILLC's own trademark filings indicate that the company ceased using IMPOSSIBLE-formative marks on several categories of goods (e.g., "sweatshirts," "pants," "shorts," "yoga pants," "tights," and "underwear"—actions which triggered Impossible Foods's recent motion to amend its complaint. *See* Dkt. 139-1 at 4-5 (discussing and attaching filings).

Given ILLC's egregious conduct with regard to Interrogatory No. 10, Impossible Foods respectfully requests that the Court order: (1) ILLC to answer Interrogatory No. 10 in full and under oath by March 27, 2025; and (2) ILLC and its counsel to certify, separately, and also on March 27, that *each* has conducted a reasonable search for information responsive to Interrogatory No. 10 and that *each* has a good faith belief that no additional responsive information is available.

<u>Impossible Foods's Proposed Compromise</u>: Impossible Foods has already compromised with regard to this interrogatory by limiting it to cessation of use for a year or more, but at this point, Impossible Foods cannot accept another compromise.

<u>ILLC's Position</u>: Impossible LLC's Position: Impossible LLC ("Impossible") has fully responded to Interrogatory No. 10. The issue IFI is now highlighting was never raised in any of the lengthy meet and confer discussions regarding this interrogatory over the past year, which focused on the alleged cessation of Impossible's krill oil supplement product. *See, e.g.*, Email from Jessica Truelove to Adrienne Kosak, Nov. 13, 2024, RE: Impossible Foods Inc. v. Impossible LLC and Joel Runyon – Outstanding Deficiencies ("Interr No. 10 – This supplemental response is deficient because Defendants failed to explain why they stopped offering their krill oil supplement product.")).[3] As IFI notes, Impossible provided that information in its supplemental

[3] **<u>Impossible Foods Inc. Only</u>**: ILLC sent its portion of this Joint Statement with two additional exhibits that are neither "specific discovery request(s) at issue" or "the response(s) to it." *See* Civil and Discovery Referral Matters Standing Order § 7(b). Because ILLC has not obtained "prior leave of Court," *id.*, Impossible Foods has not submitted them but has left ILLC's descriptions and quotations of them untouched.

response, thereby addressing the specific issue IFI had raised in the meet and confer.

Indeed, since propounding this interrogatory one year ago, the parties have met and conferred to discuss discovery at least half a dozen times—and have also exchanged numerous emails regarding discovery issues. During these conferences, and in correspondence from that period, IFI's inquiries with respect to this interrogatory were addressed to the timeline of the use of Impossible's marks in relation to its krill oil supplement product. Impossible complied with those demands through its supplemental response, which IFI does not challenge here.

At no time did IFI claim that this interrogatory response sought other information about specific articles of clothing within Impossible's apparel offerings until IFI provided its joint statement to Impossible on March 10. That came as a surprise to Impossible, which sought to meet and confer with IFI regarding this new complaint. IFI summarily rejected that offer, and accused Impossible of acting in "bad faith" by making an "unreasonable" offer to meet and confer pursuant to section 7(b) of the Court's Standing Order. *Id.* Without explanation, IFI also accused Impossible of engaging in "abusive discovery tactics," even though Impossible made clear that it remained committed to the parties' agreed-upon timeline for submitting this dispute to the Court. Impossible also offered a reasonable compromise to IFI, which it rejected out of hand without offering any counterproposal.

