# Exhibit F

Michael L. Rodenbaugh (SBN 179059)
Meghan Gleeson (SBN 353156)
RODENBAUGH LAW
548 Market Street, Box 55819
San Francisco, CA 94104
Phone: (415) 738-8087
Email: mike@rodenbaugh.com
meghan@rodenbaugh.com
docket@rodenbaugh.com

David E. Weslow (admitted *pro hac vice*)
Adrienne J. Kosak (admitted *pro hac vice*)
WILEY REIN LLP
2050 M Street NW
Washington, DC 20036
Telephone: (202) 719-7000
Facsimile: (202) 719-7049
dweslow@wiley.law
akosak@wiley.law

Attorneys for Defendant IMPOSSIBLE LLC

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IMPOSSIBLE FOODS INC., <br><br> Plaintiff, <br><br> v. <br><br> IMPOSSIBLE LLC, <br><br> Defendant. | Case No. 5:21-cv-02419-BLF (SVK) <br><br> Judge: Hon. Beth Labson Freeman <br><br> **DEFENDANT IMPOSSIBLE LLC'S OBJECTIONS AND FIRST SUPPLEMENTAL RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES (NOS. 1-23)** |

Pursuant to Fed. R. Civ. P. Rules 26 and 33, Defendant Impossible LLC ("Impossible") hereby serves its Objections and First Supplemental Responses to Plaintiff Impossible Foods Inc.'s ("Impossible Foods") First Set of Interrogatories.

## **RESERVATION OF RIGHTS**

Impossible's responses are based solely on information currently available to Impossible based upon a reasonable investigation.  Pursuant to Federal Rule of Civil Procedure 26(e)(1)(A), Impossible reserves all rights to supplement, revise and/or amend these responses should additional information become available through the discovery process or other means.  Impossible further reserves the right to produce or use any information or documents identified after service of these responses in support of or in opposition to any motion, in depositions, or in hearings. Nothing in these responses shall be deemed an admission by Impossible regarding the existence of any information, the relevance or admissibility of any information, for any purpose, or the truth or accuracy of any statement of characterization contained in any of Impossible Foods' Interrogatories.  In responding to Impossible Foods' Interrogatories, Impossible does not waive any objection on the grounds of privilege, competency, relevance, materiality, authenticity, or admissibility of the information contained in these responses.

## **GENERAL OBJECTIONS**

Impossible makes the following General Objections, whether or not separately set forth in each response to each Instruction, Definition, and/or Interrogatory:

1.       Impossible objects to the Definitions, Instructions, and Interrogatories to the extent that they seek information or documents protected by the attorney-client privilege, the work product doctrine immunity, joint defense privilege, common interest privilege, and any other applicable privilege, immunity, or exemption from discovery as outlined in the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Northern District of California, and applicable law. For the sake of clarity, Impossible hereby asserts such privileges and/or exemptions.  Specifically, and without limiting the foregoing, information transmitted or exchanged by or between Impossible and its counsel, or writings prepared and maintained internally by

Impossible's counsel that have not been disclosed to third parties, are not included in these responses. Inadvertent disclosure of any privileged or protected information or documents in responses to these Interrogatories shall not be deemed a waiver of the applicable privilege or protection, or of any other basis for objecting to discovery, or of Impossible's right to object to the use, and see the return, of any such inadvertently disclosed information.

2. Impossible objects to the Definitions, Instructions, and Interrogatories to the extent that they are not within the scope of permissive discovery under the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Northern District of California, the orders of the Court, and stipulations between the parties. Impossible is making a reasonable search for information relevant to the issues, including documents of the types that are the subject of the Interrogatory. If any non-privileged, relevant documents, and/or things are discovered in the course of any further or continuing searches, they will be identified and/or produced in accordance with Rule 26(e)(1)(A).

3. Impossible objects to the Definitions, Instructions, and Interrogatories to the extent that they seek disclosure of information or documents that are neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence, or are in any other way inconsistent with the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Northern District of California, the orders of the Court, and stipulations between the parties. Impossible will respond to the Interrogatories only to the extent required by such rules, orders, and stipulations.

4. Impossible objects to the Definitions, Instructions, and Interrogatories to the extent that they seek identification of documents not within Impossible's possession, custody, or control.

5. Impossible objects to the Definitions, Instructions, and Interrogatories to the extent they seek to impose an obligation on Impossible to disclose information that is publicly available

and/or as easily obtained by parties other than Impossible, or that is more appropriately obtained through sources other than interrogatories, on the grounds that such discovery is overly broad and unduly burdensome. Impossible further objects to the Interrogatories to the extent that they seek information or documents that are already known to or in the possession of Impossible.

6.      Impossible objects to the Definitions, Instructions, and Interrogatories to the extent that they seek information subject to confidentiality restrictions of a third party.  Impossible will not disclose confidential information of third parties absent permission by the third party or a court order authorizing such production.

7.      Impossible objects to the Definitions, Instructions, and Interrogatories to the extent that they incorporate or seek responses based on erroneous statements of law, and any response is not an agreement with such erroneous statements of law by Impossible.

