KOLLIN J. ZIMMERMANN (SBN 273092)
KILPATRICK TOWNSEND & STOCKTON LLP
1801 Century Park East
Suite 2300
Los Angeles, California 90067
Telephone: (310) 248-3830
Facsimile: (310) 860-0363
kzimmermann@ktslaw.com

R. CHARLES HENN JR. (*pro hac vice*)
H. FORREST FLEMMING, III (*pro hac vice*)
ERICA CHANIN (*pro hac vice*)
1100 Peachtree Street NE
Suite 2800
Atlanta, Georgia 30309
Telephone: (404) 815-6572
Facsimile: (404) 541-3240
chenn@ktslaw.com
fflemming@ktslaw.com
echanin@ktslaw.com

Attorneys for Plaintiff/Counter-Defendant
IMPOSSIBLE FOODS INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| IMPOSSIBLE FOODS INC., a Delaware corporation, <br><br> Plaintiff/Counter-Defendant <br><br> v. <br><br> IMPOSSIBLE LLC, a Texas limited liability company, and JOEL RUNYON, <br><br> Defendants/Counter-Plaintiffs. | Case No. 5:21-cv-02419-BLF (SVK) <br><br> **JOINT STATEMENT REGARDING DEFENDANT IMPOSSIBLE LLC'S NOTICES OF DEPOSITION OF APEX WITNESSES AND 30(b)(6) TOPICS** <br><br> Judge: Hon. Beth Labson Freeman |

**JOINT STATEMENT REGARDING
DEFENDANT IMPOSSIBLE LLC'S NOTICES OF
DEPOSITION OF APEX WITNESSES AND 30(b)(6) TOPICS**

Pursuant to Section 8 of Magistrate Judge Susan van Keulen's Civil and Discovery

Referral Matters Standing Order, Plaintiff Impossible Foods Inc. ("Impossible Foods")

respectfully requests an order quashing the deposition notice served by Defendant Impossible LLC on an apex witness as well as an order striking and/or narrowing topics from Impossible LLC's notice of 30(b)(6) deposition of Impossible Foods. There are 14 days left before discovery closes; depositions begin tomorrow.

Attached as **Exhibit A** is a joint chart as required by Section 8 of the Standing Order.

### Impossible Foods's Position Regarding the Disputed Deposition Notices

**A.    Background Regarding the Apex Depositions**

Just days after Impossible Foods asked Defendants to resume settlement discussions (which had stalled following mediation last year), on March 24, Defendants served three deposition notices (the "Apex Notices") for: Patrick Brown, the founder, longtime CEO, and current board member of Impossible Foods; Peter McGuinness, the CEO and President of Impossible Foods; and Meredith Madden, the Chief Demand Officer of Impossible Foods. The next day, Impossible Foods advised Impossible LLC that it "intend[s] to move to quash these deposition notices under the apex witness doctrine." Impossible Foods asked Impossible LLC to identify (1) the witnesses' "unique first-hand, non-repetitive knowledge of the facts at issue in the case," and (2) how Impossible LLC "has exhausted other less intrusive discovery methods" to discover those facts.

The parties exchanged several emails and had a videoconference on March 27, but Defendants refused to answer Impossible Foods's questions, instead insisting on "briefing" the issue only. Impossible Foods was therefore forced to initiate the Court's protocol requiring joint statements on discovery disputes on March 27.[1]

The day before Defendants' portion was due, and without explanation, Defendants

---

[1] Impossible Foods served its portion on the 30(b)(6) issue in the next section on March 27 but, because Defendants never provided arguments on the "apex" issue during conferral, Impossible Foods insisted that Defendants provide their portion on that issue first. Below, Defendants object to not having a chance to respond to Impossible Foods's arguments on that issue, but that is a problem of Defendants' making—had they provided their arguments during conferral (and not for the first time at 4:30 pm today), Impossible Foods would have been happy to "go first" and serve its portion on last week. To be clear, the parties have agreed throughout this case that neither side is entitled to a "reply" in discovery disputes, and given Defendants' conferral conduct and the fact that 30(b)(6) depositions begin tomorrow, Impossible Foods could not delay this matter further by permitting Defendants additional time for a "reply."

