# Exhibit B

# Exhibit B

| | |
|---|---|
| 1 | J. Noah Hagey, Esq. (SBN: 262331) |
|   |    hagey@braunhagey.com |
| 2 | Adam S. Cashman, Esq. (SBN: 255063) |
|   |    cashman@braunhagey.com |
| 3 | Greg Washington, Esq. (SBN: 318796) |
|   |    gwashington@braunhagey.com |
| 4 | BRAUNHAGEY & BORDEN LLP |
|   | 747 Front Street, 4th Floor |
| 5 | San Francisco, CA 94111 |
|   | Telephone: (415) 599-0210 |
| 6 | |
|   | Faith Barksdale, Esq. (*pro hac vice*) |
| 7 |    barksdale@braunhagey.com |
|   | BRAUNHAGEY & BORDEN LLP |
| 8 | 118 W 22nd Street, 12th Floor |
|   | New York, NY 10011 |
| 9 | Telephone: (646) 829-9403 |

*Attorneys for Defendants/Counter-Plaintiffs*
*IMPOSSIBLE LLC and JOEL RUNYON*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| IMPOSSIBLE FOODS INC., | Case No. 5:21-cv-02419-BLF (SVK) |
|    Plaintiff / Counter-Defendant, | **DEFENDANT AND COUNTERCLAIM-PLAINTIFF IMPOSSIBLE LLC'S NOTICE OF DEPOSITION OF IMPOSSIBLE FOODS INC. PURSUANT TO RULE 30(b)(6)** |
| v. | |
| IMPOSSIBLE LLC and JOEL RUNYON, | Location:   BraunHagey & Borden LLP |
|    Defendants / Counter- Plaintiffs. |            747 Front Street, 4th Floor |
| |            San Francisco, CA 94111 |
| | Date/Time:  March 28, 2025 at 9:00 a.m. |

1  PLEASE TAKE NOTICE that under Rule 30(b)(6) of the Federal Rules of Civil Procedure, Defendants and Counter-Plaintiffs Impossible LLC and Joel Runyon (together "Impossible") will take the deposition of Plaintiff and Counter-Defendant Impossible Foods Inc. ("IFI"), through one or more officers, directors, agents, or other representatives who shall be designated to testify on IFI's behalf regarding the subject matters in **Attachment A.**

The deposition will take place on March 28, 2025, at BraunHagey & Borden LLP's offices at 747 Front Street, 4th Floor, San Francisco, CA 94111, starting at 9:00 a.m., or at such other time and location mutually agreeable to the parties.

The deposition will continue from day to day until completed and shall be taken before an officer, notary public, or other person duly authorized to administer oaths. Under Federal Rule of Civil Procedure 30(b)(3), the testimony will be recorded by stenographic means and videotape.

Dated:  March 14, 2025                             BRAUNHAGEY & BORDEN LLP


By:  */s/ Adam S. Cashman*
                 Adam S. Cashman

*Attorneys for Defendants/Counter-Plaintiffs*
*IMPOSSIBLE LLC and JOEL RUNYON*

# ATTACHMENT A
## DEFINITIONS

1. The term "Impossible" means Defendant-Counterclaim Plaintiff Impossible LLC, and its respective officers, directors, employees, agents, partners, attorneys, subsidiaries, representatives, consultants, predecessors in interest, successors in interest, franchisees, and any other person or entity acting on Impossible LLC's behalf or subject to its control.

2. The term "IFI" means Plaintiff-Counterclaim Defendant Impossible Foods Inc., and its respective officers, directors, employees, agents, partners, attorneys, subsidiaries, representatives, consultants, predecessors in interest, successors in interest, franchisees, and any other person or entity acting on Impossible Foods Inc.'s behalf or subject to its control.

3. The term "this case" or "litigation" shall mean the above-captioned case captioned *Impossible Foods, Inc. v. Impossible LLC et al.*, Case No. 5:21-cv-02419-BLF (SVK).

