J. Noah Hagey, Esq. (SBN: 262331)
hagey@braunhagey.com
Adam S. Cashman, Esq. (SBN: 255063)
cashman@braunhagey.com
Greg Washington, Esq. (SBN: 318796)
gwashington@braunhagey.com
BRAUNHAGEY & BORDEN LLP
747 Front Street, 4th Floor
San Francisco, CA 94111
Tel. (415) 599-0210

Faith Barksdale, Esq. (*pro hac vice*)
barksdale@braunhagey.com
BRAUNHAGEY & BORDEN LLP
118 W 22nd Street, 12th Floor
New York, NY 10011
Tel.: (646) 829-9403

*Attorneys for Defendants / Counter-Plaintiffs IMPOSSIBLE LLC and JOEL RUNYON*

KOLLIN J. ZIMMERMANN (SBN 273092)
KILPATRICK TOWNSEND & STOCKTON LLP
1801 Century Park East, Suite 2300
Los Angeles, California 90067
Telephone: (310) 248-3830
Facsimile: (310) 860-0363
kzimmermann@ktslaw.com

R. CHARLES HENN JR. (*pro hac vice*)
H. FORREST FLEMMING, III (*pro hac vice*)
JESSICA W. TRUELOVE (*pro hac vice*)
1100 Peachtree Street NE, Suite 2800
Atlanta, Georgia 30309
Telephone: (404) 815-6572
Facsimile: (404) 541-3240
chenn@ktslaw.com
fflemming@ktslaw.com
jtruelove@ktslaw.com

*Attorneys for Plaintiff/Counter-Defendant IMPOSSIBLE FOODS INC.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

IMPOSSIBLE FOODS INC.,

Plaintiff / Counter-Defendant,

v.

IMPOSSIBLE LLC and JOEL RUNYON,

Defendants / Counter-Plaintiffs.

Case No. 5:21-cv-02419-BLF (SVK)

**JOINT STATEMENT REGARDING DEFENDANT/COUNTERCLAIM PLAINTIFF'S MOTION TO COMPEL FURTHER RESPONSES TO INTERROGATORY NOS. 16, 20, 21 AND REQUEST FOR PRODUCTION NOS. 124 AND 125**

| | |
|---|---|
| **Judge:** | Hon. Beth Labson Freeman |
| **Compl. Filed;** | April 2, 2021 |
| **Third Am. Compl. Filed;** | March 7, 2025 |
| **Trial Date:** | November 10, 2025 |

**JOINT STATEMENT REGARDING**
**IMPOSSIBLE FOODS'S DISCOVERY RESPONSES**

Pursuant to Section 8 of Magistrate Judge Susan van Keulen's standing order on civil and discovery referral matters, Defendant/Counterclaim Plaintiff Impossible LLC respectfully requests that the Court issue an order compelling Plaintiff/Counterclaim Defendant Impossible Foods Inc. ("Impossible Foods") to fully respond to Interrogatory Nos. 16, 20, and 21, and to produce non-privileged documents responsive to Request for Production Nos. 124 and 125, as described below.

Individual defendant Joel Runyon concurs with Impossible LLC's positions, but as the requests were served on behalf of Impossible LLC only, Mr. Runyon has not joined this motion.

Discovery closed on April 14, 2025.

Attached as **Exhibit A** is the joint chart required by Section 8 of the Standing Order.

On March 14, 2025, Impossible LLC served its third set of interrogatories (attached as **Exhibit B**) and fourth set of requests for production (attached as **Exhibit C**). On April 14, 2025, Impossible Foods served its objections and responses to Impossible LLC's interrogatories (attached as **Exhibit D**) and requests for production (attached as **Exhibit E**). The next day, Impossible LLC wrote to Impossible Foods regarding the deficiencies in its responses. The following day, the parties met and conferred regarding these deficiencies and Impossible LLC notified Impossible Foods of its intent to move to compel further response on these discovery issues on April 21. In an email sent later that day, Impossible LLC proposed its compromise positions and explained why it believed those compromise offers were reasonable. Impossible Foods never communicated compromise positions and only communicated its intent to produce additional unspecified documents. When Impossible Foods did not respond to Impossible LLC's positions by April 18, Impossible LLC notified Impossible Foods that intended to move to compel further response to Interrogatory Nos. 16, 20, and 21, and Request for Production Nos. 124 and 125 on April 21. Impossible Foods never asked for more time. However, given the short timeframe and the Easter holiday, Impossible LLC does not oppose Impossible Foods's request to submit a further response on April 22, so long as that response is not used as to exceed the page limits and other requirements provided by the Court's

Standing Order.

