# EXHIBIT E

KOLLIN J. ZIMMERMANN (SBN 273092)
KILPATRICK TOWNSEND & STOCKTON LLP
1801 Century Park East
Suite 2300
Los Angeles, CA 90067
Telephone: (310) 777-3755
Facsimile: (310) 362-8756
kzimmermann@ktslaw.com

R. CHARLES HENN JR. (*pro hac vice*)
H. FORREST FLEMMING, III (*pro hac vice*)
ERICA CHANIN (*pro hac vice*)
1100 Peachtree Street NE
Atlanta, Georgia 30309
Telephone: (404) 815-6500
Facsimile: (404) 815-6555
chenn@ktslaw.com
fflemming@ktslaw.com
echanin@ktslaw.com

Attorneys for Plaintiff/Counter-Defendant
IMPOSSIBLE FOODS INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

IMPOSSIBLE FOODS INC., a Delaware corporation,

Plaintiff/Counter-Defendant

v.

IMPOSSIBLE LLC, a Texas limited liability company, and JOEL RUNYON,

Defendants/Counter-Plaintiffs.

Case No. 5:21-cv-02419-BLF (SVK)

**PLAINTIFF/COUNTER-DEFENDANT IMPOSSIBLE FOODS INC.'S OBJECTIONS AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF IMPOSSIBLE LLC'S FOURTH SET OF REQUESTS FOR DOCUMENTS**

Judge: Hon. Beth Labson Freeman

PROPOUNDING PARTY: Defendants/Counter-Plaintiffs IMPOSSIBLE LLC

RESPONDING PARTY: Plaintiff/Counter-Defendant IMPOSSIBLE FOODS

SET NO: FOUR

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff/Counter-Defendant Impossible Foods Inc. objects and responds to the "Fourth Set of Requests for Documents" ("Requests") served by Defendant/Counter-Plaintiff Impossible LLC on March 14, 2025.

**OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS**

Impossible Foods asserts the following objections with respect to each instruction, definition, and Request:

1. Impossible Foods objects to the definitions of "IFI," "Plaintiff/Counter-Defendant," "you," and "your" because such definitions could be interpreted to seek information not within the possession, custody, or control of Impossible Foods, and the definitions could include vague and undefined "affiliate[s]." Impossible Foods's responses and objections are made on behalf of Impossible Foods, and its searches will be limited to information within the possession, custody, or control of Impossible Foods.

2. Impossible Foods objects to the definition of "Plaintiff/Counter-Defendant's Marks" because it includes more than 49 trademark registrations and applications, many of which are either not an IMPOSSIBLE-formative mark (e.g., U.S. Reg. No. 5,381,475) or otherwise are not relevant to any claim or defense in this action. Impossible Foods further objects to this definition because it imposes undue burden and expense on Impossible Foods by requiring it to search for documents concerning more than 49 registrations and applications.

3. Impossible Foods objects to the definition of "IFI Rebrand" because it is illogically and vaguely defined as "IFI's change to its products, including websites, packaging, logos, trade dress, advertising, social media, and marketing materials that were placed into the market in and around October 2024 to focus on health and nutrition, among other things." Impossible Foods interprets "IFI Rebrand" to mean Impossible Foods's launch of its "meatier brand identity" after March 2024.

4. Impossible Foods objects to the definition of "concerning" as overly broad, unduly burdensome, and disproportionate to the needs of the case. Impossible Foods interprets

"concerning" relating to, referring to, describing, evidencing, or constituting.

5. Impossible Foods objects to each Request to the extent it concerns activities outside the United States because such activities are not relevant under the territoriality principle of trademark law. Impossible Foods's searches will be limited to U.S. activities.

6. Impossible Foods objects to each Request that seeks production of "all documents" on a particular Request because such Requests would impose an undue burden and expense on Impossible Foods and are disproportionate to the needs of the case. Impossible Foods will conduct reasonable searches for responsive documents pursuant to the responses and objections below but will not undertake exhaustive searches for "all" responsive documents.

7. Impossible Foods objects to, and will not comply with, Instruction 2 because it imposes an undue burden on Impossible Foods and is disproportionate to the needs of the case. Defendant/Counter-Plaintiff has construed "Plaintiff/Counter-Defendant's Marks" because it includes more than 49 trademark registrations and applications, many of which cover goods and services not relevant to any claim or defense asserted in this action, and requiring Impossible Foods to provide different answers for "different types of goods or services" within those 48 registrations and applications is disproportionate to the needs of the case.

8. Impossible Foods objects to, and will not comply with, Instruction 3, because it imposes an undue burden on Impossible Foods and is disproportionate to the needs of the case. Impossible Foods is unable to determine whether an answer "differs as between different persons and entities"—an exceedingly vague phrase—nor would such differentiation be relevant to any claim or defense.

9. Impossible Foods objects to, and will not comply with, Instruction 4, because it imposes an obligation beyond what is required by the Federal Rules, would impose an undue burden on Impossible Foods, and is disproportionate to the needs of the case.

10. Impossible Foods objects to, and will not comply with, Instruction 6 because it imposes an obligation beyond what is required by Federal Rule of Civil Procedure 26(b)(5)(ii). Impossible Foods has provided a privilege log that complies with applicable law. In response to

many of the Requests below, Impossible Foods agrees to produce "non-privileged" documents, but Impossible Foods's specific claims of privilege will be, if needed, made in a privilege log to be served within a reasonable time or on a date on which the parties agree to exchange such logs. Impossible Foods will not log privileged or work product documents created after the filing of the complaint, as doing so would impose an undue burden on Impossible Foods.

