UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMPOSSIBLE FOODS INC., <br> Plaintiff, <br> v. <br> IMPOSSIBLE X LLC, et al., <br> Defendants. | Case No. 21-cv-02419-BLF (SVK) <br><br> **ORDER FOLLOWING *IN CAMERA* REVIEW** <br><br> Re: Dkt. Nos. 175, 222 |

On April 15, 2025, Plaintiff Impossible Foods, Inc. ("IF") filed a discovery statement seeking *in camera* review of certain emails between Defendant Joel Runyon and his trademark prosecution counsel to assess whether the crime-fraud exception required their production. *See* Dkt. 175. After a discovery hearing, an initial denial and other submissions, on June 4, 2025, the Honorable Beth L. Freeman granted IF's request for *in camera* review. Dkt. 222. Having now conducted *in camera* review, and considering the relevant law, the record in this action and for the reasons that follow, the Court hereby **ORDERS production of** the document submitted to the Court as Tab 6 (INT_IMP_00011214).

I.     **RELEVANT BACKGROUND**

This action is a trademark dispute between IF and Defendants Impossible X, LLC ("IXLLC") and Runyon. *See, generally*, Dkt. 151 ("TAC"). IF argues that IXLLC and Mr. Runyon committed fraud on the United States Patent and Trademark Office ("PTO") by submitting false, sworn statements of use as to the "IMPOSSIBLE FITNESS" word and design marks (Reg. Nos. 5,590,801 and 5,603,025), the "IMPOSSIBLE" word mark (Reg. No. 5,620,625) and the "IMPOSSIBLE" motion mark (Reg. No. 6,571,603). Dkt. 176-2 at 2. In seeking *in camera* review, IF relied on a number of materials, including for example: (1) IXLLC's April 4, 2025 Answer admitting that, "at the time Impossible X LLC filed the [2018 Statement of Use] in

connection with" these marks, it "was not yet using [the marks] in connection with each category of apparel listed in the" statements, (*id.*; Dkt. 168 ("Answer to TAC"), ¶¶ 59, 66); and (2) the testimony elicited at the April 10, 2025 deposition of Mr. Runyon, (*id.* at 4-5; Dkt. 207 (Sealed Transcript)).

In her June 4, 2025 order granting *in camera* review, Judge Freeman explained that, "considering only the material relied upon by IF in support if its threshold *Zolin* showing," the portions of Mr. Runyon's testimony were sufficient "to support a good faith belief by a reasonably person[] that *in camera* review of the materials *may* reveal evidence to establish the claim that the crime-fraud exception applies." Dkt. 222 at 7 (internal quotation marks and citation omitted). Pursuant to the undersigned's subsequent order, (Dkt. 224), Defendants then submitted for review communications between Mr. Runyon and his counsel concerning the statement of use and incontestability declaration filed with the PTO.

## II.     LEGAL STANDARDS

### A.     The Crime-Fraud Exception

"While the attorney-client privilege is 'arguably [the] most fundamental of the common law privileges recognized under Federal Rule of Evidence 501,' it is 'not absolute.'" *In re Grand Jury Investigation*, 810 F.3d 1110, 1113 (9th Cir. 2016) (quoting *In re Napster, Inc. Copyright Litig.*, 479 F.3d 1078, 1090 (9th Cir.2007), *abrogated in part on other grounds by Mohawk Indus., Inc. v. Carpenter,* 558 U.S. 100 (2009)). Communications are not privileged under the crime-fraud exception when a client consults an attorney for advice in to further a fraud or a crime. *Id.*

> To invoke the crime-fraud exception, a party must satisfy a two-part test: First, the party must show that the client was engaged in or planning a criminal or fraudulent scheme when it sought the advice of counsel to further the scheme. Second, it must demonstrate that the attorney-client communications for which production is sought are sufficiently related to and were made *in furtherance of* the intended, or present, continuing illegality.

*Id.* (emphasis in original) (cleaned up). Fraud on the PTO may qualify as a fraudulent scheme. *See, e.g.*, *Starsight Telecast, Inc. v. Gemstar Dev. Corp.*, 158 F.R.D. 650, 655-56 (N.D. Cal. 1994) (applying the crime-fraud exception in the context of fraud "[i]n the patent application context"), *appeal dismissed,* 232 F.3d 910 (Fed. Cir. 2000); *Adidas Am., Inc. v. TRB Acquisitions LLC*, No.

2

15-cv-02113-SI, 2018 WL 4600291, at *1 (D. Or. Sept. 25, 2018) (applying the crime-fraud exception in the context of "[f]raud in procuring a trademark registration or renewal").

