J. Noah Hagey, Esq. (SBN: 262331)
hagey@braunhagey.com
Adam S. Cashman, Esq. (SBN: 255063)
cashman@braunhagey.com
Greg Washington, Esq. (SBN: 318796)
gwashington@braunhagey.com
J. Tobias Rowe, Esq. (SBN: 305596)
rowe@braunhagey.com
BRAUNHAGEY & BORDEN LLP
747 Front Street, 4th Floor
San Francisco, CA 94111
Telephone: (415) 599-0210

Marissa R. Benavides (*pro hac vice* admission)
benavides@braunhagey.com
BRAUNHAGEY & BORDEN LLP
118 W 22nd Street, 12th Floor
New York, NY 10011
Telephone: (646) 829-9403

[Other counsel of record indicated on docket.]

*Attorneys for Defendants / Counter-Plaintiffs Impossible LLC and Joel Runyon*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

IMPOSSIBLE FOODS INC.,

Plaintiff / Counter-Defendant,

v.

IMPOSSIBLE LLC and JOEL RUNYON,

Defendants / Counter-Plaintiffs.

Case No. 5:21-cv-02419-BLF (SVK)

**DEFENDANTS/COUNTER-PLAINTIFFS IMPOSSIBLE LLC AND JOEL RUNYON'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF LAW IN SUPPORT**

**Judge:** Hon. Beth Labson Freeman
**Compl. Filed:** April 2, 2021
**Third Am. Compl. Filed:** March 7, 2025
**Hearing Date:** October 23, 2025

# NOTICE OF MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD**:

PLEASE TAKE NOTICE that on October 23, 2025 at 9:00 a.m., or as soon as thereafter as the matter may be heard by the Honorable Beth Labson Freeman in the United States District Court, Northern District of California, located at the United States District Court, 280 South 1st Street, San Jose, CA 95113, Courtroom 1, 5th Floor, Defendants/Counter-claimants Impossible LLC and Joel Runyon ("Defendants") will and hereby do move this Court for partial summary judgment in favor of Defendants as to Impossible Foods, Inc.'s, Second, Third, Fourth, Sixth and Seventh Claims in this action; and for summary adjudication that Impossible LLC has priority to the IMPOSSIBLE mark for nutrition and recipe information.

This Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the Declaration of Greg Washington, and exhibits attached thereto, the files and records in this action, and upon any further evidence and argument that the Court may receive at or before the hearing.

Dated: August 8, 2025

Respectfully submitted,

BRAUNHAGEY & BORDEN LLP

By: /s/ *Adam S. Cashman*
Adam Cashman

*Attorneys for Defendants / Counter-Plaintiffs Impossible LLC and Joel Runyon*

## TABLE OF CONTENTS

**NOTICE OF MOTION** .......... **1**

**INTRODUCTION** .......... **1**

**BACKGROUND** .......... **2**

A. Joel Runyon Develops an Impossible-Centered Business in 2010 .......... 2

B. Impossible LLC Secures Federal Trademarks for Its Product Offerings .......... 3

C. Maraxi Rebrands to Impossible Foods While Referencing Impossible LLC .......... 4

D. Impossible Foods Launches Its First Cookbook Eight Years After Impossible LLC's First Diet Guide .......... 5

**LEGAL STANDARD** .......... **5**

**ARGUMENT** .......... **6**

**I. IMPOSSIBLE LLC IS ENTITLED TO JUDGMENT AS A MATTER OF LAW** .......... **6**

A. Impossible Foods' Lanham Act Claims for Trademark Infringement and Unfair Competition (Counts Two and Three) Are Legally and Factually Deficient .......... 6

1. Impossible LLC's nutritional supplements are not similar and are not proximate to Impossible Foods' plant-based meat substitutes. .......... 7

2. Impossible Foods concedes there is no evidence of actual confusion .......... 9

3. The remaining *Sleekcraft* factors indicate no likelihood of confusion .......... 10

B. Impossible Foods Cannot Satisfy Any Element of Its California Common Law Unfair Competition Claim (Count Four) .......... 12

1. There is no evidence of fraudulent conduct or intent. .......... 12

2. The evidence confirms no consumer confusion. .......... 14

3. Impossible Foods has not suffered any injury. ........................................ 15

C. Impossible Foods' Claim for Fraud in the Procurement (Count Six) Is Legally and Factually Deficient.............................................................................. 16

1. Impossible Foods lacks standing to pursue a cancellation claim against the Fitness Apparel, Animated, and Word Marks. ....................... 16

2. Impossible Foods has not been injured.................................................... 18

3. Impossible Foods' claim as to the Fitness Apparel and Word Marks is moot. ........................................................................................... 19

D. Impossible LLC Is Entitled to Summary Judgment as to Impossible Foods' Claim for Abandonment (Count Seven) ............................................................ 20

**II. THE COURT SHOULD SUMMARILY ADJUDICATE IMPOSSIBLE LLC'S PRIORITY IN THE DIET AND NUTRITION CATEGORY.................................. 22**

A. Impossible LLC Began Using the IMPOSSIBLE-Formative Mark on Diet and Nutrition Offerings in 2012 ....................................................................... 23

B. Impossible LLC Has Continuously Engaged in Non-Commercial Activity to Support its Products in the Diet and Nutrition Category...................................... 24

C. Eight Years After Impossible LLC Established Its Priority Impossible Foods Expanded into the Diet and Nutrition.................................................................. 25

**CONCLUSION ........................................................................................................... 25**

## TABLE OF AUTHORITIES

**PAGES**

**CASES**

*Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*,
744 F.3d 595 (9th Cir. 2014) .......... 17

*Allstate Ins. Co. v. Kia Motors Am., Inc.*,
No. CV 16–6108, 2017 WL 6550669 (C.D. Cal. Dec. 22, 2017) .......... 13

*Already, LLC v. Nike, Inc.*,
568 U.S. 85 (2013) .......... 19, 20

*AMF Inc. v. Sleekcraft Boats*,
599 F.2d 341 (9th Cir. 1979) .......... 7

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .......... 6

*Barnes v. Arden Mayfair, Inc.*,
759 F.2d 676 (9th Cir. 1985) .......... 6

*BBK Pictures, Inc. v. Boston Iced Tea Co., Inc.*,
2017 WL 3446803 (TTAB July 20, 2017) .......... 20

*Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*,
174 F.3d 1036 (9th Cir. 1999) .......... 9, 10

*Cal. Arch. Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*,
818 F.2d 1466 (9th Cir. 1987) .......... 6

*Carter-Wallace, Inc. v. Proctor & Gamble Co.*,
434 F.2d 794 (9th Cir. 1970) .......... 21

*Chippendales USA, LLC v. Banerjee*,
No. CV238630, 2025 WL 1674439 (C.D. Cal. May 13, 2025) .......... 22

*Deckers Outdoor Corp. v. Team Footwear, Inc.*,
No. CV 13-00532, 2013 WL 12131287 (C.D. Cal. July 11, 2013) .......... 15

*Dep't of Parks & Recreation for State of Cal. v. Bazaar Del Mundo Inc.*,
448 F.3d 1118 (9th Cir. 2006) .......... 22

*Dreamwerks Prod. Group, Inc. v. SKG Studio*,
142 F.3d 1127 (9th Cir. 1998) .......... 6

*E. Iowa Plastics, Inc. v. PI, Inc.*,
832 F.3d 899 (8th Cir. 2016) .......... 17, 18

*Electro Source, LLC v. Brandess-Kalt-Aetna Grp., Inc.*, 458 F.3d 931 (9th Cir. 2006) .......... 21, 22

*Far Out Prods., Inc. v. Oskar*, 247 F.3d 986 (9th Cir. 2001) .......... 6

*Farmasino, Inc. v. Farmasino Pharms. (Jiangsu) Co., Ltd*, No. 515CV01877, 2016 WL 7655740 (C.D. Cal. June 20, 2016) .......... 24

*Fisher v. Dees*, 794 F.2d 432 (9th Cir. 1986) .......... 14

*Garcia v. Coleman*, No. C–07–2279, 2008 WL 4166854 (N.D. Cal. Sept. 8, 2008) .......... 14

*GW Pharma Ltd.*, 89 U.S.P.Q.2d 1571 (T.T.A.B. 2009) .......... 20

*Hanginout, Inc. v. Google, Inc.*, 54 F. Supp. 3d 1109 (S.D. Cal. 2014) .......... 24

*Ironhawk Techs., Inc. v. Dropbox, Inc.*, 2 F.4th 1150 (9th Cir. 2021) .......... 5

