KOLLIN J. ZIMMERMANN (SBN 273092)
KILPATRICK TOWNSEND & STOCKTON LLP
1801 Century Park East
Suite 2300
Los Angeles, California 90067
Telephone: (310) 777-3755
Facsimile: (310) 362-8756
kzimmermann@ktslaw.com

R. CHARLES HENN JR. (*pro hac vice*)
H. FORREST FLEMMING, III (*pro hac vice*)
ERICA CHANIN (*pro hac vice*)
1100 Peachtree Street NE
Atlanta, Georgia 30309
Telephone: (404) 815-6572
Facsimile: (404) 541-3240
chenn@ktslaw.com
fflemming@ktslaw.com
echanin@ktslaw.com

Attorneys for Plaintiff/Counter-Defendant
IMPOSSIBLE FOODS INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| IMPOSSIBLE FOODS INC., a Delaware corporation,<br><br>             Plaintiff/Counter-Defendant,<br><br>   v.<br><br>IMPOSSIBLE LLC, a Texas limited liability company, and JOEL RUNYON,<br><br>             Defendants/Counter-Plaintiffs. | Case No. 5:21-cv-02419-BLF (SVK)<br><br>**PLAINTIFF/COUNTER-DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**REDACTED**<br><br>Judge:    Hon. Beth Labson Freeman<br>Date:     October 23, 2025<br>Time:     9:00 a.m. |

# TABLE OF CONTENTS

                                                                                    **Page**

I.      INTRODUCTION ...................................................................................1

II.     BACKGROUND ...................................................................................1

        A.      The First Signs of Mr. Runyon's Fraud: IMPOSSIBLE
                NUTRITION ...........................................................................2

        B.      More Signs of Mr. Runyon's Fraud: the PTO's Random
                Audit.....................................................................................3

        C.      Discovery Unveils the Extent of Mr. Runyon's Fraud on
                the PTO ..................................................................................5

        D.      Judge Van Keulen Finds That Mr. Runyon Committed
                Fraud on the PTO ...................................................................5

        E.      Runyon's Supplemental Deposition........................................7

        F.      Defendants' Scramble to Amend Their Registrations ............7

III.    ARGUMENT ........................................................................................8

        A.      Impossible Foods's Fraud Counterclaims Should Proceed................................8

                1.      Impossible Foods Has Standing................................8

                2.      Impossible Foods Is Not Pursuing a Section 1120
                        Claim.........................................................................9

                3.      Impossible LLC's Post Hoc Amendments Moot
                        Neither the Fraud Claim nor the Cancellation
                        Remedy .....................................................................9

        B.      Likelihood of Confusion Cannot Be Decided on Summary
                Judgment Here .......................................................................11

                1.      Impossible Foods's IMPOSSIBLE Mark Is Strong...........................12

                2.      Defendants Concede That the Marks Are Similar ................13

                3.      The Parties' Products Are Not Identical; They Are
                        Related.......................................................................13

                4.      The Parties Are Likely to Expand to Compete More
                        Directly......................................................................15

                5.      The Parties Use Similar Marketing Channels ....................15

                6.      The Intent Factor Favors Impossible Foods.........................15

                7.      Consumers Do Not Exercise a High Degree of Care..........................16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

8.    The Absence of Actual Confusion Is
      Understandable ...............................................................16

C.    Defendants Misconstrue the Elements of California
      Common Law Unfair Competition Claims ........................................17

D.    Impossible LLC Fails to Establish Priority As a Matter of
      Law ................................................................................18

      1.    Impossible LLC Fails to Tie Its Evidence to Any
            Specific Mark ..........................................................19

      2.    Impossible LLC Offers Very Limited Goods and
            Services ...............................................................19

      3.    Impossible LLC Fails to Prove Prior Use in
            Commerce as to Nutrition Advisory Services and
            Online Recipes .........................................................21

      4.    Impossible LLC Fails to Prove Continuous Use as
            to Online Recipes ......................................................23

E.    Impossible LLC Abandoned Three of its Registered Marks ......................24

IV.   CONCLUSION ..................................................................25

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Adidas America, Inc. v. Skechers USA, Inc.*,
5
    890 F.3d 747 ............................................................................................................... 14

6

*Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt*,
    744 F.3d 595 (9th Cir. 2014) ........................................................................................ 8

7

8

*Already, LLC v. Nike, Inc.*,
    568 U.S. 85 (2013) ....................................................................................................... 9

9

*Am. Auto. Ass'n of N. Cal., Nev. & Utah v. Gen. Motors LLC*,
10
    367 F. Supp. 3d 1072 (N.D. Cal. 2019) ...................................................................... 19

11

*AM Participations S.A.S. v. Div. 7, LLC*,
    No. CV 20-7633 PSG, 2021 WL 6104388 (C.D. Cal. Oct. 13, 2021) ......................... 19

12

13

*Amarte USA Holdings, Inc. v. Kendo Holdings Inc.*,
    No. 22-cv-08958-CRB, 2024 WL 4093910 (N.D. Cal. Sept. 4, 2024) ....................... 10

14

*Ball v. Am. Trial Laws. Ass'n.*,
15
    14 Cal. App. 3d 289, 92 Cal. Rptr. 228 (Ct. App. 1971) ............................................ 18

16

*Blue Bottle Coffee, LLC v. Liao*,
    No. 21-cv-06083-CRB, 2024 WL 2061259 (N.D. Cal. May 7, 2024) ................... 8, 15

17

18

*Brookfield Commc'ns Inc. v. West Coast Ent. Corp.*,
    174 F.3d 1036 (9th Cir. 1999) .................................................................................... 23

19

*Brooklyn Brewery Corp. v. Black Ops Brewing, Inc.*,
20
    156 F. Supp. 3d 1173 (E.D. Cal. 2016) ...................................................................... 14

21

*Casual Corner Assocs., Inc. v. Casual Stores of Nev., Inc.*,
    493 F.2d 709 (9th Cir. 1974) ...................................................................................... 23

22

23

*Cleary v. News Corp.*,
    30 F.3d 1255 (9th Cir. 1994) ...................................................................................... 17

24

*Coca-Cola Co. v. Overland, Inc.*,
25
    692 F.2d 1250 (9th Cir. 1982) .................................................................................... 24

26

*Dep't of Parks & Rec. v. Bazaar Del Mundo Inc.*,
    448 F.3d 1118 (9th Cir. 2006) .................................................................................... 23

27

28

*Dr. Seuss Enters., L.P. v. ComicMix LLC*,
    300 F. Supp. 3d 1073 (S.D. Cal. 2017) ...................................................................... 22

*eMachines, Inc. v. Ready Access Memory, Inc.*,
  No. EDCV00-00374-VAPEEX, 2001 WL 456404 (C.D. Cal. Mar. 5, 2001) ...................... 24

*G&W Lab'ys, Inc. v. G W Pharma Ltd.*,
  89 U.S.P.Q.2d 1571 (T.T.A.B. 2009) ......................................................................... 9, 10, 11

*Hansen Bev. Co. v. Cytosport, Inc.*,
  No. CV 09-0031-VBF(AGRx), 2009 WL 5104260 (C.D. Cal. Nov. 4, 2009) ...................... 14

*His & Her Corp. v. Shake-N-Go Fashion Inc.*,
  No. 2:11-cv-05323-CAS(VBKx), 2015 WL 13604255 (C.D. Cal. Apr. 6,
  2015) ........................................................................................................................ 13

*Hokto Kinoko Co. v. Concord Farms, Inc.*,
  738 F.3d 1085 (9th Cir. 2013) ................................................................................... 9

*Iglesia Ni Cristo v. Cayabyab*,
  No. 18-cv-00561-BLF, 2019 WL 3997474, at *12 (N.D. Cal. Aug. 23, 2019) .................... 17

*Ingrid & Isabel, LLC v. Baby Be Mine, LLC*,
  70 F. Supp. 3d 1105 (N.D. Cal. 2014) ........................................................................ 17

*Interstellar Starship Servs., Ltd. v. Epix Inc.*,
  184 F.3d 1107 (9th Cir. 1999) ............................................................................ 13, 15

*Ironhawk Techs., Inc. v. Dropbox, Inc.*,
  2 F.4th 1150 (9th Cir. 2021) ........................................................................... 12, 16, 17

*Jada Toys, Inc. v. Mattel, Inc.*,
  518 F.3d 628 (9th Cir. 2008) .................................................................................... 12

