J. Noah Hagey, Esq. (SBN: 262331)
hagey@braunhagey.com
Adam S. Cashman, Esq. (SBN: 255063)
cashman@braunhagey.com
Greg Washington, Esq. (SBN: 318796)
gwashington@braunhagey.com
J. Tobias Rowe, Esq. (SBN: 305596)
rowe@braunhagey.com
BRAUNHAGEY & BORDEN LLP
747 Front Street, 4th Floor
San Francisco, CA 94111
Telephone: (415) 599-0210

Marissa R. Benavides (*pro hac vice* admission)
benavides@braunhagey.com
BRAUNHAGEY & BORDEN LLP
200 Madison Avenue, 23rd Floor
New York, NY 10016
Telephone: (646) 829-9403

[Other counsel of record indicated on docket.]

*Attorneys for Defendants / Counter-Plaintiffs Impossible LLC and Joel Runyon*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| IMPOSSIBLE FOODS INC.,<br><br>Plaintiff / Counter-Defendant,<br><br>v.<br><br>IMPOSSIBLE LLC and JOEL RUNYON,<br><br>Defendants / Counter-Plaintiffs. | Case No. 5:21-cv-02419-BLF (SVK)<br><br>**DECLARATION OF JOEL RUNYON IN SUPPORT OF DEFENDANTS/COUNTER-PLAINTIFFS IMPOSSIBLE LLC AND JOEL RUNYON'S OPPOSITION TO PLAINTIFF/COUNTER-DEFENDANT IMPOSSIBLE FOODS INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**Judge:** Hon. Beth Labson Freeman<br>**Mag. Judge:** Hon. Susan van Keulen<br>**Compl. Filed:** April 2, 2021<br>**Third Am. Compl. Filed:** March 7, 2025<br>**Hearing Date:** October 23, 2025<br>**Hearing Time:** 9:00 A.M. |

I, Joel Runyon, declare:

I am the founder of Defendant/Counter-Plaintiff Impossible LLC. I provide this declaration in support of Defendants/Counter-Plaintiffs Opposition to Plaintiff/Counter-Defendant's Motion for Partial Summary Judgment. I base this declaration on facts within my personal knowledge and if called upon to testify, I could and would testify competently thereto.

1. In 2010, after graduating from college in the midst of the financial crisis, I founded the business that would ultimately become Impossible LLC. Impossible LLC is built on the philosophy of foregoing what is realistic and safe and instead embracing the tasks and challenges that seem impossible.

2. It all started when I wrote out a list of goals that I called my "Impossible List." Although I had never run a competitive race in my life, my first "impossible" task was to run a triathlon. When I finished the race after months of training, I struck running a triathlon from the List of Impossible Things.

3. With this philosophy in mind, I launched my Blog of Impossible Things in April 2010. I adopted a simple but meaningful logo, "IMPOSSIBLE," which is sometimes rendered with a strikethrough to denote the accomplishment of crossing something off a list:

IMPOSSIBLE

4. I created Impossible Ventures LLC (later renamed Impossible X and ultimately merged into Impossible LLC) to serve as a business vehicle for Impossible-centered offerings. I use the name "Impossible LLC" to refer to the business in this Declaration for clarity.

5. In the fifteen years since its founding, Impossible LLC has expanded to offer goods and services directed to health and nutrition, recipes and dietary information, training and athletics, philanthropy and coaching, apparel and nutritional supplements, and business consulting regarding search engine optimization.

6. By October 2011, Impossible LLC launched IMPOSSIBLE HQ, a new hub for everything Impossible online, and started selling performance apparel with the IMPOSSIBLE logo.

7. In February 2012, Impossible LLC offered its triathlon training guide, which included recipes and nutritional information.

8. Two years later, Impossible LLC expanded into diet and nutrition offerings by launching our first nutrition and recipe-focused mobile application in July 2014.

9. In 2014, Impossible launched The 777 Project: a mission to run 7 ultramarathons on 7 continents, raise global awareness around lack of access to education, and generate funds to build 7 schools around the world with Pencils of Promise, a non-profit. On April 14, 2017, I completed the final ultramarathon in South Africa. I was, at the time, (to my knowledge) the youngest person in the world to finish an ultramarathon on every continent. The Impossible 777 Project raised $193,394 for charity and garnered international media attention. To date, the non-profit affiliated initiatives through Impossible.org have raised over $350,000 and impacted students and aspiring entrepreneurs in at least 86 countries around the world.

10. Several years later, in August 2017, Impossible LLC expanded from dietary and nutritional offerings to selling nutritional supplements, specifically IMPOSSIBLE® Krill Oil.

11. Impossible LLC markets its products and services under a family of IMPOSSIBLE marks including IMPOSSIBLE, IMPOSSIBLE FITNESS, IMPOSSIBLE X, IMPOSSIBLE HQ, IMPOSSIBLE NUTRITION, and DO SOMETHING IMPOSSIBLE.

12. Impossible LLC owns multiple federal trademark registrations for the IMPOSSIBLE® Marks, including Reg. No. 4260617 for IMPOSSIBLE (stylized)®, Reg. No. 4624158 for IMPOSSIBLE FITNESS®, Reg. No. 5155646 for IMPOSSIBLE X®, Reg. No. 5179974 for IMPOSSIBLE HQ®, Reg. No. 5376208 for IMPOSSIBLE (stylized)®, Reg. No. 5387588 for IMPOSSIBLE NUTRITION (stylized) ®, Reg. No. 5576376 for DO SOMETHING IMPOSSIBLE ®, Reg. No. 5590801 for IMPOSSIBLE FITNESS (stylized)®, Reg. No. 5603025 for IMPOSSIBLE FITNESS®, Reg. No. 5620625 for IMPOSSIBLE®, and Reg. No. 6571603 for IMPOSSIBLE (animated)®.

