1  J. Noah Hagey, Esq. (SBN: 262331)
       hagey@braunhagey.com
2  Adam S. Cashman, Esq. (SBN: 255063)
       cashman@braunhagey.com
3  Greg Washington, Esq. (SBN: 318796)
       gwashington@braunhagey.com
4  J. Tobias Rowe, Esq. (SBN: 305596)
       rowe@braunhagey.com
5  BRAUNHAGEY & BORDEN LLP
   747 Front Street, 4th Floor
6  San Francisco, CA 94111
   Telephone: (415) 599-0210

8  Marissa R. Benavides (*pro hac vice* admission)
       benavides@braunhagey.com
9  BRAUNHAGEY & BORDEN LLP
   200 Madison Ave., 23rd Floor
10 New York, NY 10016
   Telephone: (646) 829-9403

   [Other counsel of record indicated on docket.]

   *Attorneys for Defendants / Counter-Plaintiffs*
   *Impossible LLC and Joel Runyon*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| IMPOSSIBLE FOODS INC., <br><br> Plaintiff / Counter-Defendant, <br><br> v. <br><br> IMPOSSIBLE LLC and JOEL RUNYON, <br><br> Defendants / Counter-Plaintiffs. | Case No. 5:21-cv-02419-BLF (SVK) <br><br> **DEFENDANTS/COUNTER-PLAINTIFFS IMPOSSIBLE LLC AND JOEL RUNYON'S NOTICE OF MOTION AND MOTION FOR RULE 11 SANCTIONS; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> **Judge:** Hon. Beth Labson Freeman <br> **Compl. Filed:** April 2, 2021 <br> **Third Am.** <br> **Compl. Filed:** March 7, 2025 <br> **Hearing Date:** November 14, 2025 <br> **Hearing Time:** 9:00 a.m. |

Case No. 5:21-cv-02419-BLF (SVK)

DEFENDANTS/COUNTER-PLAINTIFFS IMPOSSIBLE LLC AND JOEL RUNYON'S NOTICE OF MOTION
AND MOTION FOR RULE 11 SANCTIONS; MEMORANDUM OF POINTS AND AUTHORITIES

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

YOU ARE HEREBY NOTIFIED THAT on November 14, 2025, at 9:00 a.m., or as soon as thereafter as the matter may be heard by the Honorable Beth Labson Freeman in the United States District Court, Northern District of California, located at the United States District Court, 280 South 1st Street, San Jose, CA 95113, Courtroom 1, 5th Floor, Defendants/Counter-claimants Impossible LLC and Joel Runyon ("Impossible LLC") will and hereby do move the Court to strike certain allegations in Plaintiff/Counter-defendant Impossible Foods's Third Amended Complaint made in support of causes of action for trademark infringement, unfair competition, and the California common law stated therein and to issue a monetary sanction in the amount of Impossible LLC's reasonable attorneys' fees and costs incurred in the course of seeking summary judgment as to those causes of action pursuant to Rule 11 of the Federal Rules of Civil Procedure.

The motion is based on this Notice of Motion, the accompanying Memorandum and Points of Authorities in Support, the Declaration of Greg Washington ("Washington Decl."), the pleadings and papers on file in this action, and further evidence and argument that the Court may consider.

Dated:  September 12, 2025

Respectfully submitted,

BRAUNHAGEY & BORDEN LLP

By:  */s/ Adam S. Cashman*
      Adam S. Cashman

*Attorneys for Defendants / Counter-Plaintiffs Impossible LLC and Joel Runyon*

i   Case No. 5:21-cv-02419-BLF (SVK)

DEFENDANTS/COUNTER-PLAINTIFFS IMPOSSIBLE LLC AND JOEL RUNYON'S NOTICE OF MOTION AND MOTION FOR RULE 11 SANCTIONS; MEMORANDUM OF POINTS AND AUTHORITIES

**REDACTED**

## INTRODUCTION

After years of litigation, and without any hint of consumer confusion or product overlap, Impossible Foods Inc. amended its complaint to add claims for trademark infringement and unfair competition. That gambit, undertaken to put pressure on a far smaller (but senior) user of the IMPOSSIBLE mark, is premised on the dubious assertions that Impossible LLC's longstanding sales of sleep and energy powders are causing consumer confusion and harm to Impossible Foods's trademarks used in connection with its plant-based meat substitutes. When pressed to support these allegations, ███████████████████████████████████████████████ ███████. Worse yet, ████████████████████████████████████ ██████████████████████████████████████████████████████████████. At that point, Impossible Foods was required to withdraw its allegations to the contrary. Yet for reasons it declined to explain, Impossible Foods refused to do so. Such gamesmanship squarely implicates Rule 11 and warrants both monetary and non-monetary sanctions.

