REDACTED

J. Noah Hagey, Esq. (SBN: 262331)
hagey@braunhagey.com
Adam S. Cashman, Esq. (SBN: 255063)
cashman@braunhagey.com
Greg Washington, Esq. (SBN: 318796)
gwashington@braunhagey.com
J. Tobias Rowe, Esq. (SBN: 305596)
rowe@braunhagey.com
BRAUNHAGEY & BORDEN LLP
747 Front Street, 4th Floor
San Francisco, CA 94111
Telephone: (415) 599-0210

Marissa R. Benavides (*pro hac vice* admission)
benavides@braunhagey.com
BRAUNHAGEY & BORDEN LLP
200 Madison Avenue, 23rd Floor
New York, NY 10016
Telephone: (646) 829-9403

[Other counsel of record indicated on docket.]

*Attorneys for Defendants / Counter-Plaintiffs Impossible LLC and Joel Runyon*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| IMPOSSIBLE FOODS INC.,<br><br>Plaintiff / Counter-Defendant,<br><br>v.<br><br>IMPOSSIBLE LLC and JOEL RUNYON,<br><br>Defendants / Counter-Plaintiffs. | Case No. 5:21-cv-02419-BLF (SVK)<br><br>**DEFENDANTS/COUNTER-PLAINTIFFS IMPOSSIBLE LLC AND JOEL RUNYON'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**Judge:** Hon. Beth Labson Freeman<br>**Compl. Filed:** April 2, 2021<br>**Hearing Date:** October 23, 2025<br>**Hearing Time:** 9:00 A.M. |

REDACTED

TABLE OF CONTENTS

**INTRODUCTION .......... 1**

**ARGUMENT .......... 1**

**I. IMPOSSIBLE FOODS FAILS TO ESTABLISH A TRIABLE ISSUE OF FACT ON ITS TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION CLAIMS .......... 1**

A. Federal Trademark Infringement and Unfair Competition .......... 1

1. The Products are Unrelated .......... 2

2. The Other *Sleekcraft* Factors Confirm there is No Triable Issue of Fact .......... 4

B. California Common Law Unfair Competition .......... 6

**II. THERE IS NO JURISDICTION OVER IMPOSSIBLE LLC'S FRAUD CLAIM .......... 7**

A. Impossible Foods Lacks Constitutional Standing .......... 7

B. Impossible Foods Lacks Statutory Standing .......... 9

C. Impossible Foods' Fraud Claim is Moot as to 3 of 4 Registrations .......... 10

D. No Relief Can Be Awarded With Respect to the Undisputed Classes of Goods .......... 11

**III. THERE IS NO TRIABLE ISSUE ON ABANDONMENT OF IMPOSSIBLE FITNESS .......... 13**

**IV. THE COURT SHOULD SUMMARILY ADJUDICATE PRIORITY .......... 14**

A. Undisputed Evidence Shows Prior Use of Particular IMPOSSIBLE Marks .......... 14

B. Impossible LLC Has Established Trademark Rights .......... 14

C. Impossible Foods' Challenges to Priority Lack Merit .......... 15

D. Impossible Foods' Continuous Use Arguments Lack Merit .......... 15

**CONCLUSION .......... 15**

REDACTED

## TABLE OF AUTHORITIES

**PAGES**

**CASES**

*Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595 (9th Cir. 2014) ........ 8

*Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013) ........ 8

*AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979) ........ 2, 4, 6

*Arcona, Inc. v. Farmacy Beauty, LLC*, 976 F.3d 1074 (9th Cir. 2020) ........ 6

*Ball v. Am. Trial Laws. Ass'n.*, 14 Cal. App. 3d 289 (Ct. App. 1971) ........ 7

*Bank of the West* v. *Superior Ct.*, 2 Cal. 4th 1254 (1992) ........ 7

*Bank v. Al Johnson's Swedish Rest. & Butik, Inc.*, 795 F. App'x 822 (Fed. Cir. 2019) ........ 11

*Chemeon Surface Tech. LLC v. Metalast Int'l, Inc.*, No. 21-15561, 2022 WL 1797316 n. 5 (9th Cir. June 2, 2022) ........ 9

*Chemeon Surface Tech., LLC v. Metalast Int'l, Inc.*, No. 3:15-CV-00294-CLB, 2023 WL 1765704 (D. Nev. Feb. 3, 2023) ........ 10

*Cohn v. Petsmart, Inc.*, 281 F.3d 837 (9th Cir. 2002) ........ 5

*E. Iowa Plastics, Inc. v. PI, Inc.*, 832 F.3d 899 (8th Cir. 2016) ........ 9

*Electro Source, LLC v. Brandess-Kalt-Aetna Grp., Inc.*, 458 F.3d 931 (9th Cir. 2006) ........ 13

*G&W Lab'ys, Inc. v. G W Pharma Ltd.*, 89 U.S.P.Q.2d 1571 (T.T.A.B. 2009) ........ 12, 13

*Hansen Beverage Co. v. Cytosport, Inc.*, No. CV 09-0031-VBF(AGRX), 2009 WL 5104260 (C.D. Cal. Nov. 4, 2009) ........ 4

*Ironhawk Techs., Inc. v. Dropbox, Inc.*, 2 F.4th 1150 (9th Cir. 2021) ........ 2

*Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628 (9th Cir. 2008) ........ 2

*Ketab Corp. v. Mesriani & Assocs., P.C.*, 734 F. App'x 401 (9th Cir. 2018) ........ 2

