# EXHIBIT 1

| | |
|---|---|
| **From:** | Truelove, Jessica |
| **To:** | Kosak, Adrienne |
| **Cc:** | Kurtiak, Ryan; Flemming, Forrest; Brewster, Bill; Nelson, Bruce; Cincone, Gia; Register, Eric; Weslow, David; Mike Rodenbaugh; Meghan Gleeson |
| **Subject:** | Impossible Foods Inc. v. Impossible LLC // Amended Complaint |
| **Date:** | Wednesday, July 3, 2024 4:04:25 PM |
| **Attachments:** | image001.png<br>Impossible Foods 7.2024 Amended Complaint.pdf<br>image002.png<br>[Compare Report] Impossible Foods 7.2024 Amended Complaint.pdf |

**External Email**

Adrienne – I hope you're doing well. Attached is an amended complaint we plan to file with the Court in this action. Please let us know if you consent to us filing the same by Tuesday, July 9. For convenience, we've also attached a redline document comparing to the operative complaint.

Aside from consent to file the amended complaint, we draw your attention to the language highlighted in Paragraphs 4 and 35 regarding information derived from ILLC's recent discovery responses marked AEO. Please let us know if you have any concerns with us *not* filing the amended complaint under seal given this language. We will include the specific language from ILLC's discovery responses in the motion to amend, which we plan to file under seal.

Best,

Jessica

Jessica Truelove

JTruelove@ktslaw.com

Kilpatrick Townsend & Stockton LLP

1100 Peachtree Street NE | Suite 2800 | Atlanta, GA 30309-4528

**T** 404 815 6340 | **F** 404 541 3169

My Profile | vCard

'

Confidentiality Notice:
This communication constitutes an electronic communication within the meaning of the Electronic Communications Privacy Act, 18 U.S.C. Section 2510, and its disclosure is strictly limited to the recipient intended by the sender of this message. This transmission, and any attachments, may contain confidential attorney-client privileged information and attorney work product. If you are not the intended recipient, any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED. Please contact us immediately by return e-mail or at 404 815 6500, and destroy the original transmission and its attachments without reading or saving in any manner.

'

GIA CINCONE (SBN 141668)
KILPATRICK TOWNSEND & STOCKTON LLP
Two Embarcadero Center, Suite 1900
San Francisco, California 94111
Telephone: (415) 273-7546
Facsimile: (415) 723-7173
gcincone@ktslaw.com

WILLIAM H. BREWSTER (*pro hac vice*)
H. FORREST FLEMMING, III (*pro hac vice*)
JESSICA W. TRUELOVE (*pro hac vice)*
1100 Peachtree Street NE
Atlanta, Georgia 30309
Telephone: (404) 815-6549
Facsimile: (404) 541-3139
bbrewster@ktslaw.com
fflemming@ktslaw.com
jtruelove@ktslaw.com

Attorneys for Plaintiff IMPOSSIBLE FOODS INC.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IMPOSSIBLE FOODS INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>IMPOSSIBLE LLC, a Texas limited liability company, and Joel Runyon,<br><br>Defendants. | Case No. 5:21-cv-02419-BLF (SVK)<br><br>**SECOND AMENDED COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Trial: November 2025<br><br>Judge: Hon. Beth Labson Freeman |

Plaintiff Impossible Foods Inc. ("Impossible Foods") brings this Second Amended Complaint against defendants Impossible LLC and Joel Runyon and alleges, on personal knowledge as to its own actions and on information and belief as to the actions of others, as follows:

## THE PARTIES

1. Plaintiff Impossible Foods is a Delaware corporation with its principal place of business at 400 Saginaw Drive, Redwood City, California. Impossible Foods develops and distributes plant-based substitutes for meat products.

2. Impossible LLC ("ILLC") is a Texas limited liability company with a principal place of business at 402 West Johanna St., Austin, Texas 78704. On January 1, 2021, ILLC merged with Impossible X LLC, an Illinois limited liability company with its principal place of business at 1231 Champion Forest Court, Wheaton, Illinois 60187 ("XLLC"). As a consequence of that merger, ILLC acquired, among other things, any trademark rights owned by XLLC, as well as any liabilities. ILLC, and its predecessors in interest, including XLLC, are collectively referred to as "Company Defendant."

