# EXHIBIT NN

GIA CINCONE (SBN 141668)
KILPATRICK TOWNSEND & STOCKTON LLP
Two Embarcadero Center
Suite 1900
San Francisco, California 94111
Telephone: (415) 273-7546
Facsimile: (415) 723-7173
gcincone@ktslaw.com

R. CHARLES HENN JR. (*pro hac vice*)
H. FORREST FLEMMING, III (*pro hac vice*)
JESSICA W. TRUELOVE (*pro hac vice*)
1100 Peachtree Street NE
Suite 2800
Atlanta, Georgia 30309
Telephone: (404) 815-6572
Facsimile: (404) 541-3240
chenn@ktslaw.com
fflemming@ktslaw.com
jtruelove@ktslaw.com

Attorneys for Plaintiff/Counter-Defendant
IMPOSSIBLE FOODS INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| IMPOSSIBLE FOODS INC., a Delaware corporation,<br><br>Plaintiff/Counter-Defendant<br><br>v.<br><br>IMPOSSIBLE LLC, a Texas limited liability company, and JOEL RUNYON,<br><br>Defendants/Counter-Plaintiffs. | Case No. 5:21-cv-02419-BLF (SVK)<br><br>**IMPOSSIBLE FOODS INC.'S THIRD SUPPLEMENTAL OBJECTIONS AND RESPONSES TO IMPOSSIBLE LLC'S SECOND SET OF INTERROGATORIES**<br><br>Judge: Hon. Beth Labson Freeman |

PROPOUNDING PARTY:   Defendant/Counter-Plaintiff IMPOSSIBLE LLC

RESPONDING PARTY:   Plaintiff/Counter-Defendant IMPOSSIBLE FOODS

SET NO:   TWO

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff/Counter-Defendant Impossible Foods objects and responds to the "Second Set of Interrogatories" (the "Interrogatories") served by Defendant/Counter-Plaintiff Impossible LLC on Impossible Foods on September 19, 2024.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

Impossible Foods asserts the following objections with respect to each instruction, definition, and Interrogatory:

1. Impossible Foods objects to the definition of "Plaintiff, you, and your" because such definitions could be interpreted to seek information not within the possession, custody, or control of Impossible Foods, and the definition could include vague and undefined "affiliate[s]." Impossible Foods's responses and objections are made on behalf of Impossible Foods, and its searches will be limited to information within the possession, custody, or control of Impossible Foods.

2. Impossible Foods objects to the definition of "Plaintiff's Marks" because it includes 49 trademark registrations and applications, many of which are either not an IMPOSSIBLE-formative mark (e.g., U.S. Reg. No. 5,381,475) or otherwise are not relevant to any claim or defense in this action. Impossible Foods further objects to this definition because it imposes undue burden and expense on Impossible Foods by requiring it to respond to interrogatories concerning 49 registrations and applications.

3. Impossible Foods objects to the definition of "Defendant" as too narrow. Impossible Foods interprets "Defendant" to include Impossible LLC (f/k/a Impossible X LLC) and its agents, predecessors in interest, successors in interest, and any other person or entity acting on its behalf or subject to its control, including Joel Runyon and Impossible HQ.

4. Impossible Foods objects to the definition of "Defendant's Marks" because whether "Defendant" has "common law rights" in a purported "family of marks" is information that is not within Impossible Foods's possession, custody, or control. Impossible Foods will respond only with respect to the trademark registrations referenced in the definition.

5. Impossible Foods objects to, and will not comply with, Instruction ¶ 1 because it

imposes an undue burden on Impossible Foods and is disproportional to the needs of the case. Defendant has construed "Plaintiff's Marks" to include 49 trademark registrations and applications, many of which cover goods and services not relevant to any claim or defense asserted in this action, and requiring Impossible Foods to provide different answers for "different types of goods or services" within those 49 registrations and applications is disproportional to the needs of the case.

6.  Impossible Foods objects to, and will not comply with, Instruction ¶ 2 because it imposes an undue burden on Impossible Foods and is disproportional to the needs of the case. Defendant has construed "Plaintiff's Marks" to include 49 trademark registrations and applications, many of which cover goods and services not relevant to any claim or defense asserted in this action, and requiring Impossible Foods to provide different answers for "different types of use" of marks reflected in 49 registrations and applications is disproportional to the needs of the case.

7.  Impossible Foods objects to, and will not comply with, Instruction ¶ 3, because it imposes an undue burden on Impossible Foods and is disproportional to the needs of the case. Impossible Foods is unable to determine whether an answer "differs as between different persons"—an exceedingly vague phrase—nor would such differentiation be relevant to any claim or defense.

