KOLLIN J. ZIMMERMANN (SBN 273092)
KILPATRICK TOWNSEND & STOCKTON LLP
1801 Century Park East
Suite 2300
Los Angeles, California 90067
Telephone: (310) 777-3755
Facsimile: (310) 362-8756
kzimmermann@ktslaw.com

R. CHARLES HENN JR. (*pro hac vice*)
H. FORREST FLEMMING, III (*pro hac vice*)
ERICA CHANIN (*pro hac vice*)
1100 Peachtree Street NE
Atlanta, Georgia 30309
Telephone: (404) 815-6572
Facsimile: (404) 541-3240
chenn@ktslaw.com
fflemming@ktslaw.com
echanin@ktslaw.com

Attorneys for Plaintiff/Counter-Defendant
IMPOSSIBLE FOODS INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

IMPOSSIBLE FOODS INC., a Delaware corporation,

Plaintiff/Counter-Defendant,

v.

IMPOSSIBLE LLC, a Texas limited liability company, and JOEL RUNYON,

Defendants/Counter-Plaintiffs.

Case No. 5:21-cv-02419-BLF (SVK)

**PLAINTIFF/COUNTER-DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**

**FILED UNDER SEAL**

| | |
|---|---|
| Judge: | Hon. Beth Labson Freeman |
| Date: | October 23, 2025 |
| Time: | 9:00 a.m. |

# TABLE OF CONTENTS

Page

**I.** INTRODUCTION ..... 1

**II.** ARGUMENT ..... 1

A. No Evidence Supports a Prospective Corrective Advertising Award ..... 1

1. Mr. Runyon's Rule 30(b)(6) Testimony Is Dispositive ..... 1

2. Mr. Runyon's Summary Judgment Declaration Is Immaterial ..... 3

3. "Confusion" Did Not Cause Harm to the Value of Any Mark ..... 4

4. Alleged Advertising Costs and Search Results Rankings Are Irrelevant ..... 6

5. No Evidence Shows That Confusion Caused a Decline in Business ..... 6

6. The "Family of Marks" Rule Is Only Relevant to Confusion, Not Damages ..... 8

7. Impossible LLC Fails to Show Causation ..... 8

B. Impossible LLC Cannot Recover Reputational or Punitive Damages ..... 12

C. Defendants' Challenged Defenses Fail As a Matter of Law ..... 14

1. Defendants' Laches Defense Fails on Both Elements ..... 14

2. Defendants' Estoppel, Acquiescence, Waiver, and Unclean Hands Defenses Fail As a Matter of Law ..... 15

**III.** CONCLUSION ..... 15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*adidas-Am., Inc. v. Payless Shoesource, Inc.*,
546 F. Supp. 2d 1029 (D. Or. 2008) .......... 15

*Am. Auto. Assoc. of N. Cal. v. Gen. Motors LLC*,
367 F. Supp. 3d 1072 (N.D. Cal. 2019) .......... 14

*Binder v. Disability Grp., Inc.*,
772 F. Supp. 2d 1172 (C.D. Cal. 2011) .......... 5

*City of Carlsbad v. Shah*,
850 F. Supp. 2d 1087 (S.D. Cal. 2012) .......... 14

*Dept. of Parks & Rec. v. Bazaar Del Mundo Inc.*,
448 F.3d 1118 (9th Cir. 2006) .......... 13

*Eat Right Foods Ltd. v. Whole Foods Mkt., Inc.*,
880 F.3d 1109 (9th Cir. 2018) .......... 15

*Int'l Oddities v. Record*,
No. CV 12-3934-CAS (VBKx), 2013 WL 3864050 (C.D. Cal. July 22, 2013) .......... 3

*Kurin, Inc. v. Magnolia Med. Techs., Inc.*,
473 F. Supp. 3d 1117 (S.D. Cal. 2020) .......... 7

*Lodestar Anstalt v. Bacardi & Co.*,
No. 2:16-cv-06411-CAS(FFMx), 2019 WL 8105378 (C.D. Cal. July 3, 2019) .......... 4

*Lutz v. Glendale Union High School*,
403 F.3d 1061 (9th Cir. 2005) .......... 1

*Mackie v. Rieser*,
296 F.3d 909 (9th Cir. 2002) .......... 11

*Marketquest Grp., Inc. v. BIC Corp.*,
316 F. Supp. 3d 1234 (S.D. Cal. 2018) .......... 7

*Marketquest Grp., Inc. v. BIC Corp.*,
No. 11-CV-618-BAS (JLB), 2018 WL 1756117 (S.D. Cal. Apr. 12, 2018) .......... 8

*Optimal Pets, Inc. v. Nutri-Vet, LLC*,
877 F. Supp. 2d 953 (C.D. Cal. 2012) .......... 13

*Pac. Shores Props., LLC v. City of Newport Beach*,
730 F.3d 1142 (9th Cir. 2013).......... 10, 12

*QS Wholesale, Inc. v. World Marketing., Inc.*
No. SA 12-CV-0451-DOC(RNBx), 2014 WL 12586120 (C.D. Cal. Jan. 7, 2014) .......... 13

*Quia Corp. v. Mattel, Inc.*,
No. C 10-1902 JF (HRL), 2011 WL 2749576 (N.D. Cal. July 14, 2011) .......... 4, 5

