# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

IMPOSSIBLE FOODS INC.,

Plaintiff,

v.

IMPOSSIBLE X LLC, et al.,

Defendants.

Case No.  5:21-cv-02419-BLF

**ORDER GRANTING-IN-PART AND DENYING-IN-PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

[Re:  ECF Nos. 259, 262]

This is an action for trademark infringement and unfair competition arising from the Parties' use of marks involving the word "IMPOSSIBLE" in connection with their goods and services.  Plaintiff/Counter-Defendant Impossible Foods Inc. ("Impossible") and Defendants/Counter-Plaintiffs Impossible X LLC and Joel Runyon (collectively, "IX") each move for partial summary judgment, raising separate issues.

Impossible moves for partial summary judgment that (1) IX is not entitled to damages for any of its counterclaims and (2) IX's affirmative defenses to Impossible's claims fail as a matter of law.  ECF No. 259 ("Pl.'s Mot."); *see also* ECF No. 282 ("Pl.'s Reply").  IX opposes the motion. *See* ECF No. 277 ("Defs.' Opp.").

IX moves for partial summary judgment that (1) Impossible's Lanham Act claims are factually and legally deficient; (2) Impossible's common-law unfair competition claim fails as a matter of law; (3) IX's marks cannot be declared void for fraud on the United States Patent and Trademark Office ("PTO"); (4) IX's marks have not been abandoned; and (5) IX is entitled to summary adjudication of priority as to certain marks.  ECF No. 262 ("Defs.' Mot."); *see also* ECF No. 287 ("Defs.' Reply").  Impossible opposes the motion.  *See* ECF No. 274 ("Pl.'s Opp.").

United States District Court
Northern District of California

The Court held a hearing on the Parties' motions on October 23, 2025.  ECF No. 306.  For the reasons set forth below, the Court GRANTS-IN-PART and DENIES-IN-PART Impossible's motion for partial summary judgment and DENIES IX's motion for partial summary judgment.

## I.    BACKGROUND

### A.  The Parties and Their Marks

Impossible develops, markets, and sells plant-based substitutes for meat products.  *See* Declaration of Caitlyn Hatman ("Hatman Decl.") ¶¶ 2–3, ECF No. 259-22.  Operating since 2011 under various names, including "Maraxi," Impossible adopted its current name and IMPOSSIBLE mark in 2015.  *Id.* ¶¶ 4–5.  Impossible released its signature product—the Impossible Burger—in July 2016, and the Impossible Burger is now available in grocery stores and restaurants across the country.  *Id.* ¶¶ 6–8.  Impossible has since expanded to other food products and services, including the Impossible Sausage, Impossible Pork, and Impossible Taste Place.  *Id.* ¶¶ 9–11.  Impossible also sells a cookbook (the "Impossible Cookbook") and offers IMPOSSIBLE-branded clothing to consumers for promotional purposes ("Impossible Swag").  *See* Declaration of R. Charles Henn Jr. ("Henn Decl.") Ex. G ("Palmatier Rep.") ¶¶ 43–44, ECF No. 259-1; Henn Decl. Ex. Q.

Impossible owns various IMPOSSIBLE and IMPOSSIBLE-formative federal trademark registrations, including U.S. Trademark Reg. No. 5,370,337, first use in commerce November 3, 2016 ("[p]roviding of food and drink via mobile truck; catering services"), and U.S. Reg. No. 5,459,255, first use in commerce June 27, 2016 ("[s]ubstitutes for foods made from animals or animal products, namely, vegetable-based burger patties; meat substitutes").  *See* Henn Decl. Ex. R at 12.  Impossible also alleges that it holds common-law rights to the presentation of the IMPOSSIBLE mark depicted below, which it began to use as early as 2016:

# IMPOSSIBLE

1    ECF No. 1.[1]

2         Mr. Runyon is an entrepreneur, blogger, and fitness enthusiast and the sole member,

3    owner, and employee of Impossible X LLC.  Declaration of Greg Washington ("Washington

4    Decl.") Ex. A at 2, ECF No. 262-1.  According to Mr. Runyon, his use of the word "impossible"

5    came to him in 2010, when he had the idea to create a personal "Impossible List" of things that

6    might seem impossible at first but could be accomplished with hard work.  Washington Decl.

7    Ex. B ("Runyon Dep. Tr.") at 103:4–14.  From that idea, Mr. Runyon created the "Blog of

8    Impossible Things" to encourage readers to "Do the Impossible."  *Id.* at 104:10–105:8; *see also*

9    Washington Decl. Ex. A.  Since launching his blog, Mr. Runyon has expanded to numerous other

10   ventures—including search engine optimization, social media influencing, and fitness and dieting

11   advice—using IX as the business vehicle for his Impossible-centered offerings.  Through IX,

12   Mr. Runyon also sells certain clothing products, as well as sleep powders and energy powders (the

13   "IX Powders").  *See* Runyon Dep. Tr. at 64:9–14, 145:6–9.

14        IX also owns various federal trademark registrations using the word IMPOSSIBLE.  *See*

15   Washington Decl. Exs. O–Y.  As relevant here, these include a word mark and motion mark for

16   IMPOSSIBLE, respectively U.S. Trademark Reg. No. 5,620,625, first use in commerce

17   September 1, 2011 ("[c]lothing and performance apparel, namely," "t-shirts, "tank tops"),[2] and

18   US. Trademark Reg. No. 6,571,603, first use in commerce May 29, 2012 ("clothing and

19   performance apparel, namely, t-shirts, sweatshirts, pants, shorts, tank tips, yoga pants, tights and

20   underwear").  IX also owns a word mark and design mark for IMPOSSIBLE FITNESS,

21   respectively U.S. Trademark Reg. No. 5,590,801, first use in commerce January 24, 2014

22   ("[c]lothing and performance apparel, namely, t-shirts, sweatshirts, pants, shorts, tank tops, yoga

23   pants, tights"), and U.S. Trademark Reg. No. 5,603,025, first use in commerce January 24, 2014

24   ("[c]lothing and performance apparel, namely, t-shirts, sweatshirts, pants, shorts, tank tops, yoga

25   pants, tights").  IX's marks represent the idea of striking items from one's "Impossible List" by

26

27   ───────────────
     [1] This presentation is substantially similar in appearance to the design covered by many of
     Impossible's federal trademark registrations.  *See, e.g.*, U.S. Trademark Reg. No. 7,179,385.

28   [2] As described *infra*, IX has amended its IMPOSSIBLE word mark to remove all Class 25 goods
     except for t-shirts and tank tops.

United States District Court
Northern District of California

depicting a single-line strikethrough of the word IMPOSSIBLE as depicted below:



U.S. Trademark Reg. No. 5,603,025.

### B. Trademark Dispute

On April 1, 2020, Impossible filed an application with the PTO for an IMPOSSIBLE word mark for goods and services associated with "[p]roviding information about recipes, ingredients and cooking information; providing an online computer database to consumers featuring information about recipes, ingredients and cooking information." U.S. Trademark Application Serial No. 88,855,875; *see also* ECF No. 1-2. In response to Impossible's application, IX sent a demand letter to Impossible on November 10, 2020. Washington Decl. Ex. KK at 1. In its letter, IX asserted that it held superior rights to the IMPOSSIBLE mark and explained that, although it "initially believed that [Impossible's] use of IMPOSSIBLE solely in connection with plant-based meat substitutes would not be likely to cause confusion, [Impossible's] recent encroachment into spaces either occupied or closely related to goods and services offered by [IX] greatly increases the likelihood of confusion." *Id.* at 1–2. IX concluded the letter by demanding that Impossible cease using the IMPOSSIBLE mark in certain contexts (e.g., when not accompanied by FOODS) and limit its use to association with plant-based meat substitutes. *Id.* at 2–3.

Two weeks after sending the demand letter, IX filed a Notice of Opposition to Impossible's application with the Trademark Trial and Appeal Board. ECF No. 1-3. In its notice, IX asserted that it had "used the IMPOSSIBLE Marks in association with nutrition, food, and cooking resources since 2010 including publication of guides to different foods, ingredients, diets, and recipes." *Id.* ¶ 2. Impossible initiated this action on April 2, 2021, by filing an initial complaint asserting a single claim for declaratory relief. ECF No. 1. In its complaint, Impossible requested that the Court issue an order declaring that Impossible's use and registration of IMPOSSIBLE with services related to recipes, food ingredients, and cooking information do not

infringe upon IX's rights and that Impossible's rights in IMPOSSIBLE are superior to IX's rights. *Id.* at 7–8. The Parties have since added numerous claims and counterclaims.

As relevant here, Impossible has added claims for trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. §§ 1051–1141n, and California common law, alleging that IX's use of its IMPOSSIBLE marks in connection with the marketing and sale of the IX Powders is unlawful. Third Amended Complaint ("TAC") ¶¶ 104–21, ECF No. 151. Impossible also seeks cancellation of IX's IMPOSSIBLE and IMPOSSIBLE FITNESS marks (the "Challenged Marks") pursuant to 15 U.S.C. §§ 1064, 1119, 1127 for fraud and abandonment. Impossible alleges that all four Challenged Marks were procured by fraud and that three of the Challenged Marks (not the IMPOSSIBLE word mark) were abandoned. In its revised answer and counterclaims, IX asserts affirmative defenses of laches, waiver, acquiescence, estoppel, and unclean hands, as well as counterclaims for trademark infringement and unfair competition under the Lanham Act and California common law, alleging that Impossible's use of its IMPOSSIBLE marks in connection with the Impossible Cookbook and Impossible Swag is unlawful. *See* Answer to Third Amended Complaint ("Answer") at 53–54, ECF No. 241; Counterclaims to Third Amended Answer ("Countercls.") ¶¶ 62–78, 89–99, ECF No 241.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 governs the standards for both motions for summary judgment and motions for partial summary judgment, which are identical. *See E.piphany, Inc., v. St. Paul Fire & Marine Ins. Co.*, 590 F. Supp. 2d 1244, 1250 (N.D. Cal. 2008). "A party is entitled to summary judgment if the 'movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *In re Oracle Corp. Sec. Litig.*,

United States District Court
Northern District of California

1    627 F.3d 376, 387 (9th Cir. 2010).  To meet its burden, "the moving party must either produce

2    evidence negating an essential element of the nonmoving party's claim or defense or show that the

3    nonmoving party does not have enough evidence of an essential element to carry its ultimate

4    burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102

5    (9th Cir. 2000).  If the nonmoving party bears the burden of proof at trial, the moving party need

6    only demonstrate that there is an absence of evidence to support the nonmoving party's case.

