1  G. ROXANNE ELINGS (*pro hac vice*)
   roxanneelings@dwt.com
2  DAVIS WRIGHT TREMAINE LLP
   1251 Avenue of the Americas, 21st Floor
3  New York, NY  10020-1104
   Telephone:  (212) 489-8230
4  Facsimile: (212) 489-8340

5  SARAH E. BURNS (CA State Bar No. 324466)
   sarahburns@dwt.com
6  DAVIS WRIGHT TREMAINE LLP
   50 California Street, 23rd Floor
7  San Francisco, CA 94111
   Telephone: (415) 276-6500
8  Facsimile: (415) 276-6599

9  Attorneys for Plaintiff/ Counter-Defendant
   IMPOSSIBLE FOODS INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IMPOSSIBLE FOODS INC., <br><br> Plaintiff, <br><br> vs. <br><br> IMPOSSIBLE X LLC, et al., <br><br> Defendants. | Case No. 5:21-cv-02419 BLF <br><br> **IMPOSSIBLE FOODS' MOTION IN LIMINE NUMBER 1 TO EXCLUDE THE REPORT AND TESTIMONY OF DR. JENNIFER VANDERHART** <br><br> Judge:   Hon. Beth L. Freeman <br> Final Pretrial Hearing:   February 12, 2026 <br> Time:   1:30 p.m. <br> Location: Courtroom 1, 5th Floor, San Jose <br><br> Magistrate Judge Susan van Keulen |

## NOTICE OF MOTION IN LIMINE NUMBER 3

**PLEASE TAKE NOTICE** that on February 12, 2026, at 1:30 p.m., in Courtroom 1 of the United States District Court for the Northern District of California, 280 South 1st Street, San Jose, California 95113, Plaintiff/Counter-Defendant Impossible Foods Inc. ("Impossible Foods") will and hereby does move this Court, pursuant to Federal Rule of Evidence 702, to exclude the report and testimony of Defendants/Counter-Plaintiffs Joel Runyon and Impossible X LLC's (collectively, "Impossible X") expert witness, Dr. Jennifer Vanderhart. In particular, Impossible Foods moves to exclude Dr. Vanderhart's opinions regarding corrective advertising damages.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the pleadings and papers on file in this action, the matters of which this Court may take judicial notice, and any such additional matters and oral argument as may be offered in support of the Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Defendants/Counter-Plaintiffs Joel Runyon and Impossible X LLC (collectively, "Impossible X") intend to present to the jury the report and testimony of Dr. Jennifer Vanderhart. Dr. Vanderhart opines that Impossible X is entitled to between █████████████ in prospective advertising damages. Those numbers ██████████████████████ over a thirteen year period and ███ its advertising expenditures over the same time frame.

Dr. Vanderhart's opinion is based entirely on the amount Impossible Foods spent *producing*, not marketing, the at-issue cookbook and promotional apparel (collectively the "Accused Products"), multiplied by three to five. She did not assess any actual harm to Impossible X, did not value the allegedly infringing trademarks, did not exclude non-accused products, and relied on a multiplier derived from a single, irrelevant study. Her conclusions are disconnected from the facts, contrary to settled law, and would result in an unjustified windfall. Her report and testimony should be excluded.

## II. LEGAL STANDARD

District courts are the gatekeepers of expert testimony. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The Rules of Evidence require trial judges to ensure that expert testimony rests on a reliable foundation and is relevant to the issues presented. *Id.* at 597. The proponent bears the burden of establishing admissibility by a preponderance of the evidence.

Rule 702 requires that expert testimony be based on sufficient facts and reflect a reliable application of sound principles. In December 2023, Rule 702 was amended to clarify that courts must assess reliability as a matter of admissibility, and that the proponent must demonstrate that "it is more likely than not" that the expert's opinion satisfies the rule. Fed. R. Evid. 702. As the Advisory Committee explained, treating foundational flaws as issues of weight rather than admissibility is an incorrect application of Rules 702 and 104(a). Fed. R. Evid. 702, advisory committee note 1 to 2023 amendment.

Rule 702 reflects "the twin concerns" of "reliability" and "helpfulness," and exclusion is appropriate where expert testimony falls on either ground. *Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1192 (9th Cir. 2007). Dr. Vanderhart's corrective advertising opinions fail both requirements.

### A. Dr. Vanderhart's Failure to Consider Actual Harm Renders Her Opinions Unreliable And Unhelpful

"The purpose of compensatory damages in tort cases (as well as trademark cases) is to place the injured person as nearly as possible in the condition he would have occupied if the wrong had not occurred." *Trovan, Ltd. v. Pfizer, Inc.*, 2000 WL 709149, at *13–14 (C.D. Cal. May 24, 2000).

Here, Impossible X has never estimated the value of the specific trademarks allegedly harmed or the revenue derived from the t-shirt or recipe sales. *See* concurrently-filed Declaration of Sarah E. Burns in Support of Impossible Foods' Motions in Limine 1-3 ("Burns Decl.") Ex. 2 ("Vanderhart Dep.") at 47:6-48:11. Dr. Vanderhart made no attempt to calculate lost sales caused

by the alleged infringement. Vanderhart Dep. at 30:2-7. She also did not attempt to value Impossible X's brand or the specific trademarks at issue. *Id.* at 46:20-48:11.

Instead, Dr. Vanderhart cites Impossible X's total income over a thirteen year period for all products and services as approximately ▮▮▮▮. Burns Decl. Ex. "(Vanderhart Report)" ¶ 51. She also identifies ▮▮▮▮ in alleged brand investments, a figure that includes ▮▮▮▮ *Id.* ¶ 26-27. Nonetheless, she opines that corrective advertising damages for the allegedly infringing cookbook and swag alone range from ▮▮▮▮ based solely on Impossible Foods' expenditures, without reference to Impossible X's trademarks or any harm to them.

