J. Noah Hagey, Esq. (SBN: 262331)
hagey@braunhagey.com
Adam S. Cashman, Esq. (SBN: 255063)
cashman@braunhagey.com
Greg Washington, Esq. (SBN: 318796)
gwashington@braunhagey.com
J. Tobias Rowe, Esq. (SBN: 305596)
rowe@braunhagey.com
Oliver McNicholas, Esq. (SBN: 363554)
omcnicholas@braunhagey.com
BRAUNHAGEY & BORDEN LLP
747 Front Street, 4th Floor
San Francisco, CA 94111
Telephone: (415) 599-0210

Marissa R. Benavides (*pro hac vice* admission)
benavides@braunhagey.com
BRAUNHAGEY & BORDEN LLP
200 Madison Avenue, 23rd Floor
New York, NY 10016
Telephone: (646) 829-9403

[Other counsel of record indicated on docket.]

*Attorneys for Defendants / Counter-Plaintiffs Impossible LLC and Joel Runyon*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| IMPOSSIBLE FOODS INC.,<br><br>Plaintiff / Counter-Defendant,<br><br>v.<br><br>IMPOSSIBLE LLC and JOEL RUNYON,<br><br>Defendants / Counter-Plaintiffs. | Case No. 5:21-cv-02419-BLF (SVK)<br><br>**JOINT PRETRIAL STATEMENT AND ORDER**<br><br>**Judge:** Hon. Beth Labson Freeman<br><br>**Conference Date:** February 12, 2026<br>**Conference Time:** 1:30 P.M. |

# JOINT PRE-TRIAL STATEMENT

## I. THE ACTION

### A. The Parties

The parties to this action are Impossible Foods Inc.; Impossible LLC as successor in interest to Impossible X LLC; and Joel Runyon. All parties have appeared in this action.

### B. Substance of the Action

Impossible LLC asserts the following claims against Impossible Foods, Inc., the elements of which are:

1. **Trademark Infringement; Lanham Act § 32(1), 15 U.S.C. § 1114(1)**

   a. Validity/protectability of plaintiff's mark.

   b. Plaintiff's ownership of the mark.

   c. Defendant's use in commerce of the mark in connection with goods or services.

   d. Likelihood of consumer confusion caused by defendant's use.

   Source: Ninth Circuit Model Instruction 15.6

2. **Unfair Competition; Lanham Act § 43(a), 15 U.S.C. § 1125(a)(1) and federal common law**

   a. Validity/protectability of plaintiff's mark.

   b. Plaintiff's ownership of the mark.

   c. Defendant's use in commerce of the mark in connection with goods or services.

   d. Likelihood of consumer confusion caused by defendant's use.

   Source: Ninth Circuit Model Instruction 15.6

3. **False Association; Lanham Act § 43(a), 15 U.S.C. § 1125(a)(1)(A)**

   a. Validity/protectability of plaintiff's mark.

   b. Plaintiff's ownership of the mark.

   c. Defendant's use in commerce of the mark in connection with goods or services.

   d. Likelihood of consumer confusion caused by defendant's use.

Source: Ninth Circuit Model Instructions 15.6, 15.18

4. **Denial of Impossible Foods, Inc.'s, Trademark Application Serial No. 88855875; Lanham Act § 37, 15 U.S.C. § 1119**

a. A live federal action involving a registered mark.

b. The plaintiff is or will be damaged by the registered mark.

c. The plaintiff is entitled to relief on the underlying registration-related issue (i.e. a proven claim of trademark infringement).

Source: 15 U.S.C. § 1119; *Pinkette Clothing, Inc. v. Cosmetic Warriors Ltd.*, 894 F.3d 1015 (9th Cir. 2018)

5. **Trademark Infringement; California Common Law**

a. Plaintiff's ownership of a valid, protectable trademark.

b. Defendant's use in commerce of the mark or a similar mark in connection with goods or services.

c. Likelihood of consumer confusion caused by defendant's use.

Source: *Mallard Creek Indus., Inc. v. Morgan*, 56 Cal. App. 4th 426, 434-35 (1997); *Optimal Pets, Inc. v. Nutri-Vet, LLC*, 877 F. Supp. 2d 953, 959 (C.D. Cal. 2012)

6. **Unfair Competition; Cal. Bus. & Prof. Code § 17200**

d. Defendant engaged in unfair competition, meaning any unlawful, unfair, or fraudulent business act or practice.

e. Plaintiff suffered an injury in fact and lost money or property as a result of the unfair competition.

Source: Cal. Bus. & Prof. Code § 17200

**1. Impossible Foods's Position**

Impossible Foods objects to Impossible LLC's representation of the elements of its Fourth Cause of Action for denial of Impossible Foods' Trademark Application Serial No. 88855875. That claim requires Impossible X to prove that it has a valid, registered mark and that Impossible Foods' applied-for mark is likely to cause confusion with Impossible X's registered mark.

**2. Impossible LLC's Position**

As the Ninth Circuit explained in *Pinkette*, "The Lanham Act [] authorizes any person who believes that he is or will be damaged . . . by the registration of a mark to petition to cancel the registration." 894 F.3d at 1021 (internal quotation marks and citation omitted). "If a petition for

cancellation is brought before the mark becomes incontestable, *any* ground that would have prevented registration in the first place qualifies as a valid ground for cancellation, including that there exists a likelihood of confusion between the mark sought to be canceled and a mark for which the party seeking cancellation can establish either prior use or prior registration." *Id.* (emphasis added) (internal quotation marks and citation omitted).

Impossible Foods asserts the following defenses to certain of those claims:

1. Priority
2. No Damages
3. Lack of Causation
4. No Irreparable Harm
5. Insufficient Market Penetration
6. Laches
7. Abandonment Through Non-Use
8. Unclean Hands

Impossible LLC objects to this, and notes that Impossible Foods only pleaded the affirmative defenses of Laches, Abandonment Through Non-Use, and Unclean Hands (Fraud) in its Responsive Pleading. The defenses of Priority, No Damages, Lack of Causation, No Irreparable Harm, and Insufficient Market Penetration were never pleaded and should not be part of this trial. *See* section VI.C.1, *infra.*

* * * * *

Impossible Foods, Inc., asserts the following claims against Impossible LLC and Joel Runyon:

1. **Declaratory Relief; federal common law.**

   a. An immediate, real, and substantial controversy exists between the parties, who have adverse legal interests.

   b. Impossible Foods's use of its IMPOSSIBLE-formative marks in connection with recipes, food ingredients, and cooking information, does not infringe or dilute any of Impossible LLC's valid trademark rights and does not violate any federal or state trademark, trade name, or related law.

2. **Trademark Infringement; Lanham Act § 32(1), 15 U.S.C. § 1114(1)**

a. Validity/protectability of plaintiff's mark.

b. Plaintiff's ownership of the mark.

c. Defendant's use in commerce of the mark in connection with goods or services.

d. Likelihood of consumer confusion caused by defendant's use.

