J. Noah Hagey, Esq. (SBN: 262331)
    hagey@braunhagey.com
Adam S. Cashman, Esq. (SBN: 255063)
    cashman@braunhagey.com
Greg Washington, Esq. (SBN: 318796)
    gwashington@braunhagey.com
J. Tobias Rowe, Esq. (SBN: 305596)
    rowe@braunhagey.com
Oliver McNicholas, Esq. (SBN: 363554)
    omcnicholas@braunhagey.com
BRAUNHAGEY & BORDEN LLP
747 Front Street, 4th Floor
San Francisco, CA 94111
Telephone: (415) 599-0210

Marissa R. Benavides (*pro hac vice* admission)
    benavides@braunhagey.com
BRAUNHAGEY & BORDEN LLP
200 Madison Avenue, 23rd Floor
New York, NY 10016
Telephone: (646) 829-9403

[Other counsel of record indicated on docket.]

*Attorneys for Defendants / Counter-Plaintiffs
Impossible LLC and Joel Runyon*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| IMPOSSIBLE FOODS INC., <br><br> Plaintiff / Counter-Defendant, <br><br> v. <br><br> IMPOSSIBLE LLC and JOEL RUNYON, <br><br> Defendants / Counter-Plaintiffs. | Case No. 5:21-cv-02419-BLF (SVK) <br><br> **IMPOSSIBLE LLC AND JOEL RUNYON'S OPPOSITION TO IMPOSSIBLE FOODS'S MOTION IN LIMINE NO. 1 TO EXCLUDE REPORT AND TESTIMONY OF DR. JENNIFER VANDERHART, PH.D.** <br><br> **Judge:** Hon. Beth Labson Freeman <br> **Conference Date:** February 12, 2026 <br> **Conference Time:** 1:30 p.m. |

Impossible LLC and Joel Runyon (together "Impossible LLC") oppose Impossible Foods's Motion *in Limine* No. One ("Mot.") to exclude Jennifer Vanderhart, Ph.D.'s report and testimony.

## INTRODUCTION

Dr. Vanderhart is a distinguished economist with extensive experience calculating damages in intellectual property cases. The methodology she employed in her work in this matter was simply to identify infringing advertising spend and multiplying those expenditures by the factors necessary to correct unwanted brand associations, as determined by Impossible LLC's expert in marketing and brand sciences, Robert Palmatier, Ph.D.

Instead of challenging Dr. Vanderhart's credentials or methodology, Impossible Foods improperly uses its *in limine* motion to re-hash its summary judgment arguments regarding an alleged absence of damages evidence, lack of a formal brand valuation, and its complaints that the record is insufficient to show causation. But this Court has already squarely addressed those issues at summary judgment, and those objections are no grounds for a *Daubert* challenge in any event.

## FACTUAL BACKGROUND

Dr. Vanderhart's expert opinion involved sound methodology based on the analysis of Impossible Foods's corporate testimony, Dr. Palmatier's expert opinion, and simple math. To begin, Dr. Vanderhart used documents and deposition testimony to identify Impossible Foods's advertising expenditures on infringing products, like promotional items and cookbooks. Based on Dr. Palmatier's opinion that "Impossible LLC would likely have to spend 3 to 5 times as much to correct false or unwanted brand associations as was originally spent by Impossible Foods to create these associations," Dr. Vanderhart performed the multiplications necessary to calculate a corrective advertising range. Dkt. 324-2 ¶ 40.

To calculate Impossible Foods's promotional item expenditures, Dr. Vanderhart relied on the deposition testimony of Caitlyn Hatman, Impossible Foods's 30(b)(6) witness on marketing topics and Director of Marketing, Experiential, and Partnerships. Dr. Vanderhart █████

██████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████ *Id.* ¶ 42 (citing Hatman Dep. Tr., at 127:9–128:22). Considering ███████████████████████████████████████

