# EXHIBIT 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

IMPOSSIBLE FOODS INC., A DELAWARE )
CORPORATION, )
PLAINTIFF/COUNTER-DEFENDANT, ) CASE NO.
) 5:21-cv-02419-BLF (SVK)
v. )
IMPOSSIBLE LLC, A TEXAS LIMITED )
LIABILITY COMPANY, AND JOEL RUNYON, )
DEFENDANTS/COUNTER-PLAINTIFFS. )

VIDEOTAPED DEPOSITION OF

DR. ROBERT WILLIAM PALMATIER

APPEARING REMOTELY

June 24, 2025

12:00 p.m. (PDT)

Reported by: Eileen Mulvenna, CSR/RMR/CRR/RDR

DIGITAL EVIDENCE GROUP

1730 M Street, NW, Suite 812

Washington, D.C. 20036

(202) 232-0646

I did forget to ask one thing, which is, how many times would each of the ads in the hypothetical marketing campaign need to be posted or run to be effective?

MR. ROWE: Objection, vague.

THE WITNESS: Yeah, that was beyond the scope of what I was asked to do. You're asking -- yeah, that's -- if you look at a marketing campaign, once -- I looked at it at the aggregate level saying, if this much was spent causing damages in a very effective way, if I did the same effective thing on the back end, how much would it take to go do it.

If you say, Well, I want you to know how many impressions, what channel, how long, how many people would see it, what is the relative cost, those are very, very specific details that would come out if somebody was tasked to develop a detailed marketing plan. I was not asked to do that.

BY MR. HENN:

Q. I'd like to talk for a minute about

the support you cite for your multiple -- your three to five times multiple. I believe those are collected in the footnotes on pages 43 and 44, if you want to follow along.

Aside from those materials reflected in the footnotes, are you relying on any other research or published materials to support your three to five multiple?

A. I guess after, you know, 20-plus years of doing marketing research, I've integrated in many studies. So in addition to those kind of more generic information, I cite some specific ones here that are consistent with my general knowledge. But if you say, are there other specific studies that right now I'm pointing to, I can't think of any.

Q. Are you aware of any published studies supporting your multiple specifically with regard to the cost of the advertising that led to the negative impressions as opposed to the number of exposures of a corrective message would need to be received by the consumer?

MR. ROWE: Objection, vague and

ambiguous.

THE WITNESS: Well, assuming -- I guess your point here is we -- typically in the academic research, you won't talk about dollars as much because it changes over time, and so you would talk about how many times you would have to see something.

But if -- when I look at it, I'm comparing, okay, so much was spent to build those linkages, so many dollars were spent to build impressions, and it was done in an effective way.

If I look at the back end, I want to correct those and I do it in a similar effective way, then the impressions would be proportional to the dollars spent.

BY MR. HENN:

Q. I understand that's your opinion reflected here. My question wasn't about your opinion, because I got it, it's written in here. My question is about published studies or research that supports that leap you are making.

STATE OF NEW YORK )
ss:
COUNTY OF WESTCHESTER )

I, EILEEN MULVENNA, CSR/RMR/CRR/RDR, a Certified Court Reporter, Registered Merit Reporter, Certified Realtime Reporter, Registered Diplomate Reporter, and Notary Public in and for the State of New York, do hereby certify:

That I reported the taking of the deposition of the witness, DR. ROBERT WILLIAM PALMATIER, commencing on the 24th day of June, 2025 at the hour of 10:00 a.m.

That prior to being examined, the witness was duly sworn by me to testify to the truth, the whole truth, and nothing but the truth.

That I thereafter transcribed my said shorthand notes into typewriting and that the typewritten transcript of said deposition is a complete, true and accurate transcription of my said shorthand notes taken down at said time, and that a request has been made to review the transcript.

I further certify that I am not a relative or employee of an attorney or counsel of any of the parties, nor a relative or employee of any attorney or counsel involved in said action, nor a person financially interested in the action.

IN WITNESS WHEREOF, I have hereunto set my signature this 25th day of June, 2025.



EILEEN MULVENNA, CSR/RMR/CRR