J. Noah Hagey, Esq. (SBN: 262331)
hagey@braunhagey.com
Adam S. Cashman, Esq. (SBN: 255063)
cashman@braunhagey.com
Greg Washington, Esq. (SBN: 318796)
gwashington@braunhagey.com
J. Tobias Rowe, Esq. (SBN: 305596)
rowe@braunhagey.com
Oliver McNicholas, Esq. (SBN: 363554)
omcnicholas@braunhagey.com
BRAUNHAGEY & BORDEN LLP
747 Front Street, 4th Floor
San Francisco, CA 94111
Telephone: (415) 599-0210

Marissa R. Benavides (*pro hac vice* admission)
benavides@braunhagey.com
BRAUNHAGEY & BORDEN LLP
200 Madison Avenue, 23rd Floor
New York, NY 10016
Telephone: (646) 829-9403

[Other counsel of record indicated on docket.]

*Attorneys for Impossible LLC and Joel Runyon*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

IMPOSSIBLE FOODS INC.,

Plaintiff / Counter-Defendant,

v.

IMPOSSIBLE LLC and JOEL RUNYON,

Defendants / Counter-Plaintiffs.

Case No. 5:21-cv-02419-BLF (SVK)

**IMPOSSIBLE LLC AND JOEL RUNYON'S SUPPLEMENTAL BRIEF RE: IMPOSSIBLE FOODS'S MOTION IN LIMINE NO. 1 TO EXCLUDE REPORT AND TESTIMONY OF DR. JENNIFER VANDERHART, PH.D.**

**Judge:** Hon. Beth Labson Freeman
**Trial Date:** March 9, 2026

Impossible Foods has long been on notice that its promotional items infringe Impossible LLC's trademarks. For example, in its Amended Answer and Counterclaim, Impossible LLC pleaded that it "adopted the IMPOSSIBLE formative-mark in 2010 and has continuously used that mark, as well as a family of related IMPOSSIBLE-formative marks in United States commerce in connection with a variety of goods and services, including those relating to health and fitness, nutritional supplements, cooking and recipes, philanthropy, ***apparel and swag***, and search engine optimization." Dkt. 241 at 47 (emphasis added). Impossible LLC confirmed this in discovery when answering a contention interrogatory by naming "promotional goods" among the infringing products. There, it contended that "Impossible Foods's use of IMPOSSIBLE in connection with ***promotional goods***, including t-shirts, sweatshirts, hats, or other promotional apparel (Impossible Foods has not provided an exhaustive list) infringes and unfairly competes with Impossible LLC's senior trademark rights." Cashman Decl., Ex. 1 at 5 (emphasis added). In response to Interrogatory No. 13, Impossible LLC also stated that that the confusion with Impossible Foods stemmed from "when people see Impossible's branded shirt and ***stickers***." *Id.*, Ex. 2 at 17 (emphasis added). The focus on the broader category of "promotional goods," with apparel as a subset, as well as the references to "stickers," "swag," and "hats" shows that Impossible Foods has long been on notice that Impossible LLC's infringement claims encompass promotional goods beyond apparel.

Even were it otherwise, no apportionment of expenditures between apparel and other promotional items is legally required here because Impossible Foods was unable to produce item-by-item expenditure data. In his deposition, Impossible Foods's corporate designee testified that the company did not track promotional spending at that level. *See id.*, Ex. 3 at 143:17-20, 144:7-12. Impossible LLC therefore used the best information available. As such, "the burden of any uncertainty in the amount of damages should be borne by the wrongdoer." *Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 989 (9th Cir. 1995). Indeed, no such precision is required because "there need only be substantial evidence to permit the jury to draw reasonable inferences and make a fair and

reasonable assessment." *Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1112 (9th Cir. 2012).

Even if the Court were to conclude some "swag" items are outside the scope of Impossible LLC's infringement claims, the data collected from Impossible Foods's systems exceed that minimum threshold to permit the jury to consider the full measure of Impossible Foods's promotional expenditures. As for cookbooks, the evidence at trial will permit a reasonable inference that it functioned as a promotional item, not a revenue-generating "product." In response to questioning about why correcting advertising would cost "three to five times what Impossible Foods paid to make [its] T-shirts *and publish a cookbook*," Dr. Palmatier explained that both items were part of an "integrated marketing communications plan" to "generate linkages in consumer's minds" that would need to be corrected. Cashman Decl., Ex. 4 at 79:19-83:7. Impossible Foods's own documents show the same. Its Chief Communications Officer commissioned the cookbook, suggesting it was a communications expenditure. *See Id.*, Ex. 5 at 11. At deposition, Impossible Foods's corporate designee testified that the cookbook's revenue was "probably none," and the company never allocated advertising or marketing dollars toward promoting it as a product. *Id.*, Ex. 6 at 253:17-19, 254:16-255:4. And financial statements list the cookbook separately from revenue-generating products and list income from cookbooks as "non-product" revenue. *Id.*, Ex. 7. That is more than sufficient for an inference that the infringing cookbooks are promotional items, which is ultimately a question for the jury. *Marketquest Grp., Inc. v. BIC Corp.*, 316 F. Supp. 3d 1234, 1274 (S.D. Cal. 2018) ("the issue of intent is one best left to a jury").

Dated: February 13, 2026

Respectfully submitted,

BRAUNHAGEY & BORDEN LLP

By: */s/ Adam S. Cashman*
Adam S. Cashman

*Attorneys for Defendants / Counter-Plaintiffs Impossible LLC and Joel Runyon*