UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IMPOSSIBLE FOODS INC., <br><br>   Plaintiff, <br>   v. <br> IMPOSSIBLE X LLC, et al., <br><br>   Defendants. | Case No.  5:21-cv-02419-BLF <br><br> **ORDER RE MOTIONS *IN LIMINE*** <br><br> [Re: ECF Nos. 321, 322, 323, 325, 327, 328, 329] |

Before the Court are Plaintiff/Counter-Defendant Impossible Foods Inc.'s ("Impossible Foods") three motions *in limine* ("MILs"), *see* ECF Nos. 321, 322, 323, and Defendants/Counter-Plaintiffs Impossible X LLC and Joel Runyon's (collectively, "Impossible LLC") four MILs, *see* ECF Nos. 325, 327, 328, 329.  All MILs are opposed.  *See* ECF Nos. 340, 342, 343, 344, 350, 352, 353.  The Court held the Final Pretrial Conference on February 12, 2026, and issued oral rulings on the Parties' MILs.  ECF No. 368; *see also* ECF No. 379 ("Tr.").  The Court subsequently issued orders approving and adopting the Parties' Joint Pretrial Statement, *see* ECF No. 365, and setting trial schedule and procedures, *see* ECF No. 366.

For the reasons stated at the pretrial conference and set forth below, the Court rules on the Parties' MILs as follows.

**I.     BACKGROUND**

Impossible Foods markets and sells plant-based substitutes for meat products.  ECF No. 259-22 ¶¶ 2–3.  Since launching its signature product, the Impossible Burger, in 2016, Impossible Foods has expanded its product offerings to other foods and services.  *Id.* ¶¶ 9–11. Impossible Foods launched a cookbook called Impossible: The Cookbook in 2020, available

through Amazon, and distributes IMPOSSIBLE-branded apparel, or "swag," to consumers for promotional purposes.

Mr. Runyon is an entrepreneur, blogger, and fitness enthusiast who founded Impossible LLC in 2010 as a blog chronicling his experience with tasks that might seem "impossible" at first but could be accomplished with hard work. ECF No. 262-3 at 103–05. Since launch, Impossible LLC has expanded to numerous other ventures, including search engine optimization, social media influencing, fitness and diet advice, and selling apparel and nutritional supplements. *See id.* at 64, 145.

Impossible Foods initiated this action against Impossible LLC on April 2, 2021, after Impossible LLC filed a Notice of Opposition to Impossible Foods's application for an IMPOSSIBLE word mark for goods and services associated with recipes, ingredients, and cookbook information. ECF No. 1. Impossible Foods has amended the complaint to assert claims for trademark infringement and unfair competition under the Lanham Act and California common law. ECF No. 151. Impossible LLC asserts counterclaims, also for trademark infringement and unfair competition under the Lanham Act and California common law, asserting that Impossible Foods's use of its IMPOSSIBLE marks in connection with its cookbook and swag is unlawful. ECF No. 241.

## II.     LEGAL STANDARD

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "[R]elevant evidence is admissible unless another rule or federal law provides otherwise, and that irrelevant evidence is inadmissible." *Crawford v. City of Bakersfield*, 944 F.3d 1070, 1077 (9th Cir. 2019); *accord* Fed. R. Evid. 402 (providing that relevant evidence is admissible unless precluded by the Constitution, federal statute, the federal rules of evidence, or a rule prescribed by the Supreme Court). Rule 401's "basic standard of relevance . . . is a liberal one." *Crawford*, 944 F.3d at 1077 (alteration in original) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 587 (1993)). "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair

2

prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403; see *also United States v. LeMay*, 260 F.3d 1018, 1027 (9th Cir. 2001).

The following legal standards apply to Impossible Foods's MIL No. 1 and MIL No. 2 and Impossible LLC's MIL No. 1, which are each focused on excluding expert testimony. Federal Rule of Evidence 702 provides that a qualified expert may testify if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court held that Rule 702 requires the district court to act as a "gatekeeper" to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. at 589. The Supreme Court discussed four factors that may be used to determine reliability: (1) whether the theory or technique used by the expert "can be (and has been) tested"; (2) "whether the theory or technique has been subjected to peer review and publication"; (3) "the known or potential rate of error"; and (4) whether there is "general acceptance" of the theory or technique in the "relevant scientific community." *Id.* at 593–94.

