1  G. ROXANNE ELINGS (*pro hac vice*)
   roxanneelings@dwt.com
2  RAPHAEL HOLOSZYC-PIMENTEL (*pro hac vice*)
   rhp@dwt.com
3  DAVIS WRIGHT TREMAINE LLP
   1251 Avenue of the Americas, 42nd Floor
4  New York, NY 10020-1104
   Telephone: (212) 489-8230
5  Facsimile: (212) 489-8340

6  SARAH E. BURNS (CA State Bar No. 324466)
   sarahburns@dwt.com
7  DAVIS WRIGHT TREMAINE LLP
   50 California Street, 23rd Floor
8  San Francisco, CA 94111
   Telephone: (415) 276-6500
9  Facsimile: (415) 276-6599

10 Attorneys for Plaintiff/Counter-Defendant
   IMPOSSIBLE FOODS INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IMPOSSIBLE FOODS INC., <br><br> Plaintiff, <br><br> vs. <br><br> IMPOSSIBLE X LLC, et al., <br><br> Defendants. | Case No. 5:21-cv-02419 BLF <br><br> **IMPOSSIBLE FOODS' TRIAL BRIEF** <br><br> Judge:   Hon. Beth L. Freeman |

Pursuant to the Court's Standing Order Re: Civil Jury Trials, Plaintiff/Counter-Defendant Impossible Foods Inc. ("Impossible Foods") submits the following trial brief.

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................. 1

II. STATEMENT OF FACTS .................................................................................................... 2

    A. Impossible Foods Inc. .............................................................................................. 2

    B. Joel Runyon and Impossible LLC. ........................................................................... 4

III. RECENT PROCEDURAL HISTORY .................................................................................. 4

    A. Motions for Summary Judgment. ............................................................................ 4

    B. Motions in Limine. ................................................................................................... 5

IV. IMPOSSIBLE LLC CANNOT PROVE LIABILITY OR DAMAGES. ............................... 6

    A. Impossible LLC Has No Evidence Of Actual Confusion, Its Marks Are Weak and Impossible Foods' Marks Are Strong. ..................................................... 6

    B. Impossible Foods Will Show All Of Impossible LLC's Registered Marks Were Fraudulently Obtained, Abandoned, Or Irrelevant To Apparel Or The Cookbook. ................................................................................................................. 7

        1. None Of Impossible LLC's Registered Marks Actually Cover Recipes or Cookbooks. .......................................................................... 8

        2. Many of Impossible LLC's Marks Were Obtained By Fraud. ................... 9

        3. Three Marks Were Abandoned. ............................................................... 10

        4. Impossible LLC's Remaining Marks Do Not Cover Apparel Or Are Unlikely To Confuse For Other Reasons. .................................................. 11

        5. Unclean Hands And Laches Bar Impossible LLC's Claims..................... 11

    C. Impossible LLC Has No Legally Cognizable Damages Evidence. ....................... 12

        1. No Loss of Value. ..................................................................................... 12

        2. No Amount Capable of Reasoned Calculation. ....................................... 13

        3. No Causation by the Accused Products. .................................................. 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adray v. Adry–Mart, Inc.*,
  76 F.3d 984 (9th Cir. 1995) .................................................................................................. 12, 13

*Boone v. Mech. Specialties Co.*,
  609 F.2d 956 (9th Cir. 1979) ....................................................................................................... 11

*Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*,
  174 F.3d 1036 (9th Cir. 1999) ....................................................................................................... 6

*Burndy Corp. v. Teledyne Indus., Inc.*,
  584 F. Supp. 656 (D.C. Conn.), *aff'd,* 748 F.2d 767 (2d Cir. 1984*)* ......................................... 13

*CIBA–GEIGY Corp. v. Bolar Pharm. Co.*,
  747 F.2d 844 (3d Cir.1984)........................................................................................................ 11

*Coca-Cola Co. v. Overland, Inc.*,
  692 F.2d 1250 (9th Cir. 1982) ................................................................................................... 11

*Computer Access Tech. Corp. v. Catalyst Enters., Inc.*,
  273 F. Supp. 2d 1063 (N.D. Cal. 2003) ............................................................................... 13, 14

*Dr. Seuss Enters., L.P. v. ComicMix LLC*,
  300 F. Supp. 3d 1073 (S.D. Cal. 2017).......................................................................................... 9

*Ellenburg v. Brockway, Inc.*,
  763 F.2d 1091 (9th Cir. 1985) .................................................................................................... 11

