1 | J. Noah Hagey, Esq. (SBN: 262331)
      hagey@braunhagey.com
2 | Adam S. Cashman, Esq. (SBN: 255063)
      cashman@braunhagey.com
3 | Greg Washington, Esq. (SBN: 318796)
      gwashington@braunhagey.com
4 | J. Tobias Rowe, Esq. (SBN: 305596)
      rowe@braunhagey.com
5 | Oliver McNicholas, Esq. (SBN: 363554)
      omcnicholas@braunhagey.com
6 | BRAUNHAGEY & BORDEN LLP
   | 747 Front Street, 4th Floor
7 | San Francisco, CA 94111
   | Telephone: (415) 599-0210
8 |

9 | Marissa R. Benavides (*pro hac vice* admission)
      benavides@braunhagey.com
10 | BRAUNHAGEY & BORDEN LLP
    | 200 Madison Avenue, 23rd Floor
11 | New York, NY 10016
    | Telephone: (646) 829-9403
12 |
    | [Other counsel of record indicated on docket.]
13 |
    | *Attorneys for Impossible LLC and Joel Runyon*
14 |

15 | **UNITED STATES DISTRICT COURT**

16 | **NORTHERN DISTRICT OF CALIFORNIA**

17 | **SAN JOSE DIVISION**

18 |

19 | IMPOSSIBLE FOODS INC.,                    Case No. 5:21-cv-02419-BLF (SVK)

20 |     Plaintiff / Counter-Defendant,        **IMPOSSIBLE LLC AND JOEL
    |                                          RUNYON'S TRIAL BRIEF**
    |         v.

21 |                                           **Judge:**          Hon. Beth Labson Freeman
    | IMPOSSIBLE LLC and JOEL RUNYON,          **Trial Date:**     March 9, 2026

22 |
    |     Defendants / Counter-Plaintiffs.
23 |

24 |

25 |

26 |

27 |

28 |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ..................................................................................................i-ii

TABLE OF AUTHORITIES ..........................................................................................iii-iv

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 2

      A.     Impossible LLC's Brand and Business........................................................ 2

      B.     Impossible Foods .......................................................................................... 3

      C.     Impossible Foods's Infringement ............................................................... 3

      D.     Impossible LLC's Injuries ........................................................................... 4

CONTROLLING LAW AND KEY EVIDENCE ........................................................... 4

I.      IMPOSSIBLE LLC WILL PROVE ITS CLAIMS AT TRIAL ......................... 4

      A.     Impossible Foods Infringed Impossible LLC's Trademarks ................... 5

              1.     Impossible LLC Owns Registered and Common Law
                   IMPOSSIBLE Marks ....................................................................... 5

              2.     Impossible Foods's Infringing Products Are Confusing Consumers........... 6

      B.     Impossible Foods Created a False Association with Impossible LLC and
             Its Products ..................................................................................................... 8

      C.     Impossible Foods's Infringement Was Both Willful and Undertaken with
             Malice, Fraud, or Oppression ..................................................................... 8

      D.     Impossible LLC Suffered Significant Injuries from Impossible
             Foods's Infringement................................................................................... 9

II.   IMPOSSIBLE FOODS CANNOT PROVE ITS DEFENSES ......................................... 10

      A.   Abandonment ........................................................................................ 10

      B.   Fraud on the USPTO ........................................................................... 11

      C.   Unclean Hands .................................................................................... 12

      D.   Laches .................................................................................................. 12

III.  IMPOSSIBLE FOODS'S INFRINGEMENT CLAIMS WILL FAIL ............................ 13

      A.   Impossible LLC's Supplement Products Do Not Infringe Impossible Foods's
           Alternative Meat Trademarks ............................................................... 13

      B.   Impossible Foods's Cancellation Claims Will Fail for the Same Reason
           as Its Related Defenses ....................................................................... 14

IMPOSSIBLE LLC AND JOEL RUNYON'S TRIAL BRIEF

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Adray v. Adry-Mart, Inc.*,
   76 F.3d 984 (9th Cir. 1995) ................................................................................. 13

5

*Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*,
6
   174 F.3d 1036 (9th Cir. 1999) ...................................................................... 10, 17

