G. ROXANNE ELINGS (*pro hac vice*)
roxanneelings@dwt.com
RAPHAEL HOLOSZYC-PIMENTEL (*pro hac vice*)
rhp@dwt.com
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 42nd Floor
New York, NY 10020
Telephone: (212) 489-8230
Facsimile: (212) 489-8340

SARAH E. BURNS (CA State Bar No. 324466)
sarahburns@dwt.com
DAVIS WRIGHT TREMAINE LLP
50 California Street, 23rd Floor
San Francisco, CA 94111
Telephone: (415) 276-6500
Facsimile: (415) 276-6599

Attorneys for Plaintiff/Counter-Defendant
IMPOSSIBLE FOODS INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IMPOSSIBLE FOODS INC., <br><br> Plaintiff, <br><br> vs. <br><br> IMPOSSIBLE LLC, et al., <br><br> Defendants. | Case No. 5:21-cv-02419-BLF <br><br> **IMPOSSIBLE FOODS' AMENDED [PROPOSED] VERDICT FORM** <br><br> Judge:   Hon. Beth L. Freeman |

Pursuant to the Court's Order dated February 27, 2026 (Dkt. 385) and the Court's instructions at the conference held on February 12, 2026, Plaintiff and Counterclaim-Defendant Impossible Foods Inc. ("Impossible Foods") submits the following amended proposed Verdict Form.

# VERDICT FORM

We, the jury impaneled in this case, unanimously answer the questions submitted to us as follows.

## PART I

**A. Fraud in the Procurement of Federal Trademark Registrations**

    1. Did Impossible Foods prove, by clear and convincing evidence, that Impossible LLC procured any of the following registrations by fraud on the U.S. Patent and Trademark Office ("USPTO")?

Registration No. 5590801 for IMPOSSIBLE FITNESS (stylized):   Yes ___   No ___

Registration No. 5603025 for IMPOSSIBLE FITNESS:   Yes ___   No ___

Registration No. 5620625 for IMPOSSIBLE:   Yes ___   No ___

Registration No. 6571603 for IMPOSSIBLE (animated):   Yes ___   No ___

**B. Fraud in the Procurement of Incontestability Status**

    2. Did Impossible Foods prove, by clear and convincing evidence, that Impossible LLC maintained, or procured incontestability status of, the following registration by fraud on the USPTO?

Registration No. 5387588 for IMPOSSIBLE NUTRITION (stylized):   Yes ___   No ___

**C. Abandonment of Federal Trademark Registrations**

    3. Did Impossible Foods prove, by a preponderance of the evidence, that Impossible LLC abandoned any of the following registrations in connection with apparel?

Registration No. 5590801 for IMPOSSIBLE FITNESS (stylized):   Yes ___   No ___

Registration No. 5603025 for IMPOSSIBLE FITNESS:   Yes ___   No ___

Registration No. 6571603 for IMPOSSIBLE (animated):   Yes ___   No ___

## PART II

**A. Trademark Infringement & Unfair Competition – Impossible LLC's Federal Claims**

    **i. Registered Trademarks for Apparel**

For this section, if you found in Part I that a registration or status was procured or maintained by fraud, that registration is NOT valid and you may NOT consider that registration at all.

Furthermore, if you found in Part I that a registration was abandoned in connection with apparel, apparel is NOT covered by that registration.

You must consider only valid registrations and related goods, which may or may not include the registrations in Part I, depending on your findings. Additionally, regardless of what you found in Part I, you may consider the following registration:

Registration No. 4260617 for IMPOSSIBLE (stylized).[1]

---

[1]    Note: At the final pretrial conference, Impossible LLC's counsel stated that they "will probably trim several of the trademarks so that it makes it a bit easier for the jury." Feb. 12, 2026 Tr. at 18:3–4. Impossible LLC has indicated that it will drop at least the following from the case:

> Reg. No. 5155646, IMPOSSIBLE X, for "search engine optimization and marketing services; marketing consulting in the field of social media";
>
> Reg. No. 5576376, DO SOMETHING IMPOSSIBLE, for "nutritional supplements," "Clothing and performance apparel, namely, t-shirts, sweatshirts, pants, shorts, tank tops, yoga pants, tights," "search engine optimization and marketing services; marketing consulting in the field of social media," and "charitable fundraising services."

It is well established that the goods at issue must be "related" in order to find infringement. *See AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir. 1979) ("If the goods are totally unrelated, there can be no infringement because confusion is unlikely."). Impossible Foods proposes that the following Impossible LLC trademarks also be dropped from the case, because the covered goods are unrelated to Impossible Foods' allegedly infringing goods—i.e., apparel and cookbooks:

> Reg. No. 4624158, IMPOSSIBLE FITNESS, for "Website featuring information relating to exercise and fitness";
>
> Reg. No. 5179974, IMPOSSIBLE HQ, for "providing a website featuring information relating to exercise and fitness";
>
> Reg. No. 5376208, IMPOSSIBLE (stylized), for "nutritional supplements" and "search engine optimization and marketing services; marketing consulting in the field of social media."

4. Did Impossible LLC prove, by a preponderance of the evidence, that Impossible Foods infringed a valid registered trademark by offering apparel?

Yes ___   No ___

### ii. Common-Law Trademarks for Nutrition and Recipe Information

5. Did Impossible LLC prove, by a preponderance of the evidence, that Impossible LLC had established valid common-law trademark rights in connection with offering nutrition and recipe information before Impossible Foods began doing so?

