J. Noah Hagey, Esq. (SBN: 262331)
    hagey@braunhagey.com
Adam S. Cashman, Esq. (SBN: 255063)
    cashman@braunhagey.com
Greg Washington, Esq. (SBN: 318796)
    gwashington@braunhagey.com
J. Tobias Rowe, Esq. (SBN: 305596)
    rowe@braunhagey.com
Oliver McNicholas, Esq. (SBN: 363554)
    omcnicholas@braunhagey.com
BRAUNHAGEY & BORDEN LLP
747 Front Street, 4th Floor
San Francisco, CA 94111
Telephone: (415) 599-0210

Marissa R. Benavides (*pro hac vice* admission)
    benavides@braunhagey.com
BRAUNHAGEY & BORDEN LLP
200 Madison Avenue, 23rd Floor
New York, NY 10016
Telephone: (646) 829-9403

[Other counsel of record indicated on docket.]

*Attorneys for Impossible LLC*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| IMPOSSIBLE FOODS INC.,<br><br>    Plaintiff / Counter-Defendant,<br><br>    v.<br><br>IMPOSSIBLE LLC and JOEL RUNYON,<br><br>    Defendants / Counter-Plaintiffs. | Case No. 5:21-cv-02419-BLF (SVK)<br><br>**IMPOSSIBLE LLC'S MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FED R. CIV. P. 50(A)**<br><br>**Judge:**    Hon. Beth Labson Freeman<br>**Trial Date:**    March 9, 2026 |

**INTRODUCTION**

As Impossible LLC stated on the record at the close of Impossible Foods's case, the evidence at trial has not borne out Impossible Foods's claims that Impossible LLC abandoned the trademarks it asserts in this action, nor that Impossible LLC committed fraud on the United States Patent and Trademark Office. The evidence also does not support Impossible Foods's claim that Impossible LLC's sleep and energy supplement products are likely to cause confusion with Impossible Foods's plant-based meats. Because the jury lacks sufficient evidentiary basis to find for Impossible Foods on these issues, the Court should enter judgment as a matter of law in favor of Impossible LLC.

**ARGUMENT**

"If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue[,]" the court may grant judgment as a matter of law in favor of the opposing party. Fed. R. Civ. P. 50(a). JMOL "is warranted when the evidence presented at trial permits only one reasonable conclusion." *Peralta v. Dillard*, 744 F.3d 1076, 1085 (9th Cir. 2014) (quotation omitted). The standard for granting JMOL "mirrors" the standard for summary judgment, such that "the inquiry under each is the same." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, (2000).

**I.   NO REASONABLE JURY COULD FIND THAT IMPOSSIBLE LLC ABANDONED THE CHALLENGED MARKS**

To prevail on its abandonment claims, Impossible Foods must prove by clear and convincing evidence that Impossible LLC ceased use of each of the challenged marks with intent not to resume use. *Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1247 (9th Cir. 2013) (abandonment "must be strictly proved" and requires "(1) discontinuance of trademark use, and (2) intent not to resume use"); *Grocery Outlet Inc. v. Albertsons, Inc.*, No. C 06-02173, 2008 WL 5245962, at *6 (N.D. Cal. Dec. 17, 2008) (abandonment requires "stringent, heavy, or strict

IMPOSSIBLE LLC'S MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FED R. CIV. P. 50(A)

burden of proof," for which most courts require "clear and convincing" evidence) (internal quotation marks omitted); *see also* 2 McCarthy on Trademarks and Unfair Competition § 17:12 (5th ed.) ("Clear and convincing proof of abandonment is required."). Impossible Foods has dropped all its affirmative claims for abandonment of Impossible LLC's registered trademarks, as well as its defense of abandonment with respect to Impossible LLC's unregistered marks related to apparel. (Dkt. 421) Thus, the only remaining abandonment defense is Impossible Foods's allegation that Impossible LLC abandoned its unregistered trademarks related to recipes and nutrition information. (*Id*.)

