G. ROXANNE ELINGS (*pro hac vice*)
roxanneelings@dwt.com
RAPHAEL HOLOSZYC-PIMENTEL (*pro hac vice*)
rhp@dwt.com
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 42nd Floor
New York, NY 10020
Telephone: (212) 489-8230
Facsimile: (212) 489-8340

SARAH E. BURNS (CA State Bar No. 324466)
sarahburns@dwt.com
DAVIS WRIGHT TREMAINE LLP
50 California Street, 23rd Floor
San Francisco, CA 94111
Telephone: (415) 276-6500
Facsimile: (415) 276-6599

Attorneys for Plaintiff/Counter-Defendant
IMPOSSIBLE FOODS INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IMPOSSIBLE FOODS INC., | Case No. 5:21-cv-02419-BLF |
| Plaintiff, | **IMPOSSIBLE FOODS INC.'S BRIEF REGARDING LACHES** |
| vs. | |
| IMPOSSIBLE X LLC, et al., | Judge:    Hon. Beth L. Freeman |
| Defendants. | |

IMPOSSIBLE FOODS INC.'S BRIEF REGARDING LACHES
Case No. 5:21-CV-02419-BLF (SVK)

## I.   INTRODUCTION

Evidence admitted at trial establishes that Impossible LLC's claims based on Impossible Foods' apparel—the only claims for which Impossible LLC seeks damages—are barred by laches. Mr. Runyon testified that he was aware of Impossible Foods' use of its logo in connection with apparel by 2015 or 2016 but did not assert claims until March 2024 when he filed counterclaims. That delay triggers a "strong presumption" of laches. The equities confirm that result. Accordingly, Impossible LLC's apparel claims are barred.

## II.   IMPOSSIBLE LLC'S APPAREL CLAIMS ARE BARRED BY LACHES

Laches is a "well established defense" to Lanham Act claims for both monetary damages and injunctive relief. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 997 (9th Cir. 2006). It applies equally to Impossible LLC's California unfair competition claims. *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 842-43 (9th Cir. 2002) (affirming application of laches to California state law claim for unfair competition).

Courts apply a two-step analysis. *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 878 (9th Cir. 2014). First, the court evaluates the length of the plaintiff's delay by reference to the most analogous statute of limitations. Second, the court evaluates whether applying laches is equitable. *Pinkette Clothing, Inc. v. Cosm. Warriors Ltd.*, 894 F.3d 1015, 1025 (9th Cir. 2018). A district court's application of laches is reviewed for abuse of discretion. *In re Beaty*, 306 F.3d 914, 921 (9th Cir. 2002); *World Nutrition Inc. v. Advanced Supplementary Techs. Corp.*, No. 24-4976, 2025 WL 2427613, at *1 (9th Cir. Aug. 22, 2025).

### A.   The Strong Presumption Of Laches Applies.

Because the Lanham Act does not contain a statute of limitations, courts borrow the most analogous state limitations period. *Jarrow*, 304 F.3d at 836. For trademark infringement and unfair competition claims under the Lanham Act, courts apply a four-year statute of limitations. *Glenn Miller,* 454 F.3d at 997 n.11, 986. Laches also applies to Impossible LLC's California law unfair competition claim. *Jarrow*, 304 F.3d at 842 (affirming application of laches to California state law claim for unfair competition); *Prudential Ins. Co. of America v. Gibraltar Fin. Corp. of*

1

*Cal.*, 694 F.2d 1150, 1155 (9th Cir.1982) (affirming application of laches to California state law claim for unfair competition).

Laches runs "from the time the plaintiff knew or should have known about its potential cause of action." *Pinkette Clothing, Inc.*, 894 F.3d at 1025 (citation omitted). When counterclaims are at issue, the relevant endpoint is when the counterclaims are filed, not when the original complaint was filed. *Tillamook Country Smoker, Inc. v. Tillamook Cnty. Creamery Ass'n*, 465 F.3d 1102, 1107 (9th Cir. 2006*)* (basing the end of counterclaimant's laches period on when counterclaims were filed rather than when plaintiff filed original complaint);

Here, Mr. Runyon plainly had *actual* knowledge of the alleged infringement by apparel by 2015 or 2016. He testified that he became aware of Impossible Foods, likely from a Google alert, "around 2015 or 2016." Tr. at 207:10-14. He further testified that he became aware of Impossible Foods' apparel "soon thereafter." *Id.* at 208:10-21. And, in response to a question from his counsel about whether the apparel Mr. Runyon had seen at that time used "the company's full name, Impossible Foods" or "sa[id] something else," 209:3-5, Mr. Runyon testified that it "just said the word 'IMPOSSIBLE' in a similar styling" to Impossible LLC's logo. *Id.* at 209:3-6. And he explained that, when he saw the apparel, he "thought it looked like our logo." *Id.* at 209:22-23. This is precisely the basis of Impossible LLC's infringement and unfair competition claims, Dkt. 241, and conclusively shows Mr. Runyon had actual knowledge of the alleged infringement by 2015 or 2016, between eight and nine years before Impossible LLC filed its first counterclaim, in 2024. Dkt. 80.

