# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

|  |  |
|---|---|
| IMPOSSIBLE FOODS INC., | Case No.   21-cv-02419-BLF |
| Plaintiff / Counter-Defendant, | |
| v. | **JURY INSTRUCTIONS** |
| IMPOSSIBLE LLC, | |
| Defendant / Counter-Plaintiff. | |

**IT IS SO ORDERED.**

Dated: Mar 18, 2026

_____
BETH LABSON FREEMAN
United States District Judge

# TABLE OF CONTENTS

| Number | Title | Page No. |
|--------|-------|----------|
| 2 | Duty of Jury | 1 |
| 2-a | Types of Trademarks | 2 |
| 3 | Duty of Jury | 3 |
| 4 | Claims and Defenses Summary | 4 |
| 5 | Burden of Proof—Preponderance of the Evidence | 5 |
| 6 | Burden of Proof—Clear and Convincing Evidence | 6 |
| 8 | What is Evidence | 7 |
| 9 | What is Not Evidence | 8 |
| 10 | Evidence for Limited Purpose | 9 |
| 11 | Direct and Circumstantial Evidence | 10 |
| 12 | Ruling on Objections | 11 |
| 13 | Credibility of Witness | 12 |
| 14 | Conduct of the Jury | 13 |
| 15 | Publicity During Trial | 15 |
| 16 | No Transcript Available to Jury | 16 |
| 17 | Taking Notes | 17 |
| 18 | Questions to Witnesses by Jurors During Trial | 18 |
| 19 | Bench Conferences and Recesses | 19 |
| 20 | Outline of Trial | 20 |
| 25 | Deposition in Lieu of Live Testimony | 21 |
| 30 | Expert Opinion Testimony | 22 |
| 31 | Charts and Summaries Not Received in Evidence | 23 |
| 32 | Charts and Summaries Received in Evidence | 24 |
| 34 | Duty to Deliberate | 25 |
| 36 | Communication with Court | 26 |
| 38 | Return of Verdict | 27 |
| 43 | Liability of Corporations—Scope of Authority Not in Issue | 28 |
| 43-a | Removal of Claims and Defenses | 29 |
| 44-a | Claims for Infringement of Registered Trademarks and Unregistered Trademarks | 30 |
| 45 | Preliminary Instruction—Trademark | 31 |
| 47 | Trademark Liability—Theories and Policies | 34 |
| 47-a | What Goods Are At Issue in Impossible LLC's Claims | 35 |
| 48-a | Elements—Trademark Infringement Claims by Impossible LLC | 36 |
| 48-b | Elements—Trademark Infringement Claims by Impossible Foods | 37 |
| 54 | Presumed Validity and Ownership—Registered Trademark | 38 |

| Number | Title | Page No. |
|--------|-------|----------|
| 51-a | Infringement—Elements—Ownership-Generally | 40 |
| 53 | Common Law Trademark Infringement—California Law on Impossible LLC's Claim | 41 |
| 53-a | Common Law Unfair Competition—California Law on Impossible Foods' Claim | 42 |
| 55 | Infringement—Elements—Validity—Unregistered Marks | 43 |
| 55-a | Infringement—Elements—Validity—Unregistered Marks—Distinctiveness | 44 |
| 56 | Infringement—Likelihood of Confusion—Factors—*Sleekcraft* Test | 48 |
| 58 | Trademark Infringement—Likelihood of Confusion—Factor—Strength of Trademark | 51 |
| 59 | Federal Law Unfair Competition—Elements | 52 |
| 59-a | Federal Law Unfair Competition—Elements | 53 |
| 61 | Willfulness | 54 |
| 66 | Defenses—Abandonment—Impossible Foods' Burden of Proof | 55 |
| 67 | Claims/Defenses—Fraud in Procurement—Impossible Foods' Burden of Proof | 56 |
| 54-a | Obtaining or Maintaining Trademark Registration | 57 |
| 61-a | Damages | 58 |
| 62 | Trademark Damages—Actual or Statutory Notice | 59 |
| 63 | Trademark Damages—Impossible LLC's Actual Damages | 60 |
| 64 | Damages—Corrective Advertising | 61 |
| 65-a | Punitive Damages—Liability | 62 |

**Instruction No. 2**

**Duty of Jury**

Members of the jury: You are now the jury in this case. It is my duty to instruct you on the law.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

At the end of the trial, I will give you final instructions. It is the final instructions that will govern your duties.

Please do not read into these instructions or anything I may say or do, that I have an opinion regarding the evidence or what your verdict should be.

## Instruction No. 2-a

### Types of Trademarks

As I previously told you, this case involves claims of trademark infringement. Both Impossible LLC and Impossible Foods claim that its trademark rights were violated by the other party.

There are two types of trademarks. First, there are registered trademarks which are trademarks for certain defined goods and services that are approved by the U.S. Patent and Trademark Office, also called the "USPTO." The USPTO issues registration certificates which can be used to protect the owner's rights. Second, there are also Common Law trademarks for goods and services used in commerce which are established through actual and first-time use of a distinctive mark in association with the sale or advertising of goods and services.

I will now give you detailed instructions on the law.

2

## Instruction No. 3

### Duty of Jury

Members of the Jury: Now that you have heard all of the evidence, it is my duty to instruct you on the law that applies to this case.

A copy of these instructions will be sent to the jury room for you to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

**Instruction No. 4**

**Claims and Defenses Summary**

To help you follow the evidence, I will give you a brief summary of the positions of the parties.

This case involves a dispute over trademark rights. The parties in this case are Impossible LLC and Impossible Foods Inc. Both Impossible LLC and Impossible Foods each argue that the other infringed its trademarks. Impossible LLC contends that Impossible Foods infringed its trademarks by offering Impossible-branded promotional apparel and a cookbook. Impossible Foods contends that Impossible LLC infringed its trademarks by offering Impossible-branded energy and sleep powders. Each side denies that it infringed. Impossible Foods also argues that some of Impossible LLC's trademarks were obtained by fraud or abandoned and therefore, those trademarks cannot be the basis for infringement claims. Impossible LLC denies these claims.

If you find in favor of Impossible LLC on its trademark infringement claims, you will decide whether it is entitled to compensatory damages, including damages for corrective advertising to address any consumer confusion caused by Impossible Foods. If you find for Impossible Foods, the Court will determine the remedy.

