J. Noah Hagey, Esq. (SBN: 262331)
  hagey@braunhagey.com
Adam S. Cashman, Esq. (SBN: 255063)
  cashman@braunhagey.com
Greg Washington, Esq. (SBN: 318796)
  gwashington@braunhagey.com
J. Tobias Rowe, Esq. (SBN: 305596)
  rowe@braunhagey.com
Oliver McNicholas, Esq. (SBN: 363554)
  omcnicholas@braunhagey.com
BRAUNHAGEY & BORDEN LLP
747 Front Street, 4th Floor
San Francisco, CA 94111
Telephone: (415) 599-0210

Marissa R. Benavides (*pro hac vice* admission)
  benavides@braunhagey.com
BRAUNHAGEY & BORDEN LLP
200 Madison Avenue, 23rd Floor
New York, NY 10016
Telephone: (646) 829-9403

*Attorneys for Impossible LLC*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| IMPOSSIBLE FOODS INC., <br><br> Plaintiff / Counter-Defendant, <br><br> v. <br><br> IMPOSSIBLE LLC, <br><br> Defendant / Counter-Plaintiff. | Case No. 5:21-cv-02419-BLF (SVK) <br><br> **IMPOSSIBLE LLC'S MOTION FOR POST-TRIAL RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> **Judge:** Hon. Beth Labson Freeman <br> **Date:** April 23, 2026 <br> **Time:** 9:00 a.m. |

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on April 23, 2026 at 9:00 a.m., or as soon as thereafter as the matter may be heard by the Honorable Beth Labson Freeman in the United States District Court, Northern District of California, located at the United States District Court, 280 South 1st Street, San Jose, CA 95113, Courtroom 1, 5th Floor, Defendant/Counter-claimant Impossible LLC ("Impossible LLC") will and hereby does move this Court for an Order (1) determining that Impossible LLC is entitled to an award of attorneys' fees pursuant to 15 U.S.C. § 1117(a); (2) awarding enhanced damages pursuant to 15 U.S.C. § 1117(a); (3) entering a permanent injunction to prevent further infringement by Plaintiff/Counter-defendant Impossible Foods, Inc. ("Impossible Foods"); and (4) entering judgment on Impossible LLC's Fourth Claim for Relief for denial of Impossible LLC's Trademark Application Serial No. 88855875.

This Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the accompanying proposed permanent injunction, the Declarations of Joel Runyon, Marissa Benavides, and David E. Weslow, the exhibits attached thereto, the trial proceedings and evidence in this action, the files and records in this action, and upon any further evidence and argument that the Court may receive at or before the hearing.

Dated: April 9, 2026

Respectfully submitted,

BRAUNHAGEY & BORDEN LLP

By: */s/ Adam S. Cashman*
       Adam S. Cashman

IMPOSSIBLE LLC'S MOTION FOR POST-TRIAL RELIEF

**TABLE OF CONTENTS**

TABLE OF CONTENTS ...........................................................................................................i-ii

TABLE OF AUTHORITIES ...............................................................................................iii-vi

INTRODUCTION ................................................................................................................. 1

RELEVANT BACKGROUND .............................................................................................. 2

    A.    Impossible Foods Willfully Infringes Impossible LLC's Trademarks................... 2

    B.    Impossible Foods Sues Impossible LLC and Joel Runyon .................................. 2

    C.    Impossible Foods Prolongs Litigation and Fails to Substantiate its Claims........... 3

        1.    Impossible Foods Persists with Infringement Claims without Evidence..... 4

        2.    Impossible Foods Persists with Its Fraud Claims Without Evidence .......... 4

        3.    Impossible Foods Delays Resolution of the Case ..................................... 5

        4.    Impossible Foods Deletes Relevant Evidence. ........................................ 6

        5.    Impossible Foods Initiates Duplicative Legal Proceedings. ....................... 6

    D.    Impossible LLC Prevails at Trial.......................................................................... 7

ARGUMENT....................................................................................................................... 7

I.    THE COURT SHOULD AWARD IMPOSSIBLE LLC ITS REASONABLE ATTORNEYS' FEES AND COSTS.............................................................................. 7

    A.    Impossible Foods's Willful, Oppressive, Fraudulent, and Malicious Conduct Warrants a Fee Award ..................................................................................... 8

    B.    Impossible Foods's Claims and Defenses Were Exceptionally Weak .................. 9

        1.    Impossible Foods's Defenses to Infringement Were Exceptionally Weak.. 9

   2. Impossible Foods's Infringement Claims Were Exceptionally Weak ....... 10

   3. Impossible Foods's Fraud Claims Were Baseless ................................... 11

 C. Impossible Foods's Litigation of the Case Was Unreasonable ........................... 13

 D. Motivation and Deterrence Favor a Fee Award .................................................... 14

 E. Compensation Favors a Fee Award .................................................................... 14

II. THE COURT SHOULD AWARD ENHANCED DAMAGES TO COMPENSATE
IMPOSSIBLE LLC AND PREVENT UNJUST ENRICHMENT .................................. 15

 A. The Court Should Enhance the Jury's Damages Award for Apparel .................. 15

 B. The Court Should Award Damages for the Infringing Cookbooks ...................... 16

 C. The Court Should Enhance Damages to Avoid Unjust Enrichment ..................... 17

III. THE COURT SHOULD ENJOIN IMPOSSIBLE FOODS FROM INFRINGEMENT .. 17

 A. Impossible LLC Faces Irreparable Harm ............................................................ 18

 B. Impossible LLC Lacks an Adequate Remedy at Law .......................................... 19

 C. The Balance of the Equities Strongly Favors an Injunction ................................ 19

 D. The Public Interest Favors an Injunction ............................................................. 19

IV. THE COURT SHOULD ENTER JUDGMENT ON IMPOSSIBLE LLC'S FOURTH
CLAIM FOR RELIEF ............................................................................................... 20

CONCLUSION ....................................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**PAGES**

**CASES**

*Anhing Corp. v. Thuan Phong Co. Ltd.*,
2015 WL 4517846 (C.D. Cal. July 24, 2015)...............................................................20

*BBK Tobacco & Foods LLP v. Cent. Coast Agric., Inc.*,
97 F.4th 668 (9th Cir. 2024) ..........................................................................................21

*Bell v. Oakland Cmty. Pools Project, Inc.*,
2020 WL 13695114 (N.D. Cal. Oct. 14, 2020) ..............................................12, 13, 15

*Bittorrent, Inc. v. Bittorrent Mktg. GMBH*,
2014 WL 5773197 (N.D. Cal. Nov. 5, 2014) ...................................................................9

*Blackberry Ltd. v. Typo Prods. LLC*,
2014 WL 1318689 (N.D. Cal. Mar. 28, 2014) ...............................................................19

*Brighton Collectibles, LLC v. Believe Prod., Inc.*,
2018 WL 1381894 (C.D. Cal. Mar. 15, 2018)................................................................10

*Cairns v. Franklin Mint Co.,*
115 F. Supp. 2d 1185 (C.D. Cal. 2000) .........................................................................13

*Century 21 Real Estate Corp. v. Sandlin*,
846 F.2d 1175 (9th Cir. 1988) .......................................................................................19

*CytoSport, Inc. v. Vital Pharms., Inc.*,
617 F. Supp. 2d 1051 (E.D. Cal. 2009) .........................................................................20

*Deckers Outdoor Corp. v. Ozwear Connection Pty Ltd.,*
2014 WL 4679001 (C.D. Cal. Sept. 18, 2014) ..............................................................20

