G. ROXANNE ELINGS (*pro hac vice*)
roxanneelings@dwt.com
RAPHAEL HOLOSZYC-PIMENTEL (*pro hac vice*)
rhp@dwt.com
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 42nd Floor
New York, NY  10020-1104
Telephone: (212) 489-8230
Facsimile: (212) 489-8340

SARAH E. BURNS (CA State Bar No. 324466)
sarahburns@dwt.com
DAVIS WRIGHT TREMAINE LLP
50 California Street, 23rd Floor
San Francisco, CA 94111
Telephone: (415) 276-6500
Facsimile: (415) 276-6599

Attorneys for Plaintiff/Counter-Defendant
IMPOSSIBLE FOODS INC.

IN THE UNITED STATES DISTRICT COURT

THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IMPOSSIBLE FOODS INC., | Case No. 5:21-cv-02419-BLF (SVK) |
| Plaintiff/Counter-Defendant, | **DECLARATION OF WILLIAM VAN CUREN IN OPPOSITION TO IMPOSSIBLE LLC'S MOTION FOR POST-TRIAL RELIEF** |
| vs. | |
| IMPOSSIBLE LLC, | |
| Defendant/Counter-Plaintiff. | Judge: Hon. Beth L. Freeman<br>Hearing Date: April 23, 2026<br>Time: 9:00 a.m.<br>Location: Courtroom 1, 5th Floor |

## DECLARATION OF WILLIAM VAN CUREN

I, William Van Curen, declare as follows:

1.      I am Associate General Counsel and an executive at Impossible Foods Inc. ("Impossible Foods").  I have held that position since September 2023.  Since that time, I have overseen the litigation of this case and supervised Impossible Foods' litigation counsel.  Since that time, I also have overseen separate proceedings between the parties before the Trademark Trial and Appeal Board ("TTAB") and supervised Impossible Foods' TTAB counsel.  Consequently, I am familiar with the facts underlying this case and the course of these proceedings.

2.      I make this declaration based on personal knowledge, records and files kept in the regular and ordinary course of business, court filings in this case, filings in the TTAB, and correspondence between counsel for the parties.

3.      I submit this Declaration in opposition to Impossible LLC's Motion for Post-Trial Relief, and specifically to correct certain false or misleading statements made in that Motion.

**July 2024 Settlement Conference**

4.      In a declaration, one of Impossible LLC's attorneys, David Weslow, stated that prior to a July 24, 2024 settlement conference before Magistrate Judge Van Keulen, "the parties had agreed in principle to a coexistence framework," which Impossible Foods allegedly "later deviated from."  Dkt. 476-2, ¶ 12.

5.      These statements are false.  Tellingly, Mr. Weslow did not attach any such "agreement in principle" to his declaration, because no such agreement exists.  In truth, the parties were not even close to reaching agreement.

6.      Because there was no agreement in principle, there was nothing for Impossible Foods to allegedly "deviate" from.

7.      Additionally, Impossible LLC faults Impossible Foods for amending its complaint "*the night before*" the July 24, 2024 settlement conference to assert infringement claims targeting Impossible LLC's nutritional supplements, allegedly to "generate additional leverage." Dkt. 476 at 5:24–27 (emphasis in original).

VAN CUREN DECL. IN OPPOSITION TO IMPOSSIBLE LLC'S MOTION FOR POST-TRIAL RELIEF
Case No. 5:21-CV-02419-BLF (SVK)

8.    These statements are false and misleading.  In truth, Impossible Foods informed Impossible LLC of its infringement claims weeks earlier—on July 3, 2024—when Impossible Foods sought Impossible LLC's consent to add them to the amended complaint (which Impossible LLC refused).  Dkt. 138, ¶¶ 4, 6.

9.    As this Court recognized, Impossible Foods "sought leave to amend based on new information obtained during discovery" and because it "believe[d] that all potentially valid claims should be addressed during settlement negotiations," which is "*not* in bad faith."  Dkt. 101 at 9:13–15 (emphasis added) (granting leave to amend).  Seeking to amend these claims before the settlement conference was entirely proper.

10.    Further, Impossible LLC also misrepresented events around a potential private mediation that I had proposed in May 2025.  Those misrepresentations are addressed in the declaration of R. Charles Henn, filed herewith.

**January and February 2026 Settlement Conferences**

11.    In a declaration, one of Impossible LLC's attorneys, Marissa Benavides, stated that after the January 22, 2026 and February 23, 2026 settlement conferences before Magistrate Judge Cousins, "Impossible Foods never followed up with any counteroffer or response to Impossible LLC's settlement demand."  Dkt. 476-9, ¶ 3.

