J. Noah Hagey, Esq. (SBN: 262331)
  hagey@braunhagey.com
Adam S. Cashman, Esq. (SBN: 255063)
  cashman@braunhagey.com
Greg Washington, Esq. (SBN: 318796)
  gwashington@braunhagey.com
J. Tobias Rowe, Esq. (SBN: 305596)
  rowe@braunhagey.com
Oliver McNicholas, Esq. (SBN: 363554)
  omcnicholas@braunhagey.com
BRAUNHAGEY & BORDEN LLP
747 Front Street, 4th Floor
San Francisco, CA 94111
Telephone: (415) 599-0210

Marissa R. Benavides (*pro hac vice* admission)
  benavides@braunhagey.com
BRAUNHAGEY & BORDEN LLP
200 Madison Avenue, 23rd Floor
New York, NY 10016
Telephone: (646) 829-9403

*Attorneys for Impossible LLC*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| IMPOSSIBLE FOODS INC., | Case No. 5:21-cv-02419-BLF (SVK) |
| Plaintiff / Counter-Defendant, | **IMPOSSIBLE LLC'S REPLY IN SUPPORT OF MOTION FOR POST-TRIAL RELIEF** |
| v. | |
| IMPOSSIBLE LLC, | **Judge:** Hon. Beth Labson Freeman |
| Defendant / Counter-Plaintiff. | **Date:** April 23, 2026 |
| | **Time:** 9:00 a.m. |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................................. ii

INTRODUCTION ........................................................................................................................... 1

ARGUMENT ................................................................................................................................... 1

I.   THE COURT SHOULD AWARD IMPOSSIBLE LLC FEES AND COSTS .................. 1

    A.   Impossible Foods's Opposition Violates Court Rules............................................ 2

    B.   The Jury's Finding of Willful Infringement Supports a Fee Award ...................... 2

    C.   The Weakness of Impossible Foods's Case Supports a Fee Award........................ 3

        1.   Avoiding Summary Judgment Carries "Little or No Weight".................... 3

        2.   Impossible Foods's Defenses to Infringement Were Exceptionally Weak.. 4

        3.   Impossible Foods's Infringement Claims Were Exceptionally Weak ......... 5

        4.   Impossible Foods's Fraud Claims Were Baseless ...................................... 5

    D.   Impossible Foods's Litigation Conduct Was Unreasonable.................................. 7

    E.   Motivation and Deterrence Support a Fee Award .................................................. 8

    F.   Compensation Supports a Fee Award..................................................................... 9

II.   THE COURT SHOULD AWARD ENHANCED DAMAGES TO IMPOSSIBLE LLC ................................................................................................. 9

    A.   The Court Should Enhance the Jury's Damages Award for Apparel................... 10

    B.   The Court Should Award Damages for the Infringing Cookbooks...................... 10

III.   THE COURT SHOULD ENTER A PERMANENT INJUNCTION............................. 10

    A.   Impossible LLC Faces Irreparable Harm ............................................................ 11

    B.   Impossible LLC Has No Adequate Remedy at Law ............................................ 11

    C.   The Balance of Equities and Public Interest Favor an Injunction ....................... 12

    D.   Impossible LLC's Proposed Injunction is Narrowly Tailored ............................ 12

IV.   THE COURT SHOULD ORDER REJECTION OF IMPOSSIBLE FOODS'S INFRINGING APPLICATION.................................................................................... 12

CONCLUSION.............................................................................................................................. 12

## TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*AK Futures LLC v. Boyd St. Distro, LLC,*
35 F.4th 682 (9th Cir. 2022) ................................................................................................ 11

*Blackwell v. Foley,*
724 F. Supp. 2d 1068 (N.D. Cal. 2010) ................................................................................. 9

*Brighton Collectibles, LLC v. Believe Prod., Inc.,*
2018 WL 1381894 (C.D. Cal. Mar. 15, 2018) ................................................................... 5, 6

*Century 21 Real Est. Corp. v. Sandlin,*
846 F.2d 1175 (9th Cir. 1988) ............................................................................................. 11

*Chance v. Pac-Tel Teletrac Inc.,*
242 F.3d 1151 (9th Cir. 2001) ............................................................................................... 6

*Earthquake Sound Corp. v. Bumper Indus.,*
352 F.3d 1210 (9th Cir. 2003) ............................................................................................... 3

*Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.,*
778 F.3d 1059 (9th Cir. 2015) ............................................................................................ 2, 9

*Hokto Kinoko Co. v. Concord Farms, Inc.,*
810 F. Supp. 2d 1013 (C.D. Cal. 2011) ............................................................................... 12

*Iconic Mars Corp. v. Kaotica Corp.,*
2025 WL 405701 (S.D. Cal. Feb. 5, 2025) .................................................................... 2, 5, 6

*In re Bose Corp.,*
580 F.3d 1240 (Fed. Cir. 2009) ............................................................................................. 6

