**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| IMPOSSIBLE FOODS INC., | Case No.  5:21-cv-02419-BLF |
| Plaintiff, | |
| v. | **ORDER REGARDING POST-TRIAL MOTIONS** |
| IMPOSSIBLE X LLC, | [Re:  ECF Nos. 440, 476] |
| Defendant. | |

Following a trial in March 2026, the jury returned a verdict against Plaintiff/Counter-Defendant Impossible Foods Inc. ("Impossible Foods") on each of its claims against Defendant/Counter-Plaintiff Impossible X LLC ("Impossible LLC") and for Impossible LLC on each of its trademark infringement and unfair competition claims against Impossible Foods.  ECF No. 459.  Both Parties now move for post-trial relief prior to the entry of judgment.

Impossible Foods moves for resolution of its equitable affirmative defense asserted in this litigation, seeking a declaration from the Court that Impossible LLC's trademark infringement and unfair competition claims—for which the jury awarded corrective advertising damages and punitive damages—are barred by the doctrine of laches.  ECF No. 440 ("Laches Mot."); ECF No. 462 ("Laches Reply").  Impossible LLC opposes the motion.  ECF No. 461 ("Laches Opp.").  The Court heard oral argument on Impossible Foods' motion on March 26, 2026.  ECF No. 463; *see also* ECF No. 473 ("Laches Tr.").

Impossible LLC moves for an award of attorneys' fees and costs, enhanced damages, and injunctive relief.  ECF No. 476 ("Fees Mot."); ECF No. 481 ("Fees Reply").  Impossible LLC also seeks an order directing the United States Patent and Trademark Office ("PTO") to reject Impossible Foods's U.S. Trademark Application No. 88855875 for the mark IMPOSSIBLE in

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

connection with "[p]roviding information about recipes, ingredients and cooking information; providing an online computer database to consumers featuring information about recipes, ingredients and cooking information." ECF No. 1-2 (the "'875 Application"). Impossible Foods opposes the motion. ECF No. 480 ("Fees Opp."). The Court heard oral argument on Impossible LLC's motion on April 23, 2026. ECF No. 482; *see also* ECF No. 488 ("Fees Tr.").

For the reasons stated on the record and set forth below, the Court rules as follows. Impossible Foods's motion for laches is DENIED. Impossible LLC's motion is GRANTED as to its request for attorneys' fees and GRANTED as to its request for injunctive relief. Impossible LLC's motion is DENIED as to its request for enhanced damages and its request for an order directing the PTO to reject the '875 Application.

## I.    BACKGROUND

As set forth in the Parties' joint pretrial statement, ECF No. 330, which the Court approved and adopted, ECF No. 365, this case is between two companies that use marks for the word IMPOSSIBLE in connection with their goods and services. Both Parties proceeded to trial on their trademark infringement and unfair competition claims under the Lanham Act, 15 U.S.C. §§ 1114(1), 1125(a)(1), federal common law, and California common law.

Impossible Foods uses its IMPOSSIBLE-formative marks in connection with marketing and selling plant-based meat substitutes, releasing its signature product, the Impossible Burger, in 2016. Impossible Foods has also used its IMPOSSIBLE marks on promotional apparel that it distributes without charge to its employees and at events (the "Foods Swag") and in connection with its cookbook *Impossible: The Cookbook: How to Save Our Planet, One Delicious Meal at a Time* (the "Foods Cookbook"), released in 2020.

Joel Runyon founded Impossible LLC in 2010 based on his blog *The Impossible List*, which contained a list of goals that at first seemed impossible but could be achieved (and crossed off the list) with hard work. Through Impossible LLC, Mr. Runyon uses his IMPOSSIBLE-formative marks in connection with apparel (the "LLC Apparel"), fitness and recipe information, and nutritional supplements (the "LLC Supplements"). Mr. Runyon also provides other services through Impossible LLC, such as consulting and marketing services.

2

On April 2, 2021, Impossible Foods initiated this action by filing a single-count complaint for declaratory judgment of noninfringement after Mr. Runyon and Impossible LLC filed a notice of opposition with the PTO in connection with Impossible Foods's '875 Application.  ECF No. 1.  In the initial complaint, Impossible Foods requested that the Court declare that Impossible Foods's use of the IMPOSSIBLE mark in connection with recipes, food ingredients, and cooking information did not infringe Impossible LLC's rights, that Impossible Foods had superior rights in the IMPOSSIBLE mark in in that field, and that Impossible LLC's trademark registrations in U.S. Trademark Registration Nos. 5376208, 5387588, and 5620625 were abandoned.  ECF No. 1 at 7.

On February 16, 2024, following its successful appeal to the Ninth Circuit regarding personal jurisdiction,[1] Impossible Foods filed the first amended complaint.  ECF No. 78.  On March 8, 2024, Impossible LLC filed its answer and counterclaims, asserting that Impossible Foods's use of the IMPOSSIBLE mark in connection with the Foods Swag and Foods Cookbook infringed Impossible LLC's state and federal trademark rights.  ECF No. 80 ¶¶ 57–79, 84–94.  Impossible LLC also requested an order directing the PTO to reject the '475 Application for violation of Section 2(d) of the Federal Trademark Act, 15 U.S.C. § 1052(d), based on likelihood of confusion with respect to Impossible LLC's marks.  *Id.* ¶¶ 80–83.

