G. ROXANNE ELINGS (*pro hac vice*)
roxanneelings@dwt.com
RAPHAEL HOLOSZYC-PIMENTEL (*pro hac vice*)
rhp@dwt.com
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 42nd Floor
New York, NY 10020-1104
Telephone: (212) 489-8230
Facsimile: (212) 489-8340

SARAH E. BURNS (CA State Bar No. 324466)
sarahburns@dwt.com
DAVIS WRIGHT TREMAINE LLP
50 California Street, 23rd Floor
San Francisco, CA 94111
Telephone: (415) 276-6500
Facsimile: (415) 276-6599

Attorneys for Plaintiff/Counter-Defendant
IMPOSSIBLE FOODS INC.

IN THE UNITED STATES DISTRICT COURT

THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IMPOSSIBLE FOODS INC., | Case No. 5:21-cv-02419-BLF |
| Plaintiff/Counter-Defendant, | **IMPOSSIBLE FOODS INC.'S POST-TRIAL MOTIONS FOR JUDGMENT AS A MATTER OF LAW OR A NEW TRIAL, AND ALTERATION OR AMENDMENT OF THE JUDGMENT, PURSUANT TO RULE 50(b), 59(a), AND 59(e)** |
| vs. | |
| IMPOSSIBLE LLC, | |
| Defendant/Counter-Plaintiff. | Judge:   Hon. Beth L. Freeman<br>Date:    July 23, 2026<br>Time:    9:00 a.m. |

IMPOSSIBLE FOODS' POST-TRIAL MOTIONS
Case No. 5:21-CV-02419-BLF (SVK)

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that on July 23, 2026, at 9:00 a.m., in Courtroom 1 of the United States District Court for the Northern District of California, 280 South 1st Street, San Jose, California 95113, Plaintiff/Counter-Defendant Impossible Foods Inc. ("IF") will and hereby does respectfully move for judgment as a matter of law or a new trial, and alteration or amendment of the judgment.

This Motion is made pursuant to Federal Rule of Civil Procedure 50(b) on the grounds that the jury did not have a legally sufficient evidentiary basis to find for Impossible LLC ("ILLC") on its claims for either liability or damages. In the alternative, a new trial is warranted under Rule 59(a), or the damages should be remitted under Rule 50(b) or Rule 59(a).

Additionally, this Motion is made pursuant to Rule 59(e) on the ground that the Judgment regarding the award of attorneys' fees to ILLC (Dkt. 493 at 1) should be altered or amended, because it rested on clearly erroneous factual and legal premises in the Court's Order Regarding Post-Trial Motions (Dkt. 492) and would impose a manifest injustice. The Court should deny the entitlement to fees or, in the alternative, apportion the award to only those claims or conduct qualifying as "exceptional" under 15 U.S.C. § 1117(a).

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the supporting Declaration of G. Roxanne Elings filed herewith, the pleadings and papers on file in this action, the trial proceedings and evidence in this action, matters of which this Court may take judicial notice, and any such additional matters and oral argument as may be offered in support of the Motion.

DATED: June 5, 2026                                          DAVIS WRIGHT TREMAINE LLP

By: */s/ G. Roxanne Elings*
    G. Roxanne Elings

Attorneys for Plaintiff/Counter-Defendant
IMPOSSIBLE FOODS INC.

## TABLE OF CONTENTS

Page

I.   INTRODUCTION.................................................................................... 1

II.  BACKGROUND..................................................................................... 2

III. LEGAL STANDARDS............................................................................ 4

    A.   Judgment as a Matter of Law Under Rule 50(b)......................................... 4

    B.   New Trial Under Rule 59(a)....................................................................5

    C.   Altered or Amended Judgment Under Rule 59(e) ....................................5

IV.  ARGUMENT .........................................................................................5

    A.   ILLC's Evidence Failed to Support Likely Confusion in the Marketplace for the Goods at Issue, and Instead Was Untethered to the Accused Goods .................................................................................6

        1.   The Purported "Actual Confusion" Evidence Confirms the Absence of Actionable Confusion.....................................................7

        2.   The Remaining *Sleekcraft* Factors Cannot Sustain the Verdict .... 11

    B.   The Corrective Advertising Award Fails as a Matter of Law ................... 13

        1.   ILLC Failed to Show Any Actual Injury Requiring Corrective Advertising ................................................................. 13

        2.   ILLC Failed to Reliably Quantify Any Injury ............................. 14

        3.   ILLC Failed to Establish a Causal Nexus Between the Claimed Injury and the Accused Goods ........................................ 15

    C.   Punitive Damages Fail as a Matter of Law ........................................... 16

        1.   Punitive Damages Cannot Stand Absent Cognizable Actual Damages .................................................................... 16

        2.   ILLC Failed to Present Clear and Convincing Evidence of Oppression, Fraud, or Malice.......................................... 17

        3.   The Punitive Award Is Constitutionally Excessive...................... 18

    D.   The Court Should Alter or Amend Its Judgment Regarding Attorneys' Fees.......................................................................... 19

        1.   The Court Clearly Erred in Concluding That IF Presented "No Evidence" Supporting Core Elements of Its Claims and Defenses .................................................................. 20

        2.   ILLC Was Fully Compensated by the $3.25 Million Verdict....... 22

        3.   Willfulness Alone Cannot Sustain the Fee Award....................... 23

V.   CONCLUSION ..................................................................................... 24

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*4 Pillar Dynasty LLC v. N.Y. & Co.*,
  933 F.3d 202 (2d Cir. 2019) ....................................................................................................... 23

*Adams v. Aqua 388 Cmty. Ass'n*,
  2025 WL 2684022 (C.D. Cal. Aug. 6, 2025) ............................................................................... 5

*Adray v. Adry-Mart, Inc.*,
  76 F.3d 984 (9th Cir. 1996) ......................................................................................... 13, 14, 15

*Allstate Ins. Co. v. Herron*,
  634 F.3d 1101 (9th Cir. 2011) ..................................................................................................... 5

*Alzheimer's Disease & Related Disorders Ass'n, Inc. v. Alzheimer's Found. of Am., Inc.*,
  307 F. Supp. 3d 260 (S.D.N.Y. 2018) ....................................................................................... 10

*AMF Inc. v. Sleekcraft Boats*,
  599 F.2d 341 (9th Cir. 1979) ....................................................................................... 11, 12, 20, 21

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ..................................................................................................................... 4

*Apple Inc. v. Samsung Elecs. Co.*,
  2014 WL 4145499 (N.D. Cal. Aug. 20, 2014) .......................................................................... 23

*Bell v. Oakland Cmty. Pools Project, Inc.*,
  2020 WL 13695114 (N.D. Cal. Oct. 14, 2020) ................................................................... 20, 21

*BillFloat Inc. v. Collins Cash Inc.*,
  105 F.4th 1269 (9th Cir. 2024) .................................................................................................. 19

*Binder v. Disability Group, Inc.*,
  772 F. Supp. 2d 1172 (C.D. Cal. 2011) ..................................................................................... 15

*Bosley Med. Inst., Inc. v. Kremer*,
  403 F.3d 672 (9th Cir. 2005) ....................................................................................................... 7

*Brown v. Elec. Arts, Inc.*,
  722 F. Supp. 2d 1148 (C.D. Cal. 2010) ..................................................................................... 19

*Cairns v. Franklin Mint Co.*,
  24 F. Supp. 2d 1013 (C.D. Cal. 1998) ......................................................................................... 9

*Cairns v. Franklin Mint Co.*,
  292 F.3d 1139 (9th Cir. 2002) ................................................................................................... 24

IMPOSSIBLE FOODS' POST-TRIAL MOTIONS
Case No. 5:21-CV-02419-BLF (SVK)

*Comput. Access Tech. Corp. v. Catalyst Enters., Inc.*,
273 F. Supp. 2d 1063 (N.D. Cal. 2003) ................................................................................. 15

*Dreamwerks Prod. Grp., Inc. v. SKG Studio*,
142 F.3d 1127 (9th Cir. 1998) .................................................................................................. 8

*Echo Drain v. Newsted*,
307 F. Supp. 2d 1116 (C.D. Cal. 2003) ................................................................................... 8

*Electro Source, LLC v. Brandess-Kalt-Aetna Grp., Inc.*,
458 F.3d 931 (9th Cir. 2006) .................................................................................................. 21

*Entrepreneur Media, Inc. v. Smith*,
279 F.3d 1135 (9th Cir. 2002) ............................................................................................... 20

*Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*,
778 F.3d 1059 (9th Cir. 2015) ............................................................................................... 22

*Fitness Anywhere LLC v. WOSS Enters. LLC*,
2018 WL 6069511 (N.D. Cal. Nov. 20, 2018) (Freeman, J.) ................................................ 16

*Girl Scouts of the United States of Am. v. Boy Scouts of Am.*,
597 F. Supp. 3d 581 (S.D.N.Y. 2022) .................................................................................... 10

