G. ROXANNE ELINGS (*pro hac vice*)
roxanneelings@dwt.com
RAPHAEL HOLOSZYC-PIMENTEL (*pro hac vice*)
rhp@dwt.com
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 42nd Floor
New York, NY 10020-1104
Telephone: (212) 489-8230
Facsimile: (212) 489-8340

SARAH E. BURNS (CA State Bar No. 324466)
sarahburns@dwt.com
DAVIS WRIGHT TREMAINE LLP
50 California Street, 23rd Floor
San Francisco, CA 94111
Telephone: (415) 276-6500
Facsimile: (415) 276-6599

Attorneys for Plaintiff/Counter-Defendant
IMPOSSIBLE FOODS INC.

IN THE UNITED STATES DISTRICT COURT

THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IMPOSSIBLE FOODS INC., | Case No. 5:21-cv-02419-BLF |
| Plaintiff/Counter-Defendant, | **DECLARATION OF G. ROXANNE ELINGS IN SUPPORT OF IMPOSSIBLE FOODS INC.'S POST-TRIAL MOTIONS** |
| vs. | |
| IMPOSSIBLE LLC, | Judge:    Hon. Beth L. Freeman |
| Defendant/Counter-Plaintiff. | Date:    July 23, 2026<br>Time:    9:00 a.m. |

## DECLARATION OF G. ROXANNE ELINGS IN SUPPORT OF

## IMPOSSIBLE FOODS INC.'S POST-TRIAL MOTIONS

I, G. Roxanne Elings, declare under penalty of perjury that the following is true and correct:

1.      I am a partner at Davis Wright Tremaine LLP, which represents Impossible Foods Inc. ("IF") in this action. I am over the age of twenty-one and competent to make this declaration based on my personal knowledge. This declaration is submitted in support of IF's Post-Trial Motions for Judgment as a Matter of Law or a New Trial, and Alteration or Amendment of the Judgment, Pursuant to Rule 50(b), 59(a), and 59(e).

2.      The attached appendices collect and summarize trial testimony, exhibits, and argument cited in IF's Post-Trial Motions. The summaries are provided solely for the Court's convenience and are not intended to replace or supplement the underlying trial record.

3.      Attached as **Appendix A** is a summary of trial testimony and exhibits concerning Impossible LLC's ("ILLC") trademark infringement claim, which lacked any evidence of confusion regarding IF's apparel or cookbooks or consumer purchases, and instead relied on evidence concerning IF's non-infringing plant-based meat.

4.      Attached as **Appendix B** is a summary of trial testimony, exhibits, and argument concerning IF's state of mind in connection with its adoption and development of the IMPOSSIBLE mark, including evidence regarding trademark due diligence, perceived coexistence with other users of the word "Impossible," and IF's understanding of ILLC's business activities.

5.      Attached as **Appendix C** is a summary of trial testimony, exhibits, and argument supporting IF's affirmative trademark infringement claim, including evidence concerning strength of the mark, similarity of the marks, proximity of the goods, marketing channels used, likelihood of expansion of the product lines, and actual confusion. This evidence corresponds to the factors set out in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979), and identified by the Court as purportedly unsupported, Dkt. 492 at 13.

ELINGS DECLARATION IN SUPPORT OF IMPOSSIBLE FOODS' POST-TRIAL MOTIONS
Case No. 5:21-CV-02419-BLF (SVK)

6.      Attached as **Appendix D** is a summary of trial testimony, exhibits, and argument supporting IF's abandonment defense, including evidence concerning non-use and the nature and extent of ILLC's use of the asserted marks in connection with recipes and nutrition information.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 5th day of June 2026, in New York, New York.

