J. Noah Hagey, Esq. (SBN: 262331)
  hagey@braunhagey.com
Adam S. Cashman, Esq. (SBN: 255063)
  cashman@braunhagey.com
Greg Washington, Esq. (SBN: 318796)
  gwashington@braunhagey.com
J. Tobias Rowe, Esq. (SBN: 305596)
  rowe@braunhagey.com
Oliver McNicholas, Esq. (SBN: 363554)
  omcnicholas@braunhagey.com
BRAUNHAGEY & BORDEN LLP
747 Front Street, 4th Floor
San Francisco, CA 94111
Telephone: (415) 599-0210

Marissa R. Benavides (*pro hac vice* admission)
  benavides@braunhagey.com
BRAUNHAGEY & BORDEN LLP
200 Madison Avenue, 23rd Floor
New York, NY 10016
Telephone: (646) 829-9403

*Attorneys for Impossible LLC*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| IMPOSSIBLE FOODS INC., | Case No. 5:21-cv-02419-BLF (SVK) |
|    Plaintiff / Counter-Defendant, | **IMPOSSIBLE LLC'S OPPOSITION TO IMPOSSIBLE FOODS INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR NEW TRIAL AND TO ALTER OR AMEND JUDGMENT** |
|    v. | |
| IMPOSSIBLE LLC, | |
|    Defendant / Counter-Plaintiff. | **Judge:**    Hon. Beth Labson Freeman<br>**Date:**    July 23, 2026<br>**Time:**    9:00 a.m. |

**TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................................................I-II

TABLE OF AUTHORITIES ..............................................................................................III-V

INTRODUCTION ................................................................................................................ 1

BACKGROUND .................................................................................................................. 2

ARGUMENT........................................................................................................................ 3

I.      THE TRIAL EVIDENCE STRONGLY SUPPORTS THE VERDICT............................ 3

        A.      The Jury Correctly Found Likelihood of Confusion ................................... 4

                1.      Impossible Foods's "Actual Confusion" Argument Fails........................... 4

                2.      The Other *Sleekcraft* Factors Support the Jury's Verdict ........................... 9

        B.      The Jury's Damages Award is Well-Supported ...................................... 10

                1.      The Evidence Proves the Fact of Injury....................................... 11

                2.      The Jury's Quantification of Damages Was Well-Supported.................. 13

                3.      Impossible Foods's Causation Argument Fails......................................... 16

        C.      The Jury's Punitive Damages Award Was Well-Supported............................... 17

                1.      Impossible LLC Proved Actual Damages................................................. 18

                2.      The Jury Correctly Found Oppression, Fraud, or Malice ........................ 18

                3.      The Punitive Damages Award Was Not Constitutionally Excessive......... 20

II.     THERE IS NO BASIS TO RECONSIDER THE COURT'S AWARD OF
        ATTORNEYS' FEES.............................................................................................. 21

IMPOSSIBLE LLC'S OPPOSITION TO IMPOSSIBLE FOODS INC.'S MOTION FOR JUDGMENT AS A
MATTER OF LAW OR NEW TRIAL AND TO ALTER OR AMEND JUDGMENT

A.      The Court Correctly Determined Impossible Foods's Infringement Claims and Abandonment Defense Were Exceptionally Weak ............................................. 22

B.      The Court Correctly Judged Fairness and Compensation Favor a Fee Award..... 24

C.      The Court Correctly Concluded That Impossible Foods's Willful Infringement Weighed in Favor of a Fee Award......................................................................... 25

CONCLUSION.......................................................................................................................... 25

Case No. 5:21-cv-02419-BLF (SVK)

IMPOSSIBLE LLC'S OPPOSITION TO IMPOSSIBLE FOODS INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR NEW TRIAL AND TO ALTER OR AMEND JUDGMENT

**TABLE OF AUTHORITIES**

**PAGE(S)**

Cases

*Adray v. Adry-Mart, Inc.,*
  76 F.3d 984 (9th Cir. 1995) .............................................................................................. 15

*Americana Trading v. Russ Berrie & Co.,*
  966 F.2d 1284 (9th Cir. 1992) ............................................................................................ 9

*Bey v. Malec,*
  No. 18-CV-02626-SI, 2020 WL 3058336 (N.D. Cal. June 9, 2020) ............................................ 21

*Blackwell v. Foley,*
  724 F. Supp. 2d 1068 (N.D. Cal. 2010) .............................................................................. 25

*Cairns v. Franklin Mint Co.,*
  24 F. Supp. 2d 1013 (C.D. Cal. 1998) .................................................................................. 9

*City of Carlsbad v. Shah,*
  850 F. Supp. 2d 1087 (S.D. Cal. 2012) ............................................................................... 19

*Computer Access Tech. Corp. v. Catalyst Enters., Inc.,*
  273 F. Supp. 2d 1063 (N.D. Cal. 2003) ............................................................................... 17

*Crowley v. Epicept Corp.,*
  883 F.3d 739 (9th Cir. 2018) ....................................................................................... 8, 12

*Doe ex rel. Rudy-Glanzer v. Glanzer,*
  232 F.3d 1258 (9th Cir. 2000) ......................................................................................... 17

*Dreamwerks Prod. Grp., Inc. v. SKG Studio,*
  142 F.3d 1127 (9th Cir. 1998) ........................................................................................... 7

*DSPT Int'l, Inc. v. Nahum,*
  624 F.3d 1213 (9th Cir. 2010) ......................................................................................... 18

*E.E.O.C. v. Go Daddy Software, Inc.,*
  581 F.3d 951 (9th Cir. 2009) ....................................................................................... 3, 18

*E.E.O.C. v. Pape Lift, Inc.,*
  115 F.3d 676 (9th Cir. 1997) ............................................................................................. 3

*Exxon Shipping Co. v. Baker,*
  554 U.S. 471 (2008) ...................................................................................................... 21

IMPOSSIBLE LLC'S OPPOSITION TO IMPOSSIBLE FOODS INC.'S MOTION FOR JUDGMENT AS A
MATTER OF LAW OR NEW TRIAL AND TO ALTER OR AMEND JUDGMENT

*Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*,
778 F.3d 1059 (9th Cir. 2015) ........................................................................................ 24

*Fitness Anywhere LLC v. WOSS Enters. LLC*,
2018 WL 6069511 (N.D. Cal. Nov. 20, 2018) ................................................................ 17

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*,
618 F.3d 1025 (9th Cir. 2010) .......................................................................................... 4

*Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*,
826 F.2d 837 (9th Cir. 1987) ............................................................................................ 9

*Gross v. CitiMortgage, Inc.*,
33 F.4th 1246 (9th Cir. 2022) ......................................................................................... 16

*Guardant Health, Inc. v. Natera, Inc.*,
2025 WL 2106522 (N.D. Cal. July 28, 2025) ........................................................... 18, 20

*Hansen Beverage Co. v. CytoSport*, Inc.,
2010 WL 11914746 (C.D. Cal. Apr. 9, 2010) ................................................................ 11

*Illusions Int'l Inc. v. Walgreen Co.*,
No. SACV07494JVSRNBX, 2008 WL 11342979 (C.D. Cal. July 11, 2008) .............. 13

*In re First All. Mortg. Co.*,
471 F.3d 977 (9th Cir. 2006) .......................................................................................... 18

*Ironhawk Techs., Inc. v. Dropbox, Inc.*,
2 F.4th 1150 (9th Cir. 2021) ........................................................................................ 6, 8

*Johnson v. Paradise Valley Unified Sch. Dist.*,
251 F.3d 1222 (9th Cir. 2001) ........................................................................................ 14

*Karl Storz Endoscopy Am., Inc. v. Surgical Techs., Inc.*,
285 F.3d 848 (9th Cir. 2002) ............................................................................................ 6

*Krechman v. Cnty. of Riverside*,
723 F.3d 1104 (9th Cir. 2013) .......................................................................................... 3

*Lahoti v. Vericheck, Inc.*,
636 F.3d 501 (9th Cir. 2011) .......................................................................................... 10

Lanham Act.,
403 F.3d 672 (9th Cir. 2005) ............................................................................................ 7

*Lindy Pen Co. v. Bic Pen Corp.*,
982 F.2d 1400 (9th Cir. 1993) ........................................................................................ 12

Case No. 5:21-cv-02419-BLF (SVK)

*Loggervale v. Holland*,
   677 F. Supp. 3d 1026 (N.D. Cal. 2023) ................................................................................. 4, 12

*M.I.B. Grp., LLC v. Aguilar*,
   2024 WL 3857540 (C.D. Cal. July 16, 2024) .............................................................................. 7

*Marketquest Grp., Inc. v. BIC Corp.*,
   316 F. Supp. 3d 1234 (S.D. Cal. 2018) ....................................................................................... 11

*Oracle Corp. v. SAP AG*,
   765 F.3d 1081 (9th Cir. 2014) ..................................................................................................... 15

*Pacific Shores Props., LLC v. City of Newport Beach*,
   730 F.3d 1142 (9th Cir. 2013) ..................................................................................................... 16

*Partners for Health & Home, L.P. v. Seung Wee Yang*,
   488 B.R. 431 (C.D. Cal. 2012) ..................................................................................................... 25

