G. ROXANNE ELINGS (*pro hac vice*)
roxanneelings@dwt.com
RAPHAEL HOLOSZYC-PIMENTEL (*pro hac vice*)
rhp@dwt.com
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 42nd Floor
New York, NY 10020-1104
Telephone: (212) 489-8230
Facsimile: (212) 489-8340

SARAH E. BURNS (CA State Bar No. 324466)
sarahburns@dwt.com
DAVIS WRIGHT TREMAINE LLP
50 California Street, 23rd Floor
San Francisco, CA 94111
Telephone: (415) 276-6500
Facsimile: (415) 276-6599

Attorneys for Plaintiff/Counter-Defendant
IMPOSSIBLE FOODS INC.

IN THE UNITED STATES DISTRICT COURT

THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IMPOSSIBLE FOODS INC.,<br><br>          Plaintiff/Counter-Defendant,<br><br>   vs.<br><br>IMPOSSIBLE LLC,<br><br>          Defendant/Counter-Plaintiff. | Case No. 5:21-cv-02419-BLF<br><br>**IMPOSSIBLE FOODS INC.'S REPLY IN SUPPORT OF ITS POST-TRIAL MOTIONS FOR JUDGMENT AS A MATTER OF LAW OR A NEW TRIAL, AND ALTERATION OR AMENDMENT OF THE JUDGMENT, PURSUANT TO RULE 50(b), 59(a), AND 59(e)**<br><br>Judge:   Hon. Beth L. Freeman<br>Date:    July 23, 2026<br>Time:   9:00 a.m. |

## TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................... 1

II.  ARGUMENT ......................................................................................................... 2

     A.   IF's Arguments Were Preserved and Are Properly Raised ......................... 2

     B.   ILLC Failed to Show Likely Confusion in the Marketplace for the Goods at Issue ..................................................................................................... 3

     C.   The Corrective Advertising Award Fails as a Matter of Law ..................... 7

     D.   Punitive Damages Fail as a Matter of Law ............................................... 10

     E.   The Court Should Alter or Amend Its Judgment Regarding Attorneys' Fees ........................................................................................................ 12

III. CONCLUSION ................................................................................................... 15

IMPOSSIBLE FOODS' REPLY IN SUPPORT OF POST-TRIAL MOTIONS
Case No. 5:21-CV-02419-BLF (SVK)

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*adidas Am., Inc. v. Payless Shoesource, Inc.*,
2008 WL 4279812 (D. Or. Sept. 12, 2008)................................................................................ 12

*Adray v. Adry-Mart, Inc.*,
76 F.3d 984 (9th Cir. 1995)..........................................................................................................7, 9

*Air-Sea Forwarders, Inc. v. Air Asia Co.*,
880 F.2d 176 (9th Cir. 1989)......................................................................................................... 2

*Allstate Ins. Co. v. Herron*,
634 F.3d 1101 (9th Cir. 2011)...................................................................................................... 12

*Am. Computech, Inc. v. Nat'l Med. Care, Inc.*,
959 F.2d 239 (9th Cir. 1992)........................................................................................................ 10

*Bally Total Fitness Holding Corp. v. Faber*,
29 F. Supp. 2d 1161 (C.D. Cal. 1998)........................................................................................... 7

*Bosack v. Soward*,
586 F.3d 1096 (9th Cir. 2009)...................................................................................................... 11

*Bosley Med. Inst., Inc. v. Kremer*,
403 F.3d 672 (9th Cir. 2005)......................................................................................................... 4

*Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*,
174 F.3d 1036 (9th Cir. 1999)........................................................................................................ 7

*Brunswick Corp. v. Spinit Reel Co.*,
832 F.2d 513 (10th Cir. 1987)........................................................................................................ 7

*Cairns v. Franklin Mint Co.*,
24 F. Supp. 2d 1013 (C.D. Cal. 1998)........................................................................................... 6

*City of Carlsbad v. Shah*,
850 F. Supp. 2d 1087 (S.D. Cal. 2012) ........................................................................................ 11

*City of St. Louis v. Praprotnik*,
485 U.S. 112 (1988) ....................................................................................................................... 2

*Crowley v. Epicept Corp.*,
883 F.3d 739 (9th Cir. 2018).......................................................................................................... 2

*De Anza Santa Cruz Mobile Ests. Homeowners Ass'n v. De Anza Santa Cruz Mobile
Ests.*, 94 Cal. App. 4th 890 (2001) .............................................................................................. 11

IMPOSSIBLE FOODS' REPLY IN SUPPORT OF POST-TRIAL MOTIONS
Case No. 5:21-CV-02419-BLF (SVK)

*EEOC v. Go Daddy Software, Inc.*,
  581 F.3d 951 (9th Cir. 2009) ........................................................................................ 3

*Embotelladora Electropura S.A. de C.V. v. Accutek Packaging Equip. Co.*,
  2020 WL 1952820 (S.D. Cal. Apr. 23, 2020) .............................................................. 3

*Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*,
  778 F.3d 1059 (9th Cir. 2015) ..................................................................................... 15

*Getty Petroleum Corp. v. Island Transp. Corp.*,
  878 F.2d 650 (2d Cir. 1989) ..................................................................................... 7, 8

*Illusions Int'l Inc. v. Walgreen Co.*,
  2008 WL 11342979 (C.D. Cal. July 11, 2008) ............................................................ 7

*Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger, U.S.A., Inc.*,
  80 F.3d 749 (2d Cir. 1996) ........................................................................................... 7

*Ironhawk Techs., Inc. v. Dropbox, Inc.*,
  2 F.4th 1150 (9th Cir. 2021) ......................................................................................... 5

*Johnson v. City of San Jose*,
  2025 WL 2374004 (N.D. Cal. Aug. 15, 2025) (Freeman, J.) ....................................... 3

*Kaufmann v. Kijakazi*,
  32 F.4th 843 (9th Cir. 2022) ....................................................................................... 12

