Adam S. Cashman, Esq. (SBN: 255063)
cashman@braunhagey.com
J. Noah Hagey, Esq. (SBN: 262331)
hagey@braunhagey.com
Greg Washington, Esq. (SBN: 318796)
gwashington@braunhagey.com
J. Tobias Rowe, Esq. (SBN: 305596)
rowe@braunhagey.com
Oliver McNicholas, Esq. (SBN: 363554)
omcnicholas@braunhagey.com
BRAUNHAGEY & BORDEN LLP
747 Front Street, 4th Floor
San Francisco, CA 94111
Telephone: (415) 599-0210

Marissa R. Benavides (*pro hac vice* admission)
benavides@braunhagey.com
BRAUNHAGEY & BORDEN LLP
200 Madison Avenue, 23rd Floor
New York, NY 10016
Telephone: (646) 829-9403

[Other counsel of record indicated on docket.]

*Attorneys for Impossible LLC*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

IMPOSSIBLE FOODS INC.,

Plaintiff / Counter-Defendant,

v.

IMPOSSIBLE LLC,

Defendant / Counter-Plaintiff.

Case No. 5:21-cv-02419-BLF (SVK)

**JOINT PRETRIAL STATEMENT AND ORDER**

**Judge:** Hon. Beth Labson Freeman

**Conference Date:** September 4, 2026
**Conference Time:** 10:00 A.M.

## JOINT PRETRIAL STATEMENT

## I. THE ACTION

### A. The Parties

The parties to this action are Impossible LLC and Impossible Foods Inc. All parties have appeared in this action.

### B. Substance of the Action

The parties assume the Court's familiarity with the jury's original verdict and ensuing post-trial rulings and proceedings in this matter. In this retrial on punitive damages, Impossible LLC seeks an award of punitive damages in connection with its claim for infringement of unregistered trademarks under California law. To establish entitlement to punitive damages, Impossible LLC must prove the following by clear and convincing evidence:

#### 1. Punitive Damages; California Common Law

a. Defendant engaged in conduct with malice, oppression, or fraud committed by one or more officers, directors, or managing agents of Defendant who acted on behalf of Defendant; or

b. Defendant engaged in conduct with malice, oppression, or fraud that was authorized by one or more officers, directors, or managing agents of Defendant; or

c. One or more officers, directors, or managing agents of Defendant knew of the conduct constituting malice, oppression, or fraud and adopted or approved that conduct after it occurred.

(Source: Judicial Council of California Civil Jury Instruction No. 3945)

#### 2. Impossible LLC's Position

At the punitive damages retrial, Impossible LLC intends to prove that Impossible Foods acted with "oppression, fraud, or malice" under California Civil Code § 3294. A jury has already found that Impossible Foods willfully infringed Impossible LLC's unregistered trademark rights in IMPOSSIBLE in connection with apparel and recipes in the form of cookbooks. (Dkt. 459 at 3–4.) Willfulness means that Impossible Foods engaged in the infringing conduct with knowledge that its

use of the mark was likely to infringe Impossible LLC's trademark rights, or with reckless disregard for whether its conduct infringed those rights. (Dkt. 457 at 54.)

In addition to the evidence that led the jury to find willful infringement, Impossible LLC will demonstrate that punitive damages are appropriate under the oppression, fraud, and/or malice prongs of Civil Code Section 3294. Satisfaction of any of the prongs is sufficient to entitle Impossible LLC to punitive damages. *See, e.g.*, *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1024 (9th Cir.1985) ("[m]alicious, wanton or oppressive conduct may be found by wrongful conduct done willfully, intentionally and in reckless disregard of its possible injurious consequences."); *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1101 (N.D. Cal. 2014) (noting that "evidence that [defendant] continued to engage in his illegal conduct after receiving a cease and desist letter demanding that he cease using [plaintiff]'s registered trademark" was relevant to the willfulness state of mind determination); *Monster Energy Co. v. Integrated Supply Network, LLC*, 533 F. Supp. 3d 928, 935–36 (C.D. Cal. 2021) (finding that "Defendant acted with malice, oppression, or fraud by infringing Plaintiff's marks" based on trial evidence of executive statements regarding infringement and because it "continued to sell the infringing products after it received Plaintiff's cease and desist letters and after Plaintiff filed the instant lawsuit"); *City of Carlsbad v. Shah*, 850 F. Supp. 2d 1087, 1112 (S.D. Cal. 2012) (finding that "by clear and convincing evidence that [defendant] is guilty of fraud and malice as defined by Cal. Civ. Code § 3294 and punitive damages are warranted" because of defendant's continued to use and registration of domain names after plaintiff filed suit).

