Adam S. Cashman, Esq. (SBN: 255063)
cashman@braunhagey.com
J. Noah Hagey, Esq. (SBN: 262331)
hagey@braunhagey.com
Greg Washington, Esq. (SBN: 318796)
gwashington@braunhagey.com
J. Tobias Rowe, Esq. (SBN: 305596)
rowe@braunhagey.com
Oliver McNicholas, Esq. (SBN: 363554)
omcnicholas@braunhagey.com
BRAUNHAGEY & BORDEN LLP
747 Front Street, 4th Floor
San Francisco, CA 94111
Telephone: (415) 599-0210

Marissa R. Benavides (*pro hac vice* admission)
benavides@braunhagey.com
BRAUNHAGEY & BORDEN LLP
200 Madison Avenue, 23rd Floor
New York, NY 10016
Telephone: (646) 829-9403

*Attorneys for Impossible LLC*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

IMPOSSIBLE FOODS INC.,

Plaintiff / Counter-Defendant,

v.

IMPOSSIBLE LLC,

Defendant / Counter-Plaintiff.

Case No. 5:21-cv-02419-BLF (SVK)

**IMPOSSIBLE LLC'S MOTION IN LIMINE TO PRECLUDE EVIDENCE, TESTIMONY, AND ARGUMENT REFERENCING IMPOSSIBLE LLC'S REVENUES OR PROFITS, OR MAKING IMPROPER ARGUMENT OR REFERENCE TO THE COMPENSATORY AWARD**

**Judge:** Hon. Beth Labson Freeman

**Conference Date:** September 4, 2026
**Conference Time:** 10:00 a.m.

**INTRODUCTION**

Impossible LLC respectfully moves *in limine* to exclude all evidence, testimony, and argument referencing or relying on Impossible LLC's revenues or profits at the upcoming retrial, and to further preclude any improper argument or suggestion that the compensatory award was a windfall or otherwise overcompensated Impossible LLC.

On March 23, 2026, the jury found that Impossible Foods willfully infringed Impossible LLC's trademarks and awarded Impossible LLC $1,500,000 in corrective-advertising damages. The next day, the jury awarded Impossible LLC $1,750,000 in punitive damages. (3/23/26 Trial Tr. at 1264:15–24; 3/24/26 Trial Tr. at 1306:25–1307:3.) The Court has since ordered a new trial limited to punitive damages, leaving the March 23 verdict—including the $1,500,000 compensatory award—undisturbed and final.

In preparing for the retrial, Impossible LLC asked Impossible Foods to agree that "neither side will introduce evidence, argument, or make reference to Impossible LLC's revenues or profits or expenditures with respect to the products at issue." (Cashman Decl. Ex. 1 (Aug. 19, 2026 2:44pm ET email from A. Cashman).) Impossible Foods declined, explaining that it may seek to use that evidence to argue "the nature and extent of the harm" Impossible Foods caused to Impossible LLC, and that "any punitive award must bear a reasonable relationship to th[at] harm." (Cashman Decl. Ex. 1 (Aug. 19, 2026 3:49pm ET email from R. Elings).) Similarly, when addressing a proposed stipulation not to impugn the compensatory award as a "windfall" or having "over-compensated" Impossible LLC, Impossible Foods agreed in principle but sought to reserve a right to argue that "punitive damages are unnecessary in light of the amount of the compensatory award or the nature and extent of the harm." (*See id.* Ex. 2 (Aug. 21, 2026 3:55pm ET email from M. Benavides).) But these are not proper or relevant purposes, since the jury's compensatory award fixed the "extent" of Impossible LLC's "harm," a determination the Court declined to disturb on Impossible Foods's renewed Motion for Judgment as a Matter of Law. (Dkt. 512.) That determination of the quantum of compensatory damages is therefore controlling here, and Impossible Foods may not collaterally attack that verdict or relitigate the issue by introducing

evidence or making references to Impossible LLC's financial performance, or by suggesting that the compensatory award was a "windfall" that "over-compensated" Impossible LLC.

**ARGUMENT**

The instruction given at the punitive damages phase directed the jury to consider three guideposts: (A) the reprehensibility of Impossible Foods's conduct; (B) whether there is "a reasonable relationship between the amount of punitive damages and Impossible LLC's harm"; and (C) "[i]n view of Impossible Foods['] financial condition, what amount is necessary to punish it". (3/23/26 Trial Tr. at 1290:20–1291:25.) None of these turn on Impossible LLC's revenue or profits—only guidepost (B) mentions "harm" at all, and it specifically connects the punitive damages to Impossible LLC's harm or actual damages. The jury has already directly addressed that issue through its compensatory verdict (*id.* at 1264:15–24), so no other financial information regarding Impossible LLC's harm is relevant or necessary to prove the entitlement to or amount of punitive damages. *See Torres v. Auto. Club of So. Cal.*, 15 Cal. 4th 771, 781 (1997), *as modified on denial of reh'g* (July 16, 1997) ("Upon a retrial of the issue of exemplary damages it is only necessary for the second jury to be advised of the amount of general damages already awarded in order that it may maintain a reasonable relation between such damages and the exemplary damages, if any, that it awards.").

