J. Noah Hagey, Esq. (SBN: 262331)
hagey@braunhagey.com
Adam S. Cashman, Esq. (SBN: 255063)
cashman@braunhagey.com
Greg Washington, Esq. (SBN: 318796)
gwashington@braunhagey.com
J. Tobias Rowe, Esq. (SBN: 305596)
rowe@braunhagey.com
Oliver McNicholas, Esq. (SBN: 363554)
omcnicholas@braunhagey.com
BRAUNHAGEY & BORDEN LLP
747 Front Street, 4th Floor
San Francisco, CA 94111
Telephone: (415) 599-0210

Marissa R. Benavides (*pro hac vice* admission)
benavides@braunhagey.com
BRAUNHAGEY & BORDEN LLP
200 Madison Avenue, 23rd Floor
New York, NY 10016
Telephone: (646) 829-9403

*Attorneys for Impossible LLC*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

IMPOSSIBLE FOODS INC.,

Plaintiff / Counter-Defendant,

v.

IMPOSSIBLE LLC,

Defendant / Counter-Plaintiff.

Case No. 5:21-cv-02419-BLF (SVK)

**IMPOSSIBLE LLC'S NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND LITIGATION EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

**Judge:** Hon. Beth Labson Freeman
**Date:** January 7, 2027
**Time:** 9:00 a.m.

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on January 7, 2027 at 9:00 a.m., or as soon as thereafter as the matter may be heard by the Honorable Beth Labson Freeman in the United States District Court, Northern District of California, located at the United States District Court, 280 South 1st Street, San Jose, CA 95113, Courtroom 1, 5th Floor, Defendant and Counter-Plaintiff Impossible LLC will and hereby does move the Court, pursuant to Federal Rule of Civil Procedure 54(d)(2), 15 U.S.C. § 1117(a), and the Court's May 8, 2026 Order (Dkt. 492) and July 29, 2026 Order (Dkt. 512), for an order awarding Impossible LLC $7,624,556.27 in reasonable attorneys' fees incurred by BraunHagey & Borden LLP; $710,065.29 in reasonable attorneys' fees incurred by Wiley Rein LLP, and $897,043.46 in non-taxable litigation expenses, for a total award of $9,231,665.02, plus post-judgment interest.

This Motion is made following the Court's determination that this is an "exceptional case" under the Lanham Act entitling Impossible LLC to recover its reasonable attorneys' fees (Dkt. 492 at 14), and the Court's subsequent direction that Impossible LLC document the amount of its recoverable fees (Dkt. 512 at 40). This Motion and the accompanying declarations are submitted in accordance with the procedure set forth in the Court's Standing Order for Civil Cases § VII.

This Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the previously-filed Declarations of Adam S. Cashman (Dkt. 521-1), David E. Weslow (Dkt. 521-8), and Joel Runyon (Dkt. 521-11), the exhibits attached thereto, the trial proceedings and evidence in this action, the files and records in this action, and upon any further evidence and argument that the Court may receive at or before the hearing.

Dated: August 21, 2026

Respectfully submitted,

BRAUNHAGEY & BORDEN LLP

By: */s/ Adam S. Cashman*
Adam S. Cashman

*Attorneys for Impossible LLC*

# TABLE OF CONTENTS

NOTICE OF MOTION .......... 1

INTRODUCTION .......... 1

BACKGROUND .......... 2

A. Wiley Represents Impossible LLC in Protecting Its Trademarks .......... 2

B. Impossible LLC Retains BHB as Litigation Counsel .......... 3

C. Impossible Foods's Litigation Tactics Required Extensive Substantive Responses.. .......... 3

D. Impossible LLC Prevails at Trial .......... 4

E. Impossible LLC's Efforts to Resolve the Amount of Fees by Agreement .......... 5

ARGUMENT .......... 6

I. THE LODESTAR AMOUNT OF $8,334,622.56 IN FEES IS REASONABLE .......... 7

A. Impossible LLC Is Entitled to Recover Fees Incurred on the Exceptional Claims .......... 7

B. The Hours Expended Were Reasonable and Necessary .......... 8

C. The Hourly Rates of Impossible LLC's Counsel Are Reasonable .......... 12

II. IMPOSSIBLE LLC'S VOLUNTARY REDUCTIONS ADDRESS ANY POTENTIAL OBJECTION .......... 14

III. IMPOSSIBLE LLC SHOULD BE ALLOWED TO RECOVER ITS LITIGATION EXPENSES .......... 15

A. Non-Taxable Expenses .......... 15

1. Legal Standard .......... 15

2. Summary of Non-Taxable Expenses ........................................................ 15

B. Expert Witness Fees ........................................................................................ 16

IV. IMPOSSIBLE LLC DILIGENTLY ATTEMPTED TO RESOLVE THE AMOUNT OF FEES BEFORE SEEKING COURT INTERVENTION .......................................... 17

CONCLUSION ............................................................................................................ 17

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES


*Arcona, Inc. v. Farmacy Beauty, LLC*,
No. 21-55678, 2022 WL 1486822 (9th Cir. May 11, 2022)........ 8

*Better Meat Co. v. Emergy, Inc.*,
2024 WL 2883533 (E.D. Cal. June 7, 2024)........ 13

*Board of Trustees v. Piedmont Lumber & Mill Company*,
2016 WL 4446993 (N.D. Cal. Aug. 24, 2016)........ 9

*Cabrales v. Cnty. of Los Angeles*,
864 F.2d 1454 (9th Cir. 1988)........ 12

*Carson v. Billings Police Dep't*,
470 F. 3d 889 (9th Cir. 2006)........ 12

*Cataphora Inc. v. Parker*,
848 F. Supp. 2d 1064 (N.D. Cal. 2012)........ 9, 10

*City of Burlington v. Dague*,
505 U.S. 557 (1992)........ 6

*Cleary v. News Corp.*,
30 F.3d 1255 (9th Cir. 1994)........ 8

*Dropbox, Inc. v. Thru Inc.*,
No. 15-CV-01741-EMC, 2017 WL 914273 (N.D. Cal. Mar. 8, 2017)........ 17

*Earthquake Sound Corp. v. Bumper Indus.*,
352 F.3d 1210 (9th Cir. 2003)........ 6

