**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| IMPOSSIBLE FOODS INC.,<br>Plaintiff / Counter-Defendant,<br>v.<br>IMPOSSIBLE LLC,<br>Defendant / Counter-Plaintiff. | Case No. 21-cv-02419-BLF<br><br>**JOINT PROPOSED JURY INSTRUCTIONS** |

**IT IS SO ORDERED.**

Dated:

BETH LABSON FREEMAN
United States District Judge

# TABLE OF CONTENTS


| Number | Title | Page No. |
|---|---|---|
| 1 | Duty of Jury | 1 |
| 2 | Preliminary Instruction on Trademarks and the First Jury's Findings (Offered by Impossible LLC) | 2 |
| 2-a | Preliminary Instruction on Trademarks and the First Jury's Findings (Offered by Impossible Foods) | 5 |
| 3 | Burden of Proof—Preponderance of the Evidence | 9 |
| 4 | Burden of Proof—Clear and Convincing Evidence | 10 |
| 5 | What is Evidence | 11 |
| 6 | What is Not Evidence | 12 |
| 7 | Evidence for Limited Purpose | 13 |
| 8 | Direct and Circumstantial Evidence | 14 |
| 9 | Ruling on Objections | 15 |
| 10 | Credibility of Witness | 16 |
| 11 | Conduct of the Jury | 17 |
| 12 | Publicity During Trial | 19 |
| 13 | No Transcript Available to Jury | 20 |
| 14 | Taking Notes | 21 |
| 15 | Questions to Witnesses by Jurors During Trial | 22 |
| 16 | Bench Conferences and Recesses | 23 |
| 17 | Outline of Trial | 24 |
| 18 | Duty of Jury | 25 |
| 19 | Duty to Deliberate | 26 |
| 20 | Liability of Corporations—Scope of Authority Not in Issue (Offered by Impossible LLC) | 27 |
| 20-a | Liability of Corporations—Scope of Authority Not in Issue (Offered by Impossible Foods) | 28 |
| 21 | Punitive Damages – Entity Defendant (Offered by Impossible LLC) | 29 |
| 21-a | Punitive Damages – Entity Defendant (Offered by Impossible Foods) | 33 |
| 21-b | Punitive Damages – Amount (Offered by Impossible Foods) | 35 |
| 22 | Consideration of Evidence—Conduct of the Jury | 37 |
| 23 | Communication with Court | 39 |
| 24 | Return of Verdict | 40 |

**Stipulated Instruction No. 1**

**Re Duty of Jury**

Members of the jury: You are now the jury in this case. It is my duty to instruct you on the law.

It is your duty to find the facts from all the evidence in the case. To those facts, you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

At the end of the trial, I will give you final instructions. It is the final instructions that will govern your duties.

Please do not read into these instructions or anything I may say or do that I have an opinion regarding the evidence or what your verdict should be.

*Authority*: Final Jury Instructions, Dkt. 457 at 1.

**Disputed Instruction No. 2**

**Re Preliminary Instruction on Trademarks and the First Jury's Findings**

**Offered by Impossible LLC**

As I previously told you, this case involves trademark infringement. There are two types of trademarks. First, there are registered trademarks which are trademarks for certain defined goods and services that are approved by the U.S. Patent and Trademark Office, also called the "USPTO." The USPTO issues registration certificates which can be used to protect the owner's rights. Second, there are also Common Law trademarks for goods and services used in commerce which are established through actual and first-time use of a distinctive mark in association with the sale or advertising of goods and services. In either case, the owner of a trademark acquires the right to exclude others from using that mark without permission in a manner likely to cause confusion among consumers regarding the source, sponsorship, affiliation, or approval of goods or services.

In an earlier trial in this case, a jury found that Impossible LLC holds trademark rights in the IMPOSSIBLE mark for apparel, recipes, and nutrition information. That jury found that Impossible Foods infringed Impossible LLC's trademark rights in apparel and recipes by using the IMPOSSIBLE mark on clothing and cookbooks without Impossible LLC's permission in a manner likely to cause confusion as to the source, sponsorship, affiliation, or approval of the goods.

That jury also found that Impossible Foods's infringement was willful. Willfulness means that Impossible Foods engaged in the infringing conduct with knowledge that its use of the mark was likely to infringe Impossible LLC's trademark rights, or with reckless disregard for whether its conduct infringed those rights. Reckless disregard means that Impossible Foods was aware of a substantial risk that its conduct was infringing and proceeded anyway.

The first jury awarded Impossible LLC $1.5 million in compensatory damages.

