G. ROXANNE ELINGS (*pro hac vice*)
roxanneelings@dwt.com
RAPHAEL HOLOSZYC-PIMENTEL (*pro hac vice*)
rhp@dwt.com
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 42nd Floor
New York, NY 10020
Telephone: (212) 489-8230
Facsimile: (212) 489-8340

TEAL LUTHY MILLER (*pro hac vice*)
tealmiller@dwt.com
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
Telephone: (206) 622-3150
Facsimile: (206) 757-7700

SARAH E. BURNS (CA State Bar No. 324466)
sarahburns@dwt.com
DAVIS WRIGHT TREMAINE LLP
50 California Street, 23rd Floor
San Francisco, CA 94111
Telephone: (415) 276-6500
Facsimile: (415) 276-6599

Attorneys for Plaintiff/Counter-Defendant
IMPOSSIBLE FOODS INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IMPOSSIBLE FOODS INC.,<br><br>Plaintiff/Counter-Defendant,<br><br>vs.<br><br>IMPOSSIBLE LLC,<br><br>Defendant/Counter-Plaintiff. | Case No. 5:21-cv-02419-BLF<br><br>**IMPOSSIBLE FOODS' OPPOSITION TO IMPOSSIBLE LLC'S MOTION IN LIMINE**<br><br>Judge: Hon. Beth L. Freeman<br>Pretrial Conference: September 4, 2026<br>Time: 10:00 a.m.<br>Location: Courtroom 1, 5th Floor |

Impossible Foods Inc. ("IF") respectfully submits this Opposition to the Motion in Limine (Dkt. 528 ("MIL")) filed by Impossible LLC ("ILLC").

## I. INTRODUCTION

In the retrial on punitive damages, the jury will be informed that ILLC was awarded $1.5 million in compensatory damages for IF's infringement of ILLC's trademark rights in apparel. Dkt. 520 ¶ 3; Dkt. 530-1. ILLC now seeks to exclude all evidence "regarding the nature and extent of the harm" underlying that award. MIL at 4. But ILLC's principal authorities expressly recognize that the established amount of compensatory damages does <u>not</u> restrict the scope of the evidence at the punitive-damages stage.

The nature and extent of the harm suffered by ILLC—including the size of the harmed business and the extent of its lost sales—are relevant to the jury's assessment of the gravity of the offense and any appropriate punishment. And the fact that IF is already liable to pay $1.5 million for that harm is relevant to the need for any additional penalty. As the Court itself observed, the $1.5 million award was "startlingly high" in relation to an apparel business that "had brought in a hundred thousand dollars over the life of [the] business" and whose sales "may not have even gone down any." 4/23/26 Tr. at 23:3–9. Of course, that observation does not provide a basis to revisit the compensatory award at the retrial, and IF does not seek to do so. Rather, it illustrates why the nature and degree of the underlying harm remain relevant to the distinct question before the new jury: what punishment, if any, is warranted.

ILLC incorrectly assumes that the bottom-line amount of the $1.5 million corrective-advertising award it elected to pursue at trial conclusively establishes the nature and degree of every harm relevant to punitive damages. In fact, trademark law also permits compensation for other harms, such as lost sales or loss of goodwill. That ILLC chose to limit its recovery to the cost of corrective advertising does not preclude IF from presenting otherwise relevant evidence concerning the existence or absence of those other forms of commercial harm. The size of ILLC's apparel business and sales bears directly on the extent of any harm to goodwill and sales. While the corrective-advertising award is fixed, evidence illustrating the nature and degree of that and other harms is still relevant to the punitive-damages inquiry.

## II. LEGAL STANDARD

"The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed the plaintiff and to discourage similar conduct in the future." CACI 3949.

In assessing punitive damages, the jury must consider "all of the following factors," taking into account the various harms or lack of harms caused by the defendant:

> (a) How reprehensible was that defendant's conduct? In deciding how reprehensible a defendant's conduct was, you may consider, among other factors:
>
> > 1. Whether the conduct caused physical harm;
> >
> > 2. Whether the defendant disregarded the health or safety of others;
> >
> > 3. Whether [plaintiff] was financially weak or vulnerable and the defendant knew [plaintiff] was financially weak or vulnerable and took advantage of [it]; . . .
>
> (b) Is there a reasonable relationship between the amount of punitive damages and [plaintiff's] harm [or the] potential harm to [plaintiff] that the defendant knew was likely to occur because of [its] conduct?
>
> (c) In view of that defendant's financial condition, what amount is necessary to punish [it] and discourage future wrongful conduct?

CACI 3949; *accord* Dkt. 458. In sum, the jury considers various harms or potential harms, such as physical harm, as well as the financial weakness of the plaintiff, or the absence of these factors.

ILLC provides no citation for its assertion that "the jury's compensatory award fixed the 'extent' of Impossible LLC's 'harm.'" MIL at 1. That conflates the bottom-line amount of compensatory damages with the nature and degree of the harm that is the focus of the punitive-damages inquiry. California law specifically distinguishes the two. CACI instructs that the jury may consider other "potential harm" that "would <u>not</u> be included in an award of compensatory damages." CACI 3949, Directions for Use (emphasis added); *see also Simon v. San Paolo U.S. Holding Co.*, 35 Cal. 4th 1159, 1173 (2005) ("[I]n some cases compensatory damages are <u>not</u> the definitive quantification of harm . . . ." (emphasis added)); *Gagnon v. Cont'l Cas. Co.*, 211 Cal. App. 3d 1598, 1604 (1989) ("[T]he trier of fact . . . should <u>not</u> focus on some bottom-line amount of an award of

compensatory damages but on the nature and degree of the actual harm suffered by the plaintiff . . . .” (emphasis added)).

