United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

IMPOSSIBLE FOODS INC.,
Plaintiff,
v.
IMPOSSIBLE X LLC,
Defendant.

Case No. 21-cv-02419-BLF

**ORDERS RE MOTIONS *IN LIMINE***

[Re: ECF Nos. 526, 528, 532, 533]

The parties have filed motions *in limine* (MIL). *See* ECF Nos. 526, 528. Both MILs are opposed. *See* ECF Nos. 533, 532. On September 4, 2026, the Court issued oral rulings on both MILs at the Final Pretrial Conference. ECF No. 547 ("Tr."). The Court, shortly thereafter, issued orders setting the trial schedule and procedures. ECF Nos. 545, 546. It now rules on the MILs as follows.

## I. BACKGROUND

Impossible Foods sells plant-based meat substitutes. It launched its flagship product, the Impossible Burger, in 2016. Impossible Foods also sells branded cookbooks and distributes branded apparel.

In 2010, Mr. Runyon launched a blog that encourages readers to push themselves to their limits and to do "impossible" things. The blog and related trademarks were later assigned to Impossible LLC, which Mr. Runyon founded. Impossible LLC has since expanded to other ventures, including search engine optimization, social media influencing, fitness and diet advice, apparel, and nutritional supplements.

In 2021, Impossible Foods sued Impossible LLC for trademark infringement and unfair competition. Impossible LLC counterclaimed with the same. In March 2026, a jury found that Impossible Foods willfully infringed Impossible LLC's trademarks and acted with oppression,

fraud, or malice. The jury awarded Impossible LLC $1.5 million in compensatory damages (for corrective advertising) and $1.75 million in punitive damages. Four months later, the Court ordered a new trial on punitive damages, holding that the jury's finding that punitive damages were warranted was against the clear weight of the evidence. The compensatory award was left intact. Retrial on punitive damages is scheduled to commence on September 25, 2026.

## II. LEGAL STANDARDS

### A. Relevance

Evidence is relevant if it "has any tendency to make a fact more or less probable" and "is of consequence in determining the action." Fed. R. Evid. 401. "[R]elevant evidence is admissible unless another rule or federal law provides otherwise[.]" *Crawford v. City of Bakersfield*, 944 F.3d 1070, 1077 (9th Cir. 2019). The "standard of relevance . . . is a liberal one. *Id.* at 1077 (alteration in original) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 587 (1993)). But relevant evidence can nevertheless be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403; *see also United States v. LeMay*, 260 F.3d 1018, 1027 (9th Cir. 2001).

### B. Punitive Damages

Punitive damages require clear and convincing evidence of oppression, fraud, or malice. *Am. Airlines, Inc. v. Sheppard, Mullin, Richter & Hampton*, 96 Cal. App. 4th 1017, 1049 (2002) (quoting Cal. Civ. Code § 3294). Whether punitive damages are appropriate is a fact-intensive totality inquiry reserved for the factfinder. *Spinks v. Equity Residential Briarwood Apartments*, 171 Cal. App. 4th 1004, 1053 (2009).

## III. DISCUSSION

### A. Impossible Foods's MIL Regarding Punitive Damages and Alternative Request for Order to Show Cause

#### 1. Evidence From the First Trial

Impossible Foods asks this Court to exclude the evidence that Impossible LLC proffered at the first trial in its bid for punitive damages because the Court determined that the jury's finding of oppression, fraud, or malice was against the clear weight of the evidence. ECF No. 526 at 3 (urging exclusion of "[e]vidence offered merely to establish willfulness" as "irrelevant," wasteful, confusing, and cumulative); *see also* ECF No. 512 at 32 (granting new trial). Impossible LLC counters that this evidence constitutes part of Impossible Foods's "entire course of conduct" and is hence relevant to punitive damages. ECF No. 533 at 2 (quoting *Johnson v. Ford Motor Co.*, 35 Cal. 4th 1191, 1203, 1206 n.6 (2005)).

