G. ROXANNE ELINGS (*pro hac vice*)
roxanneelings@dwt.com
RAPHAEL HOLOSZYC-PIMENTEL (*pro hac vice*)
rhp@dwt.com
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 42nd Floor
New York, NY 10020
Telephone: (212) 489-8230
Facsimile: (212) 489-8340

TEAL LUTHY MILLER (*pro hac vice*)
tealmiller@dwt.com
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
Telephone: (206) 622-3150
Facsimile: (206) 757-7700

SARAH E. BURNS (CA State Bar No. 324466)
sarahburns@dwt.com
DAVIS WRIGHT TREMAINE LLP
50 California Street, 23rd Floor
San Francisco, CA 94111
Telephone: (415) 276-6500
Facsimile: (415) 276-6599

Attorneys for Plaintiff/Counter-Defendant
IMPOSSIBLE FOODS INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IMPOSSIBLE FOODS INC.,<br><br>Plaintiff/Counter-Defendant,<br><br>vs.<br><br>IMPOSSIBLE LLC,<br><br>Defendant/Counter-Plaintiff. | Case No. 5:21-cv-02419-BLF<br><br>**IMPOSSIBLE FOODS' OPPOSITION TO IMPOSSIBLE LLC'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND LITIGATION EXPENSES**<br><br>Judge: Hon. Beth L. Freeman<br>Date: January 7, 2027<br>Time: 9:00 a.m.<br>Location: Courtroom 1, 5th Floor |

# TABLE OF CONTENTS


Page

I. INTRODUCTION ..... 1

II. BACKGROUND ..... 2

III. ARGUMENT ..... 4

A. The Court Must Apportion Fees Between Recoverable and Non-Recoverable Claims ..... 4

1. The Court Should Discount the Unsuccessful and Non-Lanham Act Claims ..... 5

2. The Court Should Discount the Fees Incurred on Unexceptional Claims ..... 7

B. ILLC's Requested Fees Are Unreasonable ..... 10

1. The Time Spent Is Excessive ..... 11

2. ILLC's Lost Motions Should Be Discounted ..... 16

3. BHB's Billing Records Are Inadequate and Include Non-Compensable Time ..... 17

4. The Hourly Rates Are Excessive ..... 20

C. ILLC Cannot Recover Non-Taxable Costs ..... 21

1. Non-Taxable Costs Are Non-Recoverable Under the Lanham Act ..... 22

2. ILLC Fails to Support and Double-Counts Non-Taxable Expenses ..... 23

IV. CONCLUSION ..... 23

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arcona, Inc. v. Farmacy Beauty, LLC*,
2021 WL 2414856 (C.D. Cal. June 14, 2021), *aff'd*, 2022 WL 1486822 (9th Cir. May 11, 2022) ... 19, 22

*Barrett Bus. Servs., Inc. v. Colmenero*,
2025 WL 2048985 (9th Cir. July 22, 2025) ... 22, 23

*Baskin-Robbins Franchising LLC v. Chun*,
2019 WL 5268883 (N.D. Cal. Oct. 17, 2019) (Freeman, J.) ... 20, 21

*Broomfield v. Craft Brew All., Inc.*,
2020 WL 1972505 (N.D. Cal. Feb. 5, 2020) (Freeman, J.) ... 8, 10, 12

*Cabrales v. County of Los Angeles*,
935 F.2d 1050 (9th Cir. 1991) ... 16

*Cairns v. Franklin Mint Co.*,
292 F.3d 1139 (9th Cir. 2002) ... *passim*

*Cataphora Inc. v. Parker*
848 F. Supp. 2d 1064, 1067 (N.D. Cal. 2012) ... 16, 19

*Chalmers v. City of Los Angeles*,
796 F.2d 1205 (9th Cir. 1986), *amended*, 808 F.2d 1373 (9th Cir. 1987) ... 20, 21

*Che v. San Jose/Evergreen Cmty. Coll. Dist. Found.*,
2018 WL 3930153 (N.D. Cal. Aug. 16, 2018) (Freeman, J.) ... 12

*Chloe SAS v. Sawabeh Info. Servs. Co.*,
2015 WL 12763541 (C.D. Cal. June 22, 2015) ... 19

*Echostar Satellite Corp. v. NDS Grp. PLC*,
2009 WL 814543 (C.D. Cal. Mar. 26, 2009) ... 23

*Ecological Rts. Found. v. FEMA*,
365 F. Supp. 3d 993 (N.D. Cal. 2018) ... 11, 13

*Elem Indian Colony v. Ceiba Legal, LLP*,
230 F. Supp. 3d 1146 (N.D. Cal. 2017) ... 5

*Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*,
915 F. Supp. 2d 1179 (D. Nev. 2013), *aff'd*, 778 F.3d 1059 (9th Cir. 2015) ... 10

*Fleming v. Impax Lab'ys Inc.*,
2022 WL 2789496 (N.D. Cal. July 15, 2022) ... 21

*Full Standard Props., LLC v. SJ 6070, LLC*,
2026 WL 2446788 (N.D. Cal. Aug. 20, 2026) (Freeman, J.) .......... 10, 23

*Gonzalez v. City of Maywood*,
729 F.3d 1196 (9th Cir. 2013) .......... 11, 13

*GoPets Ltd. v. Hise*,
2012 WL 3962789 (C.D. Cal. Sept. 10, 2012),
*aff'd*, 595 F. App'x 721 (9th Cir. 2015) .......... 5, 6, 7

*Gracie v. Gracie*,
217 F.3d 1060 (9th Cir. 2000) .......... 5, 6, 10

*Grove v. Wells Fargo Fin. Cal., Inc.*,
606 F.3d 577 (9th Cir. 2010) .......... 22

*Hansen Cold Storage Constr. v. Cold Sys., Inc.*,
2022 WL 1199271 (C.D. Cal. Feb. 11, 2022) .......... 22

*Hawkins v. Berkeley Unified Sch. Dist.*,
2008 WL 11515278 (N.D. Cal. Nov. 20, 2008) .......... 19

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) .......... 5, 8

*Hesterberg v. United States*,
75 F. Supp. 3d 1220 (N.D. Cal. 2014) .......... 23

*In re Cir. Breaker Litig.*,
860 F. Supp. 1453 (C.D. Cal. 1994), *aff'd sub nom. Westinghouse Elec. Corp. v. Gen. Cir. Breaker & Elec. Supply Inc.*, 106 F.3d 894 (9th Cir. 1997) .......... 15

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
2017 WL 1047834 (N.D. Cal. Mar. 17, 2017) .......... 21

*Jacobson v. Persolve, LLC*,
2016 WL 7230873 (N.D. Cal. Dec. 14, 2016) .......... 16, 21

*Jadwin v. County of Kern*,
767 F. Supp. 2d 1069 (E.D. Cal. 2011) .......... 18

*Kerr v. Screen Extras Guild, Inc.*,
526 F.2d 67 (9th Cir. 1975) .......... 10

*Koeppen v. Carvana, LLC*,
2024 WL 3925703 (N.D. Cal. Aug. 22, 2024) .......... 21

*Lahiri v. Universal Music & Video Distrib. Corp.*,
606 F.3d 1216 (9th Cir. 2010) .......... 19

*McGinnis v. Ky. Fried Chicken of Cal.*,
51 F.3d 805 (9th Cir. 1995) ........ 13

*Monster Energy Co. v. Vital Pharms., Inc.*,
2023 WL 9419597 (C.D. Cal. Dec. 14, 2023) ........ 13

*Nadarajah v. Holder*,
569 F.3d 906 (9th Cir. 2009) ........ 19

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
572 U.S. 545 (2014) ........ 4

*OpenGov, Inc. v. GTY Tech. Holdings Inc.*,
2019 WL 2010707 (N.D. Cal. May 7, 2019) ........ 21

*Operating Eng'rs Pension Trs. v. B & E Backhoe, Inc.*,
911 F.2d 1347 (9th Cir. 1990) ........ 13

*Optrics Inc. v. Barracuda Networks Inc.*,
2021 WL 411349 (N.D. Cal. Feb. 4, 2021) ........ 20

*Phigenix, Inc. v. Genentech Inc.*,
2019 WL 2579260 (N.D. Cal. June 24, 2019) (Freeman, J.) ........ 13

*Power Analytics Corp. v. Operation Tech., Inc.*,
2018 WL 10231436 (C.D. Cal. Aug. 20, 2018) ........ 8

*QuickLogic Corp. v. Konda Techs., Inc.*,
2025 WL 1507097 (N.D. Cal. May 27, 2025),
*amended*, 2025 WL 1918843 (N.D. Cal. July 11, 2025) ........ 21

*Richter v. Oracle Am., Inc.*,
2023 WL 8586690 (N.D. Cal. Dec. 8, 2023) (Freeman, J.) ........ 19

