Adam S. Cashman, Esq. (SBN: 255063)
cashman@braunhagey.com
J. Noah Hagey, Esq. (SBN: 262331)
hagey@braunhagey.com
Greg Washington, Esq. (SBN: 318796)
gwashington@braunhagey.com
J. Tobias Rowe, Esq. (SBN: 305596)
rowe@braunhagey.com
Oliver McNicholas, Esq. (SBN: 363554)
omcnicholas@braunhagey.com
BRAUNHAGEY & BORDEN LLP
747 Front Street, 4th Floor
San Francisco, CA 94111
Telephone: (415) 599-0210

Marissa R. Benavides (*pro hac vice* admission)
benavides@braunhagey.com
BRAUNHAGEY & BORDEN LLP
200 Madison Avenue, 23rd Floor
New York, NY 10016
Telephone: (646) 829-9403

*Attorneys for Impossible LLC*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

IMPOSSIBLE FOODS INC.,

Plaintiff / Counter-Defendant,

v.

IMPOSSIBLE LLC,

Defendant / Counter-Plaintiff.

Case No. 5:21-cv-02419-BLF (SVK)

**IMPOSSIBLE LLC'S REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES**

**Date:** January 7, 2027
**Time:** 9:00 a.m.
**Judge:** Hon. Beth Labson Freeman
**Ctrm.:** 1, 5th Floor

## TABLE OF CONTENTS

INTRODUCTION ........ 1

ARGUMENT ........ 2

I. THE LODESTAR AMOUNT OF $8,334,621.56 IN FEES IS REASONABLE ........ 2

A. Impossible LLC's Fee Request Has Already Been Apportioned ........ 2

1. Fees Attributable Solely to Punitive Damages Have Already Been Excluded, and Intertwined Fees Are Fully Recoverable ........ 2

2. There are No "Unsuccessful Claims" to Exclude ........ 3

3. There are No "Unexceptional Claims" to Exclude ........ 4

B. The Hours Expended Were Reasonable and Necessary ........ 6

1. Impossible Foods's Objections Are Without Merit ........ 7

2. Impossible LLC's Motion Practice En Route to Victory is Compensable 10

3. Impossible LLC's Detailed Billing Entries are Fully Compensable ........ 11

C. The Hourly Rates of Impossible LLC's Counsel Are Reasonable ........ 13

II. IMPOSSIBLE LLC IS ENTITLED TO RECOVER ITS LITIGATION EXPENSES ........ 14

A. Impossible LLC is Entitled to Recover Non-Taxable Expenses ........ 14

B. The Court Should Award Impossible LLC its Expert Witness Fees ........ 15

CONCLUSION ........ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arcona, Inc. v. Farmacy Beauty, LLC*,
2022 WL 1486822 (9th Cir. May 11, 2022) .......... 5

*Barrett Bus. Servs., Inc. v. Colmenero*,
2025 WL 2048985 (9th Cir. July 22, 2025) .......... 15

*Cabrales v. Cnty. of Los Angeles*,
935 F.2d 1050 (9th Cir. 1991) .......... 5, 6, 10, 11

*City of Burlington v. Dague*,
505 U.S. 557 (1992) .......... 2

*City of Riverside v. Rivera*,
477 U.S. 561 (1986) .......... 10

*Dropbox, Inc. v. Thru Inc.*,
2017 WL 914273 (N.D. Cal. Mar. 8, 2017) .......... 8, 15

*Earthquake Sound Corp. v. Bumper Indus.*,
352 F.3d 1210 (9th Cir. 2003) .......... 9

*Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*,
915 F. Supp. 2d 1179 (D. Nev. 2013) .......... 9

*Fischer v. SJB-P.D. Inc.*,
214 F.3d 1115 (9th Cir. 2000) .......... 12

*Gilead Scis., Inc. v. Merck & Co.*,
2017 WL 3007071 (N.D. Cal. July 14, 2017) .......... 12

*Gonzalez v. City of Maywood*,
729 F.3d 1196 (9th Cir. 2013) .......... 12

*Grove v. Wells Fargo Fin. Cal., Inc.*,
606 F.3d 577 (9th Cir. 2010) .......... 15

*Harlow v. Metro. Life Ins. Co.*,
379 F. Supp. 3d 1046 (C.D. Cal. 2019) .......... 9

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) .......... 7, 12

*Iconic Mars Corp. v. Kaotica Corp.*,
2025 WL 2440887 (S.D. Cal. Aug. 25, 2025) .......... 14

*Jacobson v. Persolve, LLC*,
2016 WL 7230873 (N.D. Cal. Dec. 14, 2016) .......... 3, 11

*Kilopass Tech., Inc. v. Sidense Corp.*,
82 F. Supp. 3d 1154 (N.D. Cal. 2015) .......... 13

*Love v. Associated Newspapers, Ltd.*,
611 F.3d 601 (9th Cir. 2010) .......... 3

*MacDonald v. Ford Motor Co.*,
2016 WL 3055643 (N.D. Cal. May 31, 2016) .......... 9

*McKnight v. Hinojosa*,
54 F.4th 1069 (9th Cir. 2022) .......... 10

*Mendez v. Cnty. of San Bernardino*,
540 F.3d 1109 (9th Cir. 2008) .......... 12

*Missouri v. Jenkins by Agyei*,
491 U.S. 274 (1989) .......... 13, 14

*Monster Energy Co. v. Vital Pharms., Inc.*,
2023 WL 8168854 (C.D. Cal. Oct. 6, 2023) .......... 3, 8