Those procedural failures aside, Impossible has properly responded to the interrogatory by providing information regarding the continuous offering for sale of its "Goods and Services" under the IMPOSSIBLE®-formative marks. The information IFI now claims to seek through this interrogatory is not called for by the discovery request, which is addressed to cessation of use of the IMPOSSIBLE®-formative marks as to any "Goods and Services" (*i.e.* "apparel" or "supplements"), but does not request information regarding individual SKUs (*e.g.* "tights" or "underwear") within those categories. Specifically, IFI defined "Goods and Services" to mean "goods or services ever offered for sale or sold by Impossible LLC in connection with an IMPOSSIBLE-formative Mark." Given the lack of any specialized definition (*i.e.* "Goods" means "goods"), Impossible reasonably interpreted that term to mean types of goods, such as "apparel," rather than individual articles of clothing within that category of goods. And that interpretation

aligned with the scope of IFI's claims, which turn on use within a category of goods, and not on an article-by-article basis. *See Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999) ("The first to use a mark is deemed the 'senior' user and has the right to enjoin 'junior' users from using confusingly similar marks in the same industry and market or within the senior user's natural zone of expansion."). As such, Impossible had no reason to believe IFI was seeking information regarding the commercial sales history of all of Impossible's individual SKUs, and IFI never sought clarification or even bothered to raise this issue until it served its portion of the Joint Statement earlier this week.

Instead, the driving factor behind IFI's new demands appears to be its recent amendments to its complaint, and its theory that Impossible defrauded the PTO by claiming continuous use of the marks as to certain articles of clothing. *See* Dkt. 151, ¶¶ 142-149. Having recently been granted leave to state such a claim, IFI is seeking to reinterpret its interrogatory to substantially broaden the scope of information it claims is required. And, while Impossible does not dispute that IFI has a right to take discovery into its new claims and attempted without success to meet and confer with IFI regarding this very issue, it should not be ordered to investigate and provide a new scope of information on unreasonably shortened time or be deprived of its rights to assert proper objections to a clearly-framed discovery request.

<u>Impossible's Proposed Compromise</u>: Impossible has already amended its responses and expended a great deal of time meeting and conferring with IFI regarding this interrogatory. If IFI desires new information regarding issues that relate to its new claims, it is free to propound a new request seeking such information, to which Impossible would agree to respond on shortened time with a verified response within 21 days.

DATED: March 14, 2025

By: */s/ H. Forrest Flemming, III*

R. Charles Henn Jr. (*pro hac vice*)
H. Forrest Flemming, III (*pro hac vice*)
Jessica W. Truelove (*pro hac vice*)
KILPATRICK TOWNSEND & STOCKTON
1100 Peachtree Street NE, Suite 2800
Atlanta, Georgia 30309
Telephone: (404) 815-6572
Facsimile: (404) 541-3240
Email: chenn@ktslaw.com
fflemming@ktslaw.com
jtruelove@ktslaw.com

Gia Cincone (SBN 141668)
Two Embarcadero Center, Suite 1900
San Francisco, California 94111
Telephone: (415) 273-7546
Facsimile: (415) 723-7173
Email: gcincone@ktslaw.com

*Attorneys for Plaintiff/Counter-Defendant*
IMPOSSIBLE FOODS INC.

**CERTIFICATE OF SERVICE**

I hereby certify that on March 10, 2025, a true and correct copy of Plaintiff's portions of THE JOINT STATEMENT REGARDING DEFENDANT IMPOSSIBLE LLC'S DISCOVERY RESPONSES was served via electronic mail on counsel for Defendants Impossible LLC and Joel Runyon, addressed as follows, and a true and correct copy of this document and its exhibits was served on the same on March 14, 2025:

J. Noah Hagey
Adam S. Cashman
Gregory D. Washington
BRAUNHAGEY & BORDEN LLP
747 Front Street, 4th Floor
San Francisco, CA 94111
hagey@braunhagey.com
cashman@braunhagey.com
gwashington@keker.com

Faith Barksdale
BRAUNHAGEY & BORDEN LLP
118 W 22nd Street, 12th Floor
New York, NY 10011
barksdale@braunhagey.com

David E. Weslow
Adrienne J. Kosak
WILEY REIN LLP
2050 M Street NW
Washington, DC 20036
dweslow@wiley.law
akosak@wiley.law

*/s/ H. Forrest Flemming, III*
H. Forrest Flemming, III