8.      Impossible objects to the Definitions, Instructions, and Interrogatories to the extent that they seek to impose an obligation to identify or search for documents or information at any location other than that at which they would be expected to be stored in the ordinary course of business.

9.      Impossible objects to the Definitions, Instructions, and Interrogatories to the extent that they are not limited by a reasonable time period.

10.     Impossible objects to the Interrogatories to the extent that they include multiple discrete subparts as inherently ambiguous and confusing.  Each discrete subpart shall be counted as a separate Interrogatory for purposes of calculating the limits on Interrogatories.

11.     Impossible objects to Definition B as vague and ambiguous with respect to its reference to Impossible HQ as a standalone entity.

12.     Impossible objects to Definition F as vague, ambiguous, and unduly broad. When encountering the term "Concerning," Impossible will interpret it consistent with the standard

definition of the term.

13.     Impossible objects to Definition H as vague and ambiguous with respect to the phrase "full and complete narrative account of the information requested."

14.     Impossible objects to Definition I as unnecessarily seeking sensitive personal information with respect to its request for persons' "present or last known address."

15.     Impossible objects to Definitions I through K as incorporating numerous discrete inquiries into a single term and thereby seeking to circumvent the Court's restrictions on the number of interrogatories. When encountering the term "Identify," Impossible will interpret it consistent with the standard definition of the term.

## SPECIFIC OBJECTIONS AND RESPONSES

### INTERROGATORY NO. 1:

Identify each IMPOSSIBLE-formative Mark used by Impossible Foods, including the goods and services, that Impossible LLC contends infringes, dilutes, or unfairly competes with any of Impossible LLC's IMPOSSIBLE-formative Mark(s), including for each the goods and services.

### RESPONSE TO INTERROGATORY NO. 1:

Impossible incorporates all general objections stated above. Impossible objects to this interrogatory to the extent it seeks information protected by attorney-client privilege, work-product immunity, or any other applicable privilege or immunity. Impossible objects to this interrogatory as prematurely seeking contentions and expert discovery at an early state in fact discovery, and Impossible expressly reserves its rights to amend and supplement its response as the case continues.

Subject to and without waiver of the foregoing general and specific objections, Impossible responds as follows: Impossible contends that Impossible Foods' use of IMPOSSIBLE as a

standalone mark for products or services in the fields of fitness, health, athletics, and philanthropy, or any mark incorporating the IMPOSSIBLE formative for nutrition and recipe information as well as apparel products, infringes and unfairly competes with Impossible's senior trademark rights. The infringing marks addressed above include both standard character marks and stylizations of IMPOSSIBLE, including the following stylizations:

**IMPOSSIBLE**™ and **IMPOSSIBLE**®

In the interests of clarity, Impossible has no objection to Impossible Foods including government-required disclosures on its food packaging and advertisements, such as Nutrition Facts labels.

**INTERROGATORY NO. 2:**

Identify each IMPOSSIBLE-formative Mark used by Impossible LLC that Impossible LLC is asserting against Impossible Foods in this action.

**RESPONSE TO INTERROGATORY NO. 2:**

Impossible incorporates all general objections stated above. Impossible objects to this interrogatory to the extent it seeks information protected by attorney-client privilege, work-product immunity, or any other applicable privilege or immunity. Impossible objects to this interrogatory as prematurely seeking contentions and expert discovery at an early state in fact discovery, and Impossible expressly reserves its rights to amend and supplement its response as the case continues.

Subject to and without waiver of the foregoing general and specific objections, Impossible responds as follows: Impossible is asserting all trademark rights identified in its Amended Complaint. This includes its common law trademark rights in its family of IMPOSSIBLE-formative marks, which include the marks IMPOSSIBLE, IMPOSSIBLE X, IMPOSSIBLE HQ, IMPOSSIBLE FITNESS, IMPOSSIBLE NUTRITION, DO SOMETHING IMPSSIBLE, IMPOSSIBLE SLEEP, IMPOSSIBLE ENERGY, and PUSH YOUR LIMITS, AND DO

SOMETHING IMPOSSIBLE. Impossible owns rights in these marks as standard character marks as well as stylizations and animations. Impossible is also asserting its statutory trademark rights as reflected in the following U.S. trademark registrations:

- Reg. No. 4260617, IMPOSSIBLE (stylized), for "Clothing, namely, shirts, t-shirts, tank tops" and "Providing a website featuring information in the field of personal fitness, endurance athletics, story telling, and adventure activities, namely, bungee jumping, skydiving, trekking, mountaineering, surfing, and kite surfing," filed with the U.S. Patent and Trademark Office ("USPTO") on March 23, 2012, and registered on the Principal Register on December 28, 2012;

- Reg. No. 4624158, IMPOSSIBLE FITNESS, for "Website featuring information relating to exercise and fitness," filed with the USPTO on March 3, 2014, and registered on the Principal Register on October 21, 2014;

- Reg. No. 5155646, IMPOSSIBLE X, for "search engine optimization and marketing services; marketing consulting in the field of social media," filed with the USPTO on July 26, 2016, and registered on the Principal Register on March 7, 2017;

- Reg. No. 5179974, IMPOSSIBLE HQ, for "providing a website featuring information relating to exercise and fitness," filed with the USPTO on July 26, 2016, and registered on the Principal Register on April 11, 2017;