JOINT STATEMENT REGARDING DEFENDANT IMPOSSIBLE LLC'S NOTICES OF DEPOSITION
OF APEX WITNESSES AND 30(B)(6) TOPICS                                                                                         2
CASE NO. 5:21-CV-02419-BLF (SVK)

withdrew the notices as to Ms. Madden and Mr. McGuinness. Impossible Foods was not surprised that Defendants chose not to defend those notices to the Court, as Ms. Madden only joined the company a month ago, and Mr. McGuinness joined the company two years into the parties' dispute. Impossible Foods will be writing separately to the Court on Thursday of this week (via a joint statement, Impossible Foods's portions of which were served on Defendants today) regarding Defendants' attempts to harass Impossible Foods's executives, investors, and celebrity collaborators in a transparent effort to gain settlement leverage.

Here, however, Impossible Foods addresses only the notice as to Mr. Brown.

**B.     The Apex Notice Should Be Quashed**

As former Magistrate Judge James observed in a trademark case: "Virtually every court that has addressed deposition notices directed at an official at the highest level or 'apex' of corporate management has observed that such discovery creates a tremendous potential for abuse or harassment." *Groupion, LLC v. Groupon, Inc.*, No. 11–0870 MEJ, 2012 WL 359699, at *2 (N.D. Cal. Feb. 2, 2012) (citation omitted). "For that reason, parties seeking to depose a high ranking corporate officer must first establish that the executive (1) has unique, non-repetitive, firsthand knowledge of the facts at issue in the case, and (2) that other less intrusive means of discovery, such as interrogatories and depositions of other employees, have been exhausted without success." *Id.*

As the founder of the company, its longtime CEO, and current board member, Mr. Brown is the consummate "apex" employee. Defendants contend that they need testimony regarding the initial adoption of the IMPOSSIBLE mark in 2013. Essentially, Defendants would like to probe whether, when, and to what extent Impossible Foods adopted the IMPOSSIBLE mark with knowledge of Defendants or their marks. Defendants also contend that they seek testimony regarding the adoption of a certain stylization of that mark, but the stylization was selected at the end of 2015 and released to the public in June 2016, the same month the company released its very first product for sale.

But Defendants cannot establish that Mr. Brown has *unique* knowledge of the foregoing—nor that Defendants have exhausted less intrusive discovery methods to ascertain it. As Impossible Foods's discovery responses provide, the company first became aware of Defendants and at least one of their IMPOSSIBLE marks in October 2013, when a commercial trademark search report disclosed them. Impossible Foods long ago produced that search report. Impossible Foods similarly produced numerous documents concerning the stylization at issue, including branding analyses and plans.

Further, the 2013 search report was provided to Myra Pasek, Impossible Foods's General Counsel from 2013 to 2018, who handled trademark matters. Defendants are scheduled to depose Ms. Pasek in a few days. Defendants are also scheduled to depose Jordan Schenck, the company's Marketing Strategy Consultant and later Head of Global Consumer Marketing from 2015 to 2018. Finally, Defendants are scheduled to depose Nick Halla, who was essentially Impossible Foods's second employee and handled the commercial aspects of the business while Mr. Brown—a scientist—focused on developing the company's flagship meat substitute product. Mr. Halla worked for Impossible Foods from 2011 to 2022 and—along with Ms. Pasek—can provide all the testimony Defendants could need regarding the company's knowledge of Defendants and its adoption of the IMPOSSIBLE mark.

Ultimately, Defendants cannot establish that Mr. Brown may have *unique* knowledge of relevant facts. They also cannot establish that the discovery they seek was not satisfactorily provided through interrogatory responses, or could be provided by other witnesses. Thus, Defendants cannot satisfy either element of the apex witness test, and the deposition notice as to Mr. Brown should be quashed.