4. The terms "document" or "documents" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Federal Rule of Civil Procedure 34(a)(1)(A), including, but not limited to: all writings and recordings, including the originals and all non-identical copies, whether different from the original by reason of any notation made on such copies or otherwise (including, but without limitation to, email and attachments, correspondence, memoranda, notes, diaries, minutes, statis-tics, letters, telegrams, minutes, contracts, reports, studies, checks, statements, tags, labels, invoices, brochures, periodicals, telegrams, receipts, returns, summaries, pamphlets, books, interoffice and intraoffice communications, offers, notations of any sort of conversations, working papers, applications, permits, file wrappers, indices, telephone calls, meetings or printouts, teletypes, telefax, invoices, worksheets, and all drafts, alterations, modifications, changes and amendments of any of the foregoing), graphic or aural representations of any kind (including, without limitation, photo-graphs, charts, microfiche, microfilm, videotape, recordings, motion pictures, plans, drawings, surveys), and electronic, mechanical, magnetic, optical or electric records or representations of any kind (including, without limitation, computer files and pro-grams, tapes, cassettes, discs,

recordings), including metadata.  A draft or non-identical copy is a separate document within the meaning of this term.

5. The terms "communication" or "communications" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise) by any means, including, but not limited to, telephone calls, emails (whether via company server or personal webmail or similar accounts), faxes, text messages (on work or personal phones), instant messages, Slack messages, social media messages, Skype, Zoom, Microsoft Teams or Voice over Internet Protocol messages, letters, notes, and voicemails.

6. The terms "identify" or "identification," when used with respect to a person (entity or individual) shall mean to provide that person's legal and business name(s), contact information, title, department and relationship to IFI or this dispute, as applicable. When "identify" or "identification" are used with respect to facts, actions, or tangible items, it shall mean to set forth in detail a description of those facts, actions, or tangible items, including the dates, location, and any persons necessary to provide detailed information concerning the relevant facts, actions, or tangible items.

7. "Electronic Media" shall mean to include any device or media capable of storing electronic, mechanical, magnetic, optical or electric records or representations of any kind and includes, without limitation, computers, hard drives, computer files and programs, servers, cloud storage services, tapes, cassettes, disks, and recordings.

8. The term "person" means any natural person or any legal entity, including any business or governmental entity or association.

9. The term "third party" means any person other than the parties to this litigation.

10. In the case of a person other than a natural person, "identify all persons" shall mean to state:  its name, the address of its principal place of business (including zip code), its telephone number, and the name of its chief executive officer, as well as, if it has a person other than a natural person that ultimately controls it, that other person's name, the address of that person's principal place of business (including zip code), that other person's telephone number, and the name of that other person's chief executive officer.

11. With respect to natural persons, "identify all persons" shall mean to state: the name of the person; the person's title or position; the person's current business address, including the name of the entity at which he or she works; if no business address is known, state the residential address.

12. The term "identify all documents" means stating the Bates page number (*i.e.*, the page number placed on documents by counsel for purposes of identification in responding to these requests) of any document produced by You to IFI in response to these requests; or for any document not produced by You to IFI, to state the date of the document, the type of document (*e.g.*, email, letter, or memo), the creator of the document, and other information sufficient to reasonably describe the document.

13. The terms "related to" or "relating to" a subject extends to mentioning, referring to, discussing, describing, reflecting, evidencing, identifying, dealing with, consisting of, constituting, or in any way pertaining to the subject, in whole or in part.

14. The term "concerning" includes supporting, referring to, relating to, alluding to, responding to, commenting on, reviewing any aspect of, discussing, describing, mentioning, analyzing, constituting, evidencing, and/or pertaining to the subject of the request.

15. The term "collect" is synonymous in meaning and equal in scope to the usage to the procedure for producing documents and electronically stored information described in Rule 34(b)(2)(E) of the Federal Rules of Civil Procedure.

16. The term "Impossible-formative Mark," refers to any name, mark, or designation incorporating the word "impossible" by Impossible.

17. The term "IFI-formative Mark" refers to any name, mark, or designation incorporating the word "impossible" by IFI.

18. The term "goods and services" refers to any good or services that IFI has offered for sale or sold in connection with an IFI-formative Mark.

19. The terms "use in commerce" or "used in commerce" is the same meaning as that provided in 15 U.S.C. U.S.C.§ 1127, *i.e.*:

"The term 'use in commerce' means the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark. For purposes of this chapter, a mark shall be deemed to be in use in commerce—

(1) on goods when—

    (A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and

    (B) the goods are sold or transported in commerce, and

(2) on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce, or the services are rendered in more than one State or in the United States and a foreign country and the person rendering the services is engaged in commerce in connection with the services."