**Impossible LLC' Position**:

**I. The Court should order Impossible Foods to identify the descriptive words used to describe its products in its marketing efforts because those terms are relevant to the likelihood of customer confusion.**

Impossible Foods has refused to respond to Interrogatory No. 16, which seeks to discover the primary terms Impossible Foods has used to describe its products in its marketing communications during the relevant period. Such information is probative of the relatedness of the goods and services at issue, which is highly relevant because "[r]elated goods are generally more likely than unrelated goods to confuse the public as to the producers of the goods." *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1055 (9th Cir. 1999) (citation omitted). When goods are related, "the danger presented is that the public will mistakenly assume there is an association between the producers of the related goods, though no such association exists." *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 350 (9th Cir. 1979).

In meet and confer, Impossible Foods represented that it could not respond to Rog No. 16 because doing so would call for a legal conclusion because, it claimed, the term "descriptive words" derives from the spectrum of trademark protections outlined in *Abercrombie & Fitch Co. v. Hunting World*, 537 F.2d 4 (2nd Cir. 1976). But that is plainly not what the interrogatory asks. Impossible LLC is not requesting that Impossible Foods provide a legal analysis of the relative strength of its trademarks. Instead, Rog No. 16 requests that Impossible Foods "identify the descriptive words most often used ***to describe IFI's products in its marketing messaging***"—a purely factual inquiry that is well within Impossible Foods's knowledge. The Court should accordingly order Impossible Foods to fully answer Rog No. 16.

**II. The Court should order Impossible Foods to identify its annual revenue for all plant-based meat products sold in connection with its Marks because this information is relevant to the strength of the mark and to damages.**

The Court should order Impossible Foods to answer Interrogatory No. 20 in full and under oath. When seeking disgorgement of profits under the Lanham Act, "[t]he trademark holder has the burden to prove the defendant infringer's gross revenue from the infringement." *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1076 (9th Cir. 2015) (citation omitted).

At that point, "the burden shifts to the defendant infringer to prove expenses that should be deducted from the gross revenue to arrive at the defendant infringer's lost profits." *Id.* And "[a]ny doubt as to the computation of costs or profits is to be resolved in favor of the plaintiff." *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 514 (9th Cir. 1985).

Impossible Foods relied on Rule 33(d) in its response to Rog No. 20, citing "the documents produced at IF00017501 and IF00026503-26507." But none of the three types of financial documents cited by Impossible Foods answers the interrogatory. Specifically, Impossible Foods has produced company-wide profit and loss statements (IF00017501), which do not provide product-level data and are missing two years of relevant data. Similarly, Impossible Foods's statement of restaurant sales revenue for 2019-2020 (IF00026503) is also inadequate because the document is missing multiple years of relevant data from before and after the two years reported, omits any revenues from retail sales, and does not provide product-level data. Further, Impossible Foods's reliance on a data dump from 2021-2024 contained in Excel workbooks (IF00026504-26507) does not suffice either, for Impossible LLC has no way to sort and segregate these millions of data points to arrive at the correct figures. By way of example, the spreadsheet that Impossible Foods produced has 281,897 rows spread over 10 separate columns—for ***2024 alone***. Put simply, the burden of manipulating and interpreting these vast workbooks to "deriv[e] or ascertain[] the answer" is not the same for Impossible LLC as it is for Impossible Foods, such that reliance on Rule 33(d) is improper. Surely, Impossible Foods is better able to accurately analyze and tabulate its own internal data than Impossible LLC is. The Court should therefore order it to do so.