11. Impossible Foods objects to, and will not comply with, Instruction 7 because it imposes an obligation beyond what is required by Federal Rule of Civil Procedure 34(b)(2)(E)(i). Impossible Foods will produce documents "as they are kept in the usual course of business." *Id.*

**OBJECTIONS AND RESPONSES TO THE REQUESTS**

**REQUEST NO. 106:**

Produce all documents referenced in IFI's responses to Impossible's Second Set of Interrogatories.

**RESPONSE:**

Impossible Foods objects to this Request because it is overly overbroad, unduly burdensome, and disproportionate to the needs of the case because it requests "all" documents referenced in Impossible Foods's responses to Defendants' Second Set of Interrogatories.

In accordance with these objections, Impossible Foods states that it has already conducted a reasonable search for and produced non-privileged documents responsive to this Request.

**REQUEST NO. 107:**

Produce all documents that IFI relied upon to respond to Impossible's Second Set of Interrogatories.

**RESPONSE:**

Impossible Foods objects to this Request on the ground that it seeks documents protected from discovery by the attorney-client privilege and the work product doctrine. Impossible Foods also objects to this Request on the ground that it is overly overbroad, unduly burdensome, and disproportionate to the needs of the case because it requests "all" documents that Impossible Foods's relied upon to respond to Defendants' Second Set of Interrogatories without limitation.

In accordance with these objections, Impossible Foods states that it has already conducted a reasonable search for and produced non-privileged documents responsive to this Request.

**REQUEST NO. 108:**

Produce all documents referenced in IFI's responses to Impossible's Third Set of Interrogatories.

**RESPONSE:**

Impossible Foods objects to this Request because it is overly overbroad, unduly burdensome, and disproportionate to the needs of the case because it requests "all" documents referenced in Impossible Foods's responses to Defendants' Third Set of Interrogatories without limitation.

In accordance with these objections, Impossible Foods states that it has already conducted a reasonable search for and produced non-privileged documents responsive to this Request.

**REQUEST NO. 109:**

Produce all documents that IFI relied upon to respond to Impossible's Third Set of Interrogatories.

**RESPONSE:**

Impossible Foods objects to this Request on the ground that it seeks documents protected from discovery by the attorney-client privilege and the work product doctrine. Impossible Foods also objects to this Request on the ground that it is overly overbroad, unduly burdensome, and disproportionate to the needs of the case because it requests "all" documents that Impossible Foods relied upon to respond to Defendants' Third Set of Interrogatories without limitation.

In accordance with these objections, Impossible Foods states that it has already conducted a reasonable search for and produced non-privileged documents responsive to this Request.

**REQUEST NO. 110:**

Produce all documents referenced in IFI's responses to Joel Runyon's First Set of Interrogatories.

**RESPONSE:**

Impossible Foods objects to this Request because it is overly overbroad, unduly burdensome, and disproportionate to the needs of the case because it requests "all" documents referenced in Impossible Foods's responses to Joel Runyon's First Set of Interrogatories without limitation.

In accordance with these objections, Impossible Foods states that it has already conducted a reasonable search for and produced non-privileged documents responsive to this Request.

**REQUEST NO. 111:**

Produce all documents that IFI relied upon to respond to Joel Runyon's First Set of Interrogatories.

**RESPONSE:**

Impossible Foods objects to this Request on the ground that it seeks documents protected from discovery by the attorney-client privilege and the work product doctrine. Impossible Foods also objects to this Request on the ground that it is overly overbroad, unduly burdensome, and disproportionate to the needs of the case because it requests "all" documents that Impossible Foods relied upon to respond to Joel Runyon's First Set of Interrogatories without limitation.

In accordance with these objections, Impossible Foods states that it has already conducted a reasonable search for and produced non-privileged documents responsive to this Request.

**REQUEST NO. 112:**

Produce all documents concerning the selection, adoption, first use, or decision to use IFI's current brand trademarks as related to IFI's Rebrand.

**RESPONSE:**

Impossible Foods objects to this Request on the ground that it seeks documents protected from discovery by the attorney-client privilege and the work product doctrine. Impossible Foods also objects to this Request on the ground that it is overly overbroad, unduly burdensome, and disproportionate to the needs of the case because it requests "all" documents concerning the selection, adoption, first use, or decision to use Impossible Foods's current brand trademarks as related to Impossible Foods's Rebrand without limitation. Impossible Foods further objects to this

Request on the ground that "IFI's current brand trademarks as related to IFI's Rebrand" is vague, ambiguous, and undefined. Impossible Foods will interpret "IFI's current brand trademarks as related to IFI's Rebrand" to mean Impossible Foods's IMPOSSIBLE-formative marks. In addition, Impossible Foods objects to this Request because it seeks information already within Defendants' or their counsel's knowledge, possession, custody, or control. Finally, Impossible Foods objects to this Request as cumulative and duplicative of Request Nos. 3-5 and 7 and Interrogatory Nos. 2-3.

In accordance with these objections, Impossible Foods states that it has already conducted a reasonable search for and produced non-privileged documents responsive to this Request.

**REQUEST NO. 113:**

On a product-by-product basis, produce documents sufficient to identify, by quarter or annually, the profits from sales of IFI's goods and services offered under one or more of its trademarks.

**RESPONSE:**

Impossible Foods objects to this Request as cumulative and duplicative of Request Nos. 21 and 74. Impossible Foods also objects to this Request because it seeks information already within Defendants' or their counsel's knowledge, possession, custody, or control. Impossible Foods further objects to this Request on the ground that "IFI's goods and services offered under one or more of its trademarks" is vague, ambiguous, and undefined. Impossible Foods will interpret "IFI's goods and services offered under one or more of its trademarks" to mean Impossible Foods's goods or services offered in connection with one or more of its IMPOSSIBLE-formative marks. Finally, Impossible Foods also objects to this Request on the ground that it seeks information organized in a way not organized by Impossible Foods in the ordinary course of business.