### B. Fraud on the PTO

"Fraud in procuring a trademark registration or renewal occurs when an applicant knowingly makes false, material representations of fact in connection with his application." *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009). The Ninth Circuit has described the relevant elements of fraud on the PTO as: "1) a false representation regarding a material fact; 2) the registrant's knowledge or belief that the representation is false; 3) the registrant's intent to induce reliance upon the misrepresentation; [and] 4) actual, reasonable reliance on the misrepresentation; and 5) damages proximately caused by that reliance." *OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, 897 F.3d 1008, 1019 (9th Cir. 2018). Under the Lanham Act, as relevant to this case, an application for registration of a trademark requires, *inter alia*, the submission of a "a verified statement that the mark is in use in commerce and specifying the date of the applicant's first use of the mark in commerce and those goods or services specified in the notice of allowance on or in connection with which the mark is used in commerce. 15 U.S.C. § 1051(d). The standard for a substantive finding of fraud on the PTO is clear and convincing evidence. *In re Bose Corp.*, 580 F.3d at 1243; *OTR Wheel Eng'g*, 897 F.3d at 1020 ("We agree and join the Federal Circuit in requiring clear and convincing evidence for the elements of fraud on the PTO.").

### III. DISCUSSION

#### A. Whether Mr. Runyon Was Engaged in Fraud on the PTO

In order to determine whether the crime-fraud exception applies, the Court must first determine whether Defendants were engaged in fraud on the PTO. *In re Grand Jury Investigation*, 810 F.3d at 1113. The Court's framework for this analysis has three notable features.

First, while the ultimate merits of a claim for fraud on the PTO must be established by clear and convincing evidence, at this stage the Court need only determine whether there is a *prima facie* case that Mr. Runyon was engaged in fraud on the PTO. *In re Grand Jury Investigation*, 810 F.3d at 1113; *In re Napster*, 479 F.3d at 1094-95. The appropriate standard for this determination in a civil case is preponderance of the evidence. *In re Napster*, 479 F.3d at

3

1095. Accordingly, the undersigned does not decide whether IF will ultimately prevail on its fraud claim.

Second, in assessing "step one to establish a *prima facie* case," as opposed to step two, a district court may, but need not, rely solely on the *in camera* review it conducted. *Cf. In re Grand Jury Investigation*, 810 F.3d at 1114. In making its determination, this Court relies on the *in camera* review it conducted, as well Defendants' Answer to the TAC and the deposition testimony of Mr. Runyon.

Third, IF asserts fraud on the PTO and sought crime-fraud production based on Defendants' 2018 Statements of Use, the January 2024 word mark statement of use and the July 2024 declaration of incontestability. Dkt. 175 at 3-4. However, having conducted its review, this Court finds that the only communications that are potentially implicated by the crime-fraud exception relate to the 2018 Statements of Use. Accordingly, the Court need not decide whether Defendants were engaged in fraud on the PTO at the time of IXLLC's 2024 submissions.

For the following reasons, the Court finds that IF has established a *prima facie* case that Defendants were engaged in fraud on the PTO with regard to the 2018 Statements of Use.

### 1.   A False Representation Regarding a Material Fact

The 2018 Statements of Use for the marks at issue, submitted by IXLLC at the direction of Mr. Runyon, represented to the PTO that the marks were in use in commerce with "[c]lothing and performance apparel, namely, t-shirts, sweatshirts, pants, shorts, tank tops, yoga pants, [and] tights." *See* Dkts. 151-18, 151-22; Answer to TAC, ¶¶ 58, 65 (admitting to the submission of the 2018 Statements of Use). Defendants admit that, although they sold t-shirts bearing the marks, in fact, IXLLC "was not yet using [the marks] in connection with each category of apparel listed in the SOU[s]." Answer to TAC, ¶¶ 59, 66. In deposition, Mr. Runyon testified that he did not believe IXLLC has ever sold pants and that IXLLC had never sold yoga pants. *See* Dkt. 207 at 131:2-3, 133:11-16. The Court finds that these admissions, coupled with the deposition testimony of Mr. Runyon, make it more-likely-than-not that the statements in the 2018 Statements of Use were false.

As to materiality, IF argues that "whether a mark is in 'use' as to each good and service

covered in an application or registration is material because a mark will not be registered or maintained without proof of use." Dkt. 175 at 7 (citing 15 U.S.C. §§ 1051(a), 1051(d)). This Court agrees, as the Federal Circuit has affirmed materiality findings in the analogous context of declarations of use for the purposes of renewal under Section 1058. *See In re Bose Corp.*, 580 F.3d at 1242, 1246.

### 2.     Knowledge or Belief that the Representation Was False

IXLLC's knowledge or belief that its representation regarding use was false presents the most challenging question in the crime-fraud analysis. At the outset, as all Parties to this dispute have stressed at various times, including in the discovery hearing on this matter, IXLLC "consists of just one person, Joel Runyon." Dkt. 175 at 7; Dkt. 205 at 32:7-20 ("Mr. Runyon has been running this company by himself for 15 years."). Accordingly, the Court agrees with IF's argument that Mr. Runyon and IXLLC, in submitting the statement, would have had knowledge of whether the marks were being used in connection with each of: t-shirts, sweatshirts, pants, shorts, tank tops, yoga pants and tights. *See* Dkt. 175 at 7; *see also* Dkt. 205 at 153:21-154:11 (confirming, for example, Mr. Runyon's knowledge on August 15, 2018, that the Impossible Fitness mark was not being used in connection with pants).