*Laatz v. Zazzle, Inc.*, No. 22-cv-04844, 2025 WL 1359130 (N.D. Cal. May 9, 2025) .......... 6

*Lodestar Anstalt v. Bacardi & Co.*, No. 2:16-cv-06411, 2019 WL 8105378 (C.D. Cal. July 3, 2019) .......... 13

*Luna Distrib. LLC v. Stoli Grp. (USA), LLC*, No. SA CV 17-1552, 2018 WL 5099277 (C.D. Cal. July 10, 2018) .......... 15

*M2 Software, Inc. v. Madacy Ent.*, 421 F.3d 1073 (9th Cir. 2005) .......... 9

*Macy's Inc. v. Strategic Marks, LLC*, No. 11CV06198, 2016 WL 374147 (N.D. Cal. Feb. 1, 2016) .......... 23, 24

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) .......... 6

*Mattel, Inc., v. Walking Mountain, Prods.*, 353 F.3d 792 (9th Cir. 2003) .......... 7

*Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc.*, No. CV 05-2200, 2008 WL 11334030 (C.D. Cal. Mar. 17, 2008) .......... 15

*Multi Time Mach., Inc. v. Amazon.com, Inc.*, 804 F.3d 930 (9th Cir. 2015) .......... 7

*Murray v. Cable Nat. Broad. Co.*,
86 F.3d 858 (9th Cir. 1996) ........ 8

*Neo4j, Inc. v. PureThink, LLC*,
No. 5:18-CV-07182, 2020 WL 2614871 (N.D. Cal. May 21, 2020) ........ 21

*Nike, Inc. v. Already, LLC*,
663 F.3d 89 (2d Cir. 2011) ........ 17, 19

*Novadaq Techs., Inc. v. Karl Storz GmbH & Co. K.G.*,
143 F. Supp. 3d 947 (N.D. Cal. 2015) ........ 25

*One Indus., LLC v. Jim O'Neal Distrib., Inc.*,
578 F.3d 1154 (9th Cir. 2009) ........ 9

*Quiksilver, Inc. v. Kymsta Corp.*,
No. CV025497, 2003 WL 27382913 (C.D. Cal. July 14, 2003) ........ 23

*Rearden LLC v. Rearden Com., Inc.*,
683 F.3d 1190 (9th Cir. 2012) ........ 9, 22

*Reeves v. Gen. Nutrition Centers, Inc.*,
No. SA-CV-10-1653, 2012 WL 13018362 (C.D. Cal. Apr. 2, 2012) ........ 7, 8

*Rider Clothing LLC v. Boardriders, Inc.*,
No. 2:19-cv-04098, 2020 WL 4578700 (C.D. Cal. Aug. 7, 2020) ........ 12, 15

*Rider Clothing LLC v. BoardRiders, Inc.*,
No. CV04098, 2019 WL 8163813 (C.D. Cal. Nov. 26, 2019) ........ 12

*San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*,
65 F.4th 1012 (9th Cir.) ........ 17, 19

*Sarieddine v. Alien Visions E-Juice, Inc.*,
No. CV183658, 2019 WL 1966661 (C.D. Cal. Apr. 12, 2019) ........ 22

*Scat Enters., Inc. v. FCA US LLC*,
No. CV 14-7995, 2017 WL 5749771 (C.D. Cal. June 8, 2017) ........ 21

*Silverlit Toys Manufactory Ltd. v. Rooftop Grp., USA, Inc.*,
No. CV 08– 07631, 2009 WL 10671853 (C.D. Cal. Aug. 7, 2009) ........ 12

*SmileDirectClub, LLC v. Berkely*,
No. SACV181236JVSKESX, 2018 WL 8131096 (C.D. Cal. Oct. 26, 2018) ........ 17, 20

*Southland Sod Farms v. Stover Seed Co.*,
108 F.3d 1134 (9th Cir. 1997) ........ 12

*Stonefire Grill, Inc. v. FGF Brands, Inc.*,
987 F. Supp. 2d 1023 (C.D. Cal. 2013) ........ 13

*Sybersound Records, Inc. v. UAV Corp.*,
517 F.3d 1137 (9th Cir. 2008) .......... 12

*TMC Aerospace, Inc. v. Elbit Sys. of Am. LLC*,
No. CV 15-07595, 2016 WL 3475322 (C.D. Cal. Jan. 29, 2016) .......... 13

*Walt Disney Prods. v. Air Pirates*,
581 F.2d 751 (9th Cir. 1978) .......... 14

*Water, Inc. v. Everpure, Inc.*,
CV 09-3389, 2012 WL 12949368 (C.D. Cal. Aug. 2, 2012) .......... 15

*Yuga Labs, Inc. v. Ripps*,
2023 WL 3316748 (C.D. Cal. Apr. 21, 2023) .......... 25

**STATUTES**

15 U.S.C. § 1064 .......... 16, 18
15 U.S.C. § 1119 .......... 16, 17
15 U.S.C. § 1120 .......... 17, 18
15 U.S.C. § 1127 .......... 21, 23, 24

**RULES**

Fed. R. Civ. P. 56(a) .......... 5

**OTHER AUTHORITIES**

3 McCarthy on Trademarks and Unfair Competition § 25:3 (5th ed.) .......... 12

## INTRODUCTION

Impossible Foods initiated this lawsuit as a narrowly-framed declaratory judgment action seeking the ability to use the IMPOSSIBLE mark in connection with a cookbook. More than four years later, and after Joel Runyon and his company Impossible LLC refused to cede trademark rights they had worked for more than a decade to secure and expand, Impossible Foods' claims have metastasized to include improbable assertions of trademark infringement, deliberate fraud on the PTO, and abandonment of marks that have been in continuous use for years. Plainly, those recent additions have been made in an effort to exert ever-increasing leverage over Mr. Runyon, who created the Impossible brand and began securing trademark rights years before Impossible Foods rebranded from its prior name, with full knowledge of Mr. Runyon and his Impossible brand, company, and senior rights. That gambit has not been successful, and predictably, discovery has not only failed to yield any support for Impossible Foods' conclusory assertions—it has squarely disproven the infringement and unfair competition claims, as through the testimony of Impossible Foods' corporate designee, who testified without qualification that there is no overlap, no similarity, and no likelihood of confusion between Impossible LLC's nutritional supplement products and Impossible Foods' plant-based meat alternative products. That testimony alone warrants entry of summary judgment; when viewed in combination with the utter lack of supporting evidence elsewhere in the record, that conclusion becomes inescapable.

Summary judgment is equally warranted as to Impossible Foods' claims that Impossible LLC intentionally defrauded the PTO, or that it has abandoned certain of its trademarks through prolonged non-use coupled with an intent not to resume. As to alleged fraud, the remedy Impossible Foods prays for (*i.e.,* cancellation of the mark) is not available as a matter of law because the marks at issue are not alleged to infringe any Impossible Foods mark, and further, because Impossible Foods cannot demonstrate any harm and because most have already been formally amended, thereby mooting the claim. As to abandonment, the record evidence shows continuous usage of the marks in commerce and no indication of any intent to permanently cease such usage. Summary judgment is therefore warranted as to these claims as well.

Finally, the Court should summarily adjudicate Impossible LLC's priority to use the

IMPOSSIBLE-formative in connection with dietary information, recipes, and cookbooks based on its preexisting and continuous use of the mark in commerce. Indeed, Impossible LLC developed the Impossible brand some six years before Impossible Foods conducted any commerce at all, and long before Maraxi willfully rebranded to Impossible Foods despite its actual knowledge of Impossible LLC and its websites and products. No genuine factual dispute exists as to Impossible LLC's senior rights to the mark, and summary adjudication of this issue is therefore proper and will promote efficiency by streamlining the issues for trial.

In sum, after more than four years of litigation, in which Impossible Foods has brought the full force of its vast resources to bear against Mr. Runyon and his company, it is clear that Impossible Foods'S affirmative claims for trademark infringement, unfair competition, and abandonment are illusory and unsupported by any substantive evidence, and further, that its claims for fraud on the PTO are deficient as a matter of law. Summary judgment should therefore be entered, and Impossible LLC's senior rights as to the IMPOSSIBLE mark in the field of recipes and cookbooks should be summarily adjudicated.