*JL Bev. Co., LLC v. Jim Beam Brands Co.*,
  828 F.3d 1098 (9th Cir. 2016) ........................................................................ 11, 12, 13, 16

*Matrix Motor Co. v. Toyota Motor Sales, U.S.A., Inc.*,
  120 F. App'x. 30 (9th Cir. 2005) ............................................................................... 23

*Medinol Ltd. v. Neuro Vasx, Inc.*,
  67 U.S.P.Q.2d 1205 (T.T.A.B. 2003) ........................................................................ 10

*Naterra Int'l, Inc. v. Bensalem*,
  92 F.4th 1113 (Fed. Cir. 2024) ................................................................................. 14

*Nimbus Data Sys., Inc. v. Nimble Storage, Inc.*,
  No. 2:11-cv-05323-CAS(VBKx), 2011 WL 13261995 (N.D. Cal. June 27,
  2011) ........................................................................................................................ 13

*One True Vine, LLC v. Wine Grp. LLC*,
  No. C 09-1328 MHP, 2009 WL 3707512 (N.D. Cal. Nov. 4, 2009) ...................... 9

*Perfumebay.com Inc. v. eBay, Inc.*,
    506 F.3d 1165 (9th Cir. 2007)......................................................................... 12

*Rearden LLC v. Rearden Com., Inc.*,
    683 F.3d 1190 (9th Cir. 2012)................................................................... 11, 15

*Reno Air Racing Ass'n, Inc. v. McCord*,
    452 F.3d 1126 (9th Cir. 2006)......................................................................... 17

*San Miguel Pure Foods Co. v. Ramar Int'l Corp.*,
    No. CV 11-09747 RGK, 2012 WL 13227045 (C.D. Cal. Nov. 27, 2012)............................ 14

*Sebastian Brown Prods. LLC v. Muzooka Inc.*,
    No. 15-CV-01720-LHK, 2016 WL 5910817 (N.D. Cal. Oct. 11, 2016) .......................... 23

*Sengoku Works Ltd. v. RMC Int'l, Ltd.*,
    96 F.3d 1217 (9th Cir.).................................................................................. 21

*Southland Sod Farms v. Stover Seed Co.*,
    108 F.3d 1134 (9th Cir. 1997)......................................................................... 17

*Star-Kist Foods, Inc. v. P.J. Rhodes & Co.*,
    735 F.2d 346 (9th Cir. 1984)........................................................................ 8, 9

*Suja, Life, LLC v. Pines Int'l, Inc.*,
    No. 16CV985-GPC(WVG), 2016 WL 6157950 (S.D. Cal. Oct. 24, 2016)........................... 14

*Sunsauce Foods Indus. Corp. v. Son Fish Sauce USA Corp.*,
    No. 21-cv-06083-CRB, 2024 WL 4933346 (N.D. Cal. Dec. 2, 2024) ..................................9

*The North Face Apparel Corp. v. Sanyang Indus. Co., LTD*,
    116 U.S.P.Q.2d 1217 (T.T.A.B. 2015) ............................................................. 10

*Yuga Labs, Inc. v. Ripps*,
    144 F.4th 1137 (9th Cir. 2025)................................................................... 12, 16

**Statutes**

15 U.S.C. § 1064 ...............................................................................................9

15 U.S.C. § 1119 ........................................................................................... 8, 9

15 U.S.C. § 1127 ............................................................................................ 21

Lanham Act............................................................................................ 1, 17, 18

Lanham Act § 43(a) ...................................................................................... 22

## I.      INTRODUCTION

Defendants' trademark infringement counterclaims will fail at trial and Defendants' trademark registrations will be cancelled because they have committed fraud on the United States Patent & Trademark Office (the "PTO") for at least seven years (and counting). Even Judge van Keulen found by a preponderance of the evidence that Defendant Joel Runyon engaged in fraud. To avoid having to explain their fraudulent conduct in court, Defendants seek summary judgment on Impossible Foods's fraud claims. But Defendants' motion fails. Impossible Foods has standing to pursue its fraud claims because the Lanham Act requires only a minimal showing of an "interest" beyond that of a member of the general public—which Impossible Foods undoubtedly has here. And Defendants' post hoc amendment of *some* of their registrations does not moot their fraud, either in whole or in part.

Defendants also seek summary judgment on Impossible Foods's trademark claims on likelihood of confusion grounds. Yet the Ninth Circuit has repeatedly warned that courts should avoid summary judgment on likelihood of confusion, because it involves a fact-intensive multi-factor analysis. And a multitude of material facts relevant to that analysis are in dispute. When the record is viewed in the light most favorable to Impossible Foods, as required at this stage, at least *five* of the likelihood-of-confusion factors weigh heavily in Impossible Foods's favor, with the other three either weighing slightly in Impossible Foods's favor or neutral. Summary judgment cannot be granted under these circumstances—nor can it be granted on Impossible Foods's common law unfair competition claim, which follows the Lanham Act claim exactly.

Finally, Defendants' motion as to Impossible Foods's trademark abandonment claim fails because Impossible LLC failed to use in commerce its IMPOSSIBLE FITNESS marks and IMPOSSIBLE motion mark for many years, creating a presumption of abandonment that Defendants fail to rebut as a matter of law. For these reasons, Defendants' motion should be denied in its entirety.

## II.     BACKGROUND

Defendants have attempted to present this case as a story of David versus Goliath—of entrepreneurial grit versus big corporation. But the record reveals a very different story: Joel

Runyon's years-long scheme to defraud the PTO and obtain exclusive trademark rights for products Mr. Runyon never sold, only to wield those fraudulently obtained rights against Impossible Foods and then scramble to cover up his deception only after being caught.

Over many years, Mr. Runyon submitted sworn Statements of Use (the "Statements") and a sworn Section 15 Declaration to the PTO for his portfolio of IMPOSSIBLE-formative marks, each time attesting that the marks were "currently" or "continuously" being used in connection with a broad array of products. But in each instance—as he was finally forced to admit under oath—Mr. Runyon was lying, as his company had *never even made* most of those products.

**A.    The First Signs of Mr. Runyon's Fraud: IMPOSSIBLE NUTRITION**

The first hint that Mr. Runyon was engaged in a years-long scheme to defraud the PTO came in July 2024, about two months after Impossible LLC asserted trademark infringement claims against Impossible Foods. Dkt. No. 80 at 27. A year prior, the PTO had reminded Impossible LLC that it could file a Section 15 Declaration attesting that its IMPOSSIBLE NUTRITION design mark had "been **continuously** used in commerce for five (5) consecutive years after the date of registration" for the goods listed in the registration, and that the mark was not being challenged in any ongoing proceeding. Declaration of H. Forrest Flemming, III ("Flemming Decl.") Ex. M (emphasis added). By law, the filing of a Section 15 Declaration renders a mark "incontestable." *See* 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* (hereinafter, "*McCarthy*") § 32:141 (5th ed.).

By July 2024, Impossible LLC had not filed a Section 15 Declaration. *See* Dkt. No. 138-1. On July 3, 2024, Impossible Foods sought Impossible LLC's consent for Impossible Foods to amend its complaint to assert a claim that Impossible LLC had abandoned several of its marks, including the IMPOSSIBLE NUTRITION design mark. Dkt. No. 93-2 at 4. Impossible Foods had been unable to find any evidence that Impossible LLC was actually using that design mark in commerce. *Id.*

The problem for Impossible LLC was that to file a Section 15 Declaration and obtain incontestability status, the registration could not be subject to challenge in any ongoing proceeding. Thus, if Impossible Foods were to file its motion to amend, Impossible LLC would

1    not be able to file a Section 15 Declaration and achieve incontestability.

2    So, instead of responding to Impossible Foods's July 3 request, Impossible LLC quickly

3    put together and filed a Section 15 Declaration on July 12 in which Mr. Runyon swore to the

4    PTO that (a) the registration was not being challenged in any proceeding; and (b) the mark had

5    been in continuous use for five years. *Id.*; Dkt. No. 138-1. At the time, Impossible Foods was

6    unaware of any evidence that Impossible LLC had actually been using the IMPOSSIBLE

7    NUTRITION design mark continuously for five years, so Impossible Foods advised the Court

8    on July 23, 2024, that it was seeking discovery in advance of potentially asserting a claim for

9    fraud on the PTO. Dkt. No. 93-2 at 6–7.