13. Impossible LLC has made significant investments building its brand and reputation under the IMPOSSIBLE® Marks. I have reviewed the brand-building expenditures and financial statements summarized in the Expert Report of Jennifer Vanderhart and believe they are accurate

based on my knowledge of Impossible LLC's business and finances, and based on my experience of working directly with Dr. Vanderhart and her team to review and summarize Impossible LLC's finances and expenditures.

14. These investments, which reflect only hard costs that were detailed in Impossible LLC's historical financial records, offer a conservative calculation and undercount the total value of investment into the IMPOSSIBLE® brand.

15. I have personally devoted years of my life into promoting the IMPOSSIBLE® products and services, including those related to apparel, health and nutrition, and recipes and dietary information, through regular attendance and participation in athletic events, conferences, and other gatherings, and through diligent promotion of the brand on my personal social media. Impossible has been virtually my sole focus and mission for my entire professional life, and as its founder and sole owner and employee, I have been responsible for all aspects of the company's growth and strategic direction. Executing on those responsibilities has required a commitment of many thousands of hours of my time.

16. Impossible LLC has also invested in marketing its brand through "viral" marketing approaches that yield value well in excess of the amount invested. For example. Impossible LLC generates self-made content such as YouTube videos, social media posts, blogs, podcasts, and endorsements, which are then reposted by other users or influencers and used by third parties in ways that generate valuable exposure for the IMPOSSIBLE® Marks and brand.

17. As one example among many, one of Impossible LLC's sponsored athletes, professional BASE jumper Dante Wardlaw, recently posted a video of himself jumping with an IMPOSSIBLE®-branded parachute from a cliff in the fjords of Norway. The video was picked up and reposted by the official account of the camera maker GoPro, which has 21 million followers. The cost of reaching an equivalent audience through paid advertising would be at least tens of thousands of dollars for a single post.

18. Similar successes in creating viral content over the last 15 years have generated millions of dollars in marketing value under the IMPOSSIBLE® Marks.

19. Impossible LLC and IMPOSSIBLE®-branded products and services have also received significant coverage in mainstream media, including coverage from Vice.com, Runner's World, Competitor.com, Oprah.com, The Huffington Post, Discover Magazine, Fox News, GQ, TIME, Inc., 99u, Fast Company, The Guardian, ProBlogger, LifeHack.org, Dumb Little Man, Michael Hyatt, Lifehacker, CNBC, Daily Mail, and others.

20. Together, these publications and websites have millions of subscribers and users. This unpaid media exposure has helped Impossible LLC generate brand awareness and a unique and valuable brand identity.

21. Impossible LLC has sold T-shirts and other apparel in California since as early as October 4, 2011, as reflected in the document produced in this lawsuit by Impossible LLC under Bates number IMP00059839. Our earliest records reflect sales to customers in multiple major markets, including San Francisco, Los Angeles, Orange County, and San Diego.

22. Impossible LLC also began selling recipe and nutrition products and services in California as early as September 4, 2012, as reflected in the document produced by Impossible LLC under Bates number IMPOSSIBLE001254.

23. I have personally witnessed numerous instances of confusion caused by Impossible Foods's infringement of the IMPOSSIBLE® Marks among consumers and other market participants who have mistakenly believed that Impossible LLC and its products and services are affiliated with or originate from Impossible Foods.

24. When I wear IMPOSSIBLE® apparel in public or at business events to promote the Impossible LLC brand, I am frequently approached by individuals who mistakenly believe that the apparel originates from or is associated with Impossible Foods. I have summarized instances of confusion in interrogatory responses, deposition testimony, and documents produced in this case and do not repeat them here, but could and would testify regarding them at trial.

25. Consumers online have also been confused into believing that Impossible LLC and its goods and services are affiliated with Impossible Foods. Impossible LLC is frequently tagged in social media, such as TikTok, Instagram, and Facebook, in posts intended to reference Impossible Foods, including in posts advertising vegan food.

26. The confusion I have witnessed with Impossible Foods is harmful to Impossible LLC's brand and business because one of our core customer demographics is individuals interested in athletics-focused nutrition using real, natural foods – for example, through the Paleo diet and similar approaches. These consumers are not typically interested in (in fact, they are often strongly opposed to) highly processed, artificial meat products like those offered by Impossible Foods. Confusion falsely associating Impossible LLC's products and services with Impossible Foods harms our ability to market to these important consumers.

27. Impossible Foods's infringement has overwhelmed Impossible LLC and the IMPOSSIBLE® Marks in the marketplace. Rather than building on Impossible LLC's existing brand in the apparel and nutrition and recipe information categories, I am forced to spend the initial (and most important) minutes of interactions with actual or potential customers or business contacts dispelling confusion about Impossible LLC's association or affiliation with Impossible Foods. This confusion creates a massive drag on Impossible LLC's ability to conduct business under its own name and effectively requires that I engage in a never-ending effort to distinguish my business from Impossible Foods.

28. Despite these efforts, the confusion continues to occur, and Impossible LLC lacks the resources to engage in the scale of advertising that would be required to counteract the rampant confusion in the market.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that this declaration was executed in Austin, Texas on August 29, 2025.

Dated: August 29, 2025

By: Signed by: Joel Runyon 30A7B52A4DE44CC...

Joel Runyon