## BACKGROUND

In April 2010, Joel Runyon founded his first business with the launch of a popular blog about fitness, nutrition, diet, and wellness topics. (Dkt. 262 at 2.) Building on the success of his blog, Mr. Runyon developed Impossible LLC to serve as the business vehicle for his Impossible-centered offerings. (*Id.* at 3.) Starting in October 2011, Mr. Runyon used his blog success as a springboard to sell related consumer products, such as performance apparel, fitness guides, recipes, diet-focused mobile applications, and nutritional supplements under his Impossible brand. (*Id.*) During this period, Impossible LLC secured eleven federal trademarks for apparel, nutrition, wellness, fitness, charitable fundraising, and other uses since 2010. (*Id.* at 3-4.)

Years later, a research and development company with no products named Maraxi, Inc. changed its name to Impossible Foods and began encroaching on Impossible LLC's senior and trademark-protected product offerings. (*Id.* at 4.) On April 1, 2020, Impossible Foods applied for federal trademark to provide "information about recipes, ingredients and cooking information; providing an online computer database to consumers featuring information about recipes, ingredients and cooking information." (*Id.* at 5.) On November 10, 2020, Impossible LLC sought a

DEFENDANTS/COUNTER-PLAINTIFFS IMPOSSIBLE LLC AND JOEL RUNYON'S NOTICE OF MOTION AND MOTION FOR RULE 11 SANCTIONS; MEMORANDUM OF POINTS AND AUTHORITIES

mutual agreement to co-existence and avoid confusion. (*Id.*) Impossible LLC received no response and opposed the application fifteen days later. Impossible Foods responded by filing this lawsuit.

### A. Impossible Foods's Third Amended Complaint Contains Serious Allegations of Customer Confusion Between the Parties' Products.

After three years of litigation, Impossible Foods amended its complaint to add for the first time claims of trademark infringement and unfair competition under the Lanham Act and California common law. (Dkt. 103.) Six months later, Impossible Foods filed the Third Amended Complaint ("TAC") with claims that rely on improbable allegations that Impossible LLC's long history of selling nutritional supplements—namely "sleep and energy powders"—infringe on Impossible Foods's trademarks because the products "are similar to, and compete with, the edible products offered and sold by Impossible Foods." (Dkt. 151 ¶¶ 36, 37.) Impossible Foods alleges Impossible LLC's "use of IMPOSSIBLE-formative marks in connection with" its nutritional supplements "is likely to cause consumers to mistakenly associate" their respective products or "cause consumers to believe, mistakenly, that Impossible Foods offered, authorized, or approved" Impossible LLC's products. (*Id.* at ¶¶ 40, 41.) Impossible Foods further alleged that "unless enjoined by the Court, [Impossible LLC's nutritional supplements] will continue to cause [] a likelihood of confusion and deception among members of the trade and public, and injury to Impossible Foods's goodwill and reputation." (*Id.* ¶¶ 106, 107 [trademark infringement]; ¶¶ 112, 113 [federal unfair competition]; ¶¶ 118, 119 [common law unfair competition].)

### B. Impossible Foods Furnished No Evidence Supporting Its Confusion Allegations

In discovery, Impossible LLC repeatedly sought to learn the basis of Impossible Foods's allegations of customer confusion. (*See, e.g.*, Ex.[1] A at 7; Ex. B at 5.) Despite these requests, Impossible Foods produced no documents and provided no information substantiating these allegations. Rather, Impossible Foods's written responses concede that *no customer confusion exists*. For example, in response to Impossible LLC's request that Impossible Foods "[i]dentify each reported instance anywhere of actual confusion, mistake, or deception[,]" (Ex. C at 15), Impossible Foods confessed that it had no such information. (*Id.* at 16.) Impossible Foods never

---

[1] The term "Ex." refers to exhibits to the Declaration of Greg Washington.