*Lerner & Rowe PC v. Brown Engstrand & Shely LLC*,
119 F.4th 711 (9th Cir. 2024) ........ 1, 5

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014) ........ 9, 10

*M2 Software, Inc. v. Madacy Ent.*,
421 F.3d 1073 (9th Cir. 2005) ........ 2

*Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*,
290 F. Supp. 2d 1083 (C.D. Cal. 2003) ........ 5

*Medinol Ltd. v. Neuro Vasx, Inc.*,
67 U.S.P.Q.2d 1205 (T.T.A.B. 2003) ........ 12

*Murray v. Cable Nat. Broad. Co.*,
86 F.3d 858 (9th Cir. 1996) ........ 2

*Petroliam Nasional Berhad v. GoDaddy.com, Inc.*,
897 F. Supp. 2d 856 (N.D. Cal. 2012) ........ 13

*San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*,
60 F.4th 481 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 190 (2023) ........ 8

*San Miguel Pure Foods Co. v. Ramar Int'l Corp.*,
No. CV1109747RGKFMOX, 2012 WL 13227045 (C.D. Cal. Nov. 27, 2012) ........ 4

*SmileDirectClub, LLC v. Berkely*,
No. SACV 18-1236, 2018 WL 8131096 (C.D. Cal. Oct. 26, 2018) ........ 13

*Southland Sod Farms v. Stover Seed Co.*,
108 F.3d 1134 (9th Cir. 1997) ........ 7

*Star-Kist Foods, Inc. v. P.J. Rhodes & Co.*,
735 F.2d 346 (9th Cir. 1984) ........ 9, 10

*Suja, Life, LLC v. Pines Int'l, Inc.*,
No. 16-CV-985-GPC(WVG), 2016 WL 6157950 (S.D. Cal. Oct. 24, 2016) ........ 4

*Surfvivor Media, Inc. v. Survivor,*
*Prods.*, 406 F.3d 625 (9th Cir. 2005) ........ 2

*Watec Co. v. Liu*,
403 F.3d 645 (9th Cir. 2005) ........ 16

*Water, Inc. v. Everpure, Inc.*,
No. CV 09-3389 ABC (SSX), 2012 WL 12949368 (C.D. Cal. Aug. 2, 2012) ........ 7

*Wong v. Regents of Univ. of California*,
410 F.3d 1052 (9th Cir. 2005) ........ 3

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
259 F.3d 1101 (9th Cir. 2001) ........ 3

**STATUTES**

15 U.S.C. § 1119 ... 8, 11
15 U.S.C. § 1120 ... 11
15 U.S.C. § 1127 ... 9

**RULES**

Fed. R. Civ. P. 37(c)(1) ... 3

**REGULATIONS**

37 C.F.R. §2.173(e) ... 11

## INTRODUCTION

Summary judgment should be granted because Impossible Foods fails to raise a triable issue of fact on its claims for trademark infringement, unfair competition, and abandonment, or with respect to Impossible LLC's priority in its longstanding product categories. Nor does Impossible Foods even clear the bar of establishing it has standing to pursue its fraud claim, which is focused on products in Impossible LLC's trademark registrations that have never been at issue in this case.

Instead, Impossible Foods devotes the majority of its brief to smearing Impossible LLC's founder and sole proprietor, Joel Runyon. But despite excoriating Impossible LLC for supposed inaccuracies in filings with the USPTO, Impossible Foods' own submissions to the Court are less than candid. In one glaring example, Impossible Foods claims that Impossible LLC hastily renewed one of its trademark registration because Impossible Foods had sent a draft complaint on July 3, 2024 threatening cancellation of that registration (Opp. at 2-3), but the actual draft complaint *did not seek cancellation* and would have had no effect on Impossible LLC's renewal rights. (Cashman Decl. Ex. 1.) Other examples follow a similar pattern. Impossible Foods' baseless screed against Impossible LLC's motives typifies Impossible Foods' claims in this action – cobbled together to muscle out a smaller (but senior) user, but unsupported by evidence or law.

## ARGUMENT

### I. IMPOSSIBLE FOODS FAILS TO ESTABLISH A TRIABLE ISSUE OF FACT ON ITS TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION CLAIMS

#### A. Federal Trademark Infringement and Unfair Competition

The Court should grant summary judgment on Impossible Foods' federal trademark infringement and unfair competition claims because, as Impossible Foods' Rule 30(b)(6) witness confirmed, there is no likelihood of confusion between Impossible LLC's longstanding supplement products and Impossible Foods' plant-based meats. Impossible Foods suggests there is an inflexible rule against summary judgment on likelihood of confusion (Opp. at 11), but courts in this Circuit "have not hesitated" to grant summary judgment when the undisputed facts show confusion is not likely. *Lerner & Rowe PC v. Brown Engstrand & Shely LLC*, 119 F.4th 711, 718 (9th Cir. 2024), *cert. denied*, No. 24-953, 2025 WL 1496488 (U.S. May 27, 2025) (affirming summary judgment

REDACTED

that confusion was not likely); *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 634 (9th Cir. 2005) (same); *M2 Software, Inc. v. Madacy Ent.*, 421 F.3d 1073, 1085 (9th Cir. 2005) (same). This is such a case. No reasonable juror could find that Impossible LLC's supplements are confusingly similar to Impossible Foods' alternative meat, particularly where Impossible Foods itself [redacted] (Dkt. 262-30 at 300:21-22.)