3. On information and belief, ILLC is solely owned and operated by XLLC founder Joel Runyon, and has no other members, employees, or outside investors, and no manufacturing or production facilities. On information and belief, Mr. Runyon resides in Austin, Texas and maintains an address at 402 West Johanna St., Austin, Texas 78704. Joel Runyon and Company Defendant are collectively referred to as "Defendants."

4. ILLC states that its mission is to help consumers "push their limits and do something impossible." ILLC offers motivational blog and video content and information relating to exercise and fitness through its multiple websites, in addition to a small offering of apparel. ILLC also claims to offer search engine optimization ("SEO") services and marketing consulting in the field of social media. Impossible Foods recently learned that ILLC also offers sleep and energy powders and that, upon information and belief, ILLC will offer for sale additional edible products bearing IMPOSSIBLE branding.

5. Impossible Foods brings this action to protect its valuable and well-known IMPOSSIBLE marks against threats and overt opposition by Defendants. Impossible Foods currently owns federally-registered trademark rights in numerous IMPOSSIBLE-formative marks, including:

| MARK | REG. NO. | DATE OF FIRST USE | FILING DATE/ REG. DATE | GOODS AND SERVICES |
|---|---|---|---|---|
| IMPOSSIBLE | 5459255 | Oct 29, 2015 | Oct 25, 2013 / May 1, 2018 | Substitutes for foods made from animals or animal products, namely, vegetable-based burger patties; meat substitutes |
| IMPOSSIBLE™ | 7179385 | Oct 29, 2015 | Apr 19, 2022 / Oct 3, 2023 | Meat substitutes; plant-based meat substitutes; plant-based meat patties; vegan and vegetarian meat substitutes; plant-based chicken substitutes; poultry substitutes; plant-based poultry substitutes |
| IMPOSSIBLE | 98042164 | Oct 29, 2015 | Jun 14, 2023 / May 28, 2024 | Meat substitutes; plant-based meat substitutes; vegan and vegetarian meat substitutes; plant-based meat patties; plant-based ground meat; chicken substitutes; poultry substitutes; pork substitutes; plant-based meatballs; plant-based sausage; prepared meals consisting primarily of plant-based meat; frozen meals consisting primarily of plant-based meat |
| IMPOSSIBLE BURGER | 6211591 | July 2016 | May 16, 2018 / Dec. 1, 2020 | Substitutes for food, namely, plant-based meat substitutes |
| IMPOSSIBLE | 7249916 | Oct 12, 2016 | May 13, 2021 / Dec. 19, 2023 | Restaurant services; café services, cafeterias, snack bar services, and the provision of food in restaurants and cafes; catering services for meals |

| MARK | REG. NO. | DATE OF FIRST USE | FILING DATE/ REG. DATE | GOODS AND SERVICES |
|---|---|---|---|---|
| IMPOSSIBLE | 5370337 | Nov 3, 2016 | May 20, 2014 / Jan 2, 2018 | Providing food and drink via mobile truck; catering services |

True and correct copies of Impossible Foods's Certificates of Registration for its IMPOSSIBLE-formative marks are attached collectively as Exhibit A. The registrations in the foregoing table are collectively referred to as "Plaintiff's Registrations," and the marks underlying those registrations are collectively referred to as "Plaintiff's Marks."

6. Over almost a decade, Impossible Foods has invested millions of dollars in building and promoting its IMPOSSIBLE trademarks. Impossible Foods's IMPOSSIBLE-branded products are widely available at restaurants and grocery retailers across the United States.

7. Company Defendant nonetheless has (1) asserted that it has superior rights based on its purported use of an IMPOSSIBLE mark for, inter alia, search engine optimization and clothing; (2) accused Impossible Foods of trademark infringement; and (3) initiated a proceeding at the United States Patent and Trademark Office ("USPTO") opposing Impossible Foods's federal trademark application for the mark IMPOSSIBLE for: "Providing information about recipes, ingredients and cooking information; providing an online computer database to consumers featuring information about recipes, ingredients and cooking information."

8. Accordingly, Impossible Foods seeks a declaration that its use and registration of the trademark IMPOSSIBLE in connection with recipes, food ingredients, and cooking information do not, and will not, infringe upon, or otherwise violate any of Company Defendant's valid trademark rights.

9. Impossible Foods also asserts claims for trademark infringement and unfair competition under federal and state law against Defendants in connection with Defendants' use of the IMPOSSIBLE mark in connection with sleep and energy powders and other edible products — goods over which Impossible Foods enjoys priority in the mark IMPOSSIBLE.