8.  Impossible Foods objects to, and will not comply with, Instruction ¶ 4, because it imposes an obligation beyond what is required by the Federal Rules, would impose an undue burden on Impossible Foods, and is disproportional to the needs of the case.

9.  Impossible Foods objects to, and will not comply with, Instruction ¶ 5, because it exceeds the requirements for a privilege log in this District. Impossible Foods will provide a privilege log, if required, that complies with the law in this District.

### RESPONSES AND OBJECTIONS TO INTERROGATORIES

**INTERROGATORY NO. 10**

Provide the complete basis for Plaintiff's allegation that its asserted trademarks are well known to consumers.

**RESPONSE:**

Impossible Foods objects to this Interrogatory on the ground that it calls for a legal conclusion. Impossible Foods further objects to this Interrogatory on the ground that it is premature as discovery is ongoing, and to the extent it calls for expert testimony. Impossible Foods also objects to this Interrogatory to the extent it seeks information protected from discovery by the attorney-client privilege and the work product doctrine.

In accordance with the foregoing objections, Impossible Foods has used its IMPOSSIBLE mark regularly and continuously since as early as 2015 in connection with edible products, and owns common law and federally registered trademark rights, including incontestable registrations, in numerous IMPOSSIBLE-formative marks. *See* Plaintiff's Second Amended Complaint ¶¶ 5, 34, 49, Ex. A. Moreover, it has become well-known in the United States because, *inter alia*, of the commercial success of Impossible Foods's products and the significant investment it has dedicated to building and promoting the brand. Impossible Foods's signature products—the IMPOSSIBLE BURGER and other plant-based meat substitutes—are widely available in stores across the United States, including Albertsons, Kroger, Safeway, Walmart, Target, Wegmans, Costco, and Trader Joe's; restaurants, including Burger King (Impossible Whopper), Red Robin, Starbucks, Hard Rock Cafe, Cheesecake Factory, and Applebee's; and online retailers, including Walmart.com, Target.com, Amazon.com, and social media pages.

Additionally, as a pioneer in the field of plant-based substitutes for meat products, Plaintiff's IMPOSSIBLE mark has been the subject of considerable unsolicited media coverage, including being featured in prominent national news publications such as *The New York Times*, *The Los Angeles Times*, *The Wall Street Journal*, *The Chicago Tribune*, *San Jose Mercury News*, *San Francisco Chronicle*, *Bloomberg*, *Reuters*, *FORTUNE*, *Forbes*, *Time*, *USA Today*, *Business Insider*, *WIRED*, *The Verge*, *Vogue*, *Delish*, *Eater*, *The Guardian*, *Vox*, *CNBC*, *The New Yorker*, *Engadget*, *MIT Technology Review*, *TechCrunch*, and *FastCompany* as well as on CNN, MSNBC, NPR, Fox Business, and other cable networks. Not only has Plaintiff's IMPOSSIBLE mark become well-known over the past decade because of the extraordinary commercial success and widespread unsolicited media attention, but Impossible Foods has also invested millions of dollars

in building and promoting its brand, and revenue of its edible products has exceeded millions of dollars annually in the United States for the past several years.

As a result of Impossible Foods's widespread, continuous, and substantially exclusive use of its IMPOSSIBLE mark in connection with edible products, the mark enjoys wide public acceptance and exclusive association with Impossible Foods and has been recognized widely and favorably by the public in the United States as an indicator of the source of Impossible Foods's edible products.

**INTERROGATORY NO. 11**

Identify all channels of trade in which Plaintiff's and Defendant's uses of IMPOSSIBLE on products and services have overlapped.

**RESPONSE:**

Impossible Foods objects to this Interrogatory on the ground that it is overbroad and does not describe the information sought with reasonable particularity. Instead, the Interrogatory simply lists a broad topic and demands "all" information for the broad topic. Impossible Foods also objects to this Interrogatory on the ground that it calls for a legal conclusion. Impossible Foods further objects to this Interrogatory on the ground that it is premature as discovery is ongoing and Impossible Foods may become aware of additional overlapping channels of trade through documents or information currently in Defendants' possession, custody, and control. Impossible Foods also objects to this Interrogatory on the ground that it is premature to the extent it calls for expert testimony. Impossible Foods further objects to this Interrogatory to the extent it seeks information protected from discovery by the attorney-client privilege and the work product doctrine. Impossible Foods also objects to this Interrogatory because it seeks information in the public domain and equally available to Defendants or their counsel and/or already within Defendants' or their counsel's knowledge, possession, custody, or control.