*Regal v. Cty. of Santa Clara*,
No. 5:22-cv-04321-BLF, 2025 WL 1547631 (N.D. Cal. May 31, 2025).......... 10

*Reno Air Racing Ass'n., Inc. v. McCord*,
452 F.3d 1126 (9th Cir. 2006).......... 15

*Ryoo Dental, Inc. v. Thomas D. Han DMD*,
No. SACV 15-308-JLS (RNBx), 2016 WL 6138413 (C.D. Cal. Apr. 25, 2016) .......... 7

*Skydive Ariz., Inc. v. Quattrocchi*,
673 F.3d 1105 (9th Cir. 2012).......... 12

*Snapp v. United Transp. Union*,
889 F.3d 1088 (9th Cir. 2018).......... 1, 4, 7

*Thrive Nat. Care, Inc. v. Thrive Causemetics, Inc.*,
No. CV 20-9091 PA (ASx), 2021 WL 4813257 (C.D. Cal. Oct. 6, 2021) .......... 6

*U-Haul Int'l, Inc. v. Jartran, Inc.*,
793 F.2d 1034 (9th Cir. 1986) .......... 6

*Unicorn Energy AG v. Tesla Inc.*,
740 F. Supp. 3d 930 (N.D. Cal. 2024) .......... 15

*Universal Nutrition Corp. v. Carbolite Foods, Inc.*,
325 F. Supp. 2d 526 (D.N.J. 2004) .......... 13

*Verisign, Inc. v. XYZ.COM LLC*,
848 F.3d 292 (4th Cir. 2017).......... 7

*Wags Hotels, Inc. v. Wag Labs, Inc.*,
No. 20-cv-01326-BLF, 2023 WL 3605977 (N.D. Cal. May 22, 2023) .......... passim

## I. INTRODUCTION

Impossible LLC does not dispute that its right to a jury evaporates if the Court grants summary judgment against it on the issues of corrective advertising and reputational and punitive damages. Because no evidence supports any of those theories, and because a jury trial when no right to a jury exists must be remanded on appeal for a bench trial anyway, *see Lutz v. Glendale Union High School*, 403 F.3d 1061, 1068-70 (9th Cir. 2005), the Court should grant Impossible Foods's motion for partial summary judgment. The Court should streamline trial further by granting Impossible Foods's motion as to the Defenses, which Defendants only half-heartedly discuss.

## II. ARGUMENT

### A. No Evidence Supports a Prospective Corrective Advertising Award

The parties agree that Impossible LLC must adduce "non-speculative evidence that goodwill and reputation—that is, the value of its mark" (1) "was damaged in some way" (2) by the infringement. *See Wag Hotels, Inc. v. Wag Labs, Inc.*, No. 20-cv-01326-BLF, 2023 WL 3605977, at *9 (N.D. Cal. May 22, 2023) (Freeman, J.); Dkt. No. 278-3 ("Opp.") at 10. Impossible LLC fails on both elements.

#### 1. <u>Mr. Runyon's Rule 30(b)(6) Testimony Is Dispositive</u>

Impossible LLC argues that it "suffered injury to its goodwill and reputation" due to Impossible Foods's "launch of . . . apparel in 2016" and "the launch of . . . [a] cookbook in 2020." Opp. at 10, 13. The evidence says otherwise. In particular, Impossible LLC's Rule 30(b)(6) witness, Joel Runyon, admitted many times, and in many ways, that the value of Impossible LLC's marks (including its reputation) has not suffered any harm due to the alleged infringement.

"[B]ecause a Rule 30(b)(6) designee testifies on behalf of the entity, the entity is not allowed to defeat a motion for summary judgment based on an affidavit that conflicts with its Rule 30(b)(6) deposition or contains information that the Rule 30(b)(6) deponent professed not to know." *Snapp v. United Transp. Union*, 889 F.3d 1088, 1103 (9th Cir. 2018). Here, Impossible LLC designated Mr. Runyon to testify on "The commercial value of ILLC's IMPOSSIBLE-formative Marks"; "Identification of the nature, extent, quantification, causes, and date of any reputational [or] economic . . . harm caused to Defendants by Plaintiff"; "ILLC's reputation in ILLC's industry and

among consumers, including how Plaintiff's challenged conduct has affected that reputation"; and "Whether and how the Plaintiff's conduct challenged in this case . . . has affected ILLC revenues and profits . . . ." Dkt. No. 274-2 at Topics 30, 40, 43, 44.

This Court has correctly held that the "value" of a mark is synonymous with the owner's "goodwill and reputation," *see Wag Hotels*, 2023 WL 3605977, at *9, so pursuant to the above 30(b)(6) topics, Impossible Foods asked Mr. Runyon about Impossible LLC's "reputation in the industries that it operates in." Dkt. No. 259-7 at 315:3–8. Mr. Runyon admitted that his company's reputation currently is, and has "always been[,] very good." *Id.* He further admitted that Impossible LLC's "reputation among consumers, just everyday people" is, and has "always been[,] very good." *Id.* Impossible Foods also expressly asked Mr. Runyon about the "value" of Impossible LLC and its marks. In response, Mr. Runyon admitted that he could not even describe the value of his business or marks at any point in time—meaning he could not say whether that value had *ever* declined, for any reason. *Id.* at 305:2–306:12.