7    *Celotex*, 477 U.S. at 325; *see also* Fed. R. Civ. P. 56(c)(1)(B).

8         "Where the moving party meets that burden, the burden then shifts to the non-moving

9    party to designate specific facts demonstrating the existence of genuine issues for trial." *In re*

10   *Oracle*, 627 F.3d at 387.  "[T]he non-moving party must come forth with evidence from which a

11   jury could reasonably render a verdict in the non-moving party's favor." *Id.*  The court must view

12   the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in

13   the nonmovant's favor.  *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir.

14   2001).  "To survive summary judgment, a party does not necessarily have to produce evidence in a

15   form that would be admissible at trial, as long as the party satisfies the requirements of Federal

16   Rule of Civil Procedure 56." *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001).

17   "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving

18   party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

19   475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–

20   89 (1968)).

21        "Because of the intensely factual nature of trademark disputes, summary judgment is

22   generally disfavored in the trademark arena." *Am. Auto. Ass'n of N. Cal., Nev. & Utah v. Gen.*

23   *Motors LLC*, 367 F. Supp. 3d 1072, 1088 (N.D. Cal. 2019) (quoting *Interstellar Starship Servs.,*

24   *Ltd. v. Epix Inc.*, 184 F.3d 1107, 1109 (9th Cir. 1999)); *see also Yuga Labs, Inc. v. Ripps*,

25   144 F.4th 1137, 1167 (9th Cir. 2025) (collecting cases).

26   **III.    IMPOSSIBLE'S MOTION**

27        Impossible does not request partial summary judgment as to any of the Parties' claims or

28   counterclaims but instead seeks to knock out IX's demands for damages and its affirmative

United States District Court
Northern District of California

defenses.[3] The Court finds that Impossible is entitled to partial summary judgment as to IX's demand for reputational damages and its five affirmative defenses, but that triable issues of fact preclude partial summary judgment as to IX's demands for corrective advertising damages and punitive damages.

### A. Damages

#### 1. Corrective Advertising Damages

Impossible requests that the Court grant partial summary judgment that IX is not entitled to corrective advertising damages. Impossible argues that IX cannot establish entitlement to corrective advertising damages because it has failed to adduce any evidence that the value of IX's marks was damaged by the Impossible Cookbook and Impossible Swag. Pl.'s Mot. at 4. IX responds that Mr. Runyon's 30(b)(6) deposition testimony, together with the expert opinions of Dr. Palmatier and Dr. Vanderhart, *see* Henn Decl. Ex. H ("Vanderhart Rep."), creates a triable issue of fact as to whether IX's goodwill, reputation, and business have been injured because of Impossible's use of its IMPOSSIBLE marks in connection with the Impossible Cookbook and the Impossible Swag. Defs.' Opp. at 9.

"An award of the cost of corrective advertising, like compensatory damage awards in general, is intended to make the plaintiff whole. It does so by allowing the plaintiff to recover the cost of advertising undertaken to restore the value plaintiff's trademark has lost due to defendant's infringement." *Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 988 (9th Cir. 1995). "Such an award, however, is 'appropriate only where a plaintiff has shown that in fact it has been injured,' or, put another way, 'that the mark lost value.'" *Fortinet, Inc. v. Fortanix, Inc.*, No. 20-cv-6900-MMC, 2022 WL 1128723, at *11 (N.D. Cal. Apr. 15, 2022) (quoting *Marketquest Grp., Inc. v. BIC*

---

[3] At oral argument, it became apparent that one of Impossible's theories for why it was entitled to partial summary judgment as to punitive damages went to the merits of IX's underlying common-law unfair competition claim. While Impossible indicated in its notice of the motion that it intended to move for partial summary judgment as to IX's common-law unfair competition claim, *see* ECF No. 259, this was not included in the table of contents, and it was not readily apparent from the moving papers that Impossible sought summary judgment on the underlying claim. The Court finds that Impossible's failure to clearly identify this ground for summary judgment raises a notice issue and that consideration of Impossible's argument would be prejudicial. *Cf. Ortiz v. Lopez*, 688 F. Supp. 2d 1072, 1076 n.1 (E.D. Cal. 2010).

United States District Court
Northern District of California

1   *Corp.*, 316 F. Supp. 3d 1234, 1301 (S.D. Cal. 2018)).  A plaintiff seeking corrective advertising

2   damages must demonstrate that (1) it enjoys an established goodwill and reputation, (2) it has

3   suffered harm to that goodwill and reputation because of the defendant's infringing activities, and

4   (3) corrective advertising is appropriate to restore that harm.  *Skydive Ariz., Inc. v. Quattrocchi*,

5   673 F.3d 1105, 1113 (9th Cir. 2012).  While the plaintiff "need not show a specific measure of

6   harm," it "must present non-speculative evidence that goodwill and reputation . . . was damaged in

7   some way."  *Quia Corp. v. Mattel, Inc.*, No. 10-cv-1902-JF-HRL, 2011 WL 2749576, at *6

8   (N.D. Cal. July 14, 2011); *see also Int'l Oddities v. Record*, No. 12-cv-3934-CAS, 2013 WL

9   3864050, at *14 (C.D. Cal. July 22, 2013).

10       Impossible argues that Mr. Runyon's deposition testimony—which is binding on IX—

11   conclusively establishes that IX's marks have not been harmed at all.  *See* Pl.'s Mot. at 5–6.

12   Impossible points out that Mr. Runyon was unable to state what the value of his business or marks

13   were at any point in the last ten years and repeatedly confirmed that IX's reputation "is" and has

14   "always been very good" among its target "consumers, just everyday people."  *Id.* (quoting

15   Runyon Dep. Tr. at 305:2–306:12).  In this respect, Impossible seeks to analogize this case to *Wag*

16   *Hotels, Inc. v. Wag Labs, Inc.*, No. 20-cv-1326-BLF, 2023 WL 3605977 (N.D. Cal. May 22,

17   2023), where the plaintiff's CFO testified that the plaintiff "ha[d] not done any particular analysis

18   on" whether the defendant had done anything to impact the company's financial performance, and

19   the plaintiff's CEO testified that no analysis had been done as to whether defendant's alleged

20   misconduct impacted the value of the plaintiff's goodwill.  *Id.* at *9.  In *Wag Hotels*, the Court

21   concluded that the defendant was entitled to summary judgment on the issue of corrective

22   advertising damages because the plaintiff had "provided no evidence of any damage to the value

23   of its mark."  *Id.* at *10.

24       In opposing the motion, IX first points to other portions of Mr. Runyon's 30(b)(6)

25   deposition testimony, where he testified to several specific instances of actual consumer

26   confusion.  For example, he stated that, at a festival, "approximately half a dozen people were

27   confused" when he approached them, explaining that their association of his brand with

28   Impossible caused them to be "cautious[]" in their dealings with him.  Runyon Dep. Tr. at 285:4–

United States District Court
Northern District of California

286:17.  Mr. Runyon also stated that, on a separate occasion, upon seeing his IMPOSSIBLE t-shirt a customer asked him:  "It's not that Impossible meat company?  You're in the wrong place if do [sic] that."  *Id*. at 288:17–21.  Mr. Runyon explained that the harm caused by this confusion has been that he has had to "counteract[ customers'] impulse negative reaction[s]," and that this difficulty has been compounded by reduced search rankings on Google and has required IX to increase its advertising expenses.  *Id.* at 311:4–18, 312:14–313:8.

While the Court agrees that Mr. Runyon's testimony in isolation would be unlikely to create a genuine factual dispute as to harm to IX's marks, IX also identifies portions of its expert reports describing IX's performance and brand value.  In his expert report, Dr. Palmatier opined that IX's expenditures with respect to its IMPOSSIBLE brand "allowed [IX] to generate brand awareness and a unique brand identity," Palmatier Rep. ¶ 24, further stating that "[a]ny negative or unwanted associations due to consumer confusion that are linked to the [IX's] brand or other damage to [its] brand would typically require restorative marketing investments (e.g., corrective advertising) to rebuild [IX's] brand equity."  *Id.* ¶ 6; *see also id.* ¶ X ("Impossible Foods' sales and promotion of Impossible-branded clothing and cookbooks viewed by [IX's] customers or potential customers would damage [IX's] brand equity.").  In her expert report, Dr. Vanderhart showed that IX's income decreased after the release of the Impossible Cookbook and Impossible Swag.  Vanderhart Rep. Ex. C-2; *see also id.* ¶¶ 50–51.