This failure renders her opinion unreliable and unhelpful for two reasons. First, it is inherently speculative. Without any valuation of Impossible X's trademarks or the alleged injury, her damages estimate rests on no relevant baseline. Courts routinely reject corrective advertising damages based on arbitrary percentages of a defendant's spending. *See, e.g.*, *Zazu Designs v. L'Oreal S.A.*, 979 F.2d 499, 506 (7th Cir.1992) (corrective advertising damages improperly speculative where they were based off a percentage defendant's advertising budget alone). The Ninth Circuit recognizes that although damages need not follow a rigid formula, they must reflect "a just and reasonable estimate of the damage based on relevant data." *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 264 (1946). "Allowance for uncertainty is one thing, and rank speculation another." *Zazu*, 979 F.2d at 506.

Second, Dr. Vanderhart's approach provides no way to determine whether the requested damages exceed the value of the trademarks themselves. As McCarthy explains:

> There is something basically unseemly and grossly uneconomical in an award to a small company of an amount of money several times its net worth to use to resuscitate an infringed trademark. When such an award is many times the value of the trademark property, then it appears that plaintiff has received a windfall, not compensation.

J. Thomas McCarthy, 5 McCarthy on Trademark § 30:84 (5th ed.1999). Corrective advertising damages are permitted only to the extent they do not exceed the damage to the value of the mark. *Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 989 (9th Cir. 1995), *as amended on denial of reh'g* (Feb.

15, 1996). Here Dr. Vanderhart's figures ▓▓▓ Impossible X's total lifetime revenue and ▓▓▓ its alleged brand spending.

### B.  Dr. Vanderhart did not Properly Measure Advertising Costs

Even if corrective advertising damages could properly be based solely on Impossible Foods' advertising spend, Dr. Vanderhart failed to do so. Her calculations rely on production costs, not advertising expenditures. *See* Vanderhart Dep. at 81:3-9. Courts that permit defendant-based calculations look to advertising budgets, not product manufacturing costs. *See Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 561 F.2d 1365, 1374-76 (10th Cir.1977) (corrective advertising figures based on advertising budget, not the cost of the tires themselves).

Her swag calculations are further flawed because they include the cost of producing all promotional items, including a significant number of articles that Impossible X does not challenge as infringing (i.e., water bottles, pins, and stickers). Vanderhart Report ¶¶ 41-47; Vanderhart Dep. at 26:18-27:15. Dr. Vanderhart did not attempt to separate apparel from any of these non-infringing items. *Id.* Her opinions should be excluded on this basis alone.

### C.  Dr. Vanderhart's Use of a Three to Five Multiplier is Unsupported

Dr. Vanderhart applied a three to five multiplier to production costs to reach damages ▓▓▓ Impossible X's total sales. Vanderhart Report at ¶¶ 41-42, ¶¶ 46-47 (swag); *id.* at ¶¶ 48-49. She relies on Dr. Palmatier's opinion that Impossible X "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓" Vanderhart Report ¶ 49 (quoting Palmatier Report ¶ 78). That opinion, in turn, is based on a decades old study involving college students and radio advertising for mouthwash.

The analytical leap from that study to a three to five multiplier applied to the cookbook and apparel production costs is unsupported. "There is simply too great an analytical gap between the data and the opinion proffered." *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997). *See also ProTradeNet, LLC v. Predictive Profiles, Inc.*, 2019 WL 6499488, at *2 (W.D. Tex. Oct. 11, 2019) ("unsound methods and unjustified extrapolations from existing data" can be sufficient to exclude an expert). Dr. Vanderhart made no effort to analyze the cost of an impression in this

4

context (i.e., a new "brand association" in Dr. Palmatier's language) and could not explain how producing cookbooks or apparel efficiently corrects misimpressions. Vanderhart Dep. at 91:8-97:5; 93:5-15. Dr. Palmatier likewise could not explain why product production costs were an appropriate proxy for advertising impressions. Palmatier Dep. at 83:9-84:18.

The multiplier is also wildly out of sync with what courts have found reasonable. Many courts, including the Ninth Circuit, frequently apply an FTC-based approach requiring one-quarter of the infringing advertising budget for corrective advertising, *i.e*, at best, one-twelfth of what Dr. Vanderhart suggests. *See e.g.*, *Adray*, 76 F.3d at 989 n.2; *Zazu Designs*, 979 F.2d at 506 (7th Cir.1992); *West Des Moines State Bank v. Hawkeye Bancorporation*, 722 F.2d 411, 414 (8th Cir.1983); and *Big O Tire Dealers, Inc.*, 561 F.2d at 1374. Where higher multipliers are used, they are tied to the cost of impressions, not product manufacturing. *See PODS Enters., LLC v. U-Haul Int'l, Inc.*, 126 F. Supp. 3d 1263, 1283–84 (M.D. Fla. 2015) (finding proper expert opinion that that it "took about 28 cents to create an impression," multiplying that by the number of misimpressions, and then applying a 3x multiplier).

### III.     CONCLUSION

Dr. Vanderhart's opinions are speculative, methodologically flawed, and disconnected from any measure of harm to Impossible X's trademark. Impossible X has not met its burden under Rule 702. Impossible Foods respectfully requests that the Court exclude Dr. Vanderhart's report and testimony.

DATED: January 29, 2026                                    DAVIS WRIGHT TREMAINE LLP

                                                           By: /s/ G. Roxanne Elings
                                                                G. Roxanne Elings

                                                           Attorneys for Plaintiff/Counter-Defendant
                                                           IMPOSSIBLE FOODS INC.