Source: Ninth Circuit Model Instruction 15.6

3. **Unfair Competition; Lanham Act § 43(a), 15 U.S.C. § 1125(a)(1) and federal common law**

a. Validity/protectability of plaintiff's mark.

b. Plaintiff's ownership of the mark.

c. Defendant's use in commerce of the mark in connection with goods or services.

d. Likelihood of consumer confusion caused by defendant's use.

4. **Unfair Competition; California Common Law**

a. Validity/protectability of plaintiff's mark.

b. Plaintiff's ownership of the mark.

c. Defendant's use in commerce of the mark in connection with goods or services.

d. Likelihood of consumer confusion caused by defendant's use.

Source: *Cleary v. News Corp.*, 30 F.3d 1255, 1263–63 (9th Cir. 1994).

5. **Fraud in the Procurement of the Incontestability Status of Trademark Reg. No. 5387588; Lanham Act § 43(a); 15 U.S.C. §§ 1119, 1064**

a. Registrant made a false representation to the USPTO.

b. Registrant's false representation is material to the incontestability of a mark.

c. Registrant had knowledge of the falsity of the representation.

d. Registrant made the representation with intent to deceive the USPTO.

6. **Fraud in the Procurement – Cancellation of Trademark Reg. Nos. 5590801, 5603025, 5620625, and 6571603; Lanham Act § 43(a); 15 U.S.C. §§ 1119, 1064(3)**

a. Registrant made a false representation to the USPTO.

b. Registrant's false representation is material to the registrability of a mark.

c. Registrant had knowledge of the falsity of the representation.

d. Registrant made the representation with intent to deceive the USPTO.

7. **Abandonment – Cancellation of Trademark Reg. Nos. 590801, 5603025, and 6571603; Lanham Act § 43(a); 15 U.S.C. § 1064**

a. Discontinuation of use of the mark.

b. Registrant's intent not to resume use within the foreseeable future or nonuse of the mark for a period of three years.

Impossible LLC and Joel Runyon assert the following defenses to each of Impossible Foods' claims, as stated in their Amended Answer to Impossible Foods's Third Amended Complaint at Dkt. 241:

1. Priority
2. No Damages
3. Lack of Causation
4. No Irreparable Harm

1. **Impossible LLC's Position**

Impossible LLC further objects to Impossible Foods's representation of the elements of its Sixth Cause of Action, "Fraud in the Procurement – Cancellation of Trademark Reg. Nos. 5590801, 5603025, 5620625, and 6571603," as inaccurate and incomplete. As reflected in 15 U.S.C. § 1119, the claim also requires an underlying "action involving [the] registered mark" at issue.

2. **Impossible Foods's Position**

Impossible Foods description of the elements of its Fraud in the Procurement claim is accurate. Impossible X made a similar argument at summary judgment, claiming that Impossible Foods lacks Article III standing to pursue its fraudulent procurement claim because 15 U.S.C. § 1119 authorizes cancellation of a trademark registration only when the claimant is also asserting an infringement claim against that same registration. Dkt. 262 at 17-18. The Court rejected the argument, so long as the party believes that it "is or will be damaged by the registration of the

mark." Dkt. 311 at 29 (quoting *Star-Kist Foods, Inc. v. P.J. Rhodes & Co.*, 735 F.2d 346, 348 (9th Cir. 1984).

### C. Relief Sought

#### 1. Impossible LLC

Judgment: Impossible LLC asks that judgment be entered in its favor on its Lanham Act claims of trademark infringement, unfair competition, and false association; on its common law claim of trademark infringement; and on its California Unfair Competition Law claim.

Injunctive relief: Impossible LLC seeks an injunction prohibiting Impossible Foods from using IMPOSSIBLE as a standalone mark or any mark incorporating the IMPOSSIBLE formative for products or services in the fields of apparel and related accessories, cookbooks, recipes, nutritional supplements, philanthropy, promoting athletic events, and providing websites or information related to athletics, fitness, and/or health.

Compensatory damages: Impossible LLC seeks corrective advertising damages in an amount to be calculated upon receipt of Impossible Foods's updated financial information for 2025. Impossible LLC further seeks disgorgement of profits under 15 U.S.C. § 1117(a). In each case, Impossible LLC seeks an amount to be determined by the jury.

Punitive and exemplary damages: Impossible LLC seeks punitive damages in an amount to be determined by the jury, under Cal. Civ. Code § 3294. Impossible LLC also seeks exemplary damages, inclusive of any enhancements, in the event a finding of willfulness is entered by the jury, under 15 U.S.C. § 1117(a) and Cal. Bus. & Prof. Code § 14250(b).

Denial of trademark: Impossible LLC seeks the Court's denial of Impossible Foods, Inc.'s, Trademark Application Serial No. 88855875.

Costs and reasonable attorneys' fees: Impossible LLC seeks an award of costs and reasonable attorneys' fees should the jury return a finding of willfulness, under 15 U.S.C. § 1117(a) and Cal. Bus. & Prof. Code § 14250(b).

#### 2. Impossible Foods Inc.

Judgment: Impossible Foods asks that judgment be entered in its favor on its Lanham Act claims of trademark infringement, unfair competition, fraud in the procurement of incontestability

status, fraud in the procurement, and abandonment claims; on its California common law claim of unfair competition; and on its request for declaratory relief.

Declaratory relief: Impossible Foods seeks a declaration that Impossible Foods's use and registration of its IMPOSSIBLE-formative marks with services relating to recipes, food ingredients, and cooking information do not infringe upon, dilute, or otherwise violate any valid right of ILLC under applicable federal or state law.

Injunctive relief: Impossible Foods seeks an injunction prohibiting Impossible LLC from using any mark that is confusingly similar to any of Impossible Foods' marks in connection with edible products and other related goods and services, including sleep and energy powder.

Equitable unjust enrichment: Impossible Foods seeks recovery of profits Impossible LLC earned from sales of infringing sleep and energy powders.

Cancellation of trademark: Impossible Foods requests that the Court order direct the Commissioner of Trademarks that the following trademark registrations are to be canceled by the United States Patent and Trademark Office: U.S. Reg. 5387588, U.S. Reg. 5590801, U.S. Reg. 5603025, U.S. Reg. 5620625, U.S. Reg. 6571603.

### D. Federal Jurisdiction and Venue

This Court has original jurisdiction under 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331 and 1338(a). This Court has personal jurisdiction over Impossible Foods by virtue of its incorporation and headquarters in the State of California. This Court has personal jurisdiction over Impossible LLC and Mr. Runyon pursuant to the Ninth Circuit Court of Appeals' decision in *Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1087 (9th Cir. 2023), which held that Impossible LLC's contacts with California were sufficient for this Court to exercise personal jurisdiction over it. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events giving rise to the parties' cross-complaints occurred in this judicial district, and as Impossible Foods is a resident of the State of California and domiciled in this judicial district.

## II. FACTUAL BASIS OF THE ACTION

### A. Undisputed Facts

1. Impossible LLC is a successor in interest to Impossible X LLC.

2. Impossible LLC is wholly owned by Joel Runyon.

3. Impossible LLC is a limited liability company organized under the laws of the State of Texas.

4. Impossible Foods Inc., is a corporation incorporated in the State of California.

5. Impossible Foods did business as Maraxi, Inc., from 2013 to 2016, at which point it renamed itself as Impossible Foods.