1  ██████████████████████████████████████████████████████████████████████
2  ██████████████████████████████ Dr. Vanderhart identified these as advertising expenditures. *Id.*
3  ¶ 43. Based on Ms. Hatman's testimony, Dr. Vanderhart calculated that ███████████████████
4  ████████████████████████████████████████████████████████████████████████████████
5  ████████████ *Id.* ¶¶ 44-46 (citing Hatman Dep. Tr., at 129:18–130:17). But Dr. Vanderhart
6  also noted that ████████████████████████████████████████████████████████████████
7  ████████████████████████████████████████████████████████████
8  ██████████████████████████████████████ *Id.* ¶ 46 n.117. Because it was ██████████████
9  ███████████████████████████████████████ Dr. Vanderhart's calculation of
10 ██████ in swag-related expenses is the very minimum amount attributable to the infringing
11 promotional items based on Impossible Foods's own documents. *Id.*
12      When calculating infringing cookbook expenditures, Dr. Vanderhart reviewed Impossible
13 Foods's documents to identify the lifetime revenue for the cookbook. In calculating that amount,
14 Dr. Vanderhart focused on Impossible Foods's ████████████████████████████████
15 ████████████████████████████████████████████████████████████████████████████████
16 ████████ *Id.* ¶ 48 (citing IF00035073). Dr. Vanderhart added ████████████████████████
17 ████████████████████████████████████████████████ *Id.* Relying on Dr. Palmatier's
18 opinion, ████████████████████████████████████████████████████████████████████████
19 ████████████████████████████████████████ *See id.* ¶ 41 (citing Dkt. 324-4 ¶ 78).
20      After calculating the promotional item and cookbook expenditures, Dr. Vanderhart relied
21 on Dr. Palmatier's opinion that "correcting brand harm typically requires a multiple of the cost of
22 the actions that caused the harm in the first place." *Id.* ¶ 40 (citing Dkt. 324-4 ¶ 74). Because Dr.
23 Palmatier believed that "Impossible LLC would likely have to spend 3 to 5 times as much to
24 correct false or unwanted brand associations as was originally spent by Impossible Foods to create
25 these associations," Dr. Vanderhart █████████████████████████████████████████████
26 ████████████████████████████████████████████████████████████████████████████████
27 ████████████████████████████████████████████████████████████████████████████████
28 ████ to account for the harm to Impossible LLC. *See id.* ¶¶ 40, 47, 49 (citing Dkt. 324-4 ¶ 78).

# ARGUMENT

In deciding a *Daubert* challenge, "the district court must address the soundness of the expert's methodology, not the correctness of their conclusions." *Laatz v. Zazzle, Inc.*, No. 5:22-CV-04844-BLF, 2025 WL 3205586, at *3 (N.D. Cal. Nov. 17, 2025). "When an expert meets the threshold established by Rule 702 as explained in *Daubert*, the expert may testify[,] and the jury decides how much weight to give that testimony." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010). Here, each of Impossible Foods's arguments seeking to exclude Dr. Vanderhart's report and testimony fail because they go to the weight of the testimony, not admissibility.

### A.   There is no requirement that a damages expert calculate lost sales or trademark value to offer a corrective advertising opinion.

Impossible Foods's Motion *in Limine* is merely an attempt to re-litigate this Court's summary judgment ruling. At summary judgment, Impossible Foods argued that Impossible LLC could not obtain corrective advertising damages, in part because "Dr. Vanderhart never affirmatively opines that the value of Impossible LLC's brand or marks has been damaged." Dkt. 259 at 12. But the Court rejected that argument, holding "that a reasonable jury could find that [Impossible LLC] experienced a financial decline following the release of the Impossible [Foods's] Cookbook and Impossible Swag that was attributable to harm to [Impossible LLC]'s goodwill and reputation." Dkt. 311 at 10. Now, Impossible Foods once again seeks to exclude Dr. Vanderhart's opinion based on the very same argument—namely, that she "made no attempt to calculate lost sales caused by the alleged infringement" nor "attempt[ed] to value Impossible [LLC]'s brand or the specific trademarks at issue." Mot. at 2-3. But "Section 1117 demands neither empirical quantification nor expert testimony to support a monetary award of actual damages" because "many sources can provide the requisite information upon which a reasonable jury may calculate damages." *Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1113 (9th Cir. 2012). And Impossible LLC need not "provide a specific mathematical formula" valuing its trademarks to sustain a corrective advertising award. *Id.* at 1112.

Here, the evidence shows that Dr. Vanderhart's corrective advertising determination is reasonable. As an initial matter, Impossible Foods's proposal to cap Impossible LLC's recovery to