In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), the Supreme Court clarified that the "basic gatekeeping obligation" articulated in *Daubert* applies not only to scientific testimony but to all expert testimony. *Id.* at 147. The Supreme Court also made clear that the four *Daubert* factors "do *not* constitute a 'definitive checklist or test'" for reliability. *Id.* at 150 (quoting *Daubert*, 509 U.S. at 593). The reliability inquiry is a flexible one, and "whether *Daubert*'s specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Id.* at 153. The Ninth Circuit has held that another "very significant fact to be considered is whether the experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying." *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1317 (9th Cir.

3

1995). While opinions developed expressly for litigation are not necessarily unreliable, the district court "may not ignore the fact that a scientist's normal workplace is the lab or the field, not the courtroom or the lawyer's office." *Id.*

In deciding a *Daubert* challenge, the district court makes findings as to both relevance and reliability. *United States v. Jawara*, 474 F.3d 565, 583 (9th Cir. 2007). In making those findings, the district court must address the soundness of the expert's methodology, not the correctness of their conclusions. Moreover, the inquiry into admissibility of expert opinion is a "flexible one," where "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010). "Under *Daubert*, the district judge is 'a gatekeeper, not a fact finder.' When an expert meets the threshold established by Rule 702 as explained in *Daubert*, the expert may testify[,] and the jury decides how much weight to give that testimony." *Id.* at 564–65 (footnote omitted) (quoting *United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006)).

On December 1, 2023, the Judicial Conference's amendments to Rule 702 went into effect, "clarif[ying]" that expert testimony may be admitted only if the court determines "that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule." Fed. R. Evid. 702, Advisory Committee's Note to 2023 Amendment. The amendment makes clear that a court must first find by a preponderance of the evidence that the expert's basis and methodology are sufficient. Only once that threshold has been met are further challenges to the expert's reliability or their conclusions considered questions of weight, which are left to the jury.

III. DISCUSSION

A. Impossible Foods's Motions *in Limine*

1. **MIL No. 1 to Exclude Testimony and Report of Dr. Jennifer Vanderhart**

In its MIL No. 1, Impossible Foods moves to exclude the entirety of Dr. Jennifer Vanderhart's testimony. ECF No. 321. Dr. Vanderhart is Impossible LLC's damages expert and has prepared a report in which she opines that Impossible LLC is entitled to corrective advertising

4

1   damages for Impossible Foods's use of its IMPOSSIBLE-formative marks in connection with its
2   swag and cookbook.  ECF No. 324-2 ("Vanderhart Rep.").

3         Dr. Vanderhart is an economist and the managing director of a consulting firm providing
4   services in connection with litigation, regulatory proceedings, and valuation analyses.  Vanderhart
5   Rep. ¶¶ 1, 3.  She holds a Ph.D. in economics from Texas A&M University, where she previously
6   taught in the Department of Economics and the Department of Management in industrial
7   organization, public economics, and econometrics.  *Id.* ¶ 1.  In her report, Dr. Vanderhart opines
8   that corrective advertising damages may be calculated by multiplying Impossible Foods's swag-
9   and cookbook-related expenses by three to five, based on Dr. Palmatier's opinion that
10  "Impossible LLC would likely have to spend 3 to 5 times as much to correct false or unwanted
11  brand associations as was originally spent by Impossible Foods to create these associations."  *Id.*
12  ¶ 9 (citation omitted).  During the relevant time period, she calculates that "Impossible Foods has
13  spent an estimated $623,280 in 'swag'-related expenses" and "has spent an estimated $194,722 in
14  cookbook-related expenses," opining that "total corrective advertising damages are in the range of
15  $2,454,006 to $4,090,010."  *Id.*