*Entrepreneur Media, Inc. v. Smith*,
  279 F.3d 1135 (9th Cir. 2002) ....................................................................................................... 7

*Fortinet, Inc. v. Fortanix, Inc.*,
  No. 20-cv-6900, 2022 WL 1128723 (N.D. Cal. Apr. 15, 2022)............................................. 12

*Foxtrap, Inc. v. Foxtrap, Inc.*,
  671 F.2d 636 (D.C. Cir. 1982), *abrogated by SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179 (9th Cir. 2016)................................................................................ 13

*Hero Nutritionals LLC v. Nutraceutical Corp.*,
  No. 11-1195, 2013 WL 4480674 (C.D. Cal. 2013) ................................................................. 7

*Int'l Oddities v. Record*,
  No. 12-cv-3934, 2013 WL 3864050 (C.D. Cal. July 22, 2013)............................................ 12

*Invicta Plastics (USA) Ltd. v. Mego Corp.*,
    523 F. Supp. 619 (S.D.N.Y. 1981) .................................................................................... 13

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
    304 F.3d 829 (9th Cir. 2002) .......................................................................................... 11

*Lindy Pen Co. v. Bic Pen Corp.*,
    982 F.2d 1400 (9th Cir. 1993) ........................................................................................ 12

*Lodestar Anstalt v. Bacardi & Co.*,
    No. 2:16-cv-06411, 2019 WL 8105378 (C.D. Cal. July 3, 2019) ......................................... 14

*Marketquest Grp., Inc. v. BIC Corp.*,
    316 F. Supp. 3d 1234 (S.D. Cal. 2018) ............................................................................ 12

*Mattel, Inc. v. Walking Mountain Prods.*,
    353 F.3d 792 (9th Cir. 2003) ............................................................................................ 6

*Miller v. Glenn Miller Prods., Inc.*,
    454 F.3d 975 (9th Cir. 2006) .......................................................................................... 11

*On-Line Careline, Inc. v. Am. Online, Inc.*,
    229 F.3d 1080 (Fed. Cir. 2000) ....................................................................................... 10

*Quia Corp. v. Mattel, Inc.*,
    No. 10-cv-1902, 2011 WL 2749576 (N.D. Cal. July 14, 2011) .......................................... 12

*Skydive Arizona, Inc. v. Quattrocchi*,
    673 F.3d 1105 (9th Cir. 2012) ........................................................................................ 12

*Therma-Scan, Inc. v. Thermoscan, Inc.*,
    295 F.3d 623 (6th Cir. 2002) ............................................................................................ 6

*Trovan, Ltd. v. Pfizer, Inc.*,
    No. CV-98-0094, 2000 WL 709149 (C.D. Cal. May 24, 2000) .......................................... 13

*Victoria's Secret Stores Brand Mgmt., Inc. v. Sexy Hair Concepts, LLC*,
    No. 07-5804, 2009 WL 959775 (S.D.N.Y. Apr. 8, 2009) ..................................................... 8

*Vuitton Et Fils, S.A. v. Crown Handbags*,
    492 F. Supp. 1071 (S.D.N.Y. 1979), *aff'd*, 622 F.2d 577 (2d Cir. 1980) ............................. 13

*Wag Hotels, Inc. v. Wag Labs, Inc.*,
    No. 20-cv-1326-BLF, 2023 WL 3605977 (N.D. Cal. May 22, 2023) ................................... 14

*Zazu Designs v. L'Oreal, S.A.*,
    979 F.2d 499 (7th Cir. 1992) .......................................................................................... 13

**Statutes**

15 U.S.C. § 1125(a) ................................................................................................................ 9

**Other Authorities**

J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 23:61 (5th ed.) ........ 8

J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 23:10 (5th ed.) ........ 7

# I. INTRODUCTION

This is a trademark infringement and unfair competition action arising from the parties' respective uses of the word "IMPOSSIBLE." Impossible Foods is the widely-known creator of the Impossible Burger and other plant-based meat products. Defendants/Counter-Plaintiffs Joel Runyon and Impossible X LLC (collectively, "Impossible LLC") are an individual and his corporate entity who, over the past decade, have been involved in a variety of ventures—including search engine optimization, social media influencing, and fitness and dieting advice—all loosely affiliated by the word Impossible.