7

*Eat Right Foods Ltd. v. Whole Foods Mkt., Inc.*,
   880 F.3d 1109 (9th Cir. 2018) ............................................................................. 16

8

*Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*,
9
   778 F.3d 1059 (9th Cir. 2015) ...................................................................... 12, 13

10

*Grocery Outlet Inc. v. Albertsons, Inc.*, No. C,
   06-02173 JSW, 2008 WL 5245962 (N.D. Cal. Dec. 17, 2008) ........................... 14

11

*Ironhawk Techs., Inc. v. Dropbox, Inc.*,
12
   2 F.4th 1150 (9th Cir. 2021) ............................................................................ 9, 10

13

*Jason Scott Collection, Inc. v. Trendily Furniture, LLC*,
   68 F.4th 1203 (9th Cir. 2023) ............................................................................. 13

14

*OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*,
15
   897 F.3d 1008 (9th Cir. 2018) ............................................................................. 15

16

*QS Wholesale, Inc. v. World Mktg., Inc.*,
   No. SA12CV0451DOCRNBX, 2014 WL 12586120 (C.D. Cal. Jan. 7, 2014) ........... 13

17

*Rearden LLC v. Rearden Com., Inc.*,
18
   683 F.3d 1190 (9th Cir. 2012) ............................................................................. 11

19

*Skydive Arizona, Inc. v. Quattrocchi*,
   673 F.3d 1105 (9th Cir. 2012) ............................................................................. 13

20

*Stone Creek, Inc. v. Omnia Italian Design, Inc.*,
21
   875 F.3d 426 (9th Cir. 2017) ............................................................................... 10

22

*Trader Joe's Co. v. Trader Joe's United*,
   150 F.4th 1040 (9th Cir. 2025) .............................................................................. 9

23

*Vineyard House, LLC v. Constellation Brands U.S. Operations, Inc.*,
24
   No. 19-CV-01424-YGR, 2020 WL 95638 (N.D. Cal. Jan. 8, 2020) ...................... 15

25

IMPOSSIBLE LLC AND JOEL RUNYON'S TRIAL BRIEF

*Walter v. Mattel, Inc.*,
   210 F.3d 1108 (9th Cir. 2000) ................................................................................. 10

**Statutes**

15 U.S.C. § 1115(a) ...................................................................................................... 9

Cal. Civ. Code § 3294(a) ........................................................................................... 12

IMPOSSIBLE LLC AND JOEL RUNYON'S TRIAL BRIEF

**<u>INTRODUCTION</u>**

Impossible LLC founder Joel Runyon began his business in 2010 with a successful blog that focused on achieving impossible tasks. From that blog, Mr. Runyon launched Impossible LLC to sell IMPOSSIBLE-branded performance clothing, fitness guides with recipe information, fitness-focused mobile applications, drink mix-in nutritional supplements, and related products and services.

Six years later, Impossible Foods entered the marketplace with plant-based meat. Although Impossible LLC does not contend in this lawsuit that its plant-based meat products are infringing, Impossible Foods has branched out from those offerings to offer IMPOSSIBLE-branded apparel and cookbooks that infringe Impossible LLC's trademark rights. The steady encroachment forced Impossible LLC to send a cease-and-desist letter and propose a path toward coexistence. Instead of responding, Impossible Foods brought this suit. From there, what started as a single-issue declaratory judgment action for a pending trademark registration has become a sprawling trial in which Impossible Foods now asks the Court to invalidate multiple of Impossible LLC's marks, including those that have no bearing on the parties' original dispute. For its part, Impossible LLC will seek relief from the jury for the infringement it originally identified.

At trial, Impossible LLC will seek monetary damages in the form of corrective advertising damages. The evidence will show that Impossible Foods has violated Impossible LLC's federal and common law trademark rights by offering apparel and cookbook products. Those violations entitle Impossible LLC to compensatory damages award for corrective advertising to remedy the false association with Impossible Foods through its infringing product offerings. Impossible LLC will also present testimony and documentary evidence that rebuts Impossible Foods's non-infringement defenses and affirmative claims.