Yes ___   No ___

If you checked "No," skip Question 6.

6. Did Impossible LLC prove, by a preponderance of the evidence, that Impossible Foods infringed such common-law trademarks by offering cookbooks?

Yes ___   No ___

### iii. Willfulness

Answer the following question only if you found any infringement. Otherwise, skip Question 7.

7. Did Impossible LLC prove, by a preponderance of the evidence, that Impossible Foods willfully infringed valid registered or common-law trademarks?

Yes ___   No ___

**B. Trademark Infringement & Unfair Competition – Impossible LLC's Calif. Claim**

For this section, answer the following questions only if you found any infringement in Part II.A above. Otherwise, skip Questions 8 through 10.

8. Did Impossible LLC prove, by a preponderance of the evidence, that Impossible LLC had maintained continuous use of the IMPOSSIBLE mark in California in connection with offering with the following goods before Impossible Foods began doing so?

Apparel:                              Yes ___   No ___

Nutrition and recipe information:     Yes ___   No ___

If you checked "No" for both categories, skip Questions 9 and 10.

9. Did Impossible LLC prove, by a preponderance of the evidence, that Impossible Foods infringed valid California trademarks by offering the following goods in California?

Apparel:      Yes ___   No ___

Cookbooks:    Yes ___   No ___

If you checked "No" for both categories, skip Question 10.

10. Did Impossible LLC prove, by clear and convincing evidence, that Impossible Foods acted with oppression, fraud, or malice in infringement in California?

Yes ___   No ___

## PART III

For this part, answer the following questions only if you found any infringement in Part II above. Otherwise, skip Questions 11 and 12.

**Impossible Foods' Affirmative Defenses**

11. Did Impossible Foods prove, by a preponderance of the evidence, that Impossible LLC acted with unclean hands?

Yes ___   No ___

12. Did Impossible Foods prove, by a preponderance of the evidence, that prior to any infringement, Impossible LLC abandoned the infringed trademarks in connection with the goods covered by those trademarks?

Yes ___   No ___

## PART IV

For this part, answer the following questions only if you found any infringement in Part II AND you did not find any defenses in Part III above. Otherwise, skip Questions 13 through 17.

**A.   Corrective Advertising Damages**

13. Did Impossible LLC prove, by a preponderance of the evidence, that it suffered actual, non-speculative monetary damages that were directly and proximately caused by Impossible Foods' infringing apparel or cookbooks?

Yes ___   No ___

If you checked "No," skip Questions 14 and 15.

5

14. Did Impossible LLC prove, by a preponderance of the evidence, that corrective advertising is reasonably necessary to remedy the damage to the value of its trademarks caused by Impossible Foods' infringing apparel or cookbooks?

Yes ___   No ___

If you checked "No," skip Question 15.

15. What amount of corrective advertising damages, if any, did Impossible LLC prove, by a preponderance of the evidence, is reasonably necessary to remedy the damage to the value of its trademarks caused by Impossible Foods' infringing apparel or cookbooks?

$ _____

**B.     Disgorgement of Profits**

16. Did Impossible LLC prove, by a preponderance of the evidence, that Impossible Foods earned net profits that were directly and proximately caused by infringing apparel or cookbooks?

Yes ___   No ___

If you checked "No," skip Question 17.

17. What amount of net profits, if any, did Impossible LLC prove, by a preponderance of the evidence, were earned by Impossible Foods and caused by infringing apparel or cookbooks?

$ _____

## PART V

**A.     Trademark Infringement & Unfair Competition – Impossible Foods' Federal Claims**

   **i.     Registered Trademarks**

18. Did Impossible Foods prove, by a preponderance of the evidence, that Impossible LLC infringed a valid registered IMPOSSIBLE mark by offering dietary supplements?

Yes ___   No ___

   **ii.    Common-Law Trademarks**

19. Did Impossible Foods prove, by a preponderance of the evidence, that Impossible Foods had established valid common-law trademark rights in connection with offering edible products before Impossible LLC began offering dietary supplements?

Yes ___  No ___

If you checked "No," skip Question 20.

20. Did Impossible Foods prove, by a preponderance of the evidence, that Impossible LLC infringed such common-law trademarks by offering dietary supplements?

Yes ___  No ___

**B.     Trademark Infringement & Unfair Competition – Impossible Foods' Calif. Claim**

For this section, answer the following questions only if you found any infringement in Part V.A above. Otherwise, skip Questions 21 and 22.

21. Did Impossible Foods prove, by a preponderance of the evidence, that Impossible Foods had maintained continuous use of the IMPOSSIBLE mark in California in connection with offering edible products before Impossible LLC began offering dietary supplements?

Yes ___  No ___

If you checked "No," skip Question 22.

22. Did Impossible Foods prove, by a preponderance of the evidence, that Impossible LLC infringed valid California trademarks by offering dietary supplements in California?

Yes ___  No ___

**C.     Disgorgement of Profits**

For this section, answer the following questions only if you found any infringement in Parts V.A or V.B above. Otherwise, skip Questions 23 and 24.

23. Did Impossible Foods prove, by a preponderance of the evidence, that Impossible LLC earned net profits that were directly and proximately caused by infringing dietary supplements?

Yes ___  No ___

If you checked "No," skip Question 24.

24. What amount of net profits, if any, did Impossible Foods prove, by a preponderance of the evidence, were earned by Impossible LLC and caused by infringing dietary supplements?

$ _____

Dated: _____     _____
                                  Signature of jury foreperson