Impossible Foods's abandonment defense fails as a matter of law because there is no evidence in the record that Impossible LLC completely ceased use of its IMPOSSIBLE mark for recipes and nutrition information at any time. "[A]bandonment requires complete cessation or discontinuance of trademark use." *Electro Source, LLC v. Brandess-Kalt-Aetna Grp., Inc.*, 458 F.3d 931, 938 (9th Cir. 2006). Thus, "[e]ven a single instance of use is sufficient against a claim of abandonment of a mark if such use is made in good faith." *Id*. Mr. Runyon testified that Impossible LLC first began using the IMPOSSIBLE mark on recipe products in 2012 and has continued to offer recipe and nutrition information through downloadable apps. (Trial Tr. 158:9-163:6 (Mar. 9, 2026).) Impossible Foods did not adduce evidence that this use ceased, nor that any alleged cessation was "complete" as the law requires. Because even a single instance of use is sufficient to defeat an abandonment defense, the evidence does not support a finding of abandonment as a matter law.

Impossible Foods also cannot show that Impossible LLC intended to permanently cease use of its mark for recipes. Mr. Runyon's testimony that Impossible LLC continues to use the marks in association with recipe products is unrebutted on this point. (*Id*.) Impossible Foods simply adduced no evidence that Impossible LLC intended to cease use of the IMPOSSIBLE mark in

IMPOSSIBLE LLC'S MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FED R. CIV. P. 50(A)

connection with recipes, much less that it intended to do so permanently. As a result, Impossible Foods cannot prove abandonment by clear and convincing evidence.

## II.    IMPOSSIBLE FOODS'S FRAUD CLAIMS FAIL

Impossible Foods's claims for fraud on the United States Patent and Trademark Office ("USPTO") also fail as a matter of law. "To succeed on a claim for cancellation based on fraud, a claimant must establish the following elements: 1) a false representation regarding a material fact; 2) the registrant's knowledge or belief that the representation is false; 3) the registrant's intent to induce reliance upon the misrepresentation; 4) actual, reasonable reliance on the misrepresentation; and 5) damages proximately caused by that reliance." *OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, 897 F.3d 1008, 1019 (9th Cir. 2018). "[T]he very nature of the charge of fraud requires that it be proven 'to the hilt' with clear and convincing evidence. There is no room for speculation, inference or surmise and, obviously, any doubt must be resolved against the charging party." *Vineyard House, LLC v. Constellation Brands U.S. Operations, Inc.*, No. 19-CV-01424, 2020 WL 95638, at *1 (N.D. Cal. Jan. 8, 2020).

Impossible Foods asserts fraud in the procurement in connection with three registrations: Registration No. 5590801 for IMPOSSIBLE FITNESS in stylized form, Registration No. 5603025 for IMPOSSIBLE FITNESS in non-stylized form, and Registration No. 5620625 for IMPOSSIBLE in connection with certain apparel items including pants, shorts, yoga pants, tights, and underwear. Impossible Foods also challenges Registration No. 5387588 for IMPOSSIBLE NUTRITION by asserting that statements in Impossible LLC's post-registration Declaration of Use and Incontestability were false. It does not come close to meeting the clear and convincing evidence standard for any of these registrations.

IMPOSSIBLE LLC'S MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FED R. CIV. P. 50(A)

### A. Impossible Foods Failed to Adduce Evidence Regarding Registration No. 5620625 for IMPOSSIBLE

Impossible Foods's fraud claim fails with respect to Registration No. 5620625 for IMPOSSIBLE because Impossible Foods adduced no evidence relevant to fraud with respect to this registration. Impossible Foods never examined Mr. Runyon regarding the procurement of this registration, nor about any of his statements in the application. Without such evidence, Impossible Foods cannot prove by any standard that Impossible LLC committed fraud, let alone by clear and convincing evidence.