Despite that knowledge, Impossible LLC waited until 2024 to assert claims—eight or nine years later. That delay exceeds the four-year statute of limitations period. *Glenn Miller,* 454 F.3d at 997 n.11, 986. Thus, the strong presumption of laches applies. *Pinkette Clothing, Inc.*, 894 F.3d at 1025.

### B.     The Equities Strongly Favor Application of Laches.

In the second step of the laches analysis, the court analyzes the equities using the *E-Systems* factors. Those factors include: (1) "strength and value of trademark rights asserted;" (2)

2

IMPOSSIBLE FOODS INC.'S BRIEF REGARDING LACHES
Case No. 5:21-CV-02419-BLF (SVK)

"plaintiff's diligence in enforcing mark;" (3) "harm to senior user if relief denied;" (4) "good faith ignorance by junior user;" (5) "competition between senior and junior users;" and (6) "extent of harm suffered by junior user because of senior user's delay." *Pinkette,* 894 F.3d at 1015, citing *E-Sys., Inc. v. Monitek, Inc.*, 720 F.2d 604, 607 (9th Cir. 1983). All of the factors favor laches.

*First*, Impossible LLC's apparel business is minimal. Its own evidence shows "less than $100,000" over the company's entire 15-year existence. Tr. 807:20-21. Additionally, the extensive use of similar marks by third-party companies in the relevant industry further weakens Impossible LLC's mark. *See Miss World (UK) Ltd. v. Mrs. America Pageants, Inc.*, 856 F.2d 1445, 1449 (9th Cir. 1988), *abrogated in part on other grounds by Eclipse Assoc. Ltd. v. Data Gen. Corp.*, 894 F.2d 1114, 1116 n.1 (9th Cir.1990) (finding that "crowded field" of similar marks weighs against mark strength); Exs. 1153-1160; 1187, 1190, 1205, 1220, 1222, 1226-1227, 1230, 1232, 1234, 1236, 1238, 1240. *See also* Ex. 2181; Tr. 368:7-9 (trademark report returned hundreds of potential marks including 64 containing some version of the word impossible).

*Second*, and as discussed above, Impossible LLC's delay in asserting claims is not reasonable. *Pinkette Clothing, Inc.*, 894 F.3d at 1025 (presumption of laches applied where plaintiff waited five years to file trademark infringement suit); *Grupo Gigante SA De CV v. Dallo & Co.*, 391 F.3d 1088, 1102 (9th Cir. 2004) (four-year delay sufficient for laches); *Fitbug Ltd. v. Fitbit, Inc.*, 78 F. Supp. 3d 1180, 1193 (N.D. Cal. 2015) (same); *Worx4u2, Inc. v. Earthwhile Endeavors, Inc.*, 2022 WL 1601399, at *8 (C.D. Cal. Apr. 5, 2022) ("[b]ecause at least some of Defendants' allegedly wrongful conduct occurred outside the statute of limitations period, the Court will apply the presumption that Plaintiff's claims are barred by laches"); *Move Press, LLC v. Peloton Interactive, Inc.*, 2019 WL 4570018, at *4 (C.D. Cal. Sept. 5, 2019) (five year delay). This also weighs in favor of laches.

*Third*, Impossible LLC effectively admitted it suffered no harm as a result of the alleged infringement: it identified no lost sales or customers; it did not identify a single person who saw a piece of Impossible Foods apparel; it did not seek lost profits or disgorgement of Impossible Foods' (nonexistent) profits; and though Mr. Runyon testified in conclusory fashion that he

3

IMPOSSIBLE FOODS INC.'S BRIEF REGARDING LACHES
Case No. 5:21-CV-02419-BLF (SVK)

believed his "brand value" had diminished, he did not tie the diminishment to Impossible Foods' apparel or offer a current valuation of the brand. Tr. at 1031:10-1032:13. In fact, he testified that, despite the alleged diminishment in his brand value overall, "people still really like [Impossible LLC's] shirts." Tr. 1032:2-6. This factor weighs in favor of laches.