4

## Instruction No. 5

### Burden of Proof—Preponderance of the Evidence

When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

## Instruction No. 6

### Burden of Proof—Clear and Convincing Evidence

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true. This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.

**Instruction No. 8**

**What is Evidence**

The evidence you are to consider in deciding what the facts are consists of:

(1)    the sworn testimony of any witness;

(2)    the exhibits that are admitted into evidence;

(3)    any facts to which the lawyers have agreed; and

(4)    any facts that I may instruct you to accept as proved.

**Instruction No. 9**

**What is Not Evidence**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1)     Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they may say in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2)     Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3)     Testimony that is excluded or stricken, or that you are instructed to disregard, is not evidence and must not be considered. In addition, some evidence may be received only for a limited purpose; when I instruct you to consider certain evidence only for a limited purpose, you must do so, and you may not consider that evidence for any other purpose.

(4)     Anything you may see or hear when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

8

**Instruction No. 10**

**Evidence for Limited Purpose**

Some evidence may be admitted only for a limited purpose.

When I instruct you that an item of evidence has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

**Instruction No. 11**

**Direct and Circumstantial Evidence**

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned-on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

**Instruction No. 12**

**Ruling on Objections**

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered, or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

11

**Instruction No. 13**

**Credibility of Witness**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it. In considering the testimony of any witness, you may take into account:

(1)     the opportunity and ability of the witness to see or hear or know the things testified to;

(2)     the witness's memory;

(3)     the witness's manner while testifying;

(4)     the witness's interest in the outcome of the case, if any;

(5)     the witness's bias or prejudice, if any;

(6)     whether other evidence contradicted the witness's testimony;

(7)     the reasonableness of the witness's testimony in light of all the evidence; and

(8)     any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

12

### Instruction No. 14

### Conduct of the Jury

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty. Thus, until the end of the case or unless I tell you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, or computer, or any other electronic means, via email, text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, the platform "X" formerly known as Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media. This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last. But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the court.

Because you will receive all the evidence and legal instruction you properly may consider to return a verdict: do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it, although I have no information that there will be news reports about this case; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and

do not use the Internet or any other resource to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings. If any juror is exposed to any outside information, please notify the court immediately, by sending a note through the clerk signed by any one or more of you.

### Instruction No. 15

### Publicity During Trial

If there is any news media account or commentary about the case or anything to do with it, you must ignore it. You must not read, watch, or listen to any news media account or commentary about the case or anything to do with it. The case must be decided by you solely and exclusively on the evidence that will be received in the case and on my instructions as to the law that applies. If any juror is exposed to any outside information, please notify me immediately.

15

## Instruction No. 16

### No Transcript Available to Jury

I urge you to pay close attention to the trial testimony as it is given. During deliberations you will not have a transcript of the trial testimony.

**Instruction No. 17**

**Taking Notes**

If you wish, you may take notes to help you remember the evidence. If you do take notes, please keep them to yourself until you go to the jury room to decide the case. Do not let notetaking distract you. When you leave, your notes should be left in the courtroom. No one will read your notes.

Whether or not you take notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of other jurors.

**Instruction No. 18**

**Questions to Witnesses by Jurors During Trial**

Only the lawyers and I are allowed to ask questions of witnesses. A juror is not permitted to ask questions of witnesses. If, however, you are unable to hear a witness or a lawyer, please raise your hand and I will correct the situation.

**Instruction No. 19**

**Bench Conferences and Recesses**

From time to time during the trial, it may become necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury is present in the courtroom, or by calling a recess. Please understand that while you are waiting, we are working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we will do what we can to keep the number and length of these conferences to a minimum. I may not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

19

**Instruction No. 20**

**Outline of Trial**

Trials proceed in the following way: First, each side may make an opening statement. An opening statement is not evidence. It is simply an outline to help you understand what that party expects the evidence will show. A party is not required to make an opening statement.

Impossible LLC will then present evidence, and counsel for Impossible Foods may cross-examine. Then Impossible Foods will present evidence, and counsel for Impossible LLC may cross-examine.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.

After that, you will go to the jury room to deliberate on your verdict.

20

**Instruction No. 25**

**Deposition in Lieu of Live Testimony**

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded.

Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

**Instruction No. 30**

**Expert Opinion Testimony**

You will hear testimony from witnesses who will testify about their opinions and the reasons for those opinions. This opinion testimony is allowed, because of the specialized knowledge, skill, experience, training, or education of this witness.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it and give it as much weight as you think it deserves, considering the witness's specialized knowledge, skill, experience, training, or education, the reasons given for the opinion, and all the other evidence in the case.

**Instruction No. 31**

**Charts and Summaries Not Received in Evidence**

Certain charts and summaries not admitted into evidence may be shown to you to help explain the contents of books, records, documents, or other evidence in the case. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

23

**Instruction No. 32**

**Charts and Summaries Received in Evidence**

Certain charts and summaries may be admitted into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the testimony or other admitted evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

**Instruction No. 34**

**Duty to Deliberate**

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

**Instruction No. 34-b**

**Consideration of Evidence—Conduct of the Jury**

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations:

> Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, computer, or any other means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, the platform "X" formerly known as Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court. Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it, although I have no information that there will be news reports about this case; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses, or the lawyers— until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete, or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied

the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings. If any juror is exposed to any outside information, please notify the court immediately.

**Instruction No. 36**

**Communication with Court**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the clerk, signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

**Instruction No. 38**

**Return of Verdict**

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your presiding juror should complete the verdict form according to your deliberations, sign and date it, and advise the clerk that you are ready to return to the courtroom.

**Instruction No. 43**

**Liability of Corporations—Scope of Authority Not in Issue**

A corporation can only act through its employees, agents, directors, or officers. Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority. Joel Runyon is not a party to this case in his personal or individual capacity.