*eBay Inc. v. MercExchange, LLC*,
547 U.S. 388 (2006)........................................................................................................19

*Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*,
778 F.3d 1059 (9th Cir. 2015) .......................................................................................15

*Fiji Water Co., LLC v. Fiji Min. Water USA, LLC*,
741 F. Supp. 2d 1165 (C.D. Cal. 2010) .........................................................................21

*Funai Electric Co. v. Daewoo Electronics Corp.*,
593 F. Supp. 2d 1088 (N.D. Cal. 2009).........................................................................20

IMPOSSIBLE LLC'S MOTION FOR POST-TRIAL RELIEF

Case 5:21-cv-02419-BLF   Document 476   Filed 04/09/26   Page 6 of 29

*Gracie v. Gracie,*
217 F.3d 1060 (9th Cir. 2000) ........................................................................... 9

*Iconic Mars Corp. v. Kaotica Corp.,*
2025 WL 405701 (S.D. Cal. Feb. 5, 2025) .................................................... 9, 11

*Impossible Foods Inc. v. Impossible X LLC,*
80 F.4th 1079 (9th Cir. 2023) ........................................................................... 3

*In re Bose Corp.,*
580 F.3d 1240 (Fed. Cir. 2009) ....................................................................... 13

*Jackson v. Gaspar,*
2022 WL 2155975 (C.D. Cal. Feb. 24, 2022) ............................................... 14

*Jason Scott Collection, Inc., v. Trendily Furniture, LLC,*
68 F.4th 1203 (9th Cir. 2023) ............................................................... 9, 16, 18

*LG Corp. v. Huang,*
2017 WL 476539 (S.D. Cal. Feb. 6, 2017) ...................................................... 20

*Love v. Associated Newspapers, Ltd.,*
611 F.3d 601 (9th Cir. 2010) ........................................................................ 9, 15

*M.I.B. Grp. LLC v. Aguilar,*
2024 WL 3857540 (C.D. Cal. July 16, 2024) .................................................. 10

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.,*
518 F. Supp. 2d 1197 (C.D. Cal. 2007) ........................................................... 20

*Monster Energy Co. v. Vital Pharms., Inc.,*
2023 WL 8168854 (C.D. Cal. Oct. 6, 2023) .................................................... 10

*Nelson-Ricks Cheese Co., Inc. v. Lakeview Cheese Co., LLC,*
775 F. App'x 350 (9th Cir. 2019) .................................................................... 14

*Ochoa v. Lopez,*
2022 WL 17834345 (C.D. Cal. Dec. 21, 2022) .............................................. 19

*OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.,*
897 F.3d 1008 (9th Cir. 2018) ........................................................................ 12

*Paige LLC v. Shop Paige LLC,*
2024 WL 3594450 (C.D. Cal. July 10, 2024) ....................................... 10, 11, 14

*Rhoades v. Avon Prods., Inc.,*
504 F.3d 1151 (9th Cir. 2007) ........................................................................ 22

iv                                    Case No. 5:21-cv-02419-BLF (SVK)
IMPOSSIBLE LLC'S MOTION FOR POST-TRIAL RELIEF

*San Diego Comic Convention v. Dan Farr,*
  *Prods.*, 807 F. App'x 674 (9th Cir. 2020) .................................................................................. 14

*Sennheiser Elec. Corp. v. Eichler,*
  2013 WL 3811775 (C.D. Cal. July 19, 2013).......................................................................... 19

*Stone Creek, Inc. v. Omnia Italian Design, Inc.*,
  875 F.3d 426 (9th Cir. 2017) ................................................................................................... 10

*Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co.*,
  240 F.3d 832 (9th Cir. 2001) ................................................................................................... 19

*SunEarth, Inc. v. Sun Earth Solar Power Co.*,
  839 F.3d 1179 (9th Cir. 2016) ........................................................................................ 8, 9, 10

*Synoptek, LLC v. Synaptek Corp.,*
  *309* F. Supp. 3d 825 (C.D. Cal. 2018) ................................................................................... 21

*Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*,
  932 F.2d 1113 (5th Cir. 1991) ................................................................................................. 17

*Tapatio Foods, LLC v. Rodriguez,*
  2019 WL 6168416 (E.D. Cal. Nov. 20, 2019)......................................................................... 18

*Teetex LLC v. Zeetex*, LLC,
  2022 WL 2439176 (N.D. Cal. July 5, 2022) ........................................................................... 12

*Triad Systems Corp. v. Southeastern Exp. Co.*,
  64 F.3d 1330 (9th Cir. 1995) ................................................................................................... 20

*Tu Thien The, Inc. v. Tu Thien Telecom, Inc.*,
  668 F. App'x 299 (9th Cir. 2016).......................................................................................... 16, 18

*Twitch Interactive, Inc. v. Johnston*,
  2019 WL 3387977 (N.D. Cal. July 26, 2019) ........................................................................... 9

*Vineyard House, LLC v. Constellation Brands U.S. Operations, Inc.*,
  619 F. Supp. 3d 970 (N.D. Cal. 2021)..................................................................................... 15

*Yuga Labs, Inc. v. Ripps*,
  2023 WL 7089922 (C.D. Cal. Oct. 25, 2023).......................................................................... 8

**STATUTES**

15 U.S.C. § 1116(a) ............................................................................................................ 18, 19

15 U.S.C. § 1117(a) .......................................................................................................... 1, 8, 16

Section 1117 ....................................................................................................................... 1, 16

**OTHER AUTHORITIES**

McCarthy on Trademarks and Unfair Competition § 11:92 (5th ed.) ............................................. 15

IMPOSSIBLE LLC'S MOTION FOR POST-TRIAL RELIEF

**INTRODUCTION**

For more than five years, Impossible Foods dragged Impossible LLC and Joel Runyon through contentious litigation over its claims and defenses that, in the final analysis, had no merit and were barely colorable to begin with. In so doing, Impossible Foods forced Impossible LLC to incur millions of dollars in fees and expenses litigating a case through trial in a distant forum, disrupted Impossible LLC's supplier relationships with subpoenas of questionable relevance, and initiated duplicative proceedings at the USPTO in parallel to this case. Despite all of this, Impossible Foods scarcely offered any defense at trial for its knowing decision to use a nearly identical trademark on apparel and cookbooks—goods as to which Impossible LLC undisputedly held senior rights. Impossible Foods did not bring its current leaders or executives to testify at trial, offered virtually nothing to support its improbable claims that Impossible LLC's nutritional supplements infringed its trademarks for plant-based meat alternative products, and failed entirely to support its assertions that Mr. Runyon had orchestrated an intentional fraud on the USPTO (and his own longtime trademark lawyer) by seeking trademark rights as to certain articles of clothing. Given these failures, the jury rejected all of Impossible Foods's claims and defenses, and found it infringed Impossible LLC's rights both willfully and with "malice, fraud, or oppression."