12.    This statement is misleading and omits important information.  Specifically, after these settlement conferences, Impossible LLC *also* never followed up with any counteroffer or response to Impossible Foods' settlement demand.

13.    At all times, Impossible Foods participated in settlement discussions in good faith, with full settlement authority, and in compliance with all applicable rules.

**Impossible Foods' Compliance with Its Preservation Obligations**

14.    Impossible LLC faults Impossible Foods for allegedly "delet[ing] the emails and custodial documents of Myra Pasek and Jordan Schenck."  Dkt. 476 at 6:14–15.

15.    Tellingly, Impossible LLC never moved for spoliation sanctions against Impossible Foods, let alone prevailed on such a motion.  That is because Impossible Foods

VAN CUREN DECL. IN OPPOSITION TO IMPOSSIBLE LLC'S MOTION FOR POST-TRIAL RELIEF
Case No. 5:21-CV-02419-BLF (SVK)

complied with its obligation to preserve documents, and such a motion would have been meritless.

16.      As explained in declarations previously submitted by me and Impossible Foods' Director of IT Governance & Services, Ms. Pasek and Ms. Schenck left Impossible Foods in 2018.  Dkt. 236-2, ¶ 2–3; Dkt. 252-2, ¶ 4.  Pursuant to Impossible Foods' then-existing document retention practices, their emails and documents were deleted in the ordinary course of business by early 2019.  Dkt. 236-2, ¶ 6; Dkt. 252-2, ¶ 7–8.

17.      Critically, Ms. Pasek's and Ms. Schenck's emails and documents were purged in the ordinary course *over a year <u>before</u> any obligation to preserve such materials arose*. Impossible LLC sent its cease-and-desist letter first informing Impossible Foods of its claims on November 10, 2020.  Trial Ex. 2183, Dkt. 467-154.  Therefore, no preservation obligation arose until November 2020 at the earliest—long *<u>after</u>* Ms. Pasek and Ms. Schenck had departed the company and their files were deleted.

18.      In sum, Impossible Foods complied with its obligation to preserve documents. The deletion of Ms. Pasek's and Ms. Schenck's documents occurred in the ordinary course before any preservation obligation arose.

**<u>Impossible Foods' Timely Document Productions and Supplementation</u>**

19.      In her declaration, Ms. Benavides stated that Impossible Foods "untimely disclosed . . . spreadsheets and invoices reflecting Impossible Foods's expenditures on apparel" on "two occasions."  Dkt. 476-9, ¶ 5.  First, Ms. Benavides stated that Impossible Foods produced these documents "after the parties had finished depositions and after the close of fact discovery."  *Id.*  Second, Ms. Benavides stated that Impossible Foods produced more of these documents "less than one week before the start of trial," and she claimed that "[m]any of these documents were created before the close of fact discovery or included data available to Impossible Foods before the close of fact discovery."  *Id.*

20.      These statements are false and misleading.  Tellingly, Ms. Benavides does not identify the specific documents there were allegedly "untimely disclosed."  That is because if she

---

VAN CUREN DECL. IN OPPOSITION TO IMPOSSIBLE LLC'S MOTION FOR POST-TRIAL RELIEF
Case No. 5:21-CV-02419-BLF (SVK)

had identified those documents' bates numbers, their contents and date of production could be easily ascertained—which would disprove her false statements.

21.     Presumably, Ms. Benavides' statement is based on Dr. Vanderhart's (incorrect) testimony that "when [she] wrote [her] report, [she] did not have some of the information that we have seen in the trial," including "those nice spreadsheets and those invoices."  Tr. at 763:5–8. But Dr. Vanderhart specifically identified only two such spreadsheets or invoices: Exhibit 691 (IF00035094) and Exhibit 692 (IF00003219).  Tr. at 818:16–821:20.

22.     In truth, Exhibit 691 was produced on April 18, 2025, and Exhibit 692 was produced on October 11, 2024.  All documents bates-stamped through IF00035095 were produced by April 18, 2025.

23.     Critically, both documents cited by Dr. Vanderhart were produced *before* her two expert reports dated May 5, 2025 and May 30, 2025—and *over ten months before the March 2026 trial*.

24.     Although Ms. Benavides did not identify any specific "untimely" documents, Impossible Foods has attempted to discern the "two occasions" that she alluded to.  In truth, Impossible Foods acted promptly and diligently at all times.