*Invision Media Servs., Inc. v. Glen J. Lerner,*
175 F. App'x 904 (9th Cir. 2006) ........................................................................................... 3

*Jackson v. Gaspar,*
2022 WL 2155975 (C.D. Cal. Feb. 24, 2022) ....................................................................... 7

*Jason Scott Collection, Inc. v. Trendily Furniture, LLC,*
68 F.4th 1203 (9th Cir. 2023) ....................................................................................... 2, 9, 10

*La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.,*
762 F.3d 867 (9th Cir. 2014) ................................................................................................. 4

IMPOSSIBLE LLC'S REPLY IN SUPPORT OF MOTION FOR POST-TRIAL RELIEF

*Lerner & Rowe PC v. Brown Engstrand & Shely LLC*,
119 F.4th 711 (9th Cir. 2024) ............................................................................................... 5

*Marketquest Grp. v. BIC Corp.*,
862 F.3d 927 (9th Cir. 2017) ................................................................................................. 5

*Metro Pub., Ltd. v. San Jose Mercury News*,
987 F.2d 637 (9th Cir. 1993) ............................................................................................... 11

*Nelson-Ricks Cheese Co., Inc. v. Lakeview Cheese Co., LLC*,
775 F. App'x 350 (9th Cir. 2019) ........................................................................................... 7

*OmniGen Rsch., LLC v. Yongqiang Wang*,
2017 WL 5505041 (D. Or. Nov. 16, 2017) .......................................................................... 10

*OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*,
897 F.3d 1008 (9th Cir. 2018) ............................................................................................... 6

*Paige LLC v. Shop Paige LLC*,
2024 WL 3594450 (C.D. Cal. July 10, 2024) .............................................................. 5, 6, 8

*Partners for Health & Home, L.P. v. Seung Wee Yang*,
488 B.R. 431 (C.D. Cal. 2012) .............................................................................................. 9

*Quia Corp. v. Mattel, Inc.*,
2011 WL 2749576 (N.D. Cal. July 14, 2011) ....................................................................... 9

*Rhoades v. Avon Prods., Inc.*,
504 F.3d 1151 (9th Cir. 2007) ............................................................................................. 12

*San Diego Comic Convention v. Dan Farr Prods.*,
807 F. App'x 674 (9th Cir. 2020) ........................................................................................... 8

*San Diego Comic Convention v. Dan Farr Prods.*,
336 F. Supp. 3d 1172 (S.D. Cal. 2018) ................................................................................ 11

*Sazerac Co., Inc. v. Fetzer Vineyards, Inc.*,
2017 WL 6059271 (N.D. Cal. Dec. 7, 2017) ......................................................................... 3

*Semas v. Chemetall US, Inc.*,
2025 WL 822932 (D. Nev. Mar. 14, 2025) ............................................................................ 7

*SunEarth, Inc. v. Sun Earth Solar Power Co.*,
839 F.3d 1179 (9th Cir. 2016) ........................................................................................... 2, 4

*Teutscher v. Woodson*,
835 F.3d 936 (9th Cir. 2016) ................................................................................................. 9

IMPOSSIBLE LLC'S REPLY IN SUPPORT OF MOTION FOR POST-TRIAL RELIEF

*Tokidoki, LLC v. Fortune Dynamic, Inc.*,
   473 F. App'x 522 (9th Cir. 2011) ........................................................................................ 3

*Watec Co. v. Liu*,
   403 F.3d 645 (9th Cir. 2005) ............................................................................................... 3

*Y.Y.G.M. SA v. Redbubble, Inc.*,
   75 F.4th 995 (9th Cir. 2023) ........................................................................................ 11, 12

**Statutes**

15 U.S.C. § 1119 ....................................................................................................................... 12

**Other Authorities**

4 McCarthy on Trademarks and Unfair Competition § 30:2.50 (5th ed.) ......................................... 4

N.D. Cal. ADR L.R. 6-12 ............................................................................................................ 2, 8