On September 17, 2024, after the Court granted Impossible Foods's motion for leave to amend, Impossible Foods filed the second amended complaint, adding claims asserting that Impossible LLC's use of the IMPOSSIBLE mark in connection with the LLC Supplements infringed Impossible Foods's state and federal trademark rights.  ECF No. 103 ¶¶ 48–65.  On March 7, 2025, after the Court granted Impossible Foods's subsequent motion for leave to amend, Impossible Foods filed the third amended complaint, adding affirmative claims for cancellation of Impossible LLC's trademark registrations in U.S. Trademark Registration Nos. 5376208, 5387588, and 5620625 for abandonment, and U.S. Trademark Registration Nos. 5376208, 5387588, 5620625, and 6571603 (together, the "Challenged Marks") for fraud on the PTO.  ECF No. 151 ("Compl.") ¶¶ 122–149.  In its answer to the third amended complaint, Impossible LLC

---

[1] *See Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079 (9th Cir. 2023).

retained its counterclaims based on Impossible Foods's use of the IMPOSSIBLE mark in connection with the Foods Swag and Foods Cookbook.  ECF No. 241 ("Counterclaims").

The Parties subsequently filed cross-motions for summary judgment.  Impossible Foods requested partial summary judgment that (1) Impossible LLC was not entitled to corrective advertising damages for any of its counterclaims and (2) Impossible LLC's equitable affirmative defenses failed as a matter of law.  ECF No. 259.  Impossible LLC requested partial summary judgment that (1) Impossible Foods's trademark infringement and unfair competition claims failed as a matter of law, (2) the Challenged Marks were neither abandoned nor procured by fraud, and (3) Impossible LLC was entitled to summary adjudication of priority as to certain IMPOSSIBLE marks.  ECF No. 262.  The Court granted Impossible Foods's motion with respect to Impossible LLC's affirmative defenses but otherwise denied both motions.  ECF No. 311.  Prior to trial, the Court also granted Impossible Foods's motion *in limine* to preclude Impossible LLC's damages expert from opining as to corrective advertising damages for Impossible Foods's use of the IMPOSSIBLE marks in connection with the Foods Cookbook.  ECF No. 383 at 4–8.

The case went to trial on March 9, 2026.  ECF No. 407; *see also* ECF Nos. 445–55 ("Trial Tr.").  After six days of testimony and argument, the jury returned a verdict in favor of Impossible LLC, awarding $1,500,000 in corrective advertising damages.  ECF No. 459 at 5.  On Impossible LLC's case, the jury found that Impossible Foods willfully infringed Impossible LLC's trademarks by using its IMPOSSIBLE marks in connection with the Foods Swag and the Foods Cookbook and that Impossible Foods acted with oppression, fraud, or malice.  *Id.* at 2–5.  On Impossible Foods's case, the jury did not find any of the Challenged Marks to be invalid and did not find that Impossible LLC infringed Impossible Foods's trademarks by using its IMPOSSIBLE marks in connection with the LLC Supplements.  *Id.* at 1, 6.  Based on the jury's oppression, fraud, or malice finding, the trial proceeded to a punitive damages phase, after which the jury awarded Impossible LLC $1,750,000 in punitive damages.  ECF No. 460.

## II.    DISCUSSION

### A.  Impossible Foods's Laches Defense

The Lanham Act does not contain a statute of limitations.  *Pinkette Clothing, Inc. v. Cosm.*

United States District Court
Northern District of California

*Warriors Ltd.*, 894 F.3d 1015, 1023 (9th Cir. 2018).  Courts thus borrow the most analogous state law limitations period for a laches defense.  *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 836 (9th Cir. 2002).  Laches also applies to state law unfair competition claims.  *See id.* at 842.

Laches is an equitable time limitation on a party's right to bring suit, embodying the principle that "a plaintiff cannot sit on the knowledge that another company is using its trademark . . . and then later come forward and seek to enforce its rights."  *Internet Specialties W., Inc. v. Milon–Di Giorgio Enters., Inc.*, 559 F.3d 985, 989–90 (9th Cir. 2009); *accord Jarrow Formulas*, 304 F.3d at 835 (quoting *Piper Aircraft Corp. v. Wag-Aero, Inc.*, 741 F.2d 925, 939 (7th Cir. 1984) (Posner, J., concurring) (explaining that laches "rest[s] on the maxim that 'one who seeks the help of a court of equity must not sleep on his rights'")).  Laches is analyzed in two steps, with the burden on the defendant to establish that (1) the plaintiff unreasonably delayed in suing and (2) such delay is prejudicial to the defendant.  *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 997 (9th Cir. 2006).  "[A]s an equitable doctrine, the denial of relief on the basis of laches is not determined by simple rules of thumb or rigid legal rules.  Rather, it is determined by 'a consideration of the circumstances of each particular case and a balancing of the interests and equities of the parties.'"  *Saul Zaentz Co. v. Wozniak Travel, Inc.*, 627 F. Supp. 2d 1096, 1109 (N.D. Cal. 2008) (citation omitted) (quoting *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 293 F. Supp. 892, 917 (S.D.N.Y. 1968), *aff'd as modified,* 433 F.2d 686 (2d Cir. 1970)); *see also Czaplicki v. Hoegh Silvercloud*, 351 U.S. 525, 534 (1956) ("[T]he existence of laches is a question primarily addressed to the discretion of the trial court.").

Impossible Foods requests that the Court adopt a four-year limitations period borrowed from analogous state law.  Impossible Foods thus asks that the Court find that Impossible LLC's claims for trademark infringement and unfair competition based on Impossible Foods's use of the IMPOSSIBLE marks in connection with the Foods Swag are barred by the equitable doctrine of laches because Mr. Runyon testified that he was aware of Impossible Foods's challenged use of the marks by 2015 or 2016 but did not assert claims until he filed his counterclaims in 2024.  Laches Mot. at 1.  According to Impossible Foods, Impossible LLC's delay in asserting its claims

was unreasonable and prejudicial to Impossible Foods because "[a]llowing Impossible LLC to lie in wait, consider its options for nearly decade, and *then* sue for damages based solely on Impossible Foods' own expenses, harms Impossible Foods much more than if Impossible LLC had sued when it initially learned about the apparel." *Id.* at 5. Impossible LLC responds that Impossible Foods's laches defense "fails as a matter of law" because the jury determined that Impossible Foods's infringement was willful. Laches Opp. at 1. Impossible LLC further argues that Impossible Foods fails to establish prejudice because "mere expenditures on infringing goods" (i.e., the Foods Swag) does not establish prejudice. *Id.* at 2.