*Grocery Outlet Inc. v. Albertson's Inc.*,
497 F.3d 949 (9th Cir. 2007) .................................................................................................. 21

*Harman Int'l Indus., Inc. v. Jem Accessories, Inc.*,
668 F. Supp. 3d 1025 (C.D. Cal. 2023),
*aff'd*, 2024 WL 4750497 (9th Cir. Nov. 12, 2024) ............................................................... 17

*Illusions Int'l Inc. v. Walgreen Co.*,
2008 WL 11342979 (C.D. Cal. July 11, 2008) ...................................................................... 13

*Invision Media Servs., Inc. v. Glen J. Lerner*,
175 F. App'x 904 (9th Cir. 2006) ........................................................................................... 23

*J.B. Williams Co. v. LeConte Cosmetics, Inc.*,
523 F.2d 187 (9th Cir. 1975) .................................................................................................. 12

*James R. Glidewell Dental Ceramics, Inc. v. Keating Dental Arts, Inc.*,
2013 WL 655314 (C.D. Cal. Feb. 21, 2013) ............................................................................ 7

*JL Beverage Co. v. Beam, Inc.*,
2017 WL 3666302 (D. Nev. Aug. 24, 2017) .......................................................................... 13

*John Paul Mitchell Sys. v. Eslami*,
110 F.3d 68 (9th Cir. 1997) .................................................................................................... 16

*Kaufmann v. Kijakazi*,
32 F.4th 843 (9th Cir. 2022) ..................................................................................................... 5

iii

*Landes Constr. Co. v. Royal Bank of Can.*,
　833 F.2d 1365 (9th Cir. 1987) ...................................................................................................... 5

*M.I.B. Grp. LLC v. Aguilar*,
　2024 WL 3857540 (C.D. Cal. July 16, 2024) ............................................................................. 7

*Marketquest Grp., Inc. v. BIC Corp.*,
　316 F. Supp. 3d 1234 (S.D. Cal. 2018) .................................................................................... 13

*Marketquest Grp., Inc. v. BIC Corp.*,
　862 F.3d 927 (9th Cir. 2017) .................................................................................................... 17

*McClaran v. Plastic Indus., Inc.*,
　97 F.3d 347 (9th Cir. 1996) ...................................................................................................... 14

*McNeal v. Whittaker, Clark & Daniels, Inc.*,
　296 Cal. Rptr. 3d 394 (Ct. App. 2022) ..................................................................................... 17

*Molski v. M.J. Cable, Inc.*,
　481 F.3d 724 (9th Cir. 2007) ...................................................................................................... 5

*Monster Energy Co. v. Integrated Supply Network, LLC*,
　821 F. App'x 730 (9th Cir. 2020) ............................................................................................. 16

*Moose Creek, Inc. v. Abercrombie & Fitch Co.*,
　331 F. Supp. 2d 1214 (C.D. Cal.), *aff'd*, 114 F. App'x 921 (9th Cir. 2004) ..................... 11, 12

*Murphy v. City of Long Beach*,
　914 F.2d 183 (9th Cir. 1990) ...................................................................................................... 5

*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*,
　638 F.3d 1137 (9th Cir. 2011) .............................................................................................. 12, 20

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
　572 U.S. 545 (2014) ............................................................................................................. 19, 24

*Optimal Pets, Inc. v. Nutri-Vet, LLC*,
　2010 WL 2305843 (C.D. Cal. June 7, 2010) ............................................................................ 20

*Oyarzo v. Tuolumne Fire Dist.*,
　2014 WL 788321 (E.D. Cal. Feb. 25, 2014) .............................................................................. 5

*P&P Imports LLC v. Johnson Enters., LLC*,
　46 F.4th 953 (9th Cir. 2022) ..................................................................................................... 20

*Pavao v. Pagay*,
　307 F.3d 915 (9th Cir. 2002) ...................................................................................................... 4

*Playmakers, LLC v. ESPN, Inc.*,
　297 F. Supp. 2d 1277 (W.D. Wash. 2003), *aff'd*, 376 F.3d 894 (9th Cir. 2004) ................... 11

iv

*Pom Wonderful LLC v. Hubbard*,
  775 F.3d 1118 (9th Cir. 2014) .......................................................................................... 20

*Punchbowl, Inc. v. AJ Press LLC*,
  2024 WL 4005220 (C.D. Cal. Aug. 22, 2024) ..................................................................... 7

*Rearden LLC v. Rearden Com., Inc.*,
  683 F.3d 1190 (9th Cir. 2012).............................................................................................. 7

*Reeves v. Sanderson Plumbing Prods., Inc.*,
  530 U.S. 133 (2000) .............................................................................................................. 4

*Rehrig Pac. Co. v. Norseman Plastics Ltd.*,
  2003 WL 25667625 (C.D. Cal. Sept. 30, 2003).................................................................. 10

*Roby v. McKesson Corp.*,
  219 P.3d 749 (Cal. 2009) ............................................................................................... 18, 19

*Sazerac Co. v. Fetzer Vineyards, Inc.*,
  265 F. Supp. 3d 1013 (N.D. Cal. 2017), *aff'd*, 786 F. App'x 662 (9th Cir. 2019).................. 17

*Sidco Indus. Inc. v. Wimar Tahoe Corp.*,
  795 F. Supp. 343 (D. Or. 1992)............................................................................................ 17

*Simon v. San Paolo U.S. Holding Co.*,
  113 P.3d 63 (Cal. 2005) ................................................................................................. 18, 19

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
  538 U.S. 408 (2003) ............................................................................................................. 18

*SunEarth, Inc. v. Sun Earth Solar Power Co.*,
  839 F.3d 1179 (9th Cir. 2016)......................................................................................... 19, 24

*Surfvivor Media, Inc. v. Survivor Prods.*,
  406 F.3d 625 (9th Cir. 2005)................................................................................................ 20

*Taddeo v. Am. Invsco Corp.*,
  2015 WL 4416490 (D. Nev. July 20, 2015)............................................................................ 5

*Thrive Nat. Care, Inc. v. Thrive Causemetics, Inc.*,
  2021 WL 4813257 (C.D. Cal. Oct. 6, 2021) ........................................................................ 14

*Top Brand, LLC v. Cozy Comfort Co.*,
  2025 WL 3652962 (D. Ariz. Dec. 17, 2025)........................................................................ 19

*VHT, Inc. v. Zillow Grp., Inc.*,
  918 F.3d 723 (9th Cir. 2019).................................................................................................. 4

*Yuga Labs, Inc. v. Ripps*,
  144 F.4th 1137 (9th Cir. 2025).............................................................................................. 20

v

IMPOSSIBLE FOODS' POST-TRIAL MOTIONS
Case No. 5:21-CV-02419-BLF (SVK)

**Statutes**

15 U.S.C.
§ 1117(a) .................................................................................................................... 4, 19
§ 1125(c)(2)(B)–(C) ....................................................................................................... 8
§ 1127 ............................................................................................................................ 21

Cal. Civ. Code
§ 3294(a) ...................................................................................................................... 17
§ 3294(c)(1) .................................................................................................................. 17

**Rules**

Fed. R. Civ. P.
Rule 50 ..................................................................................................................... 4, 5, 7
Rule 50(a) ..................................................................................................................... 2, 4
Rule 50(a)(1) ................................................................................................................... 4
Rule 50(b)................................................................................................................... 4, 24
Rule 59 ............................................................................................................................ 4
Rule 59(a) ................................................................................................................. 4, 5, 24
Rule 59(e) ............................................................................................................. 4, 5, 19, 24

**Other Authorities**

3 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION
§ 23:9 (5th ed. 2026) ................................................................................................... 10

4 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION
§ 30:74 (5th ed. 2026) .................................................................................................. 13

IMPOSSIBLE FOODS' POST-TRIAL MOTIONS
Case No. 5:21-CV-02419-BLF (SVK)

## I.    INTRODUCTION

Sometimes juries reach results that cannot be reconciled with the governing law or the evidence presented at trial. This is such a case.

This case was tried as a trademark dispute concerning promotional apparel and a cookbook. The jury was asked whether IF's use of the IMPOSSIBLE mark in connection with apparel and a cookbook infringed ILLC's trademark rights associated with apparel, recipes, and nutrition information. But the evidence presented at trial focused on the marketplace prominence of IF's plant-based meat business and consumers' association of the IMPOSSIBLE name with that business—rather than confusion concerning the source of the apparel, cookbook, recipes, and nutrition information as submitted to the jury.

In its closing argument, ILLC urged the jury to find infringement because consumers encountering IMPOSSIBLE thought of plant-based meat rather than ILLC. That is not actionable confusion concerning the source of the goods submitted to the jury. It is merely an association with IF's lawful food business.