By: */s/ G. Roxanne Elings*
G. Roxanne Elings

2

# APPENDIX A

## EVIDENCE CONCERNING ILLC'S TRADEMARK INFRINGEMENT CLAIM

| Topic | Citation |
|---|---|
| **1. Purported evidence of confusion, unrelated to IF's apparel or cookbook or consumer purchases** | |
| Mr. Runyon testified that purported confusion "happens all the time," and he has to explain to unidentified persons that ILLC is not the "plant-based meat" or "plant meat" company. | Tr. at 213:4–214:3, 215:12–15. |
| Mr. Runyon testified regarding purported confusion by search "algorithms," and e-mail outreach inviting him to "vegan award" expos or raising questions about "burgers." | Tr. at 217:14–218:6, 263:5–15. |
| Mr. Durant testified regarding unidentified persons who purportedly confuse ILLC for the IF "company" and "fake meat," but he admitted that he did not know whether the confusion was due to IF's shirt or IF's burger. | Tr. 434:19–437:8. |
| Dr. Palmatier testified regarding the same email outreach and unidentified persons who were purportedly confused about IF's "meat," "plant meat," and "fake meat." | Tr. at 694:23–695:7, 695:14–696:21, 732:23–734:8. |
| Dr. Palmatier admitted that he had no data showing any confusion linked to IF's apparel or cookbook. | Tr. 729:6–19. |

3

| **2. Inability to identify any consumer who saw, let alone was confused by, IF's apparel or cookbook** | |
|---|---|
| Dr. Palmatier admitted that he did not identify anyone confused by IF's apparel or cookbook. | Tr. at 727:4–7, 728:9–18, 729:16–19. |
| Dr. Palmatier admitted that he did not know how many, if any, ILLC consumers viewed IF's apparel or cookbooks. | Tr. at 737:12–15. |
| Dr. Vanderhart admitted that she was not aware of any ILLC consumer who viewed IF's apparel. | Tr. at 812:3–17, 812:24–813:3. |
| **3. Evidence concerning IF's marketing of non-infringing plant-based meat** | |
| Evidence of IF's Run Club promoting its burger and plant-based meat products. | Tr. at 228:1–231:1, 266:6–14, 599:15–600:22, 632:17–633:15; Ex. 312. |
| Evidence of IF's marketing plant-based meat and its ingredients. | Tr. at 561:20–562:2, 600:24–602:2; Ex. 2082. |
| Mr. Halla testified that IF's marketing centered around its ground beef product. | Tr. at 383:5–7. |
| Evidence of IF spending millions of dollars to market its plant-based meat, without differentiating spending on apparel or cookbooks. | Tr. at 502:23–505:15, 515:18–516:21, 530:15–531:13, 687:6–688:13, 729:21–731:24, 737:4–11; Exs. 19, 21. |
| Evidence of IF's expenditures on marketing, beyond apparel and cookbooks. | Tr. at 521:18–523:16, 526:10–527:10, 528:18–530:12; Exs. 691, 699, 700. |

4

# APPENDIX B

## EVIDENCE CONCERNING IF'S STATE OF MIND

| Topic | Citation |
|---|---|
| IF makes food and sought trademark protection in connection with food products. | Tr. at 369:13–370:6, 371:12–14, 373:17–19. |
| Ms. Pasek testified that IF understood ILLC's business activities to be distinct from IF's food business. | Tr. at 369:13–370:6. |
| Ms. Pasek testified regarding IF's coexistence with other IMPOSSIBLE users. | Tr. at 373:17–19. |
| Ms. Pasek testified regarding IF's trademark search and due diligence process. | Tr. at 369:13–373:19; Ex. 2181. |
| Mr. Halla testified that he reviewed a collection of famous motivational quotes on ILLC's website and did not view any other portion of ILLC's website. | Tr. at 417:12–419:7; Ex. 34. |
| Mr. Halla testified that IF had already adopted its name seven months *before* he saw ILLC's website. | Tr. at 416:8–13; Ex. 33. |
| IF argued that the foregoing evidence showed a lack of intent to infringe or compete with ILLC. | Tr. at 1181:7–1182:2. |

ELINGS DECLARATION IN SUPPORT OF IMPOSSIBLE FOODS' POST-TRIAL MOTIONS
Case No. 5:21-CV-02419-BLF (SVK)

**APPENDIX C**

**EVIDENCE SUPPORTING IF'S AFFIRMATIVE**

**TRADEMARK INFRINGEMENT CLAIM**

| Topic | Citation |
|---|---|
| **1. Commercial strength and marketplace recognition** | |
| IF markets and sells products throughout the United States and internationally, including in approximately 50,000–60,000 grocery stores nationwide. | Tr. at 559:17–25, 618:12–16. |
| Since the launch of the Impossible Burger in 2016, IF has invested millions of dollars in marketing and advertising, and the brand has generated billions of earned media impressions worth millions of dollars in additional advertising value. | Ex. 19; Ex. 1111 at IF00000269; Ex. 2084. |
| **2. Similarity of the marks on the goods** | |
| Physical specimens of ILLC's IMPOSSIBLE-branded supplements, including energy and sleep powders. | Exs. 754–758. |
| Side-by-side pictures of ILLC's energy powder and IF's plant-based burger patties. | Ex. 1402 at 7; Demo. 3008 at 17. |
| Dr. Palmatier testified that consumer survey respondents believed the supplements and meats were connected because "the name [was] similar" and because of the products' "appearance." | Tr. at 1009:4–10; Exs. 1401–1406. |