*PNC Equip. Fin., LLC v. Carr*,
   No. 19-MC-80013-BLF, 2022 WL 899849 (N.D. Cal. Mar. 28, 2022) ...................................... 21

*QS Wholesale, Inc. v. World Mktg., Inc.*,
   No. SA12CV0451, 2014 WL 12586120 (C.D. Cal. Jan. 7, 2014) ............................................... 19

*Rearden LLC v. Rearden Commerce, Inc.*,
   683 F.3d 1190 (9th Cir. 2012) ................................................................................................... 5, 7

*Reeves v. Sanderson Plumbing Prods., Inc.*,
   530 U.S. 133 (2000) ................................................................................................................... 3, 12

*Riley v. Volkswagen Grp. of Am., Inc.*,
   51 F.4th 896 (9th Cir. 2022) ....................................................................................................... 20

*Roby v. McKesson Corp.*,
   47 Cal. 4th 686 (2009) ................................................................................................................. 20

*San Diego Comic Convention v. Dan Farr,
   Prods.*, 336 F. Supp. 3d 1172 (S.D. Cal. 2018) ........................................................................... 9

*San Diego Comic Convention v. Dan Farr,
   Prods.*, 807 F. App'x 674 (9th Cir. 2020) ................................................................................... 25

*Skydive Ariz., Inc. v. Quattrocchi*,
   673 F.3d 1105 (9th Cir. 2012) ............................................................................................. passim

*Stone Creek, Inc. v. Omnia Italian Design, Inc.*,
   875 F.3d 426 (9th Cir. 2017) ......................................................................................................... 4

IMPOSSIBLE LLC'S OPPOSITION TO IMPOSSIBLE FOODS INC.'S MOTION FOR JUDGMENT AS A
MATTER OF LAW OR NEW TRIAL AND TO ALTER OR AMEND JUDGMENT

*SunEarth, Inc. v. Sun Earth Solar Power Co.*,
    839 F.3d 1179 (9th Cir. 2016) ............................................................................ 22

*Union Oil Co. of California v. Terrible Herbst, Inc.*,
    331 F.3d 735 (9th Cir. 2003) .............................................................................. 17

*Wallace v. City of San Diego*,
    479 F.3d 616 (9th Cir. 2007) ................................................................................ 3

*Winarto v. Toshiba Am. Elecs. Components, Inc.*,
    274 F.3d 1276 (9th Cir. 2001) ............................................................................ 18

*Zimmerman v. City of Oakland*,
    255 F.3d 734 (9th Cir. 2001) .............................................................................. 21

**Statutes**

15 U.S.C. § 1117................................................................................................. 22, 24

15 U.S.C. § 1125(a) ............................................................................................... 6, 8

15 U.S.C. §§ 1114, 1125.......................................................................................... 5

**Other Authorities**

3 McCarthy on Trademarks and Unfair Competition § 23:5 (5th ed.) ..................... 6

4 McCarthy on Trademarks and Unfair Competition § 30:74.................................. 13

IMPOSSIBLE LLC'S OPPOSITION TO IMPOSSIBLE FOODS INC.'S MOTION FOR JUDGMENT AS A
MATTER OF LAW OR NEW TRIAL AND TO ALTER OR AMEND JUDGMENT

Impossible LLC respectfully submits this Opposition to Impossible Foods's Motion for Judgment as a Matter of Law or New Trial and to Alter or Amend Judgment (Dkt. 498).

## INTRODUCTION

After five years of hard-fought litigation, the jury returned a unanimous verdict, in which it found that Impossible Foods willfully infringed Impossible LLC's federal registrations and common law trademark rights to the IMPOSSIBLE mark in connection with apparel, recipes, and cookbooks, and returned a compensatory award of $1.5 million. The jury also found that Impossible Foods infringed with malice, fraud, or oppression, and awarded punitive damages of $1.75 million. Those verdicts were reached after multiple days of deliberation, and were rendered in accordance with jury instructions that Impossible Foods stipulated were complete and correct, and as to which it raised no objections at all.

Now, after all that has come before, Impossible Foods seeks a do-over. Its motion is styled as one for relief under Rules 50(b) and 59, but it is largely an attempt to relitigate the same jury instructions it agreed to, and as to which it has waived all objections. For example, it expounds on the supposed nuances of the law regarding actual confusion, but overlooks that it stipulated to jury instructions on this matter that did not contain any of the supposed legal requirements it now urges the Court to apply. Impossible Foods has accordingly waived this and many of the other arguments made in its brief, which are in any event contrary to the controlling law of this Circuit.

Impossible Foods attempts to smuggle in additional issues as part of its putative Rule 50(b) motion that were not preserved at the close of evidence, and which also have been waived. It does not align its arguments to the standards that govern post-trial motions made under Rules 50 and 59, perhaps in an effort to sidestep its waiver. But regardless of which deferential standard is applied, Impossible Foods cannot meet the heavy burden necessary to upset a verdict that was the product of careful and considered pre-verdict rulings, accurate and complete jury instructions, and a robust evidentiary record that amply supports the conclusions reached after days of deliberations.

Impossible Foods's request for reconsideration of the Court's reasoned decision finding this case exceptional under Section 1117 based on the "totality of circumstances" is only more of the same. It offers no new evidence not previously considered, and identifies no intervening change in

IMPOSSIBLE LLC'S OPPOSITION TO IMPOSSIBLE FOODS INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR NEW TRIAL AND TO ALTER OR AMEND JUDGMENT

law. Instead, it argues that the Court should have accepted its previous arguments, and offers new arguments that it failed to make the first time around. Those new assertions have also been waived, and regardless, are mistaken and fail to present any basis on which to overturn this Court's finding that this is an exceptional case justifying an award of attorney's fees.

## BACKGROUND

After a two-week trial during which it heard extensive evidence and argument, the jury returned a unanimous verdict in favor of Impossible LLC on its claims for trademark infringement and unfair competition. (Dkt. 459.) The jury awarded $1.5 million in compensatory damages, found that Impossible Foods's infringement was willful, and found by "clear and convincing evidence" that Impossible Foods acted with "oppression, fraud, or malice." (*Id*.) During the punitive damages phase, the jury heard evidence of Impossible Foods's financial condition, and awarded $1.75 million in punitive damages. (Dkt. 460.) The jury unanimously rejected every single claim asserted by Impossible Foods, including its claim that Impossible LLC's supplements infringed Impossible Foods's trademark for alternative meats. (Dkt. 459.)

Impossible Foods continued its infringement right through the verdict, and continues today notwithstanding the permanent injunction. (Cashman Decl., Ex. 2.) The Court also entered an order deeming this an "exceptional case" for which Impossible LLC would be awarded fees as the prevailing party. (Dkt. 492.) The Court explained that Impossible Foods's "abandonment defense and affirmative infringement claims were exceptionally weak, particularly as presented to the jury at trial," found that "considerations of fairness and compensation favor awarding attorneys' fees," and "considered the totality of the case, including by weighing the seriousness of Impossible Foods's conduct and its willful infringement[.]" (*Id.* at 14.)

Impossible Foods now moves for judgment as a matter of law, new trial, or to alter or amend the judgment. For reasons unclear, Impossible Foods lumps those arguments together, obscuring the different standards that apply to each and glossing over the fact that a number of the arguments made in support of its request for judgment as a matter of law were not preserved before the verdict, and have been waived. And, in what has become a pattern, Impossible Foods's motion fails to conform to the Court's rules. (*See* Dkt. 480-05 (submitting legal argument through fact

IMPOSSIBLE LLC'S OPPOSITION TO IMPOSSIBLE FOODS INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR NEW TRIAL AND TO ALTER OR AMEND JUDGMENT

witness's declaration).) Contrary to the Court's 25-page limit for post-trial motions, Impossible Foods submits both a 24-page brief and a 10-page "appendix" that cites legal authority and contains argumentative characterizations of evidence. (Dkt. 498-1.) In effect, after being denied permission to enlarge the page limits following an improper email request sent to the Courtroom Deputy, Impossible Foods decided to help itself to that enlargement anyway. Impossible LLC objects to the appendix and requests it be stricken.

## ARGUMENT

### I.   THE TRIAL EVIDENCE STRONGLY SUPPORTS THE VERDICT

Impossible Foods's motion conflates its arguments for judgment as a matter of law under Rule 50(b) and a new trial under Rule 59, failing to identify which argument is made under which Rule. (Mot. at 4-5.) The distinction is significant because Impossible Foods preserved only two narrow issues on its Rule 50(a) motion: (1) likelihood of confusion, and (2) the fact of damages. (Tr. 859:16-862:12); *see E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009) ("a party cannot properly 'raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its preverdict Rule 50(a) motion'" (citation omitted)). Regardless, Impossible Foods cannot meet the high standards under either Rule 50(b) or Rule 59.

"A district court can grant a Rule 50(a) [or 50(b)] motion for judgment as a matter of law only if there is no legally sufficient basis for a reasonable jury to find for that party on that issue'" *Krechman v. Cnty. of Riverside*, 723 F.3d 1104, 1109 (9th Cir. 2013) (internal quotation marks omitted). "[T]he court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). This standard "mirrors" summary judgment. *Id*.