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*,
  543 U.S. 111 (2004) ...................................................................................................... 5

*Lerner & Rowe PC v. Brown Engstrand & Shely LLC*,
  119 F.4th 711 (9th Cir. 2024) ....................................................................................... 6

*Lindy Pen Co. v. Bic Pen Corp.*,
  982 F.2d 1400 (9th Cir. 1993) ...................................................................................... 7

*Loggervale v. Holland*,
  677 F. Supp. 3d 1026 (N.D. Cal. 2023),
  *aff'd*, 2024 WL 4234878 (9th Cir. Sept. 19, 2024) ................................................... 2

*M2 Software, Inc. v. Madacy Ent.*,
  421 F.3d 1073 (9th Cir. 2005) ...................................................................................... 6

*Marketquest Grp., Inc. v. BIC Corp.*,
  862 F.3d 927 (9th Cir. 2017) ........................................................................................ 5

*Max Rack, Inc. v. Core Health & Fitness, LLC*,
  40 F.4th 454 (6th Cir. 2022) ......................................................................................... 7

IMPOSSIBLE FOODS' REPLY IN SUPPORT OF POST-TRIAL MOTIONS
Case No. 5:21-CV-02419-BLF (SVK)

*MGA Ent. Inc. v. Harris*,
   2025 WL 2087583 (C.D. Cal. July 8, 2025),
   *interlocutory appeal denied*, 2025 WL 3691978 (C.D. Cal. Nov. 20, 2025)........................ 10

*Optimal Pets, Inc. v. Nutri-Vet, LLC*,
   2010 WL 2305843 (C.D. Cal. June 7, 2010)............................................................. 13

*Punchbowl, Inc. v. AJ Press LLC*,
   2024 WL 4005220 (C.D. Cal. Aug. 22, 2024) ........................................................... 4

*QS Wholesale, Inc. v. World Mktg., Inc.*,
   2014 WL 12586120 (C.D. Cal. Jan. 7, 2014)............................................................ 11

*Rearden LLC v. Rearden Com., Inc.*,
   683 F.3d 1190 (9th Cir. 2012)........................................................................... 4, 5

*Rehrig Pac. Co. v. Norseman Plastics Ltd.*,
   2003 WL 25667625 (C.D. Cal. Sept. 30, 2003)......................................................... 5

*Scat Enters., Inc. v. FCA US LLC*,
   2017 WL 5896182 (C.D. Cal. June 8, 2017)............................................................. 8

*Skydive Ariz., Inc. v. Quattrocchi*,
   673 F.3d 1105 (9th Cir. 2012)............................................................................ 8

*Star Markets, Ltd. v. Texaco, Inc.*,
   1996 WL 780472 (D. Haw. Dec. 11, 1996) .............................................................. 6

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
   538 U.S. 408 (2003) ....................................................................................... 12

*Trovan, Ltd. v. Pfizer, Inc.*,
   2000 WL 709149 (C.D. Cal. May 24, 2000)........................................................... 8, 10

*Van Burren v. Envii, Inc.*,
   2019 WL 3220013 (C.D. Cal. Mar. 27, 2019) .......................................................... 7

*Web Printing Controls Co. v. Oxy-Dry Corp.*,
   906 F.2d 1202 (7th Cir. 1990)............................................................................ 7

**Statutes**

Cal. Civ. Code § 3294(a)..................................................................................... 11

**Rules**

Civ. L.R. 7-5(a) ................................................................................................ 2

IMPOSSIBLE FOODS' REPLY IN SUPPORT OF POST-TRIAL MOTIONS
Case No. 5:21-CV-02419-BLF (SVK)

Fed. R. Civ. P.
  Rule 50 ..................................................................................................................... 3
  Rule 50(a) ................................................................................................................ 3
  Rule 50(b) ....................................................................................................... 1, 3, 10
  Rule 59(a) ........................................................................................................ 3, 10
  Rule 59(e) .................................................................................................... 3, 12, 13

**Other Authorities**

3 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION
  § 23:10 (5th ed.) .................................................................................................... 5

4 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION
  § 30:74 (5th ed.) .................................................................................................... 7

RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 36 cmt. i ......................................... 7

IF respectfully submits this Reply to ILLC's Opposition (Dkt. 499 ("Opp.")) and in further support of IF's Post-Trial Motions (Dkt. 498 ("Mot.")).

## I.    INTRODUCTION

ILLC's Opposition does not cure the fundamental defects in its case. Instead, it attempts to change the subject. Rather than confront the absence of evidence supporting liability or damages, ILLC attempts to recast IF's Rule 50(b) Motion as a waived challenge to the jury instructions— even though the Supreme Court and Ninth Circuit have squarely rejected that reframing.

ILLC likewise substitutes generalized association between ILLC and IF's successful, non-accused plant-based meat business for actionable confusion between the goods at issue as the Lanham Act requires, and asks the Court to defer to the verdict despite the absence of evidence connecting the jury's awards to the accused goods.

ILLC's theory of the case—that consumers thought of IF's plant-based meat when they encountered ILLC or ILLC's shirts—is not the question presented to the jury. The jury was not asked whether consumers associated the word IMPOSSIBLE with IF or its food products. The question was whether two specific IF goods—promotional apparel and a cookbook—were likely to cause confusion as to the source, sponsorship, affiliation, or approval of the goods at issue. On that question, ILLC's proof failed. ILLC did not identify a single consumer confused by IF's apparel or cookbook—or even a single consumer who had ever encountered IF's apparel or cookbook. Instead, ILLC repeatedly relied on evidence that consumers associated IMPOSSIBLE with IF's non-accused food business—a fundamentally different proposition.

The same deficiency pervaded ILLC's damages evidence. Having failed to show actionable confusion arising from the accused goods, ILLC likewise failed to show any injury requiring corrective advertising, any reliable measure of injury to the value of its trademark, or any causal connection between IF's apparel and the claimed harm. Rather, ILLC's own evidence repeatedly attributed its alleged injuries to IF's ubiquitous food business—the very business excluded from ILLC's infringement claims.