By way of example, and without limiting Impossible LLC's trial presentation, Impossible LLC will proffer evidence of Impossible Foods's: continuing and expanding infringement well after notice of Impossible LLC's superior rights (which includes recipes on its website, contrary to Impossible Foods's erroneous claim below); targeting of Impossible LLC through ongoing efforts to cancel Impossible LLC's trademarks outside of this litigation; fraud on the marketplace by offering nearly identical apparel products without modification, even after having received actual notice of its infringement; efforts and interest around obtaining trademark rights in and to infringing IMPOSSIBLE branded apparel products despite prior testimony that such articles and/or

markets were supposedly unimportant or irrelevant to its business; and misleading and/or fraudulent actions concerning domain names and social media handles.

Based on such evidence, the original jury's binding verdict as to the parties' respective claims and defenses, including as to Impossible Foods's liability for willful infringement, and the trial record as a whole, the jury may find or infer that Impossible Foods's conduct was intended to cause injury to Impossible LLC, was targeted at Impossible LLC, was despicable conduct that was carried out with a willful and conscious disregard of Impossible LLC's senior trademark rights, and/or that Impossible Foods engaged in despicable conduct that subjected Impossible LLC to cruel and unjust hardship in conscious disregard of its senior trademark rights. *See Colucci v. T-Mobile USA, Inc.*, 48 Cal. App. 5th 442, 455 (2020) ("Malice and oppression may be inferred from the circumstances of a defendant's conduct."); *HMS Cap., Inc. v. Laws. Title Co.*, 118 Cal. App. 4th 204, 218 (2004) ("Since parties rarely admit an improper motive, malice is usually proven by circumstantial evidence and inferences drawn from the evidence.").

**3. Impossible Foods's Position**

ILLC in its opposition to IF's JMOL identified eight grounds it claimed supported its contention that IF acted with "oppression, fraud, or malice", namely that IF: (1) knew of ILLC and its IMPOSSIBLE marks before IF began using the IMPOSSIBLE mark in connection with the accused products; (2) drew inspiration from ILLC's marketing; (3) launched products in overlapping categories; (4) failed to mitigate confusion; (5) filed a preemptive declaratory judgment action; (6) brought infringement, fraud, and abandonment claims; (7) continued infringing conduct during the litigation; and (8) expanded infringing conduct into new categories. Dkt. 512 at 34 (citing Dkt. 499 at 19). The Court held that "none of these eight grounds alone or in combination with one another supports punitive damages." Dkt. 512 at 34. Despite that finding, ILLC on retrial intends to rely on the very same grounds and the same evidence to support punitive damages at retrial. *See* Section B.2, *infra*. It also seeks to rely on evidence the Court has already indicated is improper for other reasons, namely that Impossible Foods sought to assert its rights at the TTAB, i.e., "its targeting of Impossible LLC through ongoing efforts to cancel Impossible LLC's trademarks outside of this litigation." ILLC may not use punitive damages to "punish [IF] for its legitimate litigation conduct."

Dkt. 512 at 35; *see Bosack v. Soward*, 586 F.3d 1096, 1105 (9th Cir. 2009) ("[A] defendant's trial tactics and litigation conduct may not be used to impose punitive damages in a tort action.").