This tracks the constitutional guideposts the instruction is drawn from: the ratio guidepost measures the punitive award against "the actual harm inflicted on the plaintiff," *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 580 (1996), and the compensatory award—not the plaintiff's revenue history—anchors that ratio, *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003). And guidepost (C) expressly references Impossible Foods's financial condition, not Impossible LLC's. (*See* 3/23/26 Trial Tr. at 1291:23–25 (reading jury instruction on punitive damages).)

Impossible Foods has nonetheless repeatedly shown that its purpose in seeking to use evidence of Impossible LLC's finances is to attack the amount of "the harm caused by the conduct at issue" (Cashman Decl. Ex. 1) and argue that "punitive damages are unnecessary" in light of the compensatory award. (*Id.* Ex. 2.) Indeed, even though Impossible Foods agreed to refrain from

characterizing the compensatory award as a "windfall" or "over-compensating" Impossible LLC, it refused to stipulate to that unless Impossible LLC ***also*** agreed that Impossible Foods was nonetheless free to argue that punitive damages were "unnecessary" in light of the compensatory award and the "nature and extent" of the harm. (*Id.*)

As evinced by this record, Impossible Foods is seeking to reprise its refrain from throughout this case that Impossible LLC has suffered no real harm because, among other things, its revenues are small and have fluctuated over time. (*See, e.g.*, 3/23/26 Trial Tr. at 1299:6–20 (arguing no evidence of lost sales and therefore no measurable damages); 4/23/26 Post-Trial Hr'g Tr. at 39:9–24 (arguing no evidence of sales to show harm for purpose of enhanced damages); Dkt. 480 at 5 (arguing Impossible LLC had minimal evidence of sales of the infringed products); Dkt. 498 at 22 (same); Dkt. 501 at 9 (same).) But arguments about the extent of harm have all been resolved by the jury, and now the Court, and are therefore irrelevant to the punitive damages retrial.

Indeed, evidence regarding the commercial success of Impossible LLC's infringed products is not a punitive damages argument; its true purpose is to collaterally attack the compensatory verdict by suggesting that the harm caused was minor, or at least less than the $1.5 million awarded, and that any punitive award should therefore be anchored to some lesser amount. In fact, suggesting a quantum of "harm" other than what the jury determined would improperly undermine the verdict by asking the new jury to reassess an issue that has already been resolved, on an incomplete record and without applicable instructions. *See Bullock v. Philip Morris USA, Inc.*, 159 Cal. App. 4th 655, 697 (2008) ("[T]he jury in the new trial on punitive damages need not make any finding with respect to liability in order to determine the proper measure of damages.") And even apart from that, any marginal relevance of Impossible LLC's finances is substantially outweighed by the risk of unfair prejudice, confusion of the issues, and undue delay. *See* Fed. R. Evid. 403. The parties have already tried the extent-of-harm question once, including through expert testimony and introduction of extensive business records (*see, e.g.,* 3/16/26 Trial Tr. at 857–58, 889, 910–14 (Plumpe); *id.* at 968–1018 (Palmatier)); re-litigating that issue either directly or implicitly at a

limited retrial would only confuse the jury, waste time, and invite error and undue prejudice to Impossible LLC.

Similarly, Impossible Foods's stated intent to argue that punitive damages are not warranted because the "actual" harm was small and Impossible LLC was already compensated for it does not align to any of the factors listed in the agreed jury instruction. (*See* Dkt. 458 (Jury Instruction—Punitive Phase).) The purpose of punitive damages is to punish and deter, not compensate, so arguments about whether Impossible LLC was already compensated for its harm are irrelevant here. And Impossible Foods's claims that it must be free to make arguments about "the amount of the compensatory award or the nature and extent of the harm" are, once again, just an effort to relitigate objections to the fact and amount of the compensatory award that have already been rejected multiple times. The Court should reject these efforts once again.

**CONCLUSION**

For the foregoing reasons, Impossible LLC respectfully requests that the Court exclude all evidence, testimony, and argument referencing or relying on Impossible LLC's revenues or profits, and instruct counsel not to allude to any such evidence or argument in the jury's presence, and further, to preclude Impossible Foods from portraying the compensatory verdict as "excessive" or as having otherwise "over-compensated" Impossible LLC, and from introducing evidence or argument regarding the nature and extent of the harm to Impossible LLC.

Dated: August 21, 2026

Respectfully submitted,

BRAUNHAGEY & BORDEN LLP

By: */s/ Adam S. Cashman*
Adam S. Cashman

*Attorneys for Impossible LLC*