*Farrar v. Hobby*,
506 U.S. 103 (1992)........ 11

*Fleming v. Impax Labs'ys Inc.*,
No. 16-CV-06557-HSG, 2022 WL 2789496 (N.D. Cal. July 15, 2022)........ 14

*Gates v. Deukmejian*,
987 F.2d 1392 (9th Cir. 1992)........ 6

*Gilead Scis., Inc. v. Merck & Co.*,
No. 13-CV-04057-BLF, 2017 WL 3007071 (N.D. Cal. July 14, 2017)........ 12

*Grove v. Wells Fargo Fin. Cal., Inc.*,
606 F.3d 577 (9th Cir. 2010)........ 15

*Impossible Foods Inc. v. Impossible X LLC*,
80 F.4th 1079 (9th Cir. 2023) .......... 3

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
2672 CRB (JSC), 2017 WL 1047834 (N.D. Cal. Mar. 17, 2017) .......... 13

*Kerr v. Screen Extras Guild, Inc.*,
526 F.2d 67 (9th Cir. 1975) .......... 6

*Koeppen v. Carvana, LLC*,
No. 21-CV-01951-TSH, 2024 WL 3925703 (N.D. Cal. Aug. 22, 2024) .......... 13

*Love v. Associated Newspapers, Ltd.*,
611 F.3d 601 (9th Cir. 2010) .......... 7, 8

*McGrath v. Cnty. of Nevada*,
67 F.3d 248 (9th Cir. 1995) .......... 9

*Monster Energy Co. v. Vital Pharms., Inc.*,
2023 WL 8168854 (C.D. Cal. Oct. 6, 2023) .......... 7

*Moore v. James H. Matthews & Co.*,
682 F.2d 830 (9th Cir. 1982) .......... 12

*Moreno v. City of Sacramento*,
534 F.3d 1106 (9th Cir. 2008) .......... 8, 9, 12

*OpenGov, Inc. v. GTY Tech Holdings Inc.*,
No. 18-CV-07198-JSC, 2019 WL 2010707 (N.D. Cal. May 7, 2019) .......... 13

*Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*,
20 F.4th 466 (9th Cir. 2021) .......... 13

*Oracle USA, Inc. v. Rimini St., Inc.*,
324 F. Supp. 3d 1157 (D. Nev. 2018) .......... 7

*Paige LLC v. Shop Paige LLC*,
No. 2:22-CV-07800-HDV (SKx), 2024 WL 3594450 (C.D. Cal. July 10, 2024) .......... 16, 17

*QuickLogic Corp. v. Konda Techs., Inc.*,
21-CV-04657-EJD, 2025 WL 1507097 (N.D. Cal. May 27, 2025) .......... 13

*Stone Brewing Co., LLC v. Molson Coors Beverage Co. USA LLC*,
No. 23-3142, 2024 WL 5244556 (9th Cir. Dec. 30, 2024) .......... 13

*Stonebrae, L.P. v. Toll Bros.*,
No. C-08-0221-EMC, 2011 WL 1334444 (N.D. Cal. Apr. 7, 2011) .......... 12

*Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp., Inc.*,
No. 15 CIV. 211 (LGS), 2024 WL 1116090 (S.D.N.Y. Mar. 13, 2024) .......... 7

*Tari Labs, LLC v. Lightning Labs, Inc.*,
2023 WL 2480739 (N.D. Cal. Mar. 13, 2023) .......... 13

*Vineyard House, LLC v. Constellation Brands U.S. Operations, Inc.*,
619 F. Supp. 3d 970 (N.D. Cal. 2021) .......... 6

*Yamada v. Nobel Biocare Holding AG*,
825 F.3d 536 (9th Cir. 2016) .......... 6

*Yuga Labs, Inc. v. Ripps*,
2024 WL 489248 (C.D. Cal. Jan. 11, 2024) .......... 7

**STATUTES**

15 U.S.C. § 1117(a) .......... 1, 15

**RULES**

Federal Rule of Civil Procedure 54(d)(2) .......... 1

Federal Rule of Civil Procedure 59 .......... 4

## INTRODUCTION

After a six-day jury trial and four days of deliberations, the jury found unanimously that Plaintiff and Counter-Defendant Impossible Foods Inc. ("Impossible Foods") willfully infringed the trademarks of Impossible LLC—a company founded and solely owned by Joel Runyon—awarding $1.5 million in corrective advertising damages and finding that Impossible Foods acted with "oppression, fraud, or malice," meriting an additional $1.75 million in punitive damages. (Dkts. 459, 460.) The Court thereafter found this an "exceptional case" under the Lanham Act, and ruled that Impossible LLC is entitled to recover its reasonable attorneys' fees, crediting evidence that Impossible Foods infringed willfully, that its abandonment defense and its claims for trademark infringement (and federal and common law unfair competition) were "exceptionally weak," and that "considerations of fairness and compensation favor awarding attorneys' fees." (Dkt. 492 at 14.) When Impossible Foods moved for judgment as a matter of law, a new trial, and reconsideration of the exceptional-case finding, the Court denied relief and observed that Impossible Foods's own briefing—in which Impossible Foods made a "bald mischaracterization of the Fees Order" and submitted a belated eleven-page "appendix" of cherry-picked evidence—"only confirms the exceptional manner in which it has litigated this case." (Dkt. 512 at 38.) The Court then ordered Impossible LLC to "file a declaration regarding the amount of attorneys' fees" within fourteen days. (*Id.* at 40.)

Impossible LLC respectfully submits this Motion in response to that Order, as well as the Court's subsequent Order directing Impossible LLC to submit its request in the form of a noticed motion. (Dkt. 524.) As explained herein, Impossible LLC incurred substantial attorneys' fees and costs in the course of successfully litigating its claims seeking redress for Impossible Foods's willful infringement, and defending against Impossible Foods's "exceptionally weak" claims of infringement, unfair competition, and abandonment. As is common in multi-year, hard-fought IP cases, the total fees and costs reflect the enormous effort required to bring those claims through extensive discovery and trial against a multi-billion dollar company that was represented by four different AmLaw 100 law firms and that leveraged an insurance policy to prolong the case, expand its scope, and increase Impossible LLC's litigation costs. In total, and following apportionment,

Impossible respectfully requests an award of $7,624,556.27 in fees for the work of BraunHagey & Borden LLP ("BHB"), $710,065.29 in fees for the work of Wiley Rein LLP ("Wiley"), and $897,043.46 in non-taxable litigation expenses—a total of $9,231,665.02.