You must accept the prior jury's findings that Impossible Foods infringed Impossible LLC's trademark rights, and that its infringement was willful. Your task in this trial is to decide whether Impossible Foods's conduct also warrants an award of punitive damages, and if so, in what amount. In making that decision, you may consider the prior jury's finding that Impossible Foods's infringement was willful, together with all the other evidence presented in this trial, to

decide whether Impossible Foods acted with oppression, fraud, or malice. If you find that Impossible Foods acted with oppression, fraud, or malice, you will decide what amount of punitive damages would adequately and appropriately punish Impossible Foods for its conduct and discourage similar conduct in the future.

I will now give you detailed instructions on the law.

*Authority*: Adapted from Dkt. 457 at 2, 36, 40–41, 54, 62–63; Verdict Form, Dkt. 459 at 2–5.

*Argument*: Impossible Foods's objections conflate the purpose of this instruction, which is to orient the jury as to the basic nature and posture of the case, with the function of the Court's later substantive instructions to educate the jury on the law it will be asked to apply. Impossible LLC's proposed preliminary instruction is intended to orient the new jury by identifying the nature of the rights at issue and the first jury's findings and providing some of the background necessary to resolve the questions before it. Impossible LLC's draft instruction intentionally does not attempt to introduce every element, burden of proof, and consideration that ultimately will govern the jury's deliberations before they are instructed on those issues. Such an instruction is unworkable and will confuse the jury. Yet Impossible Foods seeks to provide a preliminary description of the case that includes references the evidentiary standards before the Court has explained what those standards mean. The better course is to tell the jury at the outset what has already been decided and what remains for it to decide, and then provide substantive instruction on the applicable legal standards that will govern the jury's deliberations.

Moreover, Impossible Foods's reliance on *Medo v. Superior Court*, 205 Cal. App. 3d 64 (1988) is unavailing, primarily because the California Supreme Court has expressly instructed courts not to read *Medo* the way Impossible Foods suggests. In *Torres v. Auto. Club of Southern California*, 15 Cal. 4th 771, 781 (1997), the California Supreme Court instructed courts that "[u]pon a retrial of the issue of exemplary damages it is only necessary for the second jury to be advised of the amount of general damages already awarded in order that it may maintain a

reasonable relation between such damages and the exemplary damages, if any, that it awards." The remaining categories of evidence remain open, and the California Supreme Court noted that a retrial does not "restrict the trial court's discretion as to the scope of the evidence that may be introduced at retrial on the proper amount of punitive damages." *Id.* n.3. And as to the reasoning in *Medo* that Impossible Foods invokes, the California Supreme Court expressly responded: "We are not persuaded." *Id.* at 780. Impossible Foods thus cannot use *Medo* to restrict evidence during the punitive damages phase here.[1]

Finally, Impossible Foods's reliance on CACI No. 3949 does not support inserting an unexplained burden of proof into the preliminary instruction. CACI No. 3949 is a complete substantive instruction governing the jury's punitive-damages determination, which only makes sense later in the instructions (as Impossible LLC has done here). Although Impossible Foods argues that including the willfulness and recklessness standards suggests that the punitive damages burdens of proof are relevant in the preliminary statement, it misunderstands the purpose of the preliminary statement entirely. Rather than provide point-by-point guidelines on the jury's burdens and evidentiary concerns, the preliminary statement is meant to recap the prior jury's findings. As such, willfulness and recklessness are relevant to encompass the full scope of the first jury's findings because those were questions that it was tasked with answering. In contrast, Impossible Foods proposes forward looking changes that are relevant to the punitive damages trial, which does not serve the purpose of the retrospective preliminary statement about the first jury's findings.

The Court should therefore adopt Impossible LLC's proposed preliminary instruction and address the burden of proof in the later substantive instructions when the jury can understand the case and apply them in their proper context.

[1] *Medo* also has limited applicability because it was decided years before the U.S. Supreme Court introduced reprehensibility as a key factor in the award of punitive damages. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003). The additional categories of evidence that Impossible LLC will introduce are all related to the jury's proper consideration of reprehensibility in finding "oppression, fraud, or malice" under Civil Code Section 3294, and thus fall outside the ambit of the appellate court's decision in *Medo*.

**Disputed Instruction No. 2-a**

**Re Preliminary Instruction on Trademarks and the First Jury's Findings**

**Offered by Impossible Foods**

As I previously told you, this case involves trademark infringement. There are two types of trademarks. First, there are registered trademarks which are trademarks for certain defined goods and services that are approved by the U.S. Patent and Trademark Office, also called the "USPTO." The USPTO issues registration certificates which can be used to protect the owner's rights. Second, there are also Common Law trademarks for goods and services used in commerce which are established through actual and first-time use of a distinctive mark in association with the sale or advertising of goods and services. In either case, the owner of a trademark acquires the right to exclude others from using that mark without permission in a manner likely to cause confusion among consumers regarding the source, sponsorship, affiliation, or approval of goods or services.