## III. ARGUMENT

### A. ILLC's Revenues or Profits Are Relevant to the Nature and Degree of the Harm

The jury "should not focus on some bottom-line amount of an award of compensatory damages but on *the nature and degree of the actual harm* suffered by the plaintiff." *Gagnon*, 211 Cal. App. 3d at 1604 (emphasis added). Yet ILLC asks this Court to preclude "evidence or argument regarding the nature and extent of the harm to [ILLC]." MIL at 4. ILLC's request must be rejected. While the $1.5 million corrective-advertising award remains fixed, it does not by itself show the punitive-damages jury the nature and degree of the underlying harm. The jury needs evidence that will illustrate the nature and degree of harm to ILLC. To provide that context, IF must be permitted to present evidence concerning the nature and size of ILLC's apparel business.

ILLC's own cited cases confirm this point. In *Torres*, the court made clear that the passage quoted by ILLC "does <u>not</u> restrict the trial court's discretion as to the scope of the evidence that may be introduced at retrial on the proper amount of punitive damages." *Torres v. Auto. Club of S. Cal.*, 15 Cal. 4th 771, 781 n.3 (1997) (emphasis added) (cited in MIL at 2). That scope may include evidence relevant to "the harm suffered" "notwithstanding the fact that . . . the amount of compensatory damages have been established." *Bullock v. Philip Morris USA, Inc.*, 159 Cal. App. 4th 655, 697–98 (2008) (citing *Torres*, 15 Cal. 4th at 781 n.3) (cited in MIL at 3).

Here, it is particularly appropriate to introduce evidence illustrating the nature and degree of the harm, because the corrective-advertising award does not reflect the full scope of potential harms or the lack thereof. Trademark law recognizes a variety of compensable harms, including lost sales, price erosion, loss of goodwill, and the expense of corrective advertising. TERENCE P. ROSS, INTELLECTUAL PROPERTY LAW: DAMAGES AND REMEDIES § 4.03. ILLC elected to recover compensatory damages for the cost of corrective advertising only. Dkt. 459 at 5. But the absence or low degree of *other* indicia of commercial harm is relevant to punitive damages. Just as IF can properly argue that the absence of "physical harm" militates against a punitive award (CACI

3949(a)(1)), IF can properly point to evidence that ILLC lost little to no apparel sales and evidence concerning the size and trajectory of ILLC's apparel business.

To show that ILLC lost little to no apparel sales, IF must be able to argue that (1) ILLC's apparel sales were low to start with, (2) those sales did not materially decrease. The size of ILLC's apparel business and sales are plainly relevant metrics that the punitive-damages jury can properly consider. The jury could reason that causing significant harm to a thriving, successful apparel business is more deserving of punishment. By the same token, the jury could conclude that causing relatively modest commercial harm warrants less punishment. IF can properly make that argument.

Additionally, evidence concerning ILLC's finances may become relevant if ILLC contends that it was "financially weak or vulnerable" and that IF knew of and took advantage of that vulnerability. CACI 3949(a)(3). ILLC cannot invoke financial vulnerability as an aggravating circumstance while foreclosing IF from presenting otherwise admissible evidence bearing on that contention.

**B. High Compensatory Damages Bear on Whether Punitive Damages Are Needed**

A large compensatory award can militate against the need for punitive damages because the compensatory judgment already imposes punishment and deterrence, which is relevant to whether additional punishment is necessary. As California courts recognize, "the objectives of punishment and deterrence" can be "sufficiently met by the enormity of the . . . awards of compensatory damages." *Magallanes v. Superior Ct.*, 167 Cal. App. 3d 878, 886 (1985). The jury may properly conclude that "the level of deterrence and punishment already imposed justifies a lesser award, or no award at all." *Stevens v. Owens-Corning Fiberglas Corp.*, 49 Cal. App. 4th 1645, 1663 (1996). That is particularly so when the large compensatory award is considered in relation to the nature and degree of the harm.

For these reasons, IF must be able to refer to the compensatory award in addressing the nature and degree of the harm and the need for and amount of any punitive damages. IF will not characterize the compensatory award itself as a windfall, overcompensation, or otherwise improper, nor will it ask the jury to reconsider or reduce that award. But IF can properly argue that the compensatory award IF already owes militates against the need for further punitive damages.

ILLC has already been compensated for the harm found by the first jury, and the question for the new jury is whether additional punishment is warranted, and if so, in what amount. Those arguments appropriately focus the jury on the question of punishment and deterrence rather than further compensation.

## IV. CONCLUSION

The Court should deny ILLC's motion *in limine*.

DATED: August 28, 2026

DAVIS WRIGHT TREMAINE LLP

By: */s/ G. Roxanne Elings*
G. Roxanne Elings

Attorneys for Plaintiff/Counter-Defendant
IMPOSSIBLE FOODS INC.