Evidence offered at the first trial is clearly relevant. That the evidence is relevant for willfulness does not render it categorically irrelevant for oppression, fraud, or malice. *See Swinton v. Potomac Corp.*, 270 F.3d 794, 812 (9th Cir. 2001). Nor should the evidence be excluded because Impossible LLC in some sense "exhausted" it at the first trial by falling short of convincing the Court that the record was sufficient to uphold the jury's punitive damages award. Impossible LLC may, as it explains, introduce additional evidence on retrial to buttress and make its case anew. *See* ECF No. 533 at 2–3.

The Court also discerns little risk of wasted time, confusion, or cumulative presentation. The record portends none of the parade of horribles Impossible Foods forewarns of. Impossible LLC knows it is not enough to "rehash[] willfulness," ECF No. 526 at 3—and that is why Impossible LLC designates new evidence. Impossible LLC also knows that it would be inappropriate to attempt to conflate willfulness with oppression, fraud, or malice as a means of confusing the jury. ECF No. 526 at 3. Jury instructions will provide the proper guidance to the jury.

Impossible Foods's request to exclude evidence from the first trial is DENIED.

#### 2. Legitimate Litigation Conduct

Impossible Foods also seeks to exclude evidence of its purported legitimate litigation conduct. *See* ECF No. 526 at 3–4. After discussing the request with the parties at the hearing, the

Court understands the disputed evidence to fall into two categories: Impossible Foods's (1) Trademark Trial and Appeal Board (TTAB) petition to cancel Impossible LLC's trademarks; and (2) conduct following receipt of a cease-and-desist letter from Impossible LLC. For the following reasons, the request to exclude Impossible Foods's TTAB activity is GRANTED, but the request to exclude Impossible Foods's conduct regarding the cease-and-desist letter is DENIED.

**a. TTAB Activity**

Impossible Foods argues that its TTAB activity—namely, its petition to cancel several of Impossible LLC's trademarks—constitutes legitimate litigation conduct that cannot serve as the basis for punitive damages. *See* ECF No. 526 at 3–4. Indeed, Impossible Foods contends, Impossible LLC's "repetitive invocations" of Impossible Foods's legitimate litigation conduct at the first trial was deemed to be prejudicial in the Court's order granting a new trial on punitive damages. *Id.* Hence, Impossible Foods argues that Impossible LLC should be "precluded from offering evidence or argument" based on Impossible Foods's TTAB activity. *Id.*

Impossible LLC counters that Impossible Foods's TTAB activity is admissible for showing an "ongoing pattern of willful and conscious disregard for [its] rights." ECF No. 533 at 5–6. To buttress its bid for punitives, Impossible LLC wishes to show the jury that Impossible LLC has not "withdrawn" its TTAB petition. Tr. at 63:4–6; *see also* Tr. at 61:24–25; ECF No. 533 at 5. Impossible LLC also contends that Impossible Foods's fraud claim in the TTAB was, in any event, precluded because Impossible Foods lost on the same claim in this case. Tr. at 63:4–6, 72:20–73:2.

Impossible LLC is wrong for two independent reasons.

First, as the Court explained in its order granting a new trial, Impossible Foods's legitimate litigation activity is privileged conduct under California law. *See* ECF No. 512 at 35–37; Cal. Civ. Code 47(b). That privilege immunizes conduct that is reasonably related to litigation from civil liability. *Kashian v. Harriman*, 98 Cal. App. 4th 892, 913 (2002). And it also encompasses conduct in front of the TTAB. *Id.* ("[T]he litigation privilege is not limited to the courtroom, but encompasses actions by administrative bodies and quasi-judicial proceedings."). Critically, protected litigation conduct cannot serve as a basis to justify punitive damages. *See Bosack v. Soward*, 586 F.3d 1096, 1105 (9th Cir. 2009) ("[A] defendant's trial tactics and litigation conduct may not be used to impose

punitive damages in a tort action.").