*Rimini St., Inc. v. Oracle USA, Inc.*,
586 U.S. 334 (2019) ........ 22, 23

*San Diego Comic Convention v. Dan Farr Prods.*,
807 F. App'x 674 (9th Cir. 2020) ........ 22, 23

*Sazerac Co. v. Fetzer Vineyards, Inc.*,
2017 WL 6059271 (N.D. Cal. Dec. 7, 2017),
*aff'd*, 786 F. App'x 662 (9th Cir. 2019) ........ 7, 8, 12

*SunEarth, Inc. v. Sun Earth Solar Power Co.*,
839 F.3d 1179 (9th Cir. 2016) ........ 4

*Telegram Messenger Inc. v. Lantah, LLC*,
2021 WL 179604 (N.D. Cal. Jan. 19, 2021) ........ 20

*Trs. of S. Cal. IBEW-NECA Pension Tr. Fund v. Flores*,
2008 WL 11336183 (C.D. Cal. Nov. 14, 2008) .... 13

*Trujillo v. Orozco*,
2018 WL 1142311 (N.D. Cal. Mar. 2, 2018), *aff'd*, 790 F. App'x 96 (9th Cir. 2020) .... 20

*Universal Elecs., Inc. v. Universal Remote Control, Inc.*,
2015 WL 12733442 (C.D. Cal. Mar. 10, 2015) .... 7, 8

*Vineyard House, LLC v. Constellation Brands U.S. Operations, Inc.*,
619 F. Supp. 3d 970 (N.D. Cal. 2021) .... 12

*Welch v. Metro. Life Ins. Co.*,
480 F.3d 942 (9th Cir. 2007) .... 17, 18

*White v. FCA US LLC*,
2024 WL 4257640 (N.D. Cal. Sept. 20, 2024) (Freeman, J.) .... 11, 12, 16, 20

*Yuga Labs, Inc. v. Ripps*,
2024 WL 489248 (C.D. Cal. Jan. 11, 2024) .... 13

**Statutes**

15 U.S.C.
§ 1117 .... 4, 8, 22

28 U.S.C.
§ 1821 .... 22
§ 1920 .... 22

**Other Authorities**

LABOR STATISTICS, *CPI Inflation Calculator*,
https://www.bls.gov/data/inflation_calculator.htm .... 21

Impossible Foods Inc. ("IF") respectfully submits this Opposition to Impossible LLC's ("ILLC") Motion for an award of attorneys' fees for ILLC's counsel—BraunHagey & Borden LLP ("BHB") and Wiley Rein LLP ("Wiley")—and litigation expenses. Dkt. 529.

## I. INTRODUCTION

ILLC asks the Court to order IF to pay **$9,231,665.02**—more than six times the entire $1,500,000 judgment ILLC obtained in this case. Dkt. 529 at 1–2; Dkt. 552 at 1. Having waived retrial on punitive damages, ILLC's total recovery is that $1.5 million corrective-advertising award. Dkt. 552 at 1. ILLC thus seeks more than six dollars in fees and expenses for every dollar it won. A request of this size demands exacting scrutiny. It cannot survive it.

The Court found this case exceptional only in limited respects. The Court identified particular positions—IF's abandonment defense and affirmative infringement claims—as weak, particularly as presented at trial, while expressly rejecting ILLC's contention that IF's fraud defense, settlement conduct, or overall litigation strategy was unreasonable. Dkt. 492 at 12–14. ILLC's fee award therefore must be limited to work attributable to the claims and conduct the Court actually found exceptional.

Even cabined to that scope, ILLC's request is extraordinary. ILLC's primary counsel, BHB, spent only a year and a half on this case, yet seeks over $7.6 million in fees—more than five times the $1.5 million in actual damages awarded at trial. BHB block-billed multiple tasks in single entries—sometimes spanning entire weeks or months and as much as 87 hours in a single entry. BHB claims it later reconstructed how much of each entry corresponded to individual tasks, but it did not submit those reconstructed allocations. Dkt. 521-1 ¶ 34. BHB effectively asks the Court to trust an allocation it cannot examine.

Wiley's fees, also block-billed, suffer from similar problems. Wiley further seeks clearly non-recoverable fees for its unsuccessful jurisdictional litigation (which the Court said "obviously" had to be cut, Dkt. 514 at 6:21–25) and for U.S. Patent and Trademark Office ("USPTO") proceedings outside this case. Those two categories alone represent nearly half of Wiley's fees.

ILLC attempts to justify these extraordinary fees by again blaming IF's overall litigation conduct, asserting that IF pursued a "litigation strategy" designed "to place maximum financial

pressure on a smaller opponent." Dkt. 521-1 ¶ 38.[1] But the Court "disagree[d] with [ILLC's] suggestion that [IF's] litigation strategy was objectively unreasonable or unfair." Dkt. 492 at 14. And the record shows that ILLC drove the cost of this case: ILLC litigated personal jurisdiction through a petition for certiorari; took ten depositions compared to IF's four sessions for a single witness; served more document requests; hired more experts; lost nearly every discovery motion either in whole or in part; lost every ground of its own summary-judgment motion; and filed more motions in limine (again losing each in whole or in part). ILLC cannot shift to IF the cost of its own aggressive litigation choices.

The Court should significantly reduce ILLC's fees on two primary grounds. First, the Court must apportion ILLC's fees to the work for which fees are legally recoverable, excluding work on unsuccessful, unexceptional, and non-Lanham Act claims and defenses. Second, the lodestar must reflect reasonable time billed at a reasonable hourly rate, discounting ILLC's pervasive block billing, excessive hours, and unreasonable rates. Additionally, the Court should reject ILLC's non-taxable expenses, which are neither recoverable nor supported by any documentation.

## II. BACKGROUND

After ILLC sent a cease-and-desist letter and filed an opposition to IF's trademark application, IF brought this action for a declaration of non-infringement on April 2, 2021. Dkt. 1. ILLC, then represented by Wiley, moved to dismiss for lack of personal jurisdiction, and this Court granted the motion on November 16, 2021. Dkt. 50. The Ninth Circuit reversed and remanded on September 12, 2023. Dkt. 55. ILLC unsuccessfully petitioned the Ninth Circuit for rehearing. Dkt. 57. ILLC then petitioned for certiorari, which the Supreme Court denied on May 20, 2024. Dkt. 88.

After ILLC's jurisdictional challenge, this case proceeded on the merits. IF brought seven causes of action: (1) declaration of non-infringement, (2) federal trademark infringement, (3) federal unfair competition, (4) California unfair competition, (5) fraud in the procurement of

[1] Adam Cashman's declaration is, to quote ILLC, a "lengthy and argumentative declaration" that "violate[s] the Local Rules and should therefore be stricken or disregarded." Dkt. 481 at 2 (citing Civ. L.R. 7-5(b)); *see, e.g.*, Dkt. 521-1 ¶¶ 9, 32, 38, 50, 62, 68–69.

incontestability status, (6) fraud in the procurement of trademark registrations, and (7) abandonment of trademark registrations. Dkt. 151 ¶¶ 97–149. IF sought only declaratory and injunctive relief. Dkt. 330 at 6–7; Dkt. 421 at 3. ILLC raised ten defenses. Dkt. 241 at 52–54.

ILLC brought six causes of action: (1) federal trademark infringement, (2) federal unfair competition, (3) federal false association, (4) denial of trademark registration, (5) state trademark infringement, and (6) state unfair competition. *Id.* at 70–74, ¶¶ 62–99. ILLC sought over $10 million in compensatory damages and $10 million in punitive damages. Dkt. 474-4 at 72; Dkt. 454 at 1297:5–8. IF raised three defenses (laches, abandonment, and unclean hands). Dkt. 250 at 9–11.

Fact discovery ran from March 2024 to April 14, 2025. Dkt. 66 at 6; Dkt. 238 at 1. BHB began working on this case in January 2025, near the end of discovery. Dkt. 135. Wiley continued working on the case through September 2025 (Elings Decl. Ex. 4), creating a substantial risk of duplicative work for nine months.

After fact discovery closed, ILLC was compelled to produce additional documents under the crime-fraud exception. Dkt. 240. The parties then cross-moved for partial summary judgment. Dkts. 259, 262. On November 3, 2025, the Court granted IF's motion in part, dismissing five of ILLC's affirmative defenses and its reputational-damages claim. Dkt. 311 at 33–34. The Court denied ILLC's motion in its entirety. *Id.* at 34.

The case proceeded to a two-week trial in March 2026. The jury found that IF's apparel and cookbooks infringed ILLC's trademark rights in apparel and recipes, and awarded $1.5 million in corrective-advertising damages. Dkt. 459 at 2–5. The jury rejected IF's fraud and abandonment defenses and IF's affirmative infringement claims against ILLC's dietary supplements. *Id.* at 6. The jury found that IF acted with oppression, fraud, or malice, and awarded $1.75 million in punitive damages under California law. Dkt. 460.