*Moore v. James H. Matthews & Co.*,
682 F.2d 830 (9th Cir. 1982) .......... 13

*Moreno v. City of Sacramento*,
534 F.3d 1106 (9th Cir. 2008) .......... 7, 9

*O'Neal v. City of Seattle*,
66 F.3d 1064 (9th Cir. 1995) .......... 11

*Paige LLC v. Shop Paige LLC*,
2024 WL 3594450 (C.D. Cal. July 10, 2024) .......... 5, 7, 15

*Rimini St., Inc. v. Oracle USA, Inc.*,
586 U.S. 334 (2019) .......... 15

*San Diego Comic Convention v. Dan Farr, Prods.*, 2019 WL 1599188 (S.D. Cal. Apr. 15, 2019) .......... 9

*San Diego Comic Convention v. Dan Farr, Prods.*, 807 F. App’x 674 (9th Cir. 2020) .......... 5

*Secalt S.A. v. Wuxi Shenxi Const. Mach. Co., Ltd.*,
668 F.3d 677 (9th Cir. 2012) .......... 12, 15

*Shame on You Prods., Inc. v. Banks*,
2016 WL 5929245 (C.D. Cal. Aug. 15, 2016) .......... 11

*SunEarth, Inc. v. Sun Earth Solar Power Co.*,
839 F.3d 1179 (9th Cir. 2016) .......... 5, 10

*Taylor v. Google LLC*,
2026 WL 2464274 (N.D. Cal. Aug. 21, 2026) .......... 14

Statutes

15 U.S.C. § 1117 .......... 3

15 U.S.C. § 1119 .......... 4

28 U.S.C. § 1821 .......... 14, 15

28 U.S.C. § 1920 .......... 14, 15

## INTRODUCTION

` The Court has twice ruled that Impossible LLC is entitled to recover its attorneys' fees in this case, first when the Court deemed this an "exceptional case" in the Fee Order (Dkt. 492) and again when it denied Impossible Foods's motion for reconsideration and rejected its "bald mischaracterization" of the Fee Order. (Dkt. 512 at 38.) The only issue remaining is the amount of those fees, as determined by the hours Impossible LLC's counsel reasonably spent and counsel's market rates. As demonstrated in Impossible LLC's Motion, that amount is $8,334,621.56 in fees and $897,043.46 in non-taxable expenses. Impossible LLC has also documented its additional $171,867 in recoverable fees preparing its fee application in the Supplemental Declaration of Adam Cashman ("Supp. Cashman Decl."), which accompanies this Reply. (*Id.* ¶ 3, Exs. 1, 2.).

Under the guise of contesting the amount of fees, Impossible Foods's Opposition actually seeks to nullify the Fee Order. It proposes a series of arbitrary and unsupported across-the-board reductions, then stacks them on top of one another to produce a ***92% cut*** in Impossible LLC's fees to $585,641.67. The reductions are groundless individually and absurd in the aggregate. Impossible Foods proposes that all fees prior to summary judgment be excluded, even though the Court found the "totality of the case" exceptional. It proposes that Impossible LLC's fees be reduced by 35% to exclude work on Impossible LLC's infringement claims, even though Impossible Foods's willful infringement figured prominently in the Court's "exceptional case" finding. It proposes that BHB's partner rates be cut by more than 50% and its associate rates by more than 40%, even though BHB's rates fall squarely within the mainstream for skilled commercial and IP litigation counsel in this District. And it proposes a 30% discount for supposed "block billing" even though BHB's time entries exceed the level of detail courts deem sufficient. Impossible Foods's other reductions, like eliminating every single hour billed by paralegals and multiple attorneys, are equally without merit.

The theme of Impossible Foods's Opposition is that Impossible LLC's counsel simply should have done less – taken less discovery, let motions go uncontested and discovery disputes go unresolved, foregone expert opinion, and prepared less diligently for trial. But trademark litigation in federal court is a serious matter. An attorney who intends to win must carefully craft claims, doggedly pursue evidence in discovery, engage strong experts to provide relevant expertise, bring

and oppose all manner of contested motions, and prepare to make an effective presentation at trial. `An attorney who skimps on these steps risks the fate of Impossible Foods: showing up at trial without evidence to support its claims and defenses and mounting an "exceptionally poor showing." (Dkt. 512 at 39.) Impossible Foods was willing to make that wager, knowing its insurer would foot the bill. But Impossible LLC did not have that luxury, and Impossible Foods's refusal to entertain settlement forced Impossible LLC to choose between forfeiting and going to trial. So it litigated to win, and the wisdom of that approach was borne out in the results: Impossible LLC prevailed on all claims at trial, defeated every claim and defense asserted by Impossible Foods, won substantial damages and a permanent injunction, and obtained a fee-shifting order.

The Court should award BHB and Wiley's actual market-rate fees for the work that produced this result, less the voluntary reductions Impossible LLC has made. That Impossible Foods has not proposed a serious alternative amount only further confirms that the Court should award the full lodestar figure, which is presumptively reasonable as a matter of law.

## ARGUMENT

### I. THE LODESTAR AMOUNT OF $8,334,621.56 IN FEES IS REASONABLE

Impossible Foods does not dispute that there is a "strong presumption that the lodestar represents the reasonable fee." *City of Burlington v. Dague*, 505 U.S. 557, 562-64 (1992) (internal quotation marks omitted). Its arguments in opposition fail to rebut this strong presumption.