- Reg. No. 5376208, IMPOSSIBLE (stylized), for "nutritional supplements" and "search engine optimization and marketing services; marketing consulting in the field of social media," filed with the USPTO on July 16, 2016, and registered on the Principal Register on January 9, 2018;

- Reg. No. 5387588, IMPOSSIBLE NUTRITION (stylized), for "nutritional supplements" and "providing a website featuring information relating to exercise and fitness," filed with the USPTO on July 26, 2016, and registered on the Principal Register on January 23, 2018;

- Reg. No. 5576376, DO SOMETHING IMPOSSIBLE, for "nutritional supplements," "Clothing and performance apparel, namely, t-shirts, sweatshirts, pants, shorts, tank tops, yoga pants, tights," "search engine optimization and marketing services; marketing consulting in the field of social media," and "charitable fundraising services," filed with the USPTO on July 26, 2016, and registered on the Principal Register on October 2, 2018;

- Reg. No. 5590801, IMPOSSIBLE FITNESS (stylized), for "Clothing and performance apparel, namely, t-shirts, sweatshirts, pants, shorts, tank tops, yoga pants, tights," filed with the USPTO on August 3, 2016, and registered on the Principal Register on October 23, 2018;

- Reg. No. 5603025, IMPOSSIBLE FITNESS, for "Clothing and performance apparel, namely, T-shirts, sweatshirts, pants, shorts, tank tops, yoga pants, tights," filed with the

USPTO on November 16, 2017, and registered on the Principal Register on November 6, 2018;

- Reg. No. 5620625, IMPOSSIBLE, for " Nutritional supplements," "Clothing and performance apparel, namely, t-shirts, sweatshirts, pants, shorts, tank tops, yoga pants, tights and underwear," "Search engine optimization for promotion and marketing services; marketing consulting in the field of social media," and "Providing a website featuring information in the field of personal fitness, endurance athletics, storytelling, and adventure activities, namely, bungee jumping, skydiving, trekking, mountaineering, surfing, and kite surfing," filed with the USPTO on January 15, 2018, and registered on the Principal Register on December 4, 2018; and

- Reg. No. 6571603, IMPOSSIBLE (animated), for "clothing and performance apparel, namely, t-shirts, sweatshirts, pants, shorts, tank tips, yoga pants, tights and underwear," and "Providing a website featuring information in the field of personal fitness, endurance athletics, storytelling and adventure recreational activities, filed with the USPTO on April 19, 2018, and registered on the Principal Register on November 30, 2021.

**INTERROGATORY NO. 3:**

Identify each current and former employee of Impossible LLC, including name, current or last known job title, current or last known address where the employee worked, and dates of employment at Impossible LLC.

**RESPONSE TO INTERROGATORY NO. 3:**

Impossible incorporates all general objections stated above. In view of the response stated below, Impossible has no present objection to providing full information. However, should Impossible engage future employees, Impossible objects to this interrogatory as overly broad and irrelevant to the extent it seeks private information regarding individuals who have no involvement in any relevant fields.

Subject to and without waiver of the foregoing general and specific objections, Impossible responds as follows: Impossible has no employees.

**INTERROGATORY NO. 4:**

Identify each Third Party hired or retained by Impossible LLC to provide goods or services Concerning an IMPOSSIBLE-formative Mark, including the Third-Party's name, nature of work,

and the dates work was provided to Impossible LLC.

**RESPONSE TO INTERROGATORY NO. 4:**

Impossible incorporates all general objections stated above. Impossible objects to this interrogatory as vague, overly broad, unduly burdensome, irrelevant, and disproportionate to the needs of the case, as its overbroad definition of "Concerning" (as addressed above) applied to "an IMPOSSIBLE-formative Mark" calls for identification of every Third Party that has ever worked with Impossible Foods, regardless of relevance to this dispute.

Subject to and without waiver of the foregoing general and specific objections, Impossible responds as follows: Impossible is unable to interpret this interrogatory in a reasonable manner without further understanding of what relevant information Impossible Foods seeks to ascertain.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4:**

Without waiving its objections, Impossible provides the following information to supplement its prior response:

Impossible has used NutraScience Labs, Bactolac Pharmaceutical, Inc., and Command Nutritionals to produce its supplement products.

Impossible has used Printful.com, Amplifier.com, DSG International, Alpha Iron Press, and Ten Thousand, Inc. to produce its apparel products.

**INTERROGATORY NO. 5:**

For each of Impossible LLC's IMPOSSIBLE-formative Marks, Identify the Person(s) with knowledge Concerning the conception, development, selection, and adoption of the mark, and the nature and scope of such Person's knowledge.

**RESPONSE TO INTERROGATORY NO. 5:**

Impossible incorporates all general objections stated above. Impossible objects to this interrogatory as vague, overly broad, unduly burdensome, irrelevant, cumulative, disproportionate

to the needs of the case, and potentially seeking disclosure of sensitive third-party information that Impossible is not at liberty to disclose, to the extent it seeks identification of every person with knowledge of Impossible's nearly 15-year-old trademarks.