### Impossible Foods's Position Regarding the Disputed 30(b)(6) Topics

**A. Background Regarding the Disputed 30(b)(6) Topics**

Impossible LLC did not serve its 30(b)(6) notice (the "Notice") of Impossible Foods until Friday March 14, 2025—31 days before the close of fact discovery. *See* **Exhibit B**. The Notice

contains 71 topics, many of which are overbroad and would impose a significant burden on Impossible Foods and its designees.

Rule 30(b)(6) was amended in 2020 to provide: "Before or promptly after the notice or subpoena is served, the serving party and the organization must confer in good faith about the matters for examination." Impossible LLC did not seek to confer with Impossible Foods before or after serving the Notice. Accordingly, six days after receiving the Notice, Impossible Foods sent Impossible LLC a 9-page letter discussing the many problems with the Notice and requested a prompt conferral.

Impossible LLC agreed to confer on March 24, but during that videoconference, it was clear that counsel had not reviewed Impossible Foods's letter. Nonetheless, Impossible Foods agreed to go through the issues in the letter one by one, to provide counsel with time to consider and discuss them. Unfortunately, Impossible LLC did not agree to limit many of the topics discussed. Impossible LLC then terminated the videoconference without warning, and before numerous topics had even been discussed.

Because Impossible Foods's first 30(b)(6) designees are scheduled to testify on April 1, Impossible Foods served its portion of this Joint Statement on Impossible LLC on March 27, requesting Impossible LLC's portions by March 31 so that this filing could be submitted that day.

**B. Impossible Foods's Compromises on the 30(b)(6) Topics Are Reasonable**

**Topics 1, 3-9 (Discovery-on-Discovery Topics)**: "As a general matter, discovery of another party's evidence preservation and collection efforts—or 'discovery on discovery'—is disfavored, as such discovery is typically not relevant to the merits of a claim or defense, and is rarely proportional to the needs of a case." *Taylor v. Google LLC*, No. 20-cv-07956-VKD, 2024 WL 4947270, at *2 (N.D. Cal. Dec. 3, 2024). Still, Impossible Foods agrees "that parties exchange this information as part of the general discovery meet-and-confer process without the need for formal 'discovery -on-discovery' requests." *Russell v. Kronos Inc.*, No. 18-cv-04525-EMC (LB), 2019 WL 5485891, at *1 (N.D. Cal. Oct. 25, 2019). For weeks now, Impossible Foods has fully and transparently answered

*every single question* that Impossible LLC has asked regarding document collection, custodian interviews, search terms, document repositories, deletion, and the like. Thus, Topics 1, 3-5, 8-9 are disproportionate to the needs of the case.

As to the spoliation-related Topics 6-7, Impossible Foods already confirmed the witnesses' emails and documents were deleted when they left the company *two years before* Defendants sent their first cease-and-desist letter, so spoliation is not at issue. <u>Compromise</u>: Impossible Foods will continue answering Impossible LLC's questions as they arise.

**Impossible LLC's Position**

**Rule 30(b)(6) Deposition**

Impossible Foods, Inc. began as "Jasper Ridge Creamery, Inc.," which rebranded to "Lyrical Foods, Inc.," which then rebranded to "Maraxi, Inc." In 2013, Maraxi was looking to rebrand yet again, and engaged the branding firm Lexicon, Inc. to help it in choosing a new name and identity. Beginning in April 2013, Maraxi worked with Lexicon to search for and iterate on a new name and brand identity and to "[d]evelop solutions that are trademarkable by deploying a trademark evaluation process" managed by Lexicon's "in-house trademark clearance team."

In October 2013, Maraxi commissioned a trademark report to evaluate the availability of the name "Impossible," which was one of the concepts suggested by Lexicon. That trademark search revealed Mr. Runyon's registered IMPOSSIBLE® trademark, as well as multiple websites incorporating the IMPOSSIBLE® name that were operated by Mr. Runyon and Impossible LLC's predecessor entity, Impossible X LLC. At a minimum then, the October 2013 trademark report establishes that the latest possible date on which the entity then known as Maraxi had actual knowledge of Mr. Runyon, his IMPOSSIBLE®-branded company, and his IMPOSSIBLE® trademarks and associated common law rights.