20. The singular includes the plural and vice versa, except as the context may require otherwise; reference to any gender includes the other gender; the words "and" and "or" shall be construed as either conjunctive or disjunctive in such manner as will broaden as widely as possible the scope of any request; the word "all" means "any and all"; the word "any" means "any and all"; the word "including" means "including without limitation."

21. The term "search" is synonymous in meaning and equal in scope to the usage of this term in the Federal Rules of Civil Procedure.

22. The term "IFI Name Change" means and includes IFI's name change from Maraxi or Maraxi, Inc., including websites, packaging, logos, trade dress, advertising, social media, and marketing materials that were placed into the market starting in and around May 2015 and implemented over the next eighteen months.

23. The term "IFI Rebrand" means and includes IFI's change to its products, including websites, packaging, logos, trade dress, advertising, social media, and marketing materials that

were placed into the market in and around October 2024 to focus on health and nutrition, among other things.

**DEPOSITION SUBJECT MATTER**

Pursuant to Rule 30(b)(6), the deponent must have knowledge and shall be able to competently testify concerning the following topics, subject to amendment with notice:

1. IFI's efforts to comply with its discovery obligations under the Federal Rules of Civil Procedure in this case.

2. The identity of third-party marketing agencies, consumer survey firms, brand advisors, or other consultants engaged by IFI regarding its "IMPOSSIBLE" branding or marketing.

3. The specific custodians, drives, repositories, and other sources within IFI's possession, custody, or control that IFI searched for potentially responsive information.

4. The specific custodians, drives, repositories, and other sources within IFI's possession, custody, or control that may contain potentially responsive information, but which IFI did not search or collect documents or information from for purposes of this case.

5. Documents or document repositories of potentially relevant documents and things in IFI's or any of its custodians' possession, custody or control which have been, in whole or in part, deleted, destroyed or otherwise rendered inaccessible since receipt of Impossible's demand letter on November 10, 2020.

6. The factual circumstances surrounding the deletion of Myra Pasek's custodial documents and emails, including any efforts to recover Myra Pasek's documents and emails as part of IFI's investigation in this case.

7. The factual circumstances surrounding deletion of Jordan Schenck's documents and emails, including any efforts to recover Jordan Schenck's documents and emails as part of IFI's investigation in this case.

8. The factual circumstances surrounding deletion of any documents or emails of any potential custodian for responsive documents concerning this case.

9. IFI's preservation, collection, and production of documents relating to this case.

10. IFI's verification of and responses to interrogatories served by Impossible in this case.

11. The history of IFI, including Maraxi and the person(s) involved in developing and operating Maraxi.

12. Documents and communications relating to IFI's efforts to investigate the availability of and freedom to use the IFI-formative Mark, including, but not limited to, the commercial search report Impossible received on October 9, 2013, that identified Impossible LLC and Joel Runyon as the owner of certain Impossible-formative marks.

13. IFI's knowledge of Impossible, including the circumstances surrounding IFI's first awareness of Impossible, the date IFI first became aware of Impossible, and the person(s) who became aware of Impossible.

14. IFI's knowledge of the nature and scope of Impossible's use or registration of its Marks, including date(s) of such knowledge for each mark and each good or service offered under that Mark and the person(s) who gained knowledge of Impossible's Marks.

15. IFI's communication with third parties concerning Impossible or Mr. Runyon.

16. IFI's organization from 2013 to the present, including the titles, duties, reporting lines, and any change in roles and positions of current and former employees over time.

17. Ownership of the IFI-formative Marks, including any assignments or transfers of any common law or registered rights.

18. IFI's license agreements with third parties relating to the creation, manufacture, distribution, sale, advertising, marketing, promotion, reproduction, or other use of IFI Goods or Services or the IFI-formative Marks.

19. IFI's conception, development, selection, and adoption of IFI-formative Marks.

20. IFI's use in commerce of IFI-formative marks, including date(s) IFI-formative Marks were first used in commerce, whether and how continuous IFI's use in commerce of IFI-formative marks has been since that date, the specific goods and services with which IFI has or plans to use in commerce IFI-formative Marks, and the general nature of IFI's use in commerce of IFI'-formative Marks.