### III. The Court should order Impossible Foods to identify its annual advertising and promotional expenditures for products offered for sale under any of its Marks because it is relevant to customer confusion and corrective advertising.

Interrogatory No. 21 seeks to discover Impossible Foods's annual expenditures on all forms of advertising or promotional activity by product over the relevant period. Such information is relevant to, *inter alia*, the commercial strength of the mark under the third *Sleekcraft* factor. *See Gianni Versace, S.p.A. v. Versace 19.69*, 328 F. Supp. 3d 1007, 1016 (N.D. Cal. 2018) (measuring the commercial strength of an infringing trademark by "efforts to advertise and promote its branded products" and "annual revenues"). In addition, advertising and promotional expenditures

are also relevant to determining the extent of corrective advertising warranted for Impossible Foods's infringement. *Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 988 (9th Cir. 1995).

Impossible LLC originally tried to obtain this information through document requests and only served this interrogatory when that information was not forthcoming in Impossible Foods's production. In response to those document requests, Impossible Foods never produced documents that show its annual advertising and promotional expenditures by product. Despite this, Impossible Foods relied on Rule 33(d), but here too that reliance is errant and the materials it cites do not provide the answer to this important question. For example, through 2020, Impossible Foods produced generalized, company-wide expenditures that do not identify advertising or promotional activities by product. Starting in 2021, Impossible Foods produced more detailed spreadsheets with its companywide advertising expenditures, but those documents still provided no breakdown of product-level expenditures. Thus, Impossible Foods's document production is insufficient to determine the advertising and promotional expenses made in connection with potentially infringing products. The Court should therefore order Impossible Foods to comply fully with this interrogatory by providing the expenditures requested.

## IV. The Court should order Impossible Foods to produce documents sufficient to show its annual advertising and promotional projections through fiscal year 2027 because this information is relevant to future corrective advertising.

The Court should order Impossible Foods to produce documents showing its advertising and promotional expenditure forecasts and projections through 2027, which are kept in the normal course of business. In the Ninth Circuit, a party may "recover the cost of *prospective* corrective advertising" for "the amount he would be required to spend in the future to dispel the confusion caused by defendant's infringement." *Adray*, 76 F.3d at 988-89 (9th Cir. 1995) (remanding to the district court to provide "a jury instruction permitting a prospective corrective advertising award").

Because Impossible LLC will seek corrective advertising for Impossible Foods's infringing activities, the company requested future business forecasts and projections for 2025 and beyond. In response, Impossible Foods produced its projected advertising expenditure budget for 2025 but no other documents. However, according to Impossible Foods's 30(b)(6) witness on

financial topics, the company conducts regular budget forecasting for the current year, the following year, and two years out, which means projections until 2027 are kept in the normal course of business. Because Impossible Foods's advertising and promotional expenditures are relevant for calculating future corrective advertising, the Court should order the production of those forecasts here.

Compromise Position: Produce documents sufficient to show Impossible Foods's advertising and promotional annual budget projections through fiscal year 2027 by April 28, 2025.

**V. The Court should order Impossible Foods to produce documents sufficient to show its annual sales and distribution activities because Impossible LLC needs this information to calculate damages for infringer's profits.**

The Court should order Impossible Foods to produce documents showing internal reporting of annual sales for goods and services since 2015. Like Rog No. 20, Impossible Foods's refusal to provide sales information hinders Impossible LLC's ability to calculate profits subject to disgorgement. Indeed, Impossible Foods has refused to produce documents that provide sales data showing gross revenue by product with no explanation for its position. While the response to RFP No. 125 said that "it will not comply with this Request but is willing to meet and confer," Impossible Foods simply stated that "it will not supplement" during the parties meet and confer with no explanation. However, "the defendant infringer's gross revenue from the infringement" is an essential element of disgorgement under the Lanham Act. *Fifty-Six Hope*, 778 F.3d at 1076 (citation omitted). Such information is also relevant to Impossible LLC's calculation of a reasonable royalty rate. *See, e.g.*, *Sands, Taylor & Wood v. Quaker Oats Co.*, 34 F.3d 1340, 1344-45 (7th Cir. 1994) (affirming the district court's calculation of a reasonable royalty for trademark infringement based on applying a hypothetical royalty to infringing sales). And Impossible Foods's refusal to provide basic annual sales information or engage in the meet and confer process on Impossible LLC's need for that sales data to prevent motion practice does not meet its discovery obligations. Thus, the Court should order Impossible Foods to produce its annual sales information starting in 2015.