In accordance with these objections, Impossible Foods states that it has already conducted a reasonable search for and produced non-privileged documents responsive to this Request.

**REQUEST NO. 114:**

Produce all documents sufficient to show IFI's organizational structure for each year since 2011, including identifications of persons responsible for tracking the budget, revenue, and profits associated with the goods and services associated with IFI's trademark.

**RESPONSE:**

Impossible Foods objects to this Request on the ground that it is overly overbroad, unduly burdensome, and disproportionate to the needs of the case because it requests "all" documents sufficient to show Impossible Foods's organizational structure for each year since 2011. Impossible Foods also objects to this Request as unduly burdensome because it seeks, through a document request, information—"identifications of persons responsible for tracking the budget, revenue, and profits associated with the goods and services associated with IFI's trademark"—that can be obtained from another source that is more convenient, less burdensome, and less expensive, such as interrogatories. Impossible Foods further objects to this Request as cumulative and duplicative of Request No. 45. In addition, Impossible Foods objects to this Request because it seeks information already within Defendants' or their counsel's knowledge, possession, custody, or control. Finally, Impossible Foods also objects to this Request on the ground that it seeks information organized in a way not organized by Impossible Foods in the ordinary course of business.

In accordance with these objections, Impossible Foods has already conducted a reasonable search for and produced non-privileged documents responsive to this Request.

**REQUEST NO. 115:**

Produce all documents sufficient to show the date of the first sale IFI-branded apparel.

**RESPONSE:**

Impossible Foods objects to this Request as cumulative and duplicative of Request Nos. 7-9 and Interrogatory No. 5. Impossible Foods also objects to this Request on the ground that it is overly overbroad, unduly burdensome, and disproportionate to the needs of the case because it requests "all" documents sufficient to show the date of the first sale Impossible Foods's-branded apparel. Impossible Foods further objects to this Request as unduly burdensome because it seeks,

through a document request, information—"the date of the first sale IFI-branded apparel"—that can be obtained from another source that is more convenient, less burdensome, and less expensive, such as interrogatories.

In accordance with these objections, Impossible Foods states that it has already conducted a reasonable search for and has not found any non-privileged documents responsive to this Request.

**REQUEST NO. 116:**

Produce all documents sufficient to show the volume of IFI's apparel sales, by quarter or annually, from the date of first sale of IFI-branded apparel.

**RESPONSE:**

Impossible Foods objects to this Request as cumulative and duplicative of Request Nos. 21 and 113. Impossible Foods also objects to this Request on the ground that it is overly overbroad, unduly burdensome, and disproportionate to the needs of the case because it requests "all" documents sufficient to show the volume of Impossible Foods's apparel sales, by quarter or annually, from the date of first sale of Impossible Foods-branded apparel without limitation. Impossible Foods further objects to this Request as unduly burdensome because it seeks, through a document request, information—"the volume of IFI's apparel sales, by quarter or annually, from the date of first sale of IFI-branded apparel"—that can be obtained from another source that is more convenient, less burdensome, and less expensive, such as interrogatories. Finally, Impossible Foods also objects to this Request on the ground that it seeks information organized in a way not organized by Impossible Foods in the ordinary course of business.

In accordance with these objections, Impossible Foods states that it has already conducted a reasonable search for and has not found any non-privileged documents responsive to this Request.

**REQUEST NO. 117:**

Produce all documents sufficient to show the revenue for IFI's apparel sales, by quarter or annually, from the date of first sale of IFI-branded apparel.

**RESPONSE:**

Impossible Foods objects to this Request as cumulative and duplicative of Request Nos. 21, 113, and 116. Impossible Foods also objects to this Request on the ground that it is overly overbroad, unduly burdensome, and disproportionate to the needs of the case because it requests "all" documents sufficient to show the revenue for Impossible Foods's apparel sales, by quarter or annually, from the date of first sale of Impossible Foods-branded apparel without limitation. Impossible Foods further objects to this Request as unduly burdensome because it seeks, through a document request, information—"the volume of IFI's apparel sales, by quarter or annually, from the date of first sale of IFI-branded apparel"—that can be obtained from another source that is more convenient, less burdensome, and less expensive, such as interrogatories. Finally, Impossible Foods also objects to this Request on the ground that it seeks information organized in a way not organized by Impossible Foods in the ordinary course of business.

In accordance with these objections, Impossible Foods states that it has already conducted a reasonable search for and has not found any non-privileged documents responsive to this Request.

**REQUEST NO. 118:**

Produce all documents sufficient to show the profits from IFI's apparel sales, by quarter or annually, from the date of first sale of IFI-branded apparel.

**RESPONSE:**

Impossible Foods objects to this Request as cumulative and duplicative of Request Nos. 21, 113, 116, and 117. Impossible Foods also objects to this Request on the ground that it is overly overbroad, unduly burdensome, and disproportionate to the needs of the case because it requests "all" documents sufficient to show the profits from Impossible Foods's apparel sales, by quarter or annually, from the date of first sale of Impossible Foods-branded apparel without limitation. Impossible Foods further objects to this Request as unduly burdensome because it seeks, through a document request, information—"the profits from IFI's apparel sales, by quarter or annually, from the date of first sale of IFI-branded apparel"—that can be obtained from another source that is

more convenient, less burdensome, and less expensive, such as interrogatories. Finally, Impossible Foods also objects to this Request on the ground that it seeks information organized in a way not organized by Impossible Foods in the ordinary course of business.