However, Defendants have consistently maintained that although Mr. Runyon may have known whether the marks were used on certain apparel, he did not know or belief that the *representation* was false, because he believed that the qualifier "namely" in the 2018 Statements of Use meant "for example." *E.g.*, Dkt. 205 at 27:9-15; Dkt. 207 at 161:5-14. In essence, Defendants argue that Mr. Runyon misunderstood what he was declaring and what was required. While the Court cannot say, on the record before it, that Mr. Runyon definitely knew his statements were false, the Court's *in camera* review identifies one email (Tab 6; August 14, 2018 email chain between Mr. Runyon and counsel)[1] that suggests, more-likely-than-not, that Mr. Runyon knew what he was declaring. As a result, the Court finds that IF has made its *prima facie* case that Mr. Runyon in fact knew his representations in the 2018 Statements of Use were false.

---

[1] *See also, infra*, §§ III.B. In the production to the Court for *in camera* review, this document bears control number INT_IMP_00011214.

### 3. Intent to Induce Reliance by the PTO

As to the third element, based on Mr. Runyon's deposition testimony, there is no doubt that Mr. Runyon and IXLLC intended for the PTO to rely on the representations in the 2018 Statements of Use. Dkt. 207 at 160:18-21 ("Q. Did you intend for the USPTO to rely on the accuracy of the statements in this statement of use when you submitted it? A. Sure."); *id.*, 165:19-21 ("Q. And did you intend for the USPTO to rely upon that representation? A. Yeah.").

### 4. Actual, Reasonable Reliance on the Misrepresentation

Although the record before the Court as to the motivations of the PTO is sparse, the Court concludes that, more-likely-than-not, the PTO relied on Defendants' representations as to "use in commerce" in the 2018 Statements of Use because the PTO did, in fact, register the marks at issue. "If a trademark owner … applies for and receives registration on an intent-to-use basis under § 1051(b), the trademark owner must, within six months, supply 'a verified statement … [under] § 1051(d)(1)," after which, '[s]ubject to examination and acceptance of the statement of use,' the USPTO then registers the trademark." *Teeter-Totter, LLC v. Palm Bay Int'l, Inc.*, 344 F. Supp. 3d 1100, 1109 (N.D. Cal. 2018) (citing 15 U.S.C. § 1051). Accordingly, while something like a statement as to the date of first use may or may not ultimately be relied upon so long as the mark *is* in use, misrepresentations that bear directly on an applicant's "right to register the mark" are material and relied upon. *Id.*

### 5. Damages

Finally, it is not clear that the damages element need actually be resolved to make a crime-fraud, as opposed to merits, determination. *See, e.g., Adidas*, 2018 WL 4600291, at *1 (D. Or. Sept. 25, 2018) (reciting damages as one of the five elements but not analyzing it). Nonetheless, to the extent it is required, the Court concludes that, assuming the PTO registered the mark based on the alleged fraud, IF has a *prima facie* case that it is damaged based on the assertions by Defendants in this litigation.

////

////

////

6

**B.    Which Communications, If Any, Were in Furtherance of the Fraud?**

Having determined that IF has established a *prima facie* case that Defendants were engaged in fraud on the PTO, the "court must examine the individual documents themselves to determine that the specific attorney-client communications for which production is sought are "sufficiently related to" and were made "in furtherance of the intended, or present, continuing illegality." *In re Grand Jury Investigation*, 810 F.3d at 1114.

Of the documents which the Court has examined, only one document appears to be "sufficiently related to" the fraud and made "in furtherance of" the intended fraud, *i.e.*, the submission of the false 2018 Statements of Use. This email, submitted to the Court as Tab 6, begins with an email on August 14, 2018 from Mr. Runyon's attorney seeking information to advance the intent-to-use applications. The communications that follow are directly related to the submission of the 2018 Statements of Use and consist of Mr. Runyon providing information, in response to attorney inquiries, about the status of goods in use. The other emails submitted by Defendants are either insufficiently related to the alleged fraud or do not appear to be intended by Mr. Runyon or IXLLC to further the fraud.

Accordingly, the Court orders production of Tab 6 only.

**IV.    CONCLUSION**

For the forgoing reasons, the Court finds that IF has made a *prima facie* case of fraud on the PTO as to the 2018 Statements of Use and that, under the crime-fraud exception, the email submitted to the Court at Tab 6 is not privileged and must be produced. IXLLC is to produce the document to IF immediately.

**SO ORDERED.**

Dated: June 30, 2025

SUSAN VAN KEULEN
United States Magistrate Judge