## BACKGROUND

### A. Joel Runyon Develops an Impossible-Centered Business in 2010

At the start of 2010, Joel Runyon was living in his parent's basement and struggling to find direction after graduating college during the height of the financial crisis. (*See* Ex. A.)[1] After being inspired by online videos of people completing audacious feats and far flung adventures, Mr. Runyon set out to forego what was realistic and safe to embrace the challenges that make life worth living. (*Id.*) To crystalize his new direction, Mr. Runyon wrote out a list of goals that he called his "list of impossible things." (*Id.*) Although he had never run a competitive race in his life, Mr. Runyon's first impossible task was to run a triathlon. Mr. Runyon started small by running around his neighborhood. As he ramped up his training, Mr. Runyon eventually began running local races. By April 2010, Mr. Runyon completed his first triathlon. (*Id.*) And when he finished, Mr. Runyon struck running a triathlon from his impossible list.

Inspired by completing his first impossible task, Mr. Runyon launched a personal blog in

[1] As used herein, "Ex." refers to exhibits to the Declaration of Gregory Washington.

April 2010. There, he created a simple but meaningful logo: the word IMPOSSIBLE, sometimes rendered with a strikethrough to denote the accomplishment of crossing something off the list.

IMPOSSIBLE

In his tagline, Mr. Runyon encouraged readers to "do something impossible." (Ex. B at 104:10-105:8).) As the blog grew organically, Mr. Runyon provided and promoted content relating to fitness, nutrition, diet, and wellness. (Exs. C-F.)

Building on the success of his blog, Mr. Runyon developed Impossible X LLC (later renamed Impossible LLC) to serve as the business vehicle for his Impossible-centered offerings. Along the way, Mr. Runyon developed several health, nutrition, and fitness-focused product offerings under the Impossible brand. By October 2011, Impossible launched IMPOSSIBLE HQ, a new hub for everything Impossible online, and started selling performance apparel. (*See* Ex. G.) In February 2012, Impossible offered its triathlon training guide, which included recipes and nutritional information. (*See* Ex. H.) Two years later, Impossible expanded its diet- and nutrition-focused offerings by launching its first recipe-focused mobile application in July 2014. https://apps.apple.com/us/app/paleo-io/id868403565. Several years later, in August 2017, Impossible made the natural expansion from dietary and nutritional offerings to selling nutritional supplements. (*See* Exs. I, J.) In the fifteen years since its founding, Impossible LLC has grown to offer goods and services directed to health and nutrition; recipes and dietary information; training and athletics; philanthropy and coaching; apparel and nutritional supplements; and business consulting on search engine optimization. (*See, e.g.*, Exs. B, E, K-M, and N at 87:1-94:20, 64:6-14.)

**B. Impossible LLC Secures Federal Trademarks for Its Product Offerings**

Impossible LLC has been diligent in securing federally protected trademarks for apparel, nutrition, wellness, fitness, charitable fundraising, and other uses. Indeed, Impossible LLC began using the IMPOSSIBLE-formative trademarks in 2010. (Ex. A.) And Impossible LLC obtained its first federal IMPOSSIBLE-formative trademark registration in March 2012. (Ex. O.) To date, Impossible LLC owns eleven trademark registrations with the United States Patent and Trademark Office ("PTO") incorporating the term IMPOSSIBLE for websites, search engine optimization,

marketing, nutritional supplements, and performance apparel—all to protect its health, nutrition, and fitness business endeavors. (Exs. O-Y.)

**C. Maraxi Rebrands to Impossible Foods While Referencing Impossible LLC**

Before settling on "Impossible" as its new brand, Impossible Foods was known as Maraxi, Inc. Maraxi was a research and development company with no products and only generated minor revenue from a single license "making artisanal cheeses from nuts." (Ex. Z at 26:4-27:24.) The company's mission was "[t]o invent and provide great tasting plant-derived foods to replace animal-based foods worldwide." (Ex. AA at IF00034963.) At the time, the company was primarily focused on replicating beef and cheese products. (*Id.* at IF00034998-5001). But Maraxi developed no consumer products and did not engage in any promotion, marketing, or advertising of its brand. (*See* Ex. Z at 28:4-19; BB at 267:6-13, 109:16-22.)

[redacted] (*See* Exs. CC-EE.) [redacted] (*See* Ex. BB at 272:15-23.) [redacted] (Ex. RR at IF00035043-44 (emphasis in original).)

Once Maraxi had identified "Impossible" as the leading choice for its "new" brand, its General Counsel commissioned a comprehensive trademark search report. (Ex. FF at 69:9-12.) That report, delivered to Maraxi on October 9, 2013, listed Impossible's trademarks and two websites owned by Impossible LLC as the second and fourth search results. (Ex. GG at IF00005112, -5207, -5227, and -5299.) The report also reproduced an image of the Impossible HQ website, which prominently displayed the links to "Impossible Abs" program and "The Gear," which encompassed Impossible's apparel offerings. (*Id.* at IF00005227, -5229.)

Even after adopting "Impossible" as its new brand and corporate identity, Impossible Foods continued to crib from Impossible LLC as it moved toward re-launching its brand. [redacted] (Ex. HH; Ex. Z at 175:15-176:13, 180:10-181:22, 184:2-11.) [redacted]

[redacted] (Ex. HH.)

Although the [redacted] show that Impossible LLC was top of mind for Maraxi during its rebranding, Impossible Foods has produced virtually no documents relating to its efforts to differentiate the companies. That deficiency was only recently explained earlier this year, when [redacted], whom Impossible Foods asserted had "the most knowledge" regarding Impossible LLC, the search reports that identified Impossible LLC's usage of the IMPOSSIBLE® mark, and Impossible Foods' adoption and stylization of its highly similar IMPOSSIBLE brand. (Ex. II at 8-11.) Given those permanent deletions, Impossible LLC has been unable to discover whether Impossible Foods ever developed a plan to differentiate its offerings from Impossible LLC's goods and services, or whether it held any contemporaneous view with respect to the degree of overlap between the two companies' products, the degree of similarity between the marks, or any other relevant factor bearing on the likelihood of consumer confusion.

### D. Impossible Foods Launches Its First Cookbook Eight Years After Impossible LLC's First Diet Guide

On April 1, 2020, Impossible Foods applied for an IMPOSSIBLE-formative trademark to provide "information about recipes, ingredients and cooking information; providing an online computer database to consumers featuring information about recipes, ingredients and cooking information." (Ex. JJ.) On November 10, 2020, Impossible LLC sent a letter seeking clarification of Impossible Foods' intended use of the mark, and seeking mutual agreement regarding a defined co-existence to avoid consumer confusion. (Ex. KK.) On November 25, 2020, Impossible LLC opposed the trademark application. (Ex. JJ.) Impossible Foods responded with this lawsuit. Dkt. 1.

## LEGAL STANDARD

Summary judgment is warranted when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of showing that there exists no genuine dispute of material fact for trial. *Ironhawk*

*Techs., Inc. v. Dropbox, Inc.*, 2 F.4th 1150, 1159 (9th Cir. 2021). In evaluating the evidence, courts draw all reasonable inferences in favor of the non-moving party. *Dreamwerks Prod. Group, Inc. v. SKG Studio,* 142 F.3d 1127, 1129 (9th Cir. 1998). But "reasonable inferences" do not equal remote possibilities. *See Barnes v. Arden Mayfair, Inc.*, 759 F.2d 676, 680 (9th Cir. 1985).

A party moving for summary judgment "must either produce evidence negating an essential element of the nonmoving party's claim . . . or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Laatz v. Zazzle, Inc.*, No. 22-cv-04844, 2025 WL 1359130, at *6 (N.D. Cal. May 9, 2025) (Freeman, J.). Once it does so, the movant is entitled to judgment as a matter of law unless the nonmoving party provides competent evidence of a genuine dispute of material fact for trial. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001). "A 'scintilla of evidence' in support of the nonmoving party's position is insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Further, "if the factual context makes the non-moving party's claim *implausible*, that party must come forward with more persuasive evidence than would otherwise be necessary" to proceed to trial. *Cal. Arch. Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (emphasis in original) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)).

## ARGUMENT

The Court should enter summary judgment in favor of Impossible LLC on Counts Two, Three, Four, Six and Seven of Impossible Foods' Third Amended Complaint ("TAC"), Dkt. 151. The Court should also summarily adjudicate Impossible LLC's priority to use the IMPOSSIBLE marks in connection with recipes, cookbooks, and nutrition-based services based on its longstanding use of the mark in commerce, which precedes Impossible Foods' infringing use by nearly a decade.