10    Discovery proved that Mr. Runyon was lying to the PTO in his Section 15 Declaration.

11    Impossible LLC had *not* been using the IMPOSSIBLE NUTRITION design mark continuously

12    for five years in connection with the goods in the registration: i.e., "nutritional supplements."

13    Impossible LLC had previously used the mark only in connection with bottled krill oil pills.

14    Dkt. No. 138-2. █████████████████████████████████████████████████████

15    ███████████████████████████████████████████████. Flemming Decl. Ex. N.

16    And by October 17, 2021, products bearing the IMPOSSIBLE NUTRITION design mark were

17    no longer listed for sale on Impossible LLC's websites. Dkt. No. 138-7 at 2. True, Impossible

18    LLC later launched its Impossible Sleep and Impossible Energy supplements, but neither those

19    two products, nor their packaging, nor the websites selling them used the IMPOSSIBLE

20    NUTRITION design mark. *See* Dkt. Nos. 138-3; 138-4; 138-7 at 10, 14–24. Rather, in January

21    2024—and apparently in response to the PTO's reminder—Impossible LLC added the design

22    mark back to its website and submitted a screenshot of it with Mr. Runyon's false Section 15

23    Declaration. Dkt. No. 138-1; *compare* Dkt. No. 138-7 at 22–24 (archival capture of

24    impossible.co/collections/nutrition from December 1, 2023) *with* Dkt. No. 151-14 (archival

25    capture of impossible.co/collections/nutrition from January 27, 2024).

26    **B.    More Signs of Mr. Runyon's Fraud: the PTO's Random Audit**

27    Ultimately, Mr. Runyon's fraud on the PTO extends to at least *five* trademark

28    registrations that Impossible LLC is asserting against Impossible Foods. One of those

registrations is the IMPOSSIBLE word mark. On February 3, 2024, the PTO notified

Impossible LLC that its IMPOSSIBLE word mark registration (Reg. No. 5620625) had been

"randomly selected . . . for audit to determine whether the mark is in use with **all** of the goods

and/or services identified in the affidavit or declaration of use." Dkt. No. 138-9 (emphasis

added). At the time, the registration covered the following apparel goods in Class 25: "t-shirts,

sweatshirts, pants, shorts, tank tops, yoga pants, tights and underwear." Flemming Decl. Ex. O.

This is because Mr. Runyon had submitted a sworn Statement of Use to the PTO on January

15, 2018, stating that the mark was currently in use in connection with *all* those goods, and the

PTO had accepted that sworn statement in issuing the registration. *Id.* at 6; Dkt. No. 262-26 at

2.

The PTO gave Impossible LLC until December 4, 2024, to provide proof of use in

connection with all the goods covered by the registration. Dkt. No. 138-9 at 5. But on that day,

rather than prove such use, Impossible LLC—with no explanation—deleted "sweatshirts,

pants, shorts, yoga pants, tights and underwear" from the registration, leaving only "t-shirts"

and "tank tops." Dkt. No. 138-10.

Impossible Foods was confused. Seven months earlier, on March 8, 2024, Impossible

LLC had asserted trademark claims against Impossible Foods, citing the IMPOSSIBLE word

mark registration and explicitly claiming rights in "t-shirts, sweatshirts, pants, shorts, tank tops,

yoga pants, tights and underwear." Dkt. No. 80 at 21 ¶ 36. But now, Impossible LLC was

deleting most of those goods from one of its registrations.

Impossible Foods investigated, and it uncovered no evidence that Impossible LLC had

*ever* offered sweatshirts, pants, shorts, yoga pants, tights, or underwear. Flemming Decl. ¶ 2.

Yet Impossible LLC had asserted at least *four* registrations against Impossible Foods covering

those goods. *See* Dkt. No. 80 at 21 ¶ 36.

Accordingly, on January 31, 2025, Impossible Foods sought leave to amend its

complaint to assert a claim for fraud on the PTO, apprising the Court of the IMPOSSIBLE

NUTRITION design mark Section 15 Declaration, and of the registrations covering apparel

goods for which no use appeared to exist. Dkt. No. 139-1 at 2–5.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 5:21-CV-02419-BLF (SVK)

### C.    Discovery Unveils the Extent of Mr. Runyon's Fraud on the PTO

Defendants completed their document production and served their interrogatory responses before Mr. Runyon sat for his combined individual and 30(b)(6) deposition on April 10, 2025. Flemming Decl. Ex. A. By that date, it had become obvious to Impossible Foods that Impossible LLC had never offered many of the apparel goods covered by at least four of its asserted registrations, and that Impossible LLC had not used its IMPOSSIBLE NUTRITION design mark continuously for five years. Flemming Decl. ¶ 3.  It appeared, therefore, that Mr. Runyon had lied to the PTO in numerous sworn statements submitted in connection with at least five registrations between 2018 and 2024.

At his deposition, Mr. Runyon was forced to confirm that his company had never offered sweatshirts, pants, shorts, yoga pants, tights, or underwear, despite repeatedly swearing the opposite to the PTO in order to acquire broad, exclusive trademark rights. Flemming Decl. Ex. B (Runyon Apr. 10 Dep.) at 131:2–3; 133:11–16; 133:18–134:4; 166:17–169:3; 201:4–202:8; *see also id.* at 179:12–181:21; 184:2–190:9; 191:18–194:20 (regarding non-use of Defendants' IMPOSSIBLE NUTRITION design mark in conjunction with a declaration of continuous use). This admission meant that Mr. Runyon had submitted at least five fraudulent, sworn statements to the PTO over a six-year period and had wrongfully acquired rights in at least five trademark registrations, including the Statements and the Section 15 Declaration.

### D.    Judge Van Keulen Finds That Mr. Runyon Committed Fraud on the PTO

Mr. Runyon admitted during his deposition that he had both sought and relied upon attorney advice in submitting the Statements. Flemming Decl. Ex. B (Runyon Apr. 10 Dep.) at 150:11–152:5; 176:21–177:12; 202:9–203:16; 208:7–209:8. Impossible Foods therefore requested the production of any such attorney-client communications pursuant to the crime-fraud exception to the attorney-client privilege. *See* Dkt. No. 176-2.

In response, Defendants argued, quite forcefully, that Mr. Runyon simply misunderstood the Statements of Use and that he did not know he was swearing to use on "all" goods. *Id.* Mr. Runyon had testified in his April 10, 2025, deposition that he understood the word "namely" in the Statements to mean "for example," such that he was not attesting to use

1    on "all" goods following that word. Flemming Decl. Ex. B (Runyon Apr. 10 Dep.) at 161:12–

2    14. That excuse never made sense, as Mr. Runyon's Statements of Use clearly state that "the

3    mark is in use in commerce on or in connection with all the goods/services in the application."

4    Flemming Decl. Exs. K, L, O.

5            Ultimately, Judge van Keulen conducted an *in camera* review of the attorney-client

6    communications and found by a preponderance of the evidence that Mr. Runyon had engaged

7    in fraud on the PTO, and she ordered the production of a particular email chain (the "Fraud

8    Emails"). Dkt. No. 240 at 7.

9    ███████████████████████████████████████

10   ███████████████████████████████████████

11   ███████████████████████████████████████

12   ███  Flemming Decl. Ex. P at 3. ████████████████

13   ████████████████████████  *Id.* at 4. ██████

14   ███████████████████████████████████████

15   ███████████████████████████████████████

16   ███████████████████████████████████████

17   ████████████████████████████████  *Id.*

18   ████████████████████████████████████

19   ███████████████████████████████████████

20   ████████████████████████████████████

21   ███████████████████████████████████████

22   ████████████  Flemming Decl. Ex. P at 2–3. ████████

23   ███████████████████████████████████████

24   ███████████████████████████████████████

25   █████████  *Id.* at 2 (emphasis added). ████████

26   ███████████████████████████████████████

27   ████████████████████████████████  *Id.* at 2;

28   Flemming Decl. Exs. K, L.

### E.    Runyon's Supplemental Deposition

The Fraud Emails showed that Mr. Runyon knew full well that the Statements meant that the marks had to be used in connection with all goods in the applications and registrations—not just "examples." That is perhaps why, after being ordered to produce the damning Fraud Emails, Defendants refused to produce Mr. Runyon for more than *twenty minutes* of additional deposition testimony, forcing Impossible Foods to waste resources by filing a formal motion with the Court. Dkt. No. 246. But rather than defend their position, Defendants gave in and produced Mr. Runyon for a full additional hour. Dkt. No. 253.