1  supplemented this response, ▇▇▇
2  ▇▇▇. (*See* Ex. D at 154:8-12.)
3    Before Impossible LLC could depose its Rule 30(b)(6) designees, ▇▇▇
4  ▇▇▇. On March 14, 2025,
5  Impossible LLC served a Rule 30(b)(6) deposition notice on Impossible Foods, which called for
6  Impossible Foods's testimony regarding the factual bases underlying its allegations of likely
7  customer confusion. (*See* Ex. E at 9-11.) During the meet and confer, ▇▇▇
8  ▇▇▇
9  ▇▇▇ (*See* Ex. F.)

### C. Impossible Foods's 30(b)(6) Designees Confirmed There Was No Evidence of Customer Confusion or Injury to Impossible Foods

In the following weeks, ▇▇▇

For example, Caitlyn Hatman, a Rule 30(b)(6) witness and Director of Marketing, first confirmed that ▇▇▇:

1  ██████████
2  ██████████

3  (Ex. G at 297:13-298:20.)

4  Ms. Hatman also testified that ████████████
5  ████████████████████████

6–17  ████████████████████████

18  (*See* Ex. G at 298:21-300:10.)

19  Ms. Hatman then testified that ████████████
20  ████████████████████████

21–26  ████████████████████████

27  (*See* Ex. G at 300:11-301:1.)

28  Separately, Keaton Schwarz, Impossible Foods' Rule 30(b)(6) corporate designee on

1 | financial matters, testified that █████████████████████████████████████
2 | ████████████████████████████████████████████████████████████████████████
3–19 | [REDACTED]

(See Ex. H at 183:11-186:16.)

### D. Impossible Foods Declined to Withdraw its Unsupported Claims and Forced Impossible LLC to Seek Summary Judgment

After the testimony from Impossible Foods's corporate designees disproved a number of key allegations, Impossible LLC identified these evidentiary deficiencies and requested that Impossible Foods withdraw its unsupported claims. Specifically, Impossible LLC requested ██████████████████████████████████████████████████████████████████████████████ (Ex. I at 1.) The following day, Impossible Foods responded that ██████████████████████████████ ████████████████████████████████████████████████████████████ (Ex. J.)

5    Case No. 5:21-cv-02419-BLF (SVK)

DEFENDANTS/COUNTER-PLAINTIFFS IMPOSSIBLE LLC AND JOEL RUNYON'S NOTICE OF MOTION AND MOTION FOR RULE 11 SANCTIONS; MEMORANDUM OF POINTS AND AUTHORITIES

Impossible LLC gave Impossible Foods the benefit of the doubt and did not immediately seek sanctions because Impossible Foods still had the opportunity to submit evidence pending several discovery disputes and/or through expert discovery. But discovery has now closed, and the allegations of trademark infringement remain wholly unsupported, thereby necessitating Impossible LLC's motion for summary judgment and substantiating this request for sanctions.

## ARGUMENT

When a complaint is the focus of a Rule 11 proceedings, "a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing it." *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005) (cleaned up). And "the mere existence of one non-frivolous claim in a complaint does not immunize it from Rule 11 sanctions." *Id*. at 677 (cleaned up).

Here, Impossible Foods's own corporate testimony fatally undermines the allegations in TAC Paragraphs 37, 40-41, 106-107, 112-113, and 118-119. There is no reason to expend further resources to litigate those allegations where, as here, Impossible Foods has conceded they are wrong and unsupported. To deter future wasteful conduct, the Court should sanction Impossible Foods for maintaining allegations it concedes and likely always knew are baseless.