**1. The Products are Unrelated**

Impossible LLC's supplements are "totally unrelated" to Impossible Foods' alternative meats. Accordingly, "there is no infringement because confusion is unlikely" as a matter of law. *Murray v. Cable Nat. Broad. Co.*, 86 F.3d 858, 861 (9th Cir. 1996), *as amended* (Aug. 6, 1996) (quoting *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir. 1979)). Impossible Foods resists this principle, arguing that it places "outsized importance" on the relatedness of the goods. (Opp. at 11.) But it fails to reckon with *Murray*, which squarely held that a lack of relatedness is dispositive and can be decided as a matter of law, even at the pleading stage. 86 F.3d 858 at 861 (affirming dismissal of infringement complaint because "the parties' services are unrelated"). In so holding, *Murray* followed *Sleekcraft*, which likewise held that "[i]f the goods are totally unrelated, there can be no infringement because confusion is unlikely." *Sleekcraft*, 599 F.2d at 348.

None of Impossible Foods' cases disturb this bedrock principle. *Ironhawk Techs., Inc. v. Dropbox, Inc.*, 2 F.4th 1150, 1161 (9th Cir. 2021) stated only that the presence or absence of "particular factor[s]" does not "necessarily" dictate a finding of likelihood of confusion; it did not hold that a total lack of relatedness can *never* be dispositive of infringement. And *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 632 (9th Cir. 2008) held that the trial court erred where it considered no *Sleekcraft* factors other than the dissimilarity of the marks; it did not address the relatedness of goods or the "totally unrelated" rule applied in *Murray* and *Sleekcraft*. That rule remains good law, and applies with full force here. *See Ketab Corp. v. Mesriani & Assocs., P.C.*, 734 F. App'x 401, 406 (9th Cir. 2018) (affirming dismissal where "the district court found that the [defendants'] legal services and [plaintiff's] information directory services were 'totally unrelated' and therefore confusion was unlikely as a matter of law, citing [*Murray*]").

Next, Impossible Foods seeks to distance itself from its extensive Rule 30(b)(6) testimony

REDACTED

confirming that the products are unrelated, mischaracterizing its testimony as stating merely that "nutritional supplements are not the same types of products as plant-based meat products." (Opp. at 13.) But the testimony went far beyond that. [redacted] (Dkt. 262-30 at 300:11-22), [redacted] (*id*. at 298::15-20), [redacted] (*id*.), [redacted] (*id*. 297:19-298:1), [redacted] (*id*. at 298:2-5). This is the *sole testimony in the record* concerning the relatedness of the goods. As Impossible LLC explained, these admissions establish that the goods are neither "complementary," nor "sold to the same class of purchasers," nor "similar in use and function." (Mot. at 7-8.) In other words, they are totally unrelated.

Attempting to contradict these binding admissions, Impossible Foods submits a declaration from an employee of its litigation counsel, attaching screenshots of products supposedly offered by third parties. (Dkt. 274-35). But these internet screenshots do not create a triable issue of fact for multiple reasons. First, they are inadmissible because Impossible Foods did not timely produce or disclose them in discovery. *See* Fed. R. Civ. P. 37(c)(1). Impossible LLC specifically requested that Impossible Foods produce "all documents or things upon which Plaintiff intends to rely or otherwise use in this litigation," and Impossible Foods responded that such materials would be disclosed pursuant to Rule 26(a). (Cashman Decl. Ex. 2.) Yet Impossible Foods failed to identify these third-party product offerings or any witness knowledgeable about them as evidence on which Impossible Foods would rely. (Cashman Decl. Ex. 3.) As a result, Impossible LLC never had an opportunity to take discovery on these third-party products or Mr. Nelson's alleged purchases. Accordingly, they cannot be relied on to avoid summary judgment. *Wong v. Regents of Univ. of California*, 410 F.3d 1052, 1062 (9th Cir. 2005) (affirming exclusion of testimony not timely identified in Rule 26(a) disclosures at summary judgment); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (exclusion is "automatic" and "self-executing").

Second, even if accepted at face value, the screenshots do not create a triable issue because

there is not a single example of a company offering an alternative meat product and sleep or energy supplements. Instead, they unremarkably reflect that Quest Nutrition sells pork pizzas and milkshakes and that Clif Bar sells sports nutrition bars and electrolyte drinks. (Dkt. 274-37, -39, -41, -43.) The third example, in which Impossible Foods compares Hormel Chili to Evolve Protein Shakes, is nonsensical because the latter product does not use the HORMEL mark, and so does not represent an example of products sold under the same mark. (Dkt. 274-46, -47.) There is no evidence in the record that *any* alternative meat company has *ever* sold supplements, nor that consumers would expect such a combination. The *only evidence* on this issue is Impossible Foods' admission that it [redacted]

Impossible Foods also attempts to compensate for its lack of evidence by citing several cases purporting to demonstrate relatedness of goods, but those cases are readily distinguishable because all involved products that were exactly identical or obviously related, unlike plant-based meat and sleep or energy powder. *See, e.g., Suja, Life, LLC v. Pines Int'l, Inc.*, No. 16-CV-985-GPC(WVG), 2016 WL 6157950, at *2 (S.D. Cal. Oct. 24, 2016) (one party sold "juice," while other party sold drink mix designed to be "stir[ed] into water or juice"); *Hansen Beverage Co. v. Cytosport, Inc.*, No. CV 09-0031-VBF(AGRX), 2009 WL 5104260, at *9 (C.D. Cal. Nov. 4, 2009) (both parties sold "ready-to-drink" beverages); *San Miguel Pure Foods Co. v. Ramar Int'l Corp.*, No. CV1109747RGKFMOX, 2012 WL 13227045, at *1 (C.D. Cal. Nov. 27, 2012) (both parties sold "ice cream"); *see also* Opp. at 13-14 (citing more cases involving identical goods). None of these cases involved disparate products like alternative meats and supplements, and none involved express admissions by the plaintiff's Rule 30(b)(6) witness that [redacted]. As a result, Impossible Foods fails to establish a triable issue of fact on the relatedness of the goods. Because "there can be no infringement" between "totally unrelated" goods, *Sleekcraft*, 599 F.2d at 348, summary judgment is proper on this ground alone.