## JURISDICTION AND VENUE

10. This court has subject matter jurisdiction over the claim for declaratory relief under 28 U.S.C. §§ 2201 and 2202 (the Declaratory Judgment Act) and 15 U.S.C. § 1051 et seq., as well as under 28 U.S.C. §§ 1331 and 1338, because Impossible Foods brings the action to determine a question of actual controversy between the parties arising under the trademark laws of the United States. This court also has subject matter jurisdiction over Impossible Foods's trademark infringement and unfair competition claims pursuant to 28 U.S.C. §§ 1338 and 1367.

11. Impossible Foods's claims for relief arise directly from Defendants' contacts with California, including its demands and threats made to Impossible Foods in California. (*See Impossible Inc. v. Impossible X LLC*, 80 F.4th 1079, 1087 (9th Cir. 2023).) Further, Company Defendant has challenged the right of Impossible Foods, a California-based company, to provide services under its IMPOSSIBLE trademark to California consumers and nationally.

12. This court also has personal jurisdiction over Defendants because, upon information and belief, Defendants have knowingly and purposefully marketed, distributed, offered for sale, and sold the Accused Products to persons within the State of California; Defendants regularly transact and conduct business within the State of California; and Defendants have otherwise made or established contacts within the State of California sufficient to permit the exercise of personal jurisdiction.

13. This court also has personal jurisdiction over Joel Runyon because Mr. Runyon: (a) is the sole member and sole employee of ILLC; (b) personally participated, authorized, and directed ILLC to market, distribute, offer for sale, and sell goods that infringe Impossible Foods's trademarks in connection with the Accused Products within the State of California; (c) regularly transacts and conducts business within the State of California; (d) purposefully availed himself of the laws of the State of California by personally participating, authorizing, and directing ILLC to market, distribute, offer for sale, and sell goods that infringe Impossible Foods's trademarks in connection with the Accused Products within the State of California; and (e) has otherwise made or established contacts with the State of California sufficient to permit the exercise of personal

jurisdiction. At all relevant times, Mr. Runyon personally was aware of, directed, and participated in the unlawful conduct of Company Defendant alleged in this pleading.

14. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this complaint occurred in this judicial district.

## INTRA-DISTRICT ASSIGNMENT

15. This is an Intellectual Property Action and thus may be assigned to a division of the Court on a district-wide basis.

## BACKGROUND

### The IMPOSSIBLE Brand

16. Impossible Foods is a pioneer in the field of plant-based substitutes for meat products. The company's aim is to give people the taste and nutritional benefits of meat without the negative health and environmental impacts associated with products from livestock.

17. Impossible Foods has enjoyed extraordinary commercial success in the United States. The company's signature products—the IMPOSSIBLE BURGER and other plant-based IMPOSSIBLE meat substitutes—are widely available in grocery stores across the United States, including Albertsons, Kroger, Safeway, Walmart, Target, Wegmans, Costco, and Trader Joe's. IMPOSSIBLE-branded products are sold at thousands of restaurants, including Burger King (Impossible Whopper), White Castle, Red Robin, Starbucks, Hard Rock Café, Cheesecake Factory, and Applebee's. Impossible Foods's products are also available at numerous independent, high-end restaurants.

18. Since its inception, Impossible Foods's IMPOSSIBLE mark has received considerable publicity. The mark has been featured in prominent national news coverage, including in The New York Times, The Los Angeles Times, The Wall Street Journal, the Chicago Tribune, San Jose Mercury News, San Francisco Chronicle, Bloomberg, Reuters, FORTUNE, Forbes, Time, and USA Today, as well as on CNN, MSNBC, NPR, Fox Business, and other cable networks.

19. Since at least as early as 2015, Impossible Foods has continuously used the mark

IMPOSSIBLE in connection with edible products.

20. Impossible Foods began using the IMPOSSIBLE mark with edible products prior to any trademark use by ILLC and XLLC for edible products.

21. Impossible Foods's IMPOSSIBLE marks are arbitrary and enjoy a high degree of commercial strength because Impossible Foods has used the marks regularly and continuously since October of 2015 for plant-based substitutes for meat products, restaurant services, recipes, ingredients, and cooking information, and other related goods and services.

22. As a result of the commercial success of Impossible Foods' products, the IMPOSSIBLE mark has become well-known, including in California—especially in connection with meat substitutes.