In accordance with these objections, Impossible Foods offers, promotes, advertises, or sells its edible products in connection with its IMPOSSIBLE mark through various channels, such as in stores across the United States, including Albertsons, Kroger, Safeway, Walmart, Target, Wegmans, Costco, and Trader Joe's; restaurants, including Burger King (Impossible Whopper),

Red Robin, Starbucks, Hard Rock Cafe, Cheesecake Factory, and Applebee's; and online retailers, including Walmart.com, Target.com, Amazon.com, and social media pages.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 11:**

In accordance with the foregoing objections, the channels that Impossible Foods offers, promotes, advertises, or sells its edible products in connection with its IMPOSSIBLE mark as identified above overlap with channels that Defendants offer, promote, advertise, or sell their edible products in connection with their IMPOSSIBLE-formative marks, including grocery stores such as Jubilee Grocery, online retailers such as Walmart.com and Amazon.com, and social media platforms. See Defendants' Resp. to Interr. No. 14 ("The main outlets through which Impossible's goods and services are promoted and sold are Impossible's own websites, social media (including Facebook, Instagram, Twitter, and TikTok), and Amazon.com.").

**INTERROGATORY NO. 12**

Provide the complete bases for Plaintiff's allegations that Defendant's use of IMPOSSIBLE-formative marks is likely to cause confusion with senior trademark rights owned by Plaintiff.

**RESPONSE:**

Impossible Foods objects to this Interrogatory on the ground that it calls for a legal conclusion. Impossible Foods further objects to this Interrogatory on the ground that it is premature as discovery is ongoing, and to the extent it calls for expert testimony. Impossible Foods also objects to this Interrogatory on the ground that it seeks information protected from discovery by the attorney-client privilege and the work product doctrine. Impossible Foods further objects to this Interrogatory on the ground that "senior trademark rights" is vague and ambiguous. Impossible Foods understands "senior trademark rights" to mean Impossible Foods's trademark rights established prior to Defendants' trademark rights. Impossible Foods also objects to this Interrogatory because it seeks information in the public domain and equally available to Defendants or their counsel and/or already within Defendants' or their counsel's knowledge, possession, custody, or control.

In accordance with these objections, Defendants' use of IMPOSSIBLE-formative marks in

connection with sleep and energy powders and other edible products is likely to cause confusion with Impossible Foods's use of Plaintiff's Marks with edible products when analyzed under the *Sleekcraft* factors. *See AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979).

Impossible Foods owns common law and federally registered trademark rights, including incontestable registrations, in numerous IMPOSSIBLE-formative marks. *See* Plaintiff's Second Amended Complaint ¶¶ 5, 34, 49, Ex. A. Impossible Foods has used its Marks with edible products regularly and continuously since as early as 2015, before any trademark use by Defendants for edible products.

Defendants' use of IMPOSSIBLE-formative marks with edible products, including sleep and energy powders, is likely to cause confusion with Impossible Foods's use of Plaintiff's Marks with edible products because Plaintiff's Marks are strong and both parties advertise and sell edible products with IMPOSSIBLE-formative marks through overlapping channels.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 12:**

Impossible Foods supplements its prior response as follows: Defendants' use of IMPOSSIBLE-formative marks in connection with sleep and energy powders and other edible products ("Accused Products") is likely to cause confusion with Impossible Foods's use of Plaintiff's Marks with edible products when analyzed under the *Sleekcraft* factors. *See AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979). Impossible Foods owns common law and federally registered trademark rights, including incontestable registrations, in numerous IMPOSSIBLE-formative marks. *See* Plaintiff's Second Amended Complaint ¶¶ 5, 34, 49, Ex. A. Impossible Foods has used its Marks with edible products regularly and continuously since as early as 2015, before any trademark use of "Impossible" by Defendants for edible products.

Plaintiff's Marks are arbitrary and enjoy a high degree of commercial strength. Impossible Foods has used Plaintiff's Marks over the past decade with edible products, Plaintiff's Marks are well-known due to substantial advertising and promotion of Plaintiff's Marks by Impossible Foods, the commercial success as measured by the volume of sales of IMPOSSIBLE-branded products, and widespread unsolicited media attention.

Defendants' use of and planned use of IMPOSSIBLE-formative marks with the Accused

Products is likely to cause confusion with Impossible Foods's use of Plaintiff's Marks with edible products because Impossible Foods's edible products and Defendants' Accused Products are closely related; Defendants' use of IMPOSSIBLE-formative marks with the Accused Products is similar in overall commercial impression to Impossible Foods's use of Plaintiff's Marks with edible products; and the channels through which Impossible Foods advertises and sells its edible products overlap with the channels that Defendants advertise and sell or plan to advertise and sell the Accused Products.