When asked directly, "[H]as Impossible Foods' trademark infringement harmed the value of the overall Impossible brand," Mr. Runyon answered, "I'm not sure." *Id.* at 312:1–5. When asked, "[H]as Impossible Foods' trademark infringement hurt the value of any of your Impossible trademarks," Mr. Runyon answered, "I don't know." *Id.* at 311:19–22. When asked, "Has the -- are you able to say whether the confusion you've experienced has caused any harm to the Impossible marks," he responded, "I'm unsure." *Id.* at 310:2–9. And when asked whether "any of the confusion" he has experienced has "caused a decrease in Impossible LLC's sales" or "caused any decrease in Impossible LLC's revenues," Mr. Runyon was unable to say. *Id.* at 310:12–15.

Mr. Runyon's testimony is strikingly similar to that of the corporate witness in *Wag Hotels* who, when asked "whether [defendant] Wag Labs has done anything to impact the financial performance of Wag Hotels," responded "that the company 'ha[s] not done any particular analysis on that.'" *Wag Hotels*, 2023 WL 3605977, at *9 (second alteration in original). And when asked "whether Wag Hotels has analyzed whether Wag Labs's alleged misconduct 'impacted the value of Wag Hotels' goodwill,'" another corporate witness confirmed that "no such analysis had been done." *Id.* The Court concluded that "[t]his failure to provide any evidence of diminution of value

of Wag Hotels's mark that was caused by Wag Labs [wa]s **fatal** to Wag Hotels's request for corrective advertising damages." *Id.* (emphasis added). The Court should reach the same conclusion here.

**2. Mr. Runyon's Summary Judgment Declaration Is Immaterial**

Impossible LLC relies upon the summary judgment declaration of Mr. Runyon, in which he states: "The confusion I have witnessed with Impossible Foods is harmful to Impossible LLC's brand and business" because Impossible LLC's target consumers "are not typically interested in . . . artificial meat products like those offered by Impossible Foods," such that confusion "harms our ability to market to these important consumers." Dkt. No. 277-4 ¶ 26.

This testimony is not relevant to whether Impossible LLC has shown a "diminution of value of" its marks. *See Wag Hotels*, 2023 WL 3605977, at *9. It does not discuss whether Impossible LLC's "goodwill," its "reputation," or the "value of its marks" has been harmed, and it does not in any way show that the Accused Products themselves *caused* any harm. *See id.* (requiring a showing of diminution in value "caused by" the infringement). Nor could it, given Mr. Runyon's 30(b)(6) testimony.

Mr. Runyon's declaration also does not constitute "non-speculative evidence" of harm—of any kind. Mr. Runyon states that the alleged confusion "is harmful," but he does not state that any confusion has *actually harmed* his "brand and business" (which would be insufficient for corrective advertising anyway). Thus, like Impossible LLC's experts, Mr. Runyon uses careful wording to conceal that he is only speculating about potential harm. *See Int'l Oddities v. Record*, No. CV 12-3934-CAS (VBKx), 2013 WL 3864050, at *14 (C.D. Cal. July 22, 2013) (granting summary judgment on corrective advertising because plaintiff merely "inferr[ed] from the nature of its products" and "the relevant marketplace" that it suffered "extensive damage to [its] good will") (second alteration in original).

To the extent Mr. Runyon's declaration could be construed as contradicting his 30(b)(6) testimony, it cannot be considered. As discussed, a company "is not allowed to defeat a motion for summary judgment based on an affidavit that conflicts with its Rule 30(b)(6) deposition **or contains information that the Rule 30(b)(6) deponent professed not to know**," absent "good reason or

explanation." *Snapp*, 889 F.3d at 1103 (emphasis added). At his deposition, Mr. Runyon testified that Impossible LLC's reputation is and has always been very good; and he professed not to know the value of his company's marks, whether that value had ever declined, whether alleged confusion had harmed Impossible LLC or its marks, or whether Impossible Foods's conduct had harmed Impossible LLC or its marks—all information falling squarely within his 30(b)(6) topics. Impossible LLC provides no "good reason" for any contradictory testimony, so to the extent the declaration *is* contradictory to the 30(b)(6) testimony, it cannot be considered here.

**3. <u>"Confusion" Did Not Cause Harm to the Value of Any Mark</u>**

Impossible LLC next argues that evidence of actual confusion alone is sufficient to defeat summary judgment on the issue of diminution in the value of a mark. *See* Opp. at 15 ("[*A*]*ny* confusion with Impossible Foods is harmful to Impossible LLC's brand . . . ."). But several courts—including this one—have correctly ruled otherwise. *See Wag Hotels*, 2023 WL 3605977, at *9 (rejecting plaintiff's argument "that it is entitled to corrective advertising damages" simply because "it has provided evidence that consumers were confused by Wag Labs's use of its mark"); *Lodestar Anstalt v. Bacardi & Co.*, No. 2:16-cv-06411-CAS(FFMx), 2019 WL 8105378, at *15 (C.D. Cal. July 3, 2019) (granting summary judgment on corrective advertising because, even though plaintiff adduced evidence of "actual confusion," the plaintiff "would still need to demonstrate that such confusion damaged its goodwill"); *Quia Corp. v. Mattel, Inc.*, No. C 10-1902 JF (HRL), 2011 WL 2749576, at *6 (N.D. Cal. July 14, 2011) (granting summary judgment because "Plaintiff has not shown that any underlying or resulting confusion has damaged its goodwill").