The Court concludes that Mr. Runyon's testimony, taken together with Dr. Palmatier and Dr. Vanderhart's expert reports, is sufficiently nonspeculative for purposes of summary judgment.  To the extent that Impossible argues that Mr. Runyon's failure to provide a precise valuation of IX's trademarks or profits bars corrective advertising damages as a matter of law, the Ninth Circuit has made it clear that a plaintiff is not required to "provide a specific mathematical formula."  *Skydive Ariz.*, 673 F.3d at 1112.  Similarly, Mr. Runyon's opinion that IX enjoys a positive reputation with its customers does not as a matter of law negate the other portions of his testimony in which he stated that customers falsely associated IX with Impossible and drew negative inferences against him because of that association.  Although Impossible will be free to argue at trial that these portions of Mr. Runyon's testimony are contradictory, it is for the jury—

1    not the Court at summary judgment—to make a final credibility determination, and the jury is

2    "entitled to . . . hear the full evidence" rather than "isolated sentences" from Mr. Runyon's

3    deposition.  *Snapp v. United Transp. Union*, 889 F.3d 1088, 1103 (9th Cir. 2018).

4         Relatedly, Impossible argues that, even if there is evidence of harm to IX's reputation and

5    goodwill, IX has failed to show that such harm was caused by Impossible's alleged infringing

6    conduct (i.e., the Impossible Cookbook and Impossible Swag), as opposed to Impossible's

7    legitimate use of its IMPOSSIBLE (i.e., in connection with its line of plant-based meat

8    substitutes).  Pl.'s Mot. at 13.  In this respect, Impossible identifies portions of Dr. Palmatier's

9    deposition testimony in which he testified that he did not "isolate the effect [of] Impossible Foods'

10   distribution of free clothing" and the Impossible Cookbook on IX's marks.  Henn Decl. Ex. I

11   ("Palmatier Dep. Tr.") at 192:3–10.  Impossible's argument—which it styles as an objection that

12   IX has not sufficiently set forth evidence showing causation—amounts at bottom to an attack on

13   the weight of the evidence, which is not a ground for summary judgment.

14        While the Court agrees that a reasonable jury could infer from the record that any harm to

15   IX was caused by Impossible's legitimate use of its marks, it is not for the Court to make this

16   determination at the summary judgment stage.  This case is unlike *Wag Hotels*, where the Court

17   noted that the plaintiff solely relied upon evidence of consumer confusion and failed to present

18   any competent evidence that "this confusion resulted in damage to the value of its mark by

19   comparing its profits before and after the infringement."  *Wag Hotels*, 2023 WL 3605977, at *9.

20   Here, in contrast, IX "compare[d its] historical sales and profits before and after the infringement

21   and calculated[] lost profits that could be attributable to this confusion."  *Marketquest*,

22   316 F. Supp. 3d at 1301.  "Although certainly there could be other explanations for this loss," the

23   Court agrees with IX that "this is sufficient information to put the theory in front of the jury for

24   determination."  *Id.*

25        While the Court agrees that IX certainly faces an uphill battle at trial, the Court concludes

26   that a reasonable jury could find that IX experienced a financial decline following the release of

27   the Impossible Cookbook and Impossible Swag that was attributable to harm to IX's goodwill and

28   reputation.  Accordingly, Impossible's request for partial summary judgment that IX is not entitled

United States District Court
Northern District of California

10

1    to corrective advertising damages is DENIED.

2        **2. Reputational Damages**

3        Impossible also requests that the Court grant partial summary judgment that IX is not

4    entitled to reputational damages.  Pl.'s Mot. at 17.  Impossible argues that, because IX did not

5    provide a computation in its initial disclosures of such damages pursuant to Federal Rule of Civil

6    Procedure 26, *see* Henn Decl. Ex. S, dismissal of its demand for reputational damages is

7    appropriate under Rule 37(c)(1)(C).  Pl.'s Mot. at 17.  IX does not contest the point.

8        Rule 26 requires that a party provide a "computation of each category of damages claimed

9    by the disclosing party" in its initial disclosures.  Fed. R. Civ. P. 26(b)(1)(A)(iii).  The purpose of

10   the computation requirement is to apprise defendants of their potential exposure and to enable

11   defendants to make informed decisions as to settlement and discovery.  *City & Cty. of San*

12   *Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 221 (N.D. Cal. 2003).  "Rule 37 'gives teeth' to

13   Rule 26's disclosure requirements by forbidding the use at trial of any information that is not

14   properly disclosed."  *Goodman v. Staples the Off. Superstore, LLC*, 644 F.3d 817, 827 (9th Cir.

15   2011) (quoting *Yeti by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (2001)).

16   "[W]here a party fails to disclose information required in Rule 26(a) and that failure is not

17   harmless, a party may not be permitted to use that evidence at trial."  *Colombini v. Members of Bd.*

18   *of Dirs. of Empire Coll. Sch. of L.*, No. 97-cv-4500-CRB, 2001 WL 1006785, at *8 (N.D. Cal.

19   Aug. 17, 2001), *aff'd sub nom.*, *Colombini v. Members of Bd. of Dirs.*, 61 F. App'x 387 (9th Cir.

20   2003).  This is based on the straightforward recognition that "[d]efendants are not required to

21   compute damages[ because] Rule 26 requires plaintiffs to do so."  *Villagomes v. Lab'y Corp. of*

22   *Am.*, 783 F. Supp. 2d 1121, 1129 (D. Nev. 2011).

23       There is no dispute that IX failed to comply with Rule 26's disclosure requirement with

24   respect to reputational damages:  Its initial disclosure makes no reference to reputational damages.

25   *See* Henn Decl. Ex. S at 14 ("[IX] seeks disgorgement of profits under 15 U.S.C. § 1117(a), as

26   well as punitive and exemplary damages as the Court finds appropriate to deter any future willful

27   infringement.").  The Court agrees with Impossible that IX's failure to provide any information

28   about the computation of reputational damages is prejudicial to Impossible because it deprives

United States District Court
Northern District of California

11

Impossible of the opportunity to reasonably respond to the demand.  Because it is "wholly unclear how [IX is] to determine the damages to . . . reputation" the Court agrees that "exclusion of this damages theory is warranted."  *Int'l Metaphysical Ministry, Inc. v. Wisdom of Heart Church*, No. 21-cv-8066-KAW, 2022 WL 19691043, at *6 (N.D. Cal. Dec. 19, 2022).  Having determined that all such evidence would be excluded at trial, the Court finds that IX cannot present any evidence to show any disputed facts with respect to reputational damages.  Accordingly, Impossible's request for partial summary judgment that IX is not entitled to reputational damages is GRANTED.

### 3.  Punitive Damages

Impossible requests that the Court grant partial summary judgment that IX is not entitled to punitive damages with respect to its common-law infringement claim.  Impossible argues that IX cannot establish entitlement to punitive damages because it has failed to create a triable issue of fact that (1) IX is entitled to actual damages, (2) IX has superior common-law rights in California, and (3) Impossible acted with oppression, fraud, or malice.  Pl.'s Mot. at 17–18.  As described *supra*, the Court finds that IX has met its burden of raising a triable issue of fact as to actual damages; the Court also declines to consider Impossible's merits-based argument that IX's underlying common-law unfair competition claim fails because of the lack of notice to IX.  Accordingly, the Court limits its analysis to Impossible's third argument, to which IX responds that there is sufficient evidence for a reasonable jury to conclude that Impossible intentionally adopted IX's trademark in conscious disregard of IX's rights.  Defs.' Opp. at 23.

Under California law, a party may be awarded punitive damages only if "there is some evidence of fraud, malice, express or implied, or oppression."  *Spinks v. Equity Residential Briarwood Apartments*, 171 Cal. App. 4th 1004, 1052 (2009).  Punitive damages must be proven by 'clear and convincing' evidence."  *Am. Airlines, Inc. v. Sheppard, Mullin, Richter & Hampton*, 96 Cal. App. 4th 1017, 1050 (2002) (quoting Cal. Civ. Code § 3294).  "In the usual case, the question of whether the defendant's conduct will support an award of punitive damages is for the trier of fact, since the degree of punishment depends on the peculiar circumstances of each case."  *Spinks*, 171 Cal. App. 4th at 1053; *see also Hannon Eng'g, Inc. v. Reim*, 126 Cal. App. 3d 415,

431 (1981).

The Court finds no good reason to diverge from the general principle that punitive damages awards are a question for the trier of fact. A reasonable jury could find, for example, that Impossible's alleged infringement of a much smaller competitor's intellectual property is oppressive, fraudulent, or malicious. *See QS Wholesale, Inc. v. World Mktg., Inc.*, No. 12-cv-451, 2014 WL 12586120, at *4 (C.D. Cal. Jan. 7, 2014). Accordingly, Impossible's request for partial summary judgment that IX is not entitled to punitive damages is DENIED.

### B. Affirmative Defenses

#### 1. Laches

IX contends that Impossible's Lanham Act and common-law unfair competition claims challenging the IX Powders are barred by laches based on Impossible's "longstanding actual and/or constructive knowledge of [IX's] use of IMPOSSIBLE with edible products." Answer at 53. Impossible requests that the Court grant partial summary judgment that the claims are not barred by laches because IX cannot prove the elements of the claim. Impossible supports this argument with evidence showing that (1) Impossible asserted its claims two years after IX began selling the IX Powders in 2022, and (2) there is no evidence of prejudice. Pl.'s Mot. at 20. IX responds that it began selling krill oil under the IMPOSSIBLE brand in 2017, such that Impossible delayed seven years in asserting its claims. Defs.' Opp. at 24.

"Laches is an equitable time limitation on a party's right to bring suit." *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002) (quoting *Boone v. Mech. Specialties Co.*, 609 F.2d 956, 958 (9th Cir. 1979)). The doctrine is animated by the concern that "one who seeks the help of a court of equity must not sleep on his rights." *Id.* (citation omitted). To prevail on the affirmative defense of laches, a defendant must establish that (1) the plaintiff unreasonably delayed in suing and (2) such delay is prejudicial to the defendant. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 997 (9th Cir. 2006).