6. Impossible Foods Inc., does not manufacture or sell, and has never manufactured or sold, energy powder.

7. Impossible Foods Inc., does not manufacture or sell, and has never manufactured or sold, sleep powder.

**B. Disputed Facts**

**a. Impossible LLC**

1. Impossible LLC is the owner of all right, title, and interest in and to the following valid and registered trademarks with the U.S. Patent and Trademark Office:

a. Reg. No. 4260617, IMPOSSIBLE (stylized), for "Clothing, namely, shirts, t-shirts, tank tops" and "Providing a website featuring information in the field of personal fitness, endurance athletics, story telling, and adventure activities, namely, bungee jumping, skydiving, trekking, mountaineering, surfing, and kite surfing," filed with the U.S. Patent and Trademark Office ("USPTO") on March 23, 2012, and registered on the Principal Register on December 28, 2012;

b. Reg. No. 4624158, IMPOSSIBLE FITNESS, for "Website featuring information relating to exercise and fitness," filed with the USPTO on March 3, 2014, and registered on the Principal Register on October 21, 2014;

c. Reg. No. 5155646, IMPOSSIBLE X, for "search engine optimization and marketing services; marketing consulting in the field of social media," filed with the USPTO on July 26, 2016, and registered on the Principal Register on March 7, 2017;

d. Reg. No. 5179974, IMPOSSIBLE HQ, for "providing a website featuring information relating to exercise and fitness," filed with the USPTO on July 26, 2016, and registered on the Principal Register on April 11, 2017;

e. Reg. No. 5376208, IMPOSSIBLE (stylized), for "nutritional supplements" and "search engine optimization and marketing services; marketing consulting in the field of social media," filed with the USPTO on July 26, 2016, and registered on the Principal Register on January 9, 2018;

f. Reg. No. 5576376, DO SOMETHING IMPOSSIBLE, for "nutritional supplements," "Clothing and performance apparel, namely, t-shirts, sweatshirts, pants, shorts, tank tops, yoga pants,

tights," "search engine optimization and marketing services; marketing consulting in the field of social media," and "charitable fundraising services," filed with the USPTO on July 26, 2016, and registered on the Principal Register on October 2, 2018;

g. Reg. No. 5387588, IMPOSSIBLE NUTRITION (stylized), for "Nutritional supplements," and "Providing a website featuring information relating to exercise and fitness," filed with the USPTO on July 26, 2016, and registered on the Principal Register on January 23, 2018;

h. Reg. No. 5590801, IMPOSSIBLE FITNESS (stylized), for "Clothing and performance apparel, namely, t-shirts and tank tops," filed with the USPTO on August 3, 2016, registered on the Principal Register on October 23, 2018, and amended by Section 8 declaration on April 22, 2025;

i. Reg. No. 5603025, IMPOSSIBLE FITNESS, for "Clothing and performance apparel, namely, T-shirts and tank tops," filed with the USPTO on November 16, 2017, registered on the Principal Register on November 6, 2018, and amended by Section 8 declaration on May 6, 2025;

j. Reg. No. 5620625, IMPOSSIBLE, for "Nutritional supplements," "Clothing and performance apparel, namely, t-shirts and tank tops" "Search engine optimization for promotion and marketing services; marketing consulting in the field of social media," and "Providing a website featuring information in the field of personal fitness, endurance athletics, storytelling, and adventure activities, namely, bungee jumping, skydiving, trekking, mountaineering, surfing, and kite surfing," filed with the USPTO on January 15, 2018, registered on the Principal Register on December 4, 2018, and amended by Response to Office Action for Post-Registration Matters on December 4, 2024; and

k. Reg. No. 6571603, IMPOSSIBLE (animated), for "clothing and performance apparel, namely, t-shirts, sweatshirts, pants, shorts, tank tips, yoga pants, tights and underwear," and "Providing a website featuring information in the field of personal fitness, endurance athletics, storytelling and adventure recreational activities," filed with the USPTO on April 19, 2018, and registered on the Principal Register on November 30, 2021.

2. Impossible LLC first used the Impossible formative mark on apparel on October 3, 2011.

3. Impossible LLC continuously used the Impossible formative mark on apparel from October 3, 2011 to the present.

4. Impossible LLC first used the Impossible Nutrition mark on nutritional supplements on November 1, 2017.

5. Impossible LLC continuously used the Impossible Nutrition mark on nutritional supplements from November 1, 2017 to the present.

6. Impossible LLC has common law trademark rights over the IMPOSSIBLE formative as applied to nutritional supplements, nutritional programs, cookbooks, recipes, philanthropy, and apparel.

7. Impossible LLC's Registration Nos. 4260617, 4624158, and 5155646 have achieved incontestable status.

8. Impossible LLC has senior trademark rights with regard to the IMPOSSIBLE formative as applied to nutritional supplements, nutritional programs, cookbooks, recipes, philanthropy, and apparel.

9. At the time Impossible Foods began using IMPOSSIBLE, Impossible LLC possessed valid federal trademark rights in the IMPOSSIBLE marks.

10. Impossible Foods has no valid rights in the IMPOSSIBLE mark as directed to products or services in the fields of fitness, health, athletics, and philanthropy.

11. Impossible Foods has no valid rights in any mark incorporating the IMPOSSIBLE formative as directed to nutrition and recipe information, as well as apparel products.

12. At the time Impossible Foods commenced use of IMPOSSIBLE, Impossible Foods was on notice of the existence of Impossible LLC's superior rights in its IMPOSSIBLE marks, at least by reason of the existence, at that time, of Impossible LLC's aforementioned federal trademark registrations.

13. Use by Impossible Foods of IMPOSSIBLE as a standalone mark for products or services in the fields of fitness, health, athletics, and philanthropy, or any mark incorporating the IMPOSSIBLE formative for nutrition and recipe information as well as apparel products, is without the permission or authorization of Impossible LLC.

14. Use by Impossible Foods of IMPOSSIBLE as a standalone mark for products or services in the fields of fitness, health, athletics, and philanthropy, or any mark incorporating the IMPOSSIBLE formative for nutrition and recipe information as well as apparel products is likely to cause and continue to cause confusion, mistake and/or deception among consumers and the public.

15. Use by Impossible Foods of IMPOSSIBLE as a standalone mark for products or services in the fields of fitness, health, athletics, and philanthropy, or any mark incorporating the IMPOSSIBLE formative for nutrition and recipe information as well as apparel products will lead the public to falsely to believe that Impossible Foods' products and services are those of, are sponsored or approved by, or are in some way connected with Impossible LLC.

16. Impossible Foods' junior use will overshadow Impossible LLC's senior use, causing the public to falsely associate Impossible LLC's products and services with Impossible Foods.

17. Impossible Foods' acts of unfair competition have caused, and are causing confusion to the public regarding the source and quality of products and services being acquired.

18. Impossible Foods' acts of unfair competition have caused, and are causing harm to Impossible LLC, including harm to the value and goodwill associated with its IMPOSSIBLE marks.