1  brand investments or company income does not account for Mr. Runyon's personal investments,
2  viral marketing strategies, philanthropic ventures, event attendance, or organic reach of the
3  Impossible LLC brand—all valuable investments in the brand that Dr. Vanderhart describes and
4  relies on in her Report. *See* Dkt. 324-2 ¶¶ 13-20, 23-28. Moreover, the ▮▮▮▮ base of Dr.
5  Vanderhart's corrective advertising opinion is less than half of Impossible LLC's $2 million in total
6  income. Given that even "crude" damages measures are permissible when "the jury's calculation
7  was based upon reasonable inferences and represented a fair assessment of the damages suffered,"
8  Impossible Foods is mistaken in its arguments to the contrary. *Skydive Arizona*, 673 F.3d at 1113.
9      Impossible Foods is also mistaken in suggesting that Dr. Vanderhart's opinion will lead to
10 overcompensation because the Ninth Circuit's model jury instructions mandate that the jury "must
11 not overcompensate" nor "exceed the actual damage to the value of the plaintiff's mark at the time
12 of the infringement by the defendant." Ninth Circuit Model Trademark Instruction No. 15.29. The
13 jury is presumed to follow those instructions, and as the infringing party, Impossible Foods bears
14 "the burden of any uncertainty in the amount of damages." *Adray v. Adry-Mart, Inc.*, 76 F.3d 984,
15 988 (9th Cir. 1995). In any event, Impossible Foods's objections are matters for summation that do
16 not warrant exclusion under *Daubert* of a methodologically sound opinion that is consistent with
17 Ninth Circuit precedent and well supported by the evidence.

**B.    Dr. Vanderhart properly measured advertising costs.**

19 Impossible Foods takes issue with Dr. Vanderhart "includ[ing] the cost of producing all
20 promotional items" and "not attempt[ing] to separate apparel from any of these non-infringing
21 items." (Mot. at 4.) But Impossible Foods's attempt to narrow the products at issue is contrary to its
22 own testimony. According to Impossible Foods's corporate designee, ▮▮▮▮
23 ▮▮▮▮ *See* Dkt. 324-2 ¶ 43. Instead, ▮▮▮▮
24 ▮▮▮▮—conduct that Dr. Palmatier identified as
25 requiring corrective advertising. *Id.* ¶¶ 42-43, 53 (citing Dkt. 324-4 ¶ 78). As such, ▮▮▮▮
26 ▮▮▮▮ by definition, advertising expenditures. The same logic
27 applies to Impossible Foods's cookbooks, which ▮▮▮▮
28 ▮▮▮▮ *See id.* ¶¶ 41, 48. And

Impossible Foods ignores that Dr. Vanderhart's opinion is generous to Impossible Foods. Indeed, Impossible LLC will incur substantially greater expense to generate sufficient impressions to correct unwanted brand associations that Impossible Foods obtained by distributing infringing promotional items for individuals to wear in public or model for others on social media. Dr. Vanderhart's treatment of those costs as marketing inputs is therefore both favorable to Impossible Foods and economically appropriate.

### C.   It is reasonable for Dr. Vanderhart to rely on Dr. Palmatier's corrective advertising multiplier.

Courts regularly award corrective advertising multipliers. *See, e.g.*, *U-Haul Int'l, Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1041-42 (9th Cir. 1986) (affirming a corrective advertising award of twice the amount spent on initial advertising); *PODS Enters., LLC v. U-Haul Int'l, Inc.*, 126 F. Supp. 3d 1263, 1285 (M.D. Fla. 2015) (concluding that the jury's award of three times advertising was reasonable). Similarly, Dr. Palmatier's expert marketing opinions about the required effort to repair confusion-driven brand harm can reasonably inform Dr. Vanderhart's corrective advertising calculations. *See Stone Brewing Co., LLC v. Molson Coors Beverage Co. USA LLC*, No. 23-3142, 2024 WL 5244556, at *3 (9th Cir. Dec. 30, 2024) (affirming damages award and approving Dr. Palmatier's methodology regarding a "theory on consumer habits").

As explained in Dr. Palmatier's report, ███████████████████████████████████████████████████████████████████████████████ *See* Dkt. 324-4 ¶¶ 70-78. And the Ninth Circuit has found that Dr. Palmatier's expert opinions regarding the necessary advertising repetition to correct infringement harm are sound. *See Stone Brewing*, 2024 WL 5244556, at *3. It is therefore "insufficient to justify excluding" Dr. Vanderhart's damages opinion because "[t]he evidence at trial will determine whether [the expert]'s damages estimate is incongruous with the jury's liability findings." *Sumotext Corp. v. Zoove, Inc.*, No. 16-CV-01370-BLF, 2020 WL 533006, at *8 (N.D. Cal. Feb. 3, 2020). In short, Impossible Foods's objections "are more appropriately considered an objection going to the weight of the evidence rather than its admissibility." *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1188 (9th Cir. 2002).

| | |
|---|---|
| Dated: February 5, 2026 | Respectfully submitted, |
| | BRAUNHAGEY & BORDEN LLP |
| | By: */s/ Adam S. Cashman* |
| |      Adam S. Cashman |
| | *Attorneys for Impossible LLC and Joel Runyon* |