16        Impossible Foods moves to exclude Dr. Vanderhart's opinions on three grounds.  First,
17  Impossible Foods argues that she fails to assess any actual harm to the value of Impossible LLC's
18  asserted marks and has "made no attempt to calculate lost sales caused by the alleged
19  infringement."  ECF No. 321 at 2–3.  Second, Impossible Foods argues that she did not properly
20  measure advertising costs because her calculations are based on production costs rather than
21  advertising expenditures and include the cost of producing items that are not accused of infringing
22  Impossible LLC's marks.  Third, Impossible Foods argues that Dr. Vanderhart improperly relies
23  on Dr. Palmatier's three-to-five multiplier, which itself is "derived from a single, irrelevant study."
24  *Id.* at 1.  Impossible LLC responds that Dr. Vanderhart properly "identif[ied] infringing
25  advertising spend and multipl[ied] those expenditures by the factors necessary to correct unwanted
26  brand associations, as determined by" Dr. Palmatier.  ECF No. 350.  As explained *infra*, the Court
27  disagrees with Impossible Foods's characterization of Dr. Palmatier's multiplier opinion and does
28  not exclude it, so it will address only the first two grounds in Impossible Foods's MIL No. 1.

5

"An award of the cost of corrective advertising, like compensatory damage awards in general, is intended to make the plaintiff whole. . . . by allowing the plaintiff to recover the cost of advertising undertaken to restore the value plaintiff's trademark has lost due to defendant's infringement." *Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 988 (9th Cir. 1995) (citing *Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 506 (7th Cir. 1992)); *accord Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 561 F.2d 1365, 1374–75 (10th Cir. 1977) (permitting actual or prospective corrective advertising expenses "to counteract the public confusion resulting from a defendant's wrongful conduct"). To recover corrective advertising damages, the plaintiff "has the burden of presenting evidence as to the foundational fact that its mark lost value at all." *Quia Corp. v. Mattel, Inc.*, No. 10-cv-01902-JF-HRL, 2011 WL 2749576, at *6 (N.D. Cal. July 14, 2011). "Although 'a plaintiff need not show a specific measure of harm to its goodwill and reputation in order to recover corrective damages . . . it still must present non-speculative evidence that goodwill and reputation—that is, the value of its mark—was damaged in some way.'" *Thrive Nat. Care, Inc. v. Thrive Causemetics, Inc.*, No. 20-cv-09091-PA-ASX, 2021 WL 4813257, at *7 (C.D. Cal. Oct. 6, 2021) (quoting *Quia*, 2011 WL 2749576, at *5).

  The Court agrees with Impossible Foods that Dr. Vanderhart neglects to quantify the harm to Impossible LLC's asserted trademarks by Impossible Foods's alleged infringement or to even estimate their value in the first instance. However, this does not require that her testimony be excluded at the *Daubert* stage, where the focus is on her qualifications and the reliability of her methodology, not whether her opinion standing alone constitutes sufficient evidence to award damages. While it is true that Impossible LLC will not be able to recover corrective advertising damages without showing harm to its allegedly infringed marks, *see, e.g.*, *Binder v. Disability Grp., Inc.*, 772 F. Supp. 2d 1172, 1181 (C.D. Cal. 2011), the Court is not aware of any authority suggesting that a damages expert must provide all the evidence required to support a damages award for their testimony to be admissible. Nor is the Court persuaded by Impossible Foods's suggestion that Dr. Vanderhart's testimony is "unreliable and unhelpful" absent a valuation of Impossible LLC's asserted marks, *see* ECF No. 321 at 3, since the jury is permitted to consider her

testimony together with any other evidence presented at trial in considering the ultimate issue whether Impossible LLC's marks have been harmed by Impossible Foods's alleged infringement.

Impossible Foods also argues that Dr. Vanderhart's testimony is unreliable because her calculations include expenses by Impossible Foods that are unrelated to advertising expenditures for allegedly infringing products. ECF No. 321 at 4. At the pretrial conference, the Court explained that it was inclined to grant Impossible Foods's MIL No. 1 to the extent that Dr. Vanderhart failed to base her opinion on marketing and advertising for the cookbook and accused swag products, *see* Tr. at 56:10–21, since the touchstone of corrective advertising damages is to restore the harm to the "value of the [asserted] trademark, . . . which includes, among other things, marketing and advertising costs." *HM Elecs., Inc. v. R.F. Techs., Inc.*, No. 12-cv-02884-BAS-MDD, 2015 WL 1757804, at *3 (S.D. Cal. Apr. 17, 2015).