Impossible Foods filed this action in 2021 after Impossible LLC challenged a trademark application and demanded that Impossible Foods limit its use of the IMPOSSIBLE mark to plant-based meat products. Since then, Impossible LLC has dramatically expanded the case in an effort to extract a windfall unrelated to any consumer harm. Impossible LLC asserts counterclaims for trademark infringement and unfair competition, alleging that Impossible Foods' use of its IMPOSSIBLE mark on t-shirts it provides to employees and for free at events, as well as its sale of a cookbook that lost the company money, infringes Impossible LLC's marks and entitles it to millions of dollars. The "Accused Products" are thus limited to (1) free promotional apparel never sold to consumers and (2) a single cookbook (no longer sold), as well as recipes appearing on Impossible Foods' website and packaging ).

Impossible LLC will be unable to prove likelihood of confusion, enforceable trademark rights covering the Accused Products, or any non-speculative damages. The claims are further barred because many of Impossible LLC's marks were obtained by fraud, abandoned through non-use, or both. Discovery showed Mr. Runyon lied to the USPTO in order to acquire the marks, and Magistrate Judge Susan van Keulen ordered production of records plainly outlining his lies. Impossible Foods will be able to show the claims fail for fraud and unclean hands, and because they are barred by laches.

Even if Impossible LLC could establish liability, it will be limited—at most—to recovering corrective advertising damages. But Impossible LLC has no admissible, non-

1

speculative evidence that the Accused Products caused any loss in the value of its marks. The Court in response to Impossible Foods' *Daubert* motion recently barred that testimony to the extent it relates to the Cookbook. And it agreed with Impossible Foods that the testimony related to apparel improperly included costs associated with products that Impossible LLC does not challenge and therefore is inflated. Impossible Foods at the close of Impossible LLC's claims will move for judgment as a matter of law on this ground and more broadly because Impossible LLC has no evidence of (1) the value of its marks; or (2) any harm to the value of its marks.

At trial, Impossible LLC will be unable to prove confusion, liability, or damages. And even if it could establish infringement, it has no evidence that the Accused Products—rather than Impossible Foods' lawful and well-known plant-based meat business—caused any cognizable harm. Judgment as a matter of law will therefore be required.

Impossible Foods' claims for trademark infringement and unfair competition are based on Impossible LLC's sales of nutritional supplements, which encroach on Impossible Foods' core business and threaten the goodwill Impossible Foods has invested millions to create. Its witnesses will provide evidence showing that its IMPOSSIBLE mark is very strong; the marks are similar; the powders are sold via the same channels as Impossible Foods' products; the powders are a related good to Impossible Foods' core plant-based meat products; and such supplements are a natural expansion of Impossible Foods' existing business.

## II.     STATEMENT OF FACTS

### A.     Impossible Foods Inc.

Impossible Foods is a pioneer in the field of plant-based substitutes for meat products. The company's aim is to give people the taste and nutritional benefits of meat without the negative health and environmental impacts associated with products from livestock. After operating since 2011 under various names, including "Maraxi," Impossible Foods adopted the name Impossible Foods and the mark IMPOSSIBLE in 2015. In July 2016, the company released its first product: the Impossible Burger. Since then, Impossible Foods' Impossible Burger and other Impossible-

branded plant-based meat products have expanded into thousands of restaurants and also are sold at grocery stores across the country.

Between June 2016 and 2024, Impossible Foods used the Impossible mark, for which it has common law trademark rights:



In 2024, Impossible overhauled its branding to focus on the color red, more clearly invoking meat:



In addition to its common law rights, Impossible Foods owns federally-registered trademark rights in numerous IMPOSSIBLE-formative marks including the IMPOSSIBLE word

3

mark and numerous stylized marks (including resembling the first image above) in connection with "restaurant services" and "meat substitutes," among other goods and services.

Impossible LLC alleges that Impossible Foods is engaging in infringement through two very narrow aspects of Impossible Foods' business. **First**, Impossible LLC challenges the use of IMPOSSIBLE on t-shirts and other apparel, which discovery has conclusively shown Impossible Foods has exclusively given away for free to employees and at events. **Second**, it targets a cookbook titled Impossible: The Cookbook (the "Cookbook") that was first published in 2020. The Cookbook lost Impossible Foods money and is no longer offered for sale.

**B.     Joel Runyon and Impossible LLC.**

Joel Runyon is an entrepreneur, blogger, and fitness enthusiast who has pursued multiple ventures since 2011, some of them under one or more "Impossible" names, like Impossible Fitness and Impossible HQ. Mr. Runyon's IMPOSSIBLE logo uses a different font than IMPOSSIBLE Foods' logo. It is in all caps, but with a strike through the middle.