Impossible Foods's make-weight claims for infringement against Impossible LLC's nutritional supplement products will also fail because Impossible Foods has produced no evidence

IMPOSSIBLE LLC AND JOEL RUNYON'S TRIAL BRIEF

1   of actual or likely consumer confusion. Meanwhile, Impossible Foods's equitable claims for fraud

2   and abandonment of Impossible LLC's trademark registrations will also fail because the evidence

3   will show that Mr. Runyon did not intend to mislead the USPTO, that any alleged inaccuracies in

4   his submissions were immaterial, and that Impossible LLC has continuously offered the products

5   and services for which it has trademark rights.

6                                          **BACKGROUND**

7       **A.    Impossible LLC's Brand and Business**

8           Impossible LLC uses its platform to provide people with the tools that they need to reach

9   their exercise and fitness goals and to inspire them to achieve what they may think to be

10  impossible. (Ex. 0242 at 104:10-105:8.[1]) Impossible LLC first started with Joel Runyon's blog in

11  2010, which provided fitness, nutrition, diet, and wellness content. (Exs. 2159-62.) In 2011,

12  Impossible LLC began offering IMPOSSIBLE-branded apparel. (Ex. 2163.) Next, in 2012,

13  Impossible LLC began selling IMPOSSIBLE-branded fitness guides that included recipe and

14  cooking information. (Exs. 2162, 2164, 2161.) From apparel and practical guides, Impossible LLC

15  expanded its product offerings in 2014 to multiple mobile applications to offer diet and fitness

16  information on the phone. (Ex. 2167.) Impossible LLC then expanded to offering nutritional

17  supplements in 2017. (Exs. 2166, 2165, 0611, 0641, 0635, 0655, 0640.) As the business expanded,

18  Impossible LLC sought to register federally protected trademarks to more thoroughly protect its

19  rights. (Exs. 2170-79.) At trial, Mr. Runyon will testify that he has continuously sold Impossible

20  LLC's apparel, fitness-based cooking information, and nutritional supplements since the company

21  started offering those products.

22

23  _____

24  [1] All references to "Ex. #" are to the numbered trial exhibits identified in the amended joint exhibit

25  list submitted on March 2, 2026, copies of which will be provided to the Court on March 5, 2026.

1    **B.    Impossible Foods**

2    In 2013, Impossible Foods, then known as Maraxi, Inc., was a research and development

3    company with no products and which only generated minor revenue from a single license for

4    "making artisanal cheeses from nuts." (Ex. 0252 at 26:4-27:24.) It decided to rebrand, however,

5    and hired outside branding agency ████████████████████████████████

6    ████████████████████████. (*See* Exs. 2218, 2219, 2220.) Among other services,

7    Maraxi ████████████████████████████████████████████

8    ███. (Exs. 2219, 2181.) In that ████████████████████████████

9    ████████████████████████████████████████████████

10   ████████████████. (Ex. 2181.)

11   During the corporate renaming process, Maraxi's corporate executives also ████████

12   ████████████████████████████████████████████

13   ████████████████████████████████████████████████ (Ex.

14   0253 at 272:15-23.) ████████████████████████████████████

15   ████████████████████ (Ex. 2222 at 1-3.) A few months later, ████████

16   ████████████████████████████████████████████

17   ████████████████████████████. (Ex. 2221.)

18   **C.    Impossible Foods's Infringement**

19   Impossible Foods launched its plant-based burger—a non-infringing item with no overlap—

20   as a product in partnership with high-end restaurants and fast-food chains. Soon, however, it began

21   encroaching on Impossible LLC's product offerings. While Impossible Foods initially offered

22   IMPOSSIBLE-branded apparel as promotional items to drive attendance at burger launches and

23   restaurant partnership events, it gradually began edging into Impossible LLC's core business by

24   offering infringing IMPOSSIBLE-branded apparel as promotional and apparel items for athletic

25   event sponsorship, for employees to wear, for influencers to post on social media, and sent directly

1  to consumers. Then, in 2020, Impossible Foods started providing cooking information in a

2  cookbook.