### B. Impossible Foods Failed to Adduce Evidence of Intent to Defraud the USPTO

Impossible Foods also failed to adduce evidence that Impossible LLC made a knowingly false statement to the USPTO or intended to deceive the USPTO with respect to any registration. With respect to the IMPOSSIBLE FITNESS Registrations, Impossible Foods produced no evidence disputing that these marks were in use in connection with many of the apparel products originally named in the registrations at the time Mr. Runyon submitted the disputed "Statements of Use" attesting to their use. Instead, Impossible Foods's cross-examination of Mr. Runyon focused on whether Impossible LLC was using the marks in connection with "yoga pants," "tights," and "shorts" at the time of his declaration. (Trial Tr. 323:23-338:14 (Mar. 10, 2026).) Mr. Runyon testified that these products were in fact available for purchase through Impossible LLC's third-party vendor at the time of his statement. (*Id.*) Impossible Foods's counsel responded by arguing with Mr. Runyon on the stand about whether such use was sufficient under the Lanham Act. (Trial Tr. 330:24-331:5 (Mar. 10, 2026).) But the question for purposes of a fraud claim is not whether opposing counsel agrees with the legal characterization of Mr. Runyon's actions – it is whether Mr. Runyon subjectively believed that the marks were in use at the time of the statement. *In re Bose Corp.*, 580 F.3d 1240, 1245 (Fed. Cir. 2009) ("Subjective intent to deceive… is an indispensable element in the analysis"). Impossible Foods offered no evidence that Mr. Runyon's belief was not

IMPOSSIBLE LLC'S MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FED R. CIV. P. 50(A)

genuine, nor any evidence that he intended to mislead or defraud the USPTO through his Statement of Use with respect to the IMPOSSIBLE FITNESS registrations.

With respect to the IMPOSSIBLE NUTRITION registration, Impossible Foods likewise failed to prove a knowingly false statement or intent to defraud. Impossible Foods questioned Mr. Runyon regarding this registration only briefly, during which Mr. Runyon provided unrebutted testimony that Impossible LLC "had been utilizing the IMPOSSIBLE NUTRITION Mark since we started," including at the time of the July 2024 Declaration of Use and Incontestability that Impossible Foods challenges here. (Trial Tr. 340:21-23 (Mar. 10, 2026).)

Impossible Foods's two attempts to find something false about the Declaration went nowhere. Impossible Foods first implied that Mr. Runyon had falsely declared that there was no "proceeding" then "pending" involving a challenge to the registration. (Trial Tr. 339:16-340:20 (Mar. 10, 2026).) Impossible Foods theorized that this was false because Impossible Foods had already asked for consent to amend its Complaint in this action to challenge the IMPOSSIBLE NUTRITION Registration at the time the Declaration was filed. (*Id.*) But Impossible Foods's timeline was wrong: Mr. Runyon submitted the declaration on July 12, 2024, and Impossible Foods did not even ask for Impossible LLC's consent to amend its Complaint until July 23, 2024, so Mr. Runyon's statement was undeniably true. (Trial Tr. 340:13-20 (Mar. 10, 2026).) Next, Impossible Foods attempted to imply that the Declaration was false because Impossible LLC originally sold krill oil supplements under the registration but had since discontinued that product and switched to sleep and energy supplements. (Trial Tr. 340:21-341:6 (Mar. 10, 2026).) This line of attack similarly failed because, as Mr. Runyon pointed out, the registration is for supplements generally and does not mention krill oil. (*Id.*) While the original "specimen" for the registration submitted in 2017 was a krill oil product, the specimens submitted with the July 12, 2024 Statement of Use were sleep and energy supplements, both of which were undisputedly in the market at that time. (Ex. 1271.) Having failed to identify any false statements, Impossible Foods abandoned its discussion of

the IMPOSSIBLE NUTRITION mark and did not raise the issue again. Accordingly, there is no evidence from which the jury could infer that Mr. Runyon made any knowingly false statement with respect to the IMPOSSIBLE NUTRITION registration, let alone that he did so intentionally to mislead the USPTO.