*Fourth*, Impossible Foods acted in good faith. At the time Impossible Foods chose the name of its company, it ran a full a trademark search for "Impossible." Ex. 2181. Though that search identified Impossible LLC, it showed that the company owned zero trademarks in the food space, which were the goods Impossible Foods planned to sell. Tr. at 366:9-16. Impossible Foods' general counsel therefore was not concerned about infringing Impossible LLC's trademarks. Tr. 369:13-370:6. Courts routinely find good faith in scenarios like this. For example, in *Kern v. Mindsource, Inc.*, 225 F.3d 663 (9th Cir. 2000) (unpublished), the Ninth Circuit found good faith because the defendant "determined that the businesses were separate and that use of the [at-issue] mark would not infringe on [plaintiff's] trademark." *Id.* at *3. That rule flows from the principal that "[a] trademark does not confer upon its owner a monopoly of a given word; rather the scope of a trademark's protection is to protect against use by others which is likely to cause confusion in the marketplace" and "[e]ven a precise identity of marks may not result in consumer confusion if the parties are in wholly different industries." *Id.* The same is true here.

*Fifth*, Impossible Foods and Impossible LLC do not compete. Impossible Foods sells plant-based meat products. Tr. at 608:9-15. Impossible LLC is a lifestyle brand built around athletics and doing challenging tasks. Its primary income is from consulting. Ex. 1399; Tr. at 857:19-22. The companies also do not compete in the apparel business, because Impossible Foods does not sell apparel at all. 428:13-18. Indeed, Impossible LLC's theory throughout trial was that the companies target different kinds of customers. *E.g*., Tr. 215:8-23; 705:11-706:5 (describing "incongruent attributes" between Impossible Foods customers and Impossible LLC customers).

*Finally*, the "extent of harm suffered by junior user because of senior user's delay," weighs heavily in Impossible Foods' favor. *E-Systems*, 720 F.2d at 607. Ninth Circuit courts have identified development of marketing strategies, continued operations, expenditures on marketing,

4

and taking steps to protect intellectual property rights as among the types of conduct that establish prejudice. *See, e.g.*, *San Miguel Pure Foods Co. v. Ramar Int'l Corp.*, 625 F. App'x 322, 326-27 (9th Cir. 2015) (enforcing laches defense and finding prejudice because "[i]f [plaintiff] had not delayed, [defendant] could have devoted the time and resources to develop an alternative brand and marketing strategy"); *Worx4u2,* 2022 WL 1601399, at *11 (prejudice shown where defendant "invested hundreds of thousands of dollars in developing and marketing"); *Saul Zaentz Co. v. Wozniak Travel, Inc.*, 627 F. Supp. 2d 1096, 1118 (N.D. Cal. 2008) (listing advertising budget, public relations and tv appearances as persuasive evidence of economic prejudice); *Fitbug*, 78 F. Supp. 3d at 1194 (holding that because Fitbit "has continued to build a valuable business around its trademark during the time that [Fitbug] delayed the exercise of its legal rights," it has suffered "expectation" or "economic prejudice").

Such is the case here. Impossible LLC's expert witness testified that Impossible Foods spent more than $1 million on apparel. Tr. at 764:7-8; 766:5-8. And Impossible Foods' witnesses testified that branded apparel was part of many different marketing campaigns, new hire packages, and investor outreach. *E.g.*, Tr. at 611:19-25; 422:2-10. The record also shows that Impossible Foods was capable of producing apparel items with visual identities that plainly were *not* infringing. *E.g.*, Exs. 298, 1319, 1320, 1322, 1324, 1329. As in *Jarrow*, "[i]f [Impossible LLC] had filed suit sooner, [Impossible Foods] could now have invested its resources" in those alternatives and in other marketing efforts. 304 F.3d at 839. Allowing Impossible LLC to lie in wait, consider its options for nearly decade, and *then* sue for damages based solely on Impossible Foods' own expenses, harms Impossible Foods much more than if Impossible LLC had sued when it initially learned about the apparel. Because this would be patently unfair to Impossible Foods, laches prevents it.

5

IMPOSSIBLE FOODS INC.'S BRIEF REGARDING LACHES
Case No. 5:21-CV-02419-BLF (SVK)

Respectfully submitted.


DATED: March 20, 2026                DAVIS WRIGHT TREMAINE LLP

By: */s/ G. Roxanne Elings*
    G. Roxanne Elings

    Attorneys for Plaintiff/Counter-Defendant
    IMPOSSIBLE FOODS INC.

6