**Instruction No. 43-a**

**Removal of Claims and Defenses**

The following claims made by Impossible LLC are no longer at issue in this case:

1.    Claims for Federal Trademark Infringement and Federal Unfair Competition, solely with respect to the following federal registrations:

    a.  Reg. No. 4624158          b.  Reg. No. 5155646

    c.  Reg. No. 5179974          d.  Reg. No. 5376208

    e.  Reg. No. 5387588          f.  Reg. No. 5576376

    g.  Reg. No. 5590801          h.  Reg. No. 5603025

    i.  Reg. No. 6571603

2.    Claim for False Association.

3.    Claims for Unfair Competition and Common Law Trademark Infringement Under California Law, solely with respect to the stylized mark IMPOSSIBLE (rendered with a strikethrough): I̶M̶P̶O̶S̶S̶I̶B̶L̶E̶.

The following claims and defenses made by Impossible Foods are no longer at issue in this case:

1.    Claims for Federal Trademark Infringement, solely with respect to the following federal registrations:

    a.    Reg. No. 6211591;

    b.    Reg. No. 7249916;

    c.    Reg. No. 5370337.

2.    Claim for Cancellation of Trademark – Fraud in the Procurement, solely with respect to the following federal registration: Reg. No. 6571603.

3.    Claim for Cancellation of Trademark – Abandonment.

4.    Affirmative defense of abandonment solely as to Impossible LLC's asserted trademarks in connection with apparel.

Do not speculate as to why these claims and defenses are no longer involved in this case. You should not consider this during your deliberations.

**Instruction No. 44-a**

**Claims for Infringement of Registered Trademarks and Unregistered Trademarks**

In this case there are claims for infringement of registered trademarks and unregistered trademarks. The law treats them differently.

A registered trademark is approved by the U.S. Patent and Trademark Office and protected under federal statutes.

Unregistered trademarks are protected under federal and state law.

The differences are explained in later instructions.

## Instruction No. 45

### Preliminary Instruction—Trademark

Impossible LLC seeks damages against Impossible Foods for trademark infringement and unfair competition. Impossible Foods denies these claims. Impossible Foods is not seeking damages against Impossible LLC but seeks a finding that Impossible LLC committed trademark infringement and unfair competition. Impossible LLC denies these claims. To help you understand the evidence that has been presented in this case, I will explain some of the legal terms you have heard during this trial.

### DEFINITION AND FUNCTION OF A TRADEMARK

A trademark is a word, name, symbol, or device, or any combination of these items that indicates the source of goods. The owner of a trademark has the right to exclude others from using that trademark or a similar mark that is likely to cause confusion in the marketplace. The main function of a trademark is to identify and distinguish goods or services as the product of a particular manufacturer or merchant and to protect its goodwill.

### HOW A TRADEMARK IS OBTAINED--PRIORITY

In trademark law, priority of rights generally belongs to the party that first uses a trademark in commerce in connection with particular goods or services. The party with the earlier priority is referred to as the senior user, and a party who began using the mark later is referred to as the junior user. However, federal law also permits a party to file what is called an intent-to-use trademark application. If a party files an intent-to-use application and later begins lawful use of the mark in commerce and obtains a registration, the filing of that application can establish a priority date as of the application filing date, even if the mark was not yet in use at that time.

You must determine priority by considering both actual use in commerce and any constructive priority created by a valid intent-to-use filing, and you must evaluate priority in connection with the specific goods or services at issue in this case

### TRADEMARK INTERESTS

The owner of a trademark may transfer, give, or sell to another person the owner's interest in the trademark. This type of agreement is called an assignment, and the person who receives the

31

owner's interest is called an assignee and becomes the owner of the mark. An assignee has the right to exclude others from using the trademark or a similar mark that is likely to cause confusion in the marketplace. To be enforceable, the assignment must be in writing and signed. It must also include the goodwill of the business connected with the trademark.

The owner of a trademark may enter into an agreement that permits another person to use the trademark. This type of agreement is called a license, and the person permitted to use the trademark is called a licensee.

## TRADEMARK REGISTRATION

After the owner of a trademark has obtained the right to exclude others from using the trademark, the owner of a trademark may obtain a certificate of registration issued by the United States Patent and Trademark Office, also called the "USPTO." Thereafter, when the owner brings an action for infringement, the owner may rely solely on the registration certificate to prove that the owner has the right to exclude others from using the trademark or a similar mark that is likely to cause confusion in the marketplace in connection with the type of goods specified in the certificate. These presumptions in favor of the owner created by the certificate of registration can be overcome or rebutted by certain types of evidence that I will describe to you later as appropriate.

## LIKELIHOOD OF CONFUSION

To prove infringement, the party asserting the claim must prove, by a preponderance of the evidence, that the other party, without its consent, used in commerce a reproduction, copy, counterfeit, or colorable imitation of its mark in connection with the distribution or advertisement of goods or services, such that the allegedly infringing party's use of the mark is likely to cause confusion as to the source of the goods or services. It is not necessary that the mark used by the second party be an exact copy of the first party's mark. Rather, the first party must demonstrate that, viewed or heard in its entirety, the mark used by the second party is likely to cause confusion in the minds of reasonably prudent purchasers or users as to the source of the product in question.

## BURDEN OF PROOF

In this case, each side contends that the other has infringed its federally-registered trademark IMPOSSIBLE and other related registered and unregistered trademarks. The party asserting the claim has the burden of proving by a preponderance of the evidence that it is the owner of a valid trademark and that the other party infringed that trademark. Preponderance of the evidence means that you must be persuaded by the evidence that it is more probably true than not true that one party infringed the other party's trademark.

## IMPOSSIBLE FOODS' BURDEN OF PROOF ON ITS DEFENSES

Impossible Foods contends that certain of Impossible LLC's registered and unregistered trademarks are invalid, because they were obtained by fraud. Impossible Foods also alleges that Impossible LLC's unregistered trademark of IMPOSSIBLE was abandoned as to nutrition information and recipes. Impossible Foods has the burden of proving fraud and abandonment by clear and convincing evidence.

33

### Instruction No. 47

### Trademark Liability—Theories and Policies

Trademark laws balance three often-conflicting goals: (1) protecting the public from being misled about the nature and source of goods and services, so that the consumer is not confused or misled in the market; (2) protecting the rights of a business to identify itself to the public and its reputation in offering goods and services to the public; and (3) protecting the public interest in fair competition in the market.

The balance of these policy objectives varies from case to case, because they may often conflict. Accordingly, each case must be decided by examining its specific facts and circumstances, of which you are to judge.