None of this was necessary, and all should have been avoided with a modicum of restraint and common sense. But despite Impossible LLC's repeated efforts to find a reasonable solution short of trial, Impossible Foods remained committed to its strategy of using its substantially greater size, balance sheet, and insurance coverage to litigate Impossible LLC into oblivion. As the leading treatise has described, these are the paradigmatic actions of a "trademark bully," a finding that warrants an award of fees and costs under 15 U.S.C. § 1117(a). That result is further supported by the jury's finding that Impossible Foods infringed both willfully and with malice, fraud, or oppression, rendering this an "exceptional case" under Section 1117. And it is supported further still by the fact that, absent an award of fees and costs, Impossible LLC will have prevailed in every aspect of the lawsuit yet still be millions of dollars in the hole, as the costs of defending the case and pursuing its own infringement claims amounted to millions more than the total jury award of $3.25 million.  An award of fees and costs should therefore be entered, together with enhanced

damages to ensure full compensation and a permanent injunction to avoid further irreparable harm.

**RELEVANT BACKGROUND**

### A.   Impossible Foods Willfully Infringes Impossible LLC's Trademarks

Starting from a single blog post in April 2010, Joel Runyon built Impossible LLC into a successful business with multiple products and services under its federally-registered IMPOSSIBLE® trademark and common-law marks. (Trial Exs.[1] 2158, 2049-51, 2053-55, 2068-70.) Mr. Runyon built Impossible LLC from scratch, relying on his distinctive IMPOSSIBLE mark, savvy marketing, and viral coverage in internet media to build a brand worth millions of dollars that inspired thousands of people to test the limits of their abilities. (Tr. 1026:8-21; 685:24-686:25.)

In 2013, a company called Maraxi sought to rebrand, and engaged a branding firm that proposed the name "Impossible." (Tr. 359:13-18.) After selecting the name, Maraxi commissioned a full trademark search report from an outside law firm. (Tr. 360:25-361:12; Trial Ex. 2181.) The report showed that Mr. Runyon and Impossible LLC were using the IMPOSSIBLE mark for goods and services relating to both apparel (Trial Ex. 2181 at 107) and nutrition (*Id.* at 128, 132). In March 2014, Nicholas Halla, Maraxi's Head of Market Strategy, visited the Impossible LLC website and took inspiration from the site's "t-shirts with Impossible quotes." (Tr. 388:14-389:5; Trial Ex. 33, 34.) Mr. Halla also "circulated [Impossible LLC's website] to other executives and advisors at Impossible Foods." (Tr. 389:20-22; Trial Ex. 33, 34.)

Impossible Foods proceeded to adopt a near-identical stylized IMPOSSIBLE logo. (Trial Ex. 750.) In 2016, Impossible Foods began offering IMPOSSIBLE-branded apparel to the public. (Tr. 422:8-10.) Impossible Foods's apparel prominently features the IMPOSSIBLE mark. (Trial Exs. 759, 760, 421.) Despite its knowledge of Impossible LLC's trademark rights, Impossible Foods never revisited its trademark search or made a plan to avoid confusion. (Tr. 362:12-23.)

### B.   Impossible Foods Sues Impossible LLC and Joel Runyon

In November 2020, after receiving notice of Impossible Foods' trademark application for

---

[1] All citations to "Tr." and "Trial Ex." refer to the trial transcript and exhibits, respectively, attached to the Declaration of Marissa Benavides unless otherwise noted.

recipes and cookbooks, Impossible LLC sent a cease-and-desist letter raising concerns about Impossible Foods' encroachment into apparel and cookbooks—two areas where Impossible LLC had long held priority of use. (Trial Exs. 2183, 2053-55.) The purpose of the letter was simply "to have a conversation." (Tr. 221:9-10.) Indeed, the letter itself stated that Impossible LLC "prefers to work amicably with Impossible Foods to avoid any future confusion," but that "our client already is aware of several apparent instances of actual confusion." (Trial Ex. 2183 at 2.) When Impossible Foods did not respond to the letter, Impossible LLC opposed Impossible Foods's application at the PTO. (Tr. 347:15-18.) Impossible Foods responded by filing this case, initially as a single claim for declaratory judgment. (Dkt. 1; Weslow Decl. Ex. 2.)

On November 16, 2021, the Court granted Impossible LLC's motion to dismiss for lack of personal jurisdiction. (Dkt. 50.) On September 12, 2023, after an appeal by Impossible Foods, the Ninth Circuit reversed and remanded for consideration of the merits of Impossible Foods' claims. *Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1083 (9th Cir. 2023).

Following a remand, Impossible Foods dramatically expanded the scope of its case by amending its pleading three times. (*See* Dkts. 78, 103, 151.) In its Second Amended Complaint, after the litigation had already been pending for over three years, Impossible Foods named Mr. Runyon as a Defendant in his personal capacity and added affirmative claims for Federal Trademark Infringement, Federal Unfair Competition, and California Common Law Unfair Competition. (Dkt. 103.) Impossible Foods alleged that Impossible LLC's sleep and energy supplements infringed Impossible Foods's trademarks for plant-based meats and were likely to cause consumer confusion. (*Id.* at 14-16.) In its Third Amended Complaint, after the litigation had been pending for four years, Impossible Foods added claims for cancellation of Impossible LLC's trademarks under the theory that the marks were acquired through fraud on the PTO or had been abandoned. (Dkt. 151 at 35-37.) At trial, Impossible Foods provided virtually no evidence in support of its affirmative claims, all of which were unanimously rejected by the jury. (Dkt. 459.)

### C.      Impossible Foods Prolongs Litigation and Fails to Substantiate its Claims

Over the course of the case, Impossible Foods failed to substantiate its claims, unnecessarily prolonged the litigation, and needlessly increased costs to Impossible LLC.

Meanwhile, Impossible Foods disrupted Impossible LLC's supplier relationships through abusive subpoenas that caused suppliers to refuse to work with Impossible LLC during the pendency of the case. (Tr. 156:25-157:11.)

### 1. Impossible Foods Persists with Infringement Claims without Evidence

Impossible Foods never proffered evidence to substantiate its infringement claims or its allegations of confusion. Indeed, its corporate representative, Caitlyn Hatman, testified that Impossible Foods had no confusion evidence despite having extensively searched for it. (Tr. 603:4-23 (Impossible Foods "spent [] time looking to see if there was any evidence that any of [its] customers had ever been [] confused . . . looked through a lot of documents in order to determine that . . . talked to some people within the company as well . . . and after doing all that, [] didn't find any evidence that any [] customers ever bought sleep or energy powders thinking that they were made by Impossible Foods").) Hatman also admitted she "do[es] not" "believe that there's anything confusing about Impossible Foods's plant-based meat products and the sleep and energy powders offered by Impossible LLC." (Tr. 607:6-10.)

Impossible Foods also failed to produce evidence to support a likelihood of confusion under the *Sleekcraft* factors. Impossible Foods did not present evidence that Impossible LLC's nutritional powders were similar—or even related—to Impossible Foods' plant-based meat products. Nor did Impossible foods put forward evidence as to the similarity of the parties' marks, Impossible LLC's intent, the marketing channels for the products, the consumers' degree of care, or anticipated product line expansion. Impossible Foods did not even introduce evidence of its own trademark registrations until the final day of trial, and ultimately did so only through a "custodial" witness recruited at the 11th hour from its trial counsel's law firm. (Tr. 928:3-929:22; Trial Exs. 1391, 1396, 1398.) And while Impossible Foods claimed to have suffered serious damage as a result of alleged infringement throughout discovery, it announced for the first time at summary judgment that it was disclaiming monetary damages and seeking only equitable relief. (Dkt. 259.)