25.     First, on April 11, 2025, Impossible Foods' counsel informed Impossible LLC that it just discovered an additional repository of Nicholas Halla's documents.  Ex. 1 at 2. Impossible Foods explained that it was working to restore and produce those documents as soon as possible but did not yet have an estimated time of completion.  *Id.*  With the fact discovery cutoff approaching on April 14, Impossible LLC's counsel proposed postponing Mr. Halla's deposition until after the close of fact discovery.  *Id.* at 1.  Impossible Foods agreed.  *Id.* Attached hereto as **Exhibit 1** is a true and correct copy of this email thread between the parties' counsel, dated between March 27, 2025 and April 11, 2025.

26.     On April 18, 2025, Impossible Foods produced 49 additional documents, as Impossible Foods had previewed for Impossible LLC.

27.     On April 29, 2025, Impossible LLC took Mr. Halla's deposition after the close of fact discovery, as Impossible LLC had proposed and Impossible Foods agreed.

VAN CUREN DECL. IN OPPOSITION TO IMPOSSIBLE LLC'S MOTION FOR POST-TRIAL RELIEF
Case No. 5:21-CV-02419-BLF (SVK)

28.    In sum, Impossible Foods produced the 49 additional documents *before*—not "after"—Impossible LLC took Mr. Halla's deposition, and Impossible Foods made that production as quickly as possible (just four days after the close of fact discovery and only by necessity).  Every step of the way, Impossible Foods conferred with Impossible LLC, who agreed to take Mr. Halla's deposition after the close of fact discovery.

29.    Second, in January 2026, Impossible LLC requested that Impossible Foods supplement its document production with, among other things, updated apparel expenditures from 2025 (including any expenditures after the close of fact discovery in April 2025).

30.    Per Impossible LLC's request, Impossible Foods conducted a diligent search for any additional responsive documents.  Impossible Foods located two responsive invoices and produced them on March 2, 2026.  One was an invoice dated September 3, 2025, which could not have been produced before the April 2025 fact discovery cutoff.  The other was an invoice dated August 5, 2024, which Impossible Foods did not discover until its supplemental search in early 2026.

31.    In sum, there were not "many" invoices created before the cutoff but produced after the cutoff—rather, Impossible Foods identified a single such invoice, and Impossible Foods promptly supplemented its production with that invoice upon its discovery.  Notably, Impossible LLC did not offer or rely on that sole invoice at trial, so Impossible LLC cannot claim any prejudice from the supplemental production.

32.    Additionally, Impossible LLC faults Impossible Foods for admitting allegedly "late-disclosed third-party website screenshots" through a paralegal, Emmalee Giffin.  Dkt. 476-9, ¶ 4.  But as this Court held regarding similar third-party evidence, Impossible LLC's "objection is meritless, as this information is publicly available."  Dkt. 311 at 21 n.4.

33.    Impossible LLC also faults Impossible Foods for admitting certain trademark registrations through Ms. Giffin, allegedly because Ms. Giffin was "untimely" disclosed and Impossible LLC would only agree to Ms. Giffin authenticating a smaller set of exhibits that did not include the registrations.  Dkt. 476-9, ¶ 4.  Impossible LLC refused to agree to Ms. Giffin authenticating these publicly available, uncontroversial registrations, despite her limited role as a

VAN CUREN DECL. IN OPPOSITION TO IMPOSSIBLE LLC'S MOTION FOR POST-TRIAL RELIEF
Case No. 5:21-CV-02419-BLF (SVK)

custodial witness and having taken her deposition over a weekend during the trial by agreement of the parties.  Impossible LLC's position is meritless, and this Court already rejected it at the trial:

> The Court:  Are we really fighting about this? Are we really fighting about a custodian of records? Objections on the substance of the document, I understand, but authentication? Are they not authentic? Do you argue that these are not what they purport to be?
>
> Ms. Benavides:  We are not arguing that, Your Honor.
>
> The Court:  Then what are we doing here, Ms. Benavides? . . . [Y]ou've lost sight of what's actually important on what's getting to be the last day of trial. . . . That objection is overruled on the late disclosure of custodian. . . . [A] custodian of records . . . is just here to say . . . I downloaded it or I copied it. That's all this witness is doing. This could have been stipulated to, of course.

Tr. at 785:4–786:22; *see also* Standing Order re Civil Jury Trials § III.B.1 ("[T]he parties shall make every effort to stipulate to authenticity and foundation absent a legitimate (not tactical) objection.").