IMPOSSIBLE LLC'S REPLY IN SUPPORT OF MOTION FOR POST-TRIAL RELIEF

**INTRODUCTION**

In its Opposition ("Opp.") to Impossible LLC's Motion for Post-Trial Relief ("Mot."), Impossible Foods continues to dodge and deflect, but offers no compelling response to Impossible LLC's showing that this is an extraordinary case that merits an award of attorney's fees and costs, damages enhancements, and injunctive relief. Indeed, Impossible Foods concedes that the jury found it infringed both willfully and with malice, fraud, or oppression, and further, that such a finding of heightened culpability merits the post-trial relief requested under governing Ninth Circuit law. Impossible Foods also does not meaningfully dispute that it (1) offered virtually no evidence to support its non-infringement defense; (2) barely attempted to prove its own infringement claims, which were directly contradicted by its two primary witnesses and were categorically rejected by the jury; (3) offered no evidence at all to support its abandonment defense, which it insisted on maintaining despite the lack of supporting evidence; (4) insisted on pressing dubious fraud claims yet offered only attorney argument to support them as to two registrations, and nothing whatsoever as to the remaining two; (5) brought duplicative legal proceedings before the Trademark Trial and Appeal Board ("TTAB") involving the very same issues as were litigated here, including fraud claims that it continues to maintain today, despite that those claims are now *res judicata*; (6) leveraged its vastly larger resources and insurance coverage to expand and prolong litigation against a far smaller opponent; and (7) withheld documents necessary for a full accounting of its infringing expenditures while admittedly wiping all emails and custodial documents of two of its most knowledgeable and relevant witnesses. That is more than sufficient to justify an award of fees and enhanced damages. Together with the jury's finding that Impossible Foods acted both willfully *and* with malice, fraud, or oppression, all relevant factors weigh strongly in favor of awarding the post-trial relief sought.

**ARGUMENT**

## I.   THE COURT SHOULD AWARD IMPOSSIBLE LLC FEES AND COSTS

Impossible Foods concedes that an award of fees is appropriate if the Court finds this case is "exceptional" (Opp. 5), which means simply that the case "stands out from others with respect to the substantive strength of a party's litigating position [] or the unreasonable manner in which the

case was litigated." *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1180 (9th Cir. 2016). This is clearly such a case. Impossible Foods's Opposition improperly attempts to relitigate the merits and recast the jury's findings, but does not come close to substantiating any proper basis on which to decline to enter a fee award in this exceptional case.

### A.   Impossible Foods's Opposition Violates Court Rules

Impossible Foods's improper arguments rely in substantial part on declarations that violate the Local Rules and should therefore be stricken or disregarded. Local Rule 7-5(b) expressly prohibits argument in declarations, both because it is improper and because it operates as an end-run around the operative page limits, yet Impossible Foods relies on a lengthy and argumentative declaration from in-house counsel William Van Curen. (Dkt. 480-05.) Similarly, Impossible Foods relies on a declaration from its former counsel purporting to recount (inaccurate) details of the parties' settlement discussions (Dkt. 480-01), in violation of ADR L.R. 6-12(a). All of this justifies striking (or at least disregarding) the portions of the Opposition that violate the governing rules, including Van Curen Decl. ¶¶ 5-6, 12, and Henn Decl. ¶¶ 9-12.

### B.   The Jury's Finding of Willful Infringement Supports a Fee Award

Impossible Foods infringed Impossible LLC's marks both willfully *and* with malice, fraud, or oppression, demonstrating that this case is "exceptional," and strongly supporting a fee award. The long-established law of this Circuit holds that "[a] case is considered exceptional 'when the infringement is malicious, fraudulent, deliberate, or willful.'" *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1078 (9th Cir. 2015). Indeed, that standard has become "less stringent" over time, such that any finding of willful infringement is sufficient—to say nothing of a finding of malice, fraud, or oppression. *Jason Scott Collection, Inc. v. Trendily Furniture, LLC*, 68 F.4th 1203, 1223 n.13 (9th Cir. 2023). Despite boldly accusing Impossible LLC of "misrepresenting" *Jason Scott* (Opp. 6), Impossible Foods never actually addresses the relevant holding. Nor does it attempt to distinguish *Iconic Mars Corp. v. Kaotica Corp.*, 2025 WL 405701, at *6 (S.D. Cal. Feb. 5, 2025), which similarly held that "[w]illful infringement alone can satisfy the exceptional case standard" and awarded fees after the jury found willful infringement.

The Ninth Circuit has expressly rejected Impossible Foods's argument that "knowing,

IMPOSSIBLE LLC'S REPLY IN SUPPORT OF MOTION FOR POST-TRIAL RELIEF

willful, deliberate or malicious conduct does not per se show exceptionality," holding that this position "do[es] not reflect the law of this circuit." *Earthquake Sound Corp. v. Bumper Indus.*, 352 F.3d 1210, 1217 (9th Cir. 2003) (affirming award based on willfulness alone). Impossible Foods's cases are not to the contrary. Impossible Foods claims *Watec Co. v. Liu*, 403 F.3d 645, 656-57 (9th Cir. 2005) held that fees cannot be awarded based on willfulness alone. (Opp. 1, 5-6.) But *Watec* said the opposite: it reversed the court's fee award because the jury *did not* find "malicious, fraudulent, deliberate or willful conduct," which would have been sufficient. *Id*. at 656. Here, the jury expressly found willfulness **and** oppression, fraud, or malice, either of which satisfies the standard in *Watec* and in *Invision Media Servs., Inc. v. Glen J. Lerner*, 175 F. App'x 904, 906 (9th Cir. 2006). And Impossible Foods's other cases simply demonstrate that courts are not *required* to award fees for willful infringement; however, all involved mitigating factors and none involved a finding of malice, fraud, or oppression. (Opp. 5-7.) The Court should follow the many cases cited in Impossible LLC's Motion awarding fees for willful infringement. (Mot. 7-9.)