At step one of the laches analysis, there is virtually no dispute that Mr. Runyon had actual knowledge of Impossible Foods's use of the IMPOSSIBLE mark in connection with the Foods Swag by "around 2015 or 2016." ECF No. 446, Trial Tr. at 207:10–14. Mr. Runyon testified on direct examination that he had observed Impossible Foods using the "word 'IMPOSSIBLE' in a similar styling" to Impossible LLC's logo and explained that, when he saw the Foods Swag, he "thought it looked like our logo." *Id.* at 209:3–6, 22–23. But the application of the two-step laches analysis is derailed here, based on the jury's verdict.

The Court agrees with Impossible LLC that the jury's willfulness finding is fatal to Impossible Foods's laches defense and that Impossible Foods's request for resolution of its equitable laches defense must accordingly be denied. The Ninth Circuit has repeatedly confirmed that a willful infringer cannot avail himself of laches which—as an equitable doctrine—protects only those parties who come to the Court with clean hands. *Nat'l Lead Co. v. Wolfe*, 223 F.2d 195, 202 (9th Cir. 1955) ("The attempted proof of laches is too trivial to require serious consideration. In the light of the intentional and fraudulent use of appellant's trade mark, the defense here is a frivolous one."); *see also Pinkette Clothing*, 894 F.3d at 1029; *DC Comics v. Towle*, 802 F.3d 1012, 1026 (9th Cir. 2015); *Evergreen Safety Council v. RSA Network Inc.*, 697 F.3d 1221, 1228 (9th Cir. 2012); *Jarrow Formulas*, 304 F.3d at 841; *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 957 (9th Cir. 2001); *Universal Pictures Co. v. Harold Lloyd Corp.*, 162 F.2d 354, 370 (9th Cir. 1947)

A finding of willful infringement will almost always bar laches, and the Court finds no

United States District Court
Northern District of California

United States District Court
Northern District of California

reason to deviate from the Ninth Circuit's consistent guidance in this case. In this respect, Impossible Foods's argument that "[w]illfulness can, at times, be a bar to laches," Laches Reply at 2, is quite the understatement. Impossible Foods fails to identify a single instance in which laches operated to bar recovery against a willful infringer. Based on its own review of cases in the Ninth Circuit, the Court was similarly unable to find any examples of a trademark defendant adjudicated by a jury to be a willful infringer successfully invoking an equitable laches defense.[2]

Impossible Foods nonetheless urges the Court to fashion a reverse-confusion exception to the willfulness exception, urging that "the caselaw is clear that, in the trademark context, [the willfulness bar] applies where the junior user's 'actions are willfully calculated to exploit the advantage of an established mark.'" Laches Reply at 2 (quoting *DC Comics*, 802 F.3d at 1026). Stated differently, Impossible Foods argues that a willful infringer may invoke laches so long as infringement was not calculated to "capitalize on" the senior user's marks. *Id.* The Court does not read the cases cited by Impossible Foods to even remotely suggest such a departure from settled law. While those cases did tend to involve a smaller defendant intentionally copying a much larger plaintiff's design with the intention of tapping into the demand for the plaintiff's products or services, nothing in those opinions suggests that the essential feature of the willfulness exception to laches is a subjective intent to capitalize on the senior user's mark.

In *DC Comics*, the district court entered summary judgment against a trademark defendant

---

[2] The only case even entertaining the notion that a willful infringer could avail itself of a laches defense is *Theodosakis v. Contract Pharmacal Corporation*, 172 Fed. App'x 772, (9th Cir. 2006), an unpublished Ninth Circuit decision holding that a district court did not abuse its discretion in granting summary judgment on a trademark defendant's laches defense despite the plaintiff's allegation that infringement was willful. In affirming, the Ninth Circuit emphasized that infringement ended years before the litigation (whereas in this case, Impossible Foods's infringement was ongoing up through trial). *See id.* at 774 ("Even if defendants' original infringement was sufficiently willful to undermine a laches defense, the alleged willful misconduct ceased years before the filing of suit. Particularly given the determinations by the district court that [plaintiff] lacked a good excuse for the delay and that the delay prejudiced the defendants, which [the plaintiff] has not challenged, we agree with the conclusion that the delay was unreasonable and sufficient to sustain a laches determination on summary judgment."). The Court finds that *Theodosakis* is distinguishable. *Cf. Theodosakis v. Walgreen Co.*, No. 03-cv-00289-TUC-RCC (Jan. 5, 2005), ECF No. 128 at 8 (describing "deplorable conduct" by plaintiff's attorney, who "discouraged [his client] from filing suit immediately"). Moreover, unlike in *Theodosakis*, there is already a jury verdict of infringement and, as explained *infra*, the Court finds that Impossible Foods has failed to demonstrate prejudice in any event.

on his affirmative laches defense on the ground that that the defendant, a manufacturer and retailer of unlicensed Batmobile replicas, "did not dispute 'that he intentionally copied the designs' of the Batmobile as it appeared in . . . DC[] [Comic]'s Batman trademarks" and "intentionally referred to his replicas as 'Batmobiles.'" 802 F.3d at 1018.  The Ninth Circuit affirmed, explaining that the "doctrine [of laches] does not apply[] . . . 'in cases of willful infringement.'" *Id.* at 1026 (citation omitted).  While the *DC Comics* court observed that "the undisputed facts establish that [the defendant] used [the plaintiff's] trademarks in order to exploit the advantage of those marks," it was expressly referring to the Ninth Circuit's prior willfulness formulation that "[w]illful infringement occurs when the defendant's actions are 'willfully calculated to exploit the advantage of an established mark.'" *Id.* (quoting *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1406 (9th Cir. 1993)).