The same error permeated the purported damages evidence. ILLC failed to present evidence that any consumer confusion caused compensable injury to its trademarks, much less evidence supporting the extraordinary corrective advertising and punitive damages awards returned by the jury. Instead, those awards were driven by the same improper premise that underlay the liability verdict—that IF's market prominence itself constituted trademark harm.

Additionally, this Motion challenges the Court's subsequent determination that this case was "exceptional" and warranted awarding attorneys' fees. In reaching that conclusion, the Court found that IF had presented "no evidence" supporting key aspects of its affirmative infringement claim and abandonment defense and cited ILLC's purported litigation burdens and expenditures. As discussed below, IF litigated this case fairly and in good faith. The Court's conclusions were clearly inconsistent with the trial record.

Because ILLC failed to present legally sufficient evidence supporting liability, corrective advertising damages, punitive damages, or exceptionality, the Court should enter judgment as a

1

IMPOSSIBLE FOODS' POST-TRIAL MOTIONS
Case No. 5:21-CV-02419-BLF (SVK)

matter of law or order a new trial or remittitur and should alter or amend the judgment regarding attorneys' fees.

## II.   BACKGROUND

The jury trial in this matter commenced in March 2026 and proceeded over the course of approximately three weeks. At the close of ILLC's case-in-chief, IF moved for judgment as a matter of law pursuant to Rule 50(a) on, among other grounds, that ILLC had failed to present sufficient evidence of likelihood of confusion tied to the accused goods and had failed to establish legally cognizable damages. Tr. at 859:16–862:12.[1] The Court reserved ruling and permitted ILLC to reopen its case. Tr. at 875:23–876:1. The case was ultimately submitted to the jury on a detailed verdict form reflecting multiple claims, counterclaims, and affirmative defenses.

ILLC's claims were limited to alleged infringement arising from IF's use of IMPOSSIBLE in connection with its apparel and cookbook goods only. Consistent with that theory, the verdict form asked the jury to determine whether those IF goods infringed ILLC's claimed trademark rights associated with apparel, nutrition information, and recipes. Dkt. 459 at 2–4.

ILLC presented no evidence that any consumer purchased—or attempted or declined to purchase—apparel or cookbooks under a mistaken belief as to their source. ILLC instead relied on anecdotal references to generalized perceptions of IF's plant-based meat products and brand, including inquiries and comments unrelated to the accused goods. ILLC's principal witness testified in sweeping terms that confusion "happens all the time," but identified no instances involving IF's apparel or cookbooks and no instances involving purchases. App. A.1.[2]

In closing, ILLC argued that confusion could be inferred from testimony that individuals who saw Mr. Durant wearing ILLC's IMPOSSIBLE shirt associated it with IF and argued that "people confuse the shirt." Tr. at 1130:7–11. Yet, ILLC could not identify a single customer who even saw IF's accused apparel or cookbooks, let alone were confused by those products. App. A.2.

---

[1] Citations to "Tr.," "Ex.," and "Demo." refer to the trial transcripts, exhibits (Dkt. 467), and demonstratives (Dkt. 474), respectively. Citations to "4/23/2026 Tr." refer to the post-trial hearing.

[2] Citations to "App." refer to Appendices to the Elings Declaration, which collects trial evidence.

2

IMPOSSIBLE FOODS' POST-TRIAL MOTIONS
Case No. 5:21-CV-02419-BLF (SVK)

Instead, again and again, ILLC relied on evidence concerning IF's extensive marketing and promotion of its *non-infringing* plant-based meat. App. A.3.

The same disconnect permeated ILLC's expert testimony. Although ILLC retained a marketing expert, Dr. Palmatier, he did not conduct a survey measuring consumer confusion relating to the apparel, cookbook, recipes, or nutrition information goods underlying ILLC's claims. Tr. at 725:4–9. Instead, he assumed the existence of consumer confusion and analyzed its purported effect on ILLC's brand equity. Tr. at 720:1–9. ILLC's damages expert, Dr. Vanderhart, likewise relied on that brand equity framework and did not attempt to quantify any diminution in the value of ILLC's trademark. Tr. at 808:16–809:7, 818:7–15.

When reopening its case, ILLC attempted to fill this gap through speculative testimony from its principal, Mr. Runyon. He suggested that the company may once have been worth tens of millions of dollars, but offered no methodology, no baseline valuation of the trademark, and no assessment of any loss in value attributable to the alleged infringement. Tr. at 1027:15–20. He likewise declined to provide any current valuation, testifying only that the brand was now worth "not much." Tr. at 1031:19–25. This testimony provided no apples-to-apples comparison of trademark value before and after the alleged infringement—*i.e.*, no damage to the trademark.

Nor did the evidence establish the value of ILLC's trademark rights in apparel, much less any diminution in that value. Over its fifteen-year existence, ILLC sold less than $100,000 in apparel. Tr. at 806:24–808:14. Moreover, while the alleged infringement was occurring, apparel sales *increased*. Tr. at 884:13–885:10; Ex. 1256. ILLC identified no lost sales attributable to the alleged infringement. Tr. at 726:21–24.

In closing, ILLC urged the jury to find liability based on generalized association between the parties' brands, emphasizing that consumers would "associate[]" the parties because they share the same name. Tr. at 1125:11–1126:16. ILLC did not identify any instance of confusion tied to the accused apparel or cookbooks or to any consumer purchases.

The jury returned a verdict finding IF liable and awarding ILLC $1.5 million in corrective advertising damages, along with $1.75 million in punitive damages. Dkt. 459 at 5; Dkt. 460 at 2.

3

IMPOSSIBLE FOODS' POST-TRIAL MOTIONS
Case No. 5:21-CV-02419-BLF (SVK)

Following the verdict, ILLC moved for attorneys' fees and other post-trial relief. On May 8, 2026, the Court concluded that this case was "exceptional" under 15 U.S.C. § 1117(a) and awarded ILLC fees. Dkt. 492 at 10–15. The Court also entered a permanent injunction. *Id.* at 21.

IF now renews its motion for judgment as a matter of law under Rule 50(b) and moves in the alternative for a new trial under Rule 59(a) or remittitur under Rule 50(b) or Rule 59(a). Additionally, IF moves under Rule 59(e) to alter or amend the judgment regarding attorneys' fees.

### III.   LEGAL STANDARDS

#### A.   Judgment as a Matter of Law Under Rule 50(b)

Where, as here, a court does not enter judgment under Rule 50(a) during trial, a party may renew the motion under Rule 50(b) after trial or, in the alternative, move for a new trial under Rule 59. Fed. R. Civ. P. 50(b). Under Rule 50, a court should render judgment as a matter of law when "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1).

The jury's verdict must be "supported by substantial evidence," "which is evidence adequate to support the jury's conclusion." *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 735 (9th Cir. 2019) (citation omitted). The jury verdict should be overturned and motion for judgment as a matter of law granted if the evidence "permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002).

"[T]he standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986)). In evaluating a renewed motion for judgment as a matter of law, the Court must review the entire record, draw all reasonable inferences in favor of the nonmoving party, and may not weigh the evidence or make credibility determinations. *Id.* at 150–51. Judgment as a matter of law is nevertheless required where the verdict was not supported by "substantial evidence" adequate to support the verdict. *VHT*, 918 F.3d at 735.

4

IMPOSSIBLE FOODS' POST-TRIAL MOTIONS
Case No. 5:21-CV-02419-BLF (SVK)

**B.     New Trial Under Rule 59(a)**

The grant of a new trial under Rule 59(a) is "confided almost entirely to the exercise of discretion on the part of the trial court." *Murphy v. City of Long Beach*, 914 F.2d 183, 186 (9th Cir. 1990) (citation omitted). In deciding a new trial motion, the Court "can weigh the evidence and assess the credibility of witnesses, and need not view the evidence from the perspective most favorable to the prevailing party." *Landes Constr. Co. v. Royal Bank of Can.*, 833 F.2d 1365, 1371 (9th Cir. 1987). A new trial is appropriate where "the verdict is contrary to the clear weight of the evidence," where "the damages are excessive," or "to prevent a miscarriage of justice." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (citations omitted).

"If a court finds that a damages award is excessive, it may grant a new trial or offer the prevailing party a choice between accepting a remittitur (i.e., a reduced damages award) or proceeding to a new trial." *Adams v. Aqua 388 Cmty. Ass'n*, 2025 WL 2684022, at *9 (C.D. Cal. Aug. 6, 2025). However, "[w]hen a damages verdict is excessive because of a pure legal error . . . plaintiffs have no right to a new trial." *Taddeo v. Am. Invsco Corp.*, 2015 WL 4416490, at *9 n.76 (D. Nev. July 20, 2015), *adhered to*, 2016 WL 6272367 (D. Nev. Oct. 25, 2016); *see also Oyarzo v. Tuolumne Fire Dist.*, 2014 WL 788321, at *9–11 (E.D. Cal. Feb. 25, 2014) (where amount of damages "is not permitted by law," vacatur or modification of the award is authorized by Rule 50).