6
ELINGS DECLARATION IN SUPPORT OF IMPOSSIBLE FOODS' POST-TRIAL MOTIONS
Case No. 5:21-CV-02419-BLF (SVK)

| 3. Proximity of the goods ||
|---|---|
| Dr. Palmatier testified that the supplements and meats were "proximate in the marketplace." | Tr. at 1019:1–3. |
| Dr. Palmatier testified that consumers viewed the products as related because the "products are similar" and both were perceived as "healthy." | Tr. at 1009:11–15; Exs. 1401–1406. |
| IF argued that the goods were related because both were edible consumer products. | Tr. at 1164:3–10. |
| **4. Marketing channels used** ||
| ILLC's supplements were sold through Amazon. | Tr. at 294:22–24. |
| IF's meats were sold through Amazon and grocery retailers. | Tr. at 618:19–24; Ex. 1031. |
| Dr. Palmatier testified that survey respondents believed the products were connected due to their "marketing message" and "similar advertising." | Tr. at 987:23–988:4. |
| **5. Likelihood of expansion of the product lines** ||
| Mr. Halla testified that IF had developed prototype supplements using its plant-based "heme" protein, explored partnerships to market heme supplements, and attained production capacity to mass produce such products. | Tr. at 419:12–421:11. |

7

ELINGS DECLARATION IN SUPPORT OF IMPOSSIBLE FOODS' POST-TRIAL MOTIONS
Case No. 5:21-CV-02419-BLF (SVK)

| | |
|---|---|
| Evidence that competitors in the plant-based meat industry had expanded into adjacent supplement categories, including Beyond Meat's protein supplement drinks. | Ex. 1161. |
| **6. Actual confusion** ||
| Dr. Palmatier testified regarding survey results reflecting a net confusion level exceeding 34%, and such level is "highly probative of significant consumer confusion" between the supplements and the plant-based meats. | Tr. at 996:7–9, 997:3–8. |

8

## APPENDIX D

### EVIDENCE SUPPORTING IF'S ABANDONMENT DEFENSE

| Topic | Citation |
|---|---|
| ILLC had not sold its "Impossible Tri" cookbook since approximately 2012 or 2013. | Tr. at 158:23–159:4, 342:3–5; Ex. 2226. |
| The cookbook was sold for approximately one year and "was not [ILLC's] most successful product." | Tr. at 342:3–7. |
| ILLC's "Impossible Abs Nutrition Blueprint" from 2012 consisted of meal plans rather than recipes, and Mr. Runyon agreed that representative pages were "a meal plan" and "not a recipe." | Tr. at 343:13–22, 344:13–345:6; Ex. 3. |
| A cookbook was not part of the "Nutrition Blueprint." | Tr. at 345:9–11. |
| "Paleo Meal Plans" was previously under the IMPOSSIBLE brand but had been "spun out into its own website" by 2016, according to Mr. Runyon. | Tr. at 345:25–346:5. |
| Evidence concerning the branding used in connection with Paleo products. | Ex. 2169; Demo. 3008 at 44; Tr. at 1173:10–13, 1211:1–4. |
| ILLC's provided no documentary evidence of sales of the products within the relevant three-year period. | Tr. at 346:6–16. |

ELINGS DECLARATION IN SUPPORT OF IMPOSSIBLE FOODS' POST-TRIAL MOTIONS
Case No. 5:21-CV-02419-BLF (SVK)

| | |
|---|---|
| IF argued that the foregoing evidence established at least a rebuttable presumption of abandonment under the Court's instructions. | Tr. at 1173:25–1174:16. |

ELINGS DECLARATION IN SUPPORT OF IMPOSSIBLE FOODS' POST-TRIAL MOTIONS
Case No. 5:21-CV-02419-BLF (SVK)