A motion for a new trial under Rule 59(a) is subject to a distinct but similarly "stringent" standard. "[A] stringent standard applies when the motion [for new trial] is based on insufficiency of the evidence." *E.E.O.C. v. Pape Lift, Inc.*, 115 F.3d 676, 680 (9th Cir. 1997) (reversing grant of new trial). "A motion will be granted on this ground only if the verdict 'is against the 'great weight' of the evidence, or 'it is quite clear that the jury has reached a seriously erroneous result,'" *id*., but not "because [a court] would have arrived at a different verdict." *Wallace v. City of San*

IMPOSSIBLE LLC'S OPPOSITION TO IMPOSSIBLE FOODS INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR NEW TRIAL AND TO ALTER OR AMEND JUDGMENT

*Diego*, 479 F.3d 616, 630–31 (9th Cir. 2007). Additionally, a party that fails to object to jury instructions may not move for a new trial on grounds that are inconsistent with those instructions. *Loggervale v. Holland*, 677 F. Supp. 3d 1026, 1049 (N.D. Cal. 2023), *aff'd*, 2024 WL 4234878 (9th Cir. Sept. 19, 2024) ("unless an objection has been preserved, jury instructions become the law of the case and cannot be challenged after the verdict"). That is critical here because, as set forth below, Impossible Foods's legal arguments urge the Court to apply legal constructs that are not reflected in—or are contrary to—the jury instructions it stipulated to.

### A.    The Jury Correctly Found Likelihood of Confusion

Impossible Foods argues that the Court should enter judgment as a matter of law that Impossible Foods's IMPOSSIBLE-branded apparel and cookbook products are not likely to cause confusion with Impossible LLC's IMPOSSIBLE®-branded apparel and cookbook products. (Mot. at 6-13.) But it is settled law in this Circuit that likelihood of confusion "should be answered as a matter of fact by a jury, not as a matter of law by a court." *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1031 (9th Cir. 2010). The Court so held at summary judgment (Dkt. 311 at 26) and again at trial, finding "sufficient evidence on confusion to go to the jury." (Tr. 867:12.) Those rulings were correct, as Impossible LLC presented strong evidence of likelihood of confusion, precluding judgment as a matter of law or a new trial.

### 1.    Impossible Foods's "Actual Confusion" Argument Fails

Impossible Foods focuses most of its argument on a single *Sleekcraft* factor, arguing that the supposed absence of actual confusion means that the jury's finding of likelihood of confusion cannot stand. (Mot. at 7.) This argument is erroneous because, as the Court noted, it is "clear in the Ninth Circuit" that "evidence of actual confusion… doesn't even have to have been offered." (Tr. 468:7-9); *accord Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 433 (9th Cir. 2017) ("actual confusion […] evidence is not necessary for a finding of likelihood of confusion").

Regardless, there was substantial evidence of actual confusion. The Ninth Circuit has held that "actual confusion" evidence includes not only "direct evidence of consumer confusion," but also "confusion on the part of: (1) potential consumers; (2) non-consumers whose confusion could create an inference that consumers are likely to be confused; and (3) non-consumers whose

confusion could influence consumers." *Rearden LLC v. Rearden Commerce, Inc.,* 683 F.3d 1190, 1213-1214 (9th Cir. 2012). The jury properly considered such evidence, including that consumers experienced reverse confusion and mistakenly believed Impossible LLC's apparel originated with Impossible Foods or that Impossible LLC and its apparel were otherwise affiliated, connected, or associated with Impossible Foods. (*See* Dkt. 457, Jury Instruction Nos. 48-a, 53, 59 (actionable confusion includes likely "confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the goods or services")); 15 U.S.C. §§ 1114, 1125 (same standard).

In particular, Mr. Runyon testified that individuals encountering Impossible LLC's IMPOSSIBLE®-branded apparel "confuse [Impossible LLC] with Impossible Foods . . . all the time" and that "[e]very time I wear an Impossible shirt, people think I am representing something that I'm not. They think I'm promoting something that I'm not." (Tr. 213:4-9.) He explained that "since Impossible Foods has launched, every single time I wear the shirt—it's nearly constant—I get a question, 'Hey, is that that plant-based meat? Is that Impossible Foods?'" (Tr. 213:15-214:14.) Mr. Runyon identified multiple specific examples, including an encounter at his "local coffee shop" shortly before trial (Tr. 213:10-14) and a "hostile" encounter with a consumer at a fundraiser for ALS. (Tr. 215:8-15.) He testified that "brand ambassadors," who wear IMPOSSIBLE® apparel in public and have served as key marketing for Impossible LLC, have been less willing to promote the brand because consumers mistakenly believe that the apparel originates with Impossible Foods. (Tr. 217:2-7.) And Impossible LLC presented testimony from John Durant that "every other time [he would] wear" his IMPOSSIBLE® shirt "***somebody would mistake it for Impossible Foods***," leading him to stop wearing it. (Tr. 434:19-435:7 (emphasis added).) Impossible LLC also presented evidence that consumers mistakenly contacted it through the website it uses to market its apparel and recipe products with inquiries intended for Impossible Foods. (Tr. 263:8-15.) Whether the individuals expressing confusion are deemed "consumers," "potential consumers," or "non-consumers" under *Rearden*, these incidents are all cognizable examples of reverse confusion, which occurs "when a person who knows only of the well-known junior user comes into contact with the lesser-known senior user, and because of the similarity of the marks, mistakenly thinks that the senior user is the same as or is affiliated with the junior user."

*Ironhawk Techs., Inc. v. Dropbox, Inc.*, 2 F.4th 1150, 1160 (9th Cir. 2021).

Impossible Foods attempts to wave away this evidence, but it is wrong on the law and the facts. As to the legal standard, Impossible Foods is mistaken in its claim that "to show actionable confusion," Impossible LLC was required to prove that "a consumer mistakenly purchased—or attempted or declined to purchase—the wrong apparel or cookbook" or otherwise experienced "purchasing confusion." (Mot. at 7-9.) That is not the law, as Impossible Foods acknowledged when it stipulated to jury instructions that tracked the Ninth Circuit Model, and which contained no such limitation. (Dkt. 457, Instruction Nos. 48-a, 53, 59.) Indeed, as the Court correctly instructed, the jury was entitled to find infringement or unfair competition if the accused goods were "likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the goods or services"—circumstances that are not limited to mistaken purchases or attempted purchases. (*Id.*) Those instructions track the text of the Lanham Act, which defines an infringing mark as "likely to cause confusion," 15 U.S.C. § 1114, "as to the origin, sponsorship, or approval of [the] goods, services, or commercial activities[.]" 15 U.S.C. § 1125(a). Indeed, Congress amended the Lanham Act in 1962 to make clear that likely or actual confusion among purchasers is **not** required, thereby refuting the erroneous claim Impossible Foods presses here. *Karl Storz Endoscopy Am., Inc. v. Surgical Techs., Inc.*, 285 F.3d 848, 854 (9th Cir. 2002) ("the 1962 amendments to section 32 of the Lanham Act specifically struck language limiting the scope of the Act to confusion by 'purchasers'").

Accordingly, the Ninth Circuit has repeatedly affirmed that "an action for trademark infringement can in fact be based upon the confusion of non-purchasers, such as ***those who simply observe the purchaser wearing the accused article of clothing***." *Karl Storz*, 285 F.3d at 854 (emphasis added). The McCarthy treatise also rejects Impossible Foods's position that only "purchasing confusion" or "source confusion" can be actionable. *See* 3 McCarthy on Trademarks and Unfair Competition § 23:5 (5th ed.) ("point of sale confusion does not mark the outer boundaries of trademark infringement" and "[s]ource confusion is not the boundary, for actionable confusion includes confusion as to affiliation, connection or sponsorship"). As noted above, there is abundant evidence of reverse confusion as to the source, affiliation, connection, or sponsorship of

IMPOSSIBLE LLC'S OPPOSITION TO IMPOSSIBLE FOODS INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR NEW TRIAL AND TO ALTER OR AMEND JUDGMENT

the goods here. Impossible Foods's insistence that only "purchasing confusion" is actionable misstates the law and is contrary to the jury instructions it stipulated were complete and accurate.