The Opposition ultimately confirms, rather than answers, the Motion. It offers no basis to sustain the damages or attorneys' fee awards. The Court should grant IF's requested relief.

IMPOSSIBLE FOODS' REPLY IN SUPPORT OF POST-TRIAL MOTIONS
Case No. 5:21-CV-02419-BLF (SVK)

## II.    ARGUMENT[1]

### A.    IF's Arguments Were Preserved and Are Properly Raised

ILLC wrongly argues that points of law not contained in stipulated jury instructions are "waived" in a JMOL. Opp. at 1, 4, 8, 12. That argument has been flatly rejected by the Supreme Court and Ninth Circuit:

> [A] party's failure to object to relevant jury instructions does <u>not</u> prevent it from challenging the sufficiency of the evidence on a legal basis <u>different from that contained in the instructions</u>. "[T]he failure to object to an instruction does <u>not</u> render the instruction 'law of the case' for purposes of . . . a directed verdict or judgment notwithstanding the verdict."

*Air-Sea Forwarders, Inc. v. Air Asia Co.*, 880 F.2d 176, 182–83 (9th Cir. 1989) (emphases added) (footnote omitted) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 120 (1988) (plurality)). Where, as here, a party moves for JMOL—rather than a challenge to "the jury instruction itself"— the inquiry "depends upon the sufficiency of the evidence up to that point in the trial; the jury instructions on the points of law contained in the motion for directed verdict are simply outside the scope of that analysis." *Id.* at 183 (quoting *Praprotnik*, 485 U.S. at 120).[2]

---

[1] Two collateral accusations warrant a brief response. *First*, ILLC's assertion that IF violated the permanent injunction is baseless, as IF explained to ILLC in detail. *See* Elings Reply Decl. Ex. 1. *Second*, ILLC mischaracterizes IF's declaration appendix as containing legal argument. Opp. at 3. It does not. The declaration merely identifies the *Sleekcraft* factors and summarizes the trial record. Dkt. 498-1, ¶¶ 2, 5. Such summaries are expressly permitted by Local Civil Rule 7-5(a) (permitting declarations to include "[e]xtracts from . . . evidentiary matters"). Indeed, this Court has rejected similar objections by ILLC and recognized its factual mischaracterizations as "off base." Dkt. 492 at 14 n.3; *see also* 4/23/2026 Tr. at 36:12–25 (explaining the baselessness of ILLC's similar objection to previous declaration, which the Court declined to strike).

[2] ILLC's "waiver" argument rests on inapposite cases that sought a new trial based on unpreserved objections to the language of jury instructions. *See Loggervale v. Holland*, 677 F. Supp. 3d 1026, 1049 (N.D. Cal. 2023), *aff'd*, 2024 WL 4234878 (9th Cir. Sept. 19, 2024); *Crowley v. Epicept*

2

The analysis is instead grounded in Rule 50: "a proper post-verdict Rule 50(b) motion is limited to the grounds asserted in the pre-deliberation Rule 50(a) motion." *EEOC v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009). "Rule 50 is subject to a 'liberal interpretation,'" such that "Rule 50(b) 'may be satisfied by an ambiguous or inartfully made motion' under Rule 50(a)." *Johnson v. City of San Jose*, 2025 WL 2374004, at *8 (N.D. Cal. Aug. 15, 2025) (Freeman, J.) (quoting *Go Daddy*, 581 F.3d at 961). Where an argument is a "logical extension," *Go Daddy*, 581 F.3d at 962, or is "implicit" in an argument made under Rule 50(a), it is "sufficiently preserved" for purposes of Rule 50(b). *Johnson*, 2025 WL 2374004, at *8.

Here, IF orally moved under Rule 50(a) on the grounds that ILLC had failed to present sufficient evidence of (1) a likelihood of confusion and (2) damages. Tr. at 859:16–862:12. Those are the same deficiencies raised in IF's Rule 50(b) Motion. While ILLC argues that the issue of punitive damages was not preserved, the punitive award necessarily depended on the same evidence at issue in IF's preserved challenges to liability and damages. *See* Mot. at 16–18; Opp. at 18–21 (conceding that actual damages and infringing conduct are part of punitive analysis). IF's Rule 50(a) motion identified those failures of proof while ILLC still had an opportunity to cure them, thereby satisfying Rule 50(a)'s notice function. *See Embotelladora Electropura S.A. de C.V. v. Accutek Packaging Equip. Co.*, 2020 WL 1952820, at *4–6 (S.D. Cal. Apr. 23, 2020) (challenge to punitive damages preserved where the movant identified the evidentiary deficiency before submission to the jury, thereby providing notice and an opportunity to cure).

Consequently, IF's challenges to liability, actual damages, and punitive damages are properly considered under Rule 50(b). To the extent the Court concludes that any argument was not preserved under Rule 50(b), relief is independently available under Rule 59(a). The separate attorneys' fees issues arise under Rule 59(e). *See* Mot. at Notice & 4–5, 24.

**B.    ILLC Failed to Show Likely Confusion in the Marketplace for the Goods at Issue**

ILLC fails to grapple with two fundamental features of trademark law. *First*, as the Ninth Circuit has repeatedly held, "[t]rademark infringement protects **only against mistaken**

*Corp.*, 883 F.3d 739, 748 (9th Cir. 2018). Those cases are inapplicable, because IF does not challenge the jury instructions nor seek a new trial on that basis.