ILLC also should not be permitted to rely on evidence on alleged evidence of "continuing and expanding" infringement. As explained in greater depth in Impossible Foods' Motion in Limine, doing so invites the jury to base a punitive award on conduct that has not been found infringing. For example, ILLC has added screenshots of IF's recipes website to its exhibit list, and has in correspondence accused IF of violating the injunction entered in this case by failing to take the website down. Exs. 763-767. But the jury's previous infringement finding was limited to the Cookbook; it never considered the recipes website. Nor has the Court found that the recipes website violates the injunction. If ILLC believes IF violated the injunction, the proper course is to seek relief from this Court—not to ask the punitive damages jury to adjudicate an alleged injunction violation and punish IF for it.

### C. Relief Sought

Impossible LLC seeks punitive damages under California Civil Code Section 3294 in an amount to be determined by the jury.

### D. Federal Jurisdiction and Venue

The parties incorporate by reference their prior joint pretrial statement regarding federal jurisdiction and venue. (*See* Dkt. 330 at 7.)

## II. FACTUAL BASIS OF THE ACTION

The parties incorporate by reference their prior joint pretrial statement regarding the undisputed facts. (*See id.* at 7–8.) The parties submit the following additional undisputed facts.

### A. Undisputed Facts[1]

[1] These facts are undisputed for purposes of the punitive retrial only; Impossible Foods in no way waives its right to appeal these or any other findings by the jury. Impossible Foods also does not concede that these undisputed facts, including paragraphs 6 and 7, are relevant or admissible in the retrial.

1. Impossible LLC acquired an unregistered trademark in IMPOSSIBLE in connection with apparel and recipes. (Dkt. 459 at 3–4.)

2. Impossible Foods infringed Impossible LLC's unregistered trademarks in IMPOSSIBLE in connection with apparel and recipes by Impossible Foods' use in connection with apparel and cookbooks. (*Id.*)

3. Impossible Foods's infringement was willful. (*Id.* at 5.)

4. Willful infringement means that Impossible Foods engaged in the infringing conduct with knowledge that its use of the mark was likely to infringe Impossible LLC's trademark rights, or with reckless disregard for whether its conduct infringed those rights. (Dkt. 457 at 54.)

5. The jury awarded $1.5 million in compensatory damages to Impossible LLC for corrective advertising in connection with Impossible Foods's infringement of Impossible LLC's unregistered trademark rights in apparel. (Dkt. 459 at 5.)

6. The jury found in favor of Impossible LLC and against Impossible Foods on Impossible Foods's claims for fraud and for trademark infringement against Impossible LLC. (*Id.* at 2, 6.)

7. The jury found in favor of Impossible LLC and against Impossible Foods on Impossible Foods's affirmative defenses that were tried to the jury, (*id.*), and the Court found in favor of Impossible LLC and against Impossible Foods on Impossible Foods's defense of laches. (Dkt. 492 at 10.)

**B. Disputed Facts**

1. Whether Impossible Foods infringed Impossible LLC's unregistered trademarks with intent to cause injury, or Impossible Foods's conduct was despicable and was done with a willful and knowing disregard of the rights or safety of another.

2. Whether Impossible Foods engaged in intentionally misrepresented or concealed a material fact known to Impossible Foods with the intention of harming Impossible LLC.

3. Whether Impossible Foods infringed Impossible LLC's unregistered trademarks in a manner that was despicable and subjected Impossible LLC to cruel and unjust hardship in knowing disregard of its rights.

4. Whether Impossible Foods should be punished for the infringement found by the jury and whether punitive damages are necessary to discourage similar conduct in the future.

## III. DISPUTED LEGAL ISSUES

### A. Issues Raised by Impossible LLC

Whether the original trial record was sufficient for a jury to find that Impossible Foods acted with oppression, fraud, or malice in infringing Impossible LLC's unregistered trademark in IMPOSSIBLE under California law.[2]

### B. Issues Raised by Impossible Foods

Whether Impossible LLC is permitted to rely on the same evidence it presented in the original trial to show Impossible Foods acted with oppression, fraud, or malice, when the Court has already determined that evidence is insufficient.