As detailed below, the requested lodestar rests on contemporaneous billing records, rates this District has repeatedly approved for comparable work, voluntary reductions Impossible made on its own initiative to streamline the Court's review, and a result—including a willful-infringement verdict, significant compensatory damages, and a permanent injunction—that supports the reasonableness of the effort required to obtain it.

It is also notable here that Impossible LLC worked hard to try to avoid the need for a contested fee petition. At the Court's direction, it sought to explore resolution first by offering to discount its fee request by 15% to account for Impossible Foods's potential objections. Impossible Foods declined without offering any substantive response. Impossible LLC also repeatedly requested that Impossible Foods disclose the quantum of its own fee and cost expenditures in an effort to understand why Impossible Foods was apparently claiming that Impossible LLC's fees were unreasonable, since Impossible Foods's own fees and costs would seem to provide at least one data point relevant to that exercise. Here again, Impossible Foods declined and again offered no compromises or suggestions of its own. Left without any other option, Impossible LLC accordingly brings this Motion and respectfully requests that it be granted in full.

## BACKGROUND

The jury's verdict finding Impossible Foods liable for infringement of Impossible LLC's trademarks was nearly six years in the making. Counsel's representation of Impossible LLC spans pre-litigation settlement efforts, a jurisdictional appeal, multiple rounds of amended pleadings, dozens of substantive discovery, dispositive, and *Daubert* motions, and, ultimately, a two-week jury trial before this Court, together with multiple rounds of post-trial briefing. All in, Impossible LLC incurred 11,832 hours of counsel time and more than $9 million in fees and expenses to vindicate its trademark rights in this Court.

### A. Wiley Represents Impossible LLC in Protecting Its Trademarks

In November 2020, after receiving notice of Impossible Foods' trademark application for

recipes and cookbooks, Impossible LLC—through its counsel Wiley Rein LLP ("Wiley")—sent a cease-and-desist letter raising concerns about Impossible Foods' encroachment into apparel and cookbooks—two areas where Impossible LLC had long held priority of use. (Trial Exs. 2183, 2053-55.) When Impossible Foods did not respond to the letter, Impossible LLC opposed Impossible Foods's application at the PTO. (Tr. 347:15-18.) Impossible Foods responded by filing this case, initially as a single claim for declaratory judgment. (Dkt. 1; Dkt. 36-1, Ex. 2)

Wiley sought dismissal of the action on behalf of Impossible LLC. On November 16, 2021, the Court granted Impossible LLC's motion to dismiss for lack of personal jurisdiction. (Dkt. 50.) On September 12, 2023, after an appeal by Impossible Foods, the Ninth Circuit reversed and remanded for consideration of the merits of Impossible Foods' claims. *Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1083 (9th Cir. 2023).

### B. Impossible LLC Retains BHB as Litigation Counsel

In January 2025, following a remand of this action from the Ninth Circuit, Impossible LLC retained BHB as trial counsel. At the same time, Impossible Foods dramatically expanded the scope of its case by amending its pleading three times. (*See* Dkts. 78, 103, 151.) In its Second Amended Complaint, after the litigation had already been pending for over three years, Impossible Foods named Mr. Runyon as a Defendant in his personal capacity and expanded the case by adding affirmative claims for Federal Trademark Infringement, Federal Unfair Competition, and California Common Law Unfair Competition. (Dkt. 103.) Impossible Foods alleged that Impossible LLC's sleep and energy supplements infringed Impossible Foods's trademarks for plant-based meats and were likely to cause consumer confusion. (*Id.* at 14-16.) In its Third Amended Complaint, after the litigation had been pending for four years, Impossible Foods added additional claims for cancellation of Impossible LLC's trademarks under the theory that the marks were acquired through fraud on the PTO or had been abandoned. (Dkt. 151 at 35-37.)

### C. Impossible Foods's Litigation Tactics Required Extensive Substantive Responses

Impossible Foods's litigation decisions have required Impossible LLC's counsel to devote substantial additional time and effort to adequately protect Impossible LLC's interests.

For example, even as this litigation was ongoing, on July 3, 2025, Impossible Foods filed a duplicative petition with the Trademark Trial and Appeal Board ("TTAB") seeking to cancel the same marks that were already at issue in this case. (Dkt. 476-02 ¶ 5.) As a result, Impossible LLC was required to respond to a separate proceeding asserting the same claims and seeking the same relief that Impossible Foods sought in this action. (*Id.* ¶ 10.) Even now, as Impossible LLC's trademark rights have been settled by a jury, thereby precluding further litigation of the same issues in a collateral proceeding, Impossible Foods has refused to withdraw its TTAB petition and instead forced yet more unnecessary litigation. (Dkt. 476-2 ¶ 13.)

Impossible LLC also invested significant resources in preparing for and participating in *five* formal efforts at mediation and settlement conferences with the belief that Impossible Foods was prepared to engage in good faith negotiations. But no settlement resulted. (Dkt. 476-02 ¶ 12.) Rather, as explained previously (Dkt. 476 at 5), from the time BHB joined as Impossible LLC's counsel in January 2025 to present post-trial proceedings, Impossible Foods has never made any settlement offer, and instead has opted for diversionary and fruitless tactics (*e.g.*, proposing a mediation as a tool to modify the case schedule, then withdrawing from it after it had been scheduled (Dkt. 476-09 ¶ 2.)).

**D. Impossible LLC Prevails at Trial**

After six trial days and four days of deliberations, the jury returned a unanimous verdict in favor of Impossible LLC on its Lanham Act and California law claims for infringement of its registered and unregistered trademarks, found that Impossible Foods's infringement was willful, and returned a damages award of $1.5 million in corrective advertising. (Dkt. 459.) The jury also found that Impossible Foods acted with "oppression, fraud, or malice" and awarded $1.75 million in punitive damages. (Dkts. 459, 460.) The jury unanimously rejected Impossible Foods's claims, finding that Impossible LLC did not infringe, commit fraud on the USPTO, or abandon any of its own trademarks. (Dkt. 459.) The Court has since ordered a new trial on punitive damages under Federal Rule of Civil Procedure 59. (Dkt. 516.)