In an earlier trial in this case, a jury found that Impossible LLC holds trademark rights in the IMPOSSIBLE mark for apparel, recipes, and nutrition information. That jury found that Impossible Foods infringed Impossible LLC's trademark rights in apparel through Impossible Foods' use of IMPOSSIBLE mark on apparel, and infringed Impossible LLC's trademark rights in recipes through Impossible Foods' use of IMPOSSIBLE on cookbooks. The first jury awarded Impossible LLC $1.5 million in compensatory damages.

That jury also found that Impossible Foods's infringement was willful. Willfulness means that Impossible Foods engaged in the infringing conduct with knowledge that its use of the mark was likely to infringe Impossible LLC's trademark rights, or with reckless disregard for whether its conduct infringed those rights. Reckless disregard means that Impossible Foods was aware of a substantial risk that its conduct was infringing and proceeded anyway.

Your task in this trial is to decide whether Impossible LLC has proven by clear and convincing evidence that Impossible Foods acted with oppression, fraud, or malice in connection with the infringing conduct previously found by the first jury and, if so, what amount of punitive damages, if any, should be awarded.

In making your decision, you may consider all the evidence presented in this trial, to decide whether Impossible Foods acted with oppression, fraud, or malice. If you find that Impossible LLC has proven, by clear and convincing evidence, that Impossible Foods acted with oppression, fraud, or malice, you will decide what amount of punitive damages, if any, would adequately and appropriately punish Impossible Foods for its conduct and discourage similar conduct in the future. You must accept the prior jury's findings that Impossible Foods infringed Impossible LLC's trademark rights, and that its infringement was willful. However, the standard for punitive damages is higher than the standard the first jury applied in deciding willfulness, so the first jury's willfulness finding does not require a punitive finding.

I will now give you detailed instructions on the law.

*Authority*: Adapted from Final Jury Instructions, Dkt 457 at 2-3, 36, 40, 41, 54, 62-63; Verdict Form, 458 at 1-5.

*Argument*: The primary difference between the parties' preliminary instruction is that Impossible Foods' instruction makes clear that any punitive damages must be tied to conduct that the first jury found infringing, rather than non-infringing conduct. Impossible LLC's instruction erroneously suggests that any malicious, fraudulent, or oppressive conduct, even conduct that is unrelated to the infringement found by the first jury, is sufficient. That is not the law. *See Medo v. Superior Ct.*, 205 Cal. App. 3d 64, 68 (1988) ("Punitive damages are not simply recoverable in the abstract. They must be tied to oppression, fraud or malice *in the conduct which gave rise to liability in the case*") (emphasis in original). This black-letter statement of law in *Medo* has been reaffirmed again and again, including as recently as this year. *See, e.g.*, *Labbe v. Dometic Corp.*, 2026 WL 878636, at *11 (E.D. Cal. Mar. 31, 2026); *Livingston v. ABB, Inc.*, 100 F. Supp. 3d 894, 904 (C.D. Cal. 2015); *Willis v. Buffalo Pumps Inc.*, 2014 WL 1028437, at *5 (S.D. Cal. Mar. 17, 2014).

Impossible LLC tries to avoid *Medo* by blatantly mischaracterizing *Torres v. Auto. Club of So. Cal.*, 15 Cal. 4th 771, 777 (1997). As the court summarized, "the question" at issue in that case was "whether the last sentence of [California Civil Code] section 3295(d) entitles a defendant to a new trial on all issues, including liability and compensatory damages, following the reversal of an

award of punitive damages." 15 Cal. 4th at 777. The court concluded that a new trial on all issues was not required; instead, it was proper for an appellate court to "remand[] a cause for a limited retrial following reversal of a punitive damages award." *Id.* The *Torres* court was "not persuaded" by the defendant's argument that *Medo* requires the same jury to hear liability and punitive damages. But that is irrelevant here. In other words, *Torres* distinguished *Medo* on different grounds than the black-letter statement of law at issue here, which remains good law as courts have repeatedly confirmed.

Impossible LLC's citation to *Torres*'s language about the scope of permissible evidence on retrial also is extremely misleading. Impossible LLC claims *Torres* stands for the proposition that "a retrial does not 'restrict the trial court's discretion as to the scope of the evidence that may be introduced at retrial on the proper amount of punitive damages.'" (citing 15 Cal. 4th at 781 n.3). In fact, footnote 3 is directed to a more specific point. It states:"[t]his passage does not restrict the trial court's discretion as to the scope of evidence that may be introduced at retrial on the proper amount of punitive damages." 15 Cal. 4th at 781 n.3. The passage it refers to, as with the above, analyzes "why, in the context of retrials, it generally is unnecessary for the same jury to determine liability and punitive damages in order to ensure a reasonable relation between actual and punitive damages." *Id.* at 781.