Second, evidence of Impossible Foods's protected litigation activity would be prejudicial under Rule 403. And claim preclusion principles do not tip the scales the other way. Impossible LLC contends that the fraud claim in front of the TTAB is now barred by claim preclusion. *See* ECF No. 533 at 5; Tr. at 63:4–6, 72:20–73:2. The Court disagrees. The TTAB cancellation proceeding was suspended pending "final disposition" of this case. *See* Canc. No. 92088839, TTABVUE 8, at 11. And the TTAB's order expressly provides that "[t]he civil action is considered to have been finally determined" when all appellate rights have been exhausted. *See id.* (citing TBMP § 510.02(b)). Impossible Foods has not yet exhausted its appellate rights. So claim preclusion has not yet attached to the TTAB action.

Impossible Foods's request to exclude evidence of its TTAB activity is GRANTED.

**b. Cease-and-Desist Letter**

Impossible Foods also seeks exclusion of evidence related to the pre-litigation cease-and-desist letter that it received from Impossible LLC. Impossible Foods argues that evidence related to the cease-and-desist letter (1) constitutes evidence of legitimate litigation conduct that would be prejudicial; and (2) is insufficient as a matter of law for showing willfulness, and hence irrelevant. *See* ECF No. 526 at 3–4. Impossible LLC counters that Impossible Foods's failure to cease and desist upon receipt of the letter is plainly relevant to Impossible Foods's state of mind. *See* Tr. at 50:9–51:20, 64:12–65:24.

To be sure, the failure to cease using a mark after receiving a cease-and-desist is not, standing alone, enough to show willful infringement, let alone oppression, fraud, or malice. *See Rsrv. Media, Inc. v. Efficient Frontiers, Inc.*, 2017 WL 123420, at *10 (C.D. Cal. Jan. 11, 2017) (collecting cases). But that does not mean that evidence of such is irrelevant. *See Monster Energy Co. v. Integrated Supply Network, LLC*, 533 F. Supp. 3d 928, 933 (C.D. Cal. 2021) (evidence, inclusive of post-letter conduct, collectively sufficient to uphold jury's finding of defendant's "bad motive"). To the contrary, what Impossible Foods did (or did not do) following receipt of a cease-and-desist is plainly relevant as part of its "entire course of conduct." *Johnson v. Ford Motor Co.*, 35 Cal. 4th 1191, 1203 (2005); *see also Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1164–65 (9th Cir. 2002) (a

showing that bad faith was "part of a conscious course of conduct[]" can support punitives).

The Court further concludes that the prejudice, if any, does not outweigh the relevance of the evidence. What fostered the Court's concerns of "'inflam[ing]' the jury" in the first trial was—as Impossible Foods acknowledges—the "*repetitive* invocations" of Impossible Foods's litigation conduct. ECF No. 512 at 36 (emphasis added). Similar evidence would be best dealt with via objection, not categorical exclusion.

Impossible Foods's request to exclude evidence related to the cease-and-desist letter is DENIED.

**3. Alleged Violations of the Court's Injunction**

Impossible Foods also seeks exclusion of evidence of "unadjudicated violations" of the Court's injunction, namely, its "recipes webpage and pre-injunction social media posts." ECF No. 526 at 5. Impossible Foods argues that this evidence would be prejudicial and confusing. ECF No. 526 at 4. Impossible LLC, in contrast, argues that this evidence is relevant to illustrate that Impossible Foods "has continued to infringe and encroach on Impossible LLC's business." ECF No. 533 at 4.

The Court will preclude Impossible LLC from arguing or suggesting that Impossible Foods violated the Court's injunction. The Court has not found Impossible Foods in violation of its injunction, nor has Impossible LLC moved to hold Impossible Foods in contempt. So argument suggesting as such would be unduly prejudicial. And Impossible LLC agrees. *See* ECF No. 53 at 22–25 (agreeing that it "would not be appropriate" to "say to the jury or suggest that there was a permanent injunction and that it was violated").