The Court later vacated the punitive award as against the clear weight of the evidence and granted a new trial. Dkt. 512 at 37. ILLC ultimately forwent the punitive retrial. Dkt. 551.

Additionally, on May 8, 2026, the Court denied ILLC's request for enhanced damages, rejected ILLC's claim for denial of IF's recipe-related trademark application, and adopted IF's proposed injunction. Dkt. 492 at 19–20.

In sum, ILLC's jurisdictional challenge failed, its summary-judgment motion was denied in full, its punitive award was vacated and it abandoned the retrial, and its claims for enhanced damages and registration denial were rejected.

The Court found this case "exceptional" warranting attorneys' fees under 15 U.S.C. § 1117(a). *Id.* at 14. The Court found that "certain" of IF's positions—its "abandonment defense and affirmative infringement claims"—were "exceptionally weak, particularly as presented to the jury at trial." *Id.* at 13–14. But the Court found that IF's fraud defense, settlement efforts, and litigation strategy were not unreasonable. *Id.* at 12–14 ("The Court disagrees, for example, with [ILLC's] contention that '[IF's] fraud claims were meritless . . . ' [or] that [IF's] litigation strategy was objectively unreasonable or unfair."). The Court noted that willfulness is "not dispositive" and accorded "some weight" to "fairness and compensation." *Id.* at 12, 14 (citation omitted). The Court denied reconsideration, standing by its finding that IF "made an exceptionally poor showing at trial." Dkt. 512 at 39–40.

IF has participated in settlement discussions in good faith, including on the fee motion. Dkt. 480-5 ¶¶ 12–13. But ILLC refused to provide supporting documentation for its then-claimed $8.5 million in fees despite IF's requests. Dkts. 521-5, 521-7. The records ILLC finally submitted with its Motion do not withstand scrutiny and cannot substantiate its sweeping fee request.

## III. ARGUMENT

### A. The Court Must Apportion Fees Between Recoverable and Non-Recoverable Claims

The Lanham Act allows an award of "reasonable attorney fees" to the "prevailing party" in "exceptional cases." 15 U.S.C. § 1117(a). Exceptionality is based on a "flexible" assessment of the "totality of the circumstances." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554–55 (2014); *see SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1181 (9th Cir. 2016) (applying the Patent Act's *Octane Fitness* standard to Lanham Act fee motions). The Court's exceptionality finding here was focused on certain claims as presented at the trial and does not justify the recovery of all fees from this five-year case. Where, as here, the parties brought both Lanham Act and non-Lanham Act claims, both exceptional and unexceptional claims, and both successful and unsuccessful claims, apportionment of the award is required.

The Court must apportion the fee award "between recoverable Lanham Act claims and non-recoverable *non-Lanham Act claims*," as well as between recoverable and "non-recoverable *Lanham Act claims*," *i.e.*, claims that are "not 'exceptional.'" *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1156 n.15, 1157–58 (9th Cir. 2002) (emphasis added). The Court must also apportion "between successful Lanham Act claims and unsuccessful Lanham Act claims." *GoPets Ltd. v. Hise*, 2012 WL 3962789, at *2 (C.D. Cal. Sept. 10, 2012), *aff'd*, 595 F. App'x 721 (9th Cir. 2015). "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

Even where the claims share "a 'common core of facts' or are based on 'related legal theories,'" the Court has a "duty to make *some* attempt to adjust the fee award in an effort to reflect an apportionment." *Cairns*, 292 F.3d at 1157 (citations omitted). That duty dissolves *only* if "the claims are so inextricably intertwined that even an estimated adjustment would be meaningless." *Gracie v. Gracie*, 217 F.3d 1060, 1070 (9th Cir. 2000); *see, e.g.*, *Elem Indian Colony v. Ceiba Legal, LLP*, 230 F. Supp. 3d 1146, 1155 (N.D. Cal. 2017) (where parties' "voluminous detailed invoices" and "multitude of claims shar[ing] a concise nucleus of common facts" rendered "line-by-line apportionment" impossible, court made "estimated apportionment," awarding 45% of fees).

Under these principles, the Court must apportion out non-recoverable claims, including (1) ILLC's unsuccessful and non-Lanham Act claims, and (2) the unexceptional Lanham Act claims.

### 1. The Court Should Discount the Unsuccessful and Non-Lanham Act Claims

"Fees are available only for work related to the successful claims." *GoPets*, 2012 WL 3962789, at *2. And fees are unavailable for "non-Lanham Act claims." *Cairns*, 292 F.3d at 1157. (As explained *infra* Part III.A.2, fees are also unavailable for unexceptional Lanham Act claims.)

ILLC's unsuccessful jurisdictional defense—which arose under the Due Process Clause, not the Lanham Act—is non-recoverable. As the Court recognized, "there are obviously some big categories that are going to be cut out," such as "the personal jurisdiction issue." Dkt. 514 at 6:21–25. ILLC extended that dispute through unsuccessful petitions for rehearing and certiorari. Dkts. 55, 57, 88. By ILLC's own account, it spent 586.6 hours (about 43% of Wiley's total hours) on

jurisdictional litigation. Dkt. 553; Elings Decl. Ex. 2.[2]

Likewise, ILLC cannot recover fees incurred on its unsuccessful punitive-damages claim under California law. ILLC concedes as much, Dkt. 521-1 ¶ 54, but its billing entries repeatedly include work on punitive damages, the punitive phase of trial, and the abandoned punitive retrial. *E.g.*, Dkt. 522-2 (entries on Aug. 26, 2025, Feb. 15, 17, 25, Mar. 17, 23–24, 28, June 15, July 29–31, Aug. 3–6, 2026). ILLC does not identify which of those entries, if any, it excluded from its request, nor does it identify any portions excluded since its entries are block-billed. This failure highlights that ILLC's retrospective allocations are unverifiable.

All identifiable punitive-damages time must be excluded. To the extent block billing prevents precise segregation, the Court should make a reasonable estimated apportionment. *Gracie*, 217 F.3d at 1070. BHB's discernible punitive-damages work amounts to approximately 271.4 hours worth $261,845, or about 3% of BHB's fees. Elings Decl. ¶ 8(a).[3] An across-the-board reduction of at least 3% is warranted to apportion out time on punitive damages.

Similarly, ILLC should not recover fees incurred on its unsuccessful claims for enhanced damages and for denial of IF's trademark registration under the Lanham Act. Dkt. 492 at 17, 20. Given that enhanced damages and registration denial comprised two out of four requests in ILLC's post-trial motion, the 195.1 hours that BHB claims it spent on that motion should be cut in half to apportion out the work on enhanced damages and registration denial. Dkt. 521-2.[4]

---

[2] ILLC contends that the foreseeability of jurisdictional litigation in a "distant forum" somehow makes the fees recoverable, but that argument lacks support. Dkt. 521-1 ¶ 57. The Ninth Circuit held that this forum was proper because ILLC operated in California. Dkt. 55 at 4. ILLC cannot recover fees for its unsuccessful jurisdictional defense, regardless of whether IF foresaw ILLC's unsuccessful litigation. *See GoPets*, 2012 WL 3962789, at *2.

[3] Another reasonable benchmark is the trial itself: one of seven days of argument and testimony was devoted exclusively to punitive damages, *i.e.*, about 14%.

[4] ILLC's assertion that it "prevailed on the underlying merits" of the cancellation claim (Dkt. 521-

**2. The Court Should Discount the Fees Incurred on Unexceptional Claims**

The Court has a duty to apportion the award between recoverable and non-recoverable (*i.e.*, non-exceptional) Lanham Act claims. *Cairns*, 292 F.3d at 1156 n.15, 1157. Apportionment is required because ordering payment of "fees for portions of the case that were not exceptional has the potential to over-deter meritorious claims, with implications for access to justice." *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 2015 WL 12733442, at *8 (C.D. Cal. Mar. 10, 2015).

Here, the Court's exceptionality finding rested principally on IF's "exceptionally poor showing at trial," Dkt. 512 at 39, and specifically on elements of IF's "abandonment defense and affirmative infringement claims." Dkt. 492 at 13–14. Importantly, the Court did <u>not</u> find that other aspects of the case—such as IF's fraud defense, largely successful briefing on summary judgment and leave to amend, settlement efforts, or overall "litigation strategy"—were exceptional. *Id.* at 3–4, 12–14. The Court held that the jury's verdict "does not mean that [IF's] fraud defense was frivolous or baseless," that damages and actual confusion "were valid issues to be pursued through trial," and that "a jury could reasonably credit either party." *Id.* at 13–14.[5]

---

1 ¶ 53) cannot be squared with the Court's actual ruling, which denied ILLC judgment on that claim. Dkt. 492 at 20. The claim therefore was not successful and is not recoverable. *See GoPets*, 2012 WL 3962789, at *2.