#### A. Impossible LLC's Fee Request Has Already Been Apportioned

Impossible Foods's primary argument is that the Court should exclude the vast majority of fees sought because they were supposedly not apportioned. But this fails because (1) Impossible LLC's request already correctly apportioned fees, (2) there were no "unsuccessful claims" to exclude, and (3) there were no "unexceptional claims" to apportion in this exceptional case.

##### 1. Fees Attributable Solely to Punitive Damages Have Already Been Excluded, and Intertwined Fees Are Fully Recoverable

Impossible Foods does not dispute that time spent on Impossible LLC's claim for trademark infringement under California law is "inextricably intertwined" with federal infringement claims and thus compensable. (*See* Mot. at 7-8.) It nonetheless argues that Impossible LLC did not

sufficiently exclude time spent on punitive damages. (Opp. at 6.) But that is wrong: the fee request `***already*** excludes time devoted uniquely to punitive damages. (Dkt. 521-1, Cashman Decl. ¶ 54.)

Impossible Foods purports to identify an additional 271 hours, but that is obviously incorrect because the entries tagged in Impossible Foods's spreadsheet do not relate solely to punitive damages, and some do not even mention punitive damages at all. (Dkt. 556-1, Ex. 3.) Moreover, time spent demonstrating Impossible LLC's *entitlement* to punitive damages is compensable because that work overlapped and was inextricably intertwined with time spent establishing Impossible Foods's willful infringement on the Lanham Act claims. *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 614 (9th Cir. 2010) (fees recoverable for claims that "involve a common core of facts or [are] based on related legal theories"). Thus, the fact that some entries mention punitive damages does not mean they are non-compensable. Regardless, Impossible LLC has made additional reductions that address any possible concern. (Supp. Cashman Decl. ¶ 2.)

**2. There are No "Unsuccessful Claims" to Exclude**

Impossible Foods is further mistaken in its assertion that time spent on purportedly "unsuccessful claims" should be excluded. (Opp. at 5-6.) As an initial matter, there were no unsuccessful claims to exclude: Impossible LLC prevailed on every cause of action that was tried to jury. (Dkt. 459.) Impossible Foods seeks to shift the focus to various interim motions on which Impossible LLC did not categorically prevail (Opp. at 16), but such interim motions are not "claims" – they represent, at most, steps along the way to resolving a claim, which is the subject of the statutory "exceptional case" standard. 15 U.S.C. § 1117. Indeed, Impossible Foods's own cited authority holds that a prevailing party is entitled to recover fees even for unsuccessful motions if it was "reasonable at the time" to work on them. *Jacobson v. Persolve, LLC*, 2016 WL 7230873, at *11 (N.D. Cal. Dec. 14, 2016). Impossible LLC's challenge to personal jurisdiction clearly met that standard, as demonstrated by the fact that it was granted before reversal on appeal. (Dkt. 50 at 14.)

Similarly, a request for enhanced damages is not a separate "claim," and any lack of interim success does not diminish Impossible LLC's entitlement to recover fees incurred in the course of litigating and prevailing on all claims asserted in this exceptional case. *See Monster Energy Co. v. Vital Pharms., Inc.*, 2023 WL 8168854, at *15–16, *23 (C.D. Cal. Oct. 6, 2023) (awarding full

$20,972,953.90 lodestar despite denial of enhanced damages). That also applies to Impossible `LLC's claim for cancellation of the trademark application under 15 U.S.C. § 1119, which was not an independent cause of action, but rather an equitable remedy for infringement that the Court declined to impose in deference to the TTAB, even though the liability predicates for such relief were proven. *San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 65 F.4th 1012, 1037 (9th Cir. 2023) (statute provides "relief to a party who has proved infringement"). Impossible Foods did not prevail on any cause of action at trial and cannot reduce the lodestar amount by re-labelling a few interim skirmishes it did not lose as "claims" that should be excluded.

**3. There are No "Unexceptional Claims" to Exclude**

Impossible Foods next argues that the Court should reduce the fee award to account for so-called "unexceptional claims." (Opp. at 7-9.) But there were no such claims in this "exceptional ***case***." (Dkt. 492 at 14.) Instead—and despite already having been rebuked once for its "bald mischaracterization" of the Court's Order—Impossible Foods ventures down that road once more by asserting that the Court found the case "exceptional" solely as to Impossible Foods's "trial presentation" on its "abandonment defense and affirmative infringement claims." (Opp. at 7-9.) In this revisionist history, Impossible LLC should not recover any fees for any time spent litigating its successful trademark infringement claims, nor for any of the discovery it conducted to develop its winning evidence, nor for any of the work during the entire history of the litigation leading up to summary judgment, nor even for trial-preparation tasks like preparing or arguing motions *in limine*. (Opp. at 8-10 & n.8.) This unjustified interpretation would effectively negate the Fee Order.

To call this yet another "bald mischaracterization" of the Court's Order is to put it mildly. The Court's exceptional-case finding was not limited to Impossible Foods's abandonment defense and infringement claims, nor was it confined to trial. As the Court explained, it found the case exceptional because it "agree[d] with the jury that there is evidence that Impossible [Foods] acted willfully," found that Impossible Foods's "abandonment defense and affirmative infringement claims were exceptionally weak, particularly as presented to the jury at trial," found that "considerations of fairness and compensation favor awarding attorneys' fees," and "considered the totality of the case, including by weighing the seriousness of Impossible Foods's conduct and its

willful infringement[.]" (Dkt. 492 at 14.) In rejecting Impossible Foods's motion for `reconsideration, the Court confirmed that "the totality of the circumstances in this case made it exceptional," that the finding was not limited to the "illustrative example[s]" of deficiencies identified in the Order, and that the "exceptional manner in which [Impossible Foods] has litigated this case" provided further support. (Dkt. 512 at 37-38 & n.5.)