Subject to and without waiver of the foregoing general and specific objections, Impossible responds as follows: Joel Runyon possesses all relevant, non-cumulative knowledge regarding the conception, development, selection, and adoption of all IMPOSSIBLE-formative marks asserted in this action.

**INTERROGATORY NO. 6:**

For each of Impossible LLC's IMPOSSIBLE-formative Marks, Identify each Third Party who has been licensed or authorized by Impossible LLC to use the mark.

**RESPONSE TO INTERROGATORY NO. 6:**

Impossible incorporates all general objections stated above. Impossible objects to this request as vague, overly broad, unduly burdensome, and disproportionate to the needs of the case with respect to the term "authorized" and the extent to which it would encompass limited authorizations to, e.g., display the IMPOSSIBLE marks when referring to Impossible.

Subject to and without waiver of the foregoing general and specific objections, Impossible responds as follows: No third parties possess licenses, either express or implied, to Impossible's trademark rights, nor does any third party possess express contractual authorizations to use those rights.

**INTERROGATORY NO. 7:**

For each federal trademark application or registration filed or owned by Impossible LLC for an IMPOSSIBLE-formative Mark, Identify the Person(s) most knowledgeable about the accuracy of the documents submitted and statements made to the United States Patent and Trademark Office in connection with such application or registration.

**RESPONSE TO INTERROGATORY NO. 7:**

Impossible incorporates all general objections stated above. Impossible objects to this interrogatory to the extent it seeks information protected by attorney-client privilege, work-product immunity, or any other applicable privilege or immunity.

Subject to and without waiver of the foregoing general and specific objections, Impossible responds as follows: Joel Runyon is the person within Impossible most knowledgeable as to the documents submitted and statements made to the United States Patent and Trademark Office with respect to Impossible's trademark applications and maintenance filings.

**INTERROGATORY NO. 8:**

For each of Impossible LLC's IMPOSSIBLE-formative Marks, identify each of the goods and services currently offered under that mark.

**RESPONSE TO INTERROGATORY NO. 8:**

Impossible incorporates all general objections stated above.

Subject to and without waiver of the foregoing general and specific objections, Impossible responds as follows: Impossible offers rotating and seasonal goods, not all of which are available at a given time but all of which have been available and may be available again. These include IMPOSSIBLE clothing, including t-shirts and tank tops; nutritional supplements, including krill oil, sleep aides, and energy supplements; nutrition and fitness calculators; applications that provide information and recipes for certain diets; books, including and fitness and training programming, including the IMPOSSIBLE TRI program, the IMPOSSIBLE ABS program, the NO EXCUSE WORKOUT program, the FPC PROTOCOL program, and various race-specific programs.

Impossible's services include provision of information via a website addressing a wide range of topics relating to fitness and athletics, including exercise, personal fitness, endurance athletics, adventure activities, nutrition, recipes, and dieting, as well as elements of travel,

philanthropy, and running a business; charitable fundraising; and search engine optimization and marketing services and social media consulting to third parties and especially start-up companies.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 8:**

Without waiving its objections, and based on the information currently known to Impossible, Impossible provides the following information to supplement its prior response: Impossible offers rotating and seasonal goods, not all of which are available at a given time but all of which have been available and may be available again. Impossible has offered shirts, tank tops, underwear and tights, pants/shorts, hats, krill oil supplements, sleep supplements, energy supplements, nutrition and fitness calculators, applications that provide information and recipes, and training programs.

Impossible has provided information via a website addressing exercise, personal fitness, endurance athletics, adventure activities, nutrition, recipes, and dieting, as well as elements of travel, philanthropy, and running a business; charitable fundraising; and search engine optimization and marketing services and social media consulting to third parties and especially start-up companies.

**INTERROGATORY NO. 9:**

For each good or service identified in response to Interrogatory No. 8, identify the dates on which Impossible LLC first (a) offered for sale in the U.S. and (b) actually sold the good or service in the U.S. to a Third Party.

**RESPONSE TO INTERROGATORY NO. 9:**

Impossible incorporates all general objections stated above. Impossible objects to this interrogatory as unduly burdensome and disproportionate to the needs of the case to the extent it seeks specific dates of offering and actual sale for all goods and services; Impossible notes that specificity regarding some of the information sought is not available, based on the significant

length of time that Impossible has been offering goods and services under its IMPOSSIBLE family of marks.

Subject to and without waiver of the foregoing general and specific objections, Impossible responds as follows: Impossible has provided an informational website since at least April 2010. Impossible has offered its SEO, marketing, and social media consulting services since at least February 2012. Impossible has offered charitable fundraising services since at least March 2012. Impossible has offered its apparel products since at least September 2011 and believes that its first sale occurred in October 2011. Impossible has offered its training programs since at least February 2012 and believes its first sale occurred that same month. Impossible has offered its applications since at least July 2014 and believes its first third-party download occurred that same month. Impossible has offered its nutritional supplement products since at least August 2017 and believes its first sale occurred in December 2017.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 9:**

Without waiving its objections, and based on the information currently known to Impossible, Impossible provides the following information to supplement its prior response: Impossible has provided an informational website since April 2010. Impossible has offered its SEO, marketing, and social media consulting services since February 2012. Impossible has offered charitable fundraising services since March 2012. Impossible has offered its apparel products since September 2011 and believes that its first sale occurred in October 2011. Impossible has offered its training programs since February 2012 and believes its first sale occurred that same month. Impossible has offered its applications since July 2014 and believes its first third-party download occurred that same month. Impossible has offered its nutritional supplement products since August 2017 and believes its first sale occurred in December 2017

**INTERROGATORY NO. 10:**

For each of Impossible LLC's Goods and Services, Describe In Detail any time in which Impossible LLC ceased using any IMPOSSIBLE-formative Marks in commerce, regardless of whether that cessation in use was temporary or Impossible LLC resumed use, including the date, time period, and explanation of the cessation in use.