By 2016, however, Maraxi had publicly rebranded to Impossible Foods, and adopted a branding style and font that was highly similar to Impossible LLC's pre-existing brand and usage. The strategy and decisions that led to Impossible Foods selecting a brand name it knew was

identical to a pre-existing brand, and which was protected by a federal trademark registration, are of critical importance to the claims and defenses in the case. Indeed, that information is essential to Impossible LLC's assertion that Impossible Foods's trademark infringement has been knowing and willful. Despite the importance of this information, Impossible Foods has produced essentially nothing from this critical time. Only ***one*** document was produced from 2013 and only a few dozen others from the entire period of 2013 through 2015. Worse still, there are no emails beyond the transmittal of the report, so Impossible LLC has no insight into the discussions, planning, and strategy decisions that directly bear on issues of how Impossible Foods categorized its own products offered under its newly-selected "Impossible" name, and whether (and how) it planned to avoid infringing Impossible LLC's pre-existing rights to the IMPOSSIBLE® mark.

Impossible Foods's scant document production from this period (and more generally) raised red flags, which Impossible LLC sought to preview this issue and obtain assistance from the Court soon after appearing in the case. *See* Doc. No. 144. On February 14, 2025,[2] Impossible LLC also served a Rule 30(b)(6) deposition notice for Impossible Foods's custodian of records, so that it could obtain a sworn, written record of Impossible Foods's document retention, collection, and production efforts in this case. *See* **Exhibit C.** Impossible Foods opposed Impossible LLC's request for a conference, in part by representing that its counsel is "more than willing to provide Defendants with information regarding the scope and status of Plaintiff's document collection." Dkt. No. 146, at 2. Given the Court's directive to meet and confer before raising any discovery disputes, Impossible LLC sought to work with counsel to obtain this information, while reserving its right to seek a custodian of records deposition. While counsel's disclosures in the following weeks were self-contradictory and incomplete, five critical facts have emerged:

***First***, Impossible Foods's counsel has claimed that many of the critical documents from 2013-2015 have been irretrievably deleted. Counsel has asserted vaguely that this occurred after

---

[2] Impossible Foods is incorrect in its assertion that these deposition Topics were not served until March 14—they were, in fact, propounded one month before that.

the document custodians left their employment, but Impossible Foods has produced no document retention policy providing for such destruction. Nor has Impossible Foods provided the date on which the documents were deleted or produced any record regarding the timing of the deletion, explained the circumstances under which exceptions could or would be made to any deletion policy, or identified who within Impossible Foods is responsible for directing the permanent deletion of files maintained by former employees.

*Second*, Impossible Foods's counsel asserted that the deleted custodial files from this critical time frame were unique and that the company had no custodial files of any other employee that could substitute for the documents that had been deleted. Specifically, Impossible Foods's interrogatory responses identified Myra Pasek as the person with the most knowledge of the company's selection and adoption of IMPOSSIBLE-formative branding, the person with the most knowledge concerning the commercial trademark search reports that Impossible Foods received prior to its adoption of IMPOSSIBLE branding, and the person with the most knowledge concerning Impossible Foods's first knowledge of Impossible LLC's marks. Impossible Foods also identified Jordan Schenck as a relevant witness concerning the selection and adoption of the prior stylization of IMPOSSIBLE. Yet, according to Impossible Foods's counsel, the custodial documents and emails of these highly relevant witnesses have all been irretrievably deleted.

*Third*, in response to Impossible LLC's skepticism that Impossible Foods had truly complied with Rule 26 by listing only *one person* in its initial disclosures, Impossible Foods amended those disclosures to identify three more people. Yet despite this, the metadata provided by Impossible Foods reveals that no emails were produced for two of the three custodians, and only a paltry number of files overall were produced from these Impossible Foods employees.