7   Case No. 5:21-cv-02419-BLF (SVK)
IMPOSSIBLE LLC'S NOTICE OF RULE 30(b)(6) DEPOSITION OF IMPOSSIBLE FOODS INC.

21. IFI's planned use in commerce of IFI-formative Marks, including each of IFI's goods and services or future planned goods and services.

22. IFI's knowledge of Impossible and its products, brand, logos, trade dress, marketing, advertising, and trademarks, including the IMPOSSIBLE® trademark.

23. IFI's process for re-branding products, including each step in its process of decision-making and approving re-brandings.

24. The reasons and purposes for the IFI Name Change, including how IFI was intending to position itself with consumers, including IFI's advertising, marketing, social media presence, and campaigns before, as part of, and after the IFI Name Change and plan to display and use of the word "Impossible" and the positioning of the word on its packaging, trade dress, advertising, or marketing materials.

25. The planning, development, and execution of the IFI Name Change, including IFI's research regarding, and evaluation of, different branding options and the decision to isolate "Impossible" on IFI packaging, trade dress, advertising, social media, or marketing materials as part of the IFI Name Change.

26. The choice of and reasons for the final designs of IFI's logos, packaging, and marketing materials, including the decision to isolate "Impossible" on packaging, trade dress, advertising, or marketing materials as part of the IFI Name Change.

27. The reasons and purposes for the IFI Rebrand, including how IFI was intending to position itself with consumers, including IFI's advertising, marketing, social media presence and campaigns before, as part of, and after the IFI Rebrand and plan to display and use of the word "Impossible" and the positioning of the word on its packaging, trade dress, advertising, or marketing materials.

28. The planning, development, and execution of the IFI Rebrand, including IFI's research regarding and evaluation of different branding options and the decision to isolate "Impossible" on IFI packaging, trade dress, advertising, social media, or marketing materials as part of the IFI Rebrand.

29. The choice of and reasons for the final designs of the rebranded IFI packaging, logos, and marketing materials, including the decision to isolate Impossible on IFI packaging, trade dress, advertising, or marketing materials as part of the IFI Rebrand.

30. The distribution and marketing of IFI goods and services, including its channels, distributors, geographic and demographic target groups, including any changes because of, following, or in conjunction with the IFI Name Change.

31. IFI's advertising, marketing, and social media presence and campaigns before, as part of, and after the IFI Name Change, including the display and use of the word "Impossible" and the positioning of that word on its packaging, trade dress, advertising, or marketing materials.

32. Confusion between Impossible and IFI before and after the IFI Name Change.

33. IFI's sales and financial performance and the impact of the IFI Name Change thereon, including in comparison to IFI-competitor brands and the meat substitute market as a whole.

34. The distribution and marketing of IFI products, including its channels, distributors, geographic and demographic target groups, including any changes because of, following, or in conjunction with the IFI Name Change.

35. IFI's instructions for the display, arrangement, and stacking of IFI products, before, as part of, and after the IFI Rebrand, including the display and use of the word "Impossible" and the positioning that word on its packaging, trade dress, advertising, or marketing materials.

36. Confusion between Impossible and IFI before and after the IFI Rebrand.

37. IFI's sales and financial performance and the impact of the IFI Rebrand thereon, including in comparison to IFI-competitor brands and the market for meat substitute products as a whole.

38. IFI's strategy for competing with health and nutrition brands.

39. IFI's purported use of Impossible as a trademark or brand prior to the IFI Name Change and consumers' purported association of the word Impossible with IFI prior to the IFI Name Change.

40. IFI's conceptualization, development, planning, design, and launch of the marketing strategy or advertising campaigns of IFI's past and current packaging designs.

41. IFI's work with any third-party marketers or agencies regarding IFI's packaging design, including the conceptualization and launch of any marketing strategy.

42. The amount that IFI has spent on marketing and advertising on an annual basis since January 2011.

43. The projected amount that IFI expects to spend on marketing and advertising in 2025.

44. For each of IFI's advertising, marketing, or promotional campaigns for each of IFI's goods and services:
   a. The channels used and the geographic reach of such campaigns or material;
   b. The substance of the campaigns or material;
   c. The period the campaigns or materials were active and in circulation; and
   d. Any data tracked by or known to IFI regarding consumer awareness of or engagement with the campaigns or materials.

45. IFI's plans to market, promote, advertise, or offer for sale each of IFI's goods and services through channels of trade in which it does not currently do so.