Compromise Position: Produce documents sufficient to show internal reporting of annual sales for goods and services since 2015 by April 28, 2025.

**<u>Plaintiff's Position</u>:**

Impossible Foods requests that the Court deny Impossible LLC's motion as untimely, or, alternatively, permit Impossible Foods until tomorrow to submit its substantive response. Impossible LLC served Impossible Foods with *two* motions to compel today, demanding Impossible Foods's response within just a few hours. Impossible LLC took a week to craft this motion, and Impossible LLC cannot in fairness demand that Impossible Foods defend itself with only a few hours' notice.

Fact discovery closed on April 14 (ECF 113 at 4), and pursuant to Civil Local Rule 37-3, today is the last day that any joint statement can be filed. It was solely Impossible LLC's decision to wait until the last possible day to even *initiate* the joint statement procedure, and Impossible Foods should not be prejudiced by being forced to draft same-day responses for two motions to compel.

Impossible LLC waited until the last possible day to serve the discovery requests at issue in this motion and received Impossible Foods's timely responses on the last day of fact discovery, April 14. On April 15, Impossible LLC sent a two-sentence email requesting a conferral on unspecified "deficiencies" in Impossible Foods's responses. On Wednesday April 16, the parties conferred and reached an impasse. But inexplicably, Impossible LLC waited until 11:00 a.m. today—five *days* later—to put its arguments in writing, and then demanded Impossible Foods's response in a matter of *hours*.

Impossible LLC's conduct stands in stark contrast to how Impossible Foods has handled the joint statement procedure. For every joint statement initiated by Impossible Foods, Impossible Foods has provided Impossible LLC with at least three *business* days—usually more—to serve its response. The sole exception was the joint statement filed by Impossible Foods today, for which Impossible Foods provided Impossible LLC two business days (and four calendar days) to provide a response. But even in that case, Impossible Foods attempted to reduce the burden on Impossible LLC by serving its portion of the joint statement a day before the parties even conferred. Here, Impossible LLC provided its arguments and authorities for the first time today.

Impossible LLC's motion warrants a fulsome response that could not be drafted (and reviewed and approved by the client) in just hours. For example, Impossible LLC is moving to compel identification of Impossible Foods's "revenue for all plant-based meat products" (Interrogatory No. 20) because Impossible LLC is "seeking disgorgement of profits under the Lanham Act," yet Impossible LLC *is not challenging plant-based meat products as infringing* and actually abandoned its effort to amend its pleading to make those exact allegations after conferring on it in February. *See* ECF 171 at 64–69. Impossible LLC is also moving to compel disclosure of Impossible Foods's advertising "forecasts and projections" for 2026 and 2027, but the Court already ruled that Impossible Foods's production of "its advertising budget for 2025, which reflects its anticipated spend, is responsive and proportional to the needs of the case." ECF 164 at 4.

Accordingly, Impossible Foods respectfully requests that the Court deny Impossible LLC's motion as untimely or, in the alternative, permit Impossible Foods to file its response tomorrow.

Dated: April 21, 2025

Respectfully submitted,

BRAUNHAGEY & BORDEN LLP

By: *s/ Adam S. Cashman*
Adam S. Cashman

*Attorneys for Defendants / Counter-Plaintiffs Impossible LLC and Joel Runyon*

Dated: April 21, 2025

KILPATRICK TOWNSEND & STOCKTON

By: */s/ H. Forrest Flemming III*
H. Forrest Flemming III

*Attorney for Plaintiff/Counter-Defendant Impossible Foods Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 21, 2025, the foregoing was served electronically on all counsel of record.

By: */s/Adam S. Cashman*
Adam S. Cashman