In accordance with these objections, Impossible Foods states that it has already conducted a reasonable search for and has not found any non-privileged documents responsive to this Request.

**REQUEST NO. 119:**

Produce documents sufficient to show the date of the first sale of any cookbook offered under or in connection with any IFI trademark.

**RESPONSE:**

Impossible Foods objects to this Request on the ground that it is overly overbroad, unduly burdensome, and disproportionate to the needs of the case because it requests documents sufficient to show the date of the first sale of "any" cookbook offered under or in connection with "any" of Impossible Foods's trademarks, which includes 49 trademark registrations and applications, many of which are either not an IMPOSSIBLE-formative mark (e.g., U.S. Reg. No. 5,381,475) or otherwise are not relevant to any claim or defense in this action. Impossible Foods also objects to this Request as unduly burdensome because it seeks, through a document request, information—"the date of the first sale of any cookbook offered under or in connection with any IFI trademark"—that can be obtained from another source that is more convenient, less burdensome, and less expensive, such as interrogatories. Impossible Foods further objects to this Request because it seeks information in the public domain and equally available to Defendants or their counsel and/or already within Defendants' or their counsel's knowledge, possession, custody, or control. Finally, Impossible Foods objects to this Request as cumulative and duplicative of Request Nos. 7-9 and Interrogatory No. 5.

In accordance with these objections, Impossible Foods states that it has already conducted a reasonable search for and produced non-privileged documents responsive to this Request.

**REQUEST NO. 120:**

Produce documents sufficient to show the approximate volume of IFI's cookbook sales, by quarter or annually, from the date of first sale.

**RESPONSE:**

Impossible Foods objects to this Request on the ground that it is overly overbroad, unduly burdensome, and disproportionate to the needs of the case because it requests documents sufficient to show the approximate volume of Impossible Foods's cookbook sales, by quarter or annually, from the date of first sale without limitation. Impossible Foods also objects to this Request on the ground that it is unduly burdensome as identifying "the approximate volume of IFI's cookbook sales" divorced from the IMPOSSIBLE-formative marks that Defendants allege infringe their purported rights is disproportionate to the needs of the case. Impossible Foods further objects to this Request because it seeks information already within Defendants' or their counsel's knowledge, possession, custody, or control. In addition, Impossible Foods objects to this Request on the ground that it seeks information organized in a way not organized by Impossible Foods in the ordinary course of business. Impossible Foods also objects to this Request as cumulative and duplicative of Request No. 21. Finally, Impossible Foods objects to this Request on the ground that "the approximate volume of IFI's cookbook sales" is vague, ambiguous, and undefined. Impossible Foods will interpret "the approximate volume of IFI's cookbook sales" to mean the number of cookbooks that Impossible Foods has sold in connection with its IMPOSSIBLE-formative marks.

In accordance with these objections, Impossible Foods states that it has already conducted a reasonable search for and produced non-privileged documents responsive to this Request.

**REQUEST NO. 121:**

Produce documents sufficient to show the approximate revenue for IFI's cookbook sales, by quarter or annually, from the date of first sale.

**RESPONSE:**

Impossible Foods objects to this Request on the ground that it is overly overbroad, unduly burdensome, and disproportionate to the needs of the case because it requests documents sufficient

to show the approximate revenue for Impossible Foods's cookbook sales, by quarter or annually, from the date of first sale without limitation. Impossible Foods also objects to this Request on the ground that it is unduly burdensome as identifying "the approximate revenue for IFI's cookbook sales" divorced from the IMPOSSIBLE-formative marks that Defendants allege infringe their purported rights is disproportionate to the needs of the case. Impossible Foods further objects to this Request because it seeks information already within Defendants' or their counsel's knowledge, possession, custody, or control. In addition, Impossible Foods objects to this Request on the ground that it seeks information organized in a way not organized by Impossible Foods in the ordinary course of business. Finally, Impossible Foods objects to this Request as cumulative and duplicative of Request Nos. 21, 113, and 120.

In accordance with these objections, Impossible Foods states that it has already conducted a reasonable search for and produced non-privileged documents responsive to this Request.

**REQUEST NO. 122:**

Produce documents sufficient to show the approximate profits from IFI's cookbook sales, by quarter or annually, from the date of first sale.

**RESPONSE:**

Impossible Foods objects to this Request on the ground that it is overly overbroad, unduly burdensome, and disproportionate to the needs of the case because it requests documents sufficient to show the approximate profits from Impossible Foods's cookbook sales, by quarter or annually, from the date of first sale without limitation. Impossible Foods also objects to this Request on the ground that it is unduly burdensome as identifying "the approximate profits from IFI's cookbook sales" divorced from the IMPOSSIBLE-formative marks that Defendants allege infringe their purported rights is disproportionate to the needs of the case. Impossible Foods further objects to this Request because it seeks information already within Defendants' or their counsel's knowledge, possession, custody, or control. In addition, Impossible Foods objects to this Request on the ground that it seeks information organized in a way not organized by Impossible Foods in the ordinary course of business. Finally, Impossible Foods objects to this Request as cumulative

and duplicative of Request Nos. 21, 113, 120, and 121.

In accordance with these objections, Impossible Foods states that it has already conducted a reasonable search for and produced non-privileged documents responsive to this Request.

**REQUEST NO. 123:**

Produce documents concerning any valuations performed of IFI and its assets, including all drafts and final versions, shared with any potential investors from 2011 to the present.