## I. IMPOSSIBLE LLC IS ENTITLED TO JUDGMENT AS A MATTER OF LAW

### A. Impossible Foods' Lanham Act Claims for Trademark Infringement and Unfair Competition (Counts Two and Three) Are Legally and Factually Deficient

Impossible Foods' trademark infringement and unfair competition claims cannot be maintained in light of the testimony of Impossible Foods' corporate designee, who readily admitted

that Impossible LLC's nutritional supplement products ("Nutritional Supplements") are dissimilar from Impossible Foods' plant-based meat alternatives ("Meat Substitutes"), and so are "not confusing" to customers. That commonsense concession is further supported by Impossible Foods' discovery responses, which fail to identify any instances of actual confusion or any other overlap between the products sufficient to maintain its dubious allegation that consumers are likely to be confused between Impossible Foods' fake meat products and Impossible LLC's supplements. Absent any such evidence of likely confusion—and having testified that Impossible Foods actually ***believes that no such confusion is present or likely***—summary judgment should be entered.

**1. Impossible LLC's nutritional supplements are not similar and are not proximate to Impossible Foods' plant-based meat substitutes.**

It is well-established that Lanham Act claims require a likelihood of confusion between the products, typically by satisfying the *Sleekcraft* factors. *See Multi Time Mach., Inc. v. Amazon.com, Inc.*, 804 F.3d 930, 935 & n.1 (9th Cir. 2015). These factors include: (1) strength of the plaintiff's mark; (2) proximity of the goods; (3) similarity of the plaintiff's and the defendant's marks; (4) evidence of actual confusion; (5) marketing channels used; (6) consumer's degree of care; (7) the defendant's intent in selecting its mark; and (8) likelihood of product line expansion. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979), abrogated in part on other grounds by *Mattel, Inc., v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003).

[redacted] (Ex. BB at 298:2-5 [redacted] Even if the dissimilarity of the two product lines was not apparent on its face or already conceded, Impossible Foods has introduced no evidence to connect these two disparate product lines together beyond the meaningless observation that both are "edible." This is woefully insufficient.

In evaluating a defendant's use of a challenged product, courts weigh the proximity or relatedness to the plaintiff's product. *Sleekcraft*, 599 F.2d at 348. "[T]he proximity of goods is measured by whether the products are: (1) complementary; (2) sold to the same class of purchasers; and (3) similar in use and function." *Reeves v. Gen. Nutrition Centers, Inc.*, No. SA-CV-10-1653,

2012 WL 13018362, at *4 (C.D. Cal. Apr. 2, 2012) (internal citation omitted) (no proximity between "ready-to-drink protein shake[]" and "diet book and program"). Mere superficial connections between the goods is insufficient. *See id.* ("The mere fact that two products . . . fall within the same general field does not mean that the two products . . . are sufficiently similar to create a likelihood of confusion." (internal citation and quotation marks omitted)).

In *Murray*, for example, the Ninth Circuit held that a vendor offering "'man-on-the-street' consumer surveys" and "sell[ing] his services to business clients for use in television commercial advertising" was not sufficiently proximate to a national channel's "talk-show television programming" that conducted telephone polling of viewers' opinions. *Murray v. Cable Nat. Broad. Co.*, 86 F.3d 858, 861 (9th Cir. 1996), *as amended* (Aug. 6, 1996). As the court held, "[b]ecause the parties' services are unrelated, there is no likelihood of confusion as a matter of law." *Id.*

Likewise, there is no close proximity between the Meat Substitutes and the Nutritional Supplements. *First*, these products are neither similar nor complementary: [redacted] (Ex. BB at 298:2-5 (emphasis added).) No reasonable juror would find that consumers expect to purchase plant-based meat substitutes and sleep aid powder together. *Second*, they are not sold to the same class of purchasers. As Impossible Foods' trademark registrations and interrogatory responses show, Impossible Foods has used its mark exclusively for "plant-based meat substitutes." (Ex. LL at 4.) Further, Impossible Foods has maintained that consumers know its Meat Substitutes from their experiences purchasing plant-based meat substitutes in grocery stores, at major restaurant chains, and at independent and high-end restaurants. (*Id.*) Impossible Foods has never claimed to sell energy powders, sleep aids, or other dietary supplements to the public, nor does it claim to have plans to do so. Meanwhile, Impossible LLC has been selling its Nutritional Supplements since 2017. These products are not sold in grocery stores or on restaurant menus. Rather, they are available online for consumers interested in supplementing their diets to enhance their physical performance. (Ex. B at 347:3-18.) *Finally*, no reasonable juror would conclude that plant-based meat substitutes and dietary supplements are "similar in use and function." [redacted]

[redacted] (Ex. BB at 169:9-16.) None of those considerations apply to consumers of Impossible LLC's nutritional supplements.

Impossible Foods initiated this action in 2021, yet did not claim any confusion or infringement as a result of Impossible LLC's nutritional supplement products sold under the Impossible Nutrition and IMPOSSIBLE-formative marks. That claim was only added in July 2024, some seven years after Impossible LLC began selling its nutritional supplements, and was based on the conclusory assertion that Impossible LLC's "use of IMPOSSIBLE-formative marks in connection with [its dietary supplements] are similar to, and compete with, the edible products offered and sold by Impossible Foods." (TAC ¶ 37.) Now, at the conclusion of discovery, the record is clear not only that no such similarity exists, but that Impossible Foods believes that the products are actually ***dissimilar***. This factor therefore weighs heavily against a likelihood of confusion.

**2. Impossible Foods concedes there is no evidence of actual confusion**

Impossible Foods has no evidence of actual consumer confusion between the Meat Substitutes and the Nutritional Supplements; rather, [redacted] (Ex. BB at 298:21-301:1.) To show actual customer confusion, Impossible Foods must identify actual incidents of product confusion among the "relevant consuming public," *i.e.*, the "'reasonably prudent consumer' in the market place" for the product at issue. *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1214 (9th Cir. 2012). Failure to do so weighs against a finding of likely confusion. *See One Indus., LLC v. Jim O'Neal Distrib., Inc.*, 578 F.3d 1154, 1163 (9th Cir. 2009) (failure to provide evidence of actual confusion weighed against plaintiff); *M2 Software, Inc. v. Madacy Ent.*, 421 F.3d 1073, 1083 (9th Cir. 2005) (same). And where, as here, the evidence affirmatively shows *no* confusion existed, the question of likely confusion is all but resolved in favor of the defendant. *See Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1050 (9th Cir. 1999) ("We cannot think of more persuasive evidence that there is no *likelihood* of confusion between these two marks than the fact that they have been simultaneously used for five years without causing any consumers to be confused as to who makes what.")

Here, Impossible Foods' own documents, written discovery responses, and witness and

expert testimony not only fail to identify any actual confusion between the Meat Substitutes and the Nutritional Supplements, they actually *prove* no confusion exists. [redacted] (Ex. BB at 299:5-21.) [redacted] (*Id.* at 300:11-22; *see also* Ex. II at 15, 16 (no evidence of confusion identified in any of Impossible Foods' three responses to interrogatory demanding evidence of confusion).) These admissions all but end Impossible Foods' trademark infringement claim. *See Brookfield*, 174 F.3d at 1050 (no likelihood of confusion where plaintiff "conceded that there had been no[ actual confusion]").

**3. The remaining *Sleekcraft* factors indicate no likelihood of confusion**

With the evidence showing no actual confusion in the real-world marketplace and no close product proximity to create even the possibility of confusion, the Court need not address the remaining *Sleekcraft* factors. *See Brookfield*, 174 F.3d at 1054 ("[I]t is often possible to reach a conclusion with respect to likelihood of confusion after considering only a subset of the [*Sleekcraft*] factors.") Yet even if the Court were inclined to endeavor further, there is no evidence of likely confusion, and therefore no basis on which to refrain from entering summary judgment.

The dissimilarity of the two product lines—plant-based meat substitutes and performance-enhancing nutritional supplements—tips the remaining *Sleekcraft* factors against confusion. On the question of "intent," Impossible LLC did not seek to cause confusion between the marks at issue. In fact, when Impossible LLC began selling its first Nutritional Supplements, [redacted] (*See* Ex. Z at 52:22-53:6.) Even after Impossible Foods' Meat Substitutes entered the consumer market, Impossible LLC never tried to market its products as meat substitutes, or even as affiliates of such products. Rather, Impossible LLC markets the Nutritional Supplements in a manner completely separate from Impossible Foods' Meat Substitutes. Specifically, [redacted]

[redacted] (Ex. BB at 85:13-18), the Nutritional Supplements are not sold in stores and are marketed primarily through targeted online advertising and through Impossible LLC's website and Amazon. (Ex. B at 347:3-18.)