During his supplemental deposition, Mr. Runyon was confronted with all of his contradictory statements and testimony. ███████████████████████████████████████
███████████████████████████████. Flemming Decl. Ex. D (Runyon Aug. 5 Dep.) at 547:14-25; 550:3-8. ███████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████ *Id.* at 542:4–17; 543:7–16; 558:18– 559:3. ███████████████████████████████████████████████
███████████████████████████████████████████████████████████
██████ *Id.* at 559:8–565:25; 559:7–12.

### F.    Defendants' Scramble to Amend Their Registrations

Three months ago, and long after Impossible Foods exposed Mr. Runyon's fraudulent scheme, Impossible LLC filed a Statement of Use in connection with its IMPOSSIBLE FITNESS word mark. Flemming Decl. Ex. J. Mr. Runyon had previously sworn to the PTO that Impossible LLC was using that mark in connection with "t-shirts, sweatshirts, pants, shorts, tank tops, yoga pants, [and] tights." *Id.* Ex. L. But this May 6, 2025 Statement of Use requested the deletion of "sweatshirts, pants, shorts, yoga pants, tights" from the registration. *Id.* Ex. J at 4. Impossible LLC made a similar filing on April 22, 2025 in connection with the IMPOSSIBLE FITNESS *design* mark, requesting the deletion of "sweatshirts, pants, shorts, yoga pants, tights." *Id.* Ex. I at 4.

Significantly, in both cases, Defendants requested these amendments on the last possible day to do so—i.e., the PTO's deadline to file a renewed Statement of Use. Flemming Decl. Exs. Q, R. Defendants have not requested the amendment of their other fraudulent registrations, despite Mr. Runyon's own admission that the registrations should not cover all of the goods listed in them. In the meantime, Defendants have used their ill-gotten trademark rights against Impossible Foods in this Court.

## III.    ARGUMENT

### A.    Impossible Foods's Fraud Counterclaims Should Proceed

#### 1.    Impossible Foods Has Standing

Impossible LLC begins its attack on Impossible Foods's fraud on the PTO claims by arguing that 15 U.S.C. § 1119 authorizes cancellation of a trademark registration only where the claimant is also asserting an infringement claim against that same registration. But Impossible LLC's own cited case holds to the contrary: cancellation under Section 1119 may be "sought if there is already an ongoing action that involves a registered mark." *Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt*, 744 F.3d 595, 599 (9th Cir. 2014). This action plainly "involve[s]" registered marks—including the fraudulent registrations themselves, which Impossible LLC is asserting against Impossible Foods. Dkt. No. 241 at 63, ¶ 36.

A party has standing under Section 1119 as long as he "believes that he is or will be damaged by the registration of [the] mark." *Star-Kist Foods, Inc. v. P.J. Rhodes & Co.*, 735 F.2d 346, 348 (9th Cir. 1984) (quoting 15 U.S.C. § 1064). Such standing "requires only" that the claimant show "a 'real interest' in the proceeding." *Id.* at 349 (citations omitted). This is a very low bar. Even a demand letter from the registrant—and certainly "an assertion of a likelihood of confusion" by either side—will suffice. *See id.*; *see also Blue Bottle Coffee, LLC v. Liao*, No. 21-cv-06083-CRB, 2024 WL 2061259, at *8 (N.D. Cal. May 7, 2024) ("All that is needed is a real interest in the outcome of the proceeding beyond the general public."). Here, Impossible LLC is wielding its fraudulent registrations in this very action, in an attempt to obtain monetary and injunctive relief against Impossible Foods. Thus, Impossible Foods unquestionably has standing under Section 1119. *See Hokto Kinoko Co. v. Concord Farms, Inc.*, 738 F.3d 1085, 1097 (9th

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 5:21-CV-02419-BLF (SVK)

Cir. 2013) (holding that cancellation counterclaim for fraud on the PTO may be brought under 15 U.S.C. §§ 1064, 1119).

### 2.    Impossible Foods Is Not Pursuing a Section 1120 Claim

Impossible LLC speculates that "Impossible Foods may attempt to recast its fraud claim as asserted under Section 1120," which requires proof of damage. Dkt. No. 267 ("Br.") at 18. Not so. Impossible Foods's fraud on the PTO claims are brought under Sections 1064 and 1119, which do not require proof of damage. *See Star-Kist*, 735 F.2d at 349 ("[T]here is no requirement that damage be proved in order to establish standing" under Sections 1064 and 1119).

### 3.    Impossible LLC's Post Hoc Amendments Moot Neither the Fraud Claim nor the Cancellation Remedy

Impossible LLC next contends that because it amended *some* of its fraudulent registrations (at the last possible moment), the fraud claims as to those registrations are moot. Impossible LLC's sole cited case, *Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013), has nothing to do with fraud and merely holds that there is no "case or controversy" when a plaintiff dismisses its infringement claims "with prejudice" *and* issues a "covenant not to sue." *Id.*

Meanwhile, the cases addressing Impossible LLC's argument uniformly reject it. *See, e.g.*, *Sunsauce Foods Indus. Corp. v. Son Fish Sauce USA Corp.*, No. 21-cv-06083-CRB, 2024 WL 4933346, at *10 (N.D. Cal. Dec. 2, 2024) ("Overstating the extent of a mark's use can constitute fraud. Correcting an overstatement is not enough to rectify fraud." (citation omitted)); *One True Vine, LLC v. Wine Grp. LLC*, No. C 09-1328 MHP, 2009 WL 3707512, at *3 (N.D. Cal. Nov. 4, 2009) ("Yet plaintiff cannot nullify a claim that it procured its trademark through fraud on the USPTO by now amending its trademark registration. . . . [A] *post hoc* amendment of the trademark register does not serve to moot or rectify such fraud."); *G&W Lab'ys, Inc. v. G W Pharma Ltd.*, 89 U.S.P.Q.2d 1571, 1573 (T.T.A.B. 2009) (cited by Impossible LLC) ("It is settled that fraud cannot be cured merely by deleting from the registration those goods or services on which the mark was not used at the time of the signing of a use-based application or a Section 8 affidavit.").

Impossible LLC next contends that because it removed the fraudulently obtained goods

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 5:21-CV-02419-BLF (SVK)

from some of its registrations, the Court cannot grant any further relief as to those registrations

because fraud can purportedly only result in the cancellation of one class. Br. at 19-20. In so

arguing, Impossible LLC improperly conflates "class" with "goods." In the PTO, similar

"goods" are grouped into numbered categories, with each referred to as a "class." Class 25, for

example, includes all types of individual clothing items. *See The North Face Apparel Corp. v.*

*Sanyang Indus. Co., LTD*, 116 U.S.P.Q.2d 1217 (T.T.A.B. 2015). Here, Impossible LLC only

deleted a few apparel *goods* from *within* Class 25 in the fraudulent registrations it has amended;

it did not delete the entirety of Class 25 from the registrations. Thus, there is no dispute that the

Court may cancel the entirety of Class 25 in those registrations.

Finally, Impossible LLC contends that fraud as to one class of goods cannot result in the

cancellation of an entire multi-class registration. That is not the case. The Trademark Trial and

Appeal Board has expressly held that "[i]f fraud can be shown in the procurement of a

registration, the ***entire*** resulting registration is void." *Medinol Ltd. v. Neuro Vasx, Inc.*, 67

U.S.P.Q.2d 1205, 1208 (T.T.A.B. 2003) (emphasis added). In a subsequent decision, the Board

held that "judgment on the ground of fraud as to one class *does not in itself require* cancellation

of *all* classes in a registration." *G&W Lab'ys, Inc.*, 89 U.S.P.Q.2d at 1574 (emphasis added). But,

*G&W* merely gives the Court flexibility as to how much of the registration should be cancelled in

the event of fraud. ████████████████████████████████

████████████████████████████████  Flemming Decl. Ex. P at 2 (emphasis added).

Even if it were binding on this Court, *G&W* would not *preclude* the Court as a matter of

law from cancelling the registrations in their entireties. But as an agency decision, *G&W* is not

binding on this Court. Moreover, a "trademark cancellation claim is equitable in nature,"

meaning the Court, not the jury, will decide whether and to what extent Impossible LLC's must

be cancelled for fraud. *Amarte USA Holdings, Inc. v. Kendo Holdings Inc.*, No. 22-cv-08958-

CRB, 2024 WL 4093910, at *13 (N.D. Cal. Sept. 4, 2024). The Court should not tie its own

hands at summary judgment when, after trial reveals the totality of the circumstances, the Court

may wish to exercise its equitable discretion to cancel one or more of Impossible LLC's marks in

their entireties based on the nature and scope of Mr. Runyon's fraud.