### A. Impossible Foods's Trademark Infringement Allegations Are Meritless and Unsupported by Any Reasonable Inquiry Before Filing

Maintaining baseless confusion allegations in the face of binding testimony to the contrary is sanctionable under Rule 11, as courts may "impose sanctions under Rule 11 for insisting upon a position after it is no longer tenable." *SG Blocks, Inc. v. Hola Comm. Partners*, 2021 WL 2714596, at *2 (C.D. Cal. July 1, 2021) (cleaned up); *see also Nguyen v. Simpson Strong-Tie Co., Inc.*, 2020 WL 5232564, at *5 (N.D. Cal. Sept. 2, 2020) (granting Rule 11 sanctions where facts "seriously negated a core allegation of the FAC"). Rule 11 prohibits the assertion of claims based on "hypothetical, unsubstantiated, speculative allegations." *Havensight Capital, LLC v. Facebook, Inc.*, 2018 WL 6340757, at *13 (C.D. Cal. Sept. 24, 2018), *aff'd*, 776 F. App'x 420 (9th Cir. 2019) (sanctioning plaintiff under Rule 11). Indeed, courts routinely impose sanctions when party

witnesses "admitted during their depositions that many key allegations in their complaint are untrue." *See Galvan v. Walt Disney Parks & Resorts, U.S., Inc.*, 2019 WL 8017806, at *2 (C.D. Cal. Dec. 20, 2019) (issuing Rule 11 sanctions).

*Hunt v. Sunny Delight Beverages Co.* is instructive here. 2018 WL 6786265, at *5 (C.D. Cal. Dec. 18, 2018). There, plaintiffs alleged that defendant's product labels had misleading descriptions. *Id.* at *1-2. But during plaintiffs' depositions, they admitted this was not true. *Id.* at *3. Because it was "apparent that that Plaintiffs' counsel did not undertake the most fundamental of investigations" before filing, that court issued sanctions for "wast[ing] the time and resources of Defendant and this Court." *Id.* at *4.

Similarly, in *Refac Int'l, Ltd. v. Hitachi Ltd.*, the court sanctioned the plaintiff because they "assumed without justification that all of the accused products violated one or more of its patents, but made no reasonable (or any) investigation to confirm this" before filing the lawsuit. 141 F.R.D. 281, 286 (C.D. Cal. 1991). Meanwhile, the plaintiff "ha[d] not asserted" and provided "no evidence by which it can be found" that the defendant engaged in the infringing conduct alleged in the complaint. *Id.* The Court therefore awarded sanctions under Rule 11.

Here, as in *Hunt* and *Refac*, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ which are central to its trademark infringement and unfair competition claims under the Lanham Act and California common law. On this record, no "reasonable inquiry" could have led to the allegations that Impossible Foods pled in its Third Amended Complaint.

### 1. Impossible Foods's Testimony Disproves Its Confusion Allegations

Without qualification, Caitlyn Hatman testified that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

| TAC (Dkt. 151.) | Hatman Deposition Testimony (Ex. G.) |
|---|---|
| **Paragraph 37:** "Defendants' use of IMPOSSIBLE-formative marks in connection with the Accused Products are similar to, and compete with, the edible products offered and sold by Impossible Foods." | ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ |

[REDACTED]

Ms. Hatman also testified that [REDACTED]

[REDACTED]

| TAC (Dkt. 151.) | Hatman Deposition Testimony (Ex. G.) |
|---|---|
| **Paragraph 40:** "Defendants' use of IMPOSSIBLE-formative marks in connection with the Accused Products is not authorized by Impossible Foods and, on information and belief, is likely to cause consumers to mistakenly associate Defendants and the Accused Products with Impossible Foods."<br><br>**Paragraph 41:** "On information and belief, Defendants' use of IMPOSSIBLE-formative marks in connection with the Accused Products is likely to cause consumers to believe, mistakenly, that Impossible Foods offered, authorized, or approved the Accused Products."<br><br>**Paragraphs 106, 112, 118:** "Defendants' unauthorized use, at the direction of Mr. Runyon, of imitations of Plaintiff's Marks in connection with edible products such as sleep and energy powders is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendants' goods and services are offered by Impossible Foods, or are associated or connected with Impossible Foods, or have the sponsorship, endorsement, or approval of Impossible Foods." | [REDACTED] |

Despite this testimony, Impossible Foods maintained those misguided allegations anyway. That is improper, and the Court should accordingly strike Paragraphs 37, 40-41, 106, 112, and 118.