**2. The Other *Sleekcraft* Factors Confirm there is No Triable Issue of Fact**

The other *Sleekcraft* factors only confirm that there is no likelihood of confusion between the parties' unrelated goods as a matter of law.

***No Consumer Has Ever Been Confused***. Impossible Foods concedes there is no evidence

REDACTED

any consumer has ever been confused by Impossible LLC's supplements despite years of coexistence in the marketplace. (Opp. at 16.) It seeks to downplay this on the ground that actual confusion is not strictly required; however, the lack of confusion after years of coexistence supports summary judgment. *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 843 (9th Cir. 2002) (affirming summary judgment given "lack of evidence about actual confusion after an ample opportunity").

***No Overlapping Marketing Channels***. Impossible Foods also concedes that consumers never encounter its alternative meats and Impossible LLC's supplements in the same physical stores or elsewhere in the real world. (Opp. at 15.) Instead, it argues the marketing channels are similar solely because both parties market their products "online" (*Id.*) But the Ninth Circuit has held that mutual use of the internet does not create a triable issue of fact on likelihood of confusion because "[t]oday, it would be the rare commercial retailer that did not advertise online, and the shared use of a ubiquitous marketing channel does not shed much light on the likelihood of consumer confusion." *Lerner*, 119 F.4th at 725 (citation omitted). This factor further confirms confusion is not likely.

***No Evidence of Relevant Expansion Plans***. Impossible Foods also [redacted] (Mot. at 11 (citing evidence); Opp. at 15 (not responding).) Instead, Impossible Foods argues there is a triable issue of fact because Impossible LLC has considered launching whey (*i.e.* dairy-based) protein bars or drink mixes. (Opp. at 15.) To state the obvious, this does not show any threat of expansion into the alternative meat category because whey protein bars and drink mixes are not alternative meat products. This factor accordingly weighs in favor of summary judgment. *See Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*, 290 F. Supp. 2d 1083, 1096 (C.D. Cal. 2003) (granting summary judgment and rejecting expansion argument because "[s]peculative or unrealistic plans cannot be considered").

***Consumers Exercise a High Degree of Care.*** Impossible Foods relies on McCarthy to suggest that consumers might exercise a low degree of care when shopping for the parties' products based their price alone. (Opp. at 16.) But there is no need for a generalization here because there is specific evidence on point: [redacted]

REDACTED

[redacted] (Dkt. 262-30 at 169:9-16, 256:18-257:9.) Impossible Foods has no response and does not identify any contrary evidence.

***No Evidence of Intentional Infringement***. Impossible Foods concedes that there is no evidence Impossible LLC adopted its IMPOSSIBLE® mark to confuse consumers or trade on Impossible Foods' reputation. Its only argument is that Impossible LLC was aware of Impossible Foods when it began selling supplements (Opp. at 15), but this fails to support an inference of bad intent because Impossible LLC had undisputedly selected its IMPOSSIBLE® mark years earlier, and launched its supplements years before Impossible Foods started selling its alternative meats directly to consumers. (*Compare* Dkt. 262-04 at 104:10-105:8 *with* Dkt. 262-28 at 52:22-53:6.) The absence of evidence of intentional infringement supports summary judgment as well.

***No Evidence of Strength of Mark Outside of Alternative Meats***. Impossible Foods places great emphasis on the alleged strength of its mark. (Opp. at 12-13.) But even assuming for present purposes that Impossible Foods' mark is strong in connection with its alternative meat products, it fails to adduce evidence that the mark is strong among supplement customers, such that they would associate supplement products with Impossible Foods. *See* Opp. at 13 ([redacted]). This lack of evidence renders this factor neutral.

***Similarity of the Marks Alone Cannot Support a Finding of Infringement***. There is no denying that the parties' marks are similar – *i.e.*, because Impossible Foods knowingly adopted a stylized rendition of IMPOSSIBLE that closely tracked Impossible LLC's preexisting mark when Impossible Foods rebranded in 2016. (*See* Mot. at 4-5.) But this similarity alone cannot support a finding of infringement because "there can be no infringement" between "totally unrelated" goods regardless of similarity, *Sleekcraft*, 599 F.2d at 348, and because the remaining *Sleekcraft* factors show there is no triable issue as a matter of law. *See Arcona, Inc. v. Farmacy Beauty, LLC*, 976 F.3d 1074, 1079-1080 (9th Cir. 2020) (plaintiff failed to establish triable issue on "likelihood of confusion under Section 1114" despite use of the same "EYE DEW" mark given "significant differences between the two products"). This factor does not preclude summary judgment.