23. Impossible Foods intends to continue using its IMPOSSIBLE marks in connection with its goods and services, including those related to recipes, food ingredients, and cooking information.

**Company Defendant's Assertion of Purported Trademark Rights and an Infringement Claim Relating to Recipes, Food Ingredients, and Cooking Information**

24. More than five years after Impossible Foods commenced use of its IMPOSSIBLE marks, XLLC sent a demand letter to Impossible Foods. XLLC's letter accused Impossible Foods of "encroachment into spaces either occupied by or closely related to goods and services offered by [XLLC]," which it said "greatly increases the likelihood of confusion." XLLC also referenced, without providing details, "several apparent instances of actual confusion."

25. XLLC's letter demanded that Impossible Foods "cease all use of its confusingly similar IMPOSSIBLE designs (that is, uses without 'FOODS' in stylizations that mimic [XLLC's] marks) and limit the use of its IMPOSSIBLE mark to only use in association with plant-based food substitutes."

26. On November 25, 2020, XLLC filed a Notice of Opposition with the Trademark Trial and Appeal Board opposing Impossible Foods's trademark application for the mark IMPOSSIBLE (Serial No. 88/855875), which covers: "Providing information about recipes,

ingredients and cooking information; providing an online computer database to consumers featuring information about recipes, ingredients and cooking information." A true and correct copy of the disputed trademark application is attached as Exhibit B, and a true and correct copy of the Notice of Opposition filed by Impossible X is attached as Exhibit C.

27. In its Notice of Opposition, XLLC alleges without citing to any evidence that it "has used its IMPOSSIBLE Marks in association with nutrition, food, and cooking resources since 2010 including publication of guides to different foods, ingredients, diets, and recipes." *See* Exhibit C.

28. In its Notice of Opposition, XLLC alleges ownership of 10 trademark registrations and 1 pending application. None of the USPTO filings submitted in connection with those marks shows use in connection with food or cooking. *See* Exhibit C.

29. In its Notice of Opposition, XLLC also alleges:

- That Impossible Foods lacks "any constructive or actual right" in the IMPOSSIBLE trademark;
- That "[t]here is no issue of priority."; and
- That registration of Impossible Foods' IMPOSSIBLE trademark in connection with the applied-for services "would result in irreparable damage to Impossible X as consumers would be likely to consider the services offered under the registered mark as emanating from Impossible X, and purchase such services, resulting in a loss to Impossible X."

*See* Exhibit C.

30. To the extent Company Defendant used an IMPOSSIBLE mark in connection with recipes, food ingredients, or cooking information prior to 2016, that use was sporadic and de minimis, at best, and not the required bona fide use in commerce, and not trademark use. Notably, the three websites that appear to be the core of Company Defendant's web presence, <impossiblex.com>, <impossiblehq.com>, and <impossible.co>, did not offer any products or services related to recipes, food or cooking until 2017 at the earliest. Company Defendant therefore does not own protectable trademark rights in any IMPOSSIBLE-formative mark for recipes, food ingredients, or cooking information, and any use post-dates Impossible Foods's

trademark rights.

31. The goods and services that Impossible Foods has continuously provided under its IMPOSSIBLE marks since 2015 or earlier are not similar to any goods and services Company Defendant actually offered under its marks prior to 2016 and are not likely to create confusion among consumers.

32. The consuming public does not associate Company Defendant's IMPOSSIBLE-formative marks with recipes, food ingredients, or cooking information because Defendant has no history of providing such goods and services under IMPOSSIBLE-formative marks.

33. Because of the goods and services on which Company Defendant allegedly has made use, and the ways in which it allegedly has (and has not) made use, Company Defendant's IMPOSSIBLE-formative marks are conceptually and commercially weak.

**Defendants Are Infringing and Unfairly Competing With Impossible Foods's IMPOSSIBLE Marks**

34. Impossible Foods has been using its IMPOSSIBLE marks in connection with edible products since at least 2015 and has owned strong common law trademark rights in those marks since at least 2015. Impossible Foods also owns federal trademark registrations for its IMPOSSIBLE marks in connection with edible products and related goods and services.

35. Notwithstanding Impossible Foods's prior use and superior rights in the IMPOSSIBLE marks in connection with edible products, Defendants are using, at the direction of Mr. Runyon, IMPOSSIBLE-formative marks in connection with edible products such as sleep and energy powders, as shown below, and upon information and belief, intends to offer for sale additional edible products soon (the "Accused Products").