**INTERROGATORY NO. 13**

Describe each act or omission by Defendant or Joel Runyon that Plaintiff contends demonstrates willful infringement.

**RESPONSE:**

Impossible Foods objects to this Interrogatory on the ground that it calls for a legal conclusion. Impossible Foods further objects to this Interrogatory on the ground that it is premature as discovery is ongoing and Impossible Foods may become aware of additional acts or omissions through documents or information currently in Defendants' possession, custody, and control. Impossible Foods also objects to this Interrogatory on the ground that it is premature as it calls for expert testimony. Impossible Foods further objects to this Interrogatory on the ground that it seeks information protected from discovery by the attorney-client privilege and the work product doctrine. Impossible Foods also objects to this Interrogatory because it seeks information in the public domain and equally available to Defendants or their counsel and/or already within Defendants' or their counsel's knowledge, possession, custody, or control.

In accordance with these objections, Impossible Foods states that Defendants, including Mr. Runyon, acted affirmatively or by way of omission in ways that demonstrate willful infringement of Plaintiff's Marks. For example, Defendants knew of Plaintiff and Plaintiff's Marks, including Impossible Foods's prior use of its Marks with edible products, during the parties' dispute, including the opposition Defendant Impossible LLC initiated with the United States Patent and Trademark Office in November 2020. Notwithstanding this history and knowledge, Defendants are using IMPOSSIBLE-formative marks with edible products and intend

to offer additional edible products in a manner that encroaches on Impossible Foods's superior rights.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 13**

In accordance with the foregoing objections, Impossible Foods states that Defendants, including Mr. Runyon, acted affirmatively or by way of omission in ways that demonstrate willful infringement of Plaintiff's Marks. For example, Defendants had actual knowledge of Plaintiff, Plaintiff's Marks, and Plaintiff's use of its Marks with edible products, including edible protein products, at least as early as November 2017 (*see, e.g.*, Bates No. IMP000001166). Defendants further demonstrated knowledge of Plaintiff's prior use of its Marks with edible products through the opposition initiated by Defendants with the United States Patent and Trademark Office ("USPTO") in November 2020. Notwithstanding this history and prior knowledge, Defendants sought to use IMPOSSIBLE-formative marks with edible products, including sleep and energy powders, between April and July 2021 (*see, e.g.*, Bates Nos. IMP00051282, IMP00049571) in a manner that encroaches on Plaintiff's superior rights, after this present litigation began and well after Defendants first learned of Plaintiff's business and prior use of its Marks with edible products.

In July 2021—four years after showing its familiarity with Plaintiff's prior use of its Marks in connection with edible protein products, eight months after filing its opposition with the USPTO, and three months after this litigation began—Defendants sought to encroach into the edible products space by developing plans to start using IMPOSSIBLE-formative marks with edible whey protein powder (*see, e.g.*, Bates No. IMP00039930). In April 2022—a year after this litigation commenced—Defendants began offering for sale the first of their edible products, Impossible Sleep (*see, e.g.*, Bates No. IMP00004817).

**INTERROGATORY NO. 14**

Provide a computation of each category of damages claimed by Plaintiff in this action.

**RESPONSE:**

Impossible Foods objects to this Interrogatory on the ground that it is premature as discovery is ongoing and Impossible Foods may become aware of additional relevant documents

CONTAINS HIGHLY CONFIDENTIAL INFORMATION

or information currently in Defendants' possession, custody, and control. Impossible Foods further objects to this Interrogatory on the ground that it is premature as it calls for expert testimony. Impossible Foods also objects to this Interrogatory on the ground that it seeks information protected from discovery by the attorney-client privilege and the work product doctrine.

In accordance with these objections, Impossible Foods states that it currently seeks recovery of compensatory, punitive, and enhanced damages, costs, and attorneys' fees. Impossible Foods will supplement its disclosures with more precise computations when appropriate under Rule 26(e) and after Defendants have produced relevant documents.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 14:**

Impossible Foods supplements its prior response as follows: Impossible Foods currently seeks permanent injunctive relief, Defendants' profits, damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, 1117, 1125(a), and to the full extent provided for by the common law of the State of California. The calculations of these awards cannot be made at this time because much of the information and many of the documents necessary to calculate them is within the possession, custody, or control of Defendants and have not yet been provided in discovery. Moreover, Impossible Foods intends to rely on expert testimony with regard to the calculation of its monetary awards, and expert reports are not yet due under the Scheduling Order. At this time, therefore, Impossible Foods notes that it seeks an accounting and disgorgement of all profits Defendants received from the sales of the Accused Products; Impossible Foods also seeks damages as measured by a reasonable royalty, lost profits, and corrective advertising; and Impossible Foods seeks punitive damages in an amount to be awarded by and in the discretion of the jury. Impossible Foods will supplement its disclosures with more precise computations when appropriate under Rule 26(e) after Defendants have produced relevant documents, and when expert disclosures are due.