Impossible LLC is required to adduce "non-speculative evidence" that the alleged confusion *actually harmed the value of Impossible LLC's marks*. *See id.* To attempt to carry this burden, Impossible LLC points to Mr. Runyon's declaration testimony that, because of alleged confusion, he is "forced to spend the initial (and most important) minutes of interactions with actual or potential customers or business contacts dispelling confusion." Dkt. No. 277-4 ¶ 27. But the mere fact that Mr. Runyon spends extra time talking to customers—specifically, 30 to 60 seconds, as he admitted in his 30(b)(6) deposition, Dkt. No. 259-7 at 313:1–8—does not show harm to the value of any

mark, nor to Impossible LLC's goodwill or reputation.

Moreover, Mr. Runyon admitted that *in each instance of alleged confusion*, the confusion did not have *any* negative effect on the confused individuals nor their opinions of Impossible LLC—whether before or after the confusion was corrected. Dkt. No. 259-7 at 260:8–10; 261:12–262:7; 263:11–264:12. This testimony confirms (again) that Impossible LLC's "goodwill and reputation" were not harmed by any alleged confusion. Mr. Runyon's testimony also implicates the principle that corrective advertising awards are unavailable where all "known individuals" who were confused "had their opinion of [the trademark owner] restored, and there is no indication they harbor any lasting ill-will." *Binder v. Disability Grp., Inc.*, 772 F. Supp. 2d 1172, 1180 (C.D. Cal. 2011). Impossible LLC attempts to distinguish *Binder* based on its procedural posture, but that principle is equally applicable at summary judgment, as shown in a case relied upon by Impossible LLC's expert. *See Quia Corp.*, 2011 WL 2749576, at *5 (granting summary judgment and relying upon the *Binder* holding). Even the lenient summary judgment standard requires *some evidence*, yet Impossible LLC failed to adduce *any* evidence contradicting Mr. Runyon's own admissions that all confused individuals "had their opinion of [Impossible LLC] restored." *Binder*, 772 F. Supp. 2d at 1180.

Impossible LLC relatedly argues that not "all" confused individuals had their confusion resolved, but Impossible LLC cites only Mr. Runyon's statement that "[s]hort interactions where people don't have a lot of time ***are tough***." Dkt. No. 219 at 287:8–9 (emphasis added). This vague, noncommittal statement cannot create a genuine dispute as to whether alleged confusion actually harmed the value of any of Impossible LLC's marks. Regardless, even if Mr. Runyon was unable to resolve one or more instances of confusion in the past (and, tellingly, Mr. Runyon's summary judgment declaration makes no such affirmative statement), confusion in itself does not equate to harm to the value of a mark. *See Wag Hotels*, 2023 WL 3605977, at *9. Mr. Runyon was unequivocal in his deposition that none of the confused individuals had "anything negative to say" about Impossible LLC and did not seem "offended" or "upset at all" about the confusion or the company. Dkt. No. 259-7 at 260:8–20; 261:12–262:7; 273:11–264:12. His declaration contains nothing more than speculation that his target consumers who "are often strongly opposed to . . .

artificial meat products" *might* be difficult to recruit *if* they are confused. Thus, even putting aside Mr. Runyon's 30(b)(6) admissions, Impossible LLC fails to create a genuine dispute as to whether the alleged confusion actually harmed the "value" of any of its marks.

**4. Alleged Advertising Costs and Search Results Rankings Are Irrelevant**

Impossible LLC briefly discusses its alleged increased advertising costs and lower search rankings. But on the advertising costs issue, Impossible LLC erects a strawman, telling the Court that "Impossible Foods argues that Impossible LLC's increased advertising costs are not compensable damages." Opp. at 16 (emphasis added). That is not what Impossible Foods argues. Increased advertising costs might be "compensable" under other damages theories, but they do not equate to harm to the value of a mark, which is required for a prospective corrective advertising award. *See Thrive Nat. Care, Inc. v. Thrive Causemetics, Inc.*, No. CV 20-9091 PA (ASx), 2021 WL 4813257, at *7 (C.D. Cal. Oct. 6, 2021) (cited favorably by *Wag Hotels*, 2023 WL 3605977, at *9) (evidence that infringement "caused the price of advertising to rise" was insufficient to "show that Plaintiff's mark itself has lost value").

Impossible LLC cites no authority to the contrary. The *U-Haul Int'l, Inc. v. Jartran, Inc.* decision is irrelevant because it concerns only whether the *amount* of (past) corrective advertising damages was proper, not whether the plaintiff had proven the harm required to receive such an award in the first place. *Id.*, 793 F.2d 1034, 1041 (9th Cir. 1986). Impossible LLC also adduced no actual evidence of increased advertising costs to support its arguments.

As to the alleged lower search rankings, Impossible LLC does not even attempt to refute Impossible Foods's cited authorities holding that such evidence does not constitute harm to the value of a mark. Nor does Impossible LLC attempt to refute its own expert's admission that he "was not able to evaluate the change in the level of [search] ranking due to" the Accused Products, Dkt. No. 219 at 192:3–15, and that other than Mr. Runyon's unsupported opinion, the expert was not aware of any "independent data to support or refute" the notion that Impossible Foods's allegedly infringing conduct negatively affected Impossible LLC's search rankings. *Id.* at 193:3–17.