Noting the "strong presumption against laches" in cases where a claim is brought within four years of the date a plaintiff "knew (or should have known) of the allegedly infringing conduct," Impossible argues that summary judgment is appropriate because it moved to assert its

United States District Court
Northern District of California

1    claims two years after IX began selling the IX Powders in 2022.  *Id.* at 20 (quoting *Eat Right*

2    *Foods Ltd. v. Whole Foods Mkt., Inc.*, 880 F.3d 1109, 1115 (9th Cir. 2018)).  "Determining

3    whether a plaintiff delayed unreasonably consists of (1) assessing the length of the delay and then

4    (2) determining whether the delay was reasonable."  *Kiva Health Brands LLC v. Kiva Brands Inc.*,

5    439 F. Supp. 3d 1185, 1191 (N.D. Cal. 2020).  IX adduces no evidence that Impossible had actual

6    or constructive notice of IX's use of the IMPOSSIBLE mark in connection with its krill oil, so any

7    delay by Impossible was presumptively reasonable.  *See Reno Air Racing Ass'n. v. McCord*,

8    452 F.3d 1126, 1139 (9th Cir. 2006) (explaining that laches requires more than a "mere handful of

9    limited sales . . . [with] no evidence of knowledge").

10          The Court notes that, at oral argument, IX represented that there is evidence in the record

11    that Impossible apparently monitored IX for inspiration around the time it began rebranding in the

12    early 2010s.  IX did not identify any evidence, however, that Impossible was still monitoring IX at

13    the time that IX began offering krill oil, which it began selling years later.  In any event, IX did

14    not raise this argument in its opposition brief, so it is waived.  *See In re Online DVD Rental*

15    *Antitrust Litig.*, No. 09-cv-2029-PJH, 2011 WL 5883772, at *12 (N.D. Cal. Nov. 23, 2011)

16    (explaining that, absent unusual circumstances, failure to respond to argument on merits "viewed

17    as grounds for waiver or concession of the argument").

18          IX having failed to adduce any evidence of unreasonable delay, the Court concludes that

19    Impossible is entitled to partial summary judgment that its claims are not barred by laches.

20    Moreover, the Court concludes that partial summary judgment is independently warranted because

21    of IX's failure to even suggest that any delay by Impossible in asserting its claims has been

22    prejudicial.  *See Adidas Am., Inc. v. Payless Shoesource, Inc.*, 546 F. Supp. 2d 1029, 1072 (D. Or.

23    2008) (granting summary for failure to show prejudice).  Courts generally recognize two forms of

24    prejudice in the context of laches: (1) expectations-based prejudice and (2) evidentiary prejudice.

25    "'Expectations' based prejudice occurs when a defendant 'took actions or suffered consequences

26    that it would not have, had the plaintiff sued promptly.'  'Evidentiary prejudice includes such

27    things as lost, stale, or degraded evidence, or witnesses whose memories have faded or who have

28    died.'"  *EEOC v. Timeless Invs., Inc.*, 734 F. Supp. 2d 1035, 1067 (E.D. Cal. 2010) (citation

United States District Court
Northern District of California

14

1    omitted) (quoting *Grand Canyon Tr. v. Tucson Elec. Power Co.*, 391 F.3d 979, 988 (9th Cir.

2    2004)).  There is no evidence that Impossible's failure to bring suit in 2017 caused IX to act to its

3    detriment or impaired its ability to defend itself in these proceedings.  Indeed, IX practically

4    conceded that it failed to meet its burden as to prejudice at oral argument.  Accordingly,

5    Impossible's request for partial summary judgment as to laches is GRANTED.

6    　　　　**2.  Waiver**

7    　　　　IX contends that Impossible's trademark cancellation claims are barred by waiver based on

8    Impossible's "actual and constructive use of [IX's] use and trademark of the IMPOSSIBLE-

9    formative mark in relation to non-edible products since at least 2013."  Answer at 53.  Impossible

10   requests that the Court grant partial summary judgment that the claims are not barred by waiver

11   because IX has not provided any evidence of an affirmative act by Impossible, as is required for an

12   affirmative defense of waiver.  Pl.'s Mot. at 20–21.  IX's only response—which is its sole

13   response to Impossible's motion as to each of IX's remaining affirmative defenses—is that

14   "Impossible Foods fails to carry its burden of production because it does not cite any evidence to

15   negate an essential element of the defenses or show that [IX] lacks evidence to support them."

16   Defs.' Opp. at 25.

17   　　　　IX's position is untenable as a matter of law.  Impossible provided the Court with IX's full

18   explanation of the evidence underlying the acquiescence defense (which overlaps significantly

19   with waiver and estoppel), *see* Henn Decl. Ex. T, which is more than sufficient to "show that the

20   nonmoving party does not have enough evidence of an essential element to carry its ultimate

21   burden of persuasion at trial."  *Unicorn Energy AG v. Tesla Inc.*, 740 F. Supp. 3d 930, 940

22   (N.D. Cal. 2024); *see also Nissan*, 210 F.3d at 1102 ("[T]he nonmoving party does not have

23   enough evidence of an essential element to carry its ultimate burden of persuasion at trial.").  IX's

24   non-response necessarily compels summary judgment in Impossible's favor.  The Court addresses

25   each remaining affirmative defense solely for the sake of completeness.

26   　　　　Waiver is "the intentional relinquishment or abandonment of a known right."  *Lynch*

27   *v. Cal. Coastal Com.*, 3 Cal. 5th 470, 475 (2017).  For a court to find that a party has waived its

28   rights, the court must find "an existing right, the waiving party's knowledge of that right, and the

United States District Court
Northern District of California

1    party's 'actual intention to relinquish the right.'"  *Id.* (quoting *Bickel v. City of Piedmont*,

2    16 Cal. 4th 1040, 1053 (1997)).  "Waiver always rests upon intent."  *Id.* (quoting *City of Ukiah*

3    *v. Fones*, 64 Cal. 2d 104, 107 (1966)).

4         Because IX "has provided no evidence that [Impossible] knew of [its conduct], much less

5    that it intentionally and knowingly abandoned any rights . . . because of such knowledge,"

6    Impossible is entitled to partial summary judgment that its claims are not barred by waiver.  *LL B*

7    *Sheet 1, LLC v. Loskutoff*, 362 F. Supp. 3d 804, 823 (N.D. Cal. 2019).  The Court accordingly

8    GRANTS Impossible's request for partial summary judgment as to waiver.

9         **3.  Acquiescence**

10        IX contends that Impossible's trademark cancellation claims are barred by the doctrine of

11   acquiescence "based on [Impossible's] active representation that it would not assert a right or

12   claim against [IX] for their use of the IMPOSSIBLE-formative mark."  Answer at 53.  Impossible

13   requests that the Court grant partial summary judgment that the claims are not barred by

14   acquiescence because IX has not provided any evidence of an active representation.  Pl.'s Mot.

15   at 21.

16        "To establish a claim for acquiescence, defendant must prove that plaintiff knew of facts

17   giving it notice of its trademark infringement claim."  *Nat'l Grange of the Ord. of Patrons of*

18   *Husbandry v. Cal. State Grange*, 115 F. Supp. 3d 1171, 1180 (E.D. Cal. 2015), *aff'd sub nom.*,

19   *Nat'l Grange of Ord. of Patrons of Husbandry v. Cal. State Grange*, 715 F. App'x 747 (9th Cir.

20   2018).  The defendant must demonstrate that "(1) the senior user actively represented that it would

21   not assert a right or a claim; (2) the delay between the active representation and assertion of the

22   right or claim was not excusable; and (3) the delay caused the defendant undue prejudice."  *Eat*

23   *Right Foods*, 880 F.3d at 1121 (quoting *Seller Agency Council, Inc. v. Kennedy Ctr. for Real Est.*

24   *Educ., Inc.*, 621 F.3d 981, 989 (9th Cir. 2010)).

25        To the extent that IX implies that Impossible's purported delay or failure to act is

26   tantamount to an active representation, that is simply not the case.  *See, e.g.*, *PetConnect Rescue,*

27   *Inc. v. Salinas*, 656 F. Supp. 3d 1131, 1180 (S.D. Cal. 2023); *Tri-Union Seafoods LLC v. Otis*

28   *McAllister, Inc.*, No. 17-cv-6646-JSW, 2020 WL 1550233, at *4 (N.D. Cal. Jan. 8, 2020)

("Acquiescence requires 'active consent' while laches implies 'merely passive consent.'" (quoting *Tillamook Country Smoker, Inc. v. Tillamook Cty. Creamery Ass'n*, 311 F. Supp. 2d 1023, 1031 n.2 (D. Or. 2004), *aff'd*, 465 F.3d 1102 (9th Cir. 2006))).  The Court accordingly GRANTS Impossible's request for partial summary judgment as to acquiescence.

### 4.  Estoppel

IX contends that Impossible's trademark cancellation claims are estopped "based on [Impossible's] actual knowledge that [IX was] using the IMPOSSIBLE formative-mark [sic] with the non-edible products and services at issue in those claims."  Answer at 53.  Impossible requests that the Court grant partial summary judgment that the claims are not estopped because IX has not adduced evidence as to any of the elements required for estoppel.  Pl.'s Mot. at 21.

The elements of equitable estoppel are as follows: "(1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel has a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury."  *Schafer v. City of Los Angeles*, 237 Cal. App. 4th 1250, 1261 (2015).

For the same reasons that the Court finds that Impossible is entitled to summary judgment as to IX's waiver and acquiescence affirmative defenses, the Court concludes that Impossible is entitled to summary judgment as to IX's estoppel affirmative defense.  Namely, there is no evidence that Impossible was apprised of IX's alleged fraud or abandonment, and IX has not adduced any evidence of injury.  The Court accordingly GRANTS Impossible's request for partial summary judgment as to estoppel.