19. The nature and probable tendency and effect of Impossible Foods's use of Impossible LLC's IMPOSSIBLE marks is to enable Impossible Foods to confuse or deceive the public and others by misrepresenting that Impossible Foods' services and products are in some way sponsored or approved by Impossible LLC and/or that Impossible Foods is affiliated with Impossible LLC, and/or by misrepresenting that Impossible LLC's senior use of IMPOSSIBLE is in some way affiliated with, sponsored, or approved by Impossible Foods.

20. Impossible Foods's use in commerce of IMPOSSIBLE as a standalone mark for products or services in the fields of fitness, health, athletics, and philanthropy, or any mark incorporating the IMPOSSIBLE formative in association with nutrition and recipe information as well as apparel products, constitutes a false representation that the products and services originated from, are associated with, or are endorsed by Impossible LLC.

21. Impossible Foods's use of IMPOSSIBLE as a standalone mark for products or services in the fields of fitness, health, athletics, and philanthropy, or any mark incorporating the IMPOSSIBLE formative in association with nutrition and recipe information as well as apparel products, constitutes a false endorsement that wrongly and falsely designates that goods and services marketed and sold by Impossible Foods now, or in the future, originate from or are connected with, authorized by, or otherwise associated with Impossible LLC.

22. Impossible Foods's acts of false association have been knowing, deliberate, willful, and in utter disregard of Impossible LLC's rights.

23. Impossible Foods's acts of false association have caused great and irreparable injury to Impossible LLC.

24. Impossible Foods's use of the mark set forth in Trademark Application Serial No. 88855875 and/or the filing of such trademark application is subsequent to Impossible LLC's use of the IMPOSSIBLE marks.

25. Impossible Foods's use of the mark set forth in Trademark Application Serial No. 88855875 in association with the services set forth therein is likely to cause confusion, mistake, or deception as to the source, sponsorship, affiliation or approval of Impossible Foods' goods and services by Impossible LLC and/or with respect to the IMPOSSIBLE marks.

26. Impossible Foods's use of the mark set forth in Trademark Application Serial No. 88855875 and/or the filing of such trademark application was and is committed knowingly and willfully.

27. Impossible Foods's use of the IMPOSSIBLE formative trademarks in the state of California constitutes an infringement of Impossible's trademark rights.

28. Impossible Foods's use and advertising of the IMPOSSIBLE formative trademarks in the state of California without authorization, constitutes unlawful, unfair, and/or fraudulent business acts or practices.

29. Impossible LLC has lost money or property as a result of Impossible Foods' unfair competition in the form of damage to its goodwill, lost consumer adoption, loss of its intellectual property and other actual damages.

30. The harm to Impossible LLC and to members of the general public outweighs the utility of Impossible Foods' business practices

31. Impossible Foods's unlawful, unfair, and/or fraudulent business practices present a continuing threat to members of the public in that they are likely to cause confusion as to the source of Impossible Foods's services and goods in that the general public is likely to believe that Impossible Foods's offerings originate from, or are affiliated or associated with Impossible LLC, or are otherwise sponsored or endorsed by Impossible LLC.

32. As a direct and proximate result of Impossible Foods' unlawful, unfair, and/or fraudulent business practices, Impossible Foods obtained unlawful profits to the detriment of Impossible LLC.

33. Impossible Foods committed the wrongful acts willfully, intending to gain business and a share of the market by riding on Impossible LLC's reputation and goodwill.

**b. Impossible Foods**

1. Impossible Foods's use of its IMPOSSIBLE-formative marks in connection with recipes, food ingredients, and cooking information, does not infringe or dilute any of Impossible LLC's valid trademark rights and does not violate any federal or state trademark, trade name, or related law.

2. Impossible Foods has used the IMPOSSIBLE mark in connection with edible products since at least early 2015.

3. Impossible Foods began using the IMPOSSIBLE mark with edible products prior to any trademark use by Impossible LLC for edible products.

4. Impossible Foods has used IMPOSSIBLE formative marks regularly and continuously since October of 2015 for plant-based meat substitutes for meat products, edible products, restaurant services, recipes, ingredients, and cooking information, and other related goods and services.

5. Impossible Foods has common law trademark rights over the IMPOSSIBLE formative marks as applied to edible products.

6. Impossible Foods has senior trademark rights with regard to IMPOSSIBLE formative marks as applied to edible products, restaurant servicers, recipes, ingredients, and cooking information, and other related goods and services.

7. At the time Impossible LLC began using IMPOSSIBLE in connection with edible products, Impossible Foods possessed valid federal trademark rights in the IMPOSSIBLE marks.

8. Impossible LLC has no valid rights in any mark incorporating the IMPOSSIBLE formative as directed to edible products.

9. At the time Impossible LLC commenced use of IMPOSSIBLE in connection with edible products, Impossible LLC was on notice of the existence of Impossible Foods' superior rights in its IMPOSSIBLE marks, at least by reason of the existence, at that time, of Impossible Foods' aforementioned federal trademark registrations.

10. Use by Impossible LLC of IMPOSSIBLE as a standalone mark for edible products, or any mark incorporating the IMPOSSIBLE formative for edible products, is without the permission or authorization of Impossible Foods.

11. Use by Impossible LLC of IMPOSSIBLE as a standalone mark for edible products, or any mark incorporating the IMPOSSIBLE formative for edible products is likely to cause and continue to cause confusion, mistake and/or deception among consumers and the public.

12. Use by Impossible LLC of IMPOSSIBLE as a standalone mark for edible products, or any mark incorporating the IMPOSSIBLE formative for edible products will lead the public to falsely to believe that Impossible LLC's products and services are those of, are sponsored or approved by, or are in some way connected with Impossible Foods..

13. Impossible LLC's junior use will overshadow Impossible Foods' senior use, causing the public to falsely associate Impossible Foods' products and services with Impossible LLC.

14. Impossible LLC's acts of unfair competition have caused, and are causing confusion to the public regarding the source and quality of products and services being acquired.

15. Impossible LLC's acts of unfair competition have caused, and are causing harm to Impossible Foods, including harm to the value and goodwill associated with its IMPOSSIBLE marks.

16. The nature and probable tendency and effect of Impossible LLC's use of Impossible Foods' IMPOSSIBLE marks is to enable Impossible LLC to confuse or deceive the public and others by misrepresenting that Impossible LLC's services and products are in some way sponsored or approved by Impossible Foods and/or that Impossible LLC is affiliated with Impossible Foods, and/or by misrepresenting that Impossible Foods' senior use of IMPOSSIBLE is in some way affiliated with, sponsored, or approved by Impossible LLC.

17. Impossible LLC's use in commerce of IMPOSSIBLE as a standalone mark for edible products, or any mark incorporating the IMPOSSIBLE formative in association with edible products, constitutes a false representation that the products and services originated from, are associated with, or are endorsed by Impossible Foods.

18. Impossible LLC's use of IMPOSSIBLE as a standalone mark for edible products, or any mark incorporating the IMPOSSIBLE formative in association with edible products, constitutes a false endorsement that wrongly and falsely designates that goods and services marketed and sold by Impossible LLC now, or in the future, originate from or are connected with, authorized by, or otherwise associated with Impossible Foods.