As to Impossible Foods's swag-related costs, Dr. Vanderhart was not required to separate marketing and advertising expenses from production costs because she explained that the swag items were themselves the advertising. In other words—as the Court explained at the pretrial conference—because the swag items were not offered for sale and were produced solely for promotional purposes, it would be reasonable to infer that the items themselves were the advertisements. Tr. at 58:2–4. That said, because Impossible LLC has not accused all swag items (e.g., water bottles, stickers, etc.) of infringement—and does not and cannot contend that the asserted trademarks even include those items—the Court agrees with Impossible Foods that her calculations are overinclusive. Corrective advertising damages must focus on value "lost due to [Impossible Foods's] *infringement*," which necessarily excludes expenses for non-accused products. *See Adray*, 76 F.3d at 988 (emphasis added). The Court is not persuaded by Impossible LLC's arguments to the contrary that Impossible Foods was on "notice" of these other products, *see* ECF No. 370 at 1, since they simply were not accused in Impossible LLC's counterclaims. While the Court will not exclude Dr. Vanderhart's testimony in this respect, Impossible Foods will be permitted to impeach the correctness of her valuations through cross-examination and other evidence.

As to Impossible Foods's cookbook-related costs, Dr. Vanderhart's testimony is excluded, since she relies *exclusively* on the cost of producing the cookbooks and does not include any expenses at all for marketing and advertising. Nothing in Impossible LLC's supplemental briefing suggests that the cookbooks themselves were intended to be a form of advertising, and, to the contrary, the cookbook was offered for sale through Amazon. The cost of the cookbook's production is thus simply irrelevant to damages.

Accordingly, Impossible Foods's MIL No. 1 to exclude Dr. Vanderhart is GRANTED IN PART and DENIED IN PART.

**2. MIL No. 2 to Exclude the Report and Testimony of Dr. Robert Palmatier**

Impossible Foods's MIL No. 2 seeks to exclude a portion of Dr. Robert Palmatier's testimony. Dr. Palmatier is Impossible LLC's marketing expert and has prepared a report in which he opines, among other things, that Impossible LLC would need to spend three to five times as much as Impossible Foods spent on promoting its cookbook and swag to correct harmful associations with Impossible LLC's brand. ECF No. 324-4 ("Palmatier Rep.").

Dr. Palmatier is a Professor of Marketing at the University of Washington's Foster School of Business, where he has taught since 2007. Palmatier Rep. ¶¶ 1, 7. He holds a Ph.D. in marketing from the University of Missouri and has held a variety of academic and industrial positions, with a focus on marketing strategy, consumer loyalty and decisionmaking., and methodological approaches for analyzing marketing data. *Id.* ¶¶ 8, 10–11. Dr. Palmatier opines that Impossible Foods's sale and promotion of its cookbook and swag would negatively impact Impossible LLC's brand equity by creating harmful linkages, eroding its brand identity, destroying the source-identifying function of its IMPOSSIBLE marks, and generating reverse confusion. *See id.* ¶ 5. Dr. Palmatier further opines that "due to the synergistic interaction of multiple magnifying factors[,] it is likely that [Impossible LLC] would need to spend multiple times (e.g., 3 to 5 times) the amount expended by" Impossible Foods. *Id.* ¶ 6.

Impossible Foods's MIL No. 2 to exclude Dr. Palmatier is quite limited and seeks only to preclude him from testifying that corrective advertising damages may be calculated by applying a three-to-five multiplier to Impossible Foods's marketing expenditures on the ground that this

opinion is based "on a single academic paper," namely, "a decades old study involving college students and radio advertising for mouthwash finding that three corrective impressions were required to correct one misimpression." ECF No. 322 at 3. According to Impossible Foods, there is just "too great an analytical gap" between Dr. Palmatier's multiplier opinion and the data upon which he relies. *Id.* (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)). Impossible LLC responds that, on the contrary, Dr. Palmatier relies on more than a dozen academic articles, textbooks, and consumer surveys and appropriately explains the methodology underlying his multiplier opinion.