Since 2010, Mr. Runyon, who is the sole member, owner, and employee of Impossible LLC, has dabbled in search engine optimization, marketing, consulting, running ultramarathons, social media influencing, fitness advice, blogging, diet advice (particularly the Paleo diet), developing mobile apps, selling T-shirts and other apparel, and selling sleep and energy powders. Impossible LLC owns various federal trademark registrations using the word IMPOSSIBLE.

During the pretrial conference, Impossible LLC stated that it intends to take some of its trademarks out of the case. Though Impossible Foods has repeatedly asked Impossible LLC's counsel to clarify which marks those are, they have refused to say.

### III.     RECENT PROCEDURAL HISTORY

**A.     Motions for Summary Judgment.**

In August 2025, the parties filed cross-motions for summary judgment. The Court granted Impossible Foods' motion in part, holding that Impossible LLC is not entitled to reputational damages and striking its affirmative defenses.

4

The Court denied Impossible Foods' request for summary judgment on Impossible LLC's request for corrective advertising. In doing so the Court emphasized that Impossible LLC "faces an uphill battle at trial." Dkt. 311 at 10.

Impossible LLC sought summary judgment on Impossible Foods' claims for trademark infringement, unfair competition, and trademark cancellation. It also sought summary adjudication that its marks have priority in the "Nutrition and Fitness Category." The Court denied Impossible LLC's motion in full.

**B.      Motions in Limine.**

Impossible Foods as part of pretrial proceedings filed a motion in limine to exclude the testimony of Impossible LLC's damages expert, Dr. Jennifer Vanderhart. As Impossible Foods pointed out, Dr. Vanderhart's opinions are flawed because (1) she included the cost of items Impossible LLC has not alleged are infringing in her calculations, including pins, stickers, and water bottles; (2) she based her calculations on the costs of the promotional items and Cookbook, rather than the amount Impossible Foods spent *advertising* the goods; and (3) Impossible LLC has never offered evidence of diminution in the value of its marks, such that there is no baseline against which to compare Dr. Vanderhart's figures.

The Court granted the motion in part on February 26, 2026. Dkt. 383. It determined that Dr. Vanderhart's testimony regarding the Cookbook would be excluded:

> [Dr. Vanderhart] relies *exclusively* on the cost of producing the cookbooks and does not include any expenses at all for marketing and advertising. Nothing in Impossible LLC's supplemental briefing suggests that the cookbooks themselves were intended to be a form of advertising, and, to the contrary, the cookbook was offered for sale through Amazon. The cost of the cookbook's production is thus simply irrelevant to damages.

*Id.* at 8.

With respect to the non-apparel "swag," the Court also largely agreed with Impossible Foods:

> Impossible LLC has not accused all swag items (e.g., water bottles, stickers, etc.) of infringement—and does not and cannot contend that the asserted trademarks even include

5

those items—the Court agrees with Impossible Foods that her calculations are overinclusive.

*Id.* at 7.

The Court opted not to exclude Dr. Vanderhart's testimony on this ground, but noted that Impossible Foods "will be permitted to impeach the correctness of her valuations through cross-examination and other evidence." *Id.*

The Court in the order also expressly noted that Dr. Vanderhart "neglects to quantify the harm to Impossible LLC's asserted trademarks by Impossible Foods' alleged infringement or to even estimate their value in the first instance." *Id.* at 6. In an order a few days before, on February 25, 2026, the Court noted that "the Parties should be prepared to address the issue of which party bears the burden of establishing the value of the marks for an award of corrective advertising damages." Dkt. 382.

## IV. IMPOSSIBLE LLC CANNOT PROVE LIABILITY OR DAMAGES.

### A. Impossible LLC Has No Evidence Of Actual Confusion, Its Marks Are Weak and Impossible Foods' Marks Are Strong.

To prevail on a trademark infringement claim, Impossible LLC will have to provide a likelihood of confusion between its products and the Accused Products. *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 806-07 (9th Cir. 2003). Actual confusion is the best evidence of likelihood of confusion and LLC has none. *Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 634 (6th Cir. 2002).

Impossible LLC's theory is reverse confusion, i.e., that "consumers mistakenly believe that Impossible LLC's products are affiliated with or originate from the junior user, Impossible Foods." Dkt. 278-3 Ex. 1 at 11. Impossible LLC has no evidence of a single consumer who saw the Cookbook or apparel and was confused; any survey evidence; any lost customer or diverted sale; or any confusion affecting purchasing decisions. In contrast, that the record does not contain evidence of actual confusion does not harm Impossible Foods' affirmative infringement claim. As

6

the Court noted at summary judgment, "the lack of actual evidence is hardly surprising given [Impossible LLC's] small number of customers." Dkt. 311 at 21.