3          **D.**     **Impossible LLC's Injuries**

4          Impossible Foods's infringing IMPOSSIBLE-branded products have swamped Impossible

5  LLC in the market and caused widespread consumer confusion. Consumers and other market

6  participants have inundated Impossible LLC and Mr. Runyon with communications intending to

7  reach Impossible Foods. And consumers have repeatedly attributed Impossible Foods's negative

8  attributes to Impossible LLC's brand, accusing Impossible LLC of promoting "junk." This

9  confusion has wiped out Impossible LLC's hard-earned goodwill and sharply undermined its

10  financial performance.

11          To recover, Impossible LLC must undertake corrective advertising to counteract this

12  confusion. Dr. Robert Palmatier, a distinguished professor of marketing at the University of

13  Washington, will testify that Impossible Foods's infringing apparel products are a form of

14  advertising that generate brand impressions under the IMPOSSIBLE mark and degrade the

15  performance of Impossible LLC's brand and marks. Marketing science studies conducted over

16  many years show that, because negative impressions are more difficult to repair than they are to

17  create, Impossible LLC must spend 3-5x of Impossible Foods's infringing advertising spending to

18  correct this confusion. Based on Impossible Foods's financial data, Impossible LLC's expert

19  witness Dr. Jennifer Vanderhart will document the amount of Impossible Foods's infringing

20  spending, and the range of corrective advertising Impossible LLC will be required to undertake.

21          **<u>CONTROLLING LAW AND KEY EVIDENCE</u>**

22  **I.**     **IMPOSSIBLE LLC WILL PROVE ITS CLAIMS AT TRIAL**

23          Impossible LLC will prove at trial that Impossible Foods's marketing of infringing apparel,

24  related "swag," and recipe products have infringed Impossible LLC's registered and common law

25

trademark rights and swamped Impossible LLC in the marketplace, creating "reverse confusion" that has devastated Impossible LLC's brand and business.

### A.    Impossible Foods Infringed Impossible LLC's Trademarks

Impossible Foods's sales of IMPOSSIBLE-branded apparel products and its provision of products and services related to fitness, health, and nutrition infringe Impossible LLC's longstanding rights in the IMPOSSIBLE trademark. To prevail on a claim for infringement of a registered trademark, a plaintiff must show that it "holds a protectable mark, and that the alleged infringer's imitating mark is similar enough to 'cause confusion, or to cause mistake, or to deceive.'" *Ironhawk Techs., Inc. v. Dropbox, Inc.*, 2 F.4th 1150, 1159 (9th Cir. 2021). The same standard applies to infringement of unregistered marks, and a plaintiff who owns common law trademark rights may obtain relief for unfair competition under the Lanham Act and California law. *Trader Joe's Co. v. Trader Joe's United*, 150 F.4th 1040, 1054 n.3 (9th Cir. 2025) ("claims under § 43(a) of the Lanham Act and California unfair competition and trademark infringement laws are 'substantially congruent' with [a] Lanham Act trademark infringement claim").

### 1.    Impossible LLC Owns Registered and Common Law IMPOSSIBLE Marks

The ownership element is largely undisputed with respect to Impossible LLC's federally registered marks. While Impossible Foods has asserted cancellation claims against *some* of Impossible LLC's registrations, others remain undisputed, including Registration Nos. 4260617, 4624158, 5155646, 5179974, 5376208, and 5576376. Thus, even putting aside registrations that Impossible Foods has challenged, Impossible LLC is the undisputed owner of the IMPOSSIBLE mark for apparel, *see* Reg. No. 4260617, and the other products and services named in these registrations. *See* 15 U.S.C. § 1115(a) (registration is "prima facie evidence" of "ownership," "validity," and "exclusive right to use the registered mark in commerce" in connection with identified goods and services).

1    Impossible LLC also owns longstanding common-law trademark rights in connection with a

2    website featuring exercise and fitness, apparel, accessories, recipes, and cooking information.