### C.    Impossible Foods Failed to Adduce Evidence of Damages

Impossible Foods's fraud claims also fail because Impossible Foods did not adduce any evidence of damages with respect to any registration. "[D]amages proximately caused by [the USPTO's] reliance" on the allegedly false statement are a requisite element of a fraud claim. *OTR*, 897 F.3d at 1019. Impossible Foods's sole theory of damages is that it was "obviously" injured because it is facing a lawsuit. (Trial Tr. 1056:8-17 (Mar. 16, 2026).) But Impossible Foods never attempted to prove any injury stemming from the lawsuit before the jury. It did not offer testimony from its corporate witnesses discussing the fact of the lawsuit, nor any testimony regarding the supposed impact of the lawsuit on Impossible Foods. Impossible Foods also did not attempt to explain how it could possibly have been injured from litigating this action when Impossible Foods chose to file suit preemptively against Impossible LLC and Mr. Runyon. And Impossible Foods also did not attempt to introduce evidence of its attorneys' fees or any other detriment associated with the lawsuit. With zero evidence of damages, it cannot maintain a fraud claim under *OTR*.

Even if Impossible Foods *had* offered evidence of attorneys' fees, that would still be insufficient to prove damages because paying attorneys to defend a trademark lawsuit does not establish "damages" from a challenged registration. *See Zobmondo Ent. LLC v. Falls Media LLC*, No. CV 06-3459, 2008 WL 6138835, at *11 (C.D. Cal. Aug. 11, 2008) (under analogous provision for "damages" from fraudulent registration, plaintiff's "attorney's fees for defending against [cross-claimant's] trademark claims" were insufficient to establish damages because "cases have concluded that attorney's fees are not properly a part of damages under section 38 of the Lanham Act"). Impossible Foods's argument that facing a lawsuit is sufficient to establish damages fails

because it conflates the type of interest necessary to establish constitutional standing with the type of injury necessary to prove damages under substantive law, but the two are not the same. *Cf. Cath. League for Religious & C.R. v. City & Cnty. of San Francisco,* 624 F.3d 1043, 1049 (9th Cir. 2010) ("standing analysis, which prevents a claim from being adjudicated for lack of jurisdiction, [cannot] be used to disguise merits analysis, which determines whether a claim is one for which relief can be granted if factually true"); *Milstead v. Gen. Motors LLC*, No. 21-CV-06338, 2023 WL 7284159, at *5 (N.D. Cal. Nov. 3, 2023) ("The requirements to allege standing are not the same as the requirements to plead injury under the substantive law").

### III.   NO REASONABLE JURY COULD FIND THAT CONFUSION IS LIKELY ON IMPOSSIBLE FOODS'S INFRINGEMENT CLAIMS

Impossible Foods's claim that Impossible LLC's sleep and energy supplements infringe Impossible Foods's registered and unregistered trademark rights in connection with plant-based meats fails because Impossible Foods failed to adduce evidence from which a reasonable jury could find that confusion between the products is likely. Instead, each of the *Sleekcraft* factors points decidedly in the direction of non-infringement. *See Lerner & Rowe PC v. Brown Engstrand & Shely LLC*, 119 F.4th 711, 718 (9th Cir. 2024) ("when no genuine issue of material fact exists, we have not hesitated to affirm a grant of summary judgment" on likelihood of confusion).

*Strength of the Marks*. Impossible Foods presented no evidence that its IMPOSSIBLE mark is strong among potential supplement consumers. Instead, the only evidence on this score was Caitlyn Hatman's admission that Impossible Foods has no trademark rights with respect to supplements and has never marketed products in that category. (Trial Tr. 607:6-22 (March 13, 2026).)

*Proximity of the Goods*. The goods are not proximate, as Impossible Foods's own witness, Ms. Hatman, testified that Impossible LLC's sleep and energy supplements and Impossible Foods's

IMPOSSIBLE LLC'S MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FED R. CIV. P. 50(A)

alternative meat products are in "different categories from one another." (Trial Tr. 607:11-13 (March 13, 2026).).