In these instructions, I will identify types of facts you are to consider in deciding if one party is liable to the other for violating trademark law. These facts are relevant to whether one party is liable to the other for:

(1)    infringing a party's registered trademark rights, by using a trademark in a manner likely to cause confusion among consumers;

(2)    unfairly competing, by using a trademark in a manner likely to cause confusion as to the origin or quality of the party's goods.

HS

34

**Instruction No. 47-a**

**What Goods Are at Issue in Impossible LLC's Claims**

Impossible LLC does not allege infringement by Impossible Foods' use of the Impossible trademark in connection with plant-based meat products. In considering Impossible LLC's claims, you must consider only whether Impossible Foods' apparel and cookbooks infringe Impossible LLC's trademark rights.

**Instruction No. 48-a**

**Elements—Trademark Infringement Claims by Impossible LLC**

Impossible LLC claims trademark infringement of the following marks: Registration No. 4260617 for IMPOSSIBLE (in stylized form); and Registration No. 5620625 for IMPOSSIBLE.

On Impossible LLC's claim for trademark infringement, Impossible LLC has the burden of proving each of the following elements by a preponderance of the evidence as to each asserted trademark:

1. The asserted trademark is a valid, protectable trademark;

2. Impossible LLC owns the asserted trademark; and

3. Impossible Foods used a mark similar to the asserted trademark in interstate commerce; and

4. Impossible Foods used a mark similar to the asserted trademark without the consent of Impossible LLC in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the goods or services.

Each asserted trademark must be considered separately and in connection with the specific goods or services at issue. Your verdict may differ as to different trademarks or different goods or services.

If you find that each of the elements on which Impossible LLC has the burden of proof has been proved, your verdict on that asserted trademark should be for Impossible LLC. If, on the other hand, Impossible LLC has failed to prove any of these elements, your verdict on that asserted trademark should be for Impossible Foods.

**Instruction No. 48-b**

**Elements—Trademark Infringement Claims by Impossible Foods**

Separately, Impossible Foods also asserts a claim against Impossible LLC for trademark infringement of the following marks: Registration No. 5459255 for IMPOSSIBLE; Registration No. 7179385 for IMPOSSIBLE (in stylized form); and Registration No. 7401728 for IMPOSSIBLE.

On this claim, Impossible Foods has the burden of proving each of the following elements by a preponderance of the evidence as to each asserted trademark:

1. The asserted trademark is a valid, protectable trademark;

2. Impossible Foods owns the asserted trademark;

3. Impossible LLC used a mark similar to the asserted trademark in interstate commerce; and

4. Impossible LLC used a mark similar to the asserted trademark without the consent of Impossible Foods in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the goods.

Each asserted trademark must be considered separately and in connection with the specific goods or services at issue. Your verdict may differ as to different trademarks or different goods or services.

If you find that each of the elements on which Impossible Foods has the burden of proof has been proved, your verdict on that asserted trademark should be for Impossible Foods. If, on the other hand, Impossible Foods has failed to prove any of these elements, your verdict on that asserted trademark should be for Impossible LLC.

**Instruction No. 54**

**Presumed Validity and Ownership—Registered Trademark**

I previously instructed you that Impossible LLC must prove by a preponderance of the evidence that each of its marks is valid and that Impossible LLC owns each trademark. A valid trademark is a word, name, symbol, device, or any combination of these, that indicates the source of goods and distinguishes those goods from the goods of others. A trademark becomes protectable after it is used in commerce.

One way for the trademark owner to prove trademark validity is to show that the trademark is registered. An owner of a trademark may obtain a certificate of registration issued by the United States Patent and Trademark Office (which is also called the "USPTO") and may submit that certificate as evidence of the validity and protectability of the trademark in connection with the goods or services stated in the certificate and of the certificate holder's ownership of the trademark covered by that certificate.

A mark becomes incontestable as a matter of law if the mark is used for five continuous years in commerce in the United States following the registration date and not challenged. Where a registered mark has become incontestable, the registration is conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce.

In this case, Impossible LLC has submitted certain certificates of registration from the USPTO as proof of the validity and ownership of its trademarks. However, in this case, Impossible Foods argues that certain marks, and their incontestability status, are not evidence of the marks' validity or incontestability status because they were obtained by fraud.

With the written version of these instructions, you will be provided with the following summary chart identifying Impossible LLC's registered trademarks asserted in this action and indicating which registrations and marks Impossible Foods alleges are invalid in its defenses and claims:

38

| Mark | Registration No. | Categories of Goods and Services Claimed | Defenses/Claims Asserted |
|---|---|---|---|
| IMPOSSIBLE (stylized form) IMPOSSIBLE | 4260617 | "clothing, namely shirts, t-shirts, tank tops" and "providing a website featuring information in the field of personal fitness, endurance athletics, story telling, and adventure activities, namely, bungee jumping, skydiving, trekking, mountaineering, surfing and kite surfing" | No |
| IMPOSSIBLE | 5620625 | "Clothing and performance apparel, namely, t-shirts, and sweatshirts, pants, shorts, tank tops yoga pants, tights and underwear;" "Search engine optimization for promotion and marketing services; marketing consulting in the field of social media;" "Providing a website featuring information in the field of personal fitness, endurance athletics, storytelling, and adventure activities, namely, bungee jumping, skydiving, trekking, mountaineering, surfing, and kite surfing" | Fraud alleged as to registration. |

**Instruction No. 51-a**

**Infringement—Elements—Ownership—Generally**

In regard to unregistered trademarks, the law entitles the trademark owner to exclude others from using that trademark. A person acquires the right to exclude others from using a trademark by lawfully using it first in the marketplace or by lawfully using it before the alleged infringer. A person also acquires the right to exclude others from using a trademark if industry or public usage creates, for a majority of relevant consumers, an association between the person and the mark prior to the alleged infringer's use.

In regard to Impossible LLC's claims of infringement, if you find any of Impossible LLC's trademarks to be valid, that is, inherently distinctive, you must consider whether Impossible LLC used the mark as a trademark for Impossible LLC's apparel, nutrition information or recipes before Impossible Foods began to use the mark in connection with its apparel or cookbooks.