### 2. Impossible Foods Persists with Its Fraud Claims Without Evidence

Impossible Foods never offered evidence to support its fraud claims. Impossible Foods challenged the IMPOSSIBLE FITNESS (Reg. No. 5603025), IMPOSSIBLE FITNESS (stylized)

(Reg. No. 5590801), and IMPOSSIBLE (Reg. No. 5620625) registrations by alleging that certain items listed in the Statement of Use were not actually sold in commerce at the time of the Statement. (Dkt. 151 at 35-36.) But undisputed evidence showed that these items were always available for purchase, sometimes through third-party vendors. (Tr. 157:18-158:3; 324:24-325:13.) Impossible Foods also presented no evidence that Mr. Runyon misled the USPTO, let alone that he acted with subjective intent to do so. The fraud claims relied almost exclusively on a single email from 2018 between Mr. Runyon and his attorney. (Trial Ex. 1257). But Impossible Foods never articulated a plausible argument about why this email showed fraud or supported its claims.

Impossible Foods also challenged IMPOSSIBLE NUTRITION (stylized) (Reg. No. 5387588) by alleging that the mark's incontestability status was fraudulently acquired because the mark had not been continuously used in commerce for five consecutive years after registration. (Dkt. 151 at 34.) But again, Impossible Foods produced no evidence to support this claim, and in fact the evidence showed the opposite. (Tr. 183:21-184:5; 275:7-23.)

Initially, Impossible Foods also challenged the IMPOSSIBLE (animated) (Reg. No. 6571603) mark as fraudulently acquired, but during trial Impossible Foods dropped its claim after failing to adduce any evidence regarding this registration at all. (Dkt. 423.)

### 3.    Impossible Foods Delays Resolution of the Case

Impossible Foods never meaningfully attempted to resolve the case short of trial. Although Impossible LLC participated in *five* formal efforts at mediation and settlement conferences, no settlement resulted. (Weslow Decl. ¶ 12; Benavides Decl. ¶¶ 2-3, 6; Runyon Decl. ¶ 6.) Not only did Impossible Foods fail to engage with the settlement process, it actively impeded it.  For example, before the July 24, 2024 settlement conference with Magistrate Judge van Keulen, the parties agreed in principle to a coexistence framework. (Weslow Decl. ¶ 12.) But the agreement never materialized. (*Id*.)  Worse yet, Impossible Foods amended its complaint **the night before** the settlement conference to name Mr. Runyon as an additional Defendant, and expanded the case by adding dubious infringement claims targeting the nutritional supplement products in what appears to have been an effort to generate additional leverage. (Dkt. 92-1.)

The pattern repeated itself in spring of 2025. Impossible Foods proposed a private

mediation, and in response to Impossible LLC's skepticism, conceded that it knew it would need to substantially compensate Impossible LLC in order to resolve the dispute. (Benavides Decl. ¶ 2.) The parties thereafter spent time identifying retired United States Magistrate Judge Jan M. Adler as a mediator and working with his office to secure a date. (*Id*.) But Impossible Foods abruptly refused to sign the mediation agreement and walked away from the process when Impossible LLC reiterated that it would agree to adjust some of the interim case deadlines but would not agree to continue the trial date. (*Id*.)

### 4.     Impossible Foods Deletes Relevant Evidence.

During discovery, Impossible LLC sought to understand Impossible Foods's actions during the period when it rebranded from Maraxi (2013-2016) and how it chose the name Impossible, particularly after Impossible Foods conceded that it had actual knowledge of Impossible LLC and Mr. Runyon's senior use of the IMPOSSIBLE mark before the rebrand. (Dkt. 182-01.) Impossible LLC's discovery efforts yielded very little because, as Impossible Foods disclosed only a month before the close of fact discovery, Impossible Foods had permanently deleted the emails and custodial documents of Myra Pasek and Jordan Schenck—the two persons whom Impossible Foods identified as having "the most knowledge" regarding Impossible LLC, the search reports that identified Impossible LLC's usage of the IMPOSSIBLE mark, and Impossible Foods's adoption and stylization of its highly similar IMPOSSIBLE brand. (Dkt. 236-02; Dkt. 248.)

Impossible Foods then forced Impossible LLC to file three separate motions to compel to understand its deletion of relevant documents: first to compel production (Dkt. 167; Dkt. 169); second to compel Impossible Foods to provide information regarding its deletion of relevant documents (Dkt. 188; Dkt. 203); and a *third* time because Impossible Foods was unable to properly explain the deletion and failed to comply with Judge Van Keulen's Order (Dkt. 235; Dkt. 248).

### 5.     Impossible Foods Initiates Duplicative Legal Proceedings.

On July 3, 2025, more than four years after initiating this dispute, Impossible Foods filed a separate petition with the Trademark Trial and Appeal Board ("TTAB") seeking to cancel the same marks that were already at issue in this case. (Weslow Decl. ¶ 5.) Impossible Foods' petition failed to disclose the existence of the existing, suspended TTAB Opposition regarding the same marks.

(*Id.*) As a result, Impossible LLC was forced to respond to another proceeding asserting the same claims and seeking the same relief as Impossible Foods sought in this action. (*Id*. ¶ 10.)

### D.   Impossible LLC Prevails at Trial

At trial, the jury unanimously found that Impossible Foods willfully infringed Impossible LLC's federally registered and common law trademarks as to apparel, and willfully infringed Impossible LLC's common law trademarks as to recipes. (Tr. 1246:19-23; Dkt. 459.) The jury awarded $1,500,000 in corrective advertising damages. (*Id.*) Further, the jury found that Impossible Foods acted with "oppression, fraud, or malice" and awarded $1,750,000 in punitive damages. (Dkt. 460.) Although the jury found Impossible Foods' cookbook to be infringing (*Id.*), the jury's corrective advertising award did not include compensation for confusion caused by the infringing cookbook based on Impossible Foods' objection (Dkt. 383 at 8; Tr. 1145:2-7.)

The jury unanimously rejected Impossible Foods's claims, finding that Impossible LLC did not infringe, commit fraud on the USPTO, or abandon any of its own trademarks. (Dkt. 459.)

### ARGUMENT

### I.   THE COURT SHOULD AWARD IMPOSSIBLE LLC ITS REASONABLE ATTORNEYS' FEES AND COSTS

The Court should award Impossible LLC its reasonable attorneys' fees incurred in successfully prosecuting its claims and defending against the baseless claims brought by Impossible Foods. "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). "An 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1180 (9th Cir. 2016). Courts consider "the totality of the circumstances" in awarding fees, "including 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id*. at 1181. "A trademark case is generally considered exceptional for purposes of awarding of attorneys' fees when a party has taken positions that can be characterized as 'malicious, fraudulent,

deliberate or willful.'" *Yuga Labs, Inc. v. Ripps*, 2023 WL 7089922, at *17 (C.D. Cal. Oct. 25, 2023), *vacated on other grounds*.

This is a truly exceptional case: Impossible Foods willfully infringed Impossible LLC's trademarks and acted with oppression, fraud, or malice. When Impossible LLC objected, Impossible Foods behaved as a classic "trademark bully" by preemptively initiating this lawsuit, asserting meritless claims and defenses, suing Mr. Runyon personally, and prolonging the litigation for years in an effort to grind a smaller opponent into submission. Impossible Foods's conduct means that, despite the award in Impossible LLC's favor, it remains millions of dollars behind, while Impossible Foods largely avoids any consequence by leveraging its insurance policies and vast balance sheet to insulate it from any meaningful effect. If federal trademark protection means anything, a prevailing trademark owner should not be left worse off than a willful infringer at the end of the case. The Court should award fees to prevent this unjust result.