**Impossible Foods' Valid Subpoenas**

34.    Impossible LLC faults Impossible Foods for serving purportedly "abusive subpoenas" that allegedly "disrupted Impossible LLC's supplier relationships."  Dkt. 476 at 4:1–2.

35.    Tellingly, Impossible LLC never moved to quash any of Impossible Foods' subpoenas, let alone prevailed on such a motion.  Again, that is because Impossible Foods' subpoenas were valid, and such a motion would have been meritless.  Impossible Foods sought third-party discovery on legitimate topics such as the extent and timing of the distribution of Impossible LLC's accused products.

36.    In fact, it is Impossible LLC's subpoenas that were abusive.  Impossible Foods successfully moved to quash one of Impossible LLC's invalid subpoenas on an Impossible Foods investor, Viking Global Ventures.  Dkt. 203 at 1:21–23; Dkt. 229 at 6:4–6 (Van Keulen, M.J.:

6

VAN CUREN DECL. IN OPPOSITION TO IMPOSSIBLE LLC'S MOTION FOR POST-TRIAL RELIEF
Case No. 5:21-CV-02419-BLF (SVK)

"[T]he requests as posed are overbroad and substantially overbroad as to render them, frankly, beyond relevance."). Impossible Foods would have quashed even more of Impossible LLC's invalid subpoenas had they not been mooted.

**July 2025 Consolidated Petition for Cancellation in the TTAB**

37. On July 3, 2025, Impossible Foods filed in the TTAB a Consolidated Petition for Cancellation of eight of Impossible LLC's registered trademarks (Reg. Nos. 5155646, 5376208, 5387588, 5576376, 5590801, 5603025, 5620625, and 6571603). Dkt. 476-6 at 6–7.

38. Impossible Foods' Consolidated Petition sought to cancel additional registrations beyond the five sought to be cancelled in this district court action. *See* Dkt. 151 at 38.

39. Impossible Foods appropriately petitioned the TTAB to cancel all eight registrations in order to preserve the full scope of Impossible Foods' rights in the TTAB, and to promptly advise the TTAB of Magistrate Judge Van Keulen's decision, issued days earlier, finding a *prima facie* case that Impossible LLC had committed fraud on the Patent and Trademark Office. Dkt. 476-6 at 29. Magistrate Judge Van Keulen found that "more-likely-than-not, . . . Mr. Runyon knew what he was declaring" in his trademark applications was false, based on an attorney-client email chain that the Court ordered produced under the crime-fraud exception. *Id.* (quoting Dkt. 476-6 at 118).

40. In its Consolidated Petition, Impossible Foods correctly identified this district court action as a "[r]elated proceeding[]." Dkt. 476-6 at 6.

41. In its Motion, Impossible LLC states that "Impossible Foods' petition failed to disclose the existence of the existing, suspended TTAB Opposition regarding the *same marks*." Dkt. 476 at 6:27–28 (emphasis added).

42. This statement is misleading. In truth, the TTAB Opposition filed by Impossible LLC sought to deny registration to *Impossible Foods' mark*—not the eight Impossible LLC marks identified above. *Compare* Dkt. 476-3 at 10, *with* Dkt. 476-6 at 7. Because these TTAB proceedings attacked *different* marks, Impossible Foods did not view the TTAB Opposition as "related." In any event, once Impossible LLC raised the TTAB Opposition as potentially related, the TTAB exercised its discretion to consolidate the Opposition and Petition. Ex. 2 at 10.

VAN CUREN DECL. IN OPPOSITION TO IMPOSSIBLE LLC'S MOTION FOR POST-TRIAL RELIEF
Case No. 5:21-CV-02419-BLF (SVK)

43.     Additionally, in his declaration, Mr. Weslow criticizes Impossible Foods for not "provid[ing] information regarding [Impossible LLC's] correct address" in the Consolidated Petition.  Dkt. 476-2, ¶ 7.

44.     This criticism is baseless.  In fact, the TTAB criticized Impossible LLC for failing to update its email and address of record in its registrations, in violation of Impossible LLC's "ongoing duty to maintain its own accurate emails and address of record in its registrations." Ex. 2 at 6.  The TTAB found that the default entered against Impossible LLC was "entirely avoidable had Impossible LLC adhered to" its obligation to maintain current and accurate correspondence information in its registrations.  *Id.* at 5.