### C.     The Weakness of Impossible Foods's Case Supports a Fee Award

The objective lack of support for Impossible Foods's claims also supports a fee award. Its Opposition offers only a tepid defense of its claims and litigation conduct.

#### 1.     Avoiding Summary Judgment Carries "Little or No Weight"

Impossible Foods's primary argument is that it avoided summary judgment, so no fee award should be entered. (Opp. 7-9.) But the Ninth Circuit has directly addressed this argument, holding that a "summary judgment ruling should [be] afforded little or no weight in deciding whether to award fees," particularly where "the factual contentions upon which [plaintiff] relied at the summary judgment stage were not borne out at trial." *Tokidoki, LLC v. Fortune Dynamic, Inc.*, 473 F. App'x 522, 525 (9th Cir. 2011) (reversing denial of fees). That is what happened here: Impossible Foods appealed to the purportedly "fact-intensive" nature of the claims at issue (*see* Dkt. 274 at 11), yet largely failed to introduce evidence of multiple essential elements of its claims at trial. An award of fees is therefore warranted. *See Sazerac Co., Inc. v. Fetzer Vineyards, Inc.*, 2017 WL 6059271, at *1 (N.D. Cal. Dec. 7, 2017), *aff'd*, 786 F. App'x 662 (9th Cir. 2019) (awarding fees where plaintiff did not "present evidence to succeed at trial" and "relied on the

meager disputed facts that enabled it to survive summary judgment").

### 2. Impossible Foods's Defenses to Infringement Were Exceptionally Weak

Impossible Foods resisted liability for trademark infringement and unfair competition, yet offered little at trial to substantiate its position. *SunEarth*, 839 F.3d at 1181. It never countered Impossible LLC's showing under the *Sleekcraft* factors, essentially conceding liability and pinning all hopes on its defenses of abandonment and fraud. But Impossible Foods never offered any evidence of abandonment at all, and even now avoids discussing it in its Opposition, thereby conceding Impossible LLC's showing that the defense was frivolous. (*See* Mot. 10.)

Impossible Foods's fraud defense was also baseless: as explained in detail below, it never introduced evidence regarding two of the four registrations it challenged, and its claims regarding the other two were objectively meritless. (Section I.C.4, *infra*.) In any event, the fraud claims were no "defense" to liability for infringement because they challenged only a subset of the registrations at issue and did not affect the common law rights—facts that Impossible Foods also ignored in its Opposition. (Dkt. 241(Impossible LLC Third Am. Answer & Counterclaim) at 58-59.)

Impossible Foods next argues that it had a "defense" of "failure to prove damages." (Opp. 9.) But that is also errant because damages are not an element of infringement: "In trademark cases, it is not necessary for plaintiff to prove actual damage or injury to state a prima facie case of infringement." 4 McCarthy on Trademarks and Unfair Competition § 30:2.50 (5th ed.). At most, Impossible Foods's arguments about damages were an exercise in mitigation, not a defense to liability. And even that was doubtful, as there was extensive evidence of injury to Impossible LLC, and the jury found substantial harm. (*See, e.g.,* Tr. 213:4-219:20; 271:12-272:16; 1032:2-1033:16 (Runyon); 684:22-685:11; 702:16-709:16 (Palmatier).) If Impossible Foods disputed only the existence or amount of damages, it had no reasonable basis to force a trial on liability.

On that score, Impossible Foods offers virtually nothing in opposition. (*See* Opp. 9-10.) Indeed, its argument regarding liability fails to cite a single trial exhibit or the testimony of a single witness. (*Id.*) Instead, it broadly asserts that there was no "actual confusion," but actual confusion is not required to prove infringement. *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 876 (9th Cir. 2014). And the trial record disproves that assertion as well, as consumers

repeatedly confused the companies' apparel or mistakenly believed that Impossible LLC was affiliated with Impossible Foods when encountering its products. (Trial Tr. 213:4-214:3; 215:18-23; 217:11-16; 263:5-7; 271:12-21; 434:19-435:3; 437:4-5.) Impossible Foods's suggestion that false associations are incompatible with infringement is wrong as a matter of law: "reverse confusion" occurs when consumers "come to *associate* the [plaintiff's mark] with [d]efendants." *Marketquest Grp. v. BIC Corp.*, 862 F.3d 927, 932 (9th Cir. 2017) (emphasis added). Such marginal defenses to infringement strongly support an award of fees. *Brighton Collectibles, LLC v. Believe Prod., Inc.,* 2018 WL 1381894, at *2 (C.D. Cal. Mar. 15, 2018); *Paige LLC v. Shop Paige LLC*, 2024 WL 3594450, at *6 (C.D. Cal. July 10, 2024); *Iconic Mars*, 2025 WL 405701, at *7.