In other words, it was not the fact that the defendant sought to exploit the plaintiff's marks, but rather that "no reasonable juror could conclude" based on the undisputed facts that infringement was anything but willful, that animated the Ninth Circuit's holding in *DC Comics*. 802 F.3d at 1027.  Moreover, in affirming the grant of summary judgment on laches, the Ninth Circuit approvingly cited the district court's conclusion that the defendant "acted in bad faith and intentionally copied [the plaintiff's] trademarks." *Id.* at 1018.  As relevant in this case, the Ninth Circuit's analysis in *DC Comics* only reinforces the principle that where, as here, there is ample support for a finding of willful infringement, laches is unavailable.

The jury was instructed in this case that "[w]illfulness means that Impossible Foods engaged in the infringing conduct with knowledge that its use of the mark was likely to infringe Impossible LLC's trademark rights, or with reckless disregard for whether its conduct infringed those rights." ECF No. 457 at 54.  Impossible Foods did not at any point object to this instruction or contend that willfulness required proof that Impossible Foods sought to capitalize on Impossible LLC's business or goodwill, and it is far too late at this stage to attempt to relitigate this issue now by using laches as a backdoor.  In any event, the jury instruction was a correct statement of the law—willfulness is not limited by an intent to capitalize on the goodwill of a senior trademark owner.  *See Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059,

8

1074 (9th Cir. 2015) ("Willfulness . . . 'require[s] a connection between a defendant's awareness of its competitors and its actions at those competitors' expense.'" (alterations in original) (quoting *Lindy Pen*, 982 F.2d at 1406)).  It is sufficient for present purposes that the jury determined based on the evidence in the record that Impossible Foods was a willful infringer for the Court to find that laches is unavailable.  Nothing in the reasoning or analysis of any of the cases cited by Impossible Foods is to the contrary.

In any case, even if the Court were to conclude that, notwithstanding the jury's willfulness determination, laches remained a possibility in this case, Impossible Foods has failed to demonstrate that any delay by Impossible LLC in asserting its rights resulted in prejudice. "[L]aches is not a doctrine concerned solely with timing.  Rather, it is primarily concerned with prejudice." *In re Beaty*, 306 F.3d 914, 924 (9th Cir. 2002).  Failure to show prejudice operates as an additional bar on the availability of laches in this case.  *Internet Specialties*, 559 F.3d at 991; *Silicon Lab'ys, Inc. v. Cresta Tech. Corp.*, No. 14-cv-032227-PSG, 2016 WL 693291, at *4 (N.D. Cal. Feb. 22, 2016) ("Material prejudice to adverse parties resulting from the plaintiff's delay is essential to the laches defense." (quoting *A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1033 (Fed. Cir. 1992), *abrogated on other grounds, SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 580 U.S. 328 (2017))).

Impossible Foods claims only that it was prejudiced because it continued to produce and distribute the Foods Swag and Foods Cookbook during the period of alleged delay.  Laches Mot. at 5.  At the hearing, Impossible Foods also seemed to suggest that, by allowing the period of continued infringement to grow, Impossible Foods was particularly prejudiced given Impossible LLC's theory of damages, since corrective advertising damages is necessarily connected to the infringer's own expenses (which also grow over time).  The Ninth Circuit has repeatedly explained, however, that mere expenditures on infringing goods cannot establish prejudice, since otherwise, "[i]f . . . prejudice could consist merely of expenditures in promoting the infringed name, then relief would have to be denied in practically every case of delay." *Internet Specialties*, 559 F.3d at 991 (quoting *Tisch Hotels, Inc. v. Americana Inn, Inc.*, 350 F.2d 609, 615 (7th Cir. 1965)).  This is because "[l]aches is meant to protect an infringer whose efforts have been aimed at

United States District Court
Northern District of California

'building a valuable business *around its trademark*' and 'an important reliance on the publicity of its mark.'" *Id.* at 991–92 (quoting 6 McCarthy on Trademarks and Unfair Competition § 31:12).

Having considered the Parties' arguments, the facts in the record, and the circumstances in this case—in particular, the jury's willfulness determination and the lack of demonstrated prejudice to Impossible Foods by any delay by Impossible LLC—the Court finds that Impossible Foods has not shown that Impossible LLC's claims are barred by laches. Accordingly, the Court DENIES Impossible Foods's motion.

### B. Impossible LLC's Request for Attorneys' Fees and Costs

"The court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). "An 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1180 (9th Cir. 2016) (per curiam) (en banc). The Ninth Circuit has instructed district courts to consider the "totality of the circumstances" in determining whether an award of attorneys' is appropriate, including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 1181 (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 n.6 (2014)). A court's determination whether a case is exceptional is based on a preponderance of the evidence. *Jason Scott Collection, Inc. v. Trendily Furniture, LLC*, 68 F.4th 1203, 1223 (9th Cir. 2023).

Impossible LLC seeks an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a), contending that this case was exceptional. Impossible LLC first argues that the jury's willfulness finding and oppression, fraud, or malice finding are "sufficient to support an award of fees." Fees Mot. at 8. Impossible LLC also argues that Impossible Foods's claims, defenses, and litigation conduct were frivolous and objectively unreasonable. In particular, Impossible LLC urges that Impossible Foods's affirmative claims for cancellation of marks based on fraud were baseless. *Id.* at 11–13. Impossible Foods responds that the Court must "independently

10

determine[]" whether this case is exceptional and cannot base an award of attorneys' fees solely on the jury's willfulness and/or fraud, oppression, and malice findings. Fees Opp. at 6. Impossible Foods further urges that its claims and defenses were not exceptionally weak because they were supported by evidence in the record and survived summary judgment. *Id.* at 7–8.