**C.     Altered or Amended Judgment Under Rule 59(e)**

A court may alter or amend a judgment under Rule 59(e) where necessary "to correct manifest errors of law or fact upon which the judgment rests" or "to prevent manifest injustice." *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011). "Rule 59(e) permits, if not encourages, a district court to correct its own clear errors." *Kaufmann v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022) (clear error where court "overlook[ed]" evidence in the record).

## IV.     ARGUMENT

Judgment as a matter of law should be granted because ILLC did not adduce sufficient evidence to support (a) a likelihood of confusion in the marketplace for the goods at issue, (b) corrective advertising damages, and (c) punitive damages. At a minimum, the damages should be remitted or a new trial ordered. Finally, the Court should alter its judgment on attorneys' fees.

IMPOSSIBLE FOODS' POST-TRIAL MOTIONS
Case No. 5:21-CV-02419-BLF (SVK)

**A.    ILLC's Evidence Failed to Support Likely Confusion in the Marketplace for the Goods at Issue, and Instead Was Untethered to the Accused Goods**

The evidence presented at trial does not support the jury's finding of likely confusion as to the goods actually at issue in this case. ILLC's claims were narrow. They concerned alleged confusion arising from IF's use of the IMPOSSIBLE mark on its apparel and cookbook. But ILLC did not present evidence that consumers purchased, attempted to purchase, or declined to purchase apparel or cookbooks (or recipes or nutrition information) because of confusion concerning source.

The Court repeatedly recognized the limited scope of the claims. ILLC expressly conceded that the Impossible Burger and IF's broader plant-based meat business were "non-infringing" and not at issue in this case. Dkt. 435 at 3. Consistent with that limitation, the Court confirmed that ILLC had "accused essentially two products, apparel . . . and cookbook, which may have the iteration of recipes," and that "any conduct Impossible Foods undertakes in regard to marketing its Impossible Burger is not the subject of the infringement." Tr. at 457:3–12. The jury likewise was instructed that ILLC's claim concerned "only whether [IF's] apparel and cookbooks infringe [ILLC's] trademark rights" in IMPOSSIBLE "in connection with apparel, nutrition information, and recipes," and the claim required proof that IF used the mark "in connection with apparel or cookbooks in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the parties' goods or services." Dkt. 457 at 35, 52.

Despite those limitations, ILLC repeatedly relied on evidence concerning consumer recognition of and association with IF's highly visible plant-based meat business, rather than confusion regarding the goods at issue. As the Court observed during trial, ILLC's presentation "completely lost the focus of the goods that are asserted to be infringed." Tr. at 232:1–2. Later, after hearing testimony concerning consumer inquiries about IF's food products, the Court remarked: "So you are accusing the food brand, and then you disclaim that you are. I don't know what you are doing." Tr. at 465:7–8. The Court similarly emphasized that confusion arising from "Impossible Burger marketing" should not establish confusion "in the use of t-shirts, apparel and cookbooks." Tr. at 457:24–458:5.

6

Under Rule 50, no reasonable jury could conclude that ILLC established a likelihood of confusion in the marketplace for the apparel, cookbook, recipes, or nutrition information at issue.

### 1.     The Purported "Actual Confusion" Evidence Confirms the Absence of Actionable Confusion

ILLC relied heavily on anecdotal testimony that confusion "happens all the time." That evidence, however, does not support liability—it confirms the absence of actionable confusion. Every example involved people recognizing IF's well-known food business or questioning whether ILLC or Mr. Runyon was somehow associated with IF. App. A.1. ILLC did not identify a single instance in which a consumer mistakenly purchased—or attempted or declined to purchase—the wrong apparel or cookbook (or recipes or nutrition information). That is what would be required to show actionable confusion, and that evidence was entirely lacking.

Trademark infringement protects against confusion in the marketplace—not confusion generally. As courts recognize, "not all confusion offends trademark law." *M.I.B. Grp. LLC v. Aguilar*, 2024 WL 3857540, at *11 (C.D. Cal. July 16, 2024). The Ninth Circuit has repeatedly emphasized that trademark law "protects only against mistaken *purchasing decisions* and not against confusion generally." *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 676–77 (9th Cir. 2005) (citation omitted) (explaining that trademark law prevents only uses of a mark that confuse potential consumers in a "commercial transaction"). Likewise, likelihood-of-confusion analysis must remain focused upon "confusion in the marketplace, as opposed to generalized public confusion." *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1214 (9th Cir. 2012) (citation omitted). The relevant marketplace confusion is potential purchasers' confusion as to the origin or source of the goods "at issue in the case." *Id.* at 1209; *see also* Dkt. 406 (collecting cases).

Accordingly, courts consistently reject trademark claims where the alleged confusion is not tied to purchasing decisions concerning the goods at issue. *See, e.g.*, *Punchbowl, Inc. v. AJ Press LLC*, 2024 WL 4005220, at *10 (C.D. Cal. Aug. 22, 2024) (no infringement as a matter of law where plaintiff "has not identified a single customer who purchased (or came close to purchasing) the wrong product"); *James R. Glidewell Dental Ceramics, Inc. v. Keating Dental Arts, Inc.*, 2013 WL 655314, at *9 (C.D. Cal. Feb. 21, 2013) (same where purported confusion

7

evidence "does not suggest that 'members of the buying public would *mistakenly purchase* [Defendant's product] believing it was [Plaintiff's product] or vice versa" (alterations in original)); *Echo Drain v. Newsted*, 307 F. Supp. 2d 1116, 1126 (C.D. Cal. 2003) (same).

The reverse-confusion doctrine does not alter that principle. Reverse confusion does not dispense with the requirement of purchasing confusion as to the source of the goods at issue. The relevant question remains whether consumers doing business with the senior user mistakenly believe they are dealing with the junior user when purchasing the goods at issue. *Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1130 (9th Cir. 1998). Thinking of IF, or disliking IF's plant-based meat products, is not the same thing as believing that IF was the source of apparel or recipes sold by ILLC.[3]

Yet that mental association—rather than purchasing confusion—is all that ILLC mustered at trial. Mr. Runyon testified that individuals who encountered IMPOSSIBLE-branded apparel would ask whether he was associated with IF or otherwise reference IF's food products. Tr. at 213:4–214:3, 215:12–15. He also described an encounter at a Texas chili cookoff where an individual asked: "You are not with that plant meat, fake meat thing, are you[?]" Tr. at 215:8–16. To the extent these interactions reflect confusion, they concern whether Mr. Runyon or his brand was somehow associated with IF's well-known food business. They do not establish that any consumer believed IF manufactured the apparel, sponsored the apparel, or was the source of any cookbook, recipe, or nutrition-related product. Nor do these interactions encompass any resulting purchase, attempted purchase, or declined purchase of those products.

Likewise, Mr. Durant testified that people sometimes responded, "Oh, Impossible Foods" when seeing his IMPOSSIBLE shirt. Tr. at 434:19–437:8. But he admitted that he did not know why they made that association, whether they were referencing IF's burgers or IF's apparel, or what specifically caused the reaction. Tr. at 436:17–437:8. When asked whether he knew the source of the alleged confusion, Mr. Durant answered: "I don't know exactly why." *Id.* Even if this testimony is viewed as evidence that consumers associated the IMPOSSIBLE name with IF,

---

[3] That mental "association" might be actionable as trademark dilution, 15 U.S.C. § 1125(c)(2)(B)–(C), but ILLC did not bring a dilution claim.

8

it does not establish that consumers were confused regarding the source, sponsorship, affiliation, or approval of the apparel or cookbook goods at issue.

Dr. Palmatier's testimony did not fill this evidentiary gap. Dr. Palmatier relied on the same anecdotal examples described above. Tr. at 694:23–695:7, 695:14–696:21. The absence of consumer testing further underscores the deficiency. ILLC retained two consumer-perception experts and presented survey-based testimony elsewhere in the case. Indeed, Dr. Palmatier conducted a likelihood-of-confusion survey, but not concerning the apparel, cookbook, recipe, or nutrition-information goods at issue. Tr. at 727:12–728:7. Neither expert tested whether consumers encountering those goods believed they originated with, were sponsored by, affiliated with, or approved by IF, nor did either test the theory advanced in closing—that consumers encountering the IMPOSSIBLE mark thought of IF rather than Mr. Runyon. While survey evidence is not required, the absence of any consumer testing on the central confusion theory presented to the jury is telling, particularly where ILLC retained experts capable of conducting precisely that analysis. *See Cairns v. Franklin Mint Co.*, 24 F. Supp. 2d 1013, 1041–42 (C.D. Cal. 1998).