Although that alone should end the inquiry, Impossible Foods's cases do not support its argument when subjected to scrutiny. Its lead case, *Bosley Med. Inst., Inc. v. Kremer*, did not address confusion evidence at all; it instead held that defendant's website criticizing plaintiff's business was not infringing because it did not meet the "commercial use requirement" of the Lanham Act. 403 F.3d 672, 676 (9th Cir. 2005). The Ninth Circuit distinguished *Bosley* in *Rearden Commerce*, holding that confusion among "consumers," "potential consumers," and even "non-consumers" can show actual confusion. 683 F.3d at 1214. Impossible Foods also cites a trio of non-binding Central District cases (Mot. at 7-8), but those cases turned on other factors and, to the extent they gave decisive weight to the issue of mistaken purchases, they cannot be reconciled with the Lanham Act, the Model Ninth Circuit Jury Instructions, or with controlling precedent like *Stone Creek, Rearden*, and *Karl Storz*, which held that there is no such requirement. As if to illustrate this point, *M.I.B. Grp., LLC v. Aguilar*, 2024 WL 3857540, at *11 (C.D. Cal. July 16, 2024), cited by Impossible Foods, actually supports Impossible LLC's position: it granted summary judgment ***for plaintiff***, found infringement without evidence of mistaken purchases or other actual confusion, awarded $1.4 million in monetary relief, and awarded additional attorneys' fees. And *Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1130 (9th Cir. 1998), likewise did not address actual confusion; it found triable issues of fact as to reverse confusion based on the use of similar marks on similar services alone. Impossible Foods's assertion that only mistaken "purchasing decisions" can show cognizable confusion is therefore not only contrary to the Ninth Circuit decisions and model instructions, it is unsupported by Impossible Foods's authorities as well.

As for the facts, Impossible Foods's myopic characterization of the evidence as failing to support the verdict is also flawed and fails to undermine the jury's finding of likelihood of confusion. Impossible Foods acknowledges that the instances of confusion described by Mr. Runyon and Mr. Durant may "reflect confusion" about "whether Mr. Runyon or his brand was [] associated with [Impossible Foods]," but argues they do not show consumers "believed IF manufactured the apparel, sponsored the apparel, or was the source of any cookbook, recipe, or

IMPOSSIBLE LLC'S OPPOSITION TO IMPOSSIBLE FOODS INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR NEW TRIAL AND TO ALTER OR AMEND JUDGMENT

nutrition-related product." (Mot. at 8.) That not only misstates the applicable standard, which includes confusion as to "source, sponsorship, affiliation, or approval" (Dkt. 457, Instruction Nos. 48-a, 53, 59), but also overlooks extensive evidence showing that consumers repeatedly "mistake" IMPOSSIBLE® apparel for Impossible Foods apparel (Tr. 434:19-435:7, 437:4-5) or expressed the mistaken belief that Impossible LLC and its apparel were affiliated with Impossible Foods. (Tr. 213:4-219:20.) That is evidence from which a reasonable juror can find or infer confusion.

Impossible Foods's argument that this confusion should be discounted because some consumers also referenced Impossible Foods's food products (Mot. at 8) also fails: a consumer who encounters the IMPOSSIBLE® apparel and mistakenly believes the apparel or Impossible LLC itself is associated or affiliated with Impossible Foods is, by definition, confused regarding the "source, sponsorship, affiliation, or approval" of the goods, regardless of whether they know that Impossible Foods markets food in addition to apparel. Such false perceptions of "association" or "affiliation" are actionable under the text of the Lanham Act, 15 U.S.C. § 1125(a), and under the Ninth Circuit's infringement standard. *Ironhawk*, 2 F.4th at 1160 ( "reverse confusion" includes the "mistaken[] belie[f] that the senior user is the same as or is affiliated with the junior user"). Again, Impossible Foods waived any argument that the law recognizes only one very specific type of confusion when it stipulated to the model instructions, which contain no such limitation. (Tr. 546:2-552:9 (Impossible Foods affirming it has no objection to instructions); 770:4-14 (Court noting there "will be no more objections because [the parties] have presented these as stipulated instructions"); *Crowley v. Epicept Corp.*, 883 F.3d 739, 748 (9th Cir. 2018) (party who stipulated to jury instruction "abandoned any argument" that jury should have been instructed on specific "preliminary issue").) And Impossible Foods's speculation that confused consumers were unaware of Impossible Foods's infringing apparel and yet assumed that Impossible Foods would be the source of Impossible LLC's products is baseless, as Impossible Foods never presented any evidence that consumers would have expected apparel to originate from Impossible Foods in the absence of its widespread marketing and promotion of the infringing products. (*See* §I.B.3., *infra*.)

Accordingly, the trial evidence far exceeds what courts have deemed sufficient to support a finding of actual confusion by the jury. *See Ironhawk*, 2 F.4th at 1165–66 (finding "evidence a

reasonable jury could rely on to support a finding of actual confusion" where plaintiff declared that "various unnamed third parties or individuals had mixed up, or were concerned that others would mix up, Ironhawk and Dropbox"); *Americana Trading v. Russ Berrie & Co.*, 966 F.2d 1284, 1289 (9th Cir. 1992) (relying on one letter from a confused consumer and testimony by the plaintiff that retailers were confused to create a triable issue on actual confusion); *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 845 (9th Cir. 1987) (finding "considerable evidence of actual confusion" where "consumers asked if [plaintiff] was owned by the same people who own [defendant]"). Faced with that reality, Impossible Foods pivots to an improbable claim that the lack of survey evidence precludes any finding of infringement (Mot. at 9) but that claim is also without merit, as each of the decisions above held that triable issues of fact existed as to actual confusion even without a survey. Impossible Foods's only case on this point, *Cairns v. Franklin Mint Co.*, 24 F. Supp. 2d 1013, 1041 (C.D. Cal. 1998), was limited to a preliminary injunction posture and acknowledged that "[s]urvey evidence is not required to establish likelihood of confusion" on the merits. *See San Diego Comic Convention v. Dan Farr Prods.,* 336 F. Supp. 3d 1172, 1185 (S.D. Cal. 2018) (distinguishing *Cairns* and denying motion for JMOL because "[defendant] is incorrect in asserting that a lack of a confusion survey demonstrates that confusion is not likely"). While the jury was not required to find actual confusion for Impossible LLC to prevail, there was more than enough evidence to support such a finding under either Rule 50(b) or Rule 59.

### 2. The Other *Sleekcraft* Factors Support the Jury's Verdict

Impossible Foods ignores most of the remaining *Sleekcraft* factors, addressing only the "proximity" of the goods, marketing channels, and intent. (Mot. at 11.) But *Sleekcraft* is a multi-factor test, and arguments about only a subset of factors cannot undermine the jury's considered verdict. Indeed, Impossible Foods earlier argued that "likelihood of confusion . . . is based on a non-exhaustive, multi-factor, fact-intensive inquiry" and courts "have cautioned against granting" motions for judgment as a matter of law. (Dkt. 274 at 11.)

***Similarity of the Marks***. Impossible Foods does not dispute that the marks are materially identical—IMPOSSIBLE® and IMPOSSIBLE, both in capital letters and a similar font on apparel and cookbook products. (Exs. 712, 750.) This factor favors a likelihood of confusion.

IMPOSSIBLE LLC'S OPPOSITION TO IMPOSSIBLE FOODS INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR NEW TRIAL AND TO ALTER OR AMEND JUDGMENT

***Relatedness (or "Proximity") of Goods***. There is no question the parties "use their trademarks on the same, related, or complementary kinds of goods" because both parties use their marks on apparel and cookbooks (Dkt. 457, Instruction No. 56; Tr. 209:3-6; Exs. 423, 759, 760, 421, 2162, 2209.) Impossible Foods's attempt to distinguish between promotional and non-promotional goods does not undermine this fact.

***Strength of the Marks***. Impossible Foods concedes the commercial strength of its brand dwarfs that of Impossible LLC. (*See* Tr. 687:6-8 ($250 million in marketing spending).) This further enhances the likelihood of reverse confusion. (Dkt. 457, Instruction No. 56.)

***Intent***. The jury correctly found that Impossible Foods's infringement was willful. Impossible Foods argues that it did not "intend[] to confuse consumers" (Mot. at 12), but it did not preserve this issue in its pre-verdict motion and does not challenge the jury's willfulness finding.

***Marketing/Advertising Channels***. The evidence showed that Impossible Foods promoted its infringing apparel and cookbooks through the same channels as Impossible LLC – on social media and their respective websites. (Tr. 199:22-200:2, 608:19-22, 619:4-16.) The parties' apparel products also shared an important additional advertising channel, as they were both intended to be worn in public and generate brand awareness. (Tr. 1023:11-14 (Runyon); 566:5-567:22 (Hatman).) These channels are sufficiently similar to support a likelihood of confusion.

***Consumers' Degree of Care***. The evidence showed that the parties' apparel and cookbooks were everyday consumer goods for which consumers would not be expected to use a heightened degree of care. *See Lahoti v. Vericheck, Inc.*, 636 F.3d 501, 509 (9th Cir. 2011) ("average degree of care" favored confusion where marks were similar ). This further favors a finding of confusion.

In sum, every relevant *Sleekcraft* factor supports the jury's commonsense conclusion that Impossible Foods's marketing of IMPOSSIBLE-branded apparel and cookbooks was likely to cause confusion with Impossible LLC's IMPOSSIBLE®-branded apparel and cookbooks. There was ample evidence to support the jury's verdict. And certainly the evidence was not so one-sided as to justify the extreme relief of judgment as a matter of law or a new trial.