IMPOSSIBLE FOODS' REPLY IN SUPPORT OF POST-TRIAL MOTIONS
Case No. 5:21-CV-02419-BLF (SVK)

**purchasing decisions** and not against confusion generally." *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1214 (9th Cir. 2012) (alteration in original) (emphasis added) (quoting *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 677 (9th Cir. 2005)). ILLC mischaracterizes IF's argument as requiring proof of a completed mistaken purchase or point-of-sale confusion. That is not IF's argument. Rather, as IF argued (Mot. at 6–7), the relevant inquiry is whether consumers are likely to be confused as to the source, sponsorship, affiliation, or approval of the goods at issue in a manner that "affects purchasing decisions." *Punchbowl, Inc. v. AJ Press LLC*, 2024 WL 4005220, at *10 (C.D. Cal. Aug. 22, 2024) (citation omitted). "The relevant confusion is whether members of the buying public would mistakenly purchase one party's product because they believed it to be the other party's product," whereas "[m]istaken inquiries about affiliation which are easily clarified do not constitute evidence of actual confusion." *Id.* Consistent with the law's focus on consumer purchases, "litigants usually . . . provid[e] direct evidence of consumer confusion." *Rearden*, 683 F.3d at 1214.

While ILLC notes that "non-consumer confusion may also be relevant," that is true only if it "bears a relationship to the existence of confusion on the part of consumers themselves." *Id.* *Rearden* recognizes only limited circumstances in which non-consumer confusion may be relevant, each requiring evidence connecting the non-consumer confusion to likely consumer confusion. 683 F.3d at 1214–16. As explained below, that evidence is absent here.

At trial, ILLC did "not identif[y] a single customer" or potential consumer of its apparel or recipes whose purchasing decision was affected by a belief that those goods originated with IF. *Punchbowl*, 2024 WL 4005220, at *10, *14 (no infringement as a matter of law). ILLC instead points to non-consumers (Opp. at 5), but ILLC failed to adduce any evidence satisfying *Rearden*'s requirement that non-consumer confusion bear a relationship to likely consumer confusion regarding the goods at issue. 683 F.3d at 1214. There was no evidence, for example, that any of these individuals were potentially interested in buying ILLC's apparel or recipes. Nor was there any evidence that these non-consumers' confusion was a "proxy" for consumer confusion due to their sophistication and the inference that "less sophisticated consumers would also be confused." *Id.* at 1215–16. On the contrary, there was no evidence of these unidentified individuals'

sophistication—the only descriptor offered was that one was a "big burly West Texas guy." Tr. at 215:12. "[C]onfusion on the part of a non-sophisticated non-consumer may shed little or no light on whether a sophisticated consumer would likewise be confused." *Rearden*, 683 F.3d at 1216. Finally, there was no evidence that these non-consumers would influence consumers. In sum, there was no evidence of actionable confusion, whether adduced through consumers or non-consumers.

*Second*, trademark infringement requires likely confusion "in the minds of consumers about the origin of **the goods or services in question**." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 117 (2004) (emphasis added); *see also* Dkt. 406 (collecting cases). The same is true in reverse-confusion cases. *See Marketquest Grp., Inc. v. BIC Corp.*, 862 F.3d 927, 932 (9th Cir. 2017) (reverse confusion as to "origin of the goods . . . in question").

ILLC attempts to elide this requirement by quoting a reference to confusion that "the senior user is the same as or is affiliated with the junior user." Opp. at 5, 8 (quoting *Ironhawk Techs., Inc. v. Dropbox, Inc.*, 2 F.4th 1150, 1160 (9th Cir. 2021)). *Ironhawk*'s reference to the "users" is simply a synecdoche for the *users' goods*. That is clear from the very next sentence in *Ironhawk*, holding that reverse confusion occurs when "customers are likely to be confused into thinking that the *senior user's goods* are *those of the junior user*." *Ironhawk*, 2 F.4th at 1160 (emphases added) (quoting 3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 23:10 (5th ed.)). ILLC lifts the language out of context because that is how ILLC litigated this case—merely showing confusion between two companies. But it is not the law.

Under the correct legal standard, ILLC presented no evidence from which a reasonable jury could find confusion regarding the accused goods. Instead, the purported confusion evidence repeatedly referenced the IF company and its popular plant-based meat. App. A.1. Not once did any confused individual reference IF's apparel or cookbook. In fact, ILLC could not identify a single consumer who even saw IF's apparel or cookbook, let alone were confused by those goods. App. A.2. At most, even viewed in the light most favorable to ILLC, the evidence merely showed a mental association between IF and ILLC. There was no consumer confusion between IF's apparel and cookbook and ILLC's apparel and recipes—*i.e.*, the goods at issue. And relatedly, there was no "causal link between the [claimed] confusion and [IF's] allegedly infringing [goods]." *Rehrig*

5

*Pac. Co. v. Norseman Plastics Ltd.*, 2003 WL 25667625, at *31 (C.D. Cal. Sept. 30, 2003).

Notably, ILLC could have offered confusion evidence through surveys regarding the goods at issue. ILLC retained marketing experts and conducted consumer surveys showing actual confusion—but not regarding the goods at issue in its claims. App. C.6. ILLC's decision to forgo the relevant surveys is telling. *See Cairns v. Franklin Mint Co.*, 24 F. Supp. 2d 1013, 1042 (C.D. Cal. 1998) (actual confusion "tips decidedly in defendants' favor" where "plaintiffs had ample opportunity to conduct their own survey" but declined to so); *Star Markets, Ltd. v. Texaco, Inc.*, 1996 WL 780472, at *6 (D. Haw. Dec. 11, 1996) (actual confusion "overwhelmingly favors Defendants" where plaintiff conducted survey of trademark but not of trade dress; no trade dress infringement as a matter of law).