Whether Impossible LLC may seek punitive damages based on alleged infringement or other conduct that was not adjudicated as infringing in the original trial, including alleged post-verdict violations of the Court's injunction.

Whether Impossible LLC may rely on Impossible Foods' prosecution or defense of claims in this litigation or before the Trademark Trial and Appeal Board as a basis for punitive damages

---

[2] Impossible LLC acknowledges that the Court addressed this issue in its ruling on Impossible Foods's motion for a new trial. (Dkt. 512 at 37.) Impossible LLC includes this issue in the Joint Pretrial Statement and Order out of an abundance of caution to avoid any assertion of waiver.

where the Court has held that Impossible Foods may not be punished for legitimate litigation conduct.

## IV. ESTIMATE OF TRIAL TIME

The parties estimate they will need three trial days, inclusive of jury selection, to try Impossible LLC's punitive damages claim to the jury.

## V. TRIAL ALTERNATIVES AND OPTIONS

### A. Settlement Discussion

#### 1. Impossible LLC's Position

The parties attended court-ordered settlement conferences before Magistrate Judge Nathanael Cousins on January 22 and February 23, 2026. Impossible LLC and Joel Runyon attended with full settlement authority at both conferences. The case was not resolved at either settlement conference.

After the jury trial, Impossible LLC wrote Impossible Foods to inquire about settlement. Impossible Foods did not indicate an interest in exploring resolution. (*See* Dkts. 521-4, 521-5, 521-6, 521-7.) Subsequently, after the Court addressed Impossible Foods's post-trial motions, Impossible LLC proposed that the parties avoid the expense and burden of re-trial to the Court and parties by stipulating to an additional damages amount in favor of Impossible LLC while reserving all of Impossible Foods's rights and arguments to have such amount challenged in connection with any subsequent appeal of the original verdict (*i.e.*, in the unlikely event the Ninth Circuit overturns the jury verdict, the stipulated additional damages amount would fall as well). Impossible Foods did not respond to that proposal either.

As discussed *supra*, Impossible LLC believes the uncertainty caused by the outstanding fee petition is a threshold issue that is impeding the parties' ability to meaningfully discuss resolution of the case. (*See, e.g.,* 4/23/26 Tr. at 69–70; 7/23/26 Tr. at 72–73.) Impossible LLC remains willing to engage in settlement discussions at any time.

#### 2. Impossible Foods's Position

Impossible Foods has and intends to continue to approach settlement discussion in good faith. At this time, however, Impossible Foods does not believe settlement will be possible until

after resolution of the punitive retrial. The Court found that "none of" the grounds ILLC identified at the first trial "alone or in combination with one another supports punitive damages," Dkt. 512 at 34, and, as discussed above, ILLC has not identified any new, admissible evidence. Impossible Foods therefore believes it has a strong likelihood of prevailing at the retrial and will not be in a position to meaningfully evaluate settlement until after the retrial is complete.

### B. Trial Timing and Sequence

#### 1. Impossible LLC's Position

Impossible LLC believes that significant judicial, jury and party time and resources will be conserved by resolving its pending application for attorneys' fees before any retrial. Pursuant to the Court's request that such application be presented through noticed motion, it appears that the first available hearing on the issue is in January 2027, unless the Court orders otherwise. Impossible LLC has proposed, and is willing to confirm again here, that should the Court's ensuing fee award affirm all or most of Impossible LLC's documented fees and costs, Impossible LLC would likely waive a retrial on punitive damages.[3] If, however, the Court were to deny a substantial aspect of its fee petition, a retrial of punitive damages would likely be necessary to provide Impossible LLC with an opportunity to secure sufficient proceeds to account for the substantial time, resources, and harm incurred in connection with defending and prosecuting this five-plus year long dispute.