In its Order dated May 8, 2026 (the "Fee Order"), the Court deemed this an "exceptional case" under the Lanham Act and ruled that Impossible LLC is entitled to recover its "reasonable

attorneys' fees" in the case. (Dkt. 492 at 14.) In support of its exceptional case finding, the Court "agree[d] with the jury that there is evidence that Impossible [Foods] acted willfully" in infringing Impossible LLC's trademarks, found that Impossible Foods's "abandonment defense and affirmative infringement claims were exceptionally weak, particularly as presented to the jury at trial," found that "considerations of fairness and compensation favor awarding attorneys' fees," and "considered the totality of the case, including by weighing the seriousness of Impossible Foods's conduct and its willful infringement[.]" (*Id.*)

After Impossible Foods filed a motion for judgment as a matter of law, new trial, and to alter or amend the Fee Order, the Court upheld the jury's verdict and compensatory damages award and reaffirmed its fee award. In doing so, the Court noted that "Impossible Foods's briefing on this issue only confirms the exceptional manner in which it has litigated this case," as that briefing included both a "bald mischaracterization" of the Court's Fee Order and an untimely eleven-page appendix of evidence, among other things. (Dkt. 512 at 38.) The Court then directed Impossible LLC to "file a declaration regarding the amount of attorneys' fees within fourteen days" from July 29, 2026. (*Id.* at 40.) Impossible LLC did so (Dkt. 521-1), and on August 18, 2026, the Court ordered Impossible LLC to file its fee request as a noticed motion. (Dkt. 524.). Impossible LLC has done so, selecting the earliest available hearing date.

**E. Impossible LLC's Efforts to Resolve the Amount of Fees by Agreement**

Before filing this Motion, Impossible LLC made two separate written efforts to resolve the amount of the fee award without further motion practice. (Dkt. 521-1 ¶¶ 72-75.) On May 18, 2026, counsel for Impossible LLC wrote to Impossible Foods's counsel offering to stipulate to a reduced fee and cost award of $7,267,500—representing a 15% discount from the more than $8.55 million in fees and costs Impossible had incurred through April 30, 2026—while reserving Impossible Foods's other arguments concerning the verdict and any appeal. (*See* Dkt. 521-4.) Impossible Foods declined, responding on May 27, 2026 that it would not stipulate absent supporting billing records, and separately disputing Impossible's characterization of the parties' settlement history. (*See* Dkt. 521-5.) On June 11, 2026, Impossible LLC's counsel wrote again, clarifying that its May 18 letter had not "demanded" $8.5 million but had accurately described fees and costs already

incurred, and that the 15% discount Impossible LLC was offering as a compromise would have saved Impossible Foods more than $1.3 million and the burden of a contested fee motion. (*See* Dkt. 521-6.) Impossible Foods again declined to stipulate, responding on June 18, 2026 that it would evaluate any fee application once Impossible provided supporting materials. (*See* Dkt. 521-7.) Notably, those materials have now been in Impossible Foods's possession for more than one week, yet it has made no offer of compromise.

Impossible LLC also attempted to resolve these issues without a contested fee motion by asking Impossible Foods to share its total fees and costs incurred, so that it could understand any objection or claim that Impossible LLC's fees or rates were unreasonable. (*See* Dkt. 521-4.) Understanding Impossible Foods's own fee and cost expenditures would also provide another data point that could be useful in an attempt to reach a negotiated agreement; however Impossible Foods declined both such requests, and made no counteroffer. (*See* Dkts. 521-5, 521-7.)

## ARGUMENT

Impossible LLC should be awarded the full amount requested under prevailing Ninth Circuit law. To "calculate reasonable attorneys' fees in a case brought under the Lanham Act, courts utilize the lodestar method." *Vineyard House, LLC v. Constellation Brands U.S. Operations, Inc.*, 619 F. Supp. 3d 970, 975 (N.D. Cal. 2021); *accord Earthquake Sound Corp. v. Bumper Indus.*, 352 F.3d 1210, 1214 (9th Cir. 2003). "The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536, 546 (9th Cir. 2016). There is a "strong presumption that the lodestar represents the reasonable fee." *City of Burlington v. Dague*, 505 U.S. 557, 562-564 (1992) (internal quotations omitted). Additionally, "[i]n rare cases, a district court may make upward or downward adjustments to the presumptively reasonable lodestar on the basis of those factors set out in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69–70 (9th Cir. 1975) … that have not been deemed subsumed in the lodestar calculation." *Gates v. Deukmejian*, 987 F.2d 1392, 1402 (9th Cir. 1992) (listing factors).

Under this standard, Lanham Act cases deemed "exceptional" regularly result in substantial fee awards, especially after trial. *See, e.g.*, *Monster Energy Co. v. Vital Pharms., Inc.*, 2023 WL 8168854, at *22 (C.D. Cal. Oct. 6, 2023), *as clarified*, 2023 WL 9419597, at *9 (C.D. Cal. Dec. 14, 2023), *and aff'd*, 2025 WL 1111495 (9th Cir. Apr. 15, 2025) (awarding $16.7 million in fees on Lanham Act claims following trial); *Yuga Labs, Inc. v. Ripps*, 2024 WL 489248, at *1 (C.D. Cal. Jan. 11, 2024), *report and recommendation adopted*, No. 2:22-CV-04355-JFW-JEMx at ECF No. 448 (awarding $6.9 million in fees on Lanham Act claims following summary judgment); *Oracle USA, Inc. v. Rimini St., Inc.*, 324 F. Supp. 3d 1157, 1172 (D. Nev. 2018), *aff'd award at*, 783 F. App'x 707 (9th Cir. 2019) (affirming award of $28.5 million in attorneys' fees for copyright infringement after more than 5 years of litigation through trial); *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp., Inc.*, No. 15 CIV. 211 (LGS), 2024 WL 1116090, at *8 (S.D.N.Y. Mar. 13, 2024) (awarding $14.5 million in attorneys' fees in trade secret and copyright case after five years of litigation through trial and appeal).