Since *Torres*, the California Supreme Court has confirmed that the rule of *Medo* is consistent with U.S. Supreme Court precedent. Initially, punitive damages "cannot punish a defendant for conduct that may have been lawful." *Johnson v. Ford Motor Co.*, 35 Cal. 4th 1191, 1204 (2005) (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 409 (2003)). Next, and even more to the point, conduct that is "independent from the acts upon which liability was premised[] may not serve as the basis for punitive damages." *Id.* (quoting *State Farm*, 538 U.S. at 422). Yet Impossible LLC wants to impose *both* improper punishments, penalizing Impossible Foods for lawful conduct that was never alleged to be infringing and is independent of the conduct found to be infringing. Impossible LLC's instructions to that effect should be rejected.

*Second*, Impossible Foods' version also accurately explains that punitive damages must be proven on a clear and convincing evidence standard, which is a higher standard than the one the

first jury applied in finding willfulness. By omitting that information, Impossible LLC's version wrongly implies that the first jury's willfulness finding requires a punitive finding in the retrial. Impossible LLC responds that the instruction need not "introduce every element, burden of proof, and consideration that ultimately will govern the jury's deliberations before they are instructed on those issues." But that ignores that Impossible LLC's version includes the definitions of both willfulness and recklessness. There is no reason that the jury should be oriented to those standards, and not oriented to the standard for punitive damages.

*Third*, Impossible Foods' version makes clear that, even if the jury finds that Impossible LLC has met its burden of proving malice, oppression or fraud, it is not required to award punitive damages. The jury instructions in the first trial were careful to make that point, and there is no reason to exclude it from these instructions. *See* Dkt. 458 at 2 (explaining that the jury "must now decide the amount, *if any*, that you should award Impossible LLC in punitive damages) (emphasis added).

*Finally*, Impossible Foods' version provides the amount of compensatory damages the first jury awarded, which does not appear anywhere in Impossible LLC's proposed instructions. That is relevant to punitive damages, which require a "reasonable relationship" between the amount of punitive damages and Impossible LLC's alleged harm. *See* Judicial Council of California Civil Jury Instruction (CACI) No. 3949. Impossible LLC does not respond to these last two arguments at all. The Court should adopt Impossible Foods' instruction.

**Stipulated Instruction No. 3**

**Re Burden of Proof—Preponderance of the Evidence**

When a party has the burden of proving any claim by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

*Authority*: Dkt. 457 at 5 (modified).

**Stipulated Instruction No. 4**

**Re Burden of Proof—Clear and Convincing Evidence**

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true. This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.

*Authority*: Dkt. 457 at 6.

**Stipulated Instruction No. 5**

**Re What is Evidence**

The evidence you are to consider in deciding what the facts are consists of:

(1) the sworn testimony of any witness;

(2) the exhibits that are admitted into evidence;

(3) any facts to which the lawyers have agreed; and

(4) any facts that I may instruct you to accept as proved.

*Authority*: Dkt. 457 at 7.

**Stipulated Instruction No. 6**

**Re What is Not Evidence**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they may say in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that is excluded or stricken, or that you are instructed to disregard, is not evidence and must not be considered. In addition, some evidence may be received only for a limited purpose; when I instruct you to consider certain evidence only for a limited purpose, you must do so, and you may not consider that evidence for any other purpose.

(4) Anything you may see or hear when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

*Authority*: Dkt. 457 at 8.

**Stipulated Instruction No. 7**

**Re Evidence for Limited Purpose**

Some evidence may be admitted only for a limited purpose.

When I instruct you that an item of evidence has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

*Authority*: Dkt. 457 at 9.

**Stipulated Instruction No. 8**

**Re Direct and Circumstantial Evidence**

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned-on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

*Authority*: Dkt. 457 at 10.

**Stipulated Instruction No. 9**

**Re Ruling on Objections**

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered, or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

*Authority*: Dkt. 457 at 11.

**Stipulated Instruction No. 10**

**Re Credibility of Witness**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it. In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case, if any;

(5) the witness's bias or prejudice, if any;

(6) whether other evidence contradicted the witness's testimony;

(7) the reasonableness of the witness's testimony in light of all the evidence; and

(8) any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

*Authority*: Dkt. 457 at 12.