But the Court declines to exclude, at this juncture, evidence of the recipes webpage and pre-injunction social media posts. This evidence, based on the parties' representations, appears at least relevant as part of Impossible Foods's "entire course of conduct." *Johnson*, 35 Cal. 4th at 1203; *Amadeo*, 290 F.3d at 1164–65. The question, then, is whether the evidence runs afoul of Rule 403. It is too early to say. Much depends on how the evidence is used at trial and what argument accompanies it. That is not, of course, to say that this evidence is definitively admissible. Impossible Foods posits that some evidence, such as content still left on its social media pages "after the

United States District Court
Northern District of California

verdict," would inherently imply to the jury that Impossible Foods is "doing something . . . unlawful." ECF No. 74, 14–16. The Court is cognizant of that risk. But at this time that is all it is: a risk. Should Impossible LLC break, for instance, its promise not to "say . . . or suggest" that Impossible Foods violated an injunction, Impossible Foods may object at trial.

Impossible Foods's request to preclude argument and suggestion that Impossible Foods violated the Court's injunction is GRANTED, but its request to exclude evidence of Impossible Foods's recipes webpage and pre-litigation social media posts is DENIED.

**4. Unadjudicated Conduct**

Impossible Foods also seeks to exclude "claims [Impossible LLC] did not pursue at the first trial," which constitutes evidence related to Impossible Foods's "recipes webpage," "promotional athletic and philanthropic events," its purchase of "social media usernames," and third-party listings of its cookbook. ECF No. 526 at 4. Impossible Foods argues that this evidence was "conduct never adjudicated." *Id.* Impossible LLC counters that this evidence shows continuing infringement. *See* ECF No. 533 at 4. For the reasons that follow, the Court DENIES the request to exclude evidence related to Impossible Foods's recipes webpage, promotional events, and third-party cookbook listings, but GRANTS the request to exclude evidence regarding its purchase of social media usernames.

**a. Recipes Webpage, Promotional Events, and Third-Party Cookbook Listings**

It would be premature to exclude evidence of the recipes webpage, promotional events, and listings of Impossible Foods's cookbook. This evidence again appears relevant to Impossible Foods's "entire course of conduct" and does not categorically run afoul of Rule 403. *Johnson*, 35 Cal. 4th at 1203. If specific evidence were to implicate Rule 403, Impossible Foods may object at trial. Or if the evidence turns out to be less relevant than the parties represented it would be at the hearing—in the vein of evidence that "some neighbor . . . on Craigslist [is] selling an Impossible Foods cookbook"—that too can be objected to. Tr. at 67:17–18.

Impossible Foods's request to exclude evidence of the recipes webpage, promotional events, and listings of Impossible Foods's cookbook is DENIED without prejudice to pose objections to

specific evidence at trial.

**b. Social Media Usernames**

Based on the examples of continued infringement proffered by Impossible LLC in its opposition brief, *see* ECF No. 533 at 4, Impossible Foods stated at the hearing that it seeks to exclude evidence regarding its purchase of IMPOSSIBLE-related domain names and social media handles. According to Impossible LLC, it was in negotiations with a third party to purchase IMPOSSIBLE-related domain names and social media handles. ECF No. 533 at 4. Impossible Foods "got wind of this and swooped in," offering more money and successfully wresting those domains from under Impossible LLC's nose. Tr. at 68:12–69:18.