[5] The other two factors cited by the Court—willfulness and fair compensation—should not render every aspect of this five-year case exceptional. The Court noted that IF's willful infringement "is not dispositive" to the exceptionality analysis. Dkt. 492 at 12. And the jury's damages award already compensated ILLC for willful infringement. Similarly, the Court accorded only "some weight" to fairness and compensation, *id.* at 14, which only "modestly" favored exceptionality. Dkt. 512 at 39; *see also* Dkt. 514 at 7:2–3 (the Court noting the "small weight that [it] gave to the fairness of the compensation"). Ultimately, "[c]ompensation will be adequately served by requiring [IF] to pay for the portions of the case attributable to 'pursuing the claims with exceptionally low merit'" only. *Sazerac Co. v. Fetzer Vineyards, Inc.*, 2017 WL 6059271, at *10 (N.D. Cal. Dec. 7, 2017) (citation omitted), *aff'd*, 786 F. App'x 662 (9th Cir. 2019).

ILLC therefore cannot treat all work throughout the litigation as compensable merely because the Court ultimately found IF's trial presentation weak. Before trial, the Court denied ILLC's summary-judgment motion in its entirety, upholding IF's infringement, abandonment, and fraud claims. Dkt. 311 at 18–34. In later finding exceptionality, the Court emphasized the weakness of IF's abandonment defense and infringement claims "particularly as presented to the jury at trial." Dkt. 492 at 13–14; Dkt. 512 at 38–39. The fee award should track the exceptional conduct, and ILLC bears the burden of identifying work attributable to that conduct. *See Hensley*, 461 U.S. at 437; *Broomfield v. Craft Brew All., Inc.*, 2020 WL 1972505, at *12 (N.D. Cal. Feb. 5, 2020) (Freeman, J.) (Court cannot "uncritically" accept movant's representations).

Where the movant fails to carry that burden, the result is not a windfall. In *Power Analytics Corp. v. Operation Technology, Inc.*, the court found that one element of the case "could be deemed exceptional" and limited any award to "the associated fees incurred." 2018 WL 10231436, at *5 (C.D. Cal. Aug. 20, 2018) (citing *Universal Elecs.*, 2015 WL 12733442, at *8). Because the movant "ha[d] not adequately identified those fees that were incurred with respect to" the exceptional portion of the case, the court held there was "not a sufficient basis to calculate and impose a fee award" and denied fees altogether. *Id.* So too here: ILLC's block-billed entries and undisclosed allocations leave the Court unable to identify which fees are attributable to the exceptional aspects of this case. That failure alone warrants a substantial reduction.

At a minimum, the November 3, 2025 summary-judgment decision provides an appropriate temporal starting point for work attributable to the trial presentation on which the Court based its exceptionality finding. Dkt. 492 at 13–14. Other courts finding exceptional trial conduct have drawn the same line. *See Sazerac Co. v. Fetzer Vineyards, Inc.*, 2017 WL 6059271, at *10 (N.D. Cal. Dec. 7, 2017) (limiting fees "to those incurred after . . . summary judgment"), *aff'd*, 786 F. App'x 662, 665 (9th Cir. 2019) (affirming award of fees "incurred following summary judgment").

Nearly half of BHB's time—4,645.4 hours—was spent prior to November 3, 2025 and did not pertain to trial preparation, the trial, or post-trial motions. Elings Decl. ¶ 2 & Ex. 1; Dkt. 521-2. Moreover, none of Wiley's time was related to the trial. Wiley submitted only two time entries that post-dated summary judgment, and neither related to this "case[]" at all, 15 U.S.C. § 1117(a)—

rather, they pertained to separate proceedings in the Trademark Trial and Appeal Board ("TTAB") and are non-recoverable.[6] Dkt. 522-3 at 139. Thus, ILLC has not and cannot carry its burden of showing that these fees are attributable to the trial conduct the Court found exceptional.[7]

Likewise, ILLC cannot recover fees for work on claims besides those the Court found exceptional, namely IF's "abandonment defense and affirmative infringement claims" against ILLC's supplements. Dkt. 492 at 14. Other aspects of the case—such as IF's fraud defense and ILLC's *own* infringement claims more broadly—are non-recoverable. *Id.* at 12–14. Those non-exceptional matters made up the bulk of the litigation.

ILLC argues that this work is "inextricably intertwined" with the Lanham Act claims and that IF's fraud and abandonment theories were both "subsumed" within ILLC's infringement claim. Dkt. 521-1 ¶¶ 50, 56. But the Court itself separated those theories, finding the abandonment defense exceptionally weak and the fraud claim tenable. Dkt. 492 at 12–14. The jury was instructed separately on each defense. Dkt. 457 at 55–56. And ILLC purports to have carved out time spent solely on punitive damages, showing that apportionment is feasible. Dkt. 521-1 ¶ 54.

The Court should therefore exclude work attributable to non-exceptional claims. To the

---

[6] Many of Wiley's fees relate to TTAB or USPTO proceedings, which ILLC cannot recover regardless of the time period because they are not part of this case. *See, e.g.*, Dkt. 522-3 at 3, 5, 7, 31, 38, 50, 58, 65, 123, 125, 127, 139. Wiley spent 42.5 hours on TTAB or USPTO proceedings, as ILLC admits. Elings Decl. Ex. 2; Dkt. 553. BHB also spent approximately 11.6 hours worth $12,140 on non-recoverable TTAB or USPTO proceedings. Elings Decl. ¶ 8(b); Dkt. 522-2 (entries on Sept. 22–23, 2025, Mar. 31, Apr. 1–3, 2026).

[7] ILLC also cannot recover any fees spent on settlement efforts regardless of the time period, because the Court did not find them exceptional. *See* Dkt. 492 at 14 ("Failure to settle early is not a ground for an exceptional case finding, particularly since the issues of proof of damages and actual confusion were valid issues to be pursued through trial.").

extent particular tasks pertain to non-exceptional claims, those hours should be excluded.[8] To the extent ILLC's identified task categories are not limited to non-exceptional claims, the Court should make a reasonable estimated apportionment, particularly since ILLC failed to apportion these fees and BHB's block billing prevents greater precision. *See Cairns*, 292 F.3d at 1157; *Gracie*, 217 F.3d at 1070. Approximately 69% of this case concerned non-exceptional claims.[9] IF proposes a 35% reduction to apportion out those claims. *See Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 915 F. Supp. 2d 1179, 1189 (D. Nev. 2013) (where four out of five claims, or 80% of the case, were non-recoverable, court apportioned out 40% of the fees as non-recoverable), *aff'd*, 778 F.3d 1059 (9th Cir. 2015); *Full Standard Props., LLC v. SJ 6070, LLC*, 2026 WL 2446788, at *1, *6 (N.D. Cal. Aug. 20, 2026) (Freeman, J.) (where one out of eight claims, or 12.5% of the case, was non-recoverable, the Court apportioned out 5% of the fees).

**B. ILLC's Requested Fees Are Unreasonable**

The lodestar is "the number of hours reasonably expended . . . multiplied by a reasonable hourly rate," which the Court may adjust based on the *Kerr* factors, including the time and labor required, the customary fee, the amount involved and results obtained, and awards in similar cases. *Cairns*, 292 F.3d at 1157–58 & n.16 (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)). This Court "independently review[s]" the hours claimed task by task. *Broomfield*, 2020 WL 1972505, at *13. ILLC's requested fees must be discounted because (1) the time spent is excessive, (2) substantial time was spent on unsuccessful motion practice, (3) the time entries are improperly billed, and (4) the hourly rates are excessive.

---

[8] For example, the parties' motions in limine (Dkt. 383) and IF's laches defense (Dkt. 492 at 4–10) pertained to ILLC's claims or IF's fraud claim. According to ILLC, these categories comprised 225.2 hours. Dkt. 521-2.

[9] Nine out of thirteen causes of action (69% of the case) related to non-exceptional matters, *i.e.*, IF's fraud defense and ILLC's own infringement claims more broadly. Dkt. 151 ¶¶ 97–149 (IF's two fraud claims and one declaratory claim for non-infringement of ILLC's marks); Dkt. 241 at 70–74, ¶¶ 62–99 (ILLC's six claims).

**1. The Time Spent Is Excessive**

BHB's requested $7.6 million in fees for 10,258 hours—which BHB incurred over only *a year and a half*, entering the case near the end of fact discovery and continuing through post-trial motions[10]—is grossly excessive. Dkt. 521-2. The relevant inquiry is not simply whether BHB recorded these hours, but whether they were reasonably expended. They clearly were not.