Because the Court found the case exceptional as a whole, Impossible LLC is entitled to recover all fees on both parties' Lanham Act claims. *San Diego Comic Convention v. Dan Farr Prods.*, 807 F. App'x 674, 676 (9th Cir. 2020) (affirming fee award "related to the entirety of the case," and rejecting argument that the district court had to "articulate causal connections between the misconduct that rendered the case exceptional and the particulars of the fee award"); *Arcona, Inc. v. Farmacy Beauty, LLC*, 2022 WL 1486822, at *2 (9th Cir. May 11, 2022) (prevailing party who defeated exceptional infringement claim was also entitled to recover for separate Lanham Act counterclaims). That includes fees for Impossible LLC's claims for trademark infringement, which the Court cited as a basis for the exceptional case finding. It also includes fees for Impossible Foods's claims for infringement and its abandonment defense, as Impossible Foods itself concedes. And it also includes fees incurred in defeating Impossible Foods's fraud defense, which was "a necessary step to [Impossible LLC's] ultimate victory" on its infringement claims. *Cabrales v. Cnty. of Los Angeles*, 935 F.2d 1050, 1053 (9th Cir. 1991).

Impossible Foods's argument that no fees can be awarded for the fraud defense because the court did not find it "frivolous" (Opp. at 7, 9) is without merit because a finding of exceptionality does not require frivolousness or bad faith. *See SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1180–81 (9th Cir. 2016) (en banc). Instead, after deeming a case exceptional as a whole, courts regularly award fees for all Lanham Act claims without conducting an individualized, claim-by-claim analysis—which would make little sense in any event given the overlapping nature of proof involved in the claims asserted here. *See Arcona*, 2022 WL 1486822, at *2; *Paige LLC v. Shop Paige LLC*, 2024 WL 3594450, at *6–8 (C.D. Cal. July 10, 2024) (awarding fees for entire case based on "willful infringement, unreasonable conduct throughout this litigation, and weak legal positions on the merits (not frivolous but bordering on the frivolous)"). In the cases cited by

Impossible Foods, the plaintiff lost multiple claims (*Fifty-Six Hope Road*) or the court confined its `own exceptionality finding to a discrete part of the case: two claims (*Cairns*), particular patents and a single motion (*Universal*; *Power Analytics*), or the period after summary judgment (*Sazerac*). (Opp. at 7-8.) And *Full Standard* (Opp. at 10) did not arise under the Lanham Act . None supports reducing the fee award here because Impossible LLC prevailed at trial and the Court found that multiple factors rendered the "totality of the case" exceptional. (Dkt. 492 at 14.)

Impossible Foods's suggestion that the Court should limit fees to work performed after the November 3, 2025 summary-judgment ruling is equally baseless. (Opp. at 8–9.) The Court has already held that the denial of summary judgment "does not, as Impossible Foods now contends, preclude an award of attorneys' fees." (Dkt. 492 at 13.) And the circumstances that render this case exceptional long predated summary judgment. Impossible Foods's willful infringement began years earlier, when it "learned of Mr. Runyon's trademark registrations during Impossible Foods's initial trademark search" and infringed anyway. (*Id*. at 12.) After the suit began, Impossible Foods continued its willful infringement until it was finally enjoined. It lodged infringement claims and forced Impossible LLC to defend them through trial despite their lack of support. Indeed, its own witnesses did not believe there was anything confusing about Impossible LLC's products and failed to adduce evidence on the *Sleekcraft* factors. (*See, e.g.,* Trial Tr. 607:6-22.) Impossible Foods's only defenses at trial – abandonment and fraud – were unsupported by evidence and also failed.

Forcing a trial on all of these issues required Impossible LLC to incur fees through every stage of litigation. As the Court noted, compensation favors a fee award based on the millions of dollars Impossible LLC spent "during the prosecution of this case," not during trial alone. (Dkt. 492 at 14.) That was manifestly correct, as fees are recoverable for all "services that contribute to the ultimate victory in the lawsuit." *Cabrales*, 935 F.2d at 1052. The work pre-dating summary judgment built the record on which Impossible LLC won at trial. Impossible Foods's cutoff would leave that work uncompensated and defeat the purpose of fee-shifting under the Lanham Act.

**B. The Hours Expended Were Reasonable and Necessary**

The hours that Impossible LLC's counsel spent litigating this case to victory were reasonable. Impossible Foods does not dispute the rule in this Circuit that "the court should defer to

the winning lawyer's professional judgment as to how much time [they] w[ere] required to spend `on the case" because "[they] won, and might not have, had [they] been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). And contrary to Impossible Foods's assertion that the Court must audit hours "task by task," a court facing a "voluminous" fee request for an entire case "need not engage in a line-by-line analysis." *Paige*, 2024 WL 3594450, at *8. Fee petitions "should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). The hours spent were reasonable in this hard-fought case that spanned more than five years, and Impossible Foods's arguments fail.

**1. Impossible Foods's Objections Are Without Merit**

Impossible Foods lodges a series of objections in its brief, none of which are viable.