**RESPONSE TO INTERROGATORY NO. 10:**

Impossible incorporates all general objections stated above. Impossible objects to this interrogatory to the extent it seeks information protected by attorney-client privilege, work-product immunity, or any other applicable privilege or immunity. Impossible objects to this interrogatory as vague and ambiguous with respect to the term "ceased," especially in view of Impossible's seasonal and rotating product offerings.

Subject to and without waiver of the foregoing general and specific objections, Impossible responds as follows: Impossible has never ceased offering any of its goods or services with an intent not to resume use in the future.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 10:**

Without waiving its objections, Impossible provides the following information to supplement its prior response: Impossible withdrew its krill oil supplement product from Amazon.com sales on September 16, 2022, and has not sold any krill oil supplements since that date.

**INTERROGATORY NO. 11:**

Identify each Person with knowledge Concerning the nature and extent of Impossible LLC's marketing, advertising, or promotion of each of Impossible LLC's IMPOSSIBLE-formative Marks, and the nature and scope of each such Person's knowledge.

**RESPONSE TO INTERROGATORY NO. 11:**

Impossible incorporates all general objections stated above. Impossible objects to this

interrogatory as vague, overly broad, unduly burdensome, irrelevant, cumulative, disproportionate to the needs of the case, and potentially seeking disclosure of sensitive third-party information that Impossible is not at liberty to disclose, to the extent it seeks identification of every person with knowledge of Impossible's use of its nearly 15-year-old trademarks.

Subject to and without waiver of the foregoing general and specific objections, Impossible responds as follows: Joel Runyon possesses all relevant, non-cumulative knowledge regarding the nature and extent of Impossible's marketing, advertising, or promotion of IMPOSSIBLE-formative marks asserted in this action.

**INTERROGATORY NO. 12:**

Describe in Detail each Third Party use of an IMPOSSIBLE-formative Mark of which Impossible LLC is aware.

**RESPONSE TO INTERROGATORY NO. 12:**

Impossible incorporates all general objections stated above. Impossible objects to this interrogatory to the extent it seeks information protected by attorney-client privilege, work-product immunity, or any other applicable privilege or immunity. Impossible objects to this interrogatory as overly broad, unduly burdensome, irrelevant, and disproportionate to the needs of the case, to the extent the interrogatory encompasses uses that are unrelated to either Impossible or Impossible Foods' uses of the IMPOSSIBLE formative. Impossible objects to this interrogatory to the extent it calls for publicly available information and/or information equally available to Impossible Foods.

Subject to and without waiver of the foregoing general and specific objections, Impossible responds as follows: Impossible was aware of the attempted registration of IMP SSIBLE by Kenny Roeland, to which Impossible objected and prevailed before the Trademark Trial and Appeal Board. Impossible is aware of the use and registration of IMPOSSIBLE by Not Impossible Ltd.

Impossible was aware of a now-defunct use of IMPOSSIBLE PROJECT. Impossible was aware of a use of IMPOSSIBLE PICTURES at the domain impossible.tv; that domain is now owned by Impossible. Impossible was aware of a company in Florida doing business as Impossible Fitness; following contact from Impossible regarding trademark issues, the company rebranded as Made Possible.

**INTERROGATORY NO. 13:**

Describe in Detail each instance of which Impossible LLC has actual or hearsay knowledge, directly or indirectly, of any confusion between Plaintiff and Defendant, or any of the goods or services sold by Plaintiff or Defendant. For illustrative purposes only, and without limiting the foregoing, such instances would include misdirected inquiries, sales, cancellations, or returns, misassumptions as to the source or origin, and comments, complaints, or expressions by any person indicating an assumption or belief as to the association or connection between Plaintiff or any of its goods or services and Defendant or any of its goods or services. Impossible LLC's answer must include, for example, identification of every "communication[]" referenced in Paragraphs 54-56 of Impossible LLC's March 8, 2024 pleading (Dkt. 80).

**RESPONSE TO INTERROGATORY NO. 13:**

Impossible incorporates all general objections stated above. Impossible objects to this interrogatory to the extent it seeks information protected by attorney-client privilege, work-product immunity, or any other applicable privilege or immunity. Impossible objects to the interrogatory as vague and ambiguous with respect to the term "hearsay knowledge."