*Fourth*, Impossible Foods recently contradicted its counsel's earlier claims by asserting that it had identified a "new" potential witness, Nick Halla, and was attempting to "recover" his documents (which still have not been produced). Counsel did not explain why it failed to identify Mr. Halla as a person with relevant knowledge earlier, given that he apparently served as

JOINT STATEMENT REGARDING DEFENDANT IMPOSSIBLE LLC'S NOTICES OF DEPOSITION
OF APEX WITNESSES AND 30(B)(6) TOPICS                                                                                    8
CASE NO. 5:21-CV-02419-BLF (SVK)

Impossible Foods's Chief Strategy Officer until mid-2022 (well after litigation was commenced). And, once more, Impossible Foods provided no explanation of why these relevant documents were previously uncollected, why they were apparently deleted, when that deletion occurred, or why Impossible Foods believes that they can be "recovered" when the other deleted custodial files maintained by other relevant custodians have been irretrievably lost.

*Finally*, at a high level, Impossible Foods's document production efforts are not credible on their face. Impossible Foods has raised more than $2 billion in venture capital funding and employs hundreds of people. The company's entire brand identity is built around a name—IMPOSSIBLE—as to which Mr. Runyon and Impossible LLC hold senior rights. Yet Impossible LLC, which is essentially a one-man show and has only a single document custodian, has produced roughly five times as many documents as Impossible Foods.

**Rule 30(b)(6) Deposition**: As noted above, there are major unanswered questions regarding Impossible Foods's document preservation, collection, and production efforts, as well as regarding the timing of its deletion of custodial files it concedes are both relevant and unique. And while Impossible Foods now makes the breezy assertion that "there is no issue with spoliation," that has never been substantiated, and the record indicates the opposite is true. Impossible LLC has tried to obtain a full accounting of these issues informally, but the explanations provided by Impossible Foods through its counsel have been artfully worded, contradictory, and self-serving. Moreover, counsel is not a percipient witness with personal knowledge of many of these matters. And an unsworn email from counsel who has no actual knowledge is an inadequate substitute for formal, sworn testimony given by a corporate representative in response to deposition topics noticed pursuant to Rule 30(b)(6). Should it become necessary to seek redress for spoliation, a sworn written record will be necessary to establish the facts and prevent the prejudice to Impossible LLC that would otherwise be caused by its inability to fact-check Impossible Foods's evolving, inconsistent, and unverifiable explanations for its deletion of relevant evidence.

Deposition testimony regarding document collection and preservation is commonplace and

OF APEX WITNESSES AND 30(B)(6) TOPICS                                                                                       9
CASE NO. 5:21-CV-02419-BLF (SVK)

courts rely on such testimony to determine whether spoliation has occurred. *See City of Colton v. Am. Promotional Events, Inc.*, No. CV0906630PSGSSX, 2011 WL 13223880, at *1 (C.D. Cal. Nov. 22, 2011) (finding "preliminary showing of spoliation" based on "deposition testimony of two EPA officials regarding their document retention practices"); *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 619 (D. Colo. 2007) (permitting party "to take a Fed. R. Civ. P. 30(b)(6) deposition to explore the procedures that Land O'Lakes employed to identify, preserve and produce responsive documents relative to specific items raised in Plaintiff's Motion to Compel Discovery"); *Doe v. D.C.*, 230 F.R.D. 47, 55 (D.D.C. 2005) (permitting deposition on defendant's "document retention policies and procedures, and the process used to collect the documents that have been produced or will be produced by the [defendant] in response to plaintiff's requests for production of documents"). The Court should follow this approach here by permitting the deposition to proceed as noticed and resolve the spoliation question at a later time.