46. The similarities and dissimilarities between Impossible's goods and services and each of IFI's goods and services offered in connection with IFI-formative Marks.

47. For each of IFI's goods and services:
   a. The sophistication of, and degree of care exercised by, actual or targeted consumers of each of IFI's goods and services, including media statements and IFI's public statements concerning the same;
   b. The demographic and psychographic characteristics of actual or target consumers;
   c. Each of the IFI-formative Marks used in commerce in connection with the goods and services; and
   d. Date(s) of the use(s) in subpart (c).

48. Research or investigation conducted by or on behalf of IFI concerning:

    a. The sophistication of, degree of care exercised by, or demographic or psychographic characteristics of actual or target consumers of each of IFI's goods and services;

    b. Consumer awareness or recognition of IFI-formative Marks; and

    c. IFI's reputation in its industry or among consumers.

49. Actual confusion between IFI's edible products and Impossible's sleep and energy powders and other edible products, including identification of the individuals who were purportedly confused, the edible product involved in each instance, and when such confusion occurred.

50. Investigations or other efforts undertaken by IFI into whether any actual confusion between IFI's edible products and Impossible's sleep and energy powders or other edible products has occurred or was likely to occur.

51. The quality of each of IFI's goods and services, including efforts to control or monitor the quality of each of its goods and services and testing of each of IFI's goods and services performed by IFI.

52. Communications between IFI and third parties concerning the quality, source, or price of each of IFI's goods and services, including complaints, returns, or requests for refunds, and IFI's process for addressing such communications.

53. Prior litigation or disputes with third parties involving IFI-formative Marks, including damages calculations, settlement discussions, and agreements relating to any such litigations.

54. Prior efforts by IFI to enforce its rights relating to IFI-formative Marks against third parties.

55. Identification of the prices of each of IFI's goods and services, both wholesale and suggested retail (as well as any other price category used by IFI), that IFI or any third party authorized by IFI has offered for sale or sold each of IFI's goods and services.

56. The annual U.S. sales of each of IFI's goods and services, including the volume of sales of each good and service and the annual units sold since IFI first sold each good.

57. The projected U.S. sales of each of IFI's goods and services in 2025, including the projected volume of sales of each good and service and the projected annual units sold.

58. The U.S. Consumers who have used or purchased each of IFI's goods and services offered by IFI under its formative marks from 2011 to the present, including the number of consumers and the type of consumers, such as individuals, retailers, or other consumers.

59. The annual U.S. profits from the sale of each of IFI's goods and services since IFI first sold each good or offered service, including identification of revenue as well as each category of deductible expenses.

60. The projected U.S. profits from the sale of each of IFI's goods and services in 2025, including identification of revenue as well as each category of deductible expenses.

61. IFI's policies, guidelines, or practices concerning the use or display of IFI-formative marks.

62. The commercial value of IFI-formative Marks.

63. Identification of the channels through which each of IFI's goods and services have been offered for sale.

64. Identification of each website owned, controlled, or used by IFI to offer or market each of IFI's goods and services, including the nature and scope of the marketing, the dates that any website has been active, the traffic data, and person(s) involved.

65. Identification of each social media page owned, controlled, or used by IFI to offer or market, the dates that any page has been active, the traffic data, and person(s) involved.

66. Identification and computation of each category of damages claimed by IFI, and documents or other evidentiary material on which each computation is based, including materials bearing on the nature and extent of injuries suffered.

67. The harm or damage IFI has purportedly suffered because of Impossible's actions, including any lost sales, lost profits, reputational harm, or irreparable harm.

68. The circumstances surrounding any instance in which IFI has lost a sale, client, customer, account, or business opportunity because of IFI's conduct, including the date(s) and person(s) involved and any quantification of such loss.

69. Impossible's reputation in IFI's industry and among consumers in IFI's industry, including how Impossible's purported conduct has affected IFI's reputation.

70. Whether and how Impossible's conduct that IFI has challenged in this case—independent of market conditions or other factors—has affected IFI's annual revenue and profits since 2020.

71. IFI's knowledge of any purported willful conduct by Impossible to infringe on IFI-formative Marks.

Dated: March 14, 2025

BRAUNHAGEY & BORDEN LLP

By: /s/ Adam S. Cashman
Adam S. Cashman

*Attorneys for Defendants / Counter-Plaintiffs Impossible LLC and Joel Runyon*