**RESPONSE:**

Impossible Foods objects to this Request on the ground that it seeks documents protected from discovery by the attorney-client privilege and the work product doctrine. Impossible Foods also objects to this Request on the ground that it is overly overbroad, unduly burdensome, and disproportionate to the needs of the case because it requests documents concerning "any" valuations performed of Impossible Foods and its assets, including "all" drafts and final versions, shared with "any" potential investors from 2011 to the present. In addition, Impossible Foods objects to this Request on the ground that valuations performed of IFI and its assets from 2011 to 2015 are not relevant to any claim or defense asserted in this action.

In accordance with these objections, Impossible Foods states that it has already conducted a reasonable search for and has not found any non-privileged documents responsive to this Request.

**REQUEST NO. 124:**

Produce all documents concerning business forecasts and projections, by quarter or annually, from 2025 onward.

**RESPONSE:**

Impossible Foods objects to this Request on the ground that it seeks documents protected from discovery by the attorney-client privilege and the work product doctrine. Impossible Foods also objects to this Request on the ground that it is overly overbroad, unduly burdensome, and disproportionate to the needs of the case because it requests "all" documents concerning business forecasts and projections, by quarter or annually, from 2025 onward. Impossible Foods further

objects to this Request on the ground that "business forecasts and projections," especially those divorced from Impossible Foods and its IMPOSSIBLE-formative marks, are not relevant to any claim or defense asserted in this action. In addition, Impossible Foods objects to this Request on the ground that "business forecasts and projections" is vague, ambiguous, and undefined.

In accordance with these objections, Impossible Foods states that it will not comply with this Request but is willing to meet and confer.

**REQUEST NO. 125:**

Produce documents sufficient to show internal reporting of annual sales and distribution activities for goods and services bearing Plaintiff/Counter-Defendant's Marks from 2011 to the present.

**RESPONSE:**

Impossible Foods objects to this Request on the ground that it seeks documents protected from discovery by the attorney-client privilege and the work product doctrine. Impossible Foods also objects to this Request on the ground that it is overly overbroad, unduly burdensome, and disproportionate to the needs of the case because it requests documents sufficient to show internal reporting of annual sales and distribution activities for goods and services bearing Plaintiff/Counter-Defendant's Marks from *2011 to the present*. In addition, Impossible Foods objects to this Request on the ground that "internal reporting of annual sales and distribution" is vague, ambiguous, and undefined. Impossible Foods also objects to this Request as cumulative and duplicative of Request Nos. 21, 113, and 116-122. Impossible Foods further objects to this Request on the ground that "internal reporting of annual sales and distribution activities" are not relevant to any claim or defense asserted in this action. Finally, Impossible Foods objects to this Request on the ground that annual sales and distribution activities for goods and services bearing Plaintiff/Counter-Defendant's Marks from 2011 to 2015 are not relevant to any claim or defense asserted in this action.

In accordance with these objections, Impossible Foods states that it will not comply with this Request but is willing to meet and confer.

**REQUEST NO. 126:**

Produce all documents concerning IFI's marketing strategies for each year from 2011 to the present.

**RESPONSE:**

Impossible Foods objects to this Request on the ground that it is overly overbroad, unduly burdensome, and disproportionate to the needs of the case because it requests "all" documents concerning Impossible Foods's marketing strategies *for each year from 2011 to the present*. Impossible Foods also objects to this Request on the ground that "marketing strategies," divorced from Impossible Foods's IMPOSSIBLE-formative marks and Impossible Foods's goods or services offered in connection with IMPOSSIBLE-formative marks, are not relevant to any claim or defense asserted in this action. Impossible Foods further objects to this Request on the ground that "marketing strategies" is vague, ambiguous, and undefined. In addition, Impossible Foods objects to this Request because it seeks information already within Defendants' or their counsel's knowledge, possession, custody, or control. Impossible Foods also objects to this Request as cumulative and duplicative as Request Nos. 11-12, 15-19, 25, 30, 52-53, 69-72, and 79-82 and Interrogatory Nos. 6 and 11. Finally, Impossible Foods objects to this Request on the ground that Impossible Foods's marketing strategies for each year from 2011 to 2015 are not relevant to any claim or defense asserted in this action.

In accordance with these objections, Impossible Foods states that it has already conducted a reasonable search for and produced non-privileged documents responsive to this Request.

**REQUEST NO. 127:**

Produce all documents concerning the annual performance, benchmarking, or evaluations of the success, failure, or efficacy of each year's marketing activities from 2011 to the present.

**RESPONSE:**

Impossible Foods objects to this Request on the ground that it is overly overbroad, unduly burdensome, and disproportionate to the needs of the case because it requests "all" documents concerning the annual performance, benchmarking, or evaluations of the success, failure, or

efficacy of *each year's* marketing activities *from 2011 to the present*. Impossible Foods also objects to this Request on the ground that "annual performance, benchmarking, or evaluations of the success, failure, or efficacy of each year's marketing activities," divorced from Impossible Foods's IMPOSSIBLE-formative marks and Impossible Foods's goods or services offered in connection with IMPOSSIBLE-formative marks, are not relevant to any claim or defense asserted in this action. Impossible Foods further objects to this Request on the ground that "annual performance, benchmarking, or evaluations of the success, failure, or efficacy of each year's marketing activities" is vague, ambiguous, and undefined. In addition, Impossible Foods objects to this Request because it seeks information already within Defendants' or their counsel's knowledge, possession, custody, or control. And Impossible Foods also objects to this Request as cumulative and duplicative as Request Nos. 11-12, 15-19, 25, 30, 52-53, 69-72, 79-82, and 126 and Interrogatory Nos. 6 and 11. Finally, Impossible Foods objects to this Request on the ground that each year's marketing activities from 2011 to 2015 are not relevant to any claim or defense asserted in this action.