With respect to the likelihood of product expansion, neither party has asserted any plans to expand into the respective opposing spaces here. Impossible LLC has no plans to produce plant-based meat substitutes, and [redacted] (Ex. BB at 217:3-13 [redacted]

As to the question of consumer care, it is apparent from Impossible Foods' own allegations and testimony that [redacted] (Ex. BB at 169:9-16, 256:18-257:9.) Given their motivations, these consumers are unlikely to presume that Impossible-branded sleep and energy powders, or its krill oil product, were produced by Impossible Foods.

The last question—Impossible Foods' mark strength—does not even merit attention here. As the evidentiary record shows, the product lines are so distinct that the strength of the mark at issue is simply not relevant. Further, Impossible Foods confirmed customers are not confused by the two product lines regardless of the mark being used. Even if Impossible Foods were to show some amorphous level of mark strength, that would not negate the clear record that consumers are unlikely to be confused by two separate product lines that do not overlap in the market and have not caused confusion in all the years they have both been offered.

With no evidence of confusion, likely or actual, between the Meat Substitutes and the Nutritional Supplements, Impossible Foods cannot meet its burden on its Lanham Act trademark infringement and unfair competition claims. The evidentiary record conclusively shows what Impossible LLC has maintained from the start: Impossible LLC's long-time sale of its nutrition supplements does not infringe on Impossible Foods' plant-based meat substitute products. The Court should therefore enter judgment in favor of Impossible LLC on Counts Two and Three.

### B. Impossible Foods Cannot Satisfy Any Element of Its California Common Law Unfair Competition Claim (Count Four)

Impossible Foods' California common law unfair competition claim fails for multiple reasons. To prevail, Impossible Foods must prove that: (i) Impossible LLC subjectively and knowingly intended to confuse buyers of a competitive product; (ii) consumers were likely to be confused; and (iii) Impossible LLC thereby caused Impossible Foods a competitive injury. *Rider Clothing LLC v. Boardriders, Inc.*, No. 2:19-cv-04098, 2020 WL 4578700, at *3 (C.D. Cal. Aug. 7, 2020). Impossible Foods cannot meet *any* of these requirements.

#### 1. There is no evidence of fraudulent conduct or intent.

The first element of California's unfair competition claim is often dispositive. The Ninth Circuit has explained that California unfair competition "is generally thought to be synonymous with the act of 'passing off' one's goods as those of another," and a claim without evidence of such "passing off" necessarily fails. *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1153 (9th Cir. 2008) (internal citation omitted) (affirming dismissal where plaintiff had "not alleged that the Corporation Defendants have passed off their goods as those of another nor that they exploit[ed] trade names or trademarks"); *see Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1147 (9th Cir. 1997) (affirming summary judgment where "Plaintiffs' allegations do not amount to 'passing off'"); *see also Quintessential, LLC v. Quintessential Brands S.A.*, No. 20-CV-01722, 2022 WL 357502, at *3 (N.D. Cal. Feb. 7, 2022) (dismissing California common law unfair competition claim for lack of allegations of defendant's attempt to "pass off" product).

A successful claim of "passing off" one's product as another's for the purpose of an unfair competition claim requires "real proof that defendant subjectively and knowingly intended to confuse buyers of a competitive product." 3 McCarthy on Trademarks and Unfair Competition § 25:3 (5th ed.). In practice, the plaintiff must show that the defendant "fraudulently markets his goods or services as those of another" by making "fraudulent misrepresentation[s] . . . for the purpose of inducing persons to purchase the goods which he markets." *Rider Clothing LLC v. BoardRiders, Inc.*, No. CV04098, 2019 WL 8163813, at *5 (C.D. Cal. Nov. 26, 2019); *id.* at *3. Thus, a common law unfair competition claim requires "'deceptive conduct' or conduct that otherwise 'lies outside the ordinary course of business and is tainted by fraud or coercion.'" *Silverlit*

*Toys Manufactory Ltd. v. Rooftop Grp., USA, Inc.*, No. CV 08– 07631, 2009 WL 10671853, at *6 (C.D. Cal. Aug. 7, 2009) (citation omitted). But "[t]he mere use of substantially similar means of identifying a product, if not used in such manner as to induce the public to believe that the work to which it is applied is the identical thing which it originally designated, does not constitute unfair competition." *TMC Aerospace, Inc. v. Elbit Sys. of Am. LLC*, No. CV 15-07595, 2016 WL 3475322, at *8 (C.D. Cal. Jan. 29, 2016) (citation omitted).

Impossible Foods has never alleged—much less substantiated—that Impossible LLC has sought to "pass off" or fraudulently sell its products as Impossible Foods products. When asked to identify such instances, Impossible Foods provided nothing. (Ex. II at 16.) Nor is there any evidence to suggest Impossible LLC had any interest in making, marketing, or selling plant-based meat substitutes. Rather, Mr. Runyon has made significant efforts to *differentiate* Impossible LLC from Impossible Foods and its products whenever he can. (*See, e.g.*, Ex. B at 286:5-287:9.)

Impossible Foods also has no evidence Impossible LLC ever intended to market its goods with the intent of inducing customers to believe they had a connection to Impossible Foods. This is also dispositive of Impossible Foods' claim, as California's federal courts consistently require evidence of fraudulent intent to sustain a common law unfair competition claim. *See, e.g.*, *Lodestar Anstalt v. Bacardi & Co*., No. 2:16-cv-06411, 2019 WL 8105378, at *16 (C.D. Cal. July 3, 2019) (claim failed where no allegations or evidence that "Bacardi passed off its rum products as another or that it acted fraudulently or with an intent to mislead consumers"); *Stonefire Grill, Inc. v. FGF Brands, Inc.*, 987 F. Supp. 2d 1023, 1055-56 (C.D. Cal. 2013) ("[M]erely conducting a trademark search and discovering Plaintiff's use is insufficient to demonstrate intent.").

*Allstate Ins. Co. v. Kia Motors Am., Inc.*, is instructive. No. CV 16–6108, 2017 WL 6550669, at *14 (C.D. Cal. Dec. 22, 2017), *aff'd*, 784 F. App'x 507 (9th Cir. 2019). In *Allstate*, the court found no intent "to confuse the public or to derive goodwill" from the plaintiff's mark where the defendant "independently derived the name, initially unaware that [plaintiff] used the mark, and its legal team performed a trademark search." *Id.* That is the case here as well. Impossible LLC's use of the IMPOSSIBLE mark in commerce predates Impossible Foods' usage by some six years. Mr. Runyon independently conceived of the "Impossible" mark for his Impossible-themed business

[redacted] (*Compare* Ex. B at 104:10-105:8 *with* Ex. Z at 52:22-53:6.) Indeed, Mr. Runyon has been using the IMPOSSIBLE mark in connection with the goods and services offered by his businesses since 2010, and obtained his first U.S. trademark registration of the term IMPOSSIBLE in March of 2012—before Impossible Foods even existed. (Exs. A, O.) And even after Impossible Foods began selling plant-based meat substitute products to restaurants years later, Impossible LLC offered no competing products, nor did it espouse any interest in doing so. Accordingly, there is no suggestion (let alone evidence) that Impossible LLC ever attempted any associational sales or marketing, nor did it explore the possibility of producing a similar product.

**2. The evidence confirms no consumer confusion.**

Impossible Foods has already conceded that [redacted] (Ex. BB at 300:11-22.) Given that, there can be no unfair competition here. "Under California law, a plaintiff claiming unfair competition must prove a likelihood of confusion by purchasers as to source . . . [T]his confusion must be of a specific kind: the public must be misled into thinking that the defendant's product is actually the plaintiff's." *Fisher v. Dees*, 794 F.2d 432, 440 (9th Cir. 1986) (citation omitted) (affirming summary judgment dismissal where defendants were not selling their goods as plaintiffs'); *see also Walt Disney Prods. v. Air Pirates*, 581 F.2d 751, 760 (9th Cir. 1978) ("California law reveals a consistently enforced requirement that a plaintiff charging unfair competition prove a likelihood of confusion by purchasers as to source.").

This element is essential to Impossible Foods' claim. When "the specific property at issue is a trade name or something comparable, the courts have consistently required a likelihood of confusion." *See, e.g.*, *Garcia v. Coleman*, No. C–07–2279, 2008 WL 4166854, at *15-16 (N.D. Cal. Sept. 8, 2008) (collecting cases and entering summary judgment on common law unfair competition claim, finding "no genuine dispute of fact" that there was no likelihood of confusion between two wine products even where "the Sonoma Ridge labels used by Defendants were identical to" plaintiff's "and for the same type of product," because "there is no record evidence supporting a

finding of a likelihood of confusion"). Here, [redacted] (*See supra* § I.A; Ex. BB at 300:11-22 [redacted] The unfair competition claim fails for this additional reason as well.