Further, the reasoning in *G&W* does not fit the facts of this case. In *G&W*, the Board explained that because a registrant *could* file separate applications for each class, the possibility of fraud voiding the entire registration "would simply provide an incentive against the filing of multiple-class registrations." 89 U.S.P.Q.2d at 1574 n.3. The Board also noted that as "a general matter, the filer of such [a multiple-class registration] is in the same position it would be had it filed several single-class applications instead." *Id.* at 1574.

Here, however, Mr. Runyon submitted a *single* fraudulent Statement of Use to the PTO per registration containing a *single* fraudulent statement: "the mark is in use in commerce on or in connection with all the goods/services in the application." Flemming Decl. Exs. K, L. O. Parsing Mr. Runyon's single fraudulent statement according to the PTO's internal "class" system as if he himself had parsed the Statements by class makes little sense. In short, even if Mr. Runyon's fraudulent statement "does not in itself *require*" cancellation of the entire registration, this Court could well exercise its equitable discretion to do so. And, as such, summary judgment is improper on this issue.

### B.    Likelihood of Confusion Cannot Be Decided on Summary Judgment Here

Defendants move for summary judgment on likelihood of confusion. But "[w]hile the district court must apply the correct [summary judgment] standard in any case, the necessity to do so is heightened in cases turning on the likelihood of consumer confusion. Because the determination is based on a non-exhaustive, multi-factor, fact-intensive inquiry, we have cautioned against granting summary judgment in these cases." *JL Bev. Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1105 (9th Cir. 2016). In other words, "district courts should grant summary judgment motions regarding the likelihood of confusion sparingly, as careful assessment of the pertinent factors that go into determining likelihood of confusion usually requires a full record" developed at trial. *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1210 (9th Cir. 2012).

Defendants also place outsized importance on the "relatedness of the goods" *Sleekcraft* factor, treating it as dispositive. This is error. "The presence or absence of a particular factor

does not necessarily drive the determination of a likelihood of confusion." *Ironhawk Techs., Inc. v. Dropbox, Inc.*, 2 F.4th 1150, 1161–63 (9th Cir. 2021). The Ninth Circuit has "never countenanced a likelihood of confusion determination based on . . . the consideration of any single factor." *See Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 632 (9th Cir. 2008). In fact, the Ninth Circuit's pattern jury instructions provide: "You should not focus on any one factor to resolve whether there was a likelihood of confusion, because you must consider all relevant evidence." 9th Cir. Model Civ. Jury Instr. § 15.18 (2017 ed.).

As shown below, at least five of the *Sleekcraft* factors weigh strongly in Impossible Foods's favor, with the other three either weighing in Impossible Foods's favor or neutral. In such circumstances, summary judgment against Impossible Foods cannot be granted.

### 1.    Impossible Foods's IMPOSSIBLE Mark Is Strong

In their brief, Defendants take the position that the first *Sleekcraft* factor "does not even merit attention" from the Court. Br. at 11. To the contrary, the strength of the mark factor is relevant because the greater the strength of a mark, "the greater protection the mark is accorded by trademark laws." *Yuga Labs, Inc. v. Ripps*, 144 F.4th 1137, 1168 (9th Cir. 2025). In other words, a strong showing on the first *Sleekcraft* factor means lesser showings may be required on the remaining factors, and vice versa. *See Perfumebay.com Inc. v. eBay, Inc.*, 506 F.3d 1165, 1174 (9th Cir. 2007).

> A mark's strength is evaluated in terms of its conceptual strength and commercial strength. A mark's conceptual strength depends largely on the obviousness of its connection to the good or service to which it refers. To determine a mark's conceptual strength, we classify a mark along a spectrum of five categories ranging from strongest to weakest: arbitrary, fanciful, suggestive, descriptive, and generic. Arbitrary and fanciful marks, which employ words and phrases with no commonly understood connection to the product, are the two strongest categories, and trigger the highest degree of trademark protection.

*JL Bev. Co.*, 828 F.3d at 1106–07 (internal citations omitted).

A reasonable jury could conclude that Impossible Foods's mark is "arbitrary" because—as applied to the Impossible Foods products at issue, i.e., plant-based meat products—the word "impossible" does not describe and arguably does not suggest any specific qualities of those specific products. *See id.* As to commercial strength (and again, solely

1    considering the products in question, plant-based meat products) Impossible Foods has

2    exclusively used its IMPOSSIBLE mark since 2016 in connection with those specific products.

3    ████████████████████████████████████████████████████████████████

4    ████████████████Flemming Decl. Ex. F at 9.████████████████████████████

5    ████████████████████████████████ *Id.* at 8.

6           Accordingly, Impossible Foods's mark is both conceptually and commercially strong

7    and must be "afforded the widest ambit of protection from infringing uses." *Interstellar*

8    *Starship Servs., Ltd. v. Epix Inc.*, 184 F.3d 1107, 1111 (9th Cir. 1999). This factor weighs

9    heavily in Impossible Foods's favor.

10                  **2.    Defendants Concede That the Marks Are Similar**

11          The second *Sleekcraft* factor, the similarity of the parties' marks, "has always been

12   considered a critical question in the likelihood-of-confusion analysis." *JL Bev. Co.*, 828 F.3d at

13   1109. Yet Defendants do not mention this factor at all, despite bearing the burden of proving

14   the absence of a genuine dispute on it. *See* Br. at 6–11.

15          Defendants therefore concede that a reasonable factfinder could conclude that the

16   parties' marks—each "IMPOSSIBLE," displayed in all capital letters—are similar. This factor

17   therefore also weighs heavily in Impossible Foods's favor.

18                  **3.    The Parties' Products Are Not Identical; They Are Related**

19          Defendants make much of Impossible Foods's 30(b)(6) testimony that "nutritional

20   supplements are not the same types of products as plant-based meat products." But "the law

21   does not demand complete identity of goods, as defendants seem to contend." *His & Her Corp.*

22   *v. Shake-N-Go Fashion Inc.*, No. 2:11-cv-05323-CAS(VBKx), 2015 WL 13604255, at *7

23   (C.D. Cal. Apr. 6, 2015). Under the third *Sleekcraft* factor, "[t]he concept of relatedness . . . is

24   not so narrow. It does not mean that customers would necessarily consider the products as

25   interchangeable." *Nimbus Data Sys., Inc. v. Nimble Storage, Inc.*, No. 2:11-cv-05323-

26   CAS(VBKx), 2011 WL 13261995, at *3 (N.D. Cal. June 27, 2011). "Related goods are those

27   products which would be reasonably thought by the buying public to come from the same

28   source if sold under the same mark." *Adidas America, Inc. v. Skechers USA, Inc.*, 890 F.3d 747

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 5:21-CV-02419-BLF (SVK)

at 755. "In practice, this definition does not necessarily require a close proximity before goods will be found related." *Brooklyn Brewery Corp. v. Black Ops Brewing, Inc.*, 156 F. Supp. 3d 1173, 1183 (E.D. Cal. 2016) (citation omitted).

Here, Impossible Foods offers a wide assortment of edible meat alternatives that consumers can purchase on Amazon.com and in grocery stores. Flemming Decl. Exs. CC, DD. Defendants offer edible sleep and energy powders (the "Powders") that consumers can purchase on Amazon.com and through Defendants' websites. Dkt. Nos. 138-3, 138-4, 138-7 at 19–24. Even in the preliminary injunction context, where the burden is on the *movant*, courts have found similar products to be related. *See, e.g.*, *Suja, Life, LLC v. Pines Int'l, Inc.*, No. 16-CV-985-GPC(WVG), 2016 WL 6157950, at *7 (S.D. Cal. Oct. 24, 2016) (juice products and "nutritional supplements sold in powder and capsule form" were "somewhat related"); *Hansen Bev. Co. v. Cytosport, Inc.*, No. CV 09-0031-VBF(AGRx), 2009 WL 5104260, at *12 (C.D. Cal. Nov. 4, 2009) (energy drinks and protein shakes were "'related' in the minds of the consumer").