### 2. Evidence Disproves Allegations of Harm from Customer Confusion

In addition, Mr. Schwarz testified that [REDACTED]

[REDACTED]

| TAC (Dkt. 151.) | Schwarz Deposition Testimony (Ex. H.) |
|---|---|
| **Paragraphs 107, 113, 119:** "Defendants' conduct, at the direction of Mr. Runyon, has caused—and unless enjoined by the Court, will continue to cause—a likelihood of confusion and deception among members of the trade and public, and injury to Impossible Foods's goodwill and reputation as symbolized by Plaintiff's Marks, for which Impossible Foods has no adequate remedy at law." |  |

Mr. Schwarz's corporate testimony ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. The Court should therefore strike Impossible Foods's spurious allegations at TAC Paragraphs 107, 113, and 119.

### 3. Impossible Foods Conducted No Reasonable Inquiry Before Pleading Its Trademark Infringement and Unfair Competition Allegations

Impossible Foods should have known at the time it lodged these allegations that they had no basis in fact. Rule 11 required Impossible Foods's counsel to "personally . . . validate the truth" of its client's allegations through "a reasonable factual investigation" to confirm the TAC allegations before filing. *See In re Connetics Corp. Sec. Litig.*, 542 F. Supp. 2d 996, 1005 (N.D. Cal. 2008). When signing a pleading, an attorney's signature on a complaint is "tantamount to a warranty that the compliant is well grounded in fact and 'existing law' . . . and that it is not filed for an improper purpose." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002). And the Rule 11 "reasonable inquiry" obligations mandate that attorneys seek credible information from sources with knowledge, rather than proceeding based on suspicion or conjecture. *See California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1472 (9th Cir. 1987).

Here, it is clear that counsel failed to undertake a reasonable investigation to confirm that each allegation was factually grounded before signing and filing the TAC. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, they would have readily discovered the truth. Plainly, they did not do so, just as Impossible Foods has failed to identify any other evidence supporting TAC Paragraphs 37, 40-41, 106-107, 112-113, and 118-119,

which should be stricken under Rule 11.

### B. Impossible Foods's Misuse of Court and Party Resources Warrants Monetary Sanctions and Striking the Frivolous Allegations in the Complaint

Impossible LLC should recover the attorneys' fees and costs it has incurred in defending against the trademark infringement and unfair competition allegations. Rule 11 imposes an "affirmative duty to evaluate the claims being made and a continuing duty to dismiss any claims that were no longer viable." *See Habib v. Matson Navigation Co.*, 2014 WL 4243703, at *6 (W.D. Wash. Aug. 26, 2014) (imposing sanctions when counsel knew a claim was barred but did not dismiss); Fed. R. Civ. P. 11 advisory committee's note (1993) ("[A] litigant's obligations with respect to the contents of these papers . . . include[s] reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit."). Impossible Foods had multiple opportunities to withdraw its unfounded allegations, including when Impossible LLC expressly requested that Impossible Foods dismiss them before the parties incurred further unnecessary expense. (Ex. I.) Despite this, Impossible Foods refused to withdraw the claims or related allegations. (*See* Ex. J.) In so doing, Impossible Foods forced Impossible LLC to move for partial summary judgment on claims it knew lacked merit. (Dkt. 262.)

By making meritless infringement allegations and failing to dismiss them despite the evidence to the contrary, Impossible Foods has flouted Rule 11 and wasted the Court's and Impossible LLC's resources. The Court should therefore enter *both* monetary and non-monetary sanctions by striking the allegations in Paragraphs 37, 40-41, 106-107, 112-113, and 118-119 of the TAC with prejudice. *See Dropbox, Inc. v. Thru Inc.*, 2017 WL 914273, at *1 (N.D. Cal. Mar. 8, 2017) (awarding fees and costs when plaintiff pursued "substantively meritless" claims).

### CONCLUSION

For the foregoing reasons, the Motion should be granted in its entirety.

1  Dated: September 12, 2025

Respectfully submitted,

BRAUNHAGEY & BORDEN LLP

By: */s/ Adam S. Cashman*
　　　Adam S. Cashman

*Attorneys for Defendants / Counter-Plaintiffs Impossible LLC and Joel Runyon*

11　　Case No. 5:21-cv-02419-BLF (SVK)

DEFENDANTS/COUNTER-PLAINTIFFS IMPOSSIBLE LLC AND JOEL RUNYON'S NOTICE OF MOTION AND MOTION FOR RULE 11 SANCTIONS; MEMORANDUM OF POINTS AND AUTHORITIES