**B. California Common Law Unfair Competition**

With respect to its state-law claim, Impossible Foods argues that it can establish unfair

competition despite the absence of evidence of intentional infringement equivalent to "passing off." (Opp. at 17.) However, this argument is foreclosed by Ninth Circuit and California Supreme Court precedent holding that this claim requires proof of "acts analogous to 'passing off,' such as the sale of confusingly similar products, by which a person exploits a competitor's reputation in the market." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1147 (9th Cir. 1997) (quoting *Bank of the West v. Superior Ct.*, 2 Cal. 4th 1254, 1263 (1992)). Isolating the phrase "such as the sale of confusingly similar products," Impossible Foods misleads by claiming any infringement is sufficient (Opp. at 17), but that elides the remainder of the sentence, which makes clear that the common law tort only encompasses sales of confusingly similar products where "a person *exploits a competitor's reputation* in the market" – *i.e.*, deliberate infringement. *Southland*, 108 F.3d at 1147 (emphasis added). Impossible Foods makes no attempt to distinguish the many cases dismissing unfair competition claims on these very grounds. (Mot. at 12-13.) The lack of evidence of deliberate infringement therefore warrants summary judgment. And the result would be the same even under the "substantially congruent" standard because the Lanham Act claims also fail.

Impossible Foods also concedes that it has suffered no damages, but argues it can maintain its claim regardless. (Opp. at 9.) That is wrong, as demonstrated by Impossible LLC's cases granting summary judgment because, unlike Lanham Act claims, "proof of damage is required" to maintain a California common law unfair competition claim. *Water, Inc. v. Everpure, Inc.*, No. CV 09-3389 ABC (SSX), 2012 WL 12949368, at *10 (C.D. Cal. Aug. 2, 2012); Mot. at 15. Impossible Foods' sole authority in response is a 1971 intermediate appellate decision, *Ball v. Am. Trial Laws. Ass'n.,* 14 Cal. App. 3d 289, 304 (Ct. App. 1971), which did not squarely address summary judgment based on lack of damages and is inconsistent with subsequent authority on this point.

## II. THERE IS NO JURISDICTION OVER IMPOSSIBLE LLC'S FRAUD CLAIM

The Court should grant summary judgment as to Impossible Foods' claim for cancellation of registrations based on fraud because it lacks standing, and because the claim is moot.

### A. Impossible Foods Lacks Constitutional Standing

Impossible Foods first argues that because this action generally "involves a registered mark," it has standing to pursue any manner of cancellation claim under 15 U.S.C. § 1119

regardless of the claim's relationship to the underlying dispute. (Opp. at 8.) That is incorrect because standing under Section 1119 is limited by Article III's requirement that a plaintiff show a "personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Already, LLC v. Nike, Inc*., 568 U.S. 85, 90 (2013). As a result, Section 1119 cannot be invoked "as an independent cause of action." *Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 599 (9th Cir. 2014). It must either be accompanied by a claim for damages under Section 1120 (which Impossible Foods disclaims here), or else be used to provide a "remedy for trademark infringement." *Id.*; *accord San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 60 F.4th 481, 505 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 190 (2023) ("*SDCCU"*) ("§ 1119 provides cancellation only as relief to a party who has proved infringement"). Impossible Foods does not attempt to distinguish *SDCCU.* And it misreads *Airs* to suggest that it extends jurisdiction to any action "involving a registered mark," when *Airs* expressly held that Section 1119 is "remedial, not jurisdictional. 744 F.3d at 598.

Here, Impossible Foods expressly disavows any damages from the alleged fraud (Opp. at 9.). The sole harm that Impossible Foods identifies in support of standing is that Impossible LLC is "wielding" the challenged "registrations" against it. (Opp. at 8.) But the only portions of the registrations that Impossible Foods challenges concern pants, shorts, yoga pants, tights, tank tops, sweatshirts, and underwear. (Dkt. 151, TAC ¶¶ 62, 66, 78, 93.) Impossible LLC is not "wielding" those aspects of the registrations because it has never alleged that Impossible Foods has sold infringing tank tops (*see* Dkt. 241), and the other goods have been deleted from Registration Nos. 5620625, 5603025, and 5590801. (Dkt. 151 ¶ 76; Dkt 262-26 at 10; Dkt 263-00 at 10; Dkt. 263-01 at 10.) Nor does Impossible Foods claim to have sold any of these items. The cancellation claims concerning these goods are therefore not related to Impossible LLC's infringement claims.

Because the sole harm that Impossible Foods identifies – defending Impossible LLC's infringement suit – undisputedly has nothing to do with the goods at issue in its cancellation claim, it cannot demonstrate an injury "fairly traceable" to the challenged portions of the registrations as Article III requires. *Already,* 568 U.S. at 90. As one Court of Appeals has explained in a case Impossible Foods fails to distinguish, nit-picking supposed flaws in an opponent's trademark

registrations that are immaterial to the parties' actual dispute cannot establish standing because "[plaintiff] would have faced an essentially identical counterclaim even if [defendant] had never [allegedly] obtained a trademark registration by fraud, so any injury based on litigating counterclaims is not 'fairly traceable' to that fraud." *E. Iowa Plastics, Inc. v. PI, Inc.*, 832 F.3d 899, 905 (8th Cir. 2016). Even if Impossible LLC had never submitted the challenged portions of its trademark applications, Impossible Foods would still face an identical counterclaim based on its infringing use of the IMPOSSIBLE mark on the remaining goods, including T-shirts. Impossible Foods is not the trademark police, and it lacks constitutional standing to rove the register in search of supposed errors that are not germane to any case or controversy before the Court.