SLEEP
STRAWBERRY
Dietary Supplement


IMPOSSIBLE®
PUSH YOUR LIMITS
INGREDIENTS FOR SUCCESS


IMPOSSIBLE®
PUSH YOUR LIMITS
ENERGY
ENERGY DRINK MIX
200mg CAFFEINE
TROPICAL
PUNCH
FLAVOR
Dietary Supplement
21 (4g) Packets
IMPOSSIBLE®
PUSH YOUR LIMITS
ENERGY
ENERGY DRINK MIX
200mg CAFFEINE
SOUR
APPLE
FLAVOR
Dietary Supplement
21 (4g) Packets


ENERGY
IMPOSSIBLE




36. Defendants' use of IMPOSSIBLE-formative marks in connection with the Accused Products are similar to, and compete with, the edible products offered and sold by Impossible Foods.

37. On information and belief, Defendants knowingly, willfully, and intentionally adopted and used IMPOSSIBLE-formative marks in connection with the Accused Products, at the direction of Mr. Runyon, likely causing consumer confusion with Impossible Foods.

38. On information and belief, the Accused Products are marketed through overlapping channels, including social media, and offered through overlapping channels of trade, including online.

39. Defendants' use of IMPOSSIBLE-formative marks in connection with the Accused Products is not authorized by Impossible Foods and, on information and belief, is likely to cause consumers to mistakenly associate Defendants and the Accused Products with Impossible Foods.

40. On information and belief, Defendants' use of IMPOSSIBLE-formative marks in connection with the Accused Products is likely to cause consumers to believe, mistakenly, that Impossible Foods offered, authorized, or approved the Accused Products.

## FIRST CLAIM FOR RELIEF

**(Declaratory Relief)**

41. Impossible Foods realleges and incorporates by reference the allegations of the preceding paragraphs.

42. As a result of the actions and statements of ILLC, which include allegations of trademark infringement and challenges to Impossible Foods's commercial use and registration of its IMPOSSIBLE marks in connection with recipes, food ingredients, and cooking information, there is an actual controversy between Impossible Foods and ILLC as to the parties' rights and as to the legal relations associated with each party's use of IMPOSSIBLE-formative marks. An immediate, real, and substantial controversy exists between the parties, who have adverse legal interests.

43. Impossible Foods has used and intends to continue to use its IMPOSSIBLE marks in interstate commerce.

44. Company Defendant's position is that Impossible Foods has made use of IMPOSSIBLE-formative marks in a manner justifying ILLC and its predecessors to sue Impossible Foods immediately for trademark infringement and other legal violations.

45. Impossible Foods's use of its IMPOSSIBLE-formative marks in connection with recipes, food ingredients, and cooking information, does not infringe or dilute any of ILLC's valid

trademark rights and does not violate any federal or state trademark, trade name, or related law.

46. A judicial determination is necessary and appropriate at this time to resolve the foregoing issues, and for the parties to ascertain their respective rights and obligations as to the IMPOSSIBLE-formative marks at issue.

47. Impossible Foods does not engage in any activities that harm or threaten any lawful rights of ILLC and is entitled to a declaration to that effect in this action.

**SECOND CLAIM FOR RELIEF**

(Federal Trademark Infringement)

48. Impossible Foods realleges and incorporates by reference the allegations of the preceding paragraphs.

49. Impossible Foods is the record owner of Plaintiff's Registrations and has exclusive registered and common-law rights in Plaintiff's Marks.

50. Defendants' unauthorized use, at the direction of Mr. Runyon, of imitations of Plaintiff's Marks in connection with edible products such as sleep and energy powders is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendants' goods and services are offered by Impossible Foods, or are associated or connected with Impossible Foods, or have the sponsorship, endorsement, or approval of Impossible Foods.

51. Defendants' conduct, at the direction of Mr. Runyon, has caused—and unless enjoined by the Court, will continue to cause—a likelihood of confusion and deception among members of the trade and public, and injury to Impossible Foods's goodwill and reputation as symbolized by Plaintiff's Marks, for which Impossible Foods has no adequate remedy at law.

52. Defendants' conduct, at the direction of Mr. Runyon, demonstrates a willful intent to trade on the goodwill associated with Plaintiff's Marks to Impossible Foods's great and irreparable harm.

53. Impossible Foods is thus entitled to permanent injunctive relief and to recover Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, and 1117.