CONTAINS HIGHLY CONFIDENTIAL INFORMATION

DATED:  March 5, 2025          By:    /s/ H. Forrest Flemming
                                      R. Charles Henn Jr. (*pro hac vice*)
                                      H. Forrest Flemming III (*pro hac vice*)
                                      Jessica W. Truelove (*pro hac vice*)
                                      KILPATRICK TOWNSEND & STOCKTON
                                      1100 Peachtree Street NE, Suite 2800
                                      Atlanta, Georgia 30309
                                      Telephone: (404) 815-6572
                                      Facsimile: (404) 541-3240
                                      Email: chenn@ktslaw.com
                                             fflemming@ktslaw.com
                                             jtruelove@ktslaw.com

                                      Gia Cincone (SBN 141668)
                                      Two Embarcadero Center, Suite 1900
                                      San Francisco, California 94111
                                      Telephone: (415) 273-7546
                                      Facsimile: (415) 723-7173
                                      Email: gcincone@ktslaw.com

                                      *Attorneys for Plaintiff/Counter-Defendant*
                                      IMPOSSIBLE FOODS INC.

# CERTIFICATE OF SERVICE

I hereby certify that on March 5, 2025, a true and correct copy of IMPOSSIBLE FOODS INC.'S THIRD SUPPLEMENTAL OBJECTIONS AND RESPONSES TO IMPOSSIBLE LLC'S SECOND SET OF INTERROGATORIES was served via electronic mail on counsel for Defendants Impossible LLC and Joel Runyon, addressed as follows:

J. Noah Hagey
Adam S. Cashman
Gregory D. Washington
BRAUNHAGEY & BORDEN LLP
747 Front Street, 4th Floor
San Francisco, CA 94111
hagey@braunhagey.com
cashman@braunhagey.com
gwashington@braunhagey.com
TeamImpossibleBHB@braunhagey.com

Faith Barksdale
BRAUNHAGEY & BORDEN LLP
118 W 22nd Street, 12th Floor
New York, NY 10011
barksdale@braunhagey.com

David E. Weslow
Adrienne J. Kosak
WILEY REIN LLP
2050 M Street NW
Washington, DC 20036
dweslow@wiley.law
akosak@wiley.law

/s/ H. Forrest Flemming
H. Forrest Flemming, III

GIA CINCONE (SBN 141668)
KILPATRICK TOWNSEND & STOCKTON LLP
Two Embarcadero Center
Suite 1900
San Francisco, California 94111
Telephone: (415) 273-7546
Facsimile: (415) 723-7173
gcincone@ktslaw.com

R. CHARLES HENN JR. (*pro hac vice*)
H. FORREST FLEMMING, III (*pro hac vice*)
JESSICA W. TRUELOVE (*pro hac vice*)
1100 Peachtree Street NE
Suite 2800
Atlanta, Georgia 30309
Telephone: (404) 815-6572
Facsimile: (404) 541-3240
chenn@ktslaw.com
fflemming@ktslaw.com
jtruelove@ktslaw.com

Attorneys for Plaintiff/Counter-Defendant
IMPOSSIBLE FOODS INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| IMPOSSIBLE FOODS INC., a Delaware corporation,<br><br>Plaintiff/Counter-Defendant<br><br>v.<br><br>IMPOSSIBLE LLC, a Texas limited liability company, and JOEL RUNYON,<br><br>Defendants/Counter-Plaintiffs. | Case No. 5:21-cv-02419-BLF (SVK) |

## **VERIFICATION**

I, Caitlyn Hatman, am duly authorized to verify the interrogatory responses contained in the foregoing **IMPOSSIBLE FOODS INC.'S THIRD SUPPLEMENTAL OBJECTIONS AND RESPONSES TO IMPOSSIBLE LLC'S SECOND SET OF INTERROGATORIES** on behalf of Plaintiff Impossible Foods Inc. ("Impossible Foods"). I have read the foregoing

1

responses, which were prepared with the assistance and advice of others. The responses are limited by the records and information maintained by Impossible Foods to the extent these records and information have thus far been discovered after a reasonable search in the course of preparing responses to the interrogatories. Subject to these limitations, the responses are true to the best of my knowledge, information, and belief.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed this __28th__ day of March, 2025.

By: __/s/ Caitlyn Hatmam__
Caitlyn Hatman
Director of Marketing
Impossible Foods Inc.