**5. No Evidence Shows That Confusion Caused a Decline in Business**

In its next effort to defeat summary judgment, Impossible LLC argues that its "business

performance has declined dramatically following the release of Impossible Foods' infringing products." Opp. at 8. Impossible LLC makes this argument in an attempt to rely upon *Marketquest Grp., Inc. v. BIC Corp.*, 316 F. Supp. 3d 1234, 1301 (S.D. Cal. 2018), one of the only opinions in the Ninth Circuit denying summary judgment on the issue of prospective corrective advertising. The Court should reject Impossible LLC's argument for at least three reasons.

***First***, Mr. Runyon already admitted that he was unsure whether Impossible Foods's allegedly infringing conduct had caused any decrease in sales or revenues. Dkt. No. 259-7 at 310:12–15. Impossible LLC cannot walk back that admission through a summary judgment brief. *See Snapp*, 889 F.3d at 1103.

***Second***, Impossible LLC's argument is purely speculative, where "non-speculative" evidence is required. *See Wag Hotels*, 2023 WL 3605977 at *9–10. Impossible LLC intends to present income statements, with no comment or analysis, to the trier of fact and request an inference that lower year-over-year revenues in 2017 and 2021 were caused by the Accused Products. But a temporal comparison—i.e., simple *correlation*—is insufficient to prove *causation* beyond mere speculation at the summary judgment stage. *Kurin, Inc. v. Magnolia Med. Techs., Inc.*, 473 F. Supp. 3d 1117, 1146 (S.D. Cal. 2020) ("[A] temporal relationship alone is insufficient to establish proximate cause" at summary judgment under the Lanham Act), *aff'd*, No. 21-55025, 2021 WL 5823707 (9th Cir. Dec. 8, 2021); *see also Verisign, Inc. v. XYZ.COM LLC*, 848 F.3d 292, 301 (4th Cir. 2017) (at summary judgment, a mere "temporal link" between Lanham Act violation and lower sales is insufficient); *Ryoo Dental, Inc. v. Thomas D. Han DMD*, No. SACV 15-308-JLS (RNBx), 2016 WL 6138413, at *7 (C.D. Cal. Apr. 25, 2016) (at summary judgment, a "correlation" between timing of infringement and lower Google traffic was insufficient to show causation).

In the *Marketquest* case relied upon by Impossible LLC, the situation was very different. The plaintiff in that case retained a damages expert, David Drews, who opined based on extensive evidence that confusion resulting from the infringement had caused a significant decrease in the plaintiff's sales. *Marketquest*, 316 F. Supp. 3d at 1298–301. In a separate opinion, the *Marketquest* court found that the expert's opinions were sufficiently reliable and founded upon adequate evidence, including evidence that the market was rife with "a false impression of association,

dragging Marketquest's sales down alongside [defendant] BIC's 'unprecedented' low numbers." *Marketquest Grp., Inc. v. BIC Corp.*, No. 11-CV-618-BAS (JLB), 2018 WL 1756117, at *5 (S.D. Cal. Apr. 12, 2018). Here, neither of Impossible LLC's experts opined that Impossible LLC's revenues were affected by Impossible Foods's alleged infringement, and the company's 30(b)(6) witness confirmed he did not know of any negative effects. Thus, *Marketquest* is not helpful here.

***Third***, Impossible LLC's evidence shows that the company actually had two of its best years *in the same years of the alleged infringement*. Impossible Foods announced and released its cookbook in July 2020, Dkt. No. 274-34, [redacted] *See* Dkt. No. 259-9 at Ex. C-2. And Impossible Foods started using its marks on apparel swag in 2016, *see* Dkt. No. 262-30 at 129:18–21, [redacted]. *See* Dkt. No. 259-9 at Ex. C-2. Moreover, Impossible Foods has only ever *given away* its apparel swag to employees, or to visitors at limited events (Dkt. No. 274-33)—conduct that could not reasonably impact Impossible LLC's sales of its apparel. Thus, even Impossible LLC's meager temporal comparison fails.

**6. <u>The "Family of Marks" Rule Is Only Relevant to Confusion, Not Damages</u>**

Impossible LLC next contends that it need not show that any particular mark has lost value because Impossible LLC has a "family of marks." Opp. at 18–19. The "family of marks rule" is completely irrelevant here. 3 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Comp.* § 23:61 (5th ed. 2025). That rule is relevant only to the likelihood of confusion analysis, not damages. The rule provides that if a plaintiff establishes a family of marks, the question under the *Sleekcraft* factors becomes "whether the [junior user's] mark would be likely to be viewed as a member of the [senior user's] family of marks." *Id.* (alterations in original). It does not mean that Impossible LLC's marks could or should be treated as a single mark, for damages purposes or otherwise. Thus, Impossible LLC's sole defense of its inability to show harm to the value of *any one* of its marks fails, and summary judgment is proper on this ground.

**7. <u>Impossible LLC Fails to Show Causation</u>**

Finally, Impossible LLC argues that its reputation has been harmed because consumers are "accusing Impossible LLC of promoting 'junk,' 'fake meat,' dubious food additives, and

allergens," citing "Dkt. 259-08 ¶¶ 54, 56; Dkt. 259-09 ¶¶ 29, 34; Dkt. 259-14; Dkt. 263-08." Opp. at 15, 20. The actual evidence cited by Impossible LLC reveals only two instances of alleged confusion involving negative attribution. But no evidence shows that (1) the confusion *caused* harm to the value of Impossible LLC's marks; nor that (2) Impossible LLC's allegedly unlawful conduct *caused* the confusion.