### 5.  Unclean Hands

IX contends that Impossible's trademark cancellation claims are barred by the doctrine of unclean hands "based on [Impossible's] inequitable conduct."  Answer at 53.  Impossible requests that the Court grant partial summary judgment that the claims are not barred by the doctrine of unclean hands because there is no evidence that Impossible acted inequitably with respect to its cancellation claims.  Pl.'s Mot. at 21.

"The unclean hands doctrine 'closes the doors of a court of equity to one tainted with

United States District Court
Northern District of California

1    inequitableness or bad faith relative to the matter in which he seeks relief.'" *Jarrow Formulas*,

2    304 F.3d at 841 (quoting *Precision Instr. Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814

3    (1945)). To make out an unclean hands defense, a trademark defendant "must demonstrate that

4    the plaintiff's conduct is inequitable and that the conduct *relates to the subject matter of its*

5    *claims*." *Japan Telecom, Inc. v Japan Telecom Am. Inc.*, 287 F.3d 866, 870 (9th Cir. 2002)

6    (emphasis added) (quoting *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 847

7    (9th Cir. 1987)).

8         IX fails to point to any evidence that Impossible acted inequitably with respect to the fraud

9    and abandonment claims. More fundamentally, it is not even clear how Impossible could not have

10   engaged in any inequitable conduct that relates to IX's alleged fraudulent acts in registering its

11   marks and then abandoning them. The Court accordingly GRANTS Impossible's request for

12   partial summary judgment as to unclean hands.

## IV.    IX'S MOTION

14        IX moves for partial summary judgment on Impossible's claims for trademark

15   infringement, unfair competition, and trademark cancellation. IX also requests summary

16   adjudication that its marks have priority as to goods and services in what it styles the "Nutrition

17   and Fitness Category." Triable issues of fact preclude summary judgment for IX as to any of

18   Impossible's claims, so the Court denies IX's motion in its entirety.

19        ### A. Lanham Act Claims

20        IX requests that the Court grant partial summary judgment as to Impossible's Lanham Act

21   claims for trademark infringement and unfair competition. IX argues that Impossible has failed to

22   create a genuine dispute as to likelihood of confusion, urging that the IX Powders are so different

23   from Impossible's offerings that no reasonable jury could find in Impossible's favor. Defs.' Mot.

24   at 7. Impossible responds that IX's argument ascribes too much weight to this one factor and that

25   it has met its burden of producing evidence showing disputed facts as to likelihood of confusion.

26   Pl.'s Opp. at 11.

27        To prevail on a claim arising under the Lanham Act, a plaintiff must prove that (1) it has a

28   protectible ownership interest in the mark and (2) the defendant's use of the mark is likely to

United States District Court
Northern District of California

confuse consumers. *Network Automation, Inc. v. Adv. Sys. Concepts*, 638 F.3d 1137, 1144 (9th Cir. 2011); *Dep't of Parks & Rec. v. Bazaar Del Mundo, Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006). The likelihood of confusion inquiry turns on whether a "reasonably prudent consumer in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." *Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998). Courts in the Ninth Circuit consider the following so-called *Sleekcraft* factors in evaluating likelihood of confusion:

> 1. strength of the mark;
> 2. proximity of the goods;
> 3. similarity of the marks;
> 4. evidence of actual confusion;
> 5. marketing channels used;
> 6. type of goods and the degree of care likely to be exercised by the purchaser;
> 7. defendant's intent in selecting the mark; and
> 8. likelihood of expansion of the product lines.

*AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979).

Application of the *Sleekcraft* factors is "fluid," and the plaintiff "need not satisfy every factor, provided that strong showings are made with respect to some of them." *Survivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 631 (9th Cir. 2005). "'Given the open-ended nature of this multi-prong inquiry' summary judgment on likelihood of confusion grounds is 'generally disfavored.'" *Roblox Corp. v. WowWee Grp. Ltd.*, No. 22-cv-4476-SI, 2024 WL 4051751, at *6 (N.D. Cal. Sept. 3, 2024) (quoting *Rearden LLC v. Rearden Comm., Inc.*, 683 F.3d 1190, 1210 (9th Cir. 2012)). IX argues that, applying certain *Sleekcraft* factors, there can be no likelihood of confusion as a matter of law; Impossible offers evidence of disputed facts on those and other factors.

### 1. Relatedness of Products and Evidence of Actual Confusion

IX dedicates a significant amount of its briefing to the argument that Impossible's plant-based meat substitutes and the IX Powders are so dissimilar that there is no likelihood of confusion as a matter of law. Defs.' Mot. at 7–9. IX argues that this dissimilarity, combined with the lack of evidence of actual consumer confusion in the record, entitles it to partial summary judgment. A reasonable jury could come out either way, and Impossible presents sufficient

1   evidence of disputed material facts.

2         "For related goods, the danger presented is that the public will mistakenly assume there is

3   an association between the producers of the related goods, though no such association exists."

4   *Sleekcraft*, 599 F.2d at 350.  In assessing relatedness, the Court considers whether the goods at

5   issue are (1) complementary, (2) sold to the same class of purchasers, or (3) similar in use and

6   function.  *Reeves v. Gen. Nutrition Ctrs., Inc.*, No. 10-cv-1654-JAK, 2012 WL 13018362, at *4

7   (C.D. Cal. Apr. 2, 2012).  IX makes much of Impossible's corporate designee's deposition

8   testimony that "nutritional supplements are not the same types of products as plant-based meat

9   products."  Washington Decl. Ex. BB ("Hatman Dep. Tr.") at 298:2–5.

10        Ms. Hatman's testimony certainly may imply that the goods are not particularly

11  complementary, but "the law does not demand complete identity of goods."  *His & Her Corp.*

12  *v. Shake-N-Go Fashion Inc.*, No. 11-cv-5323-CAS, 2015 WL 13604255, at *7 (C.D. Cal. Apr. 6,

13  2015).  "[T]he concept of relatedness . . . . does not mean that customers would necessarily

14  consider the products as interchangeable."  *Nimbus Data Sys., Inc. v. Nimble Storage, Inc.*,

15  No. 11-cv-5323-CAS, 2011 WL 13261995, at *3 (N.D. Cal June 27, 2011).  Although the Court

16  agrees that a reasonable jury could find that the goods belong to different sides of the spectrum of

17  edible food products, they do have some similarities, such as emphasizing nutrition.  *Cf. San*

18  *Miguel Pure Foods Co. v. Ramar Int'l Corp.*, No. 11-cv-9747-RGK, 2012 WL 13227045, at *6

19  (C.D. Cal. Nov. 27, 2012) ("Courts have found a likelihood of confusion in seemingly unrelated

20  food items, such as . . . bakery products and frozen chicken.").

21        There is also conflicting evidence as to whether the goods are directed to similar customer

22  bases.  On one hand, IX persuasively demonstrates that the Parties' offerings are directed to

23  entirely different constituencies, pointing out that Ms. Hatman testified that Impossible's offerings

24  target consumers concerned with "the ethical or environmental consequences that may come with

25  eating animal meat," Hatman Dep. Tr. at 169:9–16, while the IX Powders are directed to

26  consumers interesting in enhancing physical performance, Runyon Dep. Tr. at 347:3–18.  On the

27  other hand, Impossible points to evidence showing that that other well-known companies sell both

28  types of products, *see* Declaration of Bruce Nelson ("Nelson Decl.") Exs. A–L, supporting the

United States District Court
Northern District of California

1    inference that consumers could expect meat substitutes and energy supplements to be sold by the

2    same company.  *Naterra Int'l, Inc. v. Bensalem*, 92 F.4th 1113, 1117 (Fed. Cir. 2024)

3    ("[T]estimony that third-party companies sell both types of goods is pertinent to the relatedness of

4    the goods.").[4]

5         With regard to evidence of actual confusion, which Impossible concedes there is little, *see*

6    Pl.'s Opp. at 16, "the absence of such evidence is not dispositive."  *Sunsauce Foods Indus. Corp.*

7    *v. Son Fish Sauce USA Corp.*, No. 22-cv-8973-PCP, 2024 WL 4933346, at *6 (N.D. Cal. Dec. 2,

8    2024) (quoting *Off. Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1393 (9th Cir. 1993)); *see also*

9    *Acad. of Mot. Picture Arts & Scis. v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1456

10   (9th Cir. 1991).  The paucity of evidence of actual confusion is not dispositive in this case.  *See*

11   *Gallo Winery*, 967 F.2d at 1292 (explaining that the absence of evidence of actual confusion "need

12   not create an inference that there is no likelihood of confusion").  Indeed, the lack of actual

13   evidence is hardly surprising given IX's small number of customers.  *See* Flemming Decl. Ex. X.

14   A reasonable jury could find, however, that the "'scant evidence of actual confusion in the

15   record[]' . . . favors [the] defendant."  *La Canada Ventures*, 2024 WL 3643082, at *3 (quoting

16   *Surfvivor Media*, 406 F.3d at 633); *accord Top Brand LLC v. Cozy Comfort Co. LLC*, 143 F.4th

17   1349, 1366 (Fed. Cir. 2025).

18        **2.  Strength and Similarity of Marks**

19        Impossible argues that there is evidence in the record from which a reasonable jury could

20   determine that there is a likelihood of confusion, particularly with respect to its marks' strength

21   and the similarity of the marks.  The Court agrees and accordingly finds that there is a triable

22   factual dispute precluding partial summary judgment.

23        "The stronger a mark—meaning the more likely it is to be remembered and associated in

24   the public mind with the mark's owner—the greater the protection it is accorded by the trademark

25   laws."  *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1058 (9th Cir. 1999).