19. Impossible LLC's acts of false association have been knowing, deliberate, willful, and in utter disregard of Impossible Foods' rights.

20. Impossible LLC's acts of false association have caused great and irreparable injury to Impossible Foods.

21. Impossible LLC's use of the IMPOSSIBLE formative trademarks in the state of California without authorization, constitutes unlawful, unfair, and/or fraudulent business acts or practices.

22. Use in California by Impossible LLC of IMPOSSIBLE as a standalone mark for edible products, or any mark incorporating the IMPOSSIBLE formative for edible products is likely to cause and continue to cause confusion, mistake and/or deception among consumers and the public.

23. Use in California by Impossible LLC of IMPOSSIBLE as a standalone mark for edible products, or any mark incorporating the IMPOSSIBLE formative for edible products will lead the public to falsely to believe that Impossible LLC's products and services are those of, are sponsored or approved by, or are in some way connected with Impossible Foods..

24. Impossible LLC's junior use in California will overshadow Impossible Foods' senior use, causing the public to falsely associate Impossible Foods' products and services with Impossible LLC.

25. Impossible LLC's acts of unfair competition have caused, and are causing confusion to the public regarding the source and quality of products and services being acquired in California.

26. Impossible LLC's acts of unfair competition in California have caused, and are causing harm to Impossible Foods, including harm to the value and goodwill associated with its IMPOSSIBLE marks.

27. The nature and probable tendency and effect of Impossible LLC's use of Impossible Foods' IMPOSSIBLE marks in California is to enable Impossible LLC to confuse or deceive the public and others by misrepresenting that Impossible LLC's services and products are in some way sponsored or approved by Impossible Foods and/or that Impossible LLC is affiliated with Impossible Foods, and/or by misrepresenting that Impossible Foods' senior use of IMPOSSIBLE is in some way affiliated with, sponsored, or approved by Impossible LLC.

28. Impossible Foods has a real interest in USPTO proceedings related to Registration Nos. 5387588, 5590801, 5603025, 5620625, and 6571603.

29. Impossible LLC made a false representation to the USPTO in procuring the incontestable status of Trademark Reg. No. 538758.

30. The false representation Impossible LLC made to the USPTO in procuring the incontestable status of Trademark Reg. No. 538758 is material to the incontestable status of Trademark Reg. No. 538758.

31. Impossible LLC had knowledge of the falsity of the false representation it made to the USPTO in procuring the incontestable status of Trademark Reg. No. 538758.

32. Impossible LLC made the false representation to the USPTO in procuring the incontestable status of Trademark Reg. No. 538758 with the intent to deceive the USPTO.

33. To the extent Impossible LLC ever used Trademark Reg. Nos. 590801, 5603025, and 6571603, it discontinued its use in connection with any of the identified goods in commerce .

34. Impossible LLC does not intend to resume use of Trademark Reg. Nos. 590801, 5603025, and 6571603 or has not used the marks for a period of three years.

35. Impossible LLC is not making a bona fide use in the ordinary course of trade of used Trademark Reg. Nos. 590801, 5603025, and 6571603 in connection with the goods recited in the registrations.

36. Impossible LLC has not made bona fide use in the ordinary course of trade of Trademark Reg. Nos. 590801, 5603025, and 6571603 in connection with the goods recited in the registrations for at least three consecutive years.

37. Impossible Foods' Registration No. 5459255 has achieved incontestable status.

38. Impossible Foods is the owner of all right, title, and interest in and to the following valid and registered trademarks with the U.S. Patent and Trademark Office:

a. Reg. No. 5459255, IMPOSSIBLE, for "Substitutes for foods made from animals or animal products, namely vegetable-based burger patties; meat substitutes," filed with the USPTO on October 25, 2013, and registered on the Principal Register on May 1, 2018. A Sections 8 and 15 combined declaration has been accepted and acknowledged on May 4, 2024.

b. Reg. No. 7179385, IMPOSSIBLE (stylized), for "Meat substitutes; plant-based meat substitutes; plant-based meat patties; vegan and vegetarian; meat substitutes; plant-based chicken substitutes; poultry substitutes; plant-based poultry substitutes," filed with the USPTO on April 19, 2022, and registered on the Principal Register on October 3, 2023.

c. Reg. No. 98042164, IMPOSSIBLE, for "Meat substitutes; plant-based meat substitutes; vegan and vegetarian meat substitutes; plant-based meat patties; plant-based ground meat; chicken substitutes; poultry substitutes; pork substitutes; plant-based meatballs; plant-based sausage; prepared meals consisting primarily of plant-based meat; frozen meals consisting primarily of plant-based meat," filed with the USPTO on June 14, 2023, and registered on the Principal Register on May 28, 2024;

d. Reg. No. 6211591, IMPOSSIBLE BURGER, for "Substitutes for food, namely plant-based meat substitutes," filed with the USPTO on May 16, 2018, and registered on the Principal Register on December 1, 2020;

e. Reg. No. 7249916, IMPOSSIBLE, for "Restaurant services; café services, cafeterias, snack bar services, and the provision of food in restaurants and cafes; catering services for meals," filed with the USPTO on May 13, 2021, and registered on the Principal Register on December 19, 2023;

f. Reg. No. 5370337, IMPOSSIBLE, for "Providing food and drink via mobile truck; catering services," filed with the USPTO on May 20, 2014, and registered on the Principal Register on January 2, 2018.

## III. DISPUTED LEGAL ISSUES

### A. Issues Raised by Impossible LLC

1. Whether Impossible Foods lacks standing to seek cancellation of Impossible LLC's registered trademarks when its marks are not directly affected by the marks Impossible Foods challenges.[1] *See Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 599 (9th Cir. 2014); *SmileDirectClub, LLC v. Berkely*, No. SACV181236, 2018 WL 8131096, at *9 (C.D. Cal. Oct. 26, 2018).

2. The scope of injunctive relief to which Impossible LLC is entitled as a result of Impossible Foods's infringement of Impossible LLC's registered and common law trademarks.

### B. Issues Raised by Impossible Foods

1. Whether Impossible LLC is equitably estopped from arguing that it has "sufficient market penetration" in California, as required for its California common-law infringement claim, in light of its admission that, since at least 2016, Impossible LLC has had no "substantial connections to California," "does not specifically target California," and "does not tailor advertising to California." Answering Brief of Impossible X LLC at 18, *Impossible Foods Inc. v. Impossible X LLC*, Case No. 21-16977 (9th Cir. 2022).

2. If Impossible LLC is not equitably estopped from arguing that it has "sufficient market penetration" in California, as required for its California common-law infringement claim, whether it has established legally sufficient market penetration as required for its common law infringement claim?

## IV. ESTIMATE OF TRIAL TIME

### A. Impossible LLC's Position

Impossible LLC and Mr. Runyon estimate that the parties will need four trial days, exclusive of jury selection, to try Impossible LLC's claims to the jury. If warranted by the jury's verdict, Impossible LLC and Mr. Runyon estimate an additional half day to try its claims for punitive damages to the jury. Impossible LLC and Mr. Runyon estimate that the parties will need three trial days to try Impossible Foods's equitable claims to the Court.