      The Court does not read Dr. Palmatier's multiplier opinion as narrowly as Impossible Foods does. Far from relying on a single outdated study, Dr. Palmatier explains why any harms to Impossible LLC's brand equity caused by Impossible Foods's alleged infringement would be "magnified" due to the "similar[ity] [of] wordmarks due to other points of similarity," "high level of marketing spend," and "increased use of broadly-focused marketing." Palmatier Rep. ¶ 70. Dr. Palmatier explains that linkages to unwanted and negative associations are more impactful and difficult to eliminate than positive associations and that these negative associations are particularly strong "[d]ue to the synergistic interaction" of multiple "magnifying factors," *id.* ¶¶ 72–74, identifying industry practices of responding to such associations with targeted rehabilitative advertising, *see id.* ¶ 75. In articulating his reasoning, Dr. Palmatier relies on a variety of case studies and analyses and particularly points out how his multiplier opinion is based on the application of fundamental, well-accepted marketing principles. *See id.* ¶¶ 72–77 & nn. 114–21.

      The Court accordingly agrees with Impossible LLC that Dr. Palmatier's multiplier opinion is sufficiently supported to survive Impossible Foods's *Daubert* challenge. *See, e.g.*, *Guardant Health, Inc. v. Natera, Inc.*, No. 21-cv-04062-EMC, 2025 WL 2106522, at *13 (N.D. Cal. July 28, 2025) (explaining that an expert's 3x multiplier was "rational and supported" because it relied on "other industry references[] . . . [and] cases"). Any concern that Dr. Palmatier's three-to-five multiplier would exceed the value of Impossible LLC's trademarks will be addressed in the jury instructions. *See Adray*, 76 F.3d at 989.

Because Dr. Palmatier sufficiently explains how he arrived at his proposed multiplier based on his expertise in targeted advertising and marketing, the Court DENIES Impossible Foods's MIL No. 2 to exclude Dr. Palmatier.

### 3. MIL No. 3 to Exclude Common Law Trademark Infringement Evidence

Impossible Foods's MIL No. 3 seeks to exclude Impossible LLC from "mentioning, referring to, introducing, or attempting to introduce any evidence in support" of its claim for common law trademark infringement on the ground that it "is judicially estopped from arguing it has legally sufficient market penetration . . . because it argued—and this Court accepted—that it lacked contacts with California sufficient to establish personal jurisdiction." ECF No. 323 at 1. In opposition, Impossible LLC responds that Impossible Foods's MIL No. 3 should be denied because (1) it is an impermissible dispositive motion revisiting an issue already raised during the summary judgment phase and (2) Impossible LLC is not estopped from arguing that it has priority of common law trademark use in California. ECF No. 353 at 1.

As its fifth counterclaim against Impossible Foods, Impossible LLC asserts that Impossible Foods's use of the IMPOSSIBLE-formative marks in California constitutes infringement of Impossible Foods's common law trademark rights. ECF No. 241 ¶¶ 89–91. To establish enforceable common law trademark rights in California, Impossible LLC must prove that, in California (1) it is the senior user of the mark, and (2) it has established legally sufficient market penetration. *Credit One Corp. v. Credit One Financial, Inc.,* 661 F. Supp. 2d 1134, 1138 (C.D. Cal. 2009). Impossible Foods argues that, because Impossible LLC successfully argued to the Court in moving to dismiss for lack of personal jurisdiction that it "has no meaningful ties to California," ECF No. 11 at 14, and does not "tailor advertising to California or its residents," ECF No. 11-1 ¶ 14, it is judicially estopped from arguing to the jury that it has established legally sufficient market penetration in the state of California as to its fifth counterclaim. Impossible LLC responds that its positions have not been inconsistent and that, in any case, Impossible Foods itself argued before the Ninth Circuit that Impossible LLC had sufficient contacts with California for this Court to maintain personal jurisdiction. *See* Opening Brief of Impossible Foods at 5, *Impossible Foods Inc. v. Impossible X LLC*, No. 21-16977, 2022 WL 2836366 (9th Cir. 2022).

10

Judicial estoppel "is an equitable defense that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001). Judicial estoppel considers three factors: (1) whether a party's later position is "clearly inconsistent" with its earlier position; (2) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled;" and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 782–83. The goal of judicial estoppel is to "protect against a litigant playing fast and loose with the courts." *Id.* at 782.