"The stronger a mark—meaning the more likely it is to be remembered and associated in the public mind with the mark's owner—the greater the protection it is accorded by the trademark laws." *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1058 (9th Cir. 1999). Courts measure a mark's strength both conceptually—by its "inherent distinctiveness"—and commercially—by its "actual marketplace recognition." *Id.* Impossible LLC's marks are weak; it will be able to show only minimal sales over more than a decade and only a fraction of that from products in any way related to the Cookbook and apparel. The fact that some of Impossible LLC's marks have attained "incontestable" status by filing the required documents does not mean that its marks are either inherently strong or well-recognized in the marketplace by customers. *See, e.g.*, *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1142, n.3 (9th Cir. 2002) (Incontestable status of ENTREPRENEUR mark for magazines does not prevent proof that the mark is weak and is merely one in a marketplace of many similar marks in assessing likelihood of confusion, and incontestable status "does *not* require a finding that the mark is strong."); *Hero Nutritionals LLC v. Nutraceutical Corp.*, No. 11-1195, 2013 WL 4480674, at *4 (C.D. Cal. 2013) ("An incontestable mark may … still be relatively weak for likelihood of confusion purposes[.]"). Accordingly, the weakness of Plaintiff's marks weighs against a likelihood of confusion.

In contrast, Impossible Foods will be able to show that its marks are very strong. Indeed, that is the theory behind a reverse confusion claim, wherein a small senior user fears its mark could be overwhelmed by a commercially stronger competitor that saturates the market. 3 *McCarthy on Trademarks and Unfair Competition* § 23:10 (5th ed.).

Impossible LLC will not be able to make a credible case of infringement.

**B. Impossible Foods Will Show All Of Impossible LLC's Registered Marks Were Fraudulently Obtained, Abandoned, Or Irrelevant To Apparel Or The Cookbook.**

Impossible LLC will not be able to prove its infringement claims because Impossible Foods will show that many marks were obtained by fraud on the PTO, including the Impossible

7

word mark; that at least one mark was abandoned; and that the rest either do not cover apparel or the Cookbook or are not likely to confuse based on how the marks are stylized/the language of the marks.

### 1. None Of Impossible LLC's Registered Marks Actually Cover Recipes or Cookbooks.

Under federal law, a trademark cannot exist separately from the particular goods and services it identifies, meaning a company cannot own trademark rights covering goods and services it does not offer. McCarthy, *supra*, § 24:11 ("One must designate for what goods the design is a trademark to avoid treating a trademark as a right in gross."). Though Impossible LLC repeatedly throughout its counterclaim alleges that Impossible Foods has violated its trademark rights with respect to "recipes" (*e.g.*, Dkt. 241 ¶¶ 8, 28, 30, 35) and seeks damages based on the Cookbook, none of its registered trademarks actually cover recipes or cookbooks at all. *See id.* ¶ 36 (listing registered marks). Instead, Impossible LLC will ask the jury to find that the Cookbook infringes its trademarks based on trademarks that cover "[w]ebsite featuring information relating to exercise and fitness," (4624158, 5179974 and 5387588) and "website featuring information in the field of personal fitness" (4260617, 5620625, 6571603)[1].

---

[1] To the extent Impossible LLC seeks at trial to claim rights to a family of IMPOSSIBLE marks, the Court should not allow it. To establish a family of marks under the Lanham Act, a party must prove three elements: (1) the marks share a recognizable and distinctive common characteristic; (2) the marks have been used and promoted together in a manner that creates public recognition of the family; and (3) the public associates the common feature with the trademark owner as the source of the goods or services. *McCarthy on Trademarks and Unfair Competition* § 23:61 (5th ed.). Mere ownership or registration of similar marks is insufficient; the doctrine is grounded in actual use and public perception. The burden is on the party asserting the family to plead and prove these elements with evidence of use, advertising, and consumer recognition. *See, e.g.*,