3    Priority rights stem from use in commerce: "The first to use a mark is deemed the 'senior' user and

4    has the right to enjoin 'junior' users from using confusingly similar marks in the same industry and

5    market or within the senior user's natural zone of expansion." *Brookfield Commc'ns, Inc. v. W.*

6    *Coast Ent. Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999). Mr. Runyon's testimony and the

7    documentary evidence will show that Impossible LLC is the senior user of IMPOSSIBLE-

8    formative marks in connection with providing a website featuring exercise and fitness, apparel,

9    recipes, cookbooks, and nutrition advisory services. And Mr. Runyon will testify regarding the

10   launch and continuous use of each product category. This includes evidence of sales within

11   California long predating Impossible Foods's adoption of the infringing IMPOSSIBLE mark.

12            **2.      Impossible Foods's Infringing Products Are Confusing Consumers**

13           To prevail on its infringement claims, Impossible LLC need only prove that Impossible

14   Foods's marketing of IMPOSSIBLE-branded goods and services are "likely" to cause consumer

15   confusion. *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 431 (9th Cir. 2017)

16   ("[t]he touchstone for trademark infringement is likelihood of confusion"). The evidence goes far

17   beyond that and will show consumer confusion.

18           Likelihood of confusion is assessed using the eight "*Sleekcraft* factors," including "(1)

19   strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual

20   confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be

21   exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of

22   expansion of the product lines." *Ironhawk*, 2 F.4th at 1160. Because this is a reverse confusion

23   case, the jury must consider the strength of Impossible Foods's mark and the size of Impossible

24   Foods. *Id.* (holding that reverse confusion occurs when "a larger, more powerful company usurp[s]

25   the business identity of a smaller senior user"); *Walter v. Mattel, Inc.*, 210 F.3d 1108, 1111 n.2 (9th

1    Cir. 2000) ("[i]n a reverse confusion case . . . the inquiry focuses on the strength of the junior mark

2    because the issue is whether the junior mark is so strong as to overtake the senior mark").

3    Considering these two additional factors is appropriate because the *Sleekcraft* factors are non-

4    exhaustive by design and "other variables besides the enumerated factors should also be taken into

5    account based on the particular circumstances." *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d

6    1190, 1209 (9th Cir. 2012).

7        Most of the relevant factors will show that Impossible Foods's marketing of IMPOSSIBLE-

8    branded apparel infringes Impossible LLC's trademark rights. For example:

9        ***Strength of Impossible LLC's Mark***. Impossible LLC's IMPOSSIBLE-formative marks are

10    both conceptually and commercially strong. As to conceptual strength, the IMPOSSIBLE Marks

11    are strong because they do not inherently describe or suggest anything about Impossible LLC's

12    goods and services. As to commercial strength, Impossible LLC has had longstanding success

13    marketing its apparel, fitness, health, recipes, cookbooks, and nutrition advisory services under the

14    IMPOSSIBLE Marks. When adopted in 2010, Impossible LLC's distinctive branding set it apart

15    from other brands. And Impossible Foods did not adopt Impossible-formative branding until 2016.

16        ***Strength of Impossible Foods's Mark***. At the same time, the strength of Impossible LLC's

17    mark is greatly outweighed by Impossible Foods's massive promotional machine. While

18    Impossible LLC is a solo entrepreneur, Impossible Foods is a multi-billion-dollar corporation that

19    invests heavily in marketing and advertising, including by distributing of infringing promotional

20    products. The disparity in the parties' sizes greatly increases the likelihood of reverse confusion.

21        ***Proximity of Goods***. Impossible Foods's infringing apparel, promotional items, and

22    cookbook offerings are the same kinds of goods offered by Impossible LLC, which increases the

23    likelihood of confusion about the source of the goods than otherwise.

24

25

1    ***Similarity of Marks***. The respective brands are nearly identical because both companies use

2    the "Impossible" mark in a similar block-letter stylization, with white font on top of darker

3    backgrounds.

4    ***Actual Confusion***. Impossible Foods's use of Impossible LLC's trademark has led to

5    instances of actual confusion among new and existing customers of both companies, as well as

6    industry professionals.

7    ***Intent.*** Based on the ███████████████████████████████████████

8    ████████████████████████████, Impossible Foods knowingly used Impossible LLC's

9    trademarks to identify similar goods.