*No Actual Confusion*. The jury heard no evidence that any consumer has ever been confused by Impossible LLC's sleep and energy supplements, and Ms. Hatman testified there had been no actual confusion. (Trial Tr. 603:4-604:6 (March 13, 2026).). Instead, the only evidence in the record is that nutritional supplements are not confusingly similar to plant-based meats. (Trial Tr. 427:23-428:5 (March 10, 2026) (testimony by Nicholas Halla that he would never confuse powdered supplements for plant-based meats); Trial Tr. 606:16-23 (March 13, 2026); i*d.*, 607:6-10 (Hatman testimony that she did not "believe that there's anything confusing" about Impossible Foods's and Impossible LLC's products).)

*Defendant's Intent*. Impossible Foods presented no evidence that Mr. Runyon intended to adopt Impossible Foods's mark or associate himself with Impossible Foods. To the contrary, Mr. Runyon testified that he was the first adopter of the IMPOSSIBLE mark in 2010 and had no wish to be associated with Impossible Foods. (Trial Tr. 137:8-138:25 (March 9, 2026); *id.*, 213:4-214:14; *id.*, 214:24-215:1; *id.*, 215:4-5).)

*Likelihood of Expansion*. Impossible Foods did not demonstrate that Impossible Foods and Impossible LLC intend to expand into the same product categories. Indeed, Ms. Hatman admitted that Impossible Foods has no plans to expand into supplements. (Trial Tr. 607:14-22 (March 13, 2026).) And Mr. Runyon disavowed any interest or involvement in plant-based meats on the part of Impossible LLC. (Trial Tr. 213:4-214:14 (March 9, 2026); *id.*, 214:24-215:1; *id.*, 215:4-5).)

*Marketing Channels*. Impossible Foods failed to present evidence of overlapping marketing channels for the sleep and energy supplements and Impossible Foods's plant-based meat products. Instead, the evidence was that Impossible Foods's plant-based meat products are overwhelmingly sold at restaurants and brick-and-mortar grocery stores (Trial Tr. 616:25-619:3 (March 13, 2026)

IMPOSSIBLE LLC'S MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FED R. CIV. P. 50(A)

(Hatman)), while Impossible LLC sells supplements online. (Trial Tr. 164:17-167:3 (March 9, 2026) (Runyon).)

*Similarity of the Marks*. In analyzing the similarity of the marks factor, "[t]he marks must be considered in their entirety and as they appear in the marketplace." *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999). Here, Impossible Foods presented scant evidence of the manner in which it actually uses its mark in commerce. It did not even introduce its trademarks until the final day of trial, when a litigation paralegal took the stand to introduce various registrations and website screenshots. Other than briefly putting the three registrations into evidence, (*see* Exs. 1391, 1396, 1392), Impossible Foods adduced little evidence of how it uses the marks in commerce, such that the jury might compare the overall commercial impression of the parties' marks as they appear in the marketplace.

Taken together, the *Sleekcraft* factors demonstrate that Impossible Foods has failed to proffer evidence from which a jury could reasonably infer that confusion is likely between Impossible Foods's plant-based meat products and Impossible LLC's unrelated supplements. The Court should grant judgment as a matter of law in favor of Impossible LLC.

## **CONCLUSION**

For the foregoing reasons, the Court should grant judgment as a matter of law in favor of Impossible LLC on Impossible Foods's defense of abandonment, its claims for fraud on the USPTO, and its claims for trademark infringement and unfair competition.

Dated: March 18, 2026

Respectfully submitted,

BRAUNHAGEY & BORDEN LLP

By:  */s/ Adam S. Cashman*
     Adam S. Cashman

*Attorneys for Impossible LLC*

IMPOSSIBLE LLC'S MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FED R. CIV. P. 50(A)