In regard to Impossible Foods' claims of infringement, if you find Impossible Foods' trademark to be valid, that is, inherently distinctive, you must consider whether Impossible Foods used the mark as a trademark for Impossible Foods' plant-based meat products before Impossible LLC began to use the mark in connection with its dietary supplements.

A trademark is "used" for purposes of this instruction when it is transported or sold in commerce and the trademark is attached to the product, or placed on its label or container, or if that is not practical, placed on documents associated with the goods or their sale.

40

**Instruction No. 53**

**Common Law Trademark Infringement—California Law on Impossible LLC's Claim**

Impossible LLC asserts a claim for trademark infringement under California law. Impossible LLC has the burden of proving each of the following elements by a preponderance of the evidence in regard to the unregistered asserted mark of: IMPOSSIBLE in connection with apparel, nutrition information or recipes:

1. The asserted trademark is valid;

2. Impossible LLC owns the trademark;

3. Impossible LLC made a continuing use of the trademark; and

4. Impossible Foods used the trademark in connection with apparel or cookbooks without the consent of Impossible LLC in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the goods.

41

**Instruction No. 53-a**

**Common Law Unfair Competition—California Law on Impossible Foods' Claim**

Impossible Foods asserts a claim for unfair competition under California law. Impossible Foods has the burden of proving each of the following elements by a preponderance of the evidence in regard to its unregistered IMPOSSIBLE mark in connection with plant-based meat products:

1. Impossible Foods' IMPOSSIBLE trademark is valid and protectable;

2. Impossible Foods owns the trademark; and

3. Impossible LLC used the trademark in connection with the sale of dietary supplements without the consent of Impossible Foods in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the goods.

**Instruction No. 55**

**Infringement—Elements—Validity—Unregistered Marks**

Unregistered trademarks can be valid and provide the trademark owner with the exclusive right to use that mark. The law requires a party asserting an unregistered mark to prove by a preponderance of the evidence that it also owns each asserted trademark separately from its federal registration. A valid trademark is a word, name, symbol, device, or any combination of these items that is inherently distinctive.

Only a valid trademark can be infringed. Only if you determine Impossible LLC proved by a preponderance of the evidence that an asserted unregistered trademark is valid should you consider whether Impossible LLC owns it and whether Impossible Foods' actions infringed it. Similarly, only if you determine Impossible Foods proved by a preponderance of the evidence that an asserted unregistered trademark is valid should you consider whether Impossible Foods owns it and whether Impossible LLC's actions infringed it.

**Instruction No. 55-a**

**Infringement—Elements—Validity—Unregistered Marks—Distinctiveness**

To determine if the party asserting an unregistered mark has met its burden of showing that the unregistered trademark is valid, you should classify it on the spectrum of trademark distinctiveness that I will explain in this instruction.

An inherently distinctive trademark is a word, symbol or device, or combination of them, which intrinsically identifies a particular source of a good in the market. The law assumes that an inherently distinctive trademark is one that almost automatically tells a consumer that it refers to a brand or a source for a product, and that consumers will be predisposed to equate the trademark with the source of a product.

**Spectrum of Marks**

Trademark law provides great protection to distinctive or strong trademarks. Conversely, trademarks that are not as distinctive or strong are called "weak" trademarks and receive less protection from infringing uses. Trademarks that are not distinctive are not entitled to any trademark protection. To decide trademark protectability, you must consider whether a trademark is inherently distinctive. Trademarks are grouped into five categories according to their relative strength or distinctiveness. These five categories are, in order of strength or distinctiveness: arbitrary (which is inherently distinctive), fanciful (also inherently distinctive), suggestive (also inherently distinctive), descriptive (which is protected only if it acquires in consumers' minds a "secondary meaning" ~~which I will explain in a later Instruction~~, and generic names (which are entitled to no protection).

**Arbitrary Trademarks**. The first category of trademarks is arbitrary trademarks. They are considered strong marks and are clearly protectable. They involve the arbitrary use of a word to designate the source of a product. Such a trademark is a word that in no way describes or has any relevance to the particular product it is meant to identify. It may be a common word used in an unfamiliar way.

For instance, the common word "apple" became a strong and inherently distinctive trademark when used by a company to identify the personal computers that company sold. The

44

company's use of the word "apple" was arbitrary because "apple" did not describe and was not related to what the computer was, its components, ingredients, quality, or characteristics. "Apple" was being used in an arbitrary way to designate for consumers that the computer comes from a particular manufacturer or source.

**Fanciful (or Coined) Trademarks**. The next category is fanciful (or coined) trademarks. These trademarks are also inherently distinctive and have the same level of strength as arbitrary marks. They are therefore automatically protectable. Fanciful trademarks involve the use of a fanciful or fictitious word to designate the source of a product. Such a trademark is a word that in no way describes or has any relevance to the particular product it is meant to identify. It is a newly created (coined) word, which is used solely as a trademark. For instance, the fanciful trademark "Google" is a strong and inherently distinctive trademark, identifying a prominent technology company. "Google" is a coined word that had no meaning or application prior to its use as the name of this company.

**Suggestive Trademarks**. The third category is suggestive trademarks. These trademarks are inherently distinctive but are considered weaker than arbitrary and fanciful trademarks. Unlike arbitrary trademarks, which are in no way related to what the product is or its components, quality, or characteristics, suggestive trademarks imply some characteristic or quality of the product to which they are attached. If the consumer must use imagination or any type of multi-stage reasoning to understand the trademark's significance, then the trademark does not describe the product's features, but merely suggests them.

A suggestive use of a word involves consumers associating the qualities the word suggests to the product to which the word is attached. For example, when "apple" is used not to indicate a certain company's computers, but rather "Apple–A–Day" Vitamins, it is being used as a suggestive trademark. "Apple" does not describe what the vitamins are. However, consumers may come to associate the healthfulness of "an apple a day keeping the doctor away" with the supposed benefits of taking "Apple–A–Day" Vitamins.

**Descriptive Trademarks**. The fourth category is descriptive trademarks. These  . trademarks directly identify or describe some aspect, characteristic, or quality of the product to

which they are affixed in a straightforward way that requires no exercise of imagination to be understood.