### A. Impossible Foods's Willful, Oppressive, Fraudulent, and Malicious Conduct Warrants a Fee Award

The jury's finding that Impossible Foods infringed Impossible LLC's trademarks willfully and engaged in oppressive, fraudulent, or malicious conduct makes this a clear case for a fee award. "A trademark case is exceptional where the district court finds that the defendant acted maliciously, fraudulently, deliberately, or willfully." *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 615 (9th Cir. 2010). When willfulness is tried to the jury, a verdict of willful infringement renders the case "exceptional" for purposes of awarding fees. *Gracie v. Gracie*, 217 F.3d 1060, 1068 (9th Cir. 2000) (a "fee award . . . flows quite naturally from the jury's finding of willful infringement"). Indeed, prior to 2016, attorneys' fees were *only* available for "malicious, fraudulent, deliberate, or willful infringement" in this Circuit. *SunEarth*, 839 F.3d at 1180. The *SunEarth* decision relaxed this standard, permitting courts to award fees even where willfulness is not shown. *Id*. Willful infringement is therefore always sufficient to support an award of fees. *Jason Scott Collection, Inc., v. Trendily Furniture, LLC*, 68 F.4th 1203, 1223 n.13 (9th Cir. 2023) ( "[b]ecause the *SunEarth* test is less stringent than the previous 'willful infringement' standard, it stands to reason that this case of willful infringement would satisfy the *SunEarth* test"); *Iconic Mars Corp. v. Kaotica Corp.*,

2025 WL 405701, at *6 (S.D. Cal. Feb. 5, 2025) ("Willful infringement alone can satisfy the exceptional case standard").

Here, the jury's verdict leaves no doubt that Impossible Foods engaged in "malicious, fraudulent, deliberate or willful' infringement."[2] *SunEarth*, 839 F.3d at 1180. The Court should follow the many decisions that have awarded attorneys' fees for such conduct, including prior decisions by this Court. *Jason Scott*, 68 F.4th at 1223 n. 13 (affirming fee award for "willful infringement"); *Twitch Interactive, Inc. v. Johnston*, 2019 WL 3387977, at *13 (N.D. Cal. July 26, 2019) (awarding fees where defendant's infringement was "clearly willful"); *Bittorrent, Inc. v. Bittorrent Mktg. GMBH*, 2014 WL 5773197, at *15 (N.D. Cal. Nov. 5, 2014) (awarding fees for "clearly willful" infringement); *Iconic Mars*, 2025 WL 405701, at *7 (awarding fees where "[t]he jury found the infringement willful"); *Paige LLC v. Shop Paige LLC*, 2024 WL 3594450, at *7 (C.D. Cal. July 10, 2024) (awarding fees "in light of [defendant's] willful infringement"); *M.I.B. Grp. LLC v. Aguilar*, 2024 WL 3857540, at *23 (C.D. Cal. July 16, 2024) (awarding fees for "willful and brazen infringement"); *Monster Energy Co. v. Vital Pharms., Inc.*, 2023 WL 8168854, at *16 (C.D. Cal. Oct. 6, 2023) (awarding fees for "willful and deliberate" Lanham Act violations).

## B.     Impossible Foods's Claims and Defenses Were Exceptionally Weak

The glaring weakness of Impossible Foods's claims and defenses further supports a fee award. *SunEarth*, 839 F.3d 1180 ("substantive strength of a party's litigating position" informs exceptional case analysis). As the case progressed, Impossible Foods concocted a series of implausible claims and defenses and dragged Impossible LLC through years of litigation, only for trial to reveal that Impossible Foods lacked support for its allegations. The weakness of Impossible Foods's litigating position strongly supports an award of fees.

### 1.     Impossible Foods's Defenses to Infringement Were Exceptionally Weak

Impossible Foods's defenses to liability were exceptionally weak from the outset. Impossible Foods was admittedly aware of Impossible LLC's trademark rights in the apparel and

---

[2] Impossible Foods did not argue in its Rule 50(a) motion that the evidence was insufficient to show willfulness or oppression, fraud, or malice, so it is precluded from doing so under Rule 50(b).

nutrition markets but chose to launch its infringing apparel and cookbook products anyway. (Trial Ex. 2181.) Whether deliberately or by chance—an issue that could not be fully investigated due to Impossible Foods's mass deletion of documents—Impossible Foods even adopted a nearly-identical stylized IMPOSSIBLE mark and applied it to the same types of goods as Impossible LLC. (Trial Exs. 712, 750.) As a result, this was an "open and shut" case of infringement.  *See Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 432 (9th Cir. 2017) ("cases involving identical marks on competitive goods are rare and 'hardly ever find their way into the appellate reports' because liability is 'open and shut'"). The jury reached the same conclusion, finding for Impossible LLC its trademark infringement claims and finding Impossible Foods's infringement so egregious that it was willful and oppressive, fraudulent, or malicious. The one-sidedness of Impossible LLC's infringement claim supports a fee award. *See Brighton Collectibles, LLC v. Believe Prod., Inc.*, 2018 WL 1381894, at *2 (C.D. Cal. Mar. 15, 2018) (affirming fee award where the "substantive strength of [Plaintiff's] litigating position was exceptionally clear based on evidence presented at trial").

Other than fraud, which is discussed in detail below, Impossible Foods's sole affirmative defense to infringement was that Impossible LLC had abandoned its trademark rights in the nutrition and recipe category. But Impossible Foods adduced no evidence to support this defense at trial. Mr. Runyon testified that he had not stopped marketing nutrition and recipe products and services under the IMPOSSIBLE mark since 2012 and certainly never had an intent to permanently discontinue these items. (Tr. 158:9-163:6.) Impossible Foods presented no countervailing evidence and did not attempt to identify any cessation of use at all. Despite that lack of evidence, Impossible Foods forced a trial on this issue anyway, wasting the time and resources of the parties, jurors, and Court alike. This wasteful conduct further supports an award of fees. *See Iconic Mars*, 2025 WL 405701, at *7 (awarding fees where defense to infringement "was objectively unreasonable and without legal justification"); *Paige LLC,* 2024 WL 3594450, at *7 (awarding fees where defendant took "weak legal positions on the merits" that were "not frivolous but bordering on the frivolous").

**2.    Impossible Foods's Infringement Claims Were Exceptionally Weak**

Impossible Foods's infringement claims, which alleged that Impossible LLC's sleep and

energy supplements infringed Impossible Foods's trademarks for plant-based meat, also were exceptionally weak. Impossible Foods produced no evidence of actual or likely confusion under the *Sleekcraft* factors at trial. Impossible Foods's corporate designee, Caitlin Hatman, testified that there was nothing confusing about the parties' products and no evidence any consumer had ever been confused. (Tr. 603:4-23.) Impossible Foods did not present evidence that Impossible LLC's nutritional powders were similar or related to Impossible Foods' plant-based meat products, that the marketing channels for the products were similar, or that the parties were likely to expand into the same product lines. Impossible Foods also adduced no evidence that consumers' degree of care or Impossible LLC's intent supported a finding of confusion. Indeed, Impossible Foods did not even introduce its *own* trademarks until the final day of trial, and even then only as an afterthought through the testimony of a law firm paralegal who was not identified as a sponsoring witness for these documents until the day before she testified. (Trial Exs. 1391, 1396, 1398; Tr. 927:25-929:22; Benavides Decl. ¶ 4.) Further, Impossible Foods never even bothered to show the jury how its trademarks appeared on its products in commerce, or otherwise substantiate its infringement claim, which appears likely to have been brought solely to generate leverage and bully a smaller firm.