45.     In sum, the duty to update Impossible LLC's address fell on Impossible LLC, not Impossible Foods.  As the TTAB explained, the TTAB duly forwarded the Consolidated Petition to Impossible LLC's address of record, and the outdated address and consequent default was entirely the responsibility of Impossible LLC.  *Id.* at 5.

46.     Attached hereto as **Exhibit 2** is a true and correct copy of the TTAB decision on Impossible LLC's response to the default and motion to dismiss Impossible Foods' Consolidated Petition for Cancellation, dated December 8, 2025.

**The Parties' Legal Expenses**

47.     In his declaration, Joel Runyon claims that he has "*incurred* more than six million dollars in attorney's fees and expenses to defend against Impossible Foods' claims and to protect Impossible LLC's trademarks."  Dkt. 476-1 ¶ 7 (emphasis added).

48.     Notably, Mr. Runyon does not inform the Court whether he merely *accrued* $6 million in legal expenses or whether he actually *paid* that amount.  He also does not specify whether the expenses on "protecting[ing] Impossible LLC's trademarks" were incurred in this action, in the TTAB, or on other legal work separate from this action.

49.     Based on the limited data that Impossible LLC produced, it is highly doubtful that Impossible LLC actually spent $6 million in fees and expenses on this action.  Impossible LLC produced profit-and-loss statements for only three years.  Trial Ex. 2036, Dkt. 467-129; Trial Ex. 1260, Dkt. 467-106; Trial Ex. 713, Dkt. 467-58.  One of those statements shows total expenses

for "legal services"—for all legal work of any kind, whether related or unrelated to this action—in an amount as low as $78,125 per year.  Trial Ex. 2036 at 3, Dkt. 467-129.

50.     On the other hand, it seems likely—though Impossible LLC does not inform the Court one way or the other—that Impossible LLC may have avoided actually spending certain legal fees due to a contingency fee arrangement.

51.     Next, Impossible LLC argues that "Impossible Foods largely avoids any consequence by leveraging its insurance policies . . . to insulate it from any meaningful effect." Dkt. 476 at 8:7–10.

52.     That is false.  Impossible Foods' insurance did not cover this matter until after July 2025.  Consequently, Impossible Foods paid out-of-pocket for its legal fees for years—from Impossible LLC's cease-and-desist letter in November 2020 through July 2025—comprising millions of dollars.  The insurance carrier is <u>not</u> reimbursing Impossible Foods for pre-coverage attorneys' fees.

**Impossible LLC Publicly Touts the "Full Vindication" of Its Claims**

53.     In its Motion, Impossible LLC claims that it needs additional monetary compensation, including attorneys' fees and enhanced damages.  These claims are disingenuous.

54.     Within days of the jury's $3.25 million verdict, Impossible LLC, through its counsel, issued a press release stating that, among other things, it "secured a complete victory" and its "claims were fully vindicated."  The press release characterized the verdict as "particularly significant" and a "just result"—nowhere mentioning that the damages were supposedly insufficient or should be enhanced.

55.     Attached hereto as **Exhibit 3** is a true and correct copy of the press release issued by Impossible LLC's counsel, BraunHagey & Borden LLP, on March 26, 2026, entitled "Impossible Foods Held Liable for Intentional and Malicious Infringement of 'IMPOSSIBLE' Trademark Owned by Endurance Athlete and Influencer Joel Runyon -- Federal Jury Awards Compensatory and Punitive Damages," available at https://www.prnewswire.com/news-releases/impossible-foods-held-liable-for-intentional-and-malicious-infringement-of-impossible-

VAN CUREN DECL. IN OPPOSITION TO IMPOSSIBLE LLC'S MOTION FOR POST-TRIAL RELIEF
Case No. 5:21-CV-02419-BLF (SVK)

trademark-owned-by-endurance-athlete-and-influencer-joel-runyon--federal-jury-awards-compensatory-and-punitive-damages-302726106.html.

56.    As the Court is aware, one of Impossible LLC's claims was that an Impossible Foods cookbook infringed its trademark rights.  Even before the jury issued its verdict, Impossible Foods had stopped producing and selling the cookbook and will not do so in the future.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this Declaration was executed on the 16th day of April 2026, in Walla Walla, Washington.

*/s/ William Van Curen*
William Van Curen

VAN CUREN DECL. IN OPPOSITION TO IMPOSSIBLE LLC'S MOTION FOR POST-TRIAL RELIEF
Case No. 5:21-CV-02419-BLF (SVK)