### 3.    Impossible Foods's Infringement Claims Were Exceptionally Weak

Impossible Foods barely defends its infringement claims, effectively conceding Impossible LLC's argument that the claims were not viable and brought only to ratchet up the leverage on a far smaller litigant. (Mot. 11.) The only *Sleekcraft* factors cited are "overlapping marketing channels" on the internet and the possibility of "expansion." (Opp. 4, 10.) But mutual use of the internet does not support a finding of infringement. *Lerner & Rowe PC v. Brown Engstrand & Shely LLC*, 119 F.4th 711, 725 (9th Cir. 2024) (full citation omitted). And the "expansion" evidence—potentially marketing liquid heme in Africa and India—has nothing to do with any issue in this case. (Tr. 420:2-17.) Indeed, Impossible Foods thought so little of its infringement claims that it ***never*** introduced evidence of actual trademarked products in commerce, waited until the end of trial to introduce the trademarks themselves, did not bother to bring a trial witness who believed in the likelihood of confusion, and offered no response to the highly persuasive testimony of its own witnesses that there was nothing confusing about the accused products at all.

In what can only be viewed as a Hail Mary, Impossible Foods cites Dr. Palmatier's survey, but that did not show likely confusion because it was designed to test a different infringement theory, and was not introduced until the very end of the trial, so cannot be used *ex post* to justify any of Impossible Foods's baseless infringement allegations or strategy up until that point.

### 4.    Impossible Foods's Fraud Claims Were Baseless

Despite blustering that its fraud claims were "strong," Impossible Foods all but concedes

IMPOSSIBLE LLC'S REPLY IN SUPPORT OF MOTION FOR POST-TRIAL RELIEF

that two of its four claims were entirely unsupported. As explained (Mot. 5), there was no evidence to support Impossible Foods's fraud claims regarding Reg. No. 5387588 for IMPOSSIBLE NUTRITION and Reg. No. 5620625 for IMPOSSIBLE, something Impossible Foods ignores in its Opposition and thereby concedes. Impossible Foods's decision to litigate these claims through trial without any evidence was an egregious waste of resources and calls for a fee award. *Brighton*, 2018 WL 1381894, at *2; *Paige*, 2024 WL 3594450, at *6; *Iconic Mars*, 2025 WL 405701, at *7.

Impossible Foods's remaining two claims regarding the IMPOSSIBLE FITNESS registrations were also proven meritless at trial, where the unrebutted testimony showed that the challenged items were in use and available for purchase. (Tr. 323:15-324:7; 324:24-325:6; 329:18-23.) Impossible Foods's assertion that Mr. Runyon "lied" in this testimony is reckless and false: as Impossible Foods well knows, Mr. Runyon gave the same testimony at his August 5, 2025 deposition. (Third Runyon Dep. Tr. 542:4–17, 543:7–22.) Impossible Foods's argument that Impossible LLC should have come forward with additional "documentary evidence" negating fraud (Opp. 8) gets the burden of proof backward: it was Impossible Foods that had to prove its claims by "clear and convincing evidence," a standard it knew or should have known it would never satisfy on this paltry record. *OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, 897 F.3d 1008, 1020 (9th Cir. 2018). Further, Impossible Foods's pedantic insistence that availability of items through "print-on-demand" vendors is not a qualifying "use" (Opp. 8) is incorrect, because "advertising combined with other non-sales activity is sufficient to establish use in commerce." *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1158 (9th Cir. 2001). And in any event, there was no evidence that a layperson like Mr. Runyon was tracking these esoteric legal distinctions as part of a larger conspiracy to defraud both the PTO and his own longtime trademark lawyer. *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009). On this record, Impossible Foods should never have forced a trial on fraud claims that it failed to coherently explain or omitted to substantiate entirely.

Without credible evidence for its claims, Impossible Foods again seeks refuge in the pre-trial record as exonerating its failures at trial. But once more, Impossible Foods misstates Magistrate Judge Van Keulen's Order, which disclaimed any finding of fraud on the merits. (Dkt. 240 at 4.) Venturing even further, Impossible Foods asserts that the claims were strong because it

was granted leave to amend its complaint to include them. (Opp. 8.) However, that is obviously flawed, as the Court made no comment about the strength of the claims while granting leave under the lenient pleading standards. (Dkt. 149 at 7.) And, once more, Impossible Foods's reliance on the summary judgment order fails for the reasons explained *supra*, and because the issue at summary judgment was standing, not the lack of evidence to support its claims.

### D.    Impossible Foods's Litigation Conduct Was Unreasonable

Impossible Foods's unreasonable litigation conduct further supports an award of fees.