The Parties dedicate a significant portion of their attorneys' fees briefing to the jury's malice and willfulness findings. As a preliminary matter, the Court rejects Impossible LLC's apparent suggestion that the jury's findings *compel* the Court to grant its request for attorneys' fees. *See* Fees Mot. at 8 ("Willful infringement is therefore always sufficient to support an award of fees."); *see also id.* ("When willfulness is tried to the jury, a verdict of willful infringement renders the case 'exceptional' for purposes of awarding fees."). On the contrary, "a finding of willfulness does not immediately entitle a party to attorney's fees but instead is merely one factor in the analysis." *Guardant Health, Inc. v. Natera, Inc.*, No. 21-cv-04062-EMC, 2025 WL 2106522, at *27 (N.D. Cal. July 28, 2025); *accord Invision Media Servs., Inc. v. Glen J. Lerner*, 175 Fed. App'x 904, 906 (9th Cir. 2006) (nonprecedential) ("While a jury finding of willful infringement is relevant to the question of whether a case is exceptional, it is insufficient on its own to support an award of fees in the absence of some aggravating circumstance or heightened level of culpability."); *Apple, Inc. v. Samsung Elecs. Co.*, No. 11-cv-01846-LHK, 2014 WL 4145499, at *7 (N.D. Cal. Aug. 20, 2014) (holding that "contrary to [plaintiff's] assertion," a jury's willfulness finding "is not dispositive").

In any case, even if the Court were to accept Impossible LLC's suggestion that willfulness alone is sufficient to support attorneys' fees (which, again, it does not), the Ninth Circuit has made clear that district courts must independently consider the facts and circumstances of each case and may not simply rely on the jury's factual findings. *See, e.g.*, *Watec Co., Ltd. v. Liu,* 403 F.3d 645, 656 (9th Cir. 2005) ("[A] determination that a trademark case is exceptional is a question of law for the district court, not the jury."); *Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, No. 20-35369, 2021 WL 3630225, at *2 (9th Cir. Aug. 17, 2021) (nonprecedential) (affirming denial of attorneys' fees notwithstanding jury's willfulness finding). Indeed, the very authority that Impossible LLC cites for this proposition makes clear that that, for the purpose of determining

United States District Court
Northern District of California

11

whether a case is exceptional, the inquiry is for the court and not the jury.  *See* Fees Mot. at 8 (citing *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 615 (9th Cir. 2010) ("A trademark case is exceptional where the *district court finds* that the defendant acted maliciously, fraudulently, deliberately, or willfully." (emphasis added)).

With that said, the Court agrees with Impossible LLC that, for the purpose of awarding attorneys' fees, there is evidence in the record that Impossible Foods willfully infringed Impossible LLC's trademarks and that this willfulness supports an exceptional case determination. As explained *supra*, the jury made its willfulness finding based on the unchallenged instruction that "[w]illfulness means that Impossible Foods engaged in the infringing conduct with knowledge that its use of the mark was likely to infringe Impossible LLC's trademark rights, or with reckless disregard for whether its conduct infringed those rights."  ECF No. 457 at 54.  Here, Impossible LLC identified evidence showing that Impossible Foods learned of Mr. Runyon's trademark registrations during Impossible Foods's initial trademark search and that a senior Impossible Foods employee visited Impossible LLC's website for promotional ideas.  Impossible Foods did not meaningfully contest the point at trial, instead raising defenses based on abandonment and fraud on the PTO.  Under these circumstances, the Court agrees with Impossible LLC that "the jury's willfulness finding in the instant case weighs in favor of exceptionality, but[] . . . is not dispositive." *Apple*, 2014 WL 4145499, at *7.

Apart from Impossible Foods's willful infringement, Impossible LLC also argues that "[t]he weakness of Impossible Foods's litigating position strongly supports an award of fees." Fees Mot. at 9.  Impossible LLC argues that Impossible Foods's sole defenses to infringement— abandonment and fraud on the PTO—were frivolous and objectively unreasonable, and that Impossible Foods's affirmative infringement claims were exceptionally weak.  Impossible LLC somewhat overstates its case.  The Court disagrees, for example, with Impossible LLC's contention that "Impossible Foods's fraud claims were meritless and were also asserted to harass and burden Impossible LLC rather than to redress any real-world injury." *Id.* at 11.  On the contrary, Impossible Foods introduced evidence of communications—which Impossible LLC initially refused to produce until it was ordered to do so under the crime-fraud exception to

12

attorney-client privilege—from which it could reasonably be inferred that Mr. Runyon procured and maintained trademark registrations for marks despite not using them in commerce. *See* ECF No. 240 at 7. That the jury ultimately disagreed with Impossible Foods and found that it failed to prove fraud on the PTO by clear and convincing evidence does not mean that Impossible Foods's fraud defense was frivolous or baseless.

Although the Court disagrees with the scope and magnitude of Impossible LLC's frivolousness arguments, Impossible LLC identifies certain "weak legal positions on the merits (not frivolous but bordering on the frivolous)" that also justify an exceptional case finding. *Paige LLC v. Shop Paige LLC*, No. 22-cv-07800-HDV (SKX), 2024 WL 3594450, at *7 (C.D. Cal. July 10, 2024), *appeal dismissed,* No. 24-4666, 2024 WL 5358926 (9th Cir. Nov. 13, 2024). The fact that the Court previously denied Impossible LLC's motion for summary judgment on Impossible Foods's claims does not, as Impossible Foods now contends, preclude an award of attorneys' fees. *See* Fees Opp. at 8. It was objectively unreasonable for Impossible Foods to force a trial on certain claims and defenses without at least introducing evidence as to each of those claims and defenses' substantive elements. For example, Impossible Foods adduced no evidence in support of its abandonment defense that Mr. Runyon intended to permanently cease marketing nutrition and recipe products and services under the IMPOSSIBLE marks.