Mr. Cashman's closing argument confirms that ILLC's theory was not that consumers were purchasing apparel or cookbooks under a mistaken belief about source. Rather, counsel argued that the injury was that consumers associated the IMPOSSIBLE name with IF, that some consumers did not wish to be associated with IF's products, and that IF's prominence had diminished Mr. Runyon's ability to use IMPOSSIBLE as a source identifier. He emphasized that many consumers have concerns about "highly processed food," that such products carry a "negative connotation," and that consumers "don't want to be associated with it." Tr. at 1126:2–13. Counsel then argued that John Durant stopped wearing an IMPOSSIBLE shirt because he did not want to be associated with products that were "antithetical" to his health views. Tr. at 1126:14–18. In the same vein, counsel argued that the injury was that consumers encountering the IMPOSSIBLE mark thought of IF's plant-based meat business instead of Joel Runyon and associated Runyon's brand with IF. He emphasized that consumers no longer thought of Joel when they saw the IMPOSSIBLE name, that Runyon's brand had become associated with IF and its products, and that his brand had been "swamped" by IF's prominence. Tr. at 1130:20–21. Most

9

tellingly, in discussing Professor Palmatier's testimony, counsel argued that the relevant harm was the erosion of Runyon's ability to use IMPOSSIBLE as a source identifier "so that people know, hey, when I see the hat, I'm looking at Joel, I'm thinking about Joel, not plant meat." Tr. at 1137:18–1138:4. That theory may demonstrate the prominence of IF's food brand or the creation of unwanted associations with IF's products. But it does not establish confusion among purchasers concerning the source, sponsorship, affiliation, or approval of the apparel and cookbook goods submitted to the jury.

The anecdotal evidence also fails for a more fundamental reason: ILLC did not establish that the alleged confusion was caused by IF's accused apparel or cookbook. Actionable confusion requires "a causal link between the [consumer's] confusion and [the defendant's] allegedly infringing behavior." *Rehrig Pac. Co. v. Norseman Plastics Ltd.*, 2003 WL 25667625, at *31 (C.D. Cal. Sept. 30, 2003). "The *sine qua non* of trademark infringement is consumer confusion caused by the infringing behavior." *Alzheimer's Disease & Related Disorders Ass'n, Inc. v. Alzheimer's Found. of Am., Inc.*, 307 F. Supp. 3d 260, 287 (S.D.N.Y. 2018). Thus, evidence that consumers associate IMPOSSIBLE with IF's well-known food business is insufficient in the complete absence of evidence that it resulted from IF's allegedly infringing apparel and cookbook. *See Girl Scouts of the United States of Am. v. Boy Scouts of Am.*, 597 F. Supp. 3d 581, 601 (S.D.N.Y. 2022) ("Instances of confusion not caused by the allegedly infringing use are insufficient . . . .").

The Court recognized this same distinction during trial. When ILLC argued that it was (improperly) relying on "generalized confusion," the Court responded: "That's where you lose me: generalized confusion includes the burger, includes food, and that's what you can't do." Tr. at 459:12–15. The Court further explained that if confusion "comes from the Impossible Burger marketing, then that . . . should not be persuasive to the jury that there's confusion in the use of t-shirts, apparel and cookbooks." Tr. at 458:2–8. The Court correctly identified a dispositive issue in causation—whether any confusion was attributable to the accused apparel and cookbook rather than IF's non-accused food business. Tr. at 464:19–22.

ILLC never bridged that distinction. At most, the evidence showed that the IMPOSSIBLE name called IF to mind. But "call to mind is not confusion." 3 J. THOMAS MCCARTHY, MCCARTHY

10

ON TRADEMARKS AND UNFAIR COMPETITION § 23:9 (5th ed. 2026). The Lanham Act does not impose liability merely because consumers recognize a well-known brand, think of that brand when encountering a mark, or associate the mark with that brand's products. Because ILLC failed to show that consumers were likely to be confused as to the source, sponsorship, affiliation, or approval of the goods at issue—or that any alleged confusion was caused by the accused apparel or cookbooks—the verdict cannot stand.

### 2.    The Remaining *Sleekcraft* Factors Cannot Sustain the Verdict

The remaining factors under *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979), do not support liability. In assessing the proximity of the goods, courts examine whether the goods are sufficiently related in use or function or sold to similar consumers, such that they are likely to believe the goods originate from a common source. *Moose Creek, Inc. v. Abercrombie & Fitch Co.*, 331 F. Supp. 2d 1214, 1226 (C.D. Cal.), *aff'd*, 114 F. App'x 921 (9th Cir. 2004). In considering the goods' marketing channels, courts consider the context of how the goods are encountered in the marketplace. *Playmakers, LLC v. ESPN, Inc.*, 297 F. Supp. 2d 1277, 1283 (W.D. Wash. 2003), *aff'd*, 376 F.3d 894 (9th Cir. 2004). The evidence here demonstrated neither meaningful product proximity nor overlapping marketplace channels.

ILLC sold apparel directly to consumers through online channels. Tr. 158:9–160:11, 882:4–16. IF, by contrast, did not sell apparel at all. IF's apparel consisted of promotional "swag" distributed to employees and at marketing events to support its plant-based meat business. Tr. at 762:15–763:1. The apparel generated no revenue and was incidental to IF's core food business.

The cookbook evidence was similarly deficient. ILLC distributed fitness-oriented recipes, nutrition information, and related materials online, which focused on endurance training and athletic performance. Exs. 3, 2226; Tr. at 346:6–16. By contrast, IF's cookbook instructed consumers how to prepare IF's plant-based meat products, and IF sold the hardcover cookbook through traditional book retailers as an ancillary extension of its food products. Ex. 690; Tr. at 592:21–23, 645:24–646:10. The products served different purposes, targeted different audiences, and were encountered in different contexts.

11

IMPOSSIBLE FOODS' POST-TRIAL MOTIONS
Case No. 5:21-CV-02419-BLF (SVK)

Nor did ILLC present evidence that IF intended to confuse consumers in the apparel or cookbook markets. The evidence instead showed that IF adopted and developed the IMPOSSIBLE mark in connection with its plant-based meat business and used apparel and cookbooks only incidentally to support that lawful business. Tr. at 645:24–646:10, 650:24–651:13, 652:9–10, 762:15–763:1.

More fundamentally, the *Sleekcraft* factors are "an adaptable proxy for consumer confusion, not a rote checklist." *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1149 (9th Cir. 2011). Similarity of the marks must therefore be evaluated in the marketplace context. *Id.* at 1151. As the Ninth Circuit has recognized, "[t]he marks may be similar in appearance . . . yet not likely to cause confusion as to their source, particularly when all the factors are considered." *Sleekcraft*, 599 F.2d at 350 (quoting *J.B. Williams Co. v. LeConte Cosmetics, Inc.*, 523 F.2d 187, 192 (9th Cir. 1975)). Likewise, courts have found no likelihood of confusion where similar apparel marks were encountered through distinct channels of trade. *See Moose Creek*, 331 F. Supp. 2d at 1229–30.

ILLC's closing argument effectively invited the jury to treat the *Sleekcraft* factors as a checklist. Counsel argued that the relevant inquiry was simply: "Is it the same name? Yes. Same articles? Yes. Likely to be confusing? Absolutely." Tr. at 1130:1–4. But the ultimate question is not whether the parties used the same word or whether both distributed apparel. The question is whether consumers were likely to be confused regarding the source, sponsorship, affiliation, or approval of the goods at issue.

The trial evidence did not show consumers encountering two competing apparel brands or two competing cookbook brands in the marketplace. Nor did ILLC present evidence that consumers were likely to be confused regarding the source, sponsorship, affiliation, or approval of the apparel and cookbook goods at issue. The strength of IF's brand and the similarity of the marks may explain why consumers associated the IMPOSSIBLE name with IF. But the evidence showed recognition of IF's food business and associations with IF's products, not likely confusion concerning the source, sponsorship, affiliation, or approval of the goods submitted to the jury.

12

IMPOSSIBLE FOODS' POST-TRIAL MOTIONS
Case No. 5:21-CV-02419-BLF (SVK)

**B.     The Corrective Advertising Award Fails as a Matter of Law**

Even assuming the jury could find liability, the $1.5 million corrective advertising award for infringing apparel cannot stand.[4] Dkt. 459 at 5. Corrective advertising damages are intended to "restore the value plaintiff's trademark has lost due to defendant's infringement." *Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 988 (9th Cir. 1996). They are not presumed, and they must be supported by evidence of actual injury, a reliable quantification of that injury, and a causal nexus between the infringement and the injury. ILLC failed to establish any of those requirements.