**B.      The Jury's Damages Award is Well-Supported**

Reprising its motion for summary judgment, Impossible Foods argues it is entitled to

IMPOSSIBLE LLC'S OPPOSITION TO IMPOSSIBLE FOODS INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR NEW TRIAL AND TO ALTER OR AMEND JUDGMENT

judgment as a matter of law or a new trial on corrective advertising damages. But its arguments fare no better on this point either. Corrective advertising damages are available where a plaintiff demonstrates that "(1) it enjoys an established goodwill and reputation, (2) it has suffered harm to that goodwill and reputation because of the defendant's infringing activities, and (3) corrective advertising is appropriate to restore that harm." (Dkt. 311 at 8 (citing *Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105, 1113 (9th Cir. 2012)).) "[T]he nature of the proof required to support a jury award depends on the circumstances of the case and is 'subject to the principles of equity.'" *Skydive Arizona,* 673 F.3d at 1112. The evidence at trial more than met this standard, and Impossible Foods's arguments to the contrary are without merit.

### 1.    The Evidence Proves the Fact of Injury

To establish injury for purposes of corrective advertising damages, Impossible LLC was only required to prove that it suffered "injury to [its] goodwill caused by Impossible Foods' infringement." (Dkt. 457, Instruction No. 64.) Proof of injury to goodwill can take many forms, including evidence of "confusion," *Skydive Arizona*, 673 F.3d at 1113, a decline in "sales and profits," *Marketquest Grp., Inc. v. BIC Corp., 316 F. Supp. 3d 1234, 1301 (S.D. Cal. 2018)*, or other evidence that, in the "totality of the circumstances," supports an inference that plaintiff was harmed. *Hansen Beverage Co. v. CytoSport*, Inc., 2010 WL 11914746, at *2 (C.D. Cal. Apr. 9, 2010) (denying summary judgment on corrective advertising). Impossible LLC presented more than sufficient evidence to satisfy this standard at trial, including extensive evidence of actual confusion caused by the infringing apparel, as detailed in Section A.1, *supra*, and unrebutted testimony that the brand ambassadors it relies upon for marketing expressed reticence about promoting the IMPOSSIBLE® brand as a result of the infringement. (Tr. 216:17-217:7.) The resulting confusion caused Mr. Durant to stop wearing his IMPOSSIBLE® apparel, supporting an inference that other consumers had similar experiences. (Tr. 435:14-18.) Mr. Runyon testified in detail that he was unable to grow his business or generate momentum as the infringement progressed because potential counterparties and consumers were under the false impression that Impossible LLC and its products were associated with Impossible Foods. (Tr. 213:4-219:20, 1031:19-1032:6, 1032:14-1034:2, 215:18-23.) And the infringement drove up Impossible LLC's

advertising costs, as Mr. Runyon was forced to spend more to reach the target consumers for his products. (Tr. 218:21-219:8.) These injuries to Impossible LLC's goodwill prevented it from growing or expanding into new business areas. (Tr. 1031:19-1034:2.)

Expert testimony confirmed the causal mechanism of this harm. Dr. Palmatier explained the mechanisms by which trademarks work and generate value for their owners (Tr. 696:22-702:11), the ways in which infringement degrades a trademark owner's brand equity (Tr. 702:16-706:25; 707:18-709:16), and the reasons why corrective advertising is necessary to repair injuries. (Tr. 710:22-711:2; 713:22-715:4; 717:10-718:12.) His opinion in this regard was borne out by the evidence of harm to Impossible LLC's marks and brand discussed above.

Despite the requirement to consider "all of the evidence in the record," *Reeves*, 530 U.S. at 150, Impossible Foods ignores it and instead argues that direct "proof of actual confusion" is required before damages can be awarded. (Mot. at 13.) But Impossible Foods waived any argument that actual confusion is required by stipulating to the Court's jury instructions, which did not require such proof as a prerequisite for an award of damages. (Dkt. 457 (instructions); Tr. 546:2-552:9) (failure to object).) It is far too late to challenge the jury instructions, and Impossible Foods cannot argue that the verdict should be set aside based on an alleged "actual confusion" requirement it never raised before the verdict. *See Crowley*, 883 F.3d at 748 (defendant "abandoned any argument" jury was required to make finding on "preliminary issue" by failing to include it in stipulated jury instructions); *Loggervale*, 677 F. Supp. 3d at 1049 ("unless an objection has been preserved, jury instructions become the law of the case and cannot be challenged after the verdict").

Even if Impossible Foods's untimely argument could be considered, it is wrong on the law. The Ninth Circuit held in *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1410 (9th Cir. 1993) that "evidence of actual consumer confusion" is not required to establish the "fact of damages," affirming a trial court decision that found the fact of injury adequately established without confusion evidence. After acknowledging the split among appellate circuits regarding whether actual confusion is required to award damages, it "express[ed] a distinct preference for those opinions permitting relief based on the totality of the circumstances." *Id.* at 1411. Confirming the absence of a rigid actual confusion requirement, the Ninth Circuit held in *Skydive Arizona* that "the

IMPOSSIBLE LLC'S OPPOSITION TO IMPOSSIBLE FOODS INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR NEW TRIAL AND TO ALTER OR AMEND JUDGMENT

nature of the proof required to support a jury award *depends on the circumstances of the case* and is 'subject to the principles of equity.'" 673 F.3d at 1112 (9th Cir. 2012) (emphasis added).

In support of its argument that anecdotal confusion evidence is required, Impossible Foods cites one line from the McCarthy treatise and a non-binding Central District case. (Mot. at 13.) But it misrepresents McCarthy by omitting the portion of the same chapter noting the Ninth Circuit does *not* follow the actual confusion rule and "apparently [] would favor the approach" holding that "other kinds of evidence could fill the gap of no evidence of actual confusion." 4 McCarthy on Trademarks and Unfair Competition § 30:74. And the case cited by Impossible Foods, *Illusions Int'l Inc. v. Walgreen Co.*, No. SACV07494JVSRNBX, 2008 WL 11342979, at *2 (C.D. Cal. July 11, 2008) held only that "[p]roof of actual damages… requires at least some showing that the availability of the infringing product *somehow injured the plaintiff's interests*." *Id*. at *2 (emphasis added). The language about actual confusion that Impossible Foods erroneously attributes to that court was actually drawn from a parenthetical from a Second Circuit case, and is not a correct statement of Ninth Circuit law. *Id*.

In sum, there was extensive evidence of harm to Impossible LLC's goodwill as a result of the infringement. Impossible Foods's argument that an "actual confusion" requirement disposes of damages has been waived, and is erroneous in any event. And even if there were an actual confusion requirement, Impossible LLC made that showing as demonstrated in Section I.A., *supra*.

### 2.    The Jury's Quantification of Damages Was Well-Supported

Though it does not dispute that the jury was entitled to credit Dr. Vanderhart's corrective advertising calculation (Tr. 763:17-764:8; 765:14-766:10; 761:7-762:5), Impossible Foods argues that Impossible LLC was required to provide a "valuation" of its trademarks to recover corrective advertising damages. (Mot. at 14.) The Court rejected the same argument at summary judgment, noting that "the Ninth Circuit has made it clear that a plaintiff is not required to 'provide a specific mathematical formula.'" (Dkt. 311 at 9 (quoting *Skydive Arizona*, 673 F.3d at 1112).) Indeed, as the Ninth Circuit explained in *Skydive Arizona*, "a mark holder is held to a lower standard in proving the exact amount of actual damages" and, "[t]o support a jury's actual damages award, there need only be substantial evidence to permit the jury to draw reasonable inferences and make a

IMPOSSIBLE LLC'S OPPOSITION TO IMPOSSIBLE FOODS INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR NEW TRIAL AND TO ALTER OR AMEND JUDGMENT

fair and reasonable assessment." *Skydive Arizona*, 673 F.3d at 1112 (emphasis removed). The jury's finding of willful infringement (which Impossible Foods does not challenge) means that the damages award is entitled to even greater deference, as courts "accept 'crude' measures of damages in cases of intentional infringement." *Id*. at 1113.

There was more than sufficient evidence to support the jury's finding that the value of Impossible Foods's lost goodwill under the IMPOSSIBLE® Marks was at least $1.5 million. "Section 1117 demands neither empirical quantification nor expert testimony to support a monetary award of actual damages; many sources can provide the requisite information upon which a reasonable jury may calculate damages." *Skydive Arizona*, 673 F.3d at 1113. The evidence at trial furnished multiple sources from which the jury could have reached the $1.5 million award. For example, Mr. Runyon offered unrebutted testimony that he could "easily have raised" funding at a valuation of $15-25 million for Impossible LLC before his business collapsed under the weight of Impossible Foods's ongoing infringement. (Tr. 1027:12-25.) Mr. Runyon explained that he based this figure on his knowledge of Impossible LLC's business, his extensive firsthand experience working with early-stage startups in his industry as they raised funds during the same time period, and numerous conversations with investors. (*Id*.) As the Court noted in addressing the same objections Impossible Foods raises now, this testimony addressed any evidentiary gaps in the record, thereby meeting the lenient standard for upholding the verdict from a challenge under Rule 50(b). (Tr. 1047:2-4 (Court noting "I think we just got [the valuation]" and declining to grant Rule 50(a) motion following Mr. Runyon's testimony).) And Impossible Foods cannot complain that Mr. Runyon's testimony was not credible or lacked basis because it waived that argument too when it declined to attempt to elicit any of those purported shortcomings through cross-examination. *Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001) (court deciding Rule 50(b) motion "must disregard all evidence favorable to the moving party that the jury is not required to believe.").