ILLC notes that "evidence of actual confusion . . . doesn't even have to [be] offered." Opp. at 4 (quoting Tr. at 468:8–9). True. But when a plaintiff elects to offer actual confusion evidence, the nature of that evidence matters. As the Ninth Circuit recently held: "the nature of the actual confusion evidence paints a picture that affirmatively contradicts [plaintiff's] assertions that [defendant's goods] were likely to confuse an appreciable number of consumers, compelling us to conclude that this factor should weigh substantially in favor of [defendant]." *Lerner & Rowe PC v. Brown Engstrand & Shely LLC*, 119 F.4th 711, 722, 726 (9th Cir. 2024) (no infringement as a matter of law); *see also M2 Software, Inc. v. Madacy Ent.*, 421 F.3d 1073, 1083, 1085 (9th Cir. 2005) (same, evidence that individual was *reminded*, rather than confused, by defendant's goods "weighs in [defendant's] favor"). That is the same picture painted here. Even viewing the evidence in the light most favorable to ILLC, its actual confusion evidence showed, at most, association with IF and its plant-based meat business—not confusion regarding the accused apparel or cookbook. Under *Lerner & Rowe*, that evidence does not support a finding of likely confusion and instead weights strongly in IF's favor.

The remaining *Sleekcraft* factors cannot salvage ILLC's case, given the starkly different context between (a) ILLC's sales of apparel and bodybuilding recipes, and (b) IF's promotional apparel that it never sold and cookbooks that instructed how to cook IF's meat. Mot. at 11–12. IF's accused goods serve very different purposes and do not compete with ILLC's goods at all. Even

6

where parties provide the "same service" or goods, there is no likelihood of confusion where they serve "fundamentally different purposes." *Bally Total Fitness Holding Corp. v. Faber*, 29 F. Supp. 2d 1161, 1164 (C.D. Cal. 1998). And even where there is "virtual identity of marks," "the likelihood of confusion would probably be remote" where the parties "did not compete to any extent whatsoever." *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1056 (9th Cir. 1999). So too here. JMOL on liability is warranted.

### C.      The Corrective Advertising Award Fails as a Matter of Law

ILLC failed to (1) show any actual confusion or other actual injury, (2) reliably quantify such injury to the value of its mark, and (3) show that the injury was caused by IF's accused goods.

**1.** In *Illusions Int'l Inc. v. Walgreen Co.*, the court correctly held that "proof of actual confusion is ordinarily required for recovery of damages for pecuniary loss sustained by the plaintiffs." 2008 WL 11342979, at *2 (C.D. Cal. July 11, 2008) (quoting *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger, U.S.A., Inc.*, 80 F.3d 749, 753 (2d Cir. 1996)). There, the court agreed with the defendant that "there is no evidence of any consumer confusion in this case" and thus found "no actual damages" as a matter of law. *Id.* at *2–3 & n.5. That view is widely shared. *See Getty Petroleum Corp. v. Island Transp. Corp.*, 878 F.2d 650, 655 (2d Cir. 1989); *Max Rack, Inc. v. Core Health & Fitness, LLC*, 40 F.4th 454, 475 (6th Cir. 2022); *Web Printing Controls Co. v. Oxy-Dry Corp.*, 906 F.2d 1202, 1204–05 (7th Cir. 1990); *Brunswick Corp. v. Spinit Reel Co.*, 832 F.2d 513, 525 (10th Cir. 1987); 4 MCCARTHY § 30:74; RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 36 cmt. i.

*Lindy Pen* does not help ILLC. It involved a claim for profits, rather than corrective advertising. *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1408, 1411 (9th Cir. 1993). Corrective advertising is the amount required "to dispel *the confusion* caused by defendant's infringement." *Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 988 (9th Cir. 1995) (emphasis added); *Van Burren v. Envii, Inc.*, 2019 WL 3220013, at *3 (C.D. Cal. Mar. 27, 2019) (to justify "corrective advertising a plaintiff must show that *the confusion* caused by the defendant's mark injured the plaintiff" (emphasis added) (citation omitted)). As McCarthy explains, *Lindy Pen* "would favor the approach taken in the *Getty* decision," 4 MCCARTHY § 30:74 & n.9, that is, actual confusion is "normally

required," although other evidence can fill the gap in certain damages or profits claims. *Getty*, 878 F.2d at 655. Here, by its very nature, corrective advertising "ordinarily"—if not always—requires actual confusion. *Illusions*, 2008 WL 11342979, at *2. *Skydive Arizona, Inc. v. Quattrocchi* is consistent with that approach, upholding a corrective advertising award where there was extensive "customer confusion." 673 F.3d 1105, 1113 (9th Cir. 2012). As explained *supra* Part II.B, ILLC failed to present evidence of actual confusion, so its corrective advertising claim fails.

Nor did ILLC present evidence of "actual lost value to the plaintiff's mark" as required for corrective advertising. *Scat Enters., Inc. v. FCA US LLC*, 2017 WL 5896182, at *2 (C.D. Cal. June 8, 2017). Here, ILLC provided "no evidence demonstrating that [IF's apparel] adversely impacted its growth or caused it to lose any sales or business opportunities" in ILLC's apparel business. *Id.* at *3 (no corrective advertising as a matter of law). On the contrary, ILLC's apparel sales *increased* during IF's alleged infringement. Mot. at 3. "[T]he increase in sales . . . certainly indicates that plaintiffs' goodwill had not decreased." *Trovan, Ltd. v. Pfizer, Inc.*, 2000 WL 709149, at *9 (C.D. Cal. May 24, 2000).

ILLC fails to fill the evidentiary gap. While ILLC cites claimed harm to its "business" and unspecified "products" in ILLC's broad portfolio of products and services (Opp. at 11–12), those alleged harms are irrelevant because they are unrelated to the apparel products at issue. Nor is ILLC aided by Dr. Palmatier, who merely assumed the presence of confusion and did not identify any real injury that actually occurred. Tr. at 720:6–19.

The corrective advertising award fails because there was no cognizable injury to correct.

**2.** As this Court held, ILLC was required to present "non-speculative evidence" to "quantify" the claimed damage to "the value of its mark." Dkt. 383 at 6 (citation omitted). ILLC failed to reliably quantify the value of its mark or any damage to it.