Impossible LLC therefore respectfully suggests that, as a matter of judicial economy, the Court consider either of the following sequencing suggestions: (1) shorten time on consideration of Impossible LLC's pending motion to allow for determination before the scheduled retrial, or (2) continue the trial date until such time as the attorney fee motion has been decided. If the Court would prefer that Impossible LLC submit either of these requests through a separate motion, it is ready to do so.

---

[3] In such event, and were Impossible Foods to then appeal the judgment and relevant Court rulings, Impossible LLC would reserve its rights of cross-appeal of the Court's Order vacating the original jury's punitive damages award (Dkt. 512).

2. **Impossible Foods's Position**

Impossible Foods will not object if Impossible LLC opts to waive its right to retrial of punitive damages. However, Impossible LLC has already once requested that the Court resolve attorneys' fees before the retrial, Dkt. 515, and the Court implicitly rejected that request, by setting the retrial for September.

**C. Amendments or Dismissals**

The parties do not propose amendments to the pleadings or dismissal of parties, claims, or defenses at this stage.

## VI. ADDITIONAL ISSUES

### A. Timely Production of an Updated Profit and Loss Statement

1. **Impossible LLC's Position**

Impossible LLC requested production of Impossible Foods's updated profit and loss statements no less than 21 days before trial. *See* Trial Ex. 2232. Judge van Keulen has already ruled that Impossible Foods "has a duty to supplement its 2024 profit and loss statement produced in response to Request for Production no. 138, which requested profit and loss statements from 2011 to the present." (Dkt. 393 at 1 [cleaned up].) Impossible Foods did not respond to three separate requests that it confirm it will produce updated profit and loss information sufficiently in advance of the retrial, only to recently claim that it did not believe any such information was available. Its refusal appears to be based on semantics, not substance, as it is not credible that a multi-billion dollar corporation has not tracked the revenues it has generated over the past eight months—whether or not that information appears in a finalized profit and loss statement. An interim financial update appears very likely to be obtainable, and consistent with Judge van Keulen's order, Impossible Foods should be directed to produce it no less than 21 days before the punitive damages retrial.

2. **Impossible Foods's Position**

Impossible LLC is seeking to engineer an issue where there is none. Impossible Foods in response to Judge van Keulen's order produced a profit and loss statement that included unaudited estimates for 2025, which was the most up to date information available at the time. As Impossible

Foods has informed Impossible LLC, there is no version of the profit and loss statement that is more current than the one Impossible Foods already produced. Impossible LLC's insistence that "nearly 8 months of financial data have been tracked by Impossible Foods since its last update" misunderstands Impossible Foods' obligation both under RFP No. 138 and general discovery rules. RFP No. 138 seeks "profit and loss statements from 2011 to the present." Impossible Foods has produced those. And under the discovery rules, "a party is not obligated to create a list that does not exist in response to a discovery request." *Tate v. Nakashyan*, 2025 WL 3467732, at *9 (E.D. Cal. Dec. 3, 2025). *See also Paramount Pictures Corp. v. Replay TV*, 2002 WL 32151632, at *2 (C.D. Cal. 2002) ("A party cannot be compelled to create, or cause to be created, new documents solely for their production").

## VII. BINDING EFFECT OF THE JOINT PRETRIAL STATEMENT AND ORDER

The foregoing admissions having been made by the parties, and the parties having specified the foregoing issues of fact and law remaining to be litigated, this order shall supplement the pleadings and govern the course of trial of this action, unless modified to prevent manifest injustice.

Dated: August 19, 2026

Respectfully submitted,

BRAUNHAGEY & BORDEN LLP

By: */s/ Adam S. Cashman*
Adam S. Cashman

*Attorneys for Impossible LLC*

Dated: August 19, 2026

DAVIS WRIGHT TREMAINE LLP

By: */s/ G. Roxanne Elings*
G. Roxanne Elings

*Attorneys for Impossible Foods Inc.*

**IT IS SO ORDERED.**

Dated: _______________, 2026

___________________________________
Honorable Beth Labson Freeman
United States District Judge