## I. THE LODESTAR AMOUNT OF $8,334,622.56 IN FEES IS REASONABLE

Impossible LLC seeks a total of $8,334,622.56 in fees for 11,633 hours of work by its counsel across five years of litigation and trial, where Impossible LLC prevailed on its Lanham Act claims, and defeated the Lanham Act claims and abandonment defense asserted by Impossible Foods. Both the hours spent and the hourly rates charged by Impossible LLC's counsel are reasonable, and the Court should approve them in full.

### A. Impossible LLC Is Entitled to Recover Fees Incurred on the Exceptional Claims

The Court's Fee Order deemed this an "exceptional case" with respect to both Impossible LLC's successful Lanham Act claims and Impossible Foods's unsuccessful Lanham Act claims. (Dkt. 492 at 14.) Impossible LLC is therefore entitled to recover fees reasonably incurred prosecuting and defending each of the parties' respective Lanham Act claims, as well as other claims that are "inextricably intertwined" with them. *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 614 (9th Cir. 2010). This includes fees incurred defeating Impossible Foods's declaratory judgment claim for non-infringement and its claims for cancellation of Impossible LLC's

trademark registrations, since those claims were in substance defenses to Impossible LLC's infringement claim. *See Arcona, Inc. v. Farmacy Beauty, LLC*, No. 21-55678, 2022 WL 1486822, at *2 (9th Cir. May 11, 2022) (affirming award of fees for "non-infringement and cancellation" counterclaims). It also includes Impossible LLC's Lanham Act claim for cancellation of Impossible Foods's trademark application related to recipes, which turned on a likelihood of confusion with Impossible LLC's senior trademark rights as to recipes and cookbooks. *See Love*, 611 F.3d at 616 (affirming district court grant of attorneys' fees on all claims at issue, including those with no independent basis for fee award, where claims were "inexorably intertwined").

Impossible LLC is also entitled to recover fees on its claim for common law trademark infringement under California law to the extent such fees are "inextricably intertwined" with the Lanham Act claims. *Love*, 611 F.3d at 614 (affirming award of fees for intertwined Lanham Act and California law claims). Here, nearly all fees incurred in connection with the California claim were "inextricably intertwined" with Impossible LLC's Lanham Act infringement and unfair competition claims because the claims depend on the same material facts and evidence, share the same elements, and are "substantially congruent" as a matter of law. *See Cleary v. News Corp.*, 30 F.3d 1255, 1263 (9th Cir. 1994); (*see* Dkt. 457 (Jury Instructions) at 36, 37, 41, 52, 53 (setting forth near-identical elements for respective claims); Dkt. 459 (Jury Verdict) at 2 (providing a single verdict for "Trademark Infringement and Unfair Competition Under Federal and California Law"); Dkt. 276-02 (Impossible Foods Opp. Mot. Partial. Summ. J.) at 17 (arguing same)). The only possible exceptions are (1) Impossible LLC's motion to compel discovery of Impossible Foods's financial information for purposes of punitive damages, and (2) trial time spent on the amount of punitive damages. (Dkt. 521-1 ¶ 54.) Impossible LLC has therefore excluded hours spent on these tasks from its fee request (*id.*), so the remaining fees are fully recoverable.

**B. The Hours Expended Were Reasonable and Necessary**

Impossible LLC's total requested hours for this matter—just over 11,000 hours across more than five years of hard-fought litigation on multiple fronts—are reasonable. A "reasonable" number of hours is the time that "could reasonably have been billed to a private client." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). The Ninth Circuit instructs that "[b]y and large,

the court should defer to the winning lawyer's professional judgment as to how much time [they] w[ere] required to spend on the case; after all, [they] won, and might not have, had [they] been more of a slacker." *Id*. at 1112. The party opposing a fee request "bears the burden of providing specific evidence to challenge the accuracy and reasonableness of the hours charged." *McGrath v. Cnty. of Nevada*, 67 F.3d 248, 255 (9th Cir. 1995).

BHB recorded 10,654.6 hours on this matter, all memorialized in six-minute increments pursuant to the firm's ordinary billing practices, for total fees of $7,792,407.25. (Dkt. 521-1 ¶¶ 33, 46, Ex. 1.) BHB wrote off and did not bill Impossible LLC for approximately 200 hours of this time, representing $132,103.25 in uncharged fees. BHB ultimately billed Impossible LLC a total of 10,455.4 hours across all firm timekeepers for a total of $7,660,304.00 in fees; however, for reasons set forth *infra*, Impossible LLC seeks a reduced total of $7,624,556.27 in fees for BHB's work. (Dkt. 521-1 ¶ 18.) Wiley recorded 1,374.6 hours over the nearly six years the case has been pending, also billed in 0.1-hour increments, for total fees of $710,065.29. (Dkt. 521-8 ¶¶ 10, 12, Ex. 2.) These hours were reasonable for a number of reasons, including because Impossible LLC was required to litigate two cases at once—defending against Impossible Foods's claims (which metastasized unnecessarily throughout the litigation) and seeking relief for Impossible Foods's willful infringement of Impossible LLC's trademark rights. (*Id*. ¶¶ 35-43.) The complexity of the case demonstrates that the hours incurred by Impossible LLC were reasonable. *See Board of Trustees v. Piedmont Lumber & Mill Company*, 2016 WL 4446993, at *3 (N.D. Cal. Aug. 24, 2016) ("The Court finds that the number of hours was reasonable given . . . the complexity of the legal issues presented.").