**Stipulated Instruction No. 11**

**Re Conduct of the Jury**

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty. Thus, until the end of the case or unless I tell you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, or computer, or any other electronic means, via email, text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, the platform "X" formerly known as Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media. This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last. But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the court.

Because you will receive all the evidence and legal instruction you properly may consider to return a verdict: do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it, although I have no information that there will be news reports about this case; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use the Internet or any other resource to search for or view any place discussed during the

trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers— until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings. If any juror is exposed to any outside information, please notify the court immediately, by sending a note through the clerk signed by any one or more of you.

*Authority*: Dkt. 457 at 13–14.

**Stipulated Instruction No. 12**

**Re Publicity During Trial**

If there is any news media account or commentary about the case or anything to do with it, you must ignore it. You must not read, watch, or listen to any news media account or commentary about the case or anything to do with it. The case must be decided by you solely and exclusively on the evidence that will be received in the case and on my instructions as to the law that applies. If any juror is exposed to any outside information, please notify me immediately.

*Authority*: Dkt. 457 at 15.

**Stipulated Instruction No. 13**

**Re No Transcript Available to Jury**

I urge you to pay close attention to the trial testimony as it is given. During deliberations you will not have a transcript of the trial testimony.

*Authority*: Dkt. 457 at 16.

**Stipulated Instruction No. 14**

**Re Taking Notes**

If you wish, you may take notes to help you remember the evidence. If you do take notes, please keep them to yourself until you go to the jury room to decide the case. Do not let notetaking distract you. When you leave, your notes should be left in the courtroom. No one will read your notes.

Whether or not you take notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of other jurors.

*Authority*: Dkt. 457 at 17.

**Stipulated Instruction No. 15**

**Re Questions to Witnesses by Jurors During Trial**

Only the lawyers and I are allowed to ask questions of witnesses. A juror is not permitted to ask questions of witnesses. If, however, you are unable to hear a witness or a lawyer, please raise your hand and I will correct the situation.

*Authority*: Dkt. 457 at 18.

**Stipulated Instruction No. 16**

**Re Bench Conferences and Recesses**

From time to time during the trial, it may become necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury is present in the courtroom, or by calling a recess. Please understand that while you are waiting, we are working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we will do what we can to keep the number and length of these conferences to a minimum. I may not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

*Authority*: Dkt. 457 at 19.

**Stipulated Instruction No. 17**

**Re Outline of Trial**

Trials proceed in the following way: First, each side may make an opening statement. An opening statement is not evidence. It is simply an outline to help you understand what that party expects the evidence will show. A party is not required to make an opening statement.

Impossible LLC will then present evidence, and counsel for Impossible Foods may cross-examine. Then Impossible Foods will present evidence, and counsel for Impossible LLC may cross-examine.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.

After that, you will go to the jury room to deliberate on your verdict.

*Authority*: Dkt. 457 at 20.

**Stipulated Instruction No. 18**

**Re Duty of Jury**

Members of the Jury: Now that you have heard all of the evidence, it is my duty to instruct you on the law that applies to this case.

A copy of these instructions will be sent to the jury room for you to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

*Authority*: Dkt. 457 at 3.

**Stipulated Instruction No. 19**

**Re Duty to Deliberate**

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

*Authority*: Dkt. 457 at 25.

**Disputed Instruction No. 20**

**Re Liability of Corporations—Scope of Authority Not in Issue**

**Offered by Impossible LLC**

A corporation can only act through its employees, agents, directors, or officers. Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority.

*Authority*: Dkt. 457 at 28 (modified); Ninth Circuit Manual of Model Jury Instructions: Civil No. 4.2 (2026).

*Argument*: Impossible LLC has used the Ninth Circuit's Model Instructions, and there is no reason to deviate from that model here. During the first trial, the rationale for including the last sentence in the jury instructions was because the parties stipulated to dismiss the claims against Mr. Runyon after three days of evidence and preliminary jury instructions that included Mr. Runyon as one of the defendants for Impossible Foods's claims. Because there is no similar circumstance here where the Court needed to reiterate that the parties had changed throughout the course of trial, Impossible Foods's proposed addition is unwarranted and unnecessary.

**Disputed Instruction No. 20-a**

**Re Liability of Corporations—Scope of Authority Not in Issue**

**Offered by Impossible Foods**

A corporation can only act through its employees, agents, directors, or officers. Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority. Joel Runyon is not a party to this case in his personal or individual capacity.

*Authority*: Dkt. 457 at 28 (modified); Ninth Circuit Manual of Model Jury Instructions: Civil No. 4.2 (2025).

*Argument*: Impossible LLC's version of this instruction omits the last sentence, which explains that Joel Runyon is not a party to this case in his personal or individual capacity. That exact sentence appeared in the same instruction in the first trial. *See* Dkt. 457 at 28. There is no reason to exclude it here.