Impossible Foods argues that its conduct regarding domain names and social media handles was not the challenged conduct at the first trial that the jury determined warranted compensatory damages. ECF No. 526 at 4. And it challenges Impossible LLC's factual account with an alternative one: according to Impossible Foods, the third party, unbeknownst to Impossible LLC, approached Impossible Foods—not the other way around. Tr. at 69:20–70:40. Impossible LLC counters that alleged wrongdoing need not be already adjudicated or even unlawful to be relevant to punitive damages. *See* ECF No. 533 at 3–4. And any factual disputes, in its view, should be aired at trial for the factfinder to decide. *See* Tr. at 70:6–7.

The Court need not resolve the underlying factual dispute to conclude that this evidence would be unduly prejudicial under Rule 403. Even if this evidence is marginally relevant, *see Onyx Pharmaceuticals, Inc. v. Bayer Corporation*, 863 F. Supp. 2d 894, 898–99 (N.D. Cal. 2011) (conduct of "other [] wrongdoing" that "d[id] not go directly to compensatory damages is nonetheless relevant and admissible[]" (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 580 (1996)), it would be unduly prejudicial or confusing under Rule 403. The jury in the first trial found that Impossible Foods's cookbooks and apparel infringed Impossible LLC's trademarks. But the conduct at issue here, which relates to domain names and social media handles, is not, in the Court's view, sufficiently related to the conduct found infringing in the first trial and thus would only serve to distract the jury.

Impossible Foods's request to exclude evidence related to the domain names and social

media handles is GRANTED.

#### 5. Request to Issue Order to Show Cause

Impossible Foods alternatively asks this Court to issue an order to "show cause why summary judgment should not be entered on punitive damages." ECF No. 526 at 4. The Court declines this invitation. *See* Tr. 48:7–14. Impossible LLC is correct that the Court's Standing Order does not tolerate multiple dispositive motions. *See* ECF No. 526 at 2–3. Though that is not quite what Impossible Foods is doing; it is simply reminding the Court that it has the authority under Rule 56(f)(3) to initiate the summary judgment process *sua sponte*. The Court enjoys that authority but declines to exercise it here.

Impossible Foods's request for an order to show cause is DENIED.

### B. Impossible LLC's MIL to Preclude Evidence, Testimony, and Argument Referencing Impossible LLC's Revenues or Profits, or Making Improper Argument or Reference to the Compensatory Award

#### 1. Evidence, Testimony, and Argument That the Compensatory Damages Award Was a Windfall or Overcompensated Plaintiff

Impossible LLC wants to preclude Impossible Foods from arguing or suggesting that the $1.5 million compensatory damages figure was excessive. Impossible Foods has promised not to attack the compensatory award "as a windfall, overcompensation, or otherwise improper." ECF No. 532 at 4. There being no disagreement, the Court GRANTS the request. Impossible Foods is prohibited from "denigrat[ing]" or "castigat[ing]" the compensatory award or otherwise "disparag[ing] the amount or purpose of the award." Tr. at 47:6–11. But informing the jury that the compensatory damages were "for corrective advertising" is, of course, appropriate. Tr. at 47:11–12.

#### 2. Impossible LLC's Finances

Impossible LLC also wants to exclude evidence, testimony, and argument related to its "revenues or profits." ECF No. 528 at 1. Impossible LLC contends that "the jury's compensatory award fixed the 'extent' of Impossible LLC's 'harm[.]'" ECF No. 528 at 1. Hence, Impossible LLC's says, any reference to its finances would be a not-so-thinly-veiled attempt to artificially depress the punitive damages award by reducing the "anchor" amount of $1.5 million to something less. *Id.* at 3–4.

United States District Court
Northern District of California

Impossible Foods resists. It has, as noted, promised not to attack the compensatory award itself. *See* ECF No. 532 at 4. But Impossible Foods wants to use Impossible LLC's finances to demonstrate to the jury the "nature and degree of the harm" that Impossible LLC suffered. ECF No. 532 at 3–4. And arguing for lesser punitives because the compensatory damages figure is already sufficient to "punish[] and deter[]" is, in Impossible Foods's view, fair game. *See id.* (collecting cases).