Reasonable hours are those that "could reasonably have been billed to a private client." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013) (citation omitted). Where a "reasonable paying, private client" would not have authorized the work, courts may "make across-the-board percentage cuts." *Ecological Rts. Found. v. FEMA*, 365 F. Supp. 3d 993, 1001, 1006, 1008 (N.D. Cal. 2018) (quoting *Gonzalez*, 729 F.3d at 1203).

That inquiry is critical here because ILLC's counsel worked on a partial contingency basis, *see* Dkt. 481-1 ¶ 3, so its hours were not subject to the economic discipline of a fully paying client. Would a reasonable paying client have paid for more than 10,000 hours over 18 months? Notably, BHB's fee chart shows 889.4 hours of "Internal Team Communication & Strategy,"[11] 927.3 hours of "Case File Management," 377.9 hours of "Case File Review," and 541.1 hours of "Strategic Factual & Legal Research." Dkt. 521-2. The 2,735.7 hours in those "Miscellaneous" categories represent more than one-quarter of BHB's total.[12]

---

[10] BHB's time entries begin on January 21, 2025 and end on August 10, 2026. Dkt. 522-2. The year-long fact discovery period closed on April 14, 2025, *i.e.*, shortly after BHB entered the case. Dkt. 66 at 6; Dkt. 238 at 1.

[11] By contrast, prevailing counsel in *White v. FCA US LLC* did not seek payment for a single hour for "communicating about this case among themselves." 2024 WL 4257640, at *3 (N.D. Cal. Sept. 20, 2024) (Freeman, J.).

[12] BHB's claimed "voluntary reductions" are *de minimis* at best. Dkt. 521-1 ¶ 61. BHB claims it recorded 10,654.6 hours worth $7,792,407, billed ILLC $7,660,304 after write-offs, and now seeks reimbursement for $7,624,556. Dkt. 529 at 9. In other words, BHB seeks 97.8% of its recorded fees or 99.5% of its billed fees.

BHB also staffed the case inefficiently. BHB's partners and counsel (Cashman, Rowe, Benavides, and Hagey, Dkt. 521-1 ¶¶ 24–25, 27, 30) billed approximately 3,570 hours—more than all associates combined—including 74% of the hours on ILLC's post-trial motions, 73% on the laches opposition, 62% on the JMOL/new-trial opposition, 60% on client communication, and 57% on the summary-judgment opposition. Dkt. 521-2. This Court has reduced hours in similar circumstances. *See Broomfield*, 2020 WL 1972505, at *13 (reducing hours where "three partner-level attorneys . . . performed most of the work"); *White*, 2024 WL 4257640, at *3 (reducing senior attorneys' time on client communication by 20%); *Che v. San Jose/Evergreen Cmty. Coll. Dist. Found.*, 2018 WL 3930153, at *5 (N.D. Cal. Aug. 16, 2018) (Freeman, J.) (experienced counsel expected to work "with greater efficiency").

ILLC's own co-counsel provides a telling benchmark. Wiley—ILLC's longtime trademark counsel, which litigated this case from inception through the cert petition and on remand—billed $710,065 for 1,375 hours mostly during its 4.5 years as primary counsel.[13] Dkt. 521-8 ¶¶ 1, 6–8; Dkt. 553. Nothing explains why BHB required more than 10,000 hours in just 18 months.[14]

BHB's request—amounting to approximately $5 million per year—also far surpasses awards in similar Lanham Act cases. *See Sazerac*, 2017 WL 6059271, at *1 ($518,818 over four-month period from summary judgment through trial, which, if extrapolated, would be $1.6 million per year); *Vineyard House, LLC v. Constellation Brands U.S. Operations, Inc.*, 619 F. Supp. 3d

---

[13] Wiley's time entries begin on August 10, 2020, continue for 4.5 years while primary counsel, and continue for another year after BHB's substitution as counsel. Elings Decl. Ex. 4. Even excluding the nine months between the submission of and decision on the appeal (Dkt. 55 at 1), Wiley actively served as primary counsel for nearly four years.

[14] Another relevant benchmark is the amount of fees expended by IF's counsel. *See Cairns*, 292 F.3d at 1159. Again, BHB's $7.6 million in fees dwarfs the combined $2.8 million incurred by both of IF's counsel on all aspects of the case during the same 18-month timeframe. Elings Decl. ¶ 9.

970, 976 (N.D. Cal. 2021) ($2.3 million over 2.4-year case, or less than $1 million per year).[15] According to the 2025 AIPLA survey,[16] the median *total* cost to litigate a trademark case worth $1–10 million, through trial and any appeal, was $500,000. Elings Decl. Ex. 5 at I-191.

"[T]he amount involved and the results obtained" are "particularly relevant" where, as here, "the attorneys' fees requested are grossly disproportionate to the actual damages recovered." *Trs. of S. Cal. IBEW-NECA Pension Tr. Fund v. Flores*, 2008 WL 11336183, at *3 (C.D. Cal. Nov. 14, 2008). BHB's $7.6 million request is over 5 times the $1.5 million in actual damages it recovered at trial. "[N]o reasonable person would pay lawyers [$7.6 million] to win [$1.5 million]." *McGinnis v. Ky. Fried Chicken of Cal.*, 51 F.3d 805, 810 (9th Cir. 1995). ILLC obtained a small fraction of the $10 million it sought, lost its punitive award, and was denied enhanced damages. Dkt. 474-4 at 72; Dkt. 492 at 17; Dkt. 512 at 37; Dkt. 551. Courts have approved reducing disproportionate fees by 39% to 50%. *Flores*, 2008 WL 11336183, at *5 (citing *Operating Eng'rs Pension Trs. v. B & E Backhoe, Inc.*, 911 F.2d 1347, 1355–56 (9th Cir. 1990)). In a "massive fee application," "across-the-board percentage cuts" are appropriate. *Ecological Rts.*, 365 F. Supp. 3d at 1001 (quoting *Gonzalez*, 729 F.3d at 1203) (reducing fees by 55%).

ILLC's effort to blame IF for BHB's fees rings hollow. ILLC argues that IF was the "main driver of litigation expenses" based on its purportedly "aggressive litigation strategy." Dkt. 529 at 9–10. But this Court "disagree[d] . . . that [IF's] litigation strategy was objectively unreasonable or unfair," Dkt. 492 at 14, and held that IF's declaratory-judgment action and defenses were "legitimate litigation conduct," Dkt. 512 at 34–35.

---

[15] Even ILLC's cited cases awarded far fewer fees per year than BHB's request. *See Monster Energy Co. v. Vital Pharms., Inc.*, 2023 WL 9419597, at *9 (C.D. Cal. Dec. 14, 2023) ($16.7 million over five years, or $3.3 million per year); *Yuga Labs, Inc. v. Ripps*, 2024 WL 489248, at *15 (C.D. Cal. Jan. 11, 2024) ($6.9 million over two years, or $3.5 million per year) (both cited in Dkt. 529 at 7).

[16] "In intellectual property cases, federal courts routinely rely on the American Intellectual Property Law Association ('AIPLA') economic survey results published every other year." *Phigenix, Inc. v. Genentech Inc.*, 2019 WL 2579260, at *11 (N.D. Cal. June 24, 2019) (Freeman, J.).

The record shows that ILLC's own decisions drove its fees. ILLC unsuccessfully challenged personal jurisdiction through appeal and petitions for rehearing and certiorari. Dkts. 55, 57, 88. On remand, ILLC engaged in needless, largely unsuccessful motion practice. *See infra* Part III.B.2 (identifying over 940 hours). While ILLC now claims it filed "five successful motions to compel" (Dkt. 521-1 ¶ 39),[17] ILLC neglects to cite the actual *decisions* on the discovery motions, which are far less charitable. Of nine adjudicated discovery disputes, ILLC lost nearly every one in whole or in part. Dkts. 32, 123, 150, 164, 169, 203, 222, 248, 393.[18] In fact, the Magistrate Judge repeatedly criticized ILLC for failing to properly and timely meet and confer. Dkt. 150 at 2; Dkt. 248 at 1–2. And ILLC's ceaseless search for evidence of spoliation was fruitless because, as IF maintained and this Court agreed, the emails in question "were deleted in the ordinary course of business more than a year before any preservation obligation arose." Dkt. 169 at 3; Dkt. 492 at 14 n.3.