***Impossible LLC's Payment Status is Irrelevant***. Impossible Foods first argues that Impossible LLC should not recover fees because it has not yet paid the full amount. (Opp. at 11.) The Court has already rejected the argument that Mr. Runyon was required to "impoverish himself to Impossible Foods's satisfaction" in order for Impossible LLC to recover fees. (Dkt. 512 at 39.) Impossible Foods cites no authority holding that contingent or non-contingent status means that an attorney's hours are not subject to "economic discipline." (Opp. at 11.) To the contrary, the Ninth Circuit holds that "lawyers are not likely to spend unnecessary time on contingency fee cases," so Impossible Foods's allegation does not help its cause. *Moreno*, 534 F.3d at 1112.

***Impossible Foods's Staffing Criticisms are Baseless***. Impossible Foods next argues Impossible LLC should have staffed the case differently by having senior lawyers do less work on critical briefs and client counseling. (Opp. at 12.) The Ninth Circuit disapproves such micro-managing. *See Moreno*, 534 F.3d at 1114 (court "may not set the fee based on speculation as to how other firms would have staffed the case"). And survey data confirms BHB's staffing was leaner than average, with just 24% of hours by partners (and 11% by counsel) compared to the national average of 38% by partners in trademark litigation. (Supp. Cashman Decl. Ex. 4 at 252.) The wisdom of Impossible LLC's staffing was borne out in the results. Impossible Foods's cases (*Broomfield*, *Che*, and *White*) did not involve comparable claims and were not tried. (Opp. at 12.)

***Wiley Did Different Work than BHB***. Impossible Foods is also mistaken in its claim that

BHB's hours were excessive in comparison to Wiley. (Opp. at 12 & n.13.) The comparison fails `because BHB's much larger scope of work, which included the bulk of fact discovery all the way through trial, necessarily required more time. (Dkt. 521-1, Cashman Decl. ¶¶ 4, 36.)

***Impossible Foods's Fees are a Poor Reference Point***. Impossible Foods's comparison of its own attorneys' fees to those of Impossible LLC also fails. (Opp. at 12 n.14.) Impossible Foods's counsel may have spent fewer hours, but this effort resulted in an "exceptionally poor showing" in which Impossible Foods failed to substantiate its claims and defenses. (Dkt. 512 at 39.) A losing party's hours "do[] not necessarily indicate whether the hours expended by the party seeking fees were excessive" due to "the possibility that the prevailing party's attorney—who, after all, did prevail—spent more time because she did better work." *Dropbox, Inc. v. Thru Inc.*, 2017 WL 914273, at *5 (N.D. Cal. Mar. 8, 2017), *aff'd,* 728 F. App'x 717 (9th Cir. 2018). Moreover, Impossible Foods submits no time entries or documentation to support its tabulation, instead resting on a carefully-worded declaration that leaves open the possibility of additional hours that were not "billed" to Impossible Foods – such as amounts billed to its insurer. (Dkt. 555-1, Elings Decl. ¶ 9.)

***Similar Cases Awarded Greater Fees***. Impossible Foods is further mistaken that the requested fee award would be out of line with other Lanham Act cases. Courts regularly award similar or higher fees in hard-fought Lanham Act cases that culminate in trial or judgment on the merits. *See Monster*, 2023 WL 8168854, at *22 (counsel "reasonably expended tens of thousands of hours" in litigating Lanham Act claims through trial); Mot. at 7 (collecting cases). Impossible Foods attempts to downplay these fee awards by dividing them across the number of years each case was pending to yield a fictional "per year" rate. (Opp. at 12–13). But that arithmetic is meaningless because work on a case is not spread out evenly and instead is weighted toward discovery, dispositive motion practice, and especially trial. BHB completed all of this and tried the case in just 18 months, so it reasonably and necessarily incurred all fees for those efforts within that time frame. Finally, Impossible Foods's citation to the AIPLA table is inapposite because it includes matters that resolved "pre-trial" and does not report California data. (Dkt. 555-6 at 280.)

***There is No "Proportionality" Requirement***. Impossible Foods also mistakenly argues the fee award should be reduced because Impossible LLC recovered "only" $1.5 million in damages

and a permanent injunction. (Opp. at 13.) But that overlooks both that Impossible LLC obtained the `best possible defense result as to Impossible Foods's claims—a full verdict in its favor and no liability—and that there is no requirement that a Lanham Act fee award be proportional to the monetary relief awarded. *See San Diego Comic Convention v. Dan Farr Prods.*, 2019 WL 1599188, at *2, *20 (S.D. Cal. Apr. 15, 2019) (awarding $3.7 million in attorneys' fees where jury awarded $20,000 in damages), *aff'd in part, vacated in part*, *remanded,* 807 F. App'x 674, 676–77 (9th Cir. 2020) (affirming attorneys' fees); *Earthquake Sound Corp. v. Bumper Indus.*, 352 F.3d 1210, 1212, 1219 (9th Cir. 2003) (affirming fees of more than four times infringer's total sales, holding "small amount of profit" "does not require lowering the amount of the award"). Courts recognize "fees often may exceed the monetary recovery because the plaintiff obtains other, less tangible benefits such as injunctive relief or vindication and protection of his or her intellectual property rights." *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 915 F. Supp. 2d 1179, 1190 (D. Nev. 2013), *aff'd,* 778 F.3d 1059 (9th Cir. 2015). That was the case here: Impossible LLC defeated Impossible Foods's claims and also won substantial damages, obtained a permanent injunction, and protected its trademark registrations against cancellation claims. Impossible Foods's non-Lanham Act authorities (*Flores*, *Operating Engineers*, and *McGinnis*) are inapposite here. (Opp. at 13.)