Subject to and without waiver of the foregoing general and specific objections, Impossible responds as follows: Pursuant to Fed. R. Civ. P. 33(d), Impossible is producing documentation demonstrating representative communications received by Impossible and its principal reflecting confusion. In addition to these written communications, Impossible's principal has received

numerous in-person inquiries about a relationship with/affiliation to Impossible Foods and its products—especially when people see Impossible's branded shirt and stickers. Impossible is also frequently tagged in social media, including on TikTok, Instagram, and Facebook, for posts intended to reference Impossible Foods, including posts for vegan food.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 13:**

Without waiving its objections, Impossible provides the following information to supplement its prior response:

Please see IMP00000166-94.

On October 6, 2024, while attending the Austin City Limits music festival, Impossible member Joel Runyon was stopped by an employee of LiveNation who saw his IMPOSSIBLE t-shirt and believed Mr. Runyon was with Impossible Foods.

On October 10, 2024, an acquaintance, who identifies as a vegetarian, saw Mr. Runyon wearing his IMPOSSIBLE t-shirt and inquired whether he worked for Impossible Foods.

**INTERROGATORY NO. 13:**

For each good and service offered by Impossible LLC using an IMPOSSIBLE-formative Mark, identify each outlet—Including, e.g., Third Party vendors, websites, social media pages, brick-and-mortar stores, magazines, billboards, newspapers, podcasts—through which those goods and services have been marketed, promoted, advertised, offered for sale, or sold.

**RESPONSE TO INTERROGATORY NO. 13:**

Impossible incorporates all general objections stated above. Impossible objects to this interrogatory as overly broad, unduly burdensome, and disproportionate to the needs of the case to the extent it seeks all outlets through which the goods and services have been marketed, promoted, advertised, offered for sale, or sold without limitation to time, and in view of Impossible's broad promotional practices that render such an inquiry extraordinarily burdensome.

Subject to and without waiver of the foregoing general and specific objections, Impossible responds as follows: The main outlets through which Impossible's goods and services are promoted and sold are Impossible's own websites, social media (including Facebook, Instagram, Twitter, and TikTok), and Amazon.com. Impossible's brand also receives significant promotional coverage through articles, interviews, podcast episodes, social media posts, and other direct-to-consumer outlets, and thousands of backlinks from such coverage to Impossible's websites.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 13:**

Without waiving its objections, Impossible provides the following information to supplement its prior response:

Impossible's websites and social media, referenced in its original response, include the following:

impossible.vc
impossiblehq.com
impossible.co
impossible.org
impossiblefitness.com
wellfound.com/company/impossible
x.com/impossiblex
x.com/impossiblehq
x.com/drinkimpossible
x.com/impossibleorg
instagram.com/impossiblehq
instagram.com/drinkimpossible
instagram.com/tryimpossiblesleep
instagram.com/impossiblenutrition
facebook.com/ImpossibleHQ
fb.com/impossiblefitness
fb.com/impossiblenutrition
fb.com/impossiblelabs
fb.com/impossiblesleep
fb.com/impossibleenergy
fb.com/impossible_energy
fb.com/drinkimpossible
youtube.com/user/impossiblehq
flickr.com/impossible
twitch.tv/@impossible
tiktok.com/@impossible

tiktok.com/@impossiblehq
linkedin.com/company/impossible/
rumble.com/c/ImpossibleTV
kick.com/impossible
about.me/impossible

Impossible's member Joel Runyon was a regular columnist on Virgin.com, and regularly referenced and discussed Impossible and its products and services. While the guest columnist materials are no longer published on Virgin.com, examples of the content are available through website archives, and will be produced.

Written pieces discussing Impossible, its products, its services, and/or Mr. Runyon's work with Impossible, have been published on Vice, Runner's World, Competitor.com, Bethel College website, Huffington Post, GQ, Boing Boing, Get Rich Slowly, Medium, Active.com, Hacker News, Oprah, Discover Magazine, Time.com, and The Guardian. Wikipedia.org has previously included articles about Mr. Runyon, Impossible, and it various products and services.

A list of some of the third-party backlinks to Impossible and its websites has been produced at IMPO00000195.

**INTERROGATORY NO. 14:**

For each IMPOSSIBLE-formative Mark owned by Impossible LLC, Identify each Person with knowledge Concerning the sophistication, demographic, or psychographic characteristics of, or degree of care exercised by, the target or actual consumers of such goods or services.

**RESPONSE TO INTERROGATORY NO. 14:**

Impossible incorporates all general objections stated above. Impossible objects to this interrogatory as vague, overly broad, unduly burdensome, irrelevant, cumulative, disproportionate to the needs of the case, and potentially seeking disclosure of sensitive third-party information that Impossible is not at liberty to disclose, to the extent it seeks identification of every person with knowledge of Impossible's use of its nearly 15-year-old trademarks.

Subject to and without waiver of the foregoing general and specific objections, Impossible responds as follows: Joel Runyon possesses all relevant, non-cumulative knowledge regarding Impossible's consumers.

**INTERROGATORY NO. 15:**

Describe in Detail any goods or services that Impossible LLC has not offered and/or does not currently offer under an IMPOSSIBLE-formative Mark but currently has concrete plans to start offering in the future.

**RESPONSE TO INTERROGATORY NO. 15:**

Impossible incorporates all general objections stated above. Impossible objects to this interrogatory to the extent it seeks information protected by attorney-client privilege, work-product immunity, or any other applicable privilege or immunity. Impossible objects to this interrogatory as vague and ambiguous with respect to the term "concrete plans."