In resisting this result, Impossible Foods has argued that a deposition would be disfavored "discovery on discovery." But the cases it relies on are distinguishable because Impossible LLC is not, at this time, seeking a forensic examination or other intrusive discovery into Impossible Foods's discovery process (although the red flags discussed above suggest that such measures would be justified). It is simply seeking the deposition of a witness who can state, under oath, what Impossible Foods did to preserve and collect documents, and what happened to the deleted information. A straightforward custodian of records deposition therefore does not implicate the type of "discovery on discovery" concerns at issue in the cases cited by Impossible Foods.

**Deposition of Mr. Brown:** Impossible LLC's request for a limited deposition of Mr. Brown is reasonable under these circumstances because he is the ***only*** person still affiliated with Impossible Foods who has personal knowledge of the critical 2013-2015 period in which the company evaluated Impossible LLC's trademarks in light of its efforts to rebrand from Maraxi to Impossible Foods. That information cannot be obtained from the custodial files maintained by other Impossible Foods employees because they have been deleted. Given that deletion of

JOINT STATEMENT REGARDING DEFENDANT IMPOSSIBLE LLC'S NOTICES OF DEPOSITION
OF APEX WITNESSES AND 30(B)(6) TOPICS                                                                                          10
CASE NO. 5:21-CV-02419-BLF (SVK)

evidence, the only way for Impossible LLC to obtain evidence regarding these critically important issues from a current employee is through deposition testimony. And Mr. Brown appears to be the only person still affiliated with the company who has firsthand knowledge of Maraxi's selection and adoption of the IMPOSSIBLE name and mark; its stylization of that mark to be virtually identical to the pre-existing name and mark used by Impossible LLC; Maraxi's knowledge of Impossible LLC's pre-existing rights as to the name and IMPOSSIBLE® mark; and Maraxi's evaluation of the product categories applicable to each company and its strategy (if any) for avoiding confusion over the near-identical names and stylizations.

DATED: March 31, 2025     By:   /s/ H. Forrest Flemming, III
                                 R. Charles Henn Jr. (*pro hac vice*)
                                 H. Forrest Flemming, III (*pro hac vice*)
                                 Erica Chanin (*pro hac vice*)
                                 KILPATRICK TOWNSEND & STOCKTON
                                 1100 Peachtree Street NE, Suite 2800
                                 Atlanta, Georgia 30309
                                 Telephone: (404) 815-6572
                                 Facsimile: (404) 541-3240
                                 Email: chenn@ktslaw.com
                                        fflemming@ktslaw.com
                                        echanin@ktslaw.com

                                 Kollin J. Zimmermann (SBN 273092)
                                 KILPATRICK TOWNSEND & STOCKTON
                                 1801 Century Park East
                                 Suite 2300
                                 Los Angeles, California 90067
                                 Telephone: (310) 248-3830
                                 Facsimile: (310) 860-0363
                                 kzimmermann@ktslaw.com

                                 *Attorneys for Plaintiff/Counter-Defendant*
                                 IMPOSSIBLE FOODS INC.

# CERTIFICATE OF SERVICE

I hereby certify that on March 31, 2025, a true and correct copy of JOINT STATEMENT REGARDING DEFENDANT IMPOSSIBLE LLC'S NOTICES OF DEPOSITION OF APEX WITNESSES AND 30(B)(6) TOPICS was filed electronically using the Court's CM/ECF system, which will send notification of such filing to counsel for Defendants Impossible LLC and Joel Runyon, addressed as follows:

J. Noah Hagey
Adam S. Cashman
Gregory D. Washington
BRAUNHAGEY & BORDEN LLP
747 Front Street, 4th Floor
San Francisco, CA 94111
hagey@braunhagey.com
cashman@braunhagey.com
gwashington@keker.com

Faith Barksdale
BRAUNHAGEY & BORDEN LLP
118 W 22nd Street, 12th Floor
New York, NY 10011
barksdale@braunhagey.com

David E. Weslow
Adrienne J. Kosak
WILEY REIN LLP
2050 M Street NW
Washington, DC 20036
dweslow@wiley.law
akosak@wiley.law

/s/ H. Forrest Flemming, III
H. Forrest Flemming, III