In accordance with these objections, Impossible Foods states that it has already conducted a reasonable search for and produced non-privileged documents responsive to this Request.

**REQUEST NO. 128:**

Produce documents sufficient to show IFI's marketing expenditures from 2011 to the present.

**RESPONSE:**

Impossible Foods objects to this Request as cumulative and duplicative of Request Nos. 12 and 79-82. Impossible Foods also objects to this Request on the ground that it is overly overbroad, unduly burdensome, and disproportionate to the needs of the case because it requests documents sufficient to show Impossible Foods's marketing expenditures *from 2011 to the present.* Impossible Foods further objects to this Request on the ground that "IFI's marketing expenditures," divorced from Impossible Foods's IMPOSSIBLE-formative marks and Impossible Foods's goods or services offered in connection with IMPOSSIBLE-formative marks, are not

relevant to any claim or defense asserted in this action. In addition, Impossible Foods objects to this Request because it seeks information already within Defendants' or their counsel's knowledge, possession, custody, or control. Impossible Foods also objects to this Request on the ground that "marketing expenditures" is vague, ambiguous, and undefined. Finally, Impossible Foods objects to this Request on the ground that Impossible Foods's marketing expenditures from 2011 to 2015 are not relevant to any claim or defense asserted in this action.

In accordance with these objections, Impossible Foods states that it has already conducted a reasonable search for and produced non-privileged documents responsive to this Request.

**REQUEST NO. 129:**

Produce all documents concerning IFI's branding strategies for each year from 2011 to the present.

**RESPONSE:**

Impossible Foods objects to this Request on the ground that it is overly overbroad, unduly burdensome, and disproportionate to the needs of the case because it requests "all" documents concerning Impossible Foods's branding strategies *for each year from 2011 to the present*. Impossible Foods further objects to this Request on the ground that "IFI's marketing expenditures," divorced from Impossible Foods's IMPOSSIBLE-formative marks and Impossible Foods's goods or services offered in connection with IMPOSSIBLE-formative marks, are not relevant to any claim or defense asserted in this action. In addition, Impossible Foods objects to this Request because it seeks information already within Defendants' or their counsel's knowledge, possession, custody, or control. Impossible Foods also objects to this Request on the ground that "branding strategies" is vague, ambiguous, and undefined. And Impossible Foods objects to this Request as cumulative and duplicative of Request Nos. 4-5, 22, 30-31, 46, and 126. Finally, Impossible Foods objects to this Request on the ground that Impossible Foods's branding strategies for each year from 2011 to 2015 are not relevant to any claim or defense asserted in this action.

In accordance with these objections, Impossible Foods states that it has already conducted

a reasonable search for and produced non-privileged documents responsive to this Request.

**REQUEST NO. 130:**

Produce all documents concerning the annual performance, benchmarking, or evaluations of the success, failure, or efficacy of each year's branding activities from 2011 to the present.

**RESPONSE:**

Impossible Foods objects to this Request on the ground that it is overly overbroad, unduly burdensome, and disproportionate to the needs of the case because it requests "all" documents concerning the annual performance, benchmarking, or evaluations of the success, failure, or efficacy of each year's branding activities *from 2011 to the present*. Impossible Foods further objects to this Request on the ground that "annual performance, benchmarking, or evaluations of the success, failure, or efficacy of each year's branding activities," divorced from Impossible Foods's IMPOSSIBLE-formative marks and Impossible Foods's goods or services offered in connection with IMPOSSIBLE-formative marks, are not relevant to any claim or defense asserted in this action. In addition, Impossible Foods objects to this Request because it seeks information already within Defendants' or their counsel's knowledge, possession, custody, or control. Impossible Foods also objects to this Request on the ground that "branding activities" is vague, ambiguous, and undefined. And Impossible Foods also objects to this Request as cumulative and duplicative as Request Nos. 11-12, 15-19, 25, 30, 52-53, 69-72, 79-82, and 127 and Interrogatory Nos. 6 and 11. Finally, Impossible Foods objects to this Request on the ground that branding activities from 2011 to 2015 are not relevant to any claim or defense asserted in this action.

In accordance with these objections, Impossible Foods states that it has already conducted a reasonable search for and produced non-privileged documents responsive to this Request.

**REQUEST NO. 131:**

Produce documents sufficient to show IFI's branding expenditures from 2011 to the present.

**RESPONSE:**

Impossible Foods objects to this Request on the ground that it is overly overbroad, unduly

burdensome, and disproportionate to the needs of the case because it requests documents regarding Impossible Foods's branding expenditures from 2011 to the present. Impossible Foods further objects to this Request on the ground that "branding expenditures," divorced from Impossible Foods's IMPOSSIBLE-formative marks and Impossible Foods's goods or services offered in connection with IMPOSSIBLE-formative marks, are not relevant to any claim or defense asserted in this action. Impossible Foods also objects to this Request because it seeks information already within Defendants' or their counsel's knowledge, possession, custody, or control. Impossible Foods further objects to this Request as cumulative and duplicative of Request Nos. 12, 79-82, and 128. In addition, Impossible Foods objects to this Request on the ground that "branding expenditures" is vague, ambiguous, and undefined. Finally, Impossible Foods objects to this Request on the ground that Impossible Foods's branding expenditures from 2011 to 2015 are not relevant to any claim or defense asserted in this action.

In accordance with these objections, Impossible Foods states that it has already conducted a reasonable search for and produced non-privileged documents responsive to this Request.

**REQUEST NO. 132:**

Produce all documents concerning IFI's advertising strategies for each year from 2011 to the present.