**3. Impossible Foods has not suffered any injury.**

Absent any fraudulent conduct or likelihood of confusion, it is a foregone conclusion that Impossible Foods can show no injury. Summary judgment is warranted for this reason as well.

A plaintiff pursuing a common law unfair competition claim must prove the defendant's misconduct caused a competitive injury, meaning the plaintiff must have suffered some actual economic harm to its business that was caused by the defendant's deception of plaintiff's actual and potential customers. *See Luna Distrib. LLC v. Stoli Grp. (USA), LLC*, No. SA CV 17-1552, 2018 WL 5099277, at *12 (C.D. Cal. July 10, 2018) ("[A] claim for common law unfair competition requires 'a showing of competitive injury.'" (internal citation omitted)); *Deckers Outdoor Corp. v. Team Footwear, Inc*., No. CV 13-00532, 2013 WL 12131287, at *2 (C.D. Cal. July 11, 2013) ("Common law unfair competition is akin to 'deceptive advertising,' where, as a result of such advertising, a plaintiff suffers unfair injury by a competitor." (citation omitted)). Many California district courts have rejected common law unfair competition claims due to the absence of evidence that a defendant's misrepresentations diverted the plaintiff's sales to the defendant, quantifiably damaged the plaintiff's reputation in the marketplace, or otherwise measurably harmed the plaintiff's established goodwill. *See, e.g., Rider*, 2020 WL 4578700, at *3 ("Plaintiff has admitted that it no longer engages in sales and could not provide any evidence to support its claims that it lost sales or that Defendants damaged the goodwill of the Rider brand."); *Water, Inc. v. Everpure, Inc.*, CV 09-3389, 2012 WL 12949368, at *10 (C.D. Cal. Aug. 2, 2012) ("Because . . . Everpure cannot offer evidence to establish damages . . . summary judgment is appropriate."); *Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc.*, No. CV 05-2200, 2008 WL 11334030, at *24 (C.D. Cal. Mar. 17, 2008) (granting summary judgment on common law unfair competition counterclaims where "Defendants have adduced no admissible evidence that they have been injured by any of

plaintiffs' purportedly unfair and false representations.").

Impossible Foods has not identified any evidence of economic injury as a result of Impossible LLC's sales of nutritional supplement products. None of its witnesses could identify such an injury. (*See, e.g.*, Exs. BB at 297:3-299:21, MM at 183:6-186:20.) None of its discovery responses did either. (*See, e.g.*, Ex. NN at 9.) And none of the documents produced point to any concrete, cognizable harm suffered by Impossible Foods as a result of Impossible LLC's unrelated nutritional supplement products. Summary judgment should therefore be entered on this claim.

### C. Impossible Foods' Claim for Fraud in the Procurement (Count Six) Is Legally and Factually Deficient

In its Sixth Claim for Relief, Impossible Foods asks the Court to cancel Impossible LLC's Trademark Nos. 5590801, 5603025, 5620625, and 6571603 pursuant to 15 U.S.C. § 1119. These registrations protect (1) two variations of "IMPOSSIBLE FITNESS" for certain apparel (Nos. 5590801 and 5603025, "Fitness Apparel Marks"); (2) an "IMPOSSIBLE" animation for certain apparel and a personal fitness and adventure website (No. 6571603, "Animated Mark"); and (3) "IMPOSSIBLE" for nutritional supplements, certain apparel, search engine optimization, and a personal fitness and adventure website (No. 5620625, "Word Mark").

Impossible Foods seeks cancellation based on its claim that Impossible LLC and Mr. Runyon intentionally defrauded the PTO in obtaining these registrations on "some of the [apparel] goods" listed therein (TAC ¶ 136), and caused unspecified "great and irreparable harm" to Impossible Foods in the process. But the claim for cancellation is legally improper here, as Impossible Foods has asserted no independent trademark violation against these registrations that would entitle it to such a remedy, nor has it substantiated any injury from these marks. Further, the cancellation remedy is moot and therefore unwarranted here because Impossible LLC irrevocably amended the several aspects of the registrations targeted by these claims.

#### 1. Impossible Foods lacks standing to pursue a cancellation claim against the Fitness Apparel, Animated, and Word Marks.

Impossible Foods' efforts to seek cancellation of Impossible LLC's marks are misguided and contrary to law. As an initial matter, Impossible Foods wrongly seeks cancellation pursuant to 15 U.S.C. § 1064(3) (*see* TAC ¶ 133), which empowers only the Trademark Trial and Appeal Board

("TTAB") to cancel a mark upon a showing of fraud. Federal courts, on the other hand, are empowered to impose civil liability for fraudulent registrations under 15 U.S.C. § 1120 only upon a showing of injury stemming from the registrations. Even then, the judicial remedy of cancellation, provided at 15 U.S.C. § 1119, is only available for parties actually affected by the challenged registrations, which Impossible Foods is not.

Even construing Impossible Foods' claim as seeking cancellation under Section 1119, Impossible Foods has failed to show a predicate trademark injury from the Fitness Apparel, Animated, and Word Marks that would permit cancellation. Section 1119 is a strictly remedial measure imposed to address trademark infringement under the Lanham Act, not a standalone claim to be freely asserted against another party's registered marks absent infringement. As the Ninth Circuit confirmed, "each circuit to directly address [15 U.S.C. § 1119] has held that it 'creates a remedy for trademark infringement rather than an independent basis for federal jurisdiction.'" *Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 599 (9th Cir. 2014) (quoting *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 99 (2d Cir. 2011), *aff'd on other grounds*, 568 U.S. 85 (2013)); *see San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 65 F.4th 1012, 1037 (9th Cir.), *cert. denied*, 144 S. Ct. 190 (2023) ("§ 1119 provides cancellation only as relief to a party who has proved infringement"). Other courts have similarly held that "[Section 1119] only provides a remedy for some other violation of the trademark laws, not an independent cause of action." *E. Iowa Plastics, Inc. v. PI, Inc.*, 832 F.3d 899, 903 (8th Cir. 2016) (recognizing a party must be injured by a violation of a trademark law to have standing to seek cancellation under Section 1119); *see SmileDirectClub, LLC v. Berkely*, No. SACV181236JVSKESX, 2018 WL 8131096, at *9 (C.D. Cal. Oct. 26, 2018) (collecting cases) ("cancellation is an available remedy for actions in which there is an independent cause of action involving harm caused by the trademark registration which the party seeks to cancel.")

Here, Impossible Foods has asserted no trademark infringement claim implicating the Apparel Fitness and Animated marks, or the allegedly fraudulent portion of the Word Mark. In fact, there is no overlap between Impossible Foods' trademark infringement claim and the allegedly fraudulent registrations it seeks to cancel. Likewise, Impossible Foods has not asserted an

independent fraud claim under Section 1120 against *any* of these marks. Rather, Impossible Foods seeks cancellation of the Fitness Apparel, Animated, and Word Marks on grounds that *some* of the clothing products listed in those registrations were not in "bona fide" use. But that is not an "independent cause of action involving harm caused by the trademark registration," and cannot form the basis for Impossible Foods' claim for cancellation of the marks. Summary judgment is therefore warranted as a matter of law.

**2. Impossible Foods has not been injured.**

With no relevant trademark infringement necessary to support its cancellation claim, Impossible Foods may attempt to recast its fraud claim as asserted under Section 1120, rather than Section 1064 as it pleaded. But it is too late to amend the pleadings now, and even so, the claim would remain deficient because Impossible Foods has not identified any evidence of harm it allegedly suffered from Impossible LLC's Fitness Apparel, Animated, or Word Marks, or from Impossible LLC's opposition to Impossible Foods' pending application Serial No. 88855875. Absent evidence of cognizable harm, Impossible Foods cannot sustain a claim for fraud or seek cancellation of Impossible LLC's marks.

Section 1120 provides that "[a]ny person who shall procure registration in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action *by any person injured thereby* for any damages sustained in consequence thereof." 15 U.S.C. § 1120 (emphasis added). Yet Impossible Foods has failed to identify any actual injury stemming from Impossible LLC's registration of the Fitness Apparel, Animated, or Word Marks. *See E. Iowa Plastics, Inc.*, 832 F.3d at 904 (holding that "[o]nce the district court had determined that [the plaintiff] did not suffer any damages from [the defendant's] violation of [15 U.S.C. § 1120], there was not further basis for [the plaintiff] to have standing to seek cancellation of the [trademark] registrations.") The complaint contains only the generalized allegation that Impossible LLC is "disrupting Impossible Foods' United States business operations and causing great and irreparable harm to Impossible Foods." (TAC ¶ 140.) But [redacted]

[redacted] (Ex. MM at 183:3-184:21), [redacted] (*Id.* at 184:22-186:16.) Even Impossible Foods' purported damages expert omitted any analysis or opinion that Impossible Foods has been harmed as a result of the conduct complained of, leaving a complete lack of proof as to this element. (Ex. OO.)