The fact that other well-known companies sell both types of products shows that consumers might reasonably believe the parties' products come from the same company. *See Naterra Int'l, Inc. v. Bensalem*, 92 F.4th 1113, 1117 (Fed. Cir. 2024) ("[T]estimony that third-party companies sell both types of goods is pertinent to the relatedness of the goods."). For example, Quest Nutrition sells "meatlovers" pizza and protein powders. Declaration of Bruce Nelson Exs. A–D. Clif Bar sells plant-based protein bars and electrolyte powders. *Id.* at Exs. E–H. And Hormel sells plant-based meat products and plant-based protein shakes. *Id.* at Exs. I–L. If such well-known companies have offered both meats and other high-protein foods, as well as nutritional supplements and powders, then consumers might reasonably believe that IMPOSSIBLE-branded meat substitutes and IMPOSSIBLE-branded sleep and energy Powders are sold by the same company. *See San Miguel Pure Foods Co. v. Ramar Int'l Corp.*, No. CV 11-09747 RGK(FMOx), 2012 WL 13227045, at *6 (C.D. Cal. Nov. 27, 2012) ("While the relatedness between the products is not as strong, other courts have found a likelihood of confusion in seemingly unrelated food items, such as ice cream and flour, deli meats and beer,

REDACTED

1  bakery products and frozen chicken.").

2       **4.    The Parties Are Likely to Expand to Compete More Directly**

3       Even if Defendants could prove that *no consumer* would believe the parties' products

4  are related, confusion is still likely when, *inter alia*, "either or both parties might expand their

5  offered products . . . to overlap." *Interstellar Starship*, 184 F.3d at 1111. ███████████

6  ████████████████████████████████████████████████████████████████

7  ████████████████████████████████████    Flemming Decl. Exs. S, T, U, V; *id.* at

8  Ex. B (Runyon Apr. 10 Dep.) at 348:13–16, 349:16–19. "In the end, it is for the jury to decide

9  whether the parties really intend to expand into—or are already operating in—the same product

10  line or lines." *Rearden LLC*, 683 F.3d at 1219. But for summary judgment purposes, this factor

11  weighs in favor of a likelihood of confusion because the parties "might expand their offered

12  products . . . to overlap." *See Interstellar Starship*, 184 F.3d at 1111.

13       **5.    The Parties Use Similar Marketing Channels**

14       "Here, both companies market their products using social media, both . . . sell their

15  products online, and both sell their products on Amazon," though Impossible Foods also sells

16  its products in restaurants and "grocery stores," and Defendants sell theirs on their "own

17  website." *See Blue Bottle Coffee*, 2024 WL 2061259, at *14; *see also* Flemming Decl. Exs. CC,

18  DD, EE, FF; Dkt. Nos. 138-3, 138-4, 138-7 at 19-24.  In such circumstances, "the marketing

19  channels are similar" for summary judgment purposes, "and this factor favors [confusion]."

20  *Blue Bottle Coffee*, 2024 WL 2061259, at *15.

21       **6.    The Intent Factor Favors Impossible Foods**

22       Defendants were aware of Impossible Foods and its marks prior to offering the

23  Powders. *Compare* Flemming Decl. Exs. W ████████████████████████████

24  ████████████████████████████████████), BB (November 10, 2020 demand

25  letter from Impossible LLC to Impossible Foods *with* Dkt. 138-3 at 5 (date first available

26  August 20, 2022), Dkt. 138-7 at 12 (showing Impossible Sleep as "Coming Soon" on January

27  7, 2022). At summary judgment, this factor "favors the plaintiff 'where the alleged infringer

28  adopted his mark with knowledge, actual or constructive, that it was another's trademark.'" *JL*

1    *Bev. Co.*, 828 F.3d at 1111 (citation omitted). Defendants allege that they expanded into

2    offering the Powders in good faith, but "although the relative weight of permissible and

3    impermissible motives may emerge at trial, we must be careful about untangling them at

4    summary judgment, where we must draw all reasonable inferences in [the non-movant's]

5    favor." *Yuga Labs*, 144 F.4th at 1173. Under binding precedent, this factor weighs strongly in

6    Impossible Foods's favor at summary judgment.

### 7.    <u>Consumers Do Not Exercise a High Degree of Care</u>

8        "Obviously, the price level of the goods . . . is an important factor in determining the

9    amount of care the reasonably prudent buyer will use." 3 *McCarthy*, *supra*, § 23:95. Further,

10   "[p]urchasers of relatively inexpensive goods such as ordinary grocery store foods are held to a

11   lesser standard of purchasing care." *Id.* Here, the Powders retail for between $39 and $49, and

12   Impossible Foods's products retail for between $7 and $11 per pound. Dkt. No. 138-7 at 19–20;

13   Flemming Decl. Exs. CC, DD. Thus, this factor weighs in favor of a likelihood of confusion.

### 8.    <u>The Absence of Actual Confusion Is Understandable</u>

15       "[T]his factor is weighed heavily only when there is evidence of past confusion or,

16   perhaps, when the particular circumstances indicate such evidence should have been available."

17   *Ironhawk*, 2 F.4th at 1165. ████████████████████████████

18   Flemming Decl. at Ex. X. It is no surprise that among such a small number of customers, none

19   of them formally documented and sent any evidence of their confusion to the parties.

20   Flemming Decl. Ex. B (Runyon Apr. 10 Dep.) at 256:17–261:6; 261:12–262:18. This factor is

21   therefore neutral.

22       In sum, at least **five** *Sleekcraft* factors weigh heavily in Impossible Foods's favor: (1)

23   strength of the mark; (2) similarity of the marks; (3) likelihood of expansion; (4) similarity of

24   the marketing channels; and (5) intent. The other three factors either weigh in Impossible

25   Foods's favor or are neutral. Thus, a likelihood of confusion exists. And even if the Court

26   determines that "conflicting facts render it unclear whether a likelihood of confusion exists,

27   summary judgment is inappropriate," and Defendants' motion must still be denied. *See*

28   *Ironhawk*, 2 F.4th at 1161–62.

### C.    Defendants Misconstrue the Elements of California Common Law Unfair Competition Claims

Defendants devote six pages of their brief to what they deem the unique "elements" of California common law unfair competition claims. But "[t]his Circuit has consistently held that state common law claims of unfair competition . . . are 'substantially congruent' to claims made under the Lanham Act." *Cleary v. News Corp.*, 30 F.3d 1255, 1263–63 (9th Cir. 1994) (citation omitted). This Court has also held that "[t]he elements of California state common law claims of unfair competition . . . are substantially congruent to claims made under the Lanham Act." *Iglesia Ni Cristo v. Cayabyab*, No. 18-cv-00561-BLF, 2019 WL 3997474, at *12 (N.D. Cal. Aug. 23, 2019) (Freeman, J.) (citation omitted).

To prevail on an unfair competition claim under the Lanham Act, the claimant must prove: "(1) ownership of a valid mark (i.e., a protectable interest), and (2) that the alleged infringer's use of the mark is likely to cause confusion, or to cause mistake, or to deceive consumers." *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1134 (9th Cir. 2006); *see also Ingrid & Isabel, LLC v. Baby Be Mine, LLC*, 70 F. Supp. 3d 1105, 1134 (N.D. Cal. 2014) (analyzing Lanham Act and California common law claims together at summary judgment because they are "substantially congruent"). Defendants do not challenge Impossible Foods's ownership of any of its asserted marks, and as discussed above, a genuine dispute exists as to whether Defendants' conduct is creating a likelihood of consumer confusion.

Defendants contend that Impossible Foods must separately prove "passing off," and Defendants therefore analyze causes of action for passing off and raise issues of scienter. But the Ninth Circuit has held—in a case deceptively quoted by Defendants—that common law unfair competition may be proven by "acts *analogous* to 'passing off,' *such as the sale of confusingly similar products*." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1147 (9th Cir. 1997) (emphasis added). Again, Impossible Foods has already shown a genuine dispute as to whether the Powders are "confusingly similar."

Defendants similarly contend that Impossible Foods must prove a separate "competitive injury," but under California law, if there is a "likelihood of confusion," "then injury has

occurred." *Ball v. Am. Trial Laws. Ass'n.*, 14 Cal. App. 3d 289, 304, 92 Cal. Rptr. 228, 238 (Ct. App. 1971). This is why the Ninth Circuit has "consistently held" that such California claims are "substantially congruent" with Lanham Act claims: if ownership and likelihood of confusion are established, then the elements for both types of claims are established.

### D.    Impossible LLC Fails to Establish Priority As a Matter of Law

The most troubling aspect of Defendants' motion is Impossible LLC's request that the Court rule as a matter of law that it has "priority" in "the category" (singular) of "fitness, health, recipes, cookbooks, and nutrition advisory services." Br. at 22. This is a sleight of hand that warrants some explanation and context.