**B. Impossible Foods Lacks Statutory Standing**

The same undisputed facts demonstrate the lack of statutory standing under the Lanham Act. Impossible Foods relies on *Star-Kist Foods, Inc. v. P.J. Rhodes & Co.,* 735 F.2d 346 (9th Cir. 1984), but *Star-Kist* is likely not good law following the Supreme Court's 2014 decision on standing in *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014). *See Chemeon Surface Tech. LLC v. Metalast Int'l, Inc.*, No. 21-15561, 2022 WL 1797316, at *2 n. 5 (9th Cir. June 2, 2022) ("the Supreme Court's decision in *Lexmark* […] arguably provides the proper basis for analyzing [a] trademark cancellation claim").

Under *Lexmark*, a plaintiff asserting claims under the Lanham Act must demonstrate that its claims "fall within the zone of interests protected by the law invoked," which are enumerated in the Lanham Act's "unusual, and extraordinarily helpful, detailed statement of the statute's purposes" set forth in 15 U.S.C. § 1127. *Lexmark*, 572 U.S. 118 at 129 (cleaned up). As the district court held on remand in *Chemeon*, the only "relevant function" of the Lanham Act arguably implicated by a claim for cancellation based on fraud is to "protect persons engaged in [] commerce against unfair competition." *Chemeon Surface Tech., LLC v. Metalast Int'l, Inc.*, No. 3:15-CV-00294-CLB, 2023 WL 1765704, at *5 (D. Nev. Feb. 3, 2023), *aff'd*, No. 23-15291, 2024 WL 1904538 (9th Cir. May 1, 2024). To fall within this "zone of interest created by Congress to protect against unfair competition[,]" a plaintiff "must 'allege an injury to a commercial interest in reputation or sales.'" *Id*. (quoting *Lexmark*, 572 U.S. at 131). Here, Impossible Foods clearly cannot show an "injury to a

commercial interest in reputation or sales" of pants, shorts, yoga pants, tights, tank tops, sweatshirts, or underwear because it does not claim ever to have sold these products. *See* Section II.A, *supra*. As a result, Impossible Foods lacks standing to bring a cancellation claim challenging the inclusion of these products in Impossible LLC's trademark registrations under *Lexmark*. *See Chemeon,* 2023 WL 1765704, at *5 (dismissing cancellation claim for failure to identify "injuries to a commercial interest in reputation or lost present and future sales" from alleged fraud).

The result would be no different under *Star-Kist*. As Impossible Foods concedes, *Star-Kist* requires that it show it has "real interest" in the alleged error in the registration and is more than an "intermeddler." *Star-Kist*, 735 F.2d at 348. But, for the reasons explained above, Impossible Foods does not have any interest in the inclusion of certain articles in Impossible LLC's registrations because Impossible Foods does not claim to sell these products nor plan to do so. Impossible Foods is a pure intermeddler with respect to these products and lacks standing to challenge their inclusion in Impossible LLC's registrations. Its cases are readily distinguishable because they involved challenges to goods that were present in the registrations and actually at issue in the case. (Opp. at 8.) As a result, Impossible Foods lacks constitutional or statutory standing under any standard.

### C. Impossible Foods' Fraud Claim is Moot as to 3 of 4 Registrations

Impossible Foods' fraud claim is also moot as to three of the four registrations at issue. Impossible Foods does not dispute that apparel items it challenges have been permanently deleted from Registration Nos. 5620625 (IMPOSSIBLE®), 5603025 (IMPOSSIBLE FITNESS®), and 5590801 (IMPOSSIBLE FITNESS® design). Under these circumstances, there is no "case or controversy" for the Court to adjudicate regarding these registrations for the same reasons articulated by the Supreme Court in *Already*, 568 U.S. 85. Impossible Foods attempts to distinguish *Already* by asserting that it involved claims for trademark infringement, Opp. at 9, but the claim that was deemed moot in *Already* was a claim for cancellation of a trademark registration under 15 U.S.C. § 1119, the very same provision Impossible Foods invokes here. The Supreme Court held that plaintiff's covenant not to assert infringement claims rendered defendant's cancellation claim under Section 1119 moot because plaintiff "'could not reasonably be expected' to resume its enforcement efforts against [defendant]" in reliance on the challenged registration and, thus, "the

challenged conduct cannot reasonably be expected to recur." *Already,* 568 U.S. at 92-95.

Here, it is equally clear that the challenged conduct – the inclusion of disputed apparel items in the description of goods in Impossible LLC's trademark registrations – has ceased and cannot reasonably be expected to recur. The deletion of goods from a trademark registration is permanent and irrevocable as a matter of law because amendments are only permitted if they restrict or delete goods and can never be used to add new goods. *See* USPTO Trademark Manual of Examining Procedure (TMEP) § 1609.03 ("goods/services […] may not be added to a registration by amendment"); 37 C.F.R. §2.173(e) ("No amendment in the identification of goods or services […] in a registration will be permitted except to restrict the identification[.]"). Thus, Impossible LLC's amendment of its registrations to remove the disputed goods means that it is legally impossible for these registrations ever again to include the deleted items. That is equivalent to the covenant in *Already* in that it permanently limits the scope of the registration. Moreover, Impossible Foods does not claim that the pre-amendment registrations caused any harm for which damages could be awarded. (*See* Opp. at 9 (disclaiming damages under 15 U.S.C. § 1120.) Absent any threat of future injury or past damages, the cancellation claim is moot as to these registrations.