**THIRD CLAIM FOR RELIEF**

(Federal Unfair Competition)

54. Impossible Foods realleges and incorporates by reference the allegations of the preceding paragraphs.

55. Impossible Foods owns extensive and exclusive common-law rights in Plaintiff's Marks.

56. Defendants' unauthorized use, at the direction of Mr. Runyon, of imitations of Plaintiff's Marks in connection with edible products such as energy and sleep powders is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendants' goods and services are offered by Impossible Foods, or are associated or connected with Impossible Foods, or have the sponsorship, endorsement, or approval of Impossible Foods.

57. Defendants' conduct, at the direction of Mr. Runyon, has caused—and unless enjoined by the Court, will continue to cause—a likelihood of confusion and deception among members of the trade and public, and injury to Impossible Foods's goodwill and reputation as symbolized by Plaintiff's Marks, for which Impossible Foods has no adequate remedy at law.

58. Defendants' conduct, at the direction of Mr. Runyon, demonstrates a willful intent to trade on the goodwill associated with Plaintiff's Marks to Impossible Foods's great and irreparable harm.

59. Impossible Foods is thus entitled to permanent injunctive relief and to recover Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1125(a), 1116, and 1117.

**FOURTH CLAIM FOR RELIEF**

(California Common Law Unfair Competition)

60. Impossible Foods realleges and incorporates by reference the allegations of the preceding paragraphs.

61. Impossible Foods owns extensive and exclusive common-law rights in Plaintiff's Marks.

62. Defendants' unauthorized use, at the direction of Mr. Runyon, of imitations of

Plaintiff's Marks in connection with edible products such as energy and sleep powders is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendants' goods and services are offered by Impossible Foods, or are associated or connected with Impossible Foods, or have the sponsorship, endorsement, or approval of Impossible Foods.

63. Defendants' conduct, at the direction of Mr. Runyon, has caused—and unless enjoined by the Court, will continue to cause—a likelihood of confusion and deception among members of the trade and public, and injury to Impossible Foods's goodwill and reputation as symbolized by Plaintiff's Marks, for which Impossible Foods has no adequate remedy at law.

64. Defendants' conduct, at the direction of Mr. Runyon, demonstrates a willful intent to trade on the goodwill associated with Plaintiff's Marks to Impossible Foods's great and irreparable harm.

65. Impossible Foods is therefore entitled to injunctive relief and to recover actual damages, attorneys' fees, and punitive damages to the full extent provided for by the common law of the State of California.

## PRAYER FOR RELIEF

Impossible Foods prays for judgment as follows:

(a) That this Court declare that Impossible Foods's use and registration of its IMPOSSIBLE-formative marks with services relating to recipes, food ingredients, and cooking information do not infringe upon, dilute, or otherwise violate any valid right of ILLC under applicable federal or state law;

(b) That this Court declare that Impossible Foods is not liable to Company Defendant;

(c) That this Court order Defendants and their officers, affiliate companies, agents, servants, employees, successors, licensees, and assigns, and all others in concert and privity with them, be enjoined permanently from using any mark that is confusingly similar to any of Plaintiff's Marks in connection with edible products and other related goods and services, including sleep and energy powder;

(d) That Defendants be ordered to pay compensatory, punitive, and enhanced damages,

as well as Impossible Foods's attorneys' fees and costs, as demanded in the Claims set forth above;

(e) That Defendants be ordered to pay prejudgment interest on the foregoing relief;

(f) That this Court award Impossible Foods its reasonable attorneys' fees and costs under 15 U.S.C. § 1117(a); and

(g) That this Court grant such other and further relief as this Court may deem just and proper.

DATED: July ___, 2024

Respectfully submitted,

KILPATRICK TOWNSEND & STOCKTON LLP

By: /s/ *William H. Brewster*
WILLIAM H. BREWSTER
GIA L. CINCONE
H. FORREST FLEMMING, III
JESSICA W. TRUELOVE

Attorneys for Plaintiff

**DEMAND FOR JURY TRIAL**

Impossible Foods hereby demands trial by jury of all issues triable by a jury.

DATED: July __, 2024

Respectfully submitted,

KILPATRICK TOWNSEND & STOCKTON LLP

By: /s/ *William H. Brewster*
WILLIAM H. BREWSTER
GIA L. CINCONE
H. FORREST FLEMMING, III
JESSICA W. TRUELOVE

Attorneys for Plaintiff