The first instance raised by Impossible LLC involved a Texas individual who saw Mr. Runyon wearing his t-shirt and said: "That's not that Impossible meat company is it? You're in the wrong place if you are. We don't eat that junk." Dkt. No. 263-8 at 20. This incident did not harm the value of Impossible LLC's marks because Mr. Runyon admitted that he was able to resolve the man's confusion quickly, and that the man harbored no negative opinion of Impossible LLC or Mr. Runyon. Dkt. No. 219 at 294:9–21.

Impossible LLC also fails to carry its burden of showing that Impossible Foods's alleged infringement (i.e., the Accused Products) caused this, or any other, instance of confusion. As Dr. Palmatier explained in his own words:

> In my review of the documents in discussion with Mr. Runyon, there was **nothing** that can specifically -- a specific case of confusion that could be identified [and] linked to either the Impossible Foods' clothing or cookbook.

Dkt. No. 261-5 at 206:3–13 (emphasis added). Indeed, the Texas individual referred to "that Impossible **meat** company," not to any Accused Products. Dkt. No. 263-8 at 20. And no evidence suggests that the individual ever encountered any of the Accused Products. *See* Dkt. No. 259-7 at 260:21–261:6.

In the second instance raised by Impossible LLC (Dkt. No. 263-08), an individual emailed Impossible LLC his concerns about ingredients in Impossible Foods's *meat*. The email shows that the individual has no idea what Impossible LLC is or does, so there is no evidence this instance caused any harm to the value of Impossible LLC's marks. Moreover, the email shows that the confusion was actually caused by Impossible Foods's core products.

Impossible LLC dismisses the issue of causation entirely, arguing that it need only show "the sort of injury that would be the expected consequence of the defendant's wrongful conduct." Opp. at 19–20 (quoting *Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1168

(9th Cir. 2013)). It is important to note that, when it comes to Impossible LLC's alleged evidence of confusion, there are two links in the causal chain at issue: (1) whether the confusion caused harm to the value of Impossible LLC's marks; and (2) whether the confusion was caused by the Accused Products. Impossible Foods has already shown that Impossible LLC suffered no harm to the value of its marks in the first instance, so summary judgment can be granted even without considering these two links in the causal chain.

But should the Court consider whether the alleged confusion actually caused relevant harm, binding 30(b)(6) testimony confirms that none of it "caused any harm to the Impossible marks," "caused a decrease in Impossible LLC's sales," or "caused any decrease in Impossible LLC's revenues." Dkt. No. 259-7 at 310:2–311:3. Impossible LLC dismisses this 30(b)(6) testimony as answering "questions seeking legal conclusions regarding 'causation.'" Opp. at 16. But whether Impossible LLC's reputation was even proximately harmed by an event "goes to factual causation," not a legal conclusion. *See Regal v. Cty. of Santa Clara*, No. 5:22-cv-04321-BLF, 2025 WL 1547631, at *8 (N.D. Cal. May 31, 2025) (Freeman, J.) (finding that "causation" testimony about whether certain "conduct was a substantial contributing factor to" an event did not constitute testimony on a "legal conclusion, *i.e.*, an opinion on an ultimate issue of law"). Moreover, Dr. Palmatier confirmed based on his review of all confusion evidence: "I did not see **any** specific loss of Impossible LLC's customer[s] due to a drop in brand equity from negative attributes from T-shirts or clothing or recipe books marketed by Impossible Foods." Dkt. No. 261-5 at 173:21–174:19 (emphasis added). Thus, summary judgment is also appropriate based on Impossible LLC's failure to carry its burden of establishing the first link in the causal chain.

As to the second link in the causal chain, i.e., whether the alleged confusion was caused by the Accused Products themselves, Impossible LLC also fails to carry its burden. Dr. Palmatier expressly admitted in his deposition that no "specific case of confusion" could even be "linked" to the Accused Products, much less was *caused by* the Accused Products. Dkt. No. 261-5 at 206:3–13. He admitted that he "would only be speculating" if he attempted to tie any confusion to the Accused Products. *Id.* at 202:3–9; 205:1–8. And though he apparently was not "asked" to "isolate" the impact of the Accused Products on confusion or harm, he admitted that he "could

**never** isolate [that] out" in this case. Flemming Decl. Ex. A at 104:18–106:2 (emphasis added).

Citing *Pacific Shores*, Impossible LLC argues that merely an unlawful act (infringement) and a likely effect of that infringement (confusion between the parties) is sufficient to survive summary judgment on whether there is a causal connection between the two. Whatever the applicability of the general discussions in *Pacific Shores* (an FHA case) to intellectual property cases, in this particular case, Impossible LLC's argument fails.

In the typical trademark case, the plaintiff alleges that all of the defendant's uses of a certain mark are infringing. Thus, it may be reasonable in those cases to rely upon *Pacific Shores* and infer that any confusion between the parties was caused by the infringement—though Impossible LLC cites no such application of *Pacific Shores*. Here, however, Impossible Foods's allegedly "wrongful conduct"—the use of IMPOSSIBLE marks on the Accused Products—is nearly the same as its admittedly lawful conduct—the use of those same marks on plant-based meat and, indeed, every other aspect of Impossible Foods's business. Thus, it would not be *per se* reasonable, as Impossible LLC argues, to infer that *any* confusion between the parties was caused by the alleged infringement.