26

27   _____

28   [4] IX objects to evidence of third parties offering both products on the ground that Impossible did not disclose it during discovery.  Defs.' Reply at 2–3.  The objection is meritless, as this information is publicly available.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    A mark's strength is evaluated along two axes: conceptual strength and commercial strength.

2    *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1207 (9th Cir. 2000).

3        "To determine a mark's conceptual strength, we classify a mark along a spectrum of five

4    categories ranging from strongest to weakest: arbitrary, fanciful, suggestive, descriptive, and

5    generic.  Arbitrary and fanciful marks, which employ words and phrases with no commonly

6    understood connection to the product," are the strongest.  *JL Beverage Co. v. Jim Beam Brands*

7    *Co.*, 828 F.3d 1098, 1107 (9th Cir. 2016) (citation omitted).  A reasonable jury could conclude

8    that Impossible's marks are arbitrary, i.e., "actual words with no connection to the product."

9    *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1033

10   (9th Cir. 2010).  Because the word "impossible" arguably does not describe or suggest any

11   specific qualities of Impossible's plant-based meat substitutes, a jury could reasonably conclude

12   that marks are conceptually strong and should be accorded significant protection.  *See JL*

13   *Beverage Co.*, 828 F.3d at 1108.

14       Commercial strength "is based on 'actual marketplace recognition,' and thus 'advertising

15   expenditures can transform a suggestive mark into a strong mark.'"  *Network Automation*,

16   638 F.3d at 1149 (quoting *Brookfield Commc'ns*, 174 F.3d at 1058).  Impossible has adduced

17   evidence that it has used its marks extensively in connection with advertising and promoting its

18   plant-based offerings since 2016.  *See, e.g.*, Declaration of H. Forrest Flemming ("Flemming

19   Decl.") Ex. F at 8, ECF No. 274-1.  A reasonable jury could determine that IMPOSSIBLE's marks

20   command significant actual recognition in the marketplace.

21       IX does not dispute that Impossible's marks are strong, instead baldly asserting that this

22   factor "does not even merit attention" because the Parties' "product lines are so distinct that the

23   strength of the mark at issue is simply not relevant."  Defs.' Mot. at 11.  Not so.  The Ninth Circuit

24   has endorsed a "sliding scale approach as to the weight that relatedness will carry dependent upon

25   the strength of the trademark holder's mark."  *Entrepreneur Media*, 279 F.3d at 1148; *see also*

26   *Dermfx, Inc. v. Obagi Med. Prods., Inc.*, No. 15-cv-1999-JVS, 2017 WL 2684548, at *8

27   (C.D. Cal. Mar. 24, 2017) ("When the disputed mark is weak, the 'proximity' or 'relatedness'

28   factor carries less weight in the likelihood of confusion analysis." (quoting *Entrepreneur Media*,

279 F.3d at 1148)).  A reasonable jury could find that this factor weighs in Impossible's favor.

Similarity of marks "is 'critical' to any likelihood-of-confusion analysis because '[o]bviously, the greater the similarity between the two marks at issue, the greater the likelihood of confusion.'" *Yuga Labs*, 144 F.4th at 1169 (alteration in original) (quoting *GoTo.com*, 202 F.3d at 1205–06).  The fact finder must consider the marks "as a whole, as they appear in the marketplace," *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1291 (9th Cir. 1992), on three levels: sight, sound, and meaning.  *See, e.g.*, *Good Meat Project v. GOOD Meat, Inc.*, 716 F. Supp. 3d 783, 800 (N.D. Cal. 2024).  As with the strength of Impossible's marks, IX does not dispute the marks' similarity.

Impossible points to the evidence of similarity between the marks—a fact finder could determine that they are "strikingly similar." *Trader Joe's Co. v. Trader Joe's United*, 150 F.4th 1040, 1051 (9th Cir. 2025); *see also La Canada Ventures, Inc. v. MDalgorithms, Inc.*, No. 22-cv-7197-RS, 2024 WL 3643082, at *5 (N.D. Cal. Aug. 2, 2024) ("The common use of this dominant element tends to show similarity in the parties' marks." (quoting *Alpha Indus., Inc. v. Alpha Steel Tube & Shapes, Inc.*, 616 F.2d 440, 444 (9th Cir. 1980))).  While IX's marks include a strikethrough that is not present in Impossible's mark, the Court concludes that a reasonable jury could conclude that this factor "weighs in [Impossible's] favor as similarities in marks 'weigh more heavily than differences.'" *Id.* (quoting *Alpha Indus.*, 616 F.2d at 444).  Courts have routinely found that marks were identical in similar contexts.  *See Brookfield Commc'ns*, 174 F.3d at 1055 (collecting cases).  By virtue of being the same word, the marks also have the same sound and meaning.  A reasonable jury could find that this factor weighs in Impossible's favor.

### 3. Remaining Factors

The Parties dedicate some briefing to the remaining *Sleekcraft* factors.  Based on its review of the remaining factors, the Court concludes that there are significant factual disputes that require fact finding, rendering partial summary judgment inappropriate.

a. <u>Marketing Channel Convergence</u>.  "Just as visual, aural, and semantic similarities between marks increase the likelihood of confusion, so too do convergent marketing channels.  In assessing marketing channel convergence, courts consider whether the

parties' customer bases overlap and how the parties advertise and market their products." *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1130 (9th Cir. 2014) (citation omitted). This factor looks to whether consumers are likely to be confused by encountering the parties' goods in similar contexts. *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 876–77 (9th Cir. 2014). Neither party dedicates much briefing to this factor. Impossible meekly argues the Court should find that this factor tilts in its favor because both Parties sell their goods on Amazon and use social media marketing. *See* Pl.'s Opp. at 15. Generally, little weight is accorded to "the shared use of . . . ubiquitous marketing channel[s]." *Lerner & Rowe PC v. Brown Engstrand & Shely LLC*, 119 F.4th 711, 726 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 2732 (2025) (quoting *Network Automation*, 638 F.3d at 1151). The evidence presented by the Parties does not suggest much overlap between the Parties' marketing channels, so "the trier of fact should determine what weight to afford it when considering the totality of the circumstances." *Ironhawk Techs., Inc. v. Dropbox, Inc*., 2 F.4th 1150, 1167 (9th Cir. 2021).

b.  <u>Purchasers' Degree of Care</u>. "In analyzing the degree of care that a consumer might exercise in purchasing the parties' goods, the question is whether a 'reasonably prudent consumer' would take the time to distinguish between the two product lines." *Surfvivor Media*, 406 F.3d at 634 (quoting *Brookfield Commc'ns*, 174 F.3d at 1060). The two primary instances in which courts have found that consumers are likely to exercise a greater degree of care—thereby making confusion less likely—is when the consumers themselves are particularly knowledgeable about the goods at issue or when the goods are expensive. *See, e.g.*, *Network Automation*, 638 F.3d at 1152; *Brookfield Commc'ns*, 174 F.3d at 1060; *Monster, Inc. v. Dolby Lab'ys Licensing Corp.*, 920 F. Supp. 2d 1066, 1074 (N.D. Cal. 2013). There is evidence in the record that favors both parties. IX argues that by the very nature of Impossible's offerings, its customers are likely to exercise a higher degree of care than the average consumer, since individuals interested in purchasing plant-based meat alternatives often do so for

24

1    health, environmental, or ethical reasons.  Defs.' Mot. at 11.  This is certainly

2    plausible, as consumers motivated by such considerations may be more likely to

3    exercise a higher degree of discernment in making their purchases.  At the same time,

4    however, there is evidence that Impossible intends to target both vegetarian and non-

5    vegetarian consumers.  Henn Decl. Ex. E ("Krogius Dep. Tr.") at 113:1–20.

6    Impossible argues that the goods are inexpensive, analogizing them to grocery store

7    foods that have been held to demand a lesser standard of care from consumers.  Pl.'s

8    Opp. at 16 (citing ECF No. 138-7 at 9–20); *see Gallo Winery*, 967 F.2d at 1293

9    (holding that this factor weighed toward confusion in the context of wine and cheese).

10   But there is no evidence how the prices of the goods compare to similar offerings.

11   Because neither party "offers any factual evidence to support its allegations about their

12   respective customers[, t]here is therefore a genuine dispute as to this factor," and it

13   does not favor either party.  *Sunsauce Foods*, 2024 WL 4933346, at *4.

14   c.   Defendant's Intent.  "When the alleged infringer knowingly adopts a mark similar to

15   another's, reviewing courts presume that the defendant can accomplish his purpose:

16   that is, that the public will be deceived."  *Sleekcraft*, 599 F.2d at 354.  While "an intent

17   to confuse consumers is not required for a finding of trademark infringement,"

18   *Brookfield Commc'ns*, 174 F.3d at 1059, it can be "strong evidence of a likelihood of

19   confusion," *Entrepreneur Media*, 279 F.3d at 1148.  IX conclusorily argues that it "did

20   not seek to cause confusion between the marks at issue."  Defs.' Mot. at 10.  The Court

21   accords this argument little weight.  *Surfvivor Media*, 406 F.3d at 634 ("[A]bsence of

22   malice is no defense to trademark infringement[] . . . ." (alterations in original) (internal

23   citation omitted)).  In any case, IX's argument is inappropriate at the summary

24   judgment stage, where the Court must draw all inferences in the non-moving party's

25   favor:  "[A]lthough the relative weight of permissible and impermissible motives may

26   emerge at trial, [courts] must be careful about untangling them at summary judgment,

27   where we must draw all reasonable inferences in [the non-movant's] favor."  *Yuga*

28   *Labs*, 144 F.4th at 1173.