---

[1] Impossible LLC acknowledges that the Court addressed this issue in its ruling on the parties' cross-motions for summary judgment. Impossible LLC includes this issue in the Joint Pretrial Statement and Order out of an abundance of caution to avoid waiver.

### B. Impossible Foods's Position

Impossible Foods agrees that Impossible LLC's claims will be tried to the jury and Impossible Foods' claims will be tried to the Court. As discussed below, however, it would be inefficient to have one trial on Impossible LLC's claims followed by a separate, second trial on Impossible Foods'. Thus, while Impossible Foods agrees that the parties will need seven total trial days, it does not agree that its claims should be tried separately from Impossible LLC's.

## V. TRIAL ALTERNATIVES AND OPTIONS

### A. Settlement Discussion

#### 1. Impossible LLC's Position

The parties attended a court-ordered settlement conference before Magistrate Judge Nathanial Cousins on January 22, 2026. Impossible LLC and Joel Runyon attended with full settlement authority. The case did not resolve at that conference. Impossible LLC will provide an update to Magistrate Judge Cousins on or before January 30, 2026.

#### 2. Impossible Foods's Position

The parties' court-ordered settlement conference took place before Magistrate Judge Nathanial Cousins on January 22, 2026 with all parties in attendance. The case did not resolve. Impossible Foods does not expect the case to settle before trial. Impossible Foods will provide an update to Magistrate Judge Cousins by January 30, 2026.

### B. Amendments or Dismissals

The parties do not propose amendments to the pleadings or dismissal of parties, claims, or defenses at this stage.

### C. Bifurcation or Separate Trial of Issues

#### 1. Impossible LLC's Position

Impossible LLC is the only party in this action seeking legal relief. Impossible Foods's case involves only equitable claims. (*See* Impossible Foods Mot. Part. Summ. J., Dkt. 259, at 1.)

Impossible LLC's legal claims—inclusive of its First, Second, Third, Fourth, Fifth, and Sixth Causes of Action, for which Impossible LLC seeks compensatory, exemplary, and punitive damages—as well as Impossible Foods's defenses, must be tried first to a jury, and the jury's implicit and explicit factual determinations are binding for purposes of adjudicating Impossible

Foods's equitable claims. U.S. Const. Amend. VII; *Teutscher v. Woodson*, 835 F.3d 936, 944 (9th Cir. 2016) ("[I]n a case where legal claims are tried by a jury and equitable claims are tried by a judge, and [those] claims are based on the same facts, the trial judge must follow the jury's implicit or explicit factual determinations in deciding the equitable claims" and the Seventh Amendment prohibits "the courts of the United States to re-examine any facts tried by a jury"); *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 962 (9th Cir. 2001) ("where there are issues common to both the equitable and legal claims, the legal claims involved in the action must be determined prior to any final court determination of [the] equitable claims"); *Wang v. EHang Holdings Ltd.*, No. 20-CV-00569-BLF, 2022 WL 1266294, at *2 (N.D. Cal. Apr. 28, 2022) (Freeman, J.) ("[I]n a case where legal claims are tried by a jury and equitable claims are tried by a judge, and the claims are based on the same facts, in deciding the equitable claims the Seventh Amendment requires the trial judge to follow the jury's implicit or explicit factual determinations"); *Illinois Union Ins. Co. v. Intuitive Surgical, Inc.*, 179 F. Supp. 3d 958 (N.D. Cal. 2016) (Seventh Amendment preserves jury trial right on Impossible LLC's legal claims and defenses thereto).

Impossible Foods concedes that this is the law yet asserts without explanation that "it does not follow" that Impossible LLC would first try its legal claims because "many factual issues underlying the parties' claims will overlap." But that is the very point addressed by the multitude of cases holding that, in cases involving "overlapping" facts between legal and equitable claims, the legal claims should be tried first to the jury, with the equitable claims tried subsequently to the Court . *See, e.g., Open Text S.A. v. Box, Inc.*, No. 13-CV-04910-JD, 2015 WL 466815, at *1 (N.D. Cal. Jan. 28, 2015) (jury's factual determinations may foreclose equitable issues because "it is a commonplace of the law that the trier of fact resolves fact disputes in the context of a legal claim, and does that before equitable claims are addressed by the court"); *Insight Psychology and Addiction, Inc., v. City of Costa Mesa*, No. 8:20-CV-00504-MEMF-JDE, 2024 WL 4799135, at *2 (C.D. Cal. Oct. 31, 2024) ("So long as there are issues for the jury, a court is generally required to allow the jury to make its own findings of fact without first holding a bench trial and making findings of fact as to equitable relief that would then bind the jury and usurp its fact finding role.")

Impossible Foods's specific objections are also misguided. First, Impossible Foods asserts that if the legal claims proceed first, the jury will render its verdict without hearing Impossible Foods's arguments or evidence on abandonment and fraud in the procurement. Not so. Impossible Foods pleaded fraud on the PTO (under the defense of unclean hands) and abandonment as affirmative defenses to Impossible LLC's legal claims, and has affirmed its intent to substantiate those defenses on at trial. The jury will therefore receive and consider Impossible Foods's evidence of fraud and abandonment prior to issuing its verdict, and so Impossible Foods is mistaken in its claim that it would be "severely prejudiced" by proceeding in this way. Next, Impossible Foods asserts it will be "inefficient" for Impossible LLC to first try its case to a jury because doing so will "require Impossible Foods to recall witnesses who have already testified." This is also not correct. Impossible Foods's affirmative claims for fraud and abandonment rest solely on the testimony of Mr. Runyon. And Impossible Foods's infringement claim against Impossible LLC's nutritional supplements implicates the testimony of a single Impossible Foods fact witness (Ms. Hatman), and a single retained expert, Mr. Plumpe. In any event, these scheduling inefficiencies are minor in the context of a five-year litigation, and are in any event insufficient to deny Impossible LLC's Seventh Amendment right to a jury.

Finally, trying all of the claims together at once would not only be improper, but would prejudice Impossible LLC by exposing the jury to Impossible Foods's claims and evidence of infringement and unjust enrichment—none of which is relevant to any issue the jury will be asked to decide. The effect of hearing such testimony from Impossible Foods—regarding, *e.g.,* the strength of its mark, Impossible LLC's alleged infringement, and the profits allegedly unjustly obtained—would be confusing and highly prejudicial. Nor would it be appropriate to prioritize the convenience of two Impossible Foods witnesses by sending the jury out for long stretches while Impossible Foods presents evidence relevant to its equitable claims and remedies, for that would only shift the burden of that scheduling "inconvenience" to the jury. Instead, Impossible LLC should try its legal claims and Impossible Foods's defenses thereto to the jury, obtain the verdict, and then present evidence on the remaining unresolved issues relevant to the equitable claims to the Court.

As for bifurcation (an issue raised by Impossible Foods below), Impossible LLC agrees that the jury's assessment of punitive damages would take place in a separate phase after the jury has made liability determinations. However, as for enhancements and attorney's fees under the Lanham Act (also referenced below), those issues would be determined by the Court post-trial, if the jury were to find willfulness. As such, they are not relevant to trial sequencing.