The Court agrees with Impossible LLC that it has not taken inconsistent positions in this litigation with respect to its degree of market penetration. Simply put, Impossible LLC's representations that it does not particularly target California consumers or offer products or services specifically directed to California are not inconsistent with its burden of proof at trial that it has sufficient prior sales in California. Moreover, the Court is not persuaded that Impossible Foods would be unfairly prejudiced without Impossible LLC being estopped from arguing market penetration to the jury. Of course, to the extent Impossible LLC or Mr. Runyon have made statements or representations to the Court that are inconsistent with the substantive elements of Impossible LLC's common law trademark claim, such statements may be admissible.

Accordingly, Impossible Foods's MIL No. 3 to exclude testimony, evidence, and argument as to Impossible LLC's common law trademark infringement claim is DENIED.

**B. Impossible LLC's Motions *in Limine***

**1. MIL No. 1 to Exclude the Testimony and Report of John Plumpe**

Impossible LLC's MIL No. 1 seeks to exclude portions of John Plumpe's rebuttal testimony. Mr. Plumpe is Impossible Foods's damages expert and has prepared a rebuttal report in which he argues that Dr. Vanderhart's calculations are not a reliable estimate of corrective advertising damages. ECF No. 325-2 ("Plumpe Rep.").

11

Mr. Plumpe is the managing director of an economic consulting firm and holds a Master of Science in Mechanical Engineering from the University of Illinois and an M.B.A. from the University of Chicago Booth School of Business. Plumpe Rep. ¶¶ 6–7. Mr. Plumpe's practice focuses on the analysis of damages, monetary relief, and valuation issues in intellectual property litigation. *Id.* ¶ 8. In his rebuttal report, Mr. Plumpe asserts that Dr. Vanderhart's damages calculation is speculative, unsupported, and would result in a windfall to Impossible LLC due to her failure to analyze the value of Impossible LLC's marks, failure to account for Impossible LLC's low revenues and marketing expenses, and "the lack of evidence of actual financial harm to [Impossible LLC] in the range contemplated by the prospective correcting advertising damages award." *Id.* ¶ 13.

Impossible LLC challenges Mr. Plumpe's testimony on two primary grounds. First, Impossible LLC argues that several of his opinions (specifically, as to consumer confusion, corrective advertising, and search rankings) fall outside of the scope of his expertise as an economist and professional damages expert and are either irrelevant or unhelpful to the jury. ECF No. 355 at 3–5. Second, Impossible LLC argues that portions of Mr. Plumpe's expert report include improper legal opinions that are not proper subjects of expert testimony. *Id.* at 4. Impossible Foods responds that Impossible LLC's motion is overbroad and that it should be denied in its entirety because Mr. Plumpe properly limits his opinions to rebutting Impossible LLC's experts' theory of damages. The Court agrees with Impossible Foods and finds that neither of Impossible LLC's purported grounds for exclusion is persuasive.

As Impossible Foods's damages rebuttal expert, Mr. Plumpe's testimony is admissible so long as it is within his expert qualifications, reliably applies accepted methodology, and is helpful to the jury. Despite Impossible LLC's attempts to cast Mr. Plumpe's testimony as venturing outside of his area of expertise (e.g., by improperly opining on "causation" and other "non-economic" issues), the Court finds that his opinions are properly limited to evaluating whether the damages claimed by Impossible LLC can be economically attributed to Impossible Foods's alleged infringement. Specifically, Mr. Plumpe's rebuttal report sets forth his economic reasoning and analysis for his conclusion that Dr. Vanderhart's opinions fail to capture injuries plausibly

1 attributable to Impossible Foods's swag and cookbook by failing to account for external market forces. *See*, *e.g.*, Plumpe Rep. ¶¶ 35–38.

Regarding Impossible LLC's argument that Mr. Plumpe improperly offers legal conclusions, the Court disagrees. As the Court explained at the pretrial conference, it is permissible for Mr. Plumpe to explain the framework and underlying principles to orient the jury. That said, Impossible LLC properly identified portions of Mr. Plumpe's report (e.g., paragraphs 72 and 86), which, if offered at trial, would be excluded. Thus, Impossible Foods is admonished that, should Mr. Plumpe's testimony veer into "opinion[s] on an ultimate issue of law," such testimony may be objected to at trial. *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (quoting *Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1066 n.10 (9th Cir. 2002), *amended sub nom.*, *Mukhtar v. Cal. State Univ., Hayward*, 319 F.3d 1073 (9th Cir. 2003)).