8

Impossible LLC also will not be able to show it has sufficiently *used* its marks in connection with recipes or cookbooks. As his deposition, Mr. Runyon testified that Impossible LLC does not offer any nutrition advisory services. Dkt. 274-3 at 7-8 (Runyon Dep. Tr. at 61:22–62:1). He further testified that he did not know if Impossible LLC ever actually published any cookbook. *Id.* at 63:15–19. It has promoted the sale of third-party cookbooks and recipes but those are not sold under IMPOSSIBLE-formative marks. *See* Dkt. 275-4 at 412:20–413:14; 414:11–415:1. It has also sold the Impossible TRI guide and Impossible Abs program—which happen to incorporate nutrition guides "designed to help athletes optimize their diets to boost performance," Dkt. No. 265-2 at 23, but it has adduced no evidence showing consumer interaction or sales of those products. And the jury will not find a likelihood of confusion between those products and the Cookbook. The final evidence LLC has identified is a single cookbook, "The Impossible TRI Cookbook," Dkt. No. 265-2 at 23, which cannot serve as a trademark without proof of secondary meaning. *See Dr. Seuss Enters., L.P. v. ComicMix LLC*, 300 F. Supp. 3d 1073, 1085 (S.D. Cal. 2017) ("While titles of single works are not registrable, they may be protected under section 43(a) of the Lanham Act upon a showing of secondary meaning.") (citation omitted).

### 2.     Many of Impossible LLC's Marks Were Obtained By Fraud.

Impossible Foods will show at trial that the following marks were obtained by fraud:

| Registration Number | Mark | Description from USPTO Filings | Image |
|---|---|---|---|
| 5590801 | Impossible Fitness (stylized) | The mark consists of the word "IMPOSSIBLE" in strike through format followed by "FITNESS". | IMPOSSIBLE FITNESS |

---

*Victoria's Secret Stores Brand Mgmt., Inc. v. Sexy Hair Concepts, LLC*, No. 07-5804, 2009 WL 959775, at *4 (S.D.N.Y. Apr. 8, 2009). Because Impossible LLC did not allege a family of marks in its Counterclaims, the Court should prohibit from relying on that doctrine at trial.

| | | | |
|---|---|---|---|
| 5603025 | Impossible Fitness (standard) | The mark consists of standard characters without claim to any particular font style, size, or color. | Impossible Fitness |
| 5620625 | Impossible (standard) | The mark consists of standard characters without claim to any particular font style, size, or color. | Impossible |
| 6571603 | Impossible (animated) | The mark consists of the wording "IMPOSSIBLE" with a shaded band that moves horizontally from the left through the middle of the wording until the band covers the middle of the entire word "IMPOSSIBLE." All on a shaded background. | [five frames showing animated IMPOSSIBLE mark] |

The evidence shows that Mr. Runyon repeatedly and knowingly misrepresented use of the IMPOSSIBLE marks to the USPTO. When the USPTO audited one registration, Impossible LLC deleted multiple goods rather than provide proof of use—confirming that those sworn statements were false. Following in camera review, Magistrate Judge van Keulen found by a preponderance of the evidence that Mr. Runyon committed fraud on the PTO and ordered production of the relevant communications.

Discovery showed that the fraud was not limited to the IMPOSSIBLE FITNESS marks, and extends to the four trademark registrations listed above, we well as the declaration Mr. Runyon submitted to acquire incontestability status for Reg. No. 5387588, for IMPOSSIBLE NUTRITION. Dkt. No. 138-1 at 3. Based on this plain evidence, Impossible Foods will be able to show the affected marks should be canceled.

**3.   Three Marks Were Abandoned.**

Impossible Foods also will prove that Registration Nos. 5590801, 5603025, and 6571603, the IMPOSSIBLE FITNESS word and design marks and IMPOSSIBLE motion mark, were

10

abandoned. A party makes out a prima facie case of non-use by demonstrating that a mark has not been used for three consecutive years. *On-Line Careline, Inc. v. Am. Online, Inc.*, 229 F.3d 1080, 1087 (Fed. Cir. 2000). Impossible LLC identified effectively zero evidence at summary judgment to show use of the marks in connection with t-shirts or tank tops (the only categories of products remaining for the IMPOSSIBLE FITNESS marks after their registrations were changed following the USPTO's audit) and has never presented any evidence to show use of the motion mark.

### 4. Impossible LLC's Remaining Marks Do Not Cover Apparel Or Are Unlikely To Confuse For Other Reasons.

Impossible LLC's remaining registered trademarks do not cover apparel or are unlikely to confuse because the mark is sufficiently different. Those include 4624158, IMPOSSIBLE FITNESS, for "[w]ebsite featuring information relating to exercise and fitness," Reg. No. 5155646, IMPOSSIBLE X, for "search engine optimization and marketing services; marketing consulting in the field of social media," Reg. No. 5179974, IMPOSSIBLE HQ, for "providing a website featuring information relating to exercise and fitness," Reg. No. 5376208, IMPOSSIBLE (stylized), for "nutritional supplements" and "search engine optimization and marketing services; marketing consulting in the field of social media," Reg. No. 5387588, IMPOSSIBLE NUTRITION (stylized), for "nutritional supplements" and "providing a website featuring information relating to exercise and fitness."