10   **B.    Impossible Foods Created a False Association with Impossible LLC and Its Products**

11   Impossible LLC's claim for false association under the Lanham Act provides another basis

12   for liability. 15 U.S.C. § 1125(a) (providing liability for use of "any word, term, name, symbol, or

13   device" that is "likely to cause confusion, or to cause mistake, or to deceive as to the affiliation,

14   connection, or association of such person with another person, or as to the origin, sponsorship, or

15   approval of his or her goods, services, or commercial activities by another person"). For the same

16   reasons, the record makes clear that Impossible Foods's unauthorized use of the IMPOSSIBLE

17   mark has confused consumers and falsely implied an affiliation with Impossible LLC.

18   **C.    Impossible Foods's Infringement Was Both Willful and Undertaken with Malice, Fraud, or Oppression**

19

20   The Lanham Act provides enhanced remedies for infringement that is "willful," *Fifty-Six*

21   *Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1074 (9th Cir. 2015), while California law

22   authorizes punitive damages for infringement that is malicious, fraudulent, or oppressive. Cal. Civ.

23   Code § 3294(a) (finding punitive damages where defendant is "guilty of oppression, fraud, or

24   malice"). Impossible Foods's knowing and deliberate infringement of the IMPOSSIBLE mark

25   satisfies both standards.

1    The evidence will show that Impossible Foods, either intentionally or consciously,

2    disregarded Impossible LLC's trademark rights in infringing its trademarks. ███████

3    ████████████████████████████████████████████████████████████

4    ████████████████████████████████████████████████████████████

5    ████████████████████████████████████████████████████████████

6    ███████████████████████████. The actual knowledge of Impossible LLC, its trademarks,

7    and product offerings shows that Impossible Foods willfully infringed Impossible LLC's trademark

8    rights.

9        This evidence is more than sufficient to show that Impossible Foods's infringement was

10   willful. *Fifty-Six Hope Rd.*, 778 F.3d at 1074 (finding willfulness based on defendant's "awareness

11   of its competitors and its actions at those competitors' expense"). It is also sufficient to show that

12   Impossible Foods's conduct was malicious, fraudulent, or oppressive under California law. *QS*

13   *Wholesale, Inc. v. World Mktg., Inc.*, No. SA12CV0451DOCRNBX, 2014 WL 12586120, at *4

14   (C.D. Cal. Jan. 7, 2014) (affirming punitive damages award based on defendant's "knowledge of

15   [plaintiff's] ownership of the mark," defendant's "knowledge that [plaintiff] was a small company

16   [...] that could be bullied," and defendant's "refusal to stop infringing activity after [plaintiff]

17   asked it to stop").

18       **D.    Impossible LLC Suffered Significant Injuries from Impossible Foods's
               Infringement**

19

20       Courts "assess trademark damages 'in the same manner as tort damages: the reasonably

21   foreseeable harms caused by the wrong.'" *Jason Scott Collection, Inc. v. Trendily Furniture, LLC*,

22   68 F.4th 1203, 1220 (9th Cir. 2023). "[T]he nature of the proof required to support a jury award

23   depends on the circumstances of the case and is 'subject to the principles of equity.'" *Skydive*

24   *Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1112 (9th Cir. 2012). After establishing damages, "the

25

IMPOSSIBLE LLC AND JOEL RUNYON'S TRIAL BRIEF

1  burden of any uncertainty in the amount of damages should be borne by the wrongdoer." *Adray v.*

2  *Adry-Mart, Inc.*, 76 F.3d 984, 989 (9th Cir. 1995).

3       Through the witness testimony and admitted documents, Impossible LLC will prove four

4  categories of actual harm resulting from Impossible Foods's infringement. First, the evidence will

5  show numerous instances in which consumers have confused Impossible LLC's apparel and other

6  products for those affiliated with Impossible Foods. Second, the evidence will show that

7  Impossible LLC regularly receives misdirected communications mistaking Impossible LLC for

8  Impossible Foods. Third, the evidence will show that this mistaken association with Impossible

9  Foods is harmful to Impossible LLC's goodwill and reputation. Finally, the evidence will show a

10 precipitous decline in financial performance after the start of Impossible Foods's infringement.