For instance, the word "apple" is descriptive when used in the trademark "CranApple" to designate a cranberry-apple juice. It directly describes ingredients of the juice. Other common types of descriptive trademarks identify where a product comes from, or the name of the person who makes or sells the product. Thus, the words "Apple Valley Juice" affixed to cider from the California town of Apple Valley is a descriptive trademark because it geographically describes where the cider comes from. Similarly, a descriptive trademark can be the personal name of the person who makes or sells the product. So, if a farmer in Apple Valley, Judy Brown, sold her cider under the label "Judy's Juice" (rather than "Apple Valley Juice") she is making a descriptive use of her personal name to indicate and describe who produced the apple cider.

**Generic Names**. The fifth and final category is entitled to no protection at all. They are called generic terms and are the names of a product, as opposed to a term that designates the source of a product. Generic names are part of our common language that we need to identify all such similar products. A generic name is a name for the product on which it appears.

If the primary significance of the alleged mark is to name the type of product rather than the manufacturer, the term is a generic name and cannot be a valid trademark. If the majority of relevant consumers would understand the term to name the type of product rather than the manufacturer, the primary significance of the term is generic and not entitled to protection as a trademark.

The word "apple" can be used as a generic name and not be entitled to any trademark protection. This occurs when the word is used to identify the fruit from an apple tree.

The computer maker who uses the word "apple" as a trademark to identify its personal computer, or the vitamin maker who uses that word as a trademark on vitamins, has no claim for trademark infringement against the grocer who used that same word to indicate the fruit sold in a store. As used by the grocer, the word is generic and does not indicate any particular source of the product. As applied to the fruit, "apple" is simply a commonly used name for what is being sold.

46

## Mark Distinctiveness and Validity

If you decide that a party's trademark is arbitrary or suggestive, it is considered inherently distinctive. An inherently distinctive trademark is valid and protectable.

On the other hand, if you determine that a party's trademark is generic, it cannot be distinctive and therefore is not valid nor protectable. You must render a verdict for the party accused of infringing that mark on the charge of infringement.

If you decide that the party's trademark is descriptive, you will not know if the trademark is valid or invalid until you consider whether it has gained distinctiveness by the acquisition of secondary meaning, which I explain in another instruction. Neither party contends that any mark is merely descriptive.

47

## Instruction No. 56

### Infringement—Likelihood of Confusion—Factors—*Sleekcraft* Test

Impossible LLC asserts that IMPOSSIBLE is a registered and unregistered trademark for its goods and services. Impossible Foods asserts that IMPOSSIBLE is a registered and unregistered trademark for its goods. Each party alleges that the other party has infringed its registered and unregistered trademark.

On each claim, you must consider whether a reasonably prudent consumer in the marketplace is likely to be confused as to the source, sponsorship, or affiliation of the goods or services at issue.

I will suggest some factors you should consider. You should not focus on any one factor to resolve whether there was a likelihood of confusion, because you must consider all relevant evidence. As you consider the likelihood of confusion you should examine the following:

(1)     Strength or Weakness of Impossible LLC's Mark. The more distinctive Impossible LLC's mark is and the more the consuming public recognizes Impossible LLC's trademark as an indication of origin of Impossible LLC's goods and services, the more likely it is that consumers would be confused about the source of Impossible Foods' goods if Impossible Foods uses a similar mark.

(2)     Strength or Weakness of Impossible Foods' Mark. The more the consuming public recognizes Impossible Foods' trademark as an indication of origin of Impossible Foods' goods and services, the more likely it is that consumers would be confused about the source of Impossible LLC's goods and services if they are marketed under a similar mark.

(3)     Use of the Mark. If Impossible Foods and Impossible LLC use their trademarks on the same, related, or complementary kinds of goods, there may be a greater likelihood of confusion about the source of the goods than otherwise.

(4)     Similarity of Impossible LLC's and Impossible Foods' Marks. If the overall impression created by Impossible LLC's and Impossible Foods' trademarks in the marketplace is similar in appearance, sound, or meaning, there is a greater chance

that consumers are likely to be confused by Impossible Foods' use of a mark. Similarities in appearance, sound, or meaning weigh more heavily than differences in finding the marks are similar.

(5)   Actual Confusion. If use by one party of the other's trademark on the allegedly infringing goods has led to instances of actual confusion, this strongly suggests a likelihood of confusion. However, actual confusion is not required for a finding of likelihood of confusion. Even if actual confusion did not occur, the junior user's use of the trademark may still be likely to cause confusion. As you consider whether the trademark use creates for consumers a likelihood of confusion, you should weigh any instances of actual confusion against the opportunities for such confusion. If the instances of actual confusion have been relatively frequent, you may find that there has been substantial actual confusion. If, by contrast, there is a very large volume of sales, but only a few isolated instances of actual confusion you may find that there has not been substantial actual confusion.

(6)   Intent. Knowing use by the junior user of the senior user's trademark to identify similar goods may strongly show an intent to derive benefit from the reputation of the senior user's mark, suggesting an intent to cause a likelihood of confusion. On the other hand, even in the absence of proof that the junior user acted knowingly, the use of the senior user's trademark to identify similar goods may indicate a likelihood of confusion.

(7)   Marketing/Advertising Channels. If Impossible LLC's and Impossible Foods' goods and services are likely to be sold in the same or similar stores or outlets, or advertised in similar media, this may increase the likelihood of confusion.

(8)   Consumer's Degree of Care. The more sophisticated the potential buyers of the goods or the more costly the goods, the more careful and discriminating the reasonably prudent purchaser exercising ordinary caution may be. They may be less likely to be confused by similarities in Impossible LLC's and Impossible Foods' trademarks.

(9)    Product Line Expansion. When the parties' products differ, you may consider how likely one party is to begin selling the products for which the other party is using its trademark. If there is a strong possibility of expanding into the other party's market, there is a greater likelihood of confusion.

## Instruction No. 58

**Trademark Infringement—Likelihood of Confusion—Factor—Strength of Trademark**

As I have instructed you, one factor to consider in determining likelihood of confusion is the strength of each party's marks. The strength of the trademark is determined by its distinctiveness and recognition in the marketplace. How strongly each party's trademark indicates that the goods or services come from a particular source is an important factor to consider in determining likelihood of confusion.

### The Strength of Marks

The strength of a trademark is determined by its distinctiveness and recognition in the marketplace. The stronger a mark is, the greater the scope of protection the law provides. Measuring the strength of a trademark requires two steps.