That Impossible Foods maintained baseless infringement claims for nearly two years strongly supports an award to compensate Impossible LLC for the fees incurred in defending against these claims. *Bell v. Oakland Cmty. Pools Project, Inc.*, 2020 WL 13695114, at *6 (N.D. Cal. Oct. 14, 2020) ("the utter lack of support or reasonable argument for a foundational element of [plaintiff's] trademark claim, combined with his suspect motive and the need for deterrence . . . renders this case exceptional under the Lanham Act"); *Teetex LLC v. Zeetex*, LLC, 2022 WL 2439176, at *4 (N.D. Cal. July 5, 2022) (plaintiff's "failure to develop evidence to support its infringement claim stands out from other cases and makes this case exceptional").

### 3. Impossible Foods's Fraud Claims Were Baseless

Trial also demonstrated that Impossible Foods's fraud claims were meritless and were also asserted to harass and burden Impossible LLC rather than to redress any real-world injury.

***No Damages for Any Fraud Claim***. Impossible Foods's fraud claims were baseless because it suffered no injury from any alleged fraud. "[D]amages proximately caused by . . .

reliance" on the allegedly false statement are a requisite element of a claim for fraudulent procurement. *OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.,* 897 F.3d 1008, 1019 (9th Cir. 2018). Impossible Foods's sole theory of damages was that it was "obviously" injured because it was facing a lawsuit. (Tr. 1056:8-17.) But Impossible Foods never attempted to prove any injury stemming from the lawsuit and did not explain how it could have been injured by litigating a case that it started. With zero evidence of damages, the fraud claims were legally baseless.

*No Evidence as to Reg. No. 5620625 for IMPOSSIBLE*. Impossible Foods adduced no evidence to support its fraud claim as to Reg. No. 5620625 for IMPOSSIBLE. Indeed, Impossible Foods never examined Mr. Runyon regarding the procurement of this registration at all. Without such evidence, Impossible Foods lacked any colorable basis for a fraud claim.

*No Evidence of Fraud as to Reg. No. 5387588 for IMPOSSIBLE NUTRITION*. Impossible Foods sought to cancel Impossible LLC's Registration No. 5387588 for IMPOSSIBLE NUTRITION on the ground that Mr. Runyon's July 12, 2024 Declaration of Use and Incontestability was fraudulent. But Impossible Foods did not identify anything false about the Declaration during its cursory examination of Mr. Runyon. (Tr. 340:13-341:6.) And Impossible Foods did not even *mention* this registration in its opening statement or closing argument. Impossible Foods had no evidence of any false statement or fraudulent intent, yet it persisted in maintaining this baseless claim through trial regardless.

*No Evidence of Fraud as to IMPOSSIBLE FITNESS Registrations*. Impossible Foods also failed to adduce evidence that Impossible LLC committed fraud with respect to the IMPOSSIBLE FITNESS Registrations. Impossible Foods's fraud case focused on whether having three of the items originally listed in the registrations available for purchase through a vendor was sufficient to satisfy the "use in commerce" requirement as to those items. (Tr. 323:23-338:14.) Putting aside that Impossible LLC's use was legally sufficient, Impossible Foods's case was fundamentally unsound because technical adequacy is not the relevant question for a fraud claim—the question is whether Mr. Runyon subjectively believed that the marks were in use at the time of the statement. *In re Bose Corp.*, 580 F.3d 1240, 1245 (Fed. Cir. 2009) ("Subjective intent to deceive . . . is an indispensable element in the analysis"). Impossible Foods offered no evidence

that Mr. Runyon's belief was not genuine, nor any evidence that he intended to mislead or defraud the USPTO through his Statement of Use.

The lack of evidence on "foundational element[s]" of Impossible Foods's fraud claims renders this an exceptional case. *Bell,* 2020 WL 13695114, at *6; *see also Cairns v. Franklin Mint Co.,* 115 F. Supp. 2d 1185, 1189 (C.D. Cal. 2000), *aff'd*, 292 F.3d 1139 (9th Cir. 2002) (affirming fee award where "plaintiffs should have either not brought the claim in the first instance, or voluntarily dismissed it when it was clear that there was no evidence to support it").

### C.    Impossible Foods's Litigation of the Case Was Unreasonable

Impossible Foods's unreasonable conduct of the litigation further supports an award of fees. *San Diego Comic Convention v. Dan Farr Prods.*, 807 F. App'x 674, 676 (9th Cir. 2020) ("'unreasonable manner' in which Defendants litigated the case" supported award of fees). Impossible Foods increased the cost and complexity of the case by maintaining meritless claims through trial. It delayed the case further and increased its costs by encouraging a mediation, but then refusing to participate in the process once it became clear that Impossible LLC would not continue the trial date. (Benavides Decl. ¶ 2.) It deleted the custodial documents of two of its most knowledgeable employees and forced Impossible LLC to file three motions to compel to ascertain the basic facts of this destruction of evidence. (Dkts. 167, 169, 188, 203, 235, 248.) And it attempted to circumvent this Court's jurisdiction over its fraud claims by filing a duplicative petition at the USPTO while failing to disclose the existence of this case, forcing Impossible LLC to incur needless expense in a separate proceeding. (Weslow Decl. ¶ 11.) Even now, with those fraud claims *res judicata*, Impossible Foods refuses to withdraw its cancellation petition before the PTO, forcing Impossible LLC to litigate yet another unnecessary issue. (*Id*. ¶ 14.)

Any one of these incidents would be sufficient to show objectively unreasonable litigation conduct by Impossible Foods. *See Paige LLC*, 2024 WL 3594450, at *6 (awarding fees based on "unreasonable manner" of litigating including providing little to no legal authority in support of arguments and failing to timely disclose expert); *Jackson v. Gaspar*, 2022 WL 2155975, at *5 (C.D. Cal. Feb. 24, 2022) (finding an exceptional case based on "antagonistic discovery conduct" that was "improperly motivated and sought to drag out or obfuscate proceedings"); *Nelson-Ricks*

*Cheese Co., Inc. v. Lakeview Cheese Co., LLC,* 775 F. App'x 350, 352 (9th Cir. 2019) (awarding fees where plaintiff "did not have a colorable claim to begin with and pursued its litigation in an unreasonable manner"). Taken together, they strongly support a fee award to compensate Impossible LLC for fees incurred responding to this litigation misconduct.

### D.    Motivation and Deterrence Favor a Fee Award

The weakness of Impossible Foods's claims and its unreasonable conduct point to a singular conclusion: that Impossible Foods conducted this litigation so that it could grind Impossible LLC into submission. This is a classic case of "trademark bullying"—a phenomenon in which large brands use aggressive litigation tactics and baseless claims to coerce smaller parties into forfeiting their rights. *See* McCarthy on Trademarks and Unfair Competition § 11:92 (5th ed.). Courts recognize the importance of fee awards to deter these tactics. *Love,* 611 F.3d at 616 (affirming fee award where infringement claims were "groundless and unreasonable"); *Vineyard House, LLC v. Constellation Brands U.S. Operations, Inc.*, 619 F. Supp. 3d 970, 973 (N.D. Cal. 2021) ("An award of attorneys' fees impresses upon those who use the courts primarily for self-indulgent purposes, and without regard for the law, that the cost will be greater than that expended on their own side of the ledger"); *Bell*, 2020 WL 13695114, at *5 (fee award appropriate where it would "discourage serial litigants from bringing unmeritorious suits and then unnecessarily driving up litigation costs in order to drive a settlement"). The Court should do so here.