***Maintaining Meritless Claims Through Trial***. Impossible Foods does not respond to Impossible LLC's showing that it increased the cost and complexity of the case by maintaining meritless claims, defenses, and damages theories. (Mot. 9-13.) This shows unreasonable litigation conduct. *Jackson v. Gaspar*, 2022 WL 2155975, at *5 (C.D. Cal. Feb. 24, 2022) (finding an exceptional case based on "antagonistic discovery conduct" that was "improperly motivated and sought to drag out or obfuscate proceedings"); *Nelson-Ricks Cheese Co., Inc. v. Lakeview Cheese Co., LLC*, 775 F. App'x 350, 352 (9th Cir. 2019) (awarding fees where plaintiff "did not have a colorable claim to begin with and pursued its litigation in an unreasonable manner").

***Vexatious TTAB Proceedings***. Impossible Foods's explanations for its duplicative TTAB proceeding make no sense. First, Impossible Foods argues the duplicative filing was appropriate because it sought to cancel "additional marks" (Opp. 11.) But five of the eight registrations in its TTAB petition were already subject to identical challenges in this action, and the remaining three were at issue in this case as part of Impossible LLC's infringement claims, so the TTAB filing was entirely duplicative. (*Compare* Dkt. 151 at 34-37 *with* Dkt. 476-6.) And Impossible Foods's suggestion that it needed "to inform the TTAB of Judge Van Keulen's fraud finding" (Opp. 11) is nonsense: the TTAB is an administrative tribunal that decides trademark disputes, not a repository for discovery orders from District Courts. The only purpose of the TTAB filing was to harass and burden a smaller party with duplicative litigation in multiple forums—a fact that is further evidenced by Impossible Foods's ongoing refusal to withdraw the cancellation petition even now that it is *res judicata*, thereby forcing continued litigation and expense for no valid reason. *See Semas v. Chemetall US, Inc.*, 2025 WL 822932, at *7 (D. Nev. Mar. 14, 2025) (awarding fees

IMPOSSIBLE LLC'S REPLY IN SUPPORT OF MOTION FOR POST-TRIAL RELIEF

where "filing a second, parallel suit [] was a clear attempt at a 'second bite of the apple'").

*Improper Subpoenas*. Impossible Foods does not attempt to justify its subpoenas to Impossible LLC's suppliers or dispute that they had the intended effect of causing them to stop working with Impossible LLC. Instead, Impossible Foods faults Impossible LLC for not moving to quash while boasting nonsensically about its own success in quashing a different subpoena. (Opp. 3, 11.) But tellingly, Impossible Foods did not introduce a single piece of evidence obtained through any of its subpoenas at trial, suggesting that they were not relevant and instead designed to harass and burden a smaller party that could not fight tooth-and-nail over every subpoena.

*Deletion of Documents*. Impossible Foods concedes that it deleted the documents of the most knowledgeable witnesses regarding its adoption of the infringing mark, and also does not dispute that it forced Impossible LLC to file three separate contested motions to obtain the basic facts underlying that deletion. (Opp. 3, 11.) Instead, it faults Impossible LLC for not seeking spoliation sanctions, but elides that the deletion of its general counsel's emails and documents eliminated the evidence showing when litigation became reasonably foreseeable. (*Id.*) Having avoided a spoliation sanction (in part because of the document deletion itself), Impossible Foods cannot be heard to claim that the absence of that sanction somehow validates its conduct.

*Failure to Meaningfully Participate in Settlement Discussions*. Impossible Foods does not deny that it failed to participate in settlement discussions in the manner directed by Judge Cousins, or that it suggested mediation in part to delay trial on the merits. (Opp. 11.) And while Impossible Foods's other arguments violate ADR L.R. 6-12(a) and so cannot be addressed without causing further violation, suffice it to say that its assertions are wrong, and that Impossible LLC maintains that Impossible Foods never made an earnest effort to resolve this dispute. (Mot. 5-6.)

All of this litigation conduct was unreasonable and supports a fee award. *San Diego Comic Conv. v. Dan Farr Prods.*, 807 F. App'x 674, 676 (9th Cir. 2020); *Paige*, 2024 WL 3594450, at *6.

### E.    Motivation and Deterrence Support a Fee Award

Impossible Foods argues in passing that motivation and deterrence do not favor a fee award because it did not intend to "capitalize on I[mpossible]LLC's goodwill." (Opp. 13.) But that is merely a feature of every reverse confusion case, where willfulness is established not by passing

IMPOSSIBLE LLC'S REPLY IN SUPPORT OF MOTION FOR POST-TRIAL RELIEF

off but by knowing or reckless indifference to the plaintiff's trademark rights. (*See* Dkt. 457, Instr. No. 61); *Quia Corp. v. Mattel, Inc.*, 2011 WL 2749576, at *8 (N.D. Cal. July 14, 2011). Here, the jury not only found that Impossible Foods acted willfully, but with "oppression, fraud, or malice," the ***highest*** level of culpability, and one that strongly supports a fee award. *Cf. Jason Scott*, 68 F.4th at 1223; (Dkt. 460). And Impossible Foods's suggestion that Impossible LLC was the aggressor because it sent a cease-and-desist letter and opposed a trademark application is meritless given Impossible Foods's subsequent conduct: it responded by suing Impossible LLC and Mr. Runyon, expanded the case and prolonged it unnecessarily, maintained multiple claims and defenses without evidence, initiated and maintained duplicative proceedings, forced Impossible LLC to defend damages and disgorgement allegations that Impossible Foods later abandoned, and engaged in the paradigmatic acts of trademark bullying discussed above.