Impossible Foods's prosecution of its affirmative infringement claims was even more lacking, with Impossible Foods neglecting to present any evidence at all, *inter alia*, that the LLC Supplements were similar to Impossible Foods's plant-based meat products, that the marketing channels for the products were similar, that there was a likelihood of expansion, or that there were actual examples of consumer confusion. Impossible Foods's evidentiary presentation on its own infringement case was clearly deficient, consisting primarily of a law firm paralegal perfunctorily reciting Impossible Foods's trademark registrations. In short, while not necessarily frivolous, "the utter lack of support or reasonable argument for a foundational element of [Impossible's] trademark claim" and abandonment defense "renders this case exceptional under the Lanham Act." *Bell v. Oakland Cmty. Pools Project, Inc.*, No. 19-cv-01308-JST, 2020 WL 13695114, at *6 (N.D. Cal. Oct. 14, 2020).

The Court disagrees with Impossible LLC's suggestion that Impossible Foods's litigation strategy was objectively unreasonable or unfair. For example, Impossible LLC argues that Impossible Foods unreasonably delayed the case by failing to "meaningfully attempt[] to resolve the case short of trial," pointing out that "[a]lthough Impossible LLC participated in *five* formal efforts at mediation and settlement conferences, no settlement resulted." Fees Mot. at 5. Failure to settle early is not a ground for an exceptional case finding, particularly since the issues of proof of damages and actual confusion were valid issues to be pursued through trial.[3] Indeed, before trial, it appeared to the Court that a jury could reasonably credit either party—the fact that the jury chose Impossible LLC does not mean that Impossible Foods acted unreasonably.

Finally, the Court accords some weight to Impossible LLC's argument that considerations of fairness and compensation favor awarding attorneys' fees. Mr. Runyon avers that he has spent more than $6 million during the prosecution of this case, which he partially funded by liquidating his retirement accounts. ECF No. 476-1 ¶ 7. Given the disparity between the jury's award and Impossible LLC's expenses, awarding attorneys' fees in this case is appropriate. *See Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1079 (9th Cir. 2015) (approving fee award because it "encourag[ed] the enforcement of trademark rights by more fully compensating Plaintiffs").

Based on its independent review of the evidence in the record and the Parties' arguments, the Court agrees with the jury that there is evidence that Impossible acted willfully. While the Court does not agree that Impossible Foods's claims and defenses were entirely frivolous, the Court finds that its abandonment defense and affirmative infringement claims were exceptionally weak, particularly as presented to the jury at trial. Having considered the totality of the case, including by weighing the seriousness of Impossible Foods's conduct and its willful infringement, the Court agrees with Impossible LLC that the case was exceptional and GRANTS Impossible LLC's request for an award of reasonable attorneys' fees.

---

[3] Impossible LLC's charge that Impossible Foods engaged in "destruction of evidence" is even further off base. Fees Mot. at 13. As Impossible Foods points out, *see* Fees Opp. at 11, the emails to which Impossible LLC refers were deleted in the ordinary course of business more than a year before any preservation obligation arose. *See* ECF No. 480-5 ¶¶ 16–17.

United States District Court
Northern District of California

The Parties SHALL meet and confer to determine whether they are amenable to stipulating as to the amount of attorneys' fees. Otherwise, Impossible LLC SHALL file a supplemental brief and accompanying declaration for attorneys' fees within twenty-eight days of entry of judgment or, if Impossible Foods files a motion pursuant to Rule 50(b) or 59(a), within fourteen days of the Court's order on Impossible Foods's motion. The Parties are requested to comply with the Court's standing order regarding applications for attorneys' fees. *See* Standing Order re Civil Cases § VII.

### C. Impossible LLC's Request for Enhanced Damages

The Lanham Act provides that the Court may exercise its discretion to enter judgment for up to three times the jury's award of actual damages: "If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty." 15 U.S.C. § 1117(a). "[A]lthough a judge . . . may award up to triple the amount of lost profits, actual damages and costs to compensate a mark holder, the Lanham Act has been construed to expressly forbid the award of damages to punish an infringer." *Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105, 1114 (9th Cir. 2012) (citing *BASF Corp. v. Old World Trading Co.,* 41 F.3d 1081, 1096 (7th Cir. 1994)).

Impossible LLC requests that the Court award enhanced damages "to fully compensate Impossible LLC for its injuries and prevent unjust enrichment of Impossible Foods." Fees Mot. at 15. As to the Foods Swag, Impossible LLC argues that the jury's award does not fully compensate it for the harm to its apparel business because its damages expert used the Foods Swag advertising spend estimated by Impossible Foods's corporate designee at her deposition, which Impossible LLC alleges undercounted Impossible Foods's advertising expenditures. *Id.* at 15–16. As to the Foods Cookbook, Impossible LLC argues that it "establish[ed] that the cookbooks were promotional items" and that the "Court should enter a monetary award equivalent to corrective advertising damages [of] . . . 3-5x multipl[ied] [by] Impossible Foods's $140,900 in spending" on the Foods Cookbook. *Id.* at 16–17. Impossible LLC further argues that the "jury's

15

damages award did not account for the benefit that Impossible Foods obtained from its marketing of" the Foods Swag and Foods Cookbook. *Id.* at 17. Impossible Foods responds that Impossible LLC is not entitled to any enhanced compensatory damages because it failed to present credible damages evidence in the first instance. Fees Opp. at 14–16.