**1.     ILLC Failed to Show Any Actual Injury Requiring Corrective Advertising**

Actual damages for corrective advertising are not available merely because a plaintiff establishes liability. Rather, the plaintiff must "produce specific evidence upon which a reasonable factfinder could conclude that it had suffered actual damages and could quantify those damages." *JL Beverage Co. v. Beam, Inc.*, 2017 WL 3666302, at *4 (D. Nev. Aug. 24, 2017). Because corrective advertising is intended to restore the value a trademark has lost due to infringement, a plaintiff must demonstrate an actual injury requiring correction. *Adray*, 76 F.3d at 988–89. Put differently, corrective advertising damages are compensatory in nature and therefore require proof that the mark actually suffered injury as a result of consumer confusion. *See Marketquest Grp., Inc. v. BIC Corp.*, 316 F. Supp. 3d 1234, 1301 (S.D. Cal. 2018). As McCarthy explains, "a recovery of damages requires proof that some consumers were *actually confused* or deceived." 4 MCCARTHY, *supra*, § 30:74 (emphasis added). Likewise, "proof of actual confusion is ordinarily required for recovery of damages for pecuniary loss sustained by the plaintiffs." *Illusions Int'l Inc. v. Walgreen Co.*, 2008 WL 11342979, at *2 (C.D. Cal. July 11, 2008).

As explained *supra* Part IV.A.1, ILLC failed to show any actionable actual confusion. Moreover, ILLC failed to show any other actual injury requiring corrective advertising. Although Mr. Runyon testified that customers were concerned about being associated with IF's brand (Tr. at 1032:2–6), that business momentum had been diminished (Tr. at 1032:18–23), and that additional efforts would be required to explain and promote the brand (Tr. at 1032:23–1033:6), he

---

[4] The jury awarded corrective advertising damages for infringing apparel only (not cookbooks).

IMPOSSIBLE FOODS' POST-TRIAL MOTIONS
Case No. 5:21-CV-02419-BLF (SVK)

did not quantify any of those purported injuries. Without evidence of actual injury requiring correction, the corrective advertising award cannot stand.

### 2.   ILLC Failed to Reliably Quantify Any Injury

Even if ILLC had established an actual injury, it failed to quantify that injury in any reliable way. Corrective advertising damages must be tied to injury to the "value of the mark" itself. *Adray*, 76 F.3d at 989. A plaintiff must offer evidence showing that its mark lost value and provide a non-speculative basis for calculating the amount necessary to restore that value. *Thrive Nat. Care, Inc. v. Thrive Causemetics, Inc.*, 2021 WL 4813257, at *7 (C.D. Cal. Oct. 6, 2021). Damages "based on speculation or guesswork" cannot stand. *McClaran v. Plastic Indus., Inc.*, 97 F.3d 347, 361–62 (9th Cir. 1996).

ILLC presented no evidence of the value of its mark. Dr. Palmatier acknowledged that he did not measure any decrease in brand equity, decline in brand value, or change in consumer perceptions of the ILLC brand, nor did he rely on survey evidence demonstrating that such injury occurred. Tr. at 723:12–725:12. Dr. Vanderhart likewise did not calculate the value of the IMPOSSIBLE mark before or after the alleged infringement, measure any diminution in trademark value, or quantify any decrease attributable to the accused conduct. Tr. at 808:16–809:7. As Mr. Plumpe explained, neither expert performed a trademark valuation analysis. Tr. at 843:11–20, 845:14–846:23.

Nor did ILLC cure this defect when the Court permitted it to reopen its case. Mr. Runyon admitted that he had never performed a valuation of the brand or trademark. Instead, he offered his personal belief that the company might once have supported a valuation of $15–25 million and that the brand is now worth "not much." Tr. at 1027:15–1031:25. But he provided no methodology, no valuation of the trademark itself, no measurement of any diminution in trademark value, and no basis for determining the amount of corrective advertising necessary to restore any lost value.

Evidence that a business experienced headwinds, reputational concerns, or slower growth is not a substitute for evidence of injury to the value of the trademark itself. *Adray* requires proof that corrective advertising is necessary to restore value lost by the mark as a result of the

14

IMPOSSIBLE FOODS' POST-TRIAL MOTIONS
Case No. 5:21-CV-02419-BLF (SVK)

infringement. 76 F.3d at 988–89. Thus, even after reopening its case, ILLC failed to provide the valuation evidence necessary to support a corrective advertising award.

The only concrete figures presented at trial were approximately $450,000 in advertising expenditures and less than $100,000 in apparel revenue. Tr. at 799:19–800:7, 806:24–808:14. Moreover, no witness identified the amount of corrective advertising reasonably necessary to remedy any injury to the value of ILLC's trademark. Dr. Palmatier derived his "multiplier" from the number of corrective exposures needed to counteract a mistaken association; it was not a measure of injury to trademark value. Tr. at 736:18–737:3. Likewise, Dr. Vanderhart did not measure any loss in trademark value. Instead, she applied Dr. Palmatier's multiplier to IF's promotional expenditures without determining whether the resulting figure bore any relationship to injury to the value of ILLC's mark. Tr. at 763:17–764:3, 797:20–798:3, 809:8–810:18.

As a result, the jury was left without any evidentiary basis for determining what amount of corrective advertising, if any, was necessary to remedy the injury to the value of ILLC's trademark. The record therefore fails to establish that the $1.5 million award was necessary to restore the allegedly lost value of ILLC's trademark. *See Adray*, 76 F.3d at 988–89; *Binder v. Disability Group, Inc.*, 772 F. Supp. 2d 1172, 1180–81 (C.D. Cal. 2011) (rejecting corrective advertising award that was "not sufficiently tethered to correcting the nature of the harm suffered").

As the Court itself observed, the resulting award was "startlingly high" given the evidence presented. 4/23/2026 Tr. at 23:3–9. Because ILLC failed to provide a reliable, non-speculative basis for measuring injury to its asserted mark or determining the amount necessary to restore its lost value, the corrective advertising award cannot stand.

**3.    ILLC Failed to Establish a Causal Nexus Between the Claimed Injury and the Accused Goods**

The award independently fails because ILLC did not establish that IF's accused apparel or cookbook caused the claimed injury. As this Court previously recognized, ILLC was required to show damage "due to [IF's] *infringement*." Dkt. 383 at 7 (quoting *Adray*, 76 F.3d at 988). Courts require plaintiffs to distinguish between harm caused by the allegedly infringing conduct and harm attributable to lawful marketplace forces. *See Comput. Access Tech. Corp. v. Catalyst Enters., Inc.*,

15

273 F. Supp. 2d 1063, 1076 (N.D. Cal. 2003) ("the law requires plaintiffs to distinguish between damages caused by lawful and unlawful conduct"); *Fitness Anywhere LLC v. WOSS Enters. LLC*, 2018 WL 6069511, at \*6 (N.D. Cal. Nov. 20, 2018) (Freeman, J.) (trademark damages compensate only for "the harm caused by [the] infringement").

As explained *supra* Part IV.A.1, ILLC failed to show any causal link between IF's apparel and cookbook and any confusion or other harm. Indeed, ILLC could not identify a single customer who even saw IF's accused apparel or cookbook let alone were confused by those goods. App. A.2. Rather, every instance of purported confusion was linked to IF's lawful and non-accused plant-based meat business. App A.1.

Because ILLC failed to provide a non-speculative basis for connecting the $1.5 million awarded to injury caused by the accused apparel or cookbook, judgment as a matter of law is required. At minimum, the Court should remit the corrective advertising award to the maximum amount supported by the evidence or order a new trial on corrective advertising damages.

## C.   Punitive Damages Fail as a Matter of Law

The $1.75 million punitive damages award independently fails as a matter of law. First, because the corrective advertising award cannot be sustained, the punitive award necessarily falls with it. Second, ILLC failed to present clear and convincing evidence of oppression, fraud, or malice as required under California law.

### 1.   Punitive Damages Cannot Stand Absent Cognizable Actual Damages

Under California law, "actual damages are an absolute predicate for an award of exemplary or punitive damages." *Monster Energy Co. v. Integrated Supply Network, LLC*, 821 F. App'x 730, 734 (9th Cir. 2020) (citation omitted); *John Paul Mitchell Sys. v. Eslami*, 110 F.3d 68, at \*4 (9th Cir. 1997) (table). In the absence of actual damages, a punitive award must be vacated. *Monster Energy*, 821 F. App'x at 734.

As explained *supra* Part IV.B, the corrective advertising award cannot stand because ILLC failed to establish legally sufficient evidence of actual injury, quantifiable damages, or causation tied to the accused goods. The punitive award therefore necessarily fails as well.

16

IMPOSSIBLE FOODS' POST-TRIAL MOTIONS
Case No. 5:21-CV-02419-BLF (SVK)

**2.      ILLC Failed to Present Clear and Convincing Evidence of Oppression, Fraud, or Malice**

Punitive damages additionally fail because ILLC did not present clear and convincing evidence of oppression, fraud, or malice. Cal. Civ. Code § 3294(a). As the Court itself recognized, "there was no evidence of fraud and there was no evidence of oppression," leaving only "malice" as a potential basis for punitive damages. 4/23/2026 Tr. at 6:13–15.