Although that alone is sufficient, Impossible LLC also presented evidence of more than $450,000 in hard costs alone devoted to building up the IMPOSSIBLE® brand. (Tr. 755:3-9, 866:3-11; Exs. 713, 1260, 2036, 2209-11, 2213.) It presented evidence of extraordinary viral

IMPOSSIBLE LLC'S OPPOSITION TO IMPOSSIBLE FOODS INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR NEW TRIAL AND TO ALTER OR AMEND JUDGMENT

marketing success, including viral website and social media content, and favorable press coverage from a host of outlets, often featuring the IMPOSSIBLE® apparel front and center. (Tr. 140:7-16, 143:23-144:4, 145:2-25, 173:20-174:3, 199:18-200:8, 206:11-207:5.) As Dr. Palmatier explained, such viral marketing efforts have an outsize impact that far outstrips the dollars spent. (Tr. 686:3-25.) The IMPOSSIBLE® brand has been Mr. Runyon's life's work for more than 15 years, and he testified he has invested at least 30,000 hours of "sweat equity" into the business (Tr. 1025:14-21), which Dr. Vanderhart noted would generate substantial value not captured by Impossible LLC's financial reports. (Tr. 754:10-18, 756:11-757:10, 758:3-17.) And Impossible Foods's narrow focus on the quantum of apparel sales (Mot. at 3) fails because it ignores the great value of the apparel marks in the context of Impossible LLC's overall business: the IMPOSSIBLE® apparel has always been prominently featured in Impossible LLC's marketing efforts and embodies this goodwill, functioning as a "business card" for Impossible LLC's entire business. (Tr. 1023:1-14.) This evidence far exceeds what the Ninth Circuit deemed sufficient to prove plaintiff's goodwill in *Skydive Arizona*, where the plaintiff offered only "three…exhibits showing its advertising expenditures[.]" 673 F.3d at 1112. The jury reasonably and conservatively concluded the value of Impossible LLC's lost goodwill was at least $1.5 million— a figure that is considerably lower than what the evidence would have supported. And the same evidence also precludes a remittitur, which "must 'reflect the maximum amount sustainable by the proof.'" *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1094-95 (9th Cir. 2014).

At bottom, any doubt regarding the amount of damages must be resolved in favor of Impossible LLC because, as the Ninth Circuit has held and the Court correctly instructed, "[t]he burden of any uncertainty in the amount of damages should be borne by Impossible Foods" as the infringer. (Instruction No. 64); *see Adray v. Adry-Mart, Inc.,* 76 F.3d 984, 989 (9th Cir. 1995) (rejecting argument that corrective advertising award "overcompensate[ed]" plaintiff because "the burden of any uncertainty in the amount of damages should be borne by the wrongdoer"). And, in this case of willful infringement, the deference to the jury's calculation of damages is even greater, foreclosing all challenges Impossible Foods raises here.

IMPOSSIBLE LLC'S OPPOSITION TO IMPOSSIBLE FOODS INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR NEW TRIAL AND TO ALTER OR AMEND JUDGMENT

### 3. Impossible Foods's Causation Argument Fails

Finally, Impossible Foods argues in cursory fashion that Impossible LLC's injuries were not caused by its infringing products, but instead by its alternative meat business. (Mot. at 10, 15.) This argument fails for the same reason it did at summary judgment and at trial: the "causation issue is quintessentially one for the jury." *Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1253 (9th Cir. 2022); *see Pacific Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1168 (9th Cir. 2013) ("[c]ausation is an intensely factual question that should typically be resolved by a jury").

The jury had ample evidence from which to infer that Impossible Foods's infringing products caused Impossible LLC's injuries. Impossible Foods invested $1 million in infringing apparel and released it into the marketplace as part of a multi-million dollar "swag" campaign designed to generate brand awareness. (Tr. 566:5-567:22) It extensively promoted its apparel online, through social media, through widespread distribution in the marketplace, and through appearances at high-profile events. (Tr. 619:4-16; Exs. 421, 423, 298, 759, 760) Then, after Impossible Foods flooded the market with its infringing apparel in this manner, consumers who saw Impossible LLC's apparel began expressing confusion about whether the apparel was from Impossible Foods or whether Mr. Runyon's business was somehow affiliated with Impossible Foods—something that had never happened prior to the launch of the infringing products. (Tr. 213:4-219:20, 434:19-435:7, 437:4-5.) Impossible LLC also began to suffer all the harms detailed in Section B.1, *supra* that flow from trademark infringement: consumer confusion, reduced interest among brand ambassadors, reduced willingness of consumers to wear their IMPOSSIBLE® apparel, increased advertising costs, and an inability to grow the business or generate momentum as the infringement progressed due to false perceptions of affiliation with Impossible Foods. As Dr. Palmatier testified, these are the types of harm that one would expect as a consequence of trademark infringement under accepted principles of marketing science. (Tr. 702:16-706:25; 707:18-709:16.) Thus, the evidence was more than sufficient to support the jury's finding that the infringement caused Impossible LLC's injuries. *See Pacific Shores,* 730 F.3d at 1168 ("once a plaintiff presents evidence that [it] suffered the sort of injury that would be the expected consequence of the defendant's wrongful conduct, [it] has done enough to withstand summary

judgment [or the identical JMOL standard] on the ground of absence of causation"). Moreover, causation is not an all-or-nothing proposition. The jury awarded less than Impossible LLC requested and may have reduced its damages award to account for Impossible Foods's repeated allegation that some portion of the injuries had alternative causes, so there is no basis for either JMOL or a new trial on this ground. *See Union Oil Co. of California v. Terrible Herbst, Inc.*, 331 F.3d 735, 743 (9th Cir. 2003) (trial court abused discretion by granting new trial on damages where the jury awarded "less than [plaintiff] requested" and this "may reflect the jury's discounting [plaintiff's] damages" in response to defendant's arguments).

Impossible Foods's cases do not support a different result. Impossible Foods leans heavily on *Computer Access Tech. Corp. v. Catalyst Enters., Inc.*, 273 F. Supp. 2d 1063, 1076 (N.D. Cal. 2003) regarding the need to "distinguish between damages caused by lawful and unlawful conduct." (Mot. at 15-16.) But that case addressed different issues. Plaintiff claimed that one product infringed both its trademark and trade dress rights. *Computer Access Tech.,* 273 F. Supp. 2d at 1065. The jury returned a damages award (*id.*), but also found that plaintiff's trade dress was not protectable. *Id*. at 1067. Then, the court ruled after trial that the trademark was invalid as well. *Id* at 1074. As a result, a new trial was required. *Id*. at 1076. Here, by contrast, the jury found all of Impossible LLC's trademarks valid, and the Court instructed the jury *not to award any damages* for any injury attributable to Impossible Foods's plant-based meat business or any non-infringing products. (Dkt. 457, Instruction No. 47-a.) "There is a strong presumption that [] curative instructions given by the district court were followed by the jury," *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1270 (9th Cir. 2000), and Impossible Foods presents no evidence that the jury disregarded the Court's instructions and awarded damages for other products. Impossible Foods's reliance on *Fitness Anywhere LLC v. WOSS Enters. LLC*, 2018 WL 6069511, at *6 (N.D. Cal. Nov. 20, 2018) (Mot. at 16) is misplaced because the Court upheld a jury's award of damages in that case. Accordingly, Impossible Foods is not entitled to JMOL or a new trial on this issue.

## C.    The Jury's Punitive Damages Award Was Well-Supported

Impossible Foods next purports to challenge the jury's punitive damages award under both Rule 50(b) and Rule 59. But it failed to make a pre-verdict motion for judgment as a matter of law

regarding punitive damages (Tr. 859:16-862:12), and so cannot raise a Rule 50(b) challenge now. *E.E.O.C.*, 581 F.3d at 961 ("[A] party cannot properly raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its preverdict Rule 50(a) motion" (citation and internal quotation marks omitted)). Regardless, the evidence was sufficient to support the jury's finding of oppression, fraud or malice and its award of punitive damages.

That leaves only Impossible Foods's motion for a new trial under Rule 59. On a motion for new trial, "a jury's award of damages is entitled to great deference." *Guardant Health, Inc. v. Natera, Inc.*, 2025 WL 2106522, at *13 (N.D. Cal. July 28, 2025) (quoting *In re First All. Mortg. Co.*, 471 F.3d 977, 1001 (9th Cir. 2006)). Courts "must uphold the jury's damages verdict 'whenever possible, and all presumptions are in favor of the judgment.'" *DSPT Int'l, Inc. v. Nahum*, 624 F.3d 1213, 1224 (9th Cir. 2010). Impossible Foods's arguments fail to carry its burden.

### 1. Impossible LLC Proved Actual Damages

Impossible Foods first argues that actual damages are required before punitive damages can be awarded. (Mot. at 16.) Because Impossible Foods's arguments regarding actual damages fail as described above, this argument fails as well.