ILLC leans heavily on Mr. Runyon's testimony that he thought "Impossible LLC"—the company, including all its various assets—was worth millions of dollars at one point. Opp. at 14; Tr. at 1027:15–20 (Runyon testifying on purported value of "the company"). But Mr. Runyon did <u>not</u> testify to the value of ILLC's *trademark*, let alone its trademark rights in apparel, as required. Nor did he back up his broad $15–25 million estimate with any underlying financial data.

8

Similarly, ILLC's reliance on $450,000 in total advertising costs—across all of ILLC's businesses and products—is defective. Opp. at 14; Tr. at 799:19–802:12 (Vanderhart testifying on "all" ILLC's marketing across energy and sleep powders, search energy optimization, consulting, and other goods and services). There was no evidence of how much of that advertising promoted ILLC's trademark for apparel. And it was implausible that ILLC directed any significant portion of those costs to apparel, which generated less than $100,000 in revenue. Tr. at 806:24–808:14.

*Skydive* affirmed an award of reputational and corrective advertising damages where the plaintiff's advertising expenditures were directed to the very services at issue and supported by financial records. 673 F.3d at 1109, 1112–13. Here, by contrast, ILLC's advertising expenditures spanned numerous unrelated businesses, while its claim was limited to corrective advertising damages for its small apparel business.

Unlike *Skydive*, here there was no evidence of the value of ILLC's mark for its apparel business or any damage to it—let alone $1.5 million in damages for a business that generated less than $100,000 in lifetime sales. The award thus fails as a matter of law. Alternatively, the award should be remitted to a small fraction of ILLC's $450,000 advertising spend, reflecting the maximum conceivable value of ILLC's trademark rights for its small apparel business.[3]

**3.** As this Court held, ILLC was required to show damage "due to [IF's] *infringement*." Dkt. 383 at 7 (quoting *Adray*, 76 F.3d at 988). ILLC presented no evidence that IF's allegedly infringing apparel was seen by any ILLC consumer—or any non-consumer or other individual—let alone confused such individual or caused any other harm. *See supra* Part II.B (citing App. A.2). There is simply no causal link between IF's apparel and the claimed harm whatsoever. To the contrary, all the evidence indicates that any claimed harm was caused by IF's highly visible plant-based meat business, which was not at issue in ILLC's claims. *See* App. A.1, A.3.

ILLC's attempt to show sufficient evidence of causation fails. ILLC claims that IF "flooded the market with its infringing apparel" by spending allegedly $1 million on such apparel. Opp. at

---

[3] ILLC's $100,000 in apparel sales amounted to 5% of its $2,000,000 in revenue across all product categories. Tr. at 805:5–808:14. Thus, 5% of $450,000—*i.e.*, $22,500—would be an appropriate remittitur if the Court orders one.

IMPOSSIBLE FOODS' REPLY IN SUPPORT OF POST-TRIAL MOTIONS
Case No. 5:21-CV-02419-BLF (SVK)

16. IF is not an apparel company, and it does not sell apparel. ILLC presented no evidence that IF's apparel was actually encountered by consumers during this supposed "flood" in the market. ILLC presented no evidence that consumers had seen IF apparel in stores, online retail channels, or any other context. Without evidence that consumers encountered the accused goods at all, ILLC cannot establish that those goods caused the alleged confusion or any other harm.

In reality, approximately $1 million in promotional apparel, distributed over a decade and across multiple countries, does not come close to "flooding" the apparel market. Tr. at 522:13–21, 617:4–10, 763:15–766:10. ILLC itself spent approximately $650,000 on marketing, yet no one would suggest that ILLC "flooded" the market—indeed, ILLC's entire theory is that it was overwhelmed in the market. Nor was there any evidence that IF possessed significant marketplace strength in apparel, a market in which it does not operate. Tr. at 731:18–21.

ILLC's catalog of alleged harms misses the point. Opp. at 16. The dispositive issue is causation. ILLC introduced no evidence tying those harms to IF's apparel, rather than IF's widespread, non-accused plant-based meat business.

## D.    Punitive Damages Fail as a Matter of Law

Punitive damages fail for lack of (1) actual damages, (2) clear and convincing evidence of oppression, fraud, or malice, and (3) due process.

**1.** ILLC does not dispute that its punitive award depends on the existence of actual damages. Opp. at 18. Because actual damages fail, so does the punitive award. *See supra* Part II.C.

**2.** Under Rule 50(b) (which applies here, *see supra* Part II.A), the correct standard is whether "sufficient evidence had been presented to convince a reasonable jury, applying the clear and convincing evidence standard, that punitive damages could be awarded." *Am. Computech, Inc. v. Nat'l Med. Care, Inc.*, 959 F.2d 239, at *7 (9th Cir. 1992) (table). Alternatively, under Rule 59(a), the standard is whether the punitive "verdict is against the clear weight of the evidence" or is "excessive." *Trovan*, 2000 WL 709149, at *34 (overturning finding of oppression, fraud, or malice and finding punitive award excessive in trademark case); *MGA Ent. Inc. v. Harris*, 2025 WL 2087583, at *8 (C.D. Cal. July 8, 2025) (same), *interlocutory appeal denied*, 2025 WL 3691978 (C.D. Cal. Nov. 20, 2025).

10

IMPOSSIBLE FOODS' REPLY IN SUPPORT OF POST-TRIAL MOTIONS
Case No. 5:21-CV-02419-BLF (SVK)

Under either standard, the $1.75 million punitive award fails for lack of oppression, fraud, or malice, as required under Cal. Civ. Code § 3294(a), and is excessive. IF did not act maliciously or despicably. The record shows, at most, a good-faith trademark dispute between parties in different markets over promotional goods. That is a far cry from a malicious attempt to harm a competitor or any other despicable conduct required for punitive damages. IF conducted trademark due diligence and believed its food business did not conflict with ILLC's trademark rights. App. B. IF never sold or earned a dime from apparel, and IF had no intent to compete with ILLC through those promotional items. Tr. at 641:6–10. Recently, IF used apparel designs to more clearly identify IF and not ILLC (Tr. at 635:18–639:25; Exs. 1319, 1320, 1322, 1324), and stopped selling its allegedly infringing cookbook entirely (Tr. at 650:24–651:13), mitigating any harm.