Impossible LLC's hours spent were especially reasonable in light of Impossible Foods's aggressive conduct of the litigation. A party "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by [its opponent] in response." *Cataphora Inc. v. Parker*, 848 F. Supp. 2d 1064, 1070 (N.D. Cal. 2012). Here, Impossible Foods was the main driver of litigation expenses throughout this case: it raced to the courthouse to file suit in response to a single letter, aggressively litigated nearly every issue for more than four years using three of the largest law firms in the country, and then tapped an insurance policy to supercharge its ramp up to trial and

insulate it from the financial consequences of its litigation decisions. (Dkt. 521-1 ¶¶ 37-39.) Impossible Foods also filed suit in a distant forum, leading the Court to grant Impossible LLC's motion to dismiss for lack of jurisdiction. (*Id.* ¶ 37.) After an appeal and remand, Impossible Foods amended its complaint to assert improbable claims that Impossible LLC's nutritional supplements infringed Impossible Foods's trademark rights for plant-based meats, which the Court found to be "exceptionally weak" following its observation of Impossible Foods's showing at trial. (Dkt. 492 at 14.) After discovery was nearly complete on those claims, Impossible Foods amended its complaint again to assert new claims for cancellation of five of Impossible LLC's trademark registrations based on allegations of abandonment and fraud, both of which were roundly rejected by the jury at trial. (Dkt. 459.)

Discovery in this case was commensurately broad and burdensome. Altogether, Impossible Foods served 108 Requests for Production, 25 interrogatories, 69 requests for admission, and eight subpoenas. (Dkt. 521-1 ¶ 37.) It took 11 hours of depositions of Impossible LLC-affiliated witnesses over four different sessions, despite that Joel Runyon was Impossible LLC's sole employee. (*Id.*) Impossible Foods filed five motions to compel, none of which was granted in full. (*Id.*) It also filed a motion for summary judgment, *Daubert* motions to exclude Impossible LLC's experts and damages theories, motions *in limine*, and a host of trial briefs, culminating in a six-day jury trial where the jury rejected its claims for infringement and cancellation. (*Id.*) Impossible LLC's counsel diligently defended it against all of Impossible Foods's claims while pursuing Impossible LLC's own claims, to protect Impossible LLC's ownership of its trademarks and its ability to conduct business under its own name. Having chosen to pursue an aggressive litigation strategy designed to place maximum financial pressure on a smaller foe, Impossible Foods cannot be heard to complain that Impossible LLC incurred significant attorneys' fees and costs defeating this onslaught. *See Cataphora Inc. v. Parker*, 848 F. Supp. 2d 1064, 1070 (N.D. Cal. 2012) (a party "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by [its opponent] in response").

Impossible LLC was also required to incur significant fees seeking relief for Impossible Foods's willful infringement of Impossible LLC's trademarks, culminating in a jury verdict, a

compensatory damages award, and permanent injunction. After investigating and preparing its Complaint, Impossible LLC pursued necessary discovery, propounding 138 discovery requests and conducting eight depositions of Impossible Foods witnesses and one third-party witness. (Dkt. 521-1 ¶ 39.) Impossible LLC spent additional time responding to Impossible Foods's improper refusals to provide relevant information in discovery: in addition to numerous meet-and-confer sessions regarding Impossible Foods's objections, Impossible LLC filed five successful motions to compel—three of which were dedicated to understanding the full facts surrounding Impossible Foods's deletion of the custodial documents and emails of two of its most knowledgeable witnesses. (*Id.*) Impossible LLC incurred significant fees defeating Impossible Foods's motion for summary judgment, which sought to eliminate Impossible LLC's damages claims, as well as Impossible Foods's *Daubert* motions seeking to exclude Impossible LLC's expert testimony. (*Id.* ¶ 40.) And Impossible LLC took on the overwhelming majority of the work on the parties' joint pre-trial submissions, including the joint exhibit list and jury instructions. (*Id.* ¶ 41.) Even after the jury returned a verdict for Impossible LLC, Impossible Foods forced Impossible LLC to file a contested motion for a permanent injunction, which the Ninth Circuit has long stated is the "remedy of choice" in trademark infringement cases. And Impossible Foods continued to prolong the litigation thereafter, by filing a motion for reconsideration of the Court's order awarding fees, leading the Court to observe that Impossible Foods's attempt to relitigate the issue "only confirms the exceptional manner in which it has litigated this case." (Dkt. 512 at 38.)

The reasonableness of Impossible LLC's hours spent defending Impossible Foods's claims and pursuing its own claims is confirmed by Impossible LLC's success in the litigation. "[T]he most critical factor in determining a fee award's reasonableness is the degree of success obtained." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (cleaned up). The jury unanimously rejected Impossible Foods's claims, found Impossible Foods liable for willful trademark infringement, and awarded substantial damages. (Dkt. 459 (Jury Verdict).) After trial, the Court enjoined Impossible Foods from further infringement, rejected its laches defense, denied its request to reconsider the "exceptional case" finding, and denied its motions for judgment as a matter of law and a new trial, with the sole exception of granting a new trial on punitive damages. (Dkt. 512.) Given the financial

strain that the litigation placed on Impossible LLC and the uncertain nature of fee awards under the Lanham Act, Impossible LLC's counsel had every incentive to staff and litigate the matter efficiently to achieve this result without incurring unnecessary time or expense.

As the Court found, this was an exceptionally litigated case (*id.* at 38), and it perfectly illustrates the reasons for the Ninth Circuit's guidance that courts should "defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." *Moreno*, 534 F.3d at 1112. The hours expended by Impossible LLC's counsel are reasonable, and the Court should approve them in full.

### C. The Hourly Rates of Impossible LLC's Counsel Are Reasonable

The rates charged by Impossible LLC's counsel for this matter are equally reasonable. "In establishing the reasonable hourly rate, the court may take into account: (1) the novelty and complexity of the issues; (2) the special skill and experience of counsel; (3) the quality of representation; and (4) the results obtained." *Gilead Scis., Inc. v. Merck & Co.*, No. 13-CV-04057-BLF, 2017 WL 3007071, at *4 (N.D. Cal. July 14, 2017) (citing *Cabrales v. Cnty. of Los Angeles*, 864 F.2d 1454, 1464 (9th Cir. 1988)).