**Disputed Instruction No. 21**

**Re Punitive Damages – Entity Defendant**

**Offered by Impossible LLC**

If you find for Impossible LLC on its claim for unfair competition under California law and you decide that Impossible Foods's conduct caused Impossible LLC harm, you must decide whether Impossible Foods's conduct justifies an award of punitive damages. The purposes of punitive damages are to punish Impossible Foods for the conduct that harmed Impossible LLC and to discourage similar conduct in the future.

You may award punitive damages against Impossible Foods if you find that Impossible Foods engaged in that conduct with malice, oppression, or fraud. To do this, Impossible LLC must prove one of the following by clear and convincing evidence:

1. That the conduct constituting malice, oppression, or fraud was committed by one or more officers, directors, or managing agents of Impossible Foods who acted on behalf of Impossible Foods; or
2. That the conduct constituting malice, oppression, or fraud was authorized by one or more officers, directors, or managing agents of Impossible Foods; or
3. That one or more officers, directors, or managing agents of Impossible Foods knew of the conduct constituting malice, oppression, or fraud and adopted or approved that conduct after it occurred.

"Malice" means that Impossible Foods acted with intent to cause injury or that Impossible Foods's conduct was despicable and was done with a willful and knowing disregard of the rights or safety of another. A party acts with knowing disregard when it is aware of the probable dangerous consequences of its conduct and deliberately fails to avoid those consequences.

"Oppression" means that Impossible Foods's conduct was despicable and subjected Impossible LLC to cruel and unjust hardship in knowing disregard of its rights.

"Despicable conduct" is conduct that is so vile, base, or contemptible that it would be looked down on and despised by reasonable people.

"Fraud" means that Impossible Foods intentionally misrepresented or concealed a material fact and did so intending to harm Impossible LLC.

An employee is a "managing agent" if the employee exercises substantial independent authority and judgment in corporate decision making such that the employee's decisions ultimately determine corporate policy.

There is no fixed formula for determining the amount of punitive damages, and you are not required to award any punitive damages. If you decide to award punitive damages, you should consider all of the following factors in determining the amount:

(a) How reprehensible was Impossible Foods's conduct? In deciding how reprehensible Impossible Foods's conduct was, you may consider, among other factors:

1. Whether the conduct caused physical harm;
2. Whether Impossible Foods disregarded the health or safety of others;
3. Whether Impossible LLC was financially weak or vulnerable and Impossible Foods knew Impossible LLC was financially weak or vulnerable and took advantage of it;
4. Whether Impossible Foods's conduct involved a pattern or practice; and
5. Whether Impossible Foods acted with trickery or deceit.

(b) Is there a reasonable relationship between the amount of punitive damages and Impossible LLC's harm or between the amount of punitive damages and potential harm to Impossible LLC that Impossible Foods knew was likely to occur because of its conduct?

(c) In view of Impossible Foods's financial condition, what amount is necessary to punish it and discourage future wrongful conduct? You may not increase the punitive award above an amount that is otherwise appropriate merely because Impossible Foods has substantial financial resources. Any award you impose may not exceed Impossible Foods's ability to pay.

Punitive damages may not be used to punish Impossible Foods for its alleged misconduct on persons other than Impossible LLC.

*Authority*: Judicial Council of California Civil Jury Instructions (CACI) (2026 edition) No.

3945; Dkt. 457 at 62–63 (modified); Dkt. 458 at 1 (modified).

*Argument*: The split instruction from Impossible Foods is not applicable here because the jury is empaneled solely for the purpose of deciding the punitive damages issues. Because the punitive damages jury will decide the issues of "oppression, fraud, and malice" under Civil Code Section 3294, reprehensibility, and whether an amount of damages should be awarded, it makes the most sense to instruct the jury on all issues at once. If Impossible Foods is concerned about the questions being merged for the jury, the proper mechanism to address that is to have two separate questions for the jury on the verdict form, not to provide multiple instructions.