Punitive damages should generally bear a reasonable relationship to harm suffered. *See Simon v. San Paolo U.S. Holding Co.*, 35 Cal. 4th 1159 (2005) (citing *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 424 (2003)). But damages recovered are often an incomplete measure of harm. As it happens, parties seeking punitives after winning compensatory damages will often introduce evidence of additional harm to show that the appropriate punitive figure is greater than the compensatory damages have compensated for. *See Gagnon v. Cont'l Cas. Co.*, 211 Cal. App. 3d 1598, 1603–05 (1989) (collecting cases). Indeed, that is precisely what Impossible LLC suggested it might try to do. *See* Tr. at 31:19–25 (intimating intent to use "additional uncompensated harms" "or similar evidence for purposes of showing reprehensibility[]"); *see also* Tr. at 30:14–31:4 (similar). And the caselaw is clear that Impossible LLC may do so. *See Gagnon*, 211 Cal. App. 3d at 1603–05.

Critically, none of the cases cited by the parties supports the opposite: that Impossible Foods enjoys the opportunity to argue in the first instance that Impossible Foods suffered less harm than the compensatory award has compensated for. To be sure, if Impossible LLC were to choose to open the door with respect to a particular form of damages, Impossible Foods would of course be entitled to rebut the charge. If, for instance, Impossible LLC were to argue that it lost sales that were not compensated for by the existing compensatory award, Impossible Foods may rebut that evidence.

But Impossible Foods wants to do more than that. It wants to marshal Impossible LLC's finances to argue that, with respect to certain forms of damages, Impossible LLC suffered no (or little) harm. *See* ECF No. 532 at 3 ("[T]he absence or low degree of *other* indicia of commercial harm is relevant to punitive damages." (original emphases)); Tr. at 37:6–8 ("[I]t would be appropriate for us to put in evidence on lack of relevant harm such as lost sales."); *see also* Tr. at

39:20–23, 42:1–3 (similar). That Impossible Foods cannot do without implicating Rule 403's strictures. Indeed, absent Impossible LLC opening the door, a free-hanging argument that Impossible LLC suffered no lost profits would only confuse the jury and, in substance, would constitute little more than a collateral attack on the corrective-advertising award. On this note, Impossible Foods's argument that "[Impossible LLC's] finances *may become relevant*" only if Impossible LLC first contends it is financially weak is telling. ECF No. 532 at 4 (emphasis added).

To the extent that Impossible Foods is concerned that Impossible LLC will use the compensatory award to invite the jury to infer that other unadjudicated harms—à la lost sales, price erosion, or loss of goodwill—are weightier than they are, that concern is overstated and speculative. Absent Impossible LLC opening the door by arguing that there were additional, uncompensated harms, the jury will have no basis upon which to assume that other unadjudicated harms were not already compensated for. *See* Tr. at 41:9–23.

The Court is sympathetic of Impossible Foods's desire to "illustrate" what the harms were "in concrete terms . . . so the jury can understand." Tr. at 46:7–13. But the line between "illustrat[ion]" and prejudicial, collateral attacks on the corrective-advertising award is thin. The Court has expressed its concerns here. Though ultimately, much turns on how this evidence is used at trial and whether Impossible Foods's arguments and references to Impossible LLC's finances amount to collateral attacks implicating Rule 403. So categorical exclusion is strong medicine that is premature at this stage. Impossible LLC is, of course, free to object to specific evidence at trial.

Impossible LLC's request to exclude evidence, testimony, and argument related to its finances is DENIED without prejudice to pose objections to specific evidence at trial.

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1) Impossible Foods's MIL is GRANTED IN PART and DENIED IN PART.

(2) Impossible LLC's MIL is GRANTED IN PART and DENIED IN PART.

(3) This order terminates ECF Nos. 526, 532.

**IT IS SO ORDERED.**

Dated: September 14, 2026

BETH LABSON FREEMAN
United States District Judge