Additionally, ILLC concedes that it served more discovery requests, took more depositions, and retained more experts than IF. *Compare* Dkt. 521-1 ¶¶ 39, 70 (ILLC served 138 document requests, took 9 fact depositions, and hired 2 experts), *with id.* ¶ 37 (IF served 108 document requests, took 4 fact depositions of a single witness, and hired 1 rebuttal expert). IF's multiple depositions of Mr. Runyon were authorized by the Court, due to IF's good cause for jurisdictional discovery, ILLC's inadequacy in its initial 30(b)(6) deposition, and ILLC's late compelled production of crime-fraud emails. Dkt. 32 at 2; Dkt. 203 at 4; Dkt. 254. And though ILLC continues to complain about IF's "untimely" custodial witness who merely authenticated publicly available documents after she sat for a tenth deposition (Dkt. 521-1 ¶ 41), the Court overruled that objection and observed that ILLC had "lost sight of what's actually important" in the trial. Dkt. 451 at 785:4–786:22, 958:8–10 ("The Court: Are we really fighting about this? Are we really fighting about a custodian of records?"). ILLC also filed 4 motions in limine, losing each in whole or in part,

---

[17] Contradicting its sworn representation, ILLC previously conceded that "[b]oth sides have won some discovery disputes and lost others." Dkt. 327 at 2.

[18] The only discovery dispute that ILLC won outright pertained to punitive damages (Dkt. 393), which ILLC concedes is not recoverable. Dkt. 521-1 ¶ 54.

compared to IF's 3 motions in limine, including one necessitated by Dr. Vanderhart's pursuit of a damages theory that was "simply irrelevant." Dkt. 383 at 1, 8, 16–17.

Nor did IF needlessly "expand[] the scope" of the case through its amended pleadings. Dkt. 529 at 3, 10. ILLC's assertion that IF waited until the case had been "pending for over three years" to amend, *id.* at 3, ignores that the case spent over two of those years on ILLC's unsuccessful jurisdictional challenge—from dismissal in November 2021 through the Ninth Circuit's reversal mandate in December 2023. Dkts. 50, 59. And IF's fraud claims arose from Mr. Runyon's own later conduct. On July 12, 2024—with this case pending and with notice of IF's intent to amend—Mr. Runyon caused ILLC to file a Section 15 declaration attesting to five years of continuous use of the IMPOSSIBLE NUTRITION mark, even though ILLC had stopped selling those supplements in October 2021. Dkt. 151 ¶¶ 49–54, 124–126. Months later, in December 2024, after a USPTO audit, Mr. Runyon deleted six of the eight categories of clothing goods from ILLC's IMPOSSIBLE registration. *Id.* ¶¶ 75–76. IF filed its Third Amended Complaint asserting the fraud and abandonment claims three months later. Dkt. 151. And the Magistrate Judge later found that IF had made a prima facie case that Mr. Runyon committed fraud on the USPTO in ILLC's 2018 statements of use. Dkt. 240 at 4–7. Those claims were in direct response to Mr. Runyon's filings, the Court granted leave to assert them, and ILLC's counsel conceded that "if the claims were frivolous, I am guessing the Court would not have granted leave to amend." Dkt. 488 at 43:6–7.

ILLC's claim that IF "forced" it to file a contested motion for a permanent injunction fares no better. Dkt. 529 at 11. Initially, injunctions are not always granted, particularly where, as here, the defendant "ceased its infringing conduct and shows no inclination to repeat the offense." *In re Cir. Breaker Litig.*, 860 F. Supp. 1453, 1456 (C.D. Cal. 1994) (citation omitted), *aff'd sub nom. Westinghouse Elec. Corp. v. Gen. Cir. Breaker & Elec. Supply Inc.*, 106 F.3d 894 (9th Cir. 1997). Regardless, the main dispute concerned ILLC's overbroad proposed language. The Court told ILLC, "I'm not issuing your injunction because it's overbroad," it "is not an enforceable injunction and I wouldn't sign it because I don't know what it means." Dkt. 488 at 54:4–55:2. The Court instead directed the parties to "start with [IF's] draft," *id.* at 61:23, and ultimately adopted IF's proposed injunction. Dkt. 492 at 19; Dkt. 552 at 1–2. ILLC cannot charge IF for the cost of litigating

an overreaching request that the Court rejected.

In sum, ILLC's enormous investment of time in this case was not driven by IF, but by ILLC's own choices: its years-long jurisdictional challenge through petitions for rehearing and certiorari, broad discovery, multiple experts, extensive and largely unsuccessful motion practice, and an overbroad injunction request the Court refused to sign—compounded by inefficient staffing and excessive billing. *See White*, 2024 WL 4257640, at *2 (reduction justified where counsel "overlitigated a case or submitted a padded bill").[19]

**2. ILLC's Lost Motions Should Be Discounted**

Unsuccessful work is compensable only to the extent it "was a necessary step to [the] ultimate victory." *Cabrales v. County of Los Angeles*, 935 F.2d 1050, 1053 (9th Cir. 1991). "[T]he proper test is whether it was reasonable at the time to work on an ultimately unsuccessful motion rather than ask whether, in hindsight, the plaintiff could have prevailed without it." *Jacobson v. Persolve, LLC*, 2016 WL 7230873, at *11 (N.D. Cal. Dec. 14, 2016) (citation omitted).

Here, ILLC seeks substantial fees for unnecessary, unsuccessful motions, including:

- BHB's 29.4 hours and Wiley's 25.2 hours for twice unsuccessfully opposing IF's motion to amend its complaint (Dkts. 101, 149);
- BHB's 51.6 hours and Wiley's 5.4 hours for unsuccessfully opposing the striking of its own claim and defenses twice (Dkts. 117, 231);
- BHB's 18.9 hours and Wiley's 24.4 hours for unsuccessfully moving to revive that stricken claim by amendment (Dkt. 148);
- BHB's 10.5 hours and Wiley's 4.3 hours for unsuccessfully opposing the production of crime-fraud emails before the Magistrate Judge and this Court (Dkts. 222, 240);

---

[19] *Cataphora Inc. v. Parker* (a case applying California's statute for contractual fee awards) does not help ILLC. 848 F. Supp. 2d 1064, 1067 (N.D. Cal. 2012) (cited in Dkt. 529 at 9–10). There, the court declined to fault the claimant's substantial fees "absent a challenge to specific hours." *Id.* at 1070. By contrast, IF challenges specific hours here. And even *Cataphora* reduced unnecessary time, cutting the hours spent on dismissed claims and unsuccessful motion practice. *Id.* at 1070–71.

- BHB's 38.8 hours for unsuccessfully opposing the modification of the scheduling order to accommodate that crime-fraud production (Dkt. 238);
- BHB's 74.9 hours for unsuccessfully moving for sanctions and opposing the striking of that duplicative motion (Dkt. 301);
- BHB's 649.4 hours for entirely unsuccessfully moving for partial summary judgment based on arguments the Court found "border[ed] on the offensive" (Dkt. 311 at 31, 34); and
- BHB's 8.8 hours for untimely filing a second motion for JMOL (Dkt. 443).

*See* Dkt. 521-2 (at least 882.3 hours by BHB); Dkt. 553 (at least 59.3 hours by Wiley). None of these unsuccessful and repetitive motions was a "necessary step" to ILLC's victory. ILLC relitigated rulings it had lost, sought to revive a stricken claim, filed a sanctions motion the Court struck, and filed defective summary-judgment and JMOL motions. These unnecessary hours must be excluded.

Additionally, ILLC should not recover any fees for twice threatening IF with a motion for contempt of the injunction. Dkts. 526-51 to -54. ILLC spent approximately 36.4 hours worth $35,216 on those threats but never even brought that ill-conceived motion. Elings Decl. ¶ 8(b); Dkt. 522-2 (entries on June 1–2, 4, 8, 10, 12, 14–15, 19, 22, July 2, 10, 13, 21–22, 30–31, Aug. 3, 2026).

### 3. BHB's Billing Records Are Inadequate and Include Non-Compensable Time

"Block billing" refers to the aggregation of time spent on multiple tasks into a single billing entry rather than itemizing the time spent on each task. *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945 n.2 (9th Cir. 2007). Because block billing obscures "how much time was spent on particular activities," courts should "reduce hours that are billed in block format." *Id.* at 948. This concern is particularly significant here, where the Court must apportion fees among claims under *Cairns*, which is made difficult, if not impossible, by billing entries that combine multiple activities. Block billing also contravenes this Court's Standing Order, which requires fee applications to identify time spent "per task." Standing Order re Civil Cases § VII.

ILLC's counsel's block billing frustrates both these requirements.[20] BHB acknowledges that "each timekeeper recorded each day's tasks in a single billing entry."[21] Dkt. 521-1 ¶ 34. Only for this fee application did BHB retrospectively allocate those totals among tasks, and it did not submit those allocations, so the Court cannot verify them. *Id.* BHB's summary chart segregates only broad tasks and does not segregate recoverable claims as *Cairns* requires. Dkt. 521-2. And BHB performed this reconstruction 18 months after it began work, billing an additional 32.2 hours to do so.[22] Elings Decl. ¶ 8(b); Dkt. 522-2 (entries on May 17, July 27, Aug. 3, 5–7, 9, 2026). ILLC should not benefit from uncertainty created by its own inadequate records.