***The "Miscellaneous" Categories are Fully Compensable***. Impossible Foods also objects in passing to BHB's time for tasks grouped under the "Miscellaneous" heading specified by the Standing Order (Opp. at 11). These tasks are all compensable. Internal team communications are compensable because "intra-office conferences are not only to be expected, but will often result in a savings of attorney time by ensuring that all attorneys on a team are kept apprised of important information about the case[.]" *MacDonald v. Ford Motor Co.*, 2016 WL 3055643, at *4 (N.D. Cal. May 31, 2016). Reviewing the case file and curating critical materials is compensable because "no reasonable attorney could provide meaningful or ethical litigation support without being familiar with the critical documents." *Harlow v. Metro. Life Ins. Co.*, 379 F. Supp. 3d 1046, 1057 (C.D. Cal. 2019). Most of the "case file management" tasks were handled efficiently at lower rates by paralegals and are compensable, as detailed in Section B.3, *infra*. And legal and factual research are compensable because they are essential parts of litigating any case. *See Moreno*, 534 F.3d at 1112–

14 (vacating cuts to "research" and "investigation" time).

` ***Settlement Efforts are Compensable***. Impossible Foods's objection to fees for settlement efforts (Opp. at 9 n.7) also fails. *See McKnight v. Hinojosa*, 54 F.4th 1069, 1077 (9th Cir. 2022) (affirming "fees for hours spent pursuing unsuccessful settlements").

***Impossible Foods Was the Main Driver of Fees.*** Impossible Foods's assertion that Impossible LLC's "own decisions" were the main driver of fees gets it backwards. (Opp. at 14.) It also ignores the forest for the trees: Impossible LLC had *no option* but to litigate, because Impossible Foods initiated this action, repeatedly amended its complaint to expand its claims and relief sought, and never presented any meaningful offramp to settlement. Unwilling to be bullied into submission, Impossible LLC went the distance because that was its only alternative. A party "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the [opponent] in response." *City of Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986) (plurality op.). Impossible Foods's attempt to fault Impossible LLC for taking basic steps like filing motions, serving discovery, and seeking post-trial relief fails because Impossible LLC reasonably spent time on these tasks in the pursuit of its victory. *See Cabrales*, 935 F.2d at 1052 (fees recoverable for "services that contribute to the ultimate victory in the lawsuit"); *infra* Section B.2.

Impossible Foods's suggestion that its counterclaims did not "expand the scope" of the case (Opp. at 15) is particularly galling. After the case had already been pending for years, Impossible Foods added additional claims against Impossible LLC for trademark infringement, and then later amended its complaint ***again*** to seek cancellation of Impossible LLC's trademark registrations. (Dkts. 103, 151 at 35–37) That forced Impossible LLC to incur substantial fees conducting discovery, litigating motions, retaining a damages expert, and working up defenses. By contrast, the new claims were virtually cost-free for Impossible Foods, which never bothered to substantiate them and arrived at trial without evidence on multiple key elements. That kind of extreme asymmetry cries out for a full award of fees. *See SunEarth*, 839 F.3d at 1181 (courts consider "the need in particular circumstances to advance considerations of compensation and deterrence").

**2. Impossible LLC's Motion Practice En Route to Victory is Compensable**

Impossible Foods next asks the Court to disallow hours spent on various motions for the

sole reason that Impossible LLC did not win all of them. (Opp. at 16–17.) The very cases `Impossible Foods cites foreclose this argument. A party "who is unsuccessful at a stage of litigation that was a necessary step to her ultimate victory is entitled to attorney's fees even for the unsuccessful stage," because "“[r]are, indeed, is the litigant who doesn't lose some skirmishes on the way to winning the war" and "losing is part of winning." *Cabrales*, 935 F.2d at 1053. The question is "whether it was reasonable at the time to work on an ultimately unsuccessful motion." *Jacobson*, 2016 WL 7230873, at *11 (citation omitted). Impossible Foods's argument that a party "cannot properly seek to recover fees incurred in motions [it] lost," is "foreclosed by Ninth Circuit precedent." *Shame on You Prods., Inc. v. Banks*, 2016 WL 5929245, at *17 (C.D. Cal. Aug. 15, 2016), *aff'd*, 893 F.3d 661 (9th Cir. 2018).

Every motion Impossible Foods challenges is compensable under this standard. Nearly three-quarters of the challenged hours went to Impossible LLC's motion for summary judgment on Impossible Foods's claims for infringement, fraud, and abandonment (Opp. at 17; Dkt. 311 at 18–33), the same claims on which Impossible LLC ultimately prevailed. (Dkt. 459 at 2–4, 6). The Court denied the motion because "[t]riable issues of fact preclude summary judgment" (Dkt. 311 at 18), not because the motion lacked a legal basis. Impossible Foods quotes the Court's statement that a single abandonment argument "border[ed] on the offensive" (Opp. at 17), but trial proved that Impossible Foods's abandonment claim was indeed baseless. (Dkt. 492 at 13). The remaining motions were equally tied to the claims tried: Impossible LLC opposed the amendments that added the infringement and cancellation claims (Dkts. 101, 149), defended its own counterclaim and defenses (Dkts. 117, 148, 231), contested the document production tied to Impossible Foods's fraud claim(Dkts. 222, 238, 240; Dkt. 459 at 2), and investigated violations of the injunction. None of that work was "entirely distinct and separate" from the claims on which Impossible LLC prevailed and it is properly included. *O'Neal v. City of Seattle*, 66 F.3d 1064, 1069 (9th Cir. 1995).