Subject to and without waiver of the foregoing general and specific objections, Impossible responds as follows: [█████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████ ]

**INTERROGATORY NO. 16:**

Describe in Detail Impossible LLC's business relationship with the "affiliated company" referenced in Paragraph 20 of Impossible LLC's March 8, 2024 pleading (Dkt. 80), including any trademark-related agreements.

**RESPONSE TO INTERROGATORY NO. 16:**

Impossible incorporates all general objections stated above. Impossible objects to this

interrogatory to the extent it seeks information protected by attorney-client privilege, work-product immunity, or any other applicable privilege or immunity. Impossible objects to this interrogatory as vague and ambiguous with respect to the term "business relationship" and "trademark-related agreements."

Subject to and without waiver of the foregoing general and specific objections, Impossible responds as follows: The website at ultimatepaleoguide.com is currently owned by a company that shares Impossible's sole member, Joel Runyon. The website was incubated and operated under the IMPOSSIBLE mark from its inception until January 30, 2016. At that time, ownership and operation of the website was moved to PaleoMealPlans.com LLC. While the assets related to the website were moved under PaleoMealPlans.com LLC, Impossible LLC continues to own, operate, and promote the downloadable applications Paleo(io) and Paleo Recipe Pro.

**INTERROGATORY NO. 17:**

Describe in Detail Impossible LLC's use of IMPOSSIBLE-formative Marks in connection with the types of goods and services referenced in Paragraph 24 of Impossible LLC's March 8, 2024 pleading (Dkt. 80) over the last five years.

**RESPONSE TO INTERROGATORY NO. 17:**

Impossible incorporates all general objections stated above. Impossible objects to this interrogatory to the extent it seeks information protected by attorney-client privilege, work-product immunity, or any other applicable privilege or immunity. Impossible objects to this interrogatory as vague with respect to the phrase "the types of goods and services."

Subject to and without waiver of the foregoing general and specific objections, Impossible responds as follows: Impossible and its predecessors-in-interest created and offered numerous fitness programs under the IMPOSSIBLE mark, which included specific sections and guidance on diet. Those programs include the No Excuse Workout (https://impossiblehq.com/no-excuse-

workout-intro/, first available December 2012); Impossible Tri (https://impossiblehq.com/impossible-tri-triathlon-is-here/, first available February 2012); Impossible Abs (https://impossiblehq.com/impossible-abs-here/, first available September 2012); Impossible Abs 2.0 (https://impossiblehq.com/impossible-abs-2-0-is-here/, first available November 2012); The FPC Protocol; Impossible Strength (https://impossiblehq.com/3-new-running-resources/, first available March 2021); and Impossible 5K, 10K, Half, Marathon, and Ultra (all first available April 2021). Numerous programs include food, nutrition, and recipe sections, including Impossible Abs, which in the 2.0 version was updated to include vegan and vegetarian options for a period of time.

**INTERROGATORY NO. 18:**

Provide a computation of each category of damages claimed by Impossible LLC in this action.

**RESPONSE TO INTERROGATORY NO. 18:**

Impossible incorporates all general objections stated above. Impossible objects to this interrogatory to the extent it seeks information protected by attorney-client privilege, work-product immunity, or any other applicable privilege or immunity. Impossible objects to this interrogatory as prematurely seeking contentions and expert discovery, when fact discovery remains in its early stages. Impossible further objects to this interrogatory as seeking and depending upon information in Impossible Foods' sole possession, custody, and control.

Subject to and without waiver of the foregoing general and specific objections, Impossible responds as follows: As Impossible Foods has yet to produce any information in this action, Impossible is presently unable to answer this interrogatory. Impossible will supplement and/or amend this response as appropriate as the case progresses.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 18:**

Without waiving its objections, Impossible provides the following information to supplement its prior response: Subject to discovery, Impossible may seek damages for infringement and unfair competition to include disgorgement of Impossible Foods' profits, and compensatory damages for the business harms suffered by Impossible. With respect to compensatory damages, Impossible may seek damages in the form of corrective advertising, in an amount representing 25% of Impossible Foods' total advertising budget for the relevant infringement period pursuant to *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co*., 561 F.2d 1365, 1374-75 (10th Cir. 1977). *See Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 989 and n.2 (9th Cir. 1995), *as amended on denial of reh'g* (Feb. 15, 1996) (endorsing *Big O Tire Dealers*'s award of prospective compensatory damages for corrective advertising and acknowledging the FTC's rule of awarding 25% of the infringer's advertising budget, and further noting that "the burden of any uncertainty in the amount of damages should be borne by the wrongdoer"). Impossible may seek statutory damages for Impossible Foods' counterfeiting of Impossible's apparel products. Impossible will seek enhanced damages and attorneys' fees for Impossible Foods' willful infringement based on its use of the IMPOSSIBLE mark despite knowledge of Impossible's senior use of an identical mark, in an amount that the Court deems appropriate.

**INTERROGATORY NO. 19:**

Describe in Detail the nature of any irreparable harm alleged by Impossible LLC.