**RESPONSE:**

Impossible Foods objects to this Request on the ground that it is overly overbroad, unduly burdensome, and disproportionate to the needs of the case because it requests "all" documents concerning Impossible Foods's advertising strategies for each year from 2011 to the present. Impossible Foods further objects to this Request on the ground that "advertising strategies," divorced from Impossible Foods's IMPOSSIBLE-formative marks and Impossible Foods's goods or services offered in connection with IMPOSSIBLE-formative marks, are not relevant to any claim or defense asserted in this action. Impossible Foods also objects to this Request because it seeks information already within Defendants' or their counsel's knowledge, possession, custody, or control. In addition, Impossible Foods objects to this Request on the ground that "advertising

strategies" is vague, ambiguous, and undefined. And Impossible Foods objects to this Request as cumulative and duplicative of Request Nos. 4-5, 22, 30-31, 46, 126, and 129. Finally, Impossible Foods objects to this Request on the ground that Impossible Foods's advertising strategies for each year from 2011 to 2015 are not relevant to any claim or defense asserted in this action.

In accordance with these objections, Impossible Foods states that it has already conducted a reasonable search for and produced non-privileged documents responsive to this Request.

**REQUEST NO. 133:**

Produce all documents concerning the annual performance, benchmarking, or evaluations of the success, failure, or efficacy of each year's advertising activities from 2011 to the present.

**RESPONSE:**

Impossible Foods objects to this Request on the ground that it is overly overbroad, unduly burdensome, and disproportionate to the needs of the case because it requests "all" documents concerning the annual performance, benchmarking, or evaluations of the success, failure, or efficacy of each year's advertising activities from 2011 to the present. Impossible Foods further objects to this Request on the ground that "annual performance, benchmarking, or evaluations of the success, failure, or efficacy of each year's advertising activities," divorced from Impossible Foods's IMPOSSIBLE-formative marks and Impossible Foods's goods or services offered in connection with IMPOSSIBLE-formative marks, are not relevant to any claim or defense asserted in this action. Impossible Foods also objects to this Request because it seeks information already within Defendants' or their counsel's knowledge, possession, custody, or control. In addition, Impossible Foods objects to this Request on the ground that "advertising activities" is vague, ambiguous, and undefined. And Impossible Foods also objects to this Request as cumulative and duplicative as Request Nos. 11-12, 15-19, 25, 30, 52-53, 69-72, 79-82, 127, and 130 and Interrogatory Nos. 6 and 11. Finally, Impossible Foods objects to this Request on the ground that Impossible Foods's advertising activities for each year from 2011 to 2015 are not relevant to any claim or defense asserted in this action.

In accordance with these objections, Impossible Foods states that it has already conducted

a reasonable search for and produced non-privileged documents responsive to this Request.

**REQUEST NO. 134:**

Produce documents sufficient to show IFI's advertising expenditures from 2011 to the present.

**RESPONSE:**

Impossible Foods objects to this Request on the ground that it is overly overbroad, unduly burdensome, and disproportionate to the needs of the case because it requests documents sufficient to show Impossible Foods's advertising expenditures from 2011 to the present. Impossible Foods further objects to this Request on the ground that "advertising expenditures," divorced from Impossible Foods's IMPOSSIBLE-formative marks and Impossible Foods's goods or services offered in connection with IMPOSSIBLE-formative marks, are not relevant to any claim or defense asserted in this action. Impossible Foods also objects to this Request because it seeks information already within Defendants' or their counsel's knowledge, possession, custody, or control. Impossible Foods further objects to this Request on the ground that Impossible Foods's advertising expenditures from 2011 to 2015 are not relevant to any claim or defense asserted in this action. In addition, Impossible Foods further objects to this Request as cumulative and duplicative of Request Nos. 12, 79-82, 128, and 131.

In accordance with these objections, Impossible Foods states that it has already conducted a reasonable search for and produced non-privileged documents responsive to this Request.

**REQUEST NO. 135:**

Produce all documents concerning distribution, partnership, or licensing agreements with any third party involving any IFI's product, brand, or mark from 2011 to the present.

**RESPONSE:**

Impossible Foods objects to this Request on the ground that it is overly overbroad, unduly burdensome, and disproportionate to the needs of the case because it requests "all" documents concerning distribution, partnership, or licensing agreements with "any" third party involving "any" Impossible Foods's product, brand, or mark from 2011 to the present. Impossible Foods

further objects to this Request on the ground that "distribution, partnership, or licensing agreements with any third party," divorced from Impossible Foods's IMPOSSIBLE-formative marks and Impossible Foods's goods or services offered in connection with IMPOSSIBLE-formative marks, are not relevant to any claim or defense asserted in this action. Impossible Foods also objects to this Request because it seeks information already within Defendants' or their counsel's knowledge, possession, custody, or control. Impossible Foods further objects to this Request on the ground that distribution, partnership, or licensing agreements with "any" third party involving "any" Impossible Foods's product, brand, or mark from 2011 to 2015 are not relevant to any claim or defense asserted in this action. In addition, Impossible Foods objects to this Request as cumulative and duplicative of Request Nos. 13, 20, 32, and 50-53.

In accordance with these objections, Impossible Foods states that it has already conducted a reasonable search for and produced non-privileged documents responsive to this Request.

**REQUEST NO. 136:**

Produce documents sufficient to show the annual sales from IFI's distribution, partnership, or licensing agreements with any third party involving any IFI's product, brand, or mark from 2011 to the present.