Impossible Foods also fails to identify any future injury. Its complaint alleges disruption to its business because Impossible LLC asserted the marks in opposition to its recipe trademark application (Serial No. 88855875), but omits to mention that the opposition also rests on separate marks outside the scope of this claim. (Ex. CCCC.) Thus, even if the Fitness Apparel, Animated, or Word Marks were cancelled, Impossible Foods still would face a valid opposition to its application based on Impossible LLC's other registered marks. And valid opposition to a mark is not a cognizable "injury." *See San Diego*, 65 F.4th at 1032. The Fitness Apparel, Animated, or Word Marks therefore are not the cause of any future injury to Impossible Foods either.

Absent evidence of any articulable injury to Impossible Foods, cancellation is unwarranted and summary judgment should be entered on this claim.

**3. Impossible Foods' claim as to the Fitness Apparel and Word Marks is moot.**

Even if cancellation were available, there is no remedy for the Court to provide on the Fitness Apparel and Word Marks because Impossible LLC has already amended its registrations to remove the disputed goods at issue. Impossible Foods' cancellation claim therefore is moot.

It is well settled that a defendant moots a claim where it modifies a disputed trademark registration, as the modification ensures the dispute is not reasonably expected to recur. *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 92 (2013) (Defendant's sworn modification mooted claim to invalidate registration). Here, Mr. Runyon voluntarily amended Impossible LLC's Word and Fitness Apparel Mark registrations in December 2024 and April and May 2025, respectively, to remove reference to the clothing goods complained of (TAC ¶ 78), including sweatshirts, pants, shorts, tank tops, yoga pants, and tights. (Exs. X, PP, and QQ.) Such amendments, which are formal, sworn statements to a federal agency, are powerful evidence of Impossible LLC's voluntary

cessation. *See Already*, 568 U.S. at 97 (sworn statement was sufficient to show voluntary cessation and moot trademark infringement claim).

Impossible Foods specifically was aware of the Word Mark amendment at the time it filed its proposed TAC on January 31, 2025. Indeed, the TAC itself alleges that Impossible LLC amended the Word Mark registration to remove the goods complained of. (*See* TAC ¶ 76 & Ex. DD.) Impossible Foods' claim as to the Word Mark therefore was moot from the start.

Even if justiciable in the first instance, the specific relief available here has already been provided, thereby mooting the claim for this additional reason. Specifically, federal courts follow the Trademark Trial and Appeal Borad's guidance that the proper remedy in these cases is cancellation only of the allegedly fraudulently-procured portions of the registration. "[F]raudulent procurement of registration of one class of products or services in and of itself does not render void the an entire multi-class trademark registration." *SmileDirectClub*, 2018 WL 8131096, at *6 (citing *BBK Pictures, Inc. v. Boston Iced Tea Co., Inc.*, No. 91214191, 2017 WL 3446803, at *7 (TTAB July 20, 2017) ("[E]ach class of goods or services in a multiple class registration must be considered separately when reviewing the issue of fraud.") and *G&W Labs. Inc. v. GW Pharma Ltd.*, 89 U.S.P.Q.2d 1571, 1574 (T.T.A.B. 2009)). Here, because the allegedly fraudulent goods have already been removed from the Fitness Apparel and Word Marks, there is no further remedy available as to those marks, and summary judgment should be entered in Impossible LLC's favor.

### D. Impossible LLC Is Entitled to Summary Judgment as to Impossible Foods' Claim for Abandonment (Count Seven)

Impossible Foods asserts that Trademark Registration Nos. 5590801 ("Impossible Fitness" strikethrough text on clothing), 5603025 ("Impossible Fitness" plain text on clothing), and 6571603 ("Impossible" strikethrough text on clothing and personal fitness website) should be cancelled on grounds of abandonment. The evidence demonstrates that this claim too is meritless.

Under the Lanham Act, "a mark can only be deemed 'abandoned' when either of the following occurs: '(1) When its use has been discontinued with intent not to resume such use,' or '(2) When any course of conduct of the owner, including acts of omission as well as commission, causes the mark to become the generic name for the goods or services on or in connection with

which it is used or otherwise to lose its significance as a mark.'" *Neo4j, Inc. v. PureThink, LLC*, No. 5:18-CV-07182, 2020 WL 2614871, at *5 (N.D. Cal. May 21, 2020) (quoting 15 U.S.C. § 1127). Impossible Foods claims the first condition here, but the undisputed material facts show otherwise.

Under the first prong, a mark is deemed discontinued only when the accusing party can show: "(1) discontinuance of trademark use and (2) intent not to resume such use." *Electro Source, LLC v. Brandess-Kalt-Aetna Grp., Inc.*, 458 F.3d 931, 935 (9th Cir. 2006) (reversing cancellation of mark based on abandonment at summary judgment stage for making inference in favor of claimant and not mark holder). The Ninth Circuit takes the term "abandonment" seriously: "abandonment requires *complete* cessation or discontinuance of trademark use." *Id*. at 38 (no complete abandonment where intermittent sales occurred); *see Scat Enters., Inc. v. FCA US LLC*, No. CV 14-7995, 2017 WL 5749771, at *2 (C.D. Cal. June 8, 2017) (entering summary judgment where claimant "fail[ed] to establish that [mark holder] *completely* discontinued use of any its marks, much less that it intended not to resume use of any of its marks" (emphasis added).)

Impossible Foods asserts that Impossible LLC did not engage in bona fide use of the challenged marks in the ordinary course of trade for more than three years, and that such non-use is prima facie evidence of abandonment under 15 U.S.C. § 1127. But the undisputed material facts show otherwise: Impossible LLC has consistently prepared and sold apparel products bearing the challenged marks, including within the last three years. (*See, e.g.,* Ex. G; *see also* Ex. B at 144:5-145:9.) In December 2023 for example, Impossible LLC did a merch drop of hoodies with the Impossible strikethrough mark. (Ex. N.)

This is sufficient, as "[e]ven a single instance of use is sufficient against a claim of abandonment of a mark if such use is made in good faith." *Electro Source*, 458 F.3d at 938 (quoting "bright line rule" in *Carter-Wallace, Inc. v. Proctor & Gamble Co.*, 434 F.2d 794, 804 (9th Cir. 1970).) In *Carter-Wallace*, the Ninth Circuit held that a mark holder could overcome accusations of abandonment by proffering "legitimate business reasons for its action." 434 F.2d at 803-04. Here, Impossible LLC has multiple legitimate and understandable business reasons for its intermittent sales of products under the challenged marks. First, Impossible LLC is subject to the cyclical and seasonal nature of product sales. (Ex. WW at 5.) Second, part of the period in which Impossible

Foods asserts abandonment was the COVID-19 pandemic, which caused unprecedented supply chain disruptions such that Impossible LLC had little recourse to obtain inventory to sell. (*Id.* at 7.)

Even if Impossible Foods could make a prima facie showing of discontinuance of use, the record remains insufficient to satisfy the requirement of intent not to resume. "[U]nless the trademark use is actually terminated, the intent not to resume use prong of abandonment does not come into play." *Electro Source*, 458 F.3d at 937-38. Here, as Impossible Foods has noted, the challenged trademark registrations remain in place. Impossible LLC has not terminated them; to the contrary, it continues selling goods under those marks. (Exs. Y, PP, QQ.) Without evidence sufficient to show abandonment, summary judgment should be entered.

## II. THE COURT SHOULD SUMMARILY ADJUDICATE IMPOSSIBLE LLC'S PRIORITY IN THE DIET AND NUTRITION CATEGORY

Impossible Foods does not—and cannot—dispute Impossible LLC's priority of use of the IMPOSSIBLE-formative marks in the category of fitness, health, recipes, cookbooks, and nutrition advisory services ("Diet and Nutrition Category"). "'It is axiomatic in trademark law that the standard test of ownership is priority of use. . . . the party claiming ownership must have been the first to actually use the mark in the sale of goods or services.'" *Sarieddine v. Alien Visions E-Juice, Inc.*, No. CV183658, 2019 WL 1966661, at *4 (C.D. Cal. Apr. 12, 2019) (quoting *Rearden*, 683 F.3d at 1202-03). "[T]he first use need not be extensive" to satisfy the Latham Act's use in commerce requirement; it simply must be "bona fide and commercial in character,'" *Chippendales USA, LLC v. Banerjee*, No. CV238630, 2025 WL 1674439, at *3 (C.D. Cal. May 13, 2025) (quoting *Dep't of Parks & Recreation for State of Cal. v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1126 (9th Cir. 2006)).