Impossible LLC is not challenging Impossible Foods's "core[] offerings," i.e., "artificial meat products." Dkt. No. 241 at 65 ¶ 44. Instead, Impossible LLC is challenging only a narrow subset of goods and services: (1) a cookbook, a "Recipes" webpage, and "recipe services" provided at "endurance athletic events"; (2) "apparel"; and (3) "philanthropy" (collectively, the "Accused Products"). *Id.* ¶¶ 50–55. Defendants likely realize that a potential injunction against these non-"core" products does not give them much leverage, so they appear to be trying to expand the scope of their claims beyond what is in their pleading.

Part of this effort is to obtain a ruling at summary judgment that Impossible LLC has "priority" over Impossible Foods in the broad "category" of "fitness, health, recipes, cookbooks, and nutrition advisory services." Br. at 22. Indeed, Impossible LLC has grouped these disparate fields into a single defined term, hoping the Court will adopt it: the deceptively named "Diet and Nutrition Category." *Id.* Then, if Impossible LLC prevails on its infringement claims at trial, it will seek to enjoin Impossible Foods from using the word "Impossible" in connection with "health, "fitness," "nutrition," and other nebulous, sweeping categories. In other words, Impossible LLC is pursuing an indirect (and legally impermissible) attack on Impossible Foods's "core" products and how it advertises them—e.g., as "a healthy alternative" or "nutritious" or "good for athletes."

Considering this context, the Court should deny Impossible LLC's motion for at least three reasons. *First*, Impossible LLC fails to identify any particular mark for which it claims

priority. Indeed, Impossible LLC's evidence (particularly its financial evidence) is not tied to any particular mark. *Second*, to the extent Impossible LLC enjoys any trademark rights in any particular mark in connection with the broad fields claimed, those rights are in very specific goods and services. *Third*, even as to those specific goods and services, Impossible LLC fails to prove both prior and continuous use in commerce as a matter of law, which are required to establish priority.

### 1.    Impossible LLC Fails to Tie Its Evidence to Any Specific Mark

Even though Impossible LLC bears the burden of proof on its summary judgment motion, it fails to identify any particular mark for which it is claiming priority. Impossible LLC asserts at least *eleven* marks in this action, but it fails to tie any of its record evidence of priority to any particular mark. Dkt. No. 241 at 63, ¶ 36. This failure dooms Impossible LLC's motion because there is a clear "dispute" as to whether any of Impossible LLC's evidence shows priority in *any one* of its asserted marks. *See Am. Auto. Ass'n of N. Cal., Nev. & Utah v. Gen. Motors LLC*, 367 F. Supp. 3d 1072, 1090 (N.D. Cal. 2019) (denying summary judgment on priority because evidence of "sales numbers and revenue" could not be tied to the specific mark asserted); *AM Participations S.A.S. v. Div. 7, LLC*, No. CV 20-7633 PSG (JPRx), 2021 WL 6104388, at *7 (C.D. Cal. Oct. 13, 2021) (denying summary judgment on the "highly fact-specific totality of the circumstances inquiry" of priority because of "conflicting evidence" over whether evidence of use was tied to specific mark asserted).

### 2.    Impossible LLC Offers Very Limited Goods and Services

Impossible LLC asserts priority in the "category" of "fitness, health, recipes, cookbooks, and nutrition advisory services," but Impossible LLC's *actual offerings* (that arguably fall within these broad fields) are far more limited. Under federal law, a trademark cannot exist separately from the particular goods and services it identifies, meaning a company cannot own trademark rights covering goods and services it does not offer. 3 *McCarthy*, *supra*, § 24:11 ("One must designate for what goods the design is a trademark to avoid treating a trademark as a right in gross.").

Starting with "nutrition advisory services," Mr. Runyon testified that Impossible LLC

1   does not offer such services. Flemming Decl. Ex. B (Runyon Apr. 10 Dep.) at 61:22–62:1.

2   Thus, there is a genuine dispute over whether Impossible LLC has "priority" as to nutrition

3   advisory services, and that aspect of the motion must be denied.

4          As to "fitness," Impossible LLC offers "a website featuring information relating to

5   excise and fitness," Flemming Ex. E; in other words, a physical fitness blog. Impossible LLC

6   also offers online exercise programs under the marks Impossible Abs, Impossible Strength,

7   Impossible 5K, Impossible 10K, Impossible Half, Impossible Ultra, and Impossible

8   Marathon—none of which are asserted in this case. Flemming Decl. Ex. B (Runyon Apr. 10

9   Dep.) at 113:1–17. ████████████████████████████████████████████████

10  ████████████████████████████████████  Impossible LLC also offers its exercise

11  programs through an app called Impossible Fitness, but that use arose very recently and

12  therefore is irrelevant for priority purposes. *Id.* Ex. B (Runyon Apr. 10 Dep.) at 114:6–8. Thus,

13  for purposes of summary judgment, Impossible LLC's offerings in the "fitness" field are

14  conscribed to (i) online exercise programs and (ii) a physical fitness blog—though it is unclear

15  what mark or marks are associated with those narrow offerings.

16  ████████████████████████████████████████████████████████████

17  ████████████████████████████████████████████████████████████

18  ████████████████████████████████████████████████████████████

19  ████████████████████████  *Id.* Ex. B (Runyon Apr. 10 Dep.) at 243:15–244:4; 244:12–

20  15; Ex. C (Runyon May 15 Dep.) at 463:14–464:3.

21         Finally, Impossible LLC's offerings in the categories of "recipes" and "cookbooks" are

22  similarly limited. Impossible LLC has never *published* any "recipes" or "cookbooks," *id.* Ex. B

23  (Runyon Apr. 10 Dep.) at 63:15–19, ██████████████████████████████████████

24  ██████████████████████  . *Id.* at 124:14–125:4. Thus, at most, Impossible LLC's

25  offerings in these categories are limited to online recipes downloaded from Impossible LLC's

26  website or from non-IMPOSSIBLE branded wellness apps.

27

28

3. **Impossible LLC Fails to Prove Prior Use in Commerce as to Nutrition Advisory Services and Online Recipes**

To establish priority, Impossible LLC must prove that it used its marks in commerce in connection with each of those offerings *before* Impossible Foods's challenged use began. *See Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir.), *as modified*, 97 F.3d 1460 (9th Cir. 1996) ("To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services."). Impossible Foods began giving away IMPOSSIBLE-branded apparel swag in 2016. Flemming Decl. Ex. FF. And the Impossible Foods cookbook was released in 2020. *Id.* Ex. GG. Under the Lanham Act, "use in commerce" means

(1) on goods when—
(A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and
(B) the goods are sold or transported in commerce, and

(2) on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce, or the services are rendered in more than one State or in the United States and a foreign country and the person rendering the services is engaged in commerce in connection with the services.

15 U.S.C. § 1127.

As discussed above, by its own 30(b)(6) witness's admission, Impossible LLC has never offered "nutrition advisory services," Flemming Decl. Ex. B (Runyon Apr. 10 Dep.) at 61:22–62:1, so there is a dispute over whether Impossible LLC has "priority" in that category as to any of its marks. It appears that Impossible LLC has been continuously offering exercise programs and a physical fitness blog since before Impossible Foods adopted its IMPOSSIBLE marks, but summary judgment as to those services is still improper because, as discussed above, Impossible LLC failed to tie these offerings to any particular mark in its moving papers.

That leaves online recipes. To establish priority in online recipes, Impossible LLC primarily relies upon products that do not bear any of its marks. ████████████████

1   ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

2   ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

3   ▉▉▉▉▉▉ Flemming Decl. Ex. C (Runyon May 15 Dep.) at 425:14–21. ▉▉▉▉▉

4   ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

5   ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ *See id.* at

6   412:20–413:14; 414:11–415:1.

7   ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

8   ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

9   ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ *See id*. Ex. C (Runyon May 15 Dep.)

10  at 428:13–19; 507:3–7. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

11  ▉▉▉▉▉▉▉▉ *Id.* at 443:10–12; 517:13–17. ▉▉▉▉▉▉▉▉▉

12  ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

13  ▉▉▉▉▉▉▉ *Id.* at 429: 4–11.