Impossible Foods' cases are inapposite because they do not discuss mootness in relation to Article III jurisdiction, nor do they grapple with *Already*. (Opp. at 9.) The TTAB precedent on which Impossible Foods relies is inapposite on this point because Article III's "'case' and 'controversy' restrictions do not apply to matters before an administrative agency, such as the TTAB." *Bank v. Al Johnson's Swedish Rest. & Butik, Inc.*, 795 F. App'x 822, 823 (Fed. Cir. 2019) (cleaned up). To the extent any of these cases could be construed as holding that a plaintiff can seek cancellation of a trademark registration in federal court *even after* the registration has been amended to delete the allegedly offending description of goods, they would be inconsistent with *Already*'s holding that "an 'actual controversy' must exist not only 'at the time the complaint is filed,' but through 'all stages' of the litigation." *Already*, 568 U.S. at 90-91.

**D. No Relief Can Be Awarded With Respect to the Undisputed Classes of Goods**

At minimum, the Court should grant partial summary judgment that no relief can be awarded with respect to the classes of goods and services in which Impossible Foods has not

alleged fraud. Impossible Foods has never alleged fraud with respect to any of the goods in International Classes 5, 35, and 41 in Registration No. 5620625, nor with respect to the goods in International Class 41 in Registration No. 6571603. Its Opposition does not make any argument nor cite any evidence that fraud has occurred in any of these classes. As a result, it is undisputed that these classes are valid and have been so from their inception.

Impossible Foods argues that the Court should keep these undisputedly valid classes in the case and subject to cancellation, but its arguments lack merit. First, Impossible Foods cites *Medinol Ltd. v. Neuro Vasx, Inc.*, 67 U.S.P.Q.2d 1205, 1208 (T.T.A.B. 2003), for the proposition that fraud invalidates "the entire resulting registration." (Opp. at 10.) But *Medinol* involved a single-class registration and was distinguished on this ground in the TTAB's later precedential decision in *G&W Lab'ys, Inc. v. G W Pharma Ltd.*, 89 U.S.P.Q.2d 1571, 1573 (T.T.A.B. 2009). As *G&W* makes clear, when the challenged registration involves multiple classes, "each class of goods or services in a multiple class registration *must* be considered separately when reviewing the issue of fraud." *Id*. (emphasis added). Impossible Foods argues that this rule is inapplicable because Mr. Runyon submitted one application and statement of use covering all classes (Opp. at 11), but the TTAB squarely rejected this argument in *G&W,* holding that regardless of whether the classes are submitted as part of the same application, they "can be viewed as a series of applications for registration of a mark in connection with goods or services in each class" and "the filer of such an application is in the same position it would be had it filed several single-class applications instead." *Id*. at 1573. *G&W* is directly on point and forecloses Impossible Foods' argument that alleged fraud in a single class invalidates an entire multi-class registration.

Second, Impossible Foods argues that *G&W* does not "preclude" cancelling the admittedly valid classes of Impossible LLC's registrations based on alleged fraud in different classes. But *G&W* ***does*** preclude such relief: *G&W* dismissed a similar cancellation counterclaim as a matter of law, holding that allegations of fraud in one class "fail[ed] to state a claim" for cancellation of a different class in the same registration because each class "must be considered separately." *Id*. at 1572. Impossible Foods seeks to avoid this by suggesting a court may use its "equitable discretion" to grant broader cancellation remedies than those available at the TTAB, but that is also wrong

because district courts' cancellation powers are coextensive with those of the USPTO. *See Petroliam Nasional Berhad v. GoDaddy.com, Inc.*, 897 F. Supp. 2d 856, 869–70 (N.D. Cal. 2012) ("Federal courts may cancel registrations based on the same grounds that would be applied by the U.S. Patent and Trademark Office"). Because the USPTO does not recognize claims for cancellation of a multi-class registration based on alleged fraud in a single class, district courts do not either. *See SmileDirectClub, LLC v. Berkely,* No. SACV 18-1236, 2018 WL 8131096, at *6 (C.D. Cal. Oct. 26, 2018) (requiring plaintiff to allege fraud in every single class to state claim for cancellation of entire multi-class registration). Impossible Foods cites no authority to the contrary. Accordingly, if any portion of Impossible Foods' fraud claim survives, the Court should at minimum grant partial summary judgment that Classes 5, 35, and 41 in Registration No. 5620625 and Class 41 in Registration No. 6571603 are not subject to cancellation in this action.

**III. THERE IS NO TRIABLE ISSUE ON ABANDONMENT OF IMPOSSIBLE FITNESS**

Impossible Foods' abandonment claim fails with respect to the IMPOSSIBLE FITNESS® marks (Registration Nos. 5603025 & 5590801) because it cannot show that Impossible LLC "complete[ly]" ceased used of its marks with "intent not to resume" use. *Electro Source, LLC v. Brandess-Kalt-Aetna Grp., Inc.*, 458 F.3d 931, 935-38 (9th Cir. 2006). Impossible Foods concedes it has no evidence of intent to abandon, and instead relies on Impossible LLC's supposed nonuse for three years preceding its abandonment claim. (Opp. at 24.) Yet once again, that is incorrect.

As to IMPOSSIBLE FITNESS®, the evidence shows Impossible LLC has marketed apparel on the IMPOSSIBLE FITNESS® website. (Dkt. 262-04 at 144:5-145:9.) Impossible Foods asserts that this testimony was "false" (Opp. at 25), but its accusation is utterly unfounded: Impossible Foods cherry-picks a single page from the website demonstrating an exercise technique and omits the rest of the site, which uses the IMPOSSIBLE FITNESS® marks to market apparel. (Compare Dkt. 274-27 *with* Cashman Decl. Ex. 4 (same website on same date marketing shirts beneath IMPOSSIBLE FITNESS® marks).) Impossible Foods therefore fails to establish a genuine dispute regarding supposed abandonment of the IMPOSSIBLE FITNESS® registrations.