This situation is analogous to *Mackie v. Rieser*, a copyright case about the recovery of indirect profits. *Id.*, 296 F.3d 909 (9th Cir. 2002). In *Mackie*, the Seattle Symphony infringed the plaintiff's artwork in mailers promoting its Pops series, and the plaintiff sought a portion of the symphony's profits from that Pops series. *Id.* The Ninth Circuit applied the "rudimentary principles of tort law, to which copyright law" (like trademark law) "is often analogized," and affirmed summary judgment against the plaintiff on causation. The court found that, "[i]n the absence of concrete evidence, Mackie's theory [that sales were driven by the infringement] is no less speculative" than others. *Id.* at 916. The court "note[d] that the principle of causation based on non-speculative evidence is nothing novel in the damages arena." *Id.* at 915.

Here, Impossible LLC adduced no evidence—much less the "concrete evidence" described in *Mackie* and the "non-speculative evidence" both parties agree is required under *Wag Hotels*—that any confused individual was even *aware* of one of the Accused Products. Both Mr. Runyon and Dr. Palmatier agree that no confusion evidence "could be . . . linked" to the Accused

Products. *See* Dkt. No. 261-5 at 206:3–13. In fact, much of Impossible LLC's "confusion" evidence affirmatively shows that the confused individuals were familiar with Impossible Foods's core products, not the Accused Products. Impossible LLC therefore has adduced nothing that would allow the trier of fact to conclude—without mere speculation—that any of this purported confusion was caused by the Accused Products.

A review of *Pacific Shores* reinforces this point. In that case, the defendant city passed an ordinance negatively affecting group homes, after which the plaintiffs' group home business experienced a drop in revenues. *Pac. Shores*, 730 F.3d at 1147. But the Ninth Circuit did not find a triable issue on causation solely from this evidence. Rather, the court credited evidence that "counselors and therapists" no longer "wanted to refer their clients to the Group Homes **because of the City's actions**," and that "current and prospective residents expressed concern to the managers about whether the Group Homes would close" because of the ordinance. *Id.* at 1169 (emphasis added). Thus, there was concrete, non-speculative evidence suggesting that the "counselors" and "current and prospective residents" who stopped doing business with the plaintiffs not only were *aware* of the allegedly unlawful ordinance, but took action at least in part because of that ordinance.

In Impossible LLC's other cited case, *Skydive Arizona*, the plaintiff alleged that the defendant's gift certificates were infringing. *Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105, 1109 (9th Cir. 2012). The plaintiff presented evidence that numerous purchasers of the infringing gift certificates tried to redeem them with the plaintiff. Answering Brief at 23–24, *Skydive Ariz.*, 673 F.3d 1105, No. 10-16099, Dkt. No. 34. In other words, the confused individuals were aware of and had even purchased the infringing products. Here, in stark contrast to *Pacific Shores* and *Skydive Arizona*, there is **<u>zero</u>** evidence any confused person was even aware of Accused Products. In the words of Impossible LLC's own expert, "there was nothing that can specifically . . . be identified [and] linked to either the Impossible Foods' clothing or cookbook." Dkt. No. 261-5 at 206:3–13. Thus, there is **<u>zero</u>** evidence that the Accused Products caused the alleged confusion, and Impossible LLC fails to carry its burden on the second link in the causal chain.

### B. Impossible LLC Cannot Recover Reputational or Punitive Damages

Impossible LLC implicitly concedes that it cannot recover reputational damages.

As to punitive damages, Impossible LLC does not dispute that its California common-law infringement counterclaim is its only vehicle for such damages, nor that they are unavailable in the absence of actual damages. Instead, Impossible LLC attempts to adduce evidence of (1) "superior common-law rights" in California and (2) "oppression, fraud, or malice." Opp. at 23. Impossible LLC fails to establish either. Thus, the Court should enter summary judgment in Impossible Foods's favor both on Impossible LLC's California common-law infringement claim and on its request for punitive or exemplary damages.

Impossible LLC fails to adduce evidence of "legally sufficient market penetration" in California. *See Optimal Pets, Inc. v. Nutri-Vet, LLC*, 877 F. Supp. 2d 953, 959 (C.D. Cal. 2012). Impossible LLC points only to Paragraphs 21 and 22 of Mr. Runyon's declaration, but in both paragraphs, he merely provides the date certain products were first sold in California. Dkt. No. 277-4. He provides no evidence of the volume of sales or number of customers, nor evidence showing "continuous and not interrupted" use after those first sale dates. *See Dept. of Parks & Rec. v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1126 (9th Cir. 2006); *see also Universal Nutrition Corp. v. Carbolite Foods, Inc.*, 325 F. Supp. 2d 526, 534 (D.N.J. 2004) ("Universal, as a matter of law, does not have common law trademark rights" because it "has not shown that its volume of sales is sufficient to satisfy the first factor of the test for market penetration"). Mr. Runyon also fails to state whether *any* of Impossible LLC's marks was used in connection with any of those sales. And most surprisingly, Mr. Runyon identifies a document by Bates number allegedly reflecting sales, but he declines to provide that document for the Court to review. Dkt. No. 277-4, ¶ 21.