United States District Court
Northern District of California

d. <u>Likelihood of Expansion</u>.  "Inasmuch as a trademark owner is afforded greater protection against competing goods, a 'strong possibility' that either party may expand his business to compete with the other will weigh in favor of finding that the present use is infringing."  *Sleekcraft*, 599 F.2d at 354.  The primary inquiry in evaluating this factor is to determine whether the existence of the allegedly infringing mark poses the possibility of hindering the trademark holder's plans to expand its offerings.  *Entrepreneur Media*, 279 F.3d at 1152.  Impossible argues that this factor weighs in its favor because Mr. Runyon stated that IX has an interest in expanding its product line to include whey protein powder.  *See* Runyon Dep. Tr. at 348:13–16, 349:16–19.  In response, IX argues that, since whey is derived from animals, no reasonable jury could find that this expansion would compete with Impossible.  But this argument is at bottom a request for the Court to weigh the evidence, which the Court declines to do here.  In any event, the Court does not find this factor to be particularly important at this stage, since Impossible does not point to any other evidence suggesting a likelihood of expansion, and mere speculation by Mr. Runyon is not evidence.  *See Paladin Assoc., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1161 (9th Cir. 2003).

Summary judgment is not appropriate because the evidence suggests that Impossible has a strong mark, that the Parties' marks are similar, and that there is a genuine factual dispute whether the Parties' goods are related.  *See Top Brand*, 143 F.4th at 1365–66 (reviewing likelihood of confusion based on mark strength, mark similarity, and evidence of actual confusion); *Rearden*, 683 F.3d at 1209 ("A determination may rest on only those factors that are most pertinent to the particular case before the court[] . . . ."); *Lindy Pen Co. v. Bic Pen Corp.*, 796 F.2d 254, 257 (9th Cir. 1986) (reversing district court's finding of no likelihood of confusion for similar marks, even where other six factors favored the defendant); *cf. Dreamwerks*, 142 F.3d at 1130 ("Three of the *Sleekcraft* factors are pivotal here: (1) arbitrariness of the mark; (2) similarity of sight, sound and meaning; and (3) relatedness of the goods.").  "[C]onflicting facts render it unclear whether a likelihood of confusion exists, [so] summary judgment is inappropriate."  *Ironhawk*, 2 F.4th at 1161–62.  Accordingly, IX's request for partial summary judgment as to Impossible's Lanham

1    Act claims is DENIED.

2        **B. California Common Law Unfair Competition**

3        IX requests that the Court grant partial summary judgment as to Impossible's common-law

4    unfair competition claim.  IX contends that it is entitled to summary judgment on Impossible's

5    common law unfair competition claim because Impossible has not sufficiently demonstrated that

6    IX intended to "pass off" the IX Accused Products as Impossible's.  Defs.' Mot. at 12–13.

7    Impossible responds that its common-law unfair competition claim rises and falls with its Lanham

8    Act claims.  Pl.'s Opp. at 17.

9        The "ultimate test" of a common-law unfair competition claim under California law is

10   "whether the public is likely to be deceived or confused by the similarity of the marks."

11   *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1988) (quoting *New West*

12   *Corp. v. NYM Co. of Cal.*, 595 F.2d 1194, 1201 (9th Cir. 1979)); *see also Glydways, Inc. v. Glyd,*

13   *Inc.*, No. 23-cv-203-EJD, 2025 WL 2988642, at *4 (N.D. Cal. Oct. 23, 2025); *Ingrid & Isabel,*

14   *LLC v. Baby Be Mine, LLC*, 70 F. Supp. 3d 1105, 1119 (N.D. Cal. 2014).  Unfair competition

15   claims "are subject to the same test" whether they be brought under the Lanham Act or the

16   common law, and "the critical determination is 'whether an alleged trademark infringer's use of a

17   mark creates a likelihood that the consuming public will be confused as to who makes what

18   product.'"  *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 632 (9th Cir. 2008) (quoting *Brother*

19   *Recs., Inc. v. Jardine*, 318 F.3d 900, 908 (9th Cir. 2003)).

20       To the extent that IX argues that a common-law claim for unfair competition is distinct

21   from a claim under the Lanham Act in that it requires a plaintiff to separately prove "passing off,"

22   IX is mistaken.  The case that it cites for this proposition states in full that unfair competition must

23   be proven by "acts *analogous* to 'passing off,' such as the sale of *confusingly similar* products."

24   *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1147 (9th Cir. 1997) (emphasis added).

25   The Ninth Circuit "has consistently held that state common law claims of unfair competition . . .

26   are 'substantially congruent' to claims made under the Lanham Act."  *Cleary v. News Corp.*,

27   30 F.3d 1255, 1263 (9th Cir. 1994).

28       IX also appears to argue that Impossible's common-law unfair competition claim requires

27

1    it to separately prove a "competitive injury." Defs.' Mot. at 15–16. IX's argument rests on an

2    additional misapprehension of the law. Under California law, if there is a likelihood of confusion,

3    then "injury has occurred." *Ball v. Am. Trial Laws. Ass'n*, 14 Cal. App. 3d 289, 304 (1971).

4    Impossible's common-law unfair competition claim rises and falls with its Lanham Act claims, so

5    the Court DENIES IX's request for partial summary judgment as to Impossible's common-law

6    unfair competition claim.

7         **C.  Procurement by Fraud**

8         IX requests that the Court grant partial summary judgment as to Impossible's claim for

9    cancellation of the Challenged Marks for fraud on the PTO. IX focuses its motion not on the

10   merits of the claim but instead argues that it is entitled to summary judgment because

11   (1) Impossible lacks standing to assert its claim or, in the alternative, (2) Impossible's claim is

12   moot. Defs.' Mot. at 16. Impossible responds that it has standing under 15 U.S.C. § 1064(c)

13   based on IX's wielding of the Challenged Marks against Impossible and that IX's amendments to

14   certain of its marks do not moot Impossible's claim. Pl.'s Opp. at 8.

15         **1.  Standing**

16         IX argues that Impossible lacks Article III standing to pursue its claim because 15 U.S.C.

17   § 1119 authorizes cancellation of a trademark registration only when the claimant is also asserting

18   an infringement claim against that same registration. Defs.' Mot. at 17–18. According to IX,

19   section 1119 is "a strictly remedial measure imposed to address trademark infringement under the

20   Lanham Act, not a standalone claim to be freely asserted against another party's registered marks

21   absent infringement." *Id.* at 18. While the Court agrees that section 1119 does not create a

22   freestanding private cause of action for any party to seek cancellation of a trademark registration,

23   Impossible plainly has standing to assert its claim for cancellation under 15 U.S.C. § 1064(c).

24         A party seeking trademark cancellation for fraud on the PTO pursuant to 15 U.S.C.

25   §§ 1064(c), 1119 must show "a false representation regarding a material fact, the registrant's

26   knowledge or belief that the representation is false, the intent to induce reliance upon the

27   misrepresentation, and reasonable reliance thereon, and damages." *Hokto Kinoko Co. v. Concord*

28   *Farms, Inc.*, 810 F. Supp. 2d 1013, 1041 (C.D. Cal. 2011) (citations omitted), *aff'd*, 738 F.3d 1085

United States District Court
Northern District of California

28

1    (9th Cir. 2013).  Cancellation under sections 1064(c) and 1119 may be "sought if there is already

2    an ongoing action that involves a registered mark."  *Airs Aromatics, LLC v. Victoria's Secret*

3    *Stores Brand Mgmt.*, 744 F.3d 595, 599 (9th Cir. 2014).

4         A party has standing to pursue cancellation so long as the party believes that it "is or will

5    be damaged by the registration of the mark."  *Star-Kist Foods, Inc. v. P.J. Rhodes & Co.*, 735 F.2d

6    346, 348 (9th Cir. 1984) (emphasis omitted) (quoting 15 U.S.C. § 1064); *see also Corcamore,*

7    *LLC v. SFM, LLC*, 978 F.3d 1298, 1305 (Fed. Cir. 2020).  This is a low bar and "requires only"

8    that the party show a "real interest" in the proceeding.  *Star-Kist Foods*, 735 F.2d at 349; *see also*

9    *Blue Bottle Coffee, LLC v. Liao*, No. 21-cv-6083-CRB, 2024 WL 2061259, at *8 (N.D. Cal.

10   May 7, 2024) ("All that is needed is a real interest in the outcome of the proceeding beyond the

11   general public.").  The Court finds that Impossible has satisfied its burden by demonstrating a

12   particularized, concrete injury by IX's wielding of the Challenged Marks.  *See Hokto Kinoko*,

13   738 F.3d at 1097.  Had the Court granted partial summary judgment for IX as to Impossible's

14   Lanham Act claims, this result might have been different.

15              **2.  Mootness**

16        IX argues in the alternative that, even if Impossible has standing to pursue its claim for

17   cancellation of the Challenged Marks, "there is no remedy for the Court to provide . . . because

18   Impossible LLC has already amended its registrations to remove the disputed goods at issue."

19   Defs.' Mot. at 19.  IX argues that, because it amended some of its registrations to remove some of

20   the goods from Class 25, there is no live case or controversy between the parties as to

21   Impossible's cancellation claim.

22        The sole case that IX cites for its argument is *Already, LLC v. Nike, Inc.*, 568 U.S. 85

23   (2013).  The case has nothing to do with fraud, merely confirming that there is no Article III case

24   or controversy where a plaintiff dismisses its infringement claims with prejudice and enters a

25   covenant not to sue.  *Id.* at 93.  Moreover, courts have rejected similar arguments that such post-

26   hoc partial amendments somehow moot cancellation claims.  *See, e.g.*, *Sunsauce Foods*, 2024 WL

27   4933346, at *10 ("Correcting an overstatement is not enough to rectify fraud."); *One True Vine,*

28   *LLC v. Wine Grp. LLC*, No. 09-cv-1328-MHP, 2009 WL 3707512, at *3 (N.D. Cal. Nov. 4, 2009)

United States District Court
Northern District of California

29

1    ("[P]laintiff cannot nullify a claim that it procured its trademark through fraud on the USPTO by

2    now amending its trademark registration.").