**2. Impossible Foods's Position**

The parties agree that, in the event the jury finds liability on Impossible LLC's claims, exemplary damages and attorneys' fees must be determined by the Court post-trial. They also agree that punitive damages (available only if Impossible LLC succeeds on its California common law infringement claim) also must be decided in a separate phase and only after liability. The parties also agree that "in cases in which legal and equitable claims turn on common issues of fact, 'any legal issues for which a trial by jury is timely and properly demanded [must] be submitted to a jury, and the jury's determination of the legal claims must occur 'prior to any final court determination of [the] equitable claims." *Teutscher v. Woodson*, 835 F.3d 936, 944 (9th Cir. 2016) (internal quotation and citations omitted). And there is no dispute that the jury's implicit and explicit factual determinations are binding on the Court. *E.g.*, *Wang v. EHang Holdings Ltd.*, 2022 WL 1266294, at *2 (N.D. Cal. Apr. 28, 2022) (Freeman, J.).

What the parties disagree about is how to implement those principals in this case. Impossible LLC believes it should be allowed to present its claims to the jury, have the jury decide those claims, and then allow Impossible Foods to put on its claims to the Court. There are two issues with that approach. *First*, many of the factual issues underpinning the parties' claims overlap in ways that will severely prejudice Impossible Foods if it is not permitted to put on its own evidence before the jury decides Impossible LLC's claims. For example, if Impossible Foods succeeds on its fraudulent procurement claim, it will foreclose Impossible LLC's infringement claims, because Impossible LLC will not be able to show a valid registered trademark. *Second*, proceeding in the way Impossible LLC suggests will be extremely inefficient because it will require that nearly every single witness be recalled.

The cases that Impossible LLC cites in no way require this result. In *Open Text S.A. v. Box, Inc.*, No. 13-CV-04910-JD, 2015 WL 466815, at *1 (N.D. Cal. Jan. 28, 2015), the court held that "[t]he possibility that the jury's decision may affect Open Text's claim for equitable or injunctive relief is no basis for taking that decision out of the jury's hands." But Impossible Foods does not seek to take any decision "out of the jury's hands." It merely seeks to ensure that the jury has all of the relevant information when it makes its decision. Similarly, in Insight Psychology and Addiction, Inc., v. City of Costa Mesa, No. 8:20-CV-00504-MEMF-JDE, 2024 WL 4799135, at *2 (C.D. Cal. Oct. 31, 2024), the Court held that "[s]o long as there are issues for the jury, a court is generally required to allow the jury to make its own findings of fact without first holding a bench trial and making findings of fact as to equitable relief that would then bind the jury and usurp its fact finding role." But again, Impossible Foods is not asking to "usurp [the jury's] fact finding role." The jury will decide the issues it is required to decide. But it should do so in possession of all relevant information, including the information Impossible Foods is entitled to put on for its claims.

Impossible Foods agrees that, as a general matter, "in cases in which legal and equitable claims turn on common issues of fact, 'any legal issues for which a trial by jury is timely and properly demanded [must] be submitted to a jury, and the jury's determination of the legal claims must occur 'prior to any final court determination of [the] equitable claims." *Teutscher v. Woodson*, 835 F.3d 936, 944 (9th Cir. 2016) (internal quotation and citations omitted). Impossible Foods further agrees that the jury's implicit and explicit factual determinations are binding on the Court. *E.g.*, *Wang v. EHang Holdings Ltd.*, 2022 WL 1266294, at *2 (N.D. Cal. Apr. 28, 2022) (Freeman, J.). But it does not follow that "Impossible LLC shall first try its legal claims to the jury…after which Impossible Foods shall try its equitable claims to the Court." Many factual issues underlying the parties' claims will overlap, including the priority of Impossible Foods' marks and the fraudulent procurement (and therefore invalidity) of Impossible LLC's marks. If Impossible LLC is permitted to present its case to the jury first, and Impossible Foods is not permitted to put on its affirmative case (for example on abandonment) until after the jury has already rendered its verdict on Impossible LLC's claims, the jury will make its decision without the benefit of relevant

information. Separating the cases as Impossible LLC proposes also will be inefficient on a practical level, because it will require Impossible Foods to recall witnesses who have already testified.

Impossible Foods separately requests that the Court bifurcate liability and damages. *See, e.g., Garamendi v. Altus Finance S.A.*, 2005 U.S. Dist. LEXIS 39214 (C.D. Cal. 2005) (discussing verdict in trial bifurcated between liability and damages). Among other damages, Impossible LLC seeks attorneys' fees under the Lanham Act and punitive damages under California Civil Code Section 3295. Each will have to be decided after liability. The Lanham Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). In the Ninth Circuit, courts do so "exercising equitable discretion." *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1181 (9th Cir. 2016). And because Impossible LLC is seeking punitive damages under California law, evidence of Impossible Foods' financial condition is inadmissible until and unless there is a finding of liability. *See* Civ. Code § 3295(d) ("The court shall . . . preclude the admission of evidence of that defendant's profits or financial condition until after the trier of fact returns a verdict for plaintiff awarding actual damages and finds that a defendant is guilty of malice, oppression, or fraud in accordance with Section 3294"). Impossible LLC also seeks exemplary damages and corrective advertising damages under the Lanham Act, each of which is tried to the jury. But the jury first must find that the plaintiff has suffered actual injury as a result of the infringement. *Marketquest Grp., Inc. v. BIC Corp.*, 316 F.Supp.3d 1234 (S.D. Cal. 2018) (jury must find plaintiff suffered actual damages as a result of infringement to award corrective advertising damages); *Kizer v. Cnty. of San Mateo*, 53 Cal. 3d 139, 147 (1991) ("[i]n California, as at common law, actual damages are an absolute predicate for an award of exemplary or punitive damages").

## VI. ADDITIONAL ISSUES

### A. Impossible Foods's AEO Designations

#### 1. Impossible LLC's Position

Impossible Foods is maintaining Attorneys' Eyes Only designations over certain deposition testimony and exhibits concerning Impossible Foods' trademark name searches from more than ten years ago, as well as marketing and financial information from approximately 2020 to 2024.

Impossible LLC has requested that Impossible Foods downgrade its designations of this information from "AEO" to "Confidential" so that Impossible LLC and Mr. Runyon may fully understand the parties' positions and the record as part of settlement discussions and preparation for trial. Impossible Foods has refused, and has not provided compelling justification to maintain AEO designations over this material at this late stage of the case. Even the specific financial figures Impossible Foods identified as needing AEO protection (only a portion of the disputed AEO designations) do not rise to the level of "compelling justification," as these numbers are not current and have little to no value to Impossible LLC as trade information. Their only value in this case is to provide Impossible LLC with necessary information for its presentation of its claims. Likewise, Impossible Foods's claim about "forward looking" brand strategy are incorrect. All but one of its AEO exhibits covering brand strategy cover time periods that have already elapsed. Impossible LLC respectfully requests the opportunity to address this issue at the final pretrial conference.