Because the opinions expressed in Mr. Plumpe's report clearly fall within the scope of his expertise and are proper subjects for rebuttal testimony, the Court DENIES Impossible LLC's MIL No. 1 to exclude Mr. Plumpe.

### 2. MIL No. 2 to Exclude Evidence of Discovery Disputes

Impossible LLC's MIL No. 2 seeks to exclude Impossible Foods from "introducing evidence or referring to discovery disputes in the presence of the jury" pursuant to Federal Rules of Evidence 401–03, arguing that the procedures by which evidence entered this case is irrelevant to the issues the jury must decide. ECF No. 327 at 1. Although broadly cast, Impossible LLC's MIL No. 2 addresses only the discovery dispute involving documents compelled under the crime-fraud exception. In opposition, Impossible Foods argues that, while evidence of discovery disputes generally is inadmissible, the evidence that Impossible LLC seeks to exclude is not "evidence of a routine discovery disagreement" but rather "a Court-ordered disclosure under the crime-fraud exception that directly bears on core elements the jury must decide." ECF No. 342 at 1.

As its fifth and sixth claims against Impossible LLC, Impossible Foods seeks cancellation of several of Impossible LLC's federal trademarks for fraud on the United States Patent and

13

Trademark Office ("PTO"). *See* ECF No. 151 ¶¶ 122–141. To prevail on its claims for trademark cancellation for fraud on the PTO, Impossible Foods must prove (1) Impossible LLC's false representation to the PTO regarding a material fact, (2) Impossible LLC's knowledge or belief that the representation was false, (3) intent to induce reliance upon the misrepresentation, and (4) the PTO's reasonable reliance thereon. *Hokto Kinoko Co. v. Concord Farms, Inc.*, 810 F. Supp. 2d 1013, 1041 (C.D. Cal. 2011), *aff'd*, 738 F.3d 1085 (9th Cir. 2013)). To prove that Mr. Runyon falsely attested to the PTO that Impossible LLC had used its marks in connection with specific goods listed in its trademark applications, Impossible Foods sought—over Impossible LLC's objection—production of emails between Mr. Runyon and his trademark prosecution counsel regarding the scope of Impossible LLC's use of the marks. ECF No. 175. Magistrate Judge Van Keulen ultimately determined that Impossible Foods had made a prima facie case of fraud on the PTO and that, under the crime-fraud exception, those emails were not privileged and must be produced. ECF No. 240 at 7.

The Court agrees with Impossible Foods that the actual emails between Mr. Runyon and his trademark prosecution counsel are highly relevant to Impossible Foods's claims for fraud on the PTO and will allow Impossible Foods to introduce them at trial for this purpose. Because Impossible LLC's original refusal to produce these documents bears on the issue of Mr. Runyon's intent, the Court also disagrees with Impossible LLC's suggestion that the evidence here "regarding past discovery disputes [is] irrelevant." ECF No. 327 at a1. That said, the Court agrees with Impossible LLC that it would be highly prejudicial to allow Impossible Foods to invoke the crime-fraud exception at trial and that such prejudice could not be cured by a limiting instruction. Labeling the discovery dispute as a "crime" and "fraud" would inflame the jury and divert its attention from the issues at hand. The effort it would take to instruct the jury as to the different standards governing discovery disputes on the one hand (i.e., a prima facie showing) in contrast to Impossible Foods's trial burden of proving fraud by clear and convincing evidence is simply impracticable.

The Court accordingly GRANTS Impossible LLC's MIL No. 2 to exclude evidence of discovery disputes only to the extent Impossible Foods seeks to invoke the crime-fraud exception

14

1  at trial. MIL No. 2 is otherwise DENIED, and the Court will permit Impossible Foods to
2  introduce evidence that the emails were produced pursuant to Court order.

### 3. MIL No. 3 to Exclude Repeated and Excessive References to Impossible Foods's Corporate Mission and "Virtue"

In its MIL No. 3, Impossible LLC seeks an order prohibiting Impossible Foods "from engaging in repeated or excessive references to its stated corporate mission of saving the world through plant-based meat" pursuant to Federal Rules of Evidence 401–03, on the ground that Impossible Foods's corporate mission is irrelevant and that repeated references thereto "are likely to mislead the jury." ECF No. 328 at 1. In opposition, Impossible Foods argues that Impossible LLC's MIL No. 3 should be denied as premature and vague. ECF No. 343.