That leaves just Reg. No. 5576376, which purports to cover clothing but for the mark DO SOMETHING IMPOSSIBLE, which Impossible LLC will not be able to prove consumers are likely to confuse with Impossible Foods' promotional apparel, and Reg. No. 4260617, which also purports to cover clothing, but for the stylized version of Impossible with the strikethrough, which also is not likely to confuse based on appearance alone. *See* Dkt. 241 ¶ 36 (listing Impossible LLC's purported trademarks).

### 5. Unclean Hands And Laches Bar Impossible LLC's Claims.

Impossible Foods will also show that the defenses of unclean hands and laches bar Impossible LLC's claims, given Mr. Runyon's extensive fraud and his delay in bringing claims.

11

Unclean hands is a defense to a Lanham Act infringement suit. *Coca-Cola Co. v. Overland, Inc.*, 692 F.2d 1250, 1256–58 (9th Cir. 1982). To prevail, the defendant must demonstrate that the plaintiff's conduct is inequitable and that the conduct relates to the subject matter of its claims. *CIBA–GEIGY Corp. v. Bolar Pharm. Co.*, 747 F.2d 844, 855 (3d Cir.1984). "[E]quity requires that those seeking its protection shall have acted fairly and without fraud or deceit as to the controversy in issue." *Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1097 (9th Cir. 1985).

"Laches is an equitable time limitation on a party's right to bring suit." *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002) (quoting *Boone v. Mech. Specialties Co.*, 609 F.2d 956, 958 (9th Cir. 1979)). The doctrine is animated by the concern that "one who seeks the help of a court of equity must not sleep on his rights." *Id.* (citation omitted). To prevail on the affirmative defense of laches, a defendant must establish that (1) the plaintiff unreasonably delayed in suing and (2) such delay is prejudicial to the defendant. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 997 (9th Cir. 2006). Here, Impossible Foods will show that Impossible LLC was aware of the apparel and Cookbook years before it sued and its delay in filing suit prejudiced Impossible Foods.

**C.  Impossible LLC Has No Legally Cognizable Damages Evidence.**

Corrective advertising damages are available only upon non-speculative proof that: (i) the trademark lost value; (ii) restorative advertising is necessary to remedy that loss; and (iii) the loss was caused by the accused infringement. *Adray v. Adry–Mart, Inc.*, 76 F.3d 984, 988 (9th Cir. 1995). Impossible LLC cannot satisfy any of these requirements.

**1.  No Loss of Value.**

Corrective advertising "is 'appropriate only where a plaintiff has shown that in fact it has been injured,' or, put another way, 'that the mark lost value.'" *Fortinet, Inc. v. Fortanix, Inc.*, No. 20-cv-6900, 2022 WL 1128723, at *11 (N.D. Cal. Apr. 15, 2022) (citation omitted). While the plaintiff "need not show a specific measure of harm," it "must present non-speculative evidence that goodwill and reputation . . . was damaged in some way." *Quia Corp. v. Mattel, Inc.*, No. 10-

cv-1902, 2011 WL 2749576, at *5 (N.D. Cal. July 14, 2011); *see also Int'l Oddities v. Record*, No. 12-cv-3934, 2013 WL 3864050, at *14 (C.D. Cal. July 22, 2013).

Here, Impossible LLC has no such evidence. Mr. Runyon admitted he has never assessed the value of his marks at any point. Likewise, Impossible LLC's experts conceded they performed no valuation of Impossible LLC's brand equity and no analysis of any diminution in value. The absence of any benchmark or valuation is fatal. *Marketquest Grp., Inc. v. BIC Corp.*, 316 F. Supp. 3d 1234, 1301 (S.D. Cal. 2018) ("Uncertainty about the amount of damages is not fatal, but a plaintiff must present evidence as to the fact that the mark lost value at all").