11      In addition, Dr. Palmatier will explain how Impossible Foods's infringement destroys

12 brands and the need for corrective advertising. Vanderhart will testify as to how much Impossible

13 LLC will have to spend on advertising to correct the false brand association resulting from

14 Impossible Foods apparel and cookbook offerings.

15 **II.    IMPOSSIBLE FOODS CANNOT PROVE ITS DEFENSES**

16      Impossible Foods's defenses of abandonment, fraud on the USPTO, unclean hands, and

17 laches will fail at trial.

18      **A.    Abandonment**

19      In its abandonment defense, Impossible Foods claims that Impossible LLC abandoned three

20 trademark registrations. Even if this defense were to be substantiated, however, it would not

21 materially affect Impossible Foods's liability because it is limited to three specific registrations:

22 Registration No. 5590801 for IMPOSSIBLE FITNESS in stylized form, Registration No. 5603025

23 for IMPOSSIBLE FITNESS in non-stylized form, and Registration No. 6571603 for IMPOSSIBLE

24 in *animated* form only. Impossible LLC's other registrations, including Registration Nos. 4260617,

25 4624158, 5155646, 5179974, 5376208, and 5576376, for the IMPOSSIBLE® word mark and its

1   stylized variations, are not challenged. Thus, even if Impossible Foods prevails, this defense would

2   not defeat liability.

3          The abandonment defense also fails on the merits. To show abandonment, Impossible

4   Foods must prove the "'stringent,' 'heavy,' or 'strict' burden of proof" by proving by "clear and

5   convincing" evidence that Impossible LLC stopped using the challenged marks with intent not to

6   resume using them. *Grocery Outlet Inc. v. Albertsons, Inc.*, No. C 06-02173 JSW, 2008 WL

7   5245962, at *6 (N.D. Cal. Dec. 17, 2008). The evidence will show that Impossible LLC has sold

8   IMPOSSIBLE-branded material on the Impossible Fitness website and used the animated mark as a

9   website and as a signature design at the end of its marketing and social media efforts. That

10  evidence is sufficient to preclude a finding of abandonment under applicable law.

11         **B.     Fraud on the USPTO**

12         Impossible Foods also challenges a handful of registrations by arguing that Impossible LLC

13  fraudulently obtained them. Again, this is not a complete defense because Impossible Foods

14  challenges only four registrations: Registration No. 5590801 for IMPOSSIBLE FITNESS in

15  stylized form, Registration No. 5603025 for IMPOSSIBLE FITNESS in non-stylized form,

16  Registration No. 5620625 for IMPOSSIBLE in connection with certain apparel items including

17  pants, shorts, yoga pants, tights, and underwear, and Registration No. 6571603 for IMPOSSIBLE

18  in animated form. Impossible LLC's other registrations, as well as its common-law rights in the

19  same marks, provide an independent basis for liability.

20         Impossible Foods's fraud theory also fails on the merits. To establish fraud on the USPTO,

21  Impossible Foods must prove "by clear and convincing evidence": "1) a false representation

22  regarding a material fact; 2) the registrant's knowledge or belief that the representation is false; 3)

23  the registrant's intent to induce reliance upon the misrepresentation; 4) actual, reasonable reliance

24  on the misrepresentation; and 5) damages proximately caused by that reliance." *OTR Wheel Eng'g,*

25  *Inc. v. W. Worldwide Servs., Inc.*, 897 F.3d 1008, 1019-20 (9th Cir. 2018). Impossible Foods bears

1   a heavy burden: "[T]he very nature of the charge of fraud requires that it be proven 'to the hilt'

2   with clear and convincing evidence. There is no room for speculation, inference, or surmise and,

3   obviously, any doubt must be resolved against the charging party." *Vineyard House, LLC v.*

4   *Constellation Brands U.S. Operations, Inc.*, No. 19-CV-01424-YGR, 2020 WL 95638, at *1 (N.D.