First, consider its **conceptual strength**. This is where the mark is placed on the spectrum of distinctiveness of marks. This was discussed before, in Instruction No. 55-a.

Second, consider the trademark's **commercial strength**. This is how much marketplace recognition the mark has.

**Commercial Strength**: What is "commercial strength?" Not all marks are equally well known.

Commercial strength refers to the marketplace recognition of the mark. A mark may be commercially strong if it is widely known and recognized by consumers in the relevant market. Evidence relevant to commercial strength may include the length and manner of use of the mark, the amount and manner of advertising, the volume of sales, and the degree of actual recognition by consumers, and any media coverage or publicity relating to the mark. You should evaluate the strength of the mark in relation to the goods or services at issue in this case. The strength of a mark in one category of goods or services does not necessarily make it strong in other categories.

Commercial strength can transform a mark that is not conceptually strong into a strong mark.

51

**Instruction No. 59**

**Federal Law Unfair Competition—Elements**

On Impossible LLC's claim for unfair competition under federal law, Impossible LLC has the burden of proving each of the following elements by a preponderance of the evidence as to the unregistered trademark IMPOSSIBLE in connection with apparel, nutrition information, and recipes:

1. The asserted trademark is a valid, protectable trademark;

2. Impossible LLC owns the trademark; and

3. Impossible Foods used the trademark without the consent of Impossible LLC in connection with apparel or cookbooks in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the parties' goods or services.

**Instruction No. 59-a**

**Federal Law Unfair Competition—Elements**

On Impossible Foods' claim for unfair competition under federal law, Impossible Foods has the burden of proving each of the following elements by a preponderance of the evidence as to the unregistered trademark IMPOSSIBLE in connection with plant-based meat products:

1. The asserted trademark is a valid, protectable trademark;

2. Impossible Foods owns the trademark; and

3. Impossible LLC used the trademark in connection with dietary supplements without the consent of Impossible Foods in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the supplements.

**Instruction No. 61**

**Willfulness**

If you find that Impossible Foods has infringed Impossible LLC's trademark or unfairly competed with Impossible LLC, you must also determine whether Impossible LLC has proven by a preponderance of the evidence that Impossible Foods' conduct was "willful."

Willfulness means that Impossible Foods engaged in the infringing conduct with knowledge that its use of the mark was likely to infringe Impossible LLC's trademark rights, or with reckless disregard for whether its conduct infringed those rights. Reckless disregard means that Impossible Foods was aware of a substantial risk that its conduct was infringing and proceeded anyway.

Willfulness requires more than negligence, mistake, or carelessness. A good-faith belief that the use of the mark was lawful is inconsistent with willfulness.

In determining willfulness, you may consider whether Impossible Foods knew of Impossible LLC's trademark rights and nevertheless used the mark in connection with the same or confusingly similar goods or services, or whether it deliberately avoided learning facts that would have confirmed a high probability of infringement.

If you determine that any infringement or unfair competition was willful, you may not allow that decision to affect the amount of any damages that you give for infringement. That decision is made by the Court.

You must evaluate willfulness only with respect to the specific uses of the mark that you have found to be infringing in this case.

**Instruction No. 66**

**Defenses—Abandonment—Impossible Foods' Burden of Proof**

The owner of a trademark cannot exclude others from using the trademark if it has been abandoned.

Impossible Foods contends that Impossible LLC's unregistered trademark of IMPOSSIBLE has become unenforceable in connection with nutrition information and recipes because Impossible LLC abandoned the trademark. Impossible Foods has the burden of proving abandonment by clear and convincing evidence.

The owner of a trademark abandons the right to exclusive use of the trademark when the owner discontinues its good faith use in the ordinary course of trade, intending not to resume using it. Evidence of non-use of the trademark for three consecutive years creates a rebuttable presumption of abandonment. If Impossible Foods proves three consecutive years of non-use, the burden shifts to Impossible LLC to go forward with evidence to prove that circumstances do not justify the inference of intent not to resume use.

**Instruction No. 67**

**Claims/Defenses—Fraud in Procurement—Impossible Foods'**

**Burden of Proof**

Impossible Foods contends that four of Impossible LLC's trademark registrations are not valid because they were procured or maintained by fraud. The registrations being challenged in this manner are Registration No. 5590801 for IMPOSSIBLE FITNESS in stylized form, Registration No. 5603025 for IMPOSSIBLE FITNESS in non-stylized form, Registration No. 5620625 for IMPOSSIBLE in connection with certain apparel items including pants, shorts, yoga pants, tights, and underwear. Impossible Foods also contends that Impossible LLC's Registration No. 5387588 for IMPOSSIBLE NUTRITION is not valid because the incontestability status of the registration was procured by fraud.

Impossible Foods has the burden of proving fraud by clear and convincing evidence. Impossible Foods must prove that:

1. Impossible LLC made a false representation regarding a material fact to the USPTO;

2. Impossible LLC knew or believed that the representation was false;

3. Impossible LLC intended to induce reliance upon the misrepresentation;

4. The USPTO actually relied on the misrepresentation in issuing the registration; and

5. Impossible Foods suffered damages caused by the misrepresentations.

A false statement resulting from mistake, inadvertence, or negligence does not constitute fraud.

Intent to deceive the USPTO may not be presumed and must be proven by clear and convincing evidence.

If Impossible Foods proves each of these elements by clear and convincing evidence, then the trademark registration is unenforceable.

If Impossible Foods fails to prove any one of these elements, then you must find that the trademark registration was not procured by fraud.

56

**Instruction 54-a**

**Obtaining and Maintaining Trademark Registrations**

In a trademark or service mark application based on use in commerce, the mark must be in use in commerce on or in connection with all the goods and services listed in the application as of the application filing date. The application must include a statement that the mark is in use in commerce, verified in an affidavit or declaration under penalty that willful false statements and the like are punishable by fine or imprisonment, or both, and that such willful false statements and the like may jeopardize the validity of the application or submission or any registration resulting therefrom.

In a trademark or service mark application based on "intent-to-use" in commerce, the application must include a verified statement that the applicant has a bona fide intention to use the mark in commerce on or in connection with the goods or services listed in the application as of the application filing date. Prior to registration, the applicant must use the mark in commerce on or in connection with all the goods or services specified in the application and file a amendment to allege use under or a statement of use, verified in an affidavit or declaration under penalty that willful false statements and the like are punishable by fine or imprisonment, or both, and that such willful false statements and the like may jeopardize the validity of the application or submission or any registration resulting therefrom.