### E.    Compensation Favors a Fee Award

Finally, considerations of compensation favor a fee award. Mr. Runyon and Impossible LLC had no choice but to litigate this case: Impossible Foods sued first, asked for a judicial declaration that Mr. Runyon was a fraudster, and tried to cancel his registrations for marks on which he had built his business. Defeating Impossible Foods's claims and prevailing on its own claims required expenditures of more than $6 million over 5 years. (Runyon Decl. ¶ 7.) Mr. Runyon was forced to liquidate his retirement accounts and sell promising investments at below market value to fund the litigation. (*Id.*) Impossible Foods offered no off-ramp short of trial and failed to meaningfully participate in settlement discussions. Even after prevailing at trial, Impossible LLC would still face a net loss of some $3 million. A fee award is therefore appropriate

because a plaintiff who has prevailed in vindicating federally-protected trademark rights should not be left worse off than a willful infringer after trial. *See Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1079 (9th Cir. 2015) (approving fee award because it "encourag[ed] the enforcement of trademark rights by more fully compensating Plaintiffs").

## II.   THE COURT SHOULD AWARD ENHANCED DAMAGES TO COMPENSATE IMPOSSIBLE LLC AND PREVENT UNJUST ENRICHMENT

The Court should award enhanced damages to fully compensate Impossible LLC for its injuries and prevent unjust enrichment of Impossible Foods. "In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount." 15 U.S.C. § 1117(a). "[I]t is essential that trial courts carefully fashion remedies which will take all the economic incentive out of trademark infringement." *Jason Scott*, 68 F.4th at 1222. Thus, "[a] court may grant 'a just monetary award' under § 1117 even where a plaintiff cannot prove actual damages, 'so long as it constitutes compensation for the plaintiff's losses or the defendant's unjust enrichment and is not simply a penalty for the defendant's conduct.'" *Id*. Additionally, "a district court is permitted to consider the 'likely deterrent effect' of the damages assessed." *Tu Thien The, Inc. v. Tu Thien Telecom, Inc.*, 668 F. App'x 299, 300 (9th Cir. 2016).

### A.   The Court Should Enhance the Jury's Damages Award for Apparel

The Court should award enhanced damages because the jury's award of compensatory damages does not fully compensate Impossible LLC for its injuries. The jury's damages award was based on corrective advertising for Impossible Foods's infringing apparel products. However, the "base" figure for the corrective advertising calculation was understated because Impossible Foods failed to produce complete information regarding its spending on the infringing items. Impossible Foods claimed at deposition that it had spent approximately $80,000 per year on "swag" including IMPOSSIBLE-branded apparel. (Benavides Decl. Ex. 2 (Hatman Dep. Tr.) 129:18-21.) Then, after the close of discovery, Impossible Foods produced spreadsheets and a handful of invoices indicating that its total apparel "swag" expenditures were much higher—at least $1 million from May 2021 to April 2025 alone. (*See* Trial Exs. 691-695; 699-702; Benavides Decl. ¶ 5.) While

Impossible LLC was able to apportion some of these expenditures between apparel and other products, the final total of $651,041 calculated by Dr. Vanderhart undercounted the true total because Impossible Foods failed to produce all of the invoices detailing its apparel expenditures. (Tr. 763:15-764:8.) After trial, Impossible Foods finally acknowledged Dr. Vanderhart's testimony that it had actually spent at least $1 million on the infringing apparel (Dkt. 440 at 5; Benavides Decl. Ex. 3 (Mar. 26, 2026 Hearing Tr.) 23:20-24), but the full amount was likely far higher.

Impossible Foods's failure to fully disclose its apparel spending therefore led to an undercount of approximately $350,000 in the "base" for corrective advertising—or between $1,050,000 and $1,750,000 in damages after applying Dr. Palmatier's 3-5x multiplier. (Tr. 751:7-16; 765:14-766:10.) An enhanced monetary award is appropriate where proof of damage is limited by a defendant's conduct. *See Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1127 (5th Cir. 1991), *aff'd*, 505 U.S. 763 (1992) (enhancement proper to provide "redress to an otherwise undercompensated plaintiff where imprecise damage calculations fail to do justice, particularly where the imprecision results from defendant's conduct"). The Court should enhance the jury's award by at least $1,050,000 to $1,750,000 to account for the full scope of the damage caused by Impossible Foods's infringing apparel.

### B.    The Court Should Award Damages for the Infringing Cookbooks

The Court also should enter an additional monetary award for Impossible Foods's infringement of Impossible LLC's trademarks in connection with cookbooks. The jury determined that Impossible Foods's cookbook infringed Impossible LLC's trademarks but was prevented from awarding damages because Impossible Foods objected to the inclusion of corrective advertising damages for the infringing cookbooks at all—not just in Dr. Vanderhart's testimony, which was the subject of the Court's pre-trial Motion in Limine Order. (Tr. 1143:22-1145:7; Dkt. 383 at 8.) Impossible Foods's objection at trial was mistaken because the Motion in Limine Order was limited to Dr. Vanderhart's testimony. (Dkt. 383 at 8.) At trial, however, Impossible LLC had laid a factual foundation for corrective advertising damages by establishing that the cookbooks were promotional items and was prepared to present that argument to the jury when Impossible Foods objected. (Tr. 1143:22-1145:7.) In particular, Ms. Hatman testified that Impossible Foods would

"give away the cookbook as a promotional item" and "used the cookbook to give away and generate publicity" over the "five or so years" it was in the market. (Tr. 593:7-14.) The evidence also established that Impossible Foods did not consider the cookbook a "product," did not advertise or promote the cookbook, did not have a business plan for the cookbook, and did not "ever generate any significant revenue from sales of the cookbook." (Tr. 596:1-24.)

As this testimony demonstrates, the cookbook was a promotional item and ought to have been included in the corrective advertising calculation for the same reasons as the infringing apparel.  The Court has discretion to enter a "just monetary award" notwithstanding the absence of a damages award by the jury. *Jason Scott*, 68 F.4th at 1222. Accordingly, the Court should enter a monetary award equivalent to corrective advertising damages for the infringing cookbook: $420,000 to $700,000, which represents a 3-5x multiple of Impossible Foods's $140,900 in spending. (Trial Ex. 76; Tr. 649:5-21, 670:11-13.) *See Tu Thien The, Inc.*, 668 F. App'x at 300 (affirming enhanced monetary award where "the damages do not account for the intangible harm to Plaintiff's reputation and goodwill").

### C.     The Court Should Enhance Damages to Avoid Unjust Enrichment

Further supporting an enhanced monetary award is the need to prevent unjust enrichment of Impossible Foods and remove its incentives for infringement. "[I]t is essential that trial courts carefully fashion remedies which will take all the economic incentive out of trademark infringement." *Jason Scott*, 68 F.4th at 1222. Here, the jury's damages award did not account for the benefit that Impossible Foods obtained from its marketing of the infringing apparel and cookbooks. Those benefits were substantial because the infringing apparel and cookbooks functioned as "promotional" items and a form of advertising. (Tr. 428:13-18, 566:5-567:17, 616:10-21.) Accordingly, the Court should enter an enhanced monetary award at the high end of the ranges discussed above: $1,750,000 for the infringing apparel and $700,000 for the infringing cookbook. The resulting enhancement will prevent unjust enrichment while also falling within a reasonable range of damages supported by the testimony of Dr. Palmatier and Dr. Vanderhart.