### F.     Compensation Supports a Fee Award

Impossible Foods does not dispute the rule that fee awards should be granted when they "encourag[e] the enforcement of trademark rights by more fully compensating Plaintiffs." *Fifty-Six*, 778 F.3d at 1079. Instead, Impossible Foods sneers that no fees should be awarded because Impossible LLC's claims are "likely brought on contingency." (Opp. 1.) But that is not correct (*see* Runyon Decl. ¶¶ 2-4) and, in any event, is legally irrelevant, as courts regularly award fees to contingency counsel, who lack incentives to overbill given the uncertain nature of the payoff. *See Partners for Health & Home, L.P. v. Seung Wee Yang*, 488 B.R. 431, 438 (C.D. Cal. 2012), *aff'd*, 671 F. App'x 475 (9th Cir. 2016) (awarding fees in a trademark infringement case with contingency billing); *Blackwell v. Foley*, 724 F. Supp. 2d 1068, 1080 (N.D. Cal. 2010).

## II.     THE COURT SHOULD AWARD ENHANCED DAMAGES TO IMPOSSIBLE LLC

The Court has discretion to enhance damages up to three times the actual award. Impossible Foods seeks to avoid this by relying on arguments about causation and the size of the award (Opp. 14-16), but the jury rejected these arguments through a verdict based on substantial evidence, which is binding here. *Teutscher v. Woodson*, 835 F.3d 936, 944 (9th Cir. 2016). Enhanced damages are proper as damages were understated due to Impossible Foods's withholding of apparel expenditure evidence and improper objection to corrective advertising damages for cookbooks.

### A.      The Court Should Enhance the Jury's Damages Award for Apparel

The Court should enhance the jury's damages award to account for Impossible Foods's failure to fully disclose its spending on the infringing apparel. Impossible Foods concedes that it produced documents showing higher apparel spending after fact discovery closed. (Opp. 15.) And it does not dispute that *even this* production was incomplete because it included only a fraction of the invoices reflecting infringing apparel spending. (*See* Mot. 15-16 (raising issue); Opp. 15 (not responding).) Enhancement is therefore warranted to "provide proper redress to an otherwise undercompensated plaintiff where imprecise damage calculations fail to do justice, particularly where the imprecision results from defendant's conduct." *OmniGen Rsch., LLC v. Yongqiang Wang*, 2017 WL 5505041, at *17 (D. Or. Nov. 16, 2017).

### B.      The Court Should Award Damages for the Infringing Cookbooks

The Court should also enhance damages to account for the infringing cookbooks, because the evidence showed that they were promotional products for which corrective advertising damages were appropriate. Impossible Foods claims this is precluded because cookbook damages were not separately listed on the verdict form. (Opp. 15.) That is wrong: "a court may grant 'a just monetary award' under § 1117 even where a plaintiff cannot prove actual damages," so the verdict form is irrelevant. *Jason Scott*, 68 F.4th at 1222. Impossible Foods also errs in its misstatement of the Motion *in Limine* Order (Opp. 15-16), which was limited to Dr. Vanderhart's testimony and did not categorically preclude corrective advertising damages for the cookbook. (Dkt. 383.) And the evidence amply supported that the infringing cookbook was promotional in nature, as Impossible Foods did not separately advertise or promote the cookbook, did not have a business plan for it, and did not "ever generate any significant revenue from sales of the cookbook." (Tr. 596:1-24.) An additional enhanced corrective advertising award is therefore warranted.

## III.    THE COURT SHOULD ENTER A PERMANENT INJUNCTION

Despite the jury's unanimous verdict that it willfully infringed Impossible LLC's trademarks, Impossible Foods claims no injunction should issue. But that would be anathema to Ninth Circuit law, under which "injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's

IMPOSSIBLE LLC'S REPLY IN SUPPORT OF MOTION FOR POST-TRIAL RELIEF

continuing infringement." *Century 21 Real Est. Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988). In a tacit concession, Impossible Foods submits its own proposed permanent injunction (Dkt. 480-9), which varies in only minor respects from Impossible LLC's proposal.

### A. Impossible LLC Faces Irreparable Harm

Impossible Foods concedes that Impossible LLC is entitled to a presumption of irreparable harm as a result of the jury's verdict. (Opp. 17.) It fails to overcome this presumption.