Even taking the evidence in the light most favorable to the verdict, there is no indication that there has been a failure of compensation to Impossible LLC for Impossible Foods's infringing use of the IMPOSSIBLE marks in connection with the Foods Swag or the Foods Cookbook. The Court is more than satisfied based on the facts presented to the jury that its award fully compensates Impossible LLC, and any enhancement in damages would be punitive rather than compensatory. As to the Foods Swag, Impossible LLC's damages expert was permitted to testify to the jury that it should increase the base figure of corrective advertising damages by 60% and then apply Impossible LLC's marketing expert's 3x–5x multiplier. *See* ECF No. 450, Trial Tr. at 765:23–25 ("[L]ooking at [Impossible Foods's] numbers and looking at that information, those numbers were approximately 60 percent higher over the relevant . . . period than my calculations were."). As to the Foods Cookbook, the fact that Impossible LLC was not permitted to ask the jury to speculate as to what percentage of the Impossible Foods's cookbook-related expenditures were actually promotional, *see* ECF No. 452, Trial Tr. at 1144:17–1145:7, does not mean, as Impossible LLC now suggests, that the jury was "prevented from awarding damages." Fees Mot. at 16.

In short, the fact that the jury chose not to award Impossible LLC the full amount of corrective advertising damages that it requested at trial was fully within the jury's prerogative and does not mean its $3,250,000 award fails to compensate Impossible LLC for harm to either its apparel business (which made less than $100,000 in lifetime sales, *see* ECF No. 451, Trial Tr. at 882–83) or its recipe and nutrition information business. "As such, the Court cannot determine an amount that would not unduly punish [Impossible Foods]." *Monster Energy Co. v. Vital Pharms., Inc.*, No. 18-cv-01882-JGB (SHKX), 2023 WL 8168854, at *15 (C.D. Cal. Oct. 6, 2023), *aff'd,* No. 23-55451, 2025 WL 1111495 (9th Cir. Apr. 15, 2025). The fact that the jury found that infringement was willful does not change the analysis, since Impossible LLC is unable

16

to show that the actual damages awarded in this case fall short of fully compensating Impossible LLC. *Guardant Health*, 2025 WL 2106522, at \*24 ("Courts have emphasized that, notwithstanding a willfulness finding, enhanced damages are inappropriate where—as here—the actual damages awarded already compensate for the alleged harm.").

The Court also disagrees with Impossible LLC's suggestion that the "jury's damages award did not account for the benefit that Impossible Foods obtained from its marketing of the infringing apparel and cookbooks." Fees Mot. at 17. As a preliminary matter, "Impossible LLC waive[d] any remedy of equitable disgorgement of profits in this action" pursuant to the Parties' pretrial stipulation. ECF No. 421 ¶ 4. Even setting aside this waiver, Impossible LLC fails to plausibly explain how the Foods Swag (which was primarily distributed among employees) and the Foods Cookbook (which lost money) could have enriched Impossible Foods in a manner not already captured by the jury's damages award.

The Court finds that the jury's damages award fully compensates Impossible LLC for infringement of its trademark rights and that any additional damages would be punitive. The Court accordingly DENIES Impossible LLC's motion for enhanced damages.

**D. Impossible LLC's Request for a Permanent Injunction**

Courts may grant injunctive relief "to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office . . . . A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for a permanent injunction." 15 U.S.C. § 1116(a). "Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by defendant's continuing infringement." *Century 21 Real Est. Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988). However, courts considering permanent injunctive relief under § 1116(a) must still apply traditional equity principles and inquire whether a plaintiff has demonstrated: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would

United States District Court
Northern District of California

17

not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006); *accord Herb Reed Enterprises, LLC v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239, 1249 (9th Cir. 2013) (explaining that "actual irreparable harm must be demonstrated to obtain a permanent injunction in a trademark infringement action").

Impossible LLC requests that the Court enter a permanent injunction against further infringement by Impossible Foods. Fees Mot. at 17–20. In opposition, Impossible Foods submits that the request is moot as to the Foods Cookbook because Impossible Foods no longer sells the Foods Cookbook and, as to the Foods Swag, Impossible LLC has not shown irreparable injury or an inadequate remedy at law because it has not shown injury at all. Fees Opp. at 17. As a preliminary matter, the Court disagrees that injunctive relief with respect to the Foods Cookbook would be moot. Impossible LLC warrants that the Foods Cookbook is still available for sale on Amazon, *see* ECF No. 481-2 ¶ 3, and, more fundamentally, Impossible Foods cannot avoid an injunction simply by stating after trial that it intends to cease infringement. *See AK Futures LLC v. Boyd St. Distro, LLC*, 35 F.4th 682, 694 (9th Cir. 2022) (explaining that trademark infringer's "stated intent to stop" infringement "fail[ed] to overcome . . . presumption of irreparable harm").

Turning to the *eBay* factors, the Court does not find that Impossible Foods's argument about irreparable harm and adequacy of remedies at law—which at most merely reflects Impossible Foods's (unsurprising) disagreement with the jury's findings and damages award— overcomes the presumption of irreparable harm. *See* 15 U.S.C. § 1116(a). In any case, Mr. Runyon has testified that Impossible Foods's infringement has injured Impossible LLC's goodwill and reputation, which is precisely the type of irreparable injury that injunctive relief is intended to remedy. For the same reason, Impossible LLC has shown that its remedies at law are inadequate. *Funai Electric Co. v. Daewoo Electronics Corp.*, 593 F. Supp. 2d 1088, 1111 (N.D. Cal. 2009). The balance of equities favor Impossible LLC given Impossible Foods's willful infringement, and Impossible Foods in any case does not identify any harm to it independent from being "forced to desist from its infringing activities." *Triad Systems Corp. v. Southeastern Exp. Co.*, 64 F.3d 1330, 1338 (9th Cir. 1995). Finally, the public interest favors the enforcement of intellectual property rights, *CytoSport, Inc. v. Vital Pharms., Inc.*, 617 F. Supp. 2d 1051, 1081

United States District Court
Northern District of California

United States District Court
Northern District of California

(E.D. Cal. 2009), and Impossible Foods has not, and seemingly cannot, point to any exception to this general rule that would support an argument that any continued infringement would somehow serve the public interest.  *See Fitness Anywhere LLC v. WOSS Enters. LLC*, No. 14-cv-01725-BLF, 2018 WL 6069511, at *12 (N.D. Cal. Nov. 20, 2018).