Under California law, "malice" requires either an intent to injure, or "despicable conduct" carried on with a willful and conscious disregard of the rights of others. Cal. Civ. Code § 3294(c)(1). "Despicable conduct" is an exacting standard. It refers to conduct "so vile, base, contemptible, miserable, wretched or loathsome that it would be looked down upon and despised by ordinary decent people." *McNeal v. Whittaker, Clark & Daniels, Inc.*, 296 Cal. Rptr. 3d 394, 408 (Ct. App. 2022) (citation omitted).

No such evidence exists here. IF presented evidence that it selected and developed the IMPOSSIBLE mark for its food business, conducted trademark due diligence, believed coexistence with other IMPOSSIBLE users was permissible, and did not view ILLC's apparel-related activities as conflicting with its business. App. B.

That evidence is fundamentally inconsistent with the showing required by § 3294. Courts repeatedly recognize that knowledge of another mark—even where revealed through a trademark search or clearance process—does not establish bad faith where the defendant reasonably believes coexistence is possible and does not intend to trade on the plaintiff's goodwill. *See Marketquest Grp., Inc. v. BIC Corp.*, 862 F.3d 927, 937 (9th Cir. 2017) (bad faith does not arise from mere knowledge of another mark); *Sazerac Co. v. Fetzer Vineyards, Inc.*, 265 F. Supp. 3d 1013, 1036 (N.D. Cal. 2017) (continuing use after investigating plaintiff's claims and concluding coexistence was possible did not show intent to infringe), *aff'd*, 786 F. App'x 662 (9th Cir. 2019); *Harman Int'l Indus., Inc. v. Jem Accessories, Inc.*, 668 F. Supp. 3d 1025, 1043 (C.D. Cal. 2023) (prior knowledge of a senior user's mark may be consistent with good faith), *aff'd*, 2024 WL 4750497 (9th Cir. Nov. 12, 2024); *Sidco Indus. Inc. v. Wimar Tahoe Corp.*, 795 F. Supp. 343, 348 (D. Or. 1992) (same).

17

At most, the evidence reflected a trademark dispute concerning ancillary goods associated with IF's lawful and widely known food business. Even if IF's legal position were mistaken, there was no evidence that it acted with an intent to injure ILLC or engaged in conduct remotely approaching the level of reprehensibility required for punitive damages.

That evidence falls far short of clear and convincing proof of malice under California law. The punitive damages award therefore cannot stand.

### 3.     The Punitive Award Is Constitutionally Excessive

Even if some punitive award could survive, the $1.75 million award is constitutionally excessive. The Supreme Court and California courts repeatedly recognize that large punitive-to-compensatory ratios are constitutionally suspect. *Simon v. San Paolo U.S. Holding Co.*, 113 P.3d 63, 77 (Cal. 2005). In fact, "[e]specially when the compensatory damages are substantial or already contain a punitive element, lesser ratios 'can reach the outermost limit of the due process guarantee.'" *Id.* (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003)). For example, "a one-to-one ratio between compensatory and punitive damages is the federal constitutional limit" in cases with a "relatively low degree of reprehensibility" and a "substantial compensatory damages verdict." *Roby v. McKesson Corp.*, 219 P.3d 749, 770 (Cal. 2009).

Those concerns are especially acute here because ILLC's punitive case focused overwhelmingly on IF's lawful and non-infringing plant-based meat business, rather than the accused apparel and cookbook goods submitted to the jury. The evidence repeatedly emphasized IF's commercial success, consumer recognition, and marketplace prominence in the food industry. App. A.3. But due process does not permit punishment based on lawful conduct or market success. *State Farm*, 538 U.S. at 422–23.

The punitive award therefore cannot be sustained. If the Court vacates or remits the corrective advertising damages, the punitive award must likewise be vacated and reconsidered in light of the reduced compensatory award. The constitutional analysis must be performed using the remitted compensatory damages figure rather than the jury's original award. At a minimum, the Court should remit the punitive award to the maximum amount consistent with due process. *See*

18

IMPOSSIBLE FOODS' POST-TRIAL MOTIONS
Case No. 5:21-CV-02419-BLF (SVK)

*Simon*, 113 P.3d at 77; *Roby*, 219 P.3d at 770. Alternatively, the Court should order a new trial on punitive damages.

## D.   The Court Should Alter or Amend Its Judgment Regarding Attorneys' Fees

The starting point for any fee analysis under 15 U.S.C. § 1117(a) is the American Rule: parties ordinarily bear their own litigation costs absent a specific statutory exception. As the Supreme Court recognized in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, fee-shifting statutes depart from the default rule that "[e]ach litigant pa[ys] his own attorney's fees, win or lose." 572 U.S. 545, 548 (2014) (citation omitted). Section 1117(a) therefore authorizes fees only in "exceptional" cases—*i.e.*, cases that "stand[] out from others." *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1180 (9th Cir. 2016) (quoting *Octane Fitness*, 572 U.S. at 554).

Critically, "exceptional" does not mean merely unsuccessful, expensive, or hard fought. The Supreme Court explained that the ordinary meaning of "exceptional" is "uncommon," "rare," or "not ordinary." *Octane Fitness*, 572 U.S. at 553. Courts in the Ninth Circuit repeatedly caution that the exceptional-case standard must remain narrow; otherwise, "the exceptional would become the ordinary." *Brown v. Elec. Arts, Inc.*, 722 F. Supp. 2d 1148, 1152 (C.D. Cal. 2010). Likewise, "a positive result does not transform a trademark claim into an 'exceptional case.'" *BillFloat Inc. v. Collins Cash Inc.*, 105 F.4th 1269, 1278 (9th Cir. 2024). Nor do courts award fees "as a penalty for failure to win." *Top Brand, LLC v. Cozy Comfort Co.*, 2025 WL 3652962, at *2 (D. Ariz. Dec. 17, 2025) (citation omitted).

The Court's exceptionality determination rested principally on three considerations: (1) its conclusion that IF presented "no evidence" supporting its affirmative infringement claim and abandonment defense; (2) fairness and compensation concerns arising from Mr. Runyon's purported litigation expenditures; and (3) the jury's willfulness finding. Dkt. 492 ("Order") at 12–14. The first two premises were clearly erroneous, and the Court itself recognized that willfulness alone cannot sustain a fee award. Accordingly, the Court should alter or amend the judgment to deny the award of attorneys' fees under Rule 59(e).

IMPOSSIBLE FOODS' POST-TRIAL MOTIONS
Case No. 5:21-CV-02419-BLF (SVK)

### 1.    The Court Clearly Erred in Concluding That IF Presented "No Evidence" Supporting Core Elements of Its Claims and Defenses

The Court's exceptionality determination rests primarily on its conclusion that IF presented "no evidence" concerning key *Sleekcraft* factors and abandonment issues. Order at 13. The trial record does not support that conclusion.

The Court relied on *Bell v. Oakland Community Pools Project, Inc.* in concluding that an "'utter lack of support or reasonable argument for a foundational element of [IF's] trademark claim' and abandonment defense 'renders this case exceptional.'" Order at 13 (quoting *Bell v. Oakland Cmty. Pools Project, Inc.*, 2020 WL 13695114, at *6 (N.D. Cal. Oct. 14, 2020)). But this case bears no resemblance to *Bell*.

IF introduced evidence directed to numerous *Sleekcraft* factors, including strength of the mark,[5] similarity of the marks, proximity of the goods, marketing channels, likelihood of expansion, and actual confusion.[6] App. C. Notably, IF was "<u>not</u> required to establish that *each* of the eight *Sleekcraft* factors favors a finding of likelihood of confusion." *Optimal Pets, Inc. v. Nutri-Vet, LLC*, 2010 WL 2305843, at *5 (C.D. Cal. June 7, 2010) (emphases added); *see also Surfvivor*

---

[5] "[S]tronger marks receiv[e] greater protection than weak ones," and where a mark is strong, "it is more likely that consumers will be confused by another's use of the same or similar mark." *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1141 (9th Cir. 2002). "A strong mark is . . . afforded the widest ambit of protection from infringing uses." *Sleekcraft*, 599 F.2d at 349. Trademark strength considers, *inter alia*, "marketplace recognition," which can be shown through "extensive advertising, length of exclusive use, . . . public recognition," or "the national scope of . . . sales and marketing efforts." *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1126–27 (9th Cir. 2014) (citation omitted).

[6] "[A]ctual confusion is not necessary to a finding of likelihood of confusion," because it is often "difficult" to prove. *Yuga Labs, Inc. v. Ripps*, 144 F.4th 1137, 1170 (9th Cir. 2025) (alteration in original) (quoting *Network Automation*, 638 F.3d at 1151). At the same time, "[s]urvey evidence may establish actual confusion." *P&P Imports LLC v. Johnson Enters., LLC*, 46 F.4th 953, 962 n.3 (9th Cir. 2022) (citation omitted).