### 2. The Jury Correctly Found Oppression, Fraud, or Malice

Impossible Foods next argues there was insufficient evidence that it acted with "oppression, fraud, or malice" when it willfully infringed Impossible LLC's trademarks. But again, Impossible Foods conceded the sufficiency of the evidence by failing to move under Rule 50(a), and its argument fails in any event. While Impossible Foods notes that the jury was required to find "clear and convincing evidence" of "oppression, fraud, or malice," review of that finding under Rule 59 requires only "substantial evidence" to support the verdict. *Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276, 1291 (9th Cir. 2001) ("A jury's finding that the evidence supports a punitive damage award should be affirmed if it is supported by substantial evidence"). As the Court noted at summary judgment, "the question of whether the defendant's conduct will support an award of punitive damages is for the trier of fact, since the degree of punishment depends on the peculiar circumstances of each case," and "a reasonable jury could find, for example, that Impossible [Foods's] alleged infringement of a much smaller competitor's

intellectual property is oppressive, fraudulent, or malicious." (Dkt. 311 at 12:26-27; 13:2-5.)

There was more than sufficient evidence to support the jury's conclusion that Impossible Foods acted with oppression, fraud, or malice. The evidence showed that Impossible Foods: (1) admittedly knew of the IMPOSSIBLE® Marks and adopted an identical mark in a near-identical stylized design (Exs. 33; 34; 2181 at 107, 129, 131, 133, 157; 712; 750; Tr. 385:14-389:5); (2) discussed Impossible LLC's marketing as inspiration as it rolled out its own branding (Ex. 33, 34; Tr. 385:14-389:5); (3) proceeded to launch infringing products in the same categories where Impossible LLC had priority (Exs. 421; 423; 759; 2208); (4) never adopted any plan to mitigate confusion that would inevitably occur (Tr. 362:12-23); (5) filed a preemptive declaratory judgment action when Impossible LLC asked it to stop infringing (Dkt. 1); (6) brought baseless infringement, fraud, and abandonment claims against Impossible LLC and Mr. Runyon in an attempt to bury a smaller competitor (Dkt. 151)); (7) never tempered or ceased its infringing conduct pending the outcome of the trial (Tr. 224:11-16; 267:12-268:1); and (8) continued expanding its infringement into new areas in which Impossible LLC has priority without regard for Impossible LLC's trademark rights (Tr. 599:8-600:12; 598:15-599:1; Ex. 312).

That showing far exceeds what is necessary to support the jury's finding of oppression, fraud, or malice. *See QS Wholesale, Inc. v. World Mktg., Inc.*, No. SA12CV0451, 2014 WL 12586120, at *4 (C.D. Cal. Jan. 7, 2014) (affirming punitive damages award based on, inter alia, defendant's "knowledge of [plaintiff's] ownership of the mark," defendant's "knowledge that [plaintiff] was a small company […] that could be bullied," and defendant's "refusal to stop infringing activity after [plaintiff] asked it to stop"); *City of Carlsbad v. Shah*, 850 F. Supp. 2d 1087, 1112 (S.D. Cal. 2012) (finding that "[Defendant] is guilty of fraud and malice…and punitive damages are warranted" based on intentional trademark infringement).

Against this evidence, Impossible Foods offers only the bare assertion that it "believed coexistence with other IMPOSSIBLE users was permissible" and "did not view ILLC's apparel related activities as conflicting with its business." (Mot. at 17.) But the jury was not required to credit this *post-hoc* rationalization, especially because Impossible Foods refused to rein in or halt its infringement at any time after it became clear that Impossible Foods's IMPOSSIBLE-branded

IMPOSSIBLE LLC'S OPPOSITION TO IMPOSSIBLE FOODS INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR NEW TRIAL AND TO ALTER OR AMEND JUDGMENT

apparel products *did conflict* with Impossible LLC's senior rights in the IMPOSSIBLE® mark for apparel and cookbooks. (Tr. 224:11-16; 267:12-268:1.) The jury correctly perceived Impossible Foods's conduct for what it was: willful and conscious disregard for Impossible LLC's senior trademark rights, coupled with an attempt to crush a smaller competitor through years of ongoing (and expanding) infringement and aggressive litigation of claims that were weak or outright meritless. Impossible Foods cites no case overturning a jury's finding of oppression, fraud, or malice in the context of trademark infringement, let alone any case involving similar facts. Instead, it cites cases regarding willfulness. (Mot. at 17.) But those cases are inapposite because the jury already determined Impossible Foods's infringement was willful, and Impossible Foods does not challenge that finding here. Impossible Foods fails to show that the jury lacked "substantial evidence" to support the award, precluding a new trial on punitive damages.

### 3.    The Punitive Damages Award Was Not Constitutionally Excessive

Finally, Impossible Foods argues that the punitive damages award was constitutionally excessive. (Mot. at 18–19.) But the jury's award of $1.75 million—barely more than the amount of compensatory damages—does not even begin to approach the Constitutional limit. The Ninth Circuit has "upheld punitive damages ranging from *six to nine times* compensatory damages" in "cases with significant economic damages and more egregious behavior." *Riley v. Volkswagen Grp. of Am., Inc.*, 51 F.4th 896, 902 (9th Cir. 2022) (emphasis added). Even when "behavior is not particularly egregious," the Ninth Circuit permits a "4 to 1 ratio." *Id*. In *Guardant Health v. Natera*, a recent case involving parallel Lanham Act and state law claims, Judge Chen upheld a punitive damages award of $175 million and a corrective advertising award of $75 million, which was "well within the range of an appropriate ratio." 2025 WL 2106522, at *13. And *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 719 (2009), cited by Impossible Foods, reduced the ratio to 1:1 only because the compensatory damages award already included a "substantial award of noneconomic damages" for emotional distress, which is not the case here. Because the jury's punitive damages award is below even the most conservative limit, it easily passes Constitutional muster.

There also is no merit to Impossible Foods's assertion that the award should be reduced because Impossible LLC's punitive damages case somehow "focused overwhelmingly" on

Impossible Foods's "plant-based meat business." (Mot. at 18.) That is simply false. Impossible Foods cites its purported "appendix" on this point, but the citations in the appendix do not include any reference to the punitive damages phase of trial. (Dkt. 498-1.) As the record shows, Impossible LLC's punitive damages case focused on the misconduct detailed above in Section C.2, along with evidence of Impossible Foods's financial condition required by the model punitive damages instructions. (Tr. 1273:2-1302:17.) And the jury was instructed that Impossible Foods's plant-based meat business was not at issue. (Dkt. 457, Instruction No. 47-a.) There is no basis for either a remittitur or new trial on punitive damages.

## II.    THERE IS NO BASIS TO RECONSIDER THE COURT'S AWARD OF ATTORNEYS' FEES

Impossible Foods's motion to "alter or amend" the Court's judgment regarding attorneys' fees is an improper bid for reconsideration of the same issues that the parties briefed and the Court decided just weeks ago. (Dkt. 492.) It should be denied outright because "Rule 59(e).… may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486 n. 5 (2008). As this Court has held, Rule 59(e) may not "be used as a vehicle for reconsideration of issues already raised or a rehearing on the underlying motion." *PNC Equip. Fin., LLC v. Carr*, No. 19-MC-80013-BLF, 2022 WL 899849, at *1 (N.D. Cal. Mar. 28, 2022). That rule precludes Impossible Foods's motion, which reargues the same issues and cites the same cases and trial evidence that it cited (or could have cited) in opposition to Impossible LLC's motion. *See Zimmerman v. City of Oakland*, 255 F.3d 734, 740 (9th Cir. 2001) (affirming denial of Rule 59(e) motion that "repeated legal arguments made earlier and sought to introduce facts that were available earlier").

Regardless, Impossible Foods's motion fails to demonstrate any basis to alter or amend the judgment regarding attorneys' fees. Impossible Foods argues that the Court's fee award should be set aside because it was "clearly erroneous." (Mot. at 19.) But "clear error" is a demanding standard, under which Impossible Foods must show that the Order was "more than just maybe or probably wrong; it must be dead wrong." *Bey v. Malec*, No. 18-CV-02626-SI, 2020 WL 3058336, at *2 (N.D. Cal. June 9, 2020), *aff'd*, 2021 WL 3743867 (9th Cir. Aug. 24, 2021). The Court's

IMPOSSIBLE LLC'S OPPOSITION TO IMPOSSIBLE FOODS INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR NEW TRIAL AND TO ALTER OR AMEND JUDGMENT

Order was not "dead wrong." It was correct, carefully reasoned and well-supported. After taking into account both parties' arguments and evidence – and having presided over the entire trial – the Court deemed this an "exceptional case" and awarded attorneys' fees to Impossible LLC pursuant to 15 U.S.C. § 1117. As the Court explained, it reached this result because it "agree[d] with the jury that there is evidence that Impossible [Foods] acted willfully," found that Impossible Foods's "abandonment defense and affirmative infringement claims were exceptionally weak, particularly as presented to the jury at trial," found that "considerations of fairness and compensation favor awarding attorneys' fees," and "considered the totality of the case, including by weighing the seriousness of Impossible Foods's conduct and its willful infringement[.]" (Dkt. 492 at 14.)