The cases cited by ILLC are inapposite. In *City of Carlsbad v. Shah*, after the city named its new golf course, the defendant starting buying up web domains mimicking the name, in a deliberate cybersquatting scheme. 850 F. Supp. 2d 1087, 1106–07 (S.D. Cal. 2012). In *QS Wholesale, Inc. v. World Mktg., Inc.*, the infringer had attempted to buy a competitor's mark on three occasions but went ahead and used the mark anyway when those deals fell through, and the infringer lied to obscure its continuing misconduct. 2014 WL 12586120, at *4 (C.D. Cal. Jan. 7, 2014). In both cases, there was strong evidence the defendant knew its use was illegal—in contrast to IF who believed its goods could lawfully coexist with ILLC.

**3.** ILLC admits that its attacks on IF's declaratory action and affirmative claims were a basis for the jury's verdict (Opp. at 19–20), which only confirms its constitutional defect. IF's "trial tactics and litigation conduct may <u>not</u> be used to impose punitive damages." *Bosack v. Soward*, 586 F.3d 1096, 1105 (9th Cir. 2009) (emphasis added) (quoting *De Anza Santa Cruz Mobile Ests. Homeowners Ass'n v. De Anza Santa Cruz Mobile Ests.*, 94 Cal. App. 4th 890, 918 (2001)). In fact, "due process considerations are implicated to the extent that tort damages are based on evidence that a defendant filed motions, appeals and other legal proceedings," because pursuing such relief, even if unsuccessful, "is a protected right and cannot be the basis for tort liability." *De Anza*, 94 Cal. App. 4th at 918–19, 922 (reversing punitive award where plaintiff's closing "relied heavily" on defendants' "strong-arm" litigation tactics). ILLC's repeated

IMPOSSIBLE FOODS' REPLY IN SUPPORT OF POST-TRIAL MOTIONS
Case No. 5:21-CV-02419-BLF (SVK)

characterization of IF's litigation conduct as "pressure tactics" render the punitive verdict unconstitutional. *See* Tr. at 1125:8–10, 1131:3–24, 1137:6–9, 1207:21–1208:14 (ILLC's closing: IF answered ILLC's letter "with this lawsuit"; "the whole reason we are here today is because they brought a lawsuit . . . and they put the lawyers on him for five years"; IF's claims were not "real claims" and were "just things that they are doing to blame Joel, more excuses, more lawyer tricks"; IF "started enlarging the claims" and "suing him personally for reasons unexplained"; "this is just something that they were doing as a pressure tactic in this litigation"); Tr. at 1294:6–19, 1301:15–21 (ILLC's punitive closing: IF "just put the lawyers on him" and "sued him personally"; IF "just used their lawyers and used the courts as a tool to punch down"; "these are just things that lawyers do to flex their muscle"; IF was "targeting and deliberately going after this man").

The punitive award offends due process for two additional reasons. *First*, as explained *supra* Part II.C.3, the claimed harm was clearly caused by IF's lawful food business. The jury "cannot punish a defendant for conduct that may have been lawful." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 421 (2003). Yet ILLC put in evidence on IF's successful Impossible Burger again and again. App. A.3.

*Second*, as explained *supra* Part II.C, the actual damages must be remitted if not vacated altogether. The punitive award must be correspondingly remitted to satisfy due process. Here, a 1:1 ratio or less is the constitutional maximum, given that "there was no physical harm or disregard for a person's health or safety, there were no lost sales, [ILLC] suffered no economic harm," and IF did not act maliciously. *adidas Am., Inc. v. Payless Shoesource, Inc.*, 2008 WL 4279812, at *16 (D. Or. Sept. 12, 2008) (reducing punitive award to *below* 1:1 ratio in trademark case).

**E.    The Court Should Alter or Amend Its Judgment Regarding Attorneys' Fees**

As ILLC does not dispute, the Court has discretion to alter or amend the judgment under Rule 59(e) to "correct manifest errors of law or fact upon which the judgment rests" or "prevent manifest injustice." *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011). ILLC also does not dispute that "overlooking" evidence in the record is "clear error" sufficient for reconsideration under Rule 59(e). *Kaufmann v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022) (cited in Mot. at 5). Nonetheless, ILLC argues that IF's motion should be denied because Rule 59(e) may

not "be used as a vehicle for reconsideration of issues already raised." Opp. at 21 (citation omitted). But that is not what IF seeks via this Motion.

Instead, IF's Motion identifies two clear errors in the Order that materially affected the Court's exceptionality analysis: (1) the Court's finding that IF presented "no evidence" supporting its affirmative infringement claim and abandonment defense, and (2) the Court's statement that Mr. Runyon "spent more than $6 million" on this case. Order at 13–14. Both findings are contradicted by the trial record, and correcting those errors is precisely the function of Rule 59(e). Without those findings undergirding two of the factors identified by the Court, the third and final factor (willfulness) cannot sustain the fee award.

**1.** IF presented significant evidence on its affirmative infringement claim and abandonment. On infringement, IF was <u>not</u> required to "establish that each of the eight *Sleekcraft* factors favors of finding of likelihood of conclusion" to win that claim, much less to raise a reasonable claim. *Optimal Pets, Inc. v. Nutri-Vet, LLC*, 2010 WL 2305843, at *5 (C.D. Cal. June 7, 2010). IF presented evidence on no less than six of those factors. App. C. Because the Court's exceptionality determination largely rested on the premise that IF presented "no evidence" on key issues, the accuracy of that factual premise is critical. But it is belied by the record.