Here, Impossible LLC's counsel at BraunHagey & Borden LLP ("BHB") and Wiley Rein ("Wiley") have charged rates ranging from $375 per hour for junior attorneys to $2050 for senior partners. These rates are set by the market because they because they are the actual rates that BHB and Wiley charge their hourly paying clients. (Dkt. 521-1 ¶¶ 23-30; Dkt. 521-8 ¶ 9.) *See Carson v. Billings Police Dep't*, 470 F. 3d 889, 892 (9th Cir. 2006) (that a lawyer "charges" and "gets" a rate in paid matters is evidence it is reasonable); *Moore v. James H. Matthews & Co.*, 682 F.2d 830, 840 (9th Cir. 1982) (lodestar rate should "usually [be] counsel's normal billing rate"). Impossible LLC actually paid these rates during the course of this case, confirming that they are reasonable. *Stonebrae, L.P. v. Toll Bros*., No. C-08-0221-EMC, 2011 WL 1334444, at *6 (N.D. Cal. Apr. 7, 2011), *aff'd*, 521 F. App'x 592 (9th Cir. 2013) (the "presumption" of reasonableness "is particularly forceful where, as here, the fees were billed to and actually paid by the plaintiff during the course of the litigation, the relationship between counsel and the plaintiff was a valid business relationship, and the plaintiff, as client, exercise business judgment in retaining and paying

counsel"); (*see* Dkt. 481-1 (Runyon Decl.) ¶ 4 (confirming he and Impossible LLC "have paid multiple millions of dollars in legal fees and expenses" for this litigation).

The skill and experience of Impossible LLC's counsel supports their hourly rates. BHB is widely recognized as a leading national trial boutique. (Dkt. 521-1 ¶ 19.) It regularly competes with and prevails over some of the largest law firms in the country in trademark and intellectual property cases, as well as a variety of other matters. *See e.g.*, *Stone Brewing Co., LLC v. Molson Coors Beverage Co. USA LLC*, No. 23-3142, 2024 WL 5244556 (9th Cir. Dec. 30, 2024) (affirming $56 million jury verdict for trademark plaintiff against much larger defendant); *Better Meat Co. v. Emergy, Inc.*, 2024 WL 2883533 (E.D. Cal. June 7, 2024) (summary judgment on patent ownership claims on behalf of start-up client against much larger plaintiff); *Tari Labs, LLC v. Lightning Labs, Inc.*, 2023 WL 2480739 (N.D. Cal. Mar. 13, 2023), *as modified*, No. 3:22-CV-07789-WHO, ECF No. 56 (TRO and preliminary injunction on trademark claims for start-up against much larger defendant); *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, 20 F.4th 466 (9th Cir. 2021) (affirming verdict of more than $50 million for antitrust plaintiff). Wiley has a highly-regarded trademark practice encompassing all facets of prosecution and litigation before the USPTO and district courts across the United States and has a long track record of success. (Dkt. 521-8 ¶¶ 2-5.) The rates sought by BHB and Wiley are amply justified by this specialized skill and experience, and numerous courts have approved their rates in prior years. (Dkt. 521-1 ¶ 23.)

These rates fall within—and in several instances below—the range this District has approved for comparable IP and complex commercial litigation in recent years. *See, e.g., In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 2672 CRB (JSC), 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (approving rates up to $1,600/hr for partners, $790/hr for associates, and $490/hr for non-attorney staff); *Koeppen v. Carvana, LLC*, No. 21-CV-01951-TSH, 2024 WL 3925703, at *12 (N.D. Cal. Aug. 22, 2024) (approving rates up to $1,495/hr for partners and $850/hr for associates); *QuickLogic Corp. v. Konda Techs., Inc.*, No. 21-CV-04657-EJD, 2025 WL 1507097, at *2 (N.D. Cal. May 27, 2025), amended, 2025 WL 1918843 (N.D. Cal. July 11, 2025) (approving rates up to $1,436.50/hr for partners, $986/hr for special counsel, and $834.60/hr for associates); *OpenGov, Inc. v. GTY Tech Holdings Inc.*, No. 18-CV-

07198-JSC, 2019 WL 2010707, at *5-7 (N.D. Cal. May 7, 2019) (approving rates up to $1,500/hr for a San Francisco litigation boutique); and *Fleming v. Impax Labs'ys Inc.*, No. 16-CV-06557-HSG, 2022 WL 2789496, at *9 (N.D. Cal. July 15, 2022) (approving rates up to $1,150/hr for "counsel").

Finally, the "results obtained" also support that Impossible LLC's fees were reasonably incurred. Impossible LLC—a company with a single employee, facing an adversary many times its size represented by four AmLaw 100 firms—achieved a complete, unanimous verdict against every claim Impossible Foods brought, an affirmative finding of willful trademark infringement, an award of corrective-advertising damages, a finding of oppression, fraud, or malice supporting punitive damages, a permanent injunction, and the exceptional-case finding underlying this fee request itself. (Dkt. 521-1 ¶¶ 63-64; Dkt. 521-11 ¶¶ 2-8.) The Court itself recognized as much, observing at a post-trial hearing that Impossible LLC's counsel "did a terrific job in trial and the result was the verdict you got." (Apr. 23, 2026 Hrg. Tr. at 16:9-10.) That result—obtained only because Joel Runyon, Impossible LLC's founder, "spent millions in legal fees out of pocket, drained his retirement accounts, and placed his financial future at stake" to see the case through verdict (Dkt. 521-11 ¶ 64)—confirms the reasonableness of the rates BHB and Wiley recorded to achieve it. Such success would justify top-of-market rates—and certainly justifies the relatively lower rates charged by Impossible LLC's counsel.

## II. IMPOSSIBLE LLC'S VOLUNTARY REDUCTIONS ADDRESS ANY POTENTIAL OBJECTION

For convenience and to streamline the Court's review, Impossible LLC has excluded from its lodestar request certain fees in the categories below:

***Fees Attributable Solely to California Common Law Claim***. Impossible LLC has excluded hours spent solely on its California common law trademark infringement claim—i.e., time expended on Impossible LLC's motion to compel discovery of Impossible Foods's net worth for purposes of punitive damages and the trial time spent proving the amount of punitive damages.

***Fees for Certain Timekeepers***. Impossible LLC's prosecution of its claims and defense against Impossible Foods's claims required a major team effort over more than five years of

litigation. More than 30 individuals from BHB and Wiley dedicated portions of their professional lives to supporting Impossible LLC in this action. However, for convenience and to streamline the Court's review, Impossible LLC has omitted from its fee request time spent by timekeepers with comparatively few hours, and instead requests only fees incurred by the attorneys and paralegal staff who provided the core representation of Impossible LLC in this matter.