While Impossible LLC focuses on the proper jury instructions, Impossible Foods seeks to argue that the scope of evidence during the punitive damages retrial is far narrower than what California courts allow. Rather, California law supports a considerably broader scope of evidence at the punitive damages stage for reprehensibility. As the California Supreme Court has recognized, "[b]y placing the defendant's conduct on one occasion into the context of a business practice or policy, an individual plaintiff can demonstrate that the conduct toward him or her was more blameworthy and warrants a stronger penalty to deter continued or repeated conduct of the same nature." *Johnson v. Ford Motor Co.*, 35 Cal. 4th 1191, 1206 fn. 6 (2005). And "[a] court properly may consider the defendant's similar wrongful conduct toward others in determining the degree of reprehensibility of the defendant's conduct toward the plaintiff." *Bullock v. Philip Morris USA, Inc.*, 198 Cal. App. 4th 543, 559 (2011); *see also Boeken v. Philip Morris, Inc.*, 127 Cal. App. 4th 1640, 1693 (2005) (noting that even "similar out-of-state conduct may be relevant to the issue of reprehensibility when it demonstrates the deliberateness and culpability of the acts committed"). The quantum of available evidence Impossible LLC can put forward in the punitive damages phase is therefore not restricted solely to evidence related to Impossible Foods's proven willful trademark infringement.

Moreover, for the reasons stated previously, Impossible Foods's reliance on *Medo*, 205 Cal. App. 3d at 68 is misplaced. In *Torres*, 15 Cal. 4th 780-81, the California Supreme Court squarely rejected the narrowing approach in *Medo*. As a result, Impossible Foods cannot use *Medo*

as a shield to restrict Impossible LLC's ability to introduce otherwise admissible evidence at trial.

**Disputed Instruction No. 21-a**

**Re Punitive Damages – Entity Defendant**

**Offered by Impossible Foods**

You must decide whether Impossible LLC has proved by clear and convincing evidence that Impossible Foods acted with malice, oppression, or fraud in connection with the infringing conduct previously found by the first jury. To do this, Impossible LLC must prove one of the following by clear and convincing evidence:

1. That the conduct constituting malice, oppression, or fraud was committed by one or more officers, directors, or managing agents of Impossible Foods who acted on behalf of Impossible Foods; or
2. That the conduct constituting malice, oppression, or fraud was authorized by one or more officers, directors, or managing agents of Impossible Foods; or
3. That one or more officers, directors, or managing agents of Impossible Foods knew of the conduct constituting malice, oppression, or fraud and adopted or approved that conduct after it occurred.

"Malice" means that Impossible Foods acted with intent to cause injury or that Impossible Foods's conduct was despicable and was done with a willful and knowing disregard of the rights or safety of another. A party acts with knowing disregard when it is aware of the probable dangerous consequences of its conduct and deliberately fails to avoid those consequences.

"Oppression" means that Impossible Foods's conduct was despicable and subjected Impossible LLC to cruel and unjust hardship in knowing disregard of its rights.

"Despicable conduct" is conduct that is so vile, base, or contemptible that it would be looked down on and despised by reasonable people.

"Fraud" means that Impossible Foods intentionally misrepresented or concealed a material fact and did so intending to harm Impossible LLC.

An employee is a "managing agent" if the employee exercises substantial independent authority and judgment in corporate decision making such that the employee's decisions ultimately determine corporate policy.

*Authority*: Judicial Council of California Civil Jury Instruction (CACI) No. 3945; Dkt. 457 62-63 (modified).

*Argument*: Impossible Foods' version of this instruction is nearly identical to the same instruction given in the first trial. *See* Dkt. 457 at 62. The only material differences are that this version explains that punitive damages must be proven by clear and convincing evidence and tied to conduct that the first jury found infringing. Impossible LLC does not dispute that clear and convincing evidence is the applicable standard. And as discussed above, the law requires that any punitive award be tied to the conduct that gives rise to liability. *See Medo*, 205 Cal. App. 3d at 68. *See also Labbe*, 2026 WL 878636, at *11 ("Punitive damages are not simply recoverable in the abstract. They must be tied to oppression, fraud[,] or malice in the conduct which gave rise to liability in the case") (citing *Medo*, 205 Cal. App. 3d. at 68). Impossible LLC's version combines this instruction with the next instruction, on the amount of punitive damages. It also inserts language about the purpose of punitive damages, which duplicates language from the following instruction. The parties and the Court have already agreed on this two-instruction format, and there is no reason not to use that format again.

Impossible LLC's response, that the "split instruction" is "not applicable here because the jury is empaneled solely for the purpose of deciding the punitive damages issues" misunderstands the purpose of phasing the jury's punitive damages decision. As the court explained in *Torres*, the purpose is to "require[e] a plaintiff to produce evidence of *a prima facie* case of liability for damages under section 3294 before permitting the introduction of evidence of a defendant's profits and financial condition." 15 Cal. 4th at 777. That concern is equally implicated here: Impossible LLC will be required to prove malice, oppression, or fraud first. If it does, only then can the jury be provided with information on Impossible Foods' financial condition.

**Disputed Instruction No. 21-b**

**Re Punitive Damages – Amount**

**Offered by Impossible Foods**

You must now decide the amount, if any, that you should award Impossible LLC in punitive damages. The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed Impossible LLC and to discourage similar conduct in the future.