Even worse, BHB block-billed entire weeks and months in single entries, contradicting its sworn representation of daily entries. Dkt. 521-1 ¶ 34. Jonas N. Hagey billed exclusively by the month. Dkt. 522-2 (over 80 hours billed for "month ended" Jan. 2025, Apr. 2025, May 2025, Feb. 2026, Mar. 2026, Apr. 2026, May 2026, June 2026). Adam Cashman billed 40 to 90 hours for several entire weeks. *Id.* (entries "for week" of Mar. 1, Mar. 21, Mar. 28, 2026). Such entries make reasonable review impossible. *See Welch*, 480 F.3d at 948. Mr. Hagey's time, which carries the highest hourly rate (Dkt. 521-1 ¶ 30), should be excluded entirely. Unlike the solo practitioner in

---

[20] As one example, Gregory Washington's 12.1-hour entry on Feb. 25, 2026 includes internal team communications (one task category), trial prep (another task category), punitive damages (non-recoverable), and a witness on supplements and other topics (partly recoverable). Dkt. 522-2. For another example, Jonas N. Hagey's 17.5-hour entry for "month ended May 2026" includes strategy (one task category), post-trial motions (multiple task categories), settlement (non-recoverable), and fees (partly recoverable). *Id.*

[21] Wiley block-billed its time as well. *See* Dkt. 522-3.

[22] Those approximately 32.2 hours worth $32,770 should be non-recoverable. *See Jadwin v. County of Kern*, 767 F. Supp. 2d 1069, 1140 (E.D. Cal. 2011) (reducing fees-on-fees "[t]o account for the general lack of detail and excessive time spent preparing the original fee motion" and supplemental materials "which were necessitated by Plaintiff's counsel's failure to properly support and document the motion").

*Cataphora*, whose "specific and itemized" daily entries permitted "meaningful review" of his 1,569 claimed hours, 848 F. Supp. 2d at 1071, BHB's 13 timekeepers block-billed the vast majority of their 10,258.4 hours, including in weekly and monthly entries. Elings Decl. Ex. 3.

Many entries are also vague (*e.g.*, "Attention to correspondence," "Prepare for trial"), redacted, or blank. *E.g.*, Dkt. 522-2 (entries on Apr. 30, July 31, 2025, Feb. 28, July 21, 2026). Such entries are "too general for the Court to discern the nature of the work performed," much less whether the time was reasonably expended or whether it was devoted to recoverable work. *Richter v. Oracle Am., Inc.*, 2023 WL 8586690, at *7 (N.D. Cal. Dec. 8, 2023) (Freeman, J.).

IF therefore proposes a 30% discount for block-billed, aggregated, and vague entries. *See Lahiri v. Universal Music & Video Distrib. Corp.*, 606 F.3d 1216, 1222–23 (9th Cir. 2010) (affirming 30% reduction of block-billed hours); *Arcona, Inc. v. Farmacy Beauty, LLC*, 2021 WL 2414856, at *5 (C.D. Cal. June 14, 2021) (cutting 30% off blocked-billed hours in trademark case), *aff'd*, 2022 WL 1486822 (9th Cir. May 11, 2022); *Hawkins v. Berkeley Unified Sch. Dist.*, 2008 WL 11515278, at *14 (N.D. Cal. Nov. 20, 2008) (citing cuts up to 30% for vague billing). Approximately 97% of BHB's entries are block-billed, vague, or both, and applying a 30% discount to those entries yields an effective cut of 29% across all time entries. Elings Decl. ¶ 8(c).

Finally, clerical or administrative work is non-recoverable overhead, "even when such tasks are billed at a lower rate" by paralegals or assistants. *Chloe SAS v. Sawabeh Info. Servs. Co.*, 2015 WL 12763541, at *27 (C.D. Cal. June 22, 2015) (citation omitted); *see Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009) (clerical tasks "should have been subsumed in firm overhead rather than billed at paralegal rates").

ILLC's own declarations describe its paralegals and assistants[23] as performing clerical tasks

---

[23] BHB's five paralegals and assistants are: Cameron Baker, Riya Tapadiya, Wooju Chong, Tristyn Thomas, and Selin Surdum. Dkt. 521-2; Dkt. 521-1 ¶ 31. Wiley's fourteen paralegals and assistants are: Michael Conway, Hafsa Nadeem, Jasmine J. Nazaire, Maryann Xue, Elisabeth Patterson, Aidan Young, Quinton McElhaney, Stacie Hauza, Stacy Omosa, Ryan Lucas, Ritika Manathara, Hope Rawlson, Chow Paueksakon, and Alana McBane. Dkt. 553; Dkt. 521-8 ¶ 9(j)–(k).

like "case administration," "filing," and "managing the uploading of documents." Dkt. 521-8 ¶ 9(k); Dkt. 521-1 ¶ 31. BHB's five paralegals and assistants billed 3,144.5 hours worth $745,771, including 708.4 hours of "Case File Management," Dkt. 521-2, for tasks such as "set up new case as matter in J drive, Compulaw, Centerbase, and iManage," "print requested materials," and "e-file." Dkt. 522-2 (entries on Jan. 22, 28–29, 2025). Virtually all their entries are clerical and should be excluded. Elings Decl. Exs. 3, 4.[24] Likewise, all timekeepers' hours spent on "Case File Management" should be excluded.

**4. The Hourly Rates Are Excessive**

A reasonable hourly rate is guided by "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210–11 (9th Cir. 1986), *amended*, 808 F.2d 1373 (9th Cir. 1987). The Court "may rely on decisions by other courts awarding similar rates for work in the same geographical area by attorneys with comparable levels of experience." *Trujillo v. Orozco*, 2018 WL 1142311, at *2 (N.D. Cal. Mar. 2, 2018), *aff'd*, 790 F. App'x 96 (9th Cir. 2020).

BHB seeks hourly rates as high as $1,894 for partners and $833 for associates. Dkt. 521-1 ¶¶ 26, 30. By contrast, David Weslow of Wiley (a nationally recognized IP firm)—who has practiced trademark law for decades and was ILLC's lead lawyer before BHB—charged ILLC between $630 and $795 per hour. Dkt. 521-8 ¶¶ 2–6, 9(a). BHB seeks effective rates of $1,448.83 for Mr. Cashman and $1,893.75 for Mr. Hagey—roughly two to two-and-a-half times Mr. Weslow's highest rate. *Compare* Dkt. 521-1 ¶¶ 24, 30, *with* Dkt. 521-8 ¶ 9(a).[25]

Courts in this District, including this Court, award trademark attorneys significantly lower rates. *See Baskin-Robbins Franchising LLC v. Chun*, 2019 WL 5268883, at *2 (N.D. Cal. Oct. 17, 2019) (Freeman, J.) ($475/hour for partner and counsel, $375–$475/hour for associate); *Optrics Inc. v. Barracuda Networks Inc.*, 2021 WL 411349, at *7 & n.4 (N.D. Cal. Feb. 4, 2021) ($555–$600/hour for partners, $400–$475/hour for associates); *Telegram Messenger Inc. v. Lantah, LLC*,

---

[24] *Cf. White*, 2024 WL 4257640, at *4 (requiring defendant to "specify" clerical entries).

[25] Even BHB admits some clients pay lower rates than BHB's standard rates. Dkt. 521-1 ¶ 24.

2021 WL 179604, at *3 (N.D. Cal. Jan. 19, 2021) ($600/hour for partners, $500/hour for counsel, $400/hour for associates).[26] The 2025 AIPLA survey reports a median rate of $560/hour for California equity partners. Elings Decl. Ex. 5 at I-35.

The Court should reduce BHB's hourly rates to those approved in *Baskin-Robbins*, adjusted for inflation,[27] *i.e.*, $618 for partners and $488 for associates. 2019 WL 5268883, at *2. At a minimum, no BHB partner should be compensated above Mr. Weslow's highest rate of $795—the rate ILLC itself paid its experienced trademark counsel in this same case. Dkt. 521-8 ¶ 9(a).

Additionally, BHB should not recover the 464.8 hours claimed for Tushita Saraf at $575/hour. Dkt. 521-2. Ms. Saraf performed most of her work before her bar admission, and BHB provides no information about her qualifications. Dkt. 521-3 (entries from Feb. 13 to July 7, 2025); Elings Decl. Ex. 6 (June 23, 2025 admission); *see Jacobson*, 2016 WL 7230873, at *8 (excluding hours where movant "does not provide any information" on timekeeper's experience).