**3. Impossible LLC's Detailed Billing Entries are Fully Compensable**

Impossible Foods asks the Court to cut 29% of BHB's fees, more than $2.2 million, on the theory that 97% of BHB's entries are "block-billed, vague, or both." (Opp. at 19; Dkt. 555-1 ¶ 8(c).) But the law does not require what Impossible Foods demands. "[C]ounsel 'is not required to

record in great detail how each minute of their time was expended'" and entries listing "tasks `performed over multi-hour spans" are compensable. *Secalt S.A. v. Wuxi Shenxi Const. Mach. Co., Ltd.*, 668 F.3d 677, 690 (9th Cir. 2012) (quoting *Hensley*, 461 U.S. at 437 n. 12.) Accordingly, this Court declined to reduce more than 12,000 block-billed hours because "the descriptions in the block-billed entries reflect itemized statements of the specific tasks counsel undertook." *Gilead Scis., Inc. v. Merck & Co.*, 2017 WL 3007071, at *8 (N.D. Cal. July 14, 2017) (Freeman, J.). BHB's daily entries provide the same itemized details, as Impossible Foods's own example shows: the Washington entry it singles out names each task performed in the same manner as the billing entries approved in *Gilead*. (Opp. at 18 n.20.) Even if Impossible Foods had identified any inadequately detailed entries (it has not), its proposed "across the board" reduction of nearly all entries is inappropriate. *Mendez v. Cnty. of San Bernardino*, 540 F.3d 1109, 1129 (9th Cir. 2008) ("[T]he use of block billing does not justify an across-the-board reduction or rejection of *all* hours"), *overruled on other grounds by Arizona v. ASARCO LLC*, 773 F.3d 1050 (9th Cir. 2014).

Impossible Foods's other objections fail. *First*, BHB's daily entries do not "contravene[]" the Standing Order's requirement for a summary chart. (Opp. at 17.) BHB recorded its time contemporaneously and then allocated those recorded hours among the task categories Section VII of the Standing Order. (Dkt. 521-1 ¶¶ 33–34.) Fee requests may rest on "reconstructed records developed by reference to litigation files." *Fischer v. SJB-P.D. Inc.,* 214 F.3d 1115, 1121 (9th Cir. 2000) (citation omitted). BHB provided *both* the summary chart and its contemporaneous billing entries. The hours spent preparing the chart are compensable, along with the additional fee-petition hours set forth in the supplemental declaration. *See Gonzalez v. City of Maywood*, 729 F.3d 1196, 1210 (9th Cir. 2013) ("time spent in preparing fee applications" is compensable).

*Second*, the several weekly and month-end entries of two senior partners are a small fraction of the hours, about 4%, and they name the work performed. (Dkt. 522-2; Supp. Cashman Decl. ¶ 2.) Mr. Cashman used four week-long entries only for the trial period (he otherwise entered his time on a daily basis), and those entries detail work on the opening statement, witness examinations, jury instruction conference, verdict form, and closing argument. (Dkt. 522-2.) The Court's trial logs and the trial team's daily entries corroborate these tasks. (Dkt. 432-1; Dkt. 522-2.)

Mr. Hagey's entries are sufficiently detailed in relation to their relatively small number of hours to `adequately describe the work performed. For the handful of entries that were originally redacted for privilege, Impossible LLC has provided additional detail. (Supp. Cashman Decl. ¶ 4, Ex. 3.)

*Finally*, Impossible Foods would exclude "all" of the 3,144.5 hours of work performed by BHB's paralegals during the case. (Opp. at 20.) That is wrong and disrespectful of the enormous value that the work of BHB's paralegals contributed to the case. Under binding precedent, a "reasonable attorney's fee" "should compensate the work of paralegals, as well as that of attorneys." *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 285, 288 n.10 (1989). The paralegals performed essential substantive work throughout this case, including voluminous e-discovery searches, categorizing and tracking documents that formed the key evidence in the case, preparing and marshaling complicated pleadings and documents for filing, organizing records and exhibits for depositions and trial, building chronologies, and preparing trial materials—among many others (Dkt. 521-1 ¶ 31). Impossible LLC's victory would not have been possible without the tireless work of these professionals, and their time spent is fully compensable. *See Kilopass Tech., Inc. v. Sidense Corp.*, 82 F. Supp. 3d 1154, 1171–72 (N.D. Cal. 2015) (awarding fees for paralegals in IP case). The few entries that Impossible Foods identifies are not "clerical": they reflect the paralegals' work with BHB attorneys to onboard the case, meet with the client and co-counsel, revise and file a substantive brief, collect discovery materials, and conduct research tasks. (Dkt. 522-2 (entries of Jan. 22, 28-29, 2025).) There is no basis for any reduction.

### C. The Hourly Rates of Impossible LLC's Counsel Are Reasonable

BHB's standard hourly rates, which Impossible LLC actually paid during this litigation and which BHB charges other clients in commercial litigation matters, are reasonable. Impossible Foods does not dispute that the lodestar rate should "usually [be] counsel's normal billing rate." *Moore v. James H. Matthews & Co.*, 682 F.2d 830, 840 (9th Cir. 1982) (cited in Mot. at 12). Instead, Impossible Foods argues that BHB's rates should be reduced because some courts awarded lower rates in non-trial trademark cases in 2019 and 2021. This argument fails.