**RESPONSE TO INTERROGATORY NO. 19:**

Impossible incorporates all general objections stated above. Impossible objects to this interrogatory to the extent it seeks information protected by attorney-client privilege, work-product immunity, or any other applicable privilege or immunity. Impossible objects to this interrogatory as prematurely seeking contentions and expert discovery, when fact discovery remains in its early stages.

Subject to and without waiver of the foregoing general and specific objections, Impossible responds as follows: The value of the longstanding IMPOSSIBLE brand is being irreparably damaged by its association with Impossible Foods, and/or consumers' belief that the senior user Impossible is somehow taking advantage of junior user Impossible Foods' brand. Impossible will supplement and/or amend this response as appropriate as the case progresses.

**INTERROGATORY NO. 20:**

Describe in Detail each act or omission by Impossible Foods that Impossible LLC contends in this action demonstrates bad faith, willfulness, recklessness, or negligence.

**RESPONSE TO INTERROGATORY NO. 20:**

Impossible incorporates all general objections stated above. Impossible objects to this interrogatory to the extent it seeks information protected by attorney-client privilege, work-product immunity, or any other applicable privilege or immunity. Impossible objects to this interrogatory as prematurely seeking contentions when fact discovery remains in its early stages.

Subject to and without waiver of the foregoing general and specific objections, Impossible responds as follows: Impossible Foods has adopted and extensively used not only Impossible's protected IMPOSSIBLE brand, but also a particular stylization of IMPOSSIBLE that is nearly identical to Impossible's own protected and registered stylization. Impossible Foods has taken these actions despite at least constructive notice of Impossible's trademarks by virtue of Impossible's ownership of a large portfolio of IMPOSSIBLE registrations, and actual notice at least as early as November 2020 when Impossible informed Impossible Foods of the potential conflict. These actions and others to be developed through discovery demonstrate willful, reckless, and/or negligent infringement. Impossible will supplement and/or amend this response as appropriate as the case progresses.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 20:**

Without waiving its objections, Impossible provides the following information to supplement its prior response: Through discovery, it has been revealed that Impossible Foods became aware of Impossible, its impossiblehq.com and impossiblenutition.com websites, and its Reg. No. 4260617 in October 2013. At that time, Impossible was actively using the IMPOSSIBLE marks for many goods and services, including its apparel products, its fitness programs that included nutrition guides and recipes, and its blogging on all things fitness. Despite having actual knowledge of Impossible's registration and uses in commerce, Impossible Foods chose to adopt the IMPOSSIBLE mark, in a substantially indistinguishable stylization, for related and/or overlapping products and services, indicating an intent to infringe and/or willful blindness thereto.

**INTERROGATORY NO. 21:**

For each distinct Impossible Foods good and service referenced in Paragraphs 5, 44-46, and 48-50 of Impossible LLC's March 8, 2024 pleading (Dkt. 80), Describe in Detail—including relevant dates—the circumstances surrounding Impossible LLC's first awareness of Impossible Foods's offering of such distinct good or service.

**RESPONSE TO INTERROGATORY NO. 21:**

Impossible incorporates all general objections stated above. Impossible objects to this interrogatory to the extent it seeks information protected by attorney-client privilege, work-product immunity, or any other applicable privilege or immunity.

Subject to and without waiver of the foregoing general and specific objections, Impossible responds as follows: Impossible does not maintain such information in the ordinary course of business and is unsure of precise dates. Impossible believes that it first learned of Impossible Foods' book publishing and recipes services in or around May 2020. Impossible believes that it first learned of Impossible Foods' offerings of apparel in or around July 2020.

**INTERROGATORY NO. 22:**

Describe in Detail the business reasons Impossible LLC never applied to register an IMPOSSIBLE-formative Mark in connection with recipes, cooking information, or philanthropic services.

**RESPONSE TO INTERROGATORY NO. 22:**

Impossible incorporates all general objections stated above. Impossible objects to this interrogatory to the extent it seeks information protected by attorney-client privilege, work-product immunity, or any other applicable privilege or immunity. Impossible objects to this interrogatory as vague and ambiguous with respect to the term "business reasons."

Subject to and without waiver of the foregoing general and specific objections, Impossible responds as follows: The premise of this interrogatory is false. Impossible owns registrations for philanthropic services, *see* Reg. No. 5576376, and as well as services for the provision of fitness information which encompasses recipes and cooking information, *see* Reg. Nos. 4260617, 4624158, 5179974, 5387588, 5620625, and 6571603.

Respectfully submitted,

Date:  November 8, 2024          By:  */s/ David E. Weslow*_____

Mike L. Rodenbaugh (SBN 179059)
RODENBAUGH LAW
548 Market Street, Box 55819
San Francisco, CA 94104
Phone: (415) 738-8087
Email:  mike@rodenbaugh.com
docket@rodenbaugh.com

David E. Weslow
Adrienne J. Kosak
WILEY REIN LLP
2050 Street, N.W.
Washington, D.C.  20036
202.719.7000 (telephone)
dweslow@wiley.law (email)
akosak@wiley.law (email)

*Attorneys for Defendant*
*Impossible LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 8, 2024, the foregoing was served electronically on all counsel of record.

/s/ David E. Weslow
David E. Weslow