**RESPONSE:**

Impossible Foods objects to this Request on the ground that it is overly overbroad, unduly burdensome, and disproportionate to the needs of the case because it requests documents sufficient to show the annual sales from Impossible Foods's distribution, partnership, or licensing agreements with "any" third party involving "any" Impossible Foods's product, brand, or mark from 2011 to the present. Impossible Foods further objects to this Request on the ground that "the annual sales from IFI's distribution, partnership, or licensing agreements with any third party," divorced from Impossible Foods's IMPOSSIBLE-formative marks and Impossible Foods's goods or services offered in connection with IMPOSSIBLE-formative marks, are not relevant to any claim or defense asserted in this action. Impossible Foods also objects to this Request because it seeks information already within Defendants' or their counsel's knowledge, possession, custody,

or control. Impossible Foods further objects to this Request on the ground that the annual sales from Impossible Foods's distribution, partnership, or licensing agreements with "any" third party involving "any" Impossible Foods's product, brand, or mark from 2011 to 2015 are not relevant to any claim or defense asserted in this action. In addition, Impossible Foods also objects to this Request as cumulative and duplicative of Request Nos. 21, 32, and 135.

In accordance with these objections, Impossible Foods states that it has already conducted a reasonable search for and produced non-privileged documents responsive to this Request.

**REQUEST NO. 137:**

Produce documents sufficient to show the annual revenues from IFI's distribution, partnership, or licensing agreements with any third party involving any IFI's product, brand, or mark from 2011 to the present.

**RESPONSE:**

Impossible Foods objects to this Request on the ground that it is overly overbroad, unduly burdensome, and disproportionate to the needs of the case because it requests documents sufficient to show the annual revenues from Impossible Foods's distribution, partnership, or licensing agreements with "any" third party involving "any" Impossible Foods's product, brand, or mark from 2011 to the present. Impossible Foods further objects to this Request on the ground that "the annual revenue from IFI's distribution, partnership, or licensing agreements with any third party," divorced from Impossible Foods's IMPOSSIBLE-formative marks and Impossible Foods's goods or services offered in connection with IMPOSSIBLE-formative marks, are not relevant to any claim or defense asserted in this action. Impossible Foods also objects to this Request because it seeks information already within Defendants' or their counsel's knowledge, possession, custody, or control. Impossible Foods further objects to this Request on the ground that the annual revenue from Impossible Foods's distribution, partnership, or licensing agreements with "any" third party involving "any" Impossible Foods's product, brand, or mark from 2011 to 2015 are not relevant to any claim or defense asserted in this action. In addition, Impossible Foods also objects to this Request as cumulative and duplicative of Request Nos. 21, 32, and 135-136.

In accordance with these objections, Impossible Foods states that it has already conducted a reasonable search for and produced non-privileged documents responsive to this Request.

**REQUEST NO. 138:**

Produce profit and loss statements, by quarter or annually, from 2011 to the present.

**RESPONSE:**

Impossible Foods objects to this Request because it seeks information already within Defendants' or their counsel's knowledge, possession, custody, or control. Impossible Foods further objects to this Request on the ground that "profits and loss statements," divorced from Impossible Foods's IMPOSSIBLE-formative marks and Impossible Foods's goods or services offered in connection with IMPOSSIBLE-formative marks, are not relevant to any claim or defense asserted in this action. Impossible Foods also objects to this Request on the ground that the profit and loss statements, by quarter or annually, from 2011 to 2015 are not relevant to any claim or defense asserted in this action. In addition, Impossible Foods also objects to this Request as cumulative and duplicative of Request No. 21.

In accordance with these objections, Impossible Foods states that it has already conducted a reasonable search for and produced non-privileged documents responsive to this Request.

DATED: April 14, 2025

By: /s/ H. Forrest Flemming, III
R. Charles Henn Jr. (*pro hac vice*)
H. Forrest Flemming, III (*pro hac vice*)
Erica Chanin (*pro hac vice*)
KILPATRICK TOWNSEND & STOCKTON
1100 Peachtree Street NE
Atlanta, Georgia 30309
Telephone: (404) 815-6500
Facsimile: (404) 815-6555
Email: chenn@ktslaw.com
fflemming@ktslaw.com
echanin@ktslaw.com

Kollin J. Zimmermann (SBN 273092)
KILPATRICK TOWNSEND & STOCKTON
1801 Century Park East
Suite 2300
Los Angeles, CA 90067
Telphone: Telephone: (310) 777-3755
Email: kzimmermann@ktslaw.com

*Attorneys for Plaintiff/Counter-Defendant*
IMPOSSIBLE FOODS INC.

**CERTIFICATE OF SERVICE**

I hereby certify that on April 14, 2025, a true and correct copy of PLAINTIFF/COUNTER-DEFENDANT IMPOSSIBLE FOODS INC.'S OBJECTIONS AND RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF IMPOSSIBLE LLC'S FOURTH SET OF REQUESTS FOR DOCUMENTS was served via electronic mail on counsel for Defendants/Counter-Plaintiffs Impossible LLC and Joel Runyon, addressed as follows:

J. Noah Hagey
Adam S. Cashman
Gregory D. Washington
BRAUNHAGEY & BORDEN LLP
747 Front Street, 4th Floor
San Francisco, CA 94111
hagey@braunhagey.com
cashman@braunhagey.com
gwashington@braunhagey.com
TeamImpossibleBHB@braunhagey.com

Faith Barksdale
BRAUNHAGEY & BORDEN LLP
118 W 22nd Street, 12th Floor
New York, NY 10011
barksdale@braunhagey.com

David E. Weslow
Adrienne J. Kosak
WILEY REIN LLP
2050 M Street NW
Washington, DC 20036
dweslow@wiley.law
akosak@wiley.law

*/s/ H. Forrest Flemming, III*
H. Forrest Flemming, III