Here, the undisputed facts show Impossible LLC was the first to use IMPOSSIBLE-formative mark in the Diet and Nutrition Category, and is therefore entitled to priority for at least three reasons. *First*, Impossible LLC has continuously used IMPOSSIBLE-formative marks in connection with commercial goods and services in the Diet and Nutrition Category since 2012. *Second*, Impossible LLC has engaged in substantial non-commercial advertising and promotional activity to support its offerings in the category. *Third*, Impossible Foods' first use of the IMPOSSIBLE-formative marks in the Diet and Nutrition Category occurred more than eight years after Impossible LLC's first use in

that category. These facts establish that Impossible LLC is entitled to summary adjudication of its priority, thereby narrowing the issues for trial. *See, e.g.*, *Quiksilver, Inc. v. Kymsta Corp.*, No. CV025497, 2003 WL 27382913, at *5 (C.D. Cal. July 14, 2003) (citation omitted) ("In a trademark infringement case . . . the issue of priority . . . is an appropriate issue for summary adjudication.").

### A. Impossible LLC Began Using the IMPOSSIBLE-Formative Mark on Diet and Nutrition Offerings in 2012

"A mark is deemed to be used in commerce on goods when: '(A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto...and (B) the goods are sold or transported in commerce.'" *See Macy's Inc. v. Strategic Marks, LLC*, No. 11CV06198, 2016 WL 374147, at *6 (N.D. Cal. Feb. 1, 2016) (quoting 15 U.S.C. § 1127)). Here, Impossible LLC first began to establish its priority on the IMPOSSIBLE-formative marks with its sale of goods in the Diet and Nutrition Category in 2012, when it started advertising, marketing, and selling combined fitness and nutrition guides on impossiblehq.com. *See Macy's Inc.*, 2016 WL 374147, at *6 (offering products for sale on a website is relevant to establishing priority).

For example, on February 28, 2012, Impossible LLC published the "Impossible TRI Triathlon Guide" ("Impossible TRI"), which includes an associated cookbook and nutrition guide. (Exs. F, XX at 22-23.) The Impossible TRI Cookbook contains recipes (e.g., "Paleo Recipes for Endurance Athletes") and fitness and nutrition guidance (e.g., ingredient swaps) designed to help athletes optimize their diets to boost performance. (Ex. YY.) The Impossible TRI Nutrition Guide features a background on the Paleo diet as well as information to help readers eat healthily and optimize their nutrition to maximize their athletic efforts, as well as a link to a commercial website to assist in tracking their food intake. (Ex. ZZ.). Impossible TRI prominently features IMPOSSIBLE-formative marks on the top and bottom of every page. (Exs. H, YY.) In September 2012, Impossible LLC expanded its diet and nutrition offerings when it published "Impossible Abs," which is a comprehensive health and fitness program that includes food, nutrition, and recipe sections, which it marketed broadly to its audience. (Exs. H; AAA, BBB, XX at 22-23.) As with Impossible TRI, Impossible Abs prominently features IMPOSSIBLE-formative marks on every page. Impossible LLC then updated its offering with Impossible Abs 2.0, which includes expanded

diet and recipe sections for vegans and vegetarians and four additional videos discussing nutrition and fitness. (Ex. E.) The prominent display of IMPOSSIBLE-formative marks on every page of Impossible Tri and Impossible Abs show that Impossible LLC has made bona fide use of those marks in commerce. *See Macy's Inc.*, 2016 WL 374147, at *6 (N.D. Cal. Feb. 1, 2016) ("A mark is deemed to be used in commerce on goods when: '(A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto...and (B) the goods are sold or transported in commerce.'") (quoting 15 U.S.C. § 1127)).

Since launching in the Diet and Nutrition Cateogry, Impossible LLC has never ceased production and sale of all its combined fitness and nutrition programs. (Ex. L, CCC, DDD, and EEE.) To date, Impossible LLC has generated more than [redacted] from its fitness and nutrition products and subscriptions. (Exs. SS, TT, FFF, GGG, and HHH.) As the popularity of its fitness and nutrition programs grew, Impossible LLC created diet and recipe software applications on the Apple iOS and Google Android platforms to expand access. (Exs. K, L, M.) For example, since launching in 2015, approximately 247,232 Apple iOS users have downloaded Impossible LLC's suite of diet and recipe apps and entered Purchase and Use Agreements under the IMPOSSIBLE-formative marks, which have generated [redacted] in gross revenue for Impossible LLC. (Ex. III.) Those software applications have meaningfully expanded Impossible LLC's fitness and nutrition programs and further establish its priority in the Diet and Nutrition Category. *See Hanginout, Inc. v. Google, Inc.*, 54 F. Supp. 3d 1109, 1121 (S.D. Cal. 2014) ("Accordingly, the Court finds Hanginout is the senior user of the marks based on the totality of the circumstances—number of registered users, marketing via social media, and launch of iTunes app in the Apple store to name a few."). Together, these facts demonstrate Impossible LLC's priority in the Diet and Nutrition Category since 2012. *See Farmasino, Inc. v. Farmasino Pharms. (Jiangsu) Co., Ltd*, No. 515CV01877, 2016 WL 7655740, at *7 (C.D. Cal. June 20, 2016) (priority shown through sales & shipment evidence).

### B. Impossible LLC Has Continuously Engaged in Non-Commercial Activity to Support its Products in the Diet and Nutrition Category

Since 2012, Impossible LLC has continuously promoted its fitness and nutrition programs. For example, between 2012 and 2019, Impossible LLC continuously posted on impossiblehq.com

advertising Impossible Abs 2.0 (Exs. C, E, DDD, JJJ-PPP.) Impossible LLC has also spent more than [redacted] on advertising, marketing, and promotion of its diet and nutrition offerings. (Exs. SS-VV, FFF-HHH.) And Impossible LLC has also engaged in marketing activities for its fitness and nutrition programs, including podcasts, interviews, and online collaborations. (Exs. QQQ- ZZZ.) Impossible LLC's combined promotional efforts and advertising expenditures are meaningful non-sales commercial activity that further establish priority under the Lanham Act. *See Yuga Labs, Inc. v. Ripps*, 2023 WL 3316748, at *6 (C.D. Cal. Apr. 21, 2023) (enumerating non-sales activity satisfying the Latham Act use in commerce requirement); *Novadaq Techs., Inc. v. Karl Storz GmbH & Co. K.G.*, 143 F. Supp. 3d 947, 960 (N.D. Cal. 2015) (recognizing that tradeshows & collaborations bearing the mark are sufficient commercial activity to support use in commerce).

**C. Eight Years After Impossible LLC Established Its Priority Impossible Foods Expanded into the Diet and Nutrition**

On April 1, 2020, Impossible Foods applied for trademark protection for "[p]roviding information about recipes, ingredients and cooking information; providing an online computer database to consumers featuring information about recipes, ingredients and cooking information." (Ex. JJ.) With this application, Impossible Foods announced its intent to use the IMPOSSIBLE-formative in Impossible LLC's Diet and Nutrition Category. In July of that year, Impossible Foods further encroached when it published IMPOSSIBLE: The Cookbook, which included recipes, health, and nutrition information. (*See* Ex. BBBB.). Impossible Foods' use of an IMPOSSIBLE-formative mark in the Diet and Nutrition Category long postdate Impossible LLC's commercial activity in this space and cannot materially conflict with Impossible LLC's well-established rights as the senior user in the category. The Court should find that Impossible LLC is the priority user.

**<u>CONCLUSION</u>**

For the reasons set forth above, the Court should grant summary judgment in favor of Impossible LLC and Joel Runyon on Impossible Foods Inc.'s First, Second, Third, Fourth, Sixth, and Seventh Claims; and grant summary adjudication that Impossible LLC's mark has priority with regard to recipes, cookbooks, and nutritional services and products.

Dated: August 8, 2025

Respectfully submitted,

BRAUNHAGEY & BORDEN LLP

By: */s/ Adam S. Cashman*
Adam S. Cashman

*Attorneys for Defendants / Counter-Plaintiffs Impossible LLC and Joel Runyon*