14      Ultimately, Impossible LLC can base its priority claim in online recipes solely on two

15  physical exercise programs—i.e., the Impossible TRI guide and Impossible Abs program—

16  which happen to incorporate nutrition guides "designed to help athletes optimize their diets to

17  boost performance." Dkt. No. 265-2 at 23. There is a genuine dispute over whether such use

18  qualifies as prior use in commerce (of a particular mark) in connection with online recipes.

19  ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

20  ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ *See* Flemming Decl. Ex. C

21  (Runyon May 15 Dep.) at 418:6–12. And Impossible LLC's motion references a single

22  purported cookbook entitled "The Impossible TRI Cookbook," Dkt. No. 265-02 at 23, which

23  cannot serve as a trademark without proof of secondary meaning. *See Dr. Seuss Enters., L.P. v.*

24  *ComicMix LLC*, 300 F. Supp. 3d 1073, 1085 (S.D. Cal. 2017) ("While titles of single works are

25  not registrable, they may be protected under section 43(a) of the Lanham Act upon a showing

26  of secondary meaning." (citation omitted)). ▉▉▉▉▉▉▉▉▉▉▉

27  ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

28  ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

1  ██████████████. *See, e.g.,* Flemming Decl. Ex. Y ████████████████████

2  ████████████████████████████████████████████████████████████████████

3  ████

4  **4.  <u>Impossible LLC Fails to Prove Continuous Use as to Online Recipes</u>**

5  To establish priority as to online recipes, Impossible LLC must also prove that it has

6  used its marks *continuously* in connection with those specific services. "To be a continuing use,

7  the use must be maintained without interruption." *Casual Corner Assocs., Inc. v. Casual Stores*

8  *of Nev., Inc.*, 493 F.2d 709, 712 (9th Cir. 1974). Sporadic uses—those that are "casual" or to

9  which "little importance [is] apparently attached"—are insufficient to establish priority. *Dep't*

10  *of Parks & Rec. v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1126 (9th Cir. 2006) (citation

11  omitted). "[N]o goodwill is created when a mark is 'seen by the consuming public only in very

12  limited quantity.'" *Sebastian Brown Prods. LLC v. Muzooka Inc.*, No. 15-CV-01720-LHK,

13  2016 WL 5910817, at *9 (N.D. Cal. Oct. 11, 2016) (citation omitted).

14  Here, Impossible LLC fails to prove the absence of a genuine dispute as to its alleged

15  continuous use of any particular IMPOSSIBLE-formative mark for online recipes. Impossible

16  LLC cites sales revenue from third-party "affiliate" products and its meal plans and apps, but as

17  discussed, Impossible LLC has not shown that any of those offerings bear an IMPOSSIBLE-

18  formative mark. *See Matrix Motor Co. v. Toyota Motor Sales, U.S.A., Inc.*, 120 F. App'x. 30,

19  31 (9th Cir. 2005) (no priority where mark was not "visible to the public" and did not create

20  association between mark and the offerings); *see also Brookfield Commc'ns Inc. v. West Coast*

21  *Ent. Corp.*, 174 F.3d 1036, 1052 (9th Cir. 1999) (holding that use in commerce must "identify

22  or distinguish the marked goods in an appropriate segment of the public mind as those of the

23  adopter of the mark"). ████████████████████████████████

24  ████████████████████████████████████████████████████████████████

25  ████████████████████████  Flemming Decl. Ex. B (Runyon Apr. 10 Dep.) at

26  327:7–328:16; 329:10–22; 337:4–345:15. At a minimum, there is a genuine dispute of material

27  fact as to the extent and nature of Impossible LLC's actual use as well as continuous use of the

28  IMPOSSIBLE-formative marks in connection with online recipes. Thus, summary judgment

must be denied.

    **E.    Impossible LLC Abandoned Three of its Registered Marks**

Finally, Impossible LLC requests summary judgment on Impossible Foods's claim that Impossible LLC abandoned its registered IMPOSSIBLE FITNESS word and design marks and IMPOSSIBLE motion mark (Reg. Nos. 5590801, 5603025, and 6571603). The Court should deny Impossible LLC's request.

As a preliminary matter, Impossible LLC appears to have confused its IMPOSSIBLE static design mark registration with its IMPOSSIBLE animated motion mark registration. Registration No. 6571603 covers an animated "motion mark," with the word IMPOSSIBLE and "a shaded band that moves horizontally from the left through the middle." Dkt. 151-38 at 5. Impossible LLC submitted evidence of use of its static *design* mark in connection with t-shirts, but no evidence of the use of its animated *motion* mark. Dkt. No. 262-9 at 4–5.

Furthermore, Impossible LLC has already admitted that it has never offered many of the goods covered by the motion mark registration (i.e., "sweatshirts, pants, shorts, tank t[o]ps, yoga pants, tights and underwear." Flemming Decl. B (Runyon Apr. 10 Dep.) at 131:2–3; 133:11–16; 133:18–134:4; 166:17–169:3; 201:4–202:8. And the record contains no evidence of use of the motion mark in connection with any of the other goods and services listed in the registration, for at least three years. Flemming Decl. Ex. H. Thus, Impossible LLC completely fails to carry its summary judgment burden as to the motion mark registration. Indeed, Impossible Foods specifically requested "representative examples of Impossible LLC's Advertisements featuring each of the Impossible LLC Goods and Services under each IMPOSSIBLE-formative Mark," seeking any documentation of use of the motion mark and all other marks. *Id.* Ex. G. Impossible LLC produced none as to the motion mark. *Id.* ¶ 3; *see eMachines, Inc. v. Ready Access Memory, Inc.*, No. EDCV00-00374-VAPEEX, 2001 WL 456404, at *5 (C.D. Cal. Mar. 5, 2001) ("Once the presumption of nonuse is triggered [from three years of nonuse], the burden shifts to the mark's owner to produce evidence of either actual use during the period in question or intent to resume use."); *see also Coca-Cola Co. v. Overland, Inc.*, 692 F.2d 1250, 1254 (9th Cir. 1982) ("A party moving for summary judgment

1  is entitled to the benefit of any relevant presumptions that support the motion.").

2         As to the IMPOSSIBLE FITNESS word and design mark registrations, Impossible LLC

3  failed to submit evidence of the use of those marks in connection with "t-shirts and tank tops"

4  (the only goods claimed in the registrations after Impossible LLC's recent PTO filings).

5  Impossible LLC directs the Court to Exhibits G and N, but neither shows use of the two

6  IMPOSSIBLE FITNESS marks in connection with any goods or services, much less T-shirts or

7  tank tops. Dkt. Nos. 262-9, 262-16. Impossible LLC also directs the Court to Mr. Runyon's

8  deposition testimony, but there, he merely states that the IMPOSSIBLE FITNESS design mark

9  appears on the ImpossibleFitness.com website, where t-shirts are sold. Dkt. No. 262-4 (Runyon

10  Apr. 10 Dep.) at 144:5–145:9. That testimony was false, as no apparel is sold on

11  ImpossibleFitness.com. Flemming Decl. Ex. Z (showing no menu items for shop or apparel).

12  Indeed, the IMPOSSIBLE FITNESS marks are nowhere to be found on the Impossible LLC

13  webpages that sell apparel. *See, e.g., id.* Ex. AA.

14         Defendants moved for summary judgment on the issue of abandonment, but the

15  summary judgment record shows no use of the IMPOSSIBLE FITNESS word and design

16  marks in connection with "t-shirts and tank tops" for at least three years. *Id.* ¶ 3. For this simple

17  reason, summary judgment on Impossible Foods's abandonment claim must be denied.

18  **IV.   CONCLUSION**

19         For the foregoing reasons, Defendants' motion should be denied in its entirety.

20

21

22

23

24

25

26

27

28

DATED: August 29, 2025

Respectfully submitted,

**KILPATRICK TOWNSEND & STOCKTON**

By:  */s/ H. Forrest Flemming, III*
R. Charles Henn Jr. (*pro hac vice*)
H. Forrest Flemming, III (*pro hac vice*)
Erica Chanin (*pro hac vice*)
Kollin Zimmerman (SBN 273092)

*Attorneys for Plaintiff/Counter-Defendant*
IMPOSSIBLE FOODS INC.

1

## <u>CERTIFICATE OF SERVICE</u>

2       I hereby certify that on August 29, 2025, the foregoing document was filed electronically

3   using the Court's CM/ECF system, which will send notification of such filing to counsel of

4   record.

5                                          */s/ H. Forrest Flemming, III*
                                           H. Forrest Flemming, III

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 5:21-CV-02419-BLF (SVK)