Impossible Foods' arguments on the animated mark (Reg. No. 6571603) seek to capitalize on the difficulty of capturing an animated mark in screenshots. (Opp. at 24.) Rather than belabor

these issues here, Impossible LLC will address them at trial. No such issues exist as to the IMPOSSIBLE FITNESS® marks, however, so summary judgment should be granted as to those.

## IV. THE COURT SHOULD SUMMARILY ADJUDICATE PRIORITY

The Court should summarily adjudicate that Impossible LLC is the senior user of IMPOSSIBLE-formative marks in connection with products where it undisputedly has priority, including products related to fitness, health, recipes, cookbooks, and nutrition advisory services. Impossible Foods speculates that Impossible LLC is somehow using this motion to tee up injunctive relief regarding other products. (Opp. at 18.) Not so. While Impossible Foods' focus on "leverage" certainly sheds light on its own strategy and conduct in this case, Impossible LLC simply seeks to streamline the issues for trial by summarily adjudicating that it has priority in connection with products and services where it is undisputedly the senior user.

### A. Undisputed Evidence Shows Prior Use of Particular IMPOSSIBLE Marks

Impossible Foods first argues that Impossible LLC does not "tie" its evidence of priority "to any particular mark." (Opp. at 19.) Not so. The evidence shows Impossible LLC has used the IMPOSSIBLE mark and IMPOSSIBLE-formative variations to market its goods and services related to fitness, health, recipes, cookbooks, and nutrition advisory services since 2012. *See* Dkt. 262-08 (IMPOSSIBLE mark on the Impossible TRI Guide and accompanying marketing materials in February 2012); Dkt. 262-07 (same use of IMPOSSIBLE mark in connection with Impossible Abs program in November 2012); Dkt. 262-13, Dkt. 262-14, Dkt. 262-15 (use of IMPOSSIBLE and IMPOSSIBLE X marks in connection with sale and marketing of diet and recipe apps beginning in 2015). As a result, there is no dispute that Impossible Foods was the first to use the IMPOSSIBLE mark and other IMPOSSIBLE-formative variations in connection with these goods.

### B. Impossible LLC Has Established Trademark Rights

Second, Impossible Foods attempts to limit the scope of goods and services in which Impossible LLC has established priority. (Opp. at 19-20). This argument fails because it ignores the unrebutted evidence that the Impossible TRI and Impossible Abs products launched in 2012 encompass recipes, fitness and nutrition guidance, and health information, covering each of the categories at issue. (Dkt. 262-08, Dkt. 262-10, Dkt. 263-09, Dkt. 263-10, Dkt. 263-11, Dkt. 263-12,

Dkt.263-08 at 22-23.) And Impossible Foods' claim that Mr. Runyon admitted Impossible LLC does not provide nutrition advisory services ignores the remainder of his testimony that Impossible LLC provides extensive "nutrition information" and "nutrition resources" to its customers. (Dkt. 178-02 (4/10/25 Runyon Dep.) at 62:2-63:14.) On this record, no jury could reasonably find that Impossible Foods, which did not publicly rebrand from "Maraxi" until 2016, is a senior user in connection with fitness, health, recipes, cookbooks, or nutrition advisory services.

**C. Impossible Foods' Challenges to Priority Lack Merit**

Impossible Foods next argues that Impossible LLC has not established priority in nutrition advisory services or recipes compared to Impossible Foods. (Opp. at 21-22.) But Impossible Foods concedes that "Impossible LLC has been continuously offering exercise programs [*i.e.*, the Impossible TRI and Impossible Abs products] and a physical fitness blog [*i.e.*, Impossible LLC's website] since before Impossible Foods adopted its IMPOSSIBLE marks." (Opp. at 21.) These concessions demonstrate priority because the 2012 Impossible TRI and Impossible Abs products encompass recipes, fitness and nutrition guidance, and health information, covering each of the categories at issue. (*See* Section IV.B, *supra*.) And Impossible Foods concedes that Impossible LLC's website offers "online recipes [available to be] downloaded from Impossible LLC's website" by consumers. (Opp. at 20.) Because Impossible Foods concedes Impossible LLC's use of the IMPOSSIBLE marks on each of these products is senior, summary adjudication is proper.

**D. Impossible Foods' Continuous Use Arguments Lack Merit**

As to continuous use, Impossible Foods is mistaken when it suggests that the "continuous use" standard requires comprehensive financial data. (Opp. at 23.) It simply requires a party to establish that "he or she used the mark," and "that such use has continued to the present." *Watec Co. v. Liu*, 403 F.3d 645, 654 (9th Cir. 2005). There is no dispute that Impossible LLC meets this standard; even Impossible Foods concedes that "Impossible LLC has been continuously offering" its Impossible TRI and Impossible Abs products "since before Impossible Foods adopted its IMPOSSIBLE marks." (Opp. at 21.) No triable issue of fact exists as to priority.

**<u>CONCLUSION</u>**

For the foregoing reasons, Impossible LLC's Motion should be granted.

Dated: September 12, 2025

Respectfully submitted,

BRAUNHAGEY & BORDEN LLP

By: */s/ Adam S. Cashman*
Adam S. Cashman

*Attorneys for Defendants / Counter-Plaintiffs Impossible LLC and Joel Runyon*