Even if Impossible LLC had carried its burden to show actual damages, market penetration, and continuous use in California, Impossible LLC's request for punitive damages cannot survive summary judgment. In addressing the "oppression, fraud, or malice" standard, Impossible LLC analogizes to cases involving truly despicable conduct. In *QS Wholesale, Inc. v. World Marketing., Inc.*, No. SA 12-CV-0451-DOC(RNBx), 2014 WL 12586120 (C.D. Cal. Jan. 7, 2014), the defendant "attempt[ed] to buy [plaintiff's] mark on three occurrences over three

years, and, when that failed, [defendant] de[cided] to go ahead with an infringing mark," followed by a scheme to "cover its tracks" and continue to sell infringing products, "even as it represented to [the plaintiff] that it had stopped selling products." *Id.* at *4. The plaintiff in *City of Carlsbad v. Shah*, 850 F. Supp. 2d 1087, 1107 (S.D. Cal. 2012), was a classic cybersquatter who registered numerous domain names the same day the plaintiff announced its marks for the purpose of ransoming them, and then continued his pattern of bad-faith domain registration after the court ruled at summary judgment that it was the plaintiff who was the rightful owner of the marks at issue. *Id.*

Under California law, mere knowledge of another's mark is insufficient to show "oppression, fraud, or malice" under the statutory definitions of those terms. *Am. Auto. Assoc. of N. Cal. v. Gen. Motors LLC*, 367 F. Supp. 3d 1072, 1103 (N.D. Cal. 2019) ("Mere knowledge . . . is not sufficient" to show "willfulness" in context of profits disgorgement). Impossible LLC contends that the Court should also consider the deletion of documents, but no evidence shows that such deletion was in bad faith or related to the alleged infringement. Impossible LLC also points to emails showing that a former Impossible Foods employee sought inspiration for marketing materials from a list of famous "impossible" quotes collected by Mr. Runyon on his website, but no evidence shows (1) that Impossible Foods was attempting to draw any connection to Mr. Runyon or his business, as opposed to seeking catchy third-party "impossible" quotes; nor (2) that the emails relate in any way *to the Accused Products*, as opposed to Impossible Foods's admittedly lawful use of its marks in connection with its core products and business. Finally, the fact that Impossible Foods immediately filed a declaratory judgment action upon receipt of a cease-and-desist letter—so that the parties' dispute could be resolved in a public court of law—shows *good* faith.

**C. Defendants' Challenged Defenses Fail As a Matter of Law**

**1. <u>Defendants' Laches Defense Fails on Both Elements</u>**

The Court should grant summary judgment against Defendants on their laches defense because they fail to adduce any evidence supporting either element of the defense: (1) unreasonable delay and (2) prejudice caused by the delay. Defendants argue that Impossible Foods's delay was

unreasonable because the laches clock started in 2017, when the company starting selling "IMPOSSIBLE® Krill Oil." Dkt. No. 277-4 ¶ 10. But Defendants adduced no evidence that Impossible Foods "knew" of that product in 2017 (or any other year within the four-year window), nor evidence that Impossible Foods "should have known" of that product. *See Eat Right Foods Ltd. v. Whole Foods Mkt., Inc.*, 880 F.3d 1109, 1115 (9th Cir. 2018); *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1139 (9th Cir. 2006) ("[T]he record demonstrates a mere handful of limited sales . . . during this period and no evidence of knowledge by Reno Air."). And Defendants do not even mention prejudice. *adidas-Am., Inc. v. Payless Shoesource, Inc.*, 546 F. Supp. 2d 1029, 1072 (D. Or. 2008) (granting summary for failure to show prejudice). The Court should grant summary judgment on the laches defense for those two, independent reasons.

**2. Defendants' Estoppel, Acquiescence, Waiver, and Unclean Hands Defenses Fail As a Matter of Law**

Defendants do not discuss their remaining challenged defenses and instead merely argue that Impossible Foods "fails to carry its initial burden of production." Opp. at 25. That is not the case. Beginning with unclean hands and estoppel, Impossible Foods pointed out that neither is even cognizable as a defense to trademark fraud and abandonment claims—an argument Defendants do not dispute. Thus, summary judgment is plainly warranted on those defenses.

As to waiver and acquiescence, those defenses (as well as estoppel and unclean hands) were asserted at the very end of discovery. Nonetheless, Impossible Foods provided the Court with Defendants' counsel's full explanation of the evidence underlying the acquiescence defense, a defense that significantly overlaps with waiver and estoppel. That is more than sufficient to "show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Unicorn Energy AG v. Tesla Inc.*, 740 F. Supp. 3d 930, 940 (N.D. Cal. 2024) (Freeman, J.) (citation omitted). Thus, Defendants' sole argument regarding these four challenged defenses fails, and summary judgment is warranted.

## III. CONCLUSION

For the foregoing reasons, Impossible Foods's motion for partial summary judgment should be granted in its entirety.

DATED: September 12, 2025

Respectfully submitted,

**KILPATRICK TOWNSEND & STOCKTON**

By: */s/ H. Forrest Flemming, III*
R. Charles Henn Jr. (*pro hac vice*)
H. Forrest Flemming, III (*pro hac vice)*
Erica Chanin (*pro hac vice*)
Kollin Zimmerman (SBN 273092)

*Attorneys for Plaintiff/Counter-Defendant*
IMPOSSIBLE FOODS INC.

**CERTIFICATE OF SERVICE**

I hereby certify that on September 12, 2025, the foregoing document was filed electronically using the Court's CM/ECF system, which will send notification of such filing to counsel of record.

*/s/ H. Forrest Flemming, III*
H. Forrest Flemming, III