3        In any case, as Impossible notes, IX has only deleted a few apparel goods from within

4    Class 25 in the Challenged Marks that it has now amended.  There is no dispute that the Court

5    may cancel the entirety of Class 25 in those registrations.  A "trademark cancellation claim is

6    equitable in nature," meaning that it is for the Court to determine whether and to what extent IX's

7    marks must be cancelled for fraud.  *Amarte USA Holdings, Inc. v. Kendo Holdings Inc.,* No. 22-

8    cv-8958-CRB, 2024 WL 4093910, at *13 (N.D. Cal. Sept. 4, 2024).  Accordingly, the Court

9    DENIES IX's request for partial summary judgment as to Impossible's fraud claims.

10        **D.  Abandonment**

11        IX requests that the Court grant partial summary judgment as to Impossible's claim for

12    cancellation of the Challenged Marks for abandonment.  IX argues that it is entitled to judgment as

13    a matter of law because the evidence indisputably shows that it has continuously used its marks

14    without an attempt to abandon them.  Defs.' Mot. at 18.  Impossible responds that no such

15    evidence of continuous use exists.  Pl.'s Opp. at 24.

16        The Lanham Act sets forth the conditions under which a trademark is subject to

17    cancellation for abandonment:  "When its use has been discontinued with intent not to resume

18    such use.  Intent not to resume may be inferred from circumstances.  Nonuse for 3 consecutive

19    years shall be prima facie evidence of abandonment.  'Use' of a mark means the bona fide use of

20    such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark."

21    15 U.S.C. § 1127.  "Because abandonment of a trademark is 'in the nature of forfeiture, [it] must

22    be strictly proved.'"  *Marketquest*, 316 F. Supp. 3d at 1281 (alteration in original) (quoting

23    *FreecycleSunnyvale v. Freecycle Network*, 626 F.3d 509, 515 (9th Cir. 2010)).  A party makes out

24    a prima facie case of non-use by demonstrating that a mark has not been used for three

25    consecutive years.  *On-Line Careline, Inc. v. Am. Online, Inc.*, 229 F.3d 1080, 1087 (Fed. Cir.

26    2000).

27        IX argues that it is entitled to partial summary judgment as to abandonment because "the

28    undisputed material facts show [that it] has consistently prepared and sold apparel products

United States District Court
Northern District of California

30

bearing the challenged marks, including within the last three years," urging that even a single bona fide use of a mark is sufficient to defeat cancellation for abandonment.  Defs.' Mot. at 21.  IX's argument fails because the record evidence simply does not reflect what IX claims it does.  In support of its motion for partial summary judgment, IX identifies a 2011 blog post by Mr. Runyon announcing the sale of t-shirts, a 2023 "merch drop" of hoodies, and a portion of Mr. Runyon's 30(b)(6) deposition testimony in which he states that t-shirts are available for purchase on his website.  *See* Washington Decl. Exs. G, N; Runyon Dep. Tr. at 145:5–9 ("Q.  Can you buy a T-shirt through impossiblefitness.com?  A.  You can see a T-shirt, you can click on it, and you can buy it.").  IX apparently contends that evidence that it offered for sale disparate products in 2011, 2023, and at the time of Mr. Runyon's deposition in 2025—without even identifying which of the Challenged Marks were featured on the apparel—forecloses Impossible's abandonment claim.  The argument borders on the offensive.

As a preliminary matter, Mr. Runyon has conceded that IX never offered many of the goods covered by the relevant marks.  *See, e.g.*, Runyon Dep. Tr. at 131:2–3; 133:11–16; 133:18–134:4; 166:17–169:3; 201:4–202:8.  The record similarly contains no evidence of use of the marks in connection with any of the other goods and services listed in the registrations for at least three years, triggering the presumption of non-use.  Flemming Decl. Ex. H.  There is even a factual dispute as to whether the products Mr. Runyon testified were on sale at the time of his deposition were actually available for purchase on his website.  *See* Flemming Decl. Ex. Z (showing no menu items for shop or apparel), Ex. AA.  At bottom, even if the Court were to credit that IX was using the marks in 2011, 2023, and 2025, IX has not met its moving burden and is not entitled to partial summary judgment.  Accordingly, the Court DENIES IX's request for partial summary judgment as to Impossible's abandonment claims.

## E.  Priority

IX argues that it is entitled to summary adjudication of priority of use of the IMPOSSIBLE-formative marks" in a category that it terms the "Diet and Nutrition Category," which includes "fitness, health, recipes, cookbooks, and nutrition advisory services."  Defs.' Mot. at 22.  According to IX, it is entitled to priority because (1) IX has continuously used

IMPOSSIBLE-formative marks in connection with the Diet and Nutrition Category since 2012; (2) IX has engaged in substantial non-commercial advertising and promotional activity to support its offerings; and (3) Impossible's use of the IMPOSSIBLE-formative marks in the Diet and Nutrition Category occurred more than eight years after IX's first use. *See id.* Impossible responds as a threshold matter that IX is not entitled to summary adjudication of priority of use with respect to this nebulously defined category, noting that the Impossible Accused Products represent a narrow set of goods and services, i.e., cookbooks, recipes, apparel, and philanthropy. Pl.'s Opp. at 22. Impossible further argues that IX fails to tie its evidence to any particular mark and cannot prove prior and continuous use. *See id.* at 22–24.

"It is axiomatic in trademark law that the standard test of ownership is priority of use," such that "the party claiming ownership must have been the first to actually use the mark in the sale of goods or services." *Sarieddine v. Alien Visions E-Juice, Inc.*, No. 18-cv-3658-PA, 2019 WL 1966661, at *4 (C.D. Cal. Apr. 12, 2019) (quoting *Rearden*, 683 F.3d at 1202–03). To establish priority, the party must have been the first to actually use the mark in the sale of the relevant goods or services. *See Brookfield Commc'ns*, 174 F.3d at 1051 ("The Lanham Act grants trademark protection only to marks that are used to identify and to distinguish goods or services in commerce—which typically occurs when a mark is used in conjunction with the actual sale of goods or services.").

IX appears to take the position that it is entitled to priority in this broad category of goods and services based on its introduction of two services in 2012. First, in February 2012, IX published the "Impossible TRI Triathlon Guide" ("Impossible TRI"), which includes an associated cookbook and nutrition guide and features IMPOSSIBLE-formative marks. Washington Decl. Exs. F, XX at 22–23. Second, in September 2012, IX published "Impossible Abs," a health and fitness program that includes food, nutrition, and recipe sections, which it marketed to its customers. Washington Decl. Exs. H, AAA, BBB, XX at 22–23. These offerings, however, do not map neatly onto IX's defined Diet and Fitness category, which comprises fitness, health, recipes, cookbooks, and nutrition advisory services. For example, Mr. Runyon testified that IX does not offer any nutrition advisory services. Runyon Dep. Tr. at 61:22–62:1. He further

1    explained that IX's offerings in the fitness category are limited to online exercise programs and a

2    physical fitness blog.  *Id.* at 113:1–17.  Finally, regarding cookbooks, Mr. Runyon explained that

3    IX has not actually published any cookbook:  IX apparently appears to be referencing downloads

4    of recipes from its website or from third-party apps.  *Id.* at 63:15–19.

5         Apart from the apparent discrepancy between IX's actual offerings and the breadth of

6    goods and services for which it claims priority, it is also unclear to the Court at this stage whether

7    there is evidence in the record establishing continuous use.  "A mark is deemed to be used in

8    commerce on goods when: (A) it is placed in any manner on the goods or their containers or the

9    displays associated therewith or on the tags or labels affixed thereto . . . and (B) the goods are sold

10   or transported in commerce."  *Macy's Inc. v. Strategic Marks, LLC*, No. 11-cv-6198-EMC,

11   2016 WL 374147, at *6 (N.D. Cal. Feb. 1, 2016) (quoting 15 U.S.C. § 1127).  "In determining

12   whether the two prongs of the 'use in commerce' test have been satisfied, we have generally

13   followed a 'totality of the circumstances' approach."  *Rearden*, 683 F.3d at 1205.  It is not at all

14   clear that IX has demonstrated continuous use in commerce with respect to any of the marks or

15   categories.  While IX cites sales revenue from third-party affiliates, it has not shown that any of

16   those offerings bear an IMPOSSIBLE-formative mark (let alone identified which one).  *See*

17   *Brookfield Commc'ns*, 174 F.3d at 1052 (explaining that use in commerce must "identify or

18   distinguish the marked goods in an appropriate segment of the public mind as those of the adopter

19   of the mark").

20        IX has not met its initial burden.  Accordingly, the Court DENIES IX's request for

21   summary adjudication of priority.

22   **V.    ORDER**

23        For the foregoing reasons, IT IS HEREBY ORDERED that:

24        (1) Impossible's motion for partial summary judgment is GRANTED as to IX's third

25            affirmative defense (laches), fourth affirmative defense (waiver), fifth affirmative

26            defense (acquiescence), sixth affirmative defense (estoppel), and tenth affirmative

27            defense (unclean hands).

28        (2) Impossible's motion for partial summary judgment is GRANTED as to IX's demand

United States District Court
Northern District of California

1        for reputational damages.

2        (3) Impossible's motion for partial summary judgment is DENIED as to IX's demands for

3            corrective advertising damages and exemplary damages.

4        (4) IX's motion for partial summary judgment is DENIED.

5        (5) This order terminates ECF No. 259 and ECF No. 262.

7   Dated:  November 3, 2025

8                                    _____

9                                    BETH LABSON FREEMAN
                                      United States District Judge

United States District Court
Northern District of California