2. **Impossible Foods's Position**

After the Court issued the summary judgment order, Impossible LLC asked Impossible Foods to remove AEO designations from its expert reports, three deposition transcripts and the exhibits to the transcripts. At the time, both Impossible LLC and Impossible Foods had designated their witnesses' transcripts, as well as their expert reports, entirely AEO. In response to Impossible LLC's request, Impossible Foods carefully reviewed the relevant materials and downgraded all of the expert reports to confidential except a single page, as well as the vast majority of the deposition transcripts and exhibits. The portions of the transcripts that Impossible Foods did not agree to downgrade were called out line-by-line and consist primarily of specific financial figures, including information from profit and loss statements and high-level budget documents. The exhibits it declined to downgrade consist of similar financial information as well as specific information about brand strategy, much of which is forward-looking. Impossible LLC has never identified any particular portions of testimony or exhibits it believes remain improperly AEO. Instead it has raised the issue for the Court.

### B. Impossible Foods's Refusal to Produce Updated Financials in Relation to Impossible LLC's Damages

#### 1. Impossible LLC's Position

Impossible LLC has requested that Impossible Foods produce updates to the financial information it has produced in this action to be current through 2025, specifically an update to its profit and loss statement produced at IF00017501, in order for Impossible LLC to calculate its full damages from Impossible Foods' infringement. Impossible Foods has declined to do so. Its refusal to provide updated financial information is prejudicing Impossible LLC's ability to prepare its affirmative case and identify the full extent of corrective advertising and disgorgement damages to which it is entitled. Impossible LLC requests that the Court require Impossible Foods to provide updated financial information regarding its profits and losses in 2025, in accordance with the information produced at IF00017501. Impossible LLC respectfully requests the opportunity to address this issue at the final pretrial conference.

### C. Impossible LLC's Recent Document Production

#### 1. Impossible Foods's Position

Impossible Foods asks that, pursuant to the parties' agreement, the Court extend its deadline to provide objections to Impossible LLC's exhibit list. The parties agreed to a meet and confer schedule for the pretrial statement that required Impossible LLC to produce its exhibit list on Friday, January 23, 2026 and Impossible Foods to provide objections to its exhibits by Tuesday, January 27, 2026. On January 23, 2026, Impossible LLC produced a list of more than 900 exhibits, including hundreds of new documents Impossible LLC produced for the first time that evening. Impossible Foods in response pointed out that, based on Impossible LLC's estimate that it will need four days to put on its case, Impossible LLC would have to admit more than 225 exhibits each day, which is simply not possible. Impossible Foods also explained that three days was simply not enough time for its to review and object to a list that extensive. It therefore asked Impossible LLC to narrow the list to only those documents it reasonably foresees using at trial. Impossible LLC refused but agreed to extend Impossible Foods' deadline to provide objections to its exhibits. Impossible Foods respectfully requests that the Court permit Impossible Foods to submit objections up to and including February 7, 2026.

2. **Impossible LLC's Position**

Impossible LLC's exhibit list is neither unfamiliar nor onerous. The majority of the exhibits are pictures of websites and other public-facing marketing of the parties. Most of these documents have been used throughout this case and are well-known to the parties, as they were deposition exhibits, motion exhibits, or exhibits to the pleadings. These are familiar, unobjectionable documents that are easily reviewed. As for the "hundreds" of new docs produced, those are largely more of the same: pictures of websites, social media accounts, and commercial activity of Impossible Foods showing continued infringement and willfulness. All were generated after the close of discovery, and so could not have been produced earlier.

Impossible LLC shared its exhibit list on January 21. Several days later, Impossible Foods stated that it would require more time to review the list. Impossible LLC accommodated, and offered not to object if Impossible Foods needed several additional days to prepare its objections. Impossible Foods never responded to this offer, and instead resorted to self-help by adding this issue to the Joint Pre-Trial Statement and requesting to address it with the Court 14 days from now.

**D. Impossible Foods's Improper Assertions of Affirmative Defenses and Relief Sought**

1. **Impossible LLC's Position**

Impossible Foods raises for the first time in this submission that it intends to assert affirmative defenses of: (1) Priority, (2) No Damages, (3) Lack of Causation, (4) No Irreparable Harm, and (5) Insufficient Market Penetration. (*See supra* Part I.B.) It did not plead any of these defenses in any of its responsive pleadings, including its operative Amended Answer to Impossible Foods's Third Amended Complaint. (*See* Dkt. 250 at 9-11.) Impossible LLC objects to Impossible Foods asserting these affirmative defenses now, especially given Impossible Foods's prior opposition to Impossible LLC's addition of affirmative defenses as part of the parties' amended pleadings on grounds of prejudice. (*See* Order, Dkt. 121 at 8.) Impossible LLC also objects to Impossible Foods's incorrect description of the unjust enrichment damages it seeks in this action. In this submission, Impossible Foods claims it is seeking equitable unjust enrichment in the form of ***revenue*** Impossible LLC earned from sales of infringing sleep and energy powders. But equitable unjust enrichment is calculated using ***profits***, not revenue, as even Impossible Foods's damages

expert John G. Plumpe confirms. (*See* Initial Expert Report of John G. Plumpe ¶¶ 16, 21, 25.) Impossible LLC respectfully requests the opportunity to address these issues at the final pretrial conference.

2. **Impossible Foods's Position**

Impossible X objects to Impossible Foods' assertion of the "affirmative defenses of (1) Priority, (2) No Damages, (3) Lack of Causation, (4) No Irreparable Harm, and (5) Insufficient Market Penetration." In fact, not one is an "affirmative defense" at all; each is an element of one or more of Impossible X's claims, on which Impossible X bears the burden of proof. An allegation that a plaintiff "has not met its burden of proof is not an affirmative defense." *Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002). "An affirmative defense, under the meaning of Federal Rule of Civil Procedure 8(c), is a defense that does not negate the elements of the plaintiff's claim, but instead precludes liability even if all of the elements of the plaintiff's claim are proven." *Barnes v. AT & T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1173-74 (N.D. Cal. 2010) (citation omitted). Impossible Foods was not required to "plead" that Impossible X cannot meet its burden of establishing its own claims.

## VII. BINDING EFFECT OF THE JOINT PRETRIAL STATEMENT AND ORDER

The foregoing admissions having been made by the parties, and the parties having specified the foregoing issues of fact and law remaining to be litigated, this order shall supplement the pleadings and govern the course of trial of this action, unless modified to prevent manifest injustice.

Dated: January 29, 2026

Respectfully submitted,

BRAUNHAGEY & BORDEN LLP

By: */s/ Adam S. Cashman*
Adam S. Cashman

*Attorneys for Defendants / Counter-Plaintiffs Impossible LLC and Joel Runyon*

Dated: January 29, 2026

DAVIS WRIGHT TREMAINE LLP

By: */s/ Roxanne Elings*
G. Roxanne Elings

*Attorneys for Plaintiff / Counter-Defendant Impossible Foods Inc.*

SO ORDERED.

Dated: _______________, 2026

________________________________
Honorable Beth Labson Freeman
United States District Judge