It is appropriate and commonplace for a party to be given leeway to introduce itself to the jury. The Court will allow both Parties to do that. Excessive self-aggrandizement would not be proper. The Court DEFERS ruling on Impossible LLC's MIL No. 3 to exclude repeated and excessive references to Impossible Foods's corporate mission, since the request is premature. If and when Impossible LLC believes that Impossible Foods crosses the line into excessiveness, Impossible LLC may object at trial.

### 4. MIL No. 4 to Exclude Pejorative References to Mr. Runyon

Impossible LLC seeks an order prohibiting Impossible Foods "from characterizing [its] founder and principal Joel Runyon as a 'liar,' 'fraudster,' or using similar pejorative labels" under Federal Rules of Evidence 401–03 on the ground that such references would be improper. ECF No. 329 at 1. Impossible Foods responds that Impossible LLC improperly seeks to prohibit Impossible Foods from introducing evidence regarding fraud on the PTO that is highly relevant to its unclean hands defense. ECF No. 344.

As its third affirmative defense to Impossible LLC's counterclaims, Impossible Foods argues that Impossible LLC is "barred by the doctrine of unclean hands from seeking or obtaining any remedy or relief" because Impossible LLC "intentionally engaged in fraudulent and inequitable conduct with respect to its claimed rights to use IMPOSSIBLE-formative marks in commerce." ECF No. 251 ¶ 106. To prevail on unclean hands as a defense in a Lanham Act

infringement suit, "the defendant must demonstrate that the plaintiff's conduct is inequitable and that the conduct relates to the subject matter of its claims." *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 847 (9th Cir. 1987).

The Court agrees with Impossible Foods that evidence of Mr. Runyon's conduct (but not his character as a person) is relevant to Impossible Foods's unclean hands defense, and the Court will not prohibit Impossible Foods from arguing to the jury that Mr. Runyon lied to the PTO in seeking to procure Impossible LLC's IMPOSSIBLE-formative trademarks.  That said, Impossible Foods will not be permitted to disparage Mr. Runyon's character itself.  Happily, the Parties seem to agree as to what will be allowed and what will not be, as counsel for Impossible Foods indicated at the pretrial conference that they have no intention of maligning Mr. Runyon's character.  *See* Tr. at 90:16–17.

Impossible LLC's MIL No. 4 to exclude pejorative references to Mr. Runyon is accordingly GRANTED only to the extent that Impossible Foods may not refer to Mr. Runyon as a "fraudster" or some other pejorative term.  However, as discussed at the pretrial conference, *see* Tr. at 89:9–13, upon evidence that Mr. Runyon lied to the PTO, Impossible Foods may refer to him as a "liar."  Impossible LLC's MIL No. 4 is otherwise DENIED, and Impossible Foods will be permitted to introduce evidence of Mr. Runyon's conduct as relevant to Impossible Foods's unclean hands defense.

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1) Impossible Foods's MIL No. 1 to exclude the testimony and report of Dr. Jennifer Vanderhart is GRANTED IN PART and DENIED IN PART.

(2) Impossible Foods's MIL No. 2 to exclude the testimony and report of Dr. Robert Palmatier is DENIED.

(3) Impossible Foods's MIL No. 3 to exclude common law trademark infringement evidence is DENIED.

(4) Impossible LLC's MIL No. 1 to exclude the testimony and report of John Plumpe is DENIED.

(5) Impossible LLC's MIL No. 2 to exclude evidence of discovery disputes is GRANTED IN PART and DENIED IN PART.

(6) Impossible LLC's MIL No. 3 to exclude repeated and excessive references to Impossible Foods's corporate mission is DEFERRED.

(7) Impossible LLC's MIL No. 4 to exclude pejorative references to Mr. Runyon is GRANTED IN PART and DENIED IN PART.

(8) This order terminates ECF Nos. 321, 322, 323, 325, 327, 328, 329.

**IT IS SO ORDERED.**

Dated: February 26, 2026

_____
BETH LABSON FREEMAN
United States District Judge