### 2. No Amount Capable of Reasoned Calculation.

Even where harm is shown, corrective advertising damages must permit the jury to make a "fair and reasonable assessment" grounded in evidence rather than speculation. *Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1112 (9th Cir. 2012). If the case proceeds to trial, Impossible Foods anticipates filing a motion for judgment as a matter of law following close of Impossible LLC's case on this ground. "Many courts have denied a monetary award in infringement cases when damages are remote and speculative." *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1408 (9th Cir. 1993) (citing *Foxtrap, Inc. v. Foxtrap, Inc.*, 671 F.2d 636, 642 (D.C. Cir. 1982) ("any award based on plaintiff's damages requires some showing of actual loss"), *abrogated by SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179 (9th Cir. 2016); *Burndy Corp. v. Teledyne Indus., Inc.*, 584 F. Supp. 656, 664 (D.C. Conn.) ("no assessment of damages is authorized if it is not based on actually proven damages."), *aff'd,* 748 F.2d 767 (2d Cir. 1984*); Invicta Plastics (USA) Ltd. v. Mego Corp.*, 523 F. Supp. 619, 624 (S.D.N.Y. 1981) ("damages will not be awarded in the absence of credible evidence demonstrating injury to the plaintiff from defendant's sales."); *Vuitton Et Fils, S.A. v. Crown Handbags*, 492 F. Supp. 1071, 1077 (S.D.N.Y. 1979) ("The discretionary award of either damages or profits assumes an evidentiary basis on which to rest such an award. Without such a basis there can be no recovery."), *aff'd*, 622 F.2d 577 (2d Cir. 1980)); *Trovan, Ltd. v. Pfizer, Inc.*, No. CV-98-0094, 2000 WL 709149, at *9 (C.D. Cal. May 24, 2000) (where plaintiff lacked direct evidence showing an actual decrease in goodwill,

argument that "the jury could infer damage to goodwill simply because [defendant] 'plac[ed] Plaintiffs' mark on a harmful drug which has been linked to multiple deaths'" not sufficient).

### 3. No Causation by the Accused Products.

Finally, corrective advertising damages are available only to remedy harm due to defendant's infringement, not harm caused by lawful conduct or unrelated market forces. "[T]he law requires plaintiffs to distinguish between damages caused by lawful and unlawful conduct." *Computer Access Tech. Corp. v. Catalyst Enters., Inc.*, 273 F. Supp. 2d 1063, 1076 (N.D. Cal. 2003). *Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 506 (7th Cir. 1992) ("To justify damages to pay for corrective advertising a plaintiff must show that the confusion caused by the defendant's mark injured the plaintiff"), *cited approvingly by Adray*, 76 F.3d at 988 (holding that corrective advertising is meant to "restore the value plaintiff's trademark has lost due to defendant's infringement").

Impossible LLC has no evidence that any alleged harm was caused by the Accused Products—free promotional apparel and a discontinued Cookbook—rather than by Impossible Foods' lawful and well-known use of its marks used in connection with plant-based meat products. No witness identified a single instance in which the Accused Products affected Impossible LLC's goodwill or customer relationships. Where a plaintiff cannot separate lawful from allegedly unlawful causes of harm, damages are unavailable. *Computer Access*, 273 F. Supp. 2d at 1076.

Thus, all that is left is Dr. Vanderhart's testimony that Impossible LLC's *income* purportedly decreased the first year the apparel was distributed to employees and/or at events. Dkt. 261-4, Ex. C-2; *see also id.* ¶¶ 50–51. But *lost income* is an entirely separate question from the requirement that *brand value* was harmed, which is a prerequisite to corrective advertising damages. *E.g.*, *Wag Hotels, Inc. v. Wag Labs, Inc.*, No. 20-cv-1326-BLF, 2023 WL 3605977, at *9 (N.D. Cal. May 22, 2023) (rejecting plaintiff's argument "that it is entitled to corrective advertising damages" simply because "it has provided evidence that consumers were confused by Wag Labs's use of its mark"); *Lodestar Anstalt v. Bacardi & Co.*, No. 2:16-cv-06411, 2019 WL

14

8105378, at *15 (C.D. Cal. July 3, 2019) (granting summary judgment on corrective advertising because, even though plaintiff adduced evidence of "actual customer confusion," the plaintiff "would still need to demonstrate that such confusion damaged its goodwill"). Impossible LLC is hoping to have it both ways: it knows it cannot show lost sales so it instead has opted for corrective advertising damages, hoping for a windfall based on Impossible Foods' apparel costs. But it also knows it cannot show harm to its brand resulting from the Accused Products, as required for corrective advertising, so it instead points to unrelated lost income. Impossible Foods plans to file a JMOL on this issue as well.

DATED: March 2, 2026                    DAVIS WRIGHT TREMAINE LLP

                                        By: /s/ G. Roxanne Elings
                                            G. Roxanne Elings

                                        Attorneys for IMPOSSIBLE FOODS INC.

15