5   Cal. Jan. 8, 2020).

6        Impossible Foods cannot carry this burden. Among other issues, Impossible Foods cannot

7   show that Mr. Runyon made a materially false representation, that he knew or believed that he

8   made any false representation, that the PTO relied on those alleged misrepresentations, or that

9   Impossible Foods was harmed by that reliance. Mr. Runyon will testify that he believed that his

10   sworn statements of use submitted to the PTO in connection with the challenged trademarks were

11   true. Moreover, Mr. Runyon will testify that he believed that the statements the PTO included

12   illustrative examples of performance and athletic clothing for the PTO's consideration, not a

13   specific or exhaustive list of articles as to which the trademarks were already in use. And Mr.

14   Runyon strongly disavowed any intent to defraud or mislead the PTO when he submitted the

15   statements of use. Even if Mr. Runyon's testimony would not negate the intent and reliance factors,

16   Impossible Foods has adduced no evidence that the PTO reasonably relied on the allegedly false

17   statement, that it approved Impossible LLC's trademark registrations because of the statement, or

18   that Impossible Foods has suffered any harm as a result of those registered trademarks because it

19   does not sell products or services in the trademarked categories.

20        **C.    Unclean Hands**

21        Impossible Foods also asserts an "unclean hands" defense premised on its allegations of

22   fraud on the USPTO, which will fail for the same reasons detailed above.

23        **D.    Laches**

24        Impossible Foods's laches defense will likewise fail. "To establish that laches bars a claim,

25   a defendant must 'prove both an unreasonable delay by the plaintiff and prejudice to itself.'" *Eat*

1    *Right Foods Ltd. v. Whole Foods Mkt., Inc.*, 880 F.3d 1109, 1115 (9th Cir. 2018). Impossible Foods

2    cannot show either element because Impossible LLC acted promptly when it became clear that

3    Impossible Foods was using the IMPOSSIBLE mark on infringing apparel and recipe products and

4    related goods, sending the cease-and-desist letter that prompted this litigation.

5    **III.    IMPOSSIBLE FOODS'S INFRINGEMENT CLAIMS WILL FAIL**

6           Impossible Foods's infringement claims challenging Impossible LLC's supplement

7    products are make-weight and have not been borne out by the evidence. Impossible Foods admits

8    no consumer has ever been confused, admits it has suffered no injury, and seeks no remedy aside

9    from an injunction and disgorgement of the negligible profits on the supplements (a low four-figure

10   sum at most). These claims will fail at trial.

11          **A.    Impossible LLC's Supplement Products Do Not Infringe Impossible Foods's**
              **Alternative Meat Trademarks**
12
              Impossible Foods's infringement claim fails at the outset because Impossible LLC has
13
     priority in the nutritional supplement market, which is within the "natural zone of expansion" of its
14
     longstanding products and services in the field of health and nutrition, recipes and dietary
15
     information, training, and athletic performance. *Brookfield*, 174 F.3d at 1047 (senior user has
16
     priority "within the senior user's natural zone of expansion").
17
              Even if Impossible Foods had priority, its infringement claims would fail because the
18
     *Sleekcraft* factors point decidedly in the direction of non-infringement: Impossible Foods's
19
     alternative meats are unrelated to nutritional supplements, Impossible Foods admits no consumer
20
     has ever been confused, the parties' supplements and alternative meats are not marketed through
21
     the same channels, consumers exercise a high degree of care in selecting the relevant products,
22
     Impossible Foods's mark has no strength in the supplement market, and there is no evidence that
23
     Impossible Foods has ever considered expanding into supplements. Impossible Foods will be
24

25

1    unable to show that any reasonably prudent consumer has been or is likely to be confused by

2    Impossible LLC's supplements.

3         **B.    Impossible Foods's Cancellation Claims Will Fail for the Same Reason as Its Related Defenses**

4    Impossible Foods's claims for cancellation based on fraud and abandonment are styled as

5    causes of action but are effectively defenses against infringement. They will fail for the reasons

6    discussed in connection with Impossible LLC's infringement claims.

7

8    Dated: March 2, 2026                     Respectfully submitted,

9                                             BRAUNHAGEY & BORDEN LLP

10                                            By:  */s/ Adam S. Cashman*
                                                  Adam S. Cashman

11

12                                            *Attorneys for Impossible LLC and Joel Runyon*

13

14

15

16

17

18

19

20

21

22

23

24

25