To constitute use in commerce, such use must be in the ordinary course of trade, and not made merely to reserve a right in a mark.

57

**Instruction No. 61-a**

**Damages**

It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If you find for Impossible LLC on its claims for trademark infringement or unfair competition, you must determine Impossible LLC's damages. Impossible LLC has the burden of proving damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate Impossible LLC for any injury you find was caused by Impossible Foods. You should consider the following types of damages, which will be explained in the following instructions: Actual Damages for Corrective Advertising.

It is for you to determine what damages, if any, have been proved.

Your award must be based upon evidence and not upon speculation, guesswork, or conjecture.

Impossible LLC is not required to provide an exact calculation or formula in order to recover damages.

Impossible Foods is not seeking an award of damages from the jury.

**Instruction No. 62**

**Trademark Damages—Actual or Statutory Notice**

In order for Impossible LLC to recover damages for infringement of a registered trademark, Impossible LLC has the burden of proving by a preponderance of the evidence that Impossible Foods had either statutory or actual notice that Impossible LLC's trademark was registered.

Impossible Foods had statutory notice if:

1. Impossible LLC displayed the trademark with the words "Registered in U.S. Patent and Trademark Office"; or

2. Impossible LLC displayed the trademark with the words "Reg. U.S. Pat. & Tm. Off."; or

3. Impossible LLC displayed the trademark with the letter R enclosed within a circle, thus ®.

**Instruction No. 63**

**Trademark Damages—Impossible LLC's Actual Damages**

If you find for Impossible LLC on Impossible LLC's claims for trademark infringement or unfair competition, you must determine Impossible LLC's actual damages, if any.

Impossible LLC has the burden of proving that it sustained actual damages by a preponderance of the evidence. If you find that Impossible LLC proved actual damages, you may make reasonable inferences from the evidence to calculate the amount of damages. Damages means the amount of money which will reasonably and fairly compensate Impossible LLC for any injury you find was caused by Impossible Foods' infringement of Impossible LLC's trademark, or unfair competition.

You should consider the following:

1. The injury to the value of Impossible LLC's trademarks, including injury to Impossible LLC's general business goodwill;

2. The expense of preventing customers from being deceived; and

3. The cost of future corrective advertising reasonably required to correct any public confusion caused by the infringement.

When considering prospective costs (e.g., cost of future advertising, expense of preventing customers from being deceived), you must not overcompensate. Accordingly, your award of such future costs should not exceed the actual damage to the value of Impossible LLC's mark at the time of the infringement by Impossible Foods.

60

**Instruction No. 64**

**Damages—Corrective Advertising**

Impossible LLC is entitled to recover the cost of any future corrective advertising reasonably required to repair injury to Impossible LLC's goodwill caused by Impossible Foods' infringement. This includes the amounts Impossible LLC would be required to spend in the future to dispel the confusion caused by Impossible Foods' infringement. An award of corrective advertising is intended to allow Impossible LLC to recover the cost of advertising undertaken to restore the value Impossible LLC's trademark has lost due to Impossible Foods' infringement, including the amount Impossible LLC would be required to spend in the future to dispel the confusion caused by Impossible Foods' infringement. You should award corrective advertising damages only to the extent that the amount of money needed for corrective advertising does not exceed the damage to the value of Impossible LLC's trademarks.

In measuring harm to goodwill, you may consider Impossible LLC's costs and expenditures in building that goodwill, evidence of damage to Impossible LLC's goodwill among consumers, and evidence of a decline in Impossible LLC's business attributable to Impossible Foods' infringement. Impossible LLC is not required to provide an exact calculation of these amounts. You should measure these damages by making a fair and reasonable assessment based on reasonable inferences from the evidence presented. The burden of any uncertainty in the amount of damages should be borne by Impossible Foods.

**Instruction No. 65-a**

**Punitive Damages—Liability**

If you find for Impossible LLC on its claim for trademark infringement under California law and you decide that Impossible Foods' conduct caused Impossible LLC harm, you must decide whether that conduct justifies an award of punitive damages. The amount, if any, of punitive damages will be an issue decided later.

At this time, you must decide whether Impossible LLC has proved that Impossible Foods engaged in that conduct with malice, oppression, or fraud. To do this, Impossible LLC must prove one of the following by clear and convincing evidence:

1.  That the conduct constituting malice, oppression, or fraud was committed by one or more officers, directors, or managing agents of Impossible Foods who acted on behalf of Impossible Foods; or

2.  That the conduct constituting malice, oppression, or fraud was authorized by one or more officers, directors, or managing agents of Impossible Foods; or

3.  That one or more officers, directors, or managing agents of Impossible Foods knew of the conduct constituting malice, oppression, or fraud and adopted or approved that conduct after it occurred.

"Malice" means that Impossible Foods acted with intent to cause injury or that Impossible Foods' conduct was despicable and was done with a willful and knowing disregard of the rights or safety of another. A party acts with knowing disregard when it is aware of the probable dangerous consequences of its conduct and deliberately fails to avoid those consequences.

"Oppression" means that Impossible Foods' conduct was despicable and subjected Impossible LLC to cruel and unjust hardship in knowing disregard of its rights.

"Despicable conduct" is conduct that is so vile, base, or contemptible that it would be looked down on and despised by reasonable people.

"Fraud" means that Impossible Foods intentionally misrepresented or concealed a material fact and did so intending to harm Impossible LLC.

An employee is a "managing agent" if the employee exercises substantial independent authority and judgment in corporate decision making such that the employee's decisions ultimately determine corporate policy.

## Instruction No. 41

### Continuing Deliberations After Juror is Discharged

[One] [Some] of your fellow jurors [has] [have] been excused from service and will not participate further in your deliberations. You should not speculate about the reason the [juror is] [jurors are] no longer present.

You should continue your deliberations with the remaining jurors. Do not consider the opinions of the excused [juror] [jurors] as you continue deliberating. All the previous instructions given to you still apply, including the requirement that all the remaining jurors unanimously agree on a verdict.

30