### III.    THE COURT SHOULD ENJOIN IMPOSSIBLE FOODS FROM INFRINGEMENT

The Court should grant an injunction against further infringement by Impossible Foods,

which has signaled it is open to a stipulated injunction but remains noncommittal on the terms. (Benavides Decl. ¶ 6, Ex. 8.) Courts "have power to grant injunctions, according to the principles of equity and upon such terms as the Court may deem reasonable" in trademark infringement cases. 15 U.S.C. § 1116(a). "Permanent injunctions are frequently granted in trademark cases, and the Ninth Circuit has directed that '[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by the threat of continuing infringement.'" *Tapatio Foods, LLC v. Rodriguez*, 2019 WL 6168416, at *5 (E.D. Cal. Nov. 20, 2019) (quoting *Century 21 Real Estate Corp. v. Sandlin,* 846 F.2d 1175, 1180 (9th Cir. 1988)).

A permanent injunction is appropriate where the plaintiff demonstrates "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). Each of these requirements is satisfied, and the Court should grant a permanent injunction.

### A.    Impossible LLC Faces Irreparable Harm

Impossible LLC faces irreparable harm from Impossible Foods's ongoing infringement. Impossible Foods refused to stop its infringement during the pendency of the litigation and continued to market its infringing apparel and cookbooks through trial. (Tr. 266:6-14, 599:8-600:22; Trial Exs. 298, 312, 691, 692, 693, 694, 695, 699, 701, 702, 1319, 2229.) Having prevailed, Impossible LLC is entitled to a presumption of irreparable harm as a matter of law. 15 U.S.C. § 1116(a). And the injuries to Impossible LLCs goodwill found by the jury will continue to occur in the future, causing irreparable harm because "'[i]njury to the trademark owner's reputation and good will as well as to consumer expectations is difficult, if not impossible, to adequately compensate for after the fact.'" *Ochoa v. Lopez*, 2022 WL 17834345, at *2 (C.D. Cal. Dec. 21, 2022); *Sennheiser Elec. Corp. v. Eichler*, 2013 WL 3811775, at *10 (C.D. Cal. July 19, 2013) ("damage to goodwill . . . will often constitute irreparable injury"); *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co.*, 240 F.3d 832, 841 (9th Cir. 2001) ("Evidence of threatened loss of

prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm"); *Blackberry Ltd. v. Typo Prods. LLC*, 2014 WL 1318689, at *11 (N.D. Cal. Mar. 28, 2014) ("loss of goodwill" is a "valid ground[] for finding irreparable harm").

**B.     Impossible LLC Lacks an Adequate Remedy at Law**

Because Impossible LLC has established that it faces irreparable harm, it has also demonstrated that it does not have an adequate remedy at law. *Anhing Corp. v. Thuan Phong Co. Ltd.*, 2015 WL 4517846, at *23 (C.D. Cal. July 24, 2015) ("The terms 'inadequate remedy at law' and 'irreparable harm' describe two sides of the same coin. If the harm being suffered by plaintiff . . . is 'irreparable,' then the remedy at law (monetary damages) is 'inadequate.'"); *see also Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1219 (C.D. Cal. 2007) ("adequate remedy at law analysis parallels that performed for irreparable harm.") (internal quotation and brackets omitted); *Funai Electric Co. v. Daewoo Electronics Corp.*, 593 F. Supp. 2d 1088, 1111 (N.D. Cal. 2009) ("For the same reasons [that Funai suffered irreparable harm], remedies available at law are not adequate to compensate Funai for Daewoo's infringement."). This factor therefore weighs in favor of an injunction.

**C.     The Balance of the Equities Strongly Favors an Injunction**

The balance of the equities similarly favors granting an injunction. The jury found that Impossible Foods willfully infringed Impossible LLC's mark, and a defendant "cannot complain of the harm that will befall it when properly forced to desist from its infringing activities." *Triad Systems Corp. v. Southeastern Exp. Co.*, 64 F.3d 1330, 1338 (9th Cir. 1995); *see also LG Corp. v. Huang*, 2017 WL 476539, at *12 (S.D. Cal. Feb. 6, 2017) ("refraining from willful trademark infringement and counterfeiting imposes no hardship on the infringing party"); *Deckers Outdoor Corp. v. Ozwear Connection Pty Ltd.,* 2014 WL 4679001, at *13 (C.D. Cal. Sept. 18, 2014) ("There is no hardship to a defendant when a permanent injunction would merely require the defendant to comply with law."). This factor weighs entirely in favor of an injunction.

**D.     The Public Interest Favors an Injunction**

The public interest likewise weighs in favor of granting an injunction. "In the trademark context, courts often define the public interest at stake as the right of the public not to be deceived

or confused." *CytoSport, Inc. v. Vital Pharms., Inc.*, 617 F. Supp. 2d 1051, 1081 (E.D. Cal. 2009). "The public interest favors a preliminary injunction where . . . the plaintiff has shown a likelihood of confusion. The public is entitled to a clear understanding of the source of a product and to distinguish goods among competitors." *Fiji Water Co., LLC v. Fiji Min. Water USA, LLC*, 741 F. Supp. 2d 1165, 1183 (C.D. Cal. 2010). An injunction preventing such confusion is in the public interest. Because the jury found that Impossible Foods willfully infringed Impossible LLC's trademarks and all factors weigh in favor of an injunction, the Court should grant the "remedy of choice" for trademark infringement—a permanent injunction against further infringement.

## IV. THE COURT SHOULD ENTER JUDGMENT ON IMPOSSIBLE LLC'S FOURTH CLAIM FOR RELIEF

Finally, the Court should enter judgment in favor of Impossible LLC on its remaining claim for relief, which seeks an order directing the USPTO to reject Impossible Foods's Trademark Application No. 88855875 for the mark IMPOSSIBLE in connection with "[p]roviding information about recipes, ingredients and cooking information" and "providing an online computer database to consumers featuring information about recipes, ingredients and cooking information." (Trial Ex. 2182 (the "Cookbook Application").) "[I]n an action involving a registered trademark, district courts have jurisdiction to consider challenges to a party's trademark applications." *BBK Tobacco & Foods LLP v. Cent. Coast Agric., Inc.*, 97 F.4th 668, 671 (9th Cir. 2024). An order directing the rejection of the Cookbook Application is appropriate here because "the test for trademark registration uses the same 'likelihood of confusion' standard as the test for trademark infringement." *Synoptek, LLC v. Synaptek Corp.*, 309 F. Supp. 3d 825, 835 (C.D. Cal. 2018). Now that the jury has definitively answered the likelihood of confusion question, the Court should direct the USPTO to reject the Cookbook Application and enter judgment in favor of Impossible LLC. *See Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1165 (9th Cir. 2007) (where "a potential infringement claim 'requires the district court to resolve much or all of [the registration issues], it would waste everyone's time not to settle the registration issue now[, in district court]").

## CONCLUSION

For the foregoing reasons, the Court should grant the relief requested in this Motion.

Dated:  April 9, 2026

Respectfully submitted,

BRAUNHAGEY & BORDEN LLP

By:  /s/ Adam S. Cashman
     Adam S. Cashman

*Attorneys for Impossible LLC*

Case No. 5:21-cv-02419-BLF (SVK)