*First*, Impossible Foods argues there is no prospect of irreparable harm from the infringing cookbooks because it has purportedly "stopped selling" them. (Opp. 17.) This claim is dubious at best: as of today, the infringing cookbook is ***still for sale*** on Amazon (Benavides Decl. ¶ 4, Ex. 3.) Regardless, an infringer cannot avoid an injunction by stating after trial that it intends to stop selling the infringing products. *AK Futures LLC v. Boyd St. Distro, LLC*, 35 F.4th 682, 694 (9th Cir. 2022) (defendant's "stated intent to stop selling" the accused products "fails to overcome the District Court's finding and presumption of irreparable harm").

*Second*, Impossible Foods argues Impossible LLC was not injured by its infringement. (Opp. 17.) The jury's finding of "injury to Impossible LLC's goodwill" (Dkt. 457, Instruction 64), which is binding in equity, forecloses this argument; and the threat of ongoing injury to goodwill establishes irreparable harm. *San Diego Comic Conv. v. Dan Farr Prods.*, 336 F. Supp. 3d 1191, 1197 (S.D. Cal. 2018) (finding irreparable harm based on threatened "loss of goodwill"). In any event, likelihood of confusion is sufficient to show irreparable harm. *Metro Pub., Ltd. v. San Jose Mercury News*, 987 F.2d 637, 640 (9th Cir. 1993) ("demonstrat[ing] a likelihood of confusion . . . ordinarily presume[s] . . . irreparable harm").

*Third*, Impossible Foods's argument regarding delay is without merit because, as Impossible LLC explained in its brief on laches, it did not delay filing suit, and Impossible Foods was not prejudiced. (Dkt. 461.) And pre-suit delay alone is insufficient to rebut the presumption of irreparable harm. *Y.Y.G.M. SA v. Redbubble, Inc.*, 75 F.4th 995, 1006 (9th Cir. 2023).

### B. Impossible LLC Has No Adequate Remedy at Law

Impossible Foods acknowledges that irreparable harm also establishes lack of an adequate remedy at law. (Opp. 17 (noting "parallel" standard).) Its insistence that Impossible LLC

IMPOSSIBLE LLC'S REPLY IN SUPPORT OF MOTION FOR POST-TRIAL RELIEF

nonetheless has an adequate remedy at law is meritless. *See Hokto Kinoko Co. v. Concord Farms, Inc.*, 810 F. Supp. 2d 1013, 1033 (C.D. Cal. 2011), *aff'd,* 738 F.3d 1085 (9th Cir. 2013) (granting a permanent injunction because "damages . . . will not remedy [defendant]'s future acts").

### C.    The Balance of Equities and Public Interest Favor an Injunction

Impossible Foods does not argue it would be burdened by an injunction, so the balance of equities tips in favor of Impossible LLC. (Opp. 18.) Its arguments on the public interest repeat its allegations regarding irreparable harm, which are without merit for the reasons explained above.

### D.    Impossible LLC's Proposed Injunction is Narrowly Tailored

Impossible Foods concedes that a permanent injunction must enter by submitting its own proposed injunction that largely tracks Impossible LLC's version. To the extent minor differences remain, the Court should adopt Impossible LLC's version under the rule that "[a] successful trademark plaintiff 'is entitled to effective relief; and any doubt in respect of the extent thereof must be resolved in its favor as the innocent producer and against the [infringer], which has shown by its conduct that it is not to be trusted.'" *Y.Y.G.M.*, 75 F.4th at 1006.

## IV.    THE COURT SHOULD ORDER REJECTION OF IMPOSSIBLE FOODS'S INFRINGING APPLICATION

Impossible Foods admits that the Court has the power under 15 U.S.C. § 1119 to order the rejection of Impossible Foods's Trademark Application No. 88855875. (Opp. 19-20.) It nonetheless argues the issues are different because the jury found that "cookbooks" infringe, while Impossible Foods's trademark application covers "[p]roviding information about recipes, ingredients and cooking information" and "an online computer database to consumers featuring information about recipes, ingredients and cooking information." (*Id*.) But that is a semantics game: the use at issue in the application was the infringing cookbook, and Impossible Foods does not identify any other product covered by its application. Because Impossible LLC has senior trademark rights, it would only "waste everyone's time" to require the parties to litigate the same issue again at the TTAB. *Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1165 (9th Cir. 2007).

## CONCLUSION

For the foregoing reasons, the Court should grant Impossible LLC's Motion.

Dated: April 20, 2026

Respectfully submitted,

BRAUNHAGEY & BORDEN LLP


By:  */s/ Adam S. Cashman*
         Adam S. Cashman

*Attorneys for Impossible LLC*

IMPOSSIBLE LLC'S REPLY IN SUPPORT OF MOTION FOR POST-TRIAL RELIEF