Having determined that the *eBay* factors favor Impossible LLC, the Court turns to the scope of injunctive relief.  Impossible LLC filed a proposed permanent injunction order that would prohibit Impossible Foods from using the IMPOSSIBLE mark in connection with apparel or cookbooks with an exception for "apparel products that contain the name 'Impossible Foods,' . . . [where] the word 'Foods' is immediately adjacent to the word 'Impossible' and is rendered in the same font style and is of at least the same font size as the word 'Impossible.'"  ECF No. 476-55.  At the hearing, the Court indicated that the proposed order was overbroad and required the Parties to file amended proposed orders by May 7, 2026.  *See* Tr. at 65–68.  The Parties timely filed their amended proposed orders and redlines.  *See* ECF Nos. 489, 490, 491.  The scope of the proposed orders is substantially similar, with the major difference being that Impossible LLC's proposal orders that Impossible Foods be enjoined from using IMPOSSIBLE as a standalone word "or dominant source-identifying term" and Impossible Foods's proposal orders that Impossible Foods be enjoined from using IMPOSSIBLE as a standalone word "without other visible words or symbols."  *See* ECF No. 491-1 ¶¶ 1–2.  The Court finds that Impossible Foods's proposal adequately addresses Impossible LLC's injuries and provides a clearer delineation between permissible and impermissible conduct.

**E. Impossible LLC's Request for Entry of Judgment as to its Fourth Counterclaim**

"In any action involving a registered mark the court may determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action."  15 U.S.C. § 1119(a).  "[B]y specifying that a court '*may* determine the right to registration,' § 1119 grants courts discretion to address the trademark applications and registrations of a party to a suit already involving a registration.  It does not require district courts to address claims where these interests in efficiency or other considerations counsel against

adjudicating a right to registration." *BBK Tobacco & Foods LLP v. Cent. Coast Agric., Inc.,* 97 F.4th 668, 671 (9th Cir. 2024).

Impossible LLC requests that the Court enter judgment in its favor as to its fourth counterclaim, *see* Counterclaims ¶¶ 85–88, and issue an order directing the PTO to reject the '875 Application. Impossible LLC argues that it is entitled to such an order because the jury found that the Foods Cookbook infringed Impossible LLC's trademark rights, and "the test for trademark registration uses the same 'likelihood of confusion' standard as the test for trademark infringement." Fees Mot. at 20 (quoting *Synoptek, LLC v. Synaptek Corp.*, 309 F. Supp. 3d 825, 835 (C.D. Cal. 2018)). Impossible Foods urges that Impossible LLC is not entitled to such an order because the jury "did not find that *any* use of IMPOSSIBLE in connection with *any* cooking-related product would be infringing," only that "the particular Cookbook at issue in this case was infringing." Fees Opp. at 20.

As the Court explained at the hearing, Impossible LLC's briefing on this issue—spanning just two paragraphs between its opening and reply briefs—is far too sparse for the Court to affirmatively interfere with the PTO's decisionmaking process. Impossible LLC does not identify with any particularity the trademark rights that purportedly preclude registration of the '875 Application, nor does it articulate why it is entitled to the requested relief. The Court accordingly DENIES Impossible LLC's request for entry of judgment on its fourth claim for relief.

## III.   ORDER

For the foregoing reasons, as well as the reasons stated on the record, IT IS HEREBY ORDERED THAT:

(1) Impossible Foods's motion is DENIED. The Court FINDS that Impossible Foods is not entitled to a declaration that Impossible LLC's claims are barred by laches.

(2) Impossible LLC's motion is DENIED as to its request for enhanced damages.

(3) Impossible LLC's motion is DENIED as to its request for entry of judgment as to its fourth claim for denial of the '875 Application.

(4) Impossible LLC's motion is GRANTED as to its request for attorneys' fees. Impossible

LLC SHALL file a supplemental brief and accompanying declaration as to attorneys' fees within twenty-eight days after entry of judgment or, if Impossible Foods files a motion pursuant to Federal Rule of Civil Procedure 50(b) or 59(a), within fourteen days after the Court's adjudication of such motion. The Parties SHALL comply with the Court's standing order regarding applications for attorneys' fees. *See* Standing Order re Civil Cases § VII.

(5) Impossible LLC's motion is GRANTED as to its request for injunctive relief. Impossible Foods, and its officers, directors, agents, servants, employees, related entities, and those in active concert or participation with them who receive actual notice of this Order, are ENJOINED from:

    a. Using "Impossible" as a standalone word, without other visible words or symbols, on apparel. This prohibition does not extend to: apparel bearing the name "Impossible Foods"; or apparel that includes additional words, logos, or design elements such that the overall presentation clearly identifies Impossible Foods as the source of the goods;

    b. Using "Impossible" as a standalone word or title, without other visible words or symbols clearly identifying Impossible Foods as the source or author, on cookbooks or recipes. This prohibition does not extend to cookbooks or recipes bearing the name "Impossible Foods" as the title or author; or cookbooks or recipes that include additional words, logos, or design elements such that the overall presentation clearly identifies Impossible Foods as the source of the goods;

    c. Publicly depicting any good prohibited by Paragraph b above in any marketing, promotional, or advertising materials in connection with the sale of those goods. Any such materials that presently exist, whether in physical or digital form, SHALL be removed from public access and/or consumption within 14 days following entry of this Order.

(6) This order terminates ECF No. 476. The Court shall separately file an entry of judgment in favor of Impossible LLC and against Impossible Foods.

21

United States District Court
Northern District of California

(7) The Court retains jurisdiction for the purpose of making any further orders necessary or proper for the enforcement of this Order.

Dated:  May 8, 2026

_____
BETH LABSON FREEMAN
United States District Judge