20

IMPOSSIBLE FOODS' POST-TRIAL MOTIONS
Case No. 5:21-CV-02419-BLF (SVK)

*Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 631 (9th Cir. 2005) ("the plaintiff need not satisfy every factor"). That IF adduced favorable evidence on *numerous* factors—no less than six of the eight *Sleekcraft* factors—confirms that its infringement claim was supported and reasonable.

IF likewise introduced evidence supporting its abandonment defense, including evidence directed to the Lanham Act's statutory presumption of abandonment based on three years of non-use (Dkt. 457 at 55; 15 U.S.C. § 1127) and evidence showing that any remaining use was not bona fide trademark use.[7] App. D. The Court's focus on whether IF introduced evidence that Mr. Runyon intended "to permanently cease" use of the IMPOSSIBLE mark applies a more demanding standard than the Lanham Act requires. Order at 13. Under § 1127, abandonment turns on discontinuance of use and intent not to resume use, and the statute expressly provides that "[i]ntent not to resume may be inferred from circumstances." 15 U.S.C. § 1127. The Ninth Circuit likewise recognizes that abandonment may be established through circumstantial evidence and the statutory presumption arising from three years of non-use; it does not require direct evidence of a subjective intent to permanently cease use. *See Electro Source*, 458 F.3d at 940; *Grocery Outlet Inc. v. Albertson's Inc.*, 497 F.3d 949, 951–54 (9th Cir. 2007).

*Bell* involved a complete failure of proof. By contrast, IF presented evidence directed to the very issues the Court later identified as lacking "any evidence at all." Order at 13. Even if the Court disagreed with the persuasive force of that evidence, the evidence certainly existed.

Nor was this an objectively baseless case. IF's claims were authorized by leave to amend (Dkt. 101), survived summary judgment following extensive fact and expert discovery (Dkt. 311 at 18–28) and were tried to a jury over several weeks. That procedural history is fundamentally inconsistent with the "utter lack of support" for claims that failed to meet the summary judgment burden in *Bell*. 2020 WL 13695114, at *6. The Court's conclusion rests on a clearly erroneous view of the trial record.

---

[7] *See Electro Source, LLC v. Brandess-Kalt-Aetna Grp., Inc.*, 458 F.3d 931, 940 (9th Cir. 2006) (whether limited usage of a mark defeats abandonment depends on, *inter alia*, "the genuineness and commercial character" of the use and "whether the mark was sufficiently public").

21

### 2.   ILLC Was Fully Compensated by the $3.25 Million Verdict

The Court also accorded "some weight" to "considerations of fairness and compensation" and concluded that a fee award would "more fully compensat[e]" ILLC. Order at 14 (quoting *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1079 (9th Cir. 2015)). That conclusion rests on a mistaken view of the record.

The jury awarded ILLC $1.5 million in corrective advertising damages and an additional $1.75 million in punitive damages—a total award of $3.25 million. Yet those awards concerned trademarks associated with an apparel business that generated less than $100,000 in sales over its fifteen-year existence. Tr. at 806:24–808:14.

As the Court itself observed, this was a "startlingly high award of compensatory damages," particularly given that ILLC had generated less than $100,000 in apparel revenue and those sales "may not have even gone down any." 4/23/2026 Tr. at 23:3–9. The evidence showed that apparel sales actually increased during the period of alleged infringement, and ILLC identified no lost apparel sales due to IF. Tr. at 726:21–24, 884:13–885:10; Ex. 1256. Nor was there evidence of ILLC's cookbook sales or damage to those sales, beyond Mr. Runyon's admission that the "Impossible Tri" cookbook "was not [ILLC's] most successful product." Tr. at 342:3–7.

Given the absence of evidence of actual economic injury, the Court's reliance on *Fifty-Six Hope* was misplaced. There, the Ninth Circuit declined to impose fees against certain defendants, because "the evidence that [they] caused actual damages was comparatively weak." 778 F.3d at 1080. Here, the evidence of actual damages was weaker still. ILLC incurred scant, if any, actual damages and was overcompensated by the jury's verdict.

The Court's compensation considerations also rested on the mistaken premise that Mr. Runyon "*spent* more than $6 million during the prosecution of this case." Order at 14 (emphasis added). Mr. Runyon never made that representation. Rather, he stated that he "*incurred* more than six million dollars in attorney's fees and expenses." Dkt. 476-1 ¶ 7 (emphasis added). As IF pointed out, however, incurred fees are not necessarily fees actually paid, particularly where counsel was working under a partial contingency arrangement. *See* Dkt. 481-1 ¶ 3 (explaining that counsel was not engaged on a "full contingency" basis). After IF highlighted the ambiguity, Mr. Runyon

22

clarified only that he had paid "multiple millions of dollars in legal fees and expenses"—but he did not claim to have paid $6 million. Dkt. 481-1 ¶ 4. Thus, the record does not support the Court's finding that Mr. Runyon spent more than $6 million litigating this case, and the perceived disparity between the $3.25 million award and his actual litigation expenditures may not have existed at all.

### 3.     Willfulness Alone Cannot Sustain the Fee Award

The only remaining factor identified by the Court was the jury's willfulness finding. Order at 14. But as the Court correctly recognized, "willful infringement is relevant to the question of whether a case is exceptional," yet "insufficient on its own to support an award of fees in the absence of some aggravating circumstance or heightened level of culpability." Order at 11 (quoting *Invision Media Servs., Inc. v. Glen J. Lerner*, 175 F. App'x 904, 906 (9th Cir. 2006)). The Court likewise recognized that the willfulness finding was "not dispositive." Order at 12 (quoting *Apple Inc. v. Samsung Elecs. Co.*, 2014 WL 4145499, at *7 (N.D. Cal. Aug. 20, 2014)). Nor does the Lanham Act create a presumption of exceptionality based on willfulness alone. *4 Pillar Dynasty LLC v. N.Y. & Co.*, 933 F.3d 202, 216 (2d Cir. 2019).

Moreover, the Court's own discussion of willfulness was narrow and did not suggest heightened culpability. The Court relied principally on evidence that IF became aware of Mr. Runyon's trademark registrations during an initial trademark search and that a senior IF employee viewed ILLC's website for promotional ideas. Order at 12. Beyond that limited evidence, the Court cited no aggravating factors. The Court did not identify trademark piracy, concealment, litigation misconduct, bad-faith copying, deliberate exploitation of another's goodwill, or other aggravating circumstances often associated with exceptional case findings.

Moreover, IF vigorously disputed the significance of the narrow evidence cited by the Court. IF presented evidence that its trademark search identified numerous third-party registrations, that its former General Counsel believed the parties could coexist, and that the company had already adopted its name before Mr. Halla viewed ILLC's website. App. B. Whatever significance the jury ultimately assigned that evidence, the Court's own description of the conduct at issue falls far short of the aggravated misconduct that typically justifies fee shifting.

23

IMPOSSIBLE FOODS' POST-TRIAL MOTIONS
Case No. 5:21-CV-02419-BLF (SVK)

Case 5:21-cv-02419-BLF   Document 498   Filed 06/05/26   Page 32 of 32

In sum, even accepting the Court's willfulness analysis, the circumstances identified by the Court do not support transforming this heavily litigated trademark dispute into an exceptional case. The Court's exceptional case determination originally rested on three factors. Two of those factors—the purported absence of evidence and the compensation rationale—cannot withstand scrutiny. The remaining willfulness factor is "not dispositive," as the Court recognized. Order at 12. With only that one leg of the three-legged stool intact, the fee award necessarily collapses.

The exceptional-case standard is intended to identify the uncommon case that truly stands out from the mine run of trademark litigation. Once the erroneous "no evidence" premise and the mistaken compensation rationale are removed, the Court is left only with a willfulness finding that it expressly recognized is not dispositive. Under the totality of the circumstances, this case does not "stand out from others" within the meaning of *Octane Fitness* and *SunEarth*.

## V.    CONCLUSION

IF respectfully requests that the Court enter judgment as a matter of law in its favor under Rule 50(b). Alternatively, the Court should vacate or remit the damages awards or order a new trial under Rule 59(a). Finally, the Court should alter its judgment to deny the award of attorneys' fees or, alternatively, amend its judgment to apportion the fee award for "exceptional" claims only under Rule 59(e),[8] and grant such other relief as the Court deems appropriate.

DATED: June 5, 2026                                          DAVIS WRIGHT TREMAINE LLP

By: */s/ G. Roxanne Elings*
    G. Roxanne Elings

Attorneys for Plaintiff/Counter-Defendant
IMPOSSIBLE FOODS INC.

---

[8] *See Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1156–58 & n.15 (9th Cir. 2002) (holding that district court must apportion fees between recoverable Lanham Act claims and non-recoverable Lanham Act claims that did not rise to the level of "exceptional").

24