Impossible Foods fails to demonstrate this conclusion was clearly erroneous. Determining whether a case is "exceptional" is entrusted to the "equitable discretion" of the District Court, applying a "preponderance of the evidence" standard. *See SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1181 (9th Cir. 2016). "An 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position… or the unreasonable manner in which the case was litigated." *Id.* at 1180. Ignoring the Court's consideration of the "totality of the case" (Dkt. 492 at 14), Impossible Foods identifies only three discrete issues where it disagrees with the Court's analysis. None of its grievances has merit.

### A.    The Court Correctly Determined Impossible Foods's Infringement Claims and Abandonment Defense Were Exceptionally Weak

First, Impossible Foods takes issue with the Court's observation that Impossible Foods "presented 'no evidence' concerning key *Sleekcraft* factors and abandonment issues." (Mot. at 20.) But that is plainly true. Impossible Foods's opposition to fees did not even attempt to identify any evidence for most of the *Sleekcraft* factors. (Dkt. 480 at 10.) The few factors for which it purported to identify evidence were *de minimis* and irrelevant. (*See* Dkt. 481 at 5.)

Impossible Foods now seeks a second go-round by submitting an argumentative "appendix" in which it purports to identify evidence for some (but not all) factors. (Dkt. 498-1 at 6–8.) If anything, the appendix only confirms Impossible Foods's infringement claims should never have been brought to trial. Out of 14 items of "evidence" regarding infringement, nearly half (six)

IMPOSSIBLE LLC'S OPPOSITION TO IMPOSSIBLE FOODS INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR NEW TRIAL AND TO ALTER OR AMEND JUDGMENT

concern Dr. Palmatier's survey, which was designed to test different claims and thus cannot justify Impossible Foods's decision to take its own infringement claims to trial. (*Id*.) Another entry characterizes "argu[ment]" by Impossible Foods's counsel as "evidence" concerning the purported relatedness of supplements and plant meat. (*Id*. at 6–7.) Impossible Foods's "likelihood of expansion" evidence is an unexplained screenshot of a third-party protein shake introduced by a litigation paralegal without personal knowledge. (*Id*. at 7–8.) And others repeat the same inadequate evidence as before – *e.g.*, arguing that marketing channels overlap solely because both parties use Amazon and arguing that "likelihood of expansion" supports confusion because Impossible Foods considered launching liquid "heme" in Africa and India. (*Id*. at 7.) None of this changes the fact that Impossible Foods did not proffer a single witness who believed in the merit of its claim, and ignores that its two primary witnesses testified categorically that there was nothing confusing about the accused products, thereby directly undermining its claim. (*See* Tr. 607:6-10 (Hatman); Tr. 428:3-5 (Halla).) In short, it is just as clear now as it was after trial that there was no competent evidence on key *Sleekcraft* factors to support Impossible Foods's infringement claims.

Abandonment is no different. Impossible LLC's motion demonstrated Impossible Foods presented no evidence of abandonment, including failing to rebut Mr. Runyon's testimony that he had not stopped marketing cookbook and recipe products under the IMPOSSIBLE mark since 2012 and never intended to permanently cease such use. (Dkt. 476 at 10.) Impossible Foods did not attempt to identify any evidence regarding abandonment in its Opposition. (Dkt. 480 at 8.) Now, it blames the Court and submits an "appendix" purporting to identify evidence for the first time. But the appendix does not contain any direct or circumstantial evidence that Impossible LLC ceased use of its mark, whether for a three-year period or otherwise, nor that Impossible LLC intended not to resume use of its mark. Moreover, the appendix itself is unreliable. For example, one entry represents that "ILLC's [*sic*] provided no documentary evidence of sales of the products within the relevant three-year period" (Dkt. 498-1 at 9), but the portion of the transcript cited for this entry did not address sales data or "documentary evidence" and instead features Mr. Runyon testifying that Impossible LLC *still offers* an IMPOSSIBLE-branded cookbook on its website. (Tr. 346:6–16.)

Tellingly, while Impossible Foods quarrels about whether there was "no evidence" to

IMPOSSIBLE LLC'S OPPOSITION TO IMPOSSIBLE FOODS INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR NEW TRIAL AND TO ALTER OR AMEND JUDGMENT

support its claims, it does not dispute the Court's overall assessment of its case. The Court concluded that Impossible Foods's "abandonment defense and affirmative infringement claims were exceptionally weak, particularly as presented to the jury at trial." (Dkt. 492 at 14.) Impossible Foods does not contest that finding. Nor does it dispute the Court's observation that Impossible Foods's "evidentiary presentation on its own infringement case was clearly deficient, consisting primarily of a law firm paralegal perfunctorily reciting Impossible Foods's trademark registrations." (*Id*. at 13.) Because the "exceptional case" standard does not require that the losing party have "no evidence" to support its case, Impossible Foods's arguments about whether there was absolutely "no evidence" or just exceptionally weak evidence are immaterial. The Court's finding that Impossible Foods's abandonment defense and infringement claims were "exceptionally weak" is sufficient to render this an "exceptional case" under Section 1117. (*Id.* at 14.)

### B.    The Court Correctly Judged Fairness and Compensation Favor a Fee Award

Impossible Foods next argues the Court erred in holding that "considerations of fairness and compensation" favor awarding attorneys' fees. (Mot. at 22.) But this finding was a straightforward application of the Court's equitable discretion and the Ninth Circuit's guidance that "encouraging the enforcement of trademark rights by more fully compensating Plaintiffs" supports a fee award. *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1079 (9th Cir. 2015). This issue was fully briefed in connection with Impossible LLC's motion, and the Court considered and rejected the same arguments Impossible Foods raises now.

First, Impossible Foods repeats its arguments that there was insufficient evidence of harm or that the jury's damages award was adequate compensation. Those arguments fail for the reasons explained in detail in Impossible LLC's prior brief (Dkt. 481) and in the portions of this brief regarding damages. Impossible Foods's observation that the Court declined to award fees against some defendants in *Fifty-Six Hope Road* (Mot. at 22) is inapposite because those injuries were caused by multiple defendants with varying degrees of responsibility, while the jury here found that Impossible Foods caused Impossible LLC's entire injury. Impossible Foods's "compensation" theory (*Id.*) also ignores that the jury's damages award provides *no compensation* for Impossible LLC's fees incurred defending itself for years against claims by Impossible Foods that were proved

IMPOSSIBLE LLC'S OPPOSITION TO IMPOSSIBLE FOODS INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR NEW TRIAL AND TO ALTER OR AMEND JUDGMENT

baseless at trial; nor does it provide any compensation for Impossible LLC's fees incurred prosecuting its trademark claims against a much larger opponent that leveraged its insurance coverage to expand the cost of vindicating Impossible LLC's claims.

Second, Impossible Foods repeats its argument that the contingent, partially contingent, or non-contingent status of a fee arrangement makes a difference as to whether fees should be awarded. It does not. *See Partners for Health & Home, L.P. v. Seung Wee Yang*, 488 B.R. 431, 438 (C.D. Cal. 2012), *aff'd*, 671 F. App'x 475 (9th Cir. 2016) (awarding fees in a trademark infringement case with contingency billing); *Blackwell v. Foley*, 724 F. Supp. 2d 1068, 1080 (N.D. Cal. 2010). Mr. Runyon confirmed that he has paid several million dollars in fees and has incurred more than $6 million (and continues to incur more). (Dkt. 476-1.) The use of the word "paid" instead of "incurred" in the Court's order is not even a material difference, let alone a "clear error."

## C.   The Court Correctly Concluded That Impossible Foods's Willful Infringement Weighed in Favor of a Fee Award

Finally, Impossible Foods seeks to revisit willfulness, although it never challenged the jury's verdict on this score and does not appear to object to anything in the Court's analysis. While Impossible LLC stands by its argument that willfulness is sufficient on its own to render a case exceptional, it is not necessary to relitigate this issue now because the Court did not rely entirely on willfulness, holding instead that Impossible Foods's willful infringement weighed in favor of a fee award along with the "totality of the case." (Dkt. 492 at 14.) Because it is undisputed that willfulness *at minimum* weighs in favor of a fee award, the Court did not err as to this issue either.

Because Impossible Foods fails to demonstrate that any aspect of the Court's Order was clearly erroneous, there is no basis to alter or amend the judgment deeming this an "exceptional case." Ironically, the motion only further confirms this is an "exceptional case" in which fees were properly awarded. *See San Diego Comic Convention v. Dan Farr Prods.*, 807 F. App'x 674, 676 (9th Cir. 2020) (affirming "exceptional case" finding based on defendant's "persistent desire to re-litigate issues already decided").

## CONCLUSION

For the foregoing reasons, the Court should deny Impossible Foods's Motion.

Dated: June 22, 2026

Respectfully submitted,

BRAUNHAGEY & BORDEN LLP

By:  /s/ Adam S. Cashman
              Adam S. Cashman

*Attorneys for Impossible LLC*

Case No. 5:21-cv-02419-BLF (SVK)

IMPOSSIBLE LLC'S OPPOSITION TO IMPOSSIBLE FOODS INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR NEW TRIAL AND TO ALTER OR AMEND JUDGMENT