None of ILLC's attempts to wave IF's evidence away succeed. ILLC does not dispute that IF established the strength of its mark. The Court already rejected ILLC's objection to the relevance of Dr. Palmatier's survey finding actual confusion even though it may have been designed with a different purpose in mind. Tr. at 780:14–22 (declining to exclude survey). As Dr. Palmatier testified, the survey asked the same questions it would have asked had it been designed to test IF's claims, and it found "highly probative" evidence of "significant consumer confusion." Tr. at 995:23–25, 997:3–8. ILLC denigrates documentary evidence showing the plant-based meat brand Beyond expanding into nutritional supplements because it was introduced through a paralegal who, ILLC claims, lacked personal knowledge. Opp. at 23. But again, the Court already rejected ILLC's argument and overruled ILLC's objection to the exhibit for, among other things, lack of foundation. Tr. at 930:6–931:23. ILLC faults IF because its witnesses were not personally confused. Opp. at 23. But the Court recognized that IF employees' testimony on "confusion has

13

nothing to do with whether a real customer" was confused and is not relevant. Tr. at 605:25–606:3. The absence of their confusion therefore does not support the Court's conclusion that IF presented "no evidence" on infringement. IF presented substantial documentary and testimonial evidence supporting multiple *Sleekcraft* factors.

On abandonment, ILLC ignores, and thus concedes, IF's argument that the Court applied the wrong standard by focusing on whether IF introduced evidence that Mr. Runyon intended to permanently cease use of the IMPOSSIBLE mark for recipes. As IF explained, intent can be inferred from circumstantial evidence and presumed from three years of non-use. Mot. at 21.

ILLC makes the same error with respect to IF's evidentiary showing. IF pointed out that ILLC failed to offer any documentary evidence (like sales data) supporting the notion that ILLC continued to sell its recipes, which ILLC deems unsupported. But, of course, that is the nature of proving a negative. Mr. Runyon's testimony that the recipes remained online is not evidence of actual sales. Tr. at 346:6–16. In any event, IF *did* offer affirmative evidence that ILLC stopped selling or spun out recipe products in approximately 2012 and 2016. App. D. Mr. Runyon's conclusory testimony that he intended to continue using the mark does not negate the evidence IF marshalled to the contrary—especially given that Mr. Runyon arguably misrepresented his use of the mark on other occasions to the USPTO, as IF asserted under its fraud claim. The Order erred both in imposing a higher standard for abandonment than the Lanham Act requires and in finding IF offered no evidence to meet the standard.

The exceptionality finding rested on the premise that the evidence did not exist. Because the trial record shows that it did, that premise cannot support the fee award.[4]

**2.** The Court also relied on "considerations of fairness and compensation." Order at 14. But ILLC was overcompensated by the $3.25 million verdict, so it was clear error for the Court to base its decision on these considerations, for two reasons. *First*, as explained *supra* Part II.C, ILLC failed to show any damages to its small apparel business. ILLC does not dispute that its apparel business generated less than $100,000 in lifetime sales; it has never identified a single lost sale;

---

[4] ILLC wrongly claims that IF "does not contest" the Court's finding that IF's claims were "exceptionally weak." Opp. at 24. That is precisely what IF challenges in this Motion.

IMPOSSIBLE FOODS' REPLY IN SUPPORT OF POST-TRIAL MOTIONS
Case No. 5:21-CV-02419-BLF (SVK)

apparel sales increased during the alleged infringement; and it has never provided any evidence whatsoever related to its cookbook sales or damages to those sales. Mot. at 22. All this makes the Court's reliance on *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.* misplaced, because there the Ninth Circuit *declined* to assess fees where the evidence that defendants caused actual damages was "weak." 778 F.3d 1059, 1080 (9th Cir. 2015). ILLC offers no case where a court found compensation considerations weighed in favor of fees where the plaintiff suffered no damages. Nor does ILLC cite any case for its claim that it should be compensated because IF is "a much larger opponent." Opp. at 25.

*Second*, the Court's compensation analysis relied on a factual premise that ILLC concedes was mistaken: that Mr. Runyon "spent more than $6 million" on this case. Order at 14; *see* Opp. at 25. As IF explained, however, Mr. Runyon declared only that he had paid "multiple millions of dollars." Dkt. 481-1 ¶ 4. If he had in fact paid anything approaching $6 million, he would have said so. He did not, and ILLC failed to identify the actual amount. The Court's compensation analysis therefore rests on a factual premise that is unsupported by the record.

ILLC does not deny that most of the $6 million in fees were borne by counsel under a contingency arrangement, not by Mr. Runyon. While ILLC argues the contingency arrangement "makes [no] difference" (Opp. at 25), the Court relied on compensating *Mr. Runyon* for his purported spending. Order at 14. Because that premise is unsupported, it cannot sustain the award.

**3.** Willfulness is the only remaining factor, and the Court properly concluded that willfulness alone cannot support exceptionality. Order at 11. As IF explained, the evidence of willfulness the Court relied on was narrow and a far cry from the aggravated misconduct that typically justifies fee shifting. Mot. at 23. ILLC does not address this point—instead standing on its already-rejected argument that willfulness is sufficient (Opp. at 25)—and therefore concedes the issue. With only willfulness remaining, the exceptionality finding cannot stand.

Last, ILLC does not oppose IF's alternative request to apportion any award of fees to those incurred on "exceptional" claims only. Mot. at 24 & n.8. At a minimum, that relief is warranted.

### III.     CONCLUSION

IF respectfully requests that the Court grant IF's requested relief. Mot. at Notice & 24.

IMPOSSIBLE FOODS' REPLY IN SUPPORT OF POST-TRIAL MOTIONS
Case No. 5:21-CV-02419-BLF (SVK)

DATED: June 29, 2026                                    DAVIS WRIGHT TREMAINE LLP

                                                        By: */s/ G. Roxanne Elings*
                                                           G. Roxanne Elings

                                                        Attorneys for Plaintiff/Counter-Defendant
                                                        IMPOSSIBLE FOODS INC.

---

IMPOSSIBLE FOODS' REPLY IN SUPPORT OF POST-TRIAL MOTIONS
Case No. 5:21-CV-02419-BLF (SVK)