***Voluntary Reductions***. In addition to normal billing judgment reductions reflected in the hours billed to Impossible LLC in the first instance, Impossible LLC has further reduced the amounts of various time entries to address any overbilling concerns from Impossible Foods and to streamline the Court's review.

Taken together, there voluntary reductions moot any likely objection by Impossible Foods regarding the hours and fees in Impossible LLC's lodestar request.

## III. IMPOSSIBLE LLC SHOULD BE ALLOWED TO RECOVER ITS LITIGATION EXPENSES

In addition to significant attorney time, Impossible LLC incurred $897,043.46 in litigation expenses that were non-taxable under federal and local rules. The Court should award these costs to Impossible LLC as the prevailing party in this action.

### A. Non-Taxable Expenses

#### 1. Legal Standard

Separate from the taxable costs previously claimed in Impossible LLC's Bill of Costs (Dkt. 494), the Ninth Circuit has "repeatedly allow[ed] prevailing plaintiffs to recover non-taxable costs where statutes authorize attorney's fees awards to prevailing parties." *Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 580-81 (9th Cir. 2010). Because the Lanham Act authorizes fee awards to prevailing parties, 15 U.S.C. § 1117(a), a prevailing party may recover "reasonable out-of-pocket litigation expenses that would normally be charged to a fee paying client." *Grove*, 606 F.3d at 581.

#### 2. Summary of Non-Taxable Expenses

Seeing this case through to trial required Impossible LLC to incur $897,043.46 in non-taxable litigation expenses, paid out of pocket and separate from the costs claimed in its Bill of Costs. (Dkt. 521-1 ¶ 68; Dkt. 521-11 ¶ 5.) These expenses consist of:

| **Category** | **Amount** |
|---|---|
| Expert witness fees | $572,061.07 |
| Clerk and service-of-process fees | $13,499.44 |
| Deposition transcripts and video recordings | $17,457.79 |
| Reproduction of documents disclosed in response to discovery requests | $18,590.81 |
| Other printing costs | $410.50 |
| Hotel charges for client, experts, and counsel (not otherwise claimed in the Bill of Costs) | $82,746.62 |
| Trial graphics vendor fees | $12,571.47 |
| Jury consultant fees | $57,219.47 |
| Trial office space rental (San Jose) | $10,843.87 |
| Travel expenses (flights, rideshare, hotels/lodging, parking, mileage) | $15,927.70 |
| Meals and food for the trial team | $14,869.06 |
| Legal research fees | $35,985.21 |
| Courier and delivery fees | $1,205.52 |
| Trial supplies and office materials | $283.78 |
| Consumer survey consulting | $6,263.00 |
| Local counsel fees incurred before BHB's engagement | $35,071.80 |
| Other miscellaneous fees | $2,036.35 |
| TOTAL | $897,043.46 |

### B. Expert Witness Fees

Of the non-taxable expenses above, $572,061.07 represents the fees of Impossible LLC's two testifying experts: Dr. Robert Palmatier, a marketing scholar who testified regarding the marketing-science basis for the harm caused by Impossible Foods's infringement and the corrective advertising necessary to repair it, and Dr. Jennifer Vanderhart, an economist who served as Impossible LLC's damages expert. (Dkt. 521-1 ¶¶ 70-71.) The Court credited both experts' testimony in denying Impossible Foods's motion for summary judgment, in admitting their testimony at the Daubert stage, and in denying Impossible Foods's post-trial motions for judgment as a matter of law and a new trial as to damages. (Dkt. 521-1 ¶ 71.)

District courts in this Circuit regularly award expert witness fees in Lanham Act cases. *See Paige LLC v. Shop Paige LLC*, No. 2:22-CV-07800-HDV (SKx), 2024 WL 3594450, at *8 (C.D. Cal. July 10, 2024), appeal dismissed, No. 24-4666, 2024 WL 5358926 (9th Cir. Nov. 13, 2024)

(awarding $35,660 in "expert fees" for the plaintiff's damages expert in a trademark-infringement case); *Dropbox, Inc. v. Thru Inc.*, No. 15-CV-01741-EMC, 2017 WL 914273, at *6 (N.D. Cal. Mar. 8, 2017), aff'd, 728 F. App'x 717 (9th Cir. 2018) (awarding $162,936 in "expert witness fees" to the prevailing defendant in a trademark-infringement case). Dr. Palmatier's and Dr. Vanderhart's fees were reasonable and necessary to Impossible LLC's case, and the Court should award them in full for the same reasons the district courts did in Paige and Dropbox. (Dkt. 521-1 ¶ 71.)

## IV. IMPOSSIBLE LLC DILIGENTLY ATTEMPTED TO RESOLVE THE AMOUNT OF FEES BEFORE SEEKING COURT INTERVENTION

Consistent with Civil Local Rule 54-5(a) and the Court's expectation that counsel diligently attempt to resolve fee disputes without unnecessary motion practice, Impossible made multiple attempts to reach agreement on the amount of its fee award before filing this Motion—including an offer, on May 18, 2026, to accept a 15% discount from the fees and costs it had then incurred. (Dkt. 521-1 ¶¶ 72-73, Exs. 3-6.) Impossible Foods rejected that offer and each subsequent overture, instead requesting the full supporting documentation that Impossible LLC provides in the concurrently filed Declarations of Adam S. Cashman and David E. Weslow and the billing records attached as exhibits thereto. (Dkt. 521-1 Exs. 4, 6.) Impossible LLC's efforts to narrow this dispute, and Impossible Foods's decision to litigate the fee amount rather than accept a voluntary discount or even engage in a good-faith exchange of information to facilitate a potentially negotiated resolution, further support granting this Motion in full.

## CONCLUSION

For the foregoing reasons, the Court should award Impossible LLC its reasonable attorneys' fees in the amount of $8,334,622.56 and expenses in the amount of $897,043.46.

Dated: August 21, 2026

Respectfully submitted,

BRAUNHAGEY & BORDEN LLP

By: /s/ Adam S. Cashman
Adam S. Cashman

*Attorneys for Impossible LLC*