There is no fixed formula for determining the amount of punitive damages, and you are not required to award any punitive damages. If you decide to award punitive damages, you should consider all of the following factors in determining the amount:

(a) How reprehensible was Impossible Foods's conduct? In deciding how reprehensible Impossible Foods's conduct was, you may consider, among other factors:

1. Whether the conduct caused physical harm;
2. Whether Impossible Foods disregarded the health or safety of others;
3. Whether Impossible LLC was financially weak or vulnerable and Impossible Foods knew Impossible LLC was financially weak or vulnerable and took advantage of it;
4. Whether Impossible Foods's conduct involved a pattern or practice; and
5. Whether Impossible Foods acted with trickery or deceit.

(b) In considering these factors, you may consider only conduct that harmed Impossible LLC. You may not punish Impossible Foods for lawful conduct or for conduct directed toward persons other than Impossible LLC.

(c) Is there a reasonable relationship between the amount of punitive damages and Impossible LLC's actual or potential harm resulting from the infringing conduct previously found by the first jury?

(d) In view of Impossible Foods's financial condition, what amount is necessary to punish it and discourage future wrongful conduct? You may not increase the punitive award above an amount that is otherwise appropriate merely because Impossible Foods has substantial financial resources. Any award you impose may not exceed Impossible Foods's ability to pay.

*Authority*: Judicial Council of California Civil Jury Instruction (CACI) No. 3945; Dkt. 457 62-63 (modified); Dkt. 458 at 1 (modified).

*Argument*: Impossible LLC's version combines this instruction with the previous instruction, on punitive liability. The parties and the Court have already agreed on the previous two-instruction format, and there is no reason not to use that format again.

The primary substantive difference between the parties' instructions is that Impossible Foods' instruction makes clear that any punitive damages award must be tied to conduct that the first jury found infringing, rather than non-infringing conduct. *See Medo*, 205 Cal. App. 3rd at 68 ("Punitive damages are not simply recoverable in the abstract. They must be tied to oppression, fraud or malice *in the conduct which gave rise to liability in the case*") (emphasis in original). *See also Labbe*, 2026 WL 878636, at *11 ("Punitive damages are not simply recoverable in the abstract. They must be tied to oppression, fraud[,] or malice in the conduct which gave rise to liability in the case") (citing *Medo*, 205 Cal. App. 3d. at 68). Making that limitation clear to the jury is critical, because Impossible LLC has already signaled it intends to seek punitive damages in connection with conduct the jury did *not* find infringing. For example, it has put screenshots of Impossible Foods' recipes website on its exhibit list, even though the jury's infringement finding was based on the Cookbook alone. The Court should adopt Impossible Foods' instruction.

Impossible LLC's response, that the "split instruction" is "not applicable here because the jury is empaneled solely for the purpose of deciding the punitive damages issues" misunderstands the purpose of phasing the jury's punitive damages decision. As the court explained in *Torres*, the purpose is to "require[e] a plaintiff to produce evidence of *a prima facie* case of liability for damages under section 3294 before permitting the introduction of evidence of a defendant's profits and financial condition." 15 Cal. 4th at 777. That concern is equally implicated here: Impossible LLC will be required to prove malice, oppression, or fraud first. If it does, only then can the jury can be provided with information on Impossible Foods' financial condition.

**Stipulated Instruction No. 22**

**Re Consideration of Evidence—Conduct of the Jury**

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations:

> Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, computer, or any other means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, the platform "X" formerly known as Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court. Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it, although I have no information that there will be news reports about this case; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses, or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete, or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings. If any juror is exposed to any outside information, please notify the court immediately.

*Authority*: Dkt. 457 at 29–30 of 69.[2]

[2] Note: There was no page numbers at the bottom of the pages for this instruction.

**Stipulated Instruction No. 23**

**Re Communication with Court**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the clerk, signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

*Authority*: Dkt. 457 at 26.

**Stipulated Instruction No. 24**

**Re Return of Verdict**

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your presiding juror should complete the verdict form according to your deliberations, sign and date it, and advise the clerk that you are ready to return to the courtroom.

*Authority*: Dkt. 457 at 27.

Dated: August 24, 2026

Respectfully submitted,

BRAUNHAGEY & BORDEN LLP

By: */s/ Adam S. Cashman*
Adam S. Cashman

*Attorneys for Impossible LLC*

Dated: August 24, 2026

DAVIS WRIGHT TREMAINE LLP

By: */s/ Roxanne Elings*
G. Roxanne Elings

*Attorneys for Impossible Foods Inc.*