**C. ILLC Cannot Recover Non-Taxable Costs**

ILLC seeks $897,043 in non-taxable expenses that it claims are separate from the costs it requested to tax in its Bill of Costs. Dkt. 529 at 15. Nearly two-thirds of that amount, $572,061, is for expert witness fees. Dkt. 521-11 ¶ 5(a). ILLC cannot recover any of these expenses because (1)

---

[26] ILLC's cited cases on rates are inapposite because they do not involve "similar work." *Chalmers*, 796 F.2d at 1211. None are trademark cases. *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2017 WL 1047834, at *1 (N.D. Cal. Mar. 17, 2017) (consumer class action); *Koeppen v. Carvana, LLC*, 2024 WL 3925703, at *1 (N.D. Cal. Aug. 22, 2024) (labor class action); *QuickLogic Corp. v. Konda Techs., Inc.*, 2025 WL 1507097, at *1 (N.D. Cal. May 27, 2025) (patents), *amended*, 2025 WL 1918843 (N.D. Cal. July 11, 2025); *OpenGov, Inc. v. GTY Tech. Holdings Inc.*, 2019 WL 2010707, at *1 (N.D. Cal. May 7, 2019) (trade secrets); *Fleming v. Impax Lab'ys Inc.*, 2022 WL 2789496, at *1 (N.D. Cal. July 15, 2022) (securities class action) (all cited in Dkt. 529 at 13–14).

[27] *See* U.S. BUREAU OF LABOR STATISTICS, *CPI Inflation Calculator*, https://www.bls.gov/data/inflation_calculator.htm.

the Lanham Act does not permit recovery of non-taxable costs, and (2) ILLC fails to support the costs with any documentation and double-counts taxable and non-taxable costs.

**1. Non-Taxable Costs Are Non-Recoverable Under the Lanham Act**

"Under the Lanham Act, successful plaintiffs are entitled to 'the costs of the action' and, if the action is deemed 'exceptional,' 'reasonable attorney fees.'" *San Diego Comic Convention v. Dan Farr Prods.*, 807 F. App'x 674, 676–77 (9th Cir. 2020) (quoting 15 U.S.C. § 1117(a)). The recoverable costs do not include "litigation expenses beyond the six categories of 'costs' specified by Congress in the general costs statute." *Id.* at 677 (citing 28 U.S.C. §§ 1821, 1920).

Even in an exceptional case, the Lanham Act "conveys no authority to award costs . . . beyond those provided by §§ 1821 and 1920," such as "fees related to expert witnesses" or other non-taxable costs. *Id.* at 676–77; *see also Arcona*, 2021 WL 2414856, at *5; *Hansen Cold Storage Constr. v. Cold Sys., Inc.*, 2022 WL 1199271, at *8 (C.D. Cal. Feb. 11, 2022). This rule follows from the Supreme Court's unanimous holding that a plaintiff awarded fees under the Copyright Act cannot recover non-taxable "expenses such as expert witness fees, e-discovery expenses, and jury consultant fees."[28] *Rimini St., Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 337, 341 (2019).

ILLC concedes that recovery of expert fees under the Lanham Act is "unsettled." Dkt. 521-1 ¶ 69. ILLC's principal authority, *Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577 (9th Cir. 2010) (cited in Dkt. 529 at 15), hardly settles the issue. *Grove* interpreted the Fair Credit Reporting Act, not the Lanham Act, and involved modest out-of-pocket items such as postage, travel, and mediation services, not expert or jury consultant fees. *Id.* at 579. And *Grove* predated by a decade *Rimini* and *San Diego Comic*, which now foreclose the recovery of non-taxable expenses.[29]

---

[28] ILLC seeks the same non-taxable expenses rejected in *San Diego Comic* and *Rimini*: expert witness fees, discovery expenses, and jury consultant fees. Dkt. 521-11 ¶ 5(a), (d), (h).

[29] In a non-precedential and unpublished decision, a panel of the Ninth Circuit adhered to the pre-*Rimini* rule that non-taxable costs may be awarded as part of the attorney fees. *Barrett Bus. Servs., Inc. v. Colmenero*, 2025 WL 2048985, at *3 (9th Cir. July 22, 2025). *Barrett* is neither controlling

**2. ILLC Fails to Support and Double-Counts Non-Taxable Expenses**

"[T]he party seeking costs must submit adequate documentation to demonstrate that each cost is allowable." *Hesterberg v. United States*, 75 F. Supp. 3d 1220, 1227 (N.D. Cal. 2014); *see also Full Standard*, 2026 WL 2446788, at *3; *Echostar Satellite Corp. v. NDS Grp. PLC*, 2009 WL 814543, at *2 (C.D. Cal. Mar. 26, 2009). But ILLC provides no invoices, receipts, nor itemized breakdowns supporting any claimed expenses. Mr. Runyon's declaration merely gives lump-sum figures for broad categories, which are insufficient. Dkt. 521-11 ¶ 5.

That deficiency is especially problematic because nearly every claimed category of "non-taxable" expense mirrors a cost ILLC already sought in its pending Bill of Costs (Dkt. 494), including service of process fees; deposition transcripts and video recordings; discovery and document production costs; printing and delivery costs; hotel, travel, and witness expenses; expert witness fees; and trial graphics fees. *Compare* Dkt. 521-11 ¶ 5(a)–(g), (j), (m), *with* Dkt. 494-1 ¶¶ 4–5, 8–9, 13–14, 16, 18–24, 26–27. Without documentation, it is impossible to tell whether these claims differ. ILLC's unsupported, duplicative claim for non-taxable expenses should be rejected.[30]

## IV. CONCLUSION

The Court should award $585,641.67 for BHB's fees, $0.00 for Wiley's fees, and $0.00 in non-taxable litigation expenses. The BHB figure is derived by starting with BHB's claimed lodestar of $7,624,556.27 (Dkt. 521-2) and applying the following adjustments to its fee chart in sequence:

- excluding the time spent on unexceptional tasks before the summary-judgment decision (*supra* Part III.A.2);
- excluding the time spent on unexceptional settlement efforts (*supra* at 9 n.7);

---

nor persuasive here. *Barrett* overlooked that *Rimini* refused to award non-taxable costs even where the plaintiff recovered attorney fees. And *Barrett* did not distinguish or even cite *San Diego Comic*. ILLC's cited cases (Dkt. 529 at 15–17) suffer from the same flaws. *San Diego Comic* is more persuasive and faithful to the Supreme Court's unanimous and binding decision in *Rimini*.

[30] Similarly, ILLC claims over $35,000 for unidentified "local counsel fees" but fails to include their invoices or chart as required by the Standing Order re Civil Cases § VII. Dkt. 521-11 ¶ 5(p).

- excluding the time spent on unexceptional motions in limine and laches (*supra* at 10 n.8);
- excluding the time spent on unsuccessful tasks (*supra* Part III.B.2), and half the time spent on ILLC's post-trial motions (*supra* Part III.A.1);
- excluding the time spent on case file management (*supra* Part III.B.3);
- excluding the time spent by Mr. Hagey, paralegals and assistants (*supra* Part III.B.3), and Ms. Saraf (*supra* Part III.B.4);
- adjusting the hourly rates to $618 for partners and $488 for associates (*supra* Part III.B.4);
- applying a 35% across-the-board discount for unexceptional work on IF's fraud defense and ILLC's claims[31] (*supra* Part III.A.2);
- applying a 1% across-the-board discount for work on (i) USPTO proceedings, (ii) contempt threats, and (iii) retrospective segregation (*supra* at 9 n.6, 17, 18 n.22);[32] and
- applying a 29% across-the-board discount for block-billed and vague entries (*supra* Part III.B.3).[33]

The Wiley figure is $0 because all work before the summary-judgment decision is unexceptional, and Wiley's only post-summary-judgment work pertained to separate TTAB proceedings rather than this case. *Supra* Part III.A.2.

Revised fee charts pursuant to the Standing Order re Civil Cases § VII, with these revisions indicated in red, are attached as Exhibits 1 and 2 to the Elings Declaration.

---

[31] To avoid double-counting, these adjustments do not include additional across-the-board discounts for ILLC's non-recoverable claim for punitive damages. If the Court declines to adopt a 35% discount for ILLC's claims, the Court should at a minimum apply a 3% across-the-board discount for work on punitive damages. *Supra* Part III.A.1.

[32] These three categories amount to about 1% of BHB's fee request. Elings Decl. ¶ 8(b).

[33] As noted, these adjustments do not double-count. Each listed exclusion reduces time only to the extent such time has not already been excluded. The rate adjustment modifies the remaining hours. Each across-the-board discount applies separately to the resulting lodestar.

DATED: October 9, 2026

DAVIS WRIGHT TREMAINE LLP

By: /s/ G. Roxanne Elings
G. Roxanne Elings
Attorneys for Plaintiff/Counter-Defendant
IMPOSSIBLE FOODS INC.