BHB's rates are in line with those approved by courts in this District for skilled commercial litigation counsel. Courts find partner rates "up to around $1,625" and associate rates "up to around

$850" consistent with Bay Area market rates. *Taylor v. Google LLC*, 2026 WL 2464274, at *25 `(N.D. Cal. Aug. 21, 2026) (DeMarchi, M.J.) (collecting cases with similar rates). Every BHB attorney except for Mr. Hagey falls within this range, and his effective rate of $1,893.75 is not materially higher than the $1,850 *Taylor* approved. Survey data confirms third-quartile rates for litigation partners in San Francisco were $1,378 in 2025, in line with the effective rates of the partners who tried the case. (Supp. Cashman Decl. Ex. 4 at 27.) While BHB's rates are not inexpensive, they are commensurate with demand for its services as a leading national trial litigation boutique with a track record of beating AmLaw 50 firms in high-stakes trademark litigation, as well as complex disputes involving patents, trade secrets, antitrust, and other matters. (*See* Mot. at 13 (citing cases).) Failing to award market rates in cases like this would discourage smaller litigants with righteous claims from hiring skilled counsel to defend their rights.

Impossible Foods's comparison to small non-trial trademark cases is inapposite. (Opp. at 20–21.) Those cases (*Baskin-Robbins*, *Telegram*, and *Optrics*) awarded the full rates requested by counsel and do not set a ceiling. (*Id.*) Courts award far higher rates in trademark and intellectual property cases that are litigated through trial. Indeed, Impossible Foods's counsel at Kilpatrick Townsend charges associate rates that are higher than BHB's effective rates (up to $845), as well as partner rates up to $1,125, which is higher than the effective rates of Ms. Benavides and Mr. Rowe and only modestly lower than Mr. Cashman's. *Iconic Mars Corp. v. Kaotica Corp.*, 2025 WL 2440887, at 2–3 (S.D. Cal. Aug. 25, 2025). Impossible Foods's comparison with Mr. Weslow's rates also fails because they "reflect significant discounts" below market. (Dkt. 521-8 ¶¶ 6, 9, 9(a).)

Finally, Tushita Saraf's time is compensable, as Impossible LLC has supplied her credentials and her detailed time entries reflect her substantive contributions. (Supp. Cashman Decl. ¶ 6.) *See Jenkins*, 491 U.S. at 277, 289 (fees for "recent law graduates" are compensable).

## II. IMPOSSIBLE LLC IS ENTITLED TO RECOVER ITS LITIGATION EXPENSES

Impossible LLC is also entitled to recover its non-taxable litigation expenses. (Mot. at 15.)

### A. Impossible LLC is Entitled to Recover Non-Taxable Expenses

Impossible Foods argues that Impossible LLC may not recover non-taxable expenses based on cases holding that "costs of the action" do not reach beyond 28 U.S.C. §§ 1821 and 1920. (Opp.

at 22) (citing *Rimini St., Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 340 (2019).) But Impossible LLC `seeks expenses as part of "reasonable attorney fees," and "attorney's fees under the Lanham Act may also include reasonable costs that the party cannot recover as the 'prevailing party.'" *Secalt*, 668 F.3d at 687, 690; *see Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 580 (9th Cir. 2010). *Rimini* left that rule intact because "the Court never addressed whether costs beyond the categories in §§ 1821 and 1920 could be awarded as reasonable attorneys' fees." *Barrett Bus. Servs., Inc. v. Colmenero*, 2025 WL 2048985, at *1, *3 (9th Cir. July 22, 2025) (affirming Lanham Act fee award that "included non-taxable costs").

Nor is anything double-counted. (Opp. at 23.) Mr. Runyon confirms that these expenses "are separate from and not included within the expenses claimed in" the Bill of Costs (Dkt. 521-11 ¶ 5), which sought only the charges that are "legally allowable" as taxable costs (Dkt. 494-1 ¶ 3). Impossible LLC paid these expenses (Dkt. 521-1 ¶ 68), which "provides significant market evidence of their reasonableness." *Dropbox*, 2017 WL 914273, at *6. Should the Court wish to review the underlying invoices, Impossible LLC will submit them.

### B. The Court Should Award Impossible LLC its Expert Witness Fees

The $572,061.07 in expert fees is recoverable on the same basis. *San Diego Comic Convention* (Opp. at 22), is an unpublished disposition that does not grapple with *Grove* or *Secalt*. And *Secalt* itself remanded an award that included an "expert witness fee" for a reasonableness determination rather than holding such fees unrecoverable. 668 F.3d at 690. Courts in this Circuit continue to award expert fees in Lanham Act cases. *Paige*, 2024 WL 3594450, at *8; *Dropbox*, 2017 WL 914273, at *6. That the question is "unsettled" (Opp. at 22) means the Court has discretion to award these fees and should do so to fully compensate Impossible LLC.

## CONCLUSION

For the foregoing reasons, the Court should award Impossible LLC's reasonable attorneys' fees and non-taxable costs in the amount of $9,370,417.02.

Dated: October 19, 2026

`

Respectfully submitted,

BRAUNHAGEY & BORDEN LLP

By: *<u>/s/